

# United States of America

## DEPARTMENT OF THE ARMY

| Washington, DC | February 13, 2018 |
|---|---|
| PLACE | DATE |

I HEREBY CERTIFY that the annexed constitute true and accurate copies of files pertaining to Damon J. Claiborne., a former member of the United States Army. Copies of records from the Army Review Boards Agency (ARBA) and Army Board for Correction of Military (ABCMR) located in Arlington, Virginia. A copy of the Army Military Human Resource Record (AMHRR) is maintained at the U.S. Army Human Resources Command, Fort Knox, Kentucky. The original personnel records and copies of other records are in the official temporary custody of the Military Personnel Litigation Branch, Litigation Division, Office of the Judge Advocate General of the Army.

*Edward Bahdi*

EDWARD BAHDI
Lieutenant Colonel, U.S. Army
Chief, Military Personnel Litigation Branch

Administrative Record Part 1- Pages 000001 - 000330

I HEREBY CERTIFY that Lieutenant Colonel Edward Bahdi, who signed the foregoing certificate, is the Chief, Military Personnel Litigation Branch, Litigation Division, Office of the Judge Advocate General of the Army, and that full faith and credit should be given to his certification.

IN TESTIMONY WHEREOF I. __Gerald B. O'Keefe_____.

The Administrative Assistant to the Secretary of the Army.
have hereunto caused the seal of the Department of the
Army to be affixed this ___13th___ day of

_____February_____, _____2018_____

By _____
*Administrative Assistant.*

**RANDOLPH SWANSIGER**
**Colonel, U.S. Army**
**Chief, Litigation Division**



**DEPARTMENT OF THE ARMY**
ARMY BOARD FOR CORRECTION OF MILITARY RECORDS
251 18TH STREET SOUTH, SUITE 385
ARLINGTON, VA 22202-3531

September 28, 2017

AR20170003007, Claiborne, Damon J.

Mr. Damon J. Claiborne
c/o John Maher, Esquire
Maher Legal Services P.C.
17101 South 71st Avenue
Tinley Park IL 60477

Dear Mr. Claiborne:

I regret to inform you that the Army Board for Correction of Military Records denied your application.

The Board considered your application under procedures established by the Secretary of the Army. I have enclosed a copy of the Board's Record of Proceedings. This decision explains the Board's reasons for denying your application.

This decision in your case is final. You may request reconsideration of this decision by letter to the above address only if you can present new evidence or argument that was not considered by the Board when it denied your original application.

Sincerely,

Dennis W. Dingle
Director, Army Board for Correction
of Military Records

Enclosure

Printed on Recycled Paper

**DEPARTMENT OF THE ARMY**
ARMY BOARD FOR CORRECTION OF MILITARY RECORDS
251 18TH STREET SOUTH, SUITE 385
ARLINGTON, VA 22202-3531

SAMR-RBA

28 September 2017

MEMORANDUM FOR Army Review Boards Agency, Case Management Division, 251 18th Street South, Suite 385, Arlington, VA 22202-3531

SUBJECT: Army Board for Correction of Military Records Record of Proceedings for Claiborne, Damon J., SSN Redacted PII AR20170003007

The application submitted by the individual concerned has been denied by the Army Board for Correction of Military Records.

Encl

DENNIS W. DINGLE
Director, Army Board for Correction
of Military Records

CF:
(x ) OMPF

ARMY BOARD FOR CORRECTION OF MILITARY RECORDS

RECORD OF PROCEEDINGS

IN THE CASE OF: Claiborne, Damon Jahron

BOARD DATE: SEP 2 8 2017.

DOCKET NUMBER: AR20170003007

BOARD VOTE:

_____ _____ _____ GRANT FULL RELIEF

_____ _____ _____ GRANT PARTIAL RELIEF

_____ _____ _____ GRANT FORMAL HEARING

BEV  ЛМ  KX  DENY APPLICATION

2 Enclosures
1. Board Determination/Recommendation
2. Evidence and Consideration

ARMY BOARD FOR CORRECTION OF MILITARY RECORDS

RECORD OF PROCEEDINGS

IN THE CASE OF: Claiborne, Damon Jahron

BOARD DATE: SEP 2 8 2017

DOCKET NUMBER: AR20170003007

BOARD DETERMINATION/RECOMMENDATION:

The evidence presented does not demonstrate the existence of a probable error or injustice. Therefore, the Board determined the overall merits of this case are insufficient as a basis for correction of the records of the individual concerned.

CHAIRPERSON

I certify that herein is recorded the true and complete record of the proceedings of the Army Board for Correction of Military Records in this case.

Enclosure 1

000004

IN THE CASE OF:  Claiborne, Damon Jahron

BOARD DATE:  SEP 2 8 2017

DOCKET NUMBER:  AR20170003007

## THE BOARD CONSIDERED THE FOLLOWING EVIDENCE:

1.  Application for correction of military records (with supporting documents provided, if any).

2.  Military Personnel Records and advisory opinions (if any).

## THE APPLICANT'S REQUEST, STATEMENT, AND EVIDENCE:

1.  The U.S. District Court, District of Oregon, issued a Joint Status Report, dated 1 June 2017.  The status report was submitted pursuant to the Court's scheduling order of 22 December 2016, pertaining to the action of the plaintiff (hereafter referred to as the applicant) in which he is challenging his discharge from the U.S. Army.  On 10 August 2015, the Court stayed this action pursuant to the parties' agreement while the applicant exhausted his administrative remedies.

   a.  On 2 November 2015, the applicant filed an application with the U.S. Army Discharge Review Board (ADRB) in which he requested the amendment of the characterization of his discharge from general under honorable conditions to honorable and amendment of the narrative reason for his separation from Secretarial plenary authority to retirement.

   b.  On 27 July 2016, the Deputy Assistant Secretary of the Army (Review Boards) notified the applicant the ADRB had reviewed his case and voted to grant partial relief in the form of an upgrade in the characterization of his discharge from general under honorable conditions to honorable.  The ADRB denied his request to change his reason for discharge to retirement.

   c.  On 28 February 2017, he filed an application and supporting documentation with the Army Board for Correction of Military Records (ABCMR) to obtain an administrative review of the decision to separate him under the Secretary of the Army's plenary authority without retired pay.  Barring any unforeseen complication, he anticipates the ABCMR will issue a decision by the

Enclosure 2

end of September 2017. There are no further administrative appeals beyond this application to the ABCMR. When the ABCMR issues its decision, the applicant and defendant are prepared to notify the Court.

2. The applicant provides all arguments and evidence through counsel.

COUNSEL'S REQUEST, STATEMENT, AND EVIDENCE:

1. Counsel requests, in effect, correction of the applicant's DD Form 214 (Certificate of Release or Discharge from Active Duty) to reflect retirement for length of service in lieu of discharge by Secretarial authority, to include back pay for lost benefits. Counsel alternatively requests the applicant's order to active duty to enable him to serve the requisite 7 months needed to complete 20 years of service for retirement or to provide him with a comprehensive medical evaluation for purposes of a medical retirement.

2. Counsel states:

   a. As the applicant's duly authorized legal representative, he respectfully requests the Board consider the injustice that resulted from the applicant's discharge from the Army at his 19th year and 3rd month of active service for misconduct that occurred and had been addressed over 12 years prior. His discharge unjustly deprived him and his family of retired pay and benefits.

   b. In 2005, the applicant was convicted in the State of Washington for an offense with a 5'10" female who told him she was 19 years old. Having met in a bowling alley bar, it turns out she was a minor. When released from civilian incarceration, an Army separation board convened pursuant to Army Regulation 635-200 (Active Duty Enlisted Administrative Separations), chapter 14. The board heard the evidence and recommended his retention in the service. Already a veteran of Operation Desert Shield/Operation Desert Storm at the time, the board observed he was a highly deserving Soldier who should be given a "probation period" to show successful rehabilitation. The I Corps separation authority agreed with the board and retained the applicant on active duty.

   c. From that point onward, he successfully completed the probationary period; was promoted to sergeant and staff sergeant; and deployed to Iraq, Afghanistan, Kosovo, Korea, Kuwait, and Germany. He received individual awards, campaign ribbons, and certificates of achievement, and reenlisted several times, guaranteeing him serving through his 20th year. His record since the 2004 offense was unblemished and, in other words, there was no new misconduct in his military or civilian records to support a new separation action.

2

d. With approved retirement orders in hand, the Army returned him early from Korea and began processing him for separation for the very same 2004 offense which resulted in his conviction and subsequent retention in the Army. This time, the separation authority was not Army Regulation 635-200, chapter 14, but rather paragraph 5-3, with his narrative reason for separation being the Secretary of the Army's plenary authority. This premature discharge, which deprives him of his combat-earned retired pay, is an injustice for numerous reasons.

e. The Army engaged in administrative double jeopardy. The Army violated Army Regulation 635-200, paragraph 1-17b(3), which states separation should normally not be based on conduct that has already been considered at an administrative proceeding resulting in a determination to retain the Soldier. The applicant's conduct was already considered at an administrative proceeding and he was retained. Thus, the Army did not follow its own regulations.

f. The Army improperly overturned a previous board. The Army violated Army Regulation 635-200, paragraphs 2-6e(1) and (2), because it is the policy of the Headquarters, Department of the Army (HQDA), not to direct separation per paragraph 5-3 when a duly constituted board has recommended retention. The Secretary's decision wrongfully reversed both the board's and the separation authority's determinations to retain the applicant. Thus, the Army again did not follow its own regulation and policy.

g. The basis for the Secretary's discharge decision is conduct which occurred in 2004, over 12 years ago, beyond any applicable administrative statute of limitations and demonstrates laches or an unreasonable delay in making an assertion or claim. The Army again did not follow its own regulations and policies.

h. The Army abused its plenary discretion. The Secretary's reliance on paragraph 5-3 overturns a 12-year old board decision, which is an abuse of discretion because it violates HQDA stated policy. Courts regularly set aside agency actions, findings, and conclusions that are "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law (Title 5, U.S. Code, section 706(2)(A)). A decision is arbitrary and capricious if it is not based upon relevant factors, lacks a rational basis, or represents a clear error in judgment (McIntyre v. United States, 30 Fed. Cl. 207, 213 (1993)).

i. There is significant evidence the Army failed to comply with its own administrative procedures. Army Regulation 635-200, paragraph 1-17, clarifies separation does not normally occur for conduct already considered. The use of "normally" suggests there may be times when separation may rightly occur.

3

Speaking to those instances, paragraph 1-17 delineates those specific circumstances where separation may be considered again. There are three exceptions to the Army's bar on double jeopardy, none of which applies in this case. The exceptions are for subsequent conduct or performance, which forms the basis for a new proceeding; the discovery of fraud or collusion not known at the time of the original proceedings; and the discovery of substantial new evidence not known at the time of the original proceedings.

j. The Army interpreted Secretarial plenary authority as written in Army Regulation 635-200, paragraph 5-3a, too expansively. The Army's interpretation goes too far. Absent in the language of the regulation are words like "unfettered" or "complete" or "beyond review," pertaining to the prerogative of the Secretary of the Army. Thus, the prerogative language can and should be viewed as discretionary and application of the Administrative Procedures Act shows the Secretary abused the discretion found in paragraph 5-3.

k. The entire Army Regulation 635-200 is premised upon the idea of early separations before enlistments or terms of obligated service expire. Paragraph 5-3a states the Secretary must determine if "early separation" is clearly in the best interest of the Army." Here, the Army ignored, refused to acknowledge, or underappreciated facts that show the decision is not "clearly in the best interest of the Army." Several times prior to this filing, efforts were made to present the legal and equitable facts to the Army's decision makers to no avail. Where the Army subjects a noncommissioned officer with nearly 20 years of active service in several combat theaters to administrative double jeopardy and takes his livelihood and retirement at the 11th hour, it stands to reason that some Americans will not receive that decision warmly. It also stands to reason that some Soldiers will not take kindly to the Army's treatment of the applicant.

l. What is more, the discharge and associated loss of retirement benefits is the third time the applicant was punished for the 12-year old offense (incarceration, the 2006 board, and the 2015 discharge). The Court in Crane v. Secretary of the Army, 92F. Supp. 2d 155 (W.D.N.Y. 2000), reviewed the Army's discharge decision under the Administrative Procedures Act and found the Army did not did not comply with its own administrative procedures and the discharge was not supported by substantial evidence. The Court set aside the Army's discharge decision, reinstated the discharged officer, and restored him to all duties, responsibilities, and privileges earned by him prior to his discharge (Crane, 92F. Supp. 2d at 167-68).

m. The Army's failure to follow its own regulations, misapplications, and misinterpretations, coupled with its decision to punish the applicant a third time

4

shows the Secretary's decision is arbitrary, capricious, not in accordance with law, and in violation of the Administrative Procedures Act.

n. Over one dozen years ago, the Army cancelled the applicant's separation and reenlisted him not once, but twice, with the promise of at least 20 years of service. Had the Army informed him then that he would be separated for the same conduct a decade later, albeit after risking his life repeatedly in combat zones, only to be denied retirement benefits, there may have been other decisions made which are now forever lost. This type of governmental action cannot be consistent with American due process, especially the harsh consequence of losing retired pay by application of a third punishment for a single 12-year old act.

o. The Army violated the sanctuary program by discharging the applicant and not allowing him to retire. He had over 18 years of service and was thus vested under the sanctuary program pursuant to Title 10, U.S. Code, section 1176, which states in relevant part, "[a] regular enlisted member who is selected to be involuntarily separated within 2 years of qualifying for retirement shall be retained on active duty until the member is qualified for retirement."

p. Army Directive 2013-21 (Initiating Separation Proceedings and Prohibiting Overseas Assignment for Soldiers Convicted of Sex Offenses) and All Army Activities (ALARACT) 035/2014 (Initiating Separation Proceedings and Prohibiting Overseas Assignment for Soldiers Convicted of Sex Offenses) are unlawful because they are based on unlawful command influence, are ex post facto, amount to a bill of attainder (punishing the applicant and his family without a hearing), and violate due process, all of which are in violation of the U.S. Constitution.

q. Army Directive 2013-21 shows unlawful command influence as it was published in November 2013, only 6 months after the President, as Commander-in-Chief, stated, "[t]he bottom line is: I have no tolerance for this...I expect consequences...So I don't just want more speeches or awareness, programs or training, but ultimately folks look the other way. If we find out somebody's engaging in this, they've got to be held accountable – prosecuted, stripped of their positions, court-martialed, fired, dishonorably discharged. Period."

r. The U.S. Constitution states at Article 1, section 9, clause 3, that "[n]o ex post facto law shall be passed." An ex post facto rule is generally considered unethical and unfair because a person has no forward notice of the rule and cannot himself retroactively change his conduct. The November 2013 Army directive states it is a "new policy" that applies retroactively to all sex crime

5

000009

convictions. Miller v. Florida, 482 U.S. 423 (1987), found application of the revised guidelines to the petitioner, whose crimes occurred before the law's effective date, violates the ex post facto clause of the U.S. Constitution. The denial of further service, career, pay, and retired pay and benefits is "add on" retroactive ex post facto administrative double jeopardy punishment today for an offense dating back to 2004, in essence, a third unanticipated and unforeseen punishment over a decade later. The Secretary of the Army violates his oath of office to support and defend the U.S. Constitution by enforcing an ex post facto rule.

   s.  The Secretary of the Army does not have the authority to enact retroactive rules. The U.S. Supreme Court held that an administrative agency's power to promulgate regulations is limited to the authority delegated to it by Congress. Statutory grants of rulemaking authority are not understood to encompass the power to enforce retroactive rules unless that authority is specifically granted (Bowen v. Georgetown University Hospital, 488 U.S. 204 (1988)).

   t.  The applicant's conviction was in 2005 for conduct in 2004. He was retained by a duly constituted Army separation board and separation authority in 2006. He could not have anticipated a directive a decade later, which would reach back in time to end his career and sever his valuable retirement and benefits. It is, therefore, unjust to punish him by stripping away his career where he was on the verge of retirement for behavior which he cannot change and which the Army condoned by retaining, deploying, promoting, and reenlisting him.

   u.  The U.S. Constitution provides that "[n]o bill of attainder...shall be passed" (Article 1, section 9, clause 3). Although Army Regulation 635-200 provides due process, Army Directive 2013-21 and related rules are unlawful bills of attainder because they deny these constitutional protections. A bill of attainder is a rule that finds a person guilty or otherwise punishes him without the benefit of due process, often, like here, ex post facto. The U.S. Supreme Court has held that bills of attainder are unconstitutional (United States v. Lovett, 328 U.S. 303 (1946)). Here, the Army Directive and related rules punish the applicant without a hearing and accordingly, the Secretary of the Army violated his oath of office when he authorized a bill of attainder against the applicant. Additionally, the Army directive at issue is void for being too vague. The term "sex offense" is ambiguous and lacking in specificity. The term is not defined in the directive itself.

   v.  In light of the applicant having paid his debt to society over 11 years ago, completed probation, was retained, reenlisted, was promoted, deployed, and

000010

received awards and decorations, this action is an injustice which strips him of his identity, career, and retired pay and benefits which are critical to his family's survival. The Army slammed down the proverbial ticket window just as he reached the ticket agent after having stood in line for two decades and risked his life in Saudi Arabia, Kuwait, Iraq, Kosovo, and Afghanistan. The Army thought he was good enough for war and kept him for those deployments, but when near the retirement goal, the Army found something it had already determined insufficient for separation 12 years ago to denigrate his contributions, devalue his service, and raze his well-being into the future.

w. He, his wife, and eight dependent children lost the financial support of his projected retirement, which at present rates is 40 percent of his current active duty pay per month until his death. As a staff sergeant with 20 years of service, his basic pay was approximately $3,724.00 per month. In today's dollars, he and his family will lose approximately $1,500.00 per month for every year until his demise. Presently 45 years old, were he to live another 30 years until the age of 75, he and his family would lose approximately $554,131.00 in today's dollars without including cost-of-living benefits. Upon his demise, his wife would normally receive a reduced percentage of his full retired pay until her demise from the Survivor Benefit Plan. The Army arbitrarily took all of that away with the Secretary's unlawful abuse of discretion pursuant to Army Regulation 635-200, paragraph 5-3.

x. The Secretary sent a message against the best interest of the Army. Our volunteer force and the families and Soldiers who already endure great hardships must be able to trust that the Army will honor its word and properly apply regulations in fairness, especially when it comes to something as monumental in people's lives as retirement benefits. Our Nation was founded upon principles of fair play, due process, and equal treatment. It is fair to say that a significant portion of our country generally values service members and holds combat veterans in even higher regard. A good number of Americans would tell you that they favor the underdog and he/she who made a mistake but made good on it with responsibility, accountability, and subsequent good works. These people would likely be surprised to learn of the Army's treatment of the applicant and disappointed in the imperfect and apparently impersonal manner with which the Army sought to end his two-decade long career.

y. Soldiers on active duty, in the U.S. Army Reserve, in the Army National Guard, retired, and the thousands of veterans of Iraq and Afghanistan would likely cringe upon learning that "Washington cut a staff sergeant with 20 [years] loose," after letting him "soldier on" from his mistake for a decade and serve the Army and the Nation on repeated combat tours. The public interest and frankly

7

the Army's interest, whether it admits it or not, is served by correcting this injustice.

z. In summary, the Secretary's use of plenary authority to discharge the applicant when he had approved retirement orders is an injustice that should be corrected. The Secretary's action violates several provisions of Army Regulation 635-200, is administrative double jeopardy and unlawfully overturns a duly constituted board's recommendation and the separation authority's retention decision. It violates the ex post facto, bill of attainder, and due process clauses of the U.S. Constitution, all a result of unlawful command influence, which in this instance unfairly and unjustly deprived a combat veteran and noncommissioned officer of his career and identity, and placed his family's survival in jeopardy. For these reasons, counsel requests that the board transfer the applicant to the retired rolls and award him all back pay and benefits associated with retirement. Alternatively, counsel requests that the board order the applicant to active duty to complete the 7 months of service required to attain 20 years of service for retirement or order him to active duty for a comprehensive medical evaluation for purposes of a medical retirement.

3. Counsel provides:

- legal brief, dated 7 February 2017
- Complaint, dated 29 June 2015
- Plaintiff's Memorandum in Support of Motion for Temporary Restraining Order, dated 29 June 2015
- Declaration of Plaintiff, dated 29 June 2015
- Minutes of Proceedings, dated 1 July 2015
- Transcript of Proceedings (Oral Argument), dated 13 July 2015
- Document 1-1, containing court exhibits A-I
- Document 14-1, containing 46 pages of supporting documents
- Document 14-2, containing 46 pages of supporting documents
- Department of Veterans Affairs (VA) Rating Decision, dated 9 September 2015
- ADRB Case Report and Directive, dated 2 November 2015
- DD Form 214
- 20-page packet titled "Commendations and Awards Post-Conviction (2006)"

8

CONSIDERATION OF EVIDENCE:

1. After 3 years and 1 month of active service and over 4 years of inactive service in the Army National Guard, the applicant enlisted in the Regular Army on 28 January 1998.

2. On 12 November 2004, he pled guilty in the Superior Court of Washington, Kitsap County, to one count of child molestation of another person who was at least 12 years old but less than 14 years old. On 3 January 2005, the Superior Court of Washington, Kitsap County, found him guilty by plea of child molestation in the second degree between 1 September 2004 and 30 September 2004 and ordered him to serve 15 months of confinement in the State prison.

3. Two DA Forms 4187 (Personnel Action) show his duty status was changed from "present for duty" to "civilian confinement" effective 28 October 2004 then from "civilian confinement" to "present for duty" effective 6 January 2006.

4. On 10 May 2006, the Acting Commander, I Corps and Fort Lewis, reviewed a recommendation to discharge the applicant prior to the expiration of his current term of service under the provisions of Army Regulation 635-200, chapter 14, for conviction by civil court. He directed suspending execution of the separation for the period of 12 months per Army Regulation 635-200, paragraph 1-18. The actual discharge recommendation, any related administrative board proceedings, and documentation pertaining to any subsequent review of his status after the 12-month suspension period are not in the applicant's available records for review.

5. Counsel submitted a packet titled "Commendations and Awards Post-Conviction (2006)" that contains the following certificates and academic evaluation received between 2007 and 2016:

- four Army Achievement Medal Certificates
- five Certificates of Training
- two Army Commendation Medal Certificates
- two Certificates of Appreciation
- one Promotion Certificate
- three Certificates of Achievement
- Clackamas Community College Academic Evaluation Report

6. On 6 January 2014, the applicant's request for voluntary retirement upon completion of 20 years of active Federal service was approved. U.S. Army Installation Management Command Orders 027-0001, dated 27 January 2014,

000013

released him from active duty by reason of voluntary retirement effective
31 January 2015 and placed him on the Retired List effective 1 February 2015.

7. A memorandum from the Chief, Criminal Law Division, Headquarters, I Corps,
to the applicant, dated 10 February 2014, informed him that in Army
Directive 2013-2, the Secretary of the Army directed the initiation of separation
proceedings of all Soldiers convicted of a sex offense if the conviction did not
result in a punitive discharge or dismissal, regardless of when the conviction
occurred and regardless of the component of membership and current status in
that component.

   a. The Secretary further directed that if an enlisted Soldier who has been
convicted of a sex offense has already been subject to administrative separation
action, the separation authority will initiate separation action under Secretarial
plenary authority as described in Army Regulation 635-200, paragraph 5-3.

   b. He was convicted of child molestation in the second degree in Kitsap
County, Washington, in January 2005. Based upon the date of this conviction,
he may have been subject to a separation action and retained, but the
documents may have been destroyed in accordance with Army records retention
policy.

   c. He was directed to answer the questions included on the second page of
the memorandum

   d. He responded by annotating on the form that he had been subject to
administrative separation action based upon his conviction in 2005 or based
upon the underlying misconduct upon which the conviction was based and he did
possess documentary proof of his retention at this proceeding.

8. A DA Form 2808 (Report of Medical Examination), dated 23 June 2014,
shows he had a physical profile rating of "2" for physical capacity/stamina and "2"
for lower extremities. He was found qualified for service retention/retirement/
separation. The examining physician assistant recommended follow up with his
primary care manager for mental health issues.

9. A DD Form 2697 (Report of Medical Assessment), dated 23 June 2014,
completed by the applicant, shows he felt his overall health was worse in
comparison to his last medical assessment/physical examination. He was not
referred by the examining physician for further evaluation.

000014

10. A review of his available service records does not indicate he:

- was issued a permanent physical profile rating
- suffered from a medical condition, physical or mental, that affected his ability to perform the duties required by his military occupational specialty and/or grade or rendered her unfit for military service
- was diagnosed with a medical condition that warranted his entry into the Army Physical Disability Evaluation System (PDES)
- was diagnosed with a condition that failed retention standards and/or was unfitting

11. In an undated memorandum, his company commander recommended his involuntary separation for under the provisions of Army Regulation 635-200, paragraph 5-3, pursuant to Secretary of the Army plenary authority. The memorandum states he had sexual contact with a child who was under the age of 14 years on or between 1 September 2004 and 30 September 2004. On 3 January 2005 he was convicted of child molestation in the second degree in Kitsap County, Washington, and sentenced to 15 months in confinement. His commander recommended characterization of his service as honorable.

12. On 16 July 2014, he acknowledged receipt of the notice from his commander informing him of the bases for the contemplated action to separate him under the provisions of Army Regulation 635-200, paragraph 5-3, and the rights available to him. On 18 July 2014, he acknowledged he had been advised by his consulting counsel of the basis for the contemplated separation action. He acknowledged his understanding that he could expect to encounter substantial prejudice in civilian life if a general discharge under honorable conditions were issued to him. He did not waive representation by counsel and he submitted statements in his own behalf. He acknowledged he deployed overseas in support of a contingency operation during the previous 24 months and he believed, based on his service while deployed, that he experienced either post-traumatic stress disorder or traumatic brain injury. He did not acknowledge having been diagnosed with either post-traumatic stress disorder or traumatic brain injury.

13. On 20 July 2014, he authored a statement addressed to the Secretary of the Army. In the statement, he requested retirement in lieu of discharge per Army Regulation 635-200, paragraph 5-3. He stated:

    a. He was disheartened when he was sent into combat pending an investigation of his wife's sexual assault by a neighboring Soldier on post in 2003. His wife felt the military was not supportive for sending him into combat

000015

not even 1 week into the incident and she eventually abandoned government quarters, not returning to his duty station. He came home to an empty house and was greeted by no one. His life subsequently fell apart because he was required to leave government quarters and had no place to live, sometimes sleeping in his car due to monetarily supporting his wife and children from afar.

b. He soon fell into clinical depression, feeling he had no one to rely on. He eventually met a young woman he was acquainted with online, which led to the situation he now finds himself in. He has no excuse to offer but the emptiness in his own heart. It was truly a post-deployment lapse of judgment and lack of awareness, resiliency education, and coping skills. Soon after his release from incarceration, there was a noticeable infusion of Soldier and family programs meant to identify and address the apparent problems most Soldiers encountered.

c. He increasingly became aware of his social faults and ideations and tremendously improved in all areas of his life. He works tenaciously in every aspect he can to help improve the lives of Soldiers, units, platoons, squads, and any programs he feels need the touch of a noncommissioned officer who cares, as he feels he was not given the same help as a young Soldier. Sadly, he was sexually assaulted before his incarceration and was seen clinically, which he couldn't report to the military. In no way should any Soldier have to suffer from this issue in the military. He deployed, led, and trusted himself to do the right thing ever since the singular mistake that caused so much pain in his life and the lives of his own family members.

d. He will not let something he learned from define the totality of his life. He has been dedicated to the Better Opportunities for Single Soldiers Program since its inception and has volunteered hundreds of hours in the program, with his last stint primarily focused on organizing the first ever Army Ten-Miler Shadow Run in Yongsan, Korea, in 2013. He participated in numerous unit ministry teams as a chorus member and support staff.

14. His battalion commander recommend his retention, but also checked the blocks recommending both characterization of his service as honorable as well as general under honorable conditions. His brigade commander recommended his separation from the Army and characterization of his service as general under honorable conditions. On 27 August 2014, the Commanding General, I Corps, recommended his separation and characterization of his service as general under honorable conditions.

15. On 25 November 2014, the U.S. Army Human Resources Command suspended his approved retirement and directed revocation or rescission of the

000016

retirement orders. The approved retirement would remain in effect until completion of the pending investigation.

16. On 16 June 2015, the Assistant Secretary of the Army (Manpower and Reserve Affairs) found the applicant's discharge to clearly be in the best interest of the Army, approved his separation under the provisions of Army Regulation 635-200, paragraph 5-3, Secretarial Plenary Authority, and directed characterization of his service as general under honorable conditions.

17. On 29 June 2015, counsel filed a complaint in the U.S. District Court for the District of Oregon, Portland Division, on behalf of the applicant. In the complaint, counsel requested court-ordered judgment against the Secretary of the Army and the following relief:

   a. enjoining the Army from continuing the applicant's separation and setting aside the Army's decision;

   b. compelling the Army to transfer him to the Retired List with an effective date to be determined given his creditable service;

   c. determining that the Secretary's plenary authority under Army Regulation 635-200, paragraph 5-3a, does not trump (override) the prohibition against administrative double jeopardy where Soldiers have been issued retirement orders found in paragraph 1-17b;

   d. determining the Secretary's plenary authority under paragraph 5-3a does not trump paragraph 1-17b's prohibition against administrative double jeopardy on the facts of this specific case;

   e. determining the Secretary's plenary authority under paragraph 5-3a is limited by its own language to "early" separations;

   f. determining it is not "clearly in the best interest of the Army" to separate the applicant on the facts of this case;

   g. awarding to the applicant payment of all his costs and attorney's fees incurred in this action; and

   h. issuing any other legal or equitable relief to which this Court deems proper.

13

18. On 29 June 2015, counsel filed a Plaintiff's Memorandum in Support of Motion for Temporary Restraining Order in the U.S. District Court for the District of Oregon, Portland Division, on behalf of the applicant. The memorandum requests the court issue a temporary restraining order or enjoin the Army from discharging the applicant on 1 July 2015, and preserve the status quo to prevent immediate and irreparable harm until the court can review the Army's decision pursuant to Federal question jurisdiction under Title 28, U.S. Code, paragraph 1331, and the Administrative Procedures Act, Title 5, U.S. Code, section 701.

19. On 29 June 2015, counsel filed a Declaration of Plaintiff (Applicant) in support of his motion for a temporary restraining order. It states:

a. The applicant was a 44-year old, married staff sergeant with eight dependent children. In 2005, he was convicted in the State of Washington for an offense involving sexual assault. He met a female at a bowling alley with whom he had sexual relations. She was 5'10 and weighed 170 pounds, and told him she was almost 19 years old. He pled guilty pursuant to an Alford plea (the criminal defendant does not admit the act, but admits the prosecution could likely prove the charge), serving a sentence to incarceration, and was released to his Army unit in 2006.

b. Upon his return to his unit, the Army processed him for separation pursuant to Army Regulation 635-200, chapter 14 (Separation for Misconduct). His chain of command reviewed the evidence and recommended, pursuant to Army Regulation 635-200, paragraph 1-18a, that as a "deserving" Soldier, he should be retained for a 12-month probationary period. In 2006, the I Corps and Fort Lewis Commanding General, as the separation authority, approved the chain of command's recommendations and retained him as a Soldier on active duty. He successfully completed the 12-month probationary period and served on active duty since then without a break in service.

c. His Army service includes service in support of Operations Desert Shield/ Desert Storm, Kosovo, Operation Iraqi Freedom, Operation Enduring Freedom, and overseas tours in Germany, Kuwait, Saudi Arabia, and Korea. Since 2006, the Army has awarded him campaign ribbons for overseas service in hostile fire zones and medals for individual achievement, to include the Army Commendation Medal and the Army Achievement Medal. Since 2006, he was promoted to his current rank of staff sergeant and was authorized to reenlist twice. His most recent reenlistment authorized his retention until 20 years of service.

000018

   d. He engaged in no misconduct, civilian or military, since 2005, which could form the basis of new separation proceedings. The Army approved his request for voluntary retirement pursuant to Army Regulation 635-200, chapter 12, on 27 January 2014 and issued approved retirement orders with an effective date of transfer to the Retired List on 31 January 2015 (should read 1 February 2015).

   e. The Army then suspended his approved retirement 2 months before its effective date of 31 January 2015 and retained him on active duty after the 31 January 2015 date in order to process him for a general discharge based on the identical conduct it already processed him for in 2006. If discharged on 1 July 2015, he and his family will forfeit all of his accumulated retirement benefits.

   f. At no time 10 years ago or up until last fall did the Army ever inform him that he could be administratively discharged and forfeit his retirement for the same conduct that was the basis of his 2006 separation proceedings and ultimate retention. Had the Army informed him that he could be "fired" at the 11th hour and lose all that he strived for in working hard to overcome his mistake and to survive combat, he may have made different decisions about continued service. Many people with whom he has related his struggle appear astonished that the Army would do something like this and that it is even allowed. The Army's decision has caused great strain on him, his wife, his family, and his marriage.

20. On 1 July 2015, a Notice of Electronic Filing by the U.S. District Court, District of Oregon, Minutes of Proceedings, shows the Court heard oral argument on the applicant's motion for a temporary restraining order. For the reasons stated on the record, the Court granted his motion and hereby entered a temporary restraining order directing the Secretary of the Army to refrain from acting to separate the applicant from service during the pendency of this order, which remains in effect until 8 July 2015, at which time the parties must appear before the Court for a further hearing on his motion. The Court directed the parties confer and file a joint report no later than noon on 6 July 2015.

21. He was discharged in accordance with the Assistant Secretary of the Army (Manpower and Reserve Affairs) determination on 9 July 2015. His DD Form 214 shows he completed 16 years, 3 months, and 4 days of net active service during this period and 3 years and 1 month of prior active service. His dates of lost time during this period were 28 October 2004 through 5 January 2006.

000019

22. A Transcript of Proceedings (Oral Arguments) before the District Judge, U.S. District Court for the District of Oregon, dated 13 July 2015, shows the judge determined she should allow the temporary restraining order to expire by its own terms. She preliminarily concluded the applicant was required to exhaust his administrative remedies before the Court has authority to intervene in an intra-Army administrative process that was still underway. She stated it was unclear to her whether the applicant really has any basis to assert he is likely to prevail in a claim for violation of the Administrative Procedures Act once he does exhaust his administrative remedies. Thus, she could not say he showed a likelihood of success on the merits sufficient to support ongoing restraint. Based on the stated reasons, she allowed the temporary order to expire.

23. A VA Rating Decision, dated 9 September 2015, shows he was granted service connection for the following conditions effective 10 July 2015:

- gastroesophageal reflux disease and irritable bowel syndrome with an evaluation of 10 percent
- migraine headaches with an evaluation of 0 percent
- hypertension with an evaluation of 0 percent
- allergic rhinitis with an evaluation of 0 percent
- erectile dysfunction with an evaluation of 0 percent

24. On 20 October 2015, the applicant applied to the ADRB, requesting an upgrade of his general discharge under honorable conditions to honorable and a change to the narrative reason of his separation from Secretarial authority to retirement. On 27 April 2016, the ADRB voted to grant an upgrade of his characterization of service to honorable, but denied his request to change the narrative reason for separation, determining it was proper and equitable.

REFERENCES:

1. U.S. Constitution, Article 1, section 9, clause 3, states no bill of attainder or ex post facto law shall be passed.

2. Title 5, U.S. Code, section 701, states this chapter applies, according to the provisions thereof, except to the extent that statutes preclude judicial review or agency action is committed to agency discretion by law. For the purpose of this chapter "agency" means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include:

   a. the Congress;

000020

   b. the courts of the United States;

   c. the governments of the territories or possessions of the United States;

   d. the government of the District of Columbia;

   e. agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them;

   f. courts martial and military commissions;

   g. military authority exercised in the field in time of war or in occupied territory; and

   h. functions conferred by sections 1738, 1739, 1743, and 1744 of Title 12; subchapter II of chapter 471 of Title 49; or sections 1884, 1891-1902, and former section 1641(b)(2) of Title 50, appendix.

3. Title 5, U.S. Code, section 706, states to the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall:

   a. compel agency action unlawfully withheld or unreasonably delayed; and

   b. hold unlawful and set aside agency action, findings, and conclusions found to be:

      (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

      (2) contrary to constitutional right, power, privilege, or immunity;

      (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

      (4) without observance of procedure required by law;

      (5) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title, or otherwise reviewed on the record of an agency hearing provided by statute; or

17

000021

(6) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

4. Title 10, U.S. Code, section 1176, states a Regular enlisted member who is selected to be involuntarily separated, or whose term of enlistment expires and who is denied reenlistment, and who on the date on which the member is to be discharged is within 2 years of qualifying for retirement under section 3914 or 8914 of this title, or of qualifying for transfer to the Fleet Reserve or Fleet Marine Corps Reserve under section 6330 of this title, shall be retained on active duty until the member is qualified for retirement or transfer to the Fleet Reserve or Fleet Marine Corps Reserve, as the case may be, unless the member is sooner retired or discharged under any other provision of law.

5. Title 10, U.S. Code, section 3914, states under regulations to be prescribed by the Secretary of the Army, an enlisted member of the Army who has at least 20 but less than 30 years of service computed under section 3925 of this title may, upon his request, be retired.

6. Title 10, U.S. Code, section 8914, states under regulations to be prescribed by the Secretary of the Air Force, an enlisted member of the Air Force who has at least 20 but less than 30 years of service computed under section 8925 of this title may, upon his request, be retired.

7. Secretary of the Army memorandum, dated 7 November 2013, subject: Army Directive 2013-21 (Initiating Separation Proceedings and Prohibiting Overseas Assignment for Soldiers Convicted of Sex Offenses), states:

a. Sex offenses are serious crimes. Notwithstanding the provisions of any other Army regulation, directive, policy, or other like guidance published by any Army official or organization, this directive establishes new policy to ensure that the decision to retain any Soldier convicted of a sex offense is fully informed and in the Army's best interest. In addition, this directive establishes Army policy prohibiting the overseas assignment or reassignment of any Soldier convicted of a sex offense.

b. Commanders will initiate the administrative separation of any Soldier convicted of a sex offense, as defined by references 1a (Title 42, U.S. Code, section 16911) or 1b (Army Regulation 27-10 (Military Justice)), whose conviction did not result in a punitive discharge or dismissal. This policy applies to all personnel currently in the Army, regardless of when the conviction for a sex offense occurred and regardless of component of membership and current status in that component.

c. For enlisted personnel, commanders will follow the current policy for initiating administrative proceedings pursuant to reference 1c (Army Regulation 135-178 (Enlisted Administrative Separations)) or 1d (Army Regulation 635-200), as appropriate.

(1) If the separation authority approves retention, he or she will initiate action for the exercise of Secretarial plenary separation authority under paragraph 14-3 of reference 1c or paragraph 5-3 of reference 1d, as appropriate.

(2) If an enlisted Soldier who has been convicted of a sex offense already has been subject to an administrative separation action under reference 1c or 1d for that conviction and has been retained as a result of that proceeding, the separation authority will initiate separation action under the Secretarial plenary authority, as detailed in this directive.

d. The provisions of this directive are effective immediately. The Deputy Chief of Staff, G-1, is the proponent for this policy and, in coordination with the Assistant secretary of the Army (Manpower and Reserve Affairs), will publish appropriate implementing instructions as soon as possible. This directive and its implementing instructions take precedence over and cancel any conflicting guidance. They will remain in effect until relevant Army regulations are revised and published to incorporate the policies set forth in this directive.

8. ALARACT 035/2014, dated 12 February 2014, announced changes to Army policy in accordance with Department of the Army Directive 2013-21 and stated:

a. Upon discovery that a Soldier within their command sustained a sex offense conviction that did not result in a punitive discharge or dismissal, commanders will initiate administrative separation action. This policy applies to all personnel currently in the Army, regardless of when the conviction for a sex offense occurred and regardless of component of membership and current status in that component.

b. If an enlisted Soldier who has been convicted of a sex offense already has been subject to administrative separation under Army Regulation 135-178 or Army Regulation 635-200 for that conviction and has been retained, the separation authority will initiate separation under the Secretarial plenary authority as detailed in paragraph 14-3 of Army Regulation 135-178 or paragraph 5-3 of Army Regulation 635-200, as appropriate.

19

9. Army Regulation 27-10, paragraph 3-6b, states sex-related offenses include a violation of the following sections of Title 10, U.S. Code, and equivalent articles of the Uniform Code of Military Justice (UCMJ):

a. Section 920, U.S. Code, and Article 120, UCMJ: Rape and sexual assault. This includes rape, sexual assault, and aggravated sexual contact.

b. Section 920a, U.S. Code, and Article 120a, UCMJ: Stalking.

c. Section 920b, U.S. Code, and Article 120b, UCMJ: Rape and sexual assault of a child. This includes rape, sexual assault, and sexual abuse of a child.

d. Section 920c, U.S. Code, and Article 120c, UCMJ: Other sexual misconduct. This includes indecent viewing, visual recording, or broadcasting.

e. Section 925, U.S. Code, and Article 125, UCMJ: Forcible sodomy; bestiality.

f. Section 880, U.S. Code, and Article 80, UCMJ: Attempt (any attempt to commit these offenses).

10. Army Regulation 635-200 sets forth the basic authority for the separation of enlisted personnel.

a. Paragraph 1-17b states separation per this regulation normally should not be based on conduct that has already been considered at an administrative or judicial proceeding and disposed of in a manner indicating that separation was not warranted. Accordingly, administrative separations under the provisions of chapters 11, 13, 14, and 15, and Army Regulation 380-67 (Personnel Security Program) are subject to the following restrictions. No Soldier will be considered for administrative separation because of conduct that:

(1) has been the subject of judicial proceedings resulting in an acquittal or action having the effect thereof. Only HQDA will decide that an action does not have the effect of an acquittal. The convening authority must submit a request for such a determination through command channels to HQDA (AHRC-EPR-F);

(2) has been the subject of a prior administrative board in which the board entered an approved finding that the evidence did not sustain the factual allegations concerning the conduct, except when the conduct is the subject of a rehearing ordered on the basis of fraud or collusion;

000024

(3) has been the subject of an administrative separation proceeding resulting in a final determination by a separation authority that the Soldier should be retained, except when:

(a) the Soldier's subsequent conduct or performance forms the basis, in whole or in part, for a new proceeding. Such conduct need not independently justify the Soldier's discharge, but it must be serious enough to raise a question as to his/her potential for further useful military service;

(b) fraud or collusion is discovered that was not known at the time of the original proceeding and that will probably produce a result much less favorable for the Soldier at a new hearing; or

(c) substantial new evidence is discovered that was not known at the time of the original proceeding despite the exercise of due diligence.

b. Paragraph 1-18a states a highly deserving Soldier may be given a probationary period to show successful rehabilitation before the Soldier's enlistment or obligated service expires.

(1) The separation authority or higher authority may suspend (except fraudulent entry or homosexual conduct) execution of an approved separation for a period of full-time military duty not to exceed 12 months.

(2) When there are approved reasons for separation in addition to fraudulent entry, suspension may be authorized only when the added reason is not homosexual conduct and a waiver of the fraudulent entry is obtained.

(a) During the period of suspension, the Soldier must show he/she is able to behave properly under varying conditions.

(b) The Soldier can also show he/she can perform assigned duties efficiently.

c. Paragraph 1-18b states that upon satisfactory completion of the probation period, or earlier if rehabilitation has been achieved, the authority that suspended the separation will cancel execution of the approved separation. If the Soldier has been transferred to the command of another separation authority, the separation will be canceled by the new separation authority or higher authority.

d. Paragraph 2-6e states that when a board of officers has recommended retention and the separation authority believes discharge is warranted and in the

000025

best interest of the Army, a request for discharge for the convenience of the government per paragraph 5-3 may be forwarded to HQDA (AHRC-EPR-F).

(1) Separation under the provisions of paragraph 5-3 is based upon different criteria from that considered by the board of officers and does not constitute overturning the board.

(2) It is the policy of HQDA not to direct separation per paragraph 5-3 when a duly constituted board has recommended retention unless sufficient justification is provided to warrant separation by the Secretary of the Army, based on all the circumstances, as being in the best interest of the Army.

e. Paragraph 5-3 pertains to separation by Secretarial plenary authority.

(1) Separation under this paragraph is the prerogative of the Secretary of the Army. Secretarial plenary separation authority is exercised sparingly and seldom delegated. Ordinarily, it is used when no other provision of this regulation applies and early separation is clearly in the best interest of the Army. Separations under this paragraph are effective only if approved in writing by the Secretary of the Army or the Secretary's approved designee as announced in updated memorandums.

(2) Secretarial separation authority is normally exercised on a case-by-case basis but may be used for a specific class or category of Soldiers. When used in the latter circumstance, it is announced by special HQDA directive that may, if appropriate, delegate blanket separation authority to field commanders for the class category of Soldiers concerned.

(3) Individual cases that may be submitted to HQDA for consideration of separation under Secretarial plenary authority include those processed under paragraphs 1-17b(4) and 2-6e. Other bases for separation under this paragraph include, but are not limited to, human immunodeficiency virus infection, refusal to submit to medical care, and when religious practices cannot be accommodated.

(4) Separation under this paragraph may be voluntary or involuntary. When involuntary separation proceedings are initiated, the notification procedure (chapter 2, section I) will be used; however, the provision for requesting an administrative board (paragraph 2-2d) is not applicable. Medical examinations are required for Soldiers being processed for involuntary separation (paragraph 1-32a.)

000026

11. Army Regulation 635-40 (Physical Evaluation for Retention, Retirement, or Separation) establishes the PDES and sets forth policies, responsibilities, and procedures that apply in determining whether a Soldier is unfit because of physical disability to reasonably perform the duties of his or her office, grade, rank, or rating. In each case, it is necessary to compare the nature and degree of physical disability present with the requirements of the duties the Soldier reasonably may be expected to perform because of his or her office, grade, rank, or rating. Separation or retirement by reason of disability requires processing through the PDES.

12. Title 10, U.S. Code, chapter 61, provides the Secretaries of the Military Departments with authority to retire or discharge a member if they find the member unfit to perform military duties because of physical disability. The U.S. Army Physical Disability Agency, under the operational control of the Commander, U.S. Army Human Resources Command, is responsible for administering the PDES and executes Secretary of the Army decision-making authority as directed by Congress in chapter 61 and in accordance with Department of Defense Directive 1332.18 and Army Regulation 635-40.

  a. The objectives of the system are to:

- maintain an effective and fit military organization with maximum use of available manpower
- provide benefits for eligible Soldiers whose military service is terminated because of service-connected disability
- provide prompt disability processing while ensuring the rights and interests of the government and the Soldier are protected

  b. Soldiers are referred to the PDES:

- when they no longer meet medical retention standards in accordance with Army Regulation 40-501, chapter 3, as evidenced in a medical evaluation board (MEB)
- receive a permanent medical profile rating of "3" or "4" and are referred by a Military Occupational Specialty Medical Retention Board
- are command-referred for a fitness-for-duty medical examination
- are referred by the Commander, U.S. Army Human Resources Command

  c. The PDES assessment process involves two distinct stages: the MEB and the physical evaluation board (PEB). The purpose of the MEB is to determine whether the service member's injury or illness is severe enough to compromise

23

his/her ability to return to full duty based on the job specialty designation of the branch of service. A PEB is an administrative body possessing the authority to determine whether a service member is fit for duty. A designation of "unfit for duty" is required before an individual can be separated from the military because of an injury or medical condition. Service members who are determined to be unfit for duty due to disability are either separated from the military or are permanently retired, depending on the severity of the disability and length of military service. Individuals who are "separated" receive a one-time severance payment, while veterans who retire based upon disability receive monthly military retired pay and have access to all other benefits afforded to military retirees.

d. The mere presence of medical impairment does not in and of itself justify a finding of unfitness. In each case, it is necessary to compare the nature and degree of physical disability present with the requirements of the duties the Soldier may reasonably be expected to perform because of his/her office, grade, rank, or rating. Reasonable performance of the preponderance of duties will invariably result in a finding of fitness for continued duty. A Soldier is physically unfit when a medical impairment prevents reasonable performance of the duties required of the Soldier's office, grade, rank, or rating.

e. Chapter 4 contains guidance for processing through the PDES, which includes convening of an MEB to document a Soldier's medical status and duty limitations insofar as duty is affected by the Soldier's status. If the MEB determines a Soldier does not meet retention standards, the case will be referred to a PEB. The PEB evaluates all cases of physical disability equitably for the Soldier and the Army. The PEB investigates the nature, cause, degree of severity, and probable permanency of the disability of Soldiers whose cases are referred to the board. It also evaluates the physical condition of the Soldier against the physical requirements of the Soldier's particular office, grade, rank, or rating. Only the unfitting conditions or defects and those which contribute to unfitness will be considered in arriving at the rated degree of incapacity warranting retirement or separation for disability. Once a determination of physical unfitness is made, the PEB rates all disabilities using the VA Schedule for Rating Disabilities.

13. The VA Schedule for Rating Disabilities is used by the Army and the VA as part of the process of adjudicating disability claims. It is a guide for evaluating the severity of disabilities resulting from all types of diseases and injuries encountered as a result of, or incident to, military service. This degree of severity is expressed as a percentage rating which determines the amount of monthly compensation.

24

14. Title 38, U.S. Code, sections 1110 and 1131, permit the VA to award compensation for disabilities which were incurred in or aggravated by active military service. However, an award of a higher VA rating does not establish error or injustice on the part of the Army. The Army rates only conditions determined to be physically unfitting at the time of discharge which disqualify the Soldier from further military service. The VA does not have the authority or responsibility for determining physical fitness for military service. The VA awards disability ratings to veterans for service-connected conditions, including those conditions detected after discharge, to compensate the individual for loss of civilian employability. These two government agencies operate under different policies. Unlike the Army, the VA can evaluate a veteran throughout his or her lifetime, adjusting the percentage of disability based upon that agency's examinations and findings.

DISCUSSION:

1. The applicant's counsel argues the applicant was subject to "administrative double jeopardy" because Army Regulation 635-200 discourages separating Soldiers who were previously considered for separation but for whom separation was not deemed warranted. Counsel is correct that Army Regulation 635-200, paragraph 1-17b(3), provides that separation should not be based on conduct that has already been considered at an administrative proceeding and disposed of in a manner indicating separation was not warranted. That provision does not, however, prevent the ASA (M&RA) from taking the action she did. As an initial matter, the regulation's use of the term "should" indicates the prohibition is not absolute. Furthermore, the provision contained in paragraph 1-17 has long been included within Army Regulation 635-200 (e.g., Army Regulation 635-200, paragraph 1-17b(3), 6 June 2006.). Consequently, the regulatory provision to which the applicant cites was in effect when the Secretary of the Army issued Army Directive 2013-21 in November 2013. That directive provides that "[n]otwithstanding the provisions of any other Army regulation, directive, policy or other like guidance...this directive establishes new policy to ensure that the decision to retain any Soldier convicted of a sex offense is fully informed and in the Army's best interest" (see Army Directive 2013-21, paragraph 2). In a subsequent paragraph the directive provides that Soldiers convicted of sex offenses but retained by separation authorities will nonetheless have their cases forwarded to the Army Secretariat for consideration and possible exercise of Secretarial separation authority (see Army Directive 2013-21, paragraphs 3a(2) and (3)). Because the directive postdates the provision contained in paragraph 1-17, it reasonably can be inferred that the Secretary intended for sex-offending Soldiers to have their cases forwarded for Secretarial separation consideration despite the fact that their cases already had been considered at an

administrative proceeding which recommended retention. Thus, the ASA (M&RA)'s decision relative to the applicant did not violate Army Directive 2013-21 or Army Regulation 635-200. Consequently, counsel has not demonstrated by a preponderance of evidence that an "administrative double jeopardy" error or injustice occurred in this case.

2. Counsel next argues the ASA (M&RA)'s action is improper because Army Regulation 635-200, paragraphs 2-6e(1) and (2), establish a policy of not separating Soldiers after a "duly constituted board" has recommended retention. Counsel emphasizes that an administrative separation board recommended the applicant "be retained." Yet he also asserts that, because the applicant was a "highly deserving Soldier," the board determined he should be given a "probation period." Counsel's description of events indicates the separation board and the separation authority acted pursuant to Army Regulation 635-200, paragraph 1-18. That paragraph provides "[t]he separation authority...may suspend... execution of an approved separation for a period...not to exceed 12 months" (Army Regulation 635-200, paragraph 1-18a, 19 December 2016). It is, therefore, not entirely clear that the board actually "retained" the applicant. Instead, it appears the separation authority approved the separation but suspended its execution for 12 months. Irrespective of how the applicant ultimately remained in the Army, the applicant's argument suffers from the same defects as his administrative double jeopardy argument. The plain language of the provisions to which the applicant cites (Army Regulation 635-200, paragraphs 2-6e(1) and (2)) indicates that Army separation authorities are, in fact, permitted to forward appropriate cases for Secretarial action even after a separation board has recommended retention. Consequently, and contrary to the applicant's assertions, the regulation does not entirely foreclose Secretarial action to separate a Soldier, even after a board recommends retaining that Soldier. Like the portion of Army Regulation 635-200 the applicant cited in his administrative double jeopardy argument, the Army directive at issue postdates the provisions contained in paragraph 2-6. One can reasonably presume, therefore, that the Secretary intended for sex-offending Soldiers to have their cases forwarded for Secretarial separation consideration in appropriate cases despite the fact that their cases already had been considered at an administrative proceeding. Thus, the ASA (M&RA)'s decision relative to the applicant was not erroneous, improper, or unjust in this regard.

3. Counsel next argues the ASA (M&RA)'s decision violated an unspecified statute of limitations and/or laches. Counsel has not articulated which statute of limitations was violated and this Board is unaware of an applicable statute of limitations that would bar the ASA (M&RA)'s action. Consequently, the Board finds no error or injustice relative to any statute of limitations. The doctrine of

000030

laches is a defense to an equitable cause of action and bars recovery by the plaintiff because of the plaintiff's undue delay in seeking relief. Because the doctrine applies only in cases founded in equity, it is not strictly applicable to the applicant's case. To the extent the applicant argues that it is unfair for the ASA (M&RA) to take action just prior to his retirement, it should be noted that Army Directive 2013-21 was not issued until 7 November 2013. The ASA (M&RA) took action in accordance with her directive on 16 June 2015. In the intervening months, the applicant's separation paperwork worked its way up to the ASA (M&RA)'s level for her action. The evidence of record indicates no unusually dilatory periods of delay occurred during that time. Nor has the applicant articulated how his case was prejudiced by the ASA (M&RA)'s inaction during the intervening period. As for the period of time between 2004 (the year the applicant was convicted of the sex offense) and 2013 (the date the Secretary of the Army directed that sex-offending Soldiers still on active duty will be processed for Secretarial authority separation), it is clear that during this period of time the Secretary of the Army decided to review the propriety of permitting to remain in the Army those Soldiers who had been convicted of sex offenses. The applicant was one of those Soldiers. In accordance with the new directive, the applicant's case was forwarded to the ASA (M&RA) for her consideration. The ASA (M&RA)'s action did not violate any statute of limitations and did not violate the doctrine of laches. On the contrary, the Secretary of the Army directive required the ASA (M&RA) to consider and act upon the applicant's case. Based upon all the evidence, including the evidence indicating the applicant's many years of service and evidence submitted by counsel, the ASA (M&RA) ultimately determined it was "clearly in the best of the Army" to separate the applicant as stated in the memorandum, dated 16 June 2015, subject: Separation under Army Regulation 635-200, Paragraph 5-3 (Secretarial Plenary Authority) – (Applicant).

4. Counsel contends the action to separate the applicant is an "abuse of plenary discretion" because it violates "HQDA stated policy." Counsel's argument in this regard is somewhat circular because it is the Board's understanding that the Secretary of the Army is authorized to change Army (HQDA) policy as long it does not violate policies, regulations, or laws implemented by authorities superior to the Secretary of the Army (e.g., Congress, Department of Defense, etc.). As discussed previously, the ASA (M&RA)'s action might arguably have been objectionable relative to paragraph 1-17 of Army Regulation 635-200 had the Secretary of the Army not issued Directive 2013-21. But the Secretary of the Army did issue that directive. Consequently, it is difficult to ascertain how the Secretary of the Army abused his discretion or acted contrary to law by amending then-existing Army policy. To the extent Counsel argues the ASA (M&RA) abused her discretion, the evidence indicates she acted at the

000031

behest of and in accordance with Army Directive 2013-21. Consequently, the Board finds that the applicant has not demonstrated by a preponderance of evidence that either the Secretary of the Army or the ASA (M&RA) abused his or her discretion, acted arbitrarily, or acted contrary to law.

5. The applicant's counsel next cites Title 10, U.S. Code, section 1176, to argue the applicant is immune from separation because, at the time of his separation, he was within 2 years of qualifying for retirement.

   a. Section 1176 of Title 10 provides:

      A regular enlisted member who is selected to be involuntarily separated...and who on the date on which the member is to be discharged is within two years of qualifying for retirement...shall be retained on active duty until the member is qualified for retirement...unless the member is sooner retired or discharged under any other provision of law.

   b. Section 1141 of Title 10 defines "involuntarily separated" as "discharged under other than adverse conditions, as characterized by the Secretary concerned" (Title 10, U.S. Code section 1141(3)). The Code of Federal Regulations further provides that "[a] Service member is considered to be involuntarily separated if the member was involuntarily discharged or denied reenlistment under other-than-adverse conditions (e.g., force shaping) pursuant to Title 10, U.S. Code section 1141" (see Title 32, Code of Federal Regulations, section 88.1). These authorities indicate the sanctuary protection to which the applicant cites applies only if the Soldier is being separated under non-adverse circumstances, an example of which is "force shaping." Force shaping occurs when a military service reduces its force by involuntarily separating service members to meet targeted end-strength goals. Those separated by force-shaping measures often include service members who committed no misconduct and whose performance was otherwise commendable. To be clear, the applicant was not separated as the result of Army force-shaping. Nor can his separation be characterized as being under conditions that were not adverse. Indeed, he was separated as the result of a civilian conviction for felony child molestation. Consequently, the applicant's resort to the sanctuary provision of Title 10, U.S. Code, section 1176, is unavailing.

6. Counsel next asserts a miscellany of objections to Army Directive 2013-21 and ALARACT 035/2014. He argues the Secretary's directive and the ALARACT are the result of unlawful command influence, are ex post facto, are essentially bills of attainder because they "punish [the applicant] and his family without a

28

hearing," and otherwise violate "due process – all in violation of the United States Constitution." Counsel asserts the Secretary of the Army's decision to enact Army Directive 2013-21 and ALARACT 035/2014 were the result of command influence that is unlawful. As an initial matter, the Board is unsure that the doctrine of unlawful command influence applies outside the context of a court-martial, or that it is applicable to civilian personnel, such as the Secretary of the Army or the President. Whatever the case, the Board is unconvinced that the President exerted any influence, or that the Secretary himself was influenced, in any manner that was improper, inappropriate, or unlawful. According to counsel, the President (who is also Commander in Chief) expressed his concern about sexual offenders in the military. At a time subsequent, the Secretary of the Army issued Army Directive 2013-21. Both the President and the Secretary appeared to be carrying out the duties of their respective offices in an appropriate manner. Counsel has offered no evidence of impropriety or malfeasance. As for the Secretary's action being a "bill of attainder" or "ex post facto," it is the Board's understanding that these constitutional provisions apply only in the context of criminal law. The Secretary's action did not impose a finding of guilt, impose or increase a punishment, or enact any liberty or property deprivations. It merely required Army officials to reconsider the suitability for continued service of those Soldiers who had been convicted of sex crimes. The applicant's suitability for continued service was reassessed based upon his demonstrated proclivity for sexual misbehavior. Based upon that reassessment, it was determined his services were no longer required. He wasn't punished; he was merely separated. Consequently, counsel's reliance on these constitutional doctrines is misplaced.

7. Counsel asserts that Army Directive 2013-21 is void for being too vague and that the phrase "sex offense" is ambiguous and lacking in specificity. The Board disagrees. The Board interprets that phrase as meaning, at the very least, criminal offenses involving sex. The Board finds the phrase encompasses the criminal offenses to which the applicant pleaded guilty.

8. Counsel asserts the applicant's separation from the Army was unjust. The Board is sympathetic to the applicant's situation since he likely was motivated by the prospect of a military retirement when he decided during the latter years of his career to remain in the Army. The applicant, however, is not in an advantageous position to seek equitable relief. "He who seeks equity must do equity" and "one must come to equity with clean hands" are long-recognized precepts of equity. These general rules, of course, do not require an individual seeking equity to have an unblemished record. But it does appear to the Board that much of the applicant's predicament is due to his own misbehavior. It is indisputable that the applicant was convicted of a serious sex offense. Such

29

000033

misconduct by service members in turn forces government officials, such as the Secretary of the Army, to make difficult decisions. Should the offender be permitted to remain a Soldier due to his military skills and years of service? Or should he be considered for separation from the Army to better maintain military discipline and cohesion, and to ensure the safety of his fellow service members? Had he not engaged in serious misconduct (misconduct which involved a child victim) the applicant would not be in the situation he is. Equity is, therefore, not served by providing the remedy the applicant seeks. Consequently, the Board finds the applicant has not demonstrated by a preponderance of evidence that equitable relief is warranted.

9. Lastly, counsel requests the applicant's order to active duty to provide him with a comprehensive medical evaluation for purposes of a medical retirement. Records indicate the applicant was provided a complete medical examination in June 2014 prior to his discharge and was found medically qualified for service/ retention/retirement. There is no indication he was diagnosed with a condition that failed retention standards and/or was unfitting, or was diagnosed with a medical condition that warranted his entry into the Army PDES.

//NOTHING FOLLOWS//



# John N. Maher
## LEGAL SERVICES

February 7, 2017

Via Electronic Portal

Department of the Army
Army Board for Correction of Military Records
251 18th Street South, Suite 385
Arlington, Virginia 22202-3531

Re: Cover Letter – Staff Sergeant (SSG) Damon Claiborne

Dear Mr. President and Members of the Board:

1. <u>Purpose</u>. As SSG Claiborne's duly authorized legal representative, I write to respectfully request that the Board consider the injustice which resulted from the Secretary of the Army's having discharged SSG Claiborne at his 19th year and third month of active service for misconduct which occurred and had been addressed over twelve (12) years ago, which unjustly deprived SSG Claiborne and his family of retired pay and benefits.

2. <u>Factual Background</u>. In 2005, then Specialist (SPC) Claiborne was convicted in the state of Washington for an offense with a 5' 10" female who told him she was 19. Having met in a bowling alley bar, it turns out she was a minor. When released from civilian incarceration, an Army separation board convened pursuant to Army Regulation (AR) 635-200, Chapter 14, heard the evidence, and recommended then SPC Claiborne be retained in service. Already a veteran of *Operation Desert Shield-Desert Storm* at the time, the Board observed that SPC Claiborne was a highly deserving Soldier who should be given a probation period to show successful rehabilitation. The I Corps separation authority agreed and retained SPC Claiborne.

From that point onward, SPC Claiborne successfully completed the probationary period, was promoted to Sergeant (SGT) E-5, to Staff Sergeant (SSG) E-6, deployed to Iraq, Afghanistan, Kosovo, Korea, Kuwait, and Germany. He received individual awards, campaign ribbons, and certificates of achievement. He re-enlisted several times, his last in 2010 under the REDUX program which guaranteed him service through his 20th year. The father of eight (8) children, his record since the 2004 offense was and is unblemished. In other words, there was no "new" misconduct in his military or civilian records to support a "new" separation action.

With approved retirement orders in hand, the Army, however, returned SSG Claiborne early from Korea and began processing him for separation for the very same 2004 offense – the conviction for which he was already retained under AR 635-200. This time, however, the chapter was not under 14, rather, the Secretary of the Army's plenary authority found in ¶ 5-3. With respect, we believe an injustice occurred with SSG Claiborne's premature discharge which deprived him and his family of his combat-earned retired pay. The injustice is comprised of the following:

17101 South 71st Avenue
Tinley Park Illinois, 60477 USA

T: (708) 468-8155
F: (708) 781-9693

www.maherlegalservices.com

a. <u>Administrative Double Jeopardy</u>. The Army violated AR 635-200, ¶ 1-17(b)(3) (separation normally should not be based on conduct that has already been considered at an administrative proceeding and the soldier was retained); SSG Claiborne's conduct was already considered at an administrative proceeding and he was retained. Thus, the Army did not follow its own regulations;

b. <u>Improper Overturning of Previous Board</u>. The Army violated AR 635-200, ¶¶ 2-6(e)(1) and (2) because it is the policy of the HQDA not to direct separation per ¶ 5-3 when a duly constituted board has recommended retention. The Secretary's decision wrongfully reversed the Board's and the separation authority's determinations to retain. Thus, the Army again did not follow its own regulations and stated HQDA policy;

c. <u>Statute of Limitations and/or Laches</u>. The basis for the Secretary's discharge decision is conduct which occurred in 2004, over twelve (12) years ago, beyond any applicable administrative statute of limitations. Thus, the Army again did not follow its own regulations and policies;

d. <u>Abuse of Plenary Discretion</u>. The Secretary's reliance on ¶ 5-3 overturns a twelve (12) year-old board decision, which is an abuse of discretion because it violates HQDA stated policy. Courts regularly set aside agency actions, findings, and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A decision is arbitrary and capricious if it is not based upon relevant factors, lacks a rational basis, or represents a clear error in judgment. *McIntyre v. United States,* 30 Fed. Cl. 207, 213 (1993).

Here, there is significant evidence that the Army failed to comply with its own administrative procedures. Chapter 1-17 clarifies that separation does not *normally* occur for conduct already considered. (Emphasis added). Use of "normally" suggests that there may be times when separation may rightly occur. Speaking to those instances, Chapter 1-17 delineates those specific circumstances where separation may be considered again. The exceptions to the Army's double jeopardy bar are three, none of which applies here: a) subsequent conduct or performance forms the basis for a new proceeding; b) the discovery of fraud or collusion not known at the time of the original proceeding; and c) the discovery of substantial new evidence not known at the time of the original proceeding. Chapter 1-17(b)(3)(a)(b) and (c). That "separation normally should not" be undertaken twice is the general rule and the Army set forth those exceptions to the general rule. None of those exceptions applies to SSG Claiborne's case.

Second, the Army interpreted ¶ 5-3a's plenary authority too expansively:

> Separation under this paragraph is the prerogative of the Secretary of the Army. Secretarial plenary separation authority is exercised sparingly and seldom delegated. Ordinarily, it is used when no other provision of this regulation applies, and early separation is clearly in the best interest of the Army. Separations under this paragraph are effective only if approved in writing by the Secretary



of the Army or the Secretary's approved designee as announced in
updated memorandums.

AR 635-200, Chapter 5-3a.

The Army's interpretation goes too far. Absent in the language are words like
"unfettered," or "complete" or "beyond review" pertaining to the "prerogative" of the Secretary.
Thus, the prerogative language can and should be viewed as discretionary, and, application of the
*Administrative Procedures Act* shows that the Secretary abused the discretion found in ¶ 5-3.

There are several conclusions leading to the separation decision which are not based upon
relevant factors, lack a rational basis, or represents a clear error in judgment. For example, the
plain language of ¶ 5-3a states that plenary authority is used when "no other provision of this
regulation applies." Chapter 1-17 is a provision of the regulation and it applies. That is, 1-17
cannot be read out of the regulation. Nor can ¶¶ 2-6(e)(1) and (2) be read out of the regulation.

The entire regulation, AR 635-200, is premised upon the idea of early separations before
enlistments or terms of obligated service expire. Paragraph 5-3a itself states that the Secretary
must determine if "early separation" is "*clearly* in the best interest of the Army." Here, the Army
ignored, refused to acknowledge, or underappreciated facts that show the decision is not "clearly
in the best interest of the Army." Several times prior to this filing, efforts were made to present
the legal and equitable facts to the Army's decision-makers to no avail. Where the Army subjects
a non-commissioned officer with nearly 20-years of active service in several combat theaters to
administrative double jeopardy and takes his livelihood and retirement at the 11th hour, it stands
to reason that some Americans will not receive that decision warmly. It also stands to reason that
some soldiers will not take kindly to the Army's treatment of SSG Claiborne.

What is more, the discharge and associated loss of retired benefits is the third time SSG
Claiborne was punished for the twelve (12) year-old offense (incarceration, 2006 Board, 2015
discharge). The Court in *Crane v. Secretary of the Army*, 92 F. Supp. 2d 155 (W.D.N.Y. 2000),
reviewed the Army's discharge decision under the *Administrative Procedures Act*, found that the
Army did not comply with its own administrative procedures and that the discharge was not
supported by substantial evidence. The court set aside the Army's discharge decision, reinstated
the discharged officer, and restored him to all duties, responsibilities, and privileges earned by
him prior to his discharge. *Crane*, 92 F. Supp. 2d at 167-68.

The Army's failure to follow its own regulations, misapplications and misinterpretations,
coupled with its decision to punish SSG Claiborne a third time shows that the Secretary's
decision is arbitrary, capricious, not in accordance with law, and in violation of the
*Administrative Procedures Act*.

Over a dozen years ago, the Army cancelled then SPC Claiborne's separation and re-
enlisted him not once, but twice, with the promise of at least 20 years. Had the Army informed
him then that he would be separated for the same conduct a decade later, albeit after risking his
life repeatedly in combat zones, only to be denied retirement benefits, there may have been other
decisions made which are now forever lost. This type of governmental action cannot be



consistent with American due process, especially the harsh consequence of losing retired pay by application of a third punishment for a single twelve (12) year-old act.

e. <u>Sanctuary Program Violation</u>. SSG Claiborne had over eighteen (18) years of service and was thus vested under the Sanctuary program pursuant to 10 U.S.C. § 1176, which states in relevant part, "[a] regular enlisted member who is selected to be involuntarily separated within two years of qualifying for retirement shall be retained on active duty until the member is qualified for retirement;"

f. <u>Additional Constitutional Violations</u>. Army Directive 2013-21 and ALARACT 035/2014 are unlawful because they are based on Unlawful Command Influence, are *Ex-Post Facto*, amount to a Bill of Attainder (punishing SSG Claiborne and his family without a hearing), and violate Due Process – all in violation of the United States Constitution;

g. <u>Unlawful Command Influence</u>. Army Directive 2013-21 was published in November 2013, only six (6) months after the President, as Commander-in-Chief, stated, "[t]he bottom line is: I have no tolerance for this…I expect consequences…So I don't just want more speeches or awareness programs or training, but ultimately folks look the other way. If we find out somebody's engaging in this, they've got to be held accountable – prosecuted, stripped of their positions, court-martialed, fired, dishonorably discharged. Period;"

h. *Ex-Post Facto*. The United States Constitution states at Article 1, Section 9, Clause 3 that, "[n]o … *Ex Post Facto* law shall be passed." An *ex post facto* rule is generally considered unethical and unfair because a person has no forward notice of the rule and cannot himself retroactively change his conduct. The November 2013 Army Directive states that it is a "new policy" that applies retroactively to all sex crime convictions. *Miller v. Florida*, 482 U.S. 423 (1987) (application of the revised guidelines to petitioner, whose crimes occurred before the law's effective date, violates the *ex post facto* clause of the US Constitution). The denial of further service, career, pay, and retired pay and benefits is "add on" retroactive *ex post facto* administrative double jeopardy punishment today for an offense dating back to 2004 – in essence, a third unanticipated and unforeseen punishment over a decade later. The Secretary of the Army violates his oath of office to support and defend the Constitution by enforcing an *ex post facto* rule;

i. <u>The Secretary of the Army Does Not Have the Authority to Enact Retroactive Rules</u>. The United States Supreme Court held that an administrative agency's power to promulgate regulations is limited to the authority delegated to it by Congress. Statutory grants of rulemaking authority are not understood to encompass the power to enforce retroactive rules unless that authority is specifically granted. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988);

Staff Sergeant Claiborne's conviction was in 2005 for conduct in 2004. He was retained by a duly constituted Army separation board and separation authority in 2006. He could not have anticipated a directive a decade later which would reach back in time to end his career and sever his valuable retirement and benefits. It is therefore unjust to punish him by stripping away his career where he was on the verge of retirement, for behavior which he cannot change and which the Army condoned by retaining, deploying, promoting, and re-enlisting him.



**000038**

j. <u>Bill of Attainder</u>. The US Constitution provides that "[n]o bill of attainder … shall be passed." Article 1, Section 9, Clause 3. Although AR 635-200 provides due process, AD 2013-21 and related rules are unlawful bills of attainder because they deny these constitutional protections. A bill of attainder is a rule that finds a person guilty or otherwise punishes him without the benefits of due process, often, like here, *ex post facto*. The US Supreme Court has held that bills of attainder are unconstitutional. *United States v. Lovett*, 328 U.S. 303 (1946). Here, the AD and related rules punish SSG Claiborne without a hearing and accordingly, the Secretary of the Army violates his oath of office when he authorized a bill of attainder against SSG Claiborne.

k. <u>Due Process</u>. The AD at issue is void for being too vague. The terms "sex offense" is ambiguous and lacking in specificity. The terms are not defined in the AD itself;

l. <u>Injustice</u>. In light of SSG Claiborne's having paid his debt to society over eleven years ago, completed probation, being retained, re-enlistments, promotions, deployments, awards, decorations, ribbons, and good conduct, this action is an injustice to strip him of his identity, career, and retired pay and benefits, critical to his family's survival, as a third punishment.

The Army slammed down the proverbial ticket window just as he reached the ticket agent after having stood in line for two decades and risked his life in Saudi Arabia, Kuwait, Iraq, Kosovo, and Afghanistan. The Army thought he was good enough for war, and kept him for those deployments. But when near the retirement goal, the Army found something it had already determined insufficient for separation 12 years ago to denigrate his contributions, devalue his service, and raze his well-being into the future.

He, his wife, and eight dependent children lost the financial support of his projected retirement, which, at present rates, is 40% of his current active duty pay per month until his death. As an E-6 with 20 years of service, SSG Claiborne's basic pay was approximately $3724 per month. In today's dollars, he and his family will lose approximately $1500 per month, each month, for every year until SSG Claiborne's demise. Presently 45 years old, where he to live until 75, another 30 years, he and his family will lose approximately $554,131 in today's dollars, not to mention COLA and associated military benefits. Upon SSG Claiborne's demise, his wife would normally receive a reduced percentage of his full retirement benefit until her demise pursuant to the Survivor Benefit Plan. The Army arbitrarily took all of that away with the Secretary's unlawful abuse of discretion pursuant to ¶ 5-3;

m. <u>The Secretary Sent A Message Against the Best Interest of the Army</u>. Our volunteer force, and the families of soldiers who already endure great hardships, must be able to trust that the Army will honor its word and properly apply regulations in fairness, especially when it comes to something as monumental in people's lives and retirement benefits.

Our Nation was founded upon principles of fair play, due process, and equal treatment. It is fair to say that a significant portion of our country values service members generally and holds combat veterans in even higher regard. And, a good number of Americans would tell you that they favor the underdog and he/she who made a mistake but made good on it with responsibility, accountability, and subsequent good works.



These people would likely be surprised to learn of the Army's treatment of SSG Claiborne and disappointed in the imperfect and apparently impersonal manner with which the Army has sought to end his two-decade long career.

What is more, soldiers themselves, Active, Reserve, National Guard, or on the retired list, and the thousands of veterans of Iraq and Afghanistan, would likely cringe upon learning that "Washington cut a Staff Sergeant with 20 loose," after letting him "soldier on" from his mistake for a decade and serve the Army and the Nation in repeated combat tours. The public interest, and frankly, the Army's interest whether it admits it or not, is served by correcting this injustice.

3. <u>Conclusion</u>. In summary, the Secretary's use of ¶ 5-3 plenary authority to discharge SSG Claiborne when he had approved retirement orders is an injustice that should be corrected. The Secretary's action violates several provisions of AR 635-200, is administrative double jeopardy, unlawfully overturns a duly constituted board recommendation and a separation authority's retention decision, and violates the *Ex Post Facto*, Bill of Attainder, and Due Process clauses of the United States Constitution, all a result of unlawful command influence which in this instance, unfairly and unjustly deprived a combat veteran non-commissioned officer of his career and identity, and placed his family's survival in jeopardy.

For these reasons, we respectfully request that the Board direct SSG Claiborne to the retired rolls and award all back and front pay and benefits. Alternatively, we respectfully request that the Board order SSG Claiborne to active duty to complete the seven (7) months required to achieve 20-years service, or, for a comprehensive medical evaluation for purposes of a medical retirement.

In addition to the matters presented above, please consider the supporting documentation submitted via the Board's Web Portal.

Respectfully submitted,

// original signed //

JOHN N. MAHER
Counsel for SSG Damon Claiborne



7 February 2017

Application Identification Number



PB51626

I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the information that I provided is true and correct.

Submitter: Maher, John N

Applicant: CLAIBORNE, DAMON Jahron
Applicant Social Security: Redacted PII
Applicant Military Service Number:

Application Bar Code Number: PB51626
Application Type: DD293 Discharge Review

(Signature Required)

(Print Name)              *Claiborne, Damon Jahron*

Mailing Instructions:

1. Attach your supporting documents and evidence to this signature page, sign this signature page, and send to:

   Army Review Boards Agency
   Case Management System
   251 18th Street South, Suite 385
   Arlington, VA 22202-3531

2. If this signature page is not received in the mail within 30 days, your application will be automatically deactivated.

3. Keep a copy of this signature page for your records. Refer to the Application Identification (ID) Number if you make inquiries about this application. You will be notified by email of receipt of this page and attached supporting documents. Please ensure that your email program and SPAM filter will accept email from 'usarmy.pentagon.hqda-arba.mbx.acts@mail.mil'.

*If you are not the applicant and submitting an application on behalf of the applicant, please provide the appropriate documentation supporting your relationship to the applicant (death certificate or power of attorney and proof of relationship).

000041

7 February 2017



I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the information that I provided is true and correct.

| | |
|---|---|
| Submitter: | Maher, John N |
| | |
| Applicant: | CLAIBORNE, DAMON Jahron |
| Applicant Social Security: | Redacted PII |
| Applicant Military Service Number: | |
| | |
| Application Bar Code Number: | PB51626 |
| Application Type: | DD293 Discharge Review |

(Signature Required)

(Print Name)        Damon J. Claiborne

Mailing Instructions:

1. Attach your supporting documents and evidence to this signature page, sign this signature page, and send to:

   Army Review Boards Agency
   Case Management System
   251 18th Street South, Suite 385
   Arlington, VA 22202-3531

2. If this signature page is not received in the mail within 30 days, your application will be automatically deactivated.

3. Keep a copy of this signature page for your records. Refere to the Application Identification (ID) Number if you make inquiries about this application. You will be notified by email of receipt of this page and attached supporting documents. Please ensure that your email program and SPAM filter will accept email from 'usarmy.pentagon.hqda-arba.mbx.acts@mail.mil'.

"If you are not the applicant and submitting an application on behalf of the applicant, please provide the appropriate documentation supporting your relationship to the applicant (death certificate or power of attorney and proof of relationship).

000042



**DEPARTMENT OF THE ARMY**
ARMY DISCHARGE REVIEW BOARD
251 18TH STREET SOUTH, SUITE 385
ARLINGTON, VA 22202-3531

June 06, 2016

AR20150018688, Claiborne, Damon J.

Mr. John N. Maher, Esquire
Maher Legal Services P.C.
17101 South 71st Avenue
Tinley Park IL 60477

Dear Mr. Maher:

I am writing to you regarding the application of Mr. Damon J. Claiborne for a discharge upgrade from the U.S. Army.

After carefully reviewing the application, military records and all other available evidence, the Army Discharge Review Board determined that relief was warranted. Accordingly, the Board voted to grant relief as described in the enclosed Case Report and Directive. Please be advised, if the applicant was a U.S. Army National Guard Soldier at the time of discharge, the Adjutant General of the respective state/territory is the final approving authority.

Thank you for your interest in this matter.

Sincerely,

Gregory V. Stokes
Colonel, US Army
President

Enclosures

Printed on Recycled Paper

**000043**

Dana Mitchell, OSB No.114637
317 Court Street NE
Salem, Oregon  97301
Ph: (503) 508-6078
Fax: (503) 581-2260
E-mail: danamitchellpc@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
Portland Division

DAMON J. CLAIBORNE

                 Plaintiff,              Civil No.

   - versus -
                                   COMPLAINT

JOHN M. McHUGH,
Secretary of the Army,

                 Defendant.

## COMPLAINT

NOW comes Plaintiff, Damon J. Claiborne, U.S. Army (hereinafter "SSG Claiborne") in the above-captioned action through his attorneys against Defendant John M. McHugh Secretary of the Army in his official capacity (hereinafter "the Army") and alleges as follows:

### NATURE OF THE ACTION

1.     This is an *Administrative Procedure Act* action arising under 5 U.S.C. §701 asking the Court stop the Army from further processing SSG Claiborne for general discharge. This is also an action asking the Court to compel the Army pursuant to 28 U.S.C. §1391 (*mandamus*) to provide his wrongfully withheld 20 year active duty retirement.

2.     SSG Claiborne has served over 20 years active duty in the Army to include tours in

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

**000044**

hostile fire and combat zones like Saudi Arabia, Iraq, Kuwait, Kosovo, and Afghanistan.

3.   The Army published retirement orders on January 27, 2014 directing that SSG Claiborne be placed on the retired list effective January 31, 2015.

4.   In the interim, the Army suspended the approved retirement and instead began processing SSG Claiborne for administrative discharge pursuant to the Secretary of the Army's plenary authority.

5.   But the Army already processed him for separation for the very same conduct approximately 10 years ago.

6.   In 2006, the Army processed SSG Claiborne for discharge based on a civilian conviction in the state of Washington involving sexual assault.

7.   As a result of the 2006 administrative separation process, the Army retained him on active duty.

8.   The Army determined that SSG Claiborne was a "[a] highly deserving Soldier [who should be] given a probation period to show successful rehabilitation ..."

9.   SSG Claiborne successfully completed the 12-month probation period.

10.   Since 2006, SSG Claiborne has served in Iraq, Kosovo, Korea, and Afghanistan, has been promoted in rank and pay, given greater responsibility with promotion to lead and be responsible for soldiers, and reenlisted twice.

11.   There is no "new" misconduct to form the basis of the current separation.

12.   On July 1, 2015, the Army will separate SSG Claiborne with a general discharge: the harsh result being total loss of his retired pay and the stigma of discharge as opposed retirement.

13.   SSG Claiborne is married, responsible for eight dependent children, and delivers

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

**000045**

1    pizza for "Papa John's" after duty to help support his family.

2       14.    Presently 44 years old, he and his family stand to lose 31 years' worth of retired pay

3    assuming SSG Claiborne lives to 75, and, assuming his wife survives him, her reduced portion of

4    that amount pursuant to the Survivor Benefit Plan.

5       15.    The Army has wrongfully withheld SSG Claiborne's approved retirement by means

6    of misinterpreting and misapplying its own regulations.

7       16.    The Army's decision to discharge SSG Claiborne: (1) subjected him to

8    "administrative double jeopardy" in violation of the applicable Army regulation; (2) deprived

9
10   him of due process, (3) was arbitrary and capricious, and (4) was an abuse of the Secretary's

11   discretion.

12      17.    The Army's decision wrongfully deprives a soldier and his family of rightfully earned

13   retirement benefits, earned in part, by service in combat zones. This is no way to treat a soldier

14   who has done his duty, accounted for a decade-old mistake, and carried-on in with honor, loyalty

15   in combat, in dangerous service, and in keeping with the traditions of the Army.

16                              JURISDICTION AND VENUE

17
18      18.    This Court has federal question jurisdiction. 28 U.S.C. § 1331. This Court also has

19   jurisdiction over this matter pursuant to the *Administrative Procedure Act*, 5 U.S.C. § 701.

20   Section 702 provides a general waiver of sovereign immunity where an individual seeks review

21   of "agency action." A court may review a military discharge decision to determine if the decision

22   was arbitrary, capricious, in bad faith, unsupported by substantial evidence, or contrary to law,

23   regulation, or published procedure.  5 U.S.C. § 706(2)(A).

24      19.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(e). A substantial part of

25

26
                                            Dana M. Mitchell, P.C.
                                               *Attorney at Law*
     PAGE 3 OF 15 – COMPLAINT                 317 Court Street N.E.
     DAMON CLAIBORNE V. JOHN MCHUGH           Salem, Oregon 97301

the events or omissions giving rise to this claim occurred here and the Defendant, acting in his official capacity, is an officer of the United States. Divisional venue is proper in this district for the same reasons.

### THE PARTIES

20.     The Plaintiff SSG Claiborne is a resident of the state of Oregon. He lives in Salem, Oregon with his wife and children. He is on active duty in the U.S. Army and holds the rank of Staff Sergeant (SSG) or E-6.

21.     SSG Claiborne has served over twenty years of active duty and is a veteran of *Operations Desert Shield/Desert Storm*, Kosovo, and has served combat tours in *Operation Iraqi Freedom* and most recently in Afghanistan as part of *Operation Enduring Freedom*.

22.     Defendant John McHugh is the Secretary of the Army, and is sued in his official capacity only.

### THE FACTS

23.     SSG Claiborne has served honorably for more than twenty years which makes him eligible for active duty retired pay. Attached as Exhibit A and incorporated herein is a copy of the Army's January 6, 2014 approval of voluntary retirement.

24.     The Army published SSG Claiborne's retirement orders on January 27, 2014 noting that he would be "released from active duty" and "placed on the retirement list" effective January 31, 2015.

25.     The orders also states, "[t]he people of the United States express their thanks and gratitude for your faithful service. Your contributions to the defense of the United States of America are greatly appreciated." Attached as Exhibit B and incorporated herein is a copy of the

PAGE 4 OF 15 – COMPLAINT
DAMON CLAIBORNE v. JOHN MCHUGH

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

000047

Army's January 27, 2014 approved and published retirement orders.

26.    Because of a 10-year old civilian conviction that SSG Claiborne self-reported pursuant to an order from the Secretary, the Army suspended SSG Claiborne's approved retirement on November 25, 2014, two months before he was scheduled to retire, and held him past his approved retirement date of January 31, 2015. Attached as Exhibit C and incorporated herein is a copy of the November 25, 2014 memorandum suspending SSG Claiborne's approved retirement.

27.    Based on the 2005 civilian conviction, the Army did not court-martial SSG Claiborne, but instead, processed him in 2005 for administrative separation pursuant to the controlling regulation, *Active Duty Enlisted Separations*, Army Regulation (AR) 635-200.

28.    Already a veteran of *Operations Desert Shield and Desert Storm* at the time, SSG Claiborne's chain-of-command determined that he was "a highly deserving Soldier that should be given a probation period to show successful rehabilitation." AR 635-200, Chapter 1-18a.

29.    Consequently, the Commanding General of I Corps and Fort Lewis, Washington in his capacity as the "separation authority" determined to retain SSG Claiborne on active duty in the U.S. Army. Attached as Exhibit D and incorporated herein is a copy of Brigadier General Oscar B. Hilman's decision to retain SSG Claiborne.

30.    Since 2006, SSG Claiborne has served honorably with deployments to Kosovo, Iraq, Korea, and Afghanistan, as well as his having been promoted in rank and pay and re-enlisted twice. Attached as Exhibit E and incorporated herein is a copy of SSG Claiborne's most recent Enlisted Record Brief.

31.    Now, nearly 10 years later, the Army is again processing SSG Claiborne for

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

000048

1    administrative separation based on the very same conduct for which he was processed in 2006.

2        32.    There are no "new" facts that may otherwise justify a "new" separation action.

3    Attached as Exhibit F is Assistant Secretary of the Army for Manpower and Reserve Affairs

4    Debra S. Wada's June 16, 2015 memorandum informing SSG Claiborne of his separation with a

5    General under Honorable Conditions Discharge.

6        33.    As Assistant Secretary Wada's memorandum notes, the instant separation is based on

7    AR 635-200, Chapter 5-3a, which is reproduced here in full:

8
            Separation under this paragraph is the prerogative of the Secretary
9           of the Army. Secretarial plenary separation authority is exercised
            sparingly and seldom delegated. Ordinarily, it is used when no
10          other provision of this regulation applies, and early separation is
            clearly in the best interest of the Army. Separations under this
11          paragraph are effective only if approved in writing by the Secretary
            of the Army or the Secretary's approved designee as announced in
12          updated memorandums.

13

14       34.    The same regulation, AR 635-200, Chapter 1-17b, however, states that: "[s]eparation

15   per this regulation normally should not be based on conduct that has already been considered at

16   an administrative or judicial proceeding and disposed of in a manner indicating that separation

17
     was not warranted."
18

19       35.    The rationale is for Chapter 1-17 is to avoid "administrative double jeopardy."

20       36.    Chapter 1-17b (3) goes further and uses mandatory language that, "[n]o soldier will

21   be considered for separation because of conduct that ... [h]as been the subject of an

22   administrative separation proceeding resulting in a final determination by a separation authority

23   that the Soldier should be retained."

24       37.    In 2006, SSG Claiborne was the "subject of an administrative separation proceeding

25

26                                                          Dana M. Mitchell, P.C.
                                                            *Attorney at Law*

000049

resulting in a final determination by a separation authority that [he] should be retained."

38.     The Army's 2015 discharge decision based on the identical 2006 issue violates administrative double jeopardy.

39:     Chapter 5-3a itself states that the Secretarial plenary authority is used "sparingly," "when no other provision of this regulation applies," and *early* separation is *clearly* in the best interest of the Army." (Emphasis added).

40.     Chapter 1-17b is a provision of this regulation and applies.

41.     Chapter 1-17b counsels against processing a soldier for separation twice based on the same conduct, that is, to preclude "administrative double jeopardy."

42.     This is not an *early* separation as required under Chapter 5-3a. SSG Claiborne's original retirement date was January 31, 2015.

43.     The Army suspended his approved retirement and kept him, that is, held him beyond that retirement from active duty date to process him.

44.     Separation is not *clearly* in the best interest of the Army.

45.     The Army is not following its own procedural rules.

46.     The Army has not articulated a rational basis connected to a legitimate interest in holding this soldier past retirement, then processing him based on a stale conviction for which he was already processed and retained, the result of which is the total loss of his retirement.

47.     Some might look poorly on the Army for this decision regarding this particular soldier.

48.     The Army's decision is to separate SSG Claiborne with a "General" discharge.

49.     AR 635-200, Chapter 3-5(e)(2) states in part that, "[t]he characterization of service

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

000050

1    will be determined solely by the military record during the current enlistment or period of

2    service, plus any extension thereof, from which the Soldier is being separated."

3    50.    SSG Claiborne re-enlisted twice following retention at a separation board a decade

4    ago.

5    51.    SSG Claiborne's military record his last enlistment in 2010 has been honorable.

6    52.    AR 635-200, Chapter 3-5(e)(2), if properly applied to SSG Claiborne's record, results

7    in a characterization of service as "Honorable."

8    53.    SSG Claiborne's last re-enlistment was in 2010 as part of the Army's REDUX

9    program.

10

11    54.    Pursuant to his REDUX program, SSG Claiborne, in exchange for his service,

12    received the Army's promise to, among other things, allow his service to at least 20 years for the

13    purposes of retirement.

14    55.    The Army agreed to the terms of SSG Claiborne's 2010 reenlistment as part of the

15    REDUX program taking him to the 20-year mark, years after his civilian conviction,

16    determination to retain him, and his successful completion of the probation period.

17

18    56.    The Army has dishonored the agreement by failing to retire.

19    57.    The Army's misapplications of its own regulation are arbitrary, capricious, not in

20    accordance with law, and an affront to the trust the American people have reposed in military

21    leaders to respect those who have placed their lives on the line to defend our Nation.

22    58.    Attempting to bring these administrative due process errors to the appropriate Army

23    decision-makers, on June 17, 2015, counsel for SSG Claiborne wrote Mr. Julian Edmonson,

24    noted in Assistant Secretary Wada's June 16, 2015 memorandum as the point-of-contact.

25

26

PAGE 8 OF 15 – COMPLAINT
DAMON CLAIBORNE V. JOHN MCHUGH

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

000051

59.     Despite several e-mails, voice mails, and letters, Mr. Edmonson, presently the Deputy Chief-of-Staff for the Army's G-1 (Personnel), has not responded. Attached as Exhibit G is counsel's June 17, 2015 letter and attachment to Mr. Julian Edmonson explaining that this separation does not comply with the Agency's regulation and sends the wrong message to soldiers and the American people.

60.     After these attempts to communicate with Mr. Julian Edmonson as the point-of-contact noted for this action, on June 22, 2015, counsel for SSG Claiborne contacted Assistant Secretary Wada directly via e-mail, noted the unsuccessful attempts to reach Mr. Edmonson, and requested acknowledgment that no action would be taken without considering SSG Claiborne's legal concerns. The entire substance of that June 22, 2015 email to Assistant Secretary Wada is reproduced here:

> Dear Secretary Wada –
> I write to follow-up on the attached [June 17, 2015 letter and exhibit] sent to Mr. Julian Edmonson last week. In an abundance of caution, I write to you merely to seek confirmation that the below and its attachments were indeed received. To date, despite a couple of messages seeking confirmation, to date, none has been forthcoming. Hoping to avoid any action taken without the benefit of the below and its attachments, would you please be so kind to let us know this important matter has been received on your end?

61.     Because no response was forthcoming, between June 22 and 25, 2015 counsel for SSG Claiborne left voicemails for attorneys within the Army's Office of the General Counsel, Personnel Law Branch at the Pentagon, the Army's Litigation Division on Fort Belvoir, Virginia, and with Assistant Secretary Wada's office.

62.     On June 24, 2015, SSG Claiborne received orders directing him for transition processing with an effective date of separation July 1, 2015. Attached as Exhibit H and

PAGE 9 OF 15 – COMPLAINT
DAMON CLAIBORNE V. JOHN MCHUGH

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

000052

incorporated herein is a copy of the June 24, 2015 orders.

63. Since that time, for unexplained reasons, the Army has assigned a soldier senior to SSG Claiborne to escort him around Post.

64. SSG Claiborne and his family stand to lose the retirement he spent over 20 years earning, in four different combat zones, because the Army is not following and/or misinterpreting its own regulation.

65. Before filing this action, counsel again wrote Assistant Secretary of the Army for Manpower and Reserve Affairs, Debra S. Wada and Mr. Julian Edmonson. Attached as Exhibit I is counsel's June 25, 2015 letter.

66. To date, neither Mr. Edmonson nor Assistant Secretary Wada, the officials responsible for this action, has responded to the reasonable and repeated requests made on behalf of a non-commissioned officer who served our nation in harm's way overseas multiple times.

67. However, on June 26, 2015, US Army Colonel Michael Miller, in his capacity as the Executive Officer to the Assistant Secretary of the Army for Manpower and Reserve Affairs sent the following email:

> Dear Mr. Maher:
>
> As you know, your client SSG Damon Claiborne has been discharged from the U.S. Army. That decision is administratively final.

68. Colonel Miller's message is not correct. Exhibit H states that SSG Claiborne's proposed discharge is effective July 1, 2015.

69. Colonel Miller then proceeded in his June 26, 2015 email to suggest that SSG Claiborne file an Application for Correction of Military Records before the Army Board for the

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

**000053**

Correction of Military Records.

> If your client believes his discharge was in error or unjust, he may apply to the Army Board for Correction of Military Records (ABCMR). More information about the ABCMR, as well as the DD 149, Application for Correction of Military Records, can be found online at http://arba.army.pentagon.mil

70.   This information is misleading because SSG Claiborne remains on active duty.

71.   That the Executive Officer to the Assistant Secretary of the Army for Manpower and Reserve Affairs would tender incorrect and misleading information to legal counsel, after the actual officials declined to respond at all, underscores the lack of attention and care Army leadership has paid to properly applying its regulations when all but ruining a 20-year soldier and his family.

72.   The Army's reluctance or refusal to acknowledge and/or consider these important matters as presented by counsel, pre-filing, is arbitrary, capricious, and in violation of due process.

## COUNT I

### *(Administrative Procedure Act)*

73.   SSG Claiborne reincorporates by reference the contents of the foregoing paragraphs, and further states:

74.   The Army's decision is judicially reviewable based on 5 U.S.C. § 702's waiver of sovereign immunity and because there are sufficient standards against which this court may rightly judge the Army's decision.

75.   Defendant's failure to follow his own regulations, including but not limited to the

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

000054

following, are legal wrongs against SSG Claiborne entitling him to judicial review under the *Administrative Procedure Act,* 5 U.S.C. § 702;

    a.  violating the "administrative double jeopardy bar" contained in AR 635-200, Chapter 1-17;

    b.  misapplying the Secretary's plenary authority in AR 635-200, 5-3a to override the prohibition against "administrative double jeopardy";

    c.  determining that holding a soldier beyond his previously approved retirement date and suspending published retirement orders to administratively process him constitutes *early* separation;

    d.  determining that processing SSG Claiborne for the very same conduct for which he was already processed 10 years ago and now stands to lose his retired pay is *clearly* in the best interest of the Army where this decision lowers the public's confidence that Army leaders treat soldiers generally and combat veterans specifically with fairness, dignity, and in accordance with law and due process; and

    e.  declining to consider meritorious legal and equitable information counseling against discharge presented to decision-makers prior to this action.

76.    It is well-settled that an Agency's conclusions are not entitled to judicial deference when it fails to follow its own regulations.

77.    It is equally well-settled that an Agency's conclusions are subject to judicial review and correction where the result of the decision is counterproductive, contrary to fundamental fairness and due process, and irrational.

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

000055

## COUNT II

### (*Mandamus* - 28 USCS § 1361)

78.     SSG Claiborne reincorporates by reference the contents of the foregoing paragraphs, and further states:

79.     10 U.S.C. § 3914 states in relevant part that "[u]nder regulations to be prescribed by the Secretary of the Army, an enlisted member of the Army who has at least 20, but less than 30, years of service … may, upon his request, be retired."

80.     SSG Claiborne's voluntary request to be retired was granted on January 27, 2014 with an effective date of January 31, 2015.

81.     The Army unilaterally suspended his approved and published retirement orders approximately two months before the effective date of transfer to the retired list.

82.     The regulation the Secretary prescribed is AR 635-200, Chapter 12.

83.     For the reasons set forth above, the Army has repeatedly misinterpreted and misapplied its applicable regulation to SSG Claiborne resulting in the Army's withholding of his transfer to the retired list.

84.     28 USC § 1361 states that, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

85.     This Court should compel the Army to transfer SSG Claiborne to the retired list as the prerequisites have been fulfilled.

///

///

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

000056

## PRAYER FOR RELIEF

WHEREFORE, SSG Damon J. Claiborne prays for the following:

1. That the Court enter judgment for him against Defendant:

    a. Enjoining the Army from continuing this separation and setting aside the Army's decision;

    b. Compelling the Army to transfer SSG Claiborne to the retired list with an effective date to be determined given his creditable service;

    c. Determining that the Secretary's plenary authority under Chapter 5-3a does not trump Chapter 1-17b's prohibition against administrative double jeopardy where soldiers have been issued retirement orders;

    d. Determining that the Secretary's plenary authority under Chapter 5-3a does not trump Chapter 1-17b's prohibition against administrative double jeopardy on the facts of this specific case;

    e. Determining that the Secretary's plenary authority under Chapter 5-3a is limited by its own language to "early" separations; and

    f. Determining that on the facts of this case, it is not "clearly in the best interest of the Army" to separate SSG Claiborne;

    g. Awarding to SSG Claiborne, against Defendant, payment of all of his costs and attorney fees incurred in this action; and

    h. Issue any other legal or equitable relief to which this Court deems proper.

DATED this 29th day of June, 2015.

Respectfully submitted,

/s/ John N. Maher

John N. Maher, Illinois Bar No. 6237599
*Of Attorneys for Plaintiff*

/s/ Dana M. Mitchell

Dana M. Mitchell, OSB No.114637
*Of Attorneys for Plaintiff*

/s/ Lisa D. Wright

Lisa Wright, OSB No. 125021
*Of Attorneys for Plaintiff*

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

**000057**

1
2
3
4
5
6

**OUT-OF-STATE COUNSEL:**
JOHN N. MAHER
Illinois Bar - 6237599
MAHER LEGAL SERVICES, P.C.
17101 71st Street
Tinley Park, Illinois 60477
Ph: (312) 804-9912
johnmaher@maherlegalservices.com

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**OF COUNSEL:**
Lisa D. Wright
495 State St., Ste. 500
Salem, Oregon 97301
Ph: (503) 580-5303
lisa@wrightattorneyatlaw.com

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

**000058**

# EXHIBIT-A



**DEPARTMENT OF THE ARMY**
US ARMY INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, US ARMY GARRISON-YONGSAN
UNIT 15333
APO AP 96205-5333

IMYN-ZA                                                          6 January 2014

MEMORANDUM FOR USAG-Yongsan Transition Center, Unit # 15742, APO AP 96205-5742

SUBJECT: Application for Voluntary Retirement – Claiborne, Damon J., ▉Redacted PII▉ SSG, 92F30

1. The request for voluntary retirement submitted by, SSG Claiborne, Damon J. is approved. SSG Claiborne has completed 20 years of active federal service.

2. The soldier must initiate Army Career and Alumni Program (ACAP) services as soon as possible. Public Law mandates that the Soldier receive the required Pre-separation Counseling (DD Form 2848) a minimum of 90 days prior to his/her separation or retirement date. If the Soldier has less than 90 days remaining prior to separation and/or retirement, the Soldier must contact the supporting local ACAP Center as soon as possible and schedule the required Pre-separation Counseling. The Soldier is not authorized to separate/retire without having a completed DD Form 2648 at the servicing Transition Center.

3. The servicing MPD will initiate appropriate transactions to reflect the effective date of retirement. Also, the personnel officer will ensure a complete copy of the application and all allied documents are forwarded for filling in the Soldier's OMPF IAW Table 2-1, AR 600-8-104.

4. The point of contact for this memorandum is Hyun Jin Kim at DSN 738–7621 or e-mail
▉Redacted PII▉

MICHAEL E. MASLEY
COL, AG
Commanding

PLAINTIFF'S
EXHIBIT
A
Pg. 1 of 1



**000060**

EXHIBIT-B

000061

DEPARTMENT OF THE ARMY
US ARMY INSTALLATION MANAGEMENT COMMAND
PACIFIC REGION, US ARMY GARRISON-YONGSAN
TRANSITION CENTER
UNIT #15333
APO AP  96205-5333

ORDERS 027-0001                                    27 January 2014

CLAIBORNE, DAMON JAHRON, Redacted PII SSG, 0008 HQ INTEL CO HHB, (WJS7B0)APO AP
96205

You are released from active duty and, on the date following, placed on the
retired list.  The people of the United States express their thanks and
gratitude for your faithful service.  Your contributions to the defense of the
United States of America are greatly appreciated.  On date placed on the retired
list, you are transferred to the U.S. Army Reserve Control Group (Retired), U.S.
Army Human Resources Command, Fort Knox, KY 40121-5500.


Effective date:  31 January 2015
Retired grade of rank:  SSG
Current grade effective date:  01 December 2012
Authorized place of retirement:  YONGSAN TC APO-AP, KOREA YONGSAN AP 96205-5742
Requested place of retirement:  N/A
Effective date of retirement:  31 January 2015
Date placed on retirement list:  01 February 2015
DOB:  22 February 1971
Sex:  M
Citizenship code:  A
Retirement type and allotment code:  NON DISABILITY/2
Component:  RA
Statute authorizing retirement:   3914
Other eligible laws:  Not applicable
Vol retirement:  20 years, 0 months, 3 days
Date initially entered military:  21 February 1989
Section 1405:  20 years, 0 months, 3 days
Basic Pay:  24 years, 7 months, 4 days
Significant awards:  Not applicable
18 years act Federal svc on 1 Nov 81:  Not applicable
HOR: Redacted PII
Place EAD or OAD:  LOS ANGELES CA US
MDC:  7AE4
Additional instructions:  a.  PCN is:  NA


PEBD:  Not applicable
FOR ADDITIONAL INFORMATION CONTACT:
ROBERT E. RING,  TRANSITION SPECIALIST     Redacted PII     DSN 315
723-8227
SDN: CLA6603PD70001
Format:  600
FOR THE DIRECTOR:


********************************
*          OFFICIAL          *
********************************
PAUL M. LUNTUMBUEZ
DIRECTOR OF HUMAN RESOURCES


PLAINTIFF'S
EXHIBIT
B
Pg. 1 of 1

**000062**

EXHIBIT-C



**DEPARTMENT OF THE ARMY**
U.S. ARMY HUMAN RESOURCES COMMAND
1600 SPEARHEAD DIVISION AVENUE
FORT KNOX, KY 40122-5306

REPLY TO
ATTENTION OF

AHRC-EPF-M                                                           25 Nov 2014

MEMORANDUM FOR Commander, I CORPS STB, FT. LEWIS, WA 98433

SUBJECT: Suspension of Approved Retirement – SSG CLAIBORNE, DAMON, Redacted PII Redacted PII

1. The approved retirement pertaining to the above named Soldier is suspended and the retirement orders will be revoked or rescinded as appropriate. The approved retirement will remain in effect.

2. Upon completion of the current investigation, if administrative elimination is not effected, the Soldier will be retired on the first day of the month following the month charges are dismissed. Waivers are approved only in cases of fully documented extreme hardship to the Soldier or his/her immediate family.

3. If an administrative elimination board is convened and the Soldier receives a discharge as part of his/her punishment, the approved retirement will be revoked. If punishment given does not include discharge, the Soldier will be retired in the grade held on the date of retirement, on the first day of the month following the month the administrative elimination action is completed.

4. The personnel officer will ensure that a complete copy of the application and supporting documents are forwarded for filing in the Soldier's OMPF IAW Table 2-1, AR 600-8-104.

5. Inform the Soldier of this decision and furnish a copy of this correspondence to the Soldier.

FOR THE COMMANDER:

RONALD A. SIMONS
Chief, Enlisted Retirements
and Separations



PLAINTIFF'S
EXHIBIT
C
Pg. 1 of 1

**000064**

# EXHIBIT-D



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, I CORPS AND FORT LEWIS
BOX 339500
FORT LEWIS, WASHINGTON 98433-9500

REPLY TO
ATTENTION OF:

AFZH-CG

MAY 1 0 2006

MEMORADUM FOR Deputy Chief of Staff for Personnel, I Corps and Fort Lewis, ATTN: AFZH-AGI-PT, Fort Lewis, Washington 98433-9500

SUBJECT: Separation Under AR 635-200, Chapter 14

1. I have reviewed the information pertaining to Specialist (E-4) Damon J. Claiborne, [Redacted PII] 528th Quartermaster Company, 80th Ordnance Battalion, 593d Corps Support Group, Fort Lewis, Washington 98433-9500, and the recommendation that he be discharged from the Army prior to the expiration of his current term of service, under the provisions of AR 635-200, Chapter 14, Section III, Paragraph 14-5, for conviction by civil court.

2. I direct that he be discharged from the U.S. Army and his service be characterized as follows:

( ) Honorable

(NA) General, under honorable conditions

( ) Other than honorable conditions

(NA) Furthermore, per AR 635-200, para 1-18, I direct suspending the execution of the separation for the period of _12_ months (up to 12 months).

3. The service member will report to the Separation Transition Center for separation processing. Separation will be accomplished within three working days after receipt of the packet by the Separation Transition Center. The unit commander will ensure that the service member is escorted by a responsible Soldier in the rank of SGT or above throughout his out processing.

4. Upon completion of his processing for separation he will also be barred from entering the installation in accordance with the terms of the enclosed memorandum. The service member must be prepared to present his "clearing" papers at all times when he is on the installation.

5. This correspondence will be filed as permanent material in the service member's Official Military Personnel File (OMPF) IAW AR 600-8-104.

5 Encls
1. SJA Advice
2. Chain of Command Recommendations
3. Conditional Waiver
4. Administrative Separation Packet

OSCAR B. HILMAN
Brigadier General, USA
Acting Commander


PLAINTIFF'S
EXHIBIT
D
Pg. 1 of 1

**000066**

# EXHIBIT-E

For Official Use Only

# ENLISTED RECORD BRIEF

| BRIEF DATE | NAME | | RANK - DOR | PMOS | SSN | COMPONENT |
|---|---|---|---|---|---|---|
| 20150628 | CLAIBORNE, DAMON JAHRON | | SSG    20121201 | 92F | Redacted PII | REGULAR |

## SECTION I – Assignment Information

**OS/Deployment Combat Duty** #S – 3

| Start-End Date | CT | MOT | S | TT |
|---|---|---|---|---|
| 20121010-20140208 | KS | 16 | 1 | L |
| 20100910-20110615 | AF | 9 | 1 | L |
| 20070105-20080305 | KS | 12 | 1 | L |
| 20030415-20040415 | IZ | 12 | 1 | C |
| 20000710-20001124 | KV | 5 | 1 | C |
| 19980526-20010615 | GM | 36 | 1 | L |

TOT: 37

**Dwell Time**

| Start | 20110615 |
|---|---|
| Month - Days | 49 Mo 3 Days |

DEROS

DROS 20140208

| Date Dependents Arrived OS | |
|---|---|
| PMOS | 92F | SQI | O |
| SMOS | 11B | PDSI/YRMO | / |
| Bonus MOS | 92F | ASI | 90 |
| Bonus Enlist Elig Dt | 20090901 |
| Promotion Points/YRMO | |
| Prev Promotion Points/YRMO | |
| Prom Seq# | Prom Select Dt |
| Promotion MOS | |

**ASVAB**   Test # / Dt      AFCT / 20120301

| GT | 116 | ELEC | 116 | FOOD | 115 | TECH | 117 |
| ADMIN | 115 | FA | 115 | COMMO | 116 | | |
| CMBT | 115 | MECH | 113 | MAINT | 114 | | |

Delay Separation Reason

AEA / Dt        L /

| Flag Code | Flag Start Dt | Flag Expiration Dt |
|---|---|---|
| BA | 20140220 | |

## SECTION II – Security Data

| PSI Status | NONE | Fld Det PS Stat | NONE |
|---|---|---|---|
| PSI Invest INIT | . | | |
| PSI Invest Compl | | 19980323 | |

### SECTION V – Foreign Language

| Language | Read | Listen | Speak |
|---|---|---|---|
| | | | |

DLAB

### SECTION VI – Military Education

MEL/MES  SSD3/ENROLLED

| Course | ACH | Year |
|---|---|---|
| ENV COMPLNCE OFCR CERT | | 2013 |
| COMBAT LIFE SAVERS CRS | | 2012 |
| ADV LDR CRS (ALC) | | 2009 |
| FBC82 LDR OPNET CERT | | 2009 |
| COMBATIVES LEVEL 1 | | 2007 |
| BUS DRIVER CRS | | 2008 |
| WARRIOR LEADER CRS | | 2004 |
| DEF PACK HAZ MAT TRANS | | 1998 |
| HAZMAT DRIVER INSTR | | 1998 |
| PETROLEUM VEHICLE OPER | | 1998 |
| PETROLEUM QUAL ASURE | | 1998 |

BMQ  20111117/DA FORM 5790-R (M16)/37

Correspondence CRS Total # Hrs  442

## SECTION III – Service Data

| BASD | 19960407 | PEBD | 19891018 | BESD | 19890720 |
|---|---|---|---|---|---|
| ETS | 20150930 | DIEMS | 19890221 | Reenl Elig/Prohib | 9v |
| # Days Lost | | AGCM Dt | 20130209 | AGCM Elig Dt | 20160209 |

| | PVT | PV2 | PFC | SPC - CPL |
|---|---|---|---|---|
| DOR | | | | 19980128 |
| | SGT | SSG | SFC | MSG - 1SG |
| DOR | 20070701 | 20121201 | | |
| | SGM - CSM | | | |
| DOR | | | | |

### SECTION VII – CIVILIAN Education

| Level Achieved | 4 YRS HS | Yr | |
|---|---|---|---|
| DESG | HIGH SCHOOL DIPLOMA | Yr | 1989 |
| Institution | | Yr | |
| Discipline | | | |
| Institution | | Yr | |
| Discipline | | | |
| Number Of Semester Hours Completed | | | 102 |

**Technical Certification**

| Course Name | Dt Certified | Dt Expires |
|---|---|---|
| | | |

### SECTION VIII – Awards and Decorations

| ARCOM | 3 | KUKULIBM | 1 |
|---|---|---|---|
| AAM | 7 | COA | 6 |
| MUC | 1 | | |
| AGCM | 7 | DRV/MECH | 1 |
| NDSM | 2 | MQBSS-R | 1 |
| SWASM | 3 | | |
| KCMBSS | 1 | | |
| ACM-CS | 1 | | |
| ICM-CS | 2 | | |
| GWTEM | 1 | | |
| GWTSM | 1 | | |
| KDSM | 1 | | |
| NOPDR | 2 | | |
| ASR | 1 | | |
| OSR | 5 | | |
| NATOMDL | 2 | | |
| SAKULIBM | 1 | | |

## SECTION IV – Personal/Family Data

| Date of Birth | Redacted PII | Birthplace | Redacted PII |
|---|---|---|---|
| Country of Citz | US | Sex/Race | |
| | | MALE / BLACK | |
| No of Dependent | | Religion | |
| Adults/Children | | | |
| 1/8 | | BAPT CH OTHER | |
| Marital Status | | Spouse Birthplace/Citz | |
| MARRIED | | / | |
| PULHES | 212111 | Height/Weight | |
| MRC1 | | 73/217 | |

| EFMP Dt | 20150901 | #Cmd Sponsored | 0 |
|---|---|---|---|
| Physical Category | | APFT Dt P/F Score | |
| A | | 201302/PASSED/229 | |
| Last Physical Exam | | MMRB Results/Dt | |
| 20160602 | | | |

Home of Record

Mailing Address     Redacted PII

| Mil Spouse SSN/MPC | |
|---|---|
| Svc Comp / DoD | |
| Emergency Data Verified Date | 20150327 |

### SECTION X – Remarks

| HIV YRMO | 201403 |
|---|---|
| RGMT AFL CORPQM | |
| Date Last Photo | 201304 |

## SECTION IX – Assignment Information

Date of Loss | Date of Last PCS 20140208 | Date of Last NCOER 20150208

| ASGT | FROM | MO | UNIT NO | ORGANIZATION | STATION | LOC | COMD | DUTY TITLE | DMOS | ASI | LANG |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PROJ | | | | | | | | | | | |
| Current | 20141209 | | WAT3A0 | 0001HQOPNS CO A | JBLM LEWI | US | FC | KNOWN LOSSES | 92F3O | 00 | YY |
| 1st Prev | 20140208 | | WAT301 | 0001 1 BDE REPL | JBLM LEWI | US | FC | INCOMING PERSONNEL | 92F3O | 00 | YY |
| 2nd Prev | 20130329 | | WJS7T0 | 0008 HQ HSC HHB | YONGSAN | KS | P1 | SURPLUS SLDR | 92F3O | 00 | YY |
| 3rd Prev | 20130114 | | WJS7B0 | 0008 HQ INTEL CO HHB | YONGSAN | KS | P1 | PETRL SGT | 92F4O | 00 | |
| 4th Prev | 20121017 | | W30ZAA | RELIGIOUS RETREAT CENT | YONG SAN | KS | BA | PETRL SGT | 92F2O | 00 | |
| 5th Prev | 20121010 | | W6XLAA | USALRCTR YONGSAN | YONGSAN | KS | X1 | INCOMING PERSONNEL | 92F2O | 00 | YY |
| 6th Prev | 20120127 | | WJAYA0 | 0004CSCO A DIST | FT CARSON | US | FC | PETRL HVY VEH OPR | 92F2O | H7 | |
| 7th Prev | 20110617 | | WJAYA0 | 0004CSCO A DIST | FT CARSON | US | FC | PETRL HVY VEH OPR | 92F2O | H7 | |
| 8th Prev | 20100617 | | WJAYA0 | 0004CSBN | FT CARSON | US | FC | INCOMING PERSONNEL | 92F2O | 00 | YY |
| 9th Prev | 20080325 | 0 | WHE2AA | 00490MHHC | FT LEE | US | FC | OPS TRAINING NCO S-3 | 92F2O | 00 | YY |
| 10th Prev | 20071107 | 0 | WHZZE0 | 010002AVE CO FWD SPT | CP EAGLE | KS | P8 | ACFT FUEL HANDLER | 92F2O | H7 | YY |
| 11th Prev | 20070308 | 0 | WHP7AA | 0001AGREPL REG 40 | CP COINER | KS | P8 | PETRL SUPPLY SP | 92F1O | H7 | YY |
| 12th Prev | 20070306 | 0 | WDFGAA | CS HHC CORPS SPT BN | FT LEWIS | US | FC | PETRL SUPPLY SP | 92F1O | H7 | YY |
| 13th Prev | 20050822 | 0 | WD0FAA | 0528QMPETROLEUM S | FT LEWIS | US | FC | PETRL SUPPLY SP | 92F1O | H7 | YY |
| 14th Prev | 20050725 | 0 | WET1H0 | 0080ODHHC OIF 25 REAR | FT LEWIS | US | FC | PETRL SUPPLY SP | 92F1O | H7 | YY |
| 15th Prev | 20010724 | 4 | WD0FAA | 0528QMPETROLEUM S | FT LEWIS | US | FC | PETRL HVY VEH OPR | 92F1O | H7 | YY |
| 16th Prev | 20010626 | 1 | WET1AA | 0080QDAMMO DS/GS | FT LEWIS | US | FC | PETRL SUPPLY SP | 77F1O | H7 | YY |
| 17th Prev | 20001205 | 36 | WH6YT0 | CCO, 501ST MILITARY INTELLIGENCE | DEXHEIM | GM | E5 | PETRL SUPPLY SP | 92F1O | 00 | YY |
| 18th Prev | 20000921 | 36 | WH6YB1 | BCO, 501ST MILITARY INTELLIGENCE | ANDERSON | GM | E5 | PETRL SUPPLY SP | 92F1O | 00 | YY |
| 19th Prev | 19980626 | 2 | WH6YT0 | HHC, 501ST MILITARY INTELLIGENCE | DEXHEIM | GM | E5 | PETRL SUPPLY SP | 92F1O | 00 | YY |
| 20th Prev | 19980623 | 34 | WH6S1A | 0001AGWIESBADEN INT | SCHWETZIN | GM | E8 | PETRL SUPPLY SP | 92F1O | 00 | YY |
| 21st Prev | 19980527 | 2 | W0VL2B | FT LEE VA ( PETROLEUM SUPPLY | VA | US | FC | TRAINEE PETRL SUPPLY SPC | 92F0O | 00 | YY |
| 22nd Prev | 19980210 | 2 | W1D52R | CO R TR | FT LEE | US | TC | INCOMING PERSONNEL | 92F0O | 00 | YY |
| 23rd Prev | 19980129 | 1 | W0U67A | RECEPTEE CO 120TH AG B | FT JACKSO | US | FC | INCOMING PERSONNEL | 11B0O | 00 | YY |
| 24th Prev | 19970228 | 11 | | 299 INF REGT | HI | US | FC | INFANTRYMAN | 11B1O | 00 | YY |

PLAINTIFF'S EXHIBIT F

tabbies

000098

890004

Privacy Act Data In Accordance With Privacy Act of 1974
Dispose of this Properly

EXHIBIT-F



**DEPARTMENT OF THE ARMY**
OFFICE OF THE ASSISTANT SECRETARY
MANPOWER AND RESERVE AFFAIRS
111 ARMY PENTAGON
WASHINGTON, DC 20310-0111

SAMR

1 6 JUN 2015

~~MEMORANDUM THRU Deputy Chief of Staff, G-1, DAPE-MPE, 300 Army Pentagon, Washington, DC 20310~~ JE 16Jun15

FOR Commander, I Corps, Mail Stop 1, Joint Base Lewis-McChord, Washington 98433-9500

SUBJECT: Separation Under Army Regulation (AR) 635-200, Paragraph 5-3 (Secretarial Plenary Authority) – Staff Sergeant (SSG) Damon J. Claiborne

1. I find that separating SSG Damon J. Claiborne is clearly in the best interest of the Army in accordance with AR 635-200, paragraph 5-3a.

2. I direct that SSG Claiborne be separated with a General (Under Honorable Conditions) characterization of service.

3. SSG Claiborne's Separation Program Designator (SPD) Code is JFF, and his Reentry Eligibility (RE) Code is RE-4.

4. The point of contact for this action is Mr. Edmondson, (703) 695-7948, or via e-mail:

Redacted PII

DEBRA S. WADA
Assistant Secretary of the Army
(Manpower and Reserve Affairs)



PLAINTIFF'S
EXHIBIT
F
Pg. 1 of 1

**000070**

# EXHIBIT G



# John N. Maher
### LEGAL SERVICES

June 17, 2015

*Via Electronic Mail To: julian.d.edmonson.civ@mail.mil*

The Honorable Debra S. Wada
Assistant Secretary of the Army
Manpower and Reserve Affairs
111 Army Pentagon
Washington D.C., 20310-0111

       SUBJECT: Separation Under Army Regulation 635-200, Paragraph 5-3
(Secretarial Plenary Authority) - Staff Sergeant (SSG) Damon J. Claiborne

Dear Secretary Wada:

       I write on behalf of SSG Claiborne to respectfully request that you withdraw the proposed separation discussed in your June 16, 2015 letter and authorize his retirement as of the original effective date of February 1, 2015.

       As you likely know, AR 635-200, Chapter 1-17 states that soldiers should not be separated under this regulation if they have already been subject to a separation proceeding and the separation authority determined to retain them. In relevant part, paragraph 1-17b (3) states that:

> No Soldier will be considered for administrative separation because of conduct that … has been the subject of an administrative separation proceeding resulting in a final determination by a separation authority that the Soldier should be retained.

       Over ten years ago, in 2005 - 2006, the Army processed SSG Claiborne for separation under AR 635-200, Chapter 14. However, the separation proceeding resulted in a final determination by the separation authority that SSG Claiborne be retained. The basis for that proceeding is the same basis as this proceeding. Copies of the I Corps and Fort Lewis Commander's retention decision are enclosed.

       Since his having been retained, SSG Claiborne re-enlisted in 2008, and again in 2010 pursuant to the REDUX program in which he and the Army agreed to retirement at twenty years of active federal service. In all, he has just shy of 26 years combined active and reserve service.

17101 South 71st Avenue     T: (312) 804-9912     www.maherlegalservices.com
Tinley Park Illinois, 60477 USA     F: (773) 980-1809



PLAINTIFF'S EXHIBIT
G
Pg. 1 of 2

The Honorable Debra S. Wada
June 17, 2015
Page 2

Additionally, SSG Claiborne has served well overseas having earned three combat patches in: a) Desert Shield/Desert Storm; b) Kosovo; c) Iraq; and d) Afghanistan. He is also the recipient of several Army Commendation Medals and Army Achievement Medals in addition to his various campaign ribbons. Concerning his personal life, he is married and the father of eight (8) children, two of whom are special needs (autism and emotional challenges). Given these responsibilities, he works a part-time job after duty hours.

For these reasons, we respectfully request that you re-assess this separation action in light of AR 635-200 Paragraph 1-17b (3), SSG Claiborne's overseas service, and his family situation in which his retirement is direly needed to survive. We ask that you please withdraw the action and place SSG Claiborne on the retired rolls. The favor of a reply is requested, and, I am available to speak with you at your convenience about this important matter.

Sincerely,

//original signed//

_____
JOHN N. MAHER
Maher Legal Services, P.C.

Encls.  Retention Documentation



PLAINTIFF'S EXHIBIT
G
Pg. 2 of 2

# EXHIBIT H

C O R R E C T E D   C O P Y

DEPARTMENT OF THE ARMY
DIRECTORATE OF HUMAN RESOURCES, MILITARY PERSONNEL DIVISION
2140 LIGGETT AVE, ROOM 300, TRANSITION CENTER
JOINT BASE LEWIS-MCCHORD, WA 98433-9500

ORDERS 175-0010                                          24 June 2015

CLAIBORNE, DAMON JAHRON [Redacted PII] SSG 0008 HQ INTEL CO HHB, (WJS7B0) JOINT
BASE LEWIS-MCCHORD, WA 98433

You are reassigned to the U.S. Army transition point shown for transition
processing. After processing, you are discharged from the Component shown. If
you are delayed in reporting to the transition point, you still must report to
the transition point as soon as possible or as authorized to receive a new
effective date of discharge. Information concerning your port call will be
provided separately.

Assigned to: JB LEWIS-MCCHORD TC (W12K1X) JOINT BASE LEWIS-MCCHORD WA
   98433-9500
Reporting date: 01 July 2015
Comp: REGULAR
Date of discharge unless changed or rescinded: 01 July 2015
Additional instructions: a. Transitional Health Care Benefits: FOR INFORMATION
ON BENEFITS AND SERVICES SEE THE SOLDIER FOR LIFE (SFL) OFFICE, ARMY COMMUNITY
SERVICES (ACS) AND/OR YOUR MILITARY PERSONNEL OFFICE. b. Report to In/Out
processing (Rm 206B, Waller Hall) to receive Installation Clearance
instructions. All clearing is to be done in duty uniform IAW established
policy. DEPENDENTS: YES. Travel must be completed and application submitted
within 181 days from date of separation. Offical travel arrangements purchased
through a commercial travel office (travel agency) not under contract to the
government is not reimbursable. You are authorized shipment of household goods
to your home of record or place of entry on active duty. If you plan to ship or
store personal property at government expense, contact Joint Personal Property
Shipment Office (JPPSO), Bldg 2150, at 253-967-5093. YOU ARE REQUIRED TO ATTEND
A FINANCE BRIEF AT 1100 (MON AND WED) AND REVIEW YOUR DD 214 (0845 MON-WED, FRI)
PRIOR TO SEPARATING. YOU ARE REQUIRED TO SIGN YOUR DD 214 USING YOUR COMMON
ACCESS CARD (CAC). c. You are authorized shipment of household goods and POV
to Home Of Record, or Place of Entry on Active Duty. FAMILY MEMBER(S) DATA:
CLAIBORNE, JENNI LYN/SP//CLAIBORNE, RUBY JAZEL/DAU/DOB: 19970214//CLAIBORNE,
KADAR JAHRON/SON/DOB: 19980922//CLAIBORNE, BROOKLYN GRACE/DAU/DOB:
20090116//CLARK, BRAYDEN JOSHUA/STEPSON/DOB: 19990301//CLAIBORNE, BRIA
ELLEN/DAU/DOB: 20110212//CLAIBORNE, BRYLEE JAYLYN/DAU/DOB: 20120312. d.FINANCE
MAY WITHHOLD YOUR FINAL PAY UNTIL COMPLETELY CLEARED FROM THE
UNIT/INSTALLATION. e. Contact the Soldier For Life - Transition Assistance
Program Office, Bldg 3271, (253)967-3258/5599 for mandatory transition
counseling (https://www.sfl-tap.army.mil).

FOR ARMY USE
Auth: AR 635-200 CH (ES)
HOR: [Redacted PII]
Place EAD or OAD: LOS ANGELES CA US
MDC: 7BE5
CIC: 2G5CLA6603500/2Q5CLA6603500
Aval Date: 15 July 2015
FOR ADDITIONAL INFORMATION CONTACT:
Mrs. Jackie Edick [Redacted PII]                      253-967-1992



PLAINTIFF'S
EXHIBIT
H
P₃. l of 2

**000075**

ORDERS 175-0010                DA JBLM WA                24 June 2015

SDN:  CLA6603PJ50010
Format:  501

FOR THE COMMANDER:

```
************************************
*     PERSONNEL PROCESSING BRANCH   *
**              OFFICIAL           **
*JOINT BASE LEWIS-MCCHORD, WA 98433*
************************************
GARY B. LEDBETTER, JR.
CHIEF, TRANSITION CENTER
```

DISTRIBUTION:
SSG CLAIBORNE (1)
Cdr 0008 HQ INTEL CO HHB, (WJS7B0) (1)
IMWE-JLM-HR-I/O (1)
DFAS-IN/EM-KW (2)
AFZH-PGC-RC (1)
MCHJ-OPR (1)
MCDS-IN (1)

jle

PLAINTIFF'S
EXHIBIT
H
Pg. 2 of 2

000076

# EXHIBIT-I



# John N. Maher
### LEGAL SERVICES

June 25, 2015

*Via Electronic Mail To: julian.d.edmonson.civ@mail.mil*

The Honorable Debra S. Wada
Assistant Secretary of the Army
Manpower and Reserve Affairs
111 Army Pentagon
Washington D.C., 20310-0111

SUBJECT: Staff Sergeant (SSG) Damon J. Claiborne – Secretarial Plenary Authority

Dear Secretary Wada:

Having received neither acknowledgment nor substantive communication from Mr. Julian Edmonson, you, or any of your representatives despite repeated efforts since June 17, 2015 on behalf of SSG Damon Claiborne, I write this letter with the hope that you and Mr. Edmonson will re-evaluate the propriety of using the Secretary's plenary authority in this action.

The plain language of Chapter 5-3a states that to properly exercise the authority, "it is used when no other provision of this regulation applies, and *early* separation is clearly in the best interest of the Army." (emphasis added). SSG Claiborne received retirement orders on January 27, 2014 with an effective date of placement on the retired list January 31, 2015. In the interim, the Army suspended his approved retirement for processing under the instant action. Consequently, the separation is not early because the Army held him past his approved retirement. For this reason, and those contained in my June 17, 2015 letter and emails to your attention, I respectfully request you reconsider and place SSG Claiborne on the retired rolls.

We have a draft motion for a temporary restraining order together with a Federal District Court complaint detailing how this decision is contrary to the plain language of the regulation, that is, "administrative double jeopardy." This is a litigation risk in that a court may decide that the Secretary's plenary authority should be limited to "early" separation as opposed to those soldiers who are retirement eligible. I do sincerely hope to avoid having to file the legal papers on Monday, June 29, 2015. The courtesy of a reply is requested.

Sincerely,

//original signed//

_____
JOHN N. MAHER
Maher Legal Services, P.C.

17101 South 71st Avenue          T: (312) 804-9912          www.maherlegalservices.com
Tinley Park Illinois, 60477 USA  F: (773) 980-1809



PLAINTIFF'S
EXHIBIT
I
Pg. 1 of 1

**000078**

1

Dana Mitchell, OSB No.114637
317 Court Street NE

2

Salem, Oregon 97301
Ph: (503) 508-6078

3

Fax: (503) 581-2260
E-mail: danamitchellpc@gmail.com

4

5

IN THE UNITED STATES DISTRICT COURT

6

FOR THE DISTRICT OF OREGON
Portland Division

7

8

DAMON J. CLAIBORNE

9

Civil No.

Plaintiff,

10

- versus -

PLAINTIFF'S MEMORANDUM IN
SUPPORT OF MOTION FOR

11

JOHN M. McHUGH,

TEMPORARY RESTRAINING ORDER

Secretary of the Army,

12

13

Defendant.

14

15

MEMORANDUM

16

Comes now Plaintiff, Staff Sergeant Damon J. Claiborne (hereinafter "SSG Claiborne")

17

by and through his attorneys and files his Memorandum in Support of his Motion for a

18

Temporary Restraining Order against the Defendant, John N. McHugh, the Secretary of the

19

Army (hereinafter "the Army") in his official capacity. As demonstrated more fully below, this

20

Court should enjoin the Army from discharging SSG Claiborne on July 1, 2015, and preserve the

21

*status quo* to prevent immediate and irreparable harm until this Court can review the Army's

22

23

decision pursuant to federal question jurisdiction 28 U.S.C. § 1331 and the *Administrative*

*Procedures Act*, 5 U.S.C. § 701.

24

25

26

Dana M. Mitchell, P.C.
*Attorney at Law*

PAGE 1 OF 12 – MEMORANDUM OF LAW
DAMON CLAIBORNE v. JOHN McHUGH

317 Court Street N.E.
Salem, Oregon 97301

# FACTUAL BACKGROUND

The Army will discharge SSG Claiborne on Wednesday July 1, 2015 unless this Court prevents it. Compl. ¶ 62, Ex. H.

On January 27, 2014, the Army issued approved retirement orders to SSG Claiborne with an effective date of January 31, 2015. *Id.*, Ex. B. Pursuant to that order, the Army determined that SSG Claiborne had achieved over 20 years active duty service which authorized his retirement under federal law, 10 U.S.C. § 3914. Approximately two months prior to the effective date of his approved retirement orders, the Army suspended his retirement and specifically held him beyond January 31, 2015 to administratively discharge him pursuant to Army Regulation (AR) 635-200, *Active Duty Enlisted Separations*, Chapter 5-3a. Compl. ¶ 26, Ex. C.

The basis of the current discharge action is a 2005 conviction in the state of Washington involving sexual assault. However, the Army already processed SSG Claiborne for that conduct nearly 10 years ago. That is, in 2006, the Army processed SSG Claiborne for separation based on the same conduct. Upon review of the evidence a part of that action, the company (Captain), battalion (Lieutenant Colonel), and brigade (Colonel) commanders recommended retention. The Commanding General of I Corps and Fort Lewis, Washington, accepted those chain-of-command recommendations and determined to retain SSG Claiborne on active duty. *Id.*, Ex. D.

There was a caveat to that retention, however. SSG Claiborne was offered a 12-month probation period to demonstrate his fitness for further retention on active duty notwithstanding his civilian conviction. *Id.* The Army followed AR 635-200, Chapter 1-18a which holds in part that "[a] highly deserving Soldier may be given a probation period to show successful rehabilitation." Already a veteran of *Operation Desert Shield-Desert Storm* at the time, SSG

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

000080

Claiborne successfully completed the probation period. *Id.*, Ex. E.

Since 2006, the Army has authorized his reenlistment twice even though he had the civilian conviction. Also since 2006, SSG Claiborne has been promoted in rank and pay, the result of which was greater responsibility to lead and care for soldiers and their well-being, at times in hostile fire zones. *Id.* Since 2006, he has completed combat tours in Iraq and Afghanistan. *Id.* He has also completed a hardship tour in Korea and previously a hazardous duty tour in Kosovo. *Id.* Since then, he has earned campaign ribbons and individual medals for individual merit. *Id.*

There is no "new" misconduct in his military or civilian records to support a "new" separation action. SSG Claiborne is married, has 8 dependent children, and after duty, delivers pizza for "Papa John's" to help support his family. Claiborne Decl.

### ARGUMENT

I.   This Court Should Issue a Temporary Restraining Order to Prevent the Discharge

To restrain or enjoin a defendant from acting, a plaintiff must show: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Nelson v. Nat'l Aeronautics & Space Admin.*, 568 F.3d 1028, 1030 n.5 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 557 U.S. 7, 16 (2008)).

"The elements of [this] test are balanced, so that a stronger showing of one element may offset a weaker showing of another. For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *Alliance For The*

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

000081

1   *Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011)(citing *Winter*, 557 U.S. at 25).

2   Accordingly, the Ninth Circuit has held "'serious questions going to the merits' and a balance of

3   hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction,

4   so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the

5   injunction is in the public interest." *Wild Rockies*, 632 F.3d at 1131-32.

6              A.     Possibility of Success on the Merits

7        SSG Claiborne can make a *prima facie* showing and more of a possibility of success of

8   the merits. His *Administrative Procedures Act* claim is essentially that the Army's decision to

9   discharge him under the present circumstances: (1) wrongly subjected him to administrative

10  double jeopardy, which the Army's regulation urges against, (2) deprived him of due process

11  because the Army did not follow its own administrative regulations; (3) further deprived him of

12  due process because the Army misapplied and misinterpreted its own regulations; (4) was

13  arbitrary and capricious; and (5) was an abuse of the Secretary's discretion.

14       The *Administrative Procedures Act* "sets forth the full extent of judicial authority to

15  review executive agency action for procedural correctness." *FCC v. Fox Television Stations, Inc.*,

16  556 U.S. 502, 513 (2009). It requires courts to "hold unlawful and set aside agency action,

17  findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not

18  in accordance with law." 5 U.S.C. § 706(2)(A). A decision is arbitrary and capricious if it is not

19  based upon relevant factors, lacks a rational basis, or represents a clear error in judgment.

20  *McIntyre v. United States, 30 Fed. Cl. 207, 213 (1993)*.

21       The Army, like other military departments and government agencies in general, is bound

22  by law to follow its own regulations. *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997).

26

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

000082

1   Under the *Administrative Procedures Act*, "a court may review a military discharge decision to

2   determine if the decision was arbitrary, capricious, in bad faith, unsupported by substantial

3   evidence, or contrary to law, regulation, or published procedure." *Crane v. Sec'y of the Army*, 92

4   F. Supp.2d 155, 164 (W.D.N.Y. 2000)(citing 5 USC § 706(2)(A) and *Perez v. United States*, 850

5   F. Supp. 1354, 1365 (N.D. Ill. 1994)).

6       Courts have deferred to military decision-making. However, deference to military

7   decision-making "is not synonymous with abdication, especially where issues of a constitutional

8   dimension are raised." *Gunning v. Walker*, 663 F. Supp. 941, 943 (D. Conn. 1987) aff'd, 847

9   F.2d 834 (2d Cir. 1988) (citing *Rostker v. Goldberg*, 453 U.S. 57, 67, 69 L. Ed. 2d 478, 101 S.

10  Ct. 2646 (1981)). Judicial review of military decisions is permissible when the actions of the

11  armed services are in violation of the military's own regulations or beyond their powers, and do

12

13  not involve matters "'reasonably relevant and necessary to furtherance of our national defense.'"

14  *Mack v. Rumsfeld*, 784 F.2d 438, 439 (2d Cir.1986) (quoting *Katcoff v. Marsh*, 755 F.2d 223,

15  234 (2d Cir.1985)); see also *Crawford v. Cushman*, 531 F.2d 1114, 1120 (2d Cir. 1976). *St. Clair

16  v. Secretary of the Navy*, 970 F. Supp. 645, 648 (C.D. Ill. 1997).

17      The APA requires the Army, like any other agency, to follow its own administrative

18  procedures. *Smith v. Resor*, 406 F.2d 141, 145 (2d Cir.1969). An agency's failure to follow its

19  own established procedures or regulations constitutes a violation of the APA. *Miller v. Henman*,

20

21  804 F.2d 421, 424 (7th Cir. 1986); *Montilla v. I.N.S.*, 926 F.2d 162, 167 (2d Cir. 1991) (holding

22  that "'where the rights of individuals are affected, it is incumbent upon agencies to follow their

23  own procedures'" (quoting *Morton v. Ruiz*, 415 U.S. 199, 235, 39 L. Ed. 2d 270, 94 S. Ct. 1055

24  (1974)).

25

26

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

**000083**

1    Here, there is significant evidence that the Army failed to comply with its own

2    administrative procedures. First, the Army violated the longstanding administrative double

3    jeopardy bar because it is processing SSG Claiborne for a general discharge for the very same

4    conduct which was already processed nearly 10 years ago. AR 635-200, Chapter 1-17b states

5    that "[s]eparation per this regulation normally should not be based on conduct that has already

6    been considered at an administrative or judicial proceeding and disposed of in a manner

7    indicating that separation was not warranted." It cannot be disputed that the Army bases the

8    instant separation on conduct that has already been considered at an administrative proceeding

9    and disposed of in a manner indicating that separation was not warranted.

10

11    Chapter 1-17 clarifies that separation does not *normally* occur for conduct already

12    considered. (Emphasis added). Use of "normally" suggests that there may be times when

13    separation may rightly occur. Speaking to those instances, Chapter 1-17 delineates those specific

14    circumstances where separation may be considered again. The exceptions to the Army's double

15    jeopardy bar are three, none of which applies here: a) subsequent conduct or performance forms

16    the basis for a new proceeding; b) the discovery of fraud or collusion not known at the time of

17    the original proceeding; and c) the discovery of substantial new evidence not known at the time

18    of the original proceeding. Chapter 1-17(b)(3)(a)(b) and (c). That "separation normally should

19

20    not" be undertaken twice is the general rule and the Army set forth those exceptions to the

21    general rule. None of those exceptions applies to SSG Claiborne's case.

22    Second, the Army interpreted Chapter 5-3a's plenary authority too expansively, that is,

23    that plenary authority overrides the administrative double jeopardy bar in Chapter 1-17b.

24
> Separation under this paragraph is the prerogative of the Secretary
25    of the Army. Secretarial plenary separation authority is exercised
> sparingly and seldom delegated. Ordinarily, it is used when no
26

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

000084

1  other provision of this regulation applies, and early separation is
2  clearly in the best interest of the Army. Separations under this
   paragraph are effective only if approved in writing by the Secretary
   of the Army or the Secretary's approved designee as announced in
3  updated memorandums. AR 635-200, Chapter 5-3a.

4      The Army's interpretation goes too far. Absent in the language are words like

5  "unfettered," or "complete" or "beyond review" pertaining to the "prerogative" of the Secretary.

6  Thus, the prerogative language can and should be viewed as discretionary, and, the

7
   *Administrative Procedures Act* authorizes this Court to judge the Army's decision as an abuse of

8  discretion.
9

10     There are several conclusions leading to the separation decision which are not based upon

11 relevant factors, lack a rational basis, or represents a clear error in judgment. For example, the

12 plain language of Chapter 503a states that plenary authority is used when "no other provision of

13 this regulation applies." Chapter 1-17 is a provision of the regulation and it applies. That is,

14 Chapter 1-17 cannot be read out of the regulation.

15     The entire regulation, AR 635-200, is premised upon the idea of early separations before
16
17 enlistments or terms of obligated service expire. Chapter 5-3a itself states that the Secretary must

18 determine if "early separation" is "clearly in the best interest of the Army." Here, the Army held

19 SSG Claiborne *after* his approved retirement date. Therefore, this is not an "early separation."

20     Even if this case involved "early separation," the Army ignored, refused to acknowledge,

21 or underappreciated facts that show the decision is not "clearly in the best interest of the Army."

22 Several times prior this filing, efforts were made to present the legal and equitable facts to the

23 Army's decision-makers to no avail. Where the Army subjects a non-commissioned officer with
24
25 20 years of active service in several combat theaters to administrative double jeopardy and takes

26
                                                           Dana M. Mitchell, P.C.
                                                            *Attorney at Law*
317 Court Street N.E.
DAMON CLAIBORNE V. JOHN MCHUGH                              Salem, Oregon 97301

000085

1    his livelihood and retirement at the 11th hour, it stands to reason that some Americans will not

2    receive that decision warmly. It also stands to reason that some soldiers will not take kindly to

3    the Army's treatment of SSG Claiborne. That much is shown by the Letters of Reference

4    attached hereto as Exhibit A.

5        The Court in *Crane v. Secretary of the Army*, 92 F. Supp. 2d 155 (W.D.N.Y. 2000),

6    reviewed the Army's discharge decision under the *Administrative Procedures Act*, found that the

7    Army did not comply with its own administrative procedures and that the discharge was not

8

9    supported by substantial evidence. The court set aside the Army's discharge decision, reinstated

10   the discharged officer, and restored him to all duties, responsibilities, and privileges earned by

11   him prior to his discharge. *Crane*, 92 F. Supp. 2d at 167-68.

12       The Army's failure to follow its own regulations, misapplications and misinterpretations,

13   coupled with its refusal to consider significant matters tends to show that the decision is

14   arbitrary, capricious, not in accordance with law, and in violation of the *Administrative*

15   *Procedures Act*. For purposes of this preliminary injunction, there is a possibility of SSG

16   Claiborne's success on the merits.

17

18       A decade ago, the Army cancelled SSG Claiborne's separation and re-enlisted him not

19   once, but twice, with the promise of at least 20 years. Had the Army informed him then that he

20   would be separated for the same conduct a decade later, albeit after risking his life repeatedly in

21   combat zones, only to be denied retirement benefits, there may have been other decisions made

22   which are now forever lost. This type of governmental action cannot be consistent with

23   American due process.

24           B.    Immediate and Irreparable Harm

25

26
                                                    Dana M. Mitchell, P.C.
                                                    *Attorney at Law*

1   It is all but certain that SSG Claiborne and his family will suffer immediate and

2   irreparable harm on July 1, 2015 if this Court does not halt execution of the Army's decision.

3   SSG Claiborne has spent the past two decades of his adult life with the identity of a soldier and

4   non-commissioned officer. The Army is slamming down the proverbial ticket window just as he

5   reached the ticket agent after having stood in line for two decades and risked his life in Saudi

6   Arabia, Kuwait, Iraq, Kosovo, and Afghanistan. The Army thought we was good enough for war,

7   and kept him for those deployments. But now that he is retirement eligible, the Army found

8   something it had already determined insufficient for separation 10 years ago to denigrate his

9

10  contributions, devalue his service, and raze his well-being into the future.

11  He, his wife, and eight dependent children will lose the financial support of his projected

12  retirement, which, at present rates, is 40% of his current active duty pay per month until his

13  death. As an E-6 with 20 years of service, SSG Claiborne's current basic pay is approximately

14  $3724 per month. In today's dollars, he and his family will lose approximately $1500 per month,

15  each month, for every year until SSG Claiborne's demise. Presently 44 years old, where he to

16  live until 75, another 31 years, he and his family will lose approximately $554,131 in today's

17

18  dollars, not to mention COLA and associated military benefits. Upon SSG Claiborne's demise,

19  his wife would normally receive a reduced percentage of his full retirement benefit until her

20  demise pursuant to the Survivor Benefit Plan. On July 1, 2015, all of that goes away.

21  There is an administrative remedy as Colonel Miller explained in his email, the Army

22  Board for the Correction of Military Records. This agency is created by federal statute and has

23  discretion to update the characterization of discharges. Upon judicial review, the statute itself

24  severely limits the scope of judicial review pursuant to the *Administrative Procedures Act.*

25

26

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

000087

1  Consequently, there are too many variables at issue to comfortably conclude that there is an

2  otherwise available remedy to fix the irreparable harm here. And, there is not reliable measure as

3  to how long SSG Claiborne and his family would have to do without his retired pay, and,

4  whether the Board's actions would result in restoration of it at all.

       C.    Great Harm to SSG Claiborne and Little Harm to the Army

5

6       This analysis involves balancing the harm to the Army if an injunction is granted with the

7  harm to the plaintiff if an injunction is denied. Generally, the balance of the equities must tip in

8  favor of the plaintiff for a court to award injunctive relief. Here, there is little if any quantifiable

9  evidence that the Army would be injured if this Court maintained the *status quo* until a

10  preliminary and/or permanent injunction may issue. By contrast, as discussed more fully above,

11  the harm to SSG Claiborne and his family is imminent and nearly catastrophic given the

12  financial obligations and comparatively modest fiscal resources available to them, not to mention

13  the emotional havoc the Army's decision is having on the marriage and SSG Claiborne's sense

14  of worth.

15       D.    The Public Interest Favors Issuing the Injunction

16

17       This Court must consider the effect, if any, on the public if the injunction is granted or

18  denied. This Court may properly consider the impact that issuing or denying an injunction may

19  pose on any third parties. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009). The

20  public's interest is served with issuance of the injunction.

21

22       Our volunteer force, and the families of soldiers who already endure great hardships,

23  must be able to trust that the Army will honor its word and properly apply regulations in fairness,

24  especially when it comes to something as monumental in people's lives as retirement benefits.

25

26

PAGE 10 OF 12 – MEMORANDUM OF LAW
DAMON CLAIBORNE V. JOHN MCHUGH

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

000088

1    Our Nation was founded upon principles of fair play, due process, and equal treatment. It is fair

2    to say that a significant portion of our country values service members generally and holds

3    combat veterans in even higher regard. And, a good number of Americans would tell you that

4    they favor the underdog and he/she who made a mistake but made good on it with responsibility,

5    accountability, and subsequent good works. These people would likely be surprised to learn of

6    the Army's treatment of SSG Claiborne and disappointed in the imperfect and apparently

7    impersonal manner with which the Army has sought to end his two-decade long career.

8
         What is more, soldiers themselves, Active, Reserve, National Guard, or on the retired list,

9
10   and the thousands of veterans of Iraq and Afghanistan, would likely cringe upon learning that

11   "Washington cut a Staff Sergeant with 20 loose," after letting him "soldier on" from his mistake

12   for a decade and serve the Army and the Nation in repeated combat tours. The public interest,

13   and frankly, the Army's interest whether it admits it or not, is served with granting the injunction

14   to set in motion the opportunity to right this harsh wrong.

15
         Accordingly, SSG Claiborne has demonstrated the possibility of success on the merits,

16
     the near certainty of irreparable harm in the absence of preliminary relief, that the balance of the
17
     equities tips in his favor, and that an injunction is in the public interest. Application of the Ninth
18
19   Circuit's sliding scale balancing test favors preliminary relief in this case.

20                                       **CONCLUSION**

21        For these reasons, this Court should grant SSG Damon's motion for a temporary

22   restraining order to stop the Army from discharging him on July 1, 2015. A proposed order is

23   filed contemporaneously with his Complaint, Motion for a Temporary Restraining Order, and

24   this Memorandum in Support.

25

26
                                                        Dana M. Mitchell, P.C.
                                                        *Attorney at Law*

1

DATED this 29th day of June, 2015.

2

Respectfully submitted,

3

*/s/ John N. Maher*                                      /s/ Dana M. Mitchell
John N. Maher, Illinois Bar No. 6237599      Dana M. Mitchell, OSB No.114637

4

*Of Attorneys for Plaintiff*                             *Of Attorneys for Plaintiff*

5

6

 /s/ Lisa D. Wright
Lisa Wright, OSB No. 125021

7

*Of Attorneys for Plaintiff*

8

9

## CERTIFICATE OF COMPLIANCE

10

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c),

11

or 543(e) because it contains 3,150 words, including headings, footnotes, and quotations, but

12

excluding the caption, signature block, exhibits, and any certificates of counsel.

13

14

15

**OUT-OF-STATE COUNSEL:**

16

JOHN N. MAHER
Illinois Bar - 6237599

17

MAHER LEGAL SERVICES, P.C.
17101 71st Street

18

Tinley Park, Illinois 60477
Ph: (312) 804-9912

19

johnmaher@maherlegalservices.com

20

21

**OF COUNSEL:**

22

Lisa D. Wright
495 State St., Ste. 500

23

Salem, Oregon 97301
Ph: (503) 580-5303

24

lisa@wrightattorneyatlaw.com

25

26

Dana M. Mitchell, P.C.
*Attorney at Law*

PAGE 12 OF 12 – MEMORANDUM OF LAW          317 Court Street N.E.
DAMON CLAIBORNE V. JOHN MCHUGH              Salem, Oregon 97301

Dana Mitchell, OSB #114637
317 Court Street NE
Salem, Oregon 97301
Ph: (503) 508-6078
Fax: (503) 581-2260
E-mail: danamitchellpc@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
Portland Division

DAMON J. CLAIBORNE

                Plaintiff,

  - versus -

JOHN M. McHUGH,
Secretary of the Army,

                Defendant.

Civil No.

DECLARATION OF PLAINTIFF, STAFF
SERGEANT DAMON J. CLAIBORNE

I, Damon J. Claiborne, declare the following:

1. My name is Damon J. Claiborne and I am 44 years old, married, with 8 dependent

   children. I am a resident of the state of Oregon and live with my family in [Redacted PII]

2. I am a non-commissioned officer in the U.S. Army with the rank of Staff Sergeant, or E-6

   on the Defense Finance and Accounting Service Pay Charts.

3. In 2005, I was convicted in the state of Washington for an offense involving sexual

   assault. I met the female with whom I had sexual relations with at a bowling alley. She

   was 5'10" and 170 pounds, and told me she was almost 19 years old. However, it turns

   out she was a minor under the laws of the state of Washington.

4. I pled guilty pursuant to an *Alford* plea, served a sentence to incarceration, and was

   released to my Army unit on Fort Lewis, Washington in 2006.

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

000091

5. Upon my return to the unit, the Army processed me for separation pursuant to AR 635-200, *Active Duty Enlisted Separations*, Chapter 14.

6. My chain-of-command reviewed the evidence and recommended, pursuant to AR 635-200, Chapter 1-18a that as a "deserving" soldier I should be retained for a 12-month probation period.

7. In 2006, the I Corps and Fort Lewis Commanding General, as the separation authority, approved the chain-of-command recommendations and retained me as a soldier on active duty in the U.S. Army.

8. I successfully completed the 12-month probation period and have been on active duty in the Army without a break in service since.

9. My Army service includes *Operation Desert Shield-Desert Storm*, Kosovo, *Operation Iraqi Freedom, Operation Enduring Freedom* (Afghanistan) and tours in Germany, Kuwait, Saudi Arabia, and Korea.

10. Since 2006, the Army has awarded me campaign ribbons for overseas service in hostile fire zones and individual medals for individual achievement, to include the Army Commendation Medal and the Army Achievement Medal.

11. The Army promoted me since 2006 to my current rank. As a non-commissioned officer, I am responsible for the lives of junior soldiers assigned to me.

12. Since 2006, the Army has authorized my reenlistment twice.

13. My last reenlistment, in 2010, was under the Army's REDUX retirement program whereby the Army agreed to my service until at least 20 years.

14. I have engaged in no misconduct, civilian or military, since 2005 which could form the

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

000092

basis of a new separation proceeding.

15. The Army approved my request for voluntary retirement pursuant to AR 635-200 Chapter 12 on January 27, 2014.

16. The Army issued approved retirement orders to me on January 27 2014 with an effective date to transfer to the retired list January 31, 2015.

17. The Army suspended my approved retirement two months before its effective date of January 31, 2015.

18. The Army retained me on active duty after January 31, 2015 in order to process me for a general discharge based on the same identical conduct it already processed me for in 2006.

19. If I am discharged on July 1, 2015, my family and I will forfeit all of my accumulated retirement benefits.

20. To rightly draw retirement benefits, the Army must transfer me from active duty to the retired list.

21. My family and I will lose the monthly retired pay (40% per month of my current monthly basic pay of $3,724 is approximately $1,500 per month), monthly cost of living allowances ("COLA") reassessed annually for inflation by zip code, as well as the honor associated with retirement as opposed to the dishonor associated with an involuntary discharge.

22. Our finances are tight and I deliver pizzas after duty hours for our local "Papa John's."

23. At no time 10 years ago or up until last Fall did the Army ever inform me that I could be administratively discharged and forfeit my retirement for the same conduct that was the

PAGE 3 OF 4 – DECLARATION OF PLAINTIFF
DAMON CLAIBORNE V. JOHN MCHUGH

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301

basis of my 2006 separation proceedings and retention.

24. Had the Army informed me that I could be "fired" at the 11th hour and lose all that I have strived for in working hard to overcome my mistake and to survive combat, I may have made different decisions about continued service.

25. Many people I have related my struggle to appear astonished that the Army would do something like this, and that it is allowed. These people include friends, family, neighbors, and other soldiers.

26. For the past few days, the Army has assigned a soldier to "escort" me around Fort Lewis as if I were a suspect.

27. The Army's decision has caused great strain on me, my wife, my family, and my marriage.

Pursuant to 28 U.S.S. § 1746, I declare under the penalty of perjury that the foregoing declaration, as well as everything stated in the Complaint and the Brief in Support of my Motion for a Temporary Restraining Order, is true and correct to the best of my knowledge.

DATED this 29th day of June, 2015.

Respectfully submitted,

Damon J. Claiborne, *Plaintiff*

PAGE 4 OF 4 – DECLARATION OF PLAINTIFF
DAMON CLAIBORNE V. JOHN MCHUGH

Dana M. Mitchell, P.C.
*Attorney at Law*
317 Court Street N.E.
Salem, Oregon 97301



**DEPARTMENT OF THE ARMY**
US ARMY INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, US ARMY GARRISON-YONGSAN
UNIT 15333
APO AP 96205-5333

IMYN-ZA                                                    6 January 2014

MEMORANDUM FOR USAG-Yongsan Transition Center, Unit # 15742, APO AP 96205-5742

SUBJECT:  Application for Voluntary Retirement – Claiborne, Damon J., Redacted PII SSG, 92F30

1.  The request for voluntary retirement submitted by, SSG Claiborne, Damon J. is approved. SSG Claiborne has completed 20 years of active federal service.

2.  The soldier must initiate Army Career and Alumni Program (ACAP) services as soon as possible. Public Law mandates that the Soldier receive the required Pre-separation Counseling (DD Form 2848) a minimum of 90 days prior to his/her separation or retirement date. If the Soldier has less than 90 days remaining prior to separation and/or retirement, the Soldier must contact the supporting local ACAP Center as soon as possible and schedule the required Pre-separation Counseling. The Soldier is not authorized to separate/retire without having a completed DD Form 2648 at the servicing Transition Center.

3.  The servicing MPD will initiate appropriate transactions to reflect the effective date of retirement. Also, the personnel officer will ensure a complete copy of the application and all allied documents are forwarded for filling in the Soldier's OMPF IAW Table 2-1, AR 600-8-104.

4.  The point of contact for this memorandum is Hyun Jin Kim at DSN 738–7621 or e-mail
Redacted PII

MICHAEL E. MASLEY
COL, AG
Commanding

Report to Suspend Favorab' rsonnel Actions (Flag)                                    Page 1 of 1

# REPORT TO SUSPEND FAVORABLE PERSONNEL ACTIONS (FLAG)
For use of this form, see AR 600-8-2; the proponent agency is MILPERCEN.

## SECTION I - ADMINISTRATIVE DATA

| 1. NAME (Last, First, MI) | 2. SSN | 3. RANK |
|---|---|---|
| CLAIBORNE, DAMON JAHRON | Redacted PII | SSG |

4. ☐ On Active Duty    ☐ Not on Active Duty    ☐ On ADT | 5. ETS/ESA/MRD

| 6. UNIT ASSIGNED AND ARMY COMMAND | 7. STATION (Geographical Location) |
|---|---|
| WAT3A0  0001HQOPNS CO A  USA FRCE CMD (FORSCOM) | JBLM LEWIS, WA |

8. HR OFFICE CONTROLLING FLAGGING ACTION AND TELEPHONE NUMBER
WAT3AA  0001HGI CORPS

9. THIS ACTION IS TO:

☑ Initiate a flag (Sections II and IV Only)    ☐ Remove Flag (Sections III and IV Only)

## SECTION II - INITIATE A FLAG

10. ☑ A FLAG IS INITIATED, EFFECTIVE __20140220__ FOR THE FOLLOWING REASON:

NON-TRANSFERABLE

☐ ADVERSE-ACTION (A)

☑ INVOLUNTARY SEPARATION/DISCHARGE-FIELD INITIATED (B)

☐ REMOVAL FROM SELECTION LIST - FIELD-INITIATED (C)

☐ REFERRED-OER/RELIEF FOR CAUSE NCOER (D)

☐ SECURITY-VIOLATION (E)

☐ REMOVAL FROM SELECTION LIST - HEADQUARTERS DA INITIATED (F)

☐ COMMANDER'S INVESTIGATION (L)

☐ LAW ENFORCEMENT INVESTIGATION (M)

☐ CDR DECISION TO BLOCK AUTOMATIC PROMOTION TO PV2,PFC&SPC (P)

☐ NOT RECOMMENDED FOR AUTOMATIC PROMOTION TO 1LT/CW2 (T)

☐ DRUG ABUSE ADVERSE ACTION (U)

☐ ALCOHOL ABUSE ADVERSE ACTION (V)

☐ HQDA INITIATED INVOLUNTARY SEPARATION/DISCHARGE (W)

☐ OTHER (X). Remarks ____

TRANSFERABLE

☐ PUNISHMENT PHASE(ADVERSE ACTION) (H). Date Complete: ____

☐ ARMY PHYSICAL FITNESS TEST FAILURE (J)

☐ ARMY BODY COMPOSITION PROGRAM (K)

## SECTION III - REMOVE A FLAG

11. ☐ A FLAG IS REMOVED, EFFECTIVE _____ FOR THE FOLLOWING REASON:

☐ FINAL-FAVORABLE REPORT (C)

☐ FINAL-UNFAVORABLE REPORT (D)

☐ FINAL-OTHER REPORT (E)

☐ DELETE-ERRONEOUS FLAG (Z)

## SECTION IV - AUTHENTICATION

DISTRIBUTION
1 - Unit Commander    1 - Soldier    1 - HRC (only if Soldier is on a HQDA selection list)
1 - S-1/MPD    1 - Commander, gaining unit (transfer flag only)

| NAME, RANK, TITLE, AND ORGANIZATION | SIGNATURE | DATE |
|---|---|---|
| Heather A. Hendon  CPT, MI  Commanding | (signature) | FEB 20 2014 |

DA FORM 268, NOV 92        EDITION OF JUN 87 and earlier are OBSOLETE        APD 9V3.000

https://emilpo.ahrs.army.mil/loadSfpaReport.do?currIndex=0&disableToken=true        2/20/2014

000096

## DEVELOPMENTAL COUNSELING FORM
For use of this form, see FM 6-22; the proponent agency is TRADOC.

### DATA REQUIRED BY THE PRIVACY ACT OF 1974

| | |
|---|---|
| **AUTHORITY:** | 5 USC 301, Departmental Regulations; 10 USC 3013, Secretary of the Army. |
| **PRINCIPAL PURPOSE:** | To assist leaders in conducting and recording counseling data pertaining to subordinates. |
| **ROUTINE USES:** | The DoD Blanket Routine Uses set forth at the beginning of the Army's compilation of systems or records notices also apply to this system. |
| **DISCLOSURE:** | Disclosure is voluntary. |

### PART I - ADMINISTRATIVE DATA

| Name (Last, First, MI) | Rank/Grade | Date of Counseling |
|---|---|---|
| Claiborne, Damon | SSG/E6 | 20 Feb 14 |

| Organization | Name and Title of Counselor |
|---|---|
| A Co, HHB, I Corps, JBLM, WA 98433 | CPT Hendon, Heather Company Commander |

### PART II - BACKGROUND INFORMATION

**Purpose of Counseling:** *(Leader states the reason for the counseling, e.g. Performance/Professional or Event-Oriented counseling, and includes the leader's facts and observations prior to the counseling.)*

Event-oriented
Suspension of Favorable action for involuntary separation

### PART III - SUMMARY OF COUNSELING
Complete this section during or immediately subsequent to counseling.

**Key Points of Discussion:**

I am initiating a flag for involuntary separation, effective today.

### OTHER INSTRUCTIONS
This form will be destroyed upon: reassignment *(other than rehabilitative transfers)*, separation at ETS, or upon retirement.  For separation requirements and notification of loss of benefits/consequences see local directives and AR 635-200.

DA FORM 4856, AUG 2010          PREVIOUS EDITIONS ARE OBSOLETE.          APD PE v1.00ES

**Plan of Action** *(Outlines actions that the s___inate will do after the counseling session to reach the a___d upon goal(s). The actions must be specific enough to modify or maintain the subordinate's behavior and include a specified time line for implementation and assessment (Part IV below)*

Soldier will comply with all required appointments in a timely fashion.

**Session Closing:** *(The leader summarizes the key points of the session and checks if the subordinate understands the plan of action. The subordinate agrees/disagrees and provides remarks if appropriate.)*

Individual counseled: ☒ I agree ☐ disagree with the information above.
Individual counseled remarks:

Signature of Individual Counseled: _____ Date: 20140220

**Leader Responsibilities:** *(Leader's responsibilities in implementing the plan of action.)*

Signature of Counselor _____ Date: FEB 2 0 2014

### PART IV - ASSESSMENT OF THE PLAN OF ACTION

**Assessment:** *(Did the plan of action achieve the desired results? This section is completed by both the leader and the individual counseled and provides useful information for follow-up counseling.)*

Counselor: _____ Individual Counseled: _____ Date of Assessment: _____

**Note: Both the counselor and the individual counseled should retain a record of the counseling.**

*REVERSE, DA FORM 4856, AUG 2010*                                APD PE v1.00ES



**DEPARTMENT OF THE ARMY**
ALPHA COMPANY
HEADQUARTERS AND HEADQUARTERS BATTALION, I CORPS
JOINT BASE LEWIS-MCCHORD, WASHINGTON 98433

AFZH-ACO-CDR

MEMORANDUM FOR SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

SUBJECT: Separation Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

1. Under the provisions of AR 635-200, Chapter 5-3, I am initiating action to separate you for Involuntary Separation Pursuant to Secretary of the Army Plenary Authority. The reasons for my proposed action are: On or between 1 September 2004 and 30 September 2004 you had sexual contact with a child who was under the age of 14 years old. On 3 January 2005 you were convicted of child molestation in the second degree in Kitsap County, Washington and sentenced to 15 months of confinement.

2. I am recommending that your service be characterized as (INITIAL OPTION):

   ( X ) Honorable.

   (   ) General under honorable conditions.

3. My recommendation and your reply will be submitted to the Secretary of the Army, who is the separation authority and will make the final decision in your case.

4. The intermediate commanders and the separation authority are not bound by my recommendation as to characterization of service. The separation authority may direct that your service be characterized as honorable or under honorable conditions.

5. If my recommendation is approved, the proposed separation could result in discharge, release from active duty to a Reserve component, or release from custody and control of the Army.

6. You have the right to consult with consulting counsel and/or civilian counsel at no expense to the Government within a reasonable time not less than 3 duty days.

7. You may submit written statements in your behalf.

AFZH-ACO-CDR
SUBJECT: Separation Under AR 635-200, Chapter 5-3, Involuntary Separation
Pursuant to Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha
Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-
McChord, Washington 98433

8. You may obtain copies of documents that will be sent to the separation authority
supporting the proposed separation. Classified documents may be summarized.

9. You are not entitled to a hearing before an administrative board, but you may submit
matters in writing within 7 calendar days from receipt of this notice.

10. You may waive the rights listed above in paragraphs 6, 7, 8, and 9 in writing, and
you may withdraw any such waiver at any time prior to the date the separation authority
orders, directs, or approves your separation.

11. You will receive counseling concerning earned education benefits as required by
law (10 USC 1046).

12. If applicable, recoupment of the unearned portion of your enlistment or reenlistment
bonus is required by law (37 USC 308).

13. You are required to undergo a complete medical examination, in accordance with
AR 40-501, if it has been more than one year since your last examination. If it has been
less than one year, but more than six months since your last examination, you will
complete a DA Form 3081 (Periodical Medical Examination Statement of Exemption).

14. Execute the attached acknowledgment and return it within 7 duty days from the
date of your receipt of this memorandum. Any statement you desire to submit in your
behalf must reach me within 7 duty days after you receive this letter, unless you request
and receive an extension for good cause shown. Unless an extension is granted, failure
to respond within 7 duty days will constitute a waiver of the rights in paragraphs 6, 7, 8,
and 9.

Encls

CHRIS KIM
CPT, CM
Commanding

2

000100

Data Required by the Privacy Act of 1974
(5 USC 552a)

AUTHORITY: 5 USC 301 and 10 USC 3013.

PURPOSE: Information provided is used by processing activities and the approval authority to determine if the member meets the requirements for recommended separation action.

ROUTINE USES: Upon completion of processing actions, the statement is filed in the OMPF. As long as filed in the OMPF, this personal information may be used by other appropriate Federal agencies and State and local government authorities where the use of the information is compatible with the purpose for which the information is collected. Release of any information from this form is subject to the restrictions of 42 USC 290dd-2 and 42 USC 290dd-3. Under these statutes and regulations, disclosure of information that would identify the client as an abuser of alcohol or other drugs is authorized within the Armed Forces or those components of the Department of Veterans Affairs furnishing health care to veterans. AR 600-85 further limits disclosure within the Armed Forces to those individuals having an official need to know (for example, the physician or the client's unit commander). All other disclosures require the written consent of the client except disclosures (1) to medical personnel outside the Armed Forces to the extent necessary to meet a bona fide medical emergency, (2) to qualified personnel conducting scientific research, management for financial audits, or program evaluation, or (3) upon the order of a court of competent jurisdiction.

Submission of a statement for consideration is voluntary. If a statement is not submitted, the Army will determine separation or retention based on the available information.



**DEPARTMENT OF THE ARMY**
ALPHA COMPANY
HEADQUARTERS AND HEADQUARTERS BATTALION, I CORPS
JOINT BASE LEWIS-MCCHORD, WASHINGTON 98433

AFZH-ACO

MEMORANDUM FOR Commander, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, WA 98433, Joint Base Lewis-McChord, Washington 98433

SUBJECT: Acknowledgment of Receipt of Separation Notice Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority

I acknowledge receipt of the foregoing notice from my commander that informs me of the basis for the contemplated action to separate me under AR 635-200, Chapter 5-3, and of the rights available to me. I have been advised of my right to consult with counsel prior to submitting my Election of Rights. I understand that unless an extension is granted, failure to respond within 7 duty days will constitute a waiver of the rights in paragraphs 6, 7, 8 and 9 of the notice.

DATE SIGNED: _20140716_ _____ (Signature)
DAMON J. CLAIBORNE
SSG, USA
Respondent



**DEPARTMENT OF THE ARMY**
ALPHA COMPANY
HEADQUARTERS AND HEADQUARTERS BATTALION, I CORPS
JOINT BASE LEWIS-MCCHORD, WASHINGTON 98433

AFZH-ACO-CDR

MEMORANDUM THRU Commander, Headquarters and Headquarters Battalion, I Corps, Joint Base-Lewis-McChord, Washington 98433

THRU Commander, 42nd Military Police Brigade, Joint Base Lewis-McChord, Washington 98433
Commander, I Corps, Joint Base Lewis-McChord, Washington 98433

FOR Secretary of the Army

SUBJECT:  Commander's Report – Proposed Separation Under AR 635-200, Chapter 5-3, Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

1.  Under the provisions of AR 635-200, Chapter 5-3, I recommend that the following named individual be (INITIAL OPTION):

( X )  Retained.

(    )  Retained and rehabilitatively transferred to another unit as directed by the G-1/MPD.

(    )  Separated, but that the separation be <u>suspended</u> for a period of _____ months (not to exceed 12 months).

(    )  Separated from the Army prior to the expiration of current term of service.

2.  Soldier information:

a.  Rank/Name/ SSN:  SSG DAMON J. CLAIBORNE

b.  Date of birth:  Redacted PII

c.  Date of enlistment/reenlistment:  19960407/20110930

d.  Length of term for which enlisted:  4 Years

AFZH-ACO-CDR
SUBJECT: Commander's Report – Proposed Separation Under AR 635-200, Chapter 5-3, Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

e. Prior service, if any: None.

f. Specific, factual reason(s) for action recommended: On or between 1 September 2004 and 30 September 2004 the Soldier had sexual contact with a child who was under the age of 14 years old. On 3 January 2005 he was convicted of child molestation in the second degree in Kitsap County, Washington and sentenced to 15 months of confinement.

g. Aptitude area scores and DMOS:

| (1) General Technical: | 116 | (7) Food Operations: | 115 |
|---|---|---|---|
| (2) Clerical Admin: | 115 | (8) Surv and Commo: | 116 |
| (3) Combat: | 115 | (9) Technical: | 117 |
| (4) Electrical: | 116 | (10) General Maintenance: | 114 |
| (5) Field Artillery: | 115 | (11) DMOS: | 92F |
| (6) Motor Mechanical: | 113 | | |

h. Results of the Common Task, Test (CTT), commander's evaluation, and Skill Qualification Test (SQT), including MOS in which evaluated and results:

i. Record of counseling, if applicable: Tab 7.

j. Description of rehabilitation attempts, if applicable:

k. Record of trials by court-martial: None.

l. Record of other disciplinary action, including non-judicial punishment (include offenses, findings, and sentence): None.

m. Report of mental status evaluation or psychiatric report is attached.

n. Report of medical examination is attached.

o. Statement why the commander does not consider it feasible or appropriate to accomplish other disposition: _____
_____

p. Promotions and dates thereof: SPC 19980128; SGT 20070701; SSG 20121201

2

000104

AFZH-ACO-CDR
SUBJECT: Commander's Report – Proposed Separation Under AR 635-200, Chapter 5-3, Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

r. Whether there is a record of time lost; if so, whether due to absence without leave, confinement, or other reasons:

s. Note favorable communications or recommendations for the Soldier:

t. Note other derogatory data other than Article 15 action and courts-martial:

u. Make note of any citations and awards:
ARCOM x3; AAM x6; MUC; AGCM x6; NDSM x2; SWASM x3; KCMBSS; ACM-CS; ICM-CS x2; GWTEM; GWTSM; KDSM; NOPDRx2; ASR; OSR x5; NATOMDL x2; SAKULIBM; KUKULIBM; COA x5; DRV/MECH; MQBSS-R

v. Where derogatory information has been revealed, make note of any evidence of rehabilitation:

w. Make note of any medical or other data meriting consideration in the overall evaluation to separate the Soldier and in the determination as to the appropriate characterization of service:

x. Other information considered pertinent:

3. This Soldier **(has)** **(has not)** filed an unrestricted report of sexual assault within 24 months of initiation of this separation action. **(if "has" is selected, answer a - d below)**

a. The separation **(does)** **(does not)** appear to be in retaliation for the Soldier filing an unrestricted report of sexual assault

b. The separation **(does)** **(does not)** involve a medical condition that is related to the sexual assault, to include Post Traumatic Stress Disorder (PTSD).

c. The separation is in the best interest of **(the Army)** **(the Soldier) (both)**.

d. The status of the case against the alleged offender is **(open)** **(closed)**, and the separation of the Soldier/victim **(will)** **(will not)** affect disposition or prosecution of the case.

3

**000105**

AFZH-ACO-CDR
SUBJECT:  Commander's Report – Proposed Separation Under AR 635-200, Chapter 5-3, Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

4.  Memoranda of notification and acknowledgment are attached as enclosures.

Encls
as

CHRIS KIM
CPT, CM
Commanding

4

**000106**



**DEPARTMENT OF THE ARMY**
ALPHA COMPANY
HEADQUARTERS AND HEADQUARTERS BATTALION, I CORPS
JOINT BASE LEWIS-MCCHORD, WASHINGTON 98433

AFZH-ACO-CDR

MEMORANDUM FOR Commander, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

SUBJECT: Election of Rights Regarding Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

1. I have been advised by my consulting counsel of the basis for the contemplated action to separate me for Involuntary Separation Pursuant to Secretary of the Army Plenary Authority under AR 635-200, Chapter 5-3 and its effects; of the rights available to me; and of the effect of any action taken by me in waiving my rights. I understand that if I am NOT entitled to have my case heard by and administrative separation board and that I have seven (7) calendar days to submit matters in my behalf.

2. Statements in my own behalf (are) (are not) submitted herewith (Encl _A_).

3. I (request) (waive) consulting counsel and representation by military counsel and/or civilian counsel at no expense to the Government.

4. I understand that I may expect to encounter substantial prejudice in civilian life if a general discharge under honorable conditions is issued to me. I understand that if I receive a discharge/character of service that is less than honorable, I may make application to the Army Discharge Review Board or the Army Board for Correction of Military Records for upgrading; however, I realize that an act of consideration by either board does not imply that my discharge will be upgraded.

5. I (have) (have not) filed an unrestricted report of sexual assault within 24 months of initiation of the separation action.

6. (To be answered only if the Soldier answered the previous question affirmatively) I (do) (do not) believe that this separation action is a direct or indirect result of the sexual assault itself or of the filing of the unrestricted report.

7. I (have) (have not) deployed overseas in support of a contingency operation during the previous 24 months. (if "have" is selected, answer a - b below)

AFZH-ACO-CDR
SUBJECT: Election of Rights Regarding Under AR 635-200, Chapter 5-3, Involuntary
Separation Pursuant to Secretary of the Army Plenary Authority, SSG Damon J.
Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint
Base Lewis-McChord, WA 98433

    a. I **(have) (have not)** been diagnosed as experiencing PTSD or TBI by a
physician, clinical psychologist, or psychiatrist.

*D.C.* b. I **(do)** ~~(do not)~~ believe, based on my service while deployed, that I experienced
either PTSD or TBI.

*D.C.* 8. I have retained a copy of this statement.

DATE SIGNED: 18 Jul 2014 _____ _____ (Signature)

                                      DAMON J. CLAIBORNE
                                       SSG, USA
                                       Respondent

Having been advised by me of the basis for his contemplated separation and its effects,
the rights available to him, the right to waive his rights, SSG Claiborne personally made
the choices indicated in the foregoing statement.

DATE SIGNED: 18 Jul 14 _____ (Signature)
Printed Name: ~~GREGORY M. LEBOUTON~~
Rank, Branch: ~~CPT, US ARMY~~
Duty Position: ~~Indefinite Per 10 USC 1044(a)~~

### (OPTIONAL WAIVER TO CONSULT COUNSEL)

Before completing my election of rights, I was afforded the opportunity to consult with
appointed counsel for consultation, or military counsel my own choice, if they are
reasonably available; or civilian counsel at my own expense. I choose to decline the
opportunity.

DATE SIGNED: _____ _____
(Signature)

                                       DAMON J. CLAIBORNE
                                       SSG, USA
                                       Respondent

000108



**DEPARTMENT OF THE ARMY**
I CORPS HEADQUARTERS AND HEADQUARTERS BATTALLION
ALPHA COMPANY
JOINT BASE LEWIS MCCHORD, WA 98433

AFZH-HHB-ACO                                                          20 JULY 2014

MEMORANDUM FOR REQUEST

TO: Secretary of The Army (Honorable), John M. McHugh

SUBJECT: Request for Retirement in Lieu of Chapter 5-3 Proceedings and Letter of intent for, SSG Claiborne, Damon J. 92F30H7, <span>Redacted PII</span> (DOB) <span>Redacted PII</span>

Honorable Mr. McHugh, It is my humbled request that the matters set before you be heard with jurisprudence, impartialness and consideration. I write this letter on behalf of my voluntary servitude to this great country for nearly 25 years, the tenacious dedication I possess and at the request of my Spouse and children. There are many programs within in the military intended to take care of Soldiers and their families, which were at the infancy stages during my tenure in service. Unfortunately and substantially they were not understood to the extent they are now, which still requires a bit of fine tuning.

I for one was disheartened when I was sent in to combat pending a investigation of my Spouses sexual assault by a neighboring Soldier on post in 2003. My Spouse felt the military was not supportive for sending me into combat not even a week into the incident and eventually she abandoned government quarters and would not return to my duty station. I came home to a empty house and was greeted by no one. My life subsequently fell apart for I was mandated to leave government quarters and barely having a place to live and sometimes in my car due to supporting my spouse and children from afar.

I soon fell into clinical depression, feeling I had no one to rely on. I eventually met a young women I was acquainted with online which led to the demise, which I now find myself in. I have no excuse to offer but the emptiness in my own heart, which was truly a lapse of judgment, awareness, education on resiliency and coping skills: post deployment. Soon after my release from incarceration there was noticed infusion of Soldier and family programs that seem to snag and identify the apparent problems most married and single Soldiers encountered, which seemed to improve as the programs matured.

I increasingly became aware of my social faults and ideations and have tremendously improved in all areas of my life. I have been dedicated from day one to this cause as a Soldier and leader. I am tenacious in every aspect I can to improve an individuals Soldier's life, unit, platoon, squad and any program I feel that needs the touch of a Non Commissioned Officer that cares, for I wasn't given the same as a young Soldier. Seeking help was stigmatized and sadly still remains.

I have prevented sexual assaults, reported sexual assaults and have had many female soldiers confided in me as well as males, due to this tragic topic that occurs daily within in the ranks. Sadly before my incarceration I was sexually assaulted and was seen clinically which I couldn't report jurisdictionally, to the military. In no way should any Soldier have to suffer this issue at all in the military. I have deployed, led and trusted myself to do the right thing ever since the singular mistake, that caused so much pain personally to my life and my very own family.

I will not let something I've learned from define the total life of me. I have been dedicated to the B.O.S.S. Program since it's inception and popularity and have volunteered hundreds of hours in the program with my last stint primarily organizing the first ever Army Ten-Miler Shadow Run, officiated on USAG-Yongsan, in 2013. I have participated in numerous Unit ministry teams as a chorus member and support staff . I thank you and others for giving me the opportunity to serve and I am grateful of being able to "do what must be done" and that's taking care of Soldiers! Peace be unto you and God Bless! Sincerely and Very Respectfully,

DAMON J. CLAIBORNE
SSG,USA



**DEPARTMENT OF THE ARMY**
HEADQUARTERS AND HEADQUARTERS BATTALION, I CORPS,
JOINT BASE LEWIS-MCCHORD, WASHINGTON 98433

AFZH-HHB-CDR

THRU Commander, 42nd Military Police Brigade, Joint base Lewis-McChord, Washington 98433
Commander, I Corps, Joint base Lewis-McChord, Washington

FOR Secretary of the Army

SUBJECT: Separation Under AR 635-200, Chapter 5-3, Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, WA 98433, Joint Base Lewis-McChord, Washington 98433

1. I have reviewed the enclosed Separation packet on , SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, WA 98433

2. After careful consideration of all matters, I recommend this Soldier be (INITIAL OPTION):

(   ) Retained.

(   ) Retained and rehabilitatively transferred to another unit as directed by the G-1/MPD.

(   ) Separated, but that the separation be <u>suspended</u> for a period of _____ months (not to exceed 12 months).

(   ) Separated from the Army prior to the expiration of current term of service.

I recommend that this Soldier's service be characterized as (INITIAL OPTION IF PARATION WAS SELECTED ABOVE):

) Honorable.

General under honorable conditions.

AFZH-HHB-CDR
SUBJECT: Separation Under AR 635-200, Chapter 5-3, Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, WA 98433, Joint Base Lewis-McChord, Washington  98433

4.  This Soldier **(has)(has not)** filed an unrestricted report of sexual assault within 24 months of initiation of this separation action.  **(if "has" is selected, answer a - d below)**

   a.  The separation **(does) (does not)** appear to be in retaliation for the Soldier filing an unrestricted report of sexual assault

   b.  The separation **(does) (does not)** involve a medical condition that is related to the sexual assault, to include Post Traumatic Stress Disorder (PTSD).

   c.  The separation is in the best interest of **(the Army) (the Soldier) (both)**.

   d.  The status of the case against the alleged offender is **(open) (closed)**, and the separation of the Soldier/victim **(will) (will not)** affect disposition or prosecution of the case.


Encls                                              CHRISTOPHER M. RIZZO
as                                                 LTC, SF
                                                   Commanding

2



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, 42D MILITARY POLICE BRIGADE
BUILDING 2007B, 2D STREET, BOX 339500, MAIL STOP 55
JOINT BASE LEWIS-MCCHORD, WASHINGTON 98433

AFZH-MP

MEMORANDUM THRU Commander, I Corps, Joint Base Lewis-McChord, Washington 98433

MEMORANDUM FOR Secretary of the Army

SUBJECT: Separation under AR 635-200, Chapter 5-3 (Secretary of the Army Plenary Authority), Staff Sergeant (E6) Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington

1. I have reviewed the enclosed separation action on Staff Sergeant (E6) Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington.

2. After careful consideration of all matters, I recommend this Soldier be:

(   ) Retained and rehabilitatively transferred to another unit as directed by the G-1/MPD.

(   ) Separated, but that the separation be suspended for a period of _____ months (not to exceed 12 months).

(  ⅄ ⅄ ) Separated from the Army prior to the expiration of his current term of service

3. I recommend that this Soldier's service be characterized as (Honorable)(General, under honorable conditions).

DAVID L. CHASE
COL, MP
Commanding

**000113**



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, I CORPS
BOX 339500, MAIL STOP 1
JOINT BASE LEWIS-MCCHORD, WASHINGTON 98433-9500

8/27/14

AFZH-CG

MEMORANDUM FOR Headquarters, Department of the Army, ATTN: AHRC-EPR-F, 1600 Spearhead Division Avenue, Fort Knox, Kentucky 40122

SUBJECT: Separation Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority, Staff Sergeant Damon J. Claiborne, A Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

1. I have reviewed the enclosed Separation packet on, Staff Sergeant Damon J. Claiborne, A Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

2. After careful consideration of all matters, I recommend this Soldier be (INITIAL OPTION):

    (    ) Retained.

    (    ) Retained and rehabilitatively transferred to another unit as directed by the G-1/MPD.

    (    ) Separated, but that the separation be <u>suspended</u> for a period of _____ months (not to exceed 12 months).

    (JD) Separated from the Army prior to the expiration of current term of service.

3. I recommend that this Soldier's service be characterized as (INITIAL OPTION IF SEPARATION WAS SELECTED ABOVE):

    (    ) Honorable.

    (JD) General under honorable conditions.

4. This Soldier has not filed an unrestricted report of sexual assault within 24 months of initiation of this separation action.

5. Due to the nature of this Soldier's misconduct, this separation (is) (is not) in the best interest of the U.S. Army.

AFZH-CG
SUBJECT:  Separation Under AR 635-200, Chapter 5-3, Involuntary Separation
Pursuant to Secretary of the Army Plenary Authority, Staff Sergeant Damon J.
Claiborne, A Company, Headquarters and Headquarters Battalion, I Corps, Joint Base
Lewis-McChord, Washington  98433


6.  All counseling requirements have been met in accordance with Army Regulation
(AR) 635-200 (Active Duty Enlisted Administrative Separations), 6 September 2011,
Chapter 1-20.

Encl                                          KENNETH R. DAHL
SJA Advice                                    Major General, USA
                                              Commanding

# SUPPORTING
# DOCUMENTS

**A-** Army Directive 2013-21 **(Initiating Separation Proceedings and Prohibiting Overseas Assignment for Soldiers Convicted of Sex Offenses)**, dated 7 November 2013

**B-** LTC Acosta's Memo to SSG Claiborne & SSG Claiborne's Response, dated 10 February 2014

**C-** SSG Claiborne's previous separation under Army Regulation 635-200, chapter 14 dated 10 May 2006

**D-** SSG Claiborne's reassignment orders to Joint Base Lewis-McChord, Washington dated 27 January 2014

**E-** SSG Claiborne's judgment and sentence documents from Kitsap County, Washington and warrant of commitment, dated 3 January 2005

**F-** SSG Claiborne's charging documents, dated 12 November 2004

**G-** SSG Claiborne's statement of plea of guilty sex offense, dated 12 November 2004

**H-** DA Form 4187s taking SSG Claiborne from present for duty to confinement and then from confinement to present for duty

**I-** SSG Claiborne's medical examination dated 23 June 2014



**SECRETARY OF THE ARMY**
**WASHINGTON**

**0 7 NOV 2013**

MEMORANDUM FOR SEE DISTRIBUTION

SUBJECT: Army Directive 2013-21 (Initiating Separation Proceedings and Prohibiting Overseas Assignment for Soldiers Convicted of Sex Offenses)

1. References:

    a. Title 42, United States Code, section 16911.

    b. Army Regulation (AR) 27-10 (Military Justice), 3 October 2011.

    c. AR 135-178 (Enlisted Administrative Separations), 13 March 2007, including Rapid Action Revision (RAR) 2 issued 13 September 2011.

    d. AR 635-200 (Active Duty Enlisted Administrative Separations), 6 June 2005, including RAR 3 issued 6 September 2011.

    e. AR 135-175 (Separation of Officers), 28 February 1987, including RAR 2 issued 4 August 2011.

    f. AR 600-8-24 (Officer Transfers and Discharges), 12 April 2006, including RAR 3 issued 13 September 2011.

    g. AR 10-87 (Army Commands, Army Service Component Commands, and Direct Reporting Units), 4 September 2007.

2. Sex offenses are serious crimes. Notwithstanding the provisions of any other Army regulation, directive, policy or other like guidance published by any Army official or organization, this directive establishes new policy to ensure that the decision to retain any Soldier convicted of a sex offense is fully informed and in the Army's best interest. In addition, this directive establishes Army policy prohibiting the overseas assignment or reassignment of any Soldier convicted of a sex offense.

3. Commanders will initiate the administrative separation of any Soldier convicted of a sex offense, as defined by references 1a or 1b, whose conviction did not result in a punitive discharge or dismissal. This policy applies to all personnel currently in the Army, regardless of when the conviction for a sex offense occurred and regardless of component of membership and current status in that component.

SUBJECT: Army Directive 2013-21 (Initiating Separation Proceedings and Prohibiting Overseas Assignment for Soldiers Convicted of Sex Offenses)

a. For enlisted personnel:

(1) Commanders will follow the current policy for initiating administrative separation proceedings pursuant to references 1c or 1d, as appropriate.

(2) If the separation authority approves retention, he or she will initiate an action for the exercise of Secretarial plenary separation authority under paragraph 14-3 of reference 1c or paragraph 5-3 of reference 1d, as appropriate.

(3) If an enlisted Soldier who has been convicted of a sex offense already has been subject to an administrative separation action under references 1c or 1d for that conviction and has been retained as a result of that proceeding, the separation authority will initiate a separation action under the Secretarial plenary authority, as detailed in paragraph 3a(2) of this directive.

b. For commissioned and warrant officers:

(1) Commanders *will* initiate an elimination action under references 1e or 1f, as appropriate.

(2) No further action is required if a commissioned or warrant officer who has been convicted of a sex offense has already been subject to an elimination action for that conviction and has been retained.

4. Commanders will ensure that Soldiers convicted of an offense covered by references 1a or 1b are not assigned or deployed on a temporary duty (TDY), temporary change of station (TCS) or permanent change of station (PCS) status to duty stations outside of the Continental United States (OCONUS). The only permitted OCONUS locations are Hawaii, Alaska, the Commonwealth of Puerto Rico, or Territories or possessions of the United States.

5. Soldiers currently serving in any non-permitted OCONUS locations who have been convicted of an offense covered by references 1a or 1b are ineligible for continued duty at those locations. Accordingly, overseas commanders of Army Commands, Army Service Component Commands or Direct Reporting Units (as established in reference 1g) will identify such Soldiers in their commands and coordinate with the applicable Headquarters, Department of the Army Assignment Authority (Commander, U.S. Army Human Resources Command; The Judge Advocate General; or Chief of Chaplains) for reassignment to the continental United States or the permitted OCONUS locations listed in paragraph 4 as soon as possible. Soldiers who are deployed to a non-permitted OCONUS location in any status (TDY/TCS) will immediately be returned to their parent organization. Command responsibility to reassign or redeploy a Soldier under this policy takes precedence over initiation of separation. Accordingly, Soldiers

2

000118

SUBJECT: Army Directive 2013-21 (Initiating Separation Proceedings and Prohibiting Overseas Assignment for Soldiers Convicted of Sex Offenses)

convicted of an offense covered by references 1a or 1b will first be reassigned or redeployed to a CONUS or permitted OCONUS location. The receiving commander will subsequently ensure the initiation of separation in accordance with paragraph 3.

6. The provisions of this directive are effective immediately. The Deputy Chief of Staff, G-1 is the proponent for this policy and, in coordination with the Assistant Secretary of the Army (Manpower and Reserve Affairs), will publish appropriate implementing instructions as soon as possible. This directive and its implementing instructions take precedence over and cancel any conflicting guidance. They will remain in effect until relevant Army regulations are revised and published to incorporate the policies set forth herein.

John M. McHugh

DISTRIBUTION:
Principal Officials of Headquarters, Department of the Army
Commander
    U.S. Army Forces Command
    U.S. Army Training and Doctrine Command
    U.S. Army Materiel Command
    U.S. Army Pacific
    U.S. Army Europe
    U.S. Army Central
    U.S. Army North
    U.S. Army South
    U.S. Army Africa/Southern European Task Force
    U.S. Army Special Operations Command
    Military Surface Deployment and Distribution Command
    U.S. Army Space and Missile Defense Command/Army Strategic Command
    U.S. Army Cyber Command
    U.S. Army Network Enterprise Technology Command/9th Signal Command (Army)
    U.S. Army Medical Command
    U.S. Army Intelligence and Security Command
    U.S. Army Criminal Investigation Command
    U.S. Army Corps of Engineers
    U.S. Army Military District of Washington
    U.S. Army Test and Evaluation Command
    U.S. Army Installation Management Command
Superintendent, United States Military Academy
(CONT)

000119

SUBJECT:  Army Directive 2013-21 (Initiating Separation Proceedings and Prohibiting Overseas Assignment for Soldiers Convicted of Sex Offenses)

DISTRIBUTION:  (CONT)
Director, U.S. Army Acquisition Support Command
Executive Director, Arlington National Cemetery
Commander, U.S. Army Accessions Support Brigade

CF:
Director, Army National Guard
Director of Business Transformation

4

**000120**



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, I CORPS
BOX 339500, MAIL STOP 69
JOINT BASE LEWIS-MCCHORD, WASHINGTON 98433

REPLY TO
ATTENTION OF

AFZH-JA

*10 Feb 2014*

MEMORANDUM FOR SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, WA 98433, Joint Base Lewis-McChord, Washington 98433

SUBJECT: Army Directive 2013-2, Separation Proceedings for Conviction of Sex Offense

1. The Secretary of Army directed initiation of separation proceeding of all Soldiers convicted of a sex offense if the conviction did not result in a punitive discharge or dismissal, regardless of when the conviction occurred and regardless of the component of membership and current status in that component.

2. The Secretary further directed that if an enlisted Soldier who has been convicted of a sex offense already has been subject to administrative separation action, the separation authority will initiate separation action under Secretarial plenary authority as described in AR 635-200, paragraph 5-3.

3. You were convicted of Child Molestation in the second degree in Kitsap County, Washington in January 2005. Based upon the date of this conviction, you may have been subject to a separation action and retained, but the documents may have been destroyed in accordance with Army records retention policy.

4. Please answer the questions on the following page and return this memorandum with your signature to the I Corps Criminal Law Division.

5. You will receive notice of which type of separation you may face shortly and will have the right to respond and submit matters on your own behalf. Your full rights will be explained in detail in a separate notice.

LANNY J. ACOSTA, JR.
Chief, Criminal Law Division
LTC, JA

**000121**

AFZH-JA
SUBJECT: Army Directive 2013-2, Separation Proceedings for Conviction of Sex Offense.

I, SSG Damon J. Claiborne:

(INITIAL OPTION):

a. (✗) **Have** been subject to administrative separation action based upon my conviction in 2005 or based upon the underlying misconduct upon which the conviction was based and I (✗) **DO** ( ) **DO NOT** possess documentary proof of my retention at this proceeding.

b. ( ) **Have NOT** been subject to administrative separation action based upon my conviction in 2005 or based upon the underlying misconduct upon which the conviction was based.

DATE SIGNED: 20140210
(Signature)

DAMON J. CLAIBORNE
SSG, USA
Respondent



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, I CORPS AND FORT LEWIS
BOX 339500
FORT LEWIS, WASHINGTON 98433-9500

REPLY TO
ATTENTION OF:

AFZH-CG

MAY 1 0 2006

MEMORADUM FOR Deputy Chief of Staff for Personnel, I Corps and Fort Lewis, ATTN: AFZH-AGI-PT, Fort Lewis, Washington 98433-9500

SUBJECT: Separation Under AR 635-200, Chapter 14

1. I have reviewed the information pertaining to Specialist (E-4) Damon J. Claiborne, -6603, 528th Quartermaster Company, 80th Ordnance Battalion, 593d Corps Support Group, Fort Lewis, Washington 98433-9500, and the recommendation that he be discharged from the Army prior to the expiration of his current term of service, under the provisions of AR 635-200, Chapter 14, Section III, Paragraph 14-5, for conviction by civil court.

2. I direct that he be discharged from the U.S. Army and his service be characterized as follows:

    ( ) Honorable

    (X) General, under honorable conditions

    ( ) Other than honorable conditions

    (X) Furthermore, per AR 635-200, para 1-18, I direct suspending the execution of the separation for the period of _12_ months (up to 12 months).

3. The service member will report to the Separation Transition Center for separation processing. Separation will be accomplished within three working days after receipt of the packet by the Separation Transition Center. The unit commander will ensure that the service member is escorted by a responsible Soldier in the rank of SGT or above throughout his out processing.

4. Upon completion of his processing for separation he will also be barred from entering the installation in accordance with the terms of the enclosed memorandum. The service member must be prepared to present his "clearing" papers at all times when he is on the installation.

5. This correspondence will be filed as permanent material in the service member's Official Military Personnel File (OMPF) IAW AR 600-8-104.

5 Encls
1. SJA Advice
2. Chain of Command Recommendations
3. Conditional Waiver
4. Administrative Separation Packet

OSCAR B. HILMAN
Brigadier General, USA
Acting Commander

000123



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, 593D CORPS SUPPORT GROUP
FORT LEWIS, WASHINGTON 98433-9500

REPLY TO
ATTENTION OF:

AFZH-GP

Date: 25 April 06

MEMORANDUM FOR Commander, I Corps and Fort Lewis, ATTN: AFZH-JAC, Fort
Lewis, Washington 98433-9500

SUBJECT: Separation Under AR 635-200, Chapter 14

1. I have reviewed the separation action against SPC Damon J. Claiborne,
~~Redacted PII~~ 528th Quartermaster Company, 80th Ordnance Battalion, 593d Corps Support
Group, Fort Lewis, Washington 98433-9500, and recommend as follows:

( ) Retain the Soldier on active duty.

( ) Approve the separation with the following characterization of the service:

( ) Honorable

RBB ( ✓ ) General, under honorable conditions

( ) Other than honorable

RBB ( ✓ ) Furthermore, per AR 635-200, para 1-18, I recommend suspending
the execution of the separation for the period of 12 months (up to 12 months) as
this Soldier is a highly deserving soldier who should be given a probation period to
show successful rehabilitation.

RICHARD B. BURNS
COL, TC
Commanding

nc

CF:
SPC Claiborne (w/encls)
Cdr, 528th QM Co, 80th OD Bn (wo/encls)



DEPARTMENT OF THE ARMY
HEADQUARTERS,
44TH CORPS SUPPORT BATTALION (REAR) (PROVISIONAL)
FORT LEWIS, WASHINGTON 98433-9500

REPLY TO
ATTENTION OF

AFZH-GPF                                                9 February 2006

MEMORANDUM FOR RECORD

SUBJECT:  Commander's Request

1.  I, Diffendafer, Clifford A., request a General Discharge for Damon Claiborne, SPC, SSN Redacted PII effective 9 February 2006.

2.  POC for this memorandum is the undersigned @ 967-4291.


CLIFFORD A. DIFFENDAFFER
CPT, QM
Commanding


GENERAL DISCHARGE   Honorable Conditions
                    FEB 2005 originall inj tintod
REVERSED               @ FT. LEWIS
   AND RETAINED
   IN SERVICE

DEPARTMENT OF THE ARMY
US ARMY INSTALLATION MANAGEMENT COMMAND
PACIFIC REGION, US ARMY GARRISON-YONGSAN
TRANSITION CENTER
UNIT #15333
APO AP  96205-5333

ORDERS 027-0002                                      27 January 2014

CLAIBORNE, DAMON JAHRON, [Redacted PII] SSG, 0008 HQ INTEL CO HHB, (WJS7B0) APO AP
96205

You are reassigned as shown for separation processing.  Information concerning
your port call will be provided separately.

Assigned to:  NA
Reporting date:  NA
Additional instructions:  a.  Report to your Personnel Administration Center
(PAC) not earlier than 10 working days prior to your leave start date to pick
up a memorandum authorizing the Area II In & Out Processing Center (IOP) to
issue you your out-processing checklist.  b.  You must report to ACAP (Bldg.
4036, Yongsan South Post) DSN 738-7334, to receive separation counseling and
DD Form 2648 (ACAP Counseling checklist) as required by Public Law 101-510.
c.  You must report to your servicing Finance Office immediately upon receipt
of these orders.  Advance travel pay is not authorized.  You should bring
enough cash to defray expenses while on travel and for transportation to and
from air terminals.  Travel claims will be processed and you will be
reimbursed authorized travel and transportation expenses after you mail your
travel voucher upon arrival at final destination.  POC at Finance is the
separations clerk at 723-3279.  d.  Unless otherwise authorized/approved, a
Soldiers housing allowance is based on the permanent duty station (PDS).  A
Soldier may be authorized a housing allowance based on the location at which
the dependents maintain/establish a permanent residence if authorized/approve
through the Secretarial Process. Dependents: YES:
e. You will report to the Education Center upon receipt of these orders.
Phone number DSN 723-8403.  f.  You will report to the Yongsan Transition
Center ONE WEEK prior to your final out-processing to update and sign your DD
Form 214.  For this appointment, bring supporting documents, ribbons and
medals received, and military schools completed.  Phone number DSN 723-6477.
g.  Soldier has not pre-selected a location for retirement.  Final travel
settlement will be made after separation when soldier arrives at place of
retirement.  h.  If you plan to ship personal property at Government expense,
contact the local installation transportation office immediately upon receipt
of these orders to make arrangements for shipment of household goods and/or
unaccompanied baggage.  Phone number DSN 738-4817.  i.  You must report to
your local Installation Commercial Transportation Office (CTO) (Moyer
Recreation Center, Building 2259, Main Post, Yongsan) to arrange air
transportation.  Phone number DSN 725-6173.  j.  Household goods will remain
in storage until forwarding notification by soldier.  HHG will then be
forwarded to soldier's home of selection.  You have one year to store goods
at government expense.  k.  Upon separation from active duty you must report
to the nearest military installation to receive a Retiree ID Card with an
expiration of INDEFINITE.  Bring your DD214, copy 4 with you to obtain your
ID Card.  l.  Final Out-processing. You will report to Rm 126, Bldg 4034 at
1000 hours on the last working day prior to departure on PTDY/transition
leave.  You must be completely cleared of post and your unit before reporting
for final out-processing. Bring the following: completed clearing papers,
COMPLETED MEDICAL/DENTAL RECORDS MEMORANDUM SIGNED AND STAMPED BY YOUR

ORDERS 027-0002                                           27 January 2014

SERVICING MEDICAL TREATMENT FACILITY OR DENTAC, retirement physical
examination, and military ID card with correct separation date.  m.  Soldier
has approved PTDY/Transition leave: IAW DA-31.  n.  Final out processing is
accomplished at BLDG 4034 on South Post in Yongsan. Out processing must be
done in Duty uniform. For more information please contact the Military
Personnel Division (MPD) at 723-5161.  o.  Service member is authorized movement
of Dependents at Goverment expense to Home of Selection. DEPENDENTS: Redacted PII
Redacted PII Spouse: DOB: NA:
member is authorized shipment of 1/2 JFTR and one (1) POV from Seoul Korea to
Home of selection. p. Survey must be completed before out processing. Proceed to
the following link
http://www.myarmyonesource.com/ArmyTransitionProgramExitSurvey
Complete the required survey and print the certificate upon completion to be
presented when out processing.


FOR ARMY USE
Auth:  AR 635-200
18 years act Federal svc on 1 Nov 81:  Not applicable
HOR:     Redacted PII
Scheduled date of separation:  31 January 2015
MDC:  7AE4
Place EAD or OAD:  LOS ANGELES CA US
Comp:  REGULAR
SPD:  IAW AR 635-5-1
CIC:  2Q4CLA6603PD700
Aval Date:  06 November 2014
PBBD:  Not applicable
FOR ADDITIONAL INFORMATION CONTACT:
ROBERT E. RING,  TRANSITION SPECIALIST      Redacted PII         DSN 315
723-8227
SDN:  CLA6603PD70002
Format:  430

FOR THE DIRECTOR:

                          ******************************
                          *          OFFICIAL          *
                          ******************************
                          PAUL M. LUNTUMBUEZ
                          DIRECTOR OF HUMAN RESOURCES


DISTRIBUTION:
SSG CLAIBORNE (15)
Cdr 0008 HQ INTEL CO HHB, (WJS7B0) (3)
FINANCE(1)
YONGSAN TRANSITION CENTER (2)

                                  2

DEPARTMENT OF THE ARMY
US ARMY INSTALLATION MANAGEMENT COMMAND
PACIFIC REGION, US ARMY GARRISON-YONGSAN
TRANSITION CENTER
UNIT #15333
APO AP  96205-5333

O-0898 027-0001                                                    27 January 2014

CLAIBORNE, DAMON JAHRON, [Redacted PII] SSG, 0008 HQ INTEL CO HHB, (WJS7B0)APO AP
9520?

You are released from active duty and, on the date following, placed on the
retired list. The people of the United States express their thanks and
gratitude for your faithful service. Your contributions to the defense of the
United States of America are greatly appreciated.  On date placed on the retired
list, you are transferred to the U.S. Army Reserve Control Group (Retired), U.S.
Army Human Resources Command, Fort Knox, KY  40121-5500.

Effective date:  31 January 2015
Retired grade of rank:  SSG
Current grade effective date:  01 December 2012
Authorized place of retirement:  YONGSAN TC APO-AP, KOREA YONGSAN AP 96205-5742
Requested place of retirement:  N/A
Effective date of retirement:  31 January 2015
Date placed on retirement list:  01 February 2015
DOB:  [Redacted PII]
Sex:  M
Citizenship code:  A
Retirement type and allotment code:  NON DISABILITY/2
Component:  RA
Statute authorizing retirement:   3914
Other eligible laws:  Not applicable
Vol retirement:  20 years, 0 months, 3 days
Date initially entered military:  21 February 1989
Section 1405:  20 years, 0 months, 3 days
Basic Pay:  24 years, 7 months, 4 days
Significant awards:  Not applicable
18 years act Federal svc on 1 Nov 81:  Not applicable
HOR:  [Redacted PII]
Place EAD or OAD:  LOS ANGELES CA US
MDC:  7AE4
Additional instructions:  a.  PCN is:  NA

PEBD:  Not applicable
FOR ADDITIONAL INFORMATION CONTACT:
ROBERT E. RING, TRANSITION SPECIALIST  [Redacted PII]  DSN 315
723-8227
SDN: CLA6603DD70001
Format:  600
FOR THE DIRECTOR:

```
************************************
*            OFFICIAL             *
************************************
```
PAUL M. LUNTUMBURZ
DIRECTOR OF HUMAN RESOURCES

ORDERS 027-0001                                              27 January 2014

DISTRIBUTION:
SSG CLAIBORNE (15)
Cdr 0008 HQ INTEL CO HHB, (WJS7B0) (3)
FINANCE(1)
YONGSAN TRANSITION CENTER (2)
CDR, USAR (RET) CONTROL GROUP (1)

2

000129

RECEIVED AND FILED
IN OPEN COURT

JAN 0 3 2005

KITSAP COUNTY CLERK

# IN THE KITSAP COUNTY SUPERIOR COURT

STATE OF WASHINGTON, )
                                     ) No. 04-1-01570-5
            Plaintiff, )
                                      ) JUDGMENT AND SENTENCE
             v. )
                                        )
DAMON JAHRON CLAIBORNE, )
Age: 33; DOB: <span>Redacted PII</span> )
                                     )
            Defendant. )

     A sentencing hearing was held in which the Defendant, the Defendant's attorney, and the Deputy Prosecuting Attorney were present. The Court now makes the following findings, judgment and sentence.
     The Defendant was found guilty, by ☑ plea ☐ jury verdict ☐ bench trial ☐ trial upon stipulated facts, of the following—

| 2.1 CURRENT OFFENSE(S) *Asterisk (*) denotes same criminal conduct (RCW 9.94A.525)* | RCW | Date(s) of Crime from | Date(s) of Crime to | Special Allegations* |
|---|---|---|---|---|
| I | Child Molestation in the Second Degree | 9A.44.086 | 09/01/2004 | 09/30/2004 | |

| 2.2 CRIMINAL HISTORY (RCW 9.94A.525) *Asterisk (*) denotes prior convictions that were same criminal conduct.* | Date of Crime | Date of Sentence | Sentencing Court | Juv (x) |
|---|---|---|---|---|
| No known criminal history | | | | |

### 2.3 SENTENCING DATA

| Count | Offender Score | Seriousness Level | Standard Range | Days (x) | Mo. (x) | Special Allegations Type* | Mo. | Total Standard Range (Mo.) | Maximum Term |
|---|---|---|---|---|---|---|---|---|---|
| I. | 0 | VII | 15 to 20 | - | X | | | | 10 years |

☐ Defendant committed a current offense while on community placement (adds one point to score). RCW 9.94A.525.

*SPECIAL ALLEGATION KEY (RCWs)- F=Firearm, DW=Deadly Weapon (9.94A.602,510); DV=Domestic Violence (10.99.020); SZ=School Zone (69.50.435); SM=Sexual Motivation (9.94A.835); VH=Vehicular Homicide Prior DUI (46.61.5055); CF=drug crime at Corrections Facility (9.94A.510); JP=Juvenile Present at manufacture (9.94A.605).

JUDGMENT AND SENTENCE; Page 1

[Form revised December 15, 2002]



Russell D. Hauge, Prosecuting Attorney
Adult Criminal and Administrative Divisions
614 Division Street, MS-35
Port Orchard, WA 98366-4681
(360) 337-7174; Fax (360) 337-4949

## CONFINEMENT/STATUS

☐ **4.5~SSOSA–SPECIAL SEXUAL OFFENDER SENTENCING ALTERNATIVE.** RCW 9.94A.670. The Defendant is a sex offender and is sentenced under SSOSA. The execution of the sentence of confinement is suspended and the Defendant is placed on community custody.

☐ **CHEMICAL DEPENDENCY**–The Court finds the Defendant has a chemical dependency that contributed to the offense(s). RCW 9.94A.030(9).

☐ **2.4~EXCEPTIONAL SENTENCE**–Substantial and compelling reasons exist justifying a sentence ☐ above the standard range ☐ below the standard range, and/or ☐ warranting exceptional conditions of supervision for count(s) _____. The Prosecutor ☐ did ☐ did not recommend a similar sentence. ☐ The exceptional sentence was stipulated by the Prosecutor and the Defendant. Findings of Fact and Conclusions of Law entered in support of the exceptional sentence are incorporated by reference.

☐ **4.5~PERSISTENT OFFENDER**–The Defendant is a Persistent Offender as defined by RCW 9.94A.030(32) and 9.94A.570 and is sentenced to life without the possibility of early release.

| COURT'S SENTENCE: | *Sentences over 12 months will be served with the Department of Corrections. Sentences 12 months or less will be served in the Kitsap County Jail, unless otherwise indicated.* | |
|---|---|---|
| COUNT **1** **15** ☐ Days ☑ Mo. | COUNT____ ☐ Days ☐ Mo. | COUNT____ ☐ Days ☐ Mo. |
| COUNT____ ☐ Days ☐ Mo. | COUNT____ _____ Days with _____ | Days Suspended for ___ Years |

**CONFINEMENT UNDER RCW 9.94A.712**–The Defendant is sentenced to the following term of confinement in the custody of the DOC:

COUNT___   **Minimum Term:** _____ Months
Maximum Term: ☐ 10 years from today's date ☐ for the remainder of Defendant's life

COUNT___   **Minimum Term:** _____ Months
Maximum Term: ☐ 10 years from today's date ☐ for the remainder of Defendant's life

COUNT___   **Minimum Term:** _____ Months
Maximum Term: ☐ 10 years from today's date ☐ for the remainder of Defendant's life

The Indeterminate Sentencing Review Board may increase the minimum term of confinement.

☐ SSOSA Sentence for Count(s) _____ : _____ Months to be served, with the remainder of the sentence terms suspended for duration of the SSOSA program. RCW 9.94A.670(5).

**IF MULTIPLE COUNTS**–Total confinement ordered: _____ ☐ Days ☐ Months   Max. Term: _____
COUNTS TO BE SERVED–☐ Concurrent ☐ Consecutive ☐ Counts _____ served consecutive; the remainder served concurrent.   ☐ VUCSA enhancements served ☐ consecutive ☐ concurrent; the remainder consecutive.

☐ **CONCURRENT TO OTHER CAUSES**–This sentence shall run concurrent to sentence(s) ordered in cause number(s) _____

☐ **JAIL ALTERNATIVES/PARTIAL CONFINEMENT.** RCW 9.94A.030(31). If the defendant is found eligible, the confinement ordered may be converted to–
Work Release, RCW 9.94A.731. *Note: the Kitsap County Jail has the discretion to have the Defendant complete work release at the Kitsap County Jail or Peninsula Work Release,* Home Detention, RCW 9.94A.731,.190, Supervised Community Service or Work Crew, RCW 9.94A.725 at the discretion of the Kitsap County Jail.

☐ **STRAIGHT TIME.** The confinement ordered shall be served in the Kitsap County Jail.

☒ **CREDIT FOR TIME SERVED.** RCW 9.94A.505. Defendant shall receive credit for time served prior to sentencing solely on this cause number as computed by the jail unless specifically set forth– ___ days.

☒ **4.5~NO CONTACT ORDER**–Defendant shall abide by the terms of any no contact order issued as part of this Judgment and Sentence.

JUDGMENT AND SENTENCE; Page 2

[Form revised December 15, 2002]

Russell D. Hauge, Prosecuting Attorney
Adult Criminal and Administrative Divisions
614 Division Street, MS-35
Port Orchard, WA 98366-4681
(360) 337-7174; Fax (360) 337-4949

## SUPERVISION

☒ 4.6—COMMUNITY CUSTODY. RCW 9.94A.505, .545 and WAC 437-20-010. Defendant shall be supervised for the longest time period checked in the table below. Defendant shall report to DOC in person no later than 72 hours after release from custody and shall comply with all conditions stated in this Judgment and Sentence, including those checked in the SUPERVISION SCHEDULE, and other conditions imposed by the court or DOC during community custody (and supervised probation if ordered).

---

**Community Custody Is Ordered for the Following Terms or Ranges (non-RCW 9.94A.712):**

- ☐ COUNT(s)_____   ☐ 12 months   ☐ 24 months   ☐ _____ months
- ☐ COUNT(s)_____   36 to 48 months for Sex Offense (non-SSOSA)
- ☐ COUNT(s)_____   24 to 48 months for Serious Violent Offense
- ☒ COUNT(s) _Z_   18 to 36 months for Violent Offense
- ☐ COUNT(s)_____   9 to 18 months for Crimes Against Persons

- If community custody is ordered for a sentence of more than one year, the Defendant shall be on community custody for the above range or for the period of earned release awarded pursuant to RCW 9.94A.728(1) and (2), whichever is longer, and standard mandatory conditions are ordered.
- Community custody for sex offenders may be extended for up to the statutory maximum term.

**Community Custody Is Ordered for Counts Sentenced under RCW 9.94A.712, from time of release from total confinement until the expiration of the maximum sentence:**

- ☐ COUNT(s)_____   ☐ 10 years from today's date   ☐ for the remainder of the Defendant's life
- ☐ COUNT(s)_____   ☐ 10 years from today's date   ☐ for the remainder of the Defendant's life

**Supervised Probation is Ordered for Gross Misdemeanor and Misdemeanor convictions in this Judgment and Sentence, to be administered by the DOC, for:**

- ☐ COUNT(s)_____   ☐ 12 months   ☐ 24 months   ☐ _____ months

---

☐ 4.5—SSOSA—COMMUNITY CUSTODY. RCW 9.94A.670. The execution of this sentence is suspended and Defendant is placed on community custody under the charge of DOC for the length of the suspended sentence, the length of the maximum term imposed pursuant to RCW 9.94A.712, or three years, whichever is greater. Defendant shall report to DOC in person no later than 72 hours after release from custody and shall comply with all conditions stated in this Judgment and Sentence, including those checked in the SUPERVISION SCHEDULE, and other conditions imposed by the court or DOC during community custody. If the Defendant violates the conditions of the suspended sentence or the court finds that the Defendant is not making satisfactory progress in treatment, the court may revoke the suspended sentence at any time during the period of community custody and order execution of the sentence, and shall impose conditions of community placement pursuant to RCW 9.94A.120. A *Treatment Termination Hearing* (RCW 9.94A.120) is scheduled three months prior to the anticipated date for completion of treatment—

☐ EVALUATOR APPROVED TO PROVIDE TREATMENT—The Court expressly finds that the Defendant's sex offender treatment provider may be the same person who examined the Defendant in this action for amenability to treatment and risk to the community, based on the best interests of the victim and impracticability of using a different treatment provider. Chap. 176, Laws of 2004, § 4(11).

---

Russell D. Hauge, Prosecuting Attorney
Adult Criminal and Administrative Divisions
614 Division Street, MS-35
Port Orchard, WA 98366-4581
(360) 337-7174; Fax (360) 337-4949

**SUPERVISION SCHEDULE: The Defendant Shall--**

☒ **STANDARD**
- Obey all laws and obey instructions, affirmative conditions, and rules of the court, DOC and CCO.
- Report to and be available for contact with assigned CCO as directed.
- Obey all no-contact orders including any in this judgment.
- Remain within prescribed geographical boundaries and notify the court or CCO in advance of any change in address or employment.
- Notify CCO within 48 hours of any new arrests or criminal convictions.
- Pay DOC monthly supervision assessment.
- Comply with crime-related prohibitions.

☒ **SERIOUS VIOLENT / VIOLENT OFFENSE, SEX OFFENSE, AND /OR CRIME AGAINST A PERSON**
- Work only at DOC-approved education, employment and/or community service.
- Possess or consume no controlled substances without legal prescription.
- Reside only at DOC-approved location and arrangement.
- Consume no alcohol, if so directed by the CCO.

☒ **SEX-CRIME RELATED**
- Commit no sexual offenses and commit no offenses involving a minor.
- Have no direct or indirect contact with victim(s) or his or her family, including by telephone, computer, letter, in person, or via third party.
- Possess/access no sexually exploitive materials (as defined by Defendant's treating therapist or CCO).
- Frequent no adult book stores, arcades, or places providing sexual entertainment.
- Possess/access no pornography, sexually explicit materials, and/or information pertaining to minors via computer (i.e. Internet)
- ☐ Contact no "900" telephone numbers that offer sexually explicit material. Provide copies of phone records to CCO.
- ☐ Have no contact with any children under the age of 18 without the presence of an adult who is knowledgeable of this conviction and who has been approved by Defendant's CCO.
- ☐ Do not loiter or frequent places where children congregate including, but not limited to, shopping malls, schools, playgrounds, and video arcades.
- ☐ Abide by curfew set by CCO.
- ☐ Submit to periodic polygraph and plethysmograph exams at own expense at request of CCO or any treatment provider.
- ☐ Do not hitchhike or pick up hitchhikers.

☒ **PSI CONDITIONS**-All conditions recommended in the Pre-Sentence Investigation are incorporated herein as conditions of community custody, in addition to any conditions listed in this judgment and sentence, unless otherwise noted:_____

☐ **SSOSA**
- Devote time to specific employment or occupation.
- Successfully complete approved outpatient and/or inpatient sex offender treatment program with treatment provider noted below for a period of 36 months. Defendant shall not change sex offender treatment providers or treatment without first notifying the Prosecutor, CCO, and the Court, and shall not change providers without Court approval after a hearing if the Prosecutor or CCO object to the change.
- Treatment Provider-_____

☐ **EVALUATIONS**- Complete an evaluation for: ☐ substance abuse ☐ anger management ☐ mental health, and fully comply with all treatment recommended by CCO and/or treatment provider.

☐ **PROGRAMS / ASSAULT**
- ☐ Have no assaultive behavior.
- ☐ Successfully complete a certified DV perpetrators program.
- ☐ Successfully complete an anger management class.
- ☐ Successfully complete a victim's awareness program.

☐ **ALCOHOL/DRUGS**
- ☐ Possess or consume no alcohol.
- ☐ Enter no bar or place where alcohol is the chief item of sale.
- ☐ Possess and use no illegal drugs and drug paraphernalia.
- ☐ Submit to UA and breath tests at own expense at CCO request.
- ☐ Submit to searches of person, residence or vehicles at CCO request.
- ☐ Have no contact with any persons who use, possess, manufacture, sell or buy illegal controlled substances or drugs.
- ☐ Install ignition interlock device as directed by CCO. RCW 46.20.710-.750.

☒ OTHER:
Defendant shall have no contact with the victim (3/29/1991) in person, by 3rd party, email, telephone, mail or other means.



Russell D. Hauge, Prosecuting Attorney
Adult Criminal and Administrative Divisions
614 Division Street, MS-35
Port Orchard, WA 98366-4681
(360) 337-7174; Fax (360) 337-4949

## FINANCIAL OBLIGATIONS

4.1 **LEGAL FINANCIAL OBLIGATIONS**–The Court finds that the Defendant has the ability or likely future ability to pay legal financial obligations. RCW 9.94A.142. The Defendant shall pay by cash, money order, or certified check to the Kitsap County Superior Court Clerk at 614 Division Street, MS-34, Port Orchard, WA 98366, as indicated–

| | | | | |
|---|---|---|---|---|
| X | $500 Victim Assessment, RCW 7.68.035 [PCV] | | $_____ | Sheriff service/sub. fees [SFR/SFS/SFW/SRF] |
| X | $993 Court-appointed attorney fees [PUB] | | $_____ | Witness Costs [WFR] |
| X | $110 Filing Fee [FRC] | | $_____ | Jury Demand fee [JFR] |
| X | $100 DNA / Biological Sample Fee, RCW 43.43.7541 | | $_____ | Court-appointed defense fees/other defense costs |
| | $1,000 Contribution to SIU–_____ | X | $100 Contribution–Kitsap County Expert Witness Fund [Kitsap County Ordinance 139.1991] |
| | $100 Crime Lab fee, RCW 43.43.690(1) | X | $500 Contribution–Kitsap County Special Assault Unit |
| | $3,000 Methamphetamine / amphetamine Cleanup Fine, RCW 69.50.440 or 69.50.401(a)(1)(ii) | | $100 Contribution–Anti-Profiteering Fund of Kitsap County Prosecuting Attorney's Office, RCW 9A.82 .110 |
| | Emergency Response Costs – DUI, Vehicular Homicide or Vehicular Assault, RCW 38.52.430, per separate order. | X | $100 Domestic Violence Assessment, RCW 10.99.080 ☐ Kitsap Co. YWCA  ☒ Kitsap Co. Sexual Assault Center |

**RESTITUTION**–To be determined at a future date by separate order(s).

**REMAINING LEGAL FINANCIAL OBLIGATIONS AND RESTITUTION**–The legal financial obligations and/or any restitution noted above may not be complete and are subject to future order by the Court.

**PAYMENT SCHEDULE** – All payments shall commence immediately and be made in accordance with policies of the clerk and on a schedule as follows: pay ☒$100  ☐$50  ☐$25  ☐_____ per month commencing 60 days following release from custody, unless otherwise noted:_____.

**12% INTEREST FOR LEGAL FINANCIAL OBLIGATIONS/ADDITIONAL COSTS**–Financial obligations in this judgment shall bear interest from date of the judgment until paid in full at the rate applicable to civil judgments. An award of costs of appeal may be added to the total legal financial obligations. RCW 10.82.090, RCW 10.73. *INTEREST WAIVED FOR TIMELY PAYMENTS*–The Superior Court Clerk has the authority to waive the 12% interest if the Defendant makes timely payments under this payment schedule.

**50% PENALTY FOR FAILURE TO PAY LEGAL FINANCIAL OBLIGATIONS**– Defendant shall pay the costs of services to collect unpaid legal financial obligations. Failure to make timely payments will result in assessment of additional penalties, including an additional 50% penalty if this case is sent to a collections agency due to non-payment. RCW 36.18.190.

## OTHER

☐ 4.2 **HIV TESTING**–The Defendant shall submit to HIV testing. RCW 70.24.340.

☒ 4.2 **DNA TESTING**–The Defendant shall have a biological sample collected for purposes of DNA identification analysis and the defendant shall fully cooperate in the testing. The appropriate agency or DOC shall be responsible for obtaining the sample prior to the defendant's release from confinement. RCW 43.43.754.

    ☒ If the Defendant is not placed into custody at the time of sentencing, the Defendant shall report immediately to the Kitsap County Jail to arrange for collection of a biological sample for DNA.

☒ **FORFEITURE**–Forfeit all seized property referenced in the discovery to the originating law enforcement agency unless otherwise stated.

☒ 4.10 **COMPLIANCE WITH SENTENCE**–Defendant shall perform all affirmative acts necessary for DOC to monitor compliance with all of the terms of this Judgment and Sentence.

☒ **JOINT AGREEMENTS IN THE PLEA AGREEMENT**–Are in full force and effect unless otherwise stated in this judgment and sentence.

☒ **EXONERATION**–The Court hereby exonerates any bail, bond, and/or personal recognizance conditions.

JUDGMENT AND SENTENCE; Page 5

[Form revised December 15, 2002]



Russell D. Hauge, Prosecuting Attorney
Adult Criminal and Administrative Divisions
614 Division Street, MS-35
Port Orchard, WA 98366-4681
(360) 337-7174; Fax (360) 337-4949

## NOTICES AND SIGNATURES

5.1—COLLATERAL ATTACK ON JUDGMENT—Any petition or motion for collateral attack on this judgment and sentence, including but not limited to any personal restraint petition, state habeas corpus petition, motion to vacate judgment, motion to withdraw guilty plea, motion for new trial or motion to arrest judgment, must be filed within one year of the final judgment in this matter, except as provided for in RCW 10.73.100, RCW 10.73.090.

5.2—LENGTH OF SUPERVISION—The court shall retain jurisdiction over the offender, for the purposes of the offender's compliance with payment of the legal financial obligations, until the obligation is completely satisfied, regardless of the statutory maximum for the crime. RCW 9.94A.760 and RCW 9.94A.505(5).

5.3—NOTICE OF INCOME-WITHHOLDING ACTION—If the Court has not ordered an immediate notice of payroll deduction, you are notified that the DOC may issue a notice of a payroll deduction without notice to you if you are more than 30 days past due in monthly payments in an amount equal to or greater than the amount payable for one month. RCW 9.94A.7602. Other income-withholding action under RCW 9.94A.760 may be taken without further notice. RCW 9.94A.7606.

5.5—ANY VIOLATION OF JUDGMENT AND SENTENCE—Is punishable by up to 60 days of confinement per violation. RCW 9.94A.634.

5.6—FIREARMS—You must immediately surrender any concealed pistol license and you may not own, use, or possess any firearm unless your right to do so is restored by a court of record. Clerk's Action Required—The court clerk shall forward a copy of the Defendant's driver's license, identicard, or comparable identification, to the DOL along with the date of conviction or commitment. RCW 9.41.040, 9.41.047. Cross off if not applicable—

5.7—SEX AND KIDNAPPING OFFENDER REGISTRATION. RCW 9A.44.130, 10.01.200. Because this crime involves a sex offense or kidnapping offense involving a minor as defined in RCW 9A.44.130, you are required to register with the sheriff of the county of the state of Washington where you reside. If you are not a resident of Washington but you are a student in Washington or you are employed in Washington or you carry on a vocation in Washington, you must register with the sheriff of the county of your school, place of employment, or vocation. You must register immediately upon being sentenced unless you are in custody, in which case you must register within 24 hours of your release.

If you leave the state following your sentencing or release from custody but later move back to Washington, you must register within 30 days after moving to this state or within 24 hours after doing so if you are under the jurisdiction of this state's Department of Corrections. If you leave this state following your sentencing or release from custody but later while not a resident of Washington you become employed in Washington, carry on a vocation in Washington, or attend school in Washington, you must register within 30 days after starting school in this state or becoming employed or carrying out a vocation in this state, or within 24 hours after doing so if you are under the jurisdiction of this state's Department of Corrections.

If you change your residence within a county, you must send written notice of your change of residence to the sheriff within 72 hours of moving. If you change your residence to a new county within this state, you must send written notice of your change of residence to the sheriff of your new county of residence at least 14 days before moving, register with that sheriff within 24 hours of moving and you must give written notice of your change of address to the sheriff of the county where last registered within 10 days of moving. If you move out of Washington State, you must also send written notice within 10 days of moving to the county sheriff with whom you last registered in Washington State.

If you are a resident of Washington and you are admitted to a public or private institution of higher education, you are required to notify the sheriff of the county of your residence of your intent to attend the institution within 10 days of enrolling or by the first business day after arriving at the institution, whichever is earlier. If you become employed at a public or private institution of higher education, you are required to notify the sheriff for the county of your residence of your employment by the institution within 10 days of accepting employment or by the first business day after beginning to work at the institution, whichever is earlier. If your enrollment or employment at a public or private institution of higher education is terminated, you are required to notify the sheriff for the county of your residence of your termination of enrollment or employment within 10 days of such termination.

Even if you lack a fixed residence, you are required to register. Registration must occur within 24 hours of release in the county where you are being supervised if you do not have a residence at the time of your release from custody or within 48 hours excluding weekends and holidays after ceasing to have a fixed residence. If you enter a different county and stay there for more than 24 hours, you will be required to register in the new county. You must also report

JUDGMENT AND SENTENCE; Page 6

[Form revised December 15, 2002]



Russell D. Hauge, Prosecuting Attorney
Adult Criminal and Administrative Divisions
614 Division Street, MS-35
Port Orchard, WA 98366-4681
(360) 337-7174; Fax (360) 337-4949

000135

weekly in person to the sheriff of the county where you are registered. The weekly report shall be on a day specified by the county sheriff's office, and shall occur during normal business hours. The county sheriff's office may require you to list the locations where you have stayed during the last seven days. The lack of a fixed residence is a factor that may be considered in determining an offender's risk level and shall make the offender subject to disclosure of information to the public at large pursuant to RCW 4.24.550.

If you move to another state, or if you work, carry on a vocation, or attend school in another state you must register a new address, fingerprints, and photograph with the new state within 10 days after establishing residence, or after beginning to work, carry on a vocation, or attend school in the new state. You must also send written notice within 10 days of moving to the new state or to a foreign country to the county sheriff with whom you last registered in Washington State.

If you apply for a name change, you must submit a copy of the application to the county sheriff of the county of your residence and to the state patrol not fewer than five days before the entry of an order granting the name change. If you receive an order changing your name, you must submit a copy of the order to the county sheriff of the county of your residence and to the state patrol within five days of the entry of the order. RCW 9A.44.130(7).

**5.8–PERSISTENT OFFENDER–**

"Three Strike" Warning–You have been convicted of an offense that is classified as a "most serious offense" under RCW 9.94A.030. A third conviction in Washington State of a most serious offense, regardless of whether the first two convictions occurred in a federal or non-Washington state court, will render you a "persistent offender."

"Two Strike" Warning–In addition, if this offense is (1) rape in the first degree, rape of a child in the first degree, rape in the second degree, rape of a child in the second degree, indecent liberties by forcible compulsion, or child molestation in the first degree; or (2) any of the following offenses with a finding of sexual motivation: murder in the first degree, murder in the second degree, homicide by abuse, kidnapping in the first degree, kidnapping in the second degree, assault in the first degree, assault in the second degree, assault of a child in the first degree, or a burglary in the first degree; or (3) any attempt to commit any of the crimes listed in RCW 9.94A.030(32), and you have at least one prior conviction for a crime listed in RCW 9.94A.030(32) in this state, federal court, or elsewhere, this will render you a "persistent offender." RCW 9.94A.030(32).

Persistent Offender Sentence–A persistent offender shall be sentenced to a term of total confinement for life without the possibility of early release, or, when authorized by RCW 10.95.030 for the crime of aggravated murder in the first degree, sentenced to death, notwithstanding the maximum sentence under any other law. RCW 9.94A.570.

☐ **5.8–DEPARTMENT OF LICENSING NOTICE–**The court finds that Count _____ is a felony in the commission of which a motor vehicle was used. Clerk's Action–The clerk shall forward an Abstract of Court Record to the DOL, which must revoke the Defendant's driver's license. RCW 46.20.285.

**5.8–TREATMENT RECORDS–**If the Defendant is or becomes subject to court-ordered mental health or chemical dependency treatment, the Defendant must notify DOC and must share the Defendant's treatment information with DOC for the duration of the Defendant's incarceration and supervision. RCW 9.94A.897.

**SO ORDERED IN OPEN COURT.**

DATED– 11/3/05

JUDGE _JAY B. ROOF_

_____, WSBA No. 1316
Deputy Prosecuting Attorney

_____, WSBA No. 2520
Attorney for Defendant

_____
DAMON JAHRON CLAIBORNE
Defendant

If I have not previously done so, I hereby agree to waive my right to be present at any restitution proceedings: _____ (initials)

JUDGMENT AND SENTENCE; Page 7
[Form revised December 15, 2002]

Russell D. Hauge, Prosecuting Attorney
Adult Criminal and Administrative Divisions
614 Division Street, MS-35
Port Orchard, WA 98366-4681
(360) 337-7174; Fax (360) 337-4949

1    Translator signature/Print name—_____

2       I am a certified interpreter of, or the court has found me other wise qualified to interpret, the
_____ language, which the Defendant understands. I translated this Judgment

3    and Sentence for the Defendant into that language.

4                   **IDENTIFICATION OF DEFENDANT**

5    Race: Black      Sex: Male      DOB: Redacted PII    Age: 33

6    D/L: CLAIBDJ293C2    D/L State: Washington    SID: WA22472263    Height: 601

7    Weight: 170      JUVIS: Unknown    Eyes: Brown    Hair: Black

8    DOC: Unknown    SSN   6603    FBI: 475856FC0

9    FINGERPRINTS—I attest that I saw the same Defendant who appeared in Court on this document affix his or

10    her fingerprints and signature thereto.
Clerk of the Court—_____ _u_ _Jaber_____, Deputy Clerk. Date JAN 0 3 2005

11

12    DEFENDANT'S SIGNATURE—_____

13    Left 4 fingers taken simultaneously | Left Thumb | Right Thumb | Right 4 fingers taken simultaneously

28    Prosecutor's File Number—04-1-65877-1

29    Prosecutor Distribution—Original (Court Clerk); 1 copy (Prosecutor), 1 copy (DOC), 1 copy (Defense Atty); 1 copy (Pros Stat Keeper)

JUDGMENT AND SENTENCE; Page 8

{Form revised December 15, 2002}

Russell D. Hauge, Prosecuting Attorney
Adult Criminal and Administrative Divisions
614 Division Street, MS-35
Port Orchard, WA 98366-4681
(360) 337-7174; Fax (360) 337-4949

1

2

3

4

5

6

RECEIVED AND FILED
IN OPEN COURT

JAN 0 3 2005

KITSAP COUNTY CLERK

7

8

9

10

11

12

13

14

15

IN THE KITSAP COUNTY SUPERIOR COURT

STATE OF WASHINGTON,                          )
                                              )   No. 04-1-01570-5
                        Plaintiff,            )
                                              )   WARRANT OF COMMITMENT AND
            v.                                )   ORDER FOR BIOLOGICAL SAMPLE (DNA)
                                              )   ☐ Kitsap County Jail – Straight Time
DAMON JAHRON CLAIBORNE,                       )   ☐ Kitsap County Jail – Work Release
Age: 33; DOB: [Redacted PII]                  )   ☐ Kitsap County Jail – Jail Alternatives
                                              )   ☒ Department of Corrections (State Prison)
                                              )   ☐ Community Restitution (Service) Only
                        Defendant.

16

17

18

| Confinement Ordered–The Defendant is ordered to serve the following period of confinement– | ☐ Days ☒ Months |

☐ DOSA Sentence–actual time to serve under DOSA is one-half (½) of the ordered sentence.
☐ Concurrent–This commitment is concurrent to: ☐ all sentences ordered by Kitsap County courts.
☐ sentence(s) ordered in cause no.(s): _____

19

20

21

You, the director, and officers of the Department of Corrections (DOC), if applicable, are commanded to receive or deliver the Defendant for classification, confinement and placement to the agency checked in the caption above consistent with this Order and related disposition document. The Defendant shall receive credit for time served prior to sentencing solely for this cause number as computed by the jail or DOC.
Commencement of Confinement–Confinement shall begin *immediately* unless otherwise stated–

22

23

☐ Future Date–_____ ☐ Time–_____ *After sentencing, the Defendant shall report immediately to the Kitsap County Jail to arrange for future confinement.*

24

25

☒ DNA–The Defendant shall submit to collection of a biological sample for DNA identification, by the Kitsap County Jail (0–12 mo. sentence) or by DOC (sentence over 12 mo.). RCW 43.43.754.
*Note: If the Defendant is not placed into custody at the time of sentencing, the Defendant shall report immediately to the Kitsap County Jail to arrange for collection of a biological sample for DNA.*

26

27

DATED– *1/13/05*

JUDGE

28

29

30

PRESENTED BY–

_____, WSBA No. *[...]*
Deputy Prosecuting Attorney

APPROVED FOR ENTRY–

_____, WSBA No. *25700*
Attorney for Defendant

Prosecutor's File Number–04-165877-1

31

WARRANT OF COMMITMENT; Page 1
[Form revised July 1, 2002]

Russell D. Hauge, Prosecuting Attorney
Adult Criminal and Administrative Divisions
614 Division Street, MS-35
Port Orchard, WA 98356-4681
(360) 337-7174, Fax (360) 337-4949

RECEIVED AND FILED
IN OPEN COURT

NOV 1 2 2004

KITSAP COUNTY CLERK

# IN THE KITSAP COUNTY SUPERIOR COURT

| | |
|---|---|
| STATE OF WASHINGTON, | ) |
| | ) No. 04-1-01570-5 |
| Plaintiff, | ) |
| | ) FIRST AMENDED INFORMATION |
| v. | ) |
| | ) (Total Counts Filed – 1) |
| DAMON JAHRON CLAIBORNE, | ) |
| Age: 33; DOB: 02/22/1971, | ) |
| | ) |
| Defendant. | ) |

COMES NOW the Plaintiff, STATE OF WASHINGTON, by and through its attorney, CAMI G. LEWIS, WSBA NO. 30568, Deputy Prosecuting Attorney, and hereby alleges that contrary to the form, force and effect of the ordinances and/or statutes in such cases made and provided, and against the peace and dignity of the STATE OF WASHINGTON, the above-named Defendant did commit the following offense(s)–

## COUNT I
### Child Molestation in the Second Degree

On or between September 1, 2004 and September 30, 2004, in the County of Kitsap, State of Washington, the above-named Defendant, being at least thirty-six (36) months older than the victim, had sexual contact with another person who was at least twelve (12) years old but less than fourteen (14) years old and not married to the Defendant, to-wit: [Redacted PII] contrary to the Revised Code of Washington 9A.44.086.

(MAXIMUM PENALTY–Ten (10) years imprisonment and/or a $20,000 fine pursuant to RCW 9A.44.086(2) and 9A.20.021(1)(b), plus restitution and assessments.)

CHARGING DOCUMENT; Page 1 of 3



Russell D. Hauge, Prosecuting Attorney
Special Assault Unit
614 Division Street, MS-35
Port Orchard, WA 98366-4681
(360) 337-7148; Fax (360) 337-7229

1  (If the Defendant has previously been convicted on two separate occasions of a "most serious
2  offense" as defined by RCW 9.94A.030(24), in this state, in federal court, or elsewhere, the
   mandatory penalty for this offense is life imprisonment without the possibility of parole pursuant
3  to RCW 9.94A.030(27)(a) and 9.94A.120(4).)

4  JIS Code:        9A.44.086        Child Molestation 2

5

6      I certify (or declare) under penalty of perjury under the laws of the State of Washington

7  that I have probable cause to believe that the above-named Defendant committed the above

8  offense(s), and that the foregoing is true and correct to the best of my knowledge, information and

9  belief.

10  DATED: November 8, 2004                    STATE OF WASHINGTON
    PLACE: Port Orchard, WA
11

12                                             CAMI G. LEWIS, WSBA No. 30568
                                               Deputy Prosecuting Attorney
13

14      All suspects associated with this incident are—

15                          Damon Jahron Claiborne

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

CHARGING DOCUMENT; Page 2 of 3



Russell D. Hauge, Prosecuting Attorney
Special Assault Unit
614 Division Street, MS-35
Port Orchard, WA 98366-4681
(360) 337-7148; Fax (360) 337-7229

# DEFENDANT IDENTIFICATION INFORMATION

| | |
|---|---|
| DAMON JAHRON CLAIBORNE<br>339539 Mb #126<br>Fort Lewis, Wa 98433 | Alias Name(s), Date(s) of Birth, and SS Number<br>[PERSON ALIAS DOB SSN] |

[Address source--(1) Kitsap County Jail records if Defendant in custody, or law enforcement report noted below if Defendant not in custody, or (2) Washington Department of Licensing abstract of driving record if no other address information available]

| | | | |
|---|---|---|---|
| Race: Black | Sex: Male | DOB: Redacted PII | Age: 33 |
| D/L: CLAIBDJ293C2 | D/L State: Washington | SID: WA22472263 | Height: 601 |
| Weight: 170 | JUVIS: Unknown | Eyes: Brown | Hair: Black |
| DOC: Unknown | SSN: | FBI: 475856FC0 | |

# LAW ENFORCEMENT INFORMATION

Incident Location: Olympic Drive, Port Orchard, WA [Incident Address Zip]

Law Enforcement Report No.: 2004SO012773

Law Enforcement Filing Officer: Frank Nmi Davalos, KCSO138

Law Enforcement Agency: Kitsap County Sheriff's Office

Motor Vehicle Involved? No

Domestic Violence Charge(s)? No

Law Enforcement Bail Amount? Unknown

# CLERK ACTION REQUIRED

No Action Required

# PROSECUTOR DISTRIBUTION INFORMATION

| Superior Court | District & Municipal Court |
|---|---|
| Original Charging Document–<br>Original +3 copies to Clerk<br>1 copy to file<br>1 copy to DOC<br>Amended Charging Document(s)–<br>Original +3 copies to Clerk<br>1 copy to file | Original Charging Document–<br>Original +2 copies to Clerk<br>1 copy to file<br>Amended Charging Document(s)–<br>Original +2 copies clipped inside file on top of left side<br>1 copy to file |

Prosecutor's File Number–04-165877-1

CHARGING DOCUMENT; Page 3 of 3

Russell D. Hauge, Prosecuting Attorney
Special Assault Unit
614 Division Street, MS-35
Port Orchard, WA 98366-4681
(360) 337-7148; Fax (360) 337-7229

000141

RECEIVED AND FILED
IN OPEN COURT

NOV 1 2 2004

KITSAP COUNTY CLERK



**SUPERIOR COURT OF WASHINGTON**
**KITSAP COUNTY**

STATE OF WASHINGTON,

                           Plaintiff

vs.

Damon Jahron Claiborne

                           Defendant.

NO.
04 1 01570 5

**STATEMENT OF DEFENDANT ON**
**PLEA OF GUILTY**

*SEX OFFENSE*

                     **(STTDFG)**

1.    My true name is: Damon Jahron Claiborne

2.    My age is: 33

3.    I went through the 12ᵗ grade.

4.    I HAVE BEEN INFORMED AND FULLY UNDERSTAND THAT:

    (a)    I have the right to representation by a lawyer and that if I cannot afford to pay for a lawyer, one will be provided at no expense to me.

    (b)    I am charged with: Child molestation second degree
             The elements are: See the information

5.    I UNDERSTAND I HAVE THE FOLLOWING IMPORTANT RIGHTS, AND I GIVE THEM ALL UP BY PLEADING GUILTY:

    (a)    The right to a speedy and public trial by an impartial jury in the county where the crime is alleged to have been committed;

    (b)    The right to remain silent before and during trial, and the right to refuse to testify against myself;

(c)     The right at trial to hear and question the witnesses who testify against me;

(d)     The right at trial to testify and to have witnesses testify for me. These witnesses can be made to appear at no expense to me;

(e)     I am presumed innocent unless the charge is proven beyond a reasonable doubt or I enter a plea of guilty;

(f)     The right to appeal a finding of guilt after a trial.

6.     IN CONSIDERING THE CONSEQUENCES OF MY GUILTY PLEA, I UNDERSTAND THAT:

(a)     Each crime with which I am charged carries a maximum sentence, a fine, and a STANDARD SENTENCE RANGE as follows:

| COUNT NO | OFFENDER SCORE | STANDARD RANGE ACTUAL CONFINEMENT (not including enhancements) | PLUS Enhancements* | TOTAL ACTUAL CONFINEMENT (standard range including enhancements) | COMMUNITY CUSTODY RANGE (Only applicable for crimes committed on or after July 1, 2000. For crimes committed prior to July 1, 2000, see paragraph 6(f)) | MAXIMUM TERM AND FINE |
|---|---|---|---|---|---|---|
| 1 | 0 | 15-20 mo | 0 | 15-20 mo | 36-48 mo. | 10 yrs $20000 |
| 2 | | | | | | |
| 3 | | | | | | |

*(F) Firearm, (D) other deadly weapon, (V) VUCSA in protected zone, (VH) Veh. Hom, See RCW 46.61.520, (JP) Juvenile present

(b)     The standard sentence range is based on the crime charged and my criminal history. Criminal history includes prior convictions and juvenile adjudications or convictions, whether in this state, in federal court, or elsewhere.

(c)     The prosecuting attorney's statement of my criminal history is attached to this agreement. Unless I have attached a different statement, I agree that the prosecuting attorney's statement is correct and complete. If I have attached my own statement, I assert that it is correct and complete. If I am convicted of any additional crimes between now and the time I am sentenced, I am obligated to tell the sentencing judge about those convictions.

(d)     If I am convicted of any new crimes before sentencing, or if any additional criminal history is discovered, both the standard sentence range and the prosecuting attorney's recommendation may increase. Even so, my plea of guilty to this charge is binding on me. I cannot change my mind if additional criminal history is discovered even though the standard sentencing range and the prosecuting attorney's recommendation increase or a mandatory sentence of life imprisonment without the possibility of parole is required by law.

(e)     In addition to sentencing me to confinement, the judge will order me to pay $500.00 as a victim's compensation fund assessment. If this crime resulted in injury to any person or damage to or loss of property, the judge will order me to make restitution, unless extraordinary circumstances exist which make restitution inappropriate. The amount of restitution may be up to double my gain or double the victim's loss. The judge may also order that I pay a fine, court costs, attorney fees and the costs of incarceration.

000143

(f)    **For sex crimes committed prior to July 1, 2000:**
In addition to sentencing me to confinement, the judge may order me to serve up to one year of community supervision if the total period of confinement ordered is not more than 12 months. If the period of confinement is more than one year, the judge will order me to serve three years of community custody or up to the period of earned early release, whichever is longer. During the period of community custody, I will be under the supervision of the Department of Corrections, and I will have restrictions placed on my activities.

**For sex crimes committed on or after July 1, 2000, but prior to September 1, 2001:**
In addition to sentencing me to confinement, the judge may order me to serve up to one year of community custody if the total period of confinement ordered is not more than 12 months. If the period of confinement is over one year, the judge will sentence me to community custody for a period of 36 to 48 months or up to the period of earned release, whichever is longer. During the period of community custody to which I am sentenced, I will be under the supervision of the Department of Corrections, and I will have restrictions placed on my activities.

During the period of community custody I will be under the supervision of the Department of Corrections, and I will have restrictions placed on my activities. My failure to comply with these conditions will render me ineligible for general assistance, RCW 74.04.005(6)(h), and may result in the Department of Corrections transferring me to a more restrictive confinement status or other sanctions.

**For sex crimes committed on or after September 1, 2001:**
(i) **[Sentencing under RCW 9.94A.712]:** If the current offense is listed in subsection (6)(f)(i)(a), or if the current offense is for any sex crime other than failure to register as a sex offender and other than that listed in paragraph (6)(f)(i)(a), and I have a prior conviction of an offense listed in (6)(f)(i)(b), whether in this state or elsewhere, the judge will impose a maximum term consisting of the statutory maximum sentence of the offense and a minimum term either within the standard range for the offense or outside the standard range if an exceptional sentence is appropriate. The minimum term that is imposed may be increased by the Indeterminate Sentencing Review Board if the Board determines by a preponderance of the evidence that it is more likely than not that I will commit sex offenses if released from custody. In addition to the period of confinement, I will be sentenced to community custody for any period of time I am released from total confinement before the expiration of the maximum sentence. During the period of community custody I will be under the supervision of the Department of Corrections, and I will have restrictions placed on my activities and I may be required to participate in rehabilitative programs. My failure to comply with these conditions will render me ineligible for general assistance, RCW 74.04.005(6)(h), and may result in the Department of Corrections transferring me to a more restrictive confinement status or other sanctions.

(a) (1) an actual or attempted:
  ▪ rape in the first degree
  ▪ rape of a child in the first degree committed when I was eighteen years of age

or older
- rape in the second degree
- rape of a child in the second degree committed when I was eighteen years of age or older
- indecent liberties by forcible compulsion, or
- child molestation in the first degree committed when I was eighteen years of age or older; or

(2) with a finding of sexual motivation, an actual or attempted:
- murder in the first degree
- murder in the second degree
- homicide by abuse
- kidnapping in the first degree
- kidnapping in the second degree
- assault in the first degree
- assault in the second degree
- assault of a child in the first degree or
- burglary in the first degree.

(b) (1) An actual or attempted:
- rape in the first degree
- rape of a child in the first degree when I was sixteen years or older
- rape in the second degree
- rape of a child in the second degree when I was eighteen years or older
- indecent liberties by forcible compulsion, or
- child molestation in the first degree; or

(2) with a finding of sexual motivation, an actual or attempted:
- murder in the first degree
- murder in the second degree
- homicide by abuse
- kidnapping in the first degree
- kidnapping in the second degree
- assault in the first degree
- assault in the second degree
- assault of a child in the first degree, or
- burglary in the first degree.

(ii) If this offense is for any sex crime other than that listed in paragraph (6)(f)(i)(a) and if my prior convictions do not include those listed in paragraph (6)(f)(i)(b), then in addition to sentencing me to a term of confinement, unless I am being sentenced under RCW 9.94A.670, the court will sentence me to community custody for a period of 36 to 48 months or up to the period of earned release, which ever is longer. During the period of community custody I will be under the supervision of the Department of Corrections, and I will have restrictions placed on my activities. My failure to comply with these conditions will render me ineligible for general assistance, RCW 74.04.005(6)(h), and may result in the Department of Corrections transferring me to a more restrictive confinement status or other sanctions.

(g)     The prosecuting attorney will make the following recommendation to the judge: _____
_____
_____

        ⅩThe prosecutor will recommend as stated in the plea agreement, which is incorporated
        by reference.

(h)     The judge does not have to follow anyone's recommendation as to sentence.  The judge
        must impose a sentence within the standard range unless the judge finds substantial and
        compelling reasons not to do so.  If the judge goes outside the standard range, either the
        state or I can appeal that sentence.  If the sentence is within the standard range, no one can
        appeal the sentence.

(i)     If I am not a citizen of the United States, a plea of guilty to an offense punishable as a crime
        under state law is grounds for deportation, exclusion from admission to the United States,
        or denial of naturalization pursuant to the laws of the United States.

(j)     I understand that I may not possess, own, or have under my control any firearm unless my
        right to do so is restored by a court of record and that I must immediately surrender any
        concealed pistol license. RCW 9.41.040.

(k)     Public assistance will be suspended during any period of imprisonment and during any time
        I am a fugitive or not in compliance with the terms of supervision.
        *See* 42 U.S.C. § 608(a)(9).

(l)     Because this crime involves a sex offense, I will be required to register where I reside,
        study or work.  The specific registration requirements are set forth in Attachment "A."

(m)     Because this crime involves a sex offense, I will be required to provide a sample of my
        blood for purposes of DNA identification analysis.

(n)     Because this crime involves a sexual offense, I will be required to undergo testing for the
        human immunodeficiency (AIDS) virus.


**NOTIFICATION RELATING TO SPECIFIC CRIMES:**
**IF ANY OF THE FOLLOWING PARAGRAPHS DO NOT APPLY, THEY SHOULD BE**
**STRICKEN AND INITIALED BY THE DEFENDANT AND THE JUDGE.**

[ o ]   This offense is a most serious offense or strike as defined by RCW 9.94A.030, and if I have
        at least two prior convictions for most serious offenses, whether in this state, in federal
        court, or elsewhere, the crime for which I am charged carries a mandatory sentence of life
        imprisonment without the possibility of parole.  In addition, if this offense is
        (1) an actual or attempted:
            ▪ rape in the first degree
            ▪ rape of a child in the first degree
            ▪ rape in the second degree
            ▪ rape of a child in the second degree
            ▪ indecent liberties by forcible compulsion, or
              child molestation in the first degree; or

*D.c.*

000146

(2)  with a finding of sexual motivation, an actual or attempted:
- murder in the first degree
- murder in the second degree
- homicide by abuse
- kidnapping in the first degree
- kidnapping in the second degree
- assault in the first degree
- assault in the second degree
- assault of a child in the first degree, or
- burglary in the first degree;

and I have at least one prior conviction for one of these listed crimes in this state, in federal court, or elsewhere, the crime for which I am charged carries a mandatory sentence of life imprisonment without the possibility of parole.

[ p ]   __For crimes committed prior to September 1, 2001__:  The judge may suspend execution of the standard range term of confinement under the special sex offender sentencing alternative (SSOSA) if I qualify under former RCW 9.94A.120(8) (for crimes committed prior to July 1, 2001) or RCW 9.94A.670 (for crimes committed on or after July 1, 2001).  If the judge suspends execution of the standard range term of confinement, I will be placed on community custody for the length of the suspended sentence or three years, which ever is greater; I will be ordered to serve up to 180 days of total confinement; I will be ordered to participate in sex offender treatment; and I will be subject to all of the conditions described in paragraph 6(e).  Additionally, the judge could require me to devote time to a specific occupation and to pursue a prescribed course of study or occupational training.  If a violation of the sentence occurs during community custody, the judge may revoke the suspended sentence.


__For crimes committed on or after September 1, 2001__:  The judge may suspend execution of the standard range term of confinement or the minimum term of confinement under the special sex offender sentencing alternative (SSOSA) if I qualify under or RCW 9.94A.670.

If my current offense is for any sex crime other than that listed in paragraph (6)(f)(i)(a) and if my prior convictions do not include those listed in paragraph (6)(f)(i)(b), and the judge suspends execution of the standard range term of confinement, I will be placed on community custody for the length of the suspended sentence or three years, which ever is greater; I will be ordered to serve up to 180 days of total confinement; I will be ordered to participate in sex offender treatment; and I will be subject to all of the conditions described in paragraph (6)(e).

If my current offense is for a sex crime listed in paragraph (6)(f)(i)(a) or if my current offense is for any sex crime other than failure to register as a sex offender and other than that listed in paragraph (6)(f)(i)(a), and I have a prior conviction of an offense listed in (6)(f)(i)(b), I will be placed on community custody for the length of the statutory maximum sentence of the offense; in addition to the term of community custody , I will be ordered to serve up to 180 days of total confinement; I will be ordered to participate in sex offender treatment; and I will be subject to all of the conditions described in paragraph 6(e).  Additionally, the judge could require me to devote time to a specific occupation and to pursue a prescribed course of study or occupational training.  If a

000147

violation of the sentence occurs during community custody, the judge may revoke the suspended sentence.

[ q ]   If this is a crime of domestic violence and if I, or the victim of the offense, have a minor child, the court may order me to participate in a domestic violence perpetrator program approved under RCW 26.50.150.

[ r ]   If the judge finds that I have a chemical dependency that has contributed to the offense, the judge may order me to participate in rehabilitative programs or otherwise to perform affirmative conduct reasonably related to the circumstances of the crime for which I am pleading guilty.

[ s ]   If this crime involves a motor vehicle, my driver's license or privilege to drive will be suspended or revoked. If I have a driver's license, I must now surrender it to the judge.

[ t ]   The crime of _____ has a mandatory minimum sentence of at least _____ years of total confinement. The law does not allow any reduction of this sentence. This mandatory minimum sentence is not the same as the mandatory sentence of life imprisonment without the possibility of parole described in paragraph 6[o].

[ u ]   I am being sentenced for two or more serious violent offenses arising from separate and distinct criminal conduct and the sentences imposed on counts _____ and _____ will run consecutively unless the judge finds substantial and compelling reasons to do otherwise.

[ v ]   I understand that the offense(s) I am pleading guilty to include a deadly weapon or firearm enhancement. Deadly weapon or firearm enhancements are mandatory, they must be served in total confinement, and they must run consecutively to any other sentence and to any other deadly weapon or firearm enhancements.

7.    I plead guilty to:

count One _____

count _____

count _____

of the first amended _____ Information. I have received a copy of that Information.

8.    I make this plea freely and voluntarily.

9.    No one has threatened harm of any kind to me or to any other person to cause me to make this plea.

10.    No person has made promises of any kind to cause me to enter this plea except as set forth in this statement.

000148

11.   The judge has asked me to state what I did in my own words that makes me guilty of this crime.
      This is my statement: _____
      _____ Alford plea _____
      _____
      _____
      _____
      _____

      ☒ instead of making a statement, I agree that the court may review the police reports and/or a
      statement of probable cause supplied by the prosecution to establish a factual basis for the plea.

12.   My lawyer has explained to me, and we have fully discussed, all of the above paragraphs and
      Attachment "A". I understand them all. I have been given a copy of this "Statement of Defendant
      on Plea of Guilty." I have no further questions to ask the judge.

                                                    _____
                                                    Defendant
                                                    I have read and discussed this statement with the
                                                    defendant and believe that the defendant is
                                                    competent and fully understands the statement.

      _____             _____
      Prosecuting Attorney    Bar # 30518          Defendant's Lawyer    Bar # 25700
      _____Lewis_____                      _____Adams_____
      Print Name                                   Print Name

      The foregoing statement was signed by the defendant in open court in the presence of the defendant's
      lawyer and the undersigned judge. The defendant asserted that [check appropriate box]:

      ☒ (a)   The defendant had previously read the entire statement above and that the defendant understood it
              in full;
      ☐ (b)   The defendant's lawyer had previously read to him or her the entire statement above and that the
              defendant understood it in full; or
      ☐ (c)   An interpreter had previously read to the defendant the entire statement above and that the
              defendant understood it in full. The Interpreter's Declaration is attached.

      I find the defendant's plea of guilty to be knowingly, intelligently and voluntarily made. Defendant
      understands the charges and the consequences of the plea. There is a factual basis for the plea. The
      defendant is guilty as charged.

      Dated: ____11/12/04____                      Judge _____

      ┌─────────────────────────────┐
      │ cc:  Original - Court File   │
      │      Yellow  - Defendant     │
      └─────────────────────────────┘

**000149**

RECEIVED AND FILED
IN OPEN COURT

NOV 1 2 2004

KITSAP COUNTY CLERK



**SUPERIOR COURT OF WASHINGTON**
**KITSAP COUNTY**

STATE OF WASHINGTON,

                Plaintiff

vs.

Damon Claiborne,

                Defendant.

NO. 04 1 01570 5

**ATTACHMENT "A" to STATEMENT**
**OF DEFENDANT ON PLEA OF GUILTY**

> Use with *all* sex offenses
> Use *if required* with non-sex offenses
> [*see* paragraph 6(n)]

Because this crime involves a sex offense, or a kidnapping offense involving a minor as defined in RCW 9A.44.130, I will be required to register with the sheriff of the county of the state of Washington where I reside. If I am not a resident of Washington but I am a student in Washington or I am employed in Washington or I carry on a vocation in Washington, I must register with the sheriff of the county of my school, place of employment, or vocation. I must register immediately upon being sentenced unless I am in custody, in which case I must register at the time of my release with the person designated by the agency that has me in custody and I must also register within 24 hours of my release with the sheriff of the county of the state of Washington where I will be residing, or if not residing in the state of Washington, where I am a student, where I am employed, or where I carry on a vocation.

If I leave this state following my sentencing or release from custody but later move back to Washington, I must register within 30 days after moving to this state or within 24 hours after doing so if I am under the jurisdiction of this state's Department of Corrections. If I leave this state following my sentencing or release from custody, but later while not a resident of Washington I become employed in Washington, carry out a vocation in Washington, or attend school in Washington, I must register within 30 days after attending school in this state or becoming employed or carrying out a vocation in this state, or within 24 hours after doing so if I am under the jurisdiction of this state's Department of Corrections.

If I change my residence within a county, I must send written notice of my change of residence to the sheriff within 72 hours of moving. If I change my residence to a new county within this state, I must send written notice of the change of address at least 14 days before moving to the county sheriff in the new county of residence, I must register with the sheriff of the new county within 24 hours of moving, and I must also give written notice of my change of address to the sheriff of the county where last registered within 10 days of

STATEMENT ON PLEA OF GUILTY (Attachment "A")
Page 1 of 2
CrR 4.2(g) (4/2002)

moving. If I move out of Washington State, I must send written notice within 10 days of moving to the new state or foreign country to the county sheriff with whom I last registered in Washington State.

If I move to another state, or if I work, carry on a vocation, or attend school in another state I must register a new address, fingerprints, and photograph with the new state within 10 days after establishing residence, or after beginning to work, carry on a vocation, or attend school in the new state. I must also send written notice within 10 days of moving to the new state or to a foreign country to the county sheriff with whom I last registered in Washington State.

If I am a resident of Washington and I am admitted to a public or private institution of higher education, I shall, within 10 days of enrolling or by the first business day after arriving at the institution, whichever is earlier, notify the sheriff of the county of my residence of my intent to attend the institution.

If I lack a fixed residence, I am required to register. Registration must occur within 24 hours of release in the county where I am being supervised if I do not have a residence at the time of my release from custody or within 48 hours, excluding weekends and holidays, after ceasing to have a fixed residence. If I enter a different county and stay there for more than 24 hours, I will be required to register in the new county. I must also report in person to the sheriff of the county where I am registered on a weekly basis. The weekly report will be on a day specified by the county sheriff's office, and shall occur during normal business hours. I may be required to provide a list of the locations where I have stayed during the last 7 days. The lack of a fixed residence is a factor that may be considered in determining a sex offender's risk level and shall make me subject to disclosure to the public at large, pursuant to RCW 4.24.550.

If I apply for a name change, I must submit a copy of the application to the county sheriff of the county of my residence and to the state patrol not fewer than five days before the entry of an order granting the name change. If I receive an order changing my name, I must submit a copy of the order to the county sheriff of the county of my residence and to the state patrol within 5 days of the entry of the order. RCW 9A.44.130(7).

**My lawyer has explained to me, and we have fully discussed, all of the above requirements. I understand them. I have been given a copy of this Attachment "A".**

_____
Defendant

**I have read and discussed this statement with the defendant and believe that the defendant is competent and fully understands the statement.**

_____
Defendant's Lawyer          Bar #2 5 2 05

---

STATEMENT ON PLEA OF GUILTY (Attachment "A")
Page 2 of 2
CrR 4.2(g) (4/2002)



Circle the appropriate copy designator

| Copy 1 | Copy 2 | Copy 3 | Copy 4 |

## PERSONNEL ACTION

For use of this form, see AR 600-8-B and DA PAM 600-8-21; the proponent agency is ODCSPER

### DATA REQUIRED BY THE PRIVACY ACT OF 1974

| | |
|---|---|
| AUTHORITY: | Title 5, Section 3012; Title 10, USC. E.O. 9397 |
| PRINCIPAL PURPOSE: | Used by soldier in accordance with DA PAM 600-8-21 when requesting a personnel action or transaction (select Section III) |
| ROUTINE USES: | To initiate the processing of a personnel action being requested by the soldier. |
| DISCLOSURE: | Voluntary. Failure to provide social security number may result in a delay or error in processing of the request for personnel action. |

| 1. THRU (Include ZIP Code) | 2. TO (Include ZIP Code) | 3. FROM (Include ZIP Code) |
|---|---|---|
| Commander, 593rd Corps Support Group Fort Lewis, WA 98433 | Commander, 22nd Personnel Service Battalion Fort Lewis, WA 98433 | Commander, 528th Quartermaster Company Fort Lewis, WA 98433 |

### SECTION I - PERSONAL IDENTIFICATION

| 4. NAME (Last, First, MI) | 5. GRADE OR RANK/PMOS/AOC | 6. SOCIAL SECURITY NUMBER |
|---|---|---|
| OSBORNE, DAMON | SPC/92F | Redacted PII |

### SECTION II - DUTY STATUS CHANGE (AR 600-8)

7. The above soldier's duty status is changed from PRESENT FOR DUTY _____ to

CIVILIAN CONFINEMENT _____ effective ___1300___ hours, ___28 OCTOBER___ ___2004___

### SECTION III - REQUEST FOR PERSONNEL ACTION

8. I request the following action. (Check as appropriate)

| | | |
|---|---|---|
| Service School (Enl only) | Special Forces Training/Assignment | Identification Card |
| ROTC or Reserve Component Duty | On-the-Job Training (Enl only) | Identification Tags |
| Volunteering For Overseas Service | Retesting in Army Personnel Tests | Separate Rations |
| Ranger Training | Reassignment Married Army Couples | Leave - Excess/Advance/Outside CONUS |
| Reassignment Extreme Family Problems | Reclassification | Change of Name/SSN/DOB |
| Exchange Reassignment (Enl only) | Officer Candidate School | Other (Specify) |
| Airborne Training | Assignment of Pers with Exceptional Family Members | |

| 9. SIGNATURE OF SOLDIER (When required) | 10. DATE (YYYYMMDD) |
|---|---|

### SECTION IV - REMARKS (Applies to Sections II, III, and V) (Continue on separate sheet)

### SECTION V - CERTIFICATION/APPROVAL/DISAPPROVAL

11. I certify that the duty status change (Section II) or that the request for personnel action (Section III) contained herein:

| [X] HAS BEEN VERIFIED | [ ] RECOMMEND APPROVAL | [ ] RECOMMEND DISAPPROVAL | [ ] IS APPROVED | [ ] IS DISAPPROVED |
|---|---|---|---|---|
| 12. COMMANDER/AUTHORIZED REPRESENTATIVE | 13. SIGNATURE | | 14. DATE (YYYYM) | |
| DEXTER E JOHNSON, CPT, QM, CDR | | | | |

000152

**✱ RETURN TO DUTY FROM INCARCERATION ✱**

Circle the appropriate copy designation

| Copy 1 | Copy 2 | Copy 3 | Copy 4 |

### PERSONNEL ACTION

For use of this form, see AR 600-8-6 and DA PAM 600-8-21; the proponent agency is ODCSPER

#### DATA REQUIRED BY THE PRIVACY ACT OF 1974

| | |
|---|---|
| AUTHORITY: | Title 5; Section 3012; Title 10, USC, E.O. 0397. |
| PRINCIPAL: | Used by soldier in accordance with DA PAM 600-8-21 when requesting a personnel action on his/her own behalf (Section III) |
| ROUTINE USES: | To initiate the processing of a personnel action being requested by the soldier. |
| DISCLOSURE: | Voluntary. Failure to provide social security number may result in a delay or error in processing of the request for personnel action. |

| 1. THRU *(Include ZIP Code)* | 2. TO *(Include ZIP Code)* | 3. FROM *(Include ZIP Code)* |
|---|---|---|
| Commander, | Commander, | Commander, |
| 44th Corps Support Battalion | 22nd Personnel Services Battalion | 528th Quartermaster Company |
| Fort Lewis, Wa. 98433 | Fort Lewis, Wa 98433 | Fort Lewis, Wa 98433 |

#### SECTION I - PERSONAL IDENTIFICATION

| 4. NAME *(Last, First, MI)* | 5. GRADE OR RANK/MOS/AOC | 6. SOCIAL SECURITY NUMBER |
|---|---|---|
| Claiborne, Damod J | E4/92F10 | Redacted PII |

#### SECTION II - DUTY STATUS CHANGE *(AR 600-8-6)*

7. The above soldier's duty status is changed from **Civilian Confinement** to

**Present For Duty**   effective **630** hours, **06 Jan 2006**.

#### SECTION III - REQUEST FOR PERSONNEL ACTION

8. I request the following action: *(Check as appropriate)*

| | | |
|---|---|---|
| Service School *(Enl only)* | Special Forces Training/Assignment | Identification Card |
| ROTC or Reserve Component Duty | On-the-Job Training *(Enl only)* | Identification Tags |
| Volunteering For Overseas Service | Retesting in Army Personnel Tests | Separate Rations |
| Ranger Training | Reassignment Married Army Couples | Leave - Except/Advance/Outside CONUS |
| Reassignment Extreme Family Problems | Reclassification | Change of Name/SSN/DOB |
| Exchange Reassignment *(Enl only)* | Officer Candidate School | Other *(Specify)* |
| Airborne Training | Asgmt of Pers with Exceptional Family Members | |

| 9. SIGNATURE OF SOLDIER *(When required)* | 10. DATE *(YYYYMMDD)* |
|---|---|

#### SECTION IV - REMARKS *(Applies to Sections II, III, and V) (Continue on separate sheet)*

#### SECTION V - CERTIFICATION/APPROVAL/DISAPPROVAL

11. I certify that the duty status change *(Section II)* or that the request for personnel action *(Section III)* contained herein

| ☐ HAS BEEN VERIFIED | ☐ RECOMMEND APPROVAL | ☐ RECOMMEND DISAPPROVAL | ☐ IS APPROVED | ☐ IS DISAPPROVED |

| 12. COMMANDER/AUTHORIZED REPRESENTATIVE | 13. SIGNATURE | 14. DATE *(YYYYMMDD)* |
|---|---|---|
| Scott L. McKendall, SSG, QM, CDR | | 2006-01-07 |

DA FORM 4187, JAN 2000        PREVIOUS EDITIONS ARE OBSOLETE        USAPA V1.00

**000153**

| REPORT OF MEDICAL EXAMINATION | 1. DATE OF EXAMINATION (YXYYMMDD) 20140623 | 2. SOCIAL SECURITY NUMBER ▮▮ ▮ ▮ |
|---|---|---|

**PRIVACY ACT STATEMENT**

*AUTHORITY:* 10 USC 504, 505, 507, 532, 978, 1201, 1202, and 4346; and E.O. 9397.
*PRINCIPAL PURPOSE(S):* To obtain medical data for determination of medical fitness for enlistment, induction, appointment and retention for applicants and members of the Armed Forces. The information will also be used for medical boards and separation of Service members from the Armed Forces.
*ROUTINE USE(S):* None.
*DISCLOSURE:* Voluntary; however, failure by an applicant to provide the information may result in delay or possible rejection of the individual's application to enter the Armed Forces. For an Armed Forces member, failure to provide the information may result in the individual being placed in a non-deployable status.

| 3. LAST NAME - FIRST NAME - MIDDLE NAME (SUFFIX) Claiborne Damon J | 4. HOME ADDRESS (Street, Apartment Number, City, State and ZIP Code) Redacted PII | 5. HOME TELEPHONE NUMBER (Include Area Code) Redacted PII |
|---|---|---|

| 6. GRADE E-6 | 7. DATE OF BIRTH | 8. AGE 43 | 9. SEX Female ☐ Male ☒ | 10.a RACIAL CATEGORY (X one or more) American Indian or Alaska Native ☐ / Asian ☐ / Black or African American ☒ / White ☒ / Native Hawaiian or Other Pacific Islander ☐ | 10.b ETHNIC CATEGORY Hispanic/Latino ☐ Not Hispanic/Latino ☐ |
|---|---|---|---|---|---|

| 11. TOTAL YEARS GOVERNMENT SERVICE a. MILITARY 24 b. CIVILIAN | 12. AGENCY (Non-Service Members Only) | 13. ORGANIZATION UNIT AND UIC/CODE 4770473 Duty/Cell Phone: |
|---|---|---|

| 14.a. RATING OR SPECIALTY (Aviators Only) | b. TOTAL FLYING TIME | c. LAST SIX MONTHS |
|---|---|---|

| 15.a. SERVICE | b. COMPONENT | PURPOSE OF EXAMINATION | 16. NAME OF EXAMINING LOCATION, AND ADDRESS (Include ZIP Code) |
|---|---|---|---|
| Army ☒   Coast Guard ☐ Navy ☐ Marine Corps ☐ Air Force ☐ | Active Duty ☒ Reserve ☐ National Guard ☐ | Enlistment ☐   Medical Board ☐   Other ☐ Commission ☐   Retirement ☐ Retention ☐   U.S. Service Academy ☐ Separation ☒   ROTC Scholarship Program ☐ | Madigan Army Medical Center MCHJ-CLZ (Physical Exams) Old Nisqually Clinic Tacoma, WA 98431-1100 |

**CLINICAL EVALUATION** *(Check each item in appropriate column.  Enter "NE" if not evaluated.)*

| | Normal | Abnorm | NE | 44. NOTES: (Describe every abnormality in detail. Enter pertinent item number before each comment. Continue in item 73 and use additional sheets if necessary.) |
|---|---|---|---|---|
| 17. Head, face, neck, and scalp | ✓ | | | |
| 18. Nose | ✓ | | | |
| 19. Sinuses | ✓ | | | |
| 20. Mouth and throat | ✓ | | | |
| 21. Ears - General (Int and ext canals/Auditory acuity under item 71) | ✓ | | | |
| 22. Drums (Perforation) | ✓ | | | |
| 23. Eyes - General (Visual acuity and refraction under items 61 - 63) | ✓ | | | |
| 24. Ophthalmoscopic | ✓ | | | |
| 25. Pupils (Equality and reaction) | ✓ | | | |
| 26. Ocular motility (Associated parallel movements, nystagmus) | ✓ | | | |
| 27. Heart (Thrust, size, rhythm, sounds) | ✓ | | | |
| 28. Lungs and chest (Include breasts) | ✓ | | | |
| 29. Vascular system (Varicosities, etc.) | ✓ | | | |
| 30. Anus and rectum (Hemorrhoids, Fistulae) (Prostate if indicated) | ✓ | | | |
| 31. Abdomen and viscera (Include hernia) | ✓ | | | |
| 32. External genitalia (Genitourinary) | ✓ | | | |
| 33. Upper extremities | | ✓ | | 33 (R) shoulder pain on mvt - prob |
| 34. Lower extremities (Except feet) | | ✓ | | 34 (B) knee & (B) ankle pain on |
| 35. Feet (See item 35 Continued) | | ✓ | | 35 (B) feet pain on treeline + see |
| 36. Spine, other musculoskeletal | | ✓ | | below |
| 37. Identifying body marks, scars, tattoos | ✓ | | | 36 LBP on treeline |
| 38. Skin, lymphatics | ✓ | | | |
| 39. Neurologic | ✓ | | | |
| 40. Psychiatric (Specify any personality deviation) | ✓ | | | |
| 41. Pelvic (Females only) | | | | |
| 42. Endocrine | ✓ | | | |

| 43. DENTAL DEFECTS AND DISEASE (Please explain. Use dental form if completed by dentist. If dental examination not done by dental officer, explain in item 44.) Acceptable ☐      Not Acceptable   Class | 35. FEET (Continued) (Circle category) Normal Arch          Mild              Asymptomatic Pes Cavus         (Moderate) Pes Planus         Severe           (Symptomatic) |
|---|---|

| LAST NAME - FIRST NAME - MIDDLE NAME (SUFFIX) | | SOCIAL SECURITY NUMBER |
|---|---|---|
| Claiborne   Damon Jahron | | Redacted PII |

**LABORATORY FINDINGS**

| 45. URINALYSIS | | a. Albumin N 9 | 46. URINE HCG | | 47. H/H 16.2/47.9 | 48. BLOOD TYPE B+ |
|---|---|---|---|---|---|---|
| | | b. Sugar N 9 | | | | |

| TESTS | RESULTS | | HIV SPECIMEN ID LABEL | DRUG TEST SPECIMEN ID LABEL |
|---|---|---|---|---|
| 49. HIV | | | | |
| 50. DRUGS | | | | |
| 51. ALCOHOL | | | | |
| 52. OTHER | | | | |
| a. PAP SMEAR | | | | |
| b. PSA | | | | |
| c. S.G. | 1.017 | | | |

**MEASUREMENTS AND OTHER FINDINGS**

| 53. HEIGHT 73.5 | 54. WEIGHT 220 lbs. | 55. MIN WGT - MAX WGT | MAX BF % | 56. TEMPERATURE 96.8 | 57. PULSE 88 |
|---|---|---|---|---|---|

| 58. BLOOD PRESSURE | | | 59. RED/GREEN (Army Only) | 60. OTHER VISION TEST |
|---|---|---|---|---|
| a. 1ST | b. 2ND | c. 3RD | | |
| SYS. 140 | SYS. 133 | SYS. | | |
| DIAS. 83 | DIAS. 88 | DIAS. | | |

| 61. DISTANT VISION | | 62. REFRACTION BY AUTOREFRACTION OR MANIFEST | | | 63. NEAR VISION | |
|---|---|---|---|---|---|---|
| Right 20/25 | Corr. to 20/ | By | S. | CX | Right 20/20 Corr. to 20/ | by |
| Left 20/25 | Corr. to 20/ | By | S. | CX | Left 20/20 Corr. to 20/ | by |

| 64. HETEROPHORIA (Specify distance) | | | | | | | |
|---|---|---|---|---|---|---|---|
| ES° | EX° | R.H. | L.H. | Prism div. | Prism Conv CT | NPR | PD |

| 65. ACCOMMODATION | | 66. COLOR VISION (Test used and result) | 67. DEPTH PERCEPTION (Test used and score) AFVT | |
|---|---|---|---|---|
| Right | Left | PIP     — 1 /14 PASS | Uncorrected | Corrected |

| 68. FIELD OF VISION | 69. NIGHT VISION (Test used and score) N-I B H | 70. INTRAOCULAR TENSION | |
|---|---|---|---|
| | | O.D. 10 | O.S. 10 |

| 71a. AUDIMETER | Unit Serial Number 62393 | | | | | 71b. Unit Serial Number | | | | | | 72a. READING ALOUD TEST | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Date Calibrated (YY.YYMMDD) 2013 Nov 01 | | | | | | Date Calibrated (YYYYMMDD) | | | | | | | |
| HZ | 500 | 1000 | 2000 | 3000 | 4000 | 6000 | HZ | 500 | 1000 | 2000 | 3000 | 4000 | 6000 | SAT | UNSAT |
| Right | 5 | 15 | 5 | 20 | 5 | 15 | Right | | | | | | | 72b. VALSALVA |
| Left | 10 | 0 | 0 | 10 | 15 | 25 | Left | | | | | | | SAT | UNSAT |

**73. NOTES (Continued) AND SIGNIFICANT OR INTERVAL HISTORY (Use additional sheets if necessary.)**

CHOL 225 TRIG 184 HDL 38 LDL 144 FBS 97 EKG NSR _____ ANTI-HCV _____

Special Forces, HALO, Diving, SERE: WBC_____ Sickle Cell_____ G6PD_____ RPR_____ Lead_____

CXR (Location, Date, Results): Main Radiology 23 June 2014 Neg chest x-ray _____

Tobacco: YES (NO) (PPD:_____)

I have no fear of heights, depths, darkness or enclosed spaces._____
(ONLY FOR: Special Forces, HALO, Diving, SERE)          (Signature)

EDC (Chapter 8 (pregnancy) Only:_____

GUIAC:   POS   NEG                     TOXIC PE'S: RBC CHOLIN _____
         Positive Control Positive                                    (1st Date & Result)
         Negative Control Negative
                                       RBC CHOLIN _____
                                                    (2nd Date & Result)

                                       LEAD_____

| LAST NAME - FIRST NAME - MIDDLE NAME (SUFFIX) | | | | | | | SOCIAL SECURITY NUMBER |
|---|---|---|---|---|---|---|---|
| _Claiborne Vernon J._ P.C. | | | | | | | Redacted PII |

**74.a. EXAMINEE/APPLICANT** (check one)

| ✓ | IS QUALIFIED FOR SERVICE | _Retiring / Retirement Separation_ | **75. I have been advised of my disqualifying condition.** | |
|---|---|---|---|---|
| | IS NOT QUALIFIED FOR SERVICE | | a. SIGNATURE OF EXAMINEE | b. DATE (YYYYMMDD) |

**b. PHYSICAL PROFILE**

| P | U | L | H | E | S | X | PROFILER INITIALS | DATE (YYYYMMDD) |
|---|---|---|---|---|---|---|---|---|
| 2 | 1 | 2 | 1 | 1 | 1 | | U.Y.P | 2014/06/13 |
| | | | | | | | | |
| | | | | | | | | |

**76. SIGNIFICANT OR DISQUALIFYING DEFECTS**

| ITEM NO | MEDICAL CONDITION/DIAGNOSIS | ICD CODE | PROFILE SERIAL | RBJ DATE (YYYYMMDD) | QUALI-FIED | DIS-QUALI-FIED | EXAMINER INITIALS | WAIVER RECEIVED | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | SERVICE | DATE (YYYYMMDD) |
| | PFB | | | | | | | | |
| | | | | | | | | | |

**77. SUMMARY OF DEFECTS AND DIAGNOSES** (List diagnoses with item numbers) (Use additional sheets if necessary.)
_33 (R) shoulder pain on push-pull, 34. (R) knee (R) ankle pain on treadmill 35 (R) heel pain on treadmill & mod symptomatic pes planus. 36. (R) BP on treadmill. 73. Hyperlipidemia / Relates Hx (R) FP (R) shoulder (R) knee & (R) ankle pain & see numbers (R) agent tied 2° to a cold weather injury 9498. Relates Hx IBS, hemorrhoids, colon polyps, provision, urinary frequency, hematuria, chest pain, palpitation, sleep issues, depression_

**78. RECOMMENDATIONS / FURTHER SPECIALIST EXAMINATIONS INDICATED** (Specify) (Use additional sheet if necessary.)
_F/U c̄ PCM & mental health 2° whose next visions_

**79. MEPS WORKLOAD** (For MEPS use only)

| WKID | ST | DATE (YYYYMMDD) | INITIAL | WKID | ST | DATE (YYYYMMDD) | INITIAL |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

**80. MEDICAL INSPECTION DATE** 

| | HT | WT | %BF | MAX WT | HCG | QUAL | DISQ | PHYSICIAN'S SIGNATURE |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |

| **81.a. TYPED OR PRINTED NAME OF PHYSICIAN OR EXAMINER** | **b. SIGNATURE** |
|---|---|
| Albert Schoch, PA-C Physical Exams | _Albert L Schoch_ |

| **82.a. TYPED OR PRINTED NAME OF PHYSICIAN OR EXAMINER** OMDH | **b. SIGNATURE** |
|---|---|
| | |

| **83.a. TYPED OR PRINTED NAME OF DENTIST OR PHYSICIAN** (Indicate which) | **b. SIGNATURE** |
|---|---|
| | |

| **84.a. TYPED OR PRINTED NAME OF REVIEWING OFFICER/APPROVING AUTHORITY** | **b. SIGNATURE** |
|---|---|
| Chienuc H. Clarke, M.D | |

**85. This examination has been administratively reviewed for completeness and accuracy.** 
Chief, Sched... Cont... 
Vadigan Healthcare System

| a. SIGNATURE | b. GRADE | c. DATE (YYYYMMDD) |
|---|---|---|
| | | |

| **86. WAIVER GRANTED** (If yes, date and by whom) | **87. NUMBER OF ATTACHED SHEETS** |
|---|---|
| YES | |
| NO | |

**DD FORM 2808, OCT 2005**

Page 3 of 3 Pages

Scanned By: Physical Exams

MAMC OP 1250-DH, MAY 2011

**000156**



000157

# REPORT OF MEDICAL HISTORY
**(This information is for official and medically confidential use only and will not be released to unauthorized persons.)**

OMB No. 0704-0413
OMB approval expires
Mar 31, 2010

The public reporting burden for this collection of information is estimated to average 10 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to the Department of Defense, Executive Services Directorate (0704-0413). Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.

**PLEASE DO NOT RETURN YOUR FORM TO THE ABOVE ORGANIZATION. RETURN COMPLETED FORM AS INDICATED ON PAGE 2.**

## PRIVACY ACT STATEMENT
**AUTHORITY:** 10 USC 504, 505, 507, 532, 978, 1201, 1202, and 4346; and E.O. 9397 (SSAN).
**PRINCIPAL PURPOSE(S):** To obtain medical data for determination of medical fitness for enlistment, induction, appointment and retention for applicants and members of the Armed Forces. The information will also be used for medical boards and separation of Service members from the Armed Forces.
**ROUTINE USE(S):** None.
**DISCLOSURE:** Voluntary; however, failure by an applicant to provide the information may result in delay or possible rejection of the individual's application to enter the Armed Forces. For an Armed Forces member, failure to provide the information may result in the individual being placed in a non-deployable status.

**WARNING:** The information you have given constitutes an official statement. Federal law provides severe penalties (up to 5 years confine- ment or a $10,000 fine or both), to anyone making a false statement. If you are selected for enlistment, commission, or entrance into a commissioning program based on a false statement, you can be tried by military courts-martial or meet an administrative board for discharge and could receive a less than honorable discharge that would affect your future.

| 1. LAST NAME, FIRST NAME, MIDDLE NAME (SUFFIX) Claiborne Brown J. | 2. SOCIAL SECURITY NUMBER Redacted PII | 3. TODAY'S DATE (YYYYMMDD) 20140623 |
|---|---|---|

| 4.a. HOME ADDRESS (Street, Apartment No., City, State, and ZIP Code) Redacted PII | 5. EXAMINING LOCATION AND ADDRESS (Include ZIP Code) Madigan Army Medical Center MCHJ-CLZ (Physical Exams) Old Nisqually Clinic Tacoma, WA 98431-1100 |
|---|---|
| b. HOME TELEPHONE (Include Area Code) Redacted PII | |

**X ALL APPLICABLE BOXES:**

7.a. POSITION (Title, Grade, Component) E-6

| 6.a. SERVICE | b. COMPONENT | c. PURPOSE OF EXAMINATION | |
|---|---|---|---|
| ☒ Army   ☐ Coast Guard | ☒ Active Duty | ☐ Enlistment | ☐ Medical Board   ☐ Other (Specify) |
| ☐ Navy | ☐ Reserve | ☐ Commission | ☐ Retirement |
| ☐ Marine Corps | ☐ National Guard | ☐ Retention | ☐ U.S. Service Academy |
| ☐ Air Force | | ☐ Separation | ☐ ROTC Scholarship Program |

b. USUAL OCCUPATION
Petroleum Supplier

| 8. CURRENT MEDICATIONS (Prescription and Over-the-counter) Nexium Sythoul Viagra Prasosin Zoloft | 9. ALLERGIES (Including insect bites/stings, foods, medicine or other substance) Hay Fever / Grass Cantalupe |
|---|---|

**Mark each item "YES" or "NO". Every item marked "YES" must be fully explained in Item 29 on Page 2.**

| HAVE YOU EVER HAD OR DO YOU NOW HAVE: | YES | NO | | 12. (Continued) | YES | NO |
|---|---|---|---|---|---|---|
| 10.a. Tuberculosis | ○ | ☒ | | f. Foot trouble (e.g., pain, corns, bunions, etc.) | ☒ | ○ |
| b. Lived with someone who had tuberculosis | ○ | ☒ | | g. Impaired use of arms, legs, hands, or feet | ○ | ☒ |
| c. Coughed up blood | ○ | ☒ | | h. Swollen or painful joint(s) | ☒ | ○ |
| d. Asthma or any breathing problems related to exercise, weather, pollens, etc. | ☒ | ○ | | i. Knee trouble (e.g., locking, giving out, pain or ligament injury, etc.) | ☒ | ○ |
| e. Shortness of breath | ☒ | ○ | | j. Any knee or foot surgery including arthroscopy or the use of a scope to any bone or joint | ☒ | ○ |
| f. Bronchitis | ☒ | ○ | | k. Any need to use corrective devices such as prosthetic devices, knee brace(s), back support(s), lifts or orthotics, etc. | ○ | ☒ |
| g. Wheezing or problems with wheezing | ☒ | ○ | | l. Bone, joint, or other deformity | ○ | ☒ |
| h. Been prescribed or used an inhaler | ☒ | ○ | | m. Plate(s), screw(s), rod(s) or pin(s) in any bone | ○ | ☒ |
| i. A chronic cough or cough at night | ☒ | ○ | | n. Broken bone(s) (cracked or fractured) | ○ | ☒ |
| j. Sinusitis | ○ | ☒ | | 13.a. Frequent indigestion or heartburn | ○ | ☒ |
| k. Hay fever | ☒ | ○ | | b. Stomach, liver, intestinal trouble, or ulcer | ☒ | ○ |
| l. Chronic or frequent colds | ○ | ☒ | | c. Gall bladder trouble or gallstones | ○ | ☒ |
| 11.a. Severe tooth or gum trouble | ○ | ☒ | | d. Jaundice or hepatitis (liver disease) | ○ | ☒ |
| b. Thyroid trouble or goiter | ○ | ☒ | | e. Rupture/hernia | ○ | ☒ |
| c. Eye disorder or trouble | ☒ | ○ | | f. Rectal disease, hemorrhoids or blood from the rectum | ☒ | ○ |
| d. Ear, nose, or throat trouble | ☒ | ○ | | g. Skin diseases (e.g. acne, eczema, psoriasis, etc.) | ☒ | ○ |
| e. Loss of vision in either eye | ○ | ☒ | | h. Frequent or painful urination | ○ | ☒ |
| f. Worn contact lenses or glasses | ☒ | ○ | | i. High or low blood sugar | ○ | ☒ |
| g. A hearing loss or wear a hearing aid | ○ | ☒ | | j. Kidney stone or blood in urine | ○ | ☒ |
| h. Surgery to correct vision (RK, PRK, LASIK, etc.) | ○ | ☒ | | k. Sugar or protein in urine | ○ | ☒ |
| 12.a. Painful shoulder, elbow or wrist (e.g. pain, dislocation, etc.) | ☒ | ○ | | l. Sexually transmitted disease (syphilis, gonorrhea, chlamydia, genital warts, herpes, etc.) | ○ | ☒ |
| b. Arthritis, rheumatism, or bursitis | ○ | ☒ | | 14.a. Adverse reaction to serum, food, insect stings or medicine | ○ | ☒ |
| c. Recurrent back pain or any back problem | ☒ | ○ | | b. Recent unexplained gain or loss of weight | ○ | ☒ |
| d. Numbness or tingling | ☒ | ○ | | c. Currently in good health (If no, explain in Item 29 on Page 2.) | ○ | ☒ |
| e. Loss of finger or toe | ○ | ☒ | | d. Tumor, growth, cyst, or cancer | ○ | ☒ |

| DD FORM 2807-1, MAR 2007 | DoD exception to SF 93 approved by ICMR, August 3, 2000. PREVIOUS EDITION IS OBSOLETE. | Scanned By: Physical Exams | Page 1 of 3 Pages Adobe Professional 7.0 |
|---|---|---|---|

**000158**

| LAST NAME, FIRST NAME, MIDDLE NAME (SUFFIX) | SOCIAL SECURITY NUMBER |
|---|---|
| Claiborne Damon J. | Redacted PII |

**Mark each item "YES" or "NO". Every item marked "YES" must be fully explained in Item 29 below.**

| HAVE YOU EVER HAD OR DO YOU NOW HAVE: | YES | NO |
|---|---|---|
| 15.a. Dizziness or fainting spells | ○ | ⊗ |
| b. Frequent or severe headache | ○ | ⊗ |
| c. A head injury, memory loss or amnesia | ○ | ⊗ |
| d. Paralysis | ○ | ⊗ |
| e. Seizures, convulsions, epilepsy or fits | ○ | ⊗ |
| f. Car, train, sea, or air sickness | ○ | ⊗ |
| g. A period of unconsciousness or concussion | ○ | ⊗ |
| h. Meningitis, encephalitis, or other neurological problems | ○ | ⊗ |
| 16.a. Rheumatic fever | ○ | ⊗ |
| b. Prolonged bleeding (as after an injury or tooth extraction, etc.) | ○ | ⊗ |
| c. Pain or pressure in the chest | ⊗ | ○ |
| d. Palpitation, pounding heart or abnormal heartbeat | ○ | ⊗ |
| e. Heart trouble or murmur | ○ | ⊗ |
| f. High or low blood pressure | ○ | ⊗ |
| 17.a. Nervous trouble of any sort (anxiety or panic attacks) | ○ | ⊗ |
| b. Habitual stammering or stuttering | ○ | ⊗ |
| c. Loss of memory or amnesia, or neurological symptoms | ○ | ⊗ |
| d. Frequent trouble sleeping | ⊗ | ○ |
| e. Received counseling of any type | ⊗ | ○ |
| f. Depression or excessive worry | ⊗ | ○ |
| g. Been evaluated or treated for a mental condition | ⊗ | ○ |
| h. Attempted suicide | ○ | ⊗ |
| i. Used illegal drugs or abused prescription drugs | ○ | ⊗ |
| 18. FEMALES ONLY. Have you ever had or do you now have: | | |
| a. Treatment for a gynecological (female) disorder | ○ | ○ |
| b. A change of menstrual pattern | ○ | ○ |
| c. Any abnormal PAP smears | ○ | ○ |
| d. First day of last menstrual period (YYYYMMDD) | | |
| e. Date of last PAP smear (YYYYMMDD) | | |

| | YES | NO |
|---|---|---|
| 19. Have you been refused employment or been unable to hold a job or stay in school because of: | | |
| a. Sensitivity to chemicals, dust, sunlight, etc. | ⊗ | ○ |
| b. Inability to perform certain motions | ○ | ⊗ |
| c. Inability to stand, sit, kneel, lie down, etc. | ○ | ⊗ |
| d. Other medical reasons (If yes, give reasons.) | ○ | ⊗ |
| 20. Have you ever been treated in an Emergency Room? (If yes, for what?) | ⊗ | ○ |
| 21. Have you ever been a patient in any type of hospital? (If yes, specify when, where, why, and name of doctor and complete address of hospital.) | ⊗ | ○ |
| 22. Have you ever had, or have you been advised to have any operations or surgery? (If yes, describe and give age at which occurred.) | ⊗ | ○ |
| 23. Have you ever had any illness or injury other than those already noted? (If yes, specify when, where, and give details.) | ○ | ⊗ |
| 24. Have you consulted or been treated by clinics, physicians, healers, or other practitioners within the past 5 years for other than minor illnesses? (If yes, give complete address of doctor, hospital, clinic, and details.) | ⊗ | ○ |
| 25. Have you ever been rejected for military service for any reason? (If yes, give date and reason for rejection.) | ○ | ⊗ |
| 26. Have you ever been discharged from military service for any reason? (If yes, give date, reason, and type of discharge; whether honorable, other than honorable, for unfitness or unsuitability.) | ○ | ⊗ |
| 27. Have you ever received, is there pending, or have you ever applied for pension or compensation for any disability or injury? (If yes, specify what kind, granted by whom, and what amount, when, why.) | ○ | ⊗ |
| 28. Have you ever been denied life insurance? | ○ | ○ |

**29. EXPLANATION OF "YES" ANSWER(S)** (Describe answer(s), give date(s) of problem, name of doctor(s) and/or hospital(s), treatment given and current medical status.)

Permanent Profile: YES NO    P__ U__ L__ H__ E__ S__

Induced while running Asthama (d,(e)(g)(h)
Scrated on eye
Inhaling burn pit smoke & fumes
(R) shoulder  Back pain Lower
Numb Toe Big right
Bilateral toe nail surgery / Pain in joints Shoulder / Knee pain
Orthotics & foot pads. Acute Flat feet
Protien Urine
Polups Intestine

**NOTE: HAND TO THE DOCTOR OR NURSE, OR IF MAILED MARK ENVELOPE "TO BE OPENED BY MEDICAL PERSONNEL"**

DD FORM 2807-1, MAR 2007

**000159**

LAST NAME, FIRST NAME, MIDDLE NAME (SUFFIX)

Claiborne Osman J.

SOCIAL SECURITY NUMBER

Redacted PII

**30. EXAMINER'S SUMMARY AND ELABORATION OF ALL PERTINENT DATA** *(Physician/practitioner shall comment on all positive answers in questions 10 - 29. Physician/practitioner may develop by interview any additional medical history deemed important, and record any significant findings here.)*

a. COMMENTS

10 d, e, g, h    Relates Hx of asthma X 4-5 yrs Rx'd inhalers

10 i    Relates Hx of recurrent chronic cough X 1 yr

11 k    Relates Hx of seasonal allergy since childhood

11 c    Relates Hx of corneal abrasions

11 d    Relates Hx of recurrent irritation of throat X 15 yrs

12 a, h, k    Relates Hx of recurrent (R) shoulder pain X 10 yrs, 2° to heavy lifting

12 c    Relates Hx of recurrent LBP X 1 month 2° to lifting

12 d    Relates Hx of cold weather injury (R) great toe 1989, now c recurrent numbness

12 g, h, i, j    Relates Hx of fungal toe nails, & (B) toenail removal great toes 2° to ingrown toenails

12 h    Relates Hx of recurrent (R) ankle pain X 15 yrs

12 h, i, k    Relates Hx of recurrent (B) knee pain X 4 yrs, 2° to running

12 b    Relates Hx of IBS X 2000

12 f    Relates Hx of hemorrhoids c BRB on B.M. X 14 yrs

14 a    Relates Hx of colon polyps examined 2000 & 2007

12 g    Relates Hx of psoriasis X 14 yrs

12 h, j    Relates Hx of dysuria & urinary frequency X 10 yrs

12 j, k    Relates Hx of hematuria & proteinuria

14 c    Denies good health 2° to issues noted here

16 c, d    Relates Hx of episodes of chest pain & palpitation 2008, resolved now

17 d    Relates Hx of sleep issue X 24 yrs

17 e, f, g    Relates Hx of depression X 15 yrs Rx'd 2000

19 a, 20, 21, 22, 24    As needed for above noted issues & blunt head trauma c LOC X 1 min 2° to truck vehicle accident 2003

b. TYPED OR PRINTED NAME OF EXAMINER *(Last, First, Middle Initial)*
Albert Schoch, PA-C
Physical Exams, OMDH

c. SIGNATURE
Albert L Schoch

d. DATE SIGNED
*(YYYYMMDD)*
2014/06/23

DD FORM 2807-1, MAR 2007

000160

| REPORT OF MEDICAL ASSESSMENT | REPORT CONTROL SYMBOL DD-HA(AR)1939 |
|---|---|

PRIVACY ACT STATEMENT

AUTHORITY: PL 103-160, EO 9397.
PRINCIPAL PURPOSE: To be used by the Medical Services to provide a comprehensive medical assessment for active and reserve component service members separating or retiring from active duty.
ROUTINE USES: A copy of this form will be released to the Department of Veterans Affairs.
DISCLOSURE: Voluntary; however, failure to disclose the requested personal information may result in delay in processing any disability claim.

**SECTION I - TO BE COMPLETED BY SERVICE MEMBER.** Any service member who requests a physical examination may have one.

| 1. NAME (Last, First, Middle) Claiborne Aldmon | 2. SOCIAL SECURITY NUMBER Redacted PII | 3. RANK SS6 |
|---|---|---|

| 4. COMPONENT Active | 5. UNIT OF ASSIGNMENT I Corps HHB . A20 |
|---|---|

| 6a. HOME STREET ADDRESS (Or RFD, including apartment number) Redacted PII | b. CITY Redacted PII | c. STATE Redacted PII | d. ZIP CODE Redacted PII | 7. HOME TELEPHONE NUMBER (Include area code) Redacted PII |
|---|---|---|---|---|

| 8. DATE OF LAST PHYSICAL EXAMINATION BY THE MILITARY (YYMMDD) | 9. DATE ENTERED ON CURRENT ACTIVE DUTY (YYMMDD) |
|---|---|

10. COMPARED TO MY LAST MEDICAL ASSESSMENT/PHYSICAL EXAMINATION, MY OVERALL HEALTH IS (X one. If "Worse," explain.)
- [ ] THE SAME
- [ ] BETTER
- [X] WORSE

11. SINCE YOUR LAST MEDICAL ASSESSMENT/PHYSICAL EXAMINATION, HAVE YOU HAD ANY ILLNESSES OR INJURIES THAT CAUSED YOU TO MISS DUTY FOR LONGER THAN 3 DAYS? (X one. If "Yes," explain.)
- [ ] NO
- [X] YES

12. SINCE YOUR LAST MEDICAL ASSESSMENT/PHYSICAL EXAMINATION, HAVE YOU BEEN SEEN BY OR BEEN TREATED BY A HEALTH CARE PROVIDER, ADMITTED TO A HOSPITAL, OR HAD SURGERY? (X one. If "Yes," explain.)
- [X] NO
- [ ] YES

13. HAVE YOU SUFFERED FROM ANY INJURY OR ILLNESS WHILE ON ACTIVE DUTY FOR WHICH YOU DID NOT SEEK MEDICAL CARE? (X one. If "Yes," explain.)
- [ ] NO
- [X] YES   Accident in Vehicle roll over

14. ARE YOU NOW TAKING ANY MEDICATIONS? (X one. If "Yes," list medications.)
- [ ] NO
- [X] YES   Bufflo Alexium, Provoling Zoloft motrin

15. DO YOU HAVE ANY CONDITIONS WHICH CURRENTLY LIMIT YOUR ABILITY TO WORK IN YOUR PRIMARY MILITARY SPECIALTY OR REQUIRE GEOGRAPHIC OR ASSIGNMENT LIMITATIONS? (X one. If "Yes," explain.)
- [ ] NO
- [X] YES   temp profile Bile issues

16. DO YOU HAVE ANY DENTAL PROBLEMS? (X one. If "Yes," explain.)
- [X] NO
- [ ] YES

17. DO YOU HAVE ANY OTHER QUESTIONS OR CONCERN ABOUT YOUR HEALTH? (X one. If "Yes," explain.)
- [X] NO
- [ ] YES

18. AT THE PRESENT TIME, DO YOU INTEND TO SEEK DEPARTMENT OF VETERANS AFFAIRS (VA) DISABILITY? (X one. If "Yes," list conditions for which you will ask for VA Disability.)
- [ ] NO
- [X] YES
- [ ] UNCERTAIN

19. CERTIFICATION. I certify that the information provided above is true and complete to the best of my knowledge.

| a. SIGNATURE OF SERVICE MEMBER | b. DATE SIGNED 20/06 23 |
|---|---|

DD FORM 2697, FEB 95

SECTION II - TO BE COMPLETED BY INDIVIDUALLY PRIVILEGED HEALTH CARE PROVIDER

This Report of Medical Assessment is to be used by the Medical Services to provide a comprehensive medical assessment for active and reserve component service members separating or retiring from active duty. The assessment will cover, as a minimum, the period since the service member's last medical assessment/physical examination, or the period of this call or order to active duty. Any service member who requests a physical examination may have one. Any service member who has indicated "yes" to Item 18 will have an appropriate physical examination, if the last examination is more than 12 months old and/or there are new signs and/or symptoms. If the service member answers "Worse" to Item 10 or "Yes" to Items 11, 12, or 14 through 18, documentation of the injury, illness, or problem should be included in the service member's medical or dental record.

**20. HEALTH CARE PROVIDER COMMENTS** *(All patient complaints must be addressed)*

*See DD 2907*

**21. WAS PATIENT REFERRED FOR FURTHER EVALUATION?** *(X one. If "Yes," specify where.)*

[X] NO

[ ] YES

**22. PURPOSE OF ASSESSMENT** *(X one. If "Other," explain.)*

[X] SEPARATION *(Includes discharge from military service and release from active duty, including release of National Guard and Reserve personnel voluntarily or involuntarily called or ordered to active duty.)*

[ ] RETIREMENT

[ ] OTHER

| 23. MEDICAL FACILITY | Madigan Healthcare System<br>OMDH-MCHJ-CLZ (Physical Exams)<br>Old Nisqually Clinic<br>JBLM, WA 98433 | 24. DATE OF ASSESSMENT *(YYMMDD)*<br>14/06/23 |
|---|---|---|

**25. HEALTH CARE PROVIDER**

| a. NAME *(Last, First, Middle Initial)*<br>Albert Schoch, PA-C<br>Physical Exams, OMDH | b. GRADE/RANK<br>GS-11 | c. SIGNATURE<br>*Albert F Schoch* |
|---|---|---|

DD FORM 2697, FEB 95 (BACK)

**MEDICAL RECORD-SUPPLEMENTAL MEDICAL DATA**
For use of this form, see AR 40-66; the proponent agency is the Office of The Surgeon General.

| REPORT TITLE | OTSG APPROVED *(Date)* |
|---|---|
| **HEPATITIS C SCREENING** | *(YYYYMMDD)*   MAMC MAY 2011 |

1. Hepatitis C is transmitted primarily by contaminated blood (e.g., blood transfusions, contaminated needles, or sticks with contaminated sharp objects). The following are possible sources of hepatitis C virus (HCV). If you can answer "yes" to any of these risk factors, you should receive a sample blood test to determine if you could have hepatitis C. If you consider yourself at risk, based on an exposure to a possible source of hepatitis C virus, you should have a simple blood test for HCV. You will not be asked to identify any specific risk factors to justify HCV testing.

2. Risk Factors:

    a. Receiving a transfusion of blood or blood products before 1992.
    b. Injecting illegal drugs, including use once many years ago.
    c. Receiving clotting factor concentrates produced before 1987.
    d. Having chronic (long-term) hemodialysis.
    e. Being told that you have persistent abnormal liver enzyme tests (alanine aminotransferase) or an unexplained liver disease.
    f. Receiving an organ transplant before July 1992.
    g. Having a needle stick, sharps or mucosal exposure to potentially HCV-infected blood as part of your occupational duties and not previously evaluated for HCV infection.

3. If the test is positive, you will receive a medical evaluation to confirm HCV infection, determine your need for specific treatments and provided counseling on life-style modifications and steps to protect others from infection.

4. Check one of the following responses and sign and date.

    ☒ No, I do not want to be tested for hepatitis C.

    ☐ Yes, I want to be tested for hepatitis C.

_____    *20140617*
(SIGNATURE)                                               (DATE)

| PREPARED BY  *(Signature & Title)* | DEPARTMENT/SERVICE/CLINIC | DATE  *(YYYYMMDD)* |
|---|---|---|

| PATIENT'S IDENTIFICATION     *(For typed or written entries give:   Name   last, first, middle;grade; date; hospital or medical facility) (FMP. sponsor's SSN, patient's SSN, date of birth and register number (if any))* | |
|---|---|
| *Claiborne, Damon*     Redacted PII | ☒ HISTORY/PHYSICAL ☐ FLOW CHART<br>☐ OTHER EXAMINATION ☐ OTHER *(Specify)*<br>   OR EVALUATION<br>☐ DIAGNOSTIC STUDIES<br>☐ TREATMENT |

**DA FORM 4700, FEB 2003**     EDITION OF MAY 78 IS OBSOLETE     MAMC OP 1248-...
Scanned by Physical Exams     Edition of 1 May



**DEPARTMENT OF THE ARMY**
U.S. ARMY HUMAN RESOURCES COMMAND
1600 SPEARHEAD DIVISION AVENUE
FORT KNOX, KY 40122-5306

REPLY TO
ATTENTION OF

AHRC-EPF-M                                                        25 Nov 2014

MEMORANDUM FOR Commander, I CORPS STB, FT. LEWIS, WA 98433

SUBJECT: Suspension of Approved Retirement – SSG CLAIBORNE, DAMON, Redacted PII Redacted PII

1. The approved retirement pertaining to the above named Soldier is suspended and the retirement orders will be revoked or rescinded as appropriate. The approved retirement will remain in effect.

2. Upon completion of the current investigation, if administrative elimination is not effected, the Soldier will be retired on the first day of the month following the month charges are dismissed. Waivers are approved only in cases of fully documented extreme hardship to the Soldier or his/her immediate family.

3. If an administrative elimination board is convened and the Soldier receives a discharge as part of his/her punishment, the approved retirement will be revoked. If punishment given does not include discharge, the Soldier will be retired in the grade held on the date of retirement, on the first day of the month following the month the administrative elimination action is completed.

4. The personnel officer will ensure that a complete copy of the application and supporting documents are forwarded for filing in the Soldier's OMPF IAW Table 2-1, AR 600-8-104.

5. Inform the Soldier of this decision and furnish a copy of this correspondence to the Soldier.

FOR THE COMMANDER:

RONALD A. SIMONS
Chief, Enlisted Retirements
and Separations

000164

# ENLISTED RECORD BRIEF

| BRIEF DATE 20140811 | NAME CLAIBORNE, DAMON JAHRON | | RANK - DOR SSG 20121201 | PMOS 92F | SSN Redacted PII | COMPONENT REGULAR |
|---|---|---|---|---|---|---|

## SECTION I – Assignment Information

**OS/Deployment Combat Duty**

| #S - | 3 |
|---|---|
| #I - | 3 |

| Start-End Date | CT | MO | TS | IT |
|---|---|---|---|---|
| 20121010-20140208 | KS | 16 | 1 | L |
| 20100910-20110615 | AF | 9 | 1 | L |
| 20070305-20080305 | KS | 12 | 1 | L |
| 20030415-20040415 | IZ | 12 | 1 | L |
| 20000710-20001124 | KV | 5 | 1 | L |
| 19980626-20010615 | GM | 36 | 1 | L |

| | # | M |
|---|---|---|
| C | 4 | 37 |
| O | 0 | 0 |
| R | 0 | 0 |
| TOT: | 37 | |

**Dwell Time**

| Start | 20110615 |
|---|---|
| Month - Days | 38 Mo 14 Days |

| DEROS | |
|---|---|
| DROS | 20140208 |

| Date Dependents Arrived OS | |
|---|---|
| PMOS | 92F | SQI | O |
| SMOS | 11B | PDSI/YRMO | / |
| Bonus MOS | 92F | ASI | H7 |

| Bonus Enlist Elig Dt | 20090901 |
|---|---|
| Promotion Points/YRMO | |
| Prev Promotion Points/YRMO | |

| Prom Seq# | | Prom Select Dt |
|---|---|---|

Promotion MOS

| ASVAB | | Test # / DI | | AFCT / 20120301 |
|---|---|---|---|---|
| GT | 116 | ELEC | 116 | FOOD | 115 | TECH | 117 |
| ADMIN | 115 | FA | 115 | COMMO | 116 | |
| CMBT | 115 | MECH | 113 | MAINT | 114 | |

| Delay Separation Reason | |
|---|---|
| AEA / Dt | L / |

| Flag Code BA | Flag Start Dt 20140220 | Flag Expiration Dt |
|---|---|---|

## SECTION II – Security Data

| PSI Status NONE | Fld Det PS Stat NONE |
|---|---|
| PSI Invest INIT | |
| PSI Invest Compl | 19980323 |

### SECTION V – Foreign Language

| Language | Read | Listen | Speak |
|---|---|---|---|

### SECTION VI – Military Education

| MEL/MES | ALC/GRADUATED | | |
|---|---|---|---|
| Course | ACH | Year |
| ENV COMPLNCE OFCR CERT | | 2013 |
| COMBAT LIFE SAVERS CRS | | 2012 |
| ADV LDR CRS (ALC) | | 2009 |
| FBCB2 LDR OPNET CERT | | 2009 |
| COMBATIVES LEVEL 1 | | 2007 |
| BUS DRIVER CRS | | 2006 |
| WARRIOR LEADER CRS | | 2004 |
| DEF PACK HAZ MAT TRANS | | 1998 |
| HAZMAT DRIVER INSTR | | 1998 |
| PETROLEUM VEHICLE OPER | | 1998 |
| PETROLEUM QUAL ASURE | | 1998 |

| BMQ | 20111117/DA FORM 5790-R (M16)/37 |
|---|---|
| Correspondence CRS Total # Hrs | 442 |

## SECTION III – Service Data

| BASD 19960407 | PEBD 19891018 | BESD 19890720 |
|---|---|---|
| ETS 20150930 | DIEMS 19890221 | Reenl Elig/Prohib sv |
| # Days Lost | AGCM Dt 20130209 | AGCM Elig Dt 20160209 |

| | PVT | PV2 | PFC | SPC - CPL |
|---|---|---|---|---|
| DOR | | | | 19980128 |
| | SGT | SSG | SFC | MSG - 1SG |
| DOR | 20070701 | 20121201 | | |
| DOR | | SGM - CSM | | |

## SECTION VII – CIVILIAN Education

| Level Completed 4 YRS HS | | Yr | 1989 |
|---|---|---|---|
| DESG HIGH SCHOOL DIPLOMA | | | |
| Institution Discipline | | Yr | |
| Institution Discipline | | Yr | |
| Number Of Semester Hours Completed | | 102 | |

### Technical Certification

| Course Name | Dt Certified | Dt Expires |
|---|---|---|

## SECTION VIII – Awards and Decorations

| ARCOM | 3 | | KUKULIBM | 1 |
|---|---|---|---|---|
| AAM | 7 | | COA | 6 |
| MUC | 1 | | | |
| AGCM | 7 | | DRV/MECH | 1 |
| NDSM | 2 | | MQBSS-R | 1 |
| SWASM | 3 | | | |
| KCMBSS | 1 | | | |
| ACM-CS | 1 | | | |
| ICM-CS | 2 | | | |
| GWTEM | 1 | | | |
| GWTSM | 1 | | | |
| KDSM | 1 | | | |
| NOPDR | 2 | | | |
| ASR | 1 | | | |
| OSR | 5 | | | |
| NATOMDL | 2 | | | |
| SAKULIBM | 1 | | | |

## SECTION IV – Personal/Family Data

| Date of Birth Redacted PII | Birthplace Redacted PII |
|---|---|
| Country of Citz. US | Sex/Race MALE / BLACK |
| No of Dependent Adults/Children 1 / 8 | Religion BAPT CH OTHER |
| Marital Status MARRIED | Spouse Birthplace/Citz / |
| PULHES 212111 MRC1 | Height/Weight 73/217 |
| EFMP Dt 20150901 | #Cmd Sponsored 0 |
| Physical Category A | APFT DI P/F Score 201302/PASSED/229 |
| Last Physical Exam 20140623 | MMRB Results/Dt |
| Home of Record | |
| Mailing Address Redacted PII | |
| Mil Spouse SSN/MPC | |
| Svc Comp / DoD | |
| Emergency Data Verified Date 20140212 | |

### SECTION X – Remarks

| HIV YRMO 201403 |
|---|
| RGMT AFL CORPQM |
| Date Last Photo 201304 |

| TRCMDS | CPOSCD | TRCUAD | FYCAL |
|---|---|---|---|

## SECTION IX – Assignment Information

Date of Loss 20140208 | Date of Last PCS 20140208 | Date of Last NCOER 20140208

| ASGT | FROM | MO | UNIT NO | ORGANIZATION | STATION | LOC | COMD | DUTY TITLE | DMOS | ASI | LANG |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PROJ Current | 20140328 | | WAT3A0 | 0001HQOPNS CO A | JBLM LEWI | US | FC | OVERSTRENGTH | 92F3O | 00 | YY |
| 1st Prev | 20140208 | | WAT301 | 0001 1 BDE REPL | JBLM LEWI | US | FC | INCOMING PERSONNEL | 92F3O | 00 | YY |
| 2nd Prev | 20130329 | | WJS7T0 | 0008 HQ HSC HHB | YONGSAN | KS | P1 | SURPLUS SLDR | 92F3O | 00 | YY |
| 3rd Prev | 20130114 | | WJS7B0 | 0008 HQ INTEL CO HHB | YONGSAN | KS | P1 | PETRL SGT | 92F4O | 00 | |
| 4th Prev | 20121017 | | W30ZAA | RELIGIOUS RETREAT CENT | YONG SAN | KS | BA | SUPPLY NCO | 92F2O | 00 | |
| 5th Prev | 20121010 | | W6XLAA | USALRCTRYONGSAN | YONGSAN | KS | X1 | INCOMING PERSONNEL | 92F2O | 00 | YY |
| 6th Prev | 20120127 | | WJAYA0 | 0004CSCO A DIST | FT CARSON | US | FC | PETRL HVY VEH OPR | 92F2O | H7 | |
| 7th Prev | 20110617 | | WJAYA0 | 0004CSCO A DIST | FT CARSON | US | FC | PETRL HVY VEH OPR | 92F2O | H7 | |
| 8th Prev | 20100617 | | WJAYAD | 0004CSBN | FT CARSON | US | FC | INCOMING PERSONNEL | 92F2O | 00 | YY |
| 9th Prev | 20080325 | 0 | WHE2AA | 0049QMHHC | FT LEE | US | FC | OPS TRAINING NCO S-3 | 92F2O | 00 | YY |
| 10th Prev | 20071107 | 0 | WHZZE0 | 010002AVE CO FWD SPT | CP EAGLE | KS | P8 | ACFT FUEL HANDLER | 92F2O | H7 | YY |
| 11th Prev | 20070308 | 0 | WHP7AA | 0001AGREPL REG 40 | CP COINER | KS | P8 | PETRL SUPPLY SP | 92F1O | H7 | YY |
| 12th Prev | 20070306 | 0 | WDFGAA | CS HHC CORPS SPT BN | FT LEWIS | US | FC | PETRL SUPPLY SP | 92F1O | H7 | YY |
| 13th Prev | 20050822 | 0 | WD0FAA | 0528QMPETROLEUM S | FT LEWIS | US | FC | PETRL SUPPLY SP | 92F1O | 00 | YY |
| 14th Prev | 20050725 | 0 | WET1H0 | 0080ODHHC OIF 25 REAR | FT LEWIS | US | FC | PETRL SUPPLY SP | 92F1O | H7 | YY |
| 15th Prev | 20010724 | 4 | WD0FAA | 0528QMPETROLEUM S | FT LEWIS | US | FC | PETRL HVY VEH OPR | 92F1O | H7 | YY |
| 16th Prev | 20010426 | 1 | WET1AA | 0080ODAMMO DS/GS | FT LEWIS | US | FC | PETRL SUPPLY SP | 77F1O | H7 | YY |
| 17th Prev | 20001305 | 36 | WH6YT0 | CCO, 501ST MILITARY INTELLIGENCE | DEXHEIM | GM | E5 | PETRL SUPPLY SP | 92F1O | 00 | YY |
| 18th Prev | 20000921 | 36 | WH6YB1 | BCO, 501ST MILITARY INTELLIGENCE | ANDERSON | GM | E5 | PETRL SUPPLY SP | 92F1O | 00 | YY |
| 19th Prev | 19980626 | 2 | WH6YT0 | HHC, 501ST MILITARY INTELLIGENCE | DEXHEIM | GM | E5 | PETRL SUPPLY SP | 92F1O | 00 | YY |
| 20th Prev | 19980623 | 34 | WH6S1A | 0001AGWIESBADEN DET | SCHWETZIN | GM | EB | PETRL SUPPLY SP | 92F1O | H7 | YY |
| 21st Prev | 19980527 | 2 | W0VL28 | FT LEE VA ( PETROLEUM SUPPLY | VA | US | FC | TRAINEE PETRL SUPPLY SPC | 92F0O | 00 | YY |
| 22nd Prev | 19980210 | 2 | WD52R | CO R TR | FT LEE | US | TC | INCOMMING PERSONNEL | 92F0O | 00 | YY |
| 23rd Prev | 19980129 | 1 | W0U67A | RECEPTEE CO 120TH AG B | FT JACKSO | US | TC | INCOMMING PERSONNEL | 11B0O | 00 | YY |
| 24th Prev | 19970228 | 11 | | 299 INF REGT | Hi | US | FC | INFANTRYMAN | 11B1O | 00 | YY |

000165



**DEPARTMENT OF THE ARMY**
OFFICE OF THE ASSISTANT SECRETARY
MANPOWER AND RESERVE AFFAIRS
111 ARMY PENTAGON
WASHINGTON, DC 20310-0111

SAMR

1 6 JUN 2015

~~MEMORANDUM THRU Deputy Chief of Staff, G-1, DAPE-MPE, 300 Army Pentagon,
Washington, DC 20310~~ JE 16 Jun 15

FOR Commander, I Corps, Mail Stop 1, Joint Base Lewis-McChord, Washington
98433-9500

SUBJECT: Separation Under Army Regulation (AR) 635-200, Paragraph 5-3
(Secretarial Plenary Authority) – Staff Sergeant (SSG) Damon J. Claiborne

1. I find that separating SSG Damon J. Claiborne is clearly in the best interest of the
Army in accordance with AR 635-200, paragraph 5-3a.

2. I direct that SSG Claiborne be separated with a General (Under Honorable
Conditions) characterization of service.

3. SSG Claiborne's Separation Program Designator (SPD) Code is JFF, and his
Reentry Eligibility (RE) Code is RE-4.

4. The point of contact for this action is Mr. Edmondson, (703) 695-7948, or via e-mail:
julian.d.edmondson.civ@mail.mil.

DEBRA S. WADA
Assistant Secretary of the Army
(Manpower and Reserve Affairs)

DEPARTMENT OF THE ARMY
DIRECTORATE OF HUMAN RESOURCES, MILITARY PERSONNEL DIVISION
2140 LIGGETT AVE, ROOM 300, TRANSITION CENTER
JOINT BASE LEWIS-MCCHORD, WA 98433-9500

ORDERS 175-0010                                          24 June 2015

CLAIBORNE, DAMON JAHRON [Redacted PII] SSG 0008 HQ INTEL CO HHB, (WJS7B0)

You are reassigned to the U.S. Army transition point shown for transition
processing.  After processing, you are discharged from the Component shown.  If
you are delayed in reporting to the transition point, you still must report to
the transition point as soon as possible or as authorized to receive a new
effective date of discharge.  Information concerning your port call will be
provided separately.

Assigned to:  JB LEWIS-MCCHORD TC (W12K1X) JOINT BASE LEWIS-MCCHORD WA
    98433-9500
Reporting date:  01 July 2015
Comp:  REGULAR
Date of discharge unless changed or rescinded:  01 July 2015
Additional instructions:  a.  Transitional Health Care Benefits: FOR INFORMATION
ON BENEFITS AND SERVICES SEE THE SOLDIER FOR LIFE (SFL) OFFICE, ARMY COMMUNITY
SERVICES (ACS) AND/OR YOUR MILITARY PERSONNEL OFFICE.  b.  Report to In/Out
processing (Rm 206B, Waller Hall) to receive Installation Clearance
instructions.  All clearing is to be done in duty uniform IAW established
policy. DEPENDENTS: YES/NO.  Travel must be completed and application submitted
within 181 days from date of separation.  Offical travel arrangements purchased
through a commercial travel office (travel agency) not under contract to the
government is not reimbursable.  You are authorized shipment of household goods
to your home of record or place of entry on active duty.  If you plan to ship or
store personal property at government expense, contact Joint Personal Property
Shipment Office (JPPSO), Bldg 2150, at 253-967-5093.  YOU ARE REQUIRED TO ATTEND
A FINANCE BRIEF AT 1100 (MON AND WED) AND REVIEW YOUR DD 214 (0845 MON-WED, FRI)
PRIOR TO SEPARATING.  YOU ARE REQUIRED TO SIGN YOUR DD 214 USING YOUR COMMON
ACCESS CARD (CAC).  c.  You are authorized shipment of household goods and POV
to Home Of Record, or Place of Entry on Active Duty. FAMILY MEMBER(S) DATA:
[Redacted PII]                                                               ,
[Redacted PII]
[Redacted PII]                                                    d. FINANCE
MAY WITHHOLD YOUR FINAL PAY UNTIL COMPLETELY CLEARED FROM THE
UNIT/INSTALLATION.  e.  Contact the Soldier For Life - Transition Assistance
Program Office, Bldg 3271, (253)967-3258/5599 for mandatory transition
counseling (https://www.sfl-tap.army.mil).

FOR ARMY USE
Auth:  AR 635-200 CH (ES)
HOR:     [Redacted PII]
Place EAD or OAD:  LOS ANGELES CA US
MDC:  7BE5
CIC:          [Redacted PII]
Aval Date:  15 July 2015
FOR ADDITIONAL INFORMATION CONTACT:
Mrs. Jackie Edick     [Redacted PII]            253-967-1992
SDN:     [Redacted PII]
Format:  501

DEPARTMENT OF THE ARMY
DIRECTORATE OF HUMAN RESOURCES, MILITARY PERSONNEL DIVISION
2140 LIGGETT AVE, ROOM 300, TRANSITION CENTER
JOINT BASE LEWIS-MCCHORD, WA 98433-9500

ORDERS 181-0008                                              30 June 2015

CLAIBORNE, DAMON JAHRON Redacted PII SSG 0008 HQ INTEL CO HHB, (WJS7B0) JOINT
BASE LEWIS-MCCHORD, WA 98433

The following order is amended as indicated.

So much of order number  Orders 175-0010, DHR, MPD, JOINT BASE LEWIS-MCCHORD, WA
    98433, 24 June 2015
Pertaining to:  DISCHARGE OF CLAIBORNE, DAMON JAHRON Redacted PII SSG, 0008 HQ
    INTEL CO HHB, (WJS7B0)
As reads:  REPORTING DATE: 01 JULY 2015; DATE OF DISCHARGE UNLESS CHANGED OR
    RESCINDED: 01 JULY 2015
How changed:  IATR: REPORTING DATE: 09 JULY 2015; DATE OF DISCHARGE UNLESS
    CHANGED OR RESCINDED: 09 JULY 2015
Auth:  AR 635-200 CH (ES)
FOR ADDITIONAL INFORMATION CONTACT:
Mrs. Jackie Edick  Redacted PII        253-967-1992
SDN:  CLA6603PJ50010
Format:  700

FOR THE COMMANDER:

                                    ***********************************
                                    *    PERSONNEL PROCESSING BRANCH    *
                                    **              OFFICIAL              **
                                    *JOINT BASE LEWIS-MCCHORD, WA 98433*
                                    ***********************************
                                    LUCIAN W. MCLEMORE
                                    HR LEAD, TRANSITION CENTER

DISTRIBUTION:
SSG CLAIBORNE (1)
Cdr 0008 HQ INTEL CO HHB, (WJS7B0) (1)
IMWE-JLM-HR-I/O (1)
DFAS-IN/EM-KW (2)
AFZH-PGC-RC (1)
MCHJ-OPR (1)
MCDS-IN (1)


jle



**DEPARTMENT OF THE ARMY**
U.S. ARMY HUMAN RESOURCES COMMAND
1600 SPEARHEAD DIVISION AVENUE DEPARTMENT 300
FORT KNOX, KY 40122-5300

AHRC-EPZ                                                           14 January 2015

MEMORANDUM THRU Deputy Chief of Staff G-1, 300 Army Pentagon, Washington, DC 20310-0030

FOR Assistant Secretary of the Army, Manpower and Reserve Affairs, 300 Army Pentagon, Washington, DC 20310-0300

SUBJECT: Separation Under the Provisions of AR 635-200, Chapter 5-3, (Secretary Plenary Authority) – SSG Claiborne, Damon J.

1. The request for separation of SSG Damon J. Claiborne is forwarded for consideration by the Assistant Secretary of the Army, Manpower and Reserve Affairs.

2. SSG Claiborne is an enlisted Soldier with over 19 years of active federal service. The Soldier plead guilty in the Kitsap County Superior Court, Washington, to one count of child molestation in the second degree and was sentenced to 15 months incarceration. He was subsequently directed for separation under AR 635-200, chapter 14-5, Conviction by Civil Court, with a General (Under Honorable Conditions) discharge. The execution of separation was suspended 12 months and later vacated. He is now being recommended for separation under Army Directive 2013-21 (Initiating Separation Proceedings and Prohibiting Overseas Assignment for Soldiers Convicted of Sex Offenses).

3. The Commanding General, MG Kenneth R. Dahl, Headquarters, I Corps, recommends separation from the Army with a General (Under Honorable Conditions) Discharge.

4. Point of contact is Ms. Louise Jones, (502) 613-5453, DSN 983-5453.

FOR THE COMMANDER:

HENKEL.LOUIS.OWEN Redacted PII

DOUGLAS F. STITT
Colonel, U.S. Army
Director, Enlisted
    Personnel Management



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, 42D MILITARY POLICE BRIGADE
BUILDING 2007B, 2D STREET,
BOX 339500, MAIL STOP 55
JOINT BASE LEWIS-MCCHORD, WASHINGTON 98433

AFZH-MP                                                                OCT 27 2014

*PRL 31OCT*

MEMORANDUM THRU Commander, I Corps, Joint Base Lewis-McChord, Washington 98433

FOR Headquarters, Department of the Army, ATTN: AHRC-EPR-F, 1600 Spearhead Division Avenue, Fort Knox, Kentucky 40122

SUBJECT: Request for Suspension of Approved Retirement Orders for Staff Sergeant Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps

1. Staff Sergeant Claiborne currently has approved retirement orders dated 27 January 2014. He is also pending separation in accordance with Army Directive 2013-21, under the provision of Army Regulation 635-200 (Active Duty Enlisted Administrative Separations), 6 September 2011, chapter 5-3. His separation packet was digitally sent to HRC for adjudication on 27 August 2014. I hereby request that Staff Sergeant Claiborne's retirement orders be suspended until a determination has been made on his separation.

2. POC for this action is Captain Benjamin M. Hewett at [Redacted PII] or 253-477-1913.

2 Encls                                         DAVID CHASE
1. Retirement Order                             COL, MP
2. Separation Packet                            Commanding

# STATE OF LEGAL RESIDENCE CERTIFICATE

## DATA REQUIRED BY THE PRIVACY ACT OF 1974

**AUTHORITY:** Tax Reform Act of 1976, Public Law 94-455.

**PURPOSE:** Information is required for determining the correct State of legal residence for purposes of withholding State income taxes from military pay.

**ROUTINE USES:** Information herein will be furnished State authorities and to Members of Congress.

**MANDATORY OR VOLUNTARY DISCLOSURE:** Disclosure is voluntary. If not provided, State income taxes will be withheld based on the tax laws of the State previously certified as your legal residence, or in the absence of a prior certification, the tax laws of the applicable State based on your home of record.

| NAME (Last, first, middle initial) | SOCIAL SECURITY NUMBER (SSN) |
|---|---|
| Claiborne    Damon J. | [Redacted PII] |

| LEGAL RESIDENCE/DOMICILE (City or county and State) |
|---|
| Redacted PII |

## INSTRUCTIONS FOR CERTIFICATION OF STATE OF LEGAL RESIDENCE

The purpose of this certificate is to obtain information with respect to your legal residence/domicile for the purposes of determining the State for which income taxes are to be withheld from your "wages" as defined by Section 3401(a) of the Internal Revenue Code of 1954. PLEASE READ INSTRUCTIONS CAREFULLY BEFORE SIGNING.

The terms "legal residence" and "domicile" are essentially interchangeable. In brief, they are used to denote that place where you have your permanent home and to which, whenever you are absent, you have the intention of returning. The Soldiers' and Sailors' Civil Relief Act protects your military pay from the income taxes of the State in which you reside by reason of military orders unless that is also your legal residence/domicile. The Act further provides that no change in your State of legal residence/domicile will occur solely as a result of your being ordered to a new duty station.

You should not confuse the State which is your "home of record" with your State of legal residence/domicile. Your "home of record" is used for fixing travel and transportation allowances. A "home of record" must be changed if it was erroneously or fraudulently recorded initially.

Enlisted members may change their "home of record" at the time they sign a new enlistment contract. Officers may not change their "home of record" except to correct an error, or after a break in service. The State which is your "home of record" may be your State of legal residence/domicile only if it meets certain criteria.

The formula for changing your State of legal residence/domicile is simply stated as follows: physical presence in the new State with the simultaneous intent of making it your permanent home and abandonment of the old State of legal residence/domicile. In most cases, you must actually reside in the new State at the time you form the intent to make it your permanent home. Such intent must be clearly indicated. Your intent to make the new State your permanent home may be indicated by certain actions such as: (1) registering to vote; (2) purchasing residential property or an unimproved residential lot; (3) titling and registering your automobile(s); (4) notifying the State of your previous legal residence/domicile of the change in your State of legal residence/domicile; and (5) preparing a new last will and testament which indicates your new State of legal residence/domicile. Finally, you must comply with the applicable tax laws of the State which is your new legal residence/domicile.

Generally, unless these steps have been taken, it is doubtful that your State of legal residence/domicile has changed. Failure to resolve any doubts as to your State of legal residence/domicile may adversely impact on certain legal privileges which depend on legal residence/domicile including among others, eligibility for resident tuition rates at State universities, eligibility to vote or be a candidate for public office, and eligibility for various welfare benefits. If you have any doubt with regard to your State of legal residence/domicile, you are advised to see your Legal Assistance Officer (JAG Representative) for advice prior to completing this form.

I certify that to the best of my knowledge and belief, I have met all the requirements for legal residence/domicile in the State claimed above and that the information provided is correct.

| SIGNATURE | CURRENT MAILING ADDRESS (Include ZIP Code) | DATE |
|---|---|---|
| [signature] | Redacted PII | 5-10-2015 |

I understand that the tax authorities of my former State of legal residence/domicile will be notified of this certificate.

DD Form 2058, FEB 77

Adobe Professional 7.0

IMMEDIATE REENLISTMENT

## ENLISTMENT/REENLISTMENT DOCUMENT
## ARMED FORCES OF THE UNITED STATES

### PRIVACY ACT STATEMENT

**AUTHORITY:** 5 U.S.C. 3331; 10 U.S.C. 113, 138, 502, 504, 505, 506, 507, 508, 509, 510, 513, 515, 516, 518, 519, 972, 978, 2107, 2107a, 3253, 3258, 3262, 5540, 8252, 8253, 8257, 8258, 12102, 12103, 12104, 12105, 12106, 12107, 12108, 12301, 12302, 12304, 12305, 12405; 14 USC 351, 632; 32 U.S.C. 301, 302, 303, 304; and Executive Order 9397, November 1943 (SSN).

**PRINCIPAL PURPOSE(S):** To record enlistment or reenlistment into the U.S. Armed Forces. This information becomes a part of the subject's military personnel records which are used to document promotion, reassignment, training, medical support, and other personnel management actions. The purpose of soliciting the SSN is for positive identification.

**ROUTINE USE(S):** This form becomes a part of the Service's Enlisted Master File and Field Personnel File. All uses of the form are internal to the relevant Service.

**DISCLOSURE:** Voluntary; however, failure to furnish personal identification information may negate the enlistment/reenlistment application.

### A. ENLISTEE/REENLISTEE IDENTIFICATION DATA

| 1. NAME (Last, First, Middle) | 2. SOCIAL SECURITY NUMBER |
|---|---|
| CLAIBORNE DAMON JAHRON | Redacted PII |

| 3. HOME OF RECORD (Street, City, County, State, Country, ZIP Code) | 4. PLACE OF ENLISTMENT/REENLISTMENT (Mil. Installation, City, State) |
|---|---|
| Redacted PII | HHC 49TH GROUP<br>FORT LEE, VA 23801 |

| 5. DATE OF ENLISTMENT/ REENLISTMENT (YYYYMMDD) | 6. DATE OF BIRTH (YYYYMMDD) | 7. PREV MIL SVC UPON ENL/REENLIST | YEARS | MONTHS | DAYS |
|---|---|---|---|---|---|
| 2008 JUN 25 | Redacted PII | a. TOTAL ACTIVE MILITARY SERVICE | 13 | 04 | 27 |
| | | b. TOTAL INACTIVE MILITARY SERVICE | 05 | 00 | 00 |

### B. AGREEMENTS

8. I am enlisting/reenlisting in the United States *(list branch of service)* **ARMY**
this date for **04** years and **0** weeks beginning in pay grade **E5** of which **04** years and **0** weeks is considered an Active Duty Obligation, and **0** years and **0** weeks will be served in the Reserve Component of the Service in which I have enlisted. If this is an initial enlistment, I must serve a total of eight (8) years, unless I am sooner discharged or otherwise extended by the appropriate authority. This eight year service requirement is called the Military Service Obligation. The additional details of my enlistment/ reenlistment are in Section C and Annex(es) *(list name of Annex(es) and describe)*
**A AND B**

**a. FOR ENLISTMENT IN A DELAYED ENTRY/ENLISTMENT PROGRAM (DEP):**
I understand that I am joining the DEP. I understand that by joining the DEP I am enlisting in the Ready Reserve component of the United States *(list branch of service)* _____ for a period not to exceed 365 days, unless this period of time is otherwise extended by the Secretary concerned. While in the DEP, I understand that I am in a nonpay status and that I am not entitled to any benefits or privileges as a member of the Ready Reserve, to include, but not limited to medical care, liability insurance, death benefits, education benefits, or disability retired pay if I incur a physical disability. I understand that the period of time while I am in the DEP is NOT creditable for pay purposes upon entry into a pay status. However, I also understand that the period of time while I am in the DEP is counted toward fulfillment of my military service obligation described in paragraph 10, below. While in the DEP, I understand that I must maintain my current qualifications and keep my recruiter informed of any changes in my physical or dependency status, qualifications, and mailing address. I understand that I WILL be ordered to active duty unless I report to the place shown in item 4 above by *(list date (YYYYMMDD))* _____ for enlistment in the Regular component of the United States *(list branch of service)* _____ for not less than _____ years and _____ weeks.

**b. REMARKS:** *(If none, so state.)*

(1) REGULAR ARMY REENLISTMENT OPTION (A000) RCN: 2464676.

(2) NO BONUS ENTITLEMENT.

(3) NO WAIVER.

(4) 2ND REENLISTMENT.

c. The agreements in this section and attached annex(es) are all the promises made to me by the Government. **ANYTHING ELSE**
ANYONE HAS PROMISED ME IS NOT VALID AND WILL NOT BE HONORED.
*(Initials of Enlistee/Reenlistee)* DJC *(Continued on Page 2)*

**DD FORM 4/1, OCT 2007**     PREVIOUS EDITION IS OBSOLETE.     Adobe Professional 7.0

IMMEDIATE REENLISTMENT

### ENLISTMENT/REENLISTMENT DOCUMENT
### ARMED FORCES OF THE UNITED STATES

**PRIVACY ACT STATEMENT**

**AUTHORITY:** 5 U.S.C. 3331; 10 U.S.C. 113, 136, 502, 504, 505, 506, 507, 508, 509, 510, 513, 515, 516, 518, 519, 972, 978, 2107, 2107a, 3253, 3258, 3262, 5540, 8252, 8253, 8257, 8258, 12102, 12103, 12104, 12105, 12106, 12107, 12108, 12301, 12302, 12304, 12305, 12405; 14 USC 351, 632; 32 U.S.C. 301, 302, 303, 304; and Executive Order 9397, November 1943 (SSN).

**PRINCIPAL PURPOSE(S):** To record enlistment or reenlistment into the U.S. Armed Forces. This information becomes a part of the subject's military personnel records which are used to document promotion, reassignment, training, medical support, and other personnel management actions. The purpose of soliciting the SSN is for positive identification.

**ROUTINE USE(S):** This form becomes a part of the Service's Enlisted Master File and Field Personnel File. All uses of the form are internal to the relevant Service.

**DISCLOSURE:** Voluntary; however, failure to furnish personal identification information may negate the enlistment/reenlistment application.

#### A. ENLISTEE/REENLISTEE IDENTIFICATION DATA

| 1. NAME *(Last, First, Middle)* | 2. SOCIAL SECURITY NUMBER |
|---|---|
| CLAIBORNE DAMON JAHRON | Redacted PII |

| 3. HOME OF RECORD *(Street, City, County, State, Country, ZIP Code)* | 4. PLACE OF ENLISTMENT/REENLISTMENT *(Mil. Installation, City, State)* |
|---|---|
| Redacted PII | A CO, 4BSB, 1BCT<br>APO, AE 09355 |

| 5. DATE OF ENLISTMENT/ REENLISTMENT *(YYYYMMDD)* | 6. DATE OF BIRTH *(YYYYMMDD)* | 7. PREV MIL SVC UPON ENL/REENLIST | YEARS | MONTHS | DAYS |
|---|---|---|---|---|---|
| 2010 OCT 01 | Redacted PII | a. TOTAL ACTIVE MILITARY SERVICE | 14 | 05 | 24 |
| | | b. TOTAL INACTIVE MILITARY SERVICE | 05 | 07 | 16 |

#### B. AGREEMENTS

8. I am enlisting/reenlisting in the United States *(list branch of service)*                    ARMY
this date for  05  years and  0  weeks beginning in pay grade  E5  of which
 05  years and  0  weeks is considered an Active Duty Obligation, and  0  years and
 0  weeks will be served in the Reserve Component of the Service in which I have enlisted. If this is an initial
enlistment, I must serve a total of eight (8) years, unless I am sooner discharged or otherwise extended by the appropriate
authority. This eight year service requirement is called the Military Service Obligation. The additional details of my enlistment/
reenlistment are in Section C and Annex(es) *(list name of Annex(es) and describe)*
A AND B

**a. FOR ENLISTMENT IN A DELAYED ENTRY/ENLISTMENT PROGRAM (DEP):**
I understand that I am joining the DEP. I understand that by joining the DEP I am enlisting in the Ready Reserve component of the
United States *(list branch of service)* _____ for a period not to exceed
365 days, unless this period of time is otherwise extended by the Secretary concerned. While in the DEP, I understand that I am in
a nonpay status and that I am not entitled to any benefits or privileges as a member of the Ready Reserve, to include, but not
limited to medical care, liability insurance, death benefits, education benefits, or disability retired pay if I incur a physical disability. I
understand that the period of time while I am in the DEP is NOT creditable for pay purposes upon entry into a pay status. However,
I also understand that the period of time while I am in the DEP is counted toward fulfillment of my military service obligation
described in paragraph 10, below. While in the DEP, I understand that I must maintain my current qualifications and keep my
recruiter informed of any changes in my physical or dependency status, qualifications, and mailing address. I understand that I
WILL be ordered to active duty unless I report to the place shown in item 4 above by *(list date (YYYYMMDD))* _____
for enlistment in the Regular component of the United States *(list branch of service)* _____
for not less than _____ years and _____ weeks.

**b. REMARKS:** *(If none, so state.)*

(1) REGULAR ARMY REENLISTMENT OPTION RCN: 2706381.

(2) NO BONUS ENTITLEMENT.

(3) NO WAIVER.

(4) 4TH REENLISTMENT.

**c.** The agreements in this section and attached annex(es) are all the promises made to me by the Government.    ANYTHING ELSE
ANYONE HAS PROMISED ME IS NOT VALID AND WILL NOT BE HONORED.
*(Initials of Enlistee/Reenlistee)*  D.C.    *(Continued on Page 2)*

**DD FORM 4/1, OCT 2007**        PREVIOUS EDITION IS OBSOLETE.        Adobe Professional 7.0

000173

## CAREER STATUS BONUS (CSB) ELECTION

*(Read instructions before completing form.)*

### PRIVACY ACT STATEMENT

**AUTHORITY:** 37 U.S.C.Section 354; 10 U.S.C. Section 1409; DoD Financial Management Regulation, Volume 7A, Chapter 66; and E.O. 9397 (SSN).

**PRINCIPAL PURPOSE(S):** To record a member's eligibility and election to receive or not receive the Career Status Bonus with reduced retired pay (REDUX) and to adjust such retired pay according to the member's election.

**ROUTINE USE(S):** To the Internal Revenue Service to report taxable earnings and taxes withheld, accounting, and tax audits, and to compute or resolve tax liability or tax levies; to the National Finance Center, Office of Thrift Savings Plan, for participating service members.

**DISCLOSURE:** Voluntary; however, failure to provide the requested information by the time instructed by the member's branch of Service could result in an irrevocable determination affecting the amount of retired pay the individual may later qualify to receive and disqualification for electing the Career Status Bonus.

### SECTION I - PERSONAL IDENTIFICATION *(To be completed by Service Officials)*

| 1. NAME *(Last, First, Middle Initial)* | 2. SSN | 3. RANK/PAY GRADE/BRANCH OF SERVICE |
|---|---|---|
| DAMON, CLAIBORNE J. | Redacted PII | SGT/E-5/ARMY |

| 4. DIEMS *(YYYYMMDD)* | 5. DATE FOR DETERMINATION OF ACTIVE DUTY SERVICE COMPLETED *(YYYYMMDD)* | 6. DATE OF NOTIFICATION *(YYYYMMDD)* |
|---|---|---|
| 19890221 | 19960407 | 20110325 |

### SECTION II - DETERMINATION OF ELIGIBILITY *(To be completed by Service Officials)*

7. You may be eligible to elect a Career Status Bonus (CSB). To be eligible, you must:
   (1) Be on active duty,
   (2) Complete 15 years of active duty service,
   (3) Have a DIEMS of August 1, 1986 or later, and
   (4) Qualify under Service regulations for retention to 20 years of active duty service.
Service records indicate that you are currently:

[X] Eligible to elect the Career Status Bonus.

[ ] Not eligible to elect the Career Status Bonus.

**REASON NOT ELIGIBLE:**

| 8. DATE OF DETERMINATION *(YYYYMMDD)* | 9. SERVICE AUTHENTICATING REPRESENTATIVE | |
|---|---|---|
| | a. PRINTED NAME *(Last, First, Middle Initial)* | b. SIGNATURE |
| 20110325 | BRYANT, JAYNA N. | *[signature]* |

**SECTIONS III, IV, or V** *(To be completed by Member and Witness as directed by Service)*
NOTE: Complete only one of these sections and then return it as instructed by your Service.
   If not eligible, complete Section III only.
   If eligible and you want to elect to receive the bonus, complete Section IV only.
   If eligible and you do not want to receive the bonus, complete Section V only.

### SECTION III - NOT CURRENTLY ELIGIBLE FOR CAREER STATUS BONUS
Complete this section only if you are not currently eligible to elect the Career Status Bonus and return the form as instructed by your Service.

10. I understand that I am not eligible for the Career Status Bonus at this time and that my ineligibility does not preclude my continued service to retirement if my Service so permits. I understand that I will not receive a bonus and I remain under the High-3 retirement system. I understand that my Service will notify me if I later become eligible to elect the bonus.

| a. SIGNATURE | b. DATE SIGNED *(YYYYMMDD)* |
|---|---|
| | |

11. WITNESS

| a. PRINTED NAME *(Last, First, Middle Initial)* | b. RANK/PAY GRADE | c. POSITION/DUTY TITLE |
|---|---|---|
| | | |

| d. ORGANIZATION | e. ORGANIZATIONAL ADDRESS |
|---|---|
| | |

| f. SIGNATURE | g. DATE SIGNED *(YYYYMMDD)* |
|---|---|
| | |

**DD FORM 2839, APR 2009**      PREVIOUS EDITION IS OBSOLETE.      Page 1 of 3 Pages
Adobe Professional 8.0

000174

## SECTION IV - ELIGIBLE AND ELECTING TO RECEIVE THE CAREER STATUS BONUS
Complete this section only if you are eligible and you desire to elect to receive the Career Status Bonus. Then return the form as instructed by your Service.

12. I elect to receive the Career Status Bonus payment, with payments as indicated in block 12a below. I make this election upon my attainment of 15 years of active duty service and having been determined eligible for the bonus by my Service. I understand that once the election is effective it may not be revoked. My election is effective once received and accepted at the 15th year of service, or if later, the date received and determined acceptable by my Service, but no later than the date that is six months after being notified of my eligibility. I understand that if I receive the CSB in error, I must repay the full, before-tax bonus amount. I agree to remain on continuous active duty, subject to Service regulations, until I attain a minimum of 20 years of such service. If I fail to complete such service, I understand that I will be required to repay a share of the total ($30,000) bonus payment in proportion to the amount of service I failed to complete compared to the additional service I agreed to serve. Any unpaid installments will be credited to my repayment. If I am separated prior to 20 years of service, I consent to withholding from current pay, final pay, or any other money due me to satisfy this indebtedness. I further consent to such withholding at a rate sufficient to satisfy this indebtedness no later than my separation, and understand that this could result in the withholding of 100% of any current pay, final pay, or other money due me. I further understand that if and when I do retire, it will be under the provisions of the 1986 Military Retirement Reform Act (1986 MRRA, known as REDUX), and that my future retired pay, if based on length of service, will be reduced under such provisions in the form of a reduced multiplier before age 62 and annual Cost-of-Living Adjustments (COLAs) that are 1 percentage point less than I would otherwise receive both before and after age 62, but with a one-time catch-up COLA adjustment at age 62. I have received the Fact Sheet of Information for Eligible Career Status Bonus Members, explaining the details and effects of making this election.

a. I ELECT TO RECEIVE THE CAREER STATUS BONUS AS FOLLOWS (X the desired option):

| | |
|---|---|
| ☒ (1) A SINGLE LUMP SUM PAYMENT OF $30,000 | ☐ (4) FOUR ANNUAL PAYMENTS OF $7,500 |
| ☐ (2) TWO ANNUAL PAYMENTS OF $15,000 | ☐ (5) FIVE ANNUAL PAYMENTS OF $6,000 |
| ☐ (3) THREE ANNUAL PAYMENTS OF $10,000 | |

NOTE: When multiple payments are to be made, the second and later payments are made in January of each succeeding year.

| b. SIGNATURE | c. DATE SIGNED (YYYYMMDD) |
|---|---|
| *(signature)* | 20110322 |

### 13. WITNESS

| a. PRINTED NAME (Last, First, Middle Initial) | b. RANK/PAY GRADE | c. POSITION/DUTY TITLE |
|---|---|---|
| APPLEGATE, GREGORY S. | LTC/0-5 | BATTALION COMMANDER |

| d. ORGANIZATION | e. ORGANIZATIONAL ADDRESS |
|---|---|
| HQ, 4TH BRIGADE SUPPORT BN | KANDAHAR, AF APO AE 09355 |

| f. SIGNATURE | g. DATE SIGNED (YYYYMMDD) |
|---|---|
| *(signature)* | 20110322 |

## SECTION V - ELIGIBLE AND ELECTING NOT TO RECEIVE THE CAREER STATUS BONUS
Complete this section only if you are eligible to receive the Career Status Bonus but you desire NOT to elect the bonus. Then return the form as instructed by your Service.

14. I elect not to receive the Career Status Bonus upon my attainment of 15 years of active duty service. I understand that once the election is effective it may not be revoked. My election is effective once received and accepted at the 15th year of service, or if later, the date received and determined acceptable by my Service, but no later than the date that is six months after being notified of my eligibility. I understand that I will not have any further opportunity to elect to receive this bonus. I understand that I will not receive a bonus payment and that I remain under the High-3 retirement system. I have received the Fact Sheet of Information for Eligible Career Status Bonus Members, explaining the details and effects of making this election not to receive this bonus.

| a. SIGNATURE | b. DATE SIGNED (YYYYMMDD) |
|---|---|
| | |

### 15. WITNESS

| a. PRINTED NAME (Last, First, Middle Initial) | b. RANK/PAY GRADE | c. POSITION/DUTY TITLE |
|---|---|---|
| | | |

| d. ORGANIZATION | e. ORGANIZATIONAL ADDRESS |
|---|---|
| | |

| f. SIGNATURE | g. DATE SIGNED (YYYYMMDD) |
|---|---|
| | |

## SECTION VI - SERVICE RECORDING OF ELECTION
(To be completed by Service Officials after member makes an election to receive the bonus)

### 16. CSB ELECTION EFFECTIVE DATE (YYYYMMDD)

### 17. RECORDING OFFICIAL

| a. PRINTED NAME (Last, First, Middle Initial) | b. RANK/PAY GRADE | c. POSITION/DUTY TITLE |
|---|---|---|
| APPLEGATE, GREGORY S. | LTC/0-5 | BATTALION COMMANDER |

| d. ORGANIZATION | e. ORGANIZATIONAL ADDRESS |
|---|---|
| HQ, 4TH BRIGADE SUPPORT BN | KANDAHAR, AF APO AE 09355 |

| f. SIGNATURE | g. DATE SIGNED (YYYYMMDD) |
|---|---|
| *(signature)* | 20110322 |

DD FORM 2839 (BACK), APR 2009

Page 2 of 3 Pages

000175

**VOLUME 7A, CHAPTER 66: "CAREER STATUS BONUS/REDUX ELECTION OPTION"**

**SUMMARY OF MAJOR CHANGES**

All changes are denoted by blue font.

Substantive revisions are denoted by an * symbol preceding the section, paragraph, table, or figure that includes the revision.

Unless otherwise noted, chapters referenced are contained in this volume.

Hyperlinks are denoted by ***bold, italic, blue and underlined font***.

The previous version dated February 2013 is archived.

| PARAGRAPH | EXPLANATION OF CHANGE/REVISION | PURPOSE |
|-----------|-------------------------------|---------|
| 6601 | Added new "General" section and renumbered remaining sections accordingly. | Addition |
| 6602 | Changed section name to "Entitlement". | Revision |

000176

| DoD 7000.14-R | Financial Management Regulation | Volume 7A, Chapter 66 |
|---|---|---|
| | | * February 2015 |

## Table of Contents

VOLUME 7A, CHAPTER 66: "CAREER STATUS BONUS/REDUX ELECTION OPTION" 1

*6601    GENERAL ..................................................................................................... 3

*6602    ENTITLEMENT ............................................................................................ 3

660201.    General Provisions ........................................................................................ 3
660202.    CSB/REDUX Eligibility Notification ........................................................... 3
660203.    CSB Election ................................................................................................. 4

6603    BONUS PAYMENT ......................................................................................... 4

660301.    Payments ....................................................................................................... 4
660302.    Timing of Payment ....................................................................................... 4
660303.    Tax Consideration ......................................................................................... 5

6604    RECOUPMENT ............................................................................................... 5

660401.    Recoupment Computation ............................................................................. 5
660402.    Waiver of CSB Recoupment .......................................................................... 6

Figure 66-1. Recoupment Computational Factors of Fractional Years ...................... 8

BIBLIOGRAPHY ................................................................................................... 10

000177

### CHAPTER 66

### CAREER STATUS BONUS/REDUX ELECTION OPTION

\*6601 GENERAL

The National Defense Authorization Act for Fiscal Year 2000 (Public Law 106-65, sections 641 through 644) significantly changed the retired pay system for those members of a Uniformed Service who first became members on or after August 1, 1986. Previously, they were covered by the Military Retirement Reform Act of 1986 (86 MRRA, henceforth referred to as REDUX). These members may now elect, upon completion of 15 years of active duty in the Uniformed Services, to either retire under the High-3 retirement system or receive a $30,000 career status bonus (CSB) and remain under the REDUX retired pay system. (For details on the REDUX retirement plan, see title 10 United States Code (U.S.C.) section 1409.

\*6602 ENTITLEMENT

660201.      General Provisions

To be eligible for the CSB/REDUX election opportunity at the time the member completes 15 years of active service, all of the criteria listed below must be satisfied simultaneously. A member who does not meet all criteria at that time, but subsequently does, may not then be given the opportunity to make a CSB/REDUX election, unless otherwise stated or approved by the Secretary of the Military Department concerned. A member of the Uniformed Service is eligible to make a CSB/REDUX Retirement election only when that member:

A.      is serving on active duty, and

B.      first became a member of a Uniformed Service on or after August 1, 1986( has a Date of Initial Entry to Military/Uniformed Service (DIEMS) of August 1, 1986 or later), and

C.      has completed 15 years of active duty in the Uniformed Service, and

D.      is otherwise eligible, as determined by the Secretary of the Military Department concerned, to serve continuously on the active duty until the completion of 20 years of active duty service.

660202.      CSB/REDUX Eligibility Notification

The Secretary of the Military Department concerned shall notify all members with a DIEMS of August 1, 1986, or later, whether they are eligible to make a CSB/REDUX election. Notification letters will be sent on or shortly before the date individuals complete 14 years and 6 months of active duty. If a member is not eligible, then the notification will explain why the

000178

member is not eligible for the CSB/REDUX election, and will inform the member whether, under an exception established in guidance promulgated by the Secretary of the Military Department concerned, there will be an opportunity to make a CSB/REDUX election in the future, if the member's impediment to eligibility is subsequently eliminated. The Secretary of the Military Department concerned will promptly notify a member who subsequently becomes eligible.

660203.       CSB Election

To make a CSB/REDUX election, a member submits the Career Status Bonus Election Form (DD Form 2839) or Service equivalent form, and any other Service required forms as directed in the eligibility notification not later than the date the member attains 15 years of active military service or 6 months after the eligibility notification is sent, whichever is later.

6603   BONUS PAYMENT

660301.       Payments

Eligible members may elect to receive the CSB under one of the following options:

A.       One payment of $30,000; or

B.       Two annual installments of $15,000 each; or

C.       Three annual installments of $10,000 each; or

D.       Four annual installments of $7,500 each; or

E.       Five annual installments of $6,000 each.

660302.       Timing of Payment

A.       Initial Payment. The initial CSB payment must be paid not earlier than the date the member attains 15 years of active service and not later than the end of the first month that begins on or after the date that is 60 days after the date the election is effective.

Example:   A member who will attain 15 years of active duty service on October 10, 2002, should be sent the CSB/REDUX notification no later than April 10, 2002. The member may complete the necessary forms and return them as directed by the Service concerned, but the election is not effective until October 10, 2002. The Secretary concerned will pay the member the initial payment no earlier than October 10, 2002, and no later than January 31, 2003. The latter date is determined as follows: the date that is 60 days after the effective date of the election is December 9, 2002 so the first month that begins on or after that date is January 2003 – the member must be paid no later than the end of January 2003.

000179

B.    Second and Subsequent Payments.  Subsequent annual installments shall be paid on or about January 15th of each year following the calendar year of the initial payment. All CSB payments qualify for deposit to the Uniformed Services Thrift Savings Plan (TSP).  For more information regarding TSP, see Chapter 51.

660303.    Tax Consideration

The CSB, if taxable, is income as of the date on which the payment is made to the member.  The CSB/REDUX is considered tax exempt if the effective date of the election falls within the month in which the member is entitled to combat zone tax exclusion.  See Chapter 44, paragraph 440103, for more information.

6604    RECOUPMENT

660401.    Recoupment Computation

A CSB recipient who fails to serve continuously on active duty until the completion of 20 years of active duty must repay a comparable portion of the CSB received.  The amount of repayment is calculated by: (1) multiplying $30,000 by a factor that is determined by (2) (a) dividing the uncompleted period of active duty by (b) the total continuous active duty required as a result of the CSB/REDUX election.  In making the calculation, months and days must be expressed as decimal fractions of a year (to the nearest .00000001).  Each month is $1/12^{th}$ of a year, and each day is $1/360^{th}$ of a year, rounded to the eighth decimal place.  (See Figure 66-1 for computation decimals.)  See Examples 1 and 2.  Use the same formula above in computing installment repayment amount, except use the completed (vice uncompleted) time served to determine the bonus amount earned.  Deduct that figure from the installment totals to determine the overpayment (See Example 3).

Example 1:   A member's CSB/REDUX election is effective upon attaining 15 years of active service on October 10, 2001.  The member is obligated to serve through October 10, 2006 (5 full years).  If the member's last day of active duty is December 31, 2002, then the member will have failed to complete 3 years, 9 months and 10 days of required service.  The member's repayment is computed as follows:

The period of agreed additional service is: 5 full years

The service not completed is: 3 years, 9 months, and 10 days, or
3 + .75 + .02777778 = 3.77777778 years

The required repayment is:
(3.77777778 / 5) x $30,000 = .75555556 x $30,000 = $22,666.67

Example 2:   A member not initially notified of eligibility for a CSB, was later notified and made a CSB/REDUX election that was effective upon attainment of 16 years, 6 months, and 23 days of service.  The member thus agreed to complete an additional 3 years,

000180

5 months, and 7 days of service, but later separated, failing to complete 2 years, 3 months, and 11 days of that time. This member's repayment is computed as follows:

> The period of agreed additional service is:
> $3 + .41666667 + .01944444 = 3.43611111$ years
>
> and the service not completed is:
> $2 + .25 + .03055556 = 2.28055556$ years
>
> The required repayment is: $(2.28055556 / 3.43611111)$ x $30,000
> $= .66370251$ x $30,000 = $19,911.08

    Example 3.   A member's CSB/REDUX election is effective after attaining 15 years of active service on October 10, 2002 and the member received the first installment of $15,000. The member is obligated to serve through October 9, 2007 (5 full years). The member's last day on active duty is December 31, 2003, after completing only 1 year, 2 months and 20 days of required service. The member's repayment is computed as follows:

> The period of agreed additional service is: 5 full years.
>
> The service completed is:
>
> 1 year, 2 months, and 20 days, or $1 + .16666667 + .05555556 = 1.22222223$ years
>
> The amount earned is: $(1.22222223/5)$ x $30,000 = .24444444$ x $30,000 = $7,333.33
>
> The required repayment is: $15,000 less $7,333.33 = $7,666.67.

    660402.        Waiver of CSB Recoupment

    The Secretary of the Military Department concerned may waive, in whole or in part, the required CSB refund if the Secretary determines that recovery would be against equity and good conscience or contrary to the best interests of the United States.

    A.        The Secretary of the Military Department shall waive the required refund if the member:

        1.        dies; or

        2.        is separated or retired as a result of a physical disability under 10 U.S.C. Chapter 61; or

        3.        is separated under a Service offer for early retirement (such as TERA (Temporary Early Retirement Authority)) or separation program.

000181

      B.    The Secretary of the Military Department concerned shall not waive repayment if the member's separation is due to misconduct or if a waiver of repayment would be inconsistent with other prescribed law, regulation, or policy.

000182

Figure 66-1.  Recoupment Computational Factors of Fractional Years

| Mos | Days | Fractional Years | Mos | Days | Fractional Years | Mos | Days | Fractional Years | Mos | Days | Fractional Years |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 1 | 0.00277778 | 1 | 16 | 0.12777778 | 3 | 1 | 0.25277778 | 4 | 16 | 0.37777778 |
| 0 | 2 | 0.00555556 | 1 | 17 | 0.13055556 | 3 | 2 | 0.25555556 | 4 | 17 | 0.38055556 |
| 0 | 3 | 0.00833333 | 1 | 18 | 0.13333333 | 3 | 3 | 0.25833333 | 4 | 18 | 0.38333333 |
| 0 | 4 | 0.01111111 | 1 | 19 | 0.13611111 | 3 | 4 | 0.26111111 | 4 | 19 | 0.38611111 |
| 0 | 5 | 0.01388889 | 1 | 20 | 0.13888889 | 3 | 5 | 0.26388889 | 4 | 20 | 0.38888889 |
| 0 | 6 | 0.01666667 | 1 | 21 | 0.14166667 | 3 | 6 | 0.26666667 | 4 | 21 | 0.39166667 |
| 0 | 7 | 0.01944444 | 1 | 22 | 0.14444444 | 3 | 7 | 0.26944444 | 4 | 22 | 0.39444444 |
| 0 | 8 | 0.02222222 | 1 | 23 | 0.14722222 | 3 | 8 | 0.27222222 | 4 | 23 | 0.39722222 |
| 0 | 9 | 0.025 | 1 | 24 | 0.15 | 3 | 9 | 0.275 | 4 | 24 | 0.4 |
| 0 | 10 | 0.02777778 | 1 | 25 | 0.15277778 | 3 | 10 | 0.27777778 | 4 | 25 | 0.40277778 |
| 0 | 11 | 0.03055556 | 1 | 26 | 0.15555556 | 3 | 11 | 0.28055556 | 4 | 26 | 0.40555556 |
| 0 | 12 | 0.03333333 | 1 | 27 | 0.15833333 | 3 | 12 | 0.28333333 | 4 | 27 | 0.40833333 |
| 0 | 13 | 0.03611111 | 1 | 28 | 0.16111111 | 3 | 13 | 0.28611111 | 4 | 28 | 0.41111111 |
| 0 | 14 | 0.03888889 | 1 | 29 | 0.16388889 | 3 | 14 | 0.28888889 | 4 | 29 | 0.41388889 |
| 0 | 15 | 0.04166667 | 1 | 30 | 0.16666667 | 3 | 15 | 0.29166667 | 4 | 30 | 0.41666667 |
| 0 | 16 | 0.04444444 | 2 | 1 | 0.16944444 | 3 | 16 | 0.29444444 | 5 | 1 | 0.41944444 |
| 0 | 17 | 0.04722222 | 2 | 2 | 0.17222222 | 3 | 17 | 0.29722222 | 5 | 2 | 0.42222222 |
| 0 | 18 | 0.05 | 2 | 3 | 0.175 | 3 | 18 | 0.3 | 5 | 3 | 0.425 |
| 0 | 19 | 0.05277778 | 2 | 4 | 0.17777778 | 3 | 19 | 0.30277778 | 5 | 4 | 0.42777778 |
| 0 | 20 | 0.05555556 | 2 | 5 | 0.18055556 | 3 | 20 | 0.30555556 | 5 | 5 | 0.43055556 |
| 0 | 21 | 0.05833333 | 2 | 6 | 0.18333333 | 3 | 21 | 0.30833333 | 5 | 6 | 0.43333333 |
| 0 | 22 | 0.06111111 | 2 | 7 | 0.18611111 | 3 | 22 | 0.31111111 | 5 | 7 | 0.43611111 |
| 0 | 23 | 0.06388889 | 2 | 8 | 0.18888889 | 3 | 23 | 0.31388889 | 5 | 8 | 0.43888889 |
| 0 | 24 | 0.06666667 | 2 | 9 | 0.19166667 | 3 | 24 | 0.31666667 | 5 | 9 | 0.44166667 |
| 0 | 25 | 0.06944444 | 2 | 10 | 0.19444444 | 3 | 25 | 0.31944444 | 5 | 10 | 0.44444444 |
| 0 | 26 | 0.07222222 | 2 | 11 | 0.19722222 | 3 | 26 | 0.32222222 | 5 | 11 | 0.44722222 |
| 0 | 27 | 0.075 | 2 | 12 | 0.2 | 3 | 27 | 0.325 | 5 | 12 | 0.45 |
| 0 | 28 | 0.07777778 | 2 | 13 | 0.20277778 | 3 | 28 | 0.32777778 | 5 | 13 | 0.45277778 |
| 0 | 29 | 0.08055556 | 2 | 14 | 0.20555556 | 3 | 29 | 0.33055556 | 5 | 14 | 0.45555556 |
| 0 | 30 | 0.08333333 | 2 | 15 | 0.20833333 | 3 | 30 | 0.33333333 | 5 | 15 | 0.45833333 |
| 1 | 1 | 0.08611111 | 2 | 16 | 0.21111111 | 4 | 1 | 0.33611111 | 5 | 16 | 0.46111111 |
| 1 | 2 | 0.08888889 | 2 | 17 | 0.21388889 | 4 | 2 | 0.33888889 | 5 | 17 | 0.46388889 |
| 1 | 3 | 0.09166667 | 2 | 18 | 0.21666667 | 4 | 3 | 0.34166667 | 5 | 18 | 0.46666667 |
| 1 | 4 | 0.09444444 | 2 | 19 | 0.21944444 | 4 | 4 | 0.34444444 | 5 | 19 | 0.46944444 |
| 1 | 5 | 0.09722222 | 2 | 20 | 0.22222222 | 4 | 5 | 0.34722222 | 5 | 20 | 0.47222222 |
| 1 | 6 | 0.1 | 2 | 21 | 0.225 | 4 | 6 | 0.35 | 5 | 21 | 0.475 |
| 1 | 7 | 0.10277778 | 2 | 22 | 0.22777778 | 4 | 7 | 0.35277778 | 5 | 22 | 0.47777778 |
| 1 | 8 | 0.10555556 | 2 | 23 | 0.23055556 | 4 | 8 | 0.35555556 | 5 | 23 | 0.48055556 |
| 1 | 9 | 0.10833333 | 2 | 24 | 0.23333333 | 4 | 9 | 0.35833333 | 5 | 24 | 0.48333333 |
| 1 | 10 | 0.11111111 | 2 | 25 | 0.23611111 | 4 | 10 | 0.36111111 | 5 | 25 | 0.48611111 |
| 1 | 11 | 0.11388889 | 2 | 26 | 0.23888889 | 4 | 11 | 0.36388889 | 5 | 26 | 0.48888889 |
| 1 | 12 | 0.11666667 | 2 | 27 | 0.24166667 | 4 | 12 | 0.36666667 | 5 | 27 | 0.49166667 |
| 1 | 13 | 0.11944444 | 2 | 28 | 0.24444444 | 4 | 13 | 0.36944444 | 5 | 28 | 0.49444444 |
| 1 | 14 | 0.12222222 | 2 | 29 | 0.24722222 | 4 | 14 | 0.37222222 | 5 | 29 | 0.49722222 |
| 1 | 15 | 0.125 | 2 | 30 | 0.25 | 4 | 15 | 0.375 | 5 | 30 | 0.5 |

See next page for 6 months or more.

000183

Figure 66-1.  Recoupment Computational Factors of Fractional Years (Continued)

| Mos | Days | Fractional Years | Mos | Days | Fractional Years | Mos | Days | Fractional Years | Mos | Days | Fractional Years |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6 | 1 | 0.5 | 7 | 16 | 0.633333333 | 9 | 3 | 0.755833333 | 10 | 19 | 0.886111111 |
| 6 | 2 | 0.502777778 | 7 | 18 | 0.65 | 9 | 5 | 0.763888888 | 10 | 21 | 0.891666666 |
| 6 | 3 | 0.508333333 | 7 | 20 | 0.655555556 | 9 | 7 | 0.758444444 | 10 | 23 | 0.897222222 |
| 6 | 5 | 0.513888889 | 7 | 22 | 0.644444444 | 9 | 9 | 0.775 | 10 | 25 | 0.902777778 |
| 6 | 7 | 0.519444444 | 7 | 24 | 0.65 | 9 | 11 | 0.780555556 | 10 | 27 | 0.908333333 |
| 6 | 9 | 0.525 | 7 | 26 | 0.655555556 | 9 | 13 | 0.786111111 | 10 | 29 | 0.913888889 |
| 6 | 11 | 0.530555556 | 7 | 28 | 0.661111111 | 9 | 15 | 0.791666667 | 11 | 0 | 0.916666667 |
| 6 | 13 | 0.536111111 | 7 | 30 | 0.666666667 | 9 | 17 | 0.797222222 | 11 | 2 | 0.922222222 |
| 6 | 15 | 0.541666667 | 8 | 1 | 0.666444444 | 9 | 19 | 0.802777778 | 11 | 4 | 0.927777778 |
| 6 | 17 | 0.547222222 | 8 | 3 | 0.675 | 9 | 21 | 0.808333333 | 11 | 6 | 0.933333334 |
| 6 | 19 | 0.552777778 | 8 | 5 | 0.683333333 | 9 | 23 | 0.813888889 | 11 | 8 | 0.938888889 |
| 6 | 21 | 0.558333333 | 8 | 7 | 0.688111111 | 9 | 25 | 0.819444444 | 11 | 10 | 0.944444445 |
| 6 | 23 | 0.563888889 | 8 | 9 | 0.691666667 | 9 | 27 | 0.825 | 11 | 12 | 0.95 |
| 6 | 25 | 0.569444444 | 8 | 11 | 0.697222223 | 9 | 29 | 0.830555556 | 11 | 14 | 0.955555556 |
| 6 | 27 | 0.575 | 8 | 13 | 0.702777778 | 10 | 0 | 0.833333333 | 11 | 16 | 0.961111111 |
| 6 | 29 | 0.583333336 | 8 | 15 | 0.708333334 | 10 | 2 | 0.838888889 | 11 | 18 | 0.966666667 |
| 7 | 0 | 0.583333333 | 8 | 17 | 0.713888889 | 10 | 4 | 0.844444444 | 11 | 20 | 0.972222223 |
| 7 | 2 | 0.588888889 | 8 | 19 | 0.719444445 | 10 | 6 | 0.85 | 11 | 22 | 0.977777778 |
| 7 | 4 | 0.594444444 | 8 | 21 | 0.725 | 10 | 8 | 0.855555556 | 11 | 24 | 0.983333334 |
| 7 | 6 | 0.6 | 8 | 23 | 0.730555556 | 10 | 10 | 0.861111111 | 11 | 26 | 0.988888889 |
| 7 | 8 | 0.605555556 | 8 | 25 | 0.736111111 | 10 | 12 | 0.866666666 | 11 | 28 | 0.994444445 |
| 7 | 10 | 0.611111111 | 8 | 27 | 0.741666667 | 10 | 14 | 0.872222222 | 11 | 30 | 1 |
| 7 | 12 | 0.616666666 | 8 | 29 | 0.747222222 | 10 | 16 | 0.875 | | | |
| 7 | 14 | 0.622222222 | 9 | 0 | 0.75 | 10 | 18 | 0.877777777 | | | |

000184

                                                                    * February 2015

BIBLIOGRAPHY

## CHAPTER 66 - CAREER STATUS BONUS/REDUX ELECTION OPTION

6601 - GENERAL

> 37 U.S.C. 354
> Public Law 106-65, October 5, 1999
> ASD (FMP) Memo, February 2, 2001

6602 - ENTITLEMENT

> 37 U.S.C. 354
>
> Public Law 106-65, October 5, 1999
> ASD (FMP) Memo, February 2, 2001
> Public Law 107-107, section 620
> December 28, 2001
> ASD (FMP) (MPP) memo, June 24, 2002

6604 - RECOUPMENT

> 37 U.S.C. 354
>
> ASD (FMP) Memo, February 2, 2001

000185



UNDER SECRETARY OF DEFENSE, PERSONNEL & READINESS

# Military Compensation
militarypay.defense.gov

**HOME**   **ABOUT** ▾   **PAY** ▾   **RETIREMENT** ▾   **BENEFITS**   **TOOLS** ▾   **TABLES** ▾   **REPORTS** ▾   **POLICIES**

PAY » RECOUPMENT » RULES

## Recoupment General Rules

As a general rule, repayment will not be sought if the member's inability to fulfill the eligibility requirements is due to circumstances determined reasonably beyond the member's control:

1. Repayment shall not be sought and any remaining unpaid portion of a pay or benefit due to a member under a written agreement that existed at the time of the member's death, which was not the result of the member's misconduct, is payable as a lump sum in the settlement of the decedent's final military pay account.

2. Repayment shall not be sought and any remaining unpaid portion of a pay or benefit due to a member under a written agreement shall be paid at the time of separation or retirement for a disability described under Chapter 61 of title 10, U.S.C., that was incurred in the line of duty in a combat zone designated by the President or the Secretary of Defense or in a combat-related operation designated by the Secretary of Defense, and/or for a combat-related disability, as defined under section 1413a(e) of title 10, U.S.C. Repayment will be sought and any unpaid balances may not be paid to members who incur a disability as a result of their misconduct. (See 10 U.S.C. §1207.) In all other instances involving a member's separation for medical reasons not falling under Chapter 61 or section 1413a(e), which were not the result of the member's misconduct, the Secretary concerned has the discretion to determine whether to require repayment of the unearned portion of the pay or benefit, or to pay an unpaid balance of a pay or benefit.

3. Subject to the enlistment authorities under titles 10 and 37, U.S.C., and the relevant regulations of the Secretary concerned, a member paid a bonus or special pay for a period of enlistment in a Military Department, who is discharged for immediate reenlistment or appointment in a Military Department for which no bonus or special pay is paid, may be considered to have completed the full term of service specified in the former enlistment contract, provided the term of the latter reenlistment or appointment includes the remaining period of service from the former enlistment. The member's enlisted bonus or special pay entitlements shall be addressed prior to discharge from a Military Department.

4. Repayment will not be sought and the Secretary concerned will not pay any remaining unpaid portion of a pay or benefit under the following circumstances, unless otherwise authorized by the Secretary concerned under paragraph (5) below:
   - The member's employment in another military specialty or assignment rotation is directed;
   - The member's military specialty or assignment is phased out or eliminated;
   - The member's military specialty or assignment is otherwise affected by a force structure or other mission essential requirement; or,
   - The member's hardship separation or sole survivor discharge from service.

5. Under all other circumstances, the Secretary concerned has the discretion to, at some point in the process, render a case-by-case determination that the member's repayment of, or the Military Department's full payment of an unpaid portion of, a pay or benefit is appropriate based on the following:
   - Contrary to a personnel policy or management objective;
   - Against equity and good conscience; or
   - Contrary to the best interest of the United States.

The Secretary concerned may, through regulation, delegate the authority to make repayment determinations consistent with the criteria set forth above, but not below the O-6 or equivalent level. If delegated, the Military Departments shall specify the level and scope of the authorized delegation in implementing regulations.

000186

## Minutes of Proceedings
3:15-cv-01192-BR Claiborne v. McHugh

### U.S. District Court

### District of Oregon

## Notice of Electronic Filing

The following transaction was entered on 7/1/2015 at 7:51 AM PDT and filed on 6/30/2015
**Case Name:**     Claiborne v. McHugh
**Case Number:**     3:15-cv-01192-BR
**Filer:**
**Document Number:** 10(No document attached)

**Docket Text:**
**MINUTES of Proceedings: The Court heard oral argument on Plaintiff's Motion [2] for Temporary Restraining Order. For the reasons stated on the record, the Court GRANTS Plaintiff's Motion and hereby enters a Temporary Restraining Order directing the Secretary of the Army to refrain from acting to separate Plaintiff from service during the pendency of this Order which remains in effect until July 8, 2015, at 4:00 p.m., at which time the parties must appear before this Court for a further hearing on Plaintiff's Motion. The Court DIRECTS the parties to confer and to file no later than NOON on July 6, 2015, a joint report (1) advising the Court whether and why venue is proper in this District or, if the parties cannot agree with respect to the question of venue, Plaintiff must show cause in the joint report why this matter should not be transferred to the Western District of Washington; (2) containing an agreed statement of facts setting out the process, if any, Plaintiff received regarding the decision to separate Plaintiff from service; and (3) containing any further argument as to the issue of likelihood of success on the merits. Dana Mitchell present as counsel for plaintiff(s). Jim Cox, Christopher Koschnitzky present as counsel for defendant(s). Court Reporter: Amanda LeGore. Judge Anna J. Brown presiding. (bb)**

**3:15-cv-01192-BR Notice has been electronically mailed to:**

Dana M. Mitchell     danamitchellpc@gmail.com

James E. Cox , Jr     jim.cox@usdoj.gov, christopher.j.koschnitzky.mil@mail.mil, Shari.McClellan@usdoj.gov

Lisa D. Wright     lisa@wrightattorneyatlaw.com

**3:15-cv-01192-BR Notice will not be electronically mailed to:**

000188

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE DISTRICT OF OREGON

3  DAMON J. CLAIBORNE,                        )
                                             )  Case No. 3:15-CV-1192-BR
4            Plaintiff,                        )
                                             )
5  v.                                         )  July 13, 2015
                                             )
6  JOHN M. McHUGH, Secretary of the          )
   Army,                                      )
7                                             )
             Defendant.                       )
8  _____)  Portland, Oregon

9

10              TRANSCRIPT OF PROCEEDINGS
                      (Oral Argument)

11

12      BEFORE THE HONORABLE ANNA J. BROWN, DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22  COURT REPORTER:          AMANDA M. LeGORE, RDR, CRR, FCRR, CE
                             U.S. COURTHOUSE
23                           1000 SW Third Avenue, Suite 301
                             Portland, OR  97204
24                           (503)326-8184

25

1   APPEARANCES:

2   FOR THE PLAINTIFF:     JOHN MAHER

3                             (Present telephonically)
Maher Legal Services, P.C.
17101 71st Street

4                             Tinley Park, IL  60477
(312)804-9912

5

6                             DANA MITCHELL
Dana Mitchell, P.C.

7                             317 Court Street NE
Salem, OR  97301

8                             (503)508-6078

9

10                           LISA WRIGHT
Lisa Wright, LLC
PO Box 13

11                           Salem, OR  97308
(503)589-1817

12

13

14   FOR THE DEFENDANT:    CHRISTOPHER KOSCHNITZKY
Captain, Judge Advocate
Litigation Attorney

15                           U.S. Army Leal Services Agency
Litigation Division

16                           9275 Gunston Road
Fort Belvoir, Virginia 22060

17                           (703)693-1014

18

19                           JAMES COX JR.
Assistant U.S. Attorney

20                           U.S. Attorney's Office
1000 SW Third Avenue, Suite 600

21                           Portland, OR  97204-2902
(503)727-1000

22

23

24

25

000190

1    (Wednesday, July 8, 2015; 2:38 p.m.)

2

3    P R O C E E D I N G S

4

5    THE COURT:  Good afternoon, everyone.  Please be

6    seated.

7    All right.  We are here for continued proceedings in

8    the matter of Damon Claiborne against John McHugh, Secretary of

9    the Army.  It is Civil No. 15-1192.

10    Last week I issued a temporary restraining order on

11    the plaintiff's motion, primarily because -- as of the time of

12    that hearing, given the exigencies of time and the uncertainty

13    of what exactly was at issue -- it seemed appropriate for the

14    Court to resolve in plaintiff's favor, temporarily, the

15    inquiries necessary for the issuance of a restraining order.

16    Since that time, at the Court's direction, the

17    parties have filed a joint status report that fleshes out the

18    record significantly in terms of the process that Mr. Claiborne

19    has -- pardon me, Sergeant Claiborne has experienced and,

20    flushes out their positions.

21    So the point of today's hearing is to determine

22    whether the order I issued previously, and which will expire of

23    its own terms today, should be extended.  And, if not, what we

24    should do with the existence of the case.

25    We also addressed in part -- and the parties do

1  address in part in their joint status report -- the question of

2  venue dealing with the plaintiff's residence, alleged to be in

3  Oregon.  And that issue was fleshed out a bit, but it looked

4  like the defendant was still seeking to confirm a position on

5  that.

6      So I would like to start, please, with whether there

7  is any agreement or whether there is any disputed issue about

8  venue for this matter being here in Oregon.

9      Yes, Mr. Cox.

10     MR. COX:  Good afternoon, your Honor.

11     The Army has confirmed that the plaintiff did submit

12  the form that's in the appendix provided by the parties.

13  That's at page 77 of the appendix.  So the defendant does

14  stipulate that venue is appropriate here.

15     THE COURT:  All right.  Thank you.  I appreciate

16  that.  We wouldn't want to have you working hard in the

17  incorrect forum.

18     So I'll simply assume, then, that it falls to me to

19  continue to be concerned with this matter.

20     So let me say that I've reviewed all of the

21  supplementary material you've provided.  I wanted to give you

22  my preliminary assessment of what the record supports.  And

23  then, to the extent any of you want to argue further, you may.

24     In short, I think at this point I should allow the

25  temporary restraining order to expire by its own terms.  I

1  conclude, at least preliminarily, that the plaintiff is
2  required to exhaust his administrative remedies before this
3  Court has authority to intervene and -- in an intra-Army
4  administrative process that is still underway.

5  It is still unclear to me, based upon the competing
6  arguments of the parties, whether the plaintiff really has any
7  basis to assert he is likely to prevail in a claim for
8  violation of the Administrative Procedures Act once he does
9  exhaust his administrative remedies.  So I cannot say that
10  plaintiff is showing a likelihood of success on the merits
11  sufficient to support ongoing restraint.

12  With respect to the administrative remedies point,
13  I -- as I say, at least tentatively conclude that the plaintiff
14  is required to exhaust those.  And the failure to have done so
15  is a bar, as a matter of law, to the Court's affirmative
16  restraint of the process that is still underway.

17  With respect to the prong of the injunction test with
18  respect to irreparable harm, I do not believe plaintiff has
19  made a showing of irreparable harm sufficient to direct the
20  Court's action for further restraint.  Undoubtedly, the
21  plaintiff is facing a loss of pay status, retirement potential,
22  and the like.

23  But the case law is very clear that loss of financial
24  benefits that could be recouped in the event of a -- an -- an
25  administrative remedy exhausted that provides relief or in the

1   event of successfully asserting a violation of law that would
2   make up for and recoup any back pay or loss of benefits is not
3   the same thing as a risk of irreparable harm.  Of course,
4   that's not to say that the plaintiff and his family won't
5   suffer immediate consequences if he's separated effective
6   tomorrow from the service.

7           All of his pay and other benefits will end, and it
8   will be up to him to go forward to pursue his administrative
9   remedies and to litigate as he chooses the righteousness or the
10  error of that process.  But, under law, that is not the kind of
11  irreparable harm that has to exist for the Court to weigh in
12  and temporarily restrain or preliminarily enjoin action, which
13  is what the plaintiff wants me to do here.

14          Finally, the last factor for application of temporary
15  restraint, the weighing of all of those factors and whether
16  they tip strongly in equity in favor of an injunction, I cannot
17  say that they do.

18          Here we have the Secretary of the Army exercising
19  plenary authority to issue a policy.  Whether the Court has any
20  business reviewing that remains to be seen.  But, at a minimum,
21  the Army process is what it is, ought to be allowed to proceed
22  to its conclusion; including the plaintiff taking advantage of
23  the process defendant says is available to him, although
24  plaintiff contends it's not the appropriate one.

25          So at this point, given what I've read, I do not

believe it's warranted for the Court to provide any further
injunctive relief. I do believe that the order I issued the
other day should be allowed to expire. And then the only
question would be what's next, for purposes of this litigation.
Whether the litigation should be stayed pending the exhaustion
of administrative proceedings because a failure to exhaust is a
defense to the litigation as well. And that's -- that's one
option. The other option is a dismissal of the action
altogether, but without prejudice to the plaintiff reinstating
it upon exhaustion of administrative remedies.

If there's any concern about timing or timeliness, it
might be that the plaintiff would prefer a stay rather than an
outright dismissal.

I did note that in the status report the plaintiff
argued some constitutional violations in the status report that
don't really track the allegations of the complaint itself. If
this case is to continue and if the plaintiff wishes to
litigate separate from an APA claim a constitutional violation,
via 1983 or some other mechanism, it appears to me the
plaintiff will need to amend, to be very clear about what
constitutional claim is asserted. Claim or claims. But, of
course, I think that ought to await the conclusion of the
administrative process, so that we're not speculating about
what does happen or doesn't happen. So that's my preliminary
view of where we are.

1    Now, I know the plaintiff has counsel appearing pro
2  hac vice and by telephone.

3    I'm sorry, Counsel, I have forgotten your name.
4  Please, could you state it for the record.

5    MR. MAHER:  Yes, your Honor.  Good afternoon.  This
6  is John Maher, M-A-H-E-R.  And I'm appearing pro hac vice on
7  behalf of Plaintiff Claiborne.

8    THE COURT:  Okay.  Well, thank you for your
9  submissions.

10    Would you like to address the preliminary conclusions
11  I drew?  Do you want to supplement the argument you've already
12  made in writing?

13    MR. MAHER:  Yes, your Honor, I would be very grateful
14  for that opportunity.  And I do thank the Court for -- for
15  allowing me to appear today not only as an out-of-state
16  attorney but also to address some of the issues here.

17    I understand your preliminary assessment, Judge.  And
18  it appears to be very logical, if I may say so.  But there are
19  a couple of things that I would like to point out that might be
20  helpful in fleshing out some of those projections.

21    So, for example, when we're talking about the
22  administrative remedy available before the Army Board for
23  Correction of Military Records, the challenge there -- it also
24  seems to be a due process type claim where, in looking at the
25  statutory language itself, coupled with the implemented

1  regulation, it doesn't really say specifically -- or spell out
2  for a potential plaintiff or soldier -- that the board had the
3  authority to take the discharge, which is a distinct separation
4  of your military status, where you are no longer on active
5  duty, and take that discharge and convert it to an order -- a
6  transfer order placing the soldier on the retired list. And
7  that placement on the retired list would then subject that
8  soldier to not only jurisdiction under the Uniform Code Of
9  Military Justice, as well as potential recall in times of
10  national emergency, but also would provide for the entitlements
11  that may have been earned through the 20 years, of potential
12  retirement based on time in the service.

13         So that is somewhat problematic in looking at the
14  issues. Saying, well, if there is a mandatory process that
15  must be exhausted, well, if we get to that process and that
16  board doesn't have the authority to do what we think needs to
17  be done, that seems to smack of futility.

18         So I would like to offer that to the Court because we
19  did brief it and, also, I have been doing some research on the
20  question -- we were looking for some, ABCMR -- the acronym for
21  the Army Board for Correction of Military Records. We were
22  looking for some decision that might have been published. And
23  apparently what is publicly available is only attainable
24  through FOIA processes. And so that obviously probably has
25  some sort of legitimate basis but, nevertheless, we weren't

1   able to find cases that say, Yes, this board has the
2   authority -- like for a soldier like Staff Sergeant Claiborne;
3   who are potentially retirement eligible; who have been approved
4   for retirement; who then have had their retirement orders
5   revoked, suspended and revoked; and, even now, learn at the
6   11th hour and 59th minute, only after having filed suit, that
7   we have to exhaust an administrative remedy.  And we can't seem
8   to put our fingers on what the statute says, such as Section
9   1552.  What the regulation says in implementing it.

10          And the results of that, your Honor -- I respectfully
11   offer to the Court -- are silent on whether that board has the
12   specific authority to do this very specific (indiscernible due
13   to telephonic difficulties) Staff Sergeant Claiborne.  And that
14   is, not review right or wrong.  But, instead, take a
15   discharge -- which is what will happen this afternoon at four
16   o'clock western time -- and convert a discharge, transform it
17   into a transfer order, and then place Staff Sergeant Claiborne
18   on a retired list.  And then the Court -- excuse me, the
19   statute itself says that there's no authority for the board to
20   award compensation.  Back pay is a possibility.  But
21   compensation in this instance would be retired pay based upon
22   years in service and the particular REDUX program under which
23   Staff Sergeant Claiborne would otherwise fall.

24          So that's why we think that it's not necessarily a
25   mandatory procedure for Staff Sergeant Claiborne to follow

1 | because he's not the soldier who's been separated after ten
2 | years of service or four years of service, who wants to upgrade
3 | his discharge from general to honorable so he can get veteran's
4 | benefits or GI benefits or a VA home loan. This is an
5 | individual who had merely, if not 20 years, almost an
6 | expectation -- based upon the REDUX agreement -- where the Army
7 | promised him he could serve through to 20 years. And now what
8 | we really have is not only did the board not spell out what its
9 | authorities are, it's very difficult to find any decision that
10 | may support that contention that it can convert the discharge
11 | to a transfer order and put him on the list. And that right
12 | there, your Honor, is irreparable harm because the man spent 20
13 | years of his life risking good parts of his life in combat
14 | theaters, to be at the ticket window and have it thumbed down.

15 | Now, I would like to take a step back to your second
16 | point, your Honor. And that being if the futility of the
17 | process would bring us right back to you anyway -- that's
18 | probably what the consequence would be, given that we're
19 | looking at the statute and regulation from an administrative
20 | viewpoint under the Administrative Procedures Act and an
21 | Article III court. Do you have an -- and it's clearly:
22 | Soldiers who are discharged, you will appeal here upon
23 | exhaustion of that, and then you may seek redress in the
24 | courts.

25 | I think it's fair to say across the federal

1  government, in most administrative agencies, those types of

2  arrangements are in place. That's not one that's here, though,

3  because absent -- that gives rise to the very question that

4  we're having right now, whether this board even had that

5  authority.

6         So our mission to you, your Honor, would be that even

7  though that board may upgrade Staff Sergeant Claiborne's

8  discharge from general other than honorable to honorable,

9  that's not necessarily going to convert a discharge into a

10 transfer order to the retired list where Staff Sergeant

11 Claiborne would then stay on the retired list until his death,

12 drawing retired pay at the particular point and place pursuant

13 to the Defense Finance and Accounting Service. And then his

14 spouse, his bride would be able to receive a reduced amount of

15 that upon his demise, assuming that he and his family decided

16 to buy into the survivors' benefit plan.

17        So we don't have a loss of retired pay that you see

18 in some (indiscernible), a loss of military pay. Instead, as

19 we've seen in some of the cases cited by the Government, those

20 instances are, almost to a T, instances where people were not

21 retirement eligible; where they didn't have a certain

22 circumstance that we're talking about here. And we didn't have

23 the long-reaching 10, and 20, potentially 30-year ramification

24 of financial loss to the family of a soldier. So -- so I think

25 that kind of dovetails into whether or not the Court can

1  rightly hear this case.

2        And, secondly, it really speaks to the futility and
3  the irreparable harm there.

4        And, Judge, if I could take a step back here and --
5  and come back to the beginning.  And, of course, we're asking
6  for equitable relief at this point.  That goes without saying.

7        But one of the main things that stands out here is
8  the Army is entitled to deference in implementing its own
9  decisions.  But it's very important more than a semantical
10 distinction must be made.  And that is, courts traditionally
11 give deference to military decisions when it comes to
12 commissioning officers, promoting soldiers; when it comes to
13 advances in pay, pay raises, or assignments, military
14 occupational specialty, training to be a physician, those
15 residency programs.  Those have come down along the metes and
16 bounds of the case law to which the courts have given
17 deference.

18       There's long lines of cases that say it's definitely
19 appropriate for an Article III judge to take a look at what the
20 agency has done and what the military specifically has done to
21 determine if they have acted in accordance with law regulation
22 and not arbitrary or capricious.  We think there's compelling
23 showings here, your Honor, that there is some arbitrariness;
24 arbitrary, bordering on caprice.

25       And here's why.  We believe it to be arbitrary

1  because the Army followed the regulation at issue, AR 635-200
2  Chapter 14, back in 2005, when the incident giving rise to the
3  issue -- which is now before us again -- occurred.

4  At that process he was given a notice and an
5  opportunity to be heard. A full board of officers were able to
6  hear him because he had more than six years of experience. And
7  that was the procedure that applied at the time.

8  Well, the board determined to retain him pursuant to
9  the AR 635-100 [sic] paragraph 1-18 because he was a highly
10  deserving soldier, and gave him a 12-month probationary period.

11  Now, he completed that probationary period, was
12  allowed to re-enlist twice, and go to combat a couple of times,
13  was promoted, received greater responsibility to lead soldiers.
14  And, on top of that, was eligible for the REDUX program because
15  the Army wanted to keep him for another five years at least.

16  So he does have an expectation that's different than
17  other soldiers who may have been more junior than he and this
18  type of issue were to come along.

19  And what really comes to mind here, in reading
20  through this case in preparation for meeting with the Court and
21  with counsel today, is the idea that it kind of strikes like
22  the AD directive is a policy that really doesn't impact the
23  REDUX contract. And here's why. The REDUX contract says you
24  agree, Staff Sergeant Claiborne, to remain on active duty until
25  at least 20 years of service, at which point the retirement

1  statute kicks in and you would be eligible for retired pay, and
2  you can come and seek benefits.

3  Well, you're plugging and chugging along for the last
4  ten years or so. And now the Army has come up with a policy,
5  some eight, nine years into that period. And says, No. We
6  acknowledge what you've done. We're going to do it again.
7  We're going to submit you to the administrative double jeopardy
8  that's involved. And that administrative double jeopardy kind
9  of smacks of ex post facto.

10  Back when Staff Sergeant Claiborne re-enlisted, 2008
11  and again in 2010, there was nowhere near any sort of idea that
12  as long as he complied and soldiered on with -- as a good and
13  honorable soldier -- which by all accounts he has been since he
14  was released from incarceration -- he spent a decade showing
15  that. He went through his probation period, and has made it
16  all the way up.

17  Now it seems that we have this policy, which is not
18  spelled out in the REDUX plan. The REDUX plan agreement says,
19  Subject to the regulations of the Army.

20  Well, if I was counseling him years ago about signing
21  the REDUX plan, I would say, Well, AR 635-200 is in place.
22  That's probably the regulation. And there was no dot on the
23  horizon for the next three years that the AD directive of
24  2013-20 would come out and thereby subject him again to have
25  the rug pulled out from underneath him, when he's complied with

1    every single thing the Army has asked him to do.

2          So it just seems to me, your Honor, that there's a
3    measure of ex post facto. There's a measure of not fulfilling
4    the obligations that the Army signed up to.

5          We discussed that there's really no hurdle because
6    there hasn't been a sufficient showing that this board, the
7    ABCMR actually had the authority to do what they did.

8          Another thing that I would like to bring to the
9    Court's attention, and that is the facially -- potentially
10   facial unlawfulness of the AD directive itself.

11         And, your Honor, I'm referring to the appendix that
12   counsel for the United States and -- and we were able to get --
13   give input to get an agreement on, where -- the paragraph, it
14   reads that the AD directive of 2013-21 says that those
15   individuals who may have been convicted or involved in a --
16   involving sexual assault, sexual abuse, all of them will come
17   forward, quote, regardless of when the conviction occurred.

18         Now, I probably don't need to tell you, Judge, or
19   counsel for the United States, that that violates not only
20   the -- the double jeopardy prohibition of the AR 635, it's just
21   overly broad and too far-reaching.

22         And an example that comes to mind is the law and the
23   idea that, you know, we don't want stale complaints. And
24   that's why we have statutes of limitations and statutes of
25   repose.

1    And what's important to note here is that Staff

2    Sergeant Claiborne was convicted in August -- excuse me,

3    November of 2014 -- should get that straight there, 2004.  So

4    that's, you know, 12 years ago.  So we're talking about a

5    conviction that was 12 years ago.

6    And I was just looking at, you know, FRE 608, to

7    impeach by a conviction; I think the time frame is ten years.

8    And I'm just thinking off the top of my head now about

9    background investigations and credit checks and address checks.

10   The law is only required to go back seven years in those types

11   of instances.

12   So it seems here that -- that the language,

13   regardless of when the conviction occurred, really subjects

14   Staff Sergeant Claiborne and those similarly situated like him

15   to having the uncertainty and having every contract they sign

16   and every enlistment they take and every order that they follow

17   to go overseas to Iraq and Afghanistan as well as Korea, and

18   have the idea that the Army can just unilaterally issue a

19   directive to say, Listen, you're going to be processed out,

20   even though you're at 19 or 20 years here.

21   So beyond that, Judge, there is another thing that --

22   that is problematic here, too.  And that is beyond that he did

23   a fine job -- and counsel for the United States, if I may so --

24   did a fine job of laying out the pre-deprivation process of why

25   we're here and -- with regard to notification.  But there is a

1 challenge with that. And what I would like to do is direct the

2 Court's attention, if you would be so kind, to the company

3 commander, captain; battalion commander, lieutenant colonel; or

4 brigade commander, full -- 06 -- over a colonel; and then you

5 have a judge -- general officer at the highest part of that

6 normal chain.

7 From there, under this particular proceeding, Chapter

8 5-3 of AR 635-200 requires that the Secretary of the Army

9 and/or his designee will make the final determination.

10 Well, here the company commander, who is the closest

11 to a sergeant, hopes for retention and an honorable discharge.

12 But the battalion commander, who's close to the company

13 commander, who's close to the sergeant, calls for retention and

14 honorable discharge. Only when we get to the colonel, the 06

15 who is in charge of a brigade, which is four or five battalions

16 and a proportionate number of companies larger, do we get the

17 first check of, Hmm, we don't retain; separate. And then you

18 have a general officer saying, Separate.

19 Now, on the one hand that could smack of, okay,

20 people are actually giving this a meaningful look. But on the

21 other hand, your Honor, I would offer a plainer, more

22 commonsense view. And that is, it's the word on the street

23 that there is a big initiative to correct sexual assault in the

24 military. And no doubt about it. We do not dispute that.

25 That that interest is a legitimate interest. However, there's

1  also a phenomenon within the ranks called unlawful command

2  influence. So for that lieutenant colonel who's now achieved

3  the rank of colonel and that general officer who are now

4  definitely committed to a career, are -- do they really have

5  the freedom to exercise their discretion under the notification

6  provisions and follow the recommendations of their junior

7  officers to do right by Staff Sergeant Claiborne and to do the

8  moral and legal thing according to their own hiring authority?

9         Our position is that the facts here showed they

10  didn't, and here's why. If they were to send -- "they" being

11  the colonel and the general -- a recommendation to retain the

12  person who had as a background, albeit 12 years ago was the

13  actual conviction for sexual assault, they may be then

14  sacrificing themselves in terms of promotion responsibility

15  with respect to reputation because they're not getting on board

16  with the political pendulum at the time. And they knew that

17  this action was going all the way to the highest levels of

18  the -- oversight of the Army, to the Secretary and/or his

19  designee. So that's something we think is problematic. And to

20  talk with those individuals would not be much of a challenge;

21  to take some discovery from from them and to have their

22  reasons.

23         Because, quite frankly, it stands out in my mind that

24  just in -- to the extent it might be helpful, your Honor,

25  with -- a judge advocate myself, with just shy of 20 years as a

1   reservist, mingled with several tours of active duty.  And many
2   of these have been both as a counsel for plaintiff and counsel
3   for command.

4       In this particular instance, when you see a split
5   like that of the recommendations from battalion to brigade
6   being united and then brigade to the division being not united,
7   that's something that's usually speaking of a top-down-type
8   decision where the people who are making the decision contrary
9   to the soldier are doing so not necessarily because they
10  believe it to be in the best interests of the Army but normally
11  for the best interests of their career.  Or they didn't think
12  they had the meaningful choice to select retention and
13  honorable because they knew their signature blocks would be
14  going up to the Pentagon, and that they would be reviewed at
15  the Pentagon.  And then that might be reviewed disfavorably;
16  especially when the Secretary of the Army AD directive begins
17  with "Commander will initiate."

18      So with those things put into place, your Honor, we
19  do think there is a very sufficient landscape here, and we
20  would sincerely ask that you take a closer look at the REDUX
21  language in box 12, which takes him all the way to 20.  It does
22  say that -- Army regulations plan to REDUX.  At the time that
23  Staff Sergeant Claiborne signed that REDUX contract and the
24  Army signed it, there was no AD 2013-20 in place.  That smacks
25  of ex post facto.

1    We've got the issue of potential unlawful command
2  influence with the brigade and division commanders. We have
3  the idea that there is no statement by anybody official with
4  the rationale as to why on this man's record it's clearly in
5  the best interests of the Army to separate him. Or, as in the
6  directive, it reads -- 5-3 says clearly in the best interests
7  of the Army and the AD directive says that the decision must be
8  fully informed.

9    Well, we, right now, sitting, don't have arguments of
10  what those rationales were, especially when you have a soldier
11  who, quite frankly, is to be our new success story. A
12  probationary soldier who soldiered back, who completed his
13  probation, enlisted twice. His retirement was approved. It
14  was suspended, then revoked. His discharge characterization,
15  by all accounts should be honorable. But, instead, it's
16  recommended as general.

17    Now, after filing the complaint, they say he might
18  not be eligible for retirement, which means that the ABCMR
19  would not be able to upgrade him like we discussed earlier
20  because he wasn't retired eligible in the first place, but now
21  they're going to transfer him to the retirement reserve.

22    We have no accounting for -- by Army officials or
23  personnel lists to contrast with what Staff Sergeant Claiborne
24  might add. And what's different about Staff Sergeant
25  Claiborne, that maybe hasn't been abundantly presented yet,

1   well, he's got wounds from his service, too, in the form of
2   TBI, traumatic brain injury, and post-traumatic stress
3   disorder.

4       So is this really the type of soldier that separating
5   him and cutting off the financial support for his family after
6   his 20 years of service is really clearly in the best interest
7   of the Army? We don't think it is, and here's why.

8       The public itself may not universally agree with what
9   the Army is doing. Some may, some may not. But the very
10  reason that these regulations were put in place was to provide
11  that fundamental pre-deprivation process. And Staff Sergeant
12  Claiborne went through it in 2005 and 2006. Now he's going
13  through it again. And this time he's going through it after
14  the intervening ten years of excellent record and faithful and
15  loyal service to the Army and to our nation, which is not
16  something that -- that is your normal everyday case that falls
17  within the parameters, your Honor, I respectfully submit, of
18  your opening remarks; for the many facts that we've pointed out
19  so far here.

20      And I have one more point, your Honor, if I may. I'm
21  just referring to my notes here. And that is that -- some of
22  the cases that our opponents pointed out about a higher level
23  of irreparable harm required under the preliminary injunction
24  analysis in the Ninth Circuit -- there's no disputing that that
25  law applies, but we think that they could be distinguished for

1  two several -- two -- two main reasons.

2         First, there's a temporal disconnect. The **Hartikka**

3  case and I believe the **Chilcot** case. That's Charlie, Hotel,

4  India, Lima, Charlie, Oscar, Tango. Both of those cases

5  involved conduct that occurred, the soldiers were processed,

6  and then they were sent out. And that's how it happened here.

7         The conduct that occurred had been in 2004. He was

8  processed. He was retained. And then in the intervening ten

9  years, he went on to develop a reputation as a good leader,

10  soldier, and he was promoted. And he went to war a couple of

11  times. And he came home, and he's got the injuries for it,

12  too.

13         So for all of those reasons, your Honor, we think not

14  only are you able to sit confidently and review the subject of

15  the Army's decision under the arbitrary and capricious

16  standard, especially when it comes to Chapter 5-3(a), we've

17  heard a good deal about how there's plenary authority. But,

18  your Honor, it does have limits. And those limits are before

19  you, under the APA, to determine whether there's a reasonable

20  basis, whether there's been mindful consideration of these

21  factors, where -- whether this soldier has been treated in

22  accordance with fairness and process. And we believe that,

23  based on a large amount of paper and what we just talked about

24  a moment ago, that he hasn't.

25         That this is the unique case where you, Judge, can

1  actually do some right here in terms of the equities and

2  correctly applying the law to achieve a result that will

3  protect Staff Sergeant Claiborne and his family and protect the

4  citizens of Oregon and the country. That when the Army makes

5  promises, it is going to deliver. It's not going to wait until

6  the 11th hour and then create a new policy. And then send you

7  out for something you did ten years ago and have already been

8  penalized for.

9       That's all I have, Judge, at this point.

10      THE COURT: All right. Thank you, Mr. Maher.

11      For the secretary?

12      Stay seated, will you, please, so you're near the

13  microphone and Mr. Maher can hear you.

14      MR. MAHER: I was standing up, Judge.

15      THE COURT: Were you?

16      I'm speaking to Mr. Cox here.

17      Our microphones are really best accessed from a

18  seated position.

19      So I appreciate the respect. We didn't get to see

20  it. But I'm now directing Mr. Cox to stay seated, not out of

21  disrespect, but so you can hear him.

22      Go ahead, Counsel.

23      MR. MAHER: Yes, ma'am.

24      MR. COX: Thank you, your Honor. James Cox appearing

25  on behalf of the Secretary of the Army. And with me again this

1  week is Captain Christopher Koschnitzky from the Army

2  Litigation Division.

3  Your Honor, I would like to begin with the broad

4  based charter of relief granted to the ABCMR, the

5  administrative body tribunal that is at issue here.

6  The ABCMR is established by 10 USC 1552, and that

7  statute provides the ABCMR with broad authority. The authority

8  to do or undo anything that the Secretary of the Army can do.

9  The -- the -- the statute confirms this by stating

10  that the board can correct an error or remove an injustice.

11  That's -- those are terms of equity, and the case law confirms

12  that the ABCMR has this broad-based authority. The **Knehans**

13  case from the D.C. Circuit, cited by the Government in the

14  briefing, addressed this very point about reinstatement and

15  pay. And the statute itself even goes more specifically

16  than -- than that initial broad statement. 10 USC 1552(c)

17  includes a provision relating to appropriations for back pay.

18  And 10 USC 1552(d) then moves to the forward-looking scenario

19  with front pay and with reenlistment or appointment. So that

20  the statute and the regulations that are promulgated pursuant

21  to that statute correlate with the case law, which is that the

22  ABCMR has the broad authority to do or undo anything that the

23  Secretary of the Army could do. And the ABCMR has that

24  authority here to -- upon review of this decision by the

25  Secretary of the Army, should the plaintiff choose to avail

 1   himself of that remedy, the ABCMR does have the power -- as the
 2   statutes and case law indicate -- to provide complete relief to
 3   the plaintiff.  And so this -- this administrative panel or
 4   board that the plaintiff failed to exhaust really can provide
 5   complete relief in this case.

 6          On the issue of irreparable harm, your Honor, that's
 7   an issue that arises both in the exhaustion inquiry and in the
 8   standard -- PI standard, even if exhaustion was met; moving to
 9   the -- the question of whether the plaintiff has met the
10   standard to receive injunctive relief.

11          And the **Hartikka** case from the Ninth Circuit really
12   is on all fours with this case.  That was a service member who
13   was challenging a discharge -- his discharge from the military.
14   And his claim of injury was the loss of pay and benefits from
15   that discharge.

16          And in no uncertain terms there, the Ninth Circuit
17   clearly stated that the plaintiff's injuries, the claimed
18   injuries in that case just could not be a sufficient
19   irreparable injury sufficient to grant injunctive relief.

20          And the **Hartikka** court specifically referred to the
21   Supreme Court's decision in **Sampson versus Murry** in which the
22   Supreme Court established an even more stringent standard for
23   injunctive relief versus the traditional injunctive test, and
24   required a much stronger showing of irreparable harm than the
25   ordinary standard for injunctive relief due to the magnitude of

1   interest weighing against judicial interference in the internal
2   affairs of the armed forces.

3       And so that case really does apply here because
4   Sergeant Claiborne's injuries are the same injuries that the
5   plaintiff is claiming -- that the plaintiff claimed in the
6   **Hartikka** case.

7       Now, Mr. Maher has attempted to distinguish **Hartikka**
8   based on the fact that the service member in **Hartikka** was not
9   retirement eligible or near retirement eligibility at the time.
10  And that's certainly a factual distinction, but it's not a
11  distinction that makes a difference here because the question
12  here is the -- is the immediate harm; the temporary loss of pay
13  and benefits. And that's the same in either case.

14      The service member is challenging a discharge that
15  will cause them to lose pay and benefits in the interim if
16  injunctive relief is not granted. And in both situations,
17  the -- the injury is the same.

18      And the -- and the Ninth Circuit has indicated that
19  that is just not a sufficient injury to constitute an
20  irreparable injury for purposes of injunctive relief, which
21  corresponds to the -- the -- the standard case law regarding
22  monetary injury.

23      I would like to also discuss, your Honor, the
24  procedure that the parties have -- have put before the Court in
25  an appendix regarding the process that led to the Secretary of

1  the Army's decision to separate Staff Sergeant Claiborne.

2  The record shows that Staff Sergeant Claiborne was

3  aware of the Army's decision or -- or intention to evaluate him

4  for separation as far back as early 2014.

5  The -- the attorneys for the Army provided --

6  Sergeant Claiborne with an initial notice in February of 2014.

7  And the separation action was initiated in July 2014. And

8  that's on page 8 of the appendix that the parties have

9  submitted. And that's where that process began where -- the

10  chain of command for Sergeant Claiborne. Notified him of his

11  rights, notified him of his right to provide a statement to the

12  decision-making authority, and also provided their own

13  recommendations to the decision-making authority herself as

14  well.

15  And during this process, not only did Sergeant

16  Claiborne receive notice of the action, he also received an

17  opportunity to be heard. He was able to write a statement to

18  the -- to the decision maker, to the separation authority

19  regarding the -- the separation action.

20  So -- so Sergeant Claiborne has had an opportunity,

21  both for notice and an opportunity to be heard. And his

22  statement is included at page 15 of the appendix.

23  Mr. Maher raised the -- the point of the different

24  recommendations that were made by the members of Sergeant

25  Claiborne's chain of command. And I -- from my perspective,

1  Mr. Maher gives speculation as to what was going on in the --
2  in the -- in the minds of the higher ranking members of that
3  chain of command.  But that's irrelevant, your Honor, because
4  the decision making authority here is the Assistant Secretary
5  of the Army.  Assistant Secretary Wada.  She is the one who
6  made the decision.  It's not the colonel, the brigade
7  commander.  It's not the corps commander, the general who made
8  his recommendation.  And it's in the the lower members of the
9  chain of command, the company and battalion commanders, who
10  favored retaining Sergeant Claiborne.  All of those
11  recommendations were given to the assistant secretary, and
12  she's the one who made the decision.  And she had the benefit
13  of all of those recommendations.

14       So regardless of what plaintiffs would -- plaintiff
15  would propose as going into the -- the recommendations at the
16  higher-level uniformed officers, those are just
17  recommendations.  And this decision was made by the Assistant
18  Secretary of the Army.  And she had the benefit of the
19  recommendations of all members who provided a recommendation on
20  this action.

21       Your Honor, Mr. Maher also mentioned the bonus that
22  Sergeant Claiborne received in 2011.  Sergeant Claiborne
23  elected to receive a bonus at -- when he hit the 15-year mark
24  for his active duty service; a bonus of $30,000.

25       And the terms of that bonus do not contain any

1  representation by the Army as to what the Army will -- what

2  actions the Army will take in the future.  The terms of that

3  bonus is simply that the plaintiff is committing that he will

4  not quit before the 20-year mark after receiving this bonus.

5  And if he does quit, then that bonus is subject to being repaid

6  to the Army.  And that -- that's the terms of that bonus

7  that -- that Sergeant Claiborne received.

8         And I would also turn your Honor to the Army

9  regulations at issue here.  Turning to the -- the substance of

10  the claim and the -- the probability of success on the merits.

11         The Secretary of the Army's authority under 5 --

12  Chapter 5-3 of AR 635-200 is broad-based and it is plenary.

13  And there is no other provision in that regulation that would

14  prohibit the secretary from doing this -- from taking this

15  action here.

16         The secretary's issued a directive in which he has

17  determined it is in the best interests of the Army to -- to no

18  longer retain individuals who are in this category of offenses.

19  That -- that a separation action should be initiated against

20  these individuals, and that the process that occurred should

21  occur.

22         That the provision that the plaintiff cited in their

23  complaint is -- is a claim that the Army violated other

24  regulations within that -- within that manual AR 635-200.  And

25  that claim is just not supported by the record.  That provision

1   that the plaintiff cites does not prohibit the Secretary of the

2   Army from taking this action.  This is not a situation of

3   double jeopardy and -- and the -- the standard use of the term

4   "double jeopardy" would not apply here.

5       The -- the Secretary of the Army has plenary

6   authority, regardless of what has occurred in the past or what

7   decisions have been made in the past to decide this is what I

8   believe the Army needs to do at this point in time.  And it is

9   his prerogative under Section 5.3 to make that decision in the

10  best interests of the Army and that is what he has decided

11  to -- to do here.  And that does not encompass any other

12  separation provision that is within that regulation.

13      The Army is not saying, Wait, we're changing our mind

14  about the -- the Chapter 14 decision that was made a decade

15  ago.  We're reversing that decision.  That is not what -- what

16  is occurring here.

17      This is a new chapter of the manual and a new

18  separation authority that is making this decision.  And the

19  Secretary of the Army's authority to do that is encompassed

20  within these regulations and the Army followed both the

21  substance of the regulations in promulgating this policy and in

22  making the substantive decision.  And the procedure which it

23  followed in doing it also complied with the notice procedures

24  that are in Chapter 2 of that regulation.  So there's been no

25  irregularity here that would suggest that plaintiff has any

1   type of likelihood of success on the merits.

2           Your Honor, in reviewing my notes, the -- the

3   decisions of the ABCMR are available in a reading room.  The

4   military has a website reading room where these decisions are

5   promulgated.  It doesn't require a FOIA request to be able to

6   be privy to the decisions that are made by the ABCMR.

7           If I could have one moment.

8           (Pause, referring.)

9           MR. COX:  Your Honor, for the reasons I described,

10  the Secretary of the Army would ask that the plaintiff's motion

11  for preliminary injunction be denied.  And the Government

12  believes that the proper step now with respect to the

13  complaint, if the motion is denied, is that the complaint be

14  dismissed without prejudice.  There would be no statute of

15  limitations bar on any later action filed by the plaintiff

16  because the -- the administrative remedy is a required one, and

17  the plaintiff is required to pursue that remedy.  And then

18  after that decision is issued by the ABCMR, then the plaintiff,

19  if he so chooses, can pursue an APA claim in this court.

20          THE COURT:  All right.  Thank you, Mr. Cox.

21          Mr. Maher, was there anything else you wanted to add?

22  Mr. Maher?

23          MR. MAHER:  Your Honor?

24          THE COURT:  Yes.  Is there anything else you would

25  like it add, sir?

1       MR. MAHER: Yes, ma'am. Yes, your Honor. I would

2  add briefly, just to -- to -- speak to a few of the points that

3  Mr. Cox made right there.

4       One of things that -- that I think is problematic of

5  this case is the authority of the ABCMR. On the one hand, I

6  think it's very fair to say that there is no mandatory language

7  within the statute of 1552 or (indiscernible) regulations that

8  tell Staff Sergeant Claiborne, You must do this before you have

9  to go to court.

10      And one other thing is I would surmise -- and I'm

11  reluctant to say something like this -- but I would surmise

12  that if there were some published decisions that actually spoke

13  to the very specific case where the Army Board for Correction

14  of Military Records can take a discharge -- which is a separate

15  action, separating a person from the military -- and convert

16  that discharge -- not upgrade it or change the characterization

17  of service, but convert that discharge to a transfer order to

18  the Army's retired list, placing Staff Sergeant Claiborne on

19  that retirement list and thereby entitling him to retired pay

20  and the associated benefits, that would be something that I

21  think would be very helpful for the Court to see.

22      Now, regrettably -- and this is probably my own

23  inability, I have not been able to find any, despite my

24  efforts. I did come across the reading room that Mr. Cox

25  mentioned -- but for whatever reason, I must have misread it --

1  that says --

2  THE COURT REPORTER: I'm sorry, I need him --

3  THE COURT: Mr. Maher, Mr. Maher, you need to slow

4  down. You're moving pretty quickly. And without seeing you,

5  it's hard for us to make a record.

6  So go back to your point about the reading room.

7  MR. MAHER: Yes, your Honor. Thank you for that. I

8  didn't realize I was going that fast. Must have had some

9  caffeine this afternoon.

10  But the point being, if there were a case that we

11  were able to locate from the ABCMR that said that the ABCMR has

12  the authority to take a discharge -- which is a separation from

13  the military, severing that duty status and severing your

14  relationship, whereas -- if you've completed your contractual

15  obligation -- you have no more obligation or association with

16  the military, and convert that discharge rather than upgrade it

17  or rather than create a different characterization of

18  service -- for example, from general other than honorable to

19  honorable. And convert that to a transfer to the retired list,

20  which is a separate action where you're still associated with

21  the military, you maintain your rank and your time and grade,

22  and you receive retired pay. You're subject to the Uniform

23  Code of Military Justice. And at times of national emergency,

24  you could be recalled to active duty when the President

25  delegated that authority to the Secretary of the Defense and

1    then the Secretary of the Army.  Those are two wholly different

2    things.

3        And, yes, we do not dispute that the board has the

4    authority to award back pay and reinstatement.  But that's not

5    what's at issue here.  What's at issue here is that Staff

6    Sergeant Claiborne doesn't want a reinstatement.  He wants to

7    retire.  And can the board pay him retirement up through the

8    span of his natural life?  These are the issues that counsel

9    against going to the Army Board for Correction of Military

10   Records because so doing would be futile.  And I think that's a

11   very important point there, which then likely brings us back to

12   you, your Honor.

13       Now, with regard to the complete relief for Staff

14   Sergeant Claiborne, the two cases that counsel relies on are --

15   are **Hartikka**, I believe, and **Vanzen** (phonetic).

16       Well, I think in **Hartikka**, the soldier there was not

17   retirement eligible.  And the important thing to distinguish

18   there was not only was he not retirement eligible, the Army

19   separated him shortly after the conduct arose of firemen to the

20   family's home and being (indiscernible) and that type of thing.

21       Similar to the **Vanzen** case -- and I'm speaking off

22   the top of my head on this one -- that involves some union

23   employees, I believe, which I think is completely -- not

24   analogous to our case.

25       In those instances, what the people were looking for

1  was restatement. And they had temporary loss of retired --

2  excuse me, of military pay and temporary loss of status. By

3  contrast, Staff Sergeant Claiborne will have permanent loss of

4  retired pay, and he will have the permanent stigma of discharge

5  after 20 years rather than the honor of retirement after 20

6  years. And I think that's a very important point.

7        Now, with regard to Mr. Cox's comment concerning the

8  chain of command and -- and I -- I've read them -- I heard

9  them. Got a little note here that the junior officers in the

10  chain, they're just recommenders. So the real decision is at

11  the secretary level, and in this case, delegated to the

12  assistant secretary, (indiscernible) power of reserve affairs.

13        With that said, if that is indeed the Government's

14  position, Mr. Cox has just told us that that process doesn't

15  mean a hill of beans. So that notice and that opportunity to

16  respond to the company commander, to the battalion commander,

17  the brigade commander, the division officer is of no moment.

18  The real issue was it's going to the Secretary of the Army.

19        Then when we look at the career status bonus, I

20  believe that it was said that he doesn't have to pay that back.

21  Well, your Honor, we have contrary authority that he would have

22  to pay it back. And -- and just -- just the other day, at Fort

23  Lewis, personnel informed Staff Sergeant Claiborne, if he

24  wishes to report, that he will have to pay back his career

25  status bonus; which, for him, would be impossible.

1       I mean, as you know, your Honor, after duty, he

2  delivers pizzas for Papa John's to help out.

3       And I think the big picture here, your Honor, is the

4  gate to the federal courthouse is open because administrative

5  remedies have not been conclusively established by the

6  statutory language, the regulatory language, or any sample

7  cases, that the board can convert a discharge to a transfer

8  order to a retirement. That is something that is very distinct

9  and more than semantical differences in operation and effect.

10 And I have not seen it. And working the case I've not seen it.

11 And I think if it existed, Counsel for the United States may

12 have presented it. But I have not seen that.

13      And then finally, your Honor, the idea of Chapter

14 5-3, the Secretary's plenary authority, if you look at the

15 language of it, that is plenary, and we all know what that

16 means. But it's plenary to an extent. And that extent is it

17 has to comply with the Administrative Procedures Act law which

18 was created to ensure that the specter of judicial review would

19 encourage executive agency officials to do their duties in

20 accordance for the individual and the process afforded to

21 individuals in the interests of fundamental fairness and

22 justice.

23      And the plenary authority here was misapplying, in

24 what has been an abuse of discretion, for the many reasons

25 we've listed. Not the least of which is the REDUX contract

1   promising the other five years, through 20 years. And then

2   three or four years later, the AD directive being issued out

3   of -- quite frankly -- the, you know, ecosphere. And that now

4   becoming a basis to use the plenary authority.

5        The Army never used that plenary authority for the

6   first eight years after Staff Sergeant Claiborne rejoined the

7   ranks and served honorably in combat. Only when this directive

8   came down. Well, does the REDUX contract say Army directives?

9   No. It says, Subject to Army regulations.

10       In a joint brief to the Court, the justice department

11  laid out how AR 635 went through a process to become an Army

12  regulation. It didn't do the same thing for this AD directive.

13  The AD directive is something different than an Army

14  regulation.

15       So for these reasons, your Honor, we think that the

16  equities in this place of administrative double jeopardy; the

17  ex post facto nature of the AD directive being applied to the

18  REDUX, the idea that Staff Sergeant Claiborne is at 20 years,

19  was approved for 20 years, was set to retire, was suspended

20  from retirement, and now after he files his suit seeking

21  assistance from the Court, the Army comes back and says, Well,

22  he may not be retirement eligible anyway. The fact that

23  Secretary Wada wouldn't communicate; the fact that her adjutant

24  Mr. Julian Edmondson (phonetic) would not communicate; the fact

25  that Colonel Miller, the executive officer for the Army G1

1    personnel department would issue incorrect information

2    pertaining to Staff Sergeant Claiborne's (indiscernible) the

3    Army.

4        All of those things are tell-tale signs of decision

5    making that was not attentive or informed. And, quite frankly,

6    when the day is done, the issue here appears to be a

7    counterproductive one: One that doesn't serve the soldier, one

8    that doesn't serve the Army, one that doesn't serve the

9    country, and one that doesn't serve the nation.

10    So, with that said, your Honor, we would definitely

11    ask that if you're not prepared to grant the preliminary

12    injunction throughout the entire metes and bounds of the

13    litigation, that we could reach some sort of construct whereby

14    within a time frame the parties can get together and determine

15    exactly what the authority of the ABCMR is and what if any

16    cases the Army and the justice department are privy to, that

17    stand for the proposition that that board can provide

18    meaningful relief. Because right now, your Honor, the relief

19    that Staff Sergeant Claiborne requires is futile at that court

20    unless it is shown otherwise.

21        THE COURT: All right. Thank you, Counsel.

22        I want to commend counsel for both parties here for

23    excellent lawyering here. You've done a great deal of work in

24    a short period of time to educate someone outside of the

25    system, specifically this judicial officer, on complicated

1 | matters of Army authority.

2 | I do, however, have a firm grounding in the authority
3 | of the district court in the context of the issuance of
4 | injunctive relief. I want to say to Sergeant Claiborne that
5 | this Court's authority is limited, and I have an oath to follow
6 | the limitations of my authority. Although your lawyers have
7 | now twice, in two hearings, made very compelling arguments
8 | about what they determine to be unfair decision making by the
9 | Secretary and by those in your chain of command, that argument
10 | about fairness does not answer the fundamental question about
11 | whether this Court has the authority. And if it has it, should
12 | it exercise the authority to issue some form of restraint while
13 | your case proceeds through an administrative process that isn't
14 | yet complete.

15 | We regularly see civil litigation where in the
16 | government or in the employment context, an employee who is
17 | adversely affected by a decision of an employer asserts the
18 | violation of a constitutional right if it's in a setting of a
19 | governmental employer or the violation of a contractual right
20 | or a bargaining right. We see these kinds of actions commonly,
21 | but always after there's been an exhaustion of administrative
22 | remedies. And there is a good reason why the Court's authority
23 | to act is conditioned upon that in the context when
24 | administrative remedies exist, and that is because we also are
25 | spared in the court system from litigating matters that end up

1  getting resolved in the administrative process.

2       Congress has said that Article III courts are courts
3  of limited jurisdiction, and we can only act when authorized to
4  do so.  In the context of this kind of relationship, a member
5  of the armed services, suing the -- his Secretary regarding his
6  status, it is fundamental that the process within the Army
7  itself has to come to a conclusion before this Court ought to
8  take steps to provide a venue, assuming a claim can be stated
9  for Sergeant Claiborne to seek a redress of his grievances.

10      The argument about whether the administrative board,
11 the so-called ABCMR, can offer relief if it determines it's
12 warranted here, of a type that is sufficient to prevent harm
13 and damage that's not otherwise the consequence of a lawful
14 decision -- the issue whether that board has that authority is
15 debated by the parties.  But it is the plaintiff, Sergeant
16 Claiborne, who has the burden to prove the futility of this
17 administrative process; not the other way around.  It isn't the
18 defendant's burden on a temporary restraining order showing to
19 show lack of futility.

20      So while the advocates here have capably debated
21 whether this board does or doesn't have the authority to
22 provide relief ultimately as Sergeant Claiborne seeks to pursue
23 administrative remedies -- which I assume he would want to do,
24 to see through to the end and to exhaust any opportunity to
25 make the compelling case his lawyers have presented here to

1   those in the chain of command who may have authority within the
2   Army to do something about it, it is not for the defendant to
3   prove that -- that that board can in fact provide that relief.
4   It is for the plaintiff to prove that they can't.

5           And all I have by way of the argument from
6   plaintiff's counsel is speculation that that board cannot
7   provide the relief that ultimately might be sought in the event
8   this discharge process is -- or separation process is
9   ultimately left where it stands under the current order of the
10  Secretary.  That is it say, if the ABCMR does not provide
11  relief sufficient to -- to Sergeant Claiborne and in the event
12  he seeks further relief via this civil action.

13          So I -- I do not find persuasive the arguments by
14  plaintiff's counsel that Sergeant Claiborne should be spared
15  the process that is required in the normal course of exhausting
16  one's administrative remedies.  That said, that is one factor,
17  then, that weighs against any kind of temporary relief.

18          The argument about there being facial unlawfulness of
19  the Secretary's order with respect to ex post facto application
20  is an important issue of the authority of the Secretary of the
21  Army.  Before a civilian court would or should step in to rule
22  that a decision of a Secretary of the Army is unconstitutional
23  or facially unlawful, that challenge has to be brought
24  administratively and through the process.

25          None of us in this room, I take it, had any actual

1    knowledge of another proceeding like this one arising from the

2    2013 regulation adopted by the Secretary.  Because it is a

3    question of first impression, I think that makes all the more

4    important the observation that the administrative process has

5    to be seen through to its end.

6          I am very much affected at a human level by the

7    passion and fairness arguments Sergeant Claiborne's counsel

8    advanced.  I can't say that those arguments won't succeed on

9    their merits when presented through the exhaustive

10   administrative process which Sergeant Claiborne has to exhaust.

11         So I believe the failure to exhaust is a significant

12   barrier to ongoing injunctive relief.  I am also not persuaded

13   by the arguments, as passionate as they are, that Sergeant

14   Claiborne has established he is likely to prevail on the merits

15   that either the Army hasn't followed the appropriate procedure

16   or that the underlying policy itself is unlawful and cannot be

17   enforced.  I can't say that he won't succeed.  But this is

18   evidently a question of first impression, and it is one that is

19   going to have to be developed in the normal course.

20         With respect to irreparable harm, something that is a

21   factor the Court must consider concerning the issuing of

22   injunctive relief, again, I cannot say that the harm Sergeant

23   Claiborne seeks to avoid with a temporary order of this Court

24   cannot be undone in the same way that any other aggrieved or

25   allegedly aggrieved employee who's being separated from a

1   position of security is not permitted to prevent the initial
2   separation without the administrative process going to its end
3   and then being able to point to specific facts that show the
4   manner or the process under which a discharge or a
5   separation -- in this case -- occurred was in fact unlawful.

6        So on the three primary factors that the Court must
7   take into account in evaluating injunctive or temporary relief,
8   I cannot say that plaintiff has met the burden he has to make
9   as to any one of them individually.

10       There is a compelling argument here regarding
11  fairness, and we heard it eloquently expressed here.  Sergeant
12  Claiborne was convicted of a crime.  He served time in custody.
13  He was out of -- I don't know what one calls the status he had
14  when he was serving his civilian sentence.  But he came back to
15  face the music.  He dealt with the issue with his chain of
16  command.  He was given a probationary opportunity to prove his
17  worthiness.  He earned that.  He went on to serve honorably at
18  every level.  And now he's being told that all of that was for
19  naught.  That the Secretary -- arguably, arbitrarily -- has
20  made a policy change retroactively to sweep in someone like
21  him.

22       Presumably the Secretary, before endorsing this final
23  decision, has actually heard and understood the equitable
24  arguments that are being made on Sergeant Claiborne's behalf.
25  But until the administrative process is exhausted and until the

1    last decision is made, so that this action which Sergeant

2    Claiborne and his lawyers so eloquently assert is fundamentally

3    unfair is made irrevocably final, it's not appropriate for this

4    Court to interfere.

5           I can't say there is, and I can't say there isn't a

6    claim.  The matter, unfortunately for Sergeant Claiborne and

7    his family, has to take its course.  And then if he remains

8    aggrieved and he can state a claim, he -- like every other

9    litigant -- will be welcome to pursue his remedies in this

10   court or wherever else he chooses to file.

11          So I am now vacating the temporary order of

12   restraint -- well, I don't need to vacate it, since it's

13   expiring of its own terms.  I'm allowing the expiration of the

14   temporary order, according to its own terms.

15          Mr. Maher made a point that he may be able to, with

16   further information, supplement the argument about futility of

17   the administrative process.  And that suggests that the Court

18   perhaps should allow Sergeant Claiborne to renew the motion at

19   some point; the motion for this Court to engage immediately

20   rather than to await the final decision of the administrative

21   process.  But I think all of that is premature and speculative

22   as well.  So what I am doing for today is simply allowing the

23   temporary order to expire.

24          I'm directing the parties to confer about what next

25   steps are appropriate in this case, and I want you to submit a

1   joint report.  If there's a joint recommendation of what to do,

2   then I will consider it.  If you have differing positions on

3   what should happen, then you can set those out.

4          But what I want is a joint filing, a single one, that

5   asks -- that sets forth your recommendations.  They're either

6   agreed or disputed.  And once I have it, I will consider those

7   options and then have a conference with you, probably by

8   telephone to save a personal appearance for everyone, to see

9   whether the case is to be dismissed upon the stipulation of the

10  parties -- for example, without prejudice and obviously with

11  leave to refile -- or whether the case is to be stayed while

12  the administrative proceedings go forward to exhaustion; or

13  whether something else should happen:  The active litigation of

14  the case.  Which I think is hard to reconcile with the finding

15  I've made today that Sergeant Claiborne has to exhaust his

16  administrative remedies.

17         But if the case was stayed, for example, it could be

18  stayed for a period of time with another status report down the

19  road, just -- the progress is such that it's clear that the

20  administrative process will be futile.  That there won't be

21  relief.  That there is a final-enough decision that the matter

22  ought to be litigated.  Then maybe that's what the parties want

23  to tell me.

24         But I want you to think about the various options,

25  weigh them, see if you can come to agreement.  If you can't,

1    tell me your best recommendations, and then I'll make a

2    decision.

3            So I know the news for you, Sergeant, is

4    disappointing.  I hope you understand your lawyers have done

5    all they can.

6            MR. CLAIBORNE:  Sure.

7            THE COURT:  I think there's not really a fair dispute

8    about the state of affairs.  You're going to have to pursue

9    your remedies.

10           MR. CLAIBORNE:  Yes.

11           THE COURT:  And hopefully those can be pursued within

12   a respectful and efficient amount of time to minimize any

13   adverse impact to Sergeant Claiborne, especially if it turns

14   out the impact of the Secretary's decision is reversed.

15           So I urge the Secretary to move expeditiously through

16   and to facilitate a quick and expeditious process through the

17   ABCMR and any other process they expect the sergeant to have to

18   exhaust before litigation can proceed.

19           I'll give you a deadline for the submission of a

20   joint status report.

21           (Pause, referring.)

22           THE COURT:  Three weeks from today, July 29th.  Will

23   that work?  Yes?

24           MR. COX:  Yes, your Honor.

25           MS. MITCHELL:  Yes.

1          THE COURT:  All right.  That's all for today, then.

2          I'll simply be issuing a short summary order that

3     incorporates by reference the reasons stated on the record

4     today.  That I've allowed the temporary order to expire for the

5     reasons indicated, and set the next reporting date for what it

6     is.  And then we'll see where things go from there.

7          Of course, in the meantime, it's always possible for

8     the parties to resolve this themselves.  And if you end up

9     figuring out a way to do that, such that you're mooting the

10    underlying dispute here, please do let me know.

11         All right.  We're in recess, then, on this matter.

12         Thank you, everyone.

13         (Conclusion of proceedings.)

14

15                              -o-

16

17

18

19

20

21

22

23

24

25

*Certificate*

1

2                              --oOo--

3

4   I certify, by signing below, that the foregoing is a correct

5   transcript of the oral proceedings had in the above-entitled

6   matter this 15th day of July, 2015.  A transcript without an

7   original signature or conformed signature is not certified.  I

8   further certify that the transcript fees and format comply with

9   those prescribed by the Court and the Judicial Conference of

10  the United States.

11

            /S/ Amanda M. LeGore
12          _____

13              AMANDA M. LeGORE, RDR, CRR, FCRR, CE

14

15

16

17

18

19

20

21

22

23

24

25



**DEPARTMENT OF THE ARMY**
ALPHA COMPANY
HEADQUARTERS AND HEADQUARTERS BATTALION, I CORPS
JOINT BASE LEWIS-MCCHORD, WASHINGTON 98433

AFZH-ACO

MEMORANDUM FOR Commander, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, WA 98433, Joint Base Lewis-McChord, Washington 98433

SUBJECT: Acknowledgment of Receipt of Separation Notice Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority

I acknowledge receipt of the foregoing notice from my commander that informs me of the basis for the contemplated action to separate me under AR 635-200, Chapter 5-3, and of the rights available to me. I have been advised of my right to consult with counsel prior to submitting my Election of Rights. I understand that unless an extension is granted, failure to respond within 7 duty days will constitute a waiver of the rights in paragraphs 6, 7, 8 and 9 of the notice.

DATE SIGNED: _20140716_ _____ (Signature)
DAMON J. CLAIBORNE
SSG, USA
Respondent

AFZH-ACO-CDR
SUBJECT: Election of Rights Regarding Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, WA 98433

  a. I **(have)** **(have not)** been diagnosed as experiencing PTSD or TBI by a physician, clinical psychologist, or psychiatrist.

_D.C._
_D.C._ b. I **(do)** ~~(do not)~~ believe, based on my service while deployed, that I experienced either PTSD or TBI.

_D.C._8. I have retained a copy of this statement.


DATE SIGNED: 18 Jul 2014 _____ (Signature)

     DAMON J. CLAIBORNE
     SSG, USA
     Respondent

Having been advised by me of the basis for his contemplated separation and its effects, the rights available to him, the right to waive his rights, SSG Claiborne personally made the choices indicated in the foregoing statement.

DATE SIGNED: 18 Jul 14 _____ (Signature)
Printed Name: ~~GREGORY M. LEBOUTON~~
Rank, Branch: ~~CPT, US ARMY~~
Duty Position: ~~Indefinite Per 10 USC 1044(d)~~ ~~JUDGE ADVOCATE~~

### (OPTIONAL WAIVER TO CONSULT COUNSEL)

Before completing my election of rights, I was afforded the opportunity to consult with appointed counsel for consultation, or military counsel my own choice, if they are reasonably available; or civilian counsel at my own expense. I choose to decline the opportunity.


DATE SIGNED: _____ _____
(Signature)
     DAMON J. CLAIBORNE
     SSG, USA
     Respondent

2

000239



**DEPARTMENT OF THE ARMY**
ALPHA COMPANY
HEADQUARTERS AND HEADQUARTERS BATTALION, I CORPS
JOINT BASE LEWIS-MCCHORD, WASHINGTON 98433

AFZH-ACO-CDR

MEMORANDUM FOR SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

SUBJECT: Separation Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

1. Under the provisions of AR 635-200, Chapter 5-3, I am initiating action to separate you for Involuntary Separation Pursuant to Secretary of the Army Plenary Authority. The reasons for my proposed action are: On or between 1 September 2004 and 30 September 2004 you had sexual contact with a child who was under the age of 14 years old. On 3 January 2005 you were convicted of child molestation in the second degree in Kitsap County, Washington and sentenced to 15 months of confinement.

2. I am recommending that your service be characterized as (INITIAL OPTION):

( X ) *CK* Honorable.

(   ) General under honorable conditions.

3. My recommendation and your reply will be submitted to the Secretary of the Army, who is the separation authority and will make the final decision in your case.

4. The intermediate commanders and the separation authority are not bound by my recommendation as to characterization of service. The separation authority may direct that your service be characterized as honorable or under honorable conditions.

5. If my recommendation is approved, the proposed separation could result in discharge, release from active duty to a Reserve component, or release from custody and control of the Army.

6. You have the right to consult with consulting counsel and/or civilian counsel at no expense to the Government within a reasonable time not less than 3 duty days.

7. You may submit written statements in your behalf.



AFZH-ACO-CDR

MEMORANDUM THRU Commander, Headquarters and Headquarters Battalion, I Corps, Joint Base-Lewis-McChord, Washington 98433

THRU Commander, 42nd Military Police Brigade, Joint Base Lewis-McChord, Washington 98433

Commander, I Corps, Joint Base Lewis-McChord, Washington 98433

FOR Secretary of the Army

SUBJECT: Commander's Report – Proposed Separation Under AR 635-200, Chapter 5-3, Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

1. Under the provisions of AR 635-200, Chapter 5-3, I recommend that the following named individual be (INITIAL OPTION):

( X ) Retained.

(  ) Retained and rehabilitatively transferred to another unit as directed by the G-1/MPD.

(  ) Separated, but that the separation be <u>suspended</u> for a period of _____ months (not to exceed 12 months).

(  ) Separated from the Army prior to the expiration of current term of service.

2. Soldier information:

a. Rank/Name/ SSN: SSG DAMON J. CLAIBORNE

b. Date of birth: 19710222

c. Date of enlistment/reenlistment: 19960407/20110930

d. Length of term for which enlisted: 4 Years

AFZH-ACO-CDR
SUBJECT: Commander's Report – Proposed Separation Under AR 635-200, Chapter 5-3, Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

4. Memoranda of notification and acknowledgment are attached as enclosures.

Encls
as

CHRIS KIM
CPT, CM
Commanding

4



AFZH-ACO-CDR

MEMORANDUM FOR Commander, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

SUBJECT: Election of Rights Regarding Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

1. I have been advised by my consulting counsel of the basis for the contemplated action to separate me for Involuntary Separation Pursuant to Secretary of the Army Plenary Authority under AR 635-200, Chapter 5-3 and its effects; of the rights available to me; and of the effect of any action taken by me in waiving my rights. I understand that if I am NOT entitled to have my case heard by and administrative separation board and that I have seven (7) calendar days to submit matters in my behalf.

2. Statements in my own behalf (are) (are not) submitted herewith (Encl A ).

3. I (request) (waive) consulting counsel and representation by military counsel and/or civilian counsel at no expense to the Government.

4. I understand that I may expect to encounter substantial prejudice in civilian life if a general discharge under honorable conditions is issued to me. I understand that if I receive a discharge/character of service that is less than honorable, I may make application to the Army Discharge Review Board or the Army Board for Correction of Military Records for upgrading; however, I realize that an act of consideration by either board does not imply that my discharge will be upgraded.

5. I (have) (have not) filed an unrestricted report of sexual assault within 24 months of initiation of the separation action.

6. (To be answered only if the Soldier answered the previous question affirmatively) I (do) (do not) believe that this separation action is a direct or indirect result of the sexual assault itself or of the filing of the unrestricted report.

7. I (have) (have not) deployed overseas in support of a contingency operation during the previous 24 months. (if "have" is selected, answer a - b below)

AFZH-ACO-CDR
SUBJECT: Separation Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

8. You may obtain copies of documents that will be sent to the separation authority supporting the proposed separation. Classified documents may be summarized.

9. You are not entitled to a hearing before an administrative board, but you may submit matters in writing within 7 calendar days from receipt of this notice.

10. You may waive the rights listed above in paragraphs 6, 7, 8, and 9 in writing, and you may withdraw any such waiver at any time prior to the date the separation authority orders, directs, or approves your separation.

11. You will receive counseling concerning earned education benefits as required by law (10 USC 1046).

12. If applicable, recoupment of the unearned portion of your enlistment or reenlistment bonus is required by law (37 USC 308).

13. You are required to undergo a complete medical examination, in accordance with AR 40-501, if it has been more than one year since your last examination. If it has been less than one year, but more than six months since your last examination, you will complete a DA Form 3081 (Periodical Medical Examination Statement of Exemption).

14. Execute the attached acknowledgment and return it within 7 duty days from the date of your receipt of this memorandum. Any statement you desire to submit in your behalf must reach me within 7 duty days after you receive this letter, unless you request and receive an extension for good cause shown. Unless an extension is granted, failure to respond within 7 duty days will constitute a waiver of the rights in paragraphs 6, 7, 8, and 9.

Encls

CHRIS KIM
CPT, CM
Commanding

2

000244



**DEPARTMENT OF THE ARMY**
HEADQUARTERS AND HEADQUARTERS BATTALION, I CORPS,
JOINT BASE LEWIS-MCCHORD, WASHINGTON 98433

AFZH-HHB-CDR

THRU Commander, 42nd Military Police Brigade, Joint base Lewis-McChord,
Washington 98433
Commander, I Corps, Joint base Lewis-McChord, Washington

FOR Secretary of the Army

SUBJECT: Separation Under AR 635-200, Chapter 5-3, Secretary of the Army Plenary
Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters
Battalion, I Corps, Joint Base Lewis-McChord, WA 98433, Joint Base Lewis-McChord,
Washington 98433

1. I have reviewed the enclosed Separation packet on , SSG Damon J. Claiborne,
Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-
McChord, WA 98433

2. After careful consideration of all matters, I recommend this Soldier be (INITIAL
OPTION):

(  ) Retained.

(  ) Retained and rehabilitatively transferred to another unit as directed by the G-
1/MPD.

(  ) Separated, but that the separation be <u>suspended</u> for a period of _____ months
(not to exceed 12 months).

(  ) Separated from the Army prior to the expiration of current term of service.

I recommend that this Soldier's service be characterized as (INITIAL OPTION IF
PARATION WAS SELECTED ABOVE):

) Honorable.

General under honorable conditions.

AFZH-HHB-CDR
SUBJECT: Separation Under AR 635-200, Chapter 5-3, Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, WA 98433, Joint Base Lewis-McChord, Washington  98433

4.  This Soldier **(has) (has not)** filed an unrestricted report of sexual assault within 24 months of initiation of this separation action. **(if "has" is selected, answer a - d below)**

    a.  The separation **(does) (does not)** appear to be in retaliation for the Soldier filing an unrestricted report of sexual assault

    b.  The separation **(does) (does not)** involve a medical condition that is related to the sexual assault, to include Post Traumatic Stress Disorder (PTSD).

    c.  The separation is in the best interest of **(the Army) (the Soldier) (both)**.

    d.  The status of the case against the alleged offender is **(open) (closed)**, and the separation of the Soldier/victim **(will) (will not)** affect disposition or prosecution of the case.


Encls
as

CHRISTOPHER M. RIZZO
LTC, SF
Commanding

2

000246



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, 42D MILITARY POLICE BRIGADE
BUILDING 2007B, 2D STREET, BOX 339500, MAIL STOP 55
JOINT BASE LEWIS-MCCHORD, WASHINGTON 98433

AFZH-MP

MEMORANDUM THRU Commander, I Corps, Joint Base Lewis-McChord, Washington 98433

MEMORANDUM FOR Secretary of the Army

SUBJECT: Separation under AR 635-200, Chapter 5-3 (Secretary of the Army Plenary Authority), Staff Sergeant (E6) Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington

1. I have reviewed the enclosed separation action on Staff Sergeant (E6) Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington.

2. After careful consideration of all matters, I recommend this Soldier be:

    (   ) Retained and rehabilitatively transferred to another unit as directed by the G-1/MPD.

    (   ) Separated, but that the separation be <u>suspended</u> for a period of _____ months (not to exceed 12 months).

    Separated from the Army prior to the expiration of his current term of service

3. I recommend that this Soldier's service be characterized as (Honorable) (General, under honorable conditions).

DAVID L. CHASE
COL, MP
Commanding

8/27/14

AFZH-CG

MEMORANDUM FOR Headquarters, Department of the Army, ATTN: AHRC-EPR-F, 1600 Spearhead Division Avenue, Fort Knox, Kentucky 40122

SUBJECT: Separation Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority, Staff Sergeant Damon J. Claiborne, A Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

1. I have reviewed the enclosed Separation packet on, Staff Sergeant Damon J. Claiborne, A Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

2. After careful consideration of all matters, I recommend this Soldier be (INITIAL OPTION):

      (    ) Retained.

      (    ) Retained and rehabilitatively transferred to another unit as directed by the G-1/MPD.

      (    ) Separated, but that the separation be <u>suspended</u> for a period of _____ months (not to exceed 12 months).

      ( *JD* ) Separated from the Army prior to the expiration of current term of service.

3. I recommend that this Soldier's service be characterized as (INITIAL OPTION IF SEPARATION WAS SELECTED ABOVE):

      (    ) Honorable.

      ( *JC* ) General under honorable conditions.

4. This Soldier has not filed an unrestricted report of sexual assault within 24 months of initiation of this separation action.

5. Due to the nature of this Soldier's misconduct, this separation (is) (is not) in the best interest of the U.S. Army.

AFZH-CG

SUBJECT: Separation Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority, Staff Sergeant Damon J. Claiborne, A Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

6. All counseling requirements have been met in accordance with Army Regulation (AR) 635-200 (Active Duty Enlisted Administrative Separations), 6 September 2011, Chapter 1-20.

Encl
SJA Advice

KENNETH R. DAHL
Major General, USA
Commanding

# COMMENDATIONS AND AWARDS

# POST-CONVICTION (2006)



# DEPARTMENT OF THE ARMY

### THIS IS TO CERTIFY THAT THE SECRETARY OF THE ARMY HAS AWARDED

## THE ARMY ACHIEVEMENT MEDAL

**TO**

### SPECIALIST DAMON J. CLAIBORNE

### HEADQUARTERS AND HEADQUARTERS DETACHMENT, 44TH CORPS SUPPORT BATTALION

**FOR**

Exceptionally meritorious service as the 44th Corps Support Battalion BOSS Representative. SPC Claiborne's dedication to duty and selfless service were in keeping with the highest standards and traditions of military service and reflect great credit upon him, the 44th Corps Support Battalion, and the United States Army.

**FROM:** 3 October 2006 to 16 February 2007



PERMANENT ORDER #7043-01
HQ, 44TH CORPS SUPPORT BATTALION

HORST P. HERTING
LTC, TC
COMMANDING

000251



# DEPARTMENT OF THE ARMY

# CERTIFICATE OF TRAINING

## This is to certify that
## CLAIBORNE, DAMON J

Redacted PII

## has successfully completed

ALL PHASES OF THE DRIVERS TRAINING PROGRAM.   HE HAS COMPLETED THE 40 HOURS BLOCK
OF INSTRUCTION INVOLVING OPERATION AND MAINTENANCE OF THE  56 PASSENGER BUS.  HE
HAS A  WORKING KNOWLEDGE OF THE VEHICLE OPERATING PROCEDURES AND SAFETY CODES.
HIS OVERALL  ADAPTABILITY,  ATTITUDE,  AND DRIVING SKILLS HAVE EARNED HIM THIS
CERTIFICATE.

Given at  Fort Lewis,  Washington
THIS  1ST  DAY
OF SEP 2006

CARLO C. SALLINGER
TRANSPORTATION MOTOR OFFICER



# CERTIFICATE OF TRAINING

This is to certify that

## SGT DAMON CLAIBORNE

has successfully completed

THE 2D INFANTRY DIVISION

ARMY COMBATIVES LEVEL 1 COURSE (40-hours)

17 – 21 Sep 07

Given this the 21st day of September 2007

DUSTIN M. CRAWFORD
SPC, USA
INSTRUCTOR

CORY A. MENDENHALL
LTC, AV
COMMANDING

SECOND TO NONE



# DEPARTMENT OF THE ARMY

THIS IS TO CERTIFY THAT THE SECRETARY OF THE ARMY HAS AWARDED

## THE ARMY ACHIEVEMENT MEDAL



TO

SERGEANT DAMON J. CLAIBORNE

HEADQUARTERS AND HEADQUARTERS COMPANY, 49TH GROUP

FOR MERITORIOUS ACHIEVEMENT WHILE ASSIGNED TO THE HHC, 49TH GROUP AS THE MOVEMENT TRACKING SYSTEM NCO. SGT CLAIBORNE'S TECHNICAL EXPERTISE AND DEDICATION TO DUTY ENSURED THE SUCCESS OF HIS MISSION. SGT CLAIBORNE'S EFFORTS AND DEVOTION TO DUTY ARE IN KEEPING WITH THE HIGHEST TRADITIONS OF MILITARY SERVICE AND REFLECTS GREAT CREDIT UPON HIMSELF, THE 49TH GROUP, THE 101ST AIRBORNE DIVISION (AIR ASSAULT), AND THE UNITED STATES ARMY.

FROM: 2 NOVEMBER 2008 TO 8 NOVEMBER 2008

GIVEN UNDER MY HAND ON

THIS 13TH DAY OF JANUARY 2009



JOHN P. CURRAN
COL, LG
Commanding

TO

Permanent Orders 013-004
13 January 2009
49TH Group
Fort Lee, VA 23801

DA FORM 4980-18, NOV 97

# CERTIFICATE OF TRAINING

## 101st AIRBORNE DIVISION (AIR ASSAULT)
### University of Pittsburgh Human Performance Research Center
### IS PLEASED TO CERTIFY THAT

# SGT DAMON CLAIBORNE







**40 Training Hours Consist of:**
- 6 hr ETAP Morning PT
- 2 hr Q & A on Training
- 4 hr Classroom Lectures
- 4 hr Hands-on Practices
- 4 hr Preparation/Reading ETAP PT Guide
- 10 hr "Train the Trainer" – Teach other NCOs
- 10 hr Implementation of ETAP

DA FORM 87, 1 OCT 78

## HAS SUCCESSFULLY COMPLETED THE
### Instructor Certification School:
## Eagle Tactical Athlete Program (ETAP)
### FORT CAMPBELL, KY 42223
### Training Hours: 40 hrs
### DATE: 19-22 October 2009



JOHN R. WATSON
**Chief, Training Division, DPTMS**
**YC2**

# DEPARTMENT OF THE ARMY

### THIS IS TO CERTIFY THAT THE SECRETARY OF THE ARMY HAS AWARDED

## THE ARMY COMMENDATION MEDAL

**TO**

SERGEANT DAMON CLAIBORNE
UNITED STATES ARMY COMBINED ARMS SUPPORT COMMAND
AND SUSTAINMENT CENTER OF EXCELLENCE

**FOR**

exceptional performance in support of the 2009 United States Army Combined Arms Support Command and Sustainment Center of Excellence Noncommissioned Officer and Soldier of the Year "Best Warrior" Competition. Sergeant Claiborne's dedication to duty and attention to detail contributed to the total success of the competition and reflect great credit upon him, the United States Army Combined Arms Support Command and Sustainment Center of Excellence, and the United States Army.

**FROM: 11 MAY 2009 TO 5 OCTOBER 2009**

**THIS 19TH DAY OF January 2010**





JAMES E. CHAMBERS
Major General, US Army
Commanding

Permanent Orders 19-101
_____
19 January 2010
HQ, USACASCOM&SCoE
Fort Lee, Virginia

000256



# DEPARTMENT OF THE ARMY

### THIS IS TO CERTIFY THAT THE SECRETARY OF THE ARMY HAS AWARDED

## THE ARMY COMMENDATION MEDAL

TO

**SERGEANT DAMON J. CLAIBORNE**
**4TH BRIGADE SUPPORT BATTALION, 1ST BRIGADE COMBAT TEAM**

**FOR** EXCEPTIONALLY MERITORIOUS SERVICE DURING OPERATION ENDURING FREEDOM 10-11, AS A VEHICLE COMMANDER. SERGEANT CLAIBORNE'S OUTSTANDING DEDICATION TO DUTY DURING COMBAT OPERATIONS IN AFGHANISTAN GREATLY CONTRIBUTED TO THE OVERALL SUCCESS OF THE UNIT'S MISSION. HIS ACTIONS ARE IN KEEPING WITH THE FINEST TRADITIONS OF MILITARY SERVICE AND REFLECT DISTINCT CREDIT UPON HIM. THE 4TH BRIGADE SUPPORT BATTALION, THE RAIDER BRIGADE, REGIONAL COMMAND SOUTH, UNITED STATES FORCES AFGHANISTAN AND THE UNITED STATES ARMY.

**FROM 10 SEPTEMBER 2010 TO 17 JULY 2011**

**GIVEN THIS 26TH DAY OF FEBRUARY 2011**

JEFFREY R. MARTINDALE
COL, IN
Commanding

Permanent Order # 057-040
26 February 2011
HQs, 1ST BCT
KAF, Afghanistan 09355

DA FORM 4980-14, NOV 97

000257



000258

*"PACKHORSE"*
*4th Brigade Support Battalion*
*1st Brigade Combat Team*
*4th Infantry Division*

# CERTIFICATE OF APPRECIATION

IS AWARDED TO

## SGT DAMON CLAIBORNE

IN RECOGNITION FOR YOUR OUTSTANDING SUPPORT PROVIDED TO THE MINISTRY OF FOB WALTON CHAPEL. YOUR VOLUNTEERISM, PERSONAL INTEREST, AND INITIATIVE CONTRIBUTED SIGNIFICANTLY TO THE OVERALL IMPROVEMENT AND MAINTENANCE ASSOCIATED WITH THE DAILY OPERATION OF THE FACILITY. YOUR EFFORTS ARE GREATLY APPRECIATED BY ALL TROOPS AT FOB WALTON, KANDAHAR, AFGHANISTAN IN SUPPORT OF OPERATION ENDURING FREEDOM 2010-2011.

KEVIN C. TATEM
CSM, USA
Command Sergeant Major

21-MAY 2011

GREGORY S. APPLEGATE
LTC, LG
Commanding



# CERTIFICATE OF PROMOTION

TO ALL WHO SHALL SEE THESE PRESENTS, GREETING:

*Know Ye, that reposing special trust and confidence in the fidelity and abilities of*

## DAMON J. CLAIBORNE

*I do promote him to*     **Staff Sergeant**     *in the*

# UNITED STATES ARMY

*to grade as such from the*    **First**    *day of December*
*two thousand and*   **Twelve**

You will discharge carefully and diligently the duties of the grade to which promoted and uphold the traditions and standards of the Army.

Soldiers of lesser grade are required to obey your lawful orders. Accordingly you accept responsibility for their actions. As a noncommissioned officer you are charged to observe and follow the orders and directions given by superiors acting according to the laws, articles and rules governing the discipline of the Army, and to correct conditions detrimental to the readiness thereof. In so doing, you fulfill your greatest obligation as a leader and thereby confirm your status as a Noncommissioned Officer in the United States Army.

MICHAEL E. MASLEY
COL, AG
Commanding

DA FORM 4872, JAN 2000. Previous edition is obsolete.



# CERTIFICATE OF APPRECIATION

4 NOVEMBER 2010

**IMP**

*Presented to:*

*SGT Damon Claiborne*

*In appreciation of your efforts with assisting the International Military Police in keeping Kandahar Airfield safe and secure!*

Lt. Col Steven C. Barnett, Commander
ISAF MP, Kandahar Airfield, Afghanistan

CMSgt Dean Roberts, SF Manager
ISAF MP, Kandahar Airfield, Afghanistan

000260



# DIRECTORATE OF EMERGENCY SERVICES
## DEPARTMENT OF THE ARMY SECURITY GUARDS

# CERTIFICATE OF TRAINING

## SGT DAMON J CLAIBORNE

HAS SUCCESSFULLY COMPLETED THE ACCESS CONTROL AUGMENTEE TRAINING PROGRAM, FROM THE DATE BASED ON INDIVIDUALIZED ORDERS OF ATTACHMENT, TO MARCH 30TH 2012 (58 HOURS), GIVEN AT FORT CARSON

58 HOURS CLASS CURRICULUM CONSIST OF:
- PHYSICAL SECURITY AND FORCE PROTECTION MEASURES
- PHYSICAL SECURITY THREATS AND EXPLOSIVES
- SEARCH AND SEIZURE & THE 4TH AMMENDMENT
- RULES OF EVIDENCE AND VEHICLE SEARCHES
- AUTHORITY AND JURISDICTION
- USE OF FORCE AND DEADLY FORCE
- BARRIER OPERATIONS AND ACCESS INSTALLATION ENTRY SYSTEMS
- COMMUNICATION COURTESIES, AND RADIO PROCEDURES
- MARKSMANSHIP, FIREARMS HANDLING AND MAINTAINENCE
- QUALIFICATION, WEAPON RETENTION, AND ACTIVE SHOOTING
- ASP BATON, AND RESTRAINT TRAINING
- PERSONAL ID, ENTRY CONTROL, REPORTS, FORMS AND DURESS

CARL R. BACKUS
CHIEF, SECURITY AND ACCESS CONTROL DIVISION

DA FORM 87, 1 OCT 78



MICHAEL R. KROPUSHEK
LTC, MP
DIRECTOR OF EMERGENCY SERVICES

000261



# 759th Military Police Battalion
## "Lone Sentinel"
### Presents
### CERTIFICATE OF ACHIEVEMENT
#### To



### SGT Damon L. Claiborne
### 148th Military Police Detachment

For meritorious service while assigned as part of the Gate Guard Augmentation Force for the 148th Military Police Detachment. Your performance greatly contributed to the safety and security of the Fort Carson Community. Your professionalism and dedication to duty reflects greatly upon yourself, the 148th Military Police Detachment, the 759th Military Police Battalion, and the United States Army.

24 May 2012

LARRY H. ORVIS JR.
SGM, USA
Command Sergeant Major



CHRISTOPHER A. BURNS
LTC, MP
Commanding

000262

000263



# Headquarters and Headquarters Battalion
## Eighth Army

# *Certificate of Achievement*

is awarded to

# STAFF SERGEANT DAMON CLAIBORNE
## HEADQUARTERS SUPPORT COMPANY

FOR YOUR OUTSTANDING SUPPORT AND ACHIEVEMENTS DURING ULCHI FREEDOM GUARDIAN 2013. YOUR CONTRIBUTIONS WERE INSTRUMENTAL TO THE OVERALL SUCCESS OF THE EXERCISE. THANK YOU FOR A JOB WELL DONE.

"PACIFIC VICTORS!"

"*KATCHI KAPSHIDA*"
"같이갑시다"

**REGINALD R. GOODEN**
CSM, USA
**Command Sergeant Major**

**HEATHER J. CARLISLE**
LTC, LG
**Commanding**

# DEPARTMENT OF THE ARMY



## CERTIFICATE OF ACHIEVEMENT

### AWARDED TO

### SSG CLAIBORNE, DAMON J.

HEADQUARTERS AND HEADQUARTERS COMPANY, UNITED STATES ARMY GARRISON YONGSAN

MERITORIOUS SERVICE AS A SUPPLY SERGEANT FOR RELIGIOUS SUPPORT CENTER, US ARMY GARRISON YONGSAN. SSG CLAIBORNE'S OUTSTANDING PERFORMANCE OF DUTY IS IN KEEPING WITH THE FINEST TRADITIONS OF MILITARY SERVICE AND REFLECTS GREAT CREDIT UPON HIMSELF, UNITED STATES ARMY GARRISON YONGSAN, INSTALLATION MANAGEMENT COMMAND PACIFIC AND THE UNITED STATES ARMY.

· GIVEN THIS 8th DAY OF JANUARY 2013

DANIEL L. WILLING
CSM, USA
Command Sergeant Major

MICHAEL E. MASLEY
COL, AG
Commanding

DA FORM 2442, 1 JUN 61

000264



000265

# DEPARTMENT OF THE ARMY

THIS IS TO CERTIFY THAT THE SECRETARY OF THE ARMY HAS AWARDED

## THE ARMY ACHIEVEMENT MEDAL

**TO**

STAFF SERGEANT DAMON J. CLAIRBORNE
658TH REGIONAL SUPPORT GROUP

**FOR** EXCEPTIONALLY MERITORIOUS ACHIEVEMENT WHILE SERVING AS THE MORALE AND WELFARE
COORDINATOR FOR THE WALKER LOGISTICS SUPPORT AREA DURING KEY RESOLVE 2013. YOUR
DEDICATION AND UNTIRING DUTY PERFORMANCE WERE INSTRUMENTAL IN ENSURING THE SUCCESS OF
THE 658TH REGIONAL SUPPORT COMMAND'S FIRST WAR TIME EXERCISE. YOUR OUTSTANDING
PERFORMANCE IS IN KEEPING WITH THE FINEST TRADITIONS OF THE SERVICE AND REFLETS GREAT
CREDIT UPON YOU, THE 658TH REGIONAL SUPPORT GROUP, 9TH MISSION SUPPORT COMMAND, AND THE
UNITED STATES ARMY

11 TO 23 MARCH 2013



PERMANENT ORDER #13-132-02
658TH REGIONAL SUPPORT GROUP
YONGSAN, KOREA

STACEY T. YAMADA
COL, CA
COMMANDING

DA FORM 4980-18, NOV 97

000266





**IMCOM**
SOLDIERS · FAMILIES · CIVILIANS

# Certificate of Training

### Certificate # USAGYEO-E-FY13-37

is hereby presented to

# SSG Damon J. Claiborne

to certify that they have completed to satisfaction the

## Environmental Officer Course

### Also, fulfills the EMS General Awareness & HM/HW Handler requirements

Presented by USAG Yongsan Environmental Division
IAW AR 200-1 and USFK Regulation 201-1

29 April – 3 May 2013

*[signature]*

**WILLIAM ROGERS, GS-13**
**Chief, Environmental Division**



# DEPARTMENT OF THE ARMY

### THIS IS TO CERTIFY THAT THE SECRETARY OF THE ARMY HAS AWARDED

## THE ARMY ACHIEVEMENT MEDAL

TO

**STAFF SERGEANT DAMON J. CLAIBORNE**
HEADQUARTERS SUPPORT COMPANY

FOR EXCEPTIONAL OUTSTANDING ACHIEVEMENT WHILE ASSIGNED TO THE HEADQUARTERS SUPPORT COMPANY AS A PETROLEUM SUPPLY SPECIALIST. SSG CLAIBORNE'S TECHNICAL EXPERTISE, PROFESSIONALISM, AND LEADERSHIP WERE INSTRUMENTAL IN THE UNIT'S COMBAT READINESS. HIS DEDICATION AND COMMITMENT TO MISSION ACCOMPLISHMENT REFLECTS GREAT CREDIT UPON HIMSELF, THE HEADQUARTERS SUPPORT COMPANY, HEADQUARTERS AND HEADQUARTERS BATTALION, EIGHTH ARMY AND THE UNITED STATES ARMY.

FROM 29 MARCH 2013 TO 8 FEBRUARY 2014

THIS 2ND DAY OF FEBRUARY 2014



HEATHER J. CARLISLE
LTC, LG
Commanding

PO# 035-001 4 FEBRUARY 2014
HQ, HHB-EIGHTH ARMY

Program: CC, Music Technology (CC.MUSICTECH)          E-Mail Address:        [ Redacted PII ]
Catalog: 2016   Ant Completion Date: 01/07/16

Program Status: In Progress

General education requirements for obtaining a degree or a
certificate at Clackamas Community College require establishing
residency by earning a minimum 24 credits for an Associate
degree and 12 credits for a Certificate of Completion or
Career Pathway Certificate and establishing a 2.0 GPA at CCC.

```
                         Required    Current.......... Anticipated(*)........
                                     Earned  Remaining  Additional  Remaining
INSTITUTIONAL
  Credits:     13.00      0.00       13.00   Not Met
  GPA....:     2.000                         Not Met
  COMBINED
  Credits:     50.00     80.75        0.00            0.00
  GPA....:     2.000                  Not Met
```

(*) Anticipates completion of in-progress and registered
    and planned courses

Statuses: W=Waived, C=Complete, I=In progress, N=Not started
P=Pending completion of unfinished activity

I) 1: Music Technology Core Requirements.
   > Complete the following Music Technology.
   > Core Requirements.
     I) > Complete the following Music Technology
     Credits: 9

```
MUS-107  Intro to Audio Re 2017/WI    ——  (    3)  *IP
MUS-140  Careers in Music  2017/WI    ——  (    3)  *IP
MUS-142  Intro to Electron 2017/WI    ——  (    3)  *IP
MUS-108  Intro to Audio Re              1 course needed
MUS-141  Intro to the Musi              1 course needed
MUS-143  Electronic Music              1 course needed
MUS-109  Intro to Audio Re              1 course needed
MUS-144  Electronic Music              1 course needed
N) Complete 2 credits of MUS-280.       2 credits needed
```

I) 2: Music Technology Program Basics
   > Complete 9 credits of Music Technology
   > Program Basics. An applicable list of.
   > courses can be found by clicking the
   > "Search" function below or see page 135
   > of the 2016-2017 College Catalog.
     > Complete 9 credits of Music Technology Program
     > Basics.
     MUS-101 Music Fundamental 2017/WI  ——  (    3)  *IP
                                        6 credits needed

N) 3: Communication Related Instruction

N) 4: Computation Related Instruction
   > Complete the Computation Related Instruction
   > Requirement.
     > Complete MTH-050/MTH-065 or
     > higher. An applicable list of
     > courses can be found by clicking
     > the search function below or see
     > page 82 in the 2016-2017 College Catalog.
                                                   1 course needed

N) 5: Human Relations Related Instruction
   > Complete the Human Relations Related
   > Instruction Requirement.
     > Complete COMM-100, COMM-126, COMM-140
     > or COMM-218
                                                   1 course needed

I) 6: Music Technology Program Electives
   > Complete 6 credits of Music Technology
   > Program Electives. An applicable list
   > of courses can be found by clicking the
   > "Search" function below or see page 135
   > of the 2016-2017 College Catalog.
     > Complete 6 credit of Music Technology
     > Program Electives
     MUS-147 Music, Sound & Mo 2017/WI  ——  (    1)  *PR
                                        5 credits needed

> Complete the Communication Related
> Instruction Requirement.
  > Complete WR-101 or WR-121.
                                                   1 course needed

OTHER COURSES:
```
                                         Registered  Earned
                                         Credits     Credits
SLE-0000...............  1989/FA    P       4.50        4.50  *TE
ELE-000...  Elective CTE Transfer  1989/FA  P          1.00  *TE
HR-261...............    1989/FA    P       1.00        1.00  *TE
HE-000...............    1989/PA    P       0.50        0.50  *TE
            Health Transfer
SLE-000...  Electives Transfer     1989/FA  P          1.50  *TE
PE-000...................          1989/FA  P  3.00     3.00  *TE
            Physical Education Transfer
CJA-000...............   1995/SP    A       3.75        3.75  *TE
            Criminal Justice Transfer
ELE-000...  Electives Transfer     2004/SU  P          3.00  *TE
BA-123...............    2004/SU    P       3.00        3.00  *TE
            Electives Transfer
COMM-111...............  2004/SU    B       4.00        4.00  *TE
            Public Speaking
                         Community CPR
```

```
------------------------------------------------------------------------------------------
COMM-000............ 2004/SU  B    0.50    0.50   *TE
    Communication Transfer
PSY-110............. 2006/FA  C    4.00    4.00   *TE
    Psychology: An Overview
PSY-000............. 2006/FA  C    0.50    0.50   *TE
    Psychology Transfer
COMM-000............ 2009/SU  P    1.50    1.50   *TE
    Communication Transfer
BA-251.............. 2009/SU  P    3.00    3.00   *TE
    Supervisory Management
HE-000.............. 2010/FA  P    1.50    1.50   *TE
    Health Transfer
PSY-101............. 2010/FA  P    3.00    3.00   *TE
    Human Relations
PSY-000............. 2010/FA  P    1.50    1.50   *TE
    Psychology Transfer
GIS-0000............ 2010/FA  P    1.50    1.50   *TE
    GIS CTE Transfer
BA-000.............. 2010/FA  P    3.50    3.50   *TE
    Business Transfer
BA-206.............. 2010/FA  P    4.00    4.00   *TE
    Management Fundamentals
ELE-0000............ 2015/FA  C    3.00    3.00   *TE
    Elective CTE Transfer
MUS-000............. 2015/FA  B    2.00    2.00   *TE
    Music Transfer
WR-080.............. 2015/FA  A    3.00    3.00   *TE
    Basic Writing Skills
WR-00............... 2015/FA  A    1.00    1.00   *TE
    Writing Remedial Transfer
PS-205.............. 2015/FA  C    4.00    4.00   *TE
    International Relations
MUP-174............. 2016/WI  D    1.00    1.00   *TE
    Indiv. Lessons: Voice
MUS-000............. 2016/WI  C    3.00    3.00   *TE
    Music Transfer
MUS-000............. 2016/WI  C    2.00    2.00   *TE
    Music Transfer
GEO-000............. 2016/SP  D    4.00    4.00   *TE
    Geography Transfer
PS-202.............. 2016/SP  C    4.00    4.00   *TE
    US Govt: Natl Gov Institution
COMM-219............ 2016/SP  B    4.00    4.00   *TE
    Small Group Discussion
CS-000.............. 2016/FA  C    1.00    1.00   *TE
    Computer Science Transfer
(Credits in parentheses are anticipated earned)
==========================================================
```

000269

NOTES

```
*IP    In Progress
*PR    Preregistered - The course has not yet started
*TE    Transfer Equivalency
```

CAUTION: NOT TO BE USED FOR
IDENTIFICATION PURPOSES

THIS IS AN IMPORTANT RECORD.
SAFEGUARD IT.

ANY ALTERATIONS IN SHADED AREAS
RENDER FORM VOID

## CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY
This Report Contains Information Subject to the Privacy Act of 1974, As Amended.

| 1. NAME (Last, First, Middle)<br>CLAIBORNE, DAMON JAHRON | 2. DEPARTMENT, COMPONENT AND BRANCH<br>ARMY/RA | 3. SOCIAL SECURITY NUMBER<br>Redacted PII |
|---|---|---|

| 4a. GRADE, RATE OR RANK<br>SSG | b. PAY GRADE<br>E06 | 5. DATE OF BIRTH (YYYYMMDD)<br>Redacted PII | 6. RESERVE OBLIGATION TERMINATION DATE<br>(YYYYMMDD) 00000000 |
|---|---|---|---|

| 7a. PLACE OF ENTRY INTO ACTIVE DUTY<br>LOS ANGELES, CALIFORNIA | b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known)<br>Redacted PII |
|---|---|

| 8a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND<br>0008 HQ INTEL CO HHB FC | b. STATION WHERE SEPARATED<br>JB LEWIS-MCCHORD, WA 98433-9500 |
|---|---|

| 9. COMMAND TO WHICH TRANSFERRED<br>N/A | 10. SGLI COVERAGE   NONE<br>AMOUNT: $ 400,000.00 |
|---|---|

| 11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.)<br><br>92F3O PETROLEUM SUPPLY SP - 17 YRS 1 MOS//<br>NOTHING FOLLOWS | 12. RECORD OF SERVICE | YEAR(S) | MONTH(S) | DAY(S) |
|---|---|---|---|---|
| | a. DATE ENTERED AD THIS PERIOD | 1998 | 01 | 28 |
| | b. SEPARATION DATE THIS PERIOD | 2015 | 07 | 09 |
| | c. NET ACTIVE SERVICE THIS PERIOD | 0016 | 03 | 04 |
| | d. TOTAL PRIOR ACTIVE SERVICE | 0003 | 01 | 00 |
| | e. TOTAL PRIOR INACTIVE SERVICE | 0004 | 06 | 01 |
| | f. FOREIGN SERVICE | 0006 | 06 | 28 |
| | g. SEA SERVICE | 0000 | 00 | 00 |
| | h. INITIAL ENTRY TRAINING | 0000 | 00 | 00 |
| | i. EFFECTIVE DATE OF PAY GRADE | 2012 | 12 | 01 |

| 13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service)<br>AFGHANISTAN CAMPAIGN MEDAL W/ CAMPAIGN STAR //IRAQ CAMPAIGN MEDAL W/ TWO CAMPAIGN STARS //ARMY COMMENDATION MEDAL (3RD AWARD)//ARMY ACHIEVEMENT MEDAL (7TH AWARD)//MERITORIOUS UNIT COMMENDATION//ARMY GOOD CONDUCT MEDAL (6TH AWARD)//NATIONAL DEFENSE SERVICE MEDAL W/ BRONZE SERVICE STAR//CONT IN BLOCK 18 | 14. MILITARY EDUCATION (Course title, number of weeks, and month and year completed)<br>ADVANCED LEADERS CRS, 4 WEEKS, 2009//BUS DRIVER CRS, 1 WEEK, 2006//COMBAT LIFE SAVERS CRS, 1 WEEK, 2006//COMBATIVES LEVEL 1, 1 WEEK, 2007//DEFENSE PACKAGING OF HAZARDOUS MATERIAL FOR TRANSPORTATION, 4 WEEKS, 1998//ENVIRONMENTAL COMPLIANCE OFFICER CERTIFICATION CRS, 1 WEEK,//CONT IN BLOCK 18 |
|---|---|

| 15a. COMMISSIONED THROUGH SERVICE ACADEMY | | YES | | NO |
|---|---|---|---|---|
| b. COMMISSIONED THROUGH ROTC SCHOLARSHIP (10 USC Sec. 2107b) | | YES | X | NO |
| c. ENLISTED UNDER LOAN REPAYMENT PROGRAM (10 USC Chap. 109) (If Yes, years of commitment: NA   ) | | YES | X | NO |

| 16. DAYS ACCRUED LEAVE<br>PAID 21.5 | 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | YES | NO |
|---|---|---|---|
| | | | X |

| 18. REMARKS<br>CONTINUOUS HONORABLE ACTIVE SERVICE: 19980128-20100930//IMMEDIATE REENLISTMENTS THIS PERIOD -- 20010202-20030202, 20030203-20040909, 20040910-20080624, 20080625-20100930, 20101001-20150709//EXTENSION OF SERVICE WAS AT THE REQUEST AND FOR THE CONVENIENCE OF THE GOVERNMENT//SERVED IN A DESIGNATED IMMINENT DANGER PAY AREA//SERVICE IN KOSOVO 20000710-20001124//SERVICE IN IRAQ 20030415-20040415//SERVICE IN AFGHANISTAN 20100910-20110615//MEMBER HAS COMPLETED FIRST FULL TERM OF SERVICE//CONT FROM BLOCK 13: //SOUTH WEST ASIA SERVICE MEDAL W/ THREE BRONZE SERVICE//SEE ATTACHED CONTINUATION SHEET<br>The information contained herein is subject to computer matching within the Department of Defense or with any other affected Federal or non-Federal agency for verification purposes and to determine eligibility for, and/or continued compliance with, the requirements of a Federal benefit program. |
|---|

| 19a. MAILING ADDRESS AFTER SEPARATION (Include ZIP Code)<br>Redacted PII | b. NEAREST RELATIVE (Name and address - include ZIP Code)<br>Redacted PII |
|---|---|

| 20. MEMBER COPY 6 BE SENT TO (Specify state/locality)   OR | OFFICE OF VETERANS AFFAIRS | X | YES | | NO |
|---|---|---|---|---|---|
| a. MEMBER REQUESTS COPY 3 BE SENT TO THE CENTRAL OFFICE OF THE DEPARTMENT OF VETERANS AFFAIRS (WASHINGTON, DC) | | X | YES | | NO |

| 21.a. MEMBER SIGNATURE<br>NOT AVAILABLE TO SIGN | b. DATE<br>(YYYYMMDD) | 22.a. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title, signature)<br>DESIGNED BY: MCLEMORE.LUCIAN.W.   Redacted PII<br><br>LUCIAN W MCLEMORE, GS07, LEAD HRA | b. DATE<br>(YYYYMMDD)<br>20150709 |
|---|---|---|---|

## SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only)

| 23. TYPE OF SEPARATION<br>DISCHARGE | 24. CHARACTER OF SERVICE (Include upgrades)<br>UNDER HONORABLE CONDITIONS (GENERAL) |
|---|---|

| 25. SEPARATION AUTHORITY<br>AR 635-200, PARA 5-3 | 26. SEPARATION CODE<br>JFF | 27. REENTRY CODE<br>4 |
|---|---|---|

| 28. NARRATIVE REASON FOR SEPARATION<br>SECRETARIAL AUTHORITY |
|---|

| 29. DATES OF TIME LOST DURING THIS PERIOD (YYYYMMDD)<br>UNDER 10 USC 972: 20041028-20060105 | 30. MEMBER REQUESTS COPY 4<br>(Initials) YES |
|---|---|

**DD FORM 214, AUG 2009**    PREVIOUS EDITION IS OBSOLETE.<br>GENERATED BY TRANSPROC    **MEMBER - 4**

CAUTION: NOT TO BE USED FOR
IDENTIFICATION PURPOSES

THIS IS AN IMPORTANT RECORD.
SAFEGUARD IT.

ANY ALTERATIONS IN SHADED AREAS
RENDER FORM VOID

## CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY *(Continuation Sheet)*
This Report Contains Information Subject to the Privacy Act of 1974, As Amended.

| 1. NAME *(Last, First, Middle)* | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NUMBER |
|---|---|---|
| CLAIBORNE, DAMON JAHRON | ARMY/RA | Redacted PII |

*(Specify the item number of the block continued for each entry.)* ////////////////////////////////////////////
CONT FROM BLOCK 18: STARS//GLOBAL WAR ON TERRORISM SERVICE MEDAL//KOREA DEFENSE SERVICE
MEDAL//NON COMMISSIONED OFFICER PROFESSIONAL DEVELOPMENT RIBBON (2ND AWARD)//ARMY SERVICE
RIBBON//OVERSEAS SERVICE RIBBON (6TH AWARD)//KOSOVO CAMPAIGN MEDAL W/ BRONZE SERVICE
STAR//NATO MEDAL (2ND AWARD)//KU-LIB-MDL (SAUDI ARABIA)//KUWAIT LIBERATION MEDAL
(KUWAIT)//DRIVER AND MECHANIC  BADGE W/DRIVER-WHEELED VEHICLE(S) CLASP//CONT FROM BLOCK
14: 2013//FORCE XXI BATTLE COMMAND BRIGADE AND BELOW LEADER OPERATOR NEW EQUIPMENT
TRAINING CERTIFICATION CRS, 1 WEEK, 2009//HAZARDOUS MATERIALS DRIVER TRAINING CRS, 2
WEEKS, 1998//PETROLEUM QUALITY ASSURANCE, 4 WEEKS, 1998//PETROLEUM SUPPLY SPECIALIST, 10
WEEKS, 1998//PETROLEUM VEHICLE OPERATOR, 5 WEEKS, 1998//PRIMARY LEADER DEVELOPMENT CRS, 4
WEEKS, 2004//NOTHING FOLLOWS

| 21.a. MEMBER SIGNATURE | b. DATE *(YYYYMMDD)* | 22.a. OFFICIAL AUTHORIZED TO SIGN *(Typed name, grade, title, signature)* ESIGNED BY: MCLEMORE.LUCIAN.W. Redacted PII | b. DATE *(YYYYMMDD)* |
|---|---|---|---|
| NOT AVAILABLE TO SIGN | | LUCIAN W MCLEMORE, GS07, LEAD HRA | 20150709 |

DD FORM 214C, AUG 2009          GENERATED BY TRANSPROC          MEMBER - 4

000271

CAUTION: NOT TO BE USED FOR
IDENTIFICATION PURPOSES

THIS IS AN IMPORTANT RECORD.
SAFEGUARD IT.

ANY ALTERATIONS IN SHADED AREAS
RENDER FORM VOID

## CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY
This Report Contains Information Subject to the Privacy Act of 1974, As Amended.

| 1. NAME (Last, First, Middle) CLAIBORNE, DAMON JAHRON | 2. DEPARTMENT, COMPONENT AND BRANCH ARMY/RA | 3. SOCIAL SECURITY NUMBER Redacted PII |
|---|---|---|

| 4a. GRADE, RATE OR RANK SSG | b. PAY GRADE E06 | 5. DATE OF BIRTH (YYYYMMDD) Redacted PII | 6. RESERVE OBLIGATION TERMINATION DATE (YYYYMMDD) 00000000 |
|---|---|---|---|

| 7a. PLACE OF ENTRY INTO ACTIVE DUTY LOS ANGELES, CALIFORNIA | b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known) Redacted PII |
|---|---|

| 8a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND 0008 HQ HQ HHB FC | b. STATION WHERE SEPARATED JB LEWIS-MCCHORD, WA 98433-9500 |
|---|---|

| 9. COMMAND TO WHICH TRANSFERRED N/A | 10. SGLI COVERAGE NONE AMOUNT: $ 400,000.00 |
|---|---|

| 11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.) 92F3O PETROLEUM SUPPLY SP - 17 YRS 1 MOS// NOTHING FOLLOWS | 12. RECORD OF SERVICE | YEAR(S) | MONTH(S) | DAY(S) |
|---|---|---|---|---|
| | a. DATE ENTERED AD THIS PERIOD | 1998 | 01 | 28 |
| | b. SEPARATION DATE THIS PERIOD | 2015 | 07 | 09 |
| | c. NET ACTIVE SERVICE THIS PERIOD | 0016 | 03 | 04 |
| | d. TOTAL PRIOR ACTIVE SERVICE | 0003 | 01 | 00 |
| | e. TOTAL PRIOR INACTIVE SERVICE | 0004 | 06 | 01 |
| | f. FOREIGN SERVICE | 0006 | 06 | 28 |
| | g. SEA SERVICE | 0000 | 00 | 00 |
| | h. INITIAL ENTRY TRAINING | 0000 | 00 | 00 |
| | i. EFFECTIVE DATE OF PAY GRADE | 2012 | 12 | 01 |

| 13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service) AFGHANISTAN CAMPAIGN MEDAL W/ CAMPAIGN STAR //IRAQ CAMPAIGN MEDAL W/ TWO CAMPAIGN STARS //ARMY COMMENDATION MEDAL (3RD AWARD)//ARMY ACHIEVEMENT MEDAL (7TH AWARD)//MERITORIOUS UNIT COMMENDATION//ARMY GOOD CONDUCT MEDAL (6TH AWARD)//NATIONAL DEFENSE SERVICE MEDAL W/ BRONZE SERVICE STAR//CONT IN BLOCK 18 | 14. MILITARY EDUCATION (Course title, number of weeks, and month and year completed) ADVANCED LEADERS CRS, 4 WEEKS, 2009//BUS DRIVER CRS, 1 WEEK, 2006//COMBAT LIFE SAVERS CRS, 1 WEEK, 2006//COMBATIVES LEVEL 1, 1 WEEK, 2007//DEFENSE PACKAGING OF HAZARDOUS MATERIAL FOR TRANSPORTATION, 4 WEEKS, 1998 8//ENVIRONMENTAL COMPLIANCE OFFICER CERTIFICATION CRS, 1 WEEK,//CONT IN BLOCK 18 |
|---|---|

| 15a. COMMISSIONED THROUGH SERVICE ACADEMY | | YES | | X | NO |
|---|---|---|---|---|---|
| b. COMMISSIONED THROUGH ROTC SCHOLARSHIP (10 USC Sec. 2107b) | | YES | | X | NO |
| c. ENLISTED UNDER LOAN REPAYMENT PROGRAM (10 USC Chap. 109) (If Yes, years of commitment: NA ) | | YES | | X | NO |

| 16. DAYS ACCRUED LEAVE PAID 21.5 | 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | YES | NO X |
|---|---|---|---|

| 18. REMARKS |
|---|
| CONTINUOUS HONORABLE ACTIVE SERVICE: 19980128-20100930//IMMEDIATE REENLISTMENTS THIS PERIOD -- 20010202-20030202, 20030203-20040909, 20040910-20080624, 20080625-20100930, 20101001-20150709//EXTENSION OF SERVICE WAS AT THE REQUEST AND FOR THE CONVENIENCE OF THE GOVERNMENT//SERVED IN A DESIGNATED IMMINENT DANGER PAY AREA//SERVICE IN KOSOVO 20000710-20001124//SERVICE IN IRAQ 20030415-20040415//SERVICE IN AFGHANISTAN 20100910-20110615//MEMBER HAS COMPLETED FIRST FULL TERM OF SERVICE//CONT FROM BLOCK 13: //SOUTH WEST ASIA SERVICE MEDAL W/ THREE BRONZE SERVICE//SEE ATTACHED CONTINUATION SHEET The information contained herein is subject to computer matching within the Department of Defense or with any other affected Federal or non-Federal agency for verification purposes and to determine eligibility for, and/or continued compliance with, the requirements of a Federal benefit program. |

| 19a. MAILING ADDRESS AFTER SEPARATION (Include ZIP Code) Redacted PII | b. NEAREST RELATIVE (Name and address - include ZIP Code) Redacted PII |
|---|---|

| 20. MEMBER REQUESTS COPY 6 BE SENT TO (Specify state/locality) OR OFFICE OF VETERANS AFFAIRS | X | YES | | NO |
|---|---|---|---|---|
| a. MEMBER REQUESTS COPY 3 BE SENT TO THE CENTRAL OFFICE OF THE DEPARTMENT OF VETERANS AFFAIRS (WASHINGTON, OC) | X | YES | | NO |

| 21.a. MEMBER SIGNATURE NOT AVAILABLE TO SIGN | b. DATE (YYYYMMDD) | 22.a. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title, signature) SIGNED BY: MCLEMORE.LUCIAN.W. Redacted PII LUCIAN W MCLEMORE, GS07, LEAD HRA | b. DATE (YYYYMMDD) 20150709 |
|---|---|---|---|

**DD FORM 214, AUG 2009**  PREVIOUS EDITION IS OBSOLETE. GENERATED BY TRANSPROC  **MEMBER - 1**

CAUTION: NOT TO BE USED FOR
IDENTIFICATION PURPOSES

THIS IS AN IMPORTANT RECORD.
SAFEGUARD IT.

ANY ALTERATIONS IN SHADED AREAS
RENDER FORM VOID

## CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY *(Continuation Sheet)*
This Report Contains Information Subject to the Privacy Act of 1974, As Amended.

| 1. NAME *(Last, First, Middle)* | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NUMBER |
|---|---|---|
| CLAIBORNE, DAMON JAHRON | ARMY/RA | Redacted PII |

*(Specify the item number of the block continued for each entry.)* //////////////////////////////////////////////////////

CONT FROM BLOCK 18: STARS//GLOBAL WAR ON TERRORISM SERVICE MEDAL//KOREA DEFENSE SERVICE MEDAL//NON COMMISSIONED OFFICER PROFESSIONAL DEVELOPMENT RIBBON (2ND AWARD)//ARMY SERVICE RIBBON//OVERSEAS SERVICE RIBBON (6TH AWARD)//KOSOVO CAMPAIGN MEDAL W/ BRONZE SERVICE STAR//NATO MEDAL (2ND AWARD)//KU-LIB-MDL (SAUDI ARABIA)//KUWAIT LIBERATION MEDAL (KUWAIT)//DRIVER AND MECHANIC BADGE W/DRIVER-WHEELED VEHICLE(S) CLASP//CONT FROM BLOCK 14: 2013//FORCE XXI BATTLE COMMAND BRIGADE AND BELOW LEADER OPERATOR NEW EQUIPMENT TRAINING CERTIFICATION CRS, 1 WEEK, 2009//HAZARDOUS MATERIALS DRIVER TRAINING CRS, 2 WEEKS, 1998//PETROLEUM QUALITY ASSURANCE, 4 WEEKS, 1998//PETROLEUM SUPPLY SPECIALIST, 10 WEEKS, 1998//PETROLEUM VEHICLE OPERATOR, 5 WEEKS, 1998//PRIMARY LEADER DEVELOPMENT CRS, 4 WEEKS, 2004//NOTHING FOLLOWS

| 21.a. MEMBER SIGNATURE | b. DATE *(YYYYMMDD)* | 22.a. OFFICIAL AUTHORIZED TO SIGN *(Typed name, grade, title, signature)* | b. DATE *(YYYYMMDD)* |
|---|---|---|---|
| NOT AVAILABLE TO SIGN | | ESIGNED BY: MCLEMORE.LUCIAN.W. Redacted PII  LUCIAN W MCLEMORE, GS07, LEAD HRA | 20150709 |

DD FORM 214C, AUG 2009     GENERATED BY TRANSPROC     MEMBER - 1

000273



**DEPARTMENT OF THE ARMY**
US ARMY INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, US ARMY GARRISON-YONGSAN
UNIT 15333
APO AP 96205-5333

IMYN-ZA                                                                     6 January 2014

MEMORANDUM FOR USAG-Yongsan Transition Center, Unit # 15742, APO AP 96205-5742

SUBJECT: Application for Voluntary Retirement – Claiborne, Damon J. ⬛Redacted PII⬛ SSG, 92F30

1. The request for voluntary retirement submitted by, SSG Claiborne, Damon J. is approved. SSG Claiborne has completed 20 years of active federal service.

2. The soldier must initiate Army Career and Alumni Program (ACAP) services as soon as possible. Public Law mandates that the Soldier receive the required Pre-separation Counseling (DD Form 2848) a minimum of 90 days prior to his/her separation or retirement date. If the Soldier has less than 90 days remaining prior to separation and/or retirement, the Soldier must contact the supporting local ACAP Center as soon as possible and schedule the required Pre-separation Counseling. The Soldier is not authorized to separate/retire without having a completed DD Form 2648 at the servicing Transition Center.

3. The servicing MPD will initiate appropriate transactions to reflect the effective date of retirement. Also, the personnel officer will ensure a complete copy of the application and all allied documents are forwarded for filling in the Soldier's OMPF IAW Table 2-1, AR 600-8-104.

4. The point of contact for this memorandum is Hyun Jin Kim at DSN 738–7621 or e-mail ⬛Redacted PII⬛

MICHAEL E. MASLEY
COL, AG
Commanding

000274



## DEPARTMENT OF VETERANS AFFAIRS
Portland Regional Office
100 SW Main St. FL 2
Portland OR 97204-2998

### DAMON CLAIBORNE

**VA File Number**
Redacted PII

**Represented By:**
**AMERICAN LEGION**

**Rating Decision**
**09/09/2015**

### INTRODUCTION

The records reflect that you are a veteran of the Peacetime and Gulf War Era. You served in the Army from July 20, 1989 to July 19, 1992 and from January 28, 1998 to July 9, 2015. You filed an original disability claim that was received on July 10, 2015. Based on a review of the evidence listed below, we have made the following decision(s) on your claim.

### DECISION

1. Service connection for GERD and Irritable Bowel Syndrome is granted with an evaluation of 10 percent effective July 10, 2015.

2. Service connection for migraine headaches is granted with an evaluation of 0 percent effective July 10, 2015.

3. Service connection for hemorrhoids, external or internal is granted with an evaluation of 0 percent effective July 10, 2015.

4. Service connection for hypertension is granted with an evaluation of 0 percent effective July 10, 2015.

5. Service connection for allergic rhinitis is granted with an evaluation of 0 percent effective July 10, 2015.

6. Service connection for erectile dysfunction is granted with an evaluation of 0 percent effective July 10, 2015.

7. Basic eligibility to Dependents' Educational Assistance is established from July 10, 2015.

8. Evaluation of sleep apnea syndrome, which is currently 50 percent disabling, is continued.

9. Service connection for pseudofollicular barbae is denied.

10. Service connection for bilateral ingrown toenail removal residuals is denied.

11. Service connection for bilateral tinea pedis (claimed as foot fungus) is denied.

12. Service connection for polypectomy residuals is denied.

## EVIDENCE

- Rating Decision, and all evidence contained therein, dated August 10, 2015
- VA Examinations, dated August 13, 2015

## REASONS FOR DECISION

### 1. Service connection for GERD and Irritable Bowel Syndrome.

Service connection for GERD and Irritable Bowel Syndrome has been established as directly related to military service.

An evaluation of 10 percent is assigned from July 10, 2015.

Your GERD and irritable bowel syndrome warrants a noncompensable evaluation based on:
- Alternating diarrhea and constipation
- Diarrhea
- Frequent episodes of bowel disturbance

Your GERD and irritable bowel syndrome warrants a 10 percent evaluation based on:
- Pyrosis (Heartburn and/or Reflux)
- Vomiting

Ratings under diagnostic codes 7301 to 7329, inclusive, 7331, 7342, and 7345 to 7348 inclusive may not be combined with each other. In such cases, as in yours, a single rating will be assigned under the diagnostic code that reflects the predominant disability with elevation to the next higher evaluation where the severity of the overall disability warrants such elevation. {38 CFR §4.114}

We have assigned a 10 percent evaluation for your GERD and irritable bowel syndrome based on:
- Pyrosis (Heartburn and/or Reflux)
- Vomiting

A higher evaluation of 10 percent is not warranted for your GERD and irritable bowel syndrome unless there are moderate symptoms demonstrated by frequent episodes of bowel disturbance with abdominal distress.

A higher evaluation of 30 percent is not warranted for your GERD and irritable bowel syndrome unless there is persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health.

This disability is not specifically listed in the rating schedule; therefore, it is rated analogous to a disability in which not only the functions affected, but anatomical localization and symptoms, are closely related.

## 2. Service connection for migraine headaches.

Service connection for migraine headaches has been established as directly related to military service.

A noncompensable evaluation is assigned from July 10, 2015.

We have assigned a noncompensable evaluation for your migraine headaches based on:
- A diagnosed disability with no compensable symptoms

A higher evaluation of 10 percent is not warranted unless there are characteristic prostrating attacks averaging one in 2 months over last several months.

The effective date of this grant is July 10, 2015. Service connection has been established from the day after your discharge from active duty. When a claim of service connection is received within one year of discharge from active duty, the effective date is the day after discharge.

### 3. Service connection for hemorrhoids, external or internal.

Service connection for hemorrhoids, external or internal has been established as directly related to military service.

A noncompensable evaluation is assigned from July 10, 2015.

We have assigned a noncompensable evaluation for your hemorrhoids, external or internal based on:
• A diagnosed disability with no compensable symptoms

A higher evaluation of 10 percent is not warranted for hemorrhoids unless the evidence shows large or thrombotic hemorrhoids, which are irreducible with excessive redundant tissue, evidencing frequent recurrences.

The effective date of this grant is July 10, 2015. Service connection has been established from the day after your discharge from active duty. When a claim of service connection is received within one year of discharge from active duty, the effective date is the day after discharge.

### 4. Service connection for hypertension.

Service connection for hypertension has been established as directly related to military service.

A noncompensable evaluation is assigned from July 10, 2015.

We have assigned a noncompensable evaluation for your hypertension based on:
• A diagnosed disability with no compensable symptoms

Note: In every instance where the schedule does not provide a zero percent evaluation for a diagnostic code, a zero percent evaluation shall be assigned when the requirements for a compensable evaluation are not met. {38 CFR §4.31}

A higher evaluation of 10 percent is not warranted for hypertensive vascular disease unless the evidence shows:
• A history of diastolic pressure predominantly 100 or more and there is a requirement for continuous medication for control; or,
• Diastolic pressure predominantly 100 or more; or,
• Systolic pressure predominantly 160 or more.

The effective date of this grant is July 10, 2015. Service connection has been established from the day after your discharge from active duty. When a claim of service connection is received within one year of discharge from active duty, the effective date is the day after discharge.

### 5. Service connection for allergic rhinitis.

Service connection for allergic rhinitis has been established as directly related to military service.

A noncompensable evaluation is assigned from July 10, 2015.

We have assigned a noncompensable evaluation for your allergic rhinitis based on:
• A diagnosed disability with no compensable symptoms

Note: In every instance where the schedule does not provide a zero percent evaluation for a diagnostic code, a zero percent evaluation shall be assigned when the requirements for a compensable evaluation are not met. {38 CFR §4.31}

A higher evaluation of 10 percent is not warranted for allergic rhinitis unless the evidence shows:
• rhinitis without polyps, but with greater than 50 percent obstruction of the nasal passages on both sides; or complete obstruction of the nasal passages on one side.

The effective date of this grant is July 10, 2015. Service connection has been established from the day after your discharge from active duty. When a claim of service connection is received within one year of discharge from active duty, the effective date is the day after discharge.

### 6. Service connection for erectile dysfunction.

Service connection for erectile dysfunction has been established as directly related to military service.

A noncompensable evaluation is assigned from July 10, 2015.

We have assigned a noncompensable evaluation for your erectile dysfunction based on:
• Erectile dysfunction

The examiner found that while you have erectile dysfunction, you are able to achieve an erection sufficient for penetration and ejaculation.

Note: In every instance where the schedule does not provide a zero percent evaluation for a diagnostic code, a zero percent evaluation shall be assigned when the requirements for a compensable evaluation are not met. {38 CFR §4.31}

A higher evaluation of 20 percent is not warranted for penile deformity with loss of erectile power unless the evidence shows:
• Deformity with loss of erectile power.

This disability is not specifically listed in the rating schedule; therefore, it is rated analogous to a disability in which not only the functions affected, but anatomical localization and symptoms, are closely related.

The effective date of this grant is July 10, 2015. Service connection has been established from the day after your discharge from active duty. When a claim of service connection is received within one year of discharge from active duty, the effective date is the day after discharge.

### 7. Eligibility to Dependents' Educational Assistance under 38 U.S.C. chapter 35.

Eligibility to Dependents' Educational Assistance is derived from a veteran who was discharged under other than dishonorable conditions; and, has a permanent and total service-connected disability; or a permanent and total disability was in existence at the time of death; or the veteran died as a result of a service-connected disability. Also, eligibility exists for a serviceperson who died in service. Finally, eligibility can be derived from a service member who, as a member of the armed forces on active duty, has been listed for more than 90 days as: missing in action; captured in line of duty by a hostile force; or forcibly detained or interned in line of duty by a foreign government or power.

Basic eligibility to Dependents' Education Assistance is granted as the evidence shows the veteran currently has a total service-connected disability, permanent in nature.

## 8. Evaluation of sleep apnea syndrome currently evaluated as 50 percent disabling.

The evaluation of sleep apnea syndrome is continued as 50 percent disabling.

We have assigned a 50 percent evaluation for your sleep apnea syndrome based on:
• Requires use of breathing assistance device such as continuous airway pressure (CPAP) machine

A higher evaluation of 100 percent is not warranted for sleep apnea syndromes unless the evidence shows:
• Carbon dioxide retention; or,
• Chronic respiratory failure; or,
• Cor pulmonale; or,
• Tracheostomy required.

## 9. Service connection for pseudofollicular barbae.

Service connection may be granted for a disability which began in military service or was caused by some event or experience in service.

A disability which began in service or was caused by some event in service must be considered "chronic" before service connection can be granted. Although there is a record of treatment in service for pseudofollicular barbae, no permanent residual or chronic disability subject to service connection is shown by the service medical records or demonstrated by evidence following service. Therefore, service connection for pseudofollicular barbae is denied.

## 10. Service connection for bilateral ingrown toenail removal residuals.

Service connection may be granted for a disability which began in military service or was caused by some event or experience in service.

A disability which began in service or was caused by some event in service must be considered "chronic" before service connection can be granted. Although there is a record of treatment in service for bilateral ingrown toenail removal residuals, no permanent residual or chronic disability subject to service connection is shown by the service medical records or demonstrated

by evidence following service. Therefore, service connection for bilateral ingrown toenail removal residuals is denied.

## 11. Service connection for bilateral tinea pedis (claimed as foot fungus).

Service connection may be granted for a disability which began in military service or was caused by some event or experience in service.

A disability which began in service or was caused by some event in service must be considered "chronic" before service connection can be granted. Although there is a record of treatment in service for bilateral tinea pedis (claimed as foot fungus), no permanent residual or chronic disability subject to service connection is shown by the service medical records or demonstrated by evidence following service. Therefore, service connection for bilateral tinea pedis (claimed as foot fungus) is denied.

## 12. Service connection for polypectomy residuals.

Service connection may be granted for a disability which began in military service or was caused by some event or experience in service. Service connection for polypectomy residuals is denied because the medical evidence of record fails to show that this disability has been clinically diagnosed.

## REFERENCES:

Title 38 of the Code of Federal Regulations, Pensions, Bonuses and Veterans' Relief contains the regulations of the Department of Veterans Affairs which govern entitlement to all veteran benefits. For additional information regarding applicable laws and regulations, please consult your local library, or visit us at our web site, www.va.gov.



DEPARTMENT OF VETERANS AFFAIRS
810 Vermont Ave NW
Washington, D.C. 20420

October 06, 2016

Damon Jahron Claiborne
Redacted PII

In Reply Refer to:
Redacted PII
27/eBenefits

Dear Mr. Claiborne:

This letter is a summary of benefits you currently receive from the Department of Veterans Affairs (VA). We are providing this letter to disabled Veterans to use in applying for benefits such as state or local property or vehicle tax relief, civil service preference, to obtain housing entitlements, free or reduced state park annual memberships, or any other program or entitlement in which verification of VA benefits is required. Please safeguard this important document. This letter is considered an official record of your VA entitlement.

Our records contain the following information:

## Personal Claim Information

Your VA claim number is: Redacted PII

You are the Veteran.

## Military Information

Your most recent, verified periods of service (up to three) include:

| Branch of Service | Character of Service | Entered Active Duty | Released/Discharged |
|---|---|---|---|
| Army | Honorable | July 20, 1989 | July 19, 1992 |
| Army | Under Honorable Conditions | January 28, 1998 | July 09, 2015 |

(There may be additional periods of service not listed above.)

## VA Benefit Information

| | |
|---|---|
| You have one or more service-connected disabilities: | Yes |
| Your combined service-connected evaluation is: | 100% |
| Your current monthly award amount is: | $3590.2 |
| The effective date of the last change to your current award was: | September 22, 2016 |
| You are considered to be totally and permanently disabled due solely to your service-connected disabilities: | Yes |

https://eauth.va.gov/ebenefit...

File Number: Redacted PII
CLAIBORNE, DAMON J

## You Can Expect Payment

Generally, payments begin the first day of the month following the effective date. When applicable, a retroactive payment, minus any withholdings, will be issued. Thereafter, payment will be made at the beginning of each month for the prior month. For example, benefits due for May are paid on or about June 1.

**Your payment will be directed to the financial institution and account number that you specified. To confirm when your payment was deposited, please contact your financial institution.**

> *If this account is no longer open,*
> *please notify us immediately.*

## What We Decided

We made the following decision(s):

| Issue/Contention | Percent (%) Assigned | Effective Date |
|---|---|---|
| hemorrhoids, external or internal | 0% | Jul 10, 2015 |

| Explanation |
|---|
| • We have assigned a noncompensable evaluation for your hemorrhoids, external or internal based on: • A diagnosed disability with no compensable symptoms |
| • A higher evaluation of 10 percent is not warranted for hemorrhoids unless the evidence shows large or thrombotic hemorrhoids, which are irreducible with excessive redundant tissue, evidencing frequent recurrences. |

| Issue/Contention | Percent (%) Assigned | Effective Date |
|---|---|---|
| allergic rhinitis | 0% | Jul 10, 2015 |

| Explanation |
|---|
| • We have assigned a noncompensable evaluation for your allergic rhinitis based on: • A diagnosed disability with no compensable symptoms |
| • Note: In every instance where the schedule does not provide a zero percent evaluation for a diagnostic code, a zero percent evaluation shall be assigned when the requirements for a compensable evaluation are not met. {38 CFR §4.31} |
| • A higher evaluation of 10 percent is not warranted for allergic rhinitis unless the evidence shows: • rhinitis without polyps, but with greater than 50 percent obstruction of the nasal passages on both sides; or complete obstruction of the nasal passages on one side. |

File Number: [Redacted PII]
CLAIBORNE, DAMON J

| Issue/Contention | Percent (%) Assigned | Effective Date |
|---|---|---|
| hypertension | 0% | Jul 10, 2015 |
| Explanation | | |

- We have assigned a noncompensable evaluation for your hypertension based on: • A diagnosed disability with no compensable symptoms
- Note: In every instance where the schedule does not provide a zero percent evaluation for a diagnostic code, a zero percent evaluation shall be assigned when the requirements for a compensable evaluation are not met. {38 CFR §4.31}
- A higher evaluation of 10 percent is not warranted for hypertensive vascular disease unless the evidence shows: • A history of diastolic pressure predominantly 100 or more and there is a requirement for continuous medication for control; or, • Diastolic pressure predominantly 100 or more; or, • Systolic pressure predominantly 160 or more.

| Issue/Contention | Percent (%) Assigned | Effective Date |
|---|---|---|
| erectile dysfunction | 0% | Jul 10, 2015 |
| Explanation | | |

- We have assigned a noncompensable evaluation for your erectile dysfunction based on: • Erectile dysfunction
- Note: In every instance where the schedule does not provide a zero percent evaluation for a diagnostic code, a zero percent evaluation shall be assigned when the requirements for a compensable evaluation are not met. {38 CFR §4.31}
- A higher evaluation of 20 percent is not warranted for penile deformity with loss of erectile power unless the evidence shows: • Deformity with loss of erectile power.
- The examiner found that while you have erectile dysfunction, you are able to achieve an erection sufficient for penetration and ejaculation.

| Issue/Contention | Percent (%) Assigned | Effective Date |
|---|---|---|
| migraine headaches | 0% | Jul 10, 2015 |
| Explanation | | |

- We have assigned a noncompensable evaluation for your migraine headaches based on: • A diagnosed disability with no compensable symptoms
- A higher evaluation of 10 percent is not warranted unless there are characteristic prostrating attacks averaging one in 2 months over last several months.

| Issue/Contention | Percent (%) Assigned | Effective Date |
|---|---|---|
| GERD and Irritable Bowel Syndrome | 10% | Jul 10, 2015 |
| Explanation | | |

- Your GERD and irritable bowel syndrome warrants a noncompensable evaluation based on: • Alternating diarrhea and constipation • Diarrhea • Frequent episodes of bowel

Page 4

File Number: [Redacted PII]
CLAIBORNE, DAMON J

| Explanation |
| --- |
| disturbanceYour GERD and irritable bowel syndrome warrants a 10 percent evaluation based on: • Pyrosis (Heartburn and/or Reflux) • VomitingRatings under diagnostic codes 7301 to 7329, inclusive, 7331, 7342, and 7345 to 7348 inclusive may not be combined with each other. In such cases, as in yours, a single rating will be assigned under the diagnostic code that reflects the predominant disability with elevation to the next higher evaluation where the severity of the overall disability warrants such elevation. {38 CFR §4.114}We have assigned a 10 percent evaluation for your GERD and irritable bowel syndrome based on: • Pyrosis (Heartburn and/or Reflux) • VomitingA higher evaluation of 10 percent is not warranted for your GERD and irritable bowel syndrome unless there are moderate symptoms demonstrated by frequent episodes of bowel disturbance with abdominal distress.A higher evaluation of 30 percent is not warranted for your GERD and irritable bowel syndrome unless there is persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health. |

No examination will be scheduled in the future for your permanent and total disability/ disabilities.

| Issue/Contention | Effective Date |
| --- | --- |
| Dependents' Educational Assistance (Chapter 35) | Jul 10, 2015 |
| Explanation | |
| • Eligibility to Dependents' Educational Assistance is derived from a veteran who was discharged under other than dishonorable conditions; and, has a permanent and total service-connected disability; or a permanent and total disability was in existence at the time of death; or the veteran died as a result of a service-connected disability. Also, eligibility exists for a serviceperson who died in service. Finally, eligibility can be derived from a service member who, as a member of the armed forces on active duty, has been listed for more than 90 days as: missing in action; captured in line of duty by a hostile force; or forcibly detained or interned in line of duty by a foreign government or power. | |
| • Basic eligibility to Dependents' Education Assistance is granted as the evidence shows the veteran currently has a total service-connected disability, permanent in nature. | |

| Issue/Contention | Percent (%) Continued |
| --- | --- |
| sleep apnea syndrome | 50% |
| Explanation | |
| • The evaluation of sleep apnea syndrome is continued as 50 percent disabling. | |
| • We have assigned a 50 percent evaluation for your sleep apnea syndrome based on: • Requires use of breathing assistance device such as continuous airway pressure (CPAP) machine . | |

File Number: Redacted PII
CLAIBORNE, DAMON J

- A higher evaluation of 100 percent is not warranted for sleep apnea syndromes unless the evidence shows: • Carbon dioxide retention; or, • Chronic respiratory failure; or, • Cor pulmonale; or, • Tracheostomy required.

| Issue/Contention |
|---|
| bilateral ingrown toenail removal residuals |
| **Explanation** |
| • There is a record of treatment in service for bilateral ingrown toenail removal residuals, but the evidence does not show a chronic disability during service nor after active duty. Therefore, service connection is denied. |

| Issue/Contention |
|---|
| polypectomy residuals |
| **Explanation** |
| • Service connection may be granted for a disability which began in military service or was caused by some event or experience in service. Service connection for polypectomy residuals is denied because the medical evidence of record fails to show that this disability has been clinically diagnosed. |

| Issue/Contention |
|---|
| bilateral tinea pedis (claimed as foot fungus) |
| **Explanation** |
| • There is a record of treatment in service for bilateral tinea pedis (claimed as foot fungus), but the evidence does not show a chronic disability during service nor after active duty. Therefore, service connection is denied. |

| Issue/Contention |
|---|
| pseudofollicular barbae |
| **Explanation** |
| • There is a record of treatment in service for pseudofollicular barbae, but the evidence does not show a chronic disability during service nor after active duty. Therefore, service connection is denied. |

| ACTIVE DUTY | | | |
| --- | --- | --- | --- |
| EOD | RAD | BRANCH | CHARACTER OF DISCHARGE |
| 07/20/1989 | 07/19/1992 | Army | Honorable |
| 01/28/1998 | 07/09/2015 | Army | Under Honorable Conditions |

| LEGACY CODES | | | |
| --- | --- | --- | --- |
| ADD'L<br>SVC CODE | COMBAT<br>CODE | SPECIAL<br>PROV CDE | FUTURE EXAM<br>DATE |
| | 1 | | None |

**JURISDICTION:** Original Disability Claim Received 07/10/2015

**ASSOCIATED CLAIM(s):** 020: New/Reopen; 07/10/2015

## SUBJECT TO COMPENSATION (1.SC)

6847      SLEEP APNEA SYNDROME
Service Connected, Gulf War, Incurred
Static Disability
50% from 07/10/2015

9411      PTSD WITH PERSISTENT DEPRESSIVE DISORDER [PTSD - Non-Combat/
Fear - Easing Standard] [PTSD - Personal Trauma/Sexual Trauma/Assault]
Service Connected, Gulf War, Incurred
Static Disability
50% from 07/10/2015

8610      RADICULOPATHY, C6-7 LEFT ARM ASSOCIATED WITH DEGENERATIVE
ARTHRITIS, CERVICAL SPINE, AND INTERVERTEBRAL DSC
SYNDROME
Service Connected, Gulf War, Secondary
Static Disability
40% from 07/10/2015

5201-5003      RIGHT SHOULDER ROTATOR CUFF TENDONITIS
ACROMIOCLAVICULAR JOINT OSTEOARTHRITIS
Service Connected, Gulf War, Incurred
Static Disability
10% from 07/10/2015

5237      CHRONIC MECHANICAL LUMBAR STRAIN
Service Connected, Gulf War, Incurred
Static Disability
10% from 07/10/2015

5242        DEGENERATIVE ARTHRITIS, CERVICAL SPINE, AND INTERVERTEBRAL DSC SYNDROME
Service Connected, Gulf War, Incurred
Static Disability
10% from 07/10/2015

5260        PATELLOFEMORAL PAIN SYNDROME, LEFT KNEE
Service Connected, Gulf War, Incurred
Static Disability
10% from 07/10/2015

5279        PES PLANUS, METATARSALGIA, HALLUX VALGUS AND PLANTAR FASCIAL FIBROMATOSIS BILATERAL FEET
Service Connected, Peacetime, Incurred
Static Disability
10% from 07/10/2015

6260        TINNITUS
Service Connected, Peacetime, Incurred
Static Disability
10% from 07/10/2015

7399-7346     GERD AND IRRITABLE BOWEL SYNDROME
Service Connected, Peacetime, Incurred
Static Disability
10% from 07/10/2015

5215        GANGLION CYST LEFT WRIST
Service Connected, Gulf War, Incurred
Static Disability
0% from 07/10/2015

5271        RIGHT ANKLE LATERAL COLLATERAL LIGAMENT SPRAIN
Service Connected, Gulf War, Incurred
Static Disability
0% from 07/10/2015

6099-6025     DRY EYE SYNDROME WITH EPIPHORA OU.
Service Connected, Gulf War, Incurred
Static Disability
0% from 07/10/2015

6522        ALLERGIC RHINITIS
Service Connected, Peacetime, Incurred
Static Disability
0% from 07/10/2015

7101      HYPERTENSION
Service Connected, Peacetime, Incurred
Static Disability
0% from 07/10/2015

7336      HEMORRHOIDS, EXTERNAL OR INTERNAL
Service Connected, Peacetime, Incurred
Static Disability
0% from 07/10/2015

7599-7522      ERECTILE DYSFUNCTION
Service Connected, Peacetime, Incurred
Static Disability
0% from 07/10/2015

8100      MIGRAINE HEADACHES
Service Connected, Peacetime, Incurred
Static Disability
0% from 07/10/2015

*COMBINED EVALUATION FOR COMPENSATION :*

100% from 07/10/2015 (Bilateral factor of 5.6 Percent for diagnostic codes 5003, 8610, 5260, 5279)

**NOT SERVICE CONNECTED/NOT SUBJECT TO COMPENSATION (8.NSC Peacetime, Gulf War)**

5229      CONTUSION TO PIPJ, SECOND FINGER RIGHT HAND
Not Service Connected, Not Incurred/Caused by Service
Original Date of Denial: 08/10/2015

7344      POLYPECTOMY RESIDUALS
Not Service Connected, No Diagnosis

7820      BILATERAL TINEA PEDIS (CLAIMED AS FOOT FUNGUS)
Not Service Connected, Not Incurred/Caused by Service

7899-7813      PSEUDOFOLLICULAR BARBAE
Not Service Connected, Not Incurred/Caused by Service

7899-7819      BILATERAL INGROWN TOENAIL REMOVAL RESIDUALS
Not Service Connected, Not Incurred/Caused by Service

**ANCILLARY DECISIONS**

Basic Eligibility under 38 USC Ch 35 from 07/10/2015

| NAME OF VETERAN DAMON CLAIBORNE | VA FILE NUMBER Redacted PII | SOCIAL SECURITY NR. Redacted PII | POA AMERICAN LEGION | COPY TO |

vSR: Please solicit the following claims from the veteran: Psoriasis, residual scars from acne, cold weather injury right great toe and exercise induced asthma

I certify that I have reviewed and electronically signed this decision D.Becker RVSR



**DEPARTMENT OF THE ARMY**
ARMY REVIEW BOARDS AGENCY
251 18TH STREET SOUTH, SUITE 385
ARLINGTON, VA 22202-3531

August 9, 2016

Case Management Division
AR20150018688, Claiborne, Damon J.

Mr. Damon J. Claiborne
Redacted PII

Dear Mr. Claiborne:

    We are pleased to inform you that your records have been corrected in accordance with the findings of the Army Discharge Review Board.

    Accordingly, your DD Form 214 (Certificate of Release or Discharge from Active Duty) has been corrected. Enclosed is a copy of your corrected DD Form 214.

    If you have any questions or concerns regarding your correction please contact Mr. Walter Avery at (703) 545-5643 or Redacted PII

                  Sincerely,

                  Jeffrey C. Lieb
                  Director, Case Management Division

Enclosure

**000292**

CAUTION: NOT TO BE USED FOR
IDENTIFICATION PURPOSES

THIS IS AN IMPORTANT RECORD.
SAFEGUARD IT.

ANY ALTERATIONS IN SHADED AREAS
RENDER FORM VOID

## CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

This Report Contains Information Subject to the Privacy Act of 1974, As Amended.

| 1. NAME (Last, First, Middle) CLAIBORNE, DAMON AAHRON | 2. DEPARTMENT, COMPONENT AND BRANCH ARMY/RA | 3. SOCIAL SECURITY NUMBER Redacted PII |
|---|---|---|

| 4a. GRADE, RATE OR RANK SSG | b. PAY GRADE E06 | 5. DATE OF BIRTH (YYYYMMDD) Redacted PII | 6. RESERVE OBLIGATION TERMINATION DATE (YYYYMMDD) 00000000 |
|---|---|---|---|

| 7a. PLACE OF ENTRY INTO ACTIVE DUTY LOS ANGELES, CALIFORNIA | b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known) Redacted PII |
|---|---|

| 8a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND 0008 HQ INTEL CO HHB FC | b. STATION WHERE SEPARATED JB LEWIS-MCCHORD, WA 98433-9500 |
|---|---|

| 9. COMMAND TO WHICH TRANSFERRED N/A | 10. SGLI COVERAGE __ NONE AMOUNT: $400,000.00 |
|---|---|

| 11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.) 92F3O PETROLEUM SUPPLY SP - 17 YRS 1 MOS// NOTHING FOLLOWS | 12. RECORD OF SERVICE | YEAR(S) | MONTH(S) | DAY(S) |
|---|---|---|---|---|
| | a. DATE ENTERED AD THIS PERIOD | 1998 | 01 | 28 |
| | b. SEPARATION DATE THIS PERIOD | 2015 | 07 | 09 |
| | c. NET ACTIVE SERVICE THIS PERIOD | 0011 | 03 | 04 |
| | d. TOTAL PRIOR ACTIVE SERVICE | 0005 | 01 | 00 |
| | e. TOTAL PRIOR INACTIVE SERVICE | 0004 | 06 | 01 |
| | f. FOREIGN SERVICE | 0006 | 06 | 28 |
| | g. SEA SERVICE | 0000 | 00 | 00 |
| | h. INITIAL ENTRY TRAINING | 0000 | 00 | 00 |
| | i. EFFECTIVE DATE OF PAY GRADE | 2012 | 12 | 01 |

| 13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service) AFGHANISTAN CAMPAIGN MEDAL W/ CAMPAIGN STAR //IRAQ CAMPAIGN MEDAL W/ TWO CAMPAIGN STARS //ARMY COMMENDATION MEDAL (3RD AWARD)//ARMY ACHIEVEMENT MEDAL (7TH AWARD)//MERITORIOUS UNIT COMMENDATION//ARMY GOOD CONDUCT MEDAL (6TH AWARD)//NATIONAL DEFENSE SERVICE MEDAL W/ BRONZE SERVICE STAR//CONT IN BLOCK 18 | 14. MILITARY EDUCATION (Course title, number of weeks, and months and year completed) ADVANCED LEADERS CRS, 4 WEEKS, 2009//BUS DRIVER CRS, 1 WEEK, 2006//COMBAT LIFE SAVERS CRS, 1 WEEK, 2006//COMBATIVES LEVEL 1, 1 WEEK, 2007//DEFENSE PACKAGING OF HAZARDOUS MATERIAL FOR TRANSPORTATION, 4 WEEKS, 1998 8//ENVIRONMENTAL COMPLIANCE OFFICER CERTIFICATION CRS, 1 WEEK,//CONT IN BLOCK 18 |
|---|---|

| 15a. COMMISSIONED THROUGH SERVICE ACADEMY | YES | X | NO |
|---|---|---|---|
| b. COMMISSIONED THROUGH ROTC SCHOLARSHIP (10 USC Sec. 2107b) | YES | X | NO |
| c. ENLISTED UNDER LOAN REPAYMENT PROGRAM (10 USC Chap. 109) (If Yes, years of commitment: NA ) | YES | X | NO |

| 16. DAYS ACCRUED LEAVE PAID 21.5 | 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | YES | NO X |
|---|---|---|---|

| 18. REMARKS CONTINUOUS HONORABLE ACTIVE SERVICE: 19980128-20100930//IMMEDIATE REENLISTMENTS THIS PERIOD -- 20010202-20030202, 20030203-20040909, 20040910-20080624, 20080625-20100930, 20101001-20150709//EXTENSION OF SERVICE WAS AT THE REQUEST AND FOR THE CONVENIENCE OF THE GOVERNMENT//SERVED IN A DESIGNATED IMMINENT DANGER PAY AREA//SERVICE IN KOSOVO 20000710-20001124//SERVICE IN IRAQ 20030415-20040415//SERVICE IN AFGHANISTAN 20100910-20110615//MEMBER HAS COMPLETED FIRST FULL TERM OF SERVICE//CONT FROM BLOCK 13: //SOUTH WEST ASIA SERVICE MEDAL W/ THREE BRONZE SERVICE//SEE ATTACHED CONTINUATION SHEET |
|---|

Information contained herein is subject to computer matching within the Department of Defense or with any other affected Federal or non-Federal agency for verification purposes and to determine eligibility for, and/or continued compliance with, the requirements of a Federal benefit program.

| 19a. MAILING ADDRESS AFTER SEPARATION (Include ZIP Code) Redacted PII | b. NEAREST RELATIVE (Name and address - include ZIP Code) Redacted PII |
|---|---|

| 20. MEMBER REQUESTS COPY 6 BE SENT TO (Specify state/locality) OR ___ OFFICE OF VETERANS AFFAIRS | X | YES | NO |
|---|---|---|---|
| a. MEMBER REQUESTS COPY 3 BE SENT TO THE CENTRAL OFFICE OF THE DEPARTMENT OF VETERANS AFFAIRS (WASHINGTON, DC) | X | YES | NO |

| 21.a. MEMBER SIGNATURE NOT AVAILABLE TO SIGN | b. DATE (YYYYMMDD) | 22.a. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title, signature) SIGNED BY: FOSKEY YVONNE J. Redacted PII YVONNE J FOSKEY, GS12, HUMAN RESOURCE SPECIA | b. DATE (YYYYMMDD) 20160809 |
|---|---|---|---|

| SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only) |
|---|

| 23. TYPE OF SEPARATION DISCHARGE | 24. CHARACTER OF SERVICE (Include upgrades) HONORABLE |
|---|---|

| 25. SEPARATION AUTHORITY AR 635-200, PARA 5-3 | 26. SEPARATION CODE JFF | 27. REENTRY CODE 4 |
|---|---|---|

| 28. NARRATIVE REASON FOR SEPARATION SECRETARIAL AUTHORITY |
|---|

| 29. DATES OF TIME LOST DURING THIS PERIOD (YYYYMMDD) UNDER 10 USC 972: 20041028-20060105 | 30. MEMBER REQUESTS COPY 4 (Initials) |
|---|---|

CAUTION: NOT TO BE USED FOR
IDENTIFICATION PURPOSES

THIS IS AN IMPORTANT RECORD.
SAFEGUARD IT.

ANY ALTERATIONS IN SHADED AREAS
RENDER FORM VOID

## CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY *(Continuation Sheet)*
This Report Contains Information Subject to the Privacy Act of 1974, As Amended.

| 1. NAME *(Last, First, Middle)*<br>CLAIBORNE, DAMON JAHRON | 2. DEPARTMENT, COMPONENT AND BRANCH<br>ARMY/RA | 3. SOCIAL SECURITY NUMBER<br>Redacted PII |
|---|---|---|

*(Specify the item number of the block continued for each entry.)* ///////////////////////////////////////////////////////////
CONT FROM BLOCK 18: STARS//GLOBAL WAR ON TERRORISM SERVICE MEDAL//KOREA DEFENSE SERVICE
MEDAL//NON COMMISSIONED OFFICER PROFESSIONAL DEVELOPMENT RIBBON (2ND AWARD)//ARMY SERVICE
RIBBON//OVERSEAS SERVICE RIBBON (6TH AWARD)//KOSOVO CAMPAIGN MEDAL W/ BRONZE SERVICE
STAR//NATO MEDAL (2ND AWARD)//KU-LIB-MDL (SAUDI ARABIA)//KUWAIT LIBERATION MEDAL
(KUWAIT)//DRIVER AND MECHANIC  BADGE W/DRIVER-WHEELED VEHICLE(S) CLASP//CONT FROM BLOCK
14: 2013//FORCE XXI BATTLE COMMAND BRIGADE AND BELOW LEADER OPERATOR NEW EQUIPMENT
TRAINING CERTIFICATION CRS, 1 WEEK, 2009//HAZARDOUS MATERIALS DRIVER TRAINING CRS, 2
WEEKS, 1998//PETROLEUM QUALITY ASSURANCE, 4 WEEKS, 1998//PETROLEUM SUPPLY SPECIALIST, 10
WEEKS, 1998//PETROLEUM VEHICLE OPERATOR, 5 WEEKS, 1998//PRIMARY LEADER DEVELOPMENT CRS, 4
WEEKS, 2004//SERVICE CHARACTERIZATION UPGRADED ON 20160727 PER ADRB PROCEEDINGS
AR20150018688 FOLLOWING APPLICATION DATED 20151020//NOTHING FOLLOWS

| 21.a. MEMBER SIGNATURE<br><br>NOT AVAILABLE TO SIGN | b. DATE<br>*(YYYYMMDD)* | 22.a. OFFICIAL AUTHORIZED TO SIGN *(Typed name, grade, title, signature)*<br>ESIGNED BY: FOSKEY-YVONNE J.  Redacted PII<br>YVONNE J FOSKEY, GS12, HUMAN RESOURCE SPECIA | b. DATE<br>*(YYYYMMDD)*<br>20160809 |
|---|---|---|---|

000294

CAUTION: NOT TO BE USED FOR
IDENTIFICATION PURPOSES

THIS IS AN IMPORTANT RECORD.
SAFEGUARD IT.

ANY ALTERATIONS IN SHADED AREAS
RENDER FORM VOID

## CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY
This Report Contains Information Subject to the Privacy Act of 1974, As Amended.

| 1. NAME (Last, First, Middle) CLAIBORNE, DAMON JAHRON | 2. DEPARTMENT, COMPONENT AND BRANCH ARMY/RA | 3. SOCIAL SECURITY NUMBER Redacted PII |
|---|---|---|

| 4a. GRADE, RATE OR RANK SSG | b. PAY GRADE E06 | 5. DATE OF BIRTH (YYYYMMDD) Redacted PII | 6. RESERVE OBLIGATION TERMINATION DATE (YYYYMMDD) 00000000 |
|---|---|---|---|

| 7a. PLACE OF ENTRY INTO ACTIVE DUTY LOS ANGELES, CALIFORNIA | b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known) Redacted PII |
|---|---|

| 8a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND 0008 HQ HQ INTEL CO HHB FC | b. STATION WHERE SEPARATED JB LEWIS-MCCHORD, WA 98433-0500 |
|---|---|

| 9. COMMAND TO WHICH TRANSFERRED N/A | 10. SGLI COVERAGE AMOUNT: $ 400,000.00 | NONE |
|---|---|---|

| 11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.) 92F3O PETROLEUM SUPPLY SP - 17 YRS 1 MOS// NOTHING FOLLOWS | 12. RECORD OF SERVICE | YEAR(S) | MONTH(S) | DAY(S) |
|---|---|---|---|---|
| | a. DATE ENTERED AD THIS PERIOD | 1998 | 01 | 28 |
| | b. SEPARATION DATE THIS PERIOD | 2015 | 07 | 09 |
| | c. NET ACTIVE SERVICE THIS PERIOD | 0016 | 03 | 04 |
| | d. TOTAL PRIOR ACTIVE SERVICE | 0003 | 01 | 00 |
| | e. TOTAL PRIOR INACTIVE SERVICE | 0004 | 06 | 01 |
| | f. FOREIGN SERVICE | 0006 | 06 | 28 |
| | g. SEA SERVICE | 0000 | 00 | 00 |
| | h. INITIAL ENTRY TRAINING | 0000 | 00 | 00 |
| | i. EFFECTIVE DATE OF PAY GRADE | 2012 | 12 | 01 |

| 13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service) AFGHANISTAN CAMPAIGN MEDAL W/ CAMPAIGN STAR //IRAQ CAMPAIGN MEDAL W/ TWO CAMPAIGN STARS //ARMY COMMENDATION MEDAL (3RD AWARD)//ARMY ACHIEVEMENT MEDAL (7TH AWARD)//MERITORIOUS UNIT COMMENDATION//ARMY GOOD CONDUCT MEDAL (6TH AWARD)//NATIONAL DEFENSE SERVICE MEDAL W/ BRONZE SERVICE STAR//CONT IN BLOCK 18 | 14. MILITARY EDUCATION (Course title, number of weeks, and month and year completed) ADVANCED LEADERS CRS, 4 WEEKS, 2009//BUS DRIVER CRS, 1 WEEK, 2006//COMBAT LIFE SAVERS CRS, 1 WEEK, 2006//COMBATIVES LEVEL 1, 1 WEEK, 2007//DEFENSE PACKAGING OF HAZARDOUS MATERIAL FOR TRANSPORTATION, 4 WEEKS, 1998 8//ENVIRONMENTAL COMPLIANCE OFFICER CERTIFICATION CRS, 1 WEEK,//CONT IN BLOCK 18 |
|---|---|

| 15a. COMMISSIONED THROUGH SERVICE ACADEMY | | YES | | NO X |
|---|---|---|---|---|
| b. COMMISSIONED THROUGH ROTC SCHOLARSHIP (10 USC Sec. 2107b) | | YES | | NO X |
| c. ENLISTED UNDER LOAN REPAYMENT PROGRAM (10 USC Chap. 109) (If Yes, years of commitment: NA ) | | YES | | NO X |

| 16. DAYS ACCRUED LEAVE PAID 21.5 | 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | YES | NO X |
|---|---|---|---|

| 18. REMARKS |
|---|
| CONTINUOUS HONORABLE ACTIVE SERVICE: 19980128-20100930//IMMEDIATE REENLISTMENTS THIS PERIOD -- 20010202-20030202, 20030203-20040909, 20040910-20080624, 20080625-20100930, 20101001-20150709//EXTENSION OF SERVICE WAS AT THE REQUEST AND FOR THE CONVENIENCE OF THE GOVERNMENT//SERVED IN A DESIGNATED IMMINENT DANGER PAY AREA//SERVICE IN KOSOVO 20000710-20001124//SERVICE IN IRAQ 20030415-20040415//SERVICE IN AFGHANISTAN 20100910-20110615//MEMBER HAS COMPLETED FIRST FULL TERM OF SERVICE//CONT FROM BLOCK 13: //SOUTH WEST ASIA SERVICE MEDAL W/ THREE BRONZE SERVICE//SEE ATTACHED CONTINUATION SHEET |
| The information contained herein is subject to computer matching within the Department of Defense or with any other affected Federal or non-Federal agency for verification purposes and to determine eligibility for, and/or continued compliance with, the requirements of a Federal benefit program. |

| 19a. MAILING ADDRESS AFTER SEPARATION (Include ZIP Code) Redacted PII | b. NEAREST RELATIVE (Name and address - include ZIP Code) Redacted PII |
|---|---|

| 20. MEMBER REQUESTS COPY 6 BE SENT TO (Specify state/locality) OR OFFICE OF VETERANS AFFAIRS | X | YES | | NO |
|---|---|---|---|---|
| a. MEMBER REQUESTS COPY 3 BE SENT TO THE CENTRAL OFFICE OF THE DEPARTMENT OF VETERANS AFFAIRS (WASHINGTON, DC) | X | YES | | NO |

| 21.a. MEMBER SIGNATURE NOT AVAILABLE TO SIGN | b. DATE (YYYYMMDD) | 22.a. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title, signature) ESIGNED BY: MCLEMORE.LUCIAN.W. Redacted PII LUCIAN W MCLEMORE, GS07, LEAD HRA | b. DATE (YYYYMMDD) 20150709 |
|---|---|---|---|

## SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only)

| 23. TYPE OF SEPARATION DISCHARGE | 24. CHARACTER OF SERVICE (Include upgrades) UNDER HONORABLE CONDITIONS (GENERAL) |
|---|---|

| 25. SEPARATION AUTHORITY AR 635-200, PARA 5-3 | 26. SEPARATION CODE JFF | 27. REENTRY CODE 4 |
|---|---|---|

| 28. NARRATIVE REASON FOR SEPARATION SECRETARIAL AUTHORITY |
|---|

| 29. DATES OF TIME LOST DURING THIS PERIOD (YYYYMMDD) UNDER 10 USC 972: 20041028-20060105 | 30. MEMBER REQUESTS COPY 4 (Initials) YES |
|---|---|

000295

CAUTION: NOT TO BE USED FOR
IDENTIFICATION PURPOSES

THIS IS AN IMPORTANT RECORD.
SAFEGUARD IT.

ANY ALTERATIONS IN SHADED AREAS
RENDER FORM VOID

## CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY (Continuation Sheet)
This Report Contains Information Subject to the Privacy Act of 1974, As Amended.

| 1. NAME (Last, First, Middle) | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NUMBER |
|---|---|---|
| CLAIBORNE, DAMON JAHRON | ARMY/RA | Redacted PII |

(Specify the item number of the block continued for each entry.) ////////////////////////////////////////////////////
CONT FROM BLOCK 18: STARS//GLOBAL WAR ON TERRORISM SERVICE MEDAL//KOREA DEFENSE SERVICE
MEDAL//NON COMMISSIONED OFFICER PROFESSIONAL DEVELOPMENT RIBBON (2ND AWARD)//ARMY SERVICE
RIBBON//OVERSEAS SERVICE RIBBON (6TH AWARD)//KOSOVO CAMPAIGN MEDAL W/ BRONZE SERVICE
STAR//NATO MEDAL (2ND AWARD)//KU-LIB-MDL (SAUDI ARABIA)//KUWAIT LIBERATION MEDAL
(KUWAIT)//DRIVER AND MECHANIC BADGE W/DRIVER-WHEELED VEHICLE(S) CLASP//CONT FROM BLOCK
14: 2013//FORCE XXI BATTLE COMMAND BRIGADE AND BELOW LEADER OPERATOR NEW EQUIPMENT
TRAINING CERTIFICATION CRS, 1 WEEK, 2009//HAZARDOUS MATERIALS DRIVER TRAINING CRS, 2
WEEKS, 1998//PETROLEUM QUALITY ASSURANCE, 4 WEEKS, 1998//PETROLEUM SUPPLY SPECIALIST, 10
WEEKS, 1998//PETROLEUM VEHICLE OPERATOR, 5 WEEKS, 1998//PRIMARY LEADER DEVELOPMENT CRS, 4
WEEKS, 2004//NOTHING FOLLOWS

VOID

| 21.a. MEMBER SIGNATURE | b. DATE (YYYYMMDD) | 22.a. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title, signature) | b. DATE (YYYYMMDD) |
|---|---|---|---|
| NOT AVAILABLE TO SIGN | | ESIGNED BY: MCLEMORE.LUCIAN.W. Redacted PII  LUCIAN W MCLEMORE, GS07, LEAD HRA | 20150709 |

**DD FORM 214C, AUG 2009**

GENERATED BY TRANSPROCC

**SERVICE - 2**

000296

# Honorable Discharge



### from the Armed Forces of the United States of America

*This is to certify that*

DAMON J. CLAIBORNE, STAFF SERGEANT, REGULAR ARMY

*was Honorably Discharged from the*

# United States Army

*on the* 9TH *day of* JULY 2015 *This certificate is awarded
as a testimonial of Honest and Faithful Service*

*Francine C. Blackmon*

FRANCINE C. BLACKMON
Deputy Assistant Secretary of the Army
(Review Boards)

DD FORM NO. 256A 1 MAY 50



AR20150018688, Claiborne, Damon J.

JUL 27 2016

Mr. Damon J. Claiborne
Redacted PII

Dear Mr. Claiborne:

The Army Discharge Review Board (ADRB) reviewed your case and voted to grant partial relief as outlined in the enclosed Case Report and Directive.

The Army Review Boards Agency will correct your records and mail you the corrected documents in 150 days or sooner. If after that time you have not received the notification or documents, you may write to: Congressional, Liaison and Inquiries via email at army.arbainquiry@mail.mil.

If you believe that the decision in your case is unclear, not responsive to the issues raised, or does not otherwise agree with the requirements of the Department of Defense (DoD) Instruction 1332.28, you may submit a complaint in accordance with enclosure E5 of that instruction. The complaint procedure does not permit you to challenge the decision, but is designed solely to ensure that the decisional documents meet the requirements for clarity and responsiveness. You may view a copy of DoD Instruction 13332.28 on the Army Review Boards Agency website – http://arba.army.pentagon.mil/adrb.htm.

In the interest of clarity, please note that although the ADRB summarized possible avenues of relief in the "Discussion of Facts" section in its report, this should not be confused with the ADRB's actual findings. The ADRB made no finding about your retirement status. It did, however, find that the reason for your discharge currently reflected on your DD 214 is proper and that no corrective action was warranted in that regard. The ADRB lacks authority to change a discharge to a retirement.

You may apply to the ABCMR using DD Form 149 (enclosed). You may also apply online at http://actsonline.army.mil. If you choose to apply to the ABCMR you must do so within three years from the date of this letter.

Sincerely,

Francine C. Blackmon
Deputy Assistant Secretary of the Army
(Review Boards)



June 06, 2016

AR20150018688, Claiborne, Damon J.

Mr. Damon J. Claiborne
Redacted PII

Dear Mr. Claiborne:

The Army Discharge Review Board reviewed your case and voted to grant partial relief as outlined in the enclosed Case Report and Directive.

The Army Review Boards Agency will correct your records and mail you the corrected documents in 150 days or sooner. If after that time you have not received the notification or documents, you may write to: Congressional, Liaison and Inquiries via email at army.arbainquiry@mail.mil.

You may reapply to the Army Discharge Review Board for a personal appearance hearing using a DD Form 293 or you may apply to the Army Board for Correction of Military Records for a correction of records using DD Form 149 (forms enclosed). You may also apply online at http://actsonline.army.mil If you choose to apply to the Army Board for Correction of Military Records you must do so within three years from the date of this letter. If you choose to reapply to the Army Discharge Review Board, you must do so within 15 years from the date of your discharge.

If you believe that the decision in your case is unclear, not responsive to the issues raised, or does not otherwise agree with the requirements of the Department of Defense (DoD) Instruction 1332.28, you may submit a complaint in accordance with enclosure E5 of that instruction. The complaint procedure does not permit you to challenge the decision, but is designed solely to ensure that the decisional document meets the requirements for clarity and responsiveness. You may view a copy of DoD Instruction 1332.28 on the Army Review Boards Agency website – http://arba.army.pentagon.mil/adrb.htm

Sincerely,

Francine C. Blackmon
Deputy Assistant Secretary of the Army
(Review Boards)

Enclosures

Printed on ♲ Recycled Paper

**000299**



**DEPARTMENT OF THE ARMY**
ARMY DISCHARGE REVIEW BOARD
251 18TH STREET SOUTH, SUITE 385
ARLINGTON, VA 22202-3531

June 06, 2016

AR20150018688, Claiborne, Damon J.

Mr. John N. Maher, Esquire
Maher Legal Services P.C.
17101 South 71st Avenue
Tinley Park IL 60477

Dear Mr. Maher:

I am writing to you regarding the application of Mr. Damon J. Claiborne for a discharge upgrade from the U.S. Army.

After carefully reviewing the application, military records and all other available evidence, the Army Discharge Review Board determined that relief was warranted. Accordingly, the Board voted to grant relief as described in the enclosed Case Report and Directive. Please be advised, if the applicant was a U.S. Army National Guard Soldier at the time of discharge, the Adjutant General of the respective state/territory is the final approving authority.

Thank you for your interest in this matter.

Sincerely,

Gregory V. Stokes
Colonel, US Army
President

Enclosures

Printed on Recycled Paper

1. **APPLICANT'S NAME:** Mr. Damon J. Claiborne

    a. **Application Date:** 20 October 2015

    b. **Date Received:** 2 November 2015

    c. **Counsel:** Mr. John N. Maher, Esquire, Mahler Legal Services P.C.,
        17101 South 71st Avenue, Tinley Park, Illinois 60477

2. **REQUEST, ISSUES, BOARD TYPE, AND DECISION:** The applicant requests an upgrade of his general, under honorable conditions discharge to honorable and change the narrative reason to retirement. The applicant states through counsel, in effect, Army Regulation 635-200, Chapter 3-8 states the characterization of service will be determined solely by the Soldier's current enlistment to which the separation pertains. His current enlistment involves only honorable behavior. His misconduct occurred in 2006, which was used to characterize the period of service under review.

In a records review conducted at Arlington, VA on 27 April 2016, and by a 5-0 vote, the Board determined the applicant's characterization was improper. The applicant was not properly notified as to the specific factors in the applicant's service record, from his current period of enlistment, that warranted a characterization of general, under honorable conditions by the intermediate commander in accordance with AR 635-200, para 2-2d(5). Accordingly, the Board voted to grant full relief in the form of an upgrade of characterization of service to honorable. However, the Board determined that the reason for discharge was proper and equitable and voted not to change it.

Per the Board's Medical Officer, based on the information available for review at the time the applicant's file and Active Duty electronic medical records revealed no medical or behavioral health conditions which could be seen as mitigating for the misconduct, child molestation.

(*Board member names available upon request.*)

3. **DISCHARGE DETAILS:**

    a. **Reason/Authority/Codes/Characterization:** Secretarial Authority / AR 635-200, Paragraph 5-3 / JFF / RE-4 / General, Under Honorable Conditions

    b. **Date of Discharge:** 9 July 2015

    c. **Separation Facts:**

        (1) **Date of Notification of Intent to Separate:** 16 July 2014

        (2) **Basis for Separation:** The applicant was informed of the following reasons for his discharge; the applicant had sexual contact with a child under the age of 14 years. He was convicted of child molestation second degree in Kitsap County, Washington and sentenced to 15 months of confinement.

On 7 November 2013, the Secretary of the Army issued Army Directive 2013-21 (Initiating Separation Proceedings and Prohibiting Overseas Assignment for Soldiers Convicted of Sex Offenses), which in pertinent part states sex offenses are serious crimes. Notwithstanding the provisions of any other Army Regulation, directive, policy or other like guidance published by any

**000301**

Army official or organization, this directive establishes new policy to ensure the decision to retain any Soldier convicted of a sex offense is fully informed and in the Army's best interest. In addition, this directive establishes Army policy prohibiting the overseas assignment or reassignment of any Soldier convicted of a sex offense.

Commanders will initiate the administrative separation of any Soldier convicted of a sex offense, as defined by references, whose conviction did not result in a punitive discharge or dismissal. This policy applies to all personnel currently in the Army, regardless of when the conviction for a sex offense occurred and regardless of component of membership and current status in the component.

   **(3) Recommended Characterization:** On 25 April 2006, the senior commander reviewed the proposed action and recommended approval with a general, under honorable conditions discharge. He also recommended suspending the execution of the separation for a period of 12 months, as this Soldier is a highly deserving Soldier who should be given a probation period to show successful rehabilitation.

On 16 July 2014, the unit commander recommended an honorable discharge and he subsequently recommended the applicant be retained in service.

The intermediate commander reviewed the proposed action and recommended the applicant be retained; and if the discharge is approved he recommended approval of the separation with an honorable discharge.

On 14 August 2014, the senior intermediate commander reviewed the proposed action and recommended approval with a general, under honorable conditions discharge.

On 27 August 2014, the senior commander reviewed the proposed action and recommended approval with a general, under honorable conditions discharge.

   **(4) Legal Consultation Date:** 18 July 2014, the applicant consulted with legal counsel

   **(5) Administrative Separation Board:** None

   **(6) Separation Decision Date/Characterization:** On 10 May 2006, the separation authority directed the applicant's discharge with a characterization of service of general, under honorable conditions. He also directed suspending the execution of the separation for a period of 12 months. He successfully served during this suspension, and he was retained in service and allowed to reenlist in 2008 and 2010.

The Secretary of the Army issued Army Directive 2013-21, which states Commanders will follow the current policy for initiating administrative separation proceedings pursuant to the references as appropriate. If the separation authority approves retention, he or she will initiate an action for the exercise of Secretarial plenary separation authority under paragraph 14-3, or paragraph 5-3 of reference as appropriate.

On 16 June 2015, the Assistant Secretary of the Army (Manpower and Reserve Affairs), directed the applicant's discharge with a characterization of service of general, under honorable conditions, with a Separation Program Designator (SPD) Code of JFF and a Reentry Eligibility (RE) code of 4.

000302

**4. SERVICE DETAILS:**

    **a. Date/Period of Enlistment:** 1 October 2010 / 5 years

    **b. Age at Enlistment/Education/GT Score:** 39 years / HS Graduate / 116

    **c. Highest Grade Achieved/MOS/Total Service:** SSG / E-6 / 92F30, Petroleum Supply Specialist / 24 years, 3 months and 6 days

    **d. Prior Service/Characterizations:** USAR (21 February 1989-19 July 1989) / NA
                                                   RA (20 July 1989-19 July 1992) / HD
                                                   USAR (20 July 1992-16 November 1993) / NA
                                                   ARNG (17 November 1993-20 February 1997) / HD
                                                          (Break in Service)
                                                   RA (28 January 1998-1 February 2001) / HD
                                                   RA (2 February 2001-2 February 2003) / HD
                                                   RA (3 February 2003-9 September 2004) / HD
                                                   RA (10 September 2004-24 June 2008) / HD
                                                   RA (25 June 2008-30 September 2010) / HD

    **e. Overseas Service/Combat Service:** Germany, Kosovo (10 July 2000-24 November 2000), Korea x2 / SWA / Iraq (15 April 2003-15 April 2004) / Afghanistan (10 September 2010-15 June 2011)

    **f. Awards and Decorations:** ARCOM-3, AAM-7, AGCM-7, NDSM-W/BS, SWASM-W/3BSS, KCM-W/BSS, ICM-W/2CS, ACM-W/CS, GWOTEM, GWOTSM, KDSM, NOPDR-2, ASR, OSR-6, NATO MDL-2, KU LIB MDL (SA), KU LIB MDL (KU)

    **g. Performance Ratings:** 5 March 2010-8 February 2015, Fully Capable

    **h. Disciplinary Action(s)/Evidentiary Record:** A review of the applicant's electronic medical record (EMR) in AHLTA revealed there is not a diagnosis of PTSD or TBI. There are other behavioral health disorders listed and are noted in the EMR.

    **i. Lost Time:** The applicant was confined by civilian authorities for 432 days (28 October 2004-5 January 2006)

    **j. Diagnosed PTSD/TBI/Behavioral Health:** None

**5. APPLICANT-PROVIDED EVIDENCE:** DD Form 293; DD Form 214 (two pages); two letters, from applicant's attorney; and the Assistant Secretary of the Army's Discharge packet (fifteen pages).

**6. POST SERVICE ACCOMPLISHMENTS:** None provided by the applicant.

**7. REGULATORY CITATION(s):** Army Regulation 635-200, Paragraph 5-3 states separation under this paragraph is the prerogative of the Secretary of the Army. Secretarial plenary separation authority is exercised sparingly and seldom delegated. Ordinarily, it is used when no other provision of this regulation applies, and early separation is clearly in the best interest of the Army.
Separations under this paragraph are effective only if approved in writing by the Secretary of the Army or the Secretary's approved designee as announced in updated memorandums.

000303

Secretarial separation authority is normally exercised on a case-by-case basis but may be used for a specific class or category of Soldiers. When used in the latter circumstance, it is announced by special HQDA directive may, if appropriate, delegate blanket separation authority to field commanders for the class category of Soldiers concerned.

Separation under this paragraph may be voluntary or involuntary. When involuntary separation proceedings are initiated, the notification procedure (see chap 2, sec I) will be used; however, the provision for requesting an administrative board (see para 2–2d) is not applicable.

**8. DISCUSSION OF FACT(S):** The applicant requests an upgrade of his general, under honorable conditions discharge to honorable and change the narrative reason to retirement. The applicant's record of service, the issues and documents submitted with his application were carefully reviewed.

Army Directive 2013-21, states commanders will follow the current policy for initiating administrative separation proceedings pursuant to the references as appropriate. If the separation authority approves retention, he or she will initiate an action for the exercise of Secretarial plenary separation authority under paragraph 14-3, or paragraph 5-3 of reference as appropriate.

If an enlisted Soldier who has been convicted of a sex offense already has been subject to an administrative separation action under the appropriate references for the conviction and has been retained as a result of the proceeding, the separation authority will initiate a separation action under the Secretarial plenary authority, as detailed in paragraph 3a(2) of the referenced directive.

The applicant seeks relief contending, Army Regulation 635-200, Chapter 3-8 states the characterization of service will be determined solely by the Soldier's current enlistment to which the separation pertains; his current enlistment involves only honorable behavior; his misconduct occurred in 2006, which was used to characterize the period of service under review. AR 635-200, paragraph 3-8, limitations on characterization of service states, "characterization of service will be determined solely by the Soldier's military record which includes the Soldier's behavior and performance of duty during the current enlistment or period of service to which the separation pertains, plus any extensions prescribed by law or regulation or effected with the consent of the Soldier."

Additionally, paragraph 5-1b provides, "No Soldier will be awarded a character of service under honorable conditions under this chapter unless the Soldier is notified of the specific factors in his/her service record which warrant such a characterization, using the notification procedure."

The notification memorandum of the separation file stated the company commander was recommending an honorable characterization. Although it listed the reason for the proposed action his conviction during a previous enlistment, it failed to list specific factors in his service record from his current period of enlistment which warranted a characterization of service of under honorable conditions. Therefore, based on regulatory guidance in paragraph 5-1b, AR 635-200, the characterization of service is improper and mandates award of an honorable characterization of service.

The applicant requested a change to the narrative reason for discharge to retirement. 10 USC, section 3914 states an enlisted Soldier who has at least twenty years active federal service "may" be retired upon his request. However UP of 10 USC 3917, a regular enlisted Soldier is not guaranteed retirement ("shall be retired upon his request") until he or she reaches thirty

4

years active federal service. The applicant had attained twenty years active federal service, but had not attained thirty years active federal service so he was not guaranteed retirement as a statutory right.

Therefore, the Army legally suspended his approved retirement and separated him under provision (UP) of paragraph 5-3, AR 635-200. However, the ADRB can determine whether this disposition was equitable, and could change the reason for separation to retirement if it finds his separation was inequitable.

The discharge was not consistent with the procedural and substantive requirements of the regulation, was not within the discretion of the separation authority, and the applicant was not provided full administrative due process.

**9. BOARD DETERMINATION:** In a records review conducted at Arlington, VA on 27 April 2016, and by a 5-0 vote, the Board determined the applicant's characterization was improper. The applicant was not properly notified as to the specific factors in the applicant's service record, from his current period of enlistment, that warranted a characterization of general, under honorable conditions by the intermediate commander in accordance with AR 635-200, para 2-2d(5). Accordingly, the Board voted to grant full relief in the form of an upgrade of characterization of service to honorable. However, the Board determined that the reason for discharge was proper and equitable and voted not to change it.

Per the Board's Medical Officer, based on the information available for review at the time the applicant's file and Active Duty electronic medical records revealed no medical or behavioral health conditions which could be seen as mitigating for the misconduct, child molestation.

**10. BOARD ACTION DIRECTED:**

| | | |
|---|---|---|
| a. | **Issue a New DD-214:** | Yes |
| b. | **Change Characterization to:** | Honorable |
| c. | **Change Reason to:** | No Change |
| d. | **Change SPD/RE Code to:** | No Change |
| e. | **Restore Grade to:** | No Change |

**AUTHENTICATING OFFICIAL:**

**COL, US ARMY**
**Presiding Officer**
**Army Discharge Review Board**

Legend:
AWOL - Absent Without Leave
BCD - Bad Conduct Discharge
CG - Company Grade Article 15
CID - Criminal Investigation Division
ELS – Entry Level Status
FG - Field Grade Article 15

GD - General Discharge
HS - High School
HD - Honorable Discharge
MP – Military Police
IADT – Initial Active Duty Training
NA - Not applicable

NIF - Not in File
OAD - Ordered to Active Duty
OMPF - Official Military Personnel File
PTSD – Post-Traumatic Stress Disorder
RE - Reentry
SCM - Summary Court Martial

SPCM - Special Court Martial
SPD - Separation Program Designator
TBI – Traumatic Brain Injury
UNC - Uncharacterized Discharge
UOTHC - Under Other Than Honorable Conditions

000305

# APPLICATION FOR THE REVIEW OF DISCHARGE FROM THE ARMED FORCES OF THE UNITED STATES

*(Please read Privacy Act Statement and Instructions on Pages 3 and 4 BEFORE completing this application.)*

OMB No. 0704-0004
OMB approval expires
Dec 31, 2017

The public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to the Department of Defense, Washington Headquarters Services, Executive Services Division, Directives Division, 4800 Mark Center Drive, Alexandria, VA 22350-(0704-0004). Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.
**PLEASE DO NOT RETURN YOUR FORM TO THE ABOVE ADDRESS. RETURN COMPLETED FORM TO THE APPROPRIATE ADDRESS ON BACK OF THIS PAGE.**

## 1. APPLICANT DATA *(The person whose discharge is to be reviewed).* PLEASE PRINT OR TYPE INFORMATION.

**a. BRANCH OF SERVICE** *(X one)* — X ARMY | MARINE CORPS | NAVY | AIR FORCE | COAST GUARD

**b. NAME** *(Last, First, Middle Initial)*
CLAIBORNE, DAMON J

**c. GRADE/RANK AT DISCHARGE**
E-6 / SSG

**d. SOCIAL SECURITY NUMBER**
Redacted PII

**e. CURRENT MAILING ADDRESS OF APPLICANT OR PERSON NAMED IN ITEM 11**
*(Forward notification of any change in address.)*
Redacted PII

**f. TELEPHONE NUMBER** *(Include Area Code)*
Redacted PII

**g. E-MAIL**
Redacted PII

**h. FAX NUMBER** *(Include Area Code)*

## 2. DATE OF DISCHARGE OR SEPARATION
*(YYYYMMDD)* (If date is more than 15 years ago, submit a DD Form 149.)
20150709

## 3. UNIT AND LOCATION AT DISCHARGE OR SEPARATION
A. CO, HHB I CORPS
FORT LEWIS, WA

## 4. DISCHARGE CHARACTERIZATION RECEIVED
*(X one)*
| | |
|---|---|
| | HONORABLE |
| | GENERAL/UNDER HONORABLE CONDITIONS |
| | UNDER OTHER THAN HONORABLE CONDITIONS |
| | BAD CONDUCT *(Special Court-Martial only)* |
| | UNCHARACTERIZED |
| | OTHER *(Explain)* |

## 5. BOARD ACTION REQUESTED *(X all that apply)*
| | |
|---|---|
| X | CHANGE TO HONORABLE |
| | CHANGE TO GENERAL/UNDER HONORABLE CONDITIONS |
| | CHANGE TO UNCHARACTERIZED *(Not applicable to Air Force or service members with over 6 months of service)* |
| X | CHANGE NARRATIVE REASON FOR SEPARATION: RETIREMENT |

## 6. ISSUES: WHY AN UPGRADE OR CHANGE IS REQUESTED AND JUSTIFICATION FOR THE REQUEST *(Continue in Item 13. See Instructions on Page 3.)*

ARMY REGULATION 635-200, CHAPTER 3-8 STATES THAT CHARACTERIZATION OF SERVICE WILL BE DETERMINED SOLELY BY THE SOLDIER'S CURRENT ENLISTMENT TO WHICH THE SEPARATION PERTAINS. MY CURRENT ENLISTMENT INVOLVED ONLY HONORABLE BEHAVIOR. THE SECRETARY USED CONDUCT WHICH OCCURRED IN 2006 TO CHARACTERIZE THIS PERIOD OF SERVICE.

## 7. *(X if applicable)* AN APPLICATION WAS PREVIOUSLY SUBMITTED ON *(YYYYMMDD)* N/A
AND THIS FORM IS SUBMITTED TO ADD ADDITIONAL ISSUES, JUSTIFICATION, OR EVIDENCE.

## 8. IN SUPPORT OF THIS APPLICATION, THE FOLLOWING ATTACHED DOCUMENTS ARE SUBMITTED AS EVIDENCE: *(Continue in Item 14. If military documents or medical records are relevant to your case, please send copies.)*

DD214 DATED 20150709; 16 JUNE 2015 MEMORANDUM FROM SECRETARY; 2015 CHAPTER ENDORSEMENTS; RESPONSES TO SEPARATION NOTIFICATION DATED 16 & 25 JUNE 2015.

## 9. TYPE OF REVIEW REQUESTED *(X one)*

| | |
|---|---|
| X | CONDUCT A RECORD REVIEW OF MY DISCHARGE BASED ON MY MILITARY PERSONNEL FILE AND ANY ADDITIONAL DOCUMENTATION SUBMITTED BY I AND/OR *(counsel/representative)* WILL NOT APPEAR BEFORE THE BOARD. |
| | I AND/OR *(counsel/representative)* WISH TO APPEAR AT A HEARING AT NO EXPENSE TO THE GOVERNMENT BEFORE THE BOARD IN THE WASHINGTON, METROPOLITAN AREA. |
| | I AND/OR *(counsel/representative)* WISH TO APPEAR AT A HEARING AT NO EXPENSE TO THE GOVERNMENT BEFORE A TRAVELING PANEL CLOSEST TO *(enter city and state)* ___ *(NOTE: The Naval and Coast Guard Discharge Review Boards do not have traveling pa...* |

## 10.a. COUNSEL/REPRESENTATIVE *(If any)* NAME *(Last, First, Middle Initial)* AND ADDRESS *(See Item 10 of the instructions about counsel/representative.)*

MATHER, JOHN N.
17101 S. 71ST AVENUE
TINLEY PARK, ILLINOIS 60477

**b. TELEPHONE NUMBER** *(Include Area Code)*
(708) 468-8155

**c. E-MAIL**
JOHN.MATHER@MATHER.LEGALSERVICES.COM

**d. FAX NUMBER** *(Include Area Code)*
(708) 781-9693

## 11. APPLICANT MUST SIGN IN ITEM 12.a. BELOW. If the record in question is that of a deceased or incompetent person, LEGAL PROOF OF DEATH OR INCOMPETENCY MUST ACCOMPANY THE APPLICATION. If the application is signed by other than the applicant, indicate the name *(print)* JOHN N. MATHER and relationship by marking a box below.

| SPOUSE | WIDOW | WIDOWER | NEXT OF KIN | X LEGAL REPRESENTATIVE | OTHER *(Specify)* |
|---|---|---|---|---|---|

## 12. CERTIFICATION. I make the foregoing statements, as part of my claim, with full knowledge of the penalties involved for willfully making a false statement or claim. *(U.S. Code, Title 18, Sections 287 and 1001 provide that an individual shall be fined under this title or imprisoned not more than 5 years, or both.)*

**a. SIGNATURE - REQUIRED** *(Applicant or person in Item 11 above)*
*(signature)*

**b. DATE SIGNED - REQUIRED** *(YYYYMMDD)*
20151020

**CASE NUMBER**
*(Do not write in this space)*

**DD FORM 293, AUG 2015**   PREVIOUS EDITION IS OBSOLETE.

Page 1 of 4 Pages
Adobe Designer 9.0

AR2015001860
Claiborne, Damon J
Redacted PII
Receipt Date: 2015/11/02
2015002222
Claiborne, Damon J
Assigned To: Redacted PII
Receipt Date: 2015/11/02

# GENERAL DISCHARGE INFORMATION

CAUTION: NOT TO BE USED FOR
IDENTIFICATION PURPOSES

THIS IS AN IMPORTANT RECORD.
SAFEGUARD IT.

ANY ALTERATIONS IN SHADED AREAS
RENDER FORM VOID

# CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

This Report Contains Information Subject to the Privacy Act of 1974, As Amended.

| 1. NAME (Last, First, Middle) | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NUMBER |
|---|---|---|
| CLAIBORNE, DAMON JAHRON | ARMY/RA | Redacted PII |

| 4a. GRADE, RATE OR RANK | b. PAY GRADE | 5. DATE OF BIRTH (YYYYMMDD) | 6. RESERVE OBLIGATION TERMINATION DATE (YYYYMMDD) |
|---|---|---|---|
| SSG | E06 | Redacted PII | 00000000 |

| 7a. PLACE OF ENTRY INTO ACTIVE DUTY | b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known) |
|---|---|
| LOS ANGELES, CALIFORNIA | Redacted PII |

| 8a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | b. STATION WHERE SEPARATED |
|---|---|
| 0008 HQ INTEL CO HHB FC | JB LEWIS-MCCHORD, WA 98433-9500 |

| 9. COMMAND TO WHICH TRANSFERRED | 10. SGLI COVERAGE | NONE |
|---|---|---|
| N/A | AMOUNT: $ 400,000.00 | |

| 11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.) | 12. RECORD OF SERVICE | YEAR(S) | MONTH(S) | DAY(S) |
|---|---|---|---|---|
| 92F3O PETROLEUM SUPPLY SP - 17 YRS 1 MOS// NOTHING FOLLOWS | a. DATE ENTERED AT THIS PERIOD | 1998 | 01 | 28 |
| | b. SEPARATION DATE THIS PERIOD | 2015 | 07 | 09 |
| | c. NET ACTIVE SERVICE THIS PERIOD | 0016 | 03 | 04 |
| | d. TOTAL PRIOR ACTIVE SERVICE | 0003 | 01 | 00 |
| | e. TOTAL PRIOR INACTIVE SERVICE | 0004 | 06 | 01 |
| | f. FOREIGN SERVICE | 0006 | 06 | 28 |
| | g. SEA SERVICE | 0000 | 00 | 00 |
| | h. INITIAL ENTRY TRAINING | 0000 | 00 | 00 |
| | i. EFFECTIVE DATE OF PAY GRADE | 2012 | 12 | 01 |

| 13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service) | 14. MILITARY EDUCATION (Course title, number of weeks, and month and year completed) |
|---|---|
| AFGHANISTAN CAMPAIGN MEDAL W/ CAMPAIGN STAR //IRAQ CAMPAIGN MEDAL W/ TWO CAMPAIGN STARS //ARMY COMMENDATION MEDAL (3RD AWARD)//ARMY ACHIEVEMENT MEDAL (7TH AWARD)//MERITORIOUS UNIT COMMENDATION//ARMY GOOD CONDUCT MEDAL (6TH AWARD)//NATIONAL DEFENSE SERVICE MEDAL W/ BRONZE SERVICE STAR//CONT IN BLOCK 18 | ADVANCED LEADERS CRS, 4 WEEKS, 2009//BUS DRIVER CRS, 1 WEEK, 2006//COMBAT LIFE SAVERS CRS, 1 WEEK, 2006//COMBATIVES LEVEL 1, 1 WEEK, 2007//DEFENSE PACKAGING OF HAZARDOUS MATERIAL FOR TRANSPORTATION, 4 WEEKS, 1998 8//ENVIRONMENTAL COMPLIANCE OFFICER CERTIFICATION CRS, 1 WEEK,//CONT IN BLOCK 18 |

| | YES | NO |
|---|---|---|
| 15a. COMMISSIONED THROUGH SERVICE ACADEMY | | X |
| b. COMMISSIONED THROUGH ROTC SCHOLARSHIP (10 USC Sec. 2107b) | | X |
| c. ENLISTED UNDER LOAN REPAYMENT PROGRAM (10 USC Chap. 109) (If Yes, years of commitment: NA ) | | X |

| 16. DAYS ACCRUED LEAVE | 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | YES | NO |
|---|---|---|---|
| PAID 21.5 | | | X |

| 18. REMARKS |
|---|
| CONTINUOUS HONORABLE ACTIVE SERVICE: 19980128-20100930//IMMEDIATE REENLISTMENTS THIS PERIOD -- 20010202-20030202, 20030203-20040909, 20040910-20080624, 20080625-20100930, 20101001-20150709//EXTENSION OF SERVICE WAS AT THE REQUEST AND FOR THE CONVENIENCE OF THE GOVERNMENT//SERVED IN A DESIGNATED IMMINENT DANGER PAY AREA//SERVICE IN KOSOVO 20000710-20001124//SERVICE IN IRAQ 20030415-20040415//SERVICE IN AFGHANISTAN 20100910-20110615//MEMBER HAS COMPLETED FIRST FULL TERM OF SERVICE//CONT FROM BLOCK 13: //SOUTH WEST ASIA SERVICE MEDAL W/ THREE BRONZE SERVICE//SEE ATTACHED CONTINUATION SHEET |
| The information contained herein is subject to computer matching within the Department of Defense or with any other affected Federal or non-Federal agency for verification purposes and to determine eligibility for, and/or continued compliance with, the requirements of a Federal benefit program. |

| 19a. MAILING ADDRESS AFTER SEPARATION (Include ZIP Code) | b. NEAREST RELATIVE (Name and address - include ZIP Code) |
|---|---|
| Redacted PII | Redacted PII |

| 20. MEMBER REQUESTS COPY 6 BE SENT TO (Specify state/locality) | OR | OFFICE OF VETERANS AFFAIRS | X | YES | | NO |
|---|---|---|---|---|---|---|
| a. MEMBER REQUESTS COPY 3 BE SENT TO THE CENTRAL OFFICE OF THE DEPARTMENT OF VETERANS AFFAIRS (WASHINGTON, DC) | | | X | YES | | NO |

| 21.a. MEMBER SIGNATURE | b. DATE (YYYYMMDD) | 22.a. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title, signature) | b. DATE (YYYYMMDD) |
|---|---|---|---|
| NOT AVAILABLE TO SIGN | | ESIGNED BY: MCLEMORE.LUCIAN.W.  Redacted PII | |
| | | LUCIAN W MCLEMORE, GS07, LEAD HRA | 20150709 |

## SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only)

| 23. TYPE OF SEPARATION | 24. CHARACTER OF SERVICE (Include upgrades) |
|---|---|
| DISCHARGE | UNDER HONORABLE CONDITIONS (GENERAL) |

| 25. SEPARATION AUTHORITY | 26. SEPARATION CODE | 27. REENTRY CODE |
|---|---|---|
| AR 635-200, PARA 5-3 | JFF | 4 |

| 28. NARRATIVE REASON FOR SEPARATION |
|---|
| SECRETARIAL AUTHORITY |

| 29. DATES OF TIME LOST DURING THIS PERIOD (YYYYMMDD) | 30. MEMBER REQUESTS COPY 4 (Initials) |
|---|---|
| UNDER 10 USC 972: 20041028-20060105 | YES |

| DD FORM 214, AUG 2009 | PREVIOUS EDITION IS OBSOLETE. GENERATED BY TRANSPROC | MEMBER - 4 |
|---|---|---|

000308

CAUTION: NOT TO BE USED FOR
IDENTIFICATION PURPOSES

THIS IS AN IMPORTANT RECORD.
SAFEGUARD IT.

ANY ALTERATIONS IN SHADED AREAS
RENDER FORM VOID

## CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY *(Continuation Sheet)*
This Report Contains Information Subject to the Privacy Act of 1974, As Amended.

| 1. NAME *(Last, First, Middle)*<br>CLAIBORNE, DAMON JAHRON | 2. DEPARTMENT, COMPONENT AND BRANCH<br>ARMY/RA | 3. SOCIAL SECURITY NUMBER<br>Redacted PII |
|---|---|---|

*(Specify the item number of the block continued for each entry.)* //////////////////////////////////////////////////
CONT FROM BLOCK 18: STARS//GLOBAL WAR ON TERRORISM SERVICE MEDAL//KOREA DEFENSE SERVICE
MEDAL//NON COMMISSIONED OFFICER PROFESSIONAL DEVELOPMENT RIBBON (2ND AWARD)//ARMY SERVICE
RIBBON//OVERSEAS SERVICE RIBBON (6TH AWARD)//KOSOVO CAMPAIGN MEDAL W/ BRONZE SERVICE
STAR//NATO MEDAL (2ND AWARD)//KU-LIB-MDL (SAUDI ARABIA)//KUWAIT LIBERATION MEDAL
(KUWAIT)//DRIVER AND MECHANIC  BADGE W/DRIVER-WHEELED VEHICLE(S) CLASP//CONT FROM BLOCK
14: 2013//FORCE XXI BATTLE COMMAND BRIGADE AND BELOW LEADER OPERATOR NEW EQUIPMENT
TRAINING CERTIFICATION CRS, 1 WEEK, 2009//HAZARDOUS MATERIALS DRIVER TRAINING CRS, 2
WEEKS, 1998//PETROLEUM QUALITY ASSURANCE, 4 WEEKS, 1998//PETROLEUM SUPPLY SPECIALIST, 10
WEEKS, 1998//PETROLEUM VEHICLE OPERATOR, 5 WEEKS, 1998//PRIMARY LEADER DEVELOPMENT CRS, 4
WEEKS, 2004//NOTHING FOLLOWS

| 21.a. MEMBER SIGNATURE<br><br>NOT AVAILABLE TO SIGN | b. DATE<br>*(YYYYMMDD)* | 22.a. OFFICIAL AUTHORIZED TO SIGN *(Typed name, grade, title, signature)*<br>ESIGNED BY: MCLEMORE.LUCIAN.W. Redacted PII<br><br>LUCIAN W MCLEMORE, GS07, LEAD HRA | b. DATE<br>*(YYYYMMDD)*<br>20150709 |
|---|---|---|---|

DD FORM 214C, AUG 2009

GENERATED BY TRANSPROC

MEMBER

# CHAPTER PROCEEDINGS (2015)



# John N. Maher
LEGAL SERVICES

June 25, 2015

***Via Electronic Mail To: julian.d.edmonson.civ@mail.mil***

The Honorable Debra S. Wada
Assistant Secretary of the Army
Manpower and Reserve Affairs
111 Army Pentagon
Washington D.C., 20310-0111

SUBJECT: Staff Sergeant (SSG) Damon J. Claiborne – Secretarial Plenary Authority

Dear Secretary Wada:

Having received neither acknowledgment nor substantive communication from Mr. Julian Edmonson, you, or any of your representatives despite repeated efforts since June 17, 2015 on behalf of SSG Damon Claiborne, I write this letter with the hope that you and Mr. Edmonson will re-evaluate the propriety of using the Secretary's plenary authority in this action.

The plain language of Chapter 5-3a states that to properly exercise the authority, "it is used when no other provision of this regulation applies, and *early* separation is clearly in the best interest of the Army." (emphasis added). SSG Claiborne received retirement orders on January 27, 2014 with an effective date of placement on the retired list January 31, 2015. In the interim, the Army suspended his approved retirement for processing under the instant action. Consequently, the separation is not early because the Army held him past his approved retirement. For this reason, and those contained in my June 17, 2015 letter and emails to your attention, I respectfully request you reconsider and place SSG Claiborne on the retired rolls.

We have a draft motion for a temporary restraining order together with a Federal District Court complaint detailing how this decision is contrary to the plain language of the regulation, that is, "administrative double jeopardy." This is a litigation risk in that a court may decide that the Secretary's plenary authority should be limited to "early" separation as opposed to those soldiers who are retirement eligible. I do sincerely hope to avoid having to file the legal papers on Monday, June 29, 2015. The courtesy of a reply is requested.

Sincerely,

//original signed//

JOHN N. MAHER
Maher Legal Services, P.C.

**000311**



# John N. Maher
## LEGAL SERVICES

June 17, 2015

*Via Electronic Mail To: julian.d.edmonson.civ@mail.mil*

The Honorable Debra S. Wada
Assistant Secretary of the Army
Manpower and Reserve Affairs
111 Army Pentagon
Washington D.C., 20310-0111

SUBJECT: Separation Under Army Regulation 635-200, Paragraph 5-3
(Secretarial Plenary Authority) - Staff Sergeant (SSG) Damon J. Claiborne

Dear Secretary Wada:

I write on behalf of SSG Claiborne to respectfully request that you withdraw the proposed separation discussed in your June 16, 2015 letter and authorize his retirement as of the original effective date of February 1, 2015.

As you likely know, AR 635-200, Chapter 1-17 states that soldiers should not be separated under this regulation if they have already been subject to a separation proceeding and the separation authority determined to retain them. In relevant part, paragraph 1-17b (3) states that:

> No Soldier will be considered for administrative separation because of conduct that ... has been the subject of an administrative separation proceeding resulting in a final determination by a separation authority that the Soldier should be retained.

Over ten years ago, in 2005 - 2006, the Army processed SSG Claiborne for separation under AR 635-200, Chapter 14. However, the separation proceeding resulted in a final determination by the separation authority that SSG Claiborne be retained. The basis for that proceeding is the same basis as this proceeding. Copies of the I Corps and Fort Lewis Commander's retention decision are enclosed.

Since his having been retained, SSG Claiborne re-enlisted in 2008, and again in 2010 pursuant to the REDUX program in which he and the Army agreed to retirement at twenty years of active federal service. In all, he has just shy of 26 years combined active and reserve service.

17101 South 71st Avenue
Tinley Park Illinois, 60477 USA

T: (312) 804-9912
F: (773) 980-1809

www.maherlegalservices.com

Additionally, SSG Claiborne has served well overseas having earned three combat patches in: a) Desert Shield/Desert Storm; b) Kosovo; c) Iraq; and d) Afghanistan. He is also the recipient of several Army Commendation Medals and Army Achievement Medals in addition to his various campaign ribbons. Concerning his personal life, he is married and the father of eight (8) children, two of whom are special needs (autism and emotional challenges). Given these responsibilities, he works a part-time job after duty hours.

For these reasons, we respectfully request that you re-assess this separation action in light of AR 635-200 Paragraph 1-17b (3), SSG Claiborne's overseas service, and his family situation in which his retirement is direly needed to survive. We ask that you please withdraw the action and place SSG Claiborne on the retired rolls. The favor of a reply is requested, and, I am available to speak with you at your convenience about this important matter.

Sincerely,

//original signed//

JOHN N. MAHER
Maher Legal Services, P.C.

Encls. Retention Documentation





SAMR                                        1 8 JUN 2015

~~MEMORANDUM THRU Deputy Chief of Staff, G-1, DAPE-MPE, 300 Army Pentagon, Washington, DC 20310~~  JE 16 Jun 15

FOR Commander, I Corps, Mail Stop 1, Joint Base Lewis-McChord, Washington 98433-9500

SUBJECT: Separation Under Army Regulation (AR) 635-200, Paragraph 5-3 (Secretarial Plenary Authority) – Staff Sergeant (SSG) Damon J. Claiborne

1. I find that separating SSG Damon J. Claiborne is clearly in the best interest of the Army in accordance with AR 635-200, paragraph 5-3a.

2. I direct that SSG Claiborne be separated with a General (Under Honorable Conditions) characterization of service.

3. SSG Claiborne's Separation Program Designator (SPD) Code is JFF, and his Reentry Eligibility (RE) Code is RE-4.

4. The point of contact for this action is Mr. Edmondson, (703) 695-7948, or via e-mail: julian.d.edmondson.civ@mail.mil.

DEBRA S. WADA
Assistant Secretary of the Army
(Manpower and Reserve Affairs)

*8/27/14*

AFZH-CG

MEMORANDUM FOR Headquarters, Department of the Army, ATTN: AHRC-EPR-F, 1600 Spearhead Division Avenue, Fort Knox, Kentucky 40122

SUBJECT: Separation Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority, Staff Sergeant Damon J. Claiborne, A Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

1. I have reviewed the enclosed Separation packet on, Staff Sergeant Damon J. Claiborne, A Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

2. After careful consideration of all matters, I recommend this Soldier be (INITIAL OPTION):

      (    ) Retained.

      (    ) Retained and rehabilitatively transferred to another unit as directed by the G-1/MPD.

      (    ) Separated, but that the separation be <u>suspended</u> for a period of \_\_\_\_\_ months (not to exceed 12 months).

      (*JD*) Separated from the Army prior to the expiration of current term of service.

3. I recommend that this Soldier's service be characterized as (INITIAL OPTION IF SEPARATION WAS SELECTED ABOVE):

      (    ) Honorable.

      (*JD*) General under honorable conditions.

4. This Soldier has not filed an unrestricted report of sexual assault within 24 months of initiation of this separation action.

5. Due to the nature of this Soldier's misconduct, this separation (is) (is not) in the best interest of the U.S. Army.

**000315**

AFZH-CG
SUBJECT: Separation Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority, Staff Sergeant Damon J. Claiborne, A Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

6. All counseling requirements have been met in accordance with Army Regulation (AR) 635-200 (Active Duty Enlisted Administrative Separations), 6 September 2011, Chapter 1-20.

Encl
SJA Advice

KENNETH R. DAHL
Major General, USA
Commanding



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, 42D MILITARY POLICE BRIGADE
BUILDING 2007B, 2D STREET, BOX 339500, MAIL STOP 55
JOINT BASE LEWIS-MCCHORD, WASHINGTON 98433

AFZH-MP

MEMORANDUM THRU Commander, I Corps, Joint Base Lewis-McChord, Washington 98433

MEMORANDUM FOR Secretary of the Army

SUBJECT: Separation under AR 635-200, Chapter 5-3 (Secretary of the Army Plenary Authority), Staff Sergeant (E6) Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington

1. I have reviewed the enclosed separation action on Staff Sergeant (E6) Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington.

2. After careful consideration of all matters, I recommend this Soldier be:

( ) Retained and rehabilitatively transferred to another unit as directed by the G-1/MPD.

( ) Separated, but that the separation be <u>suspended</u> for a period of _____ months (not to exceed 12 months).

(X) Separated from the Army prior to the expiration of his current term of service

3. I recommend that this Soldier's service be characterized as (Honorable)(General, under honorable conditions).

DAVID L. CHASE
COL, MP
Commanding



AFZH-ACO-CDR

MEMORANDUM THRU Commander, Headquarters and Headquarters Battalion, I Corps, Joint Base-Lewis-McChord, Washington 98433

THRU Commander, 42nd Military Police Brigade, Joint Base Lewis-McChord, Washington 98433
Commander, I Corps, Joint Base Lewis-McChord, Washington 98433

FOR Secretary of the Army

SUBJECT: Commander's Report – Proposed Separation Under AR 635-200, Chapter 5-3, Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

1. Under the provisions of AR 635-200, Chapter 5-3, I recommend that the following named individual be (INITIAL OPTION):

    ( X ) Retained.

    ( ) Retained and rehabilitatively transferred to another unit as directed by the G-1/MPD.

    ( ) Separated, but that the separation be <u>suspended</u> for a period of _____ months (not to exceed 12 months).

    ( ) Separated from the Army prior to the expiration of current term of service.

2. Soldier information:

    a. Rank/Name/ SSN:  SSG DAMON J. CLAIBORNE

    b. Date of birth:  19710222

    c. Date of enlistment/reenlistment:  19960407/20110930

    d. Length of term for which enlisted:  4 Years

SUBJECT: Commander's Report – Proposed Separation Under AR 635-200, Chapter 5-3, Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

    e. Prior service, if any:  None.

    f. Specific, factual reason(s) for action recommended:  On or between 1 September 2004 and 30 September 2004 the Soldier had sexual contact with a child who was under the age of 14 years old.  On 3 January 2005 he was convicted of child molestation in the second degree in Kitsap County, Washington and sentenced to 15 months of confinement.

    g. Aptitude area scores and DMOS:

| | | | | |
|---|---|---|---|---|
| (1) General Technical: | 116 | (7) Food Operations: | 115 |
| (2) Clerical Admin: | 115 | (8) Surv and Commo: | 116 |
| (3) Combat: | 115 | (9) Technical: | 117 |
| (4) Electrical: | 116 | (10) General Maintenance: | 114 |
| (5) Field Artillery: | 115 | (11) DMOS: | 92F |
| (6) Motor Mechanical: | 113 | | |

    h. Results of the Common Task, Test (CTT), commander's evaluation, and Skill Qualification Test (SQT), including MOS in which evaluated and results:

    i. Record of counseling, if applicable:  Tab 7.

    j. Description of rehabilitation attempts, if applicable:

    k. Record of trials by court-martial:  None.

    l. Record of other disciplinary action, including non-judicial punishment (include offenses, findings, and sentence):  None.

    m. Report of mental status evaluation or psychiatric report is attached.

    n. Report of medical examination is attached.

    o. Statement why the commander does not consider it feasible or appropriate to accomplish other disposition:  _____

    p. Promotions and dates thereof:  SPC 19980128; SGT 20070701; SSG 20121201

000319

r. Whether there is a record of time lost; if so, whether due to absence without leave, confinement, or other reasons:

s. Note favorable communications or recommendations for the Soldier:

t. Note other derogatory data other than Article 15 action and courts-martial:

u. Make note of any citations and awards:
ARCOM x3; AAM x6; MUC; AGCM x6; NDSM x2; SWASM x3; KCMBSS; ACM-CS; ICM-CS x2; GWTEM; GWTSM; KDSM; NOPDRx2; ASR; OSR x5; NATOMDL x2; SAKULIBM; KUKULIBM; COA x5; DRV/MECH; MQBSS-R

v. Where derogatory information has been revealed, make note of any evidence of rehabilitation:

w. Make note of any medical or other data meriting consideration in the overall evaluation to separate the Soldier and in the determination as to the appropriate characterization of service:

x. Other information considered pertinent:

3. This Soldier (has) (has not) filed an unrestricted report of sexual assault within 24 months of initiation of this separation action. (if "has" is selected, answer a - d below)

a. The separation (does) (does not) appear to be in retaliation for the Soldier filing an unrestricted report of sexual assault

b. The separation (does) (does not) involve a medical condition that is related to the sexual assault, to include Post Traumatic Stress Disorder (PTSD).

c. The separation is in the best interest of (the Army) (the Soldier) (both).

d. The status of the case against the alleged offender is (open) (closed), and the separation of the Soldier/victim (will) (will not) affect disposition or prosecution of the case.

3

000320

AFZH-ACO-CDR
SUBJECT:  Commander's Report – Proposed Separation Under AR 635-200, Chapter 5-3, Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433


4.  Memoranda of notification and acknowledgment are attached as enclosures.


Encls
as

CHRIS KIM
CPT, CM
Commanding

4



AFZH-ACO-CDR

MEMORANDUM FOR SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

SUBJECT: Separation Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

1. Under the provisions of AR 635-200, Chapter 5-3, I am initiating action to separate you for Involuntary Separation Pursuant to Secretary of the Army Plenary Authority. The reasons for my proposed action are: On or between 1 September 2004 and 30 September 2004 you had sexual contact with a child who was under the age of 14 years old. On 3 January 2005 you were convicted of child molestation in the second degree in Kitsap County, Washington and sentenced to 15 months of confinement.

2. I am recommending that your service be characterized as (INITIAL OPTION):

( X )  Honorable.

( ) General under honorable conditions.

3. My recommendation and your reply will be submitted to the Secretary of the Army, who is the separation authority and will make the final decision in your case.

4. The intermediate commanders and the separation authority are not bound by my recommendation as to characterization of service. The separation authority may direct that your service be characterized as honorable or under honorable conditions.

5. If my recommendation is approved, the proposed separation could result in discharge, release from active duty to a Reserve component, or release from custody and control of the Army.

6. You have the right to consult with consulting counsel and/or civilian counsel at no expense to the Government within a reasonable time not less than 3 duty days.

7. You may submit written statements in your behalf.



DEPARTMENT OF THE ARMY
HEADQUARTERS, I CORPS
BOX 339500, MAIL STOP 69
JOINT BASE LEWIS-MCCHORD, WASHINGTON 98433

REPLY TO
ATTENTION OF

AFZH-JA

10 Feb 2014

MEMORANDUM FOR SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, WA 98433, Joint Base Lewis-McChord, Washington 98433

SUBJECT: Army Directive 2013-2, Separation Proceedings for Conviction of Sex Offense

1. The Secretary of Army directed initiation of separation proceeding of all Soldiers convicted of a sex offense if the conviction did not result in a punitive discharge or dismissal, regardless of when the conviction occurred and regardless of the component of membership and current status in that component.

2. The Secretary further directed that if an enlisted Soldier who has been convicted of a sex offense already has been subject to administrative separation action, the separation authority will initiate separation action under Secretarial plenary authority as described in AR 635-200, paragraph 5-3.

3. You were convicted of Child Molestation in the second degree in Kitsap County, Washington in January 2005. Based upon the date of this conviction, you may have been subject to a separation action and retained, but the documents may have been destroyed in accordance with Army records retention policy.

4. Please answer the questions on the following page and return this memorandum with your signature to the I Corps Criminal Law Division.

5. You will receive notice of which type of separation you may face shortly and will have the right to respond and submit matters on your own behalf. Your full rights will be explained in detail in a separate notice.

LANNY J. ACOSTA, JR.
Chief, Criminal Law Division
LTC, JA



**DEPARTMENT OF THE ARMY**
ALPHA COMPANY
HEADQUARTERS AND HEADQUARTERS BATTALION, I CORPS
JOINT BASE LEWIS-MCCHORD, WASHINGTON 98433

AFZH-ACO-CDR

MEMORANDUM FOR Commander, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

SUBJECT: Election of Rights Regarding Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

*D.C.* 1. I have been advised by my consulting counsel of the basis for the contemplated action to separate me for Involuntary Separation Pursuant to Secretary of the Army Plenary Authority under AR 635-200, Chapter 5-3 and its effects; of the rights available to me; and of the effect of any action taken by me in waiving my rights. I understand that if I am NOT entitled to have my case heard by and administrative separation board and that I have seven (7) calendar days to submit matters in my behalf.

*D.C.* 2. Statements in my own behalf (are) ~~(are not)~~ submitted herewith (Encl **A** ).

*D.C.* 3. I (request) ~~(waive)~~ consulting counsel and representation by military counsel and/or civilian counsel at no expense to the Government.

*D.C.* 4. I understand that I may expect to encounter substantial prejudice in civilian life if a general discharge under honorable conditions is issued to me. I understand that if I receive a discharge/character of service that is less than honorable, I may make application to the Army Discharge Review Board or the Army Board for Correction of Military Records for upgrading; however, I realize that an act of consideration by either board does not imply that my discharge will be upgraded.

*D.C.* 5. I ~~(have)~~ (have not) filed an unrestricted report of sexual assault within 24 months of initiation of the separation action.

*D.C.* 6. (To be answered only if the Soldier answered the previous question affirmatively) I (do) (do not) believe that this separation action is a direct or indirect result of the sexual assault itself or of the filing of the unrestricted report.

*D.C.* 7. I (have) ~~(have not)~~ deployed overseas in support of a contingency operation during the previous 24 months. (if "have" is selected, answer a - b below)

**000324**

SUBJECT: Election of Rights Regarding Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, WA 98433

    a. I **(have) (have not)** been diagnosed as experiencing PTSD or TBI by a physician, clinical psychologist, or psychiatrist.

*DC*

*Dc* b. I **(do)** **(do not)** believe, based on my service while deployed, that I experienced either PTSD or TBI.

*D.C.* 8. I have retained a copy of this statement.

DATE SIGNED: _14 July 2014_        _____ (Signature)

                                  DAMON J. CLAIBORNE
                                  SSG, USA
                                  Respondent

Having been advised by me of the basis for his contemplated separation and its effects, the rights available to him, the right to waive his rights, SSG Claiborne personally made the choices indicated in the foregoing statement.

DATE SIGNED: _14 JUL 14_          _____ (Signature)
Printed Name: __GREGORY M. LEBOUTON__
Rank, Branch: __CPT, US ARMY__
Duty Position: __JUDGE ADVOCATE__
                __Indefinite Per 10 USC 1044(a)__

### (OPTIONAL WAIVER TO CONSULT COUNSEL)

Before completing my election of rights, I was afforded the opportunity to consult with appointed counsel for consultation, or military counsel my own choice, if they are reasonably available; or civilian counsel at my own expense. I choose to decline the opportunity.

DATE SIGNED: _____
(Signature)

                                  DAMON J. CLAIBORNE
                                  SSG, USA
                                  Respondent

000325



AFZH-ACO

MEMORANDUM FOR Commander, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, WA 98433, Joint Base Lewis-McChord, Washington 98433

SUBJECT: Acknowledgment of Receipt of Separation Notice Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority

I acknowledge receipt of the foregoing notice from my commander that informs me of the basis for the contemplated action to separate me under AR 635-200, Chapter 5-3, and of the rights available to me. I have been advised of my right to consult with counsel prior to submitting my Election of Rights. I understand that unless an extension is granted, failure to respond within 7 duty days will constitute a waiver of the rights in paragraphs 6, 7, 8 and 9 of the notice.

DATE SIGNED: _20140716_ _____ (Signature)

DAMON J. CLAIBORNE
SSG, USA
Respondent

# DEVELOPMENTAL COUNSELING FORM
For use of this form, see FM 6-22; the proponent agency is TRADOC.

## DATA REQUIRED BY THE PRIVACY ACT OF 1974

| | |
|---|---|
| AUTHORITY: | 5 USC 301, Departmental Regulations; 10 USC 3013, Secretary of the Army. |
| PRINCIPAL PURPOSE: | To assist leaders in conducting and recording counseling data pertaining to subordinates. |
| ROUTINE USES: | The DoD Blanket Routine Uses set forth at the beginning of the Army's compilation of systems or records notices also apply to this system. |
| DISCLOSURE: | Disclosure is voluntary. |

## PART I - ADMINISTRATIVE DATA

| Name (Last, First, MI) | Rank/Grade | Date of Counseling |
|---|---|---|
| Claiborne, Damon | SSG/E6 | 20 Feb 14 |

| Organization | Name and Title of Counselor |
|---|---|
| A Co, HHB, I Corps, JBLM, WA 98433 | CPT Hendon, Heather Company Commander |

## PART II - BACKGROUND INFORMATION

**Purpose of Counseling:** (Leader states the reason for the counseling, e.g. Performance/Professional or Event-Oriented counseling, and includes the leader's facts and observations prior to the counseling.)

Event-oriented
Suspension of Favorable action for involuntary separation

## PART III - SUMMARY OF COUNSELING
Complete this section during or immediately subsequent to counseling.

Key Points of Discussion:

I am initiating a flag for involuntary separation, effective today.

## OTHER INSTRUCTIONS
This form will be destroyed upon: reassignment (other than rehabilitative transfers), separation at ETS, or upon retirement. For separation requirements and notification of loss of benefits/consequences see local directives and AR 635-200.

DA FORM 4856, AUG 2010          PREVIOUS EDITIONS ARE OBSOLETE.          APD PE v1.00ES

000327

**Plan of Action** *(Outlines actions that the subordinate will do after the counseling session to reach the agreed upon goal(s). The actions must be specific enough to modify or maintain the subordinate's behavior and include a specified time line for implementation and assessment (Part IV below)*

Soldier will comply with all required appointments in a timely fashion.

**Session Closing:** *(The leader summarizes the key points of the session and checks if the subordinate understands the plan of action. The subordinate agrees/disagrees and provides remarks if appropriate.)*

Individual counseled: ☒ I agree ☐ disagree with the information above.
Individual counseled remarks:

Signature of Individual Counseled: _____ Date: 20140220

**Leader Responsibilities:** *(Leader's responsibilities in implementing the plan of action.)*

Signature of Counselor _____ Date: FEB 20 2014

**PART IV - ASSESSMENT OF THE PLAN OF ACTION**

**Assessment:** *(Did the plan of action achieve the desired results? This section is completed by both the leader and the individual counseled and provides useful information for follow-up counseling.)*

Counselor: _____ Individual Counseled: _____ Date of Assessment: _____

**Note: Both the counselor and the individual counseled should retain a record of the counseling.**

REVERSE, DA FORM 4856, AUG 2010

APD PE v1.00ES

000328

## REPORT TO SUSPEND FAVORABLE PERSONNEL ACTIONS (FLAG)
For use of this form, see AR 600-8-2; the proponent agency is MILPERCEN.

### SECTION I - ADMINISTRATIVE DATA

| 1. NAME (Last, First, MI) | 2. SSN | 3. RANK |
|---|---|---|
| CLAIBORNE, DAMON JAHRON | Redacted PII | SSG |

4. ☑ On Active Duty   ☐ Not on Active Duty   ☐ On ADT

5. ETS/ESA/MRD

6. UNIT ASSIGNED AND ARMY COMMAND
WAT3A0  0001HQOPNS CO A  USA FRCE CMD (FORSCOM)

7. STATION (Geographical Location)
JBLM LEWIS, WA

8. HR OFFICE CONTROLLING FLAGGING ACTION AND TELEPHONE NUMBER
WAT3AA  0001HQI CORPS

9. THIS ACTION IS TO:

☑ Initiate a flag (Sections II and IV Only)    ☐ Remove Flag (Sections III and IV Only)

### SECTION II - INITIATE A FLAG

10. ☑ A FLAG IS INITIATED, EFFECTIVE ___20140220___ FOR THE FOLLOWING REASON:

**NON-TRANSFERABLE**

☑ ADVERSE ACTION (A)

☑ INVOLUNTARY SEPARATION/DISCHARGE-FIELD INITIATED (B)

☐ REMOVAL FROM SELECTION LIST - FIELD INITIATED (C)

☐ REFERRED-OER/RELIEF FOR CAUSE NCOER (D)

☐ SECURITY VIOLATION (E)

☐ REMOVAL FROM SELECTION LIST - HEADQUARTERS DA INITIATED (F)

☐ COMMANDER'S INVESTIGATION (L)

☐ LAW ENFORCEMENT INVESTIGATION (M)

☐ CDR DECISION TO BLOCK AUTOMATIC PROMOTION TO PV2,PFC&SPC (P)

☐ NOT RECOMMENDED FOR AUTOMATIC PROMOTION TO 1LT/CW2 (T)

☐ DRUG ABUSE ADVERSE ACTION (U)

☐ ALCOHOL ABUSE ADVERSE ACTION (V)

☐ HQDA INITIATED INVOLUNTARY SEPARATION/DISCHARGE (W)

☐ OTHER (X), Remarks: ____

**TRANSFERABLE**

☐ PUNISHMENT PHASE (ADVERSE ACTION) (H), Date Complete: ____

☐ ARMY PHYSICAL FITNESS TEST FAILURE (J)

☐ ARMY BODY COMPOSITION PROGRAM (K)

### SECTION III - REMOVE A FLAG

11. ☐ A FLAG IS REMOVED, EFFECTIVE _____ FOR THE FOLLOWING REASON:

☐ FINAL-FAVORABLE REPORT (C)          ☐ FINAL-OTHER REPORT (E)

☐ FINAL-UNFAVORABLE REPORT (D)        ☐ DELETE-ERRONEOUS FLAG (Z)

### SECTION IV - AUTHENTICATION

DISTRIBUTION
1 - Unit Commander    1 - Soldier    1 - HRC (only if Soldier is on a HQDA selection list)
1 - S-1/MPD           1 - Commander, gaining unit (transfer flag only)

NAME, RANK, TITLE, AND ORGANIZATION
Heather A. Handon
CPT, MI
Commander

SIGNATURE

DATE
FEB 2 0 2014

DA FORM 268, NOV 72          EDITION OF JUN 87 and earlier are OBSOLETE          APD 9V3.000

000329



**DEPARTMENT OF THE ARMY**
OFFICE OF THE ASSISTANT SECRETARY
MANPOWER AND RESERVE AFFAIRS
111 ARMY PENTAGON
WASHINGTON, DC 20310-0111

SAMR

1 6 JUN 2015

~~MEMORANDUM THRU Deputy Chief of Staff, G-1, DAPE-MPE, 300 Army Pentagon, Washington, DC 20310~~ JE 16Jun15

FOR Commander, I Corps, Mail Stop 1, Joint Base Lewis-McChord, Washington 98433-9500

SUBJECT: Separation Under Army Regulation (AR) 635-200, Paragraph 5-3 (Secretarial Plenary Authority) – Staff Sergeant (SSG) Damon J. Claiborne

1. I find that separating SSG Damon J. Claiborne is clearly in the best interest of the Army in accordance with AR 635-200, paragraph 5-3a.

2. I direct that SSG Claiborne be separated with a General (Under Honorable Conditions) characterization of service.

3. SSG Claiborne's Separation Program Designator (SPD) Code is JFF, and his Reentry Eligibility (RE) Code is RE-4.

4. The point of contact for this action is Mr. Edmondson, (703) 695-7948, or via e-mail: julian.d.edmondson.civ@mail.mil.

DEBRA S. WADA
Assistant Secretary of the Army
(Manpower and Reserve Affairs)

**000330**