# United States of America



## DEPARTMENT OF THE ARMY

| Washington, DC | February 13, 2018 |
|---|---|
| PLACE | DATE |

I HEREBY CERTIFY that the ... titute true and accurate copies of files pertaining to Damon J. Claiborne., a former member of the United States ... of records from the Army Review Boards Agency (ARBA) and Army Board for Correction of Military (ABC... Arlington, Virginia. A copy of the Army Military Human Resource Record (AMHRR) is maintained by ... Human Resources Command, Fort Knox, Kentucky. The original personnel records and copies of other ... the official temporary custody of the Military Personnel Litigation Branch, Litigation Division, Office of the Jud... General of the Army.

*Edward Bahdi.*

EDWARD BAHDI
Lieutenant Colonel, U.S. Army
Chief, Military Personnel Litigation Branch

Administrative Record Part 2 - Pages 000331 - 000758

I HEREBY CE... ieutenant Colonel Edward Bahdi, who signed the foregoing certificate, is the Chief, Military Pers... Branch, Litigation Division, Office of the Judge Advocate General of the Army, and that full faith and cre... iven to his certification.

IN TESTIMONY WHEREOF I.  Gerald B. O'Keefe

The Administrative Assistant to the Secretary of the Army,
have hereunto caused the seal of the Department of the
Army to be affixed this ___13th___ day of

___February___ , ___2018___

By _____
Administrative Assistant.

**RANDOLPH SWANSIGER**
**Colonel, U.S. Army**
**Chief, Litigation Division**

DA ... B 1998          EDITION OF 1 MAR 66 IS OBSOLETE          APD PE v1.10



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, I CORPS
BOX 339500, MAIL STOP 1
JOINT BASE LEWIS-MCCHORD, WASHINGTON  98433-9500

*8/27/14*

AFZH-CG

MEMORANDUM FOR Headquarters, Department of the Army, ATTN:  AHRC-EPR-F, 1600 Spearhead Division Avenue, Fort Knox, Kentucky  40122

SUBJECT:  Separation Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority, Staff Sergeant Damon J. Claiborne, A Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington  98433

1.  I have reviewed the enclosed Separation packet on, Staff Sergeant Damon J. Claiborne, A Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington  98433

2.  After careful consideration of all matters, I recommend this Soldier be (INITIAL OPTION):

      (    ) Retained.

      (    ) Retained and rehabilitatively transferred to another unit as directed by the G-1/MPD.

      (    ) Separated, but that the separation be <u>suspended</u> for a period of \_\_\_\_\_ months (not to exceed 12 months).

      (*JD*) Separated from the Army prior to the expiration of current term of service.

3.  I recommend that this Soldier's service be characterized as (INITIAL OPTION IF SEPARATION WAS SELECTED ABOVE):

      (    ) Honorable.

      (*JD*) General under honorable conditions.

4.  This Soldier has not filed an unrestricted report of sexual assault within 24 months of initiation of this separation action.

5.  Due to the nature of this Soldier's misconduct, this separation (is) (is not) in the best interest of the U.S. Army.

AFZH-CG
SUBJECT:  Separation Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority, Staff Sergeant Damon J. Claiborne, A Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington  98433

6.  All counseling requirements have been met in accordance with Army Regulation (AR) 635-200 (Active Duty Enlisted Administrative Separations), 6 September 2011, Chapter 1-20.

Encl
SJA Advice

KENNETH R. DAHL
Major General, USA
Commanding

**000332**



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, 42D MILITARY POLICE BRIGADE
BUILDING 2007B, 2D STREET, BOX 339500, MAIL STOP 55
JOINT BASE LEWIS-MCCHORD, WASHINGTON  98433

AFZH-MP

MEMORANDUM THRU Commander, I Corps, Joint Base Lewis-McChord, Washington 98433

MEMORANDUM FOR Secretary of the Army

SUBJECT:  Separation under AR 635-200, Chapter 5-3 (Secretary of the Army Plenary Authority), Staff Sergeant (E6) Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington

1.  I have reviewed the enclosed separation action on Staff Sergeant (E6) Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington.

2.  After careful consideration of all matters, I recommend this Soldier be:

    (   ) Retained and rehabilitatively transferred to another unit as directed by the G-1/MPD.

    (   ) Separated, but that the separation be <u>suspended</u> for a period of _____ months (not to exceed 12 months).

    (X) Separated from the Army prior to the expiration of his current term of service

3.  I recommend that this Soldier's service be characterized as ~~(Honorable)~~ (General, under honorable conditions).

DAVID L. CHASE
COL, MP
Commanding

**000333**



**DEPARTMENT OF THE ARMY**
HEADQUARTERS AND HEADQUARTERS BATTALION, I CORPS,
JOINT BASE LEWIS-MCCHORD, WASHINGTON 98433

AFZH-HHB-CDR

THRU Commander, 42nd Military Police Brigade, Joint base Lewis-McChord, Washington 98433
Commander, I Corps, Joint base Lewis-McChord, Washington

FOR Secretary of the Army.

SUBJECT:  Separation Under AR 635-200, Chapter 5-3, Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, WA 98433, Joint Base Lewis-McChord, Washington  98433

1. I have reviewed the enclosed Separation packet on , SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, WA 98433

2. After careful consideration of all matters, I recommend this Soldier be (INITIAL OPTION):

(C/m) Retained.

(  ) Retained and rehabilitatively transferred to another unit as directed by the G-1/MPD.

(  ) Separated, but that the separation be <u>suspended</u> for a period of _____ months (not to exceed 12 months).

(  ) Separated from the Army prior to the expiration of current term of service.

I recommend that this Soldier's service be characterized as (INITIAL OPTION IF PARATION WAS SELECTED ABOVE):

) Honorable.

General under honorable conditions.

AFZH-HHB-CDR
SUBJECT: Separation Under AR 635-200, Chapter 5-3, Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, WA 98433, Joint Base Lewis-McChord, Washington 98433

4. This Soldier **(has)** **(has not)** filed an unrestricted report of sexual assault within 24 months of initiation of this separation action. **(if "has" is selected, answer a - d below)**

    a. The separation **(does) (does not)** appear to be in retaliation for the Soldier filing an unrestricted report of sexual assault

    b. The separation **(does) (does not)** involve a medical condition that is related to the sexual assault, to include Post Traumatic Stress Disorder (PTSD).

    c. The separation is in the best interest of **(the Army) (the Soldier) (both)**.

    d. The status of the case against the alleged offender is **(open) (closed)**, and the separation of the Soldier/victim **(will) (will not)** affect disposition or prosecution of the case.

Encls
as

CHRISTOPHER M. RIZZO
LTC, SF
Commanding

2



**DEPARTMENT OF THE ARMY**
ALPHA COMPANY
HEADQUARTERS AND HEADQUARTERS BATTALION, I CORPS
JOINT BASE LEWIS-MCCHORD, WASHINGTON 98433

AFZH-ACO-CDR

MEMORANDUM THRU Commander, Headquarters and Headquarters Battalion, I Corps, Joint Base-Lewis-McChord, Washington 98433

THRU Commander, 42nd Military Police Brigade, Joint Base Lewis-McChord, Washington 98433
Commander, I Corps, Joint Base Lewis-McChord, Washington 98433

FOR Secretary of the Army

SUBJECT: Commander's Report – Proposed Separation Under AR 635-200, Chapter 5-3, Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

1. Under the provisions of AR 635-200, Chapter 5-3, I recommend that the following named individual be (INITIAL OPTION):

    ( X ) Retained.

    (   ) Retained and rehabilitatively transferred to another unit as directed by the G-1/MPD.

    (   ) Separated, but that the separation be <u>suspended</u> for a period of _ ___ months (not to exceed 12 months).

    (   ) Separated from the Army prior to the expiration of current term of service.

2. Soldier information:

    a. Rank/Name/ SSN:  SSG DAMON J. CLAIBORNE

    b. Date of birth:  19710222

    c. Date of enlistment/reenlistment:  19960407/20110930

    d. Length of term for which enlisted:  4 Years

AFZH-ACO-CDR
SUBJECT: Commander's Report – Proposed Separation Under AR 635-200, Chapter 5-3, Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

    e. Prior service, if any: None.

    f. Specific, factual reason(s) for action recommended: On or between 1 September 2004 and 30 September 2004 the Soldier had sexual contact with a child who was under the age of 14 years old. On 3 January 2005 he was convicted of child molestation in the second degree in Kitsap County, Washington and sentenced to 15 months of confinement.

    g. Aptitude area scores and DMOS:

| | | | |
|---|---|---|---|
| (1) General Technical: | 116 | (7) Food Operations: | 115 |
| (2) Clerical Admin: | 115 | (8) Surv and Commo: | 116 |
| (3) Combat: | 115 | (9) Technical: | 117 |
| (4) Electrical: | 116 | (10) General Maintenance: | 114 |
| (5) Field Artillery: | 115 | (11) DMOS: | 92F |
| (6) Motor Mechanical: | 113 | | |

    h. Results of the Common Task, Test (CTT), commander's evaluation, and Skill Qualification Test (SQT), including MOS in which evaluated and results:

    i. Record of counseling, if applicable: Tab 7.

    j. Description of rehabilitation attempts, if applicable:

    k. Record of trials by court-martial: None.

    l. Record of other disciplinary action, including non-judicial punishment (include offenses, findings, and sentence): None.

    m. Report of mental status evaluation or psychiatric report is attached.

    n. Report of medical examination is attached.

    o. Statement why the commander does not consider it feasible or appropriate to accomplish other disposition: _____

_____

    p. Promotions and dates thereof: SPC 19980128; SGT 20070701; SSG 20121201

2

AFZH-ACO-CDR
SUBJECT:  Commander's Report – Proposed Separation Under AR 635-200, Chapter 5-3, Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

   r.  Whether there is a record of time lost; if so, whether due to absence without leave, confinement, or other reasons:

   s.  Note favorable communications or recommendations for the Soldier:

   t.  Note other derogatory data other than Article 15 action and courts-martial:

   u.  Make note of any citations and awards:
      ARCOM x3; AAM x6; MUC; AGCM x6; NDSM x2; SWASM x3; KCMBSS; ACM-CS; ICM-CS x2; GWTEM; GWTSM; KDSM; NOPDRx2; ASR; OSR x5; NATOMDL x2; SAKULIBM; KUKULIBM; COA x5; DRV/MECH; MQBSS-R

   v.  Where derogatory information has been revealed, make note of any evidence of rehabilitation:

   w.  Make note of any medical or other data meriting consideration in the overall evaluation to separate the Soldier and in the determination as to the appropriate characterization of service:

   x.  Other information considered pertinent:

3. This Soldier **(has) (has not)** filed an unrestricted report of sexual assault within 24 months of initiation of this separation action.  **(if "has" is selected, answer a - d below)**

   a.  The separation **(does) (does not)** appear to be in retaliation for the Soldier filing an unrestricted report of sexual assault

   b.  The separation **(does) (does not)** involve a medical condition that is related to the sexual assault, to include Post Traumatic Stress Disorder (PTSD).

   c.  The separation is in the best interest of **(the Army) (the Soldier) (both)**.

   d.  The status of the case against the alleged offender is **(open) (closed)**, and the separation of the Soldier/victim **(will) (will not)** affect disposition or prosecution of the case.

3

000338

AFZH-ACO-CDR

SUBJECT:  Commander's Report – Proposed Separation Under AR 635-200, Chapter 5-3, Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

4.  Memoranda of notification and acknowledgment are attached as enclosures.

Encls
as

CHRIS KIM
CPT, CM
Commanding

4



**DEPARTMENT OF THE ARMY**
ALPHA COMPANY
HEADQUARTERS AND HEADQUARTERS BATTALION, I CORPS
JOINT BASE LEWIS-MCCHORD, WASHINGTON 98433

AFZH-ACO-CDR

MEMORANDUM FOR Commander, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

SUBJECT: Election of Rights Regarding Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

1. I have been advised by my consulting counsel of the basis for the contemplated action to separate me for Involuntary Separation Pursuant to Secretary of the Army Plenary Authority under AR 635-200, Chapter 5-3 and its effects; of the rights available to me; and of the effect of any action taken by me in waiving my rights. I understand that if I am NOT entitled to have my case heard by and administrative separation board and that I have seven (7) calendar days to submit matters in my behalf.

2. Statements in my own behalf (are) (are not) submitted herewith (Encl _A_ ).

3. I (request) (waive) consulting counsel and representation by military counsel and/or civilian counsel at no expense to the Government.

4. I understand that I may expect to encounter substantial prejudice in civilian life if a general discharge under honorable conditions is issued to me. I understand that if I receive a discharge/character of service that is less than honorable, I may make application to the Army Discharge Review Board or the Army Board for Correction of Military Records for upgrading; however, I realize that an act of consideration by either board does not imply that my discharge will be upgraded.

5. I (have) (have not) filed an unrestricted report of sexual assault within 24 months of initiation of the separation action.

6. (To be answered only if the Soldier answered the previous question affirmatively) I (do) (do not) believe that this separation action is a direct or indirect result of the sexual assault itself or of the filing of the unrestricted report.

7. I (have) (have not) deployed overseas in support of a contingency operation during the previous 24 months. (if "have" is selected, answer a - b below)

AFZH-ACO-CDR
SUBJECT: Election of Rights Regarding Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, WA 98433

    a. I **(have) (have not)** been diagnosed as experiencing PTSD or TBI by a physician, clinical psychologist, or psychiatrist.

    b. I **(do)** ~~(do not)~~ believe, based on my service while deployed, that I experienced either PTSD or TBI.

8. I have retained a copy of this statement.

DATE SIGNED: 18 Jul 2014    _____ (Signature)

                                 DAMON J. CLAIBORNE
                                 SSG, USA
                                 Respondent

Having been advised by me of the basis for his contemplated separation and its effects, the rights available to him, the right to waive his rights, SSG Claiborne personally made the choices indicated in the foregoing statement.

DATE SIGNED: 18 Jul 14    _____ (Signature)
Printed Name: ~~GREGORY M. LEBOUTON~~
Rank, Branch: ~~CPT, US ARMY~~
Duty Position: ~~Indefinite Bar to USC 1044(a)~~

                         (OPTIONAL WAIVER TO CONSULT COUNSEL)

Before completing my election of rights, I was afforded the opportunity to consult with appointed counsel for consultation, or military counsel my own choice, if they are reasonably available; or civilian counsel at my own expense. I choose to decline the opportunity.

DATE SIGNED: _____
(Signature)                _____

                                   DAMON J. CLAIBORNE
                                 SSG, USA
                                 Respondent

000341



**DEPARTMENT OF THE ARMY**
ALPHA COMPANY
HEADQUARTERS AND HEADQUARTERS BATTALION, I CORPS
JOINT BASE LEWIS-MCCHORD, WASHINGTON  98433

AFZH-ACO-CDR

MEMORANDUM FOR SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

SUBJECT:  Separation Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

1. Under the provisions of AR 635-200, Chapter 5-3, I am initiating action to separate you for Involuntary Separation Pursuant to Secretary of the Army Plenary Authority. The reasons for my proposed action are:  On or between 1 September 2004 and 30 September 2004 you had sexual contact with a child who was under the age of 14 years old.  On 3 January 2005 you were convicted of child molestation in the second degree in Kitsap County, Washington and sentenced to 15 months of confinement.

2. I am recommending that your service be characterized as (INITIAL OPTION):

   ( X ) <sup>CK</sup> Honorable.

   (   ) General under honorable conditions.

3. My recommendation and your reply will be submitted to the Secretary of the Army, who is the separation authority and will make the final decision in your case.

4. The intermediate commanders and the separation authority are not bound by my recommendation as to characterization of service. The separation authority may direct that your service be characterized as honorable or under honorable conditions.

5. If my recommendation is approved, the proposed separation could result in discharge, release from active duty to a Reserve component, or release from custody and control of the Army.

6. You have the right to consult with consulting counsel and/or civilian counsel at no expense to the Government within a reasonable time not less than 3 duty days.

7. You may submit written statements in your behalf.

AFZH-ACO-CDR
SUBJECT:  Separation Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority, SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, Washington 98433

8.  You may obtain copies of documents that will be sent to the separation authority supporting the proposed separation. Classified documents may be summarized.

9.  You are not entitled to a hearing before an administrative board, but you may submit matters in writing within 7 calendar days from receipt of this notice.

10.  You may waive the rights listed above in paragraphs 6, 7, 8, and 9 in writing, and you may withdraw any such waiver at any time prior to the date the separation authority orders, directs, or approves your separation.

11.  You will receive counseling concerning earned education benefits as required by law (10 USC 1046).

12.  If applicable, recoupment of the unearned portion of your enlistment or reenlistment bonus is required by law (37 USC 308).

13.  You are required to undergo a complete medical examination, in accordance with AR 40-501, if it has been more than one year since your last examination. If it has been less than one year, but more than six months since your last examination, you will complete a DA Form 3081 (Periodical Medical Examination Statement of Exemption).

14.  Execute the attached acknowledgment and return it within 7 duty days from the date of your receipt of this memorandum. Any statement you desire to submit in your behalf must reach me within 7 duty days after you receive this letter, unless you request and receive an extension for good cause shown. Unless an extension is granted, failure to respond within 7 duty days will constitute a waiver of the rights in paragraphs 6, 7, 8, and 9.

Encls

CHRIS KIM
CPT, CM
Commanding

2



**DEPARTMENT OF THE ARMY**
ALPHA COMPANY
HEADQUARTERS AND HEADQUARTERS BATTALION, I CORPS
JOINT BASE LEWIS-MCCHORD, WASHINGTON 98433

AFZH-ACO

MEMORANDUM FOR Commander, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, WA 98433, Joint Base Lewis-McChord, Washington  98433

SUBJECT:  Acknowledgment of Receipt of Separation Notice Under AR 635-200, Chapter 5-3, Involuntary Separation Pursuant to Secretary of the Army Plenary Authority

I acknowledge receipt of the foregoing notice from my commander that informs me of the basis for the contemplated action to separate me under AR 635-200, Chapter 5-3, and of the rights available to me.  I have been advised of my right to consult with counsel prior to submitting my Election of Rights.  I understand that unless an extension is granted, failure to respond within 7 duty days will constitute a waiver of the rights in paragraphs 6, 7, 8 and 9 of the notice.

DATE SIGNED: _20140716_                                     _____ (Signature)
                                                        DAMON J. CLAIBORNE
                                                        SSG, USA
                                                        Respondent

Data Required by the Privacy Act of 1974
(5 USC 552a)

AUTHORITY: 5 USC 301 and 10 USC 3013.

PURPOSE: Information provided is used by processing activities and the approval authority to determine if the member meets the requirements for recommended separation action.

ROUTINE USES: Upon completion of processing actions, the statement is filed in the OMPF. As long as filed in the OMPF, this personal information may be used by other appropriate Federal agencies and State and local government authorities where the use of the information is compatible with the purpose for which the information is collected. Release of any information from this form is subject to the restrictions of 42 USC 290dd-2 and 42 USC 290dd-3. Under these statutes and regulations, disclosure of information that would identify the client as an abuser of alcohol or other drugs is authorized within the Armed Forces or those components of the Department of Veterans Affairs furnishing health care to veterans. AR 600-85 further limits disclosure within the Armed Forces to those individuals having an official need to know (for example, the physician or the client's unit commander). All other disclosures require the written consent of the client except disclosures (1) to medical personnel outside the Armed Forces to the extent necessary to meet a bona fide medical emergency, (2) to qualified personnel conducting scientific research, management for financial audits, or program evaluation, or (3) upon the order of a court of competent jurisdiction.

Submission of a statement for consideration is voluntary. If a statement is not submitted, the Army will determine separation or retention based on the available information.

# SUPPORTING DOCUMENTS

**A-** Army Directive 2013-21 **(Initiating Separation Proceedings and Prohibiting Overseas Assignment for Soldiers Convicted of Sex Offenses)**, dated 7 November 2013

**B-** LTC Acosta's Memo to SSG Claiborne & SSG Claiborne's Response, dated 10 February 2014

**C-** SSG Claiborne's previous separation under Army Regulation 635-200, chapter 14 dated 10 May 2006

**D-** SSG Claiborne's reassignment orders to Joint Base Lewis-McChord, Washington dated 27 January 2014

**E-** SSG Claiborne's judgment and sentence documents from Kitsap County, Washington and warrant of commitment, dated 3 January 2005

**F-** SSG Claiborne's charging documents, dated 12 November 2004

**G-** SSG Claiborne's statement of plea of guilty sex offense, dated 12 November 2004

**H-** DA Form 4187s taking SSG Claiborne from present for duty to confinement and then from confinement to present for duty

**I-** SSG Claiborne's medical examination dated 23 June 2014



**SECRETARY OF THE ARMY**
**WASHINGTON**

0 7 NOV 2013

MEMORANDUM FOR SEE DISTRIBUTION

SUBJECT: Army Directive 2013-21 (Initiating Separation Proceedings and Prohibiting Overseas Assignment for Soldiers Convicted of Sex Offenses)

1. References:

   a. Title 42, United States Code, section 16911.

   b. Army Regulation (AR) 27-10 (Military Justice), 3 October 2011.

   c. AR 135-178 (Enlisted Administrative Separations), 13 March 2007, including Rapid Action Revision (RAR) 2 issued 13 September 2011.

   d. AR 635-200 (Active Duty Enlisted Administrative Separations), 6 June 2005, including RAR 3 issued 6 September 2011.

   e. AR 135-175 (Separation of Officers), 28 February 1987, including RAR 2 issued 4 August 2011.

   f. AR 600-8-24 (Officer Transfers and Discharges), 12 April 2006, including RAR 3 issued 13 September 2011.

   g. AR 10-87 (Army Commands, Army Service Component Commands, and Direct Reporting Units), 4 September 2007.

2. Sex offenses are serious crimes. Notwithstanding the provisions of any other Army regulation, directive, policy or other like guidance published by any Army official or organization, this directive establishes new policy to ensure that the decision to retain any Soldier convicted of a sex offense is fully informed and in the Army's best interest. In addition, this directive establishes Army policy prohibiting the overseas assignment or reassignment of any Soldier convicted of a sex offense.

3. Commanders will initiate the administrative separation of any Soldier convicted of a sex offense, as defined by references 1a or 1b, whose conviction did not result in a punitive discharge or dismissal. This policy applies to all personnel currently in the Army, regardless of when the conviction for a sex offense occurred and regardless of component of membership and current status in that component.

SUBJECT: Army Directive 2013-21 (Initiating Separation Proceedings and Prohibiting Overseas Assignment for Soldiers Convicted of Sex Offenses)

   a. For enlisted personnel:

      (1) Commanders will follow the current policy for initiating administrative separation proceedings pursuant to references 1c or 1d, as appropriate.

      (2) If the separation authority approves retention, he or she will initiate an action for the exercise of Secretarial plenary separation authority under paragraph 14-3 of reference 1c or paragraph 5-3 of reference 1d, as appropriate.

      (3) If an enlisted Soldier who has been convicted of a sex offense already has been subject to an administrative separation action under references 1c or 1d for that conviction and has been retained as a result of that proceeding, the separation authority will initiate a separation action under the Secretarial plenary authority, as detailed in paragraph 3a(2) of this directive.

   b. For commissioned and warrant officers:

      (1) Commanders *will* initiate an elimination action under references 1e or 1f, as appropriate.

      (2) No further action is required if a commissioned or warrant officer who has been convicted of a sex offense has already been subject to an elimination action for that conviction and has been retained.

4. Commanders will ensure that Soldiers convicted of an offense covered by references 1a or 1b are not assigned or deployed on a temporary duty (TDY), temporary change of station (TCS) or permanent change of station (PCS) status to duty stations outside of the Continental United States (OCONUS). The only permitted OCONUS locations are Hawaii, Alaska, the Commonwealth of Puerto Rico, or Territories or possessions of the United States.

5. Soldiers currently serving in any non-permitted OCONUS locations who have been convicted of an offense covered by references 1a or 1b are ineligible for continued duty at those locations. Accordingly, overseas commanders of Army Commands, Army Service Component Commands or Direct Reporting Units (as established in reference 1g) will identify such Soldiers in their commands and coordinate with the applicable Headquarters, Department of the Army Assignment Authority (Commander, U.S. Army Human Resources Command; The Judge Advocate General; or Chief of Chaplains) for reassignment to the continental United States or the permitted OCONUS locations listed in paragraph 4 as soon as possible. Soldiers who are deployed to a non-permitted OCONUS location in any status (TDY/TCS) will immediately be returned to their parent organization. Command responsibility to reassign or redeploy a Soldier under this policy takes precedence over initiation of separation. Accordingly, Soldiers

000348

SUBJECT: Army Directive 2013-21 (Initiating Separation Proceedings and Prohibiting Overseas Assignment for Soldiers Convicted of Sex Offenses)

convicted of an offense covered by references 1a or 1b will first be reassigned or redeployed to a CONUS or permitted OCONUS location. The receiving commander will subsequently ensure the initiation of separation in accordance with paragraph 3.

6. The provisions of this directive are effective immediately. The Deputy Chief of Staff, G-1 is the proponent for this policy and, in coordination with the Assistant Secretary of the Army (Manpower and Reserve Affairs), will publish appropriate implementing instructions as soon as possible. This directive and its implementing instructions take precedence over and cancel any conflicting guidance. They will remain in effect until relevant Army regulations are revised and published to incorporate the policies set forth herein.

John M. McHugh

DISTRIBUTION:
Principal Officials of Headquarters, Department of the Army
Commander
    U.S. Army Forces Command
    U.S. Army Training and Doctrine Command
    U.S. Army Materiel Command
    U.S. Army Pacific
    U.S. Army Europe
    U.S. Army Central
    U.S. Army North
    U.S. Army South
    U.S. Army Africa/Southern European Task Force
    U.S. Army Special Operations Command
    Military Surface Deployment and Distribution Command
    U.S. Army Space and Missile Defense Command/Army Strategic Command
    U.S. Army Cyber Command
    U.S. Army Network Enterprise Technology Command/9th Signal Command (Army)
    U.S. Army Medical Command
    U.S. Army Intelligence and Security Command
    U.S. Army Criminal Investigation Command
    U.S. Army Corps of Engineers
    U.S. Army Military District of Washington
    U.S. Army Test and Evaluation Command
    U.S. Army Installation Management Command
Superintendent, United States Military Academy
(CONT)

000349

SUBJECT:  Army Directive 2013-21 (Initiating Separation Proceedings and Prohibiting Overseas Assignment for Soldiers Convicted of Sex Offenses)

DISTRIBUTION:  (CONT)
Director, U.S. Army Acquisition Support Command
Executive Director, Arlington National Cemetery
Commander, U.S. Army Accessions Support Brigade

CF:
Director, Army National Guard
Director of Business Transformation

4



REPLY TO
ATTENTION OF

**DEPARTMENT OF THE ARMY**
HEADQUARTERS, I CORPS
BOX 339500, MAIL STOP 69
JOINT BASE LEWIS-MCCHORD, WASHINGTON  98433

AFZH-JA

*10 Feb 2014*

MEMORANDUM FOR SSG Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps, Joint Base Lewis-McChord, WA 98433, Joint Base Lewis-McChord, Washington  98433

SUBJECT:  Army Directive 2013-2, Separation Proceedings for Conviction of Sex Offense

1.  The Secretary of Army directed initiation of separation proceeding of all Soldiers convicted of a sex offense if the conviction did not result in a punitive discharge or dismissal, regardless of when the conviction occurred and regardless of the component of membership and current status in that component.

2.  The Secretary further directed that if an enlisted Soldier who has been convicted of a sex offense already has been subject to administrative separation action, the separation authority will initiate separation action under Secretarial plenary authority as described in AR 635-200, paragraph 5-3.

3.  You were convicted of Child Molestation in the second degree in Kitsap County, Washington in January 2005.  Based upon the date of this conviction, you may have been subject to a separation action and retained, but the documents may have been destroyed in accordance with Army records retention policy.

4.  Please answer the questions on the following page and return this memorandum with your signature to the I Corps Criminal Law Division.

5.  You will receive notice of which type of separation you may face shortly and will have the right to respond and submit matters on your own behalf.  Your full rights will be explained in detail in a separate notice.

LANNY J. ACOSTA, JR.
Chief, Criminal Law Division
LTC, JA

AFZH-JA
SUBJECT: Army Directive 2013-2, Separation Proceedings for Conviction of Sex Offense

I, SSG Damon J. Claiborne:

(INITIAL OPTION):

a.  (✗) **Have** been subject to administrative separation action based upon my conviction in 2005 or based upon the underlying misconduct upon which the conviction was based and I (✗) **DO** (  ) **DO NOT** possess documentary proof of my retention at this proceeding.

b.  (  ) **Have NOT** been subject to administrative separation action based upon my conviction in 2005 or based upon the underlying misconduct upon which the conviction was based.

DATE SIGNED: 20140210
(Signature)

DAMON J. CLAIBORNE
SSG, USA
Respondent



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, I CORPS AND FORT LEWIS
BOX 339500
FORT LEWIS, WASHINGTON 98433-9500

REPLY TO
ATTENTION OF:

AFZH-CG

MAY 1 0 2006

MEMORADUM FOR Deputy Chief of Staff for Personnel, I Corps and Fort Lewis, ATTN: AFZH-AGI-PT, Fort Lewis, Washington 98433-9500

SUBJECT: Separation Under AR 635-200, Chapter 14

1. I have reviewed the information pertaining to Specialist (E-4) Damon J. Claiborne, [Redacted PII] 528th Quartermaster Company, 80th Ordnance Battalion, 593d Corps Support Group, Fort Lewis, Washington 98433-9500, and the recommendation that he be discharged from the Army prior to the expiration of his current term of service, under the provisions of AR 635-200, Chapter 14, Section III, Paragraph 14-5, for conviction by civil court.

2. I direct that he be discharged from the U.S. Army and his service be characterized as follows:

    (  ) Honorable

    (✗) General, under honorable conditions

    (  ) Other than honorable conditions

    (✗) Furthermore, per AR 635-200, para 1-18, I direct suspending the execution of the separation for the period of _12_ months (up to 12 months).

3. The service member will report to the Separation Transition Center for separation processing. Separation will be accomplished within three working days after receipt of the packet by the Separation Transition Center. The unit commander will ensure that the service member is escorted by a responsible Soldier in the rank of SGT or above throughout his out processing.

4. Upon completion of his processing for separation he will also be barred from entering the installation in accordance with the terms of the enclosed memorandum. The service member must be prepared to present his "clearing" papers at all times when he is on the installation.

5. This correspondence will be filed as permanent material in the service member's Official Military Personnel File (OMPF) IAW AR 600-8-104.

5 Encls
1. SJA Advice
2. Chain of Command Recommendations
3. Conditional Waiver
4. Administrative Separation Packet

OSCAR B. HILMAN
Brigadier General, USA
Acting Commander

**000353**



DEPARTMENT OF THE ARMY
HEADQUARTERS, 593D CORPS SUPPORT GROUP
FORT LEWIS, WASHINGTON  98433-9500

REPLY TO
ATTENTION OF:

AFZH-GP                                                    Date: 25 April 06

MEMORANDUM FOR Commander, I Corps and Fort Lewis, ATTN:  AFZH-JAC, Fort Lewis, Washington  98433-9500

SUBJECT:  Separation Under AR 635-200, Chapter 14

1.  I have reviewed the separation action against SPC Damon J. Claiborne, [Redacted PII], [Redacted PII] 528th Quartermaster Company, 80th Ordnance Battalion, 593d Corps Support Group, Fort Lewis, Washington  98433-9500, and recommend as follows:

( )  Retain the Soldier on active duty.

( )  Approve the separation with the following characterization of the service:

   ( )  Honorable

RBB   ( )  General, under honorable conditions

   ( )  Other than honorable.

RBB   ( )  Furthermore, per AR 635-200, para 1-18, I recommend suspending the execution of the separation for the period of 12 months (up to 12 months) as this Soldier is a highly deserving soldier who should be given a probation period to show successful rehabilitation.

RICHARD B. BURNS
COL, TC
Commanding

nc

CF:
SPC Claiborne (w/encls)
Cdr, 528th QM Co, 80th OD Bn (wo/encls)



DEPARTMENT OF THE ARMY
HEADQUARTERS,
44TH CORPS SUPPORT BATTALION (REAR) (PROVISIONAL)
FORT LEWIS, WASHINGTON 98433-9500

REPLY TO
ATTENTION OF

AFZH-GPF                                                    9 February 2006

MEMORANDUM FOR RECORD

SUBJECT:  Commander's Request

1.  I, Diffendafer, Clifford A., request a General Discharge for Damon Claiborne, SPC, SSN [Redacted PII] effective 9 February 2006.

2.  POC for this memorandum is the undersigned @ 967-4291.

CLIFFORD A. DIFFENDAFFER
CPT, QM
Commanding

GENERAL DISCHARGE     Honorable Conditions
                      FEB 2005 originall initiated
REVERSED                   @ FT. LEWIS
   AND RETAINED
      IN SERVICE

DEPARTMENT OF THE ARMY
US ARMY INSTALLATION MANAGEMENT COMMAND
PACIFIC REGION, US ARMY GARRISON-YONGSAN
TRANSITION CENTER
UNIT #15333
APO AP 96205-5333

ORDERS 027-0002                                              27 January 2014

CLAIBORNE, DAMON JAHRON, Redacted PII SSG, 0008 HQ INTEL CO HHB, (WJS7B0) APO AP
96205

You are reassigned as shown for separation processing. Information concerning
your port call will be provided separately.

Assigned to:  NA
Reporting date:  NA
Additional instructions: a. Report to your Personnel Administration Center
(PAC) not earlier than 10 working days prior to your leave start date to pick
up a memorandum authorizing the Area II In & Out Processing Center (IOP) to
issue you your out-processing checklist. b. You must report to ACAP (Bldg.
4038, Yongsan South Post) DSN 738-7334, to receive separation counseling and
DD Form 2648 (ACAP Counseling checklist) as required by Public Law 101-510.
c. You must report to your servicing Finance Office immediately upon receipt
of these orders. Advance travel pay is not authorized. You should bring
enough cash to defray expenses while on travel and for transportation to and
from air terminals. Travel claims will be processed and you will be
reimbursed authorized travel and transportation expenses after you mail your
travel voucher upon arrival at final destination. POC at Finance is the
separations clerk at 723-3279. d. Unless otherwise authorized/approved, a
Soldiers housing allowance is based on the permanent duty station (PDS). A
Soldier may be authorized a housing allowance based on the location at which
the dependents maintain/establish a permanent residence if authorized/approve
through the Secretarial Process. Dependents: YES:
e. You will report to the Education Center upon receipt of these orders.
Phone number DSN 723-8403. f. You will report to the Yongsan Transition
Center ONE WEEK prior to your final out-processing to update and sign your DD
Form 214. For this appointment, bring supporting documents, ribbons and
medals received, and military schools completed. Phone number DSN 723-6477.
g. Soldier has not pre-selected a location for retirement. Final travel
settlement will be made after separation when soldier arrives at place of
retirement. h. If you plan to ship personal property at Government expense,
contact the local installation transportation office immediately upon receipt
of these orders to make arrangements for shipment of household goods and/or
unaccompanied baggage. Phone number DSN 738-4817. i. You must report to
your local Installation Commercial Transportation Office (CTO) (Moyer
Recreation Center, Building 2259, Main Post, Yongsan) to arrange air
transportation. Phone number DSN 725-6173. j. Household goods will remain
in storage until forwarding notification by soldier. HHG will then be
forwarded to soldier's home of selection. You have one year to store goods
at government expense. k. Upon separation from active duty you must report
to the nearest military installation to receive a Retiree ID Card with an
expiration of INDEFINITE. Bring copy 4 with you to obtain your
ID Card. l. Final Out-processing. You will report to Rm 126, Bldg 4034 at
1000 hours on the last working day prior to departure on PTDY/transition
leave. You must be completely cleared of post and your unit before reporting
for final out-processing. Bring the following: completed clearing papers,
COMPLETED MEDICAL/DENTAL RECORDS MEMORANDUM SIGNED AND STAMPED BY YOUR

ORDERS 027-0002                                     27 January 2014


SERVICING MEDICAL TREATMENT FACILITY OR DENTAC, retirement physical
examination, and military ID card with correct separation date.  m.  Soldier
has approved PTDY/Transition leave: IAW DA-31.  n.  Final out processing is
accomplished at BLDG 4034 on South Post in Yongsan. Out processing must be
done in Duty uniform. For more information please contact the Military
Personnel Division (MPD) at 723-5461. o. Service member is authorized movement
of Dependents at Goverment expense to Home of Selection. DEPENDENTS: Redacted PII
Redacted. Spouse: Redacted PII
Redacted PII
Redacted PII
Redacted PII                                                                Service
member is authorized shipment of 1/2 JFTR and one (1) POV from Seoul Korea to
Home of selection. p. Survey must be completed before out processing. Proceed to
the following link
http://www.myarmyonesource.com/ArmyTransitionProgramExitSurvey
Complete the required survey and print the certificate upon completion to be
presented when out processing.



FOR ARMY USE
Auth:  AR 635-200
18 years act Federal svc on 1 Nov 81:  Not applicable
HOR:      Redacted PII
Scheduled date of separation:  31 January 2015
MDC:  7AE4
Place EAD or OAD:  LOS ANGELES CA US
Comp:  REGULAR
SPD:  1AW AR 635-5-1
CIC:        Redacted PII
Aval Date:  00 November 2014
PRBD:  Not applicable
FOR ADDITIONAL INFORMATION CONTACT:
ROBERT E. RING,  TRANSITION SPECIALIST      Redacted PII       DSN 315
723-8227
SDN:       Redacted PII
Format:  430


FOR THE DIRECTOR:


                          ********************************
                          *            OFFICIAL          *
                          ********************************
                          PAUL M. LUNTUMBUEZ
                          DIRECTOR OF HUMAN RESOURCES


DISTRIBUTION:
SSG CLAIBORNE (15)
Cdr 0008 HQ INTEL CO HHB, (WJS7B0) (3)
FINANCE(1)
YONGSAN TRANSITION CENTER (2)


                                    2

DEPARTMENT OF THE ARMY
US ARMY INSTALLATION MANAGEMENT COMMAND
PACIFIC REGION, US ARMY GARRISON-YONGSAN
TRANSITION CENTER
UNIT #15333
APO AP  96205-5333

ORDERS 027-0001                                          27 January 2014

CLAIBORNE, DAMON JAHRON, [Redacted PII] SSG, 0008 HQ INTEL CO HHB, (WJS7B0)APO AP
96205

You are released from active duty and, on the date following, placed on the
retired list.  The people of the United States express their thanks and
gratitude for your faithful service.  Your contributions to the defense of the
United States of America are greatly appreciated.  On date placed on the retired
list, you are transferred to the U.S. Army Reserve Control Group (Retired), U.S.
Army Human Resources Command, Fort Knox, KY  40121-5500.

Effective date:  31 January 2015
Retired grade of rank:  SSG
Current grade effective date:  01 December 2012
Authorized place of retirement:  YONGSAN TC APO-AP, KOREA YONGSAN AP 96205-5742
Requested place of retirement:  N/A
Effective date of retirement:  31 January 2015
Date placed on retirement list:  01 February 2015
DOB:  [Redacted PII]
Sex:  M
Citizenship code:  A
Retirement type and allotment code:  NON DISABILITY/2
Component:  RA
Statute authorizing retirement:  3914
Other eligible laws:  Not applicable
Vol retirement:  20 years, 0 months, 3 days
Date initially entered military:  21 February 1989
Section 1405:  20 years, 0 months, 3 days
Basic Pay:  24 years, 7 months, 4 days
Significant awards:  Not applicable
18 years act Federal svc on 1 Nov 81:  Not applicable
HOR:  [Redacted PII]
Place EAD or OAD:  LOS ANGELES CA US
MDC:  7AE4
Additional instructions:  a.  PCN is:  NA


PEBD:  Not applicable
FOR ADDITIONAL INFORMATION CONTACT:
ROBERT E. RING,  TRANSITION SPECIALIST        [Redacted PII]        DSN 315
723-8227
SDN:  [Redacted PII]
Format:  600
FOR THE DIRECTOR:


*********************************
*            OFFICIAL           *
*********************************
PAUL M. LUNTUMBUEZ
DIRECTOR OF HUMAN RESOURCES

ORDERS 027-0001                                                    27 January 2014

DISTRIBUTION:
SSG CLAIBORNE (15)
Cdr 0008 HQ INTEL CO HHB, (WJS7B0) (3)
FINANCE(1)
YONGSAN TRANSITION CENTER (2)
CDR, USAR (RET) CONTROL GROUP (1)

2



IN THE KITSAP C

STATE OF WASHINGTON,

                                  Plaintiff,

                         v.

DAMON JAHRON CLAIBORNE,
Age: 33; DOB: 02/22/1971,

                               Defendant.

     A sentencing hearing was held in whi
Prosecuting Attorney were present. The Court
     The Defendant was found guilty, by
facts, of the following–

**1.1 CURRENT OFFENSE(S)**
Asterisk (*) denotes same criminal conduct (RCW 9.94A.525).

| I | Child Molestation in the Second Degree |
|---|---|

**1.2 CRIMINAL HISTORY** (RCW 9.94A.525)
Asterisk (*) denotes prior convictions that were same criminal conduct.

No known criminal history

**1.3 SENTENCING DATA**

| Count | Offender Score | Serious-ness Level | Standard Range | Da... ys ... |
|---|---|---|---|---|
| I. | 0 | VII | 15 to 20 | - |

☐ Defendant committed a current offense
*SPECIAL ALLEGATION KEY (RCWs)- F=Firearm,
(10.99.020); SZ=School Zone (69.50.435); SM=Sex
(46.61.5055); CF=drug crime at Corrections Facility

JUDGMENT AND SENTENCE; Page 1
[Form revised December 15, 2002]

RECEIVED AND FILED
IN OPEN COURT

JAN 0 3 2005

KITSAP COUNTY CLERK

# IN THE KITSAP COUNTY SUPERIOR COURT

STATE OF WASHINGTON,

Plaintiff,

v.

DAMON JAHRON CLAIBORNE,
Age: 33; DOB: [Redacted PII]

Defendant.

)
)
)
)
)
)
)
)
)
)
)

No. 04-1-01570-5

JUDGMENT AND SENTENCE

A sentencing hearing was held in which the Defendant, the Defendant's attorney, and the Deputy Prosecuting Attorney were present. The Court now makes the following findings, judgment and sentence. The Defendant was found guilty, by ☑ plea ☐ jury verdict ☐ bench trial ☐ trial upon stipulated facts, of the following–

| 2.1 CURRENT OFFENSE(S) Asterisk (*) denotes same criminal conduct (RCW 9.94A.525). | | RCW | Date(s) of Crime | | Special Allegations* |
|---|---|---|---|---|---|
| | | | from | to | |
| 1 | Child Molestation in the Second Degree | 9A.44.086 | 09/01/2004 | 09/30/2004 | |

| 2.2 CRIMINAL HISTORY (RCW 9.94A.525) Asterisk (*) denotes prior convictions that were same criminal conduct | Date of Crime | Date of Sentence | Sentencing Court | Juv (x) |
|---|---|---|---|---|
| No known criminal history | | | | |

**2.3 SENTENCING DATA**

| Count | Offender Score | Serious-ness Level | Standard Range | Days (x) | Mo. (x) | Special Allegations Type* | Mo. | Total Standard Range (Mo.) | Maximum Term |
|---|---|---|---|---|---|---|---|---|---|
| I. | 0 | VII | 15 to 20 | - | X | | | | 10 years |

☐ Defendant committed a current offense while on community placement (adds one point to score). RCW 9.94A.525.

*SPECIAL ALLEGATION KEY (RCWs)- F=Firearm, DW=Deadly Weapon (9.94A.602,510); DV=Domestic Violence (10.99.020); SZ=School Zone (69.50.435); SM=Sexual Motivation (9.94A.835); VH=Vehicular Homicide Prior DUI (46.61.5055); CF=drug crime at Corrections Facility (9.94A.510); JP=Juvenile Present at manufacture (9.94A.605).

JUDGMENT AND SENTENCE; Page 1

[Form revised December 15, 2002]

Russell D. Hauge, Prosecuting Attorney
Adult Criminal and Administrative Divisions
614 Division Street, MS-35
Port Orchard, WA 98366-4681
(360) 337-7174; Fax (360) 337-4949

000362

## CONFINEMENT/STATUS

☐ 4.3–**SSOSA–SPECIAL SEXUAL OFFENDER SENTENCING ALTERNATIVE.** RCW 9.94A.670. The Defendant is a sex offender and is sentenced under SSOSA. The execution of the sentence of confinement is suspended and the Defendant is placed on community custody.

☐ **CHEMICAL DEPENDENCY**–The Court finds the Defendant has a chemical dependency that contributed to the offense(s). RCW 9.94A.030(9).

☐ 2.6–**EXCEPTIONAL SENTENCE**–Substantial and compelling reasons exist justifying a sentence ☐ above the standard range ☐ below the standard range, and/or ☐ warranting exceptional conditions of supervision for count(s) _____. The Prosecutor ☐ did ☐ did not recommend a similar sentence. ☐ The exceptional sentence was stipulated by the Prosecutor and the Defendant. Findings of Fact and Conclusions of Law entered in support of the exceptional sentence are incorporated by reference.

☐ 4.3–**PERSISTENT OFFENDER**–The Defendant is a Persistent Offender as defined by RCW 9.94A.030(32) and 9.94A.570 and is sentenced to life without the possibility of early release.

| **COURT'S SENTENCE:** | *Sentences over 12 months will be served with the Department of Corrections.*<br>*Sentences 12 months or less will be served in the Kitsap County Jail, unless otherwise indicated.* | | |
|---|---|---|---|
| COUNT **I** 15 ☐ Days ☑ Mo. | COUNT___ ____ ☐ Days ☐ Mo. | COUNT___ ____ ☐ Days ☐ Mo. | |
| COUNT___ ____ ☐ Days ☐ Mo. | COUNT___ ____ Days with | _____ Days Suspended for ___ Years | |

**CONFINEMENT UNDER RCW 9.94A.712**- The Defendant is sentenced to the following term of confinement in the custody of the DOC:

COUNT___ **Minimum Term:** _____ Months
   **Maximum Term:** ☐ 10 years from today's date ☐ for the remainder of Defendant's life

COUNT___ **Minimum Term:** _____ Months
   **Maximum Term:** ☐ 10 years from today's date ☐ for the remainder of Defendant's life

COUNT___ **Minimum Term:** _____ Months
   **Maximum Term:** ☐ 10 years from today's date ☐ for the remainder of Defendant's life

   The Indeterminate Sentencing Review Board may increase the minimum term of confinement.

☐ SSOSA Sentence for Count(s) _____: _____ Months to be served, with the remainder of the sentence terms suspended for duration of the SSOSA program. RCW 9.94A.670(5).

**IF MULTIPLE COUNTS**–Total confinement ordered: _____ ☐ Days ☐ Months  MAX. TERM: _____
COUNTS TO BE SERVED–☐ Concurrent ☐ Consecutive ☐ Counts _____ served consecutive; the remainder served concurrent.  ☐ VUCSA enhancements served ☐ consecutive ☐ concurrent; the remainder consecutive.

☐ **CONCURRENT TO OTHER CAUSES**–This sentence shall run concurrent to sentence(s) ordered in cause number(s) _____

☐ **JAIL ALTERNATIVES/PARTIAL CONFINEMENT.** RCW 9.94A.030(31). If the defendant is found eligible, the confinement ordered may be converted to–
Work Release, RCW 9.94A.731. *Note: the Kitsap County Jail has the discretion to have the Defendant complete work release at the Kitsap County Jail or Peninsula Work Release*, Home Detention, RCW 9.94A.731,.190, Supervised Community Service or Work Crew, RCW 9.94A.725 at the discretion of the Kitsap County Jail.

☐ **STRAIGHT TIME.** The confinement ordered shall be served in the Kitsap County Jail.

☒ **CREDIT FOR TIME SERVED.** RCW 9.94A.505. Defendant shall receive credit for time served prior to sentencing solely for this cause number as computed by the jail unless specifically set forth–____ days.

☒ 4.3–**NO CONTACT ORDER**–Defendant shall abide by the terms of any no contact order issued as part of this Judgment and Sentence.

JUDGMENT AND SENTENCE; Page 2

[Form revised December 15, 2002]

**Russell D. Hauge, Prosecuting Attorney**
Adult Criminal and Administrative Divisions
614 Division Street, MS-35
Port Orchard, WA 98366-4681
(360) 337-7174; Fax (360) 337-4949

1

**SUPERVISION**

2   ☒ **4.—COMMUNITY CUSTODY.** RCW 9.94A.505, .545 and WAC 437-20-010. Defendant shall be
3   supervised for the longest time period checked in the table below. Defendant shall report to DOC in
    person no later than 72 hours after release from custody and shall comply with all conditions stated in
4   this Judgment and Sentence, including those checked in the SUPERVISION SCHEDULE, and other
5   conditions imposed by the court or DOC during community custody (and supervised probation if
    ordered).

6   | Community Custody Is Ordered for the Following Terms or Ranges (non-RCW 9.94A.712): |
7   | ☐ COUNT(S)_____ ☐ 12 months  ☐ 24 months  ☐ _____ months |
    | ☐ COUNT(S)_____ 36 to 48 months for Sex Offense (non-SSOSA) |
8   | ☐ COUNT(S)_____ 24 to 48 months for Serious Violent Offense |
9   | ☒ COUNT(S)  _2_  18 to 36 months for Violent Offense |
10  | ☐ COUNT(S)_____ 9 to 18 months for Crimes Against Persons |

    • If community custody is ordered for a sentence of more than one year, the Defendant shall be on
11   community custody for the above range or for the period of earned release awarded pursuant to
12   RCW 9.94A.728(1) and (2), whichever is longer, and standard mandatory conditions are ordered.

    • Community custody for sex offenders may be extended for up to the statutory maximum term.
13

14  | Community Custody Is Ordered for Counts Sentenced under RCW 9.94A.712, from time of |
    | release from total confinement until the expiration of the maximum sentence: |
15  | ☐ COUNT(S)_____ ☐ 10 years from today's date  ☐ for the remainder of the Defendant's life |
16  | ☐ COUNT(S)_____ ☐ 10 years from today's date  ☐ for the remainder of the Defendant's life |

17  | Supervised Probation is Ordered for Gross Misdemeanor and Misdemeanor convictions in |
    | this Judgment and Sentence, to be administered by the DOC, for: |
18  | ☐ COUNT(S)_____ ☐ 12 months  ☐ 24 months  ☐ _____ months |

19  ☐ **4.—SSOSA—COMMUNITY CUSTODY.** RCW 9.94A.670. The execution of this sentence is suspended
20   and Defendant is placed on community custody under the charge of DOC for the length of the
    suspended sentence, the length of the maximum term imposed pursuant to RCW 9.94A.712, or three
21   years, whichever is greater. Defendant shall report to DOC in person no later than 72 hours after
22   release from custody and shall comply with all conditions stated in this Judgment and Sentence,
    including those checked in the SUPERVISION SCHEDULE, and other conditions imposed by the court or
23   DOC during community custody. If the Defendant violates the conditions of the suspended sentence or
    the court finds that the Defendant is not making satisfactory progress in treatment, the court may
24   revoke the suspended sentence at any time during the period of community custody and order
25   execution of the sentence, and shall impose conditions of community placement pursuant to RCW
    9.94A.120. A *Treatment Termination Hearing* (RCW 9.94A.120) is scheduled three months prior to
26   the anticipated date for completion of treatment–_____

27  ☐ **EVALUATOR APPROVED TO PROVIDE TREATMENT**—The Court expressly finds that the Defendant's
    sex offender treatment provider may be the same person who examined the Defendant in this action for
28   amenability to treatment and risk to the community, based on the best interests of the victim and
    impracticability of using a different treatment provider. Chap. 176, Laws of 2004, § 4(11).

29

30

31

JUDGMENT AND SENTENCE; Page 3

[Form revised December 15, 2002]

**Russell D. Hauge, Prosecuting Attorney**
Adult Criminal and Administrative Divisions
614 Division Street, MS-35
Port Orchard, WA  98366-4681
(360) 337-7174; Fax (360) 337-4949

SUPERVISION SCHEDULE: The Defendant Shall—

☒ **STANDARD**
- Obey all laws and obey instructions, affirmative conditions, and rules of the court, DOC and CCO.
- Report to and be available for contact with assigned CCO as directed.
- Obey all no-contact orders including any in this judgment.
- Remain within prescribed geographical boundaries and notify the court or CCO in advance of any change in address or employment.
- Notify CCO within 48 hours of any new arrests or criminal convictions.
- Pay DOC monthly supervision assessment.
- Comply with crime-related prohibitions.

☒ **SERIOUS VIOLENT / VIOLENT OFFENSE, SEX OFFENSE, AND /OR CRIME AGAINST A PERSON**
- Work only at DOC-approved education, employment and/or community service.
- Possess or consume no controlled substances without legal prescription.
- Reside only at DOC-approved location and arrangement.
- Consume no alcohol, if so directed by the CCO.

☒ **SEX-CRIME RELATED**
- Commit no sexual offenses and commit no offenses involving a minor.
- Have no direct or indirect contact with victim(s) or his or her family, including by telephone, computer, letter, in person, or via third party.
- Possess/access no sexually exploitive materials (as defined by Defendant's treating therapist or CCO).
- Frequent no adult book stores, arcades, or places providing sexual entertainment.
- Possess/access no pornography, sexually explicit materials, and/or information pertaining to minors via computer (i.e. internet)
- ☐ Contact no "900" telephone numbers that offer sexually explicit material. Provide copies of phone records to CCO.
- ☐ Have no contact with any children under the age of 18 without the presence of an adult who is knowledgeable of this conviction and who has been approved by Defendant's CCO.
- ☐ Do not loiter or frequent places where children congregate including, but not limited to, shopping malls, schools, playgrounds, and video arcades.
- ☐ Abide by curfew set by CCO.
- ☐ Submit to periodic polygraph and plethysmograph exams at own expense at request of CCO or any treatment provider.
- ☐ Do not hitchhike or pick up hitchhikers.

☒ **PSI CONDITIONS**-All conditions recommended in the Pre-Sentence Investigation are incorporated herein as conditions of community custody, in addition to any conditions listed in this judgment and sentence, unless otherwise noted: _____

☐ **SSOSA**
- Devote time to specific employment or occupation.
- Successfully complete approved outpatient and/or Inpatient sex offender treatment program with treatment provider noted below for a period of 36 months. Defendant shall not change sex offender treatment providers or treatment without first notifying the Prosecutor, CCO, and the Court, and shall not change providers without Court approval after a hearing if the Prosecutor or CCO object to the change.
- *Treatment Provider*-_____

☐ **EVALUATIONS**- Complete an evaluation for: ☐ substance abuse  ☐ anger management  ☐ mental health, and fully comply with all treatment recommended by CCO and/or treatment provider.

☐ **PROGRAMS / ASSAULT**
- ☐ Have no assaultive behavior.
- ☐ Successfully complete a certified DV perpetrators program.
- ☐ Successfully complete an anger management class.
- ☐ Successfully complete a victim's awareness program.

☐ **ALCOHOL/DRUGS**
- ☐ Possess or consume no alcohol.
- ☐ Enter no bar or place where alcohol is the chief item of sale.
- ☐ Possess and use no illegal drugs and drug paraphernalia.
- ☐ Submit to UA and breath tests at own expense at CCO request.
- ☐ Submit to searches of person, residence or vehicles at CCO request.
- ☐ Have no contact with any persons who use, possess, manufacture, sell or buy illegal controlled substances or drugs.
- ☐ Install ignition interlock device as directed by CCO. RCW 46.20.710-.750.

☒ **OTHER:** Defendant shall have no contact with the victim Redacted PII in person, by 3rd party, email, telephone, mail or other means.

 Redacted PII

JUDGMENT AND SENTENCE; Page 4

[Form revised December 15, 2002]

Russell D. Hauge, Prosecuting Attorney
Adult Criminal and Administrative Divisions
614 Division Street, MS-35
Port Orchard, WA 98366-4681
(360) 337-7174; Fax (360) 337-4949

## NOTICES AND SIGNATURES

**5.1–COLLATERAL ATTACK ON JUDGMENT**–Any petition or motion for collateral attack on this judgment and sentence, including but not limited to any personal restraint petition, state habeas corpus petition, motion to vacate judgment, motion to withdraw guilty plea, motion for new trial or motion to arrest judgment, must be filed within one year of the final judgment in this matter, except as provided for in RCW 10.73.100, RCW 10.73.090.

**5.2–LENGTH OF SUPERVISION**–The court shall retain jurisdiction over the offender, for the purposes of the offender's compliance with payment of the legal financial obligations, until the obligation is completely satisfied, regardless of the statutory maximum for the crime. RCW 9.94A.760 and RCW 9.94A.505(5).

**5.3–NOTICE OF INCOME-WITHHOLDING ACTION**–If the Court has not ordered an immediate notice of payroll deduction, you are notified that the DOC may issue a notice of a payroll deduction without notice to you if you are more than 30 days past due in monthly payments in an amount equal to or greater than the amount payable for one month. RCW 9.94A.7602. Other income-withholding action under RCW 9.94A.760 may be taken without further notice. RCW 9.94A.7606.

**5.5–ANY VIOLATION OF JUDGMENT AND SENTENCE**–Is punishable by up to 60 days of confinement per violation. RCW 9.94A.634.

**5.6–FIREARMS–You must immediately surrender any concealed pistol license and you may not own, use, or possess any firearm unless your right to do so is restored by a court of record.**

**Clerk's Action Required**–The court clerk shall forward a copy of the Defendant's driver's license, identicard, or comparable identification, to the DOL along with the date of conviction or commitment. RCW 9.41.040, 9.41.047.

**Cross off if not applicable–**

**5.7–SEX AND KIDNAPPING OFFENDER REGISTRATION.** RCW 9A.44.130, 10.01.200. Because this crime involves a sex offense or kidnapping offense involving a minor as defined in RCW 9A.44.130, you are required to register with the sheriff of the county of the state of Washington where you reside. If you are not a resident of Washington but you are a student in Washington or you are employed in Washington or you carry on a vocation in Washington, you must register with the sheriff of the county of your school, place of employment, or vocation. You must register immediately upon being sentenced unless you are in custody, in which case you must register within 24 hours of your release.

If you leave the state following your sentencing or release from custody but later move back to Washington, you must register within 30 days after moving to this state or within 24 hours after doing so if you are under the jurisdiction of this state's Department of Corrections. If you leave this state following your sentencing or release from custody but later while not a resident of Washington you become employed in Washington, carry on a vocation in Washington, or attend school in Washington, you must register within 30 days after starting school in this state or becoming employed or carrying out a vocation in this state, or within 24 hours after doing so if you are under the jurisdiction of this state's Department of Corrections.

If you change your residence within a county, you must send written notice of your change of residence to the sheriff within 72 hours of moving. If you change your residence to a new county within this state, you must send written notice of your change of residence to the sheriff of your new county of residence at least 14 days before moving, register with that sheriff within 24 hours of moving and you must give written notice of your change of address to the sheriff of the county where last registered within 10 days of moving. If you move out of Washington State, you must also send written notice within 10 days of moving to the county sheriff with whom you last registered in Washington State.

If you are a resident of Washington and you are admitted to a public or private institution of higher education, you are required to notify the sheriff of the county of your residence of your intent to attend the institution within 10 days of enrolling or by the first business day after arriving at the institution, whichever is earlier. If you become employed at a public or private institution of higher education, you are required to notify the sheriff for the county of your residence of your employment by the institution within 10 days of accepting employment or by the first business day after beginning to work at the institution, whichever is earlier. If your enrollment or employment at a public or private institution of higher education is terminated, you are required to notify the sheriff for the county of your residence of your termination of enrollment or employment within 10 days of such termination.

Even if you lack a fixed residence, you are required to register. Registration must occur within 24 hours of release in the county where you are being supervised if you do not have a residence at the time of your release from custody or within 48 hours excluding weekends and holidays after ceasing to have a fixed residence. If you enter a different county and stay there for more than 24 hours, you will be required to register in the new county. You must also report

JUDGMENT AND SENTENCE; Page 6

[Form revised December 15, 2002]



Russell D. Hauge, Prosecuting Attorney
Adult Criminal and Administrative Divisions
614 Division Street, MS-35
Port Orchard, WA 98366-4681
(360) 337-7174; Fax (360) 337-4949

## FINANCIAL OBLIGATIONS

4.1–**LEGAL FINANCIAL OBLIGATIONS**–The Court finds that the Defendant has the ability or likely future ability to pay legal financial obligations. RCW 9.94A.142. The Defendant shall pay by cash, money order, or certified check to the Kitsap County Superior Court Clerk at 614 Division Street, MS-34, Port Orchard, WA 98366, as indicated–

| | | | |
|---|---|---|---|
| X | $500 Victim Assessment, RCW 7.68.035 [PCV] | $_____ Sheriff service/sub. fees [SFR/SFS/SFW/SRF] | |
| X | $993 Court-appointed attorney fees [PUB] | $_____ Witness Costs [WFR] | |
| X | $110 Filing Fee [FRC] | $_____ Jury Demand fee [JFR] | |
| X | $100 DNA / Biological Sample Fee, RCW 43.43.7541 | $_____ Court-appointed defense fees/other defense costs | |
| | $1,000 Contribution to SIU–_____ | $100 Contribution–Kitsap County Expert Witness Fund [Kitsap County Ordinance 139.1991] | X |
| | $100 Crime Lab fee, RCW 43.43.690(1) | $500 Contribution–Kitsap County Special Assault Unit | X |
| | $3,000 Methamphetamine / amphetamine Cleanup Fine, RCW 69.50.440 or 69.50.401(a)(1)(ii) | $100 Contribution–Anti-Profiteering Fund of Kitsap County Prosecuting Attorney's Office, RCW 9A.82 .110 | |
| | Emergency Response Costs – DUI, Vehicular Homicide or Vehicular Assault, RCW 38.52.430, per separate order. | $100 Domestic Violence Assessment, RCW 10.99.080 ☐ Kitsap Co. YWCA  ☒ Kitsap Co. Sexual Assault Center | X |

**RESTITUTION**–To be determined at a future date by separate order(s).

**REMAINING LEGAL FINANCIAL OBLIGATIONS AND RESTITUTION**–The legal financial obligations and/or any restitution noted above may not be complete and are subject to future order by the Court.

**PAYMENT SCHEDULE** - All payments shall commence immediately and be made in accordance with policies of the clerk and on a schedule as follows: pay ☒$100 ☐$50 ☐$25 ☐____ per month commencing 60 days following release from custody, unless otherwise noted:_____

**12% INTEREST FOR LEGAL FINANCIAL OBLIGATIONS/ADDITIONAL COSTS**–Financial obligations in this judgment shall bear interest from date of the judgment until paid in full at the rate applicable to civil judgments. An award of costs of appeal may be added to the total legal financial obligations. RCW 10.82.090, RCW 10.73. *INTEREST WAIVED FOR TIMELY PAYMENTS*–The Superior Court Clerk has the authority to waive the 12% interest if the Defendant makes timely payments under this payment schedule.

**50% PENALTY FOR FAILURE TO PAY LEGAL FINANCIAL OBLIGATIONS**–Defendant shall pay the costs of services to collect unpaid legal financial obligations. Failure to make timely payments will result in assessment of additional penalties, including an additional 50% penalty if this case is sent to a collections agency due to non-payment. RCW 36.18.190.

## OTHER

☐ 4.2–**HIV TESTING**–The Defendant shall submit to HIV testing. RCW 70.24.340.

☒ 4.3–**DNA TESTING**–The Defendant shall have a biological sample collected for purposes of DNA identification analysis and the defendant shall fully cooperate in the testing. The appropriate agency or DOC shall be responsible for obtaining the sample prior to the defendant's release from confinement. RCW 43.43.754.

   ☒ If the Defendant is not placed into custody at the time of sentencing, the Defendant shall report immediately to the Kitsap County Jail to arrange for collection of a biological sample for DNA.

☒ **FORFEITURE**–Forfeit all seized property referenced in the discovery to the originating law enforcement agency unless otherwise stated.

☒ 4.10–**COMPLIANCE WITH SENTENCE**–Defendant shall perform all affirmative acts necessary for DOC to monitor compliance with all of the terms of this Judgment and Sentence.

☒ **JOINT AGREEMENTS IN THE PLEA AGREEMENT**–Are in full force and effect unless otherwise stated in this judgment and sentence.

☒ **EXONERATION**–The Court hereby exonerates any bail, bond, and/or personal recognizance conditions.



Russell D. Hauge, Prosecuting Attorney
Adult Criminal and Administrative Divisions
614 Division Street, MS-35
Port Orchard, WA 98366-4681
(360) 337-7174; Fax (360) 337-4949

000367

weekly in person to the sheriff of the county where you are registered. The weekly report shall be on a day specified by the county sheriff's office, and shall occur during normal business hours. The county sheriff's office may require you to list the locations where you have stayed during the last seven days. The lack of a fixed residence is a factor that may be considered in determining an offender's risk level and shall make the offender subject to disclosure of information to the public at large pursuant to RCW 4.24.550.

If you move to another state, or if you work, carry on a vocation, or attend school in another state you must register a new address, fingerprints, and photograph with the new state within 10 days after establishing residence, or after beginning to work, carry on a vocation, or attend school in the new state. You must also send written notice within 10 days of moving to the new state or to a foreign country to the county sheriff with whom you last registered in Washington State.

If you apply for a name change, you must submit a copy of the application to the county sheriff of the county of your residence and to the state patrol not fewer than five days before the entry of an order granting the name change. If you receive an order changing your name, you must submit a copy of the order to the county sheriff of the county of your residence and to the state patrol within five days of the entry of the order. RCW 9A.44.130(7).

**5.8–PERSISTENT OFFENDER–**
"Three Strike" Warning–You have been convicted of an offense that is classified as a "most serious offense" under RCW 9.94A.030. A third conviction in Washington State of a most serious offense, regardless of whether the first two convictions occurred in a federal or non-Washington state court, will render you a "persistent offender."

"Two Strike" Warning–In addition, if this offense is (1) rape in the first degree, rape of a child in the first degree, rape in the second degree, rape of a child in the second degree, indecent liberties by forcible compulsion, or child molestation in the first degree; or (2) any of the following offenses with a finding of sexual motivation: murder in the first degree, murder in the second degree, homicide by abuse, kidnapping in the first degree, kidnapping in the second degree, assault in the first degree, assault in the second degree, assault of a child in the first degree, or a burglary in the first degree; or (3) any attempt to commit any of the crimes listed in RCW 9.94A.030(32), and you have at least one prior conviction for a crime listed in RCW 9.94A.030(32) in this state, federal court, or elsewhere, this will render you a "persistent offender." RCW 9.94A.030(32).

Persistent Offender Sentence–A persistent offender shall be sentenced to a term of total confinement for life without the possibility of early release, or, when authorized by RCW 10.95.030 for the crime of aggravated murder in the first degree, sentenced to death, notwithstanding the maximum sentence under any other law. RCW 9.94A.570.

☐ **5.8–DEPARTMENT OF LICENSING NOTICE–**The court finds that Count _____ is a felony in the commission of which a motor vehicle was used. **Clerk's Action–**The clerk shall forward an Abstract of Court Record to the DOL, which must revoke the Defendant's driver's license. RCW 46.20.285.

**5.8–TREATMENT RECORDS–**If the Defendant is or becomes subject to court-ordered mental health or chemical dependency treatment, the Defendant must notify DOC and must share the Defendant's treatment information with DOC for the duration of the Defendant's incarceration and supervision. RCW 9.94A.897.

**SO ORDERED IN OPEN COURT.**

DATED– _1/3/05_

_____   JUDGE   **JAY B. ROOF**

_____, WSBA No. _1326_   _____, WSBA No. _2520_
**Deputy Prosecuting Attorney**   **Attorney for Defendant**

_____
**DAMON JAHRON CLAIBORNE**
**Defendant**
If I have not previously done so, I hereby agree to waive my right to be present at any restitution proceedings: _____(initials)

JUDGMENT AND SENTENCE; Page 7
[Form revised December 15, 2002]

**Russell D. Hauge, Prosecuting Attorney**
Adult Criminal and Administrative Divisions
614 Division Street, MS-35
Port Orchard, WA 98366-4681
(360) 337-7174; Fax (360) 337-4949

000368

Translator signature/Print name—_____

I am a certified interpreter of, or the court has found me other wise qualified to interpret, the _____, which the Defendant understands. I translated this Judgment and Sentence for the Defendant into that language.

### IDENTIFICATION OF DEFENDANT

| | | | |
|---|---|---|---|
| Race: Black | Sex: Male | DOB: Redacted PII | Age: 33 |
| D/L: CLAIBDJ293C2 | D/L State: Washington | SID: WA22472263 | Height: 601 |
| Weight: 170 | JUVIS: Unknown | Eyes: Brown | Hair: Black |
| DOC: Unknown | SSN: Redacted PII | FBI: 475856FC0 | |

FINGERPRINTS–I attest that I saw the same Defendant who appeared in Court on this document affix his or her fingerprints and signature thereto.
Clerk of the Court—_____, Deputy Clerk. Date JAN 0 3 2005

DEFENDANT'S SIGNATURE—_____

| Left 4 fingers taken simultaneously | Left Thumb | Right Thumb | Right 4 fingers taken simultaneously |
|---|---|---|---|

Prosecutor's File Number–04-165877-1

Prosecutor Distribution–Original (Court Clerk); 1 copy (Prosecutor), 1 copy (DOC), 1 copy (Defense Atty); 1 copy (Pros Stat Keeper)

JUDGMENT AND SENTENCE; Page 8
[Form revised December 15, 2002]

Russell D. Hauge, Prosecuting Attorney
Adult Criminal and Administrative Divisions
614 Division Street, MS-35
Port Orchard, WA 98366-4681
(360) 337-7174; Fax (360) 337-4949

2 cy

1
2
3
4
5

RECEIVED AND FILED
IN OPEN COURT

JAN 0 3 2005

KITSAP COUNTY CLERK

6
7    IN THE KITSAP COUNTY SUPERIOR COURT

8
9    STATE OF WASHINGTON,                    )
10                      Plaintiff,           )    No. 04-1-01570-5
11                                           )    WARRANT OF COMMITMENT AND
                       v.                    )    ORDER FOR BIOLOGICAL SAMPLE (DNA)
12                                           )    ❑ Kitsap County Jail – Straight Time
13   DAMON JAHRON CLAIBORNE,                 )    ❑ Kitsap County Jail – Work Release
     Age: 33; DOB: ~~Redacted PII~~          )    ❑ Kitsap County Jail – Jail Alternatives
14                                           )    ☒ Department of Corrections (State Prison)
15                     Defendant.            )    ❑ Community Restitution (Service) Only

16   **Confinement Ordered**–The Defendant is ordered          /___  ❑ **Days** ☒ **Months**
     to serve the following period of confinement–
17   ❑ **DOSA Sentence**–*actual time to serve under DOSA is one-half (½) of the ordered sentence.*
18   ❑ **Concurrent**–This commitment is concurrent to:    ❑ all sentences ordered by Kitsap County courts.
        ❑ sentence(s) ordered in cause no.(s): _____
19   You, the director, and officers of the Department of Corrections (DOC), if applicable, are commanded to
20   receive or deliver the Defendant for classification, confinement and placement to the agency checked in the
     caption above consistent with this Order and related disposition document. The Defendant shall receive
21   credit for time served prior to sentencing solely for this cause number as computed by the jail or DOC.
     **Commencement of Confinement**–Confinement shall begin *immediately* unless otherwise stated–
22      ❑ Future Date–_____    ❑ Time–_____ *After sentencing, the Defendant shall report
23   immediately to the Kitsap County Jail to arrange for future confinement.*
     ☒ **DNA**–The Defendant shall submit to collection of a biological sample for DNA identification, by the
24   Kitsap County Jail (0–12 mo. sentence) or by DOC (sentence over 12 mo.). RCW 43.43.754.
25   *Note: If the Defendant is not placed into custody at the time of sentencing, the Defendant shall report
     immediately to the Kitsap County Jail to arrange for collection of a biological sample for DNA.*
26
27   DATED– ___ (13/05

28   PRESENTED BY–                              JUDGE
29                                              APPROVED FOR ENTRY–
30   _____, WSBA No. ____          _____, WSBA No. 25___
     Deputy Prosecuting Attorney                Attorney for Defendant
31                                              Prosecutor's File Number–04-165877-1

WARRANT OF COMMITMENT; Page 1                      Russell D. Hauge, Prosecuting Attorney
[Form revised July 1, 2002]                                            Adult Criminal and Administrative Divisions
                                                                       614 Division Street, MS-35
                                                                       Port Orchard, WA 98366-4681
                                                                       (360) 337-7174; Fax (360) 337-4949

RECEIVED AND FILED
IN OPEN COURT

NOV 1 2 2004

KITSAP COUNTY CLERK

## IN THE KITSAP COUNTY SUPERIOR COURT

STATE OF WASHINGTON,           )
                               )  No. 04-1-01570-5
                  Plaintiff,   )
                               )  FIRST AMENDED INFORMATION
        v.                     )
                               )  (Total Counts Filed – 1)
DAMON JAHRON CLAIBORNE,        )
Age: 33; DOB: [Redacted PII]   )
                               )
                  Defendant.   )

COMES NOW the Plaintiff, STATE OF WASHINGTON, by and through its attorney, CAMI G. LEWIS, WSBA NO. 30568, Deputy Prosecuting Attorney, and hereby alleges that contrary to the form, force and effect of the ordinances and/or statutes in such cases made and provided, and against the peace and dignity of the STATE OF WASHINGTON, the above-named Defendant did commit the following offense(s)–

### COUNT I
### Child Molestation in the Second Degree

On or between September 1, 2004 and September 30, 2004, in the County of Kitsap, State of Washington, the above-named Defendant, being at least thirty-six (36) months older than the victim, had sexual contact with another person who was at least twelve (12) years old but less than fourteen (14) years old and not married to the Defendant, to-wit: [Redacted PII] contrary to the Revised Code of Washington 9A.44.086.

(MAXIMUM PENALTY–Ten (10) years imprisonment and/or a $20,000 fine pursuant to RCW 9A.44.086(2) and 9A.20.021(1)(b), plus restitution and assessments.)

CHARGING DOCUMENT; Page 1 of 3



Russell D. Hauge, Prosecuting Attorney
Special Assault Unit
614 Division Street, MS-35
Port Orchard, WA 98366-4681
(360) 337-7148; Fax (360) 337-7229

ORIGINAL

000371

1  (If the Defendant has previously been convicted on two separate occasions of a "most serious

2  offense" as defined by RCW 9.94A.030(24), in this state, in federal court, or elsewhere, the
mandatory penalty for this offense is life imprisonment without the possibility of parole pursuant

3  to RCW 9.94A.030(27)(a) and 9.94A.120(4).)

4  JIS Code:     9A.44.086    Child Molestation 2

5

6        I certify (or declare) under penalty of perjury under the laws of the State of Washington

7  that I have probable cause to believe that the above-named Defendant committed the above

8  offense(s), and that the foregoing is true and correct to the best of my knowledge, information and

9  belief.

10  DATED: November 8, 2004         STATE OF WASHINGTON
    PLACE: Port Orchard, WA

11

12                             CAMI G. LEWIS, WSBA No. 30568

13                             Deputy Prosecuting Attorney

14        All suspects associated with this incident are—

15                  Damon Jahron Claiborne

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

CHARGING DOCUMENT; Page 2 of 3



**Russell D. Hauge, Prosecuting Attorney**
Special Assault Unit
614 Division Street, MS-35
Port Orchard, WA  98366-4681
(360) 337-7148; Fax (360) 337-7229

## DEFENDANT IDENTIFICATION INFORMATION

DAMON JAHRON CLAIBORNE
339539 Mb #126
Fort Lewis, Wa 98433

**Alias Name(s), Date(s) of Birth, and SS Number**
[PERSON ALIAS DOB SSN]

[Address source–(1) Kitsap County Jail records if Defendant in custody, or law enforcement report noted below if Defendant not in custody, or (2) Washington Department of Licensing abstract of driving record if no other address information available]

| Race: Black | Sex: Male | DOB: Redacted PII | Age: 33 |
|---|---|---|---|
| D/L: CLAIBDJ293C2 | D/L State: Washington | SID: WA22472263 | Height: 601 |
| Weight: 170 | JUVIS: Unknown | Eyes: Brown | Hair: Black |
| DOC: Unknown | SSN: Redacted PII | FBI: 475856FC0 | |

## LAW ENFORCEMENT INFORMATION

Incident Location: Olympic Drive, Port Orchard, WA [Incident Address Zip]

Law Enforcement Report No.: 2004SO012773

Law Enforcement Filing Officer: Frank Nmi Davalos, KCSO138

Law Enforcement Agency: Kitsap County Sheriff's Office

Motor Vehicle Involved? No

Domestic Violence Charge(s)? No

Law Enforcement Bail Amount? Unknown

## CLERK ACTION REQUIRED

No Action Required

## PROSECUTOR DISTRIBUTION INFORMATION

| Superior Court | District & Municipal Court |
|---|---|
| **Original Charging Document–**<br>Original +3 copies to Clerk<br>1 copy to file<br>1 copy to DOC<br>**Amended Charging Document(s)–**<br>Original +3 copies to Clerk<br>1 copy to file | **Original Charging Document–**<br>Original +2 copies to Clerk<br>1 copy to file<br>**Amended Charging Document(s)–**<br>Original +2 copies clipped inside file on top of left side<br>1 copy to file |

Prosecutor's File Number–04-165877-1

CHARGING DOCUMENT; Page 3 of 3

Russell D. Hauge, Prosecuting Attorney
Special Assault Unit
614 Division Street, MS-35
Port Orchard, WA  98366-4681
(360) 337-7148; Fax (360) 337-7229

RECEIVED AND FILED
IN OPEN COURT

NOV 1 2 2004

KITSAP COUNTY CLERK

**SUPERIOR COURT OF WASHINGTON**
**KITSAP COUNTY**

STATE OF WASHINGTON,

               Plaintiff

vs.

Damon Jahron Claiborne
               Defendant.

NO. 04 1 01570 5

**STATEMENT OF DEFENDANT ON PLEA OF GUILTY**

*SEX OFFENSE*

(STTDFG)

1.    My true name is: Damon Jahron Claiborne

2.    My age is: 33

3.    I went through the 12t grade.

4.    I HAVE BEEN INFORMED AND FULLY UNDERSTAND THAT:

     (a)   I have the right to representation by a lawyer and that if I cannot afford to pay for a lawyer, one will be provided at no expense to me.

     (b)   I am charged with: Child molestation second degree
          The elements are: See the information

5.    I UNDERSTAND I HAVE THE FOLLOWING IMPORTANT RIGHTS, AND I GIVE THEM ALL UP BY PLEADING GUILTY:

     (a)   The right to a speedy and public trial by an impartial jury in the county where the crime is alleged to have been committed;

     (b)   The right to remain silent before and during trial, and the right to refuse to testify against myself;

000374

(c)     The right at trial to hear and question the witnesses who testify against me;

(d)     The right at trial to testify and to have witnesses testify for me.  These witnesses can be made to appear at no expense to me;

(e)     I am presumed innocent unless the charge is proven beyond a reasonable doubt or I enter a plea of guilty;

(f)     The right to appeal a finding of guilt after a trial.

6.     IN CONSIDERING THE CONSEQUENCES OF MY GUILTY PLEA, I UNDERSTAND THAT:

(a)     Each crime with which I am charged carries a maximum sentence, a fine, and a STANDARD SENTENCE RANGE as follows:

| COUNT NO | OFFENDER SCORE | STANDARD RANGE ACTUAL CONFINEMENT (not including enhancements) | PLUS Enhancements* | TOTAL ACTUAL CONFINEMENT (standard range including enhancements) | COMMUNITY CUSTODY RANGE (Only applicable for crimes committed on or after July 1, 2000. For crimes committed prior to July 1, 2000, see paragraph 6(f)) | MAXIMUM TERM AND FINE |
|---|---|---|---|---|---|---|
| 1 | 0 | 15-20 mo | 0 | 15-20 mo | 36-48 mo. | 10 yrs $20000 |
| 2 | | | | | | |
| 3 | | | | | | |

*(F) Firearm, (D) other deadly weapon, (V) VUCSA in protected zone, (VH) Veh. Hom, See RCW 46.61.520, (JP) Juvenile present

(b)     The standard sentence range is based on the crime charged and my criminal history.  Criminal history includes prior convictions and juvenile adjudications or convictions, whether in this state, in federal court, or elsewhere.

(c)     The prosecuting attorney's statement of my criminal history is attached to this agreement.  Unless I have attached a different statement, I agree that the prosecuting attorney's statement is correct and complete.  If I have attached my own statement, I assert that it is correct and complete.  If I am convicted of any additional crimes between now and the time I am sentenced, I am obligated to tell the sentencing judge about those convictions.

(d)     If I am convicted of any new crimes before sentencing, or if any additional criminal history is discovered, both the standard sentence range and the prosecuting attorney's recommendation may increase.  Even so, my plea of guilty to this charge is binding on me.  I cannot change my mind if additional criminal history is discovered even though the standard sentencing range and the prosecuting attorney's recommendation increase or a mandatory sentence of life imprisonment without the possibility of parole is required by law.

(e)     In addition to sentencing me to confinement, the judge will order me to pay $500.00 as a victim's compensation fund assessment.  If this crime resulted in injury to any person or damage to or loss of property, the judge will order me to make restitution, unless extraordinary circumstances exist which make restitution inappropriate.  The amount of restitution may be up to double my gain or double the victim's loss.  The judge may also order that I pay a fine, court costs, attorney fees and the costs of incarceration.

(f)    **For sex crimes committed prior to July 1, 2000:**
In addition to sentencing me to confinement, the judge may order me to serve up to one year of community supervision if the total period of confinement ordered is not more than 12 months. If the period of confinement is more than one year, the judge will order me to serve three years of community custody or up to the period of earned early release, whichever is longer. During the period of community custody, I will be under the supervision of the Department of Corrections, and I will have restrictions placed on my activities.

**For sex crimes committed on or after July 1, 2000, but prior to September 1, 2001:**
In addition to sentencing me to confinement, the judge may order me to serve up to one year of community custody if the total period of confinement ordered is not more than 12 months. If the period of confinement is over one year, the judge will sentence me to community custody for a period of 36 to 48 months or up to the period of earned release, whichever is longer. During the period of community custody to which I am sentenced, I will be under the supervision of the Department of Corrections, and I will have restrictions placed on my activities.

During the period of community custody I will be under the supervision of the Department of Corrections, and I will have restrictions placed on my activities. My failure to comply with these conditions will render me ineligible for general assistance, RCW 74.04.005(6)(h), and may result in the Department of Corrections transferring me to a more restrictive confinement status or other sanctions.

**For sex crimes committed on or after September 1, 2001:**
(i) **[Sentencing under RCW 9.94A.712]:** If the current offense is listed in subsection (6)(f)(i)(a), or if the current offense is for any sex crime other than failure to register as a sex offender and other than that listed in paragraph (6)(f)(i)(a), and I have a prior conviction of an offense listed in (6)(f)(i)(b), whether in this state or elsewhere, the judge will impose a maximum term consisting of the statutory maximum sentence of the offense and a minimum term either within the standard range for the offense or outside the standard range if an exceptional sentence is appropriate. The minimum term that is imposed may be increased by the Indeterminate Sentencing Review Board if the Board determines by a preponderance of the evidence that it is more likely than not that I will commit sex offenses if released from custody. In addition to the period of confinement, I will be sentenced to community custody for any period of time I am released from total confinement before the expiration of the maximum sentence. During the period of community custody I will be under the supervision of the Department of Corrections, and I will have restrictions placed on my activities and I may be required to participate in rehabilitative programs. My failure to comply with these conditions will render me ineligible for general assistance, RCW 74.04.005(6)(h), and may result in the Department of Corrections transferring me to a more restrictive confinement status or other sanctions.

(a) (1) an actual or attempted:
 ▪ rape in the first degree
 ▪ rape of a child in the first degree committed when I was eighteen years of age

or older
- rape in the second degree
- rape of a child in the second degree committed when I was eighteen years of age or older
- indecent liberties by forcible compulsion, or
- child molestation in the first degree committed when I was eighteen years of age or older; or

(2) with a finding of sexual motivation, an actual or attempted:
- murder in the first degree
- murder in the second degree
- homicide by abuse
- kidnapping in the first degree
- kidnapping in the second degree
- assault in the first degree
- assault in the second degree
- assault of a child in the first degree or
- burglary in the first degree.

(b) (1) An actual or attempted:
- rape in the first degree
- rape of a child in the first degree when I was sixteen years or older
- rape in the second degree
- rape of a child in the second degree when I was eighteen years or older
- indecent liberties by forcible compulsion, or
- child molestation in the first degree; or

(2) with a finding of sexual motivation, an actual or attempted:
- murder in the first degree
- murder in the second degree
- homicide by abuse
- kidnapping in the first degree
- kidnapping in the second degree
- assault in the first degree
- assault in the second degree
- assault of a child in the first degree, or
- burglary in the first degree.

(ii) If this offense is for any sex crime other than that listed in paragraph (6)(f)(i)(a) and if my prior convictions do not include those listed in paragraph (6)(f)(i)(b), then in addition to sentencing me to a term of confinement, unless I am being sentenced under RCW 9.94A.670, the court will sentence me to community custody for a period of 36 to 48 months or up to the period of earned release, which ever is longer. During the period of community custody I will be under the supervision of the Department of Corrections, and I will have restrictions placed on my activities. My failure to comply with these conditions will render me ineligible for general assistance, RCW 74.04.005(6)(h), and may result in the Department of Corrections transferring me to a more restrictive confinement status or other sanctions.

---

(g)     The prosecuting attorney will make the following recommendation to the judge: _____
_____
_____

         _X_ The prosecutor will recommend as stated in the plea agreement, which is incorporated
         by reference.

(h)     The judge does not have to follow anyone's recommendation as to sentence. The judge
        must impose a sentence within the standard range unless the judge finds substantial and
        compelling reasons not to do so. If the judge goes outside the standard range, either the
        state or I can appeal that sentence. If the sentence is within the standard range, no one can
        appeal the sentence.

(i)     If I am not a citizen of the United States, a plea of guilty to an offense punishable as a crime
        under state law is grounds for deportation, exclusion from admission to the United States,
        or denial of naturalization pursuant to the laws of the United States.

(j)     I understand that I may not possess, own, or have under my control any firearm unless my
        right to do so is restored by a court of record and that I must immediately surrender any
        concealed pistol license. RCW 9.41.040.

(k)     Public assistance will be suspended during any period of imprisonment and during any time
        I am a fugitive or not in compliance with the terms of supervision.
        *See* 42 U.S.C. § 608(a)(9).

(l)     Because this crime involves a sex offense, I will be required to register where I reside,
        study or work. The specific registration requirements are set forth in Attachment "A."

(m)     Because this crime involves a sex offense, I will be required to provide a sample of my
        blood for purposes of DNA identification analysis.

(n)     Because this crime involves a sexual offense, I will be required to undergo testing for the
        human immunodeficiency (AIDS) virus.


**NOTIFICATION RELATING TO SPECIFIC CRIMES:**
**IF ANY OF THE FOLLOWING PARAGRAPHS DO NOT APPLY, THEY SHOULD BE**
**STRICKEN AND INITIALED BY THE DEFENDANT AND THE JUDGE.**

[ o ]   This offense is a most serious offense or strike as defined by RCW 9.94A.030, and if I have
        at least two prior convictions for most serious offenses, whether in this state, in federal
        court, or elsewhere, the crime for which I am charged carries a mandatory sentence of life
        imprisonment without the possibility of parole. In addition, if this offense is
        (1) an actual or attempted:
            • rape in the first degree
            • rape of a child in the first degree
            • rape in the second degree
            • rape of a child in the second degree
            • indecent liberties by forcible compulsion, or
              child molestation in the first degree; or

*D.C.*

STATEMENT ON PLEA OF GUILTY *SEX OFFENSE* (STTDFG) - Page 5 of 8
CrR 4.2(g)(4/2002)
G:\SCRT\DATA\FORMS\Criminal Forms\Guilty Plea2002 ms.doc

(2) with a finding of sexual motivation, an actual or attempted:
- murder in the first degree
- murder in the second degree
- homicide by abuse
- kidnapping in the first degree
- kidnapping in the second degree
- assault in the first degree
- assault in the second degree
- assault of a child in the first degree, or
- burglary in the first degree;

and I have at least one prior conviction for one of these listed crimes in this state, in federal court, or elsewhere, the crime for which I am charged carries a mandatory sentence of life imprisonment without the possibility of parole.

[ p ]    **For crimes committed prior to September 1, 2001:** The judge may suspend execution of the standard range term of confinement under the special sex offender sentencing alternative (SSOSA) if I qualify under former RCW 9.94A.120(8) (for crimes committed prior to July 1, 2001) or RCW 9.94A.670 (for crimes committed on or after July 1, 2001). If the judge suspends execution of the standard range term of confinement, I will be placed on community custody for the length of the suspended sentence or three years, which ever is greater; I will be ordered to serve up to 180 days of total confinement; I will be ordered to participate in sex offender treatment; and I will be subject to all of the conditions described in paragraph 6(e). Additionally, the judge could require me to devote time to a specific occupation and to pursue a prescribed course of study or occupational training. If a violation of the sentence occurs during community custody, the judge may revoke the suspended sentence.

**For crimes committed on or after September 1, 2001:** The judge may suspend execution of the standard range term of confinement or the minimum term of confinement under the special sex offender sentencing alternative (SSOSA) if I qualify under or RCW 9.94A.670.

If my current offense is for any sex crime other than that listed in paragraph (6)(f)(i)(a) and if my prior convictions do not include those listed in paragraph (6)(f)(i)(b), and the judge suspends execution of the standard range term of confinement, I will be placed on community custody for the length of the suspended sentence or three years, which ever is greater; I will be ordered to serve up to 180 days of total confinement; I will be ordered to participate in sex offender treatment; and I will be subject to all of the conditions described in paragraph (6)(e).

If my current offense is for a sex crime listed in paragraph (6)(f)(i)(a) or if my current offense is for any sex crime other than failure to register as a sex offender and other than that listed in paragraph (6)(f)(i)(a), and I have a prior conviction of an offense listed in (6)(f)(i)(b), I will be placed on community custody for the length of the statutory maximum sentence of the offense; in addition to the term of community custody , I will be ordered to serve up to 180 days of total confinement; I will be ordered to participate in sex offender treatment; and I will be subject to all of the conditions described in paragraph 6(e). Additionally, the judge could require me to devote time to a specific occupation and to pursue a prescribed course of study or occupational training. If a

000379

violation of the sentence occurs during community custody, the judge may revoke the suspended sentence.

[ q ]    If this is a crime of domestic violence and if I, or the victim of the offense, have a minor child, the court may order me to participate in a domestic violence perpetrator program approved under RCW 26.50.150.

[ r ]    If the judge finds that I have a chemical dependency that has contributed to the offense, the judge may order me to participate in rehabilitative programs or otherwise to perform affirmative conduct reasonably related to the circumstances of the crime for which I am pleading guilty.

[ s ]    If this crime involves a motor vehicle, my driver's license or privilege to drive will be suspended or revoked. If I have a driver's license, I must now surrender it to the judge.

[ t ]    The crime of _____ has a mandatory minimum sentence of at least _____ years of total confinement. The law does not allow any reduction of this sentence. This mandatory minimum sentence is not the same as the mandatory sentence of life imprisonment without the possibility of parole described in paragraph 6[o].

[ u ]    I am being sentenced for two or more serious violent offenses arising from separate and distinct criminal conduct and the sentences imposed on counts _____ and _____ will run consecutively unless the judge finds substantial and compelling reasons to do otherwise.

[ v ]    I understand that the offense(s) I am pleading guilty to include a deadly weapon or firearm enhancement. Deadly weapon or firearm enhancements are mandatory, they must be served in total confinement, and they must run consecutively to any other sentence and to any other deadly weapon or firearm enhancements.

7.    I plead guilty to:

count _One_____

count _____

count _____

of the _First amended___ Information. I have received a copy of that Information.

8.    I make this plea freely and voluntarily.

9.    No one has threatened harm of any kind to me or to any other person to cause me to make this plea.

10.    No person has made promises of any kind to cause me to enter this plea except as set forth in this statement.

11.  The judge has asked me to state what I did in my own words that makes me guilty of this crime. This is my statement:_____

_Alford plea_____

_____

_____

_____

☒ Instead of making a statement, I agree that the court may review the police reports and/or a statement of probable cause supplied by the prosecution to establish a factual basis for the plea.

12.  My lawyer has explained to me, and we have fully discussed, all of the above paragraphs and Attachment "A". I understand them all. I have been given a copy of this "Statement of Defendant on Plea of Guilty." I have no further questions to ask the judge.

_____
Defendant

I have read and discussed this statement with the defendant and believe that the defendant is competent and fully understands the statement.

_____
Prosecuting Attorney      Bar # 30528          Defendant's Lawyer      Bar # 25200

Lewis                                                      Adam
_____
Print Name                                                 Print Name

The foregoing statement was signed by the defendant in open court in the presence of the defendant's lawyer and the undersigned judge. The defendant asserted that [check appropriate box]:

☒ (a)   The defendant had previously read the entire statement above and that the defendant understood it in full;

☐ (b)   The defendant's lawyer had previously read to him or her the entire statement above and that the defendant understood it in full; or

☐ (c)   An interpreter had previously read to the defendant the entire statement above and that the defendant understood it in full. The Interpreter's Declaration is attached.

I find the defendant's plea of guilty to be knowingly, intelligently and voluntarily made. Defendant understands the charges and the consequences of the plea. There is a factual basis for the plea. The defendant is guilty as charged.

Dated:   11/12/04                            Judge _____

| Original | - Court File |
|----------|--------------|
| cc: Yellow | - Defendant |

STATEMENT ON PLEA OF GUILTY *SEX OFFENSE* (STTDFG) - Page 8 of 8
CrR 4.2(g)(4/2002)
G:\SCRT\DATA\FORMS\Criminal Forms\Guilty Plea2002 sex.doc

000381

RECEIVED AND FILED
IN OPEN COURT

NOV 1 2 2004

KITSAP COUNTY CLERK



**SUPERIOR COURT OF WASHINGTON
KITSAP COUNTY**

STATE OF WASHINGTON,

                         Plaintiff

vs.

Damon Claiborne,

                         Defendant.

NO. 04 1 01570 5

**ATTACHMENT "A" to STATEMENT
OF DEFENDANT ON PLEA OF GUILTY**

➢  **Use with *all* sex offenses**
➢  Use *if required* with non-sex offenses
   [*see* paragraph 6(n)]

---

Because this crime involves a sex offense, or a kidnapping offense involving a minor as defined in RCW 9A.44.130, I will be required to register with the sheriff of the county of the state of Washington where I reside. If I am not a resident of Washington but I am a student in Washington or I am employed in Washington or I carry on a vocation in Washington, I must register with the sheriff of the county of my school, place of employment, or vocation. I must register immediately upon being sentenced unless I am in custody, in which case I must register at the time of my release with the person designated by the agency that has me in custody and I must also register within 24 hours of my release with the sheriff of the county of the state of Washington where I will be residing, or if not residing in the state of Washington, where I am a student, where I am employed, or where I carry on a vocation.

If I leave this state following my sentencing or release from custody but later move back to Washington, I must register within 30 days after moving to this state or within 24 hours after doing so if I am under the jurisdiction of this state's Department of Corrections. If I leave this state following my sentencing or release from custody, but later while not a resident of Washington I become employed in Washington, carry out a vocation in Washington, or attend school in Washington, I must register within 30 days after attending school in this state or becoming employed or carrying out a vocation in this state, or within 24 hours after doing so if I am under the jurisdiction of this state's Department of Corrections.

If I change my residence within a county, I must send written notice of my change of residence to the sheriff within 72 hours of moving. If I change my residence to a new county within this state, I must send written notice of the change of address at least 14 days before moving to the county sheriff in the new county of residence, I must register with the sheriff of the new county within 24 hours of moving, and I must also give written notice of my change of address to the sheriff of the county where last registered within 10 days of

000382

moving.  If I move out of Washington State, I must send written notice within 10 days of moving to the new state or foreign country to the county sheriff with whom I last registered in Washington State.

If I move to another state, or if I work, carry on a vocation, or attend school in another state I must register a new address, fingerprints, and photograph with the new state within 10 days after establishing residence, or after beginning to work, carry on a vocation, or attend school in the new state.  I must also send written notice within 10 days of moving to the new state or to a foreign country to the county sheriff with whom I last registered in Washington State.

If I am a resident of Washington and I am admitted to a public or private institution of higher education, I shall, within 10 days of enrolling or by the first business day after arriving at the institution, whichever is earlier, notify the sheriff of the county of my residence of my intent to attend the institution.

If I lack a fixed residence, I am required to register.  Registration must occur within 24 hours of release in the county where I am being supervised if I do not have a residence at the time of my release from custody or within 48 hours, excluding weekends and holidays, after ceasing to have a fixed residence.  If I enter a different county and stay there for more than 24 hours, I will be required to register in the new county.  I must also report in person to the sheriff of the county where I am registered on a weekly basis.  The weekly report will be on a day specified by the county sheriff's office, and shall occur during normal business hours.  I may be required to provide a list of the locations where I have stayed during the last 7 days.  The lack of a fixed residence is a factor that may be considered in determining a sex offender's risk level and shall make me subject to disclosure to the public at large, pursuant to RCW 4.24.550.

If I apply for a name change, I must submit a copy of the application to the county sheriff of the county of my residence and to the state patrol not fewer than five days before the entry of an order granting the name change.  If I receive an order changing my name, I must submit a copy of the order to the county sheriff of the county of my residence and to the state patrol within 5 days of the entry of the order.  RCW 9A.44.130(7).

**My lawyer has explained to me, and we have fully discussed, all of the above requirements.  I understand them.  I have been given a copy of this Attachment "A".**

_____
Defendant

**I have read and discussed this statement with the defendant and believe that the defendant is competent and fully understands the statement.**

_____
Defendant's Lawyer          Bar # 2 5 2 0 5

000383

**CONFINEMENT ORDERS**

Circle the appropriate copy designator

Copy 1   Copy 2   Copy 3   Copy 4

## PERSONNEL ACTION

For use of this form, see AR 600-8-6 and DA PAM 600-8-21; the proponent agency is ODCSPER

### DATA REQUIRED BY THE PRIVACY ACT OF 1974

| | |
|---|---|
| AUTHORITY | Title 5, Section 3012; Title 10, USC, E.O. 9397 |
| PRINCIPAL PURPOSE: | Used by soldier in accordance with DA PAM 600-8-21 when requesting a personnel action on his/her own behalf (Section III). |
| ROUTINE USES: | To initiate the processing of a personnel action being requested by the soldier. |
| DISCLOSURE: | Voluntary. Failure to provide social security number may result in a delay or error in processing of the request for personnel action. |

| 1. THRU (Include ZIP Code) Commander, 593rd Corps Support Group Fort Lewis, WA 98433 | 2. TO (Include ZIP Code) Commander, 22nd Personnel Service Battalion Fort Lewis, WA 98433 | 3. FROM (Include ZIP Code) Commander, 528th Quartermaster Company Fort Lewis, WA 98433 |
|---|---|---|

### SECTION I - PERSONAL IDENTIFICATION

| 4. NAME (Last, First, MI) CLAIBORNE, DAMON | 5. GRADE OR RANK/PMOS/AOC SPC/92R | 6. SOCIAL SECURITY NUMBER Redacted PII |
|---|---|---|

### SECTION II - DUTY STATUS CHANGE (AR 600-8-6)

7. The above soldier's duty status is changed from PRESENT FOR DUTY to

CIVILIAN CONFINEMENT   effective ___1300___ hours, ___28 OCTOBER___ 2004

### SECTION III - REQUEST FOR PERSONNEL ACTION

8. I request the following action: (Check as appropriate)

| | | |
|---|---|---|
| Service School (Enl only) | Special Forces Training/Assignment | Identification Card |
| ROTC or Reserve Component Duty | On-the-Job Training (Enl only) | Identification Tags |
| Volunteering for Overseas Service | Retesting in Army Personnel Tests | Separate Rations |
| Ranger Training | Reassignment Married Army Couples | Leave - Excess/Advance/Outside CONUS |
| Reassignment Extreme Family Problems | Reclassification | Change of Name/SSN/DOB |
| Exchange Reassignment (Enl only) | Officer Candidate School | Other (Specify) |
| Airborne Training | Asgmt of Pers with Exceptional Family Members | |

| 9. SIGNATURE OF SOLDIER (When required) | 10. DATE (YYYYMMDD) |
|---|---|

### SECTION IV - REMARKS (Applies to Sections II, III, and V) (Continue on separate sheet)

### SECTION V - CERTIFICATION/APPROVAL/DISAPPROVAL

11. I certify that the duty status change (Section II) or that the request for personnel action (Section III) contained herein -

| ☒ HAS BEEN VERIFIED ☐ RECOMMEND APPROVAL ☐ RECOMMEND DISAPPROVAL ☐ IS APPROVED ☐ IS DISAPPROVED | | |
|---|---|---|
| 12. COMMANDER/AUTHORIZED REPRESENTATIVE DEXTER S. JOHNSON CPT, QM, CDR | 13. SIGNATURE | 14. DATE (YYYYMMDD) |

000384

✳ RETURN TO DUTY FROM INCARCERATION ✳

Circle the appropriate copy designation

| Copy 1 | Copy 2 | Copy 3 | Copy 4 |

## PERSONNEL ACTION

For use of this form, see AR 600-8-6 and DA PAM 600-8-21; the proponent agency is ODCSPER

### DATA REQUIRED BY THE PRIVACY ACT OF 1974

| | |
|---|---|
| AUTHORITY: | Title 5, Section 3012; Title 10, USC, E.O. 9397. |
| PRINCIPAL | Used by soldier in accordance with DA PAM 600-8-21 when requesting a personnel action on his/her own behalf *(Section III)*. |
| ROUTINE USES: | To initiate the processing of a personnel action being requested by the soldier. |
| DISCLOSURE: | Voluntary. Failure to provide social security number may result in a delay or error in processing of the request for personnel action. |

| 1. THRU *(Include ZIP Code)* | 2. TO *(Include ZIP Code)* | 3. FROM *(Include ZIP Code)* |
|---|---|---|
| Commander, 44th Corps Support Battalion Fort Lewis, Wa. 98433 | Commander, 22nd Personnel Services Battalion Fort Lewis, Wa 98433 | Commander, 528th Quartermaster Company Fort Lewis, Wa 98433 |

### SECTION I - PERSONAL IDENTIFICATION

| 4. NAME *(Last, First, MI)* Claiborne, Damion L | 5. GRADE OR RANK/PMOS/AOC E4/92F10 | 6. SOCIAL SECURITY NUMBER Redacted PII |
|---|---|---|

### SECTION II - DUTY STATUS CHANGE *(AR 600-8-6)*

7. The above soldier's duty status is changed from   Civilian Confinement   to

Present For Duty   effective   630   hours.   06 Jan 2006

### SECTION III - REQUEST FOR PERSONNEL ACTION

8. I request the following action: *(Check as appropriate)*

| | | |
|---|---|---|
| Service School *(Enl only)* | Special Forces Training/Assignment | Identification Card |
| ROTC or Reserve Component Duty | On-the-Job Training *(Enl only)* | Identification Tags |
| Volunteering For Overseas Service | Retesting In Army Personnel Tests | Separate Rations |
| Ranger Training | Reassignment Married Army Couples | Leave - Excess/Advance/Outside CONUS |
| Reassignment Extreme Family Problems | Reclassification | Change of Name/SSN/DOB |
| Exchange Reassignment *(Enl only)* | Officer Candidate School | Other *(Specify)* |
| Airborne Training | Asgmt of Pers with Exceptional Family Members | |

| 9. SIGNATURE OF SOLDIER *(When required)* | 10. DATE *(YYYYMMDD)* |
|---|---|

### SECTION IV - REMARKS *(Applies to Sections II, III, and V) (Continue on separate sheet)*

### SECTION V - CERTIFICATION/APPROVAL/DISAPPROVAL

11. I certify that the duty status change *(Section II)* or that the request for personnel action *(Section III)* contained herein -

| HAS BEEN VERIFIED | RECOMMEND APPROVAL | RECOMMEND DISAPPROVAL | IS APPROVED | IS DISAPPROVED |
|---|---|---|---|---|

| 12. COMMANDER/AUTHORIZED REPRESENTATIVE Scott L. McKendall, SSG, QM, CDR | 13. SIGNATURE | 14. DATE *(YYYYMMDD)* 2006-01-2? |
|---|---|---|

DA FORM 4187, JAN 2000        PREVIOUS EDITIONS ARE OBSOLETE        URAPA V4.06

| REPORT OF MEDICAL EXAMINATION | 1. DATE OF EXAMINATION (YYYYMMDD) 20140623 | 2. SOCIAL SECURITY NUMBER Redacted PII |
|---|---|---|

### PRIVACY ACT STATEMENT

**AUTHORITY:** 10 USC 504, 505, 507, 532, 978, 1201, 1202, and 4346; and E.O. 9397.

**PRINCIPAL PURPOSE(S):** To obtain medical data for determination of medical fitness for enlistment, induction, appointment and retention for applicants and members of the Armed Forces. The information will also be used for medical boards and separation of Service members from the Armed Forces.

**ROUTINE USE(S):** None.

**DISCLOSURE:** Voluntary; however, failure by an applicant to provide the information may result in delay or possible rejection of the individual's application to enter the Armed Forces. For an Armed Forces member, failure to provide the information may result in the individual being placed in a non-deployable status.

| 3. LAST NAME - FIRST NAME - MIDDLE NAME (SUFFIX) Claiborne Damon J | 4. HOME ADDRESS (Street, Apartment Number, City, State and ZIP Code) Redacted PII | 5. HOME TELEPHONE NUMBER (Include Area Code) Redacted PII |
|---|---|---|

| 6. GRADE E-6 | 7. DATE OF BIRTH Redacted PII | 8. AGE 43 | 9. SEX ☐ Female ☒ Male | 10.a. RACIAL CATEGORY (X one or more) ☐ American Indian or Alaska Native ☐ Asian ☒ Black or African American ☐ White ☐ Native Hawaiian or Other Pacific Islander | b. ETHNIC CATEGORY ☐ Hispanic/Latino ☒ Not Hispanic/Latino |
|---|---|---|---|---|---|

| 11. TOTAL YEARS GOVERNMENT SERVICE a. MILITARY 24 b. CIVILIAN | 12. AGENCY (Non-Service Members Only) | 13. ORGANIZATION UNIT AND UIC/CODE 4770473 Duty/Cell Phone: |
|---|---|---|

| 14.a. RATING OR SPECIALTY (Aviators Only) | b. TOTAL FLYING TIME | c. LAST SIX MONTHS |
|---|---|---|

| 15.a. SERVICE | b. COMPONENT | c. PURPOSE OF EXAMINATION | | 16. NAME OF EXAMINING LOCATION, AND ADDRESS (Include ZIP Code) |
|---|---|---|---|---|
| ☒ Army ☐ Navy ☐ Marine Corps ☐ Air Force ☐ Coast Guard | ☒ Active Duty ☐ Reserve ☐ National Guard | ☒ Enlistment ☐ Commission ☐ Retention ☒ Separation | ☐ Medical Board ☐ Retirement ☐ U.S. Service Academy ☐ ROTC Scholarship Program ☐ Other | Madigan Army Medical Center MCHJ-CLZ (Physical Exams) Old Nisqually Clinic Tacoma, WA 98431-1100 |

### CLINICAL EVALUATION (Check each item in appropriate column. Enter "NE" if not evaluated.)

| | Nor-mal | Ab-norm | NE | 44. NOTES: (Describe every abnormality in detail. Enter pertinent item number before each comment. Continue in item 73 and use additional sheets if necessary.) |
|---|---|---|---|---|
| 17. Head, face, neck, and scalp | ✓ | | | |
| 18. Nose | ✓ | | | |
| 19. Sinuses | ✓ | | | |
| 20. Mouth and throat | ✓ | | | |
| 21. Ears - General (Int. and ext. canals/Auditory acuity under item 71) | ✓ | | | |
| 22. Drums (Perforation) | ✓ | | | |
| 23. Eyes - General (Visual acuity and refraction under items 61 - 63) | ✓ | | | |
| 24. Ophthalmoscopic | ✓ | | | |
| 25. Pupils (Equality and reaction) | ✓ | | | |
| 26. Ocular motility (Associated parallel movements, nystagmus) | ✓ | | | |
| 27. Heart (Thrust, size, rhythm, sounds) | ✓ | | | |
| 28. Lungs and chest (Include breasts) | ✓ | | | |
| 29. Vascular system (Varicosities, etc.) | ✓ | | | |
| 30. Anus and rectum (Hemorrhoids, Fistulae) (Prostate if indicated) | ✓ | | | |
| 31. Abdomen and viscera (Include hernia) | ✓ | | | |
| 32. External genitalia (Genitourinary) | ✓ | | | |
| 33. Upper extremities | | ✓ | | 33 ℞ shoulder pain on push - pull |
| 34. Lower extremities (Except feet) | | ✓ | | 34 ℞ knee & ℒ ankle pain on |
| 35. Feet (See Item 35 Continued) | | ✓ | | 35 ℞ freeboard pain on treadmill & see below |
| 36. Spine, other musculoskeletal | | ✓ | | 36 LBP on treadmill |
| 37. Identifying body marks, scars, tattoos | ✓ | | | |
| 38. Skin, lymphatics | ✓ | | | |
| 39. Neurologic | ✓ | | | |
| 40. Psychiatric (Specify any personality deviation) | ✓ | | | |
| 41. Pelvic (Females only) | | | | |
| 42. Endocrine | | ✓ | | |

| 43. DENTAL DEFECTS AND DISEASE (Please explain. Use dental form if completed by dentist. If dental examination not done by dental officer, explain in item 44.) | 35. FEET (Continued) (Circle category) |
|---|---|
| ☐ Acceptable ☐ Not Acceptable Class _____ | Normal Arch — Mild — Asymptomatic<br>Pes Cavus — Moderate<br>Pes Planus — Severe — Symptomatic |

| DD FORM 2808, OCT 2005 | DoD exception to SF 88 approved by ICMR, August 3, 2000 PREVIOUS EDITION IS OBSOLETE | Examined By: Physical Exams | Page 1 of 3 Pages Adobe Professional 7.0 MAMC OP 1250-DH, MAY 2011 Previous editions are obsolete |
|---|---|---|---|

| LAST NAME - FIRST NAME - MIDDLE NAME (SUFFIX) | | | SOCIAL SECURITY NUMBER |
|---|---|---|---|
| Claiborne   James Jahron | | | Redacted PII |

**LABORATORY FINDINGS**

| 45. URINALYSIS | | | 46. URINE HCG | | 47. H/H | | 48. BLOOD TYPE |
|---|---|---|---|---|---|---|---|
| | a. Albumin | NEG | | | 16.2/47.9 | | B + |
| | b. Sugar | NEG | | | | | |

| TESTS | RESULTS | | | | HIV SPECIMEN ID LABEL | DRUG TEST SPECIMEN ID LABEL |
|---|---|---|---|---|---|---|
| 49. HIV | | | | | | |
| 50. DRUGS | | | | | | |
| 51. ALCOHOL | | | | | | |
| 52. OTHER | | | | | | |
| a. PAP SMEAR | | | | | | |
| b. PSA | | | | | | |
| c. S.G. | 1.017 | | | | | |

**MEASUREMENTS AND OTHER FINDINGS**

| 53. HEIGHT | 54. WEIGHT | 55. MIN WGT - MAX WGT | MAX BF % | 56. TEMPERATURE | 57. PULSE |
|---|---|---|---|---|---|
| 75 | 220 lbs. | | | 96. F | 88 |

| 58. BLOOD PRESSURE | | | 59. RED/GREEN (Army Only) | 60. OTHER VISION TEST |
|---|---|---|---|---|
| a. 1ST | b. 2ND | c. 3RD | | |
| SYS. 140 | SYS. 133 | SYS. | | |
| DIAS. 83 | DIAS. 88 | DIAS. | | |

| 61. DISTANT VISION | | | | 62. REFRACTION BY AUTOREFRACTION OR MANIFEST | 63. NEAR VISION | | | |
|---|---|---|---|---|---|---|---|---|
| Right 20/25 | Corr. to 20/ | By | S. | CX | Right 20/20 | Corr. to 20/ | by | |
| Left 20/25 | Corr. to 20/ | By | S. | CX | Left 20/20 | Corr. to 20/ | by | |

| 64. HETEROPHORIA (Specify distance) | | | | | | | |
|---|---|---|---|---|---|---|---|
| ES□ | EX□ | R.H. | L.H. | Prism div. | Prism Conv CT | NPR | PD |

| 65. ACCOMMODATION | | 66. COLOR VISION (Test used and result) | | 67. DEPTH PERCEPTION (Test used and score) AFVT | |
|---|---|---|---|---|---|
| Right | Left | PIP | — 1 /14 PASS | Uncorrected | Corrected |

| 68. FIELD OF VISION | 69. NIGHT VISION (Test used and score) | 70. INTRAOCULAR TENSION | |
|---|---|---|---|
| | N ? B H | O.D. 10 | O.S. 10 |

| 71a. AUDIOMETER | Unit Serial Number 62393 | | | | | 71b.  Unit Serial Number | | | | | | 72a. READING ALOUD TEST | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Date Calibrated (YY,YYMMDD) 2013 NOV 01 | | | | | | Date Calibrated (YYYYMMDD) | | | | | | | |
| HZ | 500 | 1000 | 2000 | 3000 | 4000 | 6000 | HZ | 500 | 1000 | 2000 | 3000 | 4000 | 6000 | SAT | UNSAT |
| Right | 5 | 15 | 5 | 20 | 5 | 15 | Right | | | | | | | 72b. VALSALVA |
| Left | 10 | 0 | 0 | 10 | 15 | 25 | Left | | | | | | | SAT | UNSAT |

73. NOTES (Continued) AND SIGNIFICANT OR INTERVAL HISTORY (Use additional sheets if necessary.)

CHOL 225 TRIG 184 HDL 38 LDL 144 FBS 97 EKG NSR ANTI-HCV_____

Special Forces, HALO, Diving, SERE:  WBC_____   Sickle Cell_____   G6PD_____   RPR_____   Lead_____

CXR (Location, Date, Results): MaiN Radiology 23 June 2014 Neg chest x-ray

Tobacco: YES / NO   (PPD:_____)

I have no fear of heights, depths, darkness or enclosed spaces._____
(ONLY FOR: Special Forces, HALO, Diving, SERE)   (Signature)

EDC (Chapter 8 (pregnancy) Only:_____

GUIAC:   POS   NEG          TOXIC PE'S: RBC CHOLIN _____
        Positive Control Positive                    (1st Date & Result)
        Negative Control Negative
                                    RBC CHOLIN _____
                                               (2nd Date & Result)

                                    LEAD_____

| LAST NAME - FIRST NAME - MIDDLE NAME (SUFFIX) *Claiborne Damon J* | | | | | | SOCIAL SECURITY NUMBER *Redacted PII* | |

**74.a. EXAMINEE/APPLICANT** (check one) *Retired / Retirement / Separation*

| IS QUALIFIED FOR SERVICE ✓ | **75. I have been advised of my disqualifying condition.** | |
| IS NOT QUALIFIED FOR SERVICE | **a. SIGNATURE OF EXAMINEE** | **b. DATE** (YYYYMMDD) |

**b. PHYSICAL PROFILE**

| P | U | L | H | E | S | X | PROFILER INITIALS | DATE (YYYYMMDD) |
|---|---|---|---|---|---|---|---|---|
| 2 | 1 | 2 | 1 | 1 | 1 | | X YD | 2014/06/23 |

**76. SIGNIFICANT OR DISQUALIFYING DEFECTS**

| ITEM NO. | MEDICAL CONDITION/DIAGNOSIS | ICD CODE | PROFILE SERIAL | RBJ DATE (YYYYMMDD) | QUALI-FIED | DIS-QUALI-FIED | EXAMINER INITIALS | WAIVER RECEIVED | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | SERVICE | DATE (YYYYMMDD) |
| | PFB | | | | | | | | |

**77. SUMMARY OF DEFECTS AND DIAGNOSES** (List diagnoses with item numbers) (Use additional sheets if necessary.)
*33. ① shoulder pain on push-pull, 34. ① knee ③ ankle pain on benched 35. ⑤ heel pain on kneebend & mod symptomatic pes planus. 36. ① 63 P on kneebend. 73. Hyperlipidemia / Relates Hx of f. 3P, ① shoulder ⑯ knee & ① ankle pain & vec numbness ② great toe 2° to a cold weather injury 1989. Relates Hx of IBS, hemorrhoids, colon polyps, psoriasis, urinary frequency, hematuria, chest pain, palpitation, sleep issue & depression.*

**78. RECOMMENDATIONS / FURTHER SPECIALIST EXAMINATIONS INDICATED** (Specify) (Use additional sheets if necessary.)
*F/U c PCM & mental health 2° above noted issues ..*

**79. MEPS WORKLOAD** (For MEPS use only)

| WKID | ST | DATE (YYYYMMDD) | INITIAL | WKID | ST | DATE (YYYYMMDD) | INITIAL |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

**80. MEDICAL INSPECTION DATE**

| | HT | WT | %BF | MAX WT | HCG | QUAL | DISQ | PHYSICIAN'S SIGNATURE |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| **81.a. TYPED OR PRINTED NAME OF PHYSICIAN OR EXAMINER** Albert Schoch, PA-C Physician Exams OMDH | **b. SIGNATURE** *Albert L Schoch* |
| **82.a. TYPED OR PRINTED NAME OF PHYSICIAN OR EXAMINER** OMDH | **b. SIGNATURE** |
| **83.a. TYPED OR PRINTED NAME OF DENTIST OR PHYSICIAN** (Indicate which) | **b. SIGNATURE** |
| **84.a. TYPED OR PRINTED NAME OF REVIEWING OFFICER/APPROVING AUTHORITY** Chienhua H. Clarke, M.D. Chief, RBHSA Clinic, OMDH Michigan Healthcare System | **b. SIGNATURE** |

**85. This examination has been administratively reviewed for completeness and accuracy.**

| a. SIGNATURE | b. GRADE | c. DATE (YYYYMMDD) |
|---|---|---|
| | | |

**86. WAIVER GRANTED** (If yes, date and by whom)

| YES | | **87. NUMBER OF ATTACHED SHEETS** |
| NO | | |

**DD FORM 2808, OCT 2005**

Page 3 of 3 Pages

claiborne, damon                    ID: 00565416603        23-Jun-2014   13:18:28    16th CAB

| | | | | |
|---|---|---|---|---|
| 43years | | Vent. rate | 55 bpm | Normal sinus rhythm |
| Male | Black | PR interval | 170 ms | Normal ECG |
| 74in | 220lbs | QRS duration | 88 ms | |
| | | QT/QTc | 340/413 ms | |
| | | P-R-T axes | 10  13  21 | |

Technician: mary cna
Test ind:                                   Visit

                                            Referred by                    Unconfirmed



150 Hz    25.0 mm/s    10.0 mm/mV                    4 by 2.5s + 3 rhythm lds        MAC55 010A         12SL v241 HD

KENDALL MEDITRACE                                                        PRINTED IN U.S.A.    2382

000389

# REPORT OF MEDICAL HISTORY

**(This information is for official and medically confidential use only and will not be released to unauthorized persons.)**

OMB No. 0704-0413
OMB approval expires
Mar 31, 2010

The public reporting burden for this collection of information is estimated to average 10 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to the Department of Defense, Executive Services Directorate (0704-0413). Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.

**PLEASE DO NOT RETURN YOUR FORM TO THE ABOVE ORGANIZATION. RETURN COMPLETED FORM AS INDICATED ON PAGE 2.**

## PRIVACY ACT STATEMENT

**AUTHORITY:** 10 USC 504, 505, 507, 532, 978, 1201, 1202, and 4346; and E.O. 9397 (SSAN).
**PRINCIPAL PURPOSE(S):** To obtain medical data for determination of medical fitness for enlistment, induction, appointment and retention for applicants and members of the Armed Forces. The information will also be used for medical boards and separation of Service members from the Armed Forces.
**ROUTINE USE(S):** None.
**DISCLOSURE:** Voluntary; however, failure by an applicant to provide the information may result in delay or possible rejection of the individual's application to enter the Armed Forces. For an Armed Forces member, failure to provide the information may result in the individual being placed in a non-deployable status.

**WARNING:** The information you have given constitutes an official statement. Federal law provides severe penalties (up to 5 years confine- ment or a $10,000 fine or both), to anyone making a false statement. If you are selected for enlistment, commission, or entrance into a commissioning program based on a false statement, you can be tried by military courts-martial or meet an administrative board for discharge and could receive a less than honorable discharge that would affect your future.

| 1. LAST NAME, FIRST NAME, MIDDLE NAME (SUFFIX) Calberne Donan J. | 2. SOCIAL SECURITY NUMBER Redacted PII | 3. TODAY'S DATE (YYYYMMDD) 20140623 |
|---|---|---|

| 4.a. HOME ADDRESS (Street, Apartment No., City, State, and ZIP Code) Redacted PII | 5. EXAMINING LOCATION AND ADDRESS (Include ZIP Code) Madigan Army Medical Center MCHJ-CLZ (Physical Exams) Old Nisqually Clinic Tacoma, WA 98431-1100 |
|---|---|
| b. HOME TELEPHONE (Include Area Code) Redacted PII | |

**X ALL APPLICABLE BOXES:**

**6.a. SERVICE:** [X] Army, Coast Guard, Navy, Marine Corps, Air Force
**b. COMPONENT:** Active Duty, Reserve, National Guard
**c. PURPOSE OF EXAMINATION:** Enlistment, Commission, Retention, Separation [X], Medical Board, Other (Specify), Retirement, U.S. Service Academy, ROTC Scholarship Program

**7.a. POSITION (Title, Grade, Component):** E-6
**b. USUAL OCCUPATION:** Petroleum Supply

**8. CURRENT MEDICATIONS (Prescription and Over-the-counter):** Nexium, Sufurol, Viagra, Prasosin, Zoloft

**9. ALLERGIES (Including insect bites/stings, foods, medicine or other substance):** HAY Fever / Grass / Cantalope

**Mark each item "YES" or "NO". Every item marked "YES" must be fully explained in Item 29 on Page 2.**

| HAVE YOU EVER HAD OR DO YOU NOW HAVE: | YES | NO |
|---|---|---|
| 10.a. Tuberculosis | | X |
| b. Lived with someone who had tuberculosis | | X |
| c. Coughed up blood | | X |
| d. Asthma or any breathing problems related to exercise, weather, pollens, etc. | X | |
| e. Shortness of breath | X | |
| f. Bronchitis | | X |
| g. Wheezing or problems with wheezing | X | |
| h. Been prescribed or used an inhaler | X | |
| i. A chronic cough or cough at night | X | |
| j. Sinusitis | | X |
| k. Hay fever | X | |
| l. Chronic or frequent colds | | X |
| 11.a. Severe tooth or gum trouble | | X |
| b. Thyroid trouble or goiter | | X |
| c. Eye disorder or trouble | X | |
| d. Ear, nose, or throat trouble | X | |
| e. Loss of vision in either eye | | X |
| f. Worn contact lenses or glasses | | X |
| g. A hearing loss or wear a hearing aid | | X |
| h. Surgery to correct vision (RK, PRK, LASIK, etc.) | | X |
| 12.a. Painful shoulder, elbow or wrist (e.g. pain, dislocation, etc.) | X | |
| b. Arthritis, rheumatism, or bursitis | | X |
| c. Recurrent back pain or any back problem | X | |
| d. Numbness or tingling | X | |
| e. Loss of finger or toe | | X |

| 12. (Continued) | YES | NO |
|---|---|---|
| f. Foot trouble (e.g., pain, corns, bunions, etc.) | X | |
| g. Impaired use of arms, legs, hands, or feet | | X |
| h. Swollen or painful joint(s) | X | |
| i. Knee trouble (e.g., locking, giving out, pain or ligament injury, etc.) | X | |
| j. Any knee or foot surgery including arthroscopy or the use of a scope to any bone or joint | X | |
| k. Any need to use corrective devices such as prosthetic devices, knee brace(s), back support(s), lifts or orthotics, etc. | X | |
| l. Bone, joint, or other deformity | | X |
| m. Plate(s), screw(s), rod(s) or pin(s) in any bone | | X |
| n. Broken bone(s) (cracked or fractured) | | X |
| 13.a. Frequent indigestion or heartburn | | X |
| b. Stomach, liver, intestinal trouble, or ulcer | X | |
| c. Gall bladder trouble or gallstones | | X |
| d. Jaundice or hepatitis (liver disease) | | X |
| e. Rupture/hernia | | X |
| f. Rectal disease, hemorrhoids or blood from the rectum | X | |
| g. Skin diseases (e.g. acne, eczema, psoriasis, etc.) | X | |
| h. Frequent or painful urination | X | |
| i. High or low blood sugar | | X |
| j. Kidney stone or blood in urine | X | |
| k. Sugar or protein in urine | X | |
| l. Sexually transmitted disease (syphilis, gonorrhea, chlamydia, genital warts, herpes, etc.) | | X |
| 14.a. Adverse reaction to serum, food, insect stings or medicine | | X |
| b. Recent unexplained gain or loss of weight | | X |
| c. Currently in good health (If no, explain in Item 29 on Page 2.) | X | |
| d. Tumor, growth, cyst, or cancer | | X |

**DD FORM 2807-1, MAR 2007** PREVIOUS EDITION IS OBSOLETE. DoD exception to SF 93 approved by ICMR, August 3, 2000.

| LAST NAME, FIRST NAME, MIDDLE NAME (SUFFIX) | SOCIAL SECURITY NUMBER |
|---|---|
| Claiborn Damon J. | Redacted PII |

**Mark each item "YES" or "NO". Every item marked "YES" must be fully explained in Item 29 below.**

| HAVE YOU EVER HAD OR DO YOU NOW HAVE: | YES | NO | | YES | NO |
|---|---|---|---|---|---|
| 15.a. Dizziness or fainting spells | ○ | ⊗ | 19. Have you ever been refused employment or been unable to hold a job or stay in school because of: | | |
| b. Frequent or severe headache | ○ | ⊗ | a. Sensitivity to chemicals, dust, sunlight, etc. | ⊗ | ○ |
| c. A head injury, memory loss or amnesia | ○ | ⊗ | b. Inability to perform certain motions | ○ | ⊗ |
| d. Paralysis | ○ | ⊗ | c. Inability to stand, sit, kneel, lie down, etc. | ○ | ⊗ |
| e. Seizures, convulsions, epilepsy or fits | ○ | ⊗ | d. Other medical reasons (If yes, give reasons.) | ○ | ⊗ |
| f. Car, train, sea, or air sickness | ○ | ⊗ | 20. Have you ever been treated in an Emergency Room? (If yes, for what?) | ⊗ | ○ |
| g. A period of unconsciousness or concussion | ○ | ⊗ | | | |
| h. Meningitis, encephalitis, or other neurological problems | ○ | ⊗ | | | |
| 16.a. Rheumatic fever | ○ | ⊗ | 21. Have you ever been a patient in any type of hospital? (If yes, specify when, where, why, and name of doctor and complete address of hospital.) | ⊗ | ○ |
| b. Prolonged bleeding (as after an injury or tooth extraction, etc.) | ○ | ⊗ | | | |
| c. Pain or pressure in the chest | ⊗ | ○ | | | |
| d. Palpitation, pounding heart or abnormal heartbeat | ⊗ | ○ | 22. Have you ever had, or have you been advised to have any operations or surgery? (If yes, describe and give age at which occurred.) | ⊗ | ○ |
| e. Heart trouble or murmur | ○ | ⊗ | | | |
| f. High or low blood pressure | ○ | ⊗ | | | |
| 17.a. Nervous trouble of any sort (anxiety or panic attacks) | ○ | ⊗ | 23. Have you ever had any illness or injury other than those already noted? (If yes, specify when, where, and give details.) | ○ | ⊗ |
| b. Habitual stammering or stuttering | ○ | ⊗ | | | |
| c. Loss of memory or amnesia, or neurological symptoms | ○ | ⊗ | 24. Have you consulted or been treated by clinics, physicians, healers, or other practitioners within the past 5 years for other than minor illnesses? (If yes, give complete address of doctor, hospital, clinic, and details.) | ⊗ | ○ |
| d. Frequent trouble sleeping | ⊗ | ○ | | | |
| e. Received counseling of any type | ⊗ | ○ | | | |
| f. Depression or excessive worry | ⊗ | ○ | 25. Have you ever been rejected for military service for any reason? (If yes, give date and reason for rejection.) | ○ | ⊗ |
| g. Been evaluated or treated for a mental condition | ⊗ | ○ | | | |
| h. Attempted suicide | ○ | ⊗ | 26. Have you ever been discharged from military service for any reason? (If yes, give date, reason, and type of discharge; whether honorable, other than honorable, for unfitness or unsuitability.) | ○ | ⊗ |
| i. Used illegal drugs or abused prescription drugs | ○ | ⊗ | | | |
| 18. FEMALES ONLY. Have you ever had or do you now have: | | | 27. Have you ever received, is there pending, or have you ever applied for pension or compensation for any disability or injury? (If yes, specify what kind, granted by whom, and what amount, when, why.) | ○ | ⊗ |
| a. Treatment for a gynecological (female) disorder | ○ | ○ | | | |
| b. A change of menstrual pattern | ○ | ○ | | | |
| c. Any abnormal PAP smears | ○ | ○ | | | |
| d. First day of last menstrual period (YYYYMMDD) | | | | | |
| e. Date of last PAP smear (YYYYMMDD) | | | 28. Have you ever been denied life insurance? | ○ | ⊗ |

**29. EXPLANATION OF "YES" ANSWER(S)** (Describe answer(s), give date(s) of problem, name of doctor(s) and/or hospital(s), treatment given and current medical status.)

Permanent Profile:  YES  NO    P__ U__ L__ H__ E__ S__

Induced While running Asthama (d)(e)(g)(h)

Scratch on eye

Inhaling burn pit smoke & fumes

(R) shoulder   Back pain lower

numb Toe Big (right)

Bilateral toe nail surgery / Pain in joints Shoulder / Knee pain

Orthotics & foot pads. Acute flat feet

Broken wrist.

Polyps Intestine

NOTE: HAND TO THE DOCTOR OR NURSE OR IF MAILED MARK ENVELOPE "TO BE OPENED BY MEDICAL PERSONNEL"

**DD FORM 2807-1, MAR 2007**                                                                    Page 2 of 3 Pages

**000391**

| LAST NAME, FIRST NAME, MIDDLE NAME (SUFFIX) | | SOCIAL SECURITY NUMBER |
|---|---|---|
| Claiborne Osman J. | | Redacted PII |

**30. EXAMINER'S SUMMARY AND ELABORATION OF ALL PERTINENT DATA** (*Physician/practitioner shall comment on all positive answers in questions 10 - 29. Physician/practitioner may develop by interview any additional medical history deemed important, and record any significant findings here.*)

**a. COMMENTS**

10 d, e, g, h   Relates Hx of asthma X 4-5 yrs Rx'd inhalers

10 i   Relates Hx of recurrent chronic cough X 17 yrs.

10 r   Relates Hx of seasonal allergy since childhood.

11 c   Relates Hx of corneal abrasion O.S. 2004, resolved

11 d   Relates Hx of recurrent irritation of throat x 15 yrs.

12 a, h, k   Relates Hx of recurrent (R) shoulder pain x 10 yrs, 2° to heavy lifting

12 c   Relates Hx of recurrent LBP x 2 mnth 2° to lifting.

12 d   Relates Hx of cold weather injury (R) great toe 1989, now c recurrent numbness.

12 g, x, j   Relates Hx of fungus toe nails, & (R) toenail removal great toes 2° to ingrown toenails.

12 h   Relates Hx of recurrent (R) ankle pain x 15 yrs.

12 h, i, k   Relates Hx of recurrent (R) knee pain x 4 yrs, 2° to running.

12 b   Relates Hx of IBS X 2000.

12 f   Relates Hx of hemorrhoids c BRB on B.M. x 14 yrs.

14 f   Relates Hx of colon polyps exam 2000 & 2007.

12 g   Relates Hx of psoriasis x 14 yrs.

12 h, i, j   Relates Hx of dysuria & urinary frequency x 10 yrs.

12 i, k   Relates Hx of hematuria & proteinuria.

14 c   Denies good health ?° to issues noted here.

16 c, d   Relates Hx of episodes of chest pain & palpitation 2008, resolved now.

17 d   Relates Hx of sleep issues x 24 yrs.

17 e, f, g   Relates Hx of depression x 15 yrs Rx'd 2000.

19 a, 20, 21, 22, 24   As needed for above noted issues, & blunt head trauma c LOC x/min 2° to truck vehicle accident 2003.

| b. TYPED OR PRINTED NAME OF EXAMINER (*Last, First, Middle Initial*) | c. SIGNATURE | d. DATE SIGNED (*YYYYMMDD*) |
|---|---|---|
| Albert Schoch, PA-C<br>Physical Exams, OMDH | *Albert L Schoch* | 2014/06/23 |

DD FORM 2807-1, MAR 2007

Scanned By:
Physical Exams

3 Pages

**000392**

| REPORT OF MEDICAL ASSESSMENT | REPORT CONTROL SYMBOL DD-HA(AR)1939 |
|---|---|

### PRIVACY ACT STATEMENT

AUTHORITY: PL 103-160, EO 9397.
PRINCIPAL PURPOSE: To be used by the Medical Services to provide a comprehensive medical assessment for active and reserve component service members separating or retiring from active duty.
ROUTINE USES: A copy of this form will be released to the Department of Veterans Affairs.
DISCLOSURE: Voluntary; however, failure to disclose the requested personal information may result in delay in processing any disability claim.

SECTION I - TO BE COMPLETED BY SERVICE MEMBER. Any service member who requests a physical examination may have one.

| 1. NAME (Last, First, Middle) | 2. SOCIAL SECURITY NUMBER | 3. RANK |
|---|---|---|
| Claiborne ORMSN J | Redacted PII | 556 |

| 4. COMPONENT | 5. UNIT OF ASSIGNMENT |
|---|---|
| Active | I CORPS HHG , ARO |

| 6a. HOME STREET ADDRESS (Or RFD, including apartment number) | b. CITY | c. STATE | d. ZIP CODE | 7. HOME TELEPHONE NUMBER (Include area code) |
|---|---|---|---|---|
| Redacted PII | | | | Redacted PII |

| 8. DATE OF LAST PHYSICAL EXAMINATION BY THE MILITARY (YYMMDD) | 9. DATE ENTERED ON CURRENT ACTIVE DUTY (YYMMDD) |
|---|---|
| | |

10. COMPARED TO MY LAST MEDICAL ASSESSMENT/PHYSICAL EXAMINATION, MY OVERALL HEALTH IS (X one. If "Worse," explain.)
[ ] THE SAME
[ ] BETTER
[✓] WORSE

11. SINCE YOUR LAST MEDICAL ASSESSMENT/PHYSICAL EXAMINATION, HAVE YOU HAD ANY ILLNESSES OR INJURIES THAT CAUSED YOU TO MISS DUTY FOR LONGER THAN 3 DAYS? (X one. If "Yes," explain.)
[✓] NO
[ ] YES

12. SINCE YOUR LAST MEDICAL ASSESSMENT/PHYSICAL EXAMINATION, HAVE YOU BEEN SEEN BY OR BEEN TREATED BY A HEALTH CARE PROVIDER, ADMITTED TO A HOSPITAL, OR HAD SURGERY? (X one. If "Yes," explain.)
[✓] NO
[ ] YES

13. HAVE YOU SUFFERED FROM ANY INJURY OR ILLNESS WHILE ON ACTIVE DUTY FOR WHICH YOU DID NOT SEEK MEDICAL CARE? (X one. If "Yes," explain.)
[ ] NO
[✓] YES  Accident in Vehicle roll over

14. ARE YOU NOW TAKING ANY MEDICATIONS? (X one. If "Yes," list medications.)
[ ] NO
[ ] YES  Bubtlg Nexium, Prazolin, Zoloft motrin

15. DO YOU HAVE ANY CONDITIONS WHICH CURRENTLY LIMIT YOUR ABILITY TO WORK IN YOUR PRIMARY MILITARY SPECIALTY OR REQUIRE GEOGRAPHIC OR ASSIGNMENT LIMITATIONS? (X one. If "Yes," explain.)
[ ] NO
[✓] YES  temp Ankle Bite issues

16. DO YOU HAVE ANY DENTAL PROBLEMS? (X one. If "Yes," explain.)
[✓] NO
[ ] YES

17. DO YOU HAVE ANY OTHER QUESTIONS OR CONCERN ABOUT YOUR HEALTH? (X one. If "Yes," explain.)
[✓] NO
[ ] YES

18. AT THE PRESENT TIME, DO YOU INTEND TO SEEK DEPARTMENT OF VETERANS AFFAIRS (VA) DISABILITY? (X one. If "Yes," list conditions for which you will ask for VA Disability.)
[ ] NO
[✓] YES
[ ] UNCERTAIN

19. CERTIFICATION. I certify that the information provided above is true and complete to the best of my knowledge.

| a. SIGNATURE OF SERVICE MEMBER | b. DATE SIGNED |
|---|---|
| | 20140623 |

DD FORM 2697, FEB 95

Scanned By:
Physical Exams

**000393**

**SECTION II - TO BE COMPLETED BY INDIVIDUALLY PRIVILEGED HEALTH CARE PROVIDER**

This Report of Medical Assessment is to be used by the Medical Services to provide a comprehensive medical assessment for active and reserve component service members separating or retiring from active duty. The assessment will cover, as a minimum, the period since the service member's last medical assessment/physical examination, or the period of this call or order to active duty. Any service member who requests a physical examination may have one. Any service member who has indicated "yes" to Item 18 will have an appropriate physical examination, if the last examination is more than 12 months old and/or there are new signs and/or symptoms. If the service member answers "Worse" to Item 10 or "Yes" to Items 11, 12, or 14 through 18, documentation of the injury, illness, or problem should be included in the service member's medical or dental record.

**20. HEALTH CARE PROVIDER COMMENTS** *(All patient complaints must be addressed)*

See DD 2907

**21. WAS PATIENT REFERRED FOR FURTHER EVALUATION?** *(X one. If "Yes," specify where.)*

[X] NO
[ ] YES

**22. PURPOSE OF ASSESSMENT** *(X one. If "Other," explain.)*

[X] SEPARATION *(includes discharge from military service and release from active duty, including release of National Guard and Reserve personnel voluntarily or involuntarily called or ordered to active duty.)*
[ ] RETIREMENT
[ ] OTHER

| 23. MEDICAL FACILITY | 24. DATE OF ASSESSMENT *(YYMMDD)* |
|---|---|
| Madigan Healthcare System OMDH-MCHJ-CLZ (Physical Exams) Old Nisqually Clinic JBLM, WA 98433 | 14/06/23 |

**25. HEALTH CARE PROVIDER**

| a. NAME *(Last, First, Middle Initial)* | b. GRADE/RANK | c. SIGNATURE |
|---|---|---|
| Albert Schoch, PA-C Physical Exams, OMDH | G-5-11 | *Albert F Schoch* |

DD FORM 2697, FEB 95 (BACK)

## MEDICAL RECORD-SUPPLEMENTAL MEDICAL DATA

For use of this form, see AR 40-66; the proponent agency is the Office of The Surgeon General.

| REPORT TITLE | OTSG APPROVED *(Date)* |
|---|---|
| **HEPATITIS C SCREENING** | *(YYYYMMDD)* MAMC MAY 2011 |

1. Hepatitis C is transmitted primarily by contaminated blood (e.g., blood transfusions, contaminated needles, or sticks with contaminated sharp objects). The following are possible sources of hepatitis C virus (HCV). If you can answer "yes" to any of these risk factors, you should receive a sample blood test to determine if you could have hepatitis C. If you consider yourself at risk, based on an exposure to a possible source of hepatitis C virus, you should have a simple blood test for HCV. You will not be asked to identify any specific risk factors to justify HCV testing.

2. Risk Factors:

    a. Receiving a transfusion of blood or blood products before 1992.
    b. Injecting illegal drugs, including use once many years ago.
    c. Receiving clotting factor concentrates produced before 1987.
    d. Having chronic (long-term) hemodialysis.
    e. Being told that you have persistent abnormal liver enzyme tests (alanine aminotransferase) or an unexplained liver disease.
    f. Receiving an organ transplant before July 1992.
    g. Having a needle stick, sharps or mucosal exposure to potentially HCV-infected blood as part of your occupational duties and not previously evaluated for HCV infection.

3. If the test is positive, you will receive a medical evaluation to confirm HCV infection, determine your need for specific treatments and provided counseling on life-style modifications and steps to protect others from infection.

4. Check one of the following responses and sign and date.

    ☒ No, I do not want to be tested for hepatitis C.

    ☐ Yes, I want to be tested for hepatitis C.

_____      20140617
(SIGNATURE)                               (DATE)

| PREPARED BY *(Signature & Title)* | DEPARTMENT/SERVICE/CLINIC | DATE *(YYYYMMDD)* |
|---|---|---|

| PATIENT'S IDENTIFICATION *(For typed or written entries give: Name first, middle;grade; date; hospital or medical facility) (FMP, sponsor's SSN, patient's SSN, date of birth and register number (if any))* <br><br> Claiborne, Damon   <span>Redacted PII</span> | ☑ HISTORY/PHYSICAL <br><br> ☐ OTHER EXAMINATION OR EVALUATION <br><br> ☐ DIAGNOSTIC STUDIES <br><br> ☐ TREATMENT | ☐ FLOW CHART <br><br> ☐ OTHER *(Specify)* |

**DA FORM 4700, FEB 2003**     EDITION OF MAY 78 IS OBSOLETE.   Scanned by Physical Exams     MAMC OP 1248-DH. MAY 2011 Edition of 1 May   etc.

MAMC PE v1.00

# ENLISTED RECORD BRIEF

| BRIEF DATE | NAME | | RANK - DOR | | PMOS | | SSN | | COMPONENT | |
|---|---|---|---|---|---|---|---|---|---|---|
| 20140811 | CLAIBORNE, OAMON JAHRON | | SSG | 20121201 | 92F | | Redacted PII | | | REGULAR |

## SECTION I – Assignment Information

**OS/Deployment Combat Duty**

| | #S - | 3 |
| | #L - | 3 |

| Start-End Date | CT | MO | TS | TT |
|---|---|---|---|---|
| 20121010-20140208 | KS | 16 | 1 | L |
| 20100910-20110615 | AF | 9 | 1 | C |
| 20070305-20080305 | KS | 12 | 1 | L |
| 20030415-20040415 | IZ | 12 | 1 | C |
| 20000710-20001124 | KV | 5 | 1 | C |
| 19980626-20010615 | GM | 36 | 1 | L |

| | # | M |
|---|---|---|
| C | 4 | 37 |
| O | 0 | 0 |
| R | 0 | 0 |
| TOT: 37 | | |

**Dwell Time**

| Start | 20110615 |
| Month - Days | 38 Mo 14 Days |

Date Dependents Arrived OS

| PMOS | 92F | SQI | |
| SMOS | 11B | PDSI/YRMO | / |
| Bonus MOS | 92F | ASI | H7 |

Bonus Enlist Elig Dt 20090901

Promotion Points/YRMO

Prev Promotion Points/YRMO

| Prom Seq# | | Prom Select Dt |

Promotion MOS

| ASVAB | Test # / Dt | | AFCT | / | 20120301 |
| GT | 116 | ELEC | 116 | FOOD | 115 | TECH | 117 |
| ADMIN | 115 | FA | 115 | COMMO | 116 | |
| CMBT | 115 | MECH | 113 | MAINT | 114 | |

Delay Separation Reason

| AEA / Dt | L/ |
| Flag Code | Flag Start Dt | Flag Expiration Dt |
| BA | 20140220 | |

| Date of Loss | | Date of Last PCS 20140206 |

## SECTION II – Security Data

| | #S - | 3 |
| | #L - | 3 |

| PSI Status | NONE | Fld Det PS Stat | NONE |
| PSI Invest INIT | | |
| PSI Invest Svl | | 19980323 |

### SECTION V – Foreign Language

| Language | Read | Listen | Speak |
|---|---|---|---|
| | | | |

DLAB

### SECTION VI – Military Education

| MEL/MES | ALC/GRADUATED |

| Course | ACH | Year |
|---|---|---|
| ENV COMPLNCE OFCR CERT | | 2013 |
| COMBAT LIFE SAVERS CRS | | 2012 |
| ADV LDR CRS (ALC) | | 2009 |
| FBCB2 LDR OPNET CERT | | 2009 |
| COMBATIVES LEVEL 1 | | 2007 |
| BUS DRIVER CRS | | 2006 |
| WARRIOR LEADER CRS | | 2004 |
| DEF PACK HAZ MAT TRANS | | 1998 |
| HAZMAT DRIVER INSTR | | 1998 |
| PETROLEUM VEHICLE OPER | | 1998 |
| PETROLEUM QUAL ASURE | | 1998 |

BMQ 20111117/DA FORM 5790-R (M16)/37

Correspondence CRS Total # Hrs 442

## SECTION III – Service Data

| BASD | 19960407 | PEBD | 19891018 | BESD | 19890720 |
| ETS | 20150930 | DIEMS | 19890221 | Reenl Elig/Prohib sv | |
| # Days Lost | | AGCM Dt 20130209 | AGCM Elig Dt 20160209 | |

| DOR | PVT | PV2 | PFC | SPC - CPL |
| | | | | 19980128 |
| DOR | SGT | SSG | SFC | MSG - 1SG |
| DOR | 20070701 | 20121201 | | |
| DOR | SGM - CSM | | | |

### SECTION VII – CIVILIAN Education

| Level Completed 4 YRS HS | | Yr | 1989 |
| DEGE HIGH SCHOOL DIPLOMA | | |
| Institution | | Yr |
| Discipline | | |
| Institution | | Yr |
| Discipline | | |

Number Of Semester Hours Completed 102

**Technical Certification**

| Course Name | | Dt Certified | Dt Expires |
|---|---|---|---|
| | | | |

### SECTION VIII – Awards and Decorations

| ARCOM | 3 | KUKULIBM | 1 |
| AAM | 7 | COA | 6 |
| MUC | 1 | | |
| AGCM | 7 | DRV/MECH | 1 |
| NDSM | 2 | MQBSS-R | 1 |
| SWASM | 2 | | |
| KCMBSS | 1 | | |
| ACM-CS | 1 | | |
| ICM-CS | 3 | | |
| GWTEM | 1 | | |
| GWTSM | 1 | | |
| KDSM | 1 | | |
| NOPDR | 2 | | |
| ASR | 1 | | |
| OSR | 5 | | |
| NATOMDL | 2 | | |
| SAKULIBM | 2 | | |

Date of Last NCOER 20140208

## SECTION IV – Personal/Family Data

| Date of Birth | Redacted PII | Birthplace | Redacted PII |
| Country of Citz US | | Sex/Race |
| | | MALE / BLACK |
| No of Dependent Adults/Children | | Religion |
| 1 / 8 | | BAPT CH OTHER |
| Marital Status | | Spouse Birthplace/Citz |
| MARRIED | | / |
| PULHES | 212111 | Height/Weight |
| MRC1 | | 73/217 |
| EFMP Dt 20150901 | | #Cmd Sponsored o |
| Physical Category | | AFPT Dt P/F Score |
| A | | 201302/PASSED/229 |
| Last Physical Exam | | MMRB Results/Dt |
| 20140623 | | |
| Home of Record | | |
| Mailing Address | | Redacted PII |
| Mil Spouse SSN/MPC | | |
| Svc Comp / DoD | | |
| Emergency Data Verified Date 20140212 | | |

### SECTION X – Remarks

HIV YRMO 201403

RGMT AFL CORPQM

Date Last Photo 201304

| TRCMDS | CPOSCD | TRCUAD | FYCAL |

## SECTION IX – Assignment Information

| | | | | | | | Date of Last NCOER 20140208 | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ASGT | FROM | MO | UNIT NO | ORGANIZATION | STATION | LOC | COMD | DUTY TITLE | DMOS | ASI | LANG |
| PROJ | | | | | | | | | | | |
| Current | 20140328 | | WAT3A0 | 0001HQOPNS CO A | JBLM LEWI | US | FC | OVERSTRENGTH | 92F3O | 00 | YY |
| 1st Prev | 20140208 | | WAT301 | 0001 1 BDE REPL | JBLM LEWI | US | FC | INCOMING PERSONNEL | 92F3O | 00 | YY |
| 2nd Prev | 20130329 | | WJS7T0 | 0008 HQ HSC HHB | YONGSAN | KS | P1 | SURPLUS SLDR | 92F3O | 00 | YY |
| 3rd Prev | 20130114 | | WJS7B0 | 0008 HQ INTEL CO HHB | YONGSAN | KS | P1 | PETRL SGT | 92F4O | 00 | |
| 4th Prev | 20121017 | | W30ZAA | RELIGIOUS RETREAT CENT | YONG SAN | KS | BA | SUPPLY NCO | 92Y2O | 00 | |
| 5th Prev | 20121010 | | W6XLAA | USALRCTR YONGSAN | YONGSAN | KS | X1 | INCOMING PERSONNEL | 92F2O | 00 | YY |
| 6th Prev | 20120127 | | WJAYA0 | 0004CSCO A DIST | FT CARSON | US | FC | PETRL HVY VEH OPR | 92F2O | H7 | |
| 7th Prev | 20110617 | | WJAYA0 | 0004CSCO A DIST | FT CARSON | US | FC | PETRL HVY VEH OPR | 92F2O | H7 | |
| 8th Prev | 20100617 | | WJAYA0 | 0004CSBN | FT CARSON | US | FC | INCOMING PERSONNEL | 92F2O | 00 | YY |
| 9th Prev | 20080325 | 0 | WHE2AA | 0049QMHHC | FT LEE | US | FC | OPS TRAINING NCO S-3 | 92F2O | 00 | YY |
| 10th Prev | 20071107 | 0 | WHZZE0 | 010002AVE CO FWD SPT | CP EAGLE | KS | P8 | ACFT FUEL HANDLER | 92F2O | H7 | YY |
| 11th Prev | 20070308 | 0 | WHP7AA | 0001AGREPL REG 40 | CP COINER | KS | P8 | PETRL SUPPLY SP | 92F1O | H7 | YY |
| 12th Prev | 20070306 | 0 | WDFGAA | CS HHC CORPS SPT BN | FT LEWIS | US | FC | PETRL SUPPLY SP | 92F1O | H7 | YY |
| 13th Prev | 20050822 | 0 | WD0FAA | 0528QMPETROLEUM S | FT LEWIS | US | FC | PETRL SUPPLY SP | 92F1O | 00 | YY |
| 14th Prev | 20050725 | 0 | WET1H0 | 0080ODHHC OIF 25 REAR | FT LEWIS | US | FC | PETRL SUPPLY SP | 92F1O | H7 | YY |
| 15th Prev | 20010724 | 4 | WD0FAA | 0528QMPETROLEUM S | FT LEWIS | US | FC | PETRL HVY VEH OPR | 92F1O | H7 | YY |
| 16th Prev | 20010626 | 1 | WET1AA | 0080ODAMMO DS/GS | FT LEWIS | US | FC | PETRL SUPPLY SP | 77F1O | H7 | YY |
| 17th Prev | 20001205 | 36 | WH6YT0 | CCO, 501ST MILITARY INTELLIGENCE | DEXHEIM | GM | E5 | PETRL SUPPLY SP | 92F1O | 00 | YY |
| 18th Prev | 20000921 | 36 | WH6YB1 | BCO, 501ST MILITARY INTELLIGENCE | ANDERSON | GM | E5 | PETRL SUPPLY SP | 92F1O | 00 | YY |
| 19th Prev | 19980626 | 2 | WH6YT0 | HHC, 501ST MILITARY INTELLIGENCE | DEXHEIM | GM | E5 | PETRL SUPPLY SP | 92F1O | 00 | YY |
| 20th Prev | 19980623 | 34 | WH6S1A | 0001AGWIESBADEN DET | SCHWETZIN | GM | EB | PETRL SUPPLY SP | 92F1O | H7 | YY |
| 21st Prev | 19980527 | 2 | W0VL2B | FT LEE VA ( PETROLEUM SUPPLY | VA | US | FC | TRAINEE PETRL SUPPLY SPC | 92F6O | 00 | YY |
| 22nd Prev | 19980210 | 2 | W1D52R | CO RTR | FT LEE | US | TC | INCOMMING PERSONNEL | 92F0O | 00 | YY |
| 23rd Prev | 19980129 | 1 | W0U67A | RECEPTEE CO 120TH AG B | FT JACKSO | US | TC | INCOMMING PERSONNEL | 11B0O | 00 | YY |
| 24th Prev | 19970228 | 11 | | 299 INF REGT | HI | US | FC | INFANTRYMAN | 11B1O | 00 | YY |

000396

# REPORT TO SUSPEND FAVORABLE PERSONNEL ACTIONS (FLAG)
For use of this form, see AR 600-8-2; the proponent agency is MILPERCEN.

## SECTION I - ADMINISTRATIVE DATA

| | | |
|---|---|---|
| 1. NAME (Last, First, MI) | 2. SSN | 3. RANK |
| CLAIBORNE, DAMON JAHRON | Redacted PII | SSG |
| 4. ☐ On Active Duty    ☐ Not on Active Duty    ☐ On ADT | | 5. ETS/ESA/MRD |

6. UNIT ASSIGNED AND ARMY COMMAND                                7. STATION (Geographical Location)
WAT3A0  0001HQCPNS CO A  USA PRCE CMD (FORSCOM)                  JBLM LEWIS, WA

8. HR OFFICE CONTROLLING-FLAGGING ACTION AND TELEPHONE NUMBER
WAT3AA  0001HQI CORPS

9. THIS ACTION IS TO:

☑ Initiate a flag (Sections II and IV Only)    ☐ Remove Flag (Sections III and IV Only)

## SECTION II - INITIATE A FLAG

10. ☑ A FLAG IS INITIATED, EFFECTIVE _20140220_ FOR THE FOLLOWING REASON:

| NON-TRANSFERABLE | TRANSFERABLE |
|---|---|
| ☐ ADVERSE-ACTION (A) | ☐ PUNISHMENT PHASE(ADVERSE ACTION) (H), Date Complete: ____ |
| ☑ INVOLUNTARY SEPARATION/DISCHARGE-FIELD INITIATED (B) | ☐ ARMY PHYSICAL FITNESS TEST FAILURE (J) |
| ☐ REMOVAL FROM SELECTION LIST - FIELD INITIATED (C) | ☐ ARMY BODY COMPOSITION PROGRAM (K) |
| ☐ REFERRED-OER/RELIEF FOR CAUSE NCOER (D) | |
| ☐ SECURITY-VIOLATION (E) | |
| ☐ REMOVAL FROM SELECTION LIST - HEADQUARTERS DA INITIATED (F) | |
| ☐ COMMANDER'S INVESTIGATION (L) | |
| ☐ LAW ENFORCEMENT INVESTIGATION (M) | |
| ☐ CDR DECISION TO BLOCK AUTOMATIC PROMOTION TO PV2,PFC&SPC (P) | |
| ☐ NOT RECOMMENDED FOR AUTOMATIC PROMOTION TO 1LT/CW2 (T) | |
| ☐ DRUG ABUSE ADVERSE ACTION (U) | |
| ☐ ALCOHOL ABUSE ADVERSE ACTION (V) | |
| ☐ HQDA INITIATED INVOLUNTARY SEPARATION/DISCHARGE (W) | |
| ☐ OTHER (X), Remarks: ____ | |

## SECTION III - REMOVE A FLAG

11. ☐ A FLAG IS REMOVED, EFFECTIVE _____ FOR THE FOLLOWING REASON:

| | |
|---|---|
| ☐ FINAL-FAVORABLE REPORT (C) | ☐ FINAL-OTHER REPORT (E) |
| ☐ FINAL-UNFAVORABLE REPORT (D) | ☐ DELETE-ERRONEOUS FLAG (Z) |

## SECTION IV - AUTHENTICATION

DISTRIBUTION
1 - Unit Commander      1 - Soldier          1 - HRC (only if Soldier is on a HQDA selection list)
1 - S-1/MPD             1 - Commander, gaining unit (transfer flag only)

NAME, RANK, TITLE, AND ORGANIZATION        SIGNATURE                    DATE
Heather A. Hendon                                                        FEB 2 0 2014
CPT, MI
Commanding

DA Form 268, NOV 92              EDITION OF JUN 87 and earlier are OBSOLETE            APD 9V3.000

## DEVELOPMENTAL COUNSELING FORM
For use of this form, see FM 6-22; the proponent agency is TRADOC.

### DATA REQUIRED BY THE PRIVACY ACT OF 1974

| | |
|---|---|
| AUTHORITY: | 5 USC 301, Departmental Regulations; 10 USC 3013, Secretary of the Army. |
| PRINCIPAL PURPOSE: | To assist leaders in conducting and recording counseling data pertaining to subordinates. |
| ROUTINE USES: | The DoD Blanket Routine Uses set forth at the beginning of the Army's compilation of systems or records notices also apply to this system. |
| DISCLOSURE: | Disclosure is voluntary. |

### PART I - ADMINISTRATIVE DATA

| Name  (Last, First, MI) | Rank/Grade | Date of Counseling |
|---|---|---|
| Claiborne, Damon | SSG/E6 | 20 Feb 14 |

| Organization | Name and Title of Counselor |
|---|---|
| A Co, HHB, I Corps, JBLM, WA 98433 | CPT Hendon, Heather Company Commander |

### PART II - BACKGROUND INFORMATION

**Purpose of Counseling:**  *(Leader states the reason for the counseling, e.g. Performance/Professional or Event-Oriented counseling, and includes the leader's facts and observations prior to the counseling.)*

Event-oriented
Suspension of Favorable action for involuntary separation

### PART III - SUMMARY OF COUNSELING
Complete this section during or immediately subsequent to counseling.

**Key Points of Discussion:**

I am initiating a flag for involuntary separation, effective today.

### OTHER INSTRUCTIONS
This form will be destroyed upon: reassignment *(other than rehabilitative transfers)*, separation at ETS, or upon retirement.  For separation requirements and notification of loss of benefits/consequences see local directives and AR 635-200.

**DA FORM 4856, AUG 2010**          PREVIOUS EDITIONS ARE OBSOLETE.          APD PE v1.00ES

**Plan of Action**   *(Outlines actions that the s\_\_\_\_dinate will do after the counseling session to reach the \_\_\_d upon goal(s).  The actions must be specific enough to modify or maintain the subordinate's behavior and include a specified time line for implementation and assessment (Part IV below)*

Soldier will comply with all required appointments in a timely fashion.

**Session Closing:**   *(The leader summarizes the key points of the session and checks if the subordinate understands the plan of action.  The subordinate agrees/disagrees and provides remarks if appropriate.)*

Individual counseled:   ☒ I agree     ☐ disagree with the information above.
Individual counseled remarks:

Signature of Individual Counseled: _____   Date: 20140220

**Leader Responsibilities:**   *(Leader's responsibilities in implementing the plan of action.)*

Signature of Counselor: _____   Date: FEB 2 0 2014

### PART IV - ASSESSMENT OF THE PLAN OF ACTION

**Assessment:** *(Did the plan of action achieve the desired results?  This section is completed by both the leader and the individual counseled and provides useful information for follow-up counseling.)*

Counselor: _____   Individual Counseled: _____   Date of Assessment: _____

**Note:  Both the counselor and the individual counseled should retain a record of the counseling.**

REVERSE, DA FORM 4856, AUG 2010                                                                                     APD PE v1.00ES



**DEPARTMENT OF THE ARMY**
I CORPS HEADQUARTERS AND HEADQUARTERS BATTALLION
ALPHA COMPANY
JOINT BASE LEWIS MCCHORD, WA 98433

AFZH-HHB-ACO                                                    20 JULY 2014

MEMORANDUM FOR REQUEST

TO: Secretary of The Army (Honorable), John M. McHugh

SUBJECT: Request for Retirement in Lieu of Chapter 5-3 Proceedings and Letter of intent for,
SSG Claiborne, Damon J. 92F30H7, [Redacted PII] (DOB) [Redacted PII]

Honorable Mr. McHugh, It is my humbled request that the matters set before you be heard with
jurisprudence, impartialness and consideration. I write this letter on behalf of my voluntary
servitude to this great country for nearly 25 years, the tenacious dedication I possess and at the
request of my Spouse and children. There are many programs within in the military intended to
take care of Soldiers and their families, which were at the infancy stages during my tenure in
service. Unfortunately and substantially they were not understood to the extent they are now,
which still requires a bit of fine tuning.

 I for one was disheartened when I was sent in to combat pending a investigation of my Spouses
sexual assault by a neighboring Soldier on post in 2003. My Spouse felt the military was not
supportive for sending me into combat not even a week into the incident and eventually she
abandoned government quarters and would not return to my duty station. I came home to a
empty house and was greeted by no one. My life subsequently fell apart for I was mandated to
leave government quarters and barely having a place to live and sometimes in my car due to
supporting my spouse and children from afar.

I soon fell into clinical depression, feeling I had no one to rely on. I eventually met a young
women I was acquainted with online which led to the demise, which I now find myself in. I have
no excuse to offer but the emptiness in my own heart, which was truly a lapse of judgment,
awareness, education on resiliency and coping skills: post deployment. Soon after my release
from incarceration there noticed infusion of Soldier and family programs that seem to snag
and identify the apparent problems most married and single Soldiers encountered, which seemed
to improve as the programs matured.

I increasingly became aware of my social faults and ideations and have tremendously improved
in all areas of my life. I have been dedicated from day one to this cause as a Soldier and leader.
I am tenacious in every aspect I can to improve an individuals Soldier's life, unit, platoon, squad
and any program I feel that needs the touch of a Non Commissioned Officer that cares, for I
wasn't given the same as a young Soldier. Seeking help was stigmatized and sadly still remains.

I have prevented sexual assaults, reported sexual assaults and have had many female soldiers confided in me as well as males, due to this tragic topic that occurs daily within in the ranks. Sadly before my incarceration I was sexually assaulted and was seen clinically which I couldn't report jurisdictionally, to the military. In no way should any Soldier have to suffer this issue at all in the military. I have deployed, led and trusted myself to do the right thing ever since the singular mistake, that caused so much pain personally to my life and my very own family.

 I will not let something I've learned from define the total life of me. I have been dedicated to the B.O.S.S. Program since it's inception and popularity and have volunteered hundreds of hours in the program with my last stint primarily organizing the first ever Army Ten-Miler Shadow Run, officiated on USAG-Yongsan, in 2013. I have participated in numerous Unit ministry teams as a chorus member and support staff . I thank you and others for giving me the opportunity to serve and I am grateful of being able to "do what must be done" and that's taking care of Soldiers! Peace be unto you and God Bless! Sincerely and Very Respectfully,

DAMON J. CLAIBORNE
SSG,USA

For Official Use Only

## DEPARTMENT OF THE ARMY

20150327

Redacted PII

Redacted PII

Dear Mrs. Redacted PII

The National Defense Authorization Act of 2005, gave Soldiers the option to elect up to $400,000.00 worth of Insurance effective September 1, 2005. The Act also requires the US Army to notify a Soldier's spouse whenever the Soldier designates a recipient(s) in addition to or in place of the Soldier's spouse, reduces the maximum SGLI coverage to a lesser amount, or declines coverage completely.

The SGLI is an insurance payment of up to $400,000.00 to the person(s) designated on the SGLV form 8286. This letter serves as notice to you, as the lawful spouse of SSG DAMON JAHRON CLAIBORNE, that on 20150327 your spouse **elected another beneficiary to receive all or a portion of the SGLI**.

Your spouse is entitled to make this election and nothing related to this notification requirement will affect the validity of such election.

Should you have any questions relating to this letter, please contact _Janet Lucas Riley_ at _253-766-5124_

Sincerely,

_for Constance Hatten_

SIGNATURE BLOCK
S-1 or MPD Chief

Privacy Act Data in Accordance With Privacy Act of 1974
Dispose of this Properly

000402

07789220

## NCO EVALUATION REPORT
For use of this form, see AR 623-3 ; the proponent agency is DCS, G-1.

FOR OFFICIAL USE ONLY (FOUO)
SEE PRIVACY ACT STATEMENT
IN AR 623-3.

### PART I - ADMINISTRATIVE DATA

| a. NAME (Last, First, Middle Initial) | b. SSN | c. RANK | d. DATE OF RANK | e. PMOSC |
|---|---|---|---|---|
| CLAIBORNE, DAMON J. | Redacted PII | SSG ( ) | 20121201 | 92F3O |

| f.1. UNIT   ORG.   STATION   ZIP CODE OR APO,   MAJOR COMMAND | f.2. STATUS CODE | g. REASON FOR SUBMISSION |
|---|---|---|
| A CO, HHB, I Corps, Joint Base Lewis-McChord, WA 9843   FORSCOM | | 02   Annual |

| h. PERIOD COVERED | | i. RATED MONTHS | j. NON-RATED CODES | k. NO. OF ENCL | l. RATED NCO'S EMAIL ADDRESS (.gov or .mil) | m. UIC | n. CMD CODE | o. PSB CODE |
|---|---|---|---|---|---|---|---|---|
| FROM | THRU | | | | | | | |
| YEAR MONTH DAY | YEAR MONTH DAY | 12 | | | Redacted PII | WAT3A0 | FC | UB23 |
| 20140209 | 20150208 | | | | | | | |

### PART II - AUTHENTICATION

| a. NAME OF RATER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| LAMOREAU, JEFFREY D. | Redacted PII | LAMOREAU, JEFFREY DAVID Redacted PII | 20150302 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | RATER'S AKO EMAIL ADDRESS (.gov. or .mil) |
|---|---|---|---|---|
| SFC | 42A4O | A CO, HHB, I CORPS | OPERATIONS SGT | Redacted PII |

| b. NAME OF SENIOR RATER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| GULIFORD, TISHA A. | Redacted PII | GULIFORD, TISHA ANN Redacted PII | 20150302 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | SENIOR RATER S AKO EMAIL ADDRESS (.gov or .mil) |
|---|---|---|---|---|
| 1SG | 92Y5M | A CO, HHB, I CORPS | FIRST SERGEANT | Redacted PII |

| c. NAME OF REVIEWER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| WEST, LARRY F. | Redacted PII | WEST, LARRY FLYNN JR Redacted PII | 20150302 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | REVIEWER'S AKO EMAIL ADDRESS (.gov. or .mil) |
|---|---|---|---|---|
| AR | | A CO, HHB, I CORPS | COMMANDER | Redacted PII |

d. [X] CONCUR WITH RATER AND SENIOR RATER EVALUATIONS     NONCONCUR WITH RATER AND/OR SENIOR RATER EVAL (See attached comments)

| e. RATED NCO: I understand my signature does not constitute agreement or disagreement with the evaluations of the rater and senior rater. I further understand my signature verifies that the administrative data in Part I, the rating officials in Part II, the duty description to include the counseling dates in Part II, and the APFT and height/weight entries in Part IVc are correct. I have seen the completed report. I am aware of the appeals process of AR 623-3. | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|
| | CLAIBORNE, DAMON JAHRON Redacted PII | 20150302 |

### PART III - DUTY DESCRIPTION (Rater)

| a. PRINCIPAL DUTY TITLE | b. DUTY MOSC |
|---|---|
| Senior Transportation Coordinator | 92F3O |

c. DAILY DUTIES AND SCOPE (To include, as appropriate, people, equipment, facilities and dollars)

Serves as the Senior Transportation Coordinator of Troop movement for the I Corps Non Commissioned Officer Academy, consisting of a rotation including 116 Warrior Leadership Course students; responsible for the supervision of three NCOs and four Soldiers operating a total of six buses weekly for student training, valued in excess of $500,000, maintains fuel cards, maintenance, dispatch logging and accountability, alternatively in charge as a contingent lead for all I Corps mass bus movements (mission support) for annual exercises and Battalion level training/deployments.

d. AREAS OF SPECIAL EMPHASIS

Ulchi Freedom Guardian 2014 Exercise; EDRE transport; Loadmaster Coordination McChord Airfield.

e. APPOINTED DUTIES

Battalion Air Quality Management NCO

| f. COUNSELING DATES | INITIAL | LATER | LATER | LATER |
|---|---|---|---|---|
| | 20140210 | 20140506 | 20140825 | 20141102 |

### PART IV - ARMY VALUES/ATTRIBUTES/SKILLS/ACTIONS (Rater)

a. ARMY VALUES. Check either "YES" or "NO". (Bullet Comments are mandatory. Substantive bullet comments are required for 'NO' entries.)

| | | | YES | NO |
|---|---|---|---|---|
| **V** | Loyalty | 1. LOYALTY: Bears true faith and allegiance to the U. S. Constitution, the Army, the unit, and other Soldiers. | X | |
| **A** | Duty | 2. DUTY: Fulfills their obligations. | X | |
| | Respect | 3. RESPECT/EO/EEO: Treats people as they should be treated. | X | |
| | Selfless-Service | 4. SELFLESS-SERVICE: Puts the welfare of the nation, the Army, and subordinates before their own. | X | |
| **L** | | 5. HONOR: Lives up to all the Army values. | X | |
| | | 6. INTEGRITY: Does what is right – legally and morally. | X | |
| **U** | | 7. PERSONAL COURAGE: Faces fear, danger, or adversity (physical and moral) | X | |

**E**

Honor
Integrity
Personal Courage

**S**

Bullet comments

o supports the Sexual Harassment / Assault Response and Prevention Program

o dedicated to the health, morale and welfare of his Soldiers

o treated his seniors and subordinates with respect and dignity

DA FORM 2166-8, OCT 2011          PREVIOUS EDITIONS ARE OBSOLETE.          Page 1 of 2
APD PE v1.02ES

| RATED NCO'S NAME (Last, First, Middle Initial) CLAIBORNE, DAMON J. | SSN Redacted PII | THRU DATE 20150208 |
|---|---|---|

**PART IV (Rater) - VALUES/NCO RESPONSIBILITIES**   *Bullet comments are mandatory*
*Substantive bullet comments are required for "EXCELLENCE" or "NEEDS IMPROVEMENT."*

**b. COMPETENCE**
- o Duty proficiency; MOS competency
- o Technical & tactical; knowledge, skills, and abilities
- o Sound judgment
- o Seeking self-improvement; always learning
- o Accomplishing tasks to the fullest capacity; committed to excellence

EXCELLENCE (Exceeds std) | SUCCESS (Meets std) [X] | NEEDS IMPROVEMENT (Some) (Much)

o operated and supervised subordinates with a combined mileage in excess of 60,000 miles, accident-free

o improved maintenance of buses by enforcing preventative measures subsequently saving involved directorates from unanticipated costs

o assisted transitioning Soldiers with opportunities to transfer military training into a Commercial Drivers License

---

**c. PHYSICAL FITNESS & MILITARY BEARING**
- o Mental and physical toughness
- o Endurance and stamina to go the distance
- o Displaying confidence and enthusiasm; looks like a Soldier

EXCELLENCE (Exceeds std) | SUCCESS (Meets std) [X] | NEEDS IMPROVEMENT (Some) (Much)

APFT  PROFILE    20150206   HEIGHT/WEIGHT    73 / 215    YES

o displayed the mental endurance to complete missions whenever asked, whether planned or unanticipated

o exhibited the tenacity to continue forth to complete the mission regardless

o profile hinders duty performance

---

**d. LEADERSHIP**
- o Mission first
- o Genuine concern for Soldiers
- o Instilling the spirit to achieve and win
- o Setting the example; Be, Know, Do

EXCELLENCE (Exceeds std) | SUCCESS (Meets std) [X] | NEEDS IMPROVEMENT (Some) (Much)

o managed a group of seven Soldiers at the NCOA for the Warrior's Leadership Course, Troop Transport Section

o coordinated transport and pick -up of AC/RC personnel from an out of state NCOA MTT billets, returning 56 Soldiers safely to 7ID and 2ID Parent Commands

o instilled a SHARP friendly climate with keen sight and impartiality

---

**e. TRAINING**
- o Individual and team
- o Mission focused; performance oriented
- o Teaching Soldiers how; common tasks, duty-related skills
- o Sharing knowledge and experience to fight, survive and win

EXCELLENCE (Exceeds std) | SUCCESS (Meets std) [X] | NEEDS IMPROVEMENT (Some) (Much)

o assisted Battalion POL personnel with low density training and procedures to improve element operations

o assisted Soldiers with tips and scales and cargo transport and marking techniques during unit movement exercises

o shared deployment experiences with peers and subordinates to help with creating deployment TTPs

---

**f. RESPONSIBILITY & ACCOUNTABILITY**
- o Care and maintenance of equipment/facilities
- o Soldier and equipment safety
- o Conservation of supplies and funds
- o Encouraging Soldiers to learn and grow
- o Responsible for good, bad, right & wrong

EXCELLENCE (Exceeds std) | SUCCESS (Meets std) [X] | NEEDS IMPROVEMENT (Some) (Much)

o volunteered to perform as a disc jockey for company and battalion events using own equipment to save unit funds

o responsible for the accountability of six student-type buses valued in excess of $500,000

---

**PART V - OVERALL PERFORMANCE AND POTENTIAL**

**a. RATER.** Overall potential for promotion and/or service in positions of greater responsibility.

AMONG THE BEST | FULLY CAPABLE [X] | MARGINAL

**e. SENIOR RATER BULLET COMMENTS**

o promote with peers

o send to advanced schooling if available

o performs well with direct supervision

**b. RATER.** List 3 positions in which the rated NCO could best serve the Army at his/her current or next higher grade.

Platoon Sergeant

Liaison Coordinator

Section Sergeant

| c. SENIOR RATER. Overall performance | [X] 1  2  3 Successful | 4 Fair | 5 Poor | d. SENIOR RATER. Overall potential for promotion and/or service in positions of greater responsibility. | [X] 1  2  3 Superior | 4 Fair | 5 Poor |

DA FORM 2166-8, OCT 2011

Page 2 of 2
APO PE v1.02EB

000404

07464357

## NCO EVALUATION REPORT
For use of this form, see AR 623-3 ; the proponent agency is DCS, G-1.

FOR OFFICIAL USE ONLY (FOUO)
SEE PRIVACY ACT STATEMENT IN AR 623-3

### PART I - ADMINISTRATIVE DATA

| a. NAME (Last, First, Middle Initial) | b. SSN | c. RANK | d. DATE OF RANK | e. PMOSC |
|---|---|---|---|---|
| CLAIBORNE, DAMON J. | Redacted PII | SSG ( ) | 20121201 | 92F3O |

| f.1. UNIT    ORG. | STATION | ZIP CODE OR APO, | MAJOR COMMAND | f.2. STATUS CODE | g. REASON FOR SUBMISSION |
|---|---|---|---|---|---|
| HSC, HHB, EIGHTH ARMY | YONGSAN   APO AP 96205 | | USARPAC | 03 | Change of Rater |

| h. PERIOD COVERED | | i. RATED MONTHS | j. NON-RATED CODES | k. NO. OF ENCL | l. RATED NCO'S EMAIL ADDRESS (.gov or .mil) | m. UIC | n. CMD CODE | o. PSB CODE |
|---|---|---|---|---|---|---|---|---|
| FROM | THRU | | | | Redacted PII | WJS7T0 | P1 | |
| YEAR MONTH DAY 20130317 | YEAR MONTH DAY 20140208 | 11 | | | | | | |

### PART II - AUTHENTICATION

| a. NAME of RATER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| JOHNSON, JUAN L. | Redacted PII | JOHNSON, JUAN LEVICTOR Redacted PII | 20140529 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | RATER'S AKO EMAIL ADDRESS (.gov or .mil) |
|---|---|---|---|---|
| SFC | 91X4O | HSC, HHB, EIGHTH ARMY | Bn Motor Sergeant | Redacted PII |

| b. NAME OF SENIOR RATER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| MANEVAL, STEPHEN | Redacted PII | MANEVAL.STEPHEN.CHARLES. Redacted PII | 20140529 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | SENIOR RATER S AKO EMAIL ADDRESS (.gov or .mil) |
|---|---|---|---|---|
| 1LT | CM | HSC, HHB, EIGHTH ARMY | Bn Motor Officer | Redacted PII |

| c. NAME OF REVIEWER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| RIESENBERGER, DANIEL W. | Redacted PII | RIESENBERGER.DANIEL.W Redacted PII | 20140529 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | REVIEWER'S AKO EMAIL ADDRESS (.gov or .mil) |
|---|---|---|---|---|
| CPT | MI | HSC, HHB, EIGHTH ARMY | Co Commander | Redacted PII |

d. ☒ CONCUR WITH RATER AND SENIOR RATER EVALUATIONS        ☐ NONCONCUR WITH RATER AND/OR SENIOR RATER EVAL (See attached comments)

| e. RATED NCO: I understand my signature does not constitute agreement or disagreement with the evaluations of the rater and senior rater. I further understand my signature verifies that the administrative data in Part I, the rating officials in Part II, their duty description to include the counseling dates in Part III, and the APFT and height/weight entries in Part IVc are correct. I have seen the completed report. I am aware of the appeals process of AR 623-3. | SIGNATURE CLAIBORNE.DAMON.JAHRON Redacted PII | DATE (YYYYMMDD) 20140603 |
|---|---|---|

### PART III - DUTY DESCRIPTION (Rater)

| a. PRINCIPAL DUTY TITLE | b. DUTY MOSC |
|---|---|
| Petroleum Supply Specialist | 92F3O |

c. DAILY DUTIES AND SCOPE (To include, as appropriate, people, equipment, facilities and dollars)

Serves as the senior petroleum supply specialist in the maintenance platoon for the Headquarters Support Company, Headquarters and Headquarters Battalion, Eighth United States Army Korea; responsible for the health, morale, and welfare of two NCO's and five Soldiers; responsible for the receipt, issue, and storage of all assigned Class III supplies; responsible for the supervision of environmental protection activities and contingency plans; maintains and accounts for two M978's and two FMTV mounted Tank and Pump Units (TPU's) valued in excess of $1,000,000.00.

d. AREAS OF SPECIAL EMPHASIS

Exercise Ulchi Freedom Guardian 2013 (UFG13); 2ID Warfighter Exercise; Environmental Compliance Inspections

e. APPOINTED DUTIES

Squad Leader; Environmental NCO, SOFA U.S. Representative, Senior Battalion (BOSS) Representative, POL Section Sergeant

| f. COUNSELING DATES | INITIAL | LATER | LATER | LATER |
|---|---|---|---|---|
| | | | | |

### PART IV - ARMY VALUES/ATTRIBUTES/SKILLS/ACTIONS (Rater)

a. ARMY VALUES. Check either "YES" or "NO". (Bullet Comments are mandatory. Substantive bullet comments are required for "NO" entries.)

| | | | YES | NO |
|---|---|---|---|---|
| **V A L U E S** | Loyalty | 1. LOYALTY: Bears true faith and allegiance to the U. S. Constitution, the Army, the unit, and other Soldiers. | ☒ | |
| | Duty | 2. DUTY: Fulfills their obligations. | ☒ | |
| | Respect | 3. RESPECT/EO/EEO: Treats people as they should be treated. | ☒ | |
| | Selfless-Service | 4. SELFLESS-SERVICE: Puts the welfare of the nation, the Army, and subordinates before their own. | ☒ | |
| | | 5. HONOR: Lives up to all the Army values. | ☒ | |
| | Honor | 6. INTEGRITY: Does what is right - legally and morally. | ☒ | |
| | Integrity | 7. PERSONAL COURAGE: Faces fear, danger, or adversity (physical and moral). | ☒ | |
| | Personal Courage | | | |

Bullet comments

o supports the Sexual Harassment / Assault Response and Prevention program

o dedicated to the health, morale, and welfare of his Soldiers

o treated his seniors and subordinates with respect and dignity

DA FORM 2166-8, OCT 2011        PREVIOUS EDITIONS ARE OBSOLETE.

Page 1 of 2
APD PE v1.02ES

000405

| RATED NCO'S NAME (Last, First, Middle initial)<br>CLAIBORNE, DAMON J. | | SSN<br>Redacted PII | THRU DATE<br>20140208 |
|---|---|---|---|

**PART IV (Rater) – VALUES/NCO RESPONSIBILITIES**    *Bullet comments are mandatory.*
*Substantive bullet comments are required for "EXCELLENCE" or "NEEDS IMPROVEMENT."*

| b. COMPETENCE<br>o Duty proficiency; MOS competency<br>o Technical & tactical; knowledge, skills, and abilities<br>o Sound judgment<br>o Seeking self-improvement; always learning<br>o Accomplishing tasks to the fullest capacity; committed to excellence | o passed the DPW quarterly environmental inspection<br><br>o established the Spill Prevention, Facility Response, Spill Prevention Control, Countermeasures, and Oil Discharge Contingency Plans for the Battalion<br><br>o supervised the receiving and storing of all Class III inventory |
|---|---|

EXCELLENCE *(Exceeds std)* ☐   SUCCESS *(Meets std)* ☒   NEEDS IMPROVEMENT *(Some)* ☐ *(Much)* ☐

| c. PHYSICAL FITNESS & MILITARY BEARING | APFT  PROFILE      20130330   HEIGHT/WEIGHT   73 / 217   YES |
|---|---|
| o Mental and physical toughness<br>o Endurance and stamina to go the distance<br>o Displaying confidence and enthusiasm; looks like a Soldier | o displayed the mental endurance to complete all missions at any time during UFG13 and 2ID Warfighter exercise<br><br>o exhibited the toughness to drive on and fulfill his duties regardless of physical limits<br><br>o instilled mental toughness in subordinates |

EXCELLENCE *(Exceeds std)* ☐   SUCCESS *(Meets std)* ☒   NEEDS IMPROVEMENT *(Some)* ☐ *(Much)* ☐

| d. LEADERSHIP<br>o Mission first<br>o Genuine concern for Soldiers<br>o Instilling the spirit to achieve and win<br>o Setting the example; Be, Know, Do | o managed a team of five Soldiers during UFG13 providing mission critical maintenance and fuel support to the Eighth Army Operational Command Post<br><br>o led a fuel support team during the 2ID Warfighter Exercise<br><br>o supported the SHARP program; treated others with respect and dignity |
|---|---|

EXCELLENCE *(Exceeds std)* ☐   SUCCESS *(Meets std)* ☒   NEEDS IMPROVEMENT *(Some)* ☐ *(Much)* ☐

| e. TRAINING<br>o Individual and team<br>o Mission focused; performance oriented<br>o Teaching Soldiers how; common tasks, duty-related skills<br>o Sharing knowledge and experience to fight, survive and win | o served as Range Safety Officer for three ranges resulting in zero safety violations<br><br>o assisted in the training and integration of 10 new Soldiers into the maintenance platoon<br><br>o shared knowledge of maintenance operations with his peers and subordinates |
|---|---|

EXCELLENCE *(Exceeds std)* ☐   SUCCESS *(Meets std)* ☒   NEEDS IMPROVEMENT *(Some)* ☐ *(Much)* ☐

| f. RESPONSIBILITY & ACCOUNTABILITY<br>o Care and maintenance of equipment/facilities<br>o Soldier and equipment safety<br>o Conservation of supplies and funds<br>o Encouraging Soldiers to learn and grow<br>o Responsible for good, bad, right & wrong | o maintained 100% accountability of two HEMTT tankers and two FMTV mounted TPU's valued in excess of $1,000,000.00<br><br>o supervised and enforced environmental safety standards resulting in no incidents during the rating period<br><br>o accepted responsibility for the actions of his subordinates whether right or wrong |
|---|---|

EXCELLENCE *(Exceeds std)* ☐   SUCCESS *(Meets std)* ☒   NEEDS IMPROVEMENT *(Some)* ☐ *(Much)* ☐

**PART V - OVERALL PERFORMANCE AND POTENTIAL**

| a. RATER. Overall potential for promotion and/or service in positions of greater responsibility. | e. SENIOR RATER BULLET COMMENTS<br>o promote at the convenience of the Army<br><br>o send to ALC when available<br><br>o capable of continued performance at current level of responsibility |
|---|---|

AMONG THE BEST ☐   FULLY CAPABLE ☒   MARGINAL ☐

| b. RATER. List 3 positions in which the rated NCO could best serve the Army at his/her current or next higher grade. |
|---|
| Squad Leader |
| Petroleum Supply NCO |
| Pump Station Foreman |

| c. SENIOR RATER. Overall performance | 1  2  ☒3  4  5<br>Successful    Fair    Poor | d. SENIOR RATER. Overall potential for promotion and/or service in positions of greater responsibility | 1  2  ☒3  4  5<br>Superior    Fair    Poor |
|---|---|---|---|

DA FORM 2166-8, OCT 2011

Page 2 of 2
APD PE v1 02ES

000406

CLAIBORNE, DAMON J.

A1501B

13 04 22
SSG 92F



000407

000408



# DEPARTMENT OF THE ARMY

### THIS IS TO CERTIFY THAT THE SECRETARY OF THE ARMY HAS AWARDED

## THE ARMY ACHIEVEMENT MEDAL

**TO**     STAFF SERGEANT DAMON J. CLAIRBORNE
658TH REGIONAL SUPPORT GROUP

**FOR**  EXCEPTIONALLY MERITORIOUS ACHIEVEMENT WHILE SERVING  AS THE MORALE AND WELFARE
COORDINATOR FOR THE WALKER LOGISTICS SUPPORT AREA DURING KEY RESOLVE 2013.  YOUR
DEDICATION AND UNTIRING DUTY PERFORMANCE WERE INSTRUMENTAL IN ENSURING THE SUCCESS OF
THE 658TH REGIONAL SUPPORT COMMAND'S FIRST WAR TIME EXERCISE.  YOUR OUTSTANDING
PERFORMANCE IS IN KEEPING WITH THE FINEST TRADITIONS OF THE SERVICE AND REFLETS GREAT
CREDIT UPON YOU, THE 658TH REGIONAL SUPPORT GROUP, 9TH MISSION SUPPORT COMMAND, AND THE
UNITED STATES ARMY.

11 TO 23 MARCH 2013



PERMANENT ORDER #13-132-02
658TH REGIONAL SUPPORT GROUP
YONGSAN, KOREA

STACEY T. YAMADA
COL, CA
COMMANDING

RM 4560-18, NOV 97

## RECOMMENDATION FOR AWARD
For use of this form, see AR 600-8-22; the proponent agency is DCS, G-1

For valor/heroism/wartime and all awards higher than MSM, refer to special instructions in Chapter 3, AR 600-8-22.

| 1. TO | 2. FROM | 3 DATE *(YYYYMMDD)* |
|---|---|---|
| CDR, 658TH RSG UNIT #15799<br>APO AP 96205-5799 | TF TIGER, 658TH RSG UNIT #15799<br>APO AP 96205-5799 | 20130323 |

### PART I - SOLDIER DATA

| 4 NAME *(Last, First, Middle Initial)*<br>CLAIBORNE, DAMON J. | 5. RANK<br>SSG | 6 SSN<br>Redacted PII |
|---|---|---|
| 7 ORGANIZATION<br>I&S, HHB<br>APO AP 96205 | 8. PREVIOUS AWARDS<br>AAM-4, ARCOM-4 | |

| 9. BRANCH OF SERVICE | 10 RECOMMENDED AWARD | | 11. PERIOD OF AWARD | |
|---|---|---|---|---|
| | | | a FROM | b TO |
| | AAM    3RD AWD | | 20130311 | 20130323 |

| 12. REASON FOR AWARD | | | | |
|---|---|---|---|---|
| 12a INDICATE REASON<br>ACH | 12b INTERIM AWARD   YES ☐  NO ✓<br>IF YES, STATE AWARD GIVEN | 12c. POSTHUMOUS<br>YES ☐    NO ✓ | 13. PROPOSED PRESENTATION DATE *(YYYYMMDD)*<br>20130407 | |

### PART II - RECOMMENDER DATA

| 14. NAME *(Last, First, Middle Initial)*<br>MORALES-OBJIO, BELKYS M. | 15. ADDRESS<br>658TH RSG |
|---|---|
| 16 TITLE/POSITION<br>HHD, XO | 17. RANK<br>1LT | UNIT # 15799<br>APO AP 96205-5799 |
| 18 RELATIONSHIP TO AWARDEE<br>RECOMMENDER | 19. SIGNATURE   MORALESOBJIO.BELKYS.M  Redacted PII |

### PART III - JUSTIFICATION AND CITATION DATA *(Use specific bullet examples of meritorious acts or service)*

**20 ACHIEVEMENTS**

ACHIEVEMENT #1

SSG Claiborne served as the MWR Coordinator for the Walker Logistics Support Area during Key Resolve 2013. His efforts in conducting MWR operations greatly enhanced the quality of service provided to more than 680 personnel. His selfless service went above and beyond normal duty hours to fulfill the MWR mission. His positive attitude and customers service oriented posture ensure LSA personnel had a place to relax and unwind during off duty hours. He was instrumental to the 658th RSG mission success.

ACHIEVEMENT #2

ACHIEVEMENT #3

ACHIEVEMENT #4

21. PROPOSED CITATION

FOR EXCEPTIONALLY MERITORIOUS ACHIEVEMENT WHILE SERVING AS THE MWR COORDINATOR FOR THE WALKER LOGISTICS SUPPORT AREA DURING KEY RESOLVE 2013. YOUR DEDICATION AND UNTIRING DUTY PERFORMANCE WERE INSTRUMENTAL IN ENSURING THE SUCCESS OF THE 658TH REGIONAL SUPPORT COMMAND'S FIRST WAR TIME EXERCISE. YOUR OUTSTANDING PERFORMANCE IS IN KEEPING WITH THE FINEST TRADITIONS OF SERVICE AND REFLECTS GREAT CREDIT UPON YOU, THE 658TH REGIONAL SUPPORT COMMAND'S AND THE UNITED STATES ARMY.

000409

| NAME (Last, First, Middle Initial) | SSN |
|---|---|
| CLAIBORNE, DAMON J. | Redacted PII |

| PART IV - RECOMMENDATIONS/APPROVAL/DISAPPROVAL | | |
|---|---|---|
| 22. I certify that this individual is eligible for an award in accordance with AR 600-8-22; and that the information contained in Part I is correct. | 22a. SIGNATURE MILLS,EVELYN,CRYSTAL T(hid) Redacted PII | 22b. DATE (YYYYMMDD) 20130404 |

| 23. INTERMEDIATE AUTHORITY | a. TO CDR, HHC 658TH RSG UNIT APO AP 96205-5799 | b. FROM TF TIGER, 658TH RSG APO AP 96205-5799 | c. DATE (YYYYMMDD) 20130407 |
|---|---|---|---|
| d. RECOMMEND: ✓ APPROVAL ☐ DISAPPROVAL | | ☐ UPGRADE TO: | ☐ DOWNGRADE TO: |
| e. NAME (Last, First, Middle Initial) TUNG, CHRISTOPHER P. | | f. RANK CPT | |
| g. TITLE/POSITION HHC COMMANDER | | h. SIGNATURE TUNG.CHRISTOPHER.PETER Redacted PII | |
| i. COMMENTS | | | |

| 24. INTERMEDIATE AUTHORITY | a. TO | b. FROM | c. DATE (YYYYMMDD) |
|---|---|---|---|
| d. RECOMMEND: ☐ APPROVAL ☐ DISAPPROVAL | | ☐ UPGRADE TO: | ☐ DOWNGRADE TO: |
| e. NAME (Last, First, Middle Initial) | | f. RANK | |
| g. TITLE/POSITION | | h. SIGNATURE | |
| i. COMMENTS | | | |

| 25. INTERMEDIATE AUTHORITY | a. TO | b. FROM | c. DATE (YYYYMMDD) |
|---|---|---|---|
| d. RECOMMEND: ☐ APPROVAL ☐ DISAPPROVAL | | ☐ UPGRADE TO: | ☐ DOWNGRADE TO: |
| e. NAME (Last, First, Middle Initial) | | f. RANK | |
| g. TITLE/POSITION | | h. SIGNATURE | |
| i. COMMENTS | | | |

| 26. APPROVAL AUTHORITY | a. TO ORDER ISSUING AUTHORITY | b. FROM CDR, 658TH RSG UNIT #15799 APO AP 96205-5799 | c. DATE (YYYYMMDD) |
|---|---|---|---|
| d. ☐ APPROVED ☐ DISAPPROVED | | RECOMMEND UPGRADE TO: | ☐ DOWNGRADE TO: |
| e. NAME (Last, First, Middle Initial) YAMADA, STACEY Y. | | f. RANK COL | |
| g. TITLE/POSITION BRIGADE COMMANDER | | h. SIGNATURE | |
| i. COMMENTS | | | |

| PART V - ORDERS DATA | | |
|---|---|---|
| 27a. ORDERS ISSUING HQ 658TH REGIONAL SUPPORT GROUP (RSG) UNIT 15799, APO AP 96205-5799 | 27b. PERMANENT ORDER NO 13-132-02 | 31 DISTRIBUTION 1-File 1-OMPF 1-Unit 3-Individual |
| 28a. NAME OF ORDERS APPROVAL AUTHORITY MILLS, EVELYN T. | 28b. RANK MSG | |
| 28c. TITLE/POSITION S1 NCOIC/AWARD NCOIC | 29 APPROVED AWARD AAM   3RD AWD | |
| 28d. SIGNATURE | 30 DATE (YYYYMMDD) 20130512 | |

DA FORM 638, APR 2006

Page 2 of 3
APO PE v3.00E6



**DEPARTMENT OF THE ARMY**
HEADQUARTERS AND HEADQUARTERS BATTALION, EIGHTH ARMY
Unit #15236
APO AP 96205-5236

REPLY TO
ATTENTION OF:

Permanent Orders 044-007                                    13 February 2013

CLAIBORNE, DAMON J., Redacted PII SSG, 0008 HQ INTEL CO HHB (WJS7B0), APO AP
96205

Announcement is made for the following award.

Award: Army Good Conduct Medal (7th award).
Date(s) or period of service: From 9 February 2010 To 8 February 2013.
Authority: AR 600-8-22 Paragraph 4-3.
Reason: For exemplary behavior, efficiency and fidelity in active Federal military service.
Format: 320

FOR THE COMMANDER:

JOEL B. BECKNER
CPT, AG
Battalion Adjutant

DISTRIBUTION:
CDR, HRC-FORT KNOX, ATTN: AHRC-PDR-R,
   1600 SPEARHEAD DIVISION AVENUE, FORT KNOX, KY 40122 (1)
CDR, HHB, ATTN: EAHC-AG (1)
0008 HQ INTEL CO HHB (WJS7B0) (1)
SSG, CLAIBORNE, DAMON J. (1)

**000411**

| AUTHORIZATION TO START, STOP, OR CHANGE BASIC ALLOWANCE FOR QUARTERS (BAQ), AND/OR VARIABLE HOUSING ALLOWANCE (VHA) For use of this form, see AR 37-104-4; the proponent agency is ASA (FM) | PRIVACY ACT STATEMENT |
|---|---|

**PRIVACY ACT STATEMENT**

**AUTHORITY:** 37 USC 403; Public Law 96-343; EO 9397.

**PRINCIPLE PURPOSE:** To start, adjust or terminate military member's entitlement to basic allowance for quarters (BAQ) and/or variable housing allowance (VHA).

**ROUTINE USE:** To adjust member's military pay record, information may be disclosed to Army components, such as USAFAC, major commands, and other Army installations; to other DOD components; other federal agencies such as IRS, Social Security Administration and VA, GAO, members of Congress; State and local government; US and State courts, and various law enforcement agencies. Social Security Number (SSN) is used for positive identification.

**DISCLOSURE IS VOLUNTARY:** Nondisclosure may result in nonpayment of BAQ and/or VHA. Disclosure of your SSN is voluntary. However, this form will not be processed without your SSN because the Army identifies you for pay purposes by your SSN.

1. NAME (Last, First, MI)    Claiborne Damon J.

2. SOCIAL SECURITY NUMBER    Redacted PII

3. GRADE

4. TYPE OF ACTION

| START | CANCEL | CHANGE | REPORT |
|---|---|---|---|
| CORRECT | STOP ☒ | RECERTIFICATION | |

5. DUTY LOCATION (Include Station, Name, City, State, and Zip Code)    FORT CARSON 80913

6. DATE/ACTION (YYMMDD)    120003

7. BAQ TYPE
| WITH DEPENDENTS | PARTIAL |
| WITHOUT DEPENDENTS | |

8. MARITAL/DEPENDENCY STATUS

| a. SINGLE | b. MARRIED ☒ (see blocks (1), (2) & (3)) | c. DIVORCED (see blocks (1), (2) & (3)) |
|---|---|---|
| d. LEGALLY SEPARATED (see blocks (1), (2) & (3)) | e. DEPENDENT CHILD (see blocks (4), (5) & (6)) | |

9. QUARTERS ASSIGNMENT/AVAILABILITY

| a. ADEQUATE (see block (1)) | b. INADEQUATE (see blocks (1), (2) & (4)) |
|---|---|
| c. TRANSIENT (see block (3)) | d. NOT AVAILABLE ☒ |

(1) Spouse/Former Spouse SSN    C I N

(2) Spouse/Former Spouse Duty Station

(3) Date of Marriage, Divorce/Separation    16 Jun 2009

(4) Child in Custody of: ☒ Member   Spouse   Former Spouse   Other

(5) If you check "OTHER" above, prepare DD Form 137 to establish dependency.

(6) If child support received from another military member, complete (1), (2) & (3).

(1) QUARTERS NO.

(2) FAIR RENTAL VALUE $

(3) FROM:    TO:

(4)    MEMBER ELECTION (Member in grade E7 and above)    COMMANDER DETERMINATION (Attached)

10. DEPENDENTS/SHARERS (Continue on back if required)

| NAME OF DEPENDENT/SHARER | COMPLETE CURRENT ADDRESS (Include ZIP Code) | RELATIONSHIP | DOB OF CHILDREN |
|---|---|---|---|
| Redacted PII | | | |

11. "Over!"    CERTIFICATION OF DEPENDENT SUPPORT    "Over"

☒ I certify that I provide, or am will to provide adequate support for the above named dependents. I am aware that failure to support the above named dependents may result in stopping BAQ and recouping BAQ for any prior periods/nonsupport.

☒ IAW service regulations, I certify that the dependency status of my primary dependents, on whose behalf I am receiving BAQ, has not changed so as to affect my entitlement thereto for the period

12. EXPENSES, IF AUTHORIZED, I AM REQUESTING VHA BASED ON

| My permanent duty station: | My dependent's location: | Both my permanent duty station and dependent's location. |
|---|---|---|

| a. Monthly Expenses: | Member | Dependent | b. Sharer/Lease Information | c. Address Information |
|---|---|---|---|---|
| (1) Mortgage (PITI) or Rent | | | (1) Rental/Residential Address: | (1) Landlord's Name and Address: |
| (2) Insurance | | | | |
| (3) Other | | | (2) Effective Date:  (3) Expiration Date: | (2) Landlord's Phone No. |
| TOTALS | | | (4) Number of Sharers (show name(s) and address in block 10.) | |

Received By OCT 0 4 2012 FT. Carson, DMPO

I certify ALL information regarding this authorization is correct. I will immediately notify the FAO/HRO of any changes in the information above, due to divorce, marriage, death, living in government quarters etc, which could affect by BAQ or VHA entitlement.
IMPORTANT: Making a false statement or claim against the US Government is punishable by court-martial. The penalty for willfully making a false claim or a false statement in connection with claims is a maximum fine of $10,000 or imprisonment for 5 years, or both.

13. MEMBER'S SIGNATURE

14. DATE    3 Oct 12

15. CERTIFYING OFFICER'S SIGNATURE    Benefits Per(?) CIV/DoD Director, DMPO

16. DATE    4 Oct 12

DA FORM 5960, SEP 1990    REPLACES DA FORM 3298, JUL 80 AND DA FORM 5545, JUL 86 WHICH ARE OBSOLETE    APD PE v2.03ES

000412

SHO3
120914
A
121010
6411

DEPARTMENT OF THE ARMY
Headquarters, 4th Infantry Division and Fort Carson
Fort Carson, Colorado 80913-5000

ORDERS  272-900

28 September 2012

CLAIBORNE, DAMON J. [Redacted PII] SGT 4 CS CO A DIST (WJAYA0) Fort Carson, CO 80913

The following order is amended as indicated.

**So much of:** Order 209-906, HQ, 4th Infantry Division and Fort Carson, dated 27 July 2012.
**Pertaining to:** reassignment of: CLAIBORNE, DAMON J. [Redacted PII] SGT 4 CS CO A DIST (WJAYA0) Fort Carson, CO 80913.
**As reads:** Additional instructions: (c) DEPENDENTS: YES. Family travel status is dependent upon completion of the Exceptional Family Member Program (EFMP) and DA Forms 4787 AND 5888. You are authorized storage of POV.
**How changed: is amended to read:** Additional instructions: (c) **DEPENDENTS: YES.** Service member is granted Deferred Travel to Off-Post Quarters. Government quarters are not available within 90-180 days. Family members are not authorized to travel until the service member has acquired quarters on-post or on the local economy, and an appropriate amended order has been issued. Family members arriving before the sponsor acquires quarter's on-post or on the local economy are not entitled to TLA. Officers and senior enlisted in the grade of E-6(P) and above are required to in-process through Unaccompanied Personnel Housing (UPH) and occupy UPH quarters until family quarters become available. Personnel in the grade E-6 and below must occupy unit barracks until family quarters is available. Service member must contact the housing office within 48 hours of arriving on station. The contact number is 738-3201/4069/ 8168. Additional information on Yongsan housing and living in Seoul is available at www.housing.army.mil or http://yongsan.korea.army.mil. Housing Office e-mail address is usagyongsanhousing@korea.army.mil.
**How changed: is amended to add:** Additional instructions: (cc) You must notify your gaining unit when port call is received. POC is SSG Jacob Aguilar at DSN (315) 738-4534.
(dd) This is a Command Sponsored, 24 month, accompanied tour and Soldier is assigned to Command Sponsorship position number S-3191.
(ee) You are authorized to ship ½ weight allowances to Korea, up to the weight allowances prescribed in relevant JFTR. Shipment of POV and HHG to Korea is authorized. Government quarters are furnished with stove refrigerator, washer, dryer and air conditioner. These are not authorized for shipment to this command. Please ensure adherence to these specifications.
(ff) Non-temporary storage of household goods outside CONUS at government expense is not authorized. Ensure projected quarters will have sufficient room to store all HHG shipped.
(gg) Please ensure all dependents obtain VISAs required by AR 600-290 and AR 600-8-11. IAW AR 600-8-14, request all eligible dependents have new Real-time Automated Personnel Identification System (RAPIDS) ID Card.
(hh) In preparation for travel to Korea, it is recommended that any child 4-18 years of age complete their Sport and School Annual Physical Exams and Annual PPD prior to arrival in Korea.

Received By
OCT 0 4 2012
FT Carson, DMPO

1010|4820/B7/13

**000413**

ORDERS 272-900          HQ, 4th Infantry Division and Fort Carson          28 September 2012

(ii) Service members bringing school age children must visit the Department of Defense School-Korea website at http://www.korea.pac.dodea.edu and pre-register each student prior to arriving in Korea.

(jj) Passports and Visas are required for Command Sponsored dependents assigned to Korea. Eligible family members are authorized to request no-fee official passports through the losing installation; at your discretion, you may use fee (tourist) passports for PCS to Korea when there is a delay in obtaining the no-fee passport. You will not be reimbursed for the cost of obtaining a tourist passport. Visas should be attained prior to arrival. However, entry without a visa is allowed but visa must be secured within 90 days of arrival.

(kk) Escort travel is only authorized when a family member of a sole-parent soldier or dual military couple was not authorized to travel concurrently with the soldier to the new duty station. It is NOT authorized for Soldiers that elect to serve an unaccompanied tour and then elects to change his tour after arrival in the overseas command.

(ll) During your in-processing, you are required to access the nearest installation EFMP Coordinator Office and complete a locator card for your family so you can be added to their mailing list.

(mm) The MEDDAC-K EFMP Physician has determined that medical services are NOT available in Area III for the family members of Claiborne, Damon. Services are available in Area II ONLY. Travel to Korea, Area II ONLY is recommended. Concerns or issues regarding the availability of Exceptional Family Member Program services availability determinations must be addressed through your servicing S1 to the (losing installation MPD to USAG-Y MPD CSP Office (USARMY.YONGSAN.8-ARMY.LIST.CSP-KOREA@MAIL.MIL if inbound) or servicing S1 to USAG-Y CSP Office (USARMY.YONGSAN.8-ARMY.LIST.CSP-KOREA@MAIL.MIL) if in-country.

(nn) POC for this action is USARMY.YONGSAN.8-ARMY.LIST.CSP-KOREA@MAIL.MIL or DSN (315) 723-2781.

Authority: Command Sponsorship# S-3191 dated 28 September 2012
Format 700

FOR THE COMMANDER:

KEITH A. CASHION
DAC
Chief, Consolidated Assignments Processing Section

DISTRIBUTION:
INDIVIDUAL (5)
CDR, 4 CS CO A DIST (1)
PSNCO, 1-4BCT (1)
CDR, USA SPT ACT AREA III KOR, APO AP 96271 (1)

06417113

## NCO EVALUATION REPORT
For use of this form, see AR 623-3; the proponent agency is DCS, G-1

FOR OFFICIAL USE ONLY (FOUO)
SEE PRIVACY ACT STATEMENT
IN AR 623-3.

### PART I - ADMINISTRATIVE DATA

| a. NAME (Last, First, Middle Initial) | b. SSN | c. RANK | d. DATE OF RANK | e. PMOSC |
|---|---|---|---|---|
| CLAIBORNE, DAMON J. | Redacted PII | SGT ( ) | 20070701 | 92F2O |

| f.1. UNIT   ORG.   STATION   ZIP CODE OR APO,   MAJOR COMMAND | f.2. STATUS CODE | g. REASON FOR SUBMISSION |
|---|---|---|
| A CO, 4TH BSB, 1BCT, 4ID, FORT CARSON, CO 80913   FORSCOM | | 03   Change of Rater |

| h. PERIOD COVERED | | i. RATED MONTHS | j. NON-RATED CODES | k. NO. OF ENCL | l. RATED NCO'S EMAIL ADDRESS (gov or .mil) | m. UIC | n. CMD CODE | o. PSB CODE |
|---|---|---|---|---|---|---|---|---|
| FROM | THRU | | | | Redacted PII | | | |
| YEAR MONTH DAY | YEAR MONTH DAY | | | | | | | |
| 20120303 | 20121010 | 7 | | | | WJAYA0 | FC | UA95 |

### PART II - AUTHENTICATION

| a. NAME OF RATER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| JACK, ROBERT H. | Redacted PII | JACK.ROBERT. Redacted PII | 20120928 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | RATER'S AKO EMAIL ADDRESS (gov. or .mil) |
|---|---|---|---|---|
| SGT | 92F2O | A CO, 4TH BSB, 1BCT, 4ID | SECTION SGT | Redacted PII |

| b. NAME OF SENIOR RATER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| HUDSON, JOSEPH L. | Redacted PII | HUDSON.JOSEPH.LAMONT Redacted PII | 20120928 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | SENIOR RATER S AKO EMAIL ADDRESS (gov. or .mil) |
|---|---|---|---|---|
| SSG | 92F34 | A CO, 4TH BSB, 1BCT, 4ID | PLATOON SGT | Redacted PII |

| c. NAME OF REVIEWER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| MEADOWS, KAITLYN M. | Redacted PII | MEADOWS.KAITLYN.M. Redacted PII | 20120928 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | REVIEWER'S AKO EMAIL ADDRESS (gov. or .mil) |
|---|---|---|---|---|
| 1LT | OD | A CO, 4TH BSB, 1BCT, 4ID | PLATOON LDR | Redacted PII |

d. ☒ CONCUR WITH RATER AND SENIOR RATER EVALUATIONS   ☐ NONCONCUR WITH RATER AND/OR SENIOR RATER EVAL (See attached comments)

| e. RATED NCO   I understand my signature does not constitute agreement or disagreement with the evaluations of the rater and senior rater.  I further understand my signature verifies that the administrative data in Part I, the rating officials in Part II, the duty description to include the counseling dates in Part III  and the APFT and height/weight entries in Part IVc are correct.  I have seen the completed report.  I am aware of the appeals process of AR 623-3. | SIGNATURE | DATE(YYYYMMDD) |
|---|---|---|
| | CLAIBORNE.DAMON.JAHRON Redacted PII | 20120928 |

### PART III - DUTY DESCRIPTION (Rater)

| a. PRINCIPAL DUTY TITLE | b. DUTY MOSC |
|---|---|
| PETROLEUM HEAVY VEHICLE OPERATOR | 92F2O |

c. DAILY DUTIES AND SCOPE (To include, as appropriate, people, equipment, facilities and dollars)
Serves as a Petroleum Heavy Vehicle Operator in a Petroleum and Water Platoon within a modular structured, multifunctional distribution company assigned to 4th Brigade Combat Team; responsible for the health, welfare and discipline of ten Soldiers in the Petroleum and Water Platoon. Overall responsible for the maintenance, accountability and combat readiness of three Heavy Expanded Mobility Tactical Trucks (M978) one 5,000 Gallon Tank semi-trailer (M969) one Tractor Truck (M1088) with a value of $300,000.

d. AREAS OF SPECIAL EMPHASIS
Weapon Qualification; APFT; Reintegration; Ironhorse Warrior Training

e. APPOINTED DUTIES
Squad Leader

| f. COUNSELING DATES | INITIAL | LATER | LATER | LATER |
|---|---|---|---|---|
| | | 20120604 | | |

### PART IV - ARMY VALUES/ATTRIBUTES/SKILLS/ACTIONS (Rater)

a. ARMY VALUES. Check either "YES" or "NO".  (Bullet Comments are mandatory.  Substantive bullet comments are required for "NO" entries.)

| | | | YES | NO |
|---|---|---|---|---|
| V A L U E S | Loyalty | 1. LOYALTY: Bears true faith and allegiance to the U. S. Constitution, the Army, the unit, and other Soldiers. | ☒ | |
| | Duty | 2. DUTY: Fulfills their obligations. | ☒ | |
| | Respect | 3. RESPECT/EO/EEO: Treats people as they should be treated. | ☒ | |
| | Selfless-Service | 4. SELFLESS-SERVICE: Puts the welfare of the nation, the Army, and subordinates before their own. | ☒ | |
| | | 5. HONOR: Lives up to all the Army values. | ☒ | |
| | | 6. INTEGRITY: Does what is right - legally and morally | ☒ | |
| | Honor Integrity Personal Courage | 7. PERSONAL COURAGE: Faces fear, danger, or adversity  (physical and moral) | ☒ | |

Bullet comments
o loyal to superiors and the unit

o has a positive, can-do attitude

o possesses strong moral courage

---

DA FORM 2166-8, OCT 2011   PREVIOUS EDITIONS ARE OBSOLETE.

Page 1 of 2
APD PE v1.00ES

| RATED NCO'S NAME (Last, First, Middle Initial) CLAIBORNE, DAMON J. | SSN Redacted PII | THRU DATE 20121010 |
|---|---|---|

**PART IV (Rater) - VALUES/NCO RESPONSIBILITIES**   *Bullet comments are mandatory. Substantive bullet comments are required for "EXCELLENCE" or "NEEDS IMPROVEMENT".*

**b. COMPETENCE**
- o Duty proficiency; MOS competency
- o Technical & tactical; knowledge, skills, and abilities
- o Sound judgment
- o Seeking self-improvement; always learning
- o Accomplishing tasks to the fullest capacity; committed to excellence

| EXCELLENCE (Exceeds std) | SUCCESS (Meets std) | NEEDS IMPROVEMENT (Some) (Much) |
|---|---|---|

o dedicated to self-improvement; vicariously attacked Army correspondence courses completing over 422 credit hours

o completed every task with minimum guidance and with superior results

o demonstrated the ability to manage a number of critical tasks simultaneously, knowledgeable NCO

**c. PHYSICAL FITNESS & MILITARY BEARING**
- o Mental and physical toughness
- o Endurance and stamina to go the distance
- o Displaying confidence and enthusiasm; looks like a Soldier

| EXCELLENCE (Exceeds std) | SUCCESS (Meets std) [X] | NEEDS IMPROVEMENT (Some) (Much) |
|---|---|---|

APFT  PASS          20110907      HEIGHT/WEIGHT   73 / 201       YES

o displayed great tenacity and bearing during stressful situations

o always displays a positive "can-do" attitude even under the most austere conditions

o enthused and encouraged Soldiers to be motivated during physical training activities

**d. LEADERSHIP**
- o Mission first
- o Genuine concern for Soldiers
- o Instilling the spirit to achieve and win
- o Setting the example; Be, Know, Do

| EXCELLENCE (Exceeds std) | SUCCESS (Meets std) [X] | NEEDS IMPROVEMENT (Some) (Much) |
|---|---|---|

o volunteered his personal time for various Soldier support programs in excess of 100 hours

o involved in promotion board studies to successfully assist two Soldiers to pass promotion board on short notice

o ensured Soldiers were aware of the available Soldier and family support programs, which enhanced pre and post deployment readiness

**e. TRAINING**
- o Individual and team
- o Mission focused; performance oriented
- o Teaching Soldiers how; common tasks, duty-related skills
- o Sharing knowledge and experience to fight, survive and win

| EXCELLENCE (Exceeds std) [X] | SUCCESS (Meets std) | NEEDS IMPROVEMENT (Some) (Much) |
|---|---|---|

o motivated trainer who sets high standards; trained Soldiers until standards were met; no soldier left behind

o always willing to share his knowledge and experience with subordinate, helping to create camaraderie between enlisted and NCOs alike

o encouraged positive work environment by promoting teamwork within the platoon to ensure mission accomplishment

**f. RESPONSIBILITY & ACCOUNTABILITY**
- o Care and maintenance of equipment/facilities
- o Soldier and equipment safely
- o Conservation of supplies and funds
- o Encouraging Soldiers to learn and grow
- o Responsible for good, bad, right & wrong

| EXCELLENCE (Exceeds std) [X] | SUCCESS (Meets std) | NEEDS IMPROVEMENT (Some) (Much) |
|---|---|---|

o maintained 100% accountability of $300,000 worth of property

o placed emphasis on Soldier's safety; allowed his squad to issue and deliver JP8 with zero incidents

o supervised 10 Soldiers during reset phases for accountability of equipment by identifying shortages and missing parts

**PART V - OVERALL PERFORMANCE AND POTENTIAL**

**a. RATER.** Overall potential for promotion and/or service in positions of greater responsibility.

| AMONG THE BEST | FULLY CAPABLE [X] | MARGINAL |
|---|---|---|

**e. SENIOR RATER BULLET COMMENTS**

o promote to Staff Sergeant with peers

o send to SLC when slots are available

o continue to assign to like positions within FORSCOM and groom for staff sergeant

**b. RATER.** List 3 positions in which the rated NCO could best serve the Army at his/her current or next higher grade.

SQUAD LEADER

OPERATIONS SERGEANT

SERVICE SCHOOL INSTRUCTOR

| c. SENIOR RATER. Overall performance | 1  2  3 [X]  4  5 Successful  Fair  Poor | d. SENIOR RATER. Overall potential for promotion and/or service in positions of greater responsibility. | 1  2  3 [X]  4  5 Superior  Fair  Poor |
|---|---|---|---|

*DA FORM 2166-8, OCT 2011*

000416

Redacted PII

0000417



# DEPARTMENT OF THE ARMY

### THIS IS TO CERTIFY THAT THE SECRETARY OF THE ARMY HAS AWARDED

## THE ARMY ACHIEVEMENT MEDAL

TO

**SERGEANT DAMON J. CLAIBORNE**
**A CO, 4TH BRIGADE SUPPORT BATTALION, 1ST BRIGADE COMBAT TEAM**

FOR EXCEPTIONAL MERITORIOUS SERVICE WHILE ASSIGNED AS A PETROLEUM SUPPLY SPECIALIST. SERGEANT CLAIBORNE DISTINGUISHED HIMSELF THOUGH UNTIRING PERSONAL COMMITMENT, ATTENTION TO DETAIL, AND COMMITMENT TO MISSION ACCOMPLISHMENT. HIS EFFORTS CONTRIBUTED TO THE OVERALL SUCCESS OF THE 4TH BRIGADE SUPPORT BATTALION'S MISSION. HIS ACTIONS REFLECT GREAT CREDIT UPON HIM, THE 4TH BRIGADE SUPPORT BATTALION AND THE UNITED STATES ARMY.

**FROM 10 JULY 2010 TO 10 OCTOBER 2012**

**GIVEN THIS 26TH DAY OF NOVEMBER 2012**

Permanent Order # 331-01
26 November 2012
HQs, 4BSB, 1ST BCT
Fort Carson, CO 80951

NICOLE M. LUCAS
LTC, LG
Commanding

DA FORM 4980-18, NOV 97

06052382

## NCO EVALUATION REPORT
For use of this form, see AR 623-3 ; the proponent agency is DCS, G-1.

FOR OFFICIAL USE ONLY (FOUO)
SEE PRIVACY ACT STATEMENT
IN AR 623-3.

### PART I - ADMINISTRATIVE DATA

| a. NAME (Last, First, Middle Initial) | b. SSN | c. RANK | d. DATE OF RANK | e. PMOSC |
|---|---|---|---|---|
| CLAIBORNE, DAMON J. | Redacted PII | SGT ( ) | 20070701 | 92F2O |

| f.1. UNIT   ORG.   STATION   ZIP CODE OR APO,   MAJOR COMMAND | f.2. STATUS CODE | g. REASON FOR SUBMISSION |
|---|---|---|
| A CO, 4TH BSB, 1BCT, 4ID, FORT CARSON, CO 80913   FORSCOM | 02 | Annual |

| h. PERIOD COVERED | | i. RATED MONTHS | j. NON-RATED CODES | k. NO. OF ENCL | l. RATED NCO's EMAIL ADDRESS (gov. or mil) | m. UIC | n. CMD CODE | o. PSB CODE |
|---|---|---|---|---|---|---|---|---|
| FROM | THRU | | | | Redacted PII | | | |
| YEAR MONTH DAY | YEAR MONTH DAY | | | | | | | |
| 20110303 | 20120302 | 12 | | | | WJAYA0 | FC | UA95 |

### PART II - AUTHENTICATION

| a. NAME OF RATER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| BENT, JAMES A. | Redacted PII | BENT, JAMES ALLEN Redacted PII | 20120316 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | RATER'S AKO EMAIL ADDRESS (gov. or mil) |
|---|---|---|---|---|
| SSG | 92F30 | A CO, 4TH BSB, 1BCT, 4ID | SECTION SGT | Redacted PII |

| b. NAME OF SENIOR RATER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| HIGGS, JASON A. | Redacted PII | HIGGS, JASON ALLAN Redacted PII | 20120316 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | SENIOR RATER S AKO EMAIL ADDRESS (gov. or mil) |
|---|---|---|---|---|
| SFC | 92F48 | A CO, 4TH BSB, 1BCT, 4ID | PLATOON SGT | Redacted PII |

| c. NAME OF REVIEWER (Last, First, Middle Initial ) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| PIERCE, ALIE L. | Redacted PII | PIERCE, ALIE LOUISE Redacted PII | 20120316 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | REVIEWER'S AKO EMAIL ADDRESS (gov. or mil) |
|---|---|---|---|---|
| 1LT | QM | A CO, 4TH BSB, 1BCT, 4ID | PLATOON LDR | Redacted PII |

d. [X] CONCUR WITH RATER AND SENIOR RATER EVALUATIONS    NONCONCUR WITH RATER AND/OR SENIOR RATER EVAL (See attached comments)

e. RATED NCO: I understand my signature does not constitute agreement or disagreement with the evaluations of the rater and senior rater. I further understand my signature verifies that the administrative data in Part I, the rating officials in Part II, the duty description to include the counseling dates in Part III, and the APFT and height/weight entries in Part IV are correct. I have seen the completed report. I am aware of the appeals process of AR 623-3.

| SIGNATURE | DATE (YYYYMMDD) |
|---|---|
| CLAIBORNE, DAMON JAHRON Redacted PII | 20120316 |

### PART III - DUTY DESCRIPTION (Rater)

| a. PRINCIPAL DUTY TITLE | b. DUTY MOSC |
|---|---|
| PETROLEUM HEAVY VEHICLE OPERATOR | 92F2O |

c. DAILY DUTIES AND SCOPE (To include, as appropriate, people, equipment, facilities and dollars)

Serves as Petroleum Heavy Vehicle Operator in a Petroleum and Water Platoon within a modular structured, multifunctional distribution company assigned to 4th Brigade Combat Team; responsible for the health, welfare and discipline of four Soldiers in the Petroleum and Water Platoon; overall responsible for the maintenance, accountability and combat readiness of three Heavy Expanded Mobility Tactical Trucks (M978) one 5,000 Gallon Tank semi-trailer (M969) one Tractor Truck (M1088) with a value of $300,000.

d. AREAS OF SPECIAL EMPHASIS
Operation Enduring Freedom (10-11); Reintergration; Ironhorse Warrior Training; Team Leader.

e. APPOINTED DUTIES

| f. COUNSELING DATES | INITIAL | LATER | LATER | LATER |
|---|---|---|---|---|
| | 20110307 | 20110608 | 20110907 | 20111205 |

### PART IV - ARMY VALUES/ATTRIBUTES/SKILLS/ACTIONS (Rater)

a. ARMY VALUES. Check either "YES" or "NO". (Bullet Comments are mandatory. Substantive bullet comments are required for "NO" entries.)

| | | | YES | NO |
|---|---|---|---|---|
| **V** | Loyalty | 1. LOYALTY: Bears true faith and allegiance to the U. S. Constitution, the Army, the unit, and other Soldiers. | X | |
| | Duty | 2. DUTY: Fulfills their obligations. | X | |
| **A** | Respect | 3. RESPECT/EO/EEO: Treats people as they should be treated. | X | |
| | Selfless-Service | 4. SELFLESS-SERVICE: Puts the welfare of the nation, the Army, and subordinates before their own. | X | |
| **L** | | 5. HONOR: Lives up to all the Army values. | X | |
| **U** | | 6. INTEGRITY: Does what is right - legally and morally. | X | |
| | | 7. PERSONAL COURAGE: Faces fear, danger, or adversity (physical and moral). | X | |
| **E** | Honor Integrity Personal Courage | Bullet comments | | |
| **S** | | o placed Army mission and Soldiers above personal interest | | |
| | | o was extremely competent in duty performance | | |
| | | o stood up for his fellow NCOs and Soldiers | | |

| DA FORM 2166-8, OCT 2011 | PREVIOUS EDITIONS ARE OBSOLETE. | Page 1 of 2 |
|---|---|---|
| | | APD PE v1.01ES |

000418

| RATED NCO'S NAME (Last, First, Middle Initial) | SSN | THRU DATE |
|---|---|---|
| CLAIBORNE, DAMON J. | Redacted PII | 20120302 |

**PART IV (Rater) - VALUES/NCO RESPONSIBILITIES**

*Bullet comments are mandatory.*
*Substantive bullet comments are required for "EXCELLENCE" or "NEEDS IMPROVEMENT."*

**b. COMPETENCE**
o Duty proficiency; MOS competency
o Technical & tactical; knowledge, skills, and abilities
o Sound judgment
o Seeking self-improvement; always learning
o Accomplishing tasks to the fullest capacity; committed to excellence

| EXCELLENCE (Exceeds std) | SUCCESS (Meets std) | NEEDS IMPROVEMENT | |
|---|---|---|---|
| | X | (Some) | (Much) |

o skillfully used available resources to overcome obstacles while developing innovative concepts of support within the platoon

o lead by example by accomplishing 250 hours of correspondence courses during rating period

---

**c. PHYSICAL FITNESS & MILITARY BEARING**

o Mental and physical toughness
o Endurance and stamina to go the distance
o Displaying confidence and enthusiasm; looks like a Soldier

| EXCELLENCE (Exceeds std) | SUCCESS (Meets std) | NEEDS IMPROVEMENT | |
|---|---|---|---|
| | X | (Some) | (Much) |

| APFT | PASS | | 20110907 | HEIGHT/WEIGHT | 73 / 201 | YES |

o enthused and encouraged Soldiers to be motivated during physical training activities

o set the example for his Soldiers through personal appearance and military knowledge

---

**d. LEADERSHIP**
o Mission first
o Genuine concern for Soldiers
o Instilling the spirit to achieve and win
o Setting the example; Be, Know, Do

| EXCELLENCE (Exceeds std) | SUCCESS (Meets std) | NEEDS IMPROVEMENT | |
|---|---|---|---|
| | X | (Some) | (Much) |

o successfully prepared one Soldier for promotion board, resulting with the recommendation for advancement to Sergeant

o ensured Soldiers were aware of the available Soldier and Family support programs which enhanced pre and post deployment readiness

---

**e. TRAINING**
o Individual and team
o Mission focused; performance oriented
o Teaching Soldiers how; common tasks, duty-related skills
o Sharing knowledge and experience to fight, survive and win

| EXCELLENCE (Exceeds std) | SUCCESS (Meets std) | NEEDS IMPROVEMENT | |
|---|---|---|---|
| | X | (Some) | (Much) |

o created an atmosphere of learning which empowered Soldiers to seek a higher degree of MOS proficiency

o served as primary instructor for Sergeant Time training which focused on Soldiers warrior task and battle drills, he energized his audience resulting in first time GOs

---

**f. RESPONSIBILITY & ACCOUNTABILITY**

o Care and maintenance of equipment/facilities
o Soldier and equipment safety
o Conservation of supplies and funds
o Encouraging Soldiers to learn and grow
o Responsible for good, bad, right & wrong

| EXCELLENCE (Exceeds std) | SUCCESS (Meets std) | NEEDS IMPROVEMENT | |
|---|---|---|---|
| X | | (Some) | (Much) |

o maintained 100% accountability of $300,000 worth of assigned property

o placed emphasis on Soldiers safety which allowed his Soldiers to issue and deliver 2,500 gallons of JP8 with zero incidents

o supervised 10 Soldiers during Reset, identifying shortages and the mission capability of four M978 and three M969 trailers

---

**PART V - OVERALL PERFORMANCE AND POTENTIAL**

**a. RATER.** Overall potential for promotion and/or service in positions of greater responsibility.

| AMONG THE BEST | FULLY CAPABLE | MARGINAL |
|---|---|---|
| | X | |

**b. RATER.** List 3 positions in which the rated NCO could best serve the Army at his/her current or next higher grade.

SQUAD LEADER

OPERATIONS NCO

SERVICE SCHOOL INSTRUCTOR

**e. SENIOR RATER BULLET COMMENTS**

o promote with peers to Staff Sergeant and send to Senior Leader Course when slots become available

o mission focused Sergeant who lives up to the Army Values with growing potential

o continue to assign to like positions within FORSCOM and groom for Staff Sergeant

---

**c. SENIOR RATER.** Overall performance

| 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|
| | X | | Fair | Poor |
| | | Successful | | |

**d. SENIOR RATER.** Overall potential for promotion and/or service in positions of greater responsibility.

| 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|
| X | | | Fair | Poor |
| | | Superior | | |

DA FORM 2166-8, OCT 2011

Page 2 of 2
APD PE v1.01ES

**000419**

# RECORD OF EMERGENCY DATA

## PRIVACY ACT STATEMENT

**AUTHORITY:** 5 USC 552, 10 USC 655, 1475 to 1480 and 2771, 38 USC 1970, 44 USC 3101, and EO 9397 (SSN).
**PRINCIPAL PURPOSES:** This form is used by military personnel and Department of Defense civilian and contractor personnel, collectively referred to as civilians, when applicable. For military personnel, it is used to designate beneficiaries for certain benefits in the event of the Service member's death. It is also a guide for disposition of that member's pay and allowances if captured, missing or interned. It also shows names and addresses of the person(s) the Service member desires to be notified in case of emergency or death. For civilian personnel, it is used to expedite the notification process in the event of an emergency and/or the death of the member. The purpose of soliciting the SSN is to provide positive identification. All items may not be applicable.
**ROUTINE USES:** None.
**DISCLOSURE:** Voluntary; however, failure to provide accurate personal identifier information and other solicited information will delay notification and the processing of benefits to designated beneficiaries if applicable.

| INSTRUCTIONS TO SERVICE MEMBER | INSTRUCTIONS TO CIVILIANS |
|---|---|
| This extremely important form is to be used by you to show the names and addresses of your spouse, children, parents, and any other person(s) you would like notified if you become a casualty (other family members or fiance), and, to designate beneficiaries for certain benefits if you die. IT IS YOUR RESPONSIBILITY to keep your Record of Emergency Data up to date to show your desires as to beneficiaries to receive certain death payments, and to show changes in your family or other personnel listed, for example, as a result of marriage, civil court action, death, or address change. | This extremely important form is to be used by you to show the names and addresses of your spouse, children, parents, and any other person(s) you would like notified if you become a casualty. Not every item on this form is applicable to you. **This form is used by the Department of Defense (DoD) to expedite notification in the case of emergencies or death.** It does not have a legal impact on other forms you may have completed with the DoD or your employer. |

**IMPORTANT: This form is divided into two sections:** Section 1 - Emergency Contact Information and Section 2 - Benefits Related Information.   READ THE INSTRUCTIONS ON PAGES 3 AND 4 BEFORE COMPLETING THIS FORM.

## SECTION 1 - EMERGENCY CONTACT INFORMATION

**1. NAME** (Last, First, Middle Initial)
CLAIBORNE, DAMON JAHRON

**2. SSN**
Redacted PII

**3a. SERVICE/CIVILIAN CATEGORY**
[X] ARMY  [ ] NAVY  [ ] MARINE CORPS  [ ] AIR FORCE  [ ] DoD  [ ] CIVILIAN  [ ] CONTRACTOR

**b. REPORTING UNIT CODE/DUTY STATION**
WJAYA0 / FT CARSON

**4a. SPOUSE NAME** (If applicable) (Last, First, Middle Initial)
Redacted PII

[ ] SINGLE  [ ] DIVORCED  [ ] WIDOWED

**b. ADDRESS** (Include ZIP Code) AND TELEPHONE NUMBER
Redacted PII

**5. CHILDREN**

| a. NAME (Last, First, Middle Initial) | b. RELATIONSHIP | c. DATE OF BIRTH (YYYYMMDD) | d. ADDRESS (Include ZIP Code) AND TELEPHONE NUMBER |
|---|---|---|---|
| Redacted PII | | | |

**6a. FATHER NAME** (Last, First, Middle Initial)
Redacted PII

**b. ADDRESS** (Include ZIP Code) AND TELEPHONE NUMBER
Unknown

**7a. MOTHER NAME** (Last, First, Middle Initial)
Redacted PII

**b. ADDRESS** (Include ZIP Code) AND TELEPHONE NUMBER
Redacted PII

**8a. DO NOT NOTIFY DUE TO ILL HEALTH**
None

**b. NOTIFY INSTEAD**
None

**9a. DESIGNATED PERSON(S)** (Military only)
None

**b. ADDRESS** (Include ZIP Code) AND TELEPHONE NUMBER

**10. CONTRACTING AGENCY AND TELEPHONE NUMBER** (Contractors only)

**DD FORM 93, JAN 2008**          PREVIOUS EDITION IS OBSOLETE.          Adobe 7.0 Professional

## SECTION 2 - BENEFITS RELATED INFORMATION

| 11a. BENEFICIARY(IES) FOR DEATH GRATUITY *(Military only)* | b. RELATIONSHIP | c. ADDRESS *(Include ZIP Code)* AND TELEPHONE NUMBER | d. PERCENTAGE |
|---|---|---|---|
| Redacted PII | Redacted PII | Redacted PII | 100 |

| 12a. BENEFICIARY(IES) FOR UNPAID PAY/ALLOWANCES *(Military only)* NAME AND RELATIONSHIP | b. ADDRESS *(Include ZIP Code)* AND TELEPHONE NUMBER | c. PERCENTAGE |
|---|---|---|
| Redacted PII | Redacted PII | 100 |

| 13a. PERSON AUTHORIZED TO DIRECT DISPOSITION (PADD) *(Military only)* NAME AND RELATIONSHIP | b. ADDRESS *(Include ZIP Code)* AND TELEPHONE NUMBER |
|---|---|
| Redacted PII | Redacted PII |

### 14. CONTINUATION/REMARKS

Additional Children:
Name: Redacted PII
Redacted PII

Name: Redacted PII
Redacted PII

Location of Will/Valuable Papers: WILL IS WITH WIFE
General Remarks: NMA: Redacted PII

| 15. SIGNATURE OF SERVICE MEMBER/CIVILIAN *(Include rank, rate, or grade if applicable)* | 16. SIGNATURE OF WITNESS *(Include rank, rate, or grade as appropriate)* | 17. DATE SIGNED *(YYYYMMDD)* |
|---|---|---|
| RANK: SGT | RANK: SGT | 20110502 |

DD FORM 93 (BACK), JAN 2008

Submit

Please read the instructions before completing this form.

# Servicemembers' Group Life Insurance Election and Certificate

| Use this form to: (check all that apply)<br>☑ Name or update your beneficiary<br>☐ Reduce the amount of your insurance coverage<br>☐ Decline insurance coverage | **Important:** This form is for use by Active Duty and Reserve members. This form does not apply to and cannot be used for any other Government Life Insurance. |
|---|---|

| Last name    First name | Middle name | Rank, title or grade | Social Security Number |
|---|---|---|---|
| CLAIBORNE,  DAMON JAHRON | | SGT | Redacted PII |

| Branch of Service (Do not abbreviate) Army | Current Duty Location WJAYAO |
|---|---|

## Amount of Insurance

By law, you are automatically insured for $400,000. *If you want $400,000 of insurance*, skip to *Beneficiary(ies) and Payment Options*. *If you want less than $400,000* of insurance, please check the appropriate block below and write the amount desired and your initials. Coverage is available in increments of $50,000. *If you do not want any insurance\**, check the appropriate block below and write (in your own handwriting), "I do not want insurance at this time."

Declining SGLI coverage also cancels all family coverage and traumatic injury protection under the SGLI program.

☑ I want coverage in the amount of $ 400,000    Your initials  D . C .

☐     (Write "I do not want Insurance at this time.")

*\*Note: Reduced or refused insurance can only be restored by completing form SGLV 8285 with proof of good health and compliance with other requirements. Reduced or refused insurance will also affect the amount of Veterans' Group Life Insurance you can convert to upon separation from service.*

## Beneficiary(ies) and Payment Options

I designate the following beneficiary(ies) to receive payment of my insurance proceeds. I understand that the principal beneficiary(ies) will receive payment upon my death. If all principal beneficiaries predecease me, the insurance will be paid to the contingent beneficiary(ies).

| Complete Name (first, middle, last) and Address of each beneficiary | Social Security Number (if known) | Relationship to you | Share to each beneficiary (Use ½, $ amounts or fractions) | Payment Option (Lump sum or 36 equal monthly payments) |
|---|---|---|---|---|
| **Principal** | Redacted PII | | | |
| ✓ Additional Principals on page 4 (check if applicable) | | | | |
| **Contingent** | | | | |
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| Additional Contingents on page 4 (check if applicable) | | | | |

I HAVE READ AND UNDERSTAND the instructions on pages 2 and 3 of this form. I ALSO UNDERSTAND THAT:

- *This form cancels any prior beneficiary or payment instructions.*
- The proceeds will be paid to beneficiaries as stated in #5 on page 3 of this form, unless otherwise stated above.
- If I have legal questions about this form, I may consult with a military attorney at no expense to me.
- I cannot have combined SGLI and VGLI coverages at the same time for more than $400,000.
- If I am married or if I get married after completing this form, *my spouse is automatically covered under Family SGLI for which premiums will be deducted from my pay,* unless I decline Family SGLI coverage by completing SGLV 8286A. For Family SGLI premium deductions, my spouse MUST be registered in DEERS. Failure to do so will result in debts owed for unpaid premiums.

SIGN HERE IN INK ▶ _(signature)_    Date: 20110502
(Your signature. Do not print.)

| Do not write in space below. For official use only. | | | |
|---|---|---|---|
| RECEIVED BY: _(signature)_ | RANK, TITLE OR GRADE SGT | ORGANIZATION 4/BSB  S-1 | DATE RECEIVED 20110502 |

SGLV 8286, May 2009    Copy 1 - Member's Official Personnel File    Copy 2 - To Member    Copy 3 - To Active or Reserve Component of Uniformed Service

000422

Please read the instructions before completing this form.

## *Servicemembers' Group Life Insurance Election and Certificate*
# Beneficiary Continuation

**Instructions:** This page is to be used **ONLY** when the service member wants to name more beneficiaries than the number of beneficiary spaces provided on page 2. If this page is completed, it should be copied and distributed together with page 2 of this form.

## Member Information

| Last name      First name     Middle name | Rank, title or grade | Social Security Number |
|---|---|---|
| CLAIBORNE, DAMON JARRON | SGT | Redacted PII |

## Beneficiary(ies) and Payment Options

In addition to the beneficiaries I have named on page 2 of this form (SGLV 8286), I also designate the following beneficiary(ies) to receive payment of my insurance proceeds. I understand that the principal beneficiary(ies) will receive payment upon my death. If all principal beneficiaries predecease me, the insurance will be paid to the contingent beneficiary(ies).

| Complete Name (first, middle, last) and Address of each beneficiary | Social Security Number (if known) | Relationship to you | Share to each beneficiary (Use %, $ amounts or fractions) | Payment Option (Lump sum or 36 equal monthly payments) |
|---|---|---|---|---|
| **Principal** | | | | |
| | Redacted PII | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| **Contingent** | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |

I HAVE READ AND UNDERSTAND the instructions on pages 2 and 3 of this form. I ALSO UNDERSTAND that:

*This is a continuation of my beneficiary designation on page 2 of this form, Servicemembers' Group Life Insurance Election and Certificate.* The proceeds will be paid to beneficiaries as stated in #6 on page 3 of the SGLV-8286, unless otherwise stated above.

**SIGN HERE IN INK** ➤ _(signature)_    Date: 20110502
(Your signature. Do not print.)

**Do not write in space below. For official use only.**

| RECEIVED BY: _(signature)_ | RANK, TITLE OR GRADE   SGT | ORGANIZATION   4BSB   S-1 | DATE RECEIVED   20110502 |
|---|---|---|---|

SGLV 8286, May 2009    Copy 1 - Member's Official Personnel File    Copy 2 - To Member    Copy 3 - To Active or Reserve Component of Uniformed Service
p. 4

Submit

05322633

## NCO EVALUATION REPORT
For use of this form, see AR 623-3 ; the proponent agency is DCS, G-1.

FOR OFFICIAL USE ONLY (FOUO)
SEE PRIVACY ACT STATEMENT
IN AR 623-3.

### PART I - ADMINISTRATIVE DATA

| a. NAME (Last, First, Middle Initial) | | | b. SSN | c. RANK | d. DATE OF RANK | e. PMOSC |
|---|---|---|---|---|---|---|
| CLAIBORNE, DAMON J. | | | Redacted PII | SGT   ( ) | 20070701 | 92F2O |

| f.1. UNIT     ORG.     STATION     ZIP CODE OR APO, | MAJOR COMMAND | f.2. STATUS CODE | g. REASON FOR SUBMISSION |
|---|---|---|---|
| A CO, 4TH BSB,1-4 ID, KANDAHAR AF APO AE 09355     CENTCOM | | 02   Annual | |

| h. PERIOD COVERED | | i. RATED MONTHS | j. NON-RATED CODES | k. NO. OF ENCL | l. RATED NCO'S EMAIL ADDRESS (gov or mil) | m. UIC | n. CMD CODE | o. PSB CODE |
|---|---|---|---|---|---|---|---|---|
| FROM | THRU | 12 | | | Redacted PII | WJAYA0 | FC | UA95 |
| YEAR MONTH DAY 20100305 | YEAR MONTH DAY 20110304 | | | | | | | |

### PART II - AUTHENTICATION

| a. NAME of RATER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| HIATT, DAVID N. | Redacted PII | HIATT.DAVID NICHOLAS Redacted PII | 20110306 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | RATER'S AKO EMAIL ADDRESS (gov. or .mil) |
|---|---|---|---|---|
| SSG | 88M3O4 | A CO, 4TH BSB, 1-4ID | SECTION SGT | Redacted PII |

| b. NAME OF SENIOR RATER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| BLANSHARD, JOHN J. IV | Redacted PII | BLANSHARD.JOHN JAMES IV Redacted PII | 20110306 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | SENIOR RATER S AKO EMAIL ADDRESS (.gov. or .mil) |
|---|---|---|---|---|
| SFC | 91X4O | A CO, 4TH BSB, 1-4ID | PLATOON SGT | Redacted PII |

| c. NAME OF REVIEWER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| JONES, ROBERT D. | Redacted PII | JONES.ROBERT.DOUGLAS Redacted PII | 20110306 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | REVIEWER'S AKO EMAIL ADDRESS (gov. or mil) |
|---|---|---|---|---|
| 1LT | TC | A CO, 4TH BSB, 1-4ID | PLATOON LDR | Redacted PII |

| d. ☒ CONCUR WITH RATER AND SENIOR RATER EVALUATIONS | ☐ NONCONCUR WITH RATER AND/OR SENIOR RATER EVAL (See attached comments) |
|---|---|

| e. RATED NCO: I understand my signature does not constitute agreement or disagreement with the evaluations of the rater and senior rater. I further understand my signature verifies that the administrative data in Part I, the rating officials in Part II, the duty description to include the counseling dates in Part III, and the APFT and height/weight entries in Part IVc are correct. I have seen the completed report. I am aware of the appeals process of AR 623-3. | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|
| | CLAIBORNE.DAMON.JAHRON. Redacted PII | 20110307 |

### PART III - DUTY DESCRIPTION (Rater)

| a. PRINCIPAL DUTY TITLE | b. DUTY MOSC |
|---|---|
| PETROLEUM SUPPLY SERGEANT | 92F2O |

c. DAILY DUTIES AND SCOPE (To include, as appropriate, people, equipment, facilities and budget)

Serves as a member of the Security Platoon in a distribution Support Company for the 4th Brigade Support Battalion that supports the 1st Brigade Combat Team, 4th Infantry Division; ensures the receipt, accountability, transportation, and issue of all classes of supplies; responsible for one 760kw diesel generator supplying power for one half of FOB Walton; was responsible for the health and welfare of 10 Soldiers during IRT training for deployment to OEF 10-11.

d. AREAS OF SPECIAL EMPHASIS

OEF 10-11; Soldier Team Development; Safety; Weapons Qualification; APFT; Warrior Task and Battle Drills; Vehicle Maintenance

e. APPOINTED DUTIES

Generator Overwatch; Safety NCO, IRT Supervisor, Team Leader

| f. COUNSELING DATES | INITIAL | LATER | LATER | LATER |
|---|---|---|---|---|
| | 20100306 | 20100605 | 20100905 | 20101205 |

### PART IV - ARMY VALUES/ATTRIBUTES/SKILLS/ACTIONS (Rater)

a. ARMY VALUES. Check either "YES" or "NO". (Bullet Comments are mandatory   Substantive bullet comments are required for "NO" entries.)

| | | YES | NO |
|---|---|---|---|
| | 1. LOYALTY: Bears true faith and allegiance to the U. S. Constitution, the Army, the unit, and other Soldiers. | ☒ | |
| | 2. DUTY: Fulfills their obligations. | ☒ | |
| V A L U E S | 3. RESPECT/EO/EEO: Treats people as they should be treated. | ☒ | |
| | 4. SELFLESS-SERVICE: Puts the welfare of the nation, the Army, and subordinates before their own. | ☒ | |
| | 5. HONOR: Lives up to all the Army values. | ☒ | |
| | 6. INTEGRITY: Does what is right - legally and morally. | ☒ | |
| | 7. PERSONAL COURAGE: Faces fear, danger, or adversity (physical and moral) | ☒ | |

Loyalty
Duty
Respect
Selfless-Service

Honor
Integrity
Personal Courage

Bullet comments
o dedicated to the unit, the mission and the Soldiers

o fully supports EO/EEO programs

o stands behind principles

DA FORM 2166-8, MAR 2006       PREVIOUS EDITIONS ARE OBSOLETE.       Page 1 of 2
APD PE v6.00ES

000424

| RATED NCO'S NAME *(Last, First, Middle Initial)* | | SSN | THRU DATE |
|---|---|---|---|
| CLAIBORNE, DAMON J. | | Redacted PII | 20110304 |

**PART IV** *(Rater)* - VALUES/NCO RESPONSIBILITIES

*Bullet comments are mandatory*
*Substantive bullet comments are required for "EXCELLENCE" or "NEEDS IMPROVEMENT"*

### b. COMPETENCE
- o Duty proficiency; MOS competency
- o Technical & tactical; knowledge, skills, and abilities
- o Sound judgment
- o Seeking self-improvement; always learning
- o Accomplishing tasks to the fullest capacity; committed to excellence

| EXCELLENCE *(Exceeds std)* | SUCCESS *(Meets std)* | NEEDS IMPROVEMENT *(Some)* | *(Much)* |
|---|---|---|---|
| ☐ | ☒ | ☐ | ☐ |

o developed a more proficient means of supplying fuel to the 760kw generator, ensuring it operated at its fullest capacity

o used all available resources to accomplish the mission assigned; accomplished every mission to standard

o produced daily and weekly reporting matrix, enabling a more effective way to track vehicle maintenance and communication equipment

### c. PHYSICAL FITNESS & MILITARY BEARING
- o Mental and physical toughness
- o Endurance and stamina to go the distance
- o Displaying confidence and enthusiasm; looks like a Soldier

| EXCELLENCE *(Exceeds std)* | SUCCESS *(Meets std)* | NEEDS IMPROVEMENT *(Some)* | *(Much)* |
|---|---|---|---|
| ☐ | ☒ | ☐ | ☐ |

| APFT | PASS | 20101001 | HEIGHT/WEIGHT | 73 / 198 | YES |

o always set the example for the platoon through personal appearance

o maintained a physical fitness program despite working night shifts

o projected self confidence and mental toughness; consistently displayed a positive can do attitude

### d. LEADERSHIP
- o Mission first
- o Genuine concern for Soldiers
- o Instilling the spirit to achieve and win
- o Setting the example; Be, Know, Do

| EXCELLENCE *(Exceeds std)* | SUCCESS *(Meets std)* | NEEDS IMPROVEMENT *(Some)* | *(Much)* |
|---|---|---|---|
| ☒ | ☐ | ☐ | ☐ |

o volunteered 250 hours of his personal time with the Adopt-a-Soldier program and Unit Ministry Team, demonstrating is commitment to the Soldiers moral and welfare

o pursuit of excellence resulted in 100% qualification for entire squad on all assigned weapons and Warrior Skills during IRT training

o demonstrated a true concern for his Soldiers and their families by devoting himself to their needs

### e. TRAINING
- o Individual and team
- o Mission focused; performance oriented
- o Teaching Soldiers how; common tasks, duty-related skills
- o Sharing knowledge and experience to fight, survive and win

| EXCELLENCE *(Exceeds std)* | SUCCESS *(Meets std)* | NEEDS IMPROVEMENT *(Some)* | *(Much)* |
|---|---|---|---|
| ☒ | ☐ | ☐ | ☐ |

o trained 110 Soldiers in the battalion on the Hand-Held Interagency Identification Detection Equipment, resulting in the increased force protection for FOB Walton

o supervised 10 Soldiers during their IRT training for deployment in support of OEF 10-11, ensuring they meet all standards and Warrior Skills necessary for deployment

o always willing to share his knowledge and experience with subordinates, helping to create a more efficient team

### f. RESPONSIBILITY & ACCOUNTABILITY
- o Care and maintenance of equipment/facilities
- o Soldier and equipment safety
- o Conservation of supplies and funds
- o Encouraging Soldiers to learn and grow
- o Responsible for good, bad, right & wrong

| EXCELLENCE *(Exceeds std)* | SUCCESS *(Meets std)* | NEEDS IMPROVEMENT *(Some)* | *(Much)* |
|---|---|---|---|
| ☐ | ☒ | ☐ | ☐ |

o coordinated with the Installation Direct Support Elements the retrofitting of armored components and ballistic resistant RPG Cages for 13 M1240 MATVs

o ensured the continuous operation of a 760kw diesel generator, which resulted in the uninterrupted flow of electricity to over half of FOB Walton

o served as a TC of a gun truck for four Combat Logistic Patrols, ensuring his crew and truck was always mission ready

**PART V - OVERALL PERFORMANCE AND POTENTIAL**

a. RATER. Overall potential for promotion and/or service in positions of greater responsibility.

| AMONG THE BEST | FULLY CAPABLE | MARGINAL |
|---|---|---|
| ☐ | ☒ | ▨ |

b. RATER. List 3 positions in which the rated NCO could best serve the Army at his/her current or next higher grade.

SECTION SERGEANT

OPERATIONS NCOIC

SERVICE SCHOOL INSTRUCTOR

e. SENIOR RATER BULLET COMMENTS

o promote to Staff Sergeant with peers

o send to SLC when slots are available

o without a doubt, a consummate team player, coach and trainer; truly unlimited potential with the proper mentorship

o performance is to the standard and possesses the ability to perform better

c. SENIOR RATER. Overall performance

| | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| | | | ☒ | | |
| | | Successful | | Fair | Poor |

d. SENIOR RATER. Overall potential for promotion and/or service in positions of greater responsibility.

| | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| | | | ☒ | | |
| | | Superior | | Fair | Poor |

DA FORM 2166-8, MAR 2006

Page 2 of 2
APD PE v6.00ES

000425

IMMEDIATE REENLISTMENT

## ENLISTMENT/REENLISTMENT DOCUMENT
## ARMED FORCES OF THE UNITED STATES

### PRIVACY ACT STATEMENT

**AUTHORITY:** 5 U.S.C. 3331; 10 U.S.C. 113, 136, 502, 504, 505, 506, 507, 508, 509, 510, 513, 515, 516, 518, 519, 972, 978, 2107, 2107a, 3253 3258, 3262, 5540, 8252, 8253, 8257, 8258, 12102, 12103, 12104, 12105, 12106, 12107, 12108, 12301, 12302, 12304, 12305, 12405; 14 USC 351, 632; 32 U.S.C. 301, 302, 303, 304; and Executive Order 9397, November 1943 (SSN).

**PRINCIPAL PURPOSE(S):** To record enlistment or reenlistment into the U.S. Armed Forces. This information becomes a part of the subject's military personnel records which are used to document promotion, reassignment, training, medical support, and other personnel management actions. The purpose of soliciting the SSN is for positive identification.

**ROUTINE USE(S):** This form becomes a part of the Service's Enlisted Master File and Field Personnel File. All uses of the form are internal to the relevant Service.

**DISCLOSURE:** Voluntary; however, failure to furnish personal identification information may negate the enlistment/reenlistment application.

### A. ENLISTEE/REENLISTEE IDENTIFICATION DATA

| 1. NAME *(Last, First, Middle)* | 2. SOCIAL SECURITY NUMBER |
|---|---|
| CLAIBORNE DAMON JAHRON | Redacted PII |

| 3. HOME OF RECORD *(Street, City, County, State, Country, ZIP Code)* | 4. PLACE OF ENLISTMENT/REENLISTMENT *(Mil. Installation, City, State)* |
|---|---|
| Redacted PII | A CO, 4BSB, 1BCT<br>APO, AE 09355 |

| 5. DATE OF ENLISTMENT/ REENLISTMENT *(YYYYMMDD)* | 6. DATE OF BIRTH *(YYYYMMDD)* | 7. PREV MIL SVC UPON ENL/REENLIST | YEARS | MONTHS | DAYS |
|---|---|---|---|---|---|
| 2010 OCT 01 | Redacted PII | a. TOTAL ACTIVE MILITARY SERVICE | 14 | 05 | 24 |
| | | b. TOTAL INACTIVE MILITARY SERVICE | 05 | 07 | 16 |

### B. AGREEMENTS

8. I am enlisting/reenlisting in the United States *(list branch of service)* ARMY this date for 05 years and 0 weeks beginning in pay grade E5 of which 05 years and 0 weeks is considered an Active Duty Obligation, and 0 years and 0 weeks will be served in the Reserve Component of the Service in which I have enlisted. If this is an initial enlistment, I must serve a total of eight (8) years, unless I am sooner discharged or otherwise extended by the appropriate authority. This eight year service requirement is called the Military Service Obligation. The additional details of my enlistment/ reenlistment are in Section C and Annex(es) *(list name of Annex(es) and describe)* A AND B

**a. FOR ENLISTMENT IN A DELAYED ENTRY/ENLISTMENT PROGRAM (DEP):**
I understand that I am joining the DEP. I understand that by joining the DEP I am enlisting in the Ready Reserve component of the United States *(list branch of service)* _____ for a period not to exceed 365 days, unless this period of time is otherwise extended by the Secretary concerned. While in the DEP, I understand that I am in a nonpay status and that I am not entitled to any benefits or privileges as a member of the Ready Reserve, to include, but not limited to medical care, liability insurance, death benefits, education benefits, or disability retired pay if I incur a physical disability. I understand that the period of time while I am in the DEP is NOT creditable for pay purposes upon entry into a pay status. However, I also understand that the period of time while I am in the DEP is counted toward fulfillment of my military service obligation described in paragraph 10, below. While in the DEP, I understand that I must maintain my current qualifications and keep my recruiter informed of any changes in my physical or dependency status, qualifications, and mailing address. I understand that I WILL be ordered to active duty unless I report to the place shown in item 4 above by *(list date (YYYYMMDD))* _____ for enlistment in the Regular component of the United States *(list branch of service)* _____ for not less than _____ years and _____ weeks.

**b. REMARKS:** *(If none, so state.)*

(1) REGULAR ARMY REENLISTMENT OPTION RCN: 2706381.

(2) NO BONUS ENTITLEMENT.

(3) NO WAIVER.

(4) 4TH REENLISTMENT.

**c.** The agreements in this section and attached annex(es) are all the promises made to me by the Government. **ANYTHING ELSE ANYONE HAS PROMISED ME IS NOT VALID AND WILL NOT BE HONORED.**
*(Initials of Enlistee/Reenlistee)* D.C.

(Continued on Page 2)

**DD FORM 4/1, OCT 2007**     PREVIOUS EDITION IS OBSOLETE.     Adobe Professional 7.0

000426

## C. PARTIAL STATEMENT OF EXISTING UNITED STATES LAWS

**9.  FOR ALL ENLISTEES OR REENLISTEES:**
I understand that many laws, regulations, and military customs will govern my conduct and require me to do things under this agreement that a civilian does not have to do.  I also understand that various laws, some of which are listed in this agreement, directly affect this enlistment/reenlistment agreement.  Some examples of how existing laws may affect this agreement are explained in paragraphs 10 and 11.  I understand that I cannot change these laws but that Congress may change these laws, or pass new laws, at any time that may affect this agreement, and that I will be subject to those laws and any changes they make to this agreement.  I further understand that:

**a.**  My enlistment/reenlistment agreement is more than an employment agreement.  It effects a change in status from civilian to military member of the Armed Forces.  As a member of the Armed Forces of the United States, I will be:

**(1)**  Required to obey all lawful orders and perform all assigned duties.

**(2)**  Subject to separation during or at the end of my enlistment.  If my behavior fails to meet acceptable military standards, I may be discharged and given a certificate for less than honorable service, which may hurt my future job opportunities and my claim for veteran's benefits.

**(3)**  Subject to the military justice system, which means, among other things, that I may be tried by military courts-martial.

**(4)**  Required upon order to serve in combat or other hazardous situations.

**(5)**  Entitled to receive pay, allowances, and other benefits as provided by law and regulation.

**b.**  Laws and regulations that govern military personnel may change without notice to me.  Such changes may affect my status, pay, allowances, benefits, and responsibilities as a member of the Armed Forces  **REGARDLESS**  of the provisions of this enlistment/reenlistment document.

**10.  MILITARY SERVICE OBLIGATION, SERVICE ON ACTIVE DUTY AND STOP-LOSS FOR ALL MEMBERS OF THE ACTIVE AND RESERVE COMPONENTS, INCLUDING THE NATIONAL GUARD.**

**a.  FOR ALL ENLISTEES:**     If this is my initial enlistment, I must serve a total of eight (8) years, unless I am sooner discharged or otherwise extended by the appropriate authority.  This eight year service requirement is called the Military Service Obligation.  Any part of that service not served on active duty must be served in the Reserve Component of the service in which I have enlisted.  If this is a reenlistment, I must serve the number of years specified in this agreement, unless I am sooner discharged or otherwise extended by the appropriate authority.  Some laws that affect when I may be ordered to serve on active duty, the length of my service on active duty, and the length of my service in the Reserve Component, even beyond the eight years of my Military Service Obligation, are discussed in the following paragraphs.

**b.**  I understand that I can be ordered to active duty at any time while I am a member of the DEP.  In a time of war, my enlistment may be extended without my consent for the duration of the war and for six months after its end (10 U.S.C. 506, 12103(d)).

**c.**  As a member of a Reserve Component of an Armed Force, in time of war or of national emergency declared by the Congress, I may, without my consent, be ordered to serve on active duty, for the entire period of the war or emergency and for six (6) months after its end (10 U.S.C. 12301(a)).  My enlistment may be extended during this period without my consent (10 U.S.C. 12103(c)).

**d.**  As a member of the Ready Reserve (to include Delayed Entry Program), in time of national emergency declared by the President, I may, without my consent, be ordered to serve on active duty, and my military service may be extended without my consent, for not more than 24 consecutive months (10 U.S.C. 12302).  My enlistment may be extended during this period without my consent (see paragraph 10g).

**e.**  As a member of the Ready Reserve, I may, at any time and without my consent, be ordered to active duty to complete a total of 24 months of active duty, and my enlistment may be extended so I can complete the total of 24 months of active duty, if:

**(1)** I am not assigned to, or participating unsatisfactorily in, a unit of the Ready Reserve; and

**(2)** I have not met my Reserve obligation; and

**(3)** I have not served on active duty for a total of 24 months (10 U.S.C. 12303).

**f.**  As a member of the Selected Reserve or as a member of the Individual Ready Reserve mobilization category, when the President determines that it is necessary to augment the active forces for any operational mission or for certain emergencies, I may, without my consent, be ordered to active duty for not more than 365 days (10 U.S.C. 12304).  My enlistment may be extended during this period without my consent (see paragraph 10g).

**g.**  During any period members of a Reserve component are serving on active duty pursuant to an order to active duty under authority of 10 U.S.C. 12301, 12302, or 12304, the President may suspend any provision of law relating to my promotion, retirement, or separation from the Armed Forces if he or his designee determines I am essential to the national security of the United States.  Such an action may result in an extension, without my consent, of the length of service specified in this agreement.  Such an extension is often called a "stop-loss" extension (10 U.S.C. 12305).

**h.**  I may, without my consent, be ordered to perform additional active duty training for not more than 45 days if I have not fulfilled my military service obligation and fail in any year to perform the required training duty satisfactorily.  If the failure occurs during the last year of my required membership in the Ready Reserves, my enlistment may be extended until I perform that additional duty, but not for more than six months (10 U.S.C. 10148).

**11.  FOR ENLISTEES/REENLISTEES IN THE NAVY, MARINE CORPS, OR COAST GUARD:**   I understand that if I am serving on a naval vessel in foreign waters, and my enlistment expires, I will be returned to the United States for discharge as soon as possible consistent with my desires.  However, if essential to the public interest, I understand that I may be retained on active duty until the vessel returns to the United States.  If I am retained under these circumstances, I understand I will be discharged not later than 30 days after my return to the United States; and, that except in time of war, I will be entitled to an increase in basic pay of 25 percent from the date my enlistment expires to the date of my discharge.

**12. FOR ALL MALE APPLICANTS:**  Completion of this form constitutes registration with the Selective Service System in accordance with the Military Selective Service Act.  Incident thereto the Department of Defense may transmit my name, permanent address, military address, Social Security Number, and birthdate to the Selective Service System for recording as evidence of the registration.

*(Initials of Enlistee/Reenlistee)* _____

**DD FORM 4/1 (PAGE 2), OCT 2007**

| NAME OF ENLISTEE/REENLISTEE *(Last, First, Middle)* | SOCIAL SECURITY NO. OF ENLISTEE/REENLISTEE |
|---|---|
| CLAIBORNE DAMON JAHRON | Redacted PII |

## D. CERTIFICATION AND ACCEPTANCE

13a.   My acceptance for enlistment is based on the information I have given in my application for enlistment. If any of that information is false or incorrect, this enlistment may be voided or terminated administratively by the Government or I may be tried by a Federal, civilian, or military court and, if found guilty, may be punished.

I certify that I have carefully read this document, including the partial statement of existing United States laws in Section C and how they may affect this agreement. Any questions I had were explained to my satisfaction. I fully understand that only those agreements in Section B and Section C of this document or recorded on the attached annex(es) will be honored. I also understand that any other promises or guarantees made to me by anyone that are not set forth in Section B or the attached annex(es) are not effective and will not be honored.

| b. SIGNATURE OF ENLISTEE/REENLISTEE | c. DATE SIGNED *(YYYYMMDD)* |
|---|---|
| | 2010 OCT 01 |

## 14. SERVICE REPRESENTATIVE CERTIFICATION

a. On behalf of the  United States  *(list branch of service)*          ARMY

I accept this applicant for enlistment.  I have witnessed the signature in Item 13b in this document.  I certify that I have explained that only those agreements in Section B of this form and the attached Annex(es) will be honored, and any other promises made by any person are not effective and will not be honored.

| b. NAME *(Last, First, Middle)* | c. PAY GRADE | d. UNIT/COMMAND NAME |
|---|---|---|
| WASHINGTON,  WINTER LOUIS | E6 | 1BCT, 4ID |
| e. SIGNATURE | f. DATE SIGNED *(YYYYMMDD)*  2010 OCT 01 | g. UNIT/COMMAND ADDRESS *(City, State, ZIP Code)*  FORT CARSON, CO 80913 |

## E . CONFIRMATION OF ENLISTMENT OR REENLISTMENT

### 15. IN THE ARMED FORCES EXCEPT THE NATIONAL GUARD (ARMY OR AIR):

I,          DAMON JAHRON CLAIBORNE          , do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic;  that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice.  So help me God.

### 16. IN THE NATIONAL GUARD (ARMY OR AIR):

I, _____ , do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the State of _____ against all enemies, foreign and domestic;  that I will bear true faith and allegiance to the same;  and that I will obey the orders of the President of the United States and the Governor of _____ and the orders of the officers appointed over me, according to law and regulations. So help me God.

### 17. IN THE NATIONAL GUARD (ARMY OR AIR):

I do hereby acknowledge to have voluntarily enlisted/reenlisted this _____ day of _____ ,

in the _____ National Guard and as a Reserve of the United States  *(list branch of service)*

_____ with membership in the _____

National Guard of the United States for a period of _____ years, _____ months, _____ days, under the conditions prescribed by law, unless sooner discharged by proper authority.

| 18. SIGNATURE OF ENLISTEE/REENLISTEE | b. DATE SIGNED *(YYYYMMDD)* |
|---|---|
| | 2010 OCT 01 |

## 19. ENLISTMENT/REENLISTMENT OFFICER CERTIFICATION

a. The above oath was administered, subscribed, and duly sworn to (or affirmed) before me this date.

| b. NAME *(Last, First, Middle)* | c. PAY GRADE | d. UNIT/COMMAND NAME |
|---|---|---|
| Hinds, Kristine M. | O3 | A CO, 4BSB, 1BCT |
| e. SIGNATURE | f. DATE SIGNED *(YYYYMMDD)*  2010 OCT 01 | g. UNIT/COMMAND ADDRESS *(City, State, ZIP Code)*  APO, AE 09355 |

*(Initials of Enlistee/Reenlistee)* D. C.

**DD FORM 4/2, OCT 2007**          PREVIOUS EDITION IS OBSOLETE.

## STATEMENTS FOR ENLISTMENT

*(PARTS I THROUGH IV)*

For use of this form, see AR 601-280; the proponent agency is ODCSPER

### DATA REQUIRED BY THE PRIVACY ACT OF 1974

| | |
|---|---|
| **AUTHORITY:** | Section 504, 505, 508, and 510, Title 10, USC. |
| **PRINCIPAL PURPOSE:** | To determine eligibility for reenlistment. |
| **ROUTINE USES:** | Information may be referred to appropriate authorities if disciplinary action or discharge for fraudulent enlistment/reenlistment is appropriate. |
| **DISCLOSURE:** | Disclosure of personal information is voluntary, however, failure to furnish information requested may result in denial of reenlistment in the US Army. |

### PART I - GENERAL STATEMENT OF UNDERSTANDING

*TO BE COMPLETED BY ALL APPLICANTS FOR REENLISTMENT IN THE REGULAR ARMY*

1. ACKNOWLEDGEMENT:   In connection with my reenlistment in the Regular Army, I hereby acknowledge that:

   a. All promises made to me are contained in Item 10 of DD Form 4, my reenlistment agreement, and Part II of this statement.

   b. I have not been guaranteed attendance at an MOS-producing Army service school or Airborne training unless the title of the school course or Airborne training has been entered in Item 10, DD Form 4.

   c. Should I make any material omission or misstatement of fact in connection with any of my enlistment documents, (1) I may be subject to early separation from this enlistment, or (2) I will complete, if permitted, the period for which I enlisted in any assignment deemed appropriate in accordance with the needs of the Army.

   d. Should I choose an option which requires a security clearance and I am not granted such clearance after I have enlisted, or my granted clearance is revoked after I have enlisted, I agree to accept any assignment in accordance with the needs of the Army and I will complete the period for which I enlisted.

   e. Law violations for which I have been convicted or have had adverse adjudications as a juvenile or youthful offender may be cause for denial of security clearance.

   f. My choice of initial enlistment option shown in Item 10 of my DD Form 4 does not constitute any guarantee that a substantial part of my enlistment will be served in the option, and the needs of the service may result in my transfer at any time   *(other than as may be provided by the specific option selected)*   to any other assignment within the continental United States or to an overseas command. I am aware that due to the needs of the Army I may be subject to involuntary retraining and/or reclassification.

   g. Should my enlistment involve a commitment for specialized training or a selective assignment, conduct on my part occurring after my enlistment which results in disciplinary action may be just cause for my transfer to any other assignment within the continental United States or to an overseas command.

   h. My acceptance for enlistment carries no promise whatsoever relative to furnishing transportation for dependents to overseas commands or to the furnishing of family quarters either in overseas commands or in the continental United States.

   i. If, after my enlistment for a specific option, I should fail to meet required qualifications which cannot be determined prior to my enlistment, I understand that I will not be offered another enlistment option, but will be trained and assigned in accordance with the needs of the Army and will be required to complete the term of service for which I enlisted.

   j. If, after my enlistment in the Regular Army, I should waive my initial enlistment option as listed in Item 10, DD Form 4, and in Part II of my statement for enlistment for any reason whatsoever, this initial option will not be reinstated at a later date.

   k. I am not consciously opposed, by reason of religious training or belief, to bearing arms or to participation, or training for war in any form.

   l. I am aware that in the event of armed conflict involving the United States, the Secretary of the Army may declare null and void any portion of my enlistment option pertaining to training, assignment, or duty, if he determines such action to be necessary.

### PART II - IN-SERVICE REENLISTMENT OPTION

*TO BE COMPLETED BY APPLICANT REENLISTING FOR A SPECIFIC OPTION*

2. In connection with my reenlistment in the Regular Army for the _____ REGULAR ARMY _____ Reenlistment option, I hereby acknowledge that provided I meet required prerequisites I will be assigned as follows: IAW THE NEEDS OF THE ARMY.

3. I have read and understand the provisions of the reenlistment option for which I am reenlisting. Furthermore, to avoid misunderstandings, I have recorded below in my own words all spoken and handwriting all spoken and written promises that have been made to me in connection with my enlistment in the Regular Army   *(at end of statement, applicant will print the word "END")*.

   *NONE.  END  DC.*

4. If reenlisting for the CONUS Station of Choice Reenlistment Option, I understand that my stabilization will commence on date of reenlistment or upon arrival at new station, whichever is later. I further understand that if I am subsequently placed on TDY in excess of 30 days, my stabilization may be extended by the number of days in excess of the 30-day period, unless I voluntarily waive my stabilization. It is also understood that if HQDA determines that in order to meet the operational needs of the Army, the unit or subordinate element must be deployed from the parent organization, I must deploy with the unit and no grounds for a broken reenlistment commitment will exist.

DA FORM 3286-E, DEC 94
ANNEX A                    EDITION OF SEP 79 IS OBSOLETE                    page 1 of 2

5. In the event my enlistment commitment cannot be fulfilled, the alternatives available to me will be as provided in AR 635-200, as of the date of my claim of unfulfilled enlistment commitment or erroneous enlistment is submitted. I understand that I will have a period of 30 days to elect an alternative or to request other training or assignment from the date I am advised that my selected option cannot be fulfilled or, where not formally advised, from the date I discover or should have discovered the grounds for submitting a claim. This period may be extended by the general courts-martial convening authority when necessary to determine the availability of my selected alternative. If I make no election within that period, my claim will be deemed to have been waived. I may withdraw any request for training or reassignment prior to approval and elect another alternative, but not thereafter.

## PART III - STATEMENT OF LAW VIOLATIONS AND PREVIOUS CONDITIONS

6. Complete the statement in a below and answer questions b through f as appropriate, by placing a checkmark under the "YES" or "NO" column. In-service personnel immediately enlisting will list those violations occurring during current term of service, and offenses not previously revealed.

a. I have read or have had explained to me, paragraphs 2-4 and 7-4, AR 604-10, which set forth the criteria *(reasons)* for discharge and types of discharge and certify that I [ ] have [X] have not *(check one)* engaged in disloyal or subversive activities as defined herein.

|  | YES | NO |
|---|---|---|
| b. Have you ever been rejected for enlistment or induction in any of the Armed Forces to include failure of the mental examinations administered by any MEPS or been discharged from previous service under other than honorable conditions, under Personnel Security Regulations, or by reason of unsuitability, or undesirable habits or traits of character, or for medical reasons? | | X |
| c. Have you ever been arrested, cited, charged or held by Federal, State, County, City or other law enforcement authorities or by Juvenile Court of Juvenile Probation Officials for any violation of any Federal Law, State Law, County or Municipal Law, Regulation or Ordnance? | | X |
| d. Have you ever been convicted of a felony or any other offense, or adjudicated a youthful or juvenile delinquent? | | X |
| e. Have you ever been imprisoned under sentence of any court? | | X |
| f. Are you now or have you ever been on parole, probation supervision, under suspended sentence, or are you awaiting final action of charges against you? | | X |

7. In the space below, give full details for any of the above questions to which you answered "YES".    *(If additional space is required, continue on a seperate sheet of paper and attached securely to this form).*

| a. REF ITEM | b. OFFENSE (s) | c. DATE AND PLACE | d. DISPOSITION |
|---|---|---|---|
| | NONE | | |

8. **UNDERSTANDING:** I understand that should I intentionally conceal or misrepresent any information regarding my record of arrests or convictions or juvenile court adjudications, I may later be subject to disciplinary action under the Uniform Code of Military Justice (UCMJ) and/or discharged from the Service under other than honorable conditions.

## PART IV - DEPENDENCY STATEMENT
### TO BE COMPLETED BY ALL APPLICANTS

9. Relationship and age of all persons who are dependent upon me for support are recorded below    *(If none, so state):*

| RELATIONSHIP | AGE | RELATIONSHIP | AGE | RELATIONSHIP | AGE |
|---|---|---|---|---|---|
| Redacted PII | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

10. **UNDERSTANDING:** I understand that if I am selected for enlistment in the Regular Army, I will be expected to accept such assignments as are in the best interest of the Service regardless of marital status and/or responsibility for dependents; and that it is my responsibility to make appropriate arrangements for the care of my dependents should I be required to perform duty in an area where dependents are not authorized.

11. I have read and understand the meaning of all statements contained in Parts I through IV of the form and agree to all conditions set forth therein. I certify that all answers to questions, statements, and entries on the form are true, correct, and complete, and that the Career Counselor has informed me that should I intentionally conceal any information required above, I may later be subject to disciplinary action or discharge upon its discovery.

| 12. SIGNATURE OF APPLICANT | 13. DATE | 14. SIGNATURE AND TITLE OF WITNESS |
|---|---|---|
| *(signature)* | 20101001 | *(signature)* |

DA FORM 3286, DEC 94

Page 2 of 2
USAPPC V1.00

**000430**

## REQUEST FOR REENLISTMENT OR EXTENSION IN THE REGULAR ARMY

For use of this form see AR 601-280; the proponent agency is ODCSPER.

| SECTION I - SOLDIER'S REQUEST | |
|---|---|
| 1. TO<br><br>COMMANDER<br>A CO, 4BSB, 1BCT<br>APO, AE 09355 | 2. FROM<br><br>SGT DAMON JAHRON CLAIBORNE<br>Redacted PII<br>A CO, 4BSB, 1BCT<br>APO, AE 09355 |

3. REQUEST I BE AUTHORIZED TO *(Select one)*

[X] a. REENLIST IN THE ACTIVE COMPONENT.

[ ] b. EXTEND MY ENLISTMENT FOR THE FOLLOWING REASON: _____

4. ACCRUED LEAVE OPTIONS *(Select one)*

[ ] a. I DESIRE TO CASH IN _____ DAYS OF ACCRUED LEAVE.

[X] b. I DO NOT DESIRE TO CASH IN ACCRUED LEAVE.

[ ] c. I AM EXTENDING MY PRESENT ENLISTMENT AND HAVE BEEN COUNSELED ON CASHING IN ACCRUED LEAVE.

| 5. DATE 2010 09 21 | 6. SIGNATURE |
|---|---|

### SECTION II - COMMANDER'S CERTIFICATION

7. COMMANDER'S DETERMINATION OF QUALIFICATION *(Select one)*

[X] a. SOLDIER IS FULLY QUALIFIED FOR REQUESTED ACTION.

[ ] b. SOLDIER IS NOT FULLY QUALIFIED AND REQUIRES WAIVER. *(Select 8b or 8c(1) below)*

[ ] c. SOLDIER IS FULLY QUALIFIED, BUT IS NOT RECOMMENDED FOR FURTHER SERVICE. *(Select 8c(2) below)*

8. COMMANDER'S DETERMINATION/RECOMMENDATION FOR CONTINUED SERVICE WITHIN THE ARMY *(Select one)*

[X] a. APPROVED.

[ ] b. RECOMMENDED APPROVAL. DA FORM 3072 IS ATTACHED.

[ ] c. DISAPPROVED.

[ ] (1) I DISAPPROVE THE SOLDIER'S REQUEST FOR WAIVER OF DISQUALIFICATION.

[ ] (2) I HAVE INITIATED A BAR TO REENLISTMENT UNDER THE PROVISIONS OF CHAPTER 8, AR 601-280.

9. TYPED NAME, RANK, AND BRANCH OF COMMANDER

Kristine M. Hinds, CPT, LG

| 10. SIGNATURE | 11. DATE 2010 09 21 |
|---|---|

**DA FORM 3340-R, DEC 94**     EDITION OF MAY 88 IS OBSOLETE
ANNEX .B

**000431**

SERVICEMEN'S GROUP LIFE INSURANCE ELECTION AND CERTIFICATE        Page 1 of 1

---

**Please read the instructions before completing this form**

## Servicemembers' Group Life Insurance Election and Certificate

| Use this form to: (check all that apply) | **Important:** This form is for use by Active Duty and Reserve members. This form does not apply to and cannot be used for any other Government Life Insurance. |
|---|---|
| ☑ Name or update your beneficiary | |
| ☑ Reduce the amount of your insurance coverage | |
| ☑ Decline insurance coverage | |

| Last name CLAIBORNE | First name DAMON | Middle name JAHRON | Suf. | Rank, title or grade SGT | Social Security Number Redacted PII |
|---|---|---|---|---|---|

| Branch of Service(Do not abbreviate) Army | Current Duty Location WANLA1 |
|---|---|

### Amount of Insurance

By law, you are automatically insured for $400,000. *If you want $400,000 of insurance*, skip to Beneficiary(ies) and Payment Options. *If you want less than $400,000* of insurance, please check the appropriate block below and write the amount desired and your initials. Coverage is available in increments of $50,000. *If you do not want any insurance*, check the appropriate block below and write (in your own handwriting), "I do not want insurance at this time."

**Declining SGLI coverage also cancels all family coverage under the SGLI program.**

☐ I want coverage in the amount of $ _____ Your initials_____

☐ _____

(Write "I do not want insurance at this time.")

*Note: Reduced or refused insurance can only be restored by completing form SGLV 8285 with proof of good health and compliance with other requirements. Reduced or refused insurance will also affect the amount of VGLI you can convert to upon separation from service.

### Beneficiary(ies) and Payment Options

I designate the following beneficiary(ies) to receive payment of my insurance proceeds. I understand that the principal beneficiary(ies) will receive payment upon my death. If all principal beneficiaries predecease me, the insurance will be paid to the contingent beneficiary(ies).

| Complete Name (first, middle, last) and Address of each beneficiary | Social Security Number (if known) | Relationship to you | Share to each beneficiary (Use %, $ amounts or fractions) | Payment Option (Lump sum or 36 equal monthly payments) |
|---|---|---|---|---|
| **Principal** | | | | |

Redacted PII

| I HAVE READ AND UNDERSTAND the instructions on pages 2 and 3 of this form. I ALSO UNDERSTAND that: |
|---|
| • This form cancels any prior beneficiary or payment instructions. |
| • The proceeds will be paid to beneficiaries as stated in #8 on page 3 of this form, unless otherwise stated above. |
| • If I have legal questions about this form, I may consult with a military attorney at no expense to me. |
| • I cannot have combined SGLI and VGLI coverages at the same time for more than $400,000. |

SIGN HERE IN INK _____         Date: 20100615
                    (Your Signature. Do not print.)

**Do not write in space below. For official use only.**

| WITNESSED AND RECEIVED BY: | RANK, TITLE OR GRADE CIV/SPP | ORGANIZATION | DATE RECEIVED 20100615 |
|---|---|---|---|

SGLV-8286 (E)

RECORD OF EMERGENCY DATA

Page 1 of 2

NAME: CLAIBORNE, DAMON JAHRON SSN: [Redacted PII]

## RECORD OF EMERGENCY DATA

### PRIVACY ACT STATEMENT

**AUTHORITY:** 5 USC 552, 10 USC 655, 1475 to 1480 and 2771, 38 USC 1970, 44 USC 3101, and EO 9397 (SSN).
**PRINCIPAL PURPOSES:** This form is used by military personnel and Department of Defense civilian and contractor personnel, collectively referred to as civilians, when applicable. **For military personnel,** it is used to designate beneficiaries for certain benefits in the event of the Service member's death. It is also a guide for disposition of that member's pay and allowances if captured, missing or interned. It also shows names and addresses of the person(s) the Service member desires to be notified in case of emergency or death. **For civilian personnel,** it is used to expedite the notification process in the event of an emergency and/or death of the member. The purpose of soliciting the SSN is to provide positive identification. All items may not be applicable.
**ROUTINE USES:** None.
**DISCLOSURE:** Voluntary; however, failure to provide accurate personal identifier information and other solicited information will delay notification and the processing of benefits to designated beneficiaries if applicable.

| INSTRUCTIONS TO SERVICE MEMBER | INSTRUCTIONS TO CIVILIANS |
|---|---|
| This extremely important form is to be used by you to show the names and addresses of your spouse, children, parents, and any other person(s) you would like notified if you become a casualty (other family members or fiance), and, to designate beneficiaries for certain benefits if you die. IT IS YOUR RESPONSIBILITY to keep you Record of Emergency Data up to date to show your desires as to beneficiaries to receive certain death payments, and to show changes in your family or other personnel listed, for example, as a result of marriage, civil court action, death, or address change. | This extremely important form is to be used by you to show the names and addresses of your spouse, children, parents, and any other person(s) you would like notified if you become a casualty. Not every item on this form is applicable to you. **This form is used by the Department of Defense (DoD) to expedite notification in the case of emergencies or death.** It does not have a legal impact on other forms you may have completed with the DoD or your employer. |

**IMPORTANT: This form is divided into two sections: Section 1 - Emergency Contact Information and Section 2 - Benefits Related Information. READ THE INSTRUCTIONS ON PAGES 3 AND 4 BEFORE COMPLETING THIS FORM.**

### SECTION 1 - EMERGENCY CONTACT INFORMATION

**1. NAME** *(Last, First, Middle Initial)*
CLAIBORNE, DAMON JAHRON

**2. SSN** [Redacted PII]

**3a. SERVICE/CIVILIAN CATEGORY**

[x] ARMY  [ ] NAVY  [ ] MARINE CORPS  [ ] AIR FORCE  [ ] DoD  [ ] CIVILIAN  [ ] CONTRACTOR

**b. REPORTING UNIT CODE/DUTY STATION**
WANLA1 / FT CARSON

**4a. SPOUSE NAME** *(if applicable) (Last, First, Middle Initial)*
[Redacted PII]

**b. ADDRESS** *(Include ZIP and TELEPHONE NUMBER*
[Redacted PII]

**5. CHILDREN**
**a. NAME** *(Last, First, Middle Initial)*

**b. RELATIONSHIP**  **c. DATE OF BIRTH** *(YYYYMMDD)*  **d. ADDRESS** *(Include ZIP Code)* **AND TELEPHONE NUMBER**

[Redacted PII]

**6a. FATHER NAME** *(Last, First, Middle Initial)*
[Redacted PII]

**b. ADDRESS** *(Include ZIP Code)* **AND TELEPHONE NUMBER**

**7a. MOTHER NAME** *(Last, First, Middle Initial)*
[Redacted PII]

**b. ADDRESS** *(Include ZIP Code)* **AND TELEPHONE NUMBER**
[Redacted PII]

**8a. DO NOT NOTIFY DUE TO ILL HEALTH**
None.

**b. NOTIFY INSTEAD**

**9a. DESIGNATED PERSON(S)** *(Military Only)*
None.

**b. ADDRESS** *(Include ZIP Code)* **AND TELEPHONE NUMBER**

**10. CONTRACTING AGENCY AND TELEPHONE NUMBER** *(Contractors only)*

**DD FORM 93 (E), JAN 2008**  PREVIOUS EDITION IS OBSOLETE

NAME: CLAIBORNE, DAMON JAHRON SSN: [Redacted PII]

### SECTION 2 - BENEFITS RELATED INFORMATION

**11a. BENEFICIARY(IES) FOR DEATH GRATUITY**  **b. RELATIONSHIP**  **c. ADDRESS** *(Include ZIP Code)* **AND TELEPHONE**  **d. PERCENTAGE**

RECORD OF EMERGENCY DATA

NAME: CLAIBORNE, DAMON JAHRON SSN: Redacted PII

| *(Military only)* | | NUMBER |
|---|---|---|
| Redacted PII | WIFE | Redacted PII |

**12a. BENEFICIARY(IES) FOR UNPAID PAY/ALLOWANCES** *(Military only)* **NAME AND RELATIONSHIP**

Redacted PII

**b. ADDRESS** *(Include ZIP Code)* **AND TELEPHONE NUMBER**    **c. PERCENTAGE**

Redacted PII

**13a. PERSON AUTHORIZED TO DIRECT DISPOSITION (PADD)** *(Military only)* **NAME AND RELATIONSHIP**

Redacted PII

**b. ADDRESS** *(Include ZIP Code)* **AND TELEPHONE NUMBER**

Redacted PII

**14. CONTINUATION/REMARKS**

Location of Will/Valuable Papers: WILL IS WITH WIFE

NMA:  Redacted PII

| **15. SIGNATURE OF SERVICE MEMBER/CIVILIAN** *(Include rank, rate, or grade if applicable).* | **16. SIGNATURE OF WITNESS** *(Include rank, rate or grade as appropriate)* | **17. DATE SIGNED** *(YYYYMMDD)* |
|---|---|---|
| SGT | CIV | 20100615 |

DD FORM 93 (E) (BACK), JAN 2008

**000434**

04749159

# NCO EVALUATION REPORT
For use of this form, see AR 623-3; the proponent agency is DCS, G-1.

FOR OFFICIAL USE ONLY (FOUO)
SEE PRIVACY ACT STATEMENT
IN AR 623-3.

## PART I - ADMINISTRATIVE DATA

| a. NAME (Last, First, Middle Initial) | b. SSN | c. RANK | d. DATE OF RANK | e. PMOSC |
|---|---|---|---|---|
| CLAIBORNE, DAMON JAHRON | Redacted PII | SGT | 20070701 | 92F20 |

| f.1. UNIT | ORG. | STATION | ZIP CODE OR APO, | MAJOR COMMAND | f.2. STATUS CODE | g. REASON FOR SUBMISSION |
|---|---|---|---|---|---|---|
| HHC, 49th GROUP | | FORT LEE, VA | 23801 | FORSCOM | | 02   Annual |

| h. PERIOD COVERED | | i. RATED MONTHS | j. NON-RATED CODES | k. NO. OF ENCL | l. RATED NCO'S EMAIL ADDRESS (.gov or .mil) | m. UIC | n. CMD CODE | o. PSB CODE |
|---|---|---|---|---|---|---|---|---|
| FROM | THRU | | | | | | | |
| YEAR MONTH DAY | YEAR MONTH DAY | | | | Redacted PII | | | |
| 20090305 | 20100304 | 12 | | | | WHE2AA | FC | UA61 |

## PART II - AUTHENTICATION

| a. NAME OF RATER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| DIDERICKSEN, CARLO D | Redacted PII | DIDERICKSEN, CARLO D Redacted PII | 20100325 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | RATER'S AKO EMAIL ADDRESS (gov. or mil) |
|---|---|---|---|---|
| SSG | 92F30 | HHC, 49TH GROUP | TASKING NCOIC | Redacted PII |

| b. NAME OF SENIOR RATER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| SMITH, ERASTUS B. | Redacted PII | SMITH, ERASTUS BYRON Redacted PII | 20100406 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | SENIOR RATER S AKO EMAIL ADDRESS (gov. or mil) |
|---|---|---|---|---|
| SFC | 92F40 | HHC, 49TH GROUP | OPERATIONS SGT | Redacted PII |

| c. NAME OF REVIEWER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| WRIGHT, WAYNE H | Redacted PII | WRIGHT, WAYNE HOWARD Redacted PII | 20100407 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | REVIEWER'S AKO EMAIL ADDRESS (.gov. or mil) |
|---|---|---|---|---|
| SGM | | HHC 49TH GROUP | S3 SGM | Redacted PII |

d. [X] CONCUR WITH RATER AND SENIOR RATER EVALUATIONS     [ ] NONCONCUR WITH RATER AND/OR SENIOR RATER EVAL (See attached comments)

| e. RATED NCO. I understand my signature does not constitute agreement or disagreement with the evaluations of the rater and senior rater. I further understand my signature verifies that the administrative data in Part I, the rating officials in Part II, the duty description to include the counseling dates in Part III, and the APFT and height/weight entries in Part IVc are correct. I have seen the completed report. I am aware of the appeals process of AR 623-3 | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|
| | CLAIBORNE, DAMON JAHRON Redacted PII | 20100407 |

## PART III - DUTY DESCRIPTION (Rater)

| a. PRINCIPAL DUTY TITLE | b. DUTY MOSC |
|---|---|
| Group/ Brigade Level Readiness NCO | 92F20 |

c. DAILY DUTIES AND SCOPE (To include, as appropriate, people, equipment, facilities and dollars)

Serves as a S-3 Readiness NCO for the 49th Quatermaster Group consisting of a Headquarters Company, Petroleum Pipeline and Terminal Operations Battalion and Combat Sustainment Support Battalion totaling over 2,200 Soldiers; . Provides teaching and lesson plans to students as a pre-phase Warrior Leadership Course Instructor to a monthly rotating class of 30 Soldiers. Manages Air Assault , WLC coordination and ensures attendance and accountability as a Group Level LNO. Manages planning of mandated training of Installation level schools to subordinate Battalions. Coordinates training and execution of tasks by resourcing installation level agencies.

d. AREAS OF SPECIAL EMPHASIS

PRE WLC Instructor, Haiti deployment Transportation Support, Year of the NCO planning and operations, SOY 2009 PLANS/OPS Cell

e. APPOINTED DUTIES

BOSS HHC Representative, Facility Management/Energy Conservation NCO, PRE-WLC Instructor, WLC and Air Assault Liaison, Safety NCO

| f. COUNSELING DATES | INITIAL | LATER | LATER | LATER |
|---|---|---|---|---|
| | 20090430 | 20090729 | 20091026 | 20100129 |

## PART IV - ARMY VALUES/ATTRIBUTES/SKILLS/ACTIONS (Rater)

a. ARMY VALUES. Check either "YES" or "NO". (Bullet Comments are mandatory  Substantive bullet comments are required for "NO" entries.)

| | | | YES | NO |
|---|---|---|---|---|
| | Loyalty | 1. LOYALTY: Bears true faith and allegiance to the U. S. Constitution, the Army, the unit, and other Soldiers. | X | |
| V | Duty | 2. DUTY: Fulfills their obligations. | X | |
| | Respect | 3. RESPECT/EO/EEO: Treats people as they should be treated. | X | |
| A | Selfless-Service | 4. SELFLESS-SERVICE: Puts the welfare of the nation, the Army, and subordinates before their own. | X | |
| L | | 5. HONOR: Lives up to all the Army values. | X | |
| | | 6. INTEGRITY: Does what is right - legally and morally. | X | |
| U | | 7. PERSONAL COURAGE: Faces fear, danger, or adversity  (physical and moral) | X | |
| E | | Bullet comments | | |
| | | o committed to the unit's Soldiers and mission | | |
| Honor | | | | |
| Integrity | | o puts his personal needs second to those of the unit | | |
| Personal Courage      S | | | | |
| | | o willing to go the extra mile as a Soldier; volunteered for difficult missions | | |

DA FORM 2166-8, MAR 2006        PREVIOUS EDITIONS ARE OBSOLETE.

Page 1 of 2
APD PE v6.00ES

| RATED NCO'S NAME (Last, First, Middle Initial) CLAIBORNE, DAMON JAHRON | SSN Redacted PII | THRU DATE 20100304 |
| --- | --- | --- |

**PART IV (Rater) - VALUES/NCO RESPONSIBILITIES**

Bullet comments are mandatory
Evidence of signed comments are required for "EXCELLENCE" or "NEEDS IMPROVEMENT"

**b. COMPETENCE**
- o Duty proficiency; MOS competency
- o Technical & tactical; knowledge, skills, and abilities
- o Sound judgment
- o Seeking self-improvement; always learning
- o Accomplishing tasks to the fullest capacity; committed to excellence

| EXCELLENCE (Exceeds std) | SUCCESS (Meets std) | NEEDS IMPROVEMENT (Some) | (Much) |
| --- | --- | --- | --- |
| | X | | |

o flawlessly handled Defense Travel System and personnel actions for over 25 Soldiers attending NCOES

o key player in the synchronization of the pre-deployment requirements; processed over 11 companies and 1,200 Soldiers to support Iraq and Afghanistan

o knowledgeable NCO who demonstrated the ability to manage numerous tasks simultaneously

**c. PHYSICAL FITNESS & MILITARY BEARING**
- o Mental and physical toughness
- o Endurance and stamina to go the distance
- o Displaying confidence and enthusiasm; looks like a Soldier

| EXCELLENCE (Exceeds std) | SUCCESS (Meets std) | NEEDS IMPROVEMENT (Some) | (Much) |
| --- | --- | --- | --- |
| X | | | |

| APFT | PASS | 20100126 | HEIGHT/WEIGHT | 74 / 193 | YES |

o maintained a 294 average on the Army Physical Fitness test

o presented the highest standards of military bearing and appearance

o supported all commander's cup sports events

**d. LEADERSHIP**
- o Mission first
- o Genuine concern for Soldiers
- o Instilling the spirit to achieve and win
- o Setting the example; Be, Know, Do

| EXCELLENCE (Exceeds std) | SUCCESS (Meets std) | NEEDS IMPROVEMENT (Some) | (Much) |
| --- | --- | --- | --- |
| X | | | |

o received impact AAM for leadership excellence during the ARMY 's "Best Warrior Competition"

o coordinated logistics and transportation support for over 200 soldiers attending WLC, Air Assault and Individual Readiness Training

o provided support to Soldiers rapidly deploying to Haiti in support of Operation Unified Response

**e. TRAINING**
- o Individual and team
- o Mission focused; performance oriented
- o Teaching Soldiers how; common tasks, duty-related skills
- o Sharing knowledge and experience to fight, survive and win

| EXCELLENCE (Exceeds std) | SUCCESS (Meets std) | NEEDS IMPROVEMENT (Some) | (Much) |
| --- | --- | --- | --- |
| | X | | |

o instrumental with his section achieving first time go while conducting 33/12 Warrior Task and Battle Drills

o assisted with the Pre WLC course; over 50 Soldiers graduated from the Warrior Leader Course

o was a key player in the initial planning phase of South Bound Trooper exercise

**f. RESPONSIBILITY & ACCOUNTABILITY**
- o Care and maintenance of equipment/facilities
- o Soldier and equipment safety
- o Conservation of supplies and funds
- o Encouraging Soldiers to learn and grow
- o Responsible for good, bad, right & wrong

| EXCELLENCE (Exceeds std) | SUCCESS (Meets std) | NEEDS IMPROVEMENT (Some) | (Much) |
| --- | --- | --- | --- |
| X | | | |

o volunteered over 100 hours of his personal time as the Boss representative

o maintained 100% accountability of all sensitive items and equipment

o directly responsible for bring section in compliance with all movement and safety regulations

**PART V - OVERALL PERFORMANCE AND POTENTIAL**

**a. RATER.** Overall potential for promotion and/or service in positions of greater responsibility.

| AMONG THE BEST | FULLY CAPABLE | MARGINAL |
| --- | --- | --- |
| X | | |

**b. RATER.** List 3 positions in which the rated NCO could best serve the Army at his/her current or next higher grade.

Section Sergeant

Recruiter

Small Group Leader

**e. SENIOR RATER BULLET COMMENTS**

o promote to SSG now

o a strong leader with the wealth of experience and knowledge

o superb performance during this rating period

o clearly demonstrates potential for unlimited advancement

| c. SENIOR RATER. Overall performance | | 1 | 2 | 3 | 4 | 5 | d. SENIOR RATER. Overall potential for promotion and/or service in positions of greater responsibility. | | 1 | 2 | 3 | 4 | 5 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | X | | | | | | | X | | | | | |
| | | | | Successful | Fair | Poor | | | | | Superior | Fair | Poor |

DA FORM 2166-8, MAR 2006

000436

RECORD OF EMERGENCY DATA                                             Page 1 of 2

NAME: CLAIBORNE, DAMON JAHRON SSN: [Redacted PII]

# RECORD OF EMERGENCY DATA

## PRIVACY ACT STATEMENT

**AUTHORITY:** 5 USC 552, 10 USC 655, 1475 to 1480 and 2771, 38 USC 1970, 44 USC 3101, and EO 9397 (SSN).
**PRINCIPAL PURPOSES:** This form is used by military personnel and Department of Defense civilian and contractor personnel, collectively referred to as civilians, when applicable. For military personnel, it is used to designate beneficiaries for certain benefits in the event of the Service member's death. It is also a guide for disposition of that member's pay and allowances (if captured, missing or interned). It also shows names and addresses of the person(s) the Service member desires to be notified in case of emergency or death. For civilian personnel, it is used to expedite the notification process in the event of an emergency and/or death of the member. The purpose of soliciting the SSN is to provide positive identification. All items may not be applicable.
**ROUTINE USES:** None.
**DISCLOSURE:** Voluntary; however, failure to provide accurate personal identifier information and other solicited information will delay notification and the processing of benefits to designated beneficiaries if applicable.

| INSTRUCTIONS TO SERVICE MEMBER | INSTRUCTIONS TO CIVILIANS |
|---|---|
| This extremely important form is to be used by you to show the names and addresses of your spouse, children, parents, and any person(s) you would like notified if you become a casualty (other family members or fiance), and, to designate beneficiaries for certain benefits if you die. IT IS YOUR RESPONSIBILITY to keep your Record of Emergency Data up to date to show your desires as to beneficiaries to receive certain death payments, and to show changes in your family or other personnel listed, for example, as a result of marriage, civil court action, death, or address change. | This extremely important form is to be used by you to show the names and addresses of your spouse, children, parents, and any other person(s) you would like notified if you become a casualty. Not every item on this form is applicable to you. **This form is used by the Department of Defense (DoD) to expedite notification in the case of emergencies or death.** It does not have a legal impact on other forms you may have completed with the DoD or your employer. |

**IMPORTANT:** This form is divided into two sections: Section 1 - Emergency Contact Information and Section 2 - Benefits Related Information. READ THE INSTRUCTIONS ON PAGES 3 AND 4 BEFORE COMPLETING THIS FORM.

## SECTION 1 - EMERGENCY CONTACT INFORMATION

**1. NAME** (Last, First, Middle Initial)

CLAIBORNE, DAMON JAHRON

**2. SSN**

[Redacted PII]

**3a. SERVICE/CIVILIAN CATEGORY**

[☑] ARMY  [ ] NAVY  [ ] MARINE CORPS  [ ] AIR FORCE  [ ] DoD  [ ] CIVILIAN  [ ] CONTRACTOR

**b. REPORTING UNIT CODE/DUTY STATION**

WHE2AA / FT LEE

**4a. SPOUSE NAME** (if applicable) (Last, First, Middle Initial)

[Redacted PII]

**b. ADDRESS** (Include ZIP Code) AND TELEPHONE NUMBER

[Redacted PII]

**5. CHILDREN**
**a. NAME** (Last, First, Middle Initial)   **b. RELATIONSHIP**   **c. DATE OF BIRTH** (YYYYMMDD)   **d. ADDRESS** (include ZIP Code) AND TELEPHONE NUMBER

[Redacted PII]

**6a. FATHER NAME** (Last, First, Middle Initial)   **b. ADDRESS** (Include ZIP Code) AND TELEPHONE NUMBER

[Redacted PII]

**7a. MOTHER NAME** (Last, First, Middle Initial)   **b. ADDRESS** (Include ZIP Code) AND TELEPHONE NUMBER

[Redacted PII]

**8a. DO NOT NOTIFY DUE TO ILL HEALTH**

None.

**b. NOTIFY INSTEAD**

**9a. DESIGNATED PERSON(S)** (Military Only)   **b. ADDRESS** (Include ZIP Code) AND TELEPHONE NUMBER

None.

**10. CONTRACTING AGENCY AND TELEPHONE NUMBER** (Contractors only)

DD FORM 93 (E), JAN 2008                    PREVIOUS EDITION IS OBSOLETE

NAME: CLAIBORNE, DAMON JAHRON SSN: [Redacted PII]

## SECTION 2 - BENEFITS RELATED INFORMATION

**11a. BENEFICIARY(IES) FOR DEATH GRATUITY** (Military only)   **b. RELATIONSHIP**   **c. ADDRESS** (Include ZIP Code) AND TELEPHONE NUMBER   **d. PERCENTAGE**

000437

RECORD OF EMERGENCY DATA

**NAME:** CLAIBORNE, DAMON JAHRON **SSN:** Redacted PII

None.

| **12a. BENEFICIARY(IES) FOR UNPAID PAY/ALLOWANCES** (*Military only*) **NAME AND RELATIONSHIP** | **b. ADDRESS** (*Include ZIP Code*) **AND TELEPHONE NUMBER** | **c. PERCENTAGE** |
|---|---|---|
| Redacted PII | Redacted PII | |

**13a. PERSON AUTHORIZED TO DIRECT DISPOSITION (PADD)** (*Military only*) **NAME AND RELATIONSHIP**

Redacted PII

**b. ADDRESS** (*Include ZIP Code*) **AND TELEPHONE NUMBER**

Redacted PII

**14. CONTINUATION/REMARKS**

| **15. SIGNATURE OF SERVICE MEMBER/CIVILIAN** (*Include rank, rate, or grade if applicable*) | **16. SIGNATURE OF WITNESS** (*Include rank, rate or grade as appropriate*) | **17. DATE SIGNED** (*YYYYMMDD*) |
|---|---|---|
| | | 2d0017 |

DD FORM 93 (E) (BACK), JAN 2008

**000438**

SERVICEMEN'S GROUP LIFE INSURANCE ELECTION AND CERTIFICATE            Page 1 of 1

Please read the instructions before completing this form

## Servicemembers' Group Life Insurance Election and Certificate

| Use this form to: (check all that apply) | **Important:** This form is for use by Active Duty and Reserve members. This form does not apply to and cannot be used for any other Government Life Insurance. |
|---|---|
| ☐ Name or update your beneficiary | |
| ☐ Reduce the amount of your insurance coverage | |
| ☐ Decline insurance coverage | |

| Last name CLAIBORNE | First name DAMON | Middle name JAHRON | Suf. | Rank, title or grade SGT | Social Security Number Redacted PII |
|---|---|---|---|---|---|
| Branch of Service(Do not abbreviate) Army | | Current Duty Location WHE2AA | | | |

### Amount of Insurance

By law, you are automatically insured for $400,000. *If you want $400,000 of insurance*, skip to Beneficiary(ies) and Payment Options. *If you want less than $400,000* of insurance, please check the appropriate block below and write the amount desired and your initials.Coverage is available in increments of $50,000. *If you do not want any insurance*\*, check the appropriate block below and write (in your own handwriting), "I do not want insurance at this time."

**Declining SGLI coverage also cancels all family coverage under the SGLI program.**

☐ I want coverage in the amount of $ _____ Your initials_____

☐ _____

(Write "I do not want Insurance at this time.")

\***Note:** Reduced or refused insurance can *only* be restored by completing form SGLV 8285 with proof of good health and compliance with other requirements. Reduced or refused insurance will also affect the amount of VGLI you can convert to upon separation from service.

### Beneficiary(ies) and Payment Options

I designate the following beneficiary(ies) to receive payment of my insurance proceeds. I understand that the principal beneficiary(ies) will receive payment upon my death. If all principal beneficiaries predecease me, the insurance will be paid to the contingent beneficiary(ies).

| Complete Name (first, middle, last) and Address of each beneficiary | Social Security Number (If known) | Relationship to you | Share to each beneficiary (Use %, $ amounts or fractions) | Payment Option (Lump sum or 36 equal monthly payments) |
|---|---|---|---|---|
| Redacted PII | | | | |

Contingent

---

**I HAVE READ AND UNDERSTAND the instructions on pages 2 and 3 of this form. I ALSO UNDERSTAND that:**

. This form cancels any prior beneficiary or payment instructions.
. The proceeds will be paid to beneficiaries as stated in #6 on page 3 of this form, unless otherwise stated above.
. If I have legal questions about this form, I may consult with a military attorney at no expense to me.
. I cannot have combined SGLI and VGLI coverages at the same time for more than $400,000.

**SIGN HERE IN INK**                                                      Date: 20100119

(Your Signature. Do not print.)

Do not write in space below. For official use only.

| WITNESSED AND RECEIVED BY: | RANK, TITLE OR GRADE | ORGANIZATION | DATE RECEIVED |
|---|---|---|---|
| | HSG, S-1 MSTC | HHC 4979 | 20100163 |

SGLV-8286 (E)

000439

SERVICEMEN'S GROUP LIFE INSURANCE - SPOUSE NOTIFICATION LETTER          Page 1 of 1

20100119

Redacted PII

Dear          Redacted PII

The Servicemembers' Group Life Insurance (SGLI) Enhancement Act of 2005 requires the Soldier's spouse to be notified in writing of any reductions in coverage below the maximum amount, the Soldier's election of no coverage, or the Soldier's designation of a beneficiary other than the spouse or child of the member. The Soldier's spouse will be notified by the Department of the Army using the last address of record for the spouse.

As the spouse of  SGT DAMON JAHRON CLAIBORNE, this letter is to inform you that on  20100119 your spouse elected:

A beneficiary other than current lawful spouse

Your spouse is entitled to make the above election and nothing related to this notification requirement will affect the validity of such election. Additionally, pursuant to the Privacy Act of 1974 (5 USC, 552a), the Army cannot disclose the identities of a designated beneficiary without an appropriate Privacy Act waiver from the Soldier.

Should you have any questions relating to this letter, please contact ___*M.SG Lewis*___ at ___*(804) 734-6928*___.

Sincerely,

*PATRICK C. EVANS*
*MA J, AG*
*S-1 or*
SIGNATURE BLOCK
S-1 or MPD Chief

000440



# DEPARTMENT OF THE ARMY

Redacted PII

THIS IS TO CERTIFY THAT THE SECRETARY OF THE ARMY HAS AWARDED

## THE ARMY COMMENDATION MEDAL

**TO**

SERGEANT DAMON CLAIBORNE
UNITED STATES ARMY COMBINED ARMS SUPPORT COMMAND
AND SUSTAINMENT CENTER OF EXCELLENCE

**FOR**

exceptional performance in support of the 2009 United States Army Combined Arms Support Command and Sustainment Center of Excellence Noncommissioned Officer and Soldier of the Year "Best Warrior" Competition. Sergeant Claiborne's dedication to duty and attention to detail contributed to the total success of the competition and reflect great credit upon him, the United States Army Combined Arms Support Command and Sustainment Center of Excellence, and the United States Army.

FROM: 11 MAY 2009 TO 5 OCTOBER 2009

THIS 19TH DAY OF January 2010

Permanent Orders 19-101

19 January 2010
HQ, USACASCOM&SCoE
Fort Lee, Virginia

JAMES E. CHAMBERS
Major General, US Army
Commanding

DA FORM 4980-14, NOV 97

000441

SERVICEMEN'S GROUP LIFE INSURANCE ELECTION AND CERTIFICATE          Page 1 of 1

Please read the instructions before completing this form

# Servicemembers' Group Life Insurance Election and Certificate

| Use this form to: (check all that apply) | **Important:** This form is for use by Active Duty and Reserve members. This form does not apply to and cannot be used for any other Government Life Insurance. |
|---|---|
| Name or update your beneficiary | |
| Reduce the amount of your insurance coverage | |
| Decline insurance coverage | |

| Last name CLAIBORNE | First name DAMON | Middle name JAHRON | Suf. | Rank, title or grade SGT | Social Security Number Redacted PII |
|---|---|---|---|---|---|
| Branch of Service(Do not abbreviate) Army | | Current Duty Location WHE2AA | | | |

### Amount of Insurance

By law, you are automatically insured for $400,000. **If you want $400,000 of insurance**, skip to Beneficiary(ies) and Payment Options. **If you want less than $400,000** of insurance, please check the appropriate block below and write the amount desired and your initials. Coverage is available in increments of $50,000. **If you do not want any insurance**, check the appropriate block below and write (in your own handwriting), "I do not want insurance at this time."

**Declining SGLI coverage also cancels all family coverage under the SGLI program.**

I want coverage in the amount of $ _____   Your initials _____

(Write "I do not want insurance at this time.")

*Note: Reduced or refused insurance can only be restored by completing form SGLV 8285 with proof of good health and compliance with other requirements. Reduced or refused insurance will also affect the amount of VGLI you can convert to upon separation from service.

### Beneficiary(ies) and Payment Options

I designate the following beneficiary(ies) to receive payment of my insurance proceeds. I understand that the principal beneficiary(ies) will receive payment upon my death. If all principal beneficiaries predecease me, the insurance will be paid to the contingent beneficiary(ies).

| Complete Name (first, middle, last) and Address of each beneficiary | Social Security Number (If known) | Relationship to you | Share to each beneficiary (Use %, $ amounts or fractions) | Payment Option (Lump sum or 36 equal monthly payments) |
|---|---|---|---|---|
| Redacted PII | | | | |

**I HAVE READ AND UNDERSTAND the instructions on pages 2 and 3 of this form. I ALSO UNDERSTAND that:**

. This form cancels any prior beneficiary or payment instructions.
. The proceeds will be paid to beneficiaries as stated in #6 on page 3 of this form, unless otherwise stated above.
. If I have legal questions about this form, I may consult with a military attorney at no expense to me.
. I cannot have combined SGLI and VGLI coverages at the same time for more than $400,000.

SIGN HERE IN INK _____          Date: 20091021

(Your Signature. Do not print.)

| Do not write in space below. For official use only. | | | |
|---|---|---|---|
| WITNESSED AND RECEIVED BY: | RANK, TITLE OR GRADE | ORGANIZATION | DATE RECEIVED |
| DODSON, STEPHEN | SPC, HR ORDERLY | HHK 49th en of | 22OCT09 |

SGLV-8286 (E)

**000442**

RECORD OF EMERGENCY DATA                                              Page 1 of 2

NAME: CLAIBORNE, DAMON JAHRON SSN: [Redacted PII]

## RECORD OF EMERGENCY DATA

### PRIVACY ACT STATEMENT

AUTHORITY: 5 USC 552, 10 USC 655, 1475 to 1480 and 277 1, 38 USC 1970, 44 USC 3101, and EO 9397 (SSN).

PRINCIPAL PURPOSES: This form is used by military personnel and Department of Defense civilian and contractor personnel, collectively referred to as civilians, when applicable. For military personnel, it is used to designate beneficiaries for certain benefits in the event of the Service member's death. It is also a guide for disposition of that member's pay and allowances if captured, missing or interned. It also shows names and addresses of the person(s) the Service member desires to be notified in case of emergency or death. For civilian personnel, it is used to expedite the notification process in the event of an emergency and/or death of the member. The purpose of soliciting the SSN is to provide positive identification. All items may not be applicable.

ROUTINE USES: None.

DISCLOSURE: Voluntary; however, failure to provide accurate personal identifier information and other solicited information will delay notification and the processing of benefits to designated beneficiaries if applicable.

| INSTRUCTIONS TO SERVICE MEMBER | INSTRUCTIONS TO CIVILIANS |
|---|---|
| This extremely important form is to be used by you to show the names and addresses of your spouse, children, parents, and any other person(s) you would like notified if you become a casualty (other family members or fiance), and, to designate beneficiaries for certain benefits if you die. IT IS YOUR RESPONSIBILITY to keep your Record of Emergency Data up to date to show your desires as to beneficiaries to receive certain death payments, and to show changes in your family or other personnel listed, for example, as a result of marriage, civil court action, death, or address change. | This extremely important form is to be used by you to show the names and addresses of your spouse, children, parents, and any other person(s) you would like notified if you become a casualty. Not every item on this form is applicable to you. **This form is used by the Department of Defense (DoD) to expedite notification in the case of emergencies or death.** It does not have a legal impact on other forms you may have completed with the DoD or your employer. |

IMPORTANT: This form is divided into two sections: Section 1 - Emergency Contact Information and Section 2 - Benefits Related Information. READ THE INSTRUCTIONS ON PAGES 3 AND 4 BEFORE COMPLETING THIS FORM.

### SECTION 1 - EMERGENCY CONTACT INFORMATION

**1. NAME** (Last, First, Middle Initial)

CLAIBORNE, DAMON JAHRON

**2. SSN**

[Redacted PII]

**3a. SERVICE/CIVILIAN CATEGORY**

[✓] ARMY    [ ] NAVY    [ ] MARINE CORPS    [ ] AIR FORCE    [ ] DoD    [ ] CIVILIAN    [ ] CONTRACTOR

**b. REPORTING UNIT CODE/DUTY STATION**

WHE2AA / FT LEE

**4a. SPOUSE NAME** (if applicable) (Last, First, Middle Initial)

**b. ADDRESS** (Include ZIP Code) AND TELEPHONE NUMBER

Redacted PII

**5. CHILDREN**
a. NAME (Last, First, Middle Initial)

**b. RELATIONSHIP**

**c. DATE OF BIRTH** (XXXXMMDD)

**d. ADDRESS** (include ZIP Code) AND TELEPHONE NUMBER

Redacted PII

**6a. FATHER NAME** (Last, First, Middle Initial)

**b. ADDRESS** (Include ZIP Code) AND TELEPHONE NUMBER

Redacted PII

**7a. MOTHER NAME** (Last, First, Middle Initial)

Redacted PII

**b. ADDRESS** (Include ZIP Code) AND TELEPHONE NUMBER

**8a. DO NOT NOTIFY DUE TO ILL HEALTH**

None

**b. NOTIFY INSTEAD**

**9a. DESIGNATED PERSON(S)** (Military Only)

None.

**b. ADDRESS** (Include ZIP Code) AND TELEPHONE NUMBER

**10. CONTRACTING AGENCY AND TELEPHONE NUMBER** (Contractors only)

DD FORM 93 (E), JAN 2008                    PREVIOUS EDITION IS OBSOLETE

NAME: CLAIBORNE, DAMON JAHRON SSN: [Redacted PII]

### SECTION 2 - BENEFITS RELATED INFORMATION

| 11a. BENEFICIARY(IES) FOR DEATH GRATUITY (Military only) | b. RELATIONSHIP | c. ADDRESS (Include ZIP Code) AND TELEPHONE NUMBER | d. PERCENTAGE |
|---|---|---|---|

**000443**

RECORD OF EMERGENCY DATA

NAME: CLAIBORNE, DAMON JAHRON SSN: Redacted PII

None

| 12a. BENEFICIARY(IES) FOR UNPAID PAY/ALLOWANCES (Military only) NAME AND RELATIONSHIP | b. ADDRESS (Include ZIP Code) AND TELEPHONE NUMBER | c. PERCENTAGE |
|---|---|---|
| | Redacted PII | |

| 13a. PERSON AUTHORIZED TO DIRECT DISPOSITION (PADD) (Military only) NAME AND RELATIONSHIP | b. ADDRESS (Include ZIP Code) AND TELEPHONE NUMBER |
|---|---|
| | Redacted PII |

14. CONTINUATION/REMARKS

| 15. SIGNATURE OF SERVICE MEMBER/CIVILIAN (Include rank, rate, or grade if applicable) | 16. SIGNATURE OF WITNESS (Include rank, rate or grade as appropriate) | 17. DATE SIGNED (YYYYMMDD) |
|---|---|---|
| | SPC DODSON, STEPHEN | 20090422 |

DD FORM 93 (E) (BACK), JAN 2008

000444

| SERVICE SCHOOL ACADEMIC EVALUATION REPORT | | | DATE (YYYYMMDD) | |
|---|---|---|---|---|
| For use of this form, see AR 623-3; the proponent agency is DCS, G-1. | | | 20090828 | |

| 1. LAST NAME – FIRST NAME – MIDDLE INITIAL | 2. SSN | 3. GRADE | 4. BR | 5. SPECIALTY/MOSC |
|---|---|---|---|---|
| CLAIBORNE, DAMON J. | Redacted PII | SGT | | 92F20 |

| 6. COURSE TITLE | 7. NAME OF SCHOOL | 8. COMP |
|---|---|---|
| PETROLEUM SUPPLY SPECIALIST BNCOC   055-09 | NCO ACADEMY, FORT LEE, VA 23801 | RA |

| 9. THIS IS A REFERRED REPORT, DO YOU WISH TO MAKE COMMENTS? | 10. DURATION OF COURSE (YYYYMMDD) | | |
|---|---|---|---|
| ☐ YES   ☐ NO | From:   20090717 | Thru:   20090828 | |

| 11. PERFORMANCE SUMMARY | 12. DEMONSTRATED ABILITIES |
|---|---|
| *a. ☐ EXCEEDED COURSE STANDARDS<br>(Limited to 20% of class enrollment) | a. WRITTEN COMMUNICATION<br>☒ NOT EVALUATED  ☐ UNSAT  ☐ SAT  ☐ SUPERIOR |
| b. ☒ ACHIEVED COURSE STANDARDS | b. ORAL COMMUNICATION<br>☐ NOT EVALUATED  ☐ UNSAT  ☐ SAT  ☒ SUPERIOR |
| *c. ☐ MARGINALLY ACHIEVED COURSE STANDARDS | c. LEADERSHIP SKILLS<br>☐ NOT EVALUATED  ☐ UNSAT  ☒ SAT  ☐ SUPERIOR |
| *d. ☐ FAILED TO ACHIEVE COURSE STANDARDS | d. CONTRIBUTION TO GROUP WORK<br>☐ NOT EVALUATED  ☐ UNSAT  ☐ SAT  ☒ SUPERIOR |
| *Rating must be supported by comments in ITEM 14. | e. EVALUATION OF STUDENT'S RESEARCH ABILITY<br>☐ NOT EVALUATED  ☐ UNSAT  ☒ SAT  ☐ SUPERIOR<br>(SUPERIOR/UNSAT rating must be supported by comments in ITEM 14 |

| 13. HAS THE STUDENT DEMONSTRATED THE ACADEMIC POTENTIAL FOR SELECTION TO HIGHER LEVEL SCHOOLING/TRAINING? |
|---|
| ☒ YES   ☐ NO   ☐ N/A   (A "NO" response must be supported by comments in ITEM 14) |

14. COMMENTS (This item is intended to obtain a word picture of each student that will accurately and completely portray academic performance, intellectual qualities, and communication skills and abilities. The narrative should also discuss broader aspects of the student's potential, leadership capabilities, moral and overall professional qualities. In particular, comments should be made if the student failed to respond to recommendations for improving academic or personal affairs.)

Demonstrated exceptional communication skills and personal dynamics during the small group process. Possesses the interpersonal skills necessary to build effective teamwork and cohesion among peers. Demonstrated good technical skills during Petroleum Distribution Operations training. Applied effective management process to all given tasks.

PASS 0907    38/195 YES

| 15. AUTHENTICATION | | |
|---|---|---|
| a. TYPED NAME, GRADE, BRANCH, AND TITLE OF RATER<br>MR. SHELDON G. GARDNER<br>SMALL GROUP LEADER | DATE (YYYYMMDD)<br>20090828 | SIGNATURE |
| b. TYPED NAME, GRADE, BRANCH, AND TITLE OF REVIEWING OFFICER<br>ROBERT GREEN, CSM, USA<br>COMMANDANT | DATE (YYYYMMDD)<br>20090828 | SIGNATURE |
| c. DATE (YYYYMMDD)<br>20090828 | SIGNATURE OF RATED SOLDIER | |

DA FORM 1059, MAR 2006          PREVIOUS EDITIONS ARE OBSOLETE.                    APD PE v1.00ES

000445

| SERVICE SCHOOL ACADEMIC EVALUATION REPORT | | | | DATE (YYYYMMDD) |
|---|---|---|---|---|
| For use of this form, see AR 623-3; the proponent agency is DCS, G-1. | | | | 20090714 |

| 1. LAST NAME - FIRST NAME - MIDDLE INITIAL | 2. SSN | 3. GRADE | 4. BR | 5. SPECIALTY/MOSC |
|---|---|---|---|---|
| CLAIBORNE, DAMON J. | Redacted PII | SGT | | 92F20 |

| 6. COURSE TITLE | | 7. NAME OF SCHOOL | 8. COMP |
|---|---|---|---|
| BNCOC COMMON CORE PHASE I | 055-09 | NCO ACADEMY, FORT LEE, VA 23801 | RA |

| 9. THIS IS A REFERRED REPORT, DO YOU WISH TO MAKE COMMENTS? | 10. DURATION OF COURSE (YYYYMMDD) | | |
|---|---|---|---|
| ☐ YES   ☐ NO | From:   20090630 | Thru: | 20090714 |

| 11. PERFORMANCE SUMMARY | 12. DEMONSTRATED ABILITIES |
|---|---|
| *a. ☐ EXCEEDED COURSE STANDARDS (Limited to 20% of class enrollment) | **a. WRITTEN COMMUNICATION** ☒ NOT EVALUATED ☐ UNSAT ☐ SAT ☐ SUPERIOR |
| b. ☒ ACHIEVED COURSE STANDARDS | **b. ORAL COMMUNICATION** ☒ NOT EVALUATED ☐ UNSAT ☐ SAT ☐ SUPERIOR |
| *c. ☐ MARGINALLY ACHIEVED COURSE STANDARDS | **c. LEADERSHIP SKILLS** ☒ NOT EVALUATED ☐ UNSAT ☐ SAT ☐ SUPERIOR |
| *d. ☐ FAILED TO ACHIEVE COURSE STANDARDS | **d. CONTRIBUTION TO GROUP WORK** ☐ NOT EVALUATED ☐ UNSAT ☒ SAT ☐ SUPERIOR |
| *Rating must be supported by comments in ITEM 14. | **e. EVALUATION OF STUDENT'S RESEARCH ABILITY** ☐ NOT EVALUATED ☐ SAT ☒ SUPERIOR (SUPERIOR/UNSAT rating must be supported by comments in ITEM 14 |

| 13. HAS THE STUDENT DEMONSTRATED THE ACADEMIC POTENTIAL FOR SELECTION TO HIGHER LEVEL SCHOOLING/TRAINING? |
|---|
| ☒ YES   ☐ NO   ☐ N/A   (A "NO" response must be supported by comments in ITEM 14) |

14. COMMENTS (This item is intended to obtain a word picture of each student that will accurately and completely portray academic performance, intellectual qualities, and communication skills and abilities. The narrative should also discuss broader aspects of the student's potential, leadership capabilities, moral and overall professional qualities. In particular, comments should be made if the student failed to respond to recommendations for improving academic or personal affairs.)

Achieved a final GPA of 90% or higher and was always well prepared for class. Adapted to the characteristics of the group and provided positive contributions to ensure its success.

EXEMPT IAW DA MSG 091624Z JUN 04
SUBJ: CHANGES TO NCOES    73/195  YES

| 15. AUTHENTICATION | | |
|---|---|---|
| a. TYPED NAME, GRADE, BRANCH, AND TITLE OF RATER | DATE (YYYYMMDD) | SIGNATURE |
| ZERICK DUNSON, SSG, USA SENIOR SMALL GROUP LEADER | 20090714 | |
| b. TYPED NAME, GRADE, BRANCH, AND TITLE OF REVIEWING OFFICER | DATE (YYYYMMDD) | SIGNATURE |
| JIMMY L. PEGUES, CSM, USA COMMANDANT | 20090714 | |
| c. DATE (YYYYMMDD) | SIGNATURE OF RATED SOLDIER | |
| 20090714 | | |

DA FORM 1059, MAR 2006          PREVIOUS EDITIONS ARE OBSOLETE.          APD PE v1 00ES

04296514

## NCO EVALUATION REPORT
For use of this form, see AR 623-3 ; the proponent agency is DCS, G-1.

FOR OFFICIAL USE ONLY (FOUO)
SEE PRIVACY ACT STATEMENT
IN AR 623-3.

### PART I - ADMINISTRATIVE DATA

| a. NAME (Last, First, Middle Initial) | b. SSN | c. RANK | d. DATE OF RANK | e. PMOSC |
|---|---|---|---|---|
| CLAIBORNE, DAMON J. | Redacted PII | SGT ( ) | 20070701 | 92F2O |

| f.1. UNIT | ORG. | STATION | ZIP CODE OR APO, | MAJOR COMMAND | f.2. STATUS CODE | g. REASON FOR SUBMISSION |
|---|---|---|---|---|---|---|
| HHC, 49TH GROUP | | FORT LEE, VA | 23801 | FORSCOM | | 02    Annual |

| h. PERIOD COVERED | | i. RATED MONTHS | j. NON-RATED CODES | k. NO. OF ENCL | l. RATED NCO'S EMAIL ADDRESS (.gov or .mil) | m. UIC | n. CMD CODE | o. PSB CODE |
|---|---|---|---|---|---|---|---|---|
| FROM | THRU | | | | | | | |
| YEAR MONTH DAY | YEAR MONTH DAY | | | | Redacted PII | | | |
| 20080305 | 20090304 | 12 | | | | WHE2AA | FC | UA61 |

### PART II - AUTHENTICATION

| a. NAME of RATER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| SMITH, ERASTUS B. | Redacted PII | SMITH.ERASTUS.BYRON. Redacted PII | 20090420 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | RATER'S AKO EMAIL ADDRESS (.gov. or .mil) |
|---|---|---|---|---|
| SFC | 92F40 | HHC, 49TH GROUP | OPERATIONS SGT | Redacted PII |

| b. NAME OF SENIOR RATER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| KING, PAUL J. | Redacted PII | KING.PAUL.JULIUS. Redacted PII | 20090420 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | SENIOR RATER'S AKO EMAIL ADDRESS (.gov. or .mil) |
|---|---|---|---|---|
| MSG | 74D5M | HHC, 49TH GROUP | S3 NCOIC | Redacted PII |

| c. NAME OF REVIEWER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| ORTIZ, MOISES | Redacted PII | ORTIZ.MOISES. Redacted PII | 20090420 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | REVIEWER'S AKO EMAIL ADDRESS (.gov. or .mil) |
|---|---|---|---|---|
| CPT | | HHC, 49TH GROUP | SPO OIC | Redacted PII |

d. [X] CONCUR WITH RATER AND SENIOR RATER EVALUATIONS      [ ] NONCONCUR WITH RATER AND/OR SENIOR RATER EVAL (See attached comments)

| e. RATED NCO. I understand my signature does not constitute agreement or disagreement with the evaluations of the rater and senior rater. I further understand my signature verifies that the administrative data in Part I, the rating officials in Part II, the duty description to include the counseling dates in Part III, and the APFT and height/weight entries in Part IVc are correct. I have seen the completed report. I am aware of the appeals process of AR 623-3. | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|
| | CLAIBORNE.DAMON.JAHRON. Redacted PII | 20090421 |

### PART III - DUTY DESCRIPTION (Rater)

| a. PRINCIPAL DUTY TITLE | b. DUTY MOSC |
|---|---|
| Readiness NCO | 92F2O |

c. DAILY DUTIES AND SCOPE (To include, as appropriate, people, equipment, facilities and dollars)
Serves as a S-3 readiness NCO for a FORSCOM Sustainment Brigade consisting of a Headquarters Company, Petroleum Pipeline and Terminal Operating Battalion and a Combat Sustainment Support Battalion totaling over 2,200 Soldiers; coordinates and manages Air Assault, WLC and Installation level schools from subordinate battalions; responsible for mobilization for subordinate units to conduct garrison and mandated training, assist with the coordination of unit FTXs, reintegration and deployment training; coordinates training resources with installation level agencies.

d. AREAS OF SPECIAL EMPHASIS
Sergeant Time Training; South Bound Trooper VII; Brigade TOCEX; Air Assault and WLC Liaison

e. APPOINTED DUTIES
Safety NCO; Quality Assurance NCO; Bus Driver; BOSS representative

| f. COUNSELING DATES | INITIAL | LATER | LATER | LATER |
|---|---|---|---|---|
| | 20080430 | 20080731 | 20081030 | 20090130 |

### PART IV - ARMY VALUES/ATTRIBUTES/SKILLS/ACTIONS (Rater)

a. ARMY VALUES. Check either "YES" or "NO". (Bullet Comments are mandatory. Substantive bullet comments are required for "NO" entries.)

| | | | YES | NO |
|---|---|---|---|---|
| | | 1. LOYALTY: Bears true faith and allegiance to the U. S. Constitution, the Army, the unit, and other Soldiers. | X | |
| **V** | Loyalty | 2. DUTY: Fulfills their obligations. | X | |
| | Duty | 3. RESPECT/EO/EEO: Treats people as they should be treated. | X | |
| **A** | Respect | 4. SELFLESS-SERVICE: Puts the welfare of the nation, the Army, and subordinates before their own. | X | |
| | Selfless-Service | 5. HONOR: Lives up to all the Army values. | X | |
| **L** | | 6. INTEGRITY: Does what is right - legally and morally. | X | |
| **U** | | 7. PERSONAL COURAGE: Faces fear, danger, or adversity (physical and moral). | X | |
| **E** | Honor | Bullet comments | | |
| **S** | Integrity | o possesses the moral courage to always do what is right | | |
| | Personal Courage | o displays unwavering dedication to Soldiers and unit | | |
| | | o lives by the Soldier Creed and the Creed of the Noncommissioned Officer | | |

DA FORM 2166-8, MAR 2006      PREVIOUS EDITIONS ARE OBSOLETE.      Page 1 of 2
APD PE v6.00ES

| RATED NCO'S NAME (Last, First, Middle Initial) | | | SSN | THRU DATE |
|---|---|---|---|---|
| CLAIBORNE, DAMON J. | | | Redacted PII | 20090304 |

**PART IV (Rater) - VALUES/NCO RESPONSIBILITIES**    *Bullet comments are mandatory. Specific bullet comments are required for "EXCELLENCE" or "NEEDS IMPROVEMENT."*

**b. COMPETENCE**
- o Duty proficiency; MOS competency
- o Technical & tactical; knowledge, skills, and abilities
- o Sound judgment
- o Seeking self-improvement; always learning
- o Accomplishing tasks to the fullest capacity; committed to excellence

| EXCELLENCE (Exceeds std) | SUCCESS (Meets std) | NEEDS IMPROVEMENT (Some) (Much) |
|---|---|---|
| X | | |

o monitored, reviewed, and analyzed all readiness reports from subordinate units maintaining a 99.9% accuracy rate on training packets

o provided assistance and guidance in the preparation of over 50 Air Assault and WLC packets to the 101st Airborne Div (AASLT) G3 Schools' section

o dedicated to mission accomplishment; clearly demonstrated the ability to accomplish all assigned mission in an exceptional manner

**c. PHYSICAL FITNESS & MILITARY BEARING**
- o Mental and physical toughness
- o Endurance and stamina to go the distance
- o Displaying confidence and enthusiasm; looks like a Soldier

| APFT | PASS | 20081015 | HEIGHT/WEIGHT | 74 / 191 | YES |
|---|---|---|---|---|---|

| EXCELLENCE (Exceeds std) | SUCCESS (Meets std) | NEEDS IMPROVEMENT (Some) (Much) |
|---|---|---|
| | X | |

o maintained a 275 average on the Army Physical Fitness Test

o instilled confidence and pride in Soldiers through mentorship

o represents the embodiment of a Soldier that is willing to take charge of any mission that is assigned to him

**d. LEADERSHIP**
- o Mission first
- o Genuine concern for Soldiers
- o Instilling the spirit to achieve and win
- o Setting the example; Be, Know, Do

| EXCELLENCE (Exceeds std) | SUCCESS (Meets std) | NEEDS IMPROVEMENT (Some) (Much) |
|---|---|---|
| X | | |

o flawless performance in support of South Bound Trooper VIII for a joint Canadian Exercise by the Group Commander

o coordinated and planned a special Air Assault class for over 150 Soldiers

o supervised 100% of screening for school applications, request for orders and the request for temporary duty for completeness and correctness for over 200 Soldiers

**e. TRAINING**
- o Individual and team
- o Mission focused; performance oriented
- o Teaching Soldiers how; common tasks, duty-related skills
- o Sharing knowledge and experience to fight, survive and win

| EXCELLENCE (Exceeds std) | SUCCESS (Meets std) | NEEDS IMPROVEMENT (Some) (Much) |
|---|---|---|
| | X | |

o scheduled and processed over 100 Soldiers for Air assault and WLC class seats with no discrepancies

o developed a SOP for WLC and Air Assault processing that enhanced the section overall performance and duty related skills

o assisted in developing the Group organizational day activities that boosted the overall morale of the Group

**f. RESPONSIBILITY & ACCOUNTABILITY**
- o Care and maintenance of equipment/facilities
- o Soldier and equipment safety
- o Conservation of supplies and funds
- o Encouraging Soldiers to learn and grow
- o Responsible for good, bad, right & wrong

| EXCELLENCE (Exceeds std) | SUCCESS (Meets std) | NEEDS IMPROVEMENT (Some) (Much) |
|---|---|---|
| X | | |

o maintained 100% accuracy and accountability of all Soldiers and equipment to and from WLC and Air Assault schools by traveling over 15,000 miles

o volunteered and dedicated his time as the Group Boss representative; maintaining the welfare of the 49th Group Soldiers

o continuously advises Soldiers on ways to enhance their careers through education, hard work and doing the right thing

**PART V - OVERALL PERFORMANCE AND POTENTIAL**

**a. RATER.** Overall potential for promotion and/or service in positions of greater responsibility.

| AMONG THE BEST | FULLY CAPABLE | MARGINAL |
|---|---|---|
| X | | |

**b. RATER.** List 3 positions in which the rated NCO could best serve the Army at his/her current or next higher grade.

Section Sergeant

Squad Leader

Recruiter

**e. SENIOR RATER BULLET COMMENTS**

o promote head of peers

o send to BNCOC now

o unlimited potential, assign to positions of increased responsibility

o performance this rating period was superb; incorporates Army values as his own

**c. SENIOR RATER.** Overall performance

| | | | X | | | |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | |
| | | | Successful | | Fair | Poor |

**d. SENIOR RATER.** Overall potential for promotion and/or service in positions of greater responsibility.

| | | | X | | | |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | |
| | | | Superior | | Fair | Poor |

DA FORM 2166-8, MAR 2006

000448

19

IMMEDIATE REENLISTMENT

## ENLISTMENT/REENLISTMENT DOCUMENT
## ARMED FORCES OF THE UNITED STATES

### PRIVACY ACT STATEMENT

**AUTHORITY:**  5 U.S.C. 3331; 10 U.S.C. 113, 136, 502, 504, 505, 506, 507, 508, 509, 510, 513, 515, 516, 518, 519, 972, 978, 2107, 2107a, 3253 3258, 3262, 5540, 8252, 8253, 8257, 8258, 12102, 12103, 12104, 12105, 12106, 12107, 12108, 12301, 12302, 12304, 12305, 12405; 14 USC 351, 632; 32 U.S.C. 301, 302, 303, 304; and Executive Order 9397, November 1943 (SSN).

**PRINCIPAL PURPOSE(S):**  To record enlistment or reenlistment into the U.S. Armed Forces.  This information becomes a part of the subject's military personnel records which are used to document promotion, reassignment, training, medical support, and other personnel management actions.  The purpose of soliciting the SSN is for positive identification.

**ROUTINE USE(S):**  This form becomes a part of the Service's Enlisted Master File and Field Personnel File.  All uses of the form are internal to the relevant Service.

**DISCLOSURE:**  Voluntary; however, failure to furnish personal identification information may negate the enlistment/reenlistment application.

### A. ENLISTEE/REENLISTEE IDENTIFICATION DATA

| 1. NAME (Last, First, Middle) | 2. SOCIAL SECURITY NUMBER |
|---|---|
| CLAIBORNE DAMON JAHRON | Redacted PII |

| 3. HOME OF RECORD (Street, City, County, State, Country, ZIP Code) | 4. PLACE OF ENLISTMENT/REENLISTMENT (Mil. Installation, City, State) |
|---|---|
| Redacted PII | HHC 49TH GROUP<br>FORT LEE, VA 23801 |

| 5. DATE OF ENLISTMENT/ REENLISTMENT (YYYYMMDD) | 6. DATE OF BIRTH (YYYYMMDD) | 7. PREV MIL SVC UPON ENL/REENLIST | YEARS | MONTHS | DAYS |
|---|---|---|---|---|---|
| 2008 JUN 25 | Redacted PII | a. TOTAL ACTIVE MILITARY SERVICE | 13 | 04 | 27 |
| | | b. TOTAL INACTIVE MILITARY SERVICE | 05 | 00 | 00 |

### B. AGREEMENTS

8.  I am enlisting/reenlisting in the  United States  (list branch of service)          ARMY
this date for          04          years and          0          weeks beginning in pay grade          E5          of which
    04     years and          0          weeks is considered an Active Duty Obligation, and          0          years and
     0          weeks will be served in the Reserve Component of the Service in which I have enlisted.  If this is an initial enlistment, I must serve a total of eight (8) years, unless I am sooner discharged or otherwise extended by the appropriate authority.  This eight year service requirement is called the Military Service Obligation.  The additional details of my enlistment/ reenlistment are in Section C and Annex(es) (list name of Annex(es) and describe)
                A AND B

**a. FOR ENLISTMENT IN A DELAYED ENTRY/ENLISTMENT PROGRAM (DEP):**
I understand that I am joining the DEP.  I understand that by joining the DEP I am enlisting in the Ready Reserve component of the United States (list branch of service)                                          for a period not to exceed
365 days, unless this period of time is otherwise extended by the Secretary concerned.  While in the DEP, I understand that I am in a nonpay status and that I am not entitled to any benefits or privileges as a member of the Ready Reserve, to include, but not limited to medical care, liability insurance, death benefits, education benefits, or disability retired pay if I incur a physical disability.  I understand that the period of time while I am in the DEP is NOT creditable for pay purposes upon entry into a pay status.  However, I also understand that the period of time while I am in the DEP is counted toward fulfillment of my military service obligation described in paragraph 10, below.  While in the DEP, I understand that I must maintain my current qualifications and keep my recruiter informed of any changes in my physical or dependency status, qualifications, and mailing address.  I understand that I WILL be ordered to active duty unless I report to the place shown in item 4 above by      (list date (YYYYMMDD))  _____
for enlistment in the Regular component of the United States     (list branch of service)  _____
for not less than _____ years and _____ weeks.
**b. REMARKS:**     (If none, so state.)

(1)  REGULAR ARMY REENLISTMENT OPTION (A000) RCN: 2464676.

(2)  NO BONUS ENTITLEMENT.

(3)  NO WAIVER.

(4)  2ND REENLISTMENT.

**c.** The agreements in this section and attached annex(es) are all the promises made to me by the Government.     **ANYTHING ELSE**
ANYONE HAS PROMISED ME IS NOT VALID AND WILL NOT BE HONORED.
(Initials of Enlistee/Reenlistee) _____          (Continued on Page 2)

**DD FORM 4/1, OCT 2007**          PREVIOUS EDITION IS OBSOLETE.          Adobe Professional 7.0

## C. PARTIAL STATEMENT OF EXISTING UNITED STATES LAWS

**9. FOR ALL ENLISTEES OR REENLISTEES:**
I understand that many laws, regulations, and military customs will govern my conduct and require me to do things under this agreement that a civilian does not have to do. I also understand that various laws, some of which are listed in this agreement, directly affect this enlistment/reenlistment agreement. Some examples of how existing laws may affect this agreement are explained in paragraphs 10 and 11. I understand that I cannot change these laws but that Congress may change these laws, or pass new laws, at any time that may affect this agreement, and that I will be subject to those laws and any changes they make to this agreement. I further understand that:

**a.** My enlistment/reenlistment agreement is more than an employment agreement. It effects a change in status from civilian to military member of the Armed Forces. As a member of the Armed Forces of the United States, I will be:

**(1)** Required to obey all lawful orders and perform all assigned duties.

**(2)** Subject to separation during or at the end of my enlistment. If my behavior fails to meet acceptable military standards, I may be discharged and given a certificate for less than honorable service, which may hurt my future job opportunities and my claim for veteran's benefits.

**(3)** Subject to the military justice system, which means, among other things, that I may be tried by military courts-martial.

**(4)** Required upon order to serve in combat or other hazardous situations.

**(5)** Entitled to receive pay, allowances, and other benefits as provided by law and regulation.

**b.** Laws and regulations that govern military personnel may change without notice to me. Such changes may affect my status, pay, allowances, benefits, and responsibilities as a member of the Armed Forces **REGARDLESS** of the provisions of this enlistment/reenlistment document.

**10. MILITARY SERVICE OBLIGATION, SERVICE ON ACTIVE DUTY AND STOP-LOSS FOR ALL MEMBERS OF THE ACTIVE AND RESERVE COMPONENTS, INCLUDING THE NATIONAL GUARD.**

**a. FOR ALL ENLISTEES:**    If this is my initial enlistment, I must serve a total of eight (8) years, unless I am sooner discharged or otherwise extended by the appropriate authority. This eight year service requirement is called the Military Service Obligation. Any part of that service not served on active duty must be served in the Reserve Component of the service in which I have enlisted. If this is a reenlistment, I must serve the number of years specified in this agreement, unless I am sooner discharged or otherwise extended by the appropriate authority. Some laws that affect when I may be ordered to serve on active duty, the length of my service on active duty, and the length of my service in the Reserve Component, even beyond the eight years of my Military Service Obligation, are discussed in the following paragraphs.

**b.** I understand that I can be ordered to active duty at any time while I am a member of the DEP. In a time of war, my enlistment may be extended without my consent for the duration of the war and for six months after its end (10 U.S.C. 506, 12103(c)).

**c.** As a member of a Reserve Component of an Armed Force, in time of war or of national emergency declared by the Congress, I may, without my consent, be ordered to serve on active duty, for the entire period of the war or emergency and for six (6) months after its end (10 U.S.C. 12301(a)). My enlistment may be extended during this period without my consent (10 U.S.C. 12103(c)).

**d.** As a member of the Ready Reserve (to include Delayed Entry Program), in time of national emergency declared by the President, I may, without my consent, be ordered to serve on active duty, and my military service may be extended without my consent, for not more than 24 consecutive months (10 U.S.C. 12302). My enlistment may be extended during this period without my consent (see paragraph 10g).

**e.** As a member of the Ready Reserve, I may, at any time and without my consent, be ordered to active duty to complete a total of 24 months of active duty, and my enlistment may be extended so I can complete the total of 24 months of active duty, if:

**(1)** I am not assigned to, or participating unsatisfactorily in, a unit of the Ready Reserve; and

**(2)** I have not met my Reserve obligation; and

**(3)** I have not served on active duty for a total of 24 months (10 U.S.C. 12303).

**f.** As a member of the Selected Reserve or as a member of the Individual Ready Reserve mobilization category, when the President determines that it is necessary to augment the active forces for any operational mission or for certain emergencies, I may, without my consent, be ordered to active duty for not more than 365 days (10 U.S.C. 12304). My enlistment may be extended during this period without my consent (see paragraph 10g).

**g.** During any period members of a Reserve component are serving on active duty pursuant to an order to active duty under authority of 10 U.S.C. 12301, 12302, or 12304, the President may suspend any provision of law relating to my promotion, retirement, or separation from the Armed Forces if he or his designee determines I am essential to the national security of the United States. Such an action may result in an extension, without my consent, of the length of service specified in this agreement. Such an extension is often called a "stop-loss" extension (10 U.S.C. 12305).

**h.** I may, without my consent, be ordered to perform additional active duty training for not more than 45 days if I have not fulfilled my military service obligation and fail in any year to perform the required training duty satisfactorily. If the failure occurs during the last year of my required membership in the Ready Reserves, my enlistment may be extended until I perform that additional duty, but not for more than six months (10 U.S.C. 10148).

**11. FOR ENLISTEES/REENLISTEES IN THE NAVY, MARINE CORPS, OR COAST GUARD:**    I understand that if I am serving on a naval vessel in foreign waters, and my enlistment expires, I will be returned to the United States for discharge as soon as possible consistent with my desires. However, if essential to the public interest, I understand that I may be retained on active duty until the vessel returns to the United States. If I am retained under these circumstances, I understand I will be discharged not later than 30 days after my return to the United States; and, that except in time of war, I will be entitled to an increase in basic pay of 25 percent from the date my enlistment expires to the date of my discharge.

**12. FOR ALL MALE APPLICANTS:**    Completion of this form constitutes registration with the Selective Service System in accordance with the Military Selective Service Act. Incident thereto the Department of Defense may transmit my name, permanent address, military address, Social Security Number, and birthdate to the Selective Service System for recording as evidence of the registration.

*(Initials of Enlistee/Reenlistee)*    D.C.

**DD FORM 4/1 (PAGE 2), OCT 2007**

| NAME OF ENLISTEE/REENLISTEE  *(Last, First, Middle)* | SOCIAL SECURITY NO. OF ENLISTEE/REENLISTEE |
|---|---|
| CLAIBORNE DAMON JAHRON | Redacted PII |

## D. CERTIFICATION AND ACCEPTANCE

**13a.** My acceptance for enlistment is based on the information I have given in my application for enlistment. If any of that information is false or incorrect, this enlistment may be voided or terminated administratively by the Government or I may be tried by a Federal, civilian, or military court and, if found guilty, may be punished.

I certify that I have carefully read this document, including the partial statement of existing United States laws in Section C and how they may affect this agreement. Any questions I had were explained to my satisfaction. I fully understand that only those agreements in Section B and Section C of this document or recorded on the attached annex(es) will be honored. I also understand that any other promises or guarantees made to me by anyone that are not set forth in Section B or the attached annex(es) are not effective and will not be honored.

| b. SIGNATURE OF ENLISTEE/REENLISTEE | c. DATE SIGNED  *(YYYYMMDD)* |
|---|---|
| | 2008 JUN 25 |

## 14. SERVICE REPRESENTATIVE CERTIFICATION

**a.** On behalf of the United States  *(list branch of service)*    ARMY

I accept this applicant for enlistment. I have witnessed the signature in item 13b to this document. I certify that I have explained that only those agreements in Section B of this form and the attached Annex(es) will be honored, and any other promises made by any person are not effective and will not be honored.

| b. NAME *(Last, First, Middle)* | c. PAY GRADE | d. UNIT/COMMAND NAME |
|---|---|---|
| WILLIAMS, CHRISTOPHER L | E7 | 49TH GROUP |
| e. SIGNATURE | f. DATE SIGNED *(YYYYMMDD)* | g. UNIT/COMMAND ADDRESS  *(City, State, ZIP Code)* |
| | 2008 JUN 25 | FORT LEE, VA 23801 |

## E. CONFIRMATION OF ENLISTMENT OR REENLISTMENT

**15. IN THE ARMED FORCES EXCEPT THE NATIONAL GUARD (ARMY OR AIR):**

I, _____ DAMON JAHRON CLAIBORNE _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic;  that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God.

**16. IN THE NATIONAL GUARD (ARMY OR AIR):**

I, _____ do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the State of _____ against all enemies, foreign and domestic;  that I will bear true faith and allegiance to the same;  and that I will obey the orders of the President of the United States and the Governor of _____ and the orders of the officers appointed over me, according to law and regulations. So help me God.

**17. IN THE NATIONAL GUARD (ARMY OR AIR):**

I do hereby acknowledge to have voluntarily enlisted/reenlisted this _____ day of _____,
in the _____ National Guard and as a Reserve of the United States  *(list branch of service)*
_____ with membership in the _____
National Guard of the United States for a period of _____ years, _____ months, _____ days, under the conditions prescribed by law, unless sooner discharged by proper authority.

| 18.a. SIGNATURE OF ENLISTEE/REENLISTEE | b. DATE SIGNED  *(YYYYMMDD)* |
|---|---|
| | 2008 JUN 25 |

## 19. ENLISTMENT/REENLISTMENT OFFICER CERTIFICATION

**a.** The above oath was administered, subscribed, and duly sworn to (or affirmed) before me this date.

| b. NAME *(Last, First, Middle)* | c. PAY GRADE | d. UNIT/COMMAND NAME |
|---|---|---|
| DAVIS, THEODORE, JR. | O3 | HHC 49TH GROUP |
| e. SIGNATURE | f. DATE SIGNED *(YYYYMMDD)* | g. UNIT/COMMAND ADDRESS  *(City, State, ZIP Code)* |
| | 2008 JUN 25 | FORT LEE, VA 23801 |

*(Initials of Enlistee/Reenlistee)*  *D.C.*

**DD FORM 4/2, OCT 2007**          PREVIOUS EDITION IS OBSOLETE.

000451

# STATEMENTS FOR ENLISTMENT
### *(PARTS I THROUGH IV)*
For use of this form, see AR 601-280; the proponent agency is ODCSPER.

## DATA REQUIRED BY THE PRIVACY ACT OF 1974

| | |
|---|---|
| AUTHORITY: | Sections 504, 505, 508, and 510, Title 10, USC. |
| PRINCIPAL PURPOSE: | To determine eligibility for reenlistment. |
| ROUTINE USES: | Information may be referred to appropriate authorities if disciplinary action or discharge for fraudulent enlistment/reenlistment is appropriate. |
| DISCLOSURE: | Disclosure of personal information is voluntary, however, failure to furnish information requested may result in denial of reenlistment in the US Army. |

## PART I - GENERAL STATEMENT OF UNDERSTANDING
### *TO BE COMPLETED BY ALL APPLICANTS FOR REENLISTMENT IN THE REGULAR ARMY*

1. ACKNOWLEDGEMENT:  In connection with my reenlistment in the Regular Army, I hereby acknowledge that:

   a.  All promises made to me are contained in Item 10 of DD Form 4, my reenlistment agreement and Part II of this statement.

   b.  I have not been guaranteed attendance at an MOS-producing Army service school or Airborne training unless the title of the school course or Airborne training has been entered in Item 10, DD Form 4.

   c.  Should I make any material omission or misstatement of fact in connection with any of my enlistment documents, (1) I may be subject to early separation from this enlistment, or (2) I will complete, if permitted, the period for which I enlisted in any assignment deemed appropriate in accordance with the needs of the Army.

   d.  Should I choose an option which requires a security clearance and I am not granted such clearance after I have enlisted, or my granted clearance is revoked after I have enlisted, I agree to accept any assignment in accordance with the needs of the Army and I will complete the period for which I enlisted.

   e.  Law violations for which I have been convicted or have had adverse adjudications as a juvenile or youthful offender may be cause for denial of security clearance.

   f.  My choice of initial enlistment option shown in item 10 of my DD Form 4 does not constitute any guarantee that a substantial part of my enlistment will be served in the option, and the needs of the service may result in my transfer at any time          *(other than as may be provided by the specific option selected)*    to any other assignment within the continental United States or to an oversea command. I am aware that due to the needs of the Army I may be subject to involuntary retraining and/or reclassification.

   g.  Should my enlistment involve a commitment for specialized training or selective assignment, conduct on my part occurring after my enlistment which results in disciplinary action may be just cause for my transfer to any other assignment within the continental United States or to an oversea command.

   h.  My acceptance for enlistment carries no promise whatsoever relative to furnishing transportation for dependents to oversea commands or to the furnishing of family quarters either in oversea commands or in the continental United States.

   i.  If, after my enlistment for a specific option, I should fail to meet required qualifications which cannot be determined prior to my enlistment, I understand that I will not be offered another enlistment option, but will be trained and assigned in accordance with the needs of the Army and will be required to complete the term of service for which I enlisted.

   j.  If, after my enlistment in the Regular Army, I should waive my initial enlistment option as listed in Item 10, DD Form 4, and in Part II of my statement for enlistment for any reason whatsoever, this initial option will not be reinstated at a later date.

   k.  I am not consciously opposed by reason of religious training or belief, to bearing arms or to participation, or training for war in any form.

   l.  I am aware that in the event of armed conflict involving the United States, the Secretary of the Army may declare null and void any portion of my enlistment option pertaining to training, assignment, or duty, if he determines such action to be necessary.

## PART II - IN-SERVICE REENLISTMENT OPTION
### *TO BE COMPLETED BY APPLICANTS REENLISTING FOR A SPECIFIC OPTION*

2.  In connection with my reenlistment in the Regular Army for the _____ REGULAR ARMY _____
Reenlistment option, I hereby acknowledge that provided I meet required prerequisites I will be assigned as follows:
IN ACCORDANCE WITH THE NEEDS OF THE ARMY    Ro

3.  I have read and understand the provisions of the reenlistment option for which I am reenlisting.  Furthermore, to avoid misunderstandings, I have recorded below in my own words and handwriting all spoken and written promises that have been made to me in connection with my enlistment in the Regular Army    *(at end of statement, applicant will print the word "END")*.

  *Regular Army   IN Accordance  with  the  needs  of  the  Army*   End  D.C.

4.  If reenlisting for the CONUS Station of Choice Reenlistment Option, I understand that my stabilization will commence on date of reenlistment or upon arrival at new station, whichever is later.  I further understand that if I am subsequently placed on TDY in excess of 30 days, my stabilization will be extended by the number of days in excess of the initial 30-day period, unless I voluntarily waive my stabilization.  It is also understood that if HQDA determines that in order to meet the operational needs of the Army, the unit or subordinate element must be deployed from the parent organization, I must deploy with the unit and no grounds for a broken reenlistment commitment will exist.

5. In the event my enlistment commitment cannot be fulfilled, the alternatives available to me will be as provided in AR 635-200, as of the date of my claim of unfulfilled enlistment commitment or erroneous enlistment is submitted. I understand that I will have a period of 30 days to elect an alternative or to request other training or assignment from the date I am advised that my selected option cannot be fulfilled or, where not formally advised, from the date I discover or should have discovered the grounds for submitting a claim. This period may be extended by the general courts-martial convening authority when necessary to determine the availability of my selected alternative. If I make no election within that period, my claim will be deemed to have been waived. I may withdraw any request for training or reassignment prior to approval and elect another alternative, but not thereafter.

### PART III - STATEMENT OF LAW VIOLATIONS AND PREVIOUS CONDITIONS

6. Complete the statement in a below and answer questions b through f as appropriate, by placing a checkmark under the "YES" or "NO" column. In-service personnel immediately enlisting will list those violations occurring during current term of service, and offenses not previously revealed.

   a. I have read or have had explained to me, paragraphs 2-4 and 7-4, AR 604-10, which set forth the criteria *(reasons)* for discharge and types of discharge and certify that I ☐ have ☑ have not *(check one)* engaged in disloyal or subversive activities as defined herein.

|  | YES | NO |
|---|---|---|
| b. Have you ever been rejected for enlistment or induction in any of the Armed Forces to include failure of the mental examinations administered by any MEPS or been discharged from previous service under other than honorable conditions, under Personnel Security Regulations, or by reason of unsuitability, or undesirable habits or traits of character, or for medical reasons? |  | ✗ |
| c. Have you ever been arrested, cited, charged or held by Federal, State, County, City or other law enforcement authorities or by Juvenile Court or Juvenile Probation Officials for any violation of any Federal Law, State Law, County or Municipal Law, Regulation or Ordnance? | ✗ |  |
| d. Have you ever been convicted of a felony or any other offense, or adjudicated a youthful or juvenile delinquent? | ✗ |  |
| e. Have you ever been imprisoned under sentence of any court? | ✗ |  |
| f. Are you now or have you ever been on parole, probation supervision, under suspended sentence, or are you awaiting final action of charges against you? | ✗ |  |

7. In the space below, give full details for any of the above questions to which you answered "YES". *(If additional space is required, continue on a separate sheet of paper and attached securely to this form)*

| a. REF ITEM | b. OFFENSE (s) | c. DATE AND PLACE | d. DISPOSITION |
|---|---|---|---|
| (C.) | Fail to Reg Fire | 6 JAN 06 Pierce Cnty WA | Dismissed |
| (C.) | Child Mol. in 2nd degree | mar 06 kitsap cnty WA. | pled reduced / convicted |
| (d.) e. | in reference to 2nd Item (C.) above (2nd paragraph) | mar 06 kitsap cnty WA. | reference Item Above |
| f. | in reference to above Item (C) | 6 JAN 06 kitsap cnty WA. | 5 months Remaining |

8. **UNDERSTANDING:** I understand that should I intentionally conceal or misrepresent any information regarding my record of arrests or convictions or juvenile court adjudications, I may later be subject to disciplinary action under the Uniform Code of Military Justice (UCMJ) and/or discharged from the Service under other than honorable conditions.

### PART IV - DEPENDENCY STATEMENT
#### TO BE COMPLETED BY ALL APPLICANTS

9. Relationship and age of all persons who are dependent upon me for support are recorded below *(If none, so state).*

| RELATIONSHIP | AGE | RELATIONSHIP | AGE | RELATIONSHIP | AGE |
|---|---|---|---|---|---|
| Redacted PII |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

10. **UNDERSTANDING:** I understand that if I am selected for enlistment in the Regular Army, I will be expected to accept such assignments as are in the best interest of the Service regardless of marital status and/or responsibility for dependents; and that it is my responsibility to make appropriate arrangements for the care of my dependents should I be required to perform duty in an area where dependents are not authorized.

11. I have read and understand the meaning of all statements contained in Parts I through IV of the form and agree to all conditions set forth therein. I certify that all answers to questions, statements, and entries on the form are true, correct, and complete, and that the Career Counselor has informed me that should I intentionally conceal any information required above, I may later be subject to disciplinary action or discharge upon its discovery.

| 12. SIGNATURE OF APPLICANT | 13. DATE | 14. SIGNATURE AND TITLE OF WITNESS |
|---|---|---|
| *[signature]* | 2008 JUNE 25 | *[signature]*, SFC Career Counselor |

FORM 3286 DEC 94

000453

## REQUEST FOR REENLISTMENT OR EXTENSION IN THE REGULAR ARMY

For use of this form see AR 601-280; the proponent agency is ODCSPER.

### SECTION I - SOLDIER'S REQUEST

| 1. TO | 2. FROM |
|---|---|
| COMMANDER<br>HHC 49TH GROUP<br>FORT LEE, VA 23801 | SGT DAMON JAHRON CLAIBORNE<br>Redacted PII<br>HHC 49TH GROUP<br>FORT LEE, VA 23801 |

3. REQUEST I BE AUTHORIZED TO *(Select one)*

☒ a. REENLIST IN THE ACTIVE COMPONENT.

☐ b. EXTEND MY ENLISTMENT FOR THE FOLLOWING REASON: _____

4. ACCRUED LEAVE OPTIONS *(Select one)*

☐ a. I DESIRE TO CASH IN _____ DAYS OF ACCRUED LEAVE.

☒ b. I DO NOT DESIRE TO CASH IN ACCRUED LEAVE.

☐ c. I AM EXTENDING MY PRESENT ENLISTMENT AND HAVE BEEN COUNSELED ON CASHING IN ACCRUED LEAVE.

| 5. DATE | 6. SIGNATURE |
|---|---|
| 2008 JUNE 25 | Damon Jahron Claiborne |

### SECTION II - COMMANDER'S CERTIFICATION

7. COMMANDER'S DETERMINATION OF QUALIFICATION *(Select one)*

☒ a. SOLDIER IS FULLY QUALIFIED FOR REQUESTED ACTION.

☐ b. SOLDIER IS NOT FULLY QUALIFIED AND REQUIRES WAIVER. *(Select 8b or 8c(1) below)*

☐ c. SOLDIER IS FULLY QUALIFIED, BUT IS NOT RECOMMENDED FOR FURTHER SERVICE. *(Select 8c(2) below)*

8. COMMANDER'S DETERMINATION/RECOMMENDATION FOR CONTINUED SERVICE WITHIN THE ARMY *(Select one)*

☒ a. APPROVED.

☐ b. RECOMMENDED APPROVAL. DA FORM 3072 IS ATTACHED.

☐ c. DISAPPROVED.

☐ (1) I DISAPPROVE THE SOLDIER'S REQUEST FOR WAIVER OF DISQUALIFICATION.

☐ (2) I HAVE INITIATED A BAR TO REENLISTMENT UNDER THE PROVISIONS OF CHAPTER 8, AR 601-280.

9. TYPED NAME, RANK, AND BRANCH OF COMMANDER

THEODORE DAVIS, JR., CPT, LG

| 10. SIGNATURE | 11. DATE |
|---|---|
| | 2008 JUNE 25 |

DA FORM 3340-R, DEC 94          EDITION OF MAY 88 IS OBSOLETE
ANNEX B

000454

03745233

## NCO EVALUATION REPORT
For use of this form, see AR 623-3 ; the proponent agency is DCS, G-1.

FOR OFFICIAL USE ONLY (FOUO)
SEE PRIVACY ACT STATEMENT
IN AR 623-3.

### PART I - ADMINISTRATIVE DATA

| a. NAME (Last, First, Middle Initial) | b. SSN | c. RANK | d. DATE OF RANK | e. PMOSC |
|---|---|---|---|---|
| CLAIBORNE, DAMON J. | Redacted PII | SGT ( ) | 20070701 | 92F20H7 |

| f.1. UNIT    ORG.    STATION    ZIP CODE OR APO,    MAJOR COMMAND | f.2. STATUS CODE | g. REASON FOR SUBMISSION |
|---|---|---|
| E CO,  1ST BN, 2D AVN REGT, 2ID, APO AP 96297    EIGHTH ARMY | 03 | Change of Rater |

| h. PERIOD COVERED | | i. RATED MONTHS | j. NON-RATED CODES | k. NO. OF ENCL | l. RATED NCO'S EMAIL ADDRESS (.gov or mil) | m. UIC | n. CMD CODE | o. PSB CODE |
|---|---|---|---|---|---|---|---|---|
| FROM | THRU | 8 | | | Redacted PII | WHZZE0 | P8 | UA51 |
| YEAR MONTH DAY | YEAR MONTH DAY | | | | | | | |
| 20070701 | 20080305 | | | | | | | |

### PART II - AUTHENTICATION

| a. NAME of RATER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| WRIGHT, GERALD D. | Redacted PII | WRIGHT,GERALD.DOUGLAS  Redacted PII | 20080318 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | RATER'S AKO EMAIL ADDRESS (.gov or mil) |
|---|---|---|---|---|
| SSG | 92F30 | E CO, 1ST BN, 2D AVN REGT | Section Chief | Redacted PII |

| b. NAME OF SENIOR RATER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| BERRY, STEPHENSON | Redacted PII | BERRY,STEPHENSON,  Redacted PII | 20080418 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | SENIOR RATER'S AKO EMAIL ADDRESS (.gov or mil) |
|---|---|---|---|---|
| SFC | 92F40H7 | E CO, 1ST BN, 2D AVN REGT | Platoon Sergeant | Redacted PII |

| c. NAME OF REVIEWER (Last, First, Middle Initial) | SSN | SIGNATURE | DATE (YYYYMMDD) |
|---|---|---|---|
| LAIRD, KENNETH J. | Redacted PII | LAIRD,KENNETH.J  Redacted PII | 20080318 |

| RANK | PMOSC/BRANCH | ORGANIZATION | DUTY ASSIGNMENT | REVIEWER'S AKO EMAIL ADDRESS (.gov or mil) |
|---|---|---|---|---|
| 1LT | OD | E CO, 1ST BN, 2D AVN REGT | Platoon Leader | Redacted PII |

d. ☒ CONCUR WITH RATER AND SENIOR RATER EVALUATIONS    ☐ NONCONCUR WITH RATER AND/OR SENIOR RATER EVAL (See attached comments)

| e. RATED NCO: I understand my signature does not constitute agreement or disagreement with the evaluations of the rater and senior rater. I further understand my signature verifies that the administrative data in Part I, the rating officials in Part II, the duty description to include the counseling dates in Part III, and the APFT and height/weight entries in Part IVc are correct. I have seen the completed report. I am aware of the appeals process of AR 623-3. | SIGNATURE CLAIBORNE,DAMON.JAHRON  Redacted PII | DATE(YYYYMMDD) 20080710 |
|---|---|---|

### PART III - DUTY DESCRIPTION (Rater)

| a. PRINCIPAL DUTY TITLE | b. DUTY MOSC |
|---|---|
| Aircraft Fuel Handler | 92F20 |

c. DAILY DUTIES AND SCOPE (To include, as appropriate, people, equipment, facilities and dollars)

Serves as an aircraft fuel handler in an AH-64D Longbow Attack Helicopter Battalion deployed to Korea; responsible for the health, welfare and safety of four Soldiers; responsible for the accountability and operational readiness of two Heavy Expanded Mobility Tactical Trucks, one five-ton Tank and Pump Unit, one Advanced Forward Area Refueling System valued at over $500,000.

d. AREAS OF SPECIAL EMPHASIS

Brigade Gunnery; Unit Operations NCO

e. APPOINTED DUTIES

| f. COUNSELING DATES | INITIAL 20070711 | LATER 20071010 | LATER 20080107 | LATER |
|---|---|---|---|---|

### PART IV - ARMY VALUES/ATTRIBUTES/SKILLS/ACTIONS (Rater)

a. ARMY VALUES. Check either "YES" or "NO". (Bullet Comments are mandatory  Substantive bullet comments are required for "NO" entries.)

| | | | YES | NO |
|---|---|---|---|---|
| V A L U E S | Loyalty Duty Respect Selfless-Service | 1. LOYALTY: Bears true faith and allegiance to the U. S. Constitution, the Army, the unit, and other Soldiers. | ☒ | |
| | | 2. DUTY: Fulfills their obligations. | ☒ | |
| | | 3. RESPECT/EO/EEO: Treats people as they should be treated. | ☒ | |
| | | 4. SELFLESS-SERVICE: Puts the welfare of the nation, the Army, and subordinates before their own. | ☒ | |
| | | 5. HONOR: Lives up to all the Army values. | ☒ | |
| | | 6. INTEGRITY: Does what is right - legally and morally. | ☒ | |
| | Honor Integrity Personal Courage | 7. PERSONAL COURAGE: Faces fear, danger, or adversity  (physical and moral) | ☒ | |

Bullet comments

o maintained awareness for the Soldiers' needs

o always undertook to accomplish the task at hand

o possesses the moral courage to speak his mind

DA FORM 2166-8, MAR 2006    PREVIOUS EDITIONS ARE OBSOLETE.    Page 1 of 2
APD PE v6.00ES

000455

| RATED NCO'S NAME (Last, First, Middle Initial)<br>+  CLAIBORNE, DAMON J. | | SSN<br>Redacted PII | THRU DATE<br>20080305  + |

**PART IV (Rater) - VALUES/NCO RESPONSIBILITIES**

b. COMPETENCE
- Duty proficiency; MOS competency
- Technical & tactical; knowledge, skills, and abilities
- Sound judgment
- Seeking self-improvement; always learning
- Accomplishing tasks to the fullest capacity; committed to excellence

| EXCELLENCE<br>(Exceeds std) | SUCCESS<br>(Meets std) | NEEDS IMPROVEMENT | |
| | X | (Some) | (Much) |

o displayed a consistent degree of technical proficiency in his duties

o constantly sought self improvement; completed over 40 hours of correspondence courses during this rating period

---

c. PHYSICAL FITNESS & MILITARY BEARING
- Mental and physical toughness
- Endurance and stamina to go the distance
- Displaying confidence and enthusiasm; looks like a Soldier

| EXCELLENCE<br>(Exceeds std) | SUCCESS<br>(Meets std) | NEEDS IMPROVEMENT | |
| | X | (Some) | (Much) |

| APFT  PASS | 20070810 | HEIGHT/WEIGHT | 73 / 186 | YES |

o challenged superiors and subordinates alike

o possessed the physical stamina to survive and go the distance in combat

---

d. LEADERSHIP
- Mission first
- Genuine concern for Soldiers
- Instilling the spirit to achieve and win
- Setting the example; Be, Know, Do

| EXCELLENCE<br>(Exceeds std) | SUCCESS<br>(Meets std) | NEEDS IMPROVEMENT | |
| | X | (Some) | (Much) |

o performed duties and responsibilities as section sergeant in absence of his direct supervisor; results met the standard

o provided in depth counseling for his Soldiers, ensuring his squad understood and adhered to all unit standards

---

e. TRAINING
- Individual and team
- Mission focused; performance oriented
- Teaching Soldiers how; common tasks, duty-related skills
- Sharing knowledge and experience to fight, survive and win

| EXCELLENCE<br>(Exceeds std) | SUCCESS<br>(Meets std) | NEEDS IMPROVEMENT | |
| | X | (Some) | (Much) |

o planned and organized training for his Soldiers that met the standard

o 100% of his squad qualified on individual weapons and warrior task training

o his ability to cross train Soldiers enhanced the unit's ability to accomplish complex missions

---

f. RESPONSIBILITY & ACCOUNTABILITY
- Care and maintenance of equipment/facilities
- Soldier and equipment safety
- Conservation of supplies and funds
- Encouraging Soldiers to learn and grow
- Responsible for good, bad, right & wrong

| EXCELLENCE<br>(Exceeds std) | SUCCESS<br>(Meets std) | NEEDS IMPROVEMENT | |
| | X | (Some) | (Much) |

o maintained 100% accountability of all assigned equipment

o constantly encouraged Soldiers to participate in military and civilian educational programs

o through continuous safety emphasis, he maintained an unblemished safety record

---

**PART V - OVERALL PERFORMANCE AND POTENTIAL**

a. RATER. Overall potential for promotion and/or service in positions of greater responsibility.

| AMONG THE<br>BEST | FULLY<br>CAPABLE | MARGINAL |
| | X | |

b. RATER. List 3 positions in which the rated NCO could best serve the Army at his/her current or next higher grade.

Squad Leader

Service School Instructor

Recruiter

e. SENIOR RATER BULLET COMMENTS

o promote with peers

o send to BNCOC with peers

o unlimited potential; continue to assign to tough positions with increased responsibility

o continue to utilize as squad leader to increase exposure to leadership challenges

---

c. SENIOR RATER. Overall performance

| | 1 | 2 | 3 | 4 | 5 |
| | | | X | | |
| | | Successful | | Fair | Poor |

d. SENIOR RATER. Overall potential for promotion and/or service in positions of greater responsibility.

| | 1 | 2 | 3 | 4 | 5 |
| | X | | | | |
| | | Superior | | Fair | Poor |

DA FORM 2166-8, MAR 2006

000456

Redacted PII

000457



# DEPARTMENT OF THE ARMY

### THIS IS TO CERTIFY THAT THE SECRETARY OF THE ARMY HAS AWARDED

## THE ARMY ACHIEVEMENT MEDAL

**TO**
   **SERGEANT DAMON J. CLAIBORNE**
   **HEADQUARTERS AND HEADQUARTERS COMPANY, 49TH GROUP**

**FOR** MERITORIOUS ACHIEVEMENT WHILE ASSIGNED TO THE HHC, 49TH GROUP AS THE MOVEMENT
TRACKING SYSTEM NCO. SGT CLAIBORNE'S TECHNICAL EXPERTISE AND DEDICATION TO
DUTY ENSURED THE SUCCESS OF HIS MISSION. SGT CLAIBORNE'S EFFORTS AND DEVOTION
TO DUTY ARE IN KEEPING WITH THE HIGHEST TRADITIONS OF MILITARY SERVICE AND
REFLECTS GREAT CREDIT UPON HIMSELF, THE 49TH GROUP, THE 101ST AIRBORNE DIVISION
(AIR ASSAULT), AND THE UNITED STATES ARMY.

FROM: 2 NOVEMBER 2008 TO 8 NOVEMBER 2008
GIVEN UNDER MY HAND ON
THIS 13TH DAY OF JANUARY 2009



Permanent Orders 013-004
13 January 2009
49TH Group
Fort Lee, VA 23801

JOHN P. CURRA
COL, LG
Commanding

DA FORM 4980-18, NOV 97

IMMEDIATE REENLISTMENT

## ENLISTMENT/REENLISTMENT DOCUMENT
## ARMED FORCES OF THE UNITED STATES

### PRIVACY ACT STATEMENT

**AUTHORITY:** 5 USC 3331; 32 USC 708; 44 USC 708 AND 3101; 10 USC 133, 265, 275, 504, 510, 591, 672(d), 678, 837, 1007, 1071 through 1087; 1168, 1169, 1475 through 1480, 1553, 2107, 2122, 3012, 5031, 8012, 8033, 8496, and 9411; 14 USC 351 and 632; and Executive Order 9397, November 1943 (SSN).

**PRINCIPAL PURPOSE(S):** To record enlistment or reenlistment into the U.S. Armed Forces. This information becomes a part of the subject's military personnel records which are used to document promotion, reassignment, training, medical support, and other personnel management actions. The purpose of soliciting the SSN is for positive identification.

**ROUTINE USE(S):** This form becomes a part of the Service's Enlisted Master File and Field Personnel File. All uses of the form are internal to the relevant Service.

**DISCLOSURE:** Voluntary; however, failure to furnish personal identification information may negate the enlistment/reenlistment application.

### A. ENLISTEE/REENLISTEE IDENTIFICATION DATA

| 1. NAME (Last, First, Middle) | 2. SOCIAL SECURITY NUMBER |
|---|---|
| CLAIBORNE DAMON JAHRON | Redacted PII |

| 3. HOME OF RECORD (Street, City, State, ZIP Code) | 4. PLACE OF ENLISTMENT/REENLISTMENT (Mil. Installation, City, State) |
|---|---|
| Redacted PII | 528TH QUARTERMASTER <br> FORT LEWIS, WA 98433 |

| 5. DATE OF ENLISTMENT/ REENLISTMENT (YYYYMMDD) | 6. DATE OF BIRTH (YYYYMMDD) | 7. PREV MIL SVC UPON ENL/REENLIST | YEARS | MONTHS | DAYS |
|---|---|---|---|---|---|
| 2004 SEP 10 | Redacted PII | a. TOTAL ACTIVE MILITARY SERVICE | 09 | 07 | 12 |
| | | b. TOTAL INACTIVE MILITARY SERVICE | 05 | 07 | 16 |

### B. AGREEMENTS

8. I am enlisting/reenlisting in the  United States  (list branch of service) _____ ARMY _____
this date for ____ 05 ____ years and _____ weeks beginning in pay grade ____ E4 ____.
The additional details of my enlistment/reenlistment are in Section C and Annex(es)

A, B, AND C

#### a. FOR ENLISTMENT IN A DELAYED ENTRY/ENLISTMENT PROGRAM (DEP):

I understand that I will be ordered to active duty as a Reservist unless I report to the place shown in item 4 above by (list date (YYYYMMDD)) _____ for enlistment in the Regular component of the United States (list branch of service) _____ for not less than _____ years and _____ weeks. My enlistment in the DEP is in a nonpay status. I understand that my period in the DEP is **NOT** creditable for pay purposes upon entry into pay status. However, I also understand that this time is counted toward fulfillment of my military service obligation or commitment. I must maintain my current qualifications and keep my recruiter informed of any changes in my physical or dependency status, moral qualifications, and mailing address.

#### b. REMARKS: (If none, so state.)

(1) REGULAR ARMY REENLISTMENT OPTION (A000) RCN: 2052152.

(2) TSRB 3.0B, MOS 92F1, FORT DRUM.

(3) NO WAIVER.

(4) 2ND REENLISTMENT.

(5) LUMP SUM PAYMENT AUTHORIZED IAW MILPER MESSAGE 04-246.

c. The agreements in this section and attached annex(es) are all the promises made to me by the Government. **ANYTHING ELSE ANYONE HAS PROMISED ME IS NOT VALID AND WILL NOT BE HONORED.**

(Initials of Enlistee/Reenlistee) _D.C._                                    (Continued on reverse side.)

**DD FORM 4/1, AUG 1998 (EG)**        PREVIOUS EDITION IS OBSOLETE.                        USAPA V1.00

## C. PARTIAL STATEMENT OF EXISTING UNITED STATES LAWS

**9. FOR ALL ENLISTEES OR REENLISTEES:** Many laws, regulations, and military customs will govern my conduct and require me to do things a civilian does not have to do. The following statements are not promises or guarantees of any kind. They explain some of the present laws affecting the Armed Forces which I cannot change but which Congress can change at any time.

a. My enlistment is more than an employment agreement. As a member of the Armed Forces of the United States, I will be:

(1) Required to obey all lawful orders and perform all assigned duties.

(2) Subject to separation during or at the end of my enlistment. If my behavior fails to meet acceptable military standards, I may be discharged and given a certificate for less than honorable service, which may hurt my future job opportunities and my claim for veteran's benefits.

(3) Subject to the military justice system, which means, among other things, that I may be tried by military courts-martial.

(4) Required upon order to serve in combat or other hazardous situations.

(5) Entitled to receive pay, allowances, and other benefits as provided by law and regulation.

b. Laws and regulations that govern military personnel may change without notice to me. Such changes may affect my status, pay, allowances, benefits, and responsibilities as a member of the Armed Forces **REGARDLESS** of the provisions of this enlistment/reenlistment document.

c. In the event of war, my enlistment in the Armed Forces continues until six (6) months after the war ends, unless my enlistment is ended sooner by the President of the United States.

**10. MILITARY SERVICE OBLIGATION FOR ALL MEMBERS OF THE ACTIVE AND RESERVE COMPONENTS, INCLUDING THE NATIONAL GUARD.**

a. **FOR ALL ENLISTEES:** If this is my initial enlistment, I must serve a total of eight (8) years. Any part of that service not served on active duty must be served in a Reserve Component unless I am sooner discharged.

b. If I am a member of a Reserve Component of an Armed Force at the beginning of a period of war or national emergency declared by Congress, or if I become a member during that period, my military service may be extended without my consent until six (6) months after the end of that period of war.

c. As a member of a Reserve Component, in time of war or national emergency declared by the Congress, I may be required to serve on active duty (other than for training) for the entire period of the war or emergency and for six (6) months after its end.

d. As a member of the Ready Reserve I may be required to perform active duty or active duty for training without my consent (other than as provided in item 8 of this document) as follows:

(1) In time of national emergency declared by the President of the United States, I may be ordered to active duty (other than for training) for not more than 24 consecutive months:

(2) I may be ordered to active duty for 24 months, and my enlistment may be extended so I can complete 24 months of active duty, if:

(a) I am not assigned to, or participating satisfactorily in, a unit of the Ready Reserve; and

(b) I have not met my Reserve obligation; and

(c) I have not served on active duty for a total of 24 months.

(3) I may be ordered to perform additional active duty training for not more than 45 days if I have not fulfilled my military service obligation and fail in any year to perform the required training duty satisfactorily. If the failure occurs during the last year of my required membership in the Ready Reserve, my enlistment may be extended until I perform that additional duty, but not more than six months.

(4) When determined by the President that it is necessary to support any operational mission, I may be ordered to active duty as prescribed by law, if I am a member of the Selected Reserve.

**11. FOR ENLISTEES/REENLISTEES IN THE NAVY, MARINE CORPS, OR COAST GUARD:** I understand that if I am serving on a naval vessel in foreign waters, and my enlistment expires, I will be returned to the United States for discharge as soon as possible consistent with my desires. However, if essential to the public interest, I understand that I may be retained on active duty until the vessel returns to the United States. If I am retained under these circumstances, I understand that I will be discharged not later than 30 days after my return to the United States; and, that except in time of war, I will be entitled to an increase in basic pay of 25 percent from the date my enlistment expires to the date of my discharge.

**12. FOR ALL MALE APPLICANTS:** Completion of this form constitutes registration with the Selective Service System in accordance with the Military Selective Service Act. Incident thereto the Department of Defense may transmit my name, permanent address, military address, Social Security Number, and birthdate to the Selective Service System for recording as evidence of the registration.

000459

| NAME OF ENLISTEE/REENLISTEE *(Last, First, Middle)* | SOCIAL SECURITY NO. OF ENLISTEE/REENLISTEE |
|---|---|
| CLAIBORNE DAMON JAHRON | Redacted PII |

## D. CERTIFICATION AND ACCEPTANCE

**13a.** My acceptance for enlistment is based on the information I have given in my application for enlistment. If any of that information is false or incorrect, this enlistment may be voided or terminated administratively by the Government or I may be tried by a Federal, civilian, or military court and, if found guilty, may be punished.

I CERTIFY THAT I HAVE CAREFULLY READ THIS DOCUMENT. ANY QUESTIONS I HAD WERE EXPLAINED TO MY SATISFACTION. I FULLY UNDERSTAND THAT ONLY THOSE AGREEMENTS IN SECTION B OF THIS DOCUMENT OR RECORDED ON THE ATTACHED ANNEX(ES) WILL BE HONORED.  ANY OTHER PROMISES OR GUARANTEES MADE TO ME BY ANYONE ARE WRITTEN BELOW: *(If none, X "NONE" and initial.)*  ☒ NONE *(initials of enlistee/reenlistee)*

| b. SIGNATURE OF ENLISTEE/REENLISTEE | c. DATE SIGNED *(YYYYMMDD)* |
|---|---|
| | 2004 SEP 10 |

## 14. SERVICE REPRESENTATIVE CERTIFICATION

a. On behalf of the United States *(list branch of service)* _____ ARMY

I accept this applicant for enlistment. I have witnessed the signature in item 13b to this document. I certify that I have explained that only those agreements in Section B of this form and the attached Annex(es) will be honored, and any other promises made by any person are not effective and will not be honored.

| b. NAME *(Last, First, Middle)* | c. PAY GRADE | d. UNIT/COMMAND NAME |
|---|---|---|
| BRINGHURST, SCOTT A | E6 | HHC, 593RD CSG |
| e. SIGNATURE | f. DATE SIGNED *(YYYYMMDD)* 2004 SEP 10 | g. UNIT/COMMAND ADDRESS *(City, State, ZIP Code)* FORT LEWIS, WA 98433 |

## E. CONFIRMATION OF ENLISTMENT OR REENLISTMENT

**15. IN THE ARMED FORCES EXCEPT THE NATIONAL GUARD (ARMY OR AIR):**

I, _____ DAMON JAHRON CLAIBORNE _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God.

**16. IN THE NATIONAL GUARD (ARMY OR AIR):**

I, _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the State of _____ against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the Governor of _____ and the orders of the officers appointed over me, according to law and regulations. So help me God.

**17. IN THE NATIONAL GUARD (ARMY OR AIR):**

I do hereby acknowledge to have voluntarily enlisted/reenlisted this _____ day of _____, _____ in the _____ National Guard and as a Reserve of the United States *(list branch of service)* _____ with membership in the _____ National Guard of the United States for a period of _____ years, _____ months, _____ days, under the conditions prescribed by law, unless sooner discharged by proper authority.

| 18.a. SIGNATURE OF ENLISTEE/REENLISTEE | b. DATE SIGNED *(YYYYMMDD)* |
|---|---|
| | 2004 SEP 10 |

## 19. ENLISTMENT/REENLISTMENT OFFICER CERTIFICATION

a. The above oath was administered, subscribed, and duly sworn to (or affirmed) before me this date.

| b. NAME *(Last, First, Middle)* | c. PAY GRADE | d. UNIT/COMMAND NAME |
|---|---|---|
| SPRIDGEN, BROOKE L. | O3 | HHC, 593D CSG |
| e. SIGNATURE | f. DATE SIGNED *(YYYYMMDD)* 2004 SEP 10 | g. UNIT/COMMAND ADDRESS *(City, State, ZIP Code)* FORT LEWIS, WA 98433 |

**DD FORM 4/2, AUG 1998**          PREVIOUS EDITION IS OBSOLETE.

## STATEMENTS FOR ENLISTMENT
*(PARTS I THROUGH IV)*

For use of this form, see AR 601-280; the proponent agency is ODCSPER

### DATA REQUIRED BY THE PRIVACY ACT OF 1974

**AUTHORITY:** Section 504, 505, 508, and 510, Title 10, USC.

**PRINCIPAL PURPOSE:** To determine eligibility for reenlistment.

**ROUTINE USES:** Information may be referred to appropriate authorities if disciplinary action or discharge for fraudulent enlistment/reenlistment is appropriate.

**DISCLOSURE:** Disclosure of personal information is voluntary, however, failure to furnish information requested may result in denial of reenlistment in the US Army.

### PART I - GENERAL STATEMENT OF UNDERSTANDING
*TO BE COMPLETED BY ALL APPLICANTS FOR REENLISTMENT IN THE REGULAR ARMY*

1. ACKNOWLEDGEMENT: In connection with my reenlistment in the Regular Army, I hereby acknowledge that:

   a. All promises made to me are contained in Item 10 of DD Form 4, my reenlistment agreement, and Part II of this statement.

   b. I have not been guaranteed attendance at an MOS-producing Army service school or Airborne training unless the title of the school course or Airborne training has been entered in Item 10, DD Form 4.

   c. Should I make any material omission or misstatement of fact in connection with any of my enlistment documents, (1) I may be subject to early separation from this enlistment, or (2) I will complete, if permitted, the period for which I enlisted in any assignment deemed appropriate in accordance with the needs of the Army.

   d. Should I choose an option which requires a security clearance and I am not granted such clearance after I have enlisted, or my granted clearance is revoked after I have enlisted, I agree to accept any assignment in accordance with the needs of the Army and I will complete the period for which I enlisted.

   e. Law violations for which I have been convicted or have had adverse adjudications as a juvenile or youthful offender may be cause for denial of security clearance.

   f. My choice of initial enlistment option shown in Item 10 of my DD Form 4 does not constitute any guarantee that a substantial part of my enlistment will be served in the option, and the needs of the service may result in my transfer at any time *(other than as may be provided by the specific option selected)* to any other assignment within the continental United States or to an oversea command. I am aware that due to the needs of the Army I may be subject to involuntary retraining and/or reclassification.

   g. Should my enlistment involve a commitment for specialized training or a selective assignment, conduct on my part occurring after my enlistment which results in disciplinary action may be just cause for my transfer to any other assignment within the continental United States or to any oversea command.

   h. My acceptance for enlistment carries no promise whatsoever relative to furnishing transportation for dependents to oversea commands or to the furnishing of family quarters either in oversea commands or in the United States.

   i. If, after my enlistment for a specific option, I should fail to meet required qualifications which cannot be determined prior to my enlistment, I understand that I will not be offered another enlistment option, but will be trained and assigned in accordance with the needs of the Army and will be required to complete the term of service for which I enlisted.

   j. If, after my enlistment in the Regular Army, I should waive my initial enlistment option as listed in Item 10, DD Form 4, and in Part II of my statement for enlistment for any reason whatsoever, this initial option will not be reinstated at a later date.

   k. I am not consciously opposed by reason or religious training or belief, to bearing arms or to participation, or training for war in any form.

   l. I am aware that in the event of armed conflict involving the United States, the Secretary of the Army may declare null and void any portion of my enlistment option pertaining to training, assignment, or duty, if he determines such action to be necessary.

### PART II - IN-SERVICE REENLISTMENT OPTION
*TO BE COMPLETED BY ALL APPLICANTS REENLISTING FOR A SPECIFIC OPTION*

2. In connection with my reenlistment in the Regular Army for the   **REGULAR ARMY**
Reenlistment option, I hereby acknowledge that provided I meet required prerequisites I will be assigned as follows:
**IAW THE NEEDS OF THE ARMY**

3. I have read and understand the provisions of the reenlistment option for which I am reenlisting. Furthermore, to avoid misunderstandings, I have recorded below in my own words and handwriting all spoken and written promises that have been made to me in connection with my enlistment in the Regular Army *(at end of statement, applicant will print the word "END")*.
   *I Aw B/THE Nee 5 of the ARMY " END" D.C.*

4. If reenlisting for the CONUS Station of Choice Reenlistment Option, I understand that my stabilization will commence on the date of reenlistment or upon arrival at my new station, whichever is later. I further understand that if I am subsequently placed on TDY in excess of 30 days, my stabilization will be extended by the number of days in excess of the initial 30 day period, unless I voluntarily waive my stabilization. It is also understood that if HQDA determines that in order to meet the operational needs of the Army, the unit or subordinate element must be deployed from the parent organization, I must deploy with the unit and no grounds for a broken reenlistment commitment will exist.

**DA FORM 3286, DEC 94**     EDITION OF SEP 79 IS OBSOLETE                    USAPPC V1.00
ANNEX A

5. In the event my enlistment commitment cannot be fulfilled, the alternative available to me will be as provided in AR 635-200, as of the date of my claim of unfulfilled enlistment commitment or erroneous enlistment is submitted. I understand that I will have a period of 30 days to elect an alternative or to request other training or assignment from the date I am advised that my selected option cannot be fulfilled or, where not formally advised, from the date I discover or should have discovered the grounds for submitting a claim. This period may be extended by the general courts-martial convening authority when necessary to determine the availability of my selected alternative. If I make no election within that period, my claim will be deemed to have been waived. I may withdraw any request for training or reassignment prior to approval and elect another alternative, but not thereafter.

| PART III - STATEMENT OF LAW VIOLATIONS AND PREVIOUSLY UNDISCLOSED CONDITIONS |
|---|

6. Complete the statement in a below and answer questions b through f as appropriate, by placing a checkmark in the "YES" or "NO" column. In-service personnel immediately enlisting will list those violations occurring during their current term of service, and offenses not previously revealed.

a. I have read or have had explained to me, paragraphs 2-4 and 7-4, AR 604-10, which set forth the criteria *(reasons)* for discharge and types of discharge, and certify that I ☐ have ☒ have not *(check one)* engaged in disloyal or subversive activities as defined herein.

|   | YES | NO |
|---|---|---|
| b. Have you ever been rejected for enlistment or induction in any of the Armed Forces to include failure of the mental examinations administered by any MEPS or been discharged from previous service under other than honorable conditions, under Personnel Security Regulations, or by reason of unsuitability, or undesirable habits or traits of character, or for medical reasons? |  | X |
| c. Have you ever been arrested, cited, charged or held by Federal, State, County, City or other law enforcement authorities or by Juvenile Court or Juvenile Probation Officials for any violation of any Federal Law, State Law, County or Municipal Law, Regulation or Ordinance? |  | X |
| d. Have you ever been convicted of a felony or any other offense or adjudicated a youthful or juvenile delinquent? |  | X |
| e. Have you ever been imprisoned under sentence of any court? |  | X |
| f. Are you now or have you ever been on parole, probation supervision, under suspended sentence, or are you awaiting final action of charges against you? |  | X |

7. In the space below, give full details for any of the above questions to which you answered "YES." *(If additional space is required, continue on a separate sheet of paper and attach securely to this form.)*

| a. REF ITEM | b. OFFENSE(s) | c. DATE AND PLACE | d. DISPOSITION |
|---|---|---|---|
|  | "NONE" |  |  |

8. UNDERSTANDING: I understand that should I intentionally conceal or misrepresent any information regarding my record of arrests or convictions or juvenile court adjudications, I may later be subject to disciplinary action under the Uniform Code of Military Justice *(UCMJ)* and/or discharged from the Service under other than honorable conditions.

| PART IV - DEPENDENCY STATEMENT |
|---|
| *TO BE COMPLETED BY ALL APPLICANTS* |

9. Relationship and age of all persons who are dependent upon me for support are recorded below *(if none, so state)*:

| RELATIONSHIP | AGE | RELATIONSHIP | AGE | RELATIONSHIP | AGE |
|---|---|---|---|---|---|
| Redacted PII |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

10. UNDERSTANDING: I understand that if I am selected for enlistment in the Regular Army, I will be expected to accept such assignments as are in the best interest of the Service regardless of marital status and/or responsibility for dependents; and that it is my responsibility to make appropriate arrangements for the care of my dependents should I be required to perform duty in an area where dependents are not authorized.

11. I have read and understand the meaning of all statements contained in Parts I through IV of this form and agree to all conditions set forth therein. I certify that all answers to questions, statements and entries on this form are true, correct and complete, and that the Career Counselor has informed me that should I intentionally conceal any information required above, I may later be subject to disciplinary action or discharge upon its discovery.

| 12. SIGNATURE OF APPLICANT | 13. DATE | 14. SIGNATURE AND TITLE OF WITNESS |
|---|---|---|
| *[signature]* | 10 Sept 04 | *[signature]* Scott G. Berg |
|  |  | GROUP CAREER COUNSELOR |

DA FORM 3286, DEC 94

USAPPC V1.00

000462

## REQUEST FOR REENLISTMENT OR EXTENSION IN THE REGULAR ARMY

For use of this form see AR 601-280; the proponent agency is ODCSPER.

### SECTION I - SOLDIER'S REQUEST

| 1. TO | 2. FROM |
|---|---|
| COMMANDER | SPC DAMON JAHRON CLAIBORNE |
| 528TH QUARTERMASTER | Redacted PII |
| FORT LEWIS, WA 98433 | 528TH QUARTERMASTER |
| | FORT LEWIS, WA 98433 |

3. REQUEST I BE AUTHORIZED TO *(Select one)*

[X] a. REENLIST IN THE ACTIVE COMPONENT.

[ ] b. EXTEND MY ENLISTMENT FOR THE FOLLOWING REASON: _____

4. ACCRUED LEAVE OPTIONS *(Select one)*

[ ] a. I DESIRE TO CASH IN _____ DAYS OF ACCRUED LEAVE.

[X] b. I DO NOT DESIRE TO CASH IN ACCRUED LEAVE.

[ ] c. I AM EXTENDING MY PRESENT ENLISTMENT AND HAVE BEEN COUNSELED ON CASHING IN ACCRUED LEAVE.

| 5. DATE | 6. SIGNATURE |
|---|---|
| 10 Sept 04 | |

### SECTION II - COMMANDER'S CERTIFICATION

7. COMMANDER'S DETERMINATION OF QUALIFICATION *(Select one)*

[X] a. SOLDIER IS FULLY QUALIFIED FOR REQUESTED ACTION.

[ ] b. SOLDIER IS NOT FULLY QUALIFIED AND REQUIRES WAIVER. *(Select 8b or 8c(1) below)*

[ ] c. SOLDIER IS FULLY QUALIFIED, BUT IS NOT RECOMMENDED FOR FURTHER SERVICE. *(Select 8c(2) below)*

8. COMMANDER'S DETERMINATION/RECOMMENDATION FOR CONTINUED SERVICE WITHIN THE ARMY *(Select one)*

[X] a. APPROVED.

[ ] b. RECOMMENDED APPROVAL. DA FORM 3072 IS ATTACHED.

[ ] c. DISAPPROVED.

[ ] (1) I DISAPPROVE THE SOLDIER'S REQUEST FOR WAIVER OF DISQUALIFICATION.

[ ] (2) I HAVE INITIATED A BAR TO REENLISTMENT UNDER THE PROVISIONS OF CHAPTER 8, AR 601-280.

9. TYPED NAME, RANK, AND BRANCH OF COMMANDER

DEXTER S. JOHNSON, CPT, QM

| 10. SIGNATURE | 11. DATE |
|---|---|
| | 10 Sept 04 |

DA FORM 3340-R, DEC 94          EDITION OF MAY 88 IS OBSOLETE

ANNEX B

000463

## STATEMENT OF ENTITLEMENT TO SELECTIVE REENLISTMENT BONUS

For use of this form, see AR 600-200, the proponent agency is DCSPER

### DATA REQUIRED BY THE PRIVACY ACT OF 1974

**AUTHORITY:** Section 308 of Title 37, US Code, as amended by Public Law 93-277, Armed Forces Enlisted Personnel Bonus Revision Act of 1974, 10 May 1974, Public Law 95-57, 29 June 1977, and Public Law 95-485, 20 October 1978.

**PRINCIPAL PURPOSE:** To explain the conditions under which continued entitlement to unpaid installments of the bonus may be terminated and unearned portion of advanced bonus payments recouped.

**ROUTINE USES:** Information may be referred to appropriate authorities if individual becomes subject to termination and/or recoupment of bonus.

**DISCLOSURE:** Disclosure of personal information is voluntary. However, failure to furnish information requested may result in denial of reenlistment in the Army.

I _____ DAMON JAHRON CLAIBORNE _____ | Redacted PII |

(Full name)    (SSN)

understand that I am getting a selective reenlistment bonus in return for my (reenlistment) ~~(extension of enlistment)~~ in MOS ____92F1____ for a period of _____ 5 YEARS _____

(_____ months)    (_____ years)

I agree to complete this period of service.

I have been advised and understand that if I do not complete the full period of service, or if I do not remain technically qualified in MOS____92F1____, I will not get any more installments of the bonus, and I will have to pay back as much of the bonus as I already received for the unexpired part of the period of obligated service.

I understand that I will be considered *NOT* technically qualified in MOS _____ 92F1 _____ when I am no longer classified in that MOS and my current and future assignment in that MOS is precluded for any of the following reasons within my control:

*a.* I refuse to perform certain duties which I volunteered for in writing prior to my accepting the bonus and which are required for effective performance in the MOS;

*b.* Disciplinary action taken under UCMJ or civil court conviction disqualifies me for future performance in the MOS;

*c.* My own misconduct causes injury, illness, or some other condition which interferes with effective performance in the MOS;

*d.* Withdrawal of the minimum security clearance, loss of qualification under the Personnel Reliability Program *(PRP)*, or loss of any other mandatory qualification required for effective performance in the MOS.

SIGNATURE OF BONUS RECIPIENT

DAMON JAHRON CLAIBORNE, SPC

SIGNATURE OF REENLISTMENT OFFICER

BROOKE L. SPRIDGEN, CPT

| DATE | TIME | STATION |
|------|------|---------|
| 2004 SEP 10 | | FORT LEWIS, WA 98433 |

**DA FORM 4789, JUN 79**
ANNEX C

USAPPC V1.00

ξ 84

| SERVICE SCHOOL ACADEMIC EVALUATION REPORT | | | DATE | |
|---|---|---|---|---|
| For use of this form, see AR 623-1; the proponent agency is MILPERCEN. | | | | 040715 |

| 1. LAST NAME - FIRST NAME - MIDDLE INITIAL | 2. SSN | 3. GRADE | 4. BR | 5. SPECIALTY/MOSC |
|---|---|---|---|---|
| CLAIBORNE, DAMON J. | Redacted PII | E4 | | 92F 1 |

| 6. COURSE TITLE | 7. NAME OF SCHOOL | 8. COMP |
|---|---|---|
| Primary Leadership Development Course Class 007-04 | Henry H. Lind NCOA, Ft. Lewis, WA 98433,   W3ZBAA | RA |

**9. TYPE OF REPORT** ☐ RESIDENT ☐ NONRESIDENT

**10. PERIOD OF REPORT** (Year, month, day) From: 040616  Thru: 040715 [X]

**11. DURATION OF COURSE** (Year, month, day) From: 040616  Thru: 040715

**12. EXPLANATION OF NONRATED PERIODS**

**13. PERFORMANCE SUMMARY**

* a. ☐ EXCEEDED COURSE STANDARDS
*(Limited to 20% of class enrollment)*

b. [X] ACHIEVED COURSE STANDARDS

* c. ☐ MARGINALLY ACHIEVED COURSE STANDARDS

* d. ☐ FAILED TO ACHIEVE COURSE STANDARDS

*Rating must be supported by comments in ITEM 16.*

**14. DEMONSTRATED ABILITIES**

a. **WRITTEN COMMUNICATION**
[X] NOT EVALUATED  ☐ UNSAT  ☐ SAT  ☐ SUPERIOR

b. **ORAL COMMUNICATION**
☐ NOT EVALUATED  ☐ UNSAT  ☐ SAT  [X] SUPERIOR

c. **LEADERSHIP SKILLS**
☐ NOT EVALUATED  ☐ UNSAT  ☐ SAT  [X] SUPERIOR

d. **CONTRIBUTION TO GROUP WORK**
☐ NOT EVALUATED  ☐ UNSAT  ☐ SAT  [X] SUPERIOR

e. **EVALUATION OF STUDENT'S RESEARCH ABILITY**
☐ NOT EVALUATED  ☐ UNSAT  [X] SAT  ☐ SUPERIOR

*(SUPERIOR/UNSAT rating must be supported by comments in ITEM 16)*

**15. HAS THE STUDENT DEMONSTRATED THE ACADEMIC POTENTIAL FOR SELECTION TO HIGHER LEVEL SCHOOLING/TRAINING?**
[X] YES  ☐ NO   *N/A (A "NO" response must be supported by comments in ITEM 16)*

**16. COMMENTS** *(This item is intended to obtain a word picture of each student that will accurately and completely portray academic performance, intellectual qualities, and communication skills and abilities. The narrative should also discuss broader aspects of the student's potential, leadership capabilities, moral and overall professional qualities. In particular, comments should be made if the student failed to respond to recommendations for improving academic or personal affairs)*

14b Superior ability to present views logically.
14b Communicates superbly with chain of command and subordinates alike.
14c Displayed excellent leadership skills through varied task assignments.
14c Accomplished all assigned tasks in a superior manner.
14d Soldier shows a positive, professional attitude and selfless desire to work with others.
14d Excels in building teams for success.
14e Easily adapted to using a computer to find all needed information instead of paper manuals.

PASS 0406 72/175 YES

**17. AUTHENTICATION**

| a. TYPED NAME, GRADE, BRANCH, AND TITLE OF PREPARING OFFICER | SIGNATURE |
|---|---|
| DOMINIQUE Q. MERIWETHER, SSG, USA, SGL | |
| b. TYPED NAME, GRADE, BRANCH, AND TITLE OF REVIEWING OFFICER | SIGNATURE |
| ROBERT D. HAYMANS, CSM, USA, Commandant | |

**18. MILITARY PERSONNEL OFFICER**

| a. FORWARDING ADDRESS *(Rated student)* | b. DISTRIBUTION |
|---|---|
| 528TH QM CO FORT LEWIS, WA 98433 | [X] STUDENT   [X] UNIT CDR *(P/B NCOES only)*  [X] STUDENT'S OFFICIAL MILITARY RECORDS |

**DA** FORM 1 NOV 77 **1059**   EDITION OF 1 JUL 73 IS OBSOLETE.   USAPPC V1.00

DEPARTMENT OF THE ARMY
DETACHMENT B, 138TH PERSONNEL SERVICES BATTALION
APO AE 09391

PERMANENT ORDERS 040-007                                    9 February 2004

CLAIBORNE, DAMON J. [Redacted PII] SPC 528TH QM PETROLEUM, APO AE 09391

Announcement is made of the following award.

Award:  Good Conduct Medal: (3RD AWARD)
Date(s) or period of service:  28 January 2001 to 27 January 2004
Authority:  AR 600-8-22, para 4-3
Reason:  For exemplary behavior, efficiency, and fidelity in active federal military service.
Format: 320

FOR THE PERSONNEL OFFICER:

CHRISTOPHER L. IMMORMINO
CW2, USA
Human Resources Technician

DISTRIBUTION:
INDIVIDUAL (1)
MPRJ (1)
Cdr, 528TH QM PETROLEUM APO AE 09391 (1)
Cdr, USAEREC ATTN: PCRE-FS 8899 East 56th Street, Indianapolis IN 46249 (1)

Inquires concerning this order should be directed to the Personnel Officer, Delta Detachment,
Task Force 138th Personnel Services Battalion, APO AE 09391. DSN: 551-9903

000466

IMMEDIATE REENLISTMENT

## ENLISTMENT/REENLISTMENT DOCUMENT
## ARMED FORCES OF THE UNITED STATES

### PRIVACY ACT STATEMENT

**AUTHORITY:** 5 USC 3331; 32 USC 708; 44 USC 708 AND 3101; 10 USC 133, 265, 275, 504, 510, 591, 672(d), 678, 837, 1007, 1071 through 1087; 1168, 1169, 1475 through 1480, 1553, 2107, 2122, 3012, 5031, 8012, 8033, 8496, and 9411; 14 USC 351 and 632; and Executive Order 9397, November 1943 (SSN).

**PRINCIPAL PURPOSE(S):** To record enlistment or reenlistment into the U.S. Armed Forces. This information becomes a part of the subject's military personnel records which are used to document promotion, reassignment, training, medical support, and other personnel management actions. The purpose of soliciting the SSN is for positive identification.

**ROUTINE USE(S):** This form becomes a part of the Service's Enlisted Master File and Field Personnel File. All uses of the form are internal to the relevant Service.

**DISCLOSURE:** Voluntary; however, failure to furnish personal identification information may negate the enlistment/reenlistment application.

### A. ENLISTEE/REENLISTEE IDENTIFICATION DATA

| 1. NAME *(Last, First, Middle)* | 2. SOCIAL SECURITY NUMBER |
|---|---|
| CLAIBORNE DAMON JAHRON | Redacted PII |

| 3. HOME OF RECORD *(Street, City, State, ZIP Code)* | 4. PLACE OF ENLISTMENT/REENLISTMENT *(Mil. Installation, City, State)* |
|---|---|
| Redacted PII | 528TH QM COMPANY<br>FORT LEWIS, WA 98433 |

| 5. DATE OF ENLISTMENT/ REENLISTMENT *(YYYYMMDD)* | 6. DATE OF BIRTH *(YYYYMMDD)* | 7. PREV MIL SVC UPON ENL/REENLIST | YEARS | MONTHS | DAYS |
|---|---|---|---|---|---|
| 2003 FEB 03 | Redacted PII | a. TOTAL ACTIVE MILITARY SERVICE | 03 | 00 | 03 |
| | | b. TOTAL INACTIVE MILITARY SERVICE | 05 | 07 | 16 |

### B. AGREEMENTS

**8.** I am enlisting/reenlisting in the  United States *(list branch of service)*  ARMY

this date for ____03____ years and _____ weeks beginning in pay grade ____E4____ .

The additional details of my enlistment/reenlistment are in Section C and Annex(es)

A AND B .

**a. FOR ENLISTMENT IN A DELAYED ENTRY/ENLISTMENT PROGRAM (DEP):**
I understand that I will be ordered to active duty as a Reservist unless I report to the place shown in item 4 above by *(list date (YYYYMMDD))* _____ for enlistment in the Regular component of the United States *(list branch of service)* _____ for not less than _____ years and _____ weeks. My enlistment in the DEP is in a nonpay status. I understand that my period in the DEP is **NOT** creditable for pay purposes upon entry into pay status. However, I also understand that this time is counted toward fulfillment of my military service obligation or commitment. I must maintain my current qualifications and keep my recruiter informed of any changes in my physical or dependency status, moral qualifications, and mailing address.

**b. REMARKS:** *(If none, so state.)*

(1) REGULAR ARMY REENLISTMENT OPTION (A000) RCN: 1906693.

(2) NO BONUS ENTITLEMENT.

(3) NO WAIVER.

(4) 2ND REENLISTMENT.

**c.** The agreements in this section and attached annex(es) are all the promises made to me by the Government. **ANYTHING ELSE ANYONE HAS PROMISED ME IS NOT VALID AND WILL NOT BE HONORED.**

*(Initials of Enlistee/Reenlistee)*  D.J.C.

*(Continued on reverse side.)*

**DD FORM 4/1, AUG 1998 (EG)**     PREVIOUS EDITION IS OBSOLETE     USAPA V1 00

## C. PARTIAL STATEMENT OF EXISTING UNITED STATES LAWS

**9. FOR ALL ENLISTEES OR REENLISTEES:** Many laws, regulations, and military customs will govern my conduct and require me to do things a civilian does not have to do. The following statements are not promises or guarantees of any kind. They explain some of the present laws affecting the Armed Forces which I cannot change but which Congress can change at any time.

a. My enlistment is more than an employment agreement. As a member of the Armed Forces of the United States, I will be:

(1) Required to obey all lawful orders and perform all assigned duties.

(2) Subject to separation during or at the end of my enlistment. If my behavior fails to meet acceptable military standards, I may be discharged and given a certificate for less than honorable service, which may hurt my future job opportunities and my claim for veteran's benefits.

(3) Subject to the military justice system, which means, among other things, that I may be tried by military courts-martial.

(4) Required upon order to serve in combat or other hazardous situations.

(5) Entitled to receive pay, allowances, and other benefits as provided by law and regulation.

b. Laws and regulations that govern military personnel may change without notice to me. Such changes may affect my status, pay, allowances, benefits, and responsibilities as a member of the Armed Forces **REGARDLESS** of the provisions of this enlistment/reenlistment document.

c. In the event of war, my enlistment in the Armed Forces continues until six (6) months after the war ends, unless my enlistment is ended sooner by the President of the United States.

**10. MILITARY SERVICE OBLIGATION FOR ALL MEMBERS OF THE ACTIVE AND RESERVE COMPONENTS, INCLUDING THE NATIONAL GUARD.**

a. **FOR ALL ENLISTEES:** If this is my initial enlistment, I must serve a total of eight (8) years. Any part of that service not served on active duty must be served in a Reserve Component unless I am sooner discharged.

b. If I am a member of a Reserve Component of an Armed Force at the beginning of a period of war or national emergency declared by Congress, or if I become a member during that period, my military service may be extended without my consent until six (6) months after the end of that period of war.

c. As a member of a Reserve Component, in time of war or national emergency declared by the Congress, I may be required to serve on active duty (other than for training) for the entire period of the war or emergency and for six (6) months after its end.

d. As a member of the Ready Reserve I may be required to perform active duty or active duty for training without my consent (other than as provided in item 8 of this document) as follows:

(1) In time of national emergency declared by the President of the United States, I may be ordered to active duty (other than for training) for not more than 24 consecutive months:

(2) I may be ordered to active duty for 24 months, and my enlistment may be extended so I can complete 24 months of active duty, if:

(a) I am not assigned to, or participating satisfactorily in, a unit of the Ready Reserve; and

(b) I have not met my Reserve obligation; and

(c) I have not served on active duty for a total of 24 months.

(3) I may be ordered to perform additional active duty training for not more than 45 days if I have not fulfilled my military service obligation and fail in any year to perform the required training duty satisfactorily. If the failure occurs during the last year of my required membership in the Ready Reserve, my enlistment may be extended until I perform that additional duty, but not more than six months.

(4) When determined by the President that it is necessary to support any operational mission, I may be ordered to active duty as prescribed by law, if I am a member of the Selected Reserve.

**11. FOR ENLISTEES/REENLISTEES IN THE NAVY, MARINE CORPS, OR COAST GUARD:** I understand that if I am serving on a naval vessel in foreign waters, and my enlistment expires, I will be returned to the United States for discharge as soon as possible consistent with my desires. However, if essential to the public interest, I understand that I may be retained on active duty until the vessel returns to the United States. If I am retained under these circumstances, I understand that I will be discharged not later than 30 days after my return to the United States; and, that except in time of war, I will be entitled to an increase in basic pay of 25 percent from the date my enlistment expires to the date of my discharge.

**12. FOR ALL MALE APPLICANTS:** Completion of this form constitutes registration with the Selective Service System in accordance with the Military Selective Service Act. Incident thereto the Department of Defense may transmit my name, permanent address, military address, Social Security Number, and birthdate to the Selective Service System for recording as evidence of the registration.

000468

| NAME OF ENLISTEE/REENLISTEE *(Last, First, Middle)* | SOCIAL SECURITY NO. OF ENLISTEE/REENLISTEE |
|---|---|
| CLAIBORNE DAMON JAHRON | Redacted PII |

## D. CERTIFICATION AND ACCEPTANCE

**13a.** My acceptance for enlistment is based on the information I have given in my application for enlistment. If any of that information is false or incorrect, this enlistment may be voided or terminated administratively by the Government or I may be tried by a Federal, civilian, or military court and, if found guilty, may be punished.

I CERTIFY THAT I HAVE CAREFULLY READ THIS DOCUMENT. ANY QUESTIONS I HAD WERE EXPLAINED TO MY SATISFACTION. I FULLY UNDERSTAND THAT ONLY THOSE AGREEMENTS IN SECTION B OF THIS DOCUMENT OR RECORDED ON THE ATTACHED ANNEX(ES) WILL BE HONORED.  ANY OTHER PROMISES OR GUARANTEES MADE TO ME BY ANYONE ARE WRITTEN BELOW: *(If none, X "NONE" and initial.)*    [X] NONE _____ *(initials of enlistee/reenlistee)*

| b. SIGNATURE OF ENLISTEE/REENLISTEE | c. DATE SIGNED *(YYYYMMDD)* |
|---|---|
| | 2003 FEB 03 |

### 14. SERVICE REPRESENTATIVE CERTIFICATION

a. On behalf of the United States *(list branch of service)* _____ ARMY

I accept this applicant for enlistment. I have witnessed the signature in item 13b to this document. I certify that I have explained that only those agreements in Section B of this form and the attached Annex(es) will be honored, and any other promises made by any person are not effective and will not be honored.

| b. NAME *(Last, First, Middle)* | c. PAY GRADE | d. UNIT/COMMAND NAME |
|---|---|---|
| WILLIAMS, ROBBY E. | E6 | HHC, 593RD CSG |
| e. SIGNATURE | f. DATE SIGNED *(YYYYMMDD)* 2003 FEB 03 | g. UNIT/COMMAND ADDRESS *(City, State, ZIP Code)* FT LEWIS, WA 98433 |

### E . CONFIRMATION OF ENLISTMENT OR REENLISTMENT

**15. IN THE ARMED FORCES EXCEPT THE NATIONAL GUARD (ARMY OR AIR):**

I, _____ DAMON JAHRON CLAIBORNE _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God.

**16. IN THE NATIONAL GUARD (ARMY OR AIR):**

I, _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the State of _____ against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the Governor of _____ and the orders of the officers appointed over me, according to law and regulations. So help me God.

**17. IN THE NATIONAL GUARD (ARMY OR AIR):**

I do hereby acknowledge to have voluntarily enlisted/reenlisted this _____ day of _____ , _____ in the _____ National Guard and as a Reserve of the United States *(list branch of service)* _____ with membership in the _____ National Guard of the United States for a period of _____ years, _____ months. _____ days, under the conditions prescribed by law, unless sooner discharged by proper authority.

| 18.a. SIGNATURE OF ENLISTEE/REENLISTEE | b. DATE SIGNED *(YYYYMMDD)* |
|---|---|
| | 2003 FEB 03 |

### 19. ENLISTMENT/REENLISTMENT OFFICER CERTIFICATION

a. The above oath was administered, subscribed, and duly sworn to (or affirmed) before me this date.

| b. NAME *(Last, First, Middle)* | c. PAY GRADE | d. UNIT/COMMAND NAME |
|---|---|---|
| LUU, POLARIS X. | O3 | HHD, 80TH ORD BN |
| e. SIGNATURE | f. DATE SIGNED *(YYYYMMDD)* 2003 FEB 03 | g. UNIT/COMMAND ADDRESS *(City, State, ZIP Code)* FORT LEWIS, WA 98433 |

**DD FORM 4/2, AUG 1998**          PREVIOUS EDITION IS OBSOLETE.

000469

## STATEMENTS FOR ENLISTMENT
*(PARTS I THROUGH IV)*

For use of this form, see AR 601-280; the proponent agency is ODCSPER

### DATA REQUIRED BY THE PRIVACY ACT OF 1974

| | |
|---|---|
| AUTHORITY: | Section 504, 505, 508, and 510, Title 10, USC. |
| PRINCIPAL PURPOSE: | To determine eligibility for reenlistment. |
| ROUTINE USES: | Information may be referred to appropriate authorities if disciplinary action or discharge for fraudulent enlistment/reenlistment is appropriate. |
| DISCLOSURE: | Disclosure of personal information is voluntary, however, failure to furnish information requested may result in denial of reenlistment in the US Army. |

### PART I - GENERAL STATEMENT OF UNDERSTANDING
*TO BE COMPLETED BY ALL APPLICANTS FOR REENLISTMENT IN THE REGULAR ARMY*

1. ACKNOWLEDGEMENT: In connection with my reenlistment in the Regular Army, I hereby acknowledge that:

   a. All promises made to me are contained in Item 10 of DD Form 4, my reenlistment agreement, and Part II of this statement.

   b. I have not been guaranteed attendance at an MOS-producing Army service school or Airborne training unless the title of the school course or Airborne training has been entered in Item 10, DD Form 4.

   c. Should I make any material omission or misstatement of fact in connection with any of my enlistment documents, (1) I may be subject to early separation from this enlistment, or (2) I will complete, if permitted, the period for which I enlisted in any assignment deemed appropriate in accordance with the needs of the Army.

   d. Should I choose an option which requires a security clearance and I am not granted such clearance after I have enlisted, or my granted clearance is revoked after I have enlisted, I agree to accept any assignment in accordance with the needs of the Army and I will complete the period for which I enlisted.

   e. Law violations for which I have been convicted or have had adverse adjudications as a juvenile or youthful offender may be cause for denial of security clearance.

   f. My choice of initial enlistment option shown in Item 10 of my DD Form 4 does not constitute any guarantee that a substantial part of my enlistment will be served in the option, and the needs of the service may result in my transfer at any time *(other than as may be provided by the specific option selected)* to any other assignment within the continental United States or to an oversea command. I am aware that due to the needs of the Army I may be subject to involuntary retraining and/or reclassification.

   g. Should my enlistment involve a commitment for specialized training or a selective assignment, conduct on my part occurring after my enlistment which results in disciplinary action may be just cause for my transfer to any other assignment within the continental United States or to any oversea command.

   h. My acceptance for enlistment carries no promise whatsoever relative to furnishing transportation for dependents to oversea commands or to the furnishing of family quarters either in oversea commands or in the United States.

   i. If, after my enlistment for a specific option, I should fail to meet required qualifications which cannot be determined prior to my enlistment, I understand that I will not be offered another enlistment option, but will be trained and assigned in accordance with the needs of the Army and will be required to complete the term of service for which I enlisted.

   j. If, after my enlistment in the Regular Army, I should waive my initial enlistment option as listed in Item 10, DD Form 4, and in Part II of my statement for enlistment for any reason whatsoever, this initial option will not be reinstated at a later date.

   k. I am not consciously opposed by reason or religious training or belief, to bearing arms or to participation, or training for war in any form.

   l. I am aware that in the event of armed conflict involving the United States, the Secretary of the Army may declare null and void any portion of my enlistment option pertaining to training, assignment, or duty, if he determines such action to be necessary.

### PART II - IN-SERVICE REENLISTMENT OPTION
*TO BE COMPLETED BY ALL APPLICANTS REENLISTING FOR A SPECIFIC OPTION*

2. In connection with my reenlistment in the Regular Army for the   REGULAR ARMY
Reenlistment option, I hereby acknowledge that provided I meet required prerequisites I will be assigned as follows:
   IAW THE NEEDS OF THE ARMY

3. I have read and understand the provisions of the reenlistment option for which I am reenlisting. Furthermore, to avoid misunderstandings, I have recorded below in my own words and handwriting all spoken and written promises that have been made to me in connection with my enlistment in the Regular Army *(at end of statement, applicant will print the word "END")*.
   *In Accordance with the needs of the army "END".*

4. If reenlisting for the CONUS Station of Choice Reenlistment Option, I understand that my stabilization will commence on the date of reenlistment or upon arrival at my new station, whichever is later. I further understand that if I am subsequently placed on TDY in excess of 30 days, my stabilization will be extended by the number of days in excess of the initial 30 day period, unless I voluntarily waive my stabilization. It is also understood that if HQDA determines that in order to meet the operational needs of the Army, the unit or subordinate element must be deployed from the parent organization, I must deploy with the unit and no grounds for a broken reenlistment commitment will exist.

**DA FORM 3286, DEC 94**      EDITION OF SEP 79 IS OBSOLETE                                    USAPPC V1.00
ANNEX A

000470

5. In the event my enlistment commitment cannot be fulfilled, the alternative available to me will be as provided in AR 635-200, as of the date of my claim of unfulfilled enlistment commitment or erroneous enlistment is submitted. I understand that I will have a period of 30 days to elect an alternative or to request other training or assignment from the date I am advised that my selected option cannot be fulfilled or, where not formally advised, from the date I discover or should have discovered the grounds for submitting a claim. This period may be extended by the general courts-martial convening authority when necessary to determine the availability of my selected alternative. If I make no election within that period, my claim will be deemed to have been waived. I may withdraw any request for training or reassignment prior to approval and elect another alternative, but not thereafter.

## PART III - STATEMENT OF LAW VIOLATIONS AND PREVIOUSLY UNDISCLOSED CONDITIONS

6. Complete the statement in a below and answer questions b through f as appropriate, by placing a checkmark in the "YES" or "NO" column. In-service personnel immediately enlisting will list those violations occurring during their current term of service, and offenses not previously revealed.

a. I have read or have had explained to me, paragraphs 2-4 and 7-4, AR 604-10, which set forth the criteria *(reasons)* for discharge and types of discharge, and certify that I ☐ have ☐ have not *(check one)* engaged in disloyal or subversive activities as defined herein.

|  | YES | NO |
|---|---|---|
| b. Have you ever been rejected for enlistment or induction in any of the Armed Forces to include failure of the mental examinations administered by any MEPS or been discharged from previous service under other than honorable conditions, under Personnel Security Regulations, or by reason of unsuitability, or undesirable habits or traits of character, or for medical reasons? |  | X |
| c. Have you ever been arrested, cited, charged or held by Federal, State, County, City or other law enforcement authorities or by Juvenile Court or Juvenile Probation Officials for any violation of any Federal Law, State Law, County or Municipal Law, Regulation or Ordinance? |  | X |
| d. Have you ever been convicted of a felony or any other offense or adjudicated a youthful or juvenile delinquent? |  | X |
| e. Have you ever been imprisoned under sentence of any court? |  | X |
| f. Are you now or have you ever been on parole, probation supervision, under suspended sentence, or are you awaiting final action of charges against you? |  | X |

7. In the space below, give full details for any of the above questions to which you answered "YES." *(If additional space is required, continue on a separate sheet of paper and attach securely to this form.)*

| a. REF ITEM | b. OFFENSE (s) | c. DATE AND PLACE | d. DISPOSITION |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

8. UNDERSTANDING: I understand that should I intentionally conceal or misrepresent any information regarding my record of arrests or convictions or juvenile court adjudications, I may later be subject to disciplinary action under the Uniform Code of Military Justice *(UCMJ)* and/or discharged from the Service under other than honorable conditions.

## PART IV - DEPENDENCY STATEMENT

*TO BE COMPLETED BY ALL APPLICANTS*

9. Relationship and age of all persons who are dependent upon me for support are recorded below *(if none, so state)*:

| RELATIONSHIP | AGE | RELATIONSHIP | AGE | RELATIONSHIP | AGE |
|---|---|---|---|---|---|
| Redacted PII |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

10. UNDERSTANDING: I understand that if I am selected for enlistment in the Regular Army, I will be expected to accept such assignments as are in the best interest of the Service regardless of marital status and/or responsibility for dependents; and that it is my responsibility to make appropriate arrangements for the care of my dependents should I be required to perform duty in an area where dependents are not authorized.

11. I have read and understand the meaning of all statements contained in Parts I through IV of this form and agree to all conditions set forth therein. I certify that all answers to questions, statements and entries on this form are true, correct and complete, and that the Career Counselor has informed me that should I intentionally conceal any information required above, I may later be subject to disciplinary action or discharge upon its discovery.

| 12. SIGNATURE OF APPLICANT | 13. DATE | 14. SIGNATURE AND TITLE OF WITNESS |
|---|---|---|
|  | 3 FEB 2003 | BY REENLISTMENT NCO |

DA FORM 3286, DEC 94

Page 2 of 2

USAPPC V1.00

## REQUEST FOR REENLISTMENT OR EXTENSION IN THE REGULAR ARMY

For use of this form see AR 601-280; the proponent agency is ODCSPER.

### SECTION I - SOLDIER'S REQUEST

| 1. TO | 2. FROM |
|---|---|
| COMMANDER | SPC DAMON JAHRON CLAIBORNE |
| 528TH QM COMPANY | Redacted PII |
| FORT LEWIS, WA 98433 | 528TH QM COMPANY |
| | FORT LEWIS, WA 98433 |

3. REQUEST I BE AUTHORIZED TO *(Select one)*

[X] a. REENLIST IN THE ACTIVE COMPONENT.

[ ] b. EXTEND MY ENLISTMENT FOR THE FOLLOWING REASON: _____

4. ACCRUED LEAVE OPTIONS *(Select one)*

[ ] a. I DESIRE TO CASH IN _____ DAYS OF ACCRUED LEAVE.

[X] b. I DO NOT DESIRE TO CASH IN ACCRUED LEAVE.

[ ] c. I AM EXTENDING MY PRESENT ENLISTMENT AND HAVE BEEN COUNSELED ON CASHING IN ACCRUED LEAVE.

| 5. DATE | 6. SIGNATURE |
|---|---|
| 3 Feb 03 | *Damon Jahron Carter* |

### SECTION II - COMMANDER'S CERTIFICATION

7. COMMANDER'S DETERMINATION OF QUALIFICATION *(Select one)*

[X] a. SOLDIER IS FULLY QUALIFIED FOR REQUESTED ACTION.

[ ] b. SOLDIER IS NOT FULLY QUALIFIED AND REQUIRES WAIVER. *(Select 8b or 8c(1) below)*

[ ] c. SOLDIER IS FULLY QUALIFIED, BUT IS NOT RECOMMENDED FOR FURTHER SERVICE. *(Select 8c(2) below)*

8. COMMANDER'S DETERMINATION/RECOMMENDATION FOR CONTINUED SERVICE WITHIN THE ARMY *(Select one)*

[X] a. APPROVED.

[ ] b. RECOMMENDED APPROVAL. DA FORM 3072 IS ATTACHED.

[ ] c. DISAPPROVED.

[ ] (1) I DISAPPROVE THE SOLDIER'S REQUEST FOR WAIVER OF DISQUALIFICATION.

[ ] (2) I HAVE INITIATED A BAR TO REENLISTMENT UNDER THE PROVISIONS OF CHAPTER 6, AR 601-280.

9. TYPED NAME, RANK, AND BRANCH OF COMMANDER

BRIAN S. OLSON, CPT, QM

| 10. SIGNATURE | 11. DATE |
|---|---|
| | 3 Feb 03 |

**DA FORM 3340-R, DEC 94**          EDITION OF MAY 88 IS OBSOLETE

ANNEX B

IMMEDIATE REENLISTMENT

## ENLISTMENT/REENLISTMENT DOCUMENT
## ARMED FORCES OF THE UNITED STATES

5

### PRIVACY ACT STATEMENT

**AUTHORITY:** 5 USC 3331; 32 USC 708; 44 USC 708 AND 3101; 10 USC 133, 265, 275, 504, 510, 591, 672(d), 678, 837, 1007, 1071 through 1087; 1168, 1169, 1475 through 1480, 1553, 2107, 2122, 3012, 5031, 8012, 8033, 8496, and 9411; 14 USC 351 and 632; and Executive Order 9397, November 1943 (SSN).

**PRINCIPAL PURPOSE(S):** To record enlistment or reenlistment into the U.S. Armed Forces. This information becomes a part of the subject's military personnel records which are used to document promotion, reassignment, training, medical support, and other personnel management actions. The purpose of soliciting the SSN is for positive identification.

**ROUTINE USE(S):** This form becomes a part of the Service's Enlisted Master File and Field Personnel File. All uses of the form are internal to the relevant Service.

**DISCLOSURE:** Voluntary; however, failure to furnish personal identification information may negate the enlistment/reenlistment application.

### A. ENLISTEE/REENLISTEE IDENTIFICATION DATA

| 1. NAME *(Last, First, Middle)* <br> CLAIBORNE DAMON JAHRON | 2. SOCIAL SECURITY NUMBER <br> Redacted PII |
|---|---|
| 3. HOME OF RECORD *(Street, City, State, ZIP Code)* <br> Redacted PII | 4. PLACE OF ENLISTMENT/REENLISTMENT *(Mil. Installation, City, State)* <br> D CO 501ST MI BN <br> APO, AE 09110 |

| 5. DATE OF ENLISTMENT/ REENLISTMENT *(YYYYMMDD)* <br> 2001 FEB 02 | 6. DATE OF BIRTH *(YYYYMMDD)* <br> Redacted PII | 7. PREV MIL SVC UPON ENL/REENLIST | YEARS | MONTHS | DAYS |
|---|---|---|---|---|---|
| | | a. TOTAL ACTIVE MILITARY SERVICE | 06 | 00 | 04 |
| | | b. TOTAL INACTIVE MILITARY SERVICE | 05 | 07 | 16 |

### B. AGREEMENTS

**8.** I am enlisting/reenlisting in the United States *(list branch of service)*            ARMY

this date for        03        years and                    weeks beginning in pay grade            E4        .

The additional details of my enlistment/reenlistment are in Section C and Annex(es)

                                        A AND B

**a. FOR ENLISTMENT IN A DELAYED ENTRY/ENLISTMENT PROGRAM (DEP):**
I understand that I will be ordered to active duty as a Reservist unless I report to the place shown in item 4 above by *(list date (YYYYMMDD))* _____ for enlistment in the Regular component of the United States *(list branch of service)* _____ for not less than _____ years and _____ weeks. My enlistment in the DEP is in a nonpay status. I understand that my period in the DEP is **NOT** creditable for pay purposes upon entry into pay status. However, I also understand that this time is counted toward fulfillment of my military service obligation or commitment. I must maintain my current qualifications and keep my recruiter informed of any changes in my physical or dependency status, moral qualifications, and mailing address.

**b. REMARKS:** *(If none, so state.)*

(1) CONUS STATION OF CHOICE REENLISTMENT OPTION (FT LEWIS, WA) (FOWL) RCN: 1702558.

(2) NO BONUS ENTITLEMENT.

(3) NO WAIVER.

(4) 1ST REENLISTMENT.

c. The agreements in this section and attached annex(es) are all the promises made to me by the Government. **ANYTHING ELSE ANYONE HAS PROMISED ME IS NOT VALID AND WILL NOT BE HONORED.**

*(Initials of Enlistee/Reenlistee)*   D.C.                                        *(Continued on reverse side.)*

**DD FORM 4/1, AUG 1998 (EG)**      PREVIOUS EDITION IS OBSOLETE.                    USAPA V1.00

000473

## C. PARTIAL STATEMENT OF EXISTING UNITED STATES LAWS

**9. FOR ALL ENLISTEES OR REENLISTEES:** Many laws, regulations, and military customs will govern my conduct and require me to do things a civilian does not have to do. The following statements are not promises or guarantees of any kind. They explain some of the present laws affecting the Armed Forces which I cannot change but which Congress can change at any time.

a. My enlistment is more than an employment agreement. As a member of the Armed Forces of the United States, I will be:

(1) Required to obey all lawful orders and perform all assigned duties.

(2) Subject to separation during or at the end of my enlistment. If my behavior fails to meet acceptable military standards, I may be discharged and given a certificate for less than honorable service, which may hurt my future job opportunities and my claim for veteran's benefits.

(3) Subject to the military justice system, which means, among other things, that I may be tried by military courts-martial.

(4) Required upon order to serve in combat or other hazardous situations.

(5) Entitled to receive pay, allowances, and other benefits as provided by law and regulation.

b. Laws and regulations that govern military personnel may change without notice to me. Such changes may affect my status, pay, allowances, benefits, and responsibilities as a member of the Armed Forces **REGARDLESS** of the provisions of this enlistment/reenlistment document.

c. In the event of war, my enlistment in the Armed Forces continues until six (6) months after the war ends, unless my enlistment is ended sooner by the President of the United States.

**10. MILITARY SERVICE OBLIGATION FOR ALL MEMBERS OF THE ACTIVE AND RESERVE COMPONENTS, INCLUDING THE NATIONAL GUARD.**

a. FOR ALL ENLISTEES: If this is my initial enlistment, I must serve a total of eight (8) years. Any part of that service not served on active duty must be served in a Reserve Component unless I am sooner discharged.

b. If I am a member of a Reserve Component of an Armed Force at the beginning of a period of war or national emergency declared by Congress, or if I become a member during that period, my military service may be extended without my consent until six (6) months after the end of that period of war.

c. As a member of a Reserve Component, in time of war or national emergency declared by the Congress, I may be required to serve on active duty (other than for training) for the entire period of the war or emergency and for six (6) months after its end.

d. As a member of the Ready Reserve I may be required to perform active duty or active duty for training without my consent (other than as provided in item 8 of this document) as follows:

(1) In time of national emergency declared by the President of the United States, I may be ordered to active duty (other than for training) for not more than 24 consecutive months;

(2) I may be ordered to active duty for 24 months, and my enlistment may be extended so I can complete 24 months of active duty, if:

(a) I am not assigned to, or participating satisfactorily in, a unit of the Ready Reserve; and

(b) I have not met my Reserve obligation; and

(c) I have not served on active duty for a total of 24 months.

(3) I may be ordered to perform additional active duty training for not more than 45 days if I have not fulfilled my military service obligation and fail in any year to perform the required training duty satisfactorily. If the failure occurs during the last year of my required membership in the Ready Reserve, my enlistment may be extended until I perform that additional duty, but not more than six months.

(4) When determined by the President that it is necessary to support any operational mission, I may be ordered to active duty as prescribed by law, if I am a member of the Selected Reserve.

**11. FOR ENLISTEES/REENLISTEES IN THE NAVY, MARINE CORPS, OR COAST GUARD:** I understand that if I am serving on a naval vessel in foreign waters, and my enlistment expires, I will be returned to the United States for discharge as soon as possible consistent with my desires. However, if essential to the public interest, I understand that I may be retained on active duty until the vessel returns to the United States. If I am retained under these circumstances, I understand that I will be discharged not later than 30 days after my return to the United States; and, that except in time of war, I will be entitled to an increase in basic pay of 25 percent from the date my enlistment expires to the date of my discharge.

**12. FOR ALL MALE APPLICANTS:** Completion of this form constitutes registration with the Selective Service System in accordance with the Military Selective Service Act. Incident thereto the Department of Defense may transmit my name, permanent address, military address, Social Security Number, and birthdate to the Selective Service System for recording as evidence of the registration.

| NAME OF ENLISTEE/REENLISTEE *(Last, First, Middle)* | SOCIAL SECURITY NO. OF ENLISTEE/REENLISTEE |
|---|---|
| CLAIBORNE DAMON JAHRON | Redacted PII |

## D. CERTIFICATION AND ACCEPTANCE

**13a.** My acceptance for enlistment is based on the information I have given in my application for enlistment. If any of that information is false or incorrect, this enlistment may be voided or terminated administratively by the Government or I may be tried by a Federal, civilian, or military court and, if found guilty, may be punished.

I CERTIFY THAT I HAVE CAREFULLY READ THIS DOCUMENT. ANY QUESTIONS I HAD WERE EXPLAINED TO MY SATISFACTION. I FULLY UNDERSTAND THAT ONLY THOSE AGREEMENTS IN SECTION B OF THIS DOCUMENT ARE RECORDED ON THE ATTACHED ANNEX(ES) WILL BE HONORED. ANY OTHER PROMISES OR GUARANTEES MADE TO ME BY ANYONE ARE WRITTEN BELOW: *(If none, X "NONE" and initial.)*  ☑  NONE  *D C* *(initials of enlistee/reenlistee)*

| b. SIGNATURE OF ENLISTEE/REENLISTEE | c. DATE SIGNED *(YYYYMMDD)* |
|---|---|
| | 2001 FEB 02 |

**14. SERVICE REPRESENTATIVE CERTIFICATION**
a. On behalf of the United States *(list branch of service)* _____ ARMY
I accept this applicant for enlistment. I have witnessed the signature in item 13b to this document. I certify that I have explained that only those agreements in Section B of this form and the attached Annex(es) will be honored, and any other promises made by any person are not effective and will not be honored.

| b. NAME *(Last, First, Middle)* | c. PAY GRADE | d. UNIT/COMMAND NAME |
|---|---|---|
| RANDALL, JOHN M. | E6 | HHSC, 501ST MI BN |
| **a. SIGNATURE** | **f. DATE SIGNED** *(YYYYMMDD)* | **g. UNIT/COMMAND ADDRESS** *(City, State, ZIP Code)* |
| | 2001 FEB 02 | APO, AE 09110 |

## E. CONFIRMATION OF ENLISTMENT OR REENLISTMENT

**15. IN THE ARMED FORCES EXCEPT THE NATIONAL GUARD (ARMY OR AIR):**
I, _____ DAMON JAHRON CLAIBORNE _____, do solemnly swear (or affirm) that I will support defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God.

**16. IN THE NATIONAL GUARD (ARMY OR AIR):**
I, _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the State of _____ against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the Governor of _____ and the orders of the officers appointed over me, according to law and regulations. So help me God.

**17. IN THE NATIONAL GUARD (ARMY OR AIR):**
I do hereby acknowledge to have voluntarily enlisted/reenlisted this _____ day of _____, in the _____ National Guard and as a Reserve of the United States *(list branch of service)* _____ with membership in the _____ National Guard of the United States for a period of _____ years, _____ months, _____ days, under the conditions prescribed by law, unless sooner discharged by proper authority.

| 18.a. SIGNATURE OF ENLISTEE/REENLISTEE | b. DATE SIGNED *(YYYYMMDD)* |
|---|---|
| | 2001 FEB 02 |

**19. ENLISTMENT/REENLISTMENT OFFICER CERTIFICATION**
a. The above oath was administered, subscribed, and duly sworn to (or affirmed) before me this date.

| b. NAME *(Last, First, Middle)* | c. PAY GRADE | d. UNIT/COMMAND NAME |
|---|---|---|
| MCINTOSH, BRUCE H. | W2 | D CO 501ST MI BN |
| **e. SIGNATURE** | **f. DATE SIGNED** *(YYYYMMDD)* | **g. UNIT/COMMAND ADDRESS** *(City, State, ZIP Code)* |
| | 2001 FEB 02 | APO, AE 09110 |

**DD FORM 4/2, AUG 1998**    PREVIOUS EDITION IS OBSOLETE.

**000475**

# STATEMENTS FOR ENLISTMENT

'O@QSR H SGQNTFG HU(

For use of this form, see AR 601-280; the proponent agency is ODCSPER.

## DATA REQUIRED BY THE PRIVACY ACT OF 1974

| | |
|---|---|
| AUTHORITY: | Sections 504, 505, 508, and 510, Title 10, USC. |
| PRINCIPAL PURPOSE: | To determine eligibility for reenlistment. |
| ROUTINE USES: | Information may be referred to appropriate authorities if disciplinary action or discharge for fraudulent enlistment/reenlistment is appropriate. |
| DISCLOSURE: | Disclosure of personal information is voluntary, however, failure to furnish information requested may result in denial of reenlistment in the US Army. |

## PART I - GENERAL STATEMENT OF UNDERSTANDING

SN AD BNLOKDSDC AX @KK @OOKHB@MSR ENQ QDDMKHRSLDMS HM SGD QDFTK@Q @QLX

1. ACKNOWLEDGEMENT:  In connection with my reenlistment in the Regular Army, I hereby acknowledge that:

   a.  All promises made to me are contained in Item 10 of DD Form 4, my reenlistment agreement and Part II of this statement.

   b.  I have not been guaranteed attendance at an MOS-producing Army service school or Airborne training unless the title of the school course or Airborne training has been entered in Item 10, DD Form 4.

   c.  Should I make any material omission or misstatement of fact in connection with any of my enlistment documents, (1) I may be subject to early separation from this enlistment, or (2) I will complete, if permitted, the period for which I enlisted in any assignment deemed appropriate in accordance with the needs of the Army.

   d.  Should I choose an option which requires a security clearance and I am not granted such clearance after I have enlisted, or my granted clearance is revoked after I have enlisted, I agree to accept any assignment in accordance with the needs of the Army and I will complete the period for which I enlisted.

   e.  Law violations for which I have been convicted or have had adverse adjudications as a juvenile or youthful offender may be cause for denial of security clearance.

   f.  My choice of initial enlistment option shown in item 10 of my DD Form 4 does not constitute any guarantee that a substantial part of my enlistment will be served in the option, and the needs of the service may result in my transfer at any time    'nsgdq sg'm 'r l'x ad oqnuhcdc ax sgd rodbhehb noshnm rdkdbsde/any other assignment within the continental United States or to an oversea command. I am aware that due to the needs of the Army I may be subject to involuntary retraining and/or reclassification.

   g.  Should my enlistment involve a commitment for specialized training or selective assignment, conduct on my part occurring after my enlistment which results in disciplinary action may be just cause for my transfer to any other assignment within the continental United States or to an oversea command.

   h.  My acceptance for enlistment carries no promise whatsoever relative to furnishing transportation for dependents to oversea commands or to the furnishing of family quarters either in oversea commands or in the continental United States.

   i.  If, after my enlistment for a specific option, I should fail to meet required qualifications which cannot be determined prior to my enlistment, I understand that I will not be offered another enlistment option, but will be trained and assigned in accordance with the needs of the Army and will be required to complete the term of service for which I enlisted.

   j.  If, after my enlistment in the Regular Army, I should waive my initial enlistment option as listed in Item 10, DD Form 4, and in Part II of my statement for enlistment for any reason whatsoever, this initial option will not be reinstated at a later date.

   k.  I am not consciously opposed by reason of religious training or belief, to bearing arms or to participation, or training for war in any form.

   l.  I am aware that in the event of armed conflict involving the United States, the Secretary of the Army may declare null and void any portion of my enlistment option pertaining to training, assignment, or duty, if he determines such action to be necessary.

## PART II - IN-SERVICE REENLISTMENT OPTION

SN AD BNLOKDSDC AX @OOKHB@MSR QDDMKHRSHMF ENQ @ RODBHEHB NOSHNM

2. In connection with my reenlistment in the Regular Army for the    CONUS STATION-OF-CHOICE
Reenlistment option, I hereby acknowledge that provided I meet required prerequisites I will be assigned as follows:

FORT LEWIS, WASHINGTON

3. I have read and understand the provisions of the reenlistment option for which I am reenlisting.  Furthermore, to avoid misunderstandings, I have recorded below in my own words and handwriting all spoken and written promises that have been made to me in connection with my enlistment in the Regular Army     'r s dmc ne rs'sddms+ 'ookhb'ms vhkk oqhms sgd vnqc !DMC!(-

*I am reenlisting for Ft Lewis Washington and END. D.C.*

4. If reenlisting for the CONUS Station of Choice Reenlistment Option, I understand that my stabilization will commence on date of reenlistment or upon arrival at new stateion, whichever is later.  I further understand that if I am subsequently placed on TDY in excess of 30 days, my stabilization will be extended by the number of days in excess of the initial 30-day period, unless I voluntarily waive my stabilization.  It is also understood that if HQDA determines that in order to meet the operational needs of the Army, the unit or subordinate element must be deployed from the parent organization, I must deploy with the unit and no grounds for a broken reenlistment commitment will exist.

| | | |
|---|---|---|
| DA FORM 3286, DEC 94 | EDITION OF SEP 79 IS OBSOLETE | USAPPC V1.00 |
| ANNEX A | | |

**000476**

5.  In the event my enlistment commitment cannot be fulfilled, the alternatives available to me will be as provided in AR 635-200, as of the date of my claim of unfulfilled enlistment commitment or erroneous enlistment is submitted.  I understand that I will have a period of 30 days to elect an alternative or to request other training or assignment from the date I am advised that my selected option cannot be fulfilled or, where not formally advised, from the date I discover or should have discovered the grounds for submitting a claim.  This period may be extended by the general courts-martial convening authority when necessary to determine the availability of my selected alternative.  If I make no election within that period, my claim will be deemed to have been waived.  I may withdraw any request for training or reassignment prior to approval and elect another alternative, but not thereafter.

## PART III - STATEMENT OF LAW VIOLATIONS AND PREVIOUS CONDITIONS

6.  Complete the statement in a below and answer questions b through f as appropriate, by placing a checkmark under the "YES" or "NO" column.  In-service personnel immediately enlisting will list those violations occurring during current term of service, and offenses not previously revealed.

   a.  I have read or have had explained to me, paragraphs 2-4 and 7-4, AR 604-10, which set forth the criteria  *'qd'mmr(*  for discharge and types of discharge and certify that I [   ] have  √ *DC.* have not  *'bgdbj nmd(*  engaged in disloyal or subversive activities as defined herein.

|  | YES | NO |
|---|---|---|
| b.  Have you ever been rejected for enlistment or induction in any of the Armed Forces to include failure of the mental examinations administered by any MEPS or been discharged from previous service under other than honorable conditions, under Personnel Security Regulations, or by reason of unsuitability, or undesirable habits or traits of character, or for medical reasons? |  | √ |
| c.  Have you ever been arrested, cited, charged or held by Federal, State, County, City or other law enforcement authorities or by Juvenile Court of Juvenile Probation Officials for any violation of any Federal Law, State Law, County or Municipal Law, Regulation or Ordnance? |  | √ |
| d.  Have you ever been convicted of a felony or any other offense, or adjudicated a youthful or juvenile delinquent? |  | √ |
| e.  Have you ever been imprisoned under sentence of any court? |  | √ |
| f.  Are you now or have you ever been on parole, probation supervision, under suspended sentence, or are you awaiting final action of charges against you? |  | √ |

7.  In the space below, give full details for any of the above questions to which you answered "YES".  *'He 'cchshnm'k ro'bd hr qdpthqdc+ bnmshmtd nm ' rdodq'sd rgdds ne o'odq 'mc 'ss'bgdc rdbtqddx sn sghr enql(-*

| a.  REF ITEM | b.  OFFENSE *'η* | c.  DATE AND PLACE | d.  DISPOSITION |
|---|---|---|---|
|  | NONE |  |  |

8.  UNDERSTANDING:  I understand that should I intentionally conceal or misrepresent any information regarding my record of arrests or convictions or juvenile court adjudications, I may later be subject to disciplinary action under the Uniform Code of Military Justice (UCMJ) and/or discharged from the Service under other than honorable conditions.

## PART IV - DEPENDENCY STATEMENT
### SN AD BNLOKDSDC AX @KK @OOKHB@MSR

9.  Relationship and age of all persons who are dependent upon me for support are recorded below  *'He mnmd+ rn rs'sd(9*

| RELATIONSHIP | AGE | RELATIONSHIP | AGE | RELATIONSHIP | AGE |
|---|---|---|---|---|---|
| Redacted PII |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

10.  UNDERSTANDING:  I understand that if I am selected for enlistment in the Regular Army, I will be expected to accept such assignments as are in the best interest of the Service regardless of marital status and/or responsibility for dependents;  and that it is my responsibility to make appropriate arrangements for the care of my dependents should I be required to perform duty in an area where dependents are not authorized.

11.  I have read and understand the meaning of all statements contained in Parts I through IV of the form and agree to all conditions set forth therein.  I certify that all answers to questions, statements, and entries on the form are true, correct, and complete, and that the Career Counselor has informed me that should I intentionally conceal any information required above, I may later be subject to disciplinary action or discharge upon its discovery.

| 12.  SIGNATURE OF APPLICANT | 13.  DATE | 14.  SIGNATURE AND TITLE OF WITNESS |
|---|---|---|
| *[signature]* | 2001 FEB 02 | *John M. Kamola*  BN CAREER COUNSELOR |

DA FORM 3286, DEC 94

000477

## REQUEST FOR REENLISTMENT OR EXTENSION IN THE REGULAR ARMY

For use of this form see AR 601-280; the proponent agency is ODCSPER.

### SECTION I - SOLDIER'S REQUEST

| 1. TO | 2. FROM |
|---|---|
| COMMANDER<br>D CO 501ST MI BN<br>APO, AE 09110 | SPC DAMON JAHRON CLAIBORNE<br>Redacted PII<br>D CO 501ST MI BN<br>APO, AE 09110 |

3. REQUEST I BE AUTHORIZED TO  *'Rdkdbs nmd(*

☒ a. REENLIST IN THE ACTIVE COMPONENT.

☐ b. EXTEND MY ENLISTMENT FOR THE FOLLOWING REASON: _____

4. ACCURED LEAVE OPTIONS  *'Rdkdbs nmd(*

☐ a. I DESIRE TO CASH IN _____ DAYS OF ACCRUED LEAVE.

☒ b. I DO NOT DESIRE TO CASH IN ACCURED LEAVE.

☐ c. I AM EXTENDING MY PRESENT ENLISTMENT AND HAVE BEEN COUNSELED ON CASHING IN ACCURED LEAVE.

| 5. DATE | 6. SIGNATURE |
|---|---|
| 2001 FEB 02 | |

### SECTION II - COMMANDER'S CERTIFICATION

7. COMMANDER'S DETERMINATION OF QUALIFICATION  *'Rdkdbs nmd(*

☐ a. SOLDIER IS FULLY QUALIFIED FOR REQUESTED ACTION.

☐ b. SOLDIER IS NOT FULLY QUALIFIED AND REQUIRES WAIVER. *'Rdkdbs 7a nq 7b'0( adknv(*

☐ c. SOLDIER IS FULLY QUALIFIED, BUT IS NOT RECOMMENDED FOR FURTHER SERVICE.  *'Rdkdbs 7b'1( adknv(*

8. COMMANDER'S DETERMINATION/RECOMMENDATION FOR CONTINUED SERVICE WITHIN THE ARMY *'Rdkdbs nmd(*

☐ a. APPROVED.

☐ b. RECOMMENDED APPROVAL. DA FORM 3072 IS ATTACHED.

☐ c. DISAPPROVED.

☐ (1) I DISAPPROVE THE SOLDIER'S REQUEST FOR WAIVER OF DISQUALIFICATION.

☐ (2) I HAVE INITIATED A BAR TO REENLISTMENT UNDER THE PROVISIONS OF CHAPTER 8, AR 601-280.

9. TYPED NAME, RANK, AND BRANCH OF COMMANDER

BRUCE H. MCINTOSH, CW2, OD

| 10. SIGNATURE | 11. DATE |
|---|---|
| | 2001 FEB 02 |

**DA FORM 3340-R, DEC 94**    EDITION OF MAY 88 IS OBSOLETE

ANNEX B

000478

# CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

| 1. NAME (Last, First, Middle) | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY N |
|---|---|---|
| CLAIBORNE, DAMON JAHRON | ARMY/RA | Redacted PII |

| 4.a. GRADE, RATE OR RANK | 4.b. PAY GRADE | 5. DATE OF BIRTH (YYMMDD) | 6. RESERVE OBLIG. TERM. DATE |
|---|---|---|---|
| SPC | E4 | Redacted PII | Year 07 Month 02 Day 20 |

| 7.a. PLACE OF ENTRY INTO ACTIVE DUTY | 7.b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known) |
|---|---|
| LOS ANGELES, CA | Redacted PII |

| 8.a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | 8.b. STATION WHERE SEPARATED |
|---|---|
| 870TH TRANS CO FORSCOM FC | FT EUSTIS, VA |

| 9. COMMAND TO WHICH TRANSFERRED | 10. SGLI COVERAGE | None |
|---|---|---|
| USAR CONTROL GROUP (REINFORCEMENT) ARPERCEN 9700 PAGE BLVD ST LOUIS, MO 63132-5200 | Amount: $ 100,000 | |

| 11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.) | 12. RECORD OF SERVICE | Year(s) | Month(s) | Day(s) |
|---|---|---|---|---|
| 88H10, CARGO SPECIALIST 2 YRS & 8 MOS// NOTHING FOLLOWS | a. Date Entered AD This Period | 89 | 07 | 20 |
| | b. Separation Date This Period | 92 | 07 | 19 |
| | c. Net Active Service This Period | 03 | 00 | 00 |
| | d. Total Prior Active Service | 00 | 00 | 00 |
| | e. Total Prior Inactive Service | 00 | 00 | 00 |
| | f. Foreign Service | 00 | 11 | 09 |
| | g. Sea Service | 00 | 00 | 00 |
| | h. Effective Date of Pay Grade | 91 | 01 | 01 |

| 13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service) |
|---|
| ARMY SERVICE RIBBON//NATIONAL DEFENSE SERVICE MEDAL//GOOD CONDUCT MEDAL//SOUTHWEST ASIA SERVICE MEDAL W/3STARS//KUWAITI LIBERATION MEDAL//MARKSMAN BADGE (M16 RIFLE)//SHARPSHOOTER BADGE (HAND GRENADE)//NOTHING FOLLOWS |

| 14. MILITARY EDUCATION (Course title, number of weeks, and month and year completed) |
|---|
| CARGO SPECIALIST CRS, 9 WKS (1989)//NOTHING FOLLOWS |

| 15.a. MEMBER CONTRIBUTED TO POST-VIETNAM ERA VETERANS' EDUCATIONAL ASSISTANCE PROGRAM | Yes | No | 15.b. HIGH SCHOOL GRADUATE OR EQUIVALENT | Yes | No | 16. DAYS ACCRUED LEAVE PAID |
|---|---|---|---|---|---|---|
| | | Y | | Y | | 15 |

| 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | Yes | No |
|---|---|---|
| | | |

| 18. REMARKS |
|---|
| BLOCK 6 INCLUDES PERIOD OF DEP: 890221-890719//SUBJECT TO ACTIVE DUTY RECALL AND/OR ANNUAL SCREENING//SERVICE IN SOUTHWEST ASIA 901013-910921//THE INFORMATION CONTAINED HEREIN IS SUBJECT TO COMPUTER MATCHING WITHIN THE DEPARTMENT OF DEFENSE OR WITH ANY OTHER AFFECTED FEDERAL OR NON-FEDERAL AGENCY FOR VERIFICATION PURPOSES AND TO DETERMINE ELIGIBILITY FOR, AND/OR CONTINUED COMPLIANCE WITH THE REQUIREMENTS OF A FEDERAL BENEFIT PROGRAM//NOTHING FOLLOWS |

CERTIFIED TRUE COPY OF ORIGINAL

97 12 17

HAROLD K. CHUN
MSG, USA
SR GUIDANCE COUNSELOR

| 19.a. MAILING ADDRESS AFTER SEPARATION (Include Zip Code) | 19.b. NEAREST RELATIVE (Name and address - include Zip Code) |
|---|---|
| Redacted PII | Redacted PII |

| 20. MEMBER REQUESTS COPY 6 BE SENT TO | CA | DIR. OF VET AFFAIRS | Yes | No | 22. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title and signature) |
|---|---|---|---|---|---|
| 21. SIGNATURE OF MEMBER BEING SEPARATED | | | | | |
| SOLDIER NOT AVAILABLE TO SIGN | | | | | ROSE H. ANDERSON  CHIEF, TRANSITION POINT |

## SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only)

| 23. TYPE OF SEPARATION | 24. CHARACTER OF SERVICE (Include upgrades) |
|---|---|
| RELEASE FROM ACTIVE DUTY | HONORABLE |

| 25. SEPARATION AUTHORITY | 26. SEPARATION CODE | 27. REENTRY CODE |
|---|---|---|
| AR 635-200, CHAP 4 | LBK | RE-1 |

| 28. NARRATIVE REASON FOR SEPARATION |
|---|
| EXPIRATION TERM OF SERVICE |

| 29. DATES OF TIME LOST DURING THIS PERIOD | 30. MEMBER REQUESTS COPY 4 |
|---|---|
| NONE | Initials |

| DD Form 214, NOV 88 | Previous editions are obsolete. | MEMBER-4 |
|---|---|---|

000479

| RECORD OF MILITARY PROCESSING – ARMED FORCES OF THE UNITED STATES | Form Approved |
|---|---|
| | OMB No. 0704-0173 |
| Before completing this form, read Privacy Act Statement, Warning, and Instructions. | Exp Date: Jun 30, 1991 |

Public reporting burden for this collection of information is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to Washington Headquarters Services, Directorate for Information Operations and Reports, 1215 Jefferson Davis Highway, Suite 1204, Arlington, VA 22202-4302, and to the Office of Management and Budget, Paperwork Reduction Project (0704-0173), Washington, DC 20503.

| A. SERVICE PROCESSING FOR DAR | B. NO. DAYS PRIOR SERVICE (Complete (1),(2),or (3)) NONE Y <365 >365 | (1) DIEUS (YYMMDD) (2) DIERF (YYMMDD) (3) DIERC (YYMMDD) | C. SELECTIVE SERVICE CLASSIFICATION | D. SELECTIVE SERVICE REGISTRATION NO. |
|---|---|---|---|---|

### SECTION I – PERSONAL DATA

| 1. SOCIAL SECURITY NUMBER: Redacted PII | 2. NAME: CLAIBORNE DAMON JAHRON | 3. ALIASES: |
|---|---|---|

| 4. CURRENT ADDRESS (Street, City, County, State, Country, ZIP Code) Redacted PII | 5. HOME OF RECORD ADDRESS (Street, City, County, State, Country, ZIP Code) Redacted PII |
|---|---|

6. CITIZENSHIP (X one): CA
X a. U.S. AT BIRTH
  X (1) NATIVE BORN
  ___ (2) BORN ABROAD OF U.S. PARENT(S)
___ b. U.S. NATURALIZED
___ c. U.S. DERIVED THROUGH NATURALIZATION OF PARENT(S)
___ d. U.S. NON-CITIZEN NATIONAL
___ e. IMMIGRANT ALIEN (Specify)
___ f. NON-IMMIGRANT FOREIGN NATIONAL (Specify)

7. SEX: M
X a. MALE
___ b. FEMALE

9. ETHNIC GROUP (Specify): Y
NONE

10. MARITAL STATUS (Specify): S  11. NUMBER OF DEPENDENTS: 0
SINGLE

8. POPULATION GROUP: N
___ a. WHITE
X b. BLACK
___ c. ASIAN
___ d. AMERICAN INDIAN
___ e. OTHER (Specify)

| 12. DATE OF BIRTH (YYMMDD): Redacted PII | 13. RELIGIOUS PREFERENCE (Optional): NRP | 14. EDUCATION: 12L | 15. PROFICIENT IN FOREIGN LANGUAGE: N |
|---|---|---|---|

| 16. VALID DRIVERS LICENSE: Y (If yes, list state, number and exp date) HI  Redacted PII  2001/02/22 | 17. PLACE OF BIRTH: (City, State and Country) Redacted PII |
|---|---|

### SECTION II – EXAMINATION AND ENTRANCE DATA PROCESSING CODES
For office use only – Do not write in this section – Go on to page 2, question 23

18. APTITUDE TEST RESULTS

| a. TEST ID: 02D | b. TEST SCORES: | GS | AR | WK | PC | NO | CS | AS | MK | MC | BI | VE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| APFQT PERCENTILE: 37 | | 14 | 12 | 30 | 11 | 26 | 40 | 17 | 07 | 11 | 11 | 41 |

19. DEP ENLISTMENT DATA

| a. DATE OF DEP ENL(YYMMDD) | b. PROJ AD DATE(YYMMDD) | c. ES | d. RECRUITER IDENT | e. PROG ENL FOR | f. T-E MOS/AFS | g. WAIVER |
|---|---|---|---|---|---|---|
| 97/12/17 | 98/01/28 | 3 | Redacted PII | | 77P10 | YYY |

20. ACCESSION DATA

| a. ENL DATE | b. AD SVC DATE | c. PAY ENT DATE | d. TOE | e. WAIVER | f. PAY GRD | g. DATE OF GRD | h. ES | i. ED GRD COMPL |
|---|---|---|---|---|---|---|---|---|
| 98/01/28 | 95/01/28 | 89/07/20 | 3 | YYY | E04 | 98/01/28 | 1 | 12L |

| j. RECRUITER IDENT | k. PROG ENLIST FOR | l. T-E MOS/AFS | m. PMOS/AFS | n. YOUTH | o. OA | p. TRANSFER TO (UIC) |
|---|---|---|---|---|---|---|
| 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 | DPBTB | 77F10 | 77F000 | YYO | FY | FTJACK |

21. SERVICE RQ CDS | 0 | 1 | 0 | 2 | 1 | 3 | B | 4 | | E | 5 | S | 6 | P | 7 | C | 8 | | M | 9 | 7 | 10 | 0 | 11 | 0 | 12 | | 0 | 13 | 9 | 14 | 6 | 15 | 0 | 16 | 9 | 17 | 4 | 18 | 0 | 19 | 8 | 20 |
| 7 | 21 | 0 | 22 | 9 | 23 | 0 | 24 | | 0 | 25 | 4 | 26 | 0 | 27 | 0 | 28 | | 9 | 29 | 7 | 30 | 0 | 31 | 9 | 32 | | 2 | 33 | 3 | 34 | 8 | 35 | 3 | 36 | 0 | 37 | 9 | 38 | 7 | 39 | 0 | 40 | | 9 | 41 | 1 | 42 | 2 | 43 | 1 | 44 |
| 1 | 45 | 3 | 46 | 6 | 47 | H | 48 | 5 | 49 | S | 50 | N | 51 | 0 | 52 | | 0 | 53 | 0 | 54 | 0 | 55 | 0 | 56 | | 0 | 57 | 0 | 58 | 0 | 59 | 0 | 60 | | H | 61 | J | 62 | 0 | 63 | 0 | 64 | | 0 | 65 | 0 | 66 | 0 | 67 | E | 68 |
| 0 | 69 | 0 | 70 | __ | 71 | __ | 72 | | __ | 73 | __ | 74 | __ | 75 | __ | 76 | | __ | 77 | __ | 78 | __ | 79 | __ | 80 | | __ | 81 | __ | 82 | __ | 83 | __ | 84 | | __ | 85 | __ | 86 | __ | 87 | __ | 88 | | __ | 89 | __ | 90 | __ | 91 | __ | 92 |
| __ | 93 | __ | 94 | __ | 95 | __ | 96 | | __ | 97 | __ | 98 | __ | 99 | __ | 100 | | __ | 101 | __ | 102 | __ | 103 | __ | 104 | | __ | 105 | __ | 106 | __ | 107 | __ | 108 | | __ | 109 | __ | 110 | __ | 111 | __ | 112 | | __ | 113 | __ | 114 | __ | 115 | __ | 116 |
| __ | 117 | __ | 118 | __ | 119 | __ | 120 | | __ | 121 | __ | 122 | __ | 123 | __ | 124 | | __ | 125 | __ | 126 | __ | 127 | __ | 128 | | __ | 129 | __ | 130 | __ | 131 | __ | 132 | | __ | 133 | __ | 134 | __ | 135 | __ | 136 | | __ | 137 | __ | 138 | __ | 139 | __ | 140 |

22. DEP/ACCESSION RECORD (to be completed by MEPS personnel)

| WRK AND STATUS CODE | DATE OF ACTION | Q/C | WRK AND STATUS CODE | DATE OF ACTION | Q/C |
|---|---|---|---|---|---|
| | | | | | |

DD Form 1966/1(ADP), JAN 89   Previous editions are obsolete.   THIS PAGE FOR MEPS USE ONLY   DATE: 980128   TIME: 084904   PAGE 1

**000480**

| 20. NAME (Last, First, Middle Initial) | CLAIBORNE DAMON | 21. SOCIAL SECURITY NUMBER Redacted PII |

### SECTION III - OTHER PERSONAL DATA

**22. EDUCATION**

a. List all high schools and colleges attended. (List dates in YYMM format.) | | | | | (5) GRADUATE |

| (1) FROM | (2) TO | (3) NAME OF SCHOOL | (4) LOCATION | YES | NO |
|---|---|---|---|---|---|
| 9/87 | 6/89 | MANUAL ARTS | LOS ANGELES | X | |
| 9/86 | 6/87 | SAN PEDRO H.S. | SAN PEDRO | | X |
| 9/85 | 6/86 | CARSON H.S. | CARSON CITY | | X |

| | | | | YES | NO |
|---|---|---|---|---|---|
| b. Have you ever been enrolled in ROTC, Junior ROTC, Sea Cadet Program or Civil Air Patrol? | | | | | X |

**23. MARITAL / DEPENDENCY STATUS AND FAMILY DATA** (If "Yes," explain in Section VI, "Remarks.")

| | YES | NO |
|---|---|---|
| a. Is anyone dependent upon you for support? | | X C. |
| b. Is there any court order or judgment in effect that directs you to provide alimony or support for children? | | X C. |
| c. Do you have an immediate relative (father, mother, brother, or sister) who: (1) is now a prisoner of war or is missing in action (MIA); or (2) died or became 100% permanently disabled while serving in the Armed Services? | | X C. |
| d. Are you the only living child in your immediate family? | | X C. |

**24. PREVIOUS MILITARY SERVICE OR EMPLOYMENT WITH THE US GOVERNMENT** (If "Yes," explain in Section VI, "Remarks.")

| | | |
|---|---|---|
| a. Are you now or have you ever been in any regular or reserve branch of the Armed Forces or in the Army National Guard or Air National Guard? | X C. | |
| b. Have you ever been rejected for enlistment, reenlistment, or induction by any branch of the Armed Forces of the United States? | | X C. |
| c. Are you now or have you ever been a deserter from any branch of the Armed Forces of the United States? | | X C. |
| d. Have you ever been employed by the United States Government? | X C. | |
| e. Are you now drawing, or do you have an application pending, or approval for: retired pay, disability allowance, severance pay, or a pension from any agency of the government of the United States? | | I. C |

**25. ABILITY TO PERFORM MILITARY DUTIES** (If "Yes," explain in Section VI, "Remarks.")

| | | |
|---|---|---|
| a. Are you now or have you ever been a conscientious objector? (That is, do you have, or have you ever had, a firm, fixed, and sincere objection to participation in war in any form or to the bearing of arms because of religious belief or training?) | | D. C |
| b. Have you ever been discharged by any branch of the Armed Forces of the United States for reasons pertaining to being a conscientious objector? | | D. C |
| c. Is there anything which would preclude you from performing military duties or participating in military activities whenever necessary (i.e., do you have any personal restrictions or religious practices which would restrict your availability?) | | D. C |

**26. DRUG USE AND ABUSE** (If "Yes," explain in Section VI, "Remarks.")

| | | |
|---|---|---|
| Have you ever tried or used or possessed any narcotic (to include heroin or cocaine), depressant (to include quaaludes), stimulant, hallucinogen (to include LSD or PCP), or cannabis (to include marijuana or hashish), or any mind-altering substance (to include glue or paint), or anabolic steroid, except as prescribed by a licensed physician? | | D. C |

### SECTION IV - CERTIFICATION

**27. CERTIFICATION OF APPLICANT** (Your signature in this block must be witnessed by your recruiter.)

a. I certify that the information given by me in this document is true, complete, and correct to the best of my knowledge and belief. I understand that I am being accepted for enlistment based on the information provided by me in this document; that if any of the information is knowingly false or incorrect, I could be tried in a civilian or military court and could receive a less than honorable discharge which could affect my future employment opportunities.

| b. TYPED OR PRINTED NAME (Last, First, Middle Initial) | c. SIGNATURE | d. DATE SIGNED (YYMMDD) |
|---|---|---|
| CLAIBORNE DAMON JAHRON | | 971203 |

**28. OATA VERIFICATION BY RECRUITER** (Enter description of the actual documents used to verify the following items.)

| a. NAME (X one) | b. AGE (X one) | c. CITIZENSHIP (X one) |
|---|---|---|
| X (1) BIRTH CERTIFICATE | X (1) BIRTH CERTIFICATE | X (1) BIRTH CERTIFICATE |
| (2) OTHER (Explain) | (2) OTHER (Explain) | (2) OTHER (Explain) |
| d. SOCIAL SECURITY NUMBER (SSN) (X one) | e. EDUCATION (X one) | f. OTHER DOCUMENTS USED |
| X (1) SSN CARD | (1) DIPLOMA | |
| (2) OTHER (Explain) | X (2) OTHER (Explain) DD 214 | |

DD Form 1966/2, APR 94          PREVIOUS EDITION MAY BE USED.          Page 2

| 29. NAME *(Last, First, Middle Initial)* | 30. SOCIAL SECURITY NUMBER |
|---|---|
| CLAIBORNE DAMON | Redacted PII |

**31. CERTIFICATION OF WITNESS**

a. I certify that I have witnessed the applicant's signature above and that I have verified the data in the documents required as prescribed by my directives. I further certify that I have not made any promises or guarantees other than those listed and signed by me. I understand my liability to trial by courts-martial under the Uniform Code of Military Justice should I effect or cause to be effected the enlistment of anyone known by me to be ineligible for enlistment.

| b. TYPED OR PRINTED NAME *(Last, First, Middle Initial)* | c. PAY GRADE | d. RECRUITER I.D. | e. SIGNATURE | f. DATE SIGNED *(YYMMDD)* |
|---|---|---|---|---|
| TAUALA, DAVE P | E-6 | Redacted PII | | 971208 |

**32. SPECIFIC OPTION / PROGRAM ENLISTED FOR, MILITARY SKILL, OR ASSIGNMENT TO A GEOGRAPHICAL AREA GUARANTEES**

a. SPECIFIC OPTION / PROGRAM ENLISTED FOR *(Completed by Guidance Counselor, MEPS Liaison NCO, etc., as specified by sponsoring service - use clear text English.)* IAW AR C001-210 CHAPTER 9 PROGRAM 9A US ARMY TRAINING ENLISTMENT PROGRAM REQUEST OPTION 3   7AF10  3YR 00 WKS

| b. I fully understand that I will not be guaranteed any specific military skill or assignment to a geographic area except as shown in Item 32.a. above and annexes attached to my Enlistment/Reenlistment Document (DD Form 4). | c. APPLICANT'S INITIALS D.C. |
|---|---|

**33. CERTIFICATION OF RECRUITER OR ACCEPTOR**

a. I certify that I have reviewed all information contained in this document and, to the best of my judgment and belief, the applicant fulfills all legal policy requirements for enlistment. I accept him/her for enlistment on behalf of the United States *(Enter Branch of Service)* ARMY and certify that I have not made any promises or guarantees other than those listed in Item 32 above. I further certify that service regulations governing such enlistments have been strictly complied with and any waivers required to effect applicant's enlistment have been secured and are attached to this document.

| b. TYPED OR PRINTED NAME *(Last, First, Middle Initial)* | c. PAY GRADE | d. RECRUITER I.D. OR ORGANIZATION | e. SIGNATURE | f. DATE SIGNED *(YYMMDD)* |
|---|---|---|---|---|
| CHUN, HAROLD K | E-8 | Redacted PII | | 980128 |

**SECTION V - RECERTIFICATION**

**34. RECERTIFICATION BY APPLICANT AND CORRECTION OF DATA AT THE TIME OF ACTIVE DUTY ENTRY**

a. I have reviewed all information contained in this document this date. That information is still correct and true to the best of my knowledge and belief. If changes were required, the original entry has been marked "See Item 34" and the correct information is provided below.

| b. ITEM NUMBER | c. CHANGE REQUIRED |
|---|---|
| | NONE (980128) D.C |

| d. APPLICANT | | e. WITNESS | | |
|---|---|---|---|---|
| (1) SIGNATURE | (2) DATE SIGNED *(YYMMDD)* | (1) TYPED OR PRINTED NAME | (2) RANK / GRADE | (3) SIGNATURE |
| | 980128 | CHUN, HAROLD K | MSG/E8 | |

**SECTION VI - REMARKS** *(Specify item(s) being continued by item number. Continue on separate pages if necessary.)*

★ 23 a.                    Redacted PII            (DAUGHTER) - ILLEGITIMATE, NOT REQUIRED
CCN: C0914508RD    BY HAWAII STATE LAW TO PROVIDE ANY SUPPORT.
MOS 88H IS FROZEN    AUTHORIZED RETRAINING

I UNDERSTAND THAT I MAY BE REQUIRED TO ATTEND AN ADDITIONAL 5 WEEKS OF TRAINING IF I AM SELECTED FOR AIT H-7 *Damon*
I UNDERSTAND THAT I MUST POSSESS A VALID DRIVERS LICENSE WHICH DOES NOT EXPIRE BEFORE THE COMPLETION OF A.I.T. *Damon*

AUTHORIZED PAY GRADE E-4 FAW AR 601-210 3-17b (2)
PREVIOUS ENTIRE COMPLETED 89 0307
NEW NAC SUBMITTED 971217

DATE OF RANK WILL BE ADJUSTED AT THE FIRST DUTY STATION UNDER AR 600-20

| | DD FORM 1966/4 ATTACHED *(X one)* | YES |
|---|---|---|
| | | NO |

# STATEMENT OF UNDERSTANDING
## (ARMY POLICY)

For use of this form, see AR 601-210; the proponent agency is ODCSPER

### DATA REQUIRED BY THE PRIVACY ACT OF 1974

**Authority**          Title 10, United States Code, section 275; Executive Order 9397.

**Principal Purpose**  Basic form used to record contractual obligations to enlistees, guarantees and annexes enlistment contract.

**Routine Uses**       This form becomes a part of the Enlisted Master File and Field Personnel File. All uses of the form are internal to the United States Army.

**Disclosure**         Disclosure of the Social Security Number *(SSN)* and other personal information is voluntary. However, failure to provide the required information may result *in denial of enlistment or reenlistment.*

1.  SURE PAY:

    a.  As part of my enlistment contract, I hereby acknowledge and agree that I have the duty and responsibility, as explained below, to establish and maintain an account with a United States financial institution *(such as a bank, savings and loan, or credit union)* for the direct deposit/receipt of my Army net pay and allowances.

    b.  I understand that ~~within 3 months after completion~~ of IADT/BT/AIT/OSUT, as applicable, I am required to establish an account with the U. S. financial institution for direct deposit/receipt of my Army net pay and allowances, and execute the appropriate forms ~~at my PAC or unit finance office~~ to ensure that my Army net pay and allowances are deposited directly into my account. I understand I may freely choose or change U. S. financial institutions to satisfy this requirement. I understand that I will continue to have the duty and responsibility to maintain such an account for direct deposit/receipt of my Army net pay allowances so long as I remain in service, unless I receive a specific exemption from this requirement from the Army. I understand that failure to establish and maintain an account as described above, in the absence of a specific exemption, may subject me to administrative action and/or disciplinary action under the Uniform Code of Military Justice or state military code *(ARNG)*.

    *prior to training* and *prior to or immediately upon arrival at the training base*

2.  ALCOHOL AND DRUG ABUSE:

    a.  I understand that the Army's policy on alcohol and drug abuse is that the Army must prevent alcohol and drug abuse in order to perform its mission to defend the United States, to ensure its combat readiness, and to protect the health and welfare of its soldiers. I understand that service in the United States Army places me in a position of special trust and responsibility. Any drug abuse by soldiers of the United States Army is against the law, violates Army standards of behavior and duty performance, and will not be tolerated. Alcohol abuse involving criminal acts or conduct detrimental to the Army or good order and discipline will also not be tolerated. The illegal use of narcotics, or prescription drugs, or any use of marijuana or any other illegal substances by soldiers can lead to criminal prosecution and/or discharge under other than honorable conditions. If I am identified for either alcohol or drug abuse, including the use or possession of marijuana, appropriate disciplinary and/or administrative action may be taken against me. This may include trial by court-martial or administrative separation from the Army.

    b.  I understand that certain Military Occupational Specialties *(MOS)* in the Army cannot be performed by persons who have used marijuana or other drugs. If it is established that I have used drugs or marijuana and that usage disqualifies me for the MOS for which I entered the Army or have been awarded, I may be reclassified into another MOS.

3.  RELIGIOUS PRACTICE ACCOMMODATION:

    a.  I understand the Department of the Army's policy on accommodation of religious practices is to accommodate religious practices when accommodation will not have an adverse impact on military readiness, unit cohesion, standards, health, safety, or discipline. The Army places a high value on the rights of its soldiers to observe the tenants of their respective religions. Unit commanders are authorized to initially approve or deny requests for accommodation of religious practices. Conditions of accommodation may change based on military need. Policy guidelines are contained in AR 600-20 and AR 165-20 which my guidance counselor has available for me to read. I understand that the Army cannot guarantee accommodation of religious practices.

    b.  I further state that I have been given the opportunity to read or I have read the policy in AR 600-20 **and AR 165-20**.

ANNEX: B

**DA FORM 3286-67, JUN 91**      REPLACES DA FORM 3286-67, NOV 89, WHICH IS OBSOLETE

000483

4.   I have read the following statement(s) of understanding:

a:   USAR COMMISSIONED/WARRANT OFFICERS:   I understand that I will automatically vacate my reserve commission/warrant, if I enlist in the Delayed Entry Program.

b.   ESL ENLISTEE:   I understand that I am enlisting into the Regular Army unassigned.  I have been accepted under the conditions described below:

(1)  I will be required to attend the English Language Training Program.

(2)  I will be administered the English Language Comprehension Test (ECLT) upon completion of training.  If my score is 70 or greater, I will be required to take the Armed Services Vocational Aptitude Battery (ASVAB).

(3)  The resulting scores from my retest will be the scores of record from which my qualifications and options will be determined.  If I do not score at least a 21 on the ASVAB retest, with at least one qualifying aptitude area score, I will be assigned an enlistment program/option and MOS based upon my initial ASVAB scores.  If neither my ASVAB retest nor my initial ASVAB scores qualify me for an enlistment program/option and MOS, I will be separated from the Army.

(4)  If I fail to attain the required score of 70 on the ECLT, I will be separated from the Army, regardless of my AFQT and aptitude area scores.

(5)  I have not been guaranteed any assignment, job, or training skill, and fully understand the nature of this enlistment.

(6)  My term of enlistment is four (4) years.

c.   PRIOR SERVICE ENLISTEE:  I understand that if I have enlisted for an MOS that is taught in the OSUT mode, I may be required to complete all or a portion of Basic Training, regardless of the period of my break in service.  *D.C.*

d.   FITNESS TRAINING UNIT:  I understand that I will be given a Pre-Basic Training Physical Fitness test during my first 3 days at the Reception Station.  Should I fail to meet the minimum requirements, I will be placed in a Fitness Training Unit (FTU) until I can attain the minimum physical standards to enter Basic Training. Males Minimum 13 Pushups

                                                              Females Minimum 1 Pushup

5.   I have enlisted for the following Educational Incentive Programs (initial under the appropriate column for each program):

|  | YES | NO |
|---|---|---|
| Montgomery GI Bill (MGIB) | N/A | D.C. |
| Army College Fund (ACF) | N/A | D.C. |
| Loan Repayment Program (LRP) | N/A | D.C. |

I certify that I have read and understand the information for applicants portion of the enlistment Program(s) ___9A___, Request Option(s) ___3___, in Chapter 9, Table 9-1, AR 601-210, that I have enlisted for. *D.C.*

I have read and understand the Statement of Understanding on US Army Incentive Enlistment Program as outlined on DA Form 3286-66. If I have any more questions regarding my educational entitlements, I will ask my GuidanceCounselor prior to or on my scheduled active duty date.

ANNEX: B

## AUTHENTICATION

| TYPED NAME AND SSN OF APPLICANT<br>CLAIBORNE, DAMON J.<br>Redacted PII | SIGNATURE OF APPLICANT | DATE<br>971217 |
|---|---|---|
| TYPED NAME, GRADE AND SSN OF COUNSELOR<br>CHUN, HAROLD K, E-8<br>Redacted PII | SIGNATURE OF GUIDANCE COUNSELOR | DATE<br>971217 |

**Supplement to DA Form 3286-67**
**Statement for Enlistment (or Appointment)**
**Army Policy**
(For use of this form see USAREC Reg 601-96)

## DATA REQUIRED BY THE PRIVACY ACT STATEMENT OF 1974

**Authority:**  Title 10, United States Code, section 3013, Executive Order 9397.

**Principal Purpose:** Basic form used to acknowledge enlistee's understanding of the Army's policy regarding Sexual Harassment and Participation in Extremist Organizations or Activities.

**Routine Uses:**  This form becomes a part of the Enlisted and Commissioned Personnel Military File. All uses of the form are internal to the United States Army.

**Disclosure:**  Disclosure of the Social Security Number and other personal information is voluntary. However, failure to provide the required information may result in denial of enlistment or reenlistment.

## Section I - Sexual Harassment

1. The U.S. Army will not condone any person who violates the rights of, or discriminates against, any person because of their gender.  Further, I understand that:

   a. Sexual harassment is a form of gender discrimination that involves unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature, when:

   (1) submission to or rejection of such conduct is made either explicitly or implicitly a term or condition of a person's job, pay, or career;

   (2) submission to or rejection of such conduct by a person is used as a basis for career or employment decisions affecting that person; or

   (3) such conduct interferes with an individual's performance or creates an intimidating, hostile, or offensive environment.

   b. Any soldier or civilian employee:

   (1) In a supervisory or command position who uses or condones implicit or explicit sexual behavior to control, influence, or affect the career, pay, or job of another soldier or civilian employee is engaging in sexual harassment.

   (2) Who makes deliberate or repeated unwelcome verbal comments, gestures, or physical contact of a sexual nature is engaging in sexual harassment.

   c. Sexual harassment is not limited to the workplace, can occur at almost any place, and violates acceptable standards of integrity and impartiality required of all Army personnel.  It interferes with mission accomplishment and unit cohesion. Such behavior by soldiers or Army civilians will not be tolerated.

2. I fully acknowledge that I have the duty and responsibility to report immediately any violation of the above stated policy. In addition, I acknowledge that I am aware of the Army policy stated above and any violation could be grounds for adverse action or criminal charges under the Uniform Code of Military Justice.  If a violation of the above policy occurs while I am a member of the Delayed Entry/Training Program, I may contact the U.S. Army     PORTLAND     Recruiting Battalion Executive Officer or Commander at ( _503_ ) _256_ - _1431_ .

3. The U.S. Army has zero tolerance for conduct or behavior that violates the policy stated above.

4. The Army policy stated above may be found in Army Regulation 600-20, Army Command Policy.

## Section II - Participation in Extremist Organizations or Activities

1. I have been advised that participation in extremist organizations or activities is inconsistent with the responsibilities of military service.  It is the policy of the U.S. Army to provide equal opportunity and treatment for all soldiers without regard to race, color, religion, sex, or national origin.  Enforcement of the Army's equal opportunity policy is a responsibility of command, is vitally important to unit cohesion and morale, and is essential to the Army's ability to accomplish its mission. It is the commander's responsibility to maintain good order and discipline in the unit.  Every commander has the inherent authority to take appropriate actions to accomplish this goal.  This paragraph identifies prohibited actions by soldiers involving extremist organizations or activities, discusses the authority of the commander to establish other prohibitions, and establishes that violation of the prohibitions contained in this paragraph or those established by a commander may result in prosecution under various provisions of the Uniform Code of Military Justice (UCMJ).

USAREC Fm 1127, Rev 1 Jul 97 (Previous editions are obsolete)

000485

a. Participation. Military personnel must reject participation in extremist organizations and activities. Extremist organizations and activities are ones that advocate racial, gender, or ethnic hatred or intolerance; advocate, create, or engage in illegal discrimination based on race, color, sex, religion, or national origin; advocate the use of or use force or violence or unlawful means to deprive individuals of their rights under the United States Constitution or the laws of the United States or any State; or advocate or seek to overthrow the Government of the United States, or any State by unlawful means.

b. Prohibitions. Soldiers are prohibited from the following actions in support of extremist organizations or activities. Penalties for violation of these prohibitions include the full range of statutory and regulatory sanctions, both criminal (UCMJ) and administrative.

(1) Participating in a public demonstration or rally.

(2) Attending a meeting or activity with knowledge that the meeting or activity involves an extremist cause when on duty, when in uniform, when in a foreign country (whether on- or off-duty or in uniform), when it constitutes a breach of law and order, when violence is likely to result, or when in violation of off-limits sanctions or a commander's order;

(3) Fund-raising;

(4) Recruiting or training members (including encouraging other soldiers to join);

(5) Creating, organizing, or taking a visible leadership role in such an organization or activity; or

(6) Distributing literature on or off a military installation the primary purpose and content of which concerns advocacy or support of extremist causes, organizations, or activities and it appears that the literature presents a clear danger to the loyalty, discipline, or morale of military personnel, or if the distribution would materially interfere with the accomplishment of a military mission.

2. I acknowledge that I have read and fully understand the Army's policy regarding a soldier's participation in extremist organizations or activities. If I request, a complete copy of AR 600-20, paragraph 4-12, will be provided to me.

## Section III - Uniform and Appearance

1. I acknowledge that I have been informed of the U.S. Army uniform and appearance policy. I understand that:

a. AR 670-1 (Wear and Appearance of Army Uniforms and Insignia) contains personal appearance policies which I will be required to comply with.

b. I have been informed that provisions of AR 670-1 as it applies to personal appearance include specific policy with regard to body markings.

c. The current policy is as follows:

(1) TATTOOING in areas of the body (i.e., face, legs, hands, fingers, etc.,) that would cause the tattoo to be exposed in a Class A Uniform would detract from a soldierly appearance.

(2) Soldiers are expected to maintain good daily hygiene and wear their uniform so as not to detract from an overall military appearance.

d. Any person who is not in compliance with AR 670-1 as it applies to tattoos will not be accepted for enlistment in the U.S. Army.

e. Any person with a tattoo on the head, neck, scalp, or face will not be accepted. Furthermore, regardless of a tattoo's location, any tattoo deemed offensive, racist, profane, and/or linked to a criminal activity or extremist group may be denied enlistment.

2. I have been advised that while a member of the U.S. Army, to include the Delayed Entry Program, I may not violate the above policy. I will refrain from obtaining any body markings or I may be denied entry for violation of the above expressed policy.

3. I hereby state that I have revealed the existence of all tattoos during my medical examination. I have further revealed to my recruiter, or guidance counselor that I have markings (tattoos).

4. I HAVE TATTOOS _____
Initials

I DO NOT HAVE ANY TATTOOS _____
Initials

## AUTHENTICATION

| TYPED NAME AND SSN OF APPLICANT: CLAIBORNE, DAMON J. Redacted PII | SIGNATURE OF APPLICANT: | DATE: 9/12/7 |
| TYPED NAME, GRADE, AND SSN OF COUNSELOR: CHUN, HAROLD K., E-8, Redacted PII | SIGNATURE OF GUIDANCE COUNSELOR: | DATE: 9/12/7 |

**CONTINUATION OF REMARKS (DA FORM 4187)**
**REGULAR ARMY ENLISTMENT DELAY FOR APPLICANTS**
**WITH PRIOR SERVICE OR AN EXISTING MILITARY SERVICE OBLIGATION**
(For use of this form see USAREC Reg 601-96)

NAME: CLAIBORNE, DAMON J.    SSN: Redacted PII

1. I hereby acknowledge my application for enlistment into the Regular Army has been accepted under the following terms and conditions.

  a. I must remain fully qualified for enlistment into the Regular Army which is scheduled for  28 JANUARY 98 .

  b. I understand that I have reserved the following enlistment option(s).

(Enter Option, MOS, and Title) A-3 US ARMY TRAINING OF CHOICE ENL OPTION MOS 77F10 - PETROLEUM SUPPLY SPECIALIST

2. Having completed this form, I understand that my reporting date for active duty is 980128 . I will report to Honolulu
MEPS not later than 0600 hours. My enlistment into the Regular Army will be  3  years 00 weeks and my entry grade
as determined in accordance with AR 601-210 will be _____ E-4 . (Subject to verification of enlistment date.)

3. Failure to report on date specified above will result in cancellation of my Regular Army enlistment reservation without notification.
Willful failure to report may result in denial for enlistment for up to 2 years. If the option, MOS, or assignment provided above is canceled,
changed, or becomes unavailable before I enlist into the Regular Army, I will be given the opportunity to select another option.

(Applies only to members of USAR, ARNG, or a unit of another Reserve Component.)

4. My current military service obligation is not changed by this agreement. If I am currently participating or assigned to a unit of the
USAR, ARNG, or a unit of another Reserve Component, I understand that this agreement does NOT relieve me of any requirement to
satisfactorily participate, attend drill, annual training, or other duties in association with my Reserve commitment up to 7 days prior to my
scheduled reporting date as reflected in paragraph 1a above.

5. I further acknowledge my responsibility to notify my unit of the date I am scheduled to enter active duty with the Regular Army.

  a. I am further required to clear and complete all out processing required by my unit.

  b. I understand that, on my active duty date, I must have in my possession, my initial military clothing issue and a copy of my clothing
record or proof from my unit that the clothing was turned in.

  c. Failure to enter the Regular Army will mean that I will still be required to satisfactorily participate and drill with my Reserve Component
unit in accordance with my enlistment contract for that component.

NOTE:    Upon entry into the Regular Army your unit will be provided a copy of your enlistment contract.

_____    97/12/7
Signature of Applicant    Date

6. Guidance counselor:

  I have reviewed this applicant's records and found (based upon the information provided) him/her qualified for enlistment into the
Regular Army. I have made a reservation for the option(s) indicated and for the Regular Army enlistment date indicated. ALL MEPS
PROCESSING HAS BEEN COMPLETED EXCEPT EXECUTION OF A DD FORM 4.

_____    97/12/7
Signature of Guidance Counselor    Date

**USAREC Fm 978, Rev 1 Jul 92 (Previous editions are obsolete)**

U.S. GOVERNMENT PRINTING OFFICE: 1992/746-047-60132

**000487**

Standard Form 88
Revised 10/75
General Services Administration
Interagency Comm. on Medical Records
FIRMR (41 CFR) 201-45.505

# REPORT OF MEDICAL EXAMINATION

| 1. LAST NAME -- FIRST NAME -- MIDDLE NAME | | 2. GRADE AND COMPONENT OR POSITION | 3. IDENTIFICATION NO. |
|---|---|---|---|
| CLAIBORNE, DAMON JAHRON | | CIVILIAN | Redacted PII |

| 4. HOME ADDRESS (Number, street or RFD, city or own, State and ZIP Code) | 5. PURPOSE OF EXAMINATION | 6. DATE OF EXAMINATION |
|---|---|---|
| Redacted PII | ENLISTMENT  COMMISSION  ARMY  NAVY  AIR FORCE  MARINE CORPS  COAST GUARD  RESERVE  NATIONAL GUARD | DEC 17 |

| 7. SEX | 8. RACE: (WHITE) (BLACK) (AMERICAN INDIAN) (ASIAN)(OTHER/UNKNOWN) | 9. TOTAL YEARS GOVERNMENT SERVICE | 10. AGENCY | 11. ORGANIZATION UNIT |
|---|---|---|---|---|
| M | | MILITARY 8 YRS.  CIVILIAN NONE | DA | |

| 12. DATE OF BIRTH | AGE | 13. PLACE OF BIRTH | 14. NAME, RELATIONSHIP, AND ADDRESS OF NEXT OF KIN |
|---|---|---|---|
| Redacted PII | | Redacted PII | Redacted PII |

| 15. EXAMINING FACILITY OR EXAMINER, AND ADDRESS | 16. OTHER INFORMATION |
|---|---|
| Honolulu Meps  P.O. Box 50266  Honolulu Hi 96850-0001 | Redacted PII |

| 17. RATING OR SPECIALTY | TIME IN THIS CAPACITY (Total) | LAST SIX MONTHS |
|---|---|---|
| NONE | | |

## CLINICAL EVALUATION

NOTES. (Describe every abnormality in detail. Enter pertinent item number before each comment. Continue in item 73 and use additional sheets if necessary.)

| NORMAL | (Check each item in appropriate column, enter "NE" if not evaluated.) | ABNOR-MAL |
|---|---|---|
| / | 18. HEAD, FACE, NECK AND SCALP | |
| / | 19. NOSE | |
| / | 20. SINUSES | |
| / | 21. MOUTH AND THROAT | |
| / | 22. EARS - GENERAL (Int & ext canals)(Auditory acuity under items 70 and 71) | |
| / | 23. DRUMS (Perforation) | |
| / | 24. EYES - GENERAL (Visual acuity and refraction under items 59, 60 and 67) | |
| / | 25. OPHTHALMOSCOPIC | |
| / | 26. PUPILS (Equality and reaction) | |
| / | 27. OCULAR MOTILITY (Associated parallel movements, nystagmus) | |
| / | 28. LUNGS AND CHEST (Include breasts) | |
| / | 29. HEART (Thrust, size, rhythm, sounds) | |
| / | 30. VASCULAR SYSTEM (Varicosities, etc.) | |
| / | 31. ABDOMEN AND VISCERA (Include hernia) | |
| / | 32. ANUS AND RECTUM (Hemorrhoids, fistulae)(Prostate, if indicated) | |
| / | 33. ENDOCRINE SYSTEM | |
| / | 34. G-U SYSTEM | |
| / | 35. UPPER EXTREMITIES (Strength, range of motion) | |
| | 36. FEET | / |
| / | 37. LOWER EXTREMITIES (Except feet)(Strength, range of motion) | |
| / | 38. SPINE, OTHER MUSCULOSKELETAL | |
| / | 39. IDENTIFYING BODYMARKS, SCARS, TATTOOS | |
| / | 40. SKIN, LYMPHATICS | |
| / | 41. NEUROLOGIC (Equilibrium tests under item 72) | |
| / | 42. PSYCHIATRIC (Specify any personality deviation) | |
| | 43. PELVIC (Females only) (Check how done)  ☐ VAGINAL  ☐ RECTAL | |

NORMAL ARCH
#36 FEET
PES CAVUS — mild / moderate / severe — asymptomatic / symptomatic
PES PLANUS —

| | | FIRST TEST | | SECOND TEST | |
|---|---|---|---|---|---|
| ITEM 50 OTHER TEST | 17DEC97  73014481-3  Redacted PII | PLACE SECOND SPECIMEN ID LABEL HERE | | | |
| | | RESULTS | CODE | RESULTS | CODE |
| HIV | | Neg | B | | |
| DRUGS | | | | | |
| ALCOHOL | | | | | |

(Continue in item 73)

## 44. DENTAL (Place appropriate symbols, shown in examples, above or below number of upper and lower teeth.)

|   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| O  1 2 3 Restorable  32 31 30  teeth | O  1 2 3  32 31 30 | Non-restorable teeth | X  1 2 3  32 31 30  X | Missing teeth | X X X  1 2 3  32 31 30  X X X | Replaced by dentures | I X I  1 2 3  32 31 30  I X I | Fixed partial dentures | | | | | | | |

| R | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | L |
| I | | | | | | | | | | | | | | | | | E |
| G | 32 | 31 | 30 | 29 | 28 | 27 | 26 | 25 | 24 | 23 | 22 | 21 | 20 | 19 | 18 | 17 | F |
| H T | | | | | | | | | | | | | | | | | T |

REMARKS AND ADDITIONAL DENTAL DEFECTS AND DISEASES

ACCEPTABLE  NOT ACCEPTABLE

(DENTAL EXAMINATION NOT DONE BY DENTAL OFFICER)

## LABORATORY FINDINGS

| 45. URINALYSIS A. SPECIFIC GRAVITY | | D. MICROSCOPIC | 46. CHEST X-RAY (Place, date, film number and result) |
|---|---|---|---|
| B. ALBUMIN-REAGENT STRIP | Neg | | PLACE AS IN ITEM 15; FILM NO. |
| C. SUGAR-REAGENT STRIP | Neg | | DATE _____ RESULT _____ |

| 47. SEROLOGY (Specify test used and result) | 48. EKG | 49. BLOOD TYPE AND RH FACTOR | 50. OTHER TESTS |
|---|---|---|---|
| RPR  NON-REACTIVE | | | HIV ANTIBODY: ELISA _____ WESTERN BLOT _____  URINE HCG: |

USMEPCOM OVERPRINT 88.

PREVIOUS EDITIONS WILL BE USED

000488



NAME:
CLAIBORNE, DAMON JAHRON

**MEASUREMENTS AND OTHER FINDI**    SSAN: Redacted PII

| 51. HEIGHT | 52. WEIGHT | 53. COLOR HAIR | 54. COLOR EYES | 55. BUILD: | | | | 56. TEMPERATURE |
|---|---|---|---|---|---|---|---|---|
| 72 | 142 | Black | Brown | ☑ SLENDER ☐ MEDIUM ☐ HEAVY ☐ OBESE | | | | HIV AB. CODE: |

| 57. | BLOOD PRESSURE (Arm at heart level) | | | | 58. | PULSE (Arm at heart level) | | | |
|---|---|---|---|---|---|---|---|---|---|
| A. SITTING | SYS. | B. RECUM-BENT | SYS. | C. STANDING (3 min.) | SYS. | A. SITTING | B. AFTER EXERCISE | C. 2 MIN. AFTER | D. RECUMBENT | E. AFTER STANDING 3 MIN. |
| | DIAS. | | DIAS. | | DIAS. | | | | | |

| 59. DISTANT VISION | | 60. REFRACTION | | | | 61. | NEAR VISION | | |
|---|---|---|---|---|---|---|---|---|---|
| RIGHT 20/ 10 | CORR TO 20/ | BY | S | | CX | 20/20 CORR. TO | BY |
| LEFT 20/ 20 | CORR TO 20/ | BY | S | | CX | 20/20 CORR. TO | BY |

| 62. HETEROPHORIA (Specify distance) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ES ° | EX ° | R.H. | L.H. | PRISM DIV. | PRISM CONV. CT | PC | PD |

| ACCOMMODATION | | 64. COLOR VISION (Test used and result) | 65. DEPTH PERCEPTION (Test used and score) | UNCORRECTED |
|---|---|---|---|---|
| RIGHT | LEFT | PIP PASSED 2 /16 | AFVT | CORRECTED |

| 66. FIELD OF VISION | 67. NIGHT VISION (Test used and score) | 68. RED LENS TEST | 69. INTRAOCULAR TENSION |
|---|---|---|---|

| HEARING | | | 71. | AUDIOMETER | | | | | | ANSI-69 | | | 72. PSYCHOLOGICAL AND PSYCHOMOTOR FOR MEPS USE ONLY | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 250 256 | 500 512 | 1000 1024 | 2000 2048 | 3000 2896 | 4000 4096 | 6000 6144 | 8000 8192 | WK | ST | DATE | INITIAL |
| RIGHT WV | /15 SV | /15 | / | | | | | | | | | | P | DEC 17 | TBC |
| LEFT WV | /15 SV | /15 | RIGHT | 05 | 15 | 10 | 10 | 05 | 50 | | 5 | P | DEC 22 1997 | |
| | | | LEFT | 10 | 10 | 10 | 05 | 00 | 20 | | | P | | |

| 73. NOTES (Continued) AND SIGNIFICANT OR INTERVAL HISTORY ITEM 84: | PHYSICAL INSPECTION | HT | WT | RPR | HCG | QUAL | DISC | PHYSICIAN'S SIGNATURE |
|---|---|---|---|---|---|---|---|---|
| RED/GREEN (ARMY ONLY) | 04's | 72 | 143 | | | | | JOHN A. KUSTERMANN, M.D. Chief Medical Officer |
| | | | | | | | | |
| | | | | | | | | |

(Use additional sheets if necessary)    MAX: 198

74. SUMMARY OF DEFECTS AND DIAGNOSES (List diagnoses with item numbers)

   36: Pes planus 2 and 9/10 – asymptomatic – no orthotics and no
       problem running walking standing

THIS EXAMINATION HAS BEEN ADMINISTRATIVELY REVIEWED FOR COMPLETENESS AND ACCURACY

_____    _____ DEC 17 1997
SIGNATURE             GRADE    DATE

| 75. RECOMMENDATIONS - FURTHER SPECIALIST EXAMINATIONS INDICATED (Specify) | | 76. | A. PHYSICAL PROFILE | | | | |
|---|---|---|---|---|---|---|---|
| | | | P | U | L | H | E | S |
| | | | | | | | | X |

| 77. EXAMINEE (Check) | APPLICANT HAS BEEN ADVISED OF HIS/HER DISQUALIFYING CONDITION | B. PHYSICAL CATEGORY | | | |
|---|---|---|---|---|---|
| A. ☑ IS QUALIFIED FOR    SERVICE AS IN ITEM 6 | | | | | X |
| B. ☐ IS NOT QUALIFIED FOR | SIGNATURE    DATE | A | B | C | E |

78. IF NOT QUALIFIED, LIST DISQUALIFYING DEFECTS BY ITEM NUMBER

| 79. TYPED OR PRINTED NAME OF PHYSICIAN | JOHN A. KUSTERMANN, M.D. Chief Medical Officer | SIGNATURE | |
|---|---|---|---|
| 80. TYPED OR PRINTED NAME OF PHYSICIAN | | SIGNATURE | DEC 17 1997 |
| 81. TYPED OR PRINTED NAME OF DENTIST OF PHYSICIAN (Indicate which) | | SIGNATURE | |
| 82. TYPED OR PRINTED NAME OF REVIEWING OFFICER | JOHN A. KUSTERMANN, M.D. Chief Medical Officer | SIGNATURE | DEC 17 1997 | NUMBER OF AT-TACHED SHEETS |

# HIV ANTIBODY TESTING ACKNOWLEDGMENT
For use of this form, see USMEPCOM Reg 40-8

## FOR OFFICIAL USE ONLY

I acknowledge I have been informed by verbal briefing and the contents of this document of the following:

a. My medical examination includes a blood test for the presence of antibodies to the Human Immunodeficiency Virus, also called HIV.

b. This virus causes Acquired Immune Deficiency Syndrome, also called AIDS.

c. The HIV test is not a test for AIDS. A positive test means that a person has contracted the virus and built antibodies in the blood. A positive test does not mean a person has AIDS.

d. Positive tests will be repeated and rechecked by a different laboratory test to confirm the positive result.

e. A negative test means the individual has no detectable antibodies to the virus. It does not guarantee against having a positive test at a later date.

f. A confirmed positive HIV test is disqualifying for entry into the Armed Forces.

g. Results of the test, either positive or negative, are recorded on the medical examination form.

h. I will be told if my HIV test is positive. My parents or legal guardian will also be informed if I am a minor.

i. My chain of command will be notified of my test results if I am a member of the Armed Forces.

j. Some states require by-name reporting of positive HIV results. If my state requires such notification, it will be made through state or local health authorities.

CLAIBORNE DAMON JAHRON
Last                              First                        Middle  Names



Redacted PII

DEC 17

Social Security Account Number          Date

Signature

USMEPCOM Form 40-8-1-E, 1 Jul 95          Previous editions of this form are obsolete

## DRUG AND ALCOHOL TESTING ACKNOWLEDGMENT
For use of this form, see USMEPCOM Reg 40-8

### FOR OFFICIAL USE ONLY

I acknowledge I have been informed by verbal briefing and the contents of this document of the following:

1. My medical examination includes tests for alcohol, marijuana and cocaine.

   a. The alcohol test is conducted by the use of a breath alcohol analyzer. Positive tests are rechecked immediately. If my alcohol test is confirmed as positive, I will be ineligible for military service. If my sponsoring service desires, I may take another test after 6 months.

   b. The test for marijuana is conducted by urinalysis. Positive tests are rechecked at the laboratory to confirm results. If the marijuana test is confirmed as positive, I will be ineligible for military service. If my sponsoring service desires, I may take another test after 6 months.

   c. The test for cocaine is also conducted by urinalysis. Positive tests are rechecked at the laboratory to confirm results. If the cocaine test is confirmed as positive, I will be ineligible for military service. If my sponsoring service desires, I may take another test after 1 year.

2. If the results of a second test for alcohol, marijuana or cocaine are confirmed positive, I will remain ineligible for military service. If my sponsoring service desires, I may return for another test after 2 years.

3. Results of both positive and negative tests will be recorded on my medical examination form. I will be informed of a positive breath alcohol test while I am in the MEPS. I will be notified by letter of positive marijuana and cocaine results.

4. Information about drug and alcohol use I might disclose and results of my tests are protected under the Privacy Act and will be released only as required by that Act. This information cannot be used against me in actions under the Uniform Code of Military Justice (UCMJ) or for administrative purposes, except in cases of fraudulent entry into the Armed Forces (Article 83, UCMJ). These limitations do not apply to cases where I introduce evidence of drug or alcohol abuse, or lack thereof, first. These limits do not apply to disciplinary or other action based on independently derived evidence or impeachment proceedings.

_____          DEC 17 ████
        Signature                               Date

**CLAIBORNE DAMON JAHRON**          Redacted PII
Print last, first and middle names              SSAN



Previous editions of this form are obsolete.

**000491**

Standard Form 93
Revised OCTOBER 1974
Prescribed by GSA/ICMR
FIRMR (41 CFR) 201-45.505

# REPORT OF MEDICAL HISTORY

(THIS INFORMATION IS FOR OFFICIAL AND MEDICALLY-CONFIDENTIAL USE ONLY AND WILL NOT BE RELEASED TO UNAUTHORIZED PERSONS)

| 1. LAST NAME -- FIRST NAME -- MIDDLE NAME | 2. SOCIAL SECURITY OR IDENTIFICATION |
|---|---|
| CLAIBORNE, DAMON JAHRON | Redacted PII |

| 3. HOME ADDRESS (Number, street or RFD, city or town, State and ZIP Code) | 4. POSITION (Title, grade, component) |
|---|---|
| Redacted PII | CIVILIAN |

**5. PURPOSE OF EXAMINATION**
ENLISTMENT
ARMY   NAVY   AIR FORCE   MARINE CORPS   DAR COMMISSION
COAST GUARD   RESERVE   NATIONAL GUARD

**6. DATE OF EXAMINATION**
DEC 17

**7. EXAMINING FACILITY OR EXAMINER, AND ADDRESS**
Honolulu Meps   P.O. Box 50266
Honolulu Hi 96850-0001

**8. STATEMENT OF EXAMINEE'S PRESENT HEALTH AND MEDICATIONS CURRENTLY USED** (Follow by description of past history, if complaint exists)

PRESENT HEALTH: GOOD.

CURRENT MEDICATIONS: NONE

ALLERGIES (INCLUDING TO INSECT BITES/STINGS AND TO COMMON FOODS): NONE

## 9. HAVE YOU EVER (Please check each item)

| YES | NO | (Check each item) |
|---|---|---|
| X | | Lived with anyone who had tuberculosis |
| X | | Coughed up blood |
| X | | Bled excessively after injury or tooth extraction |
| X | | Attempted suicide |
| X | | Been a sleepwalker |

## 10. DO YOU (Please check each item)

| YES | NO | (Check each item) |
|---|---|---|
| | ✓ | Wear glasses or contact lenses |
| ✓ | | Have vision in both eyes |
| | ✓ | Wear a hearing aid |
| | ✓ | Stutter or stammer habitually |
| | ✓ | Wear a brace or back support |

## 11. HAVE YOU EVER HAD OR HAVE YOU NOW (Please check each item)

| YES | NO | DON'T KNOW | (Check each item) | YES | NO | DON'T KNOW | (Check each item) | YES | NO | DON'T KNOW | (Check each item) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | ✓ | | Scarlet fever, erysipelas | | ✓ | | Cramps in your legs | | ✓ | | "Trick" or locked knee |
| | ✓ | | Rheumatic fever | | ✓ | | Frequent indigestion | | ✓ | | Foot trouble |
| | ✓ | | Swollen or painful joints | | ✓ | | Stomach, liver, or intestinal trouble | | ✓ | | Neuritis |
| | ✓ | | Frequent or severe headache | | ✓ | | Gall bladder trouble or gallstones | | ✓ | | Paralysis (include infantile) |
| | ✓ | | Dizziness or fainting spells | | ✓ | | Jaundice or hepatitis | | ✓ | | Epilepsy or fits |
| | ✓ | | Eye trouble | | ✓ | | Adverse reaction to serum, drug or medicine | | ✓ | | Car, train, sea or air sickness |
| | ✓ | | Ear, nose, or throat trouble | | ✓ | | | | ✓ | | Frequent trouble sleeping |
| | ✓ | | Hearing loss | | ✓ | | Broken bones | | ✓ | | Depression or excessive worry |
| | ✓ | | Chronic or frequent colds | | ✓ | | Tumor, growth, cyst, cancer | | ✓ | | Loss of memory or amnesia |
| | ✓ | | Severe tooth or gum trouble | | ✓ | | Rupture/hernia | | ✓ | | Nervous trouble of any sort |
| | ✓ | | Sinusitis | | ✓ | | Piles or rectal diseases | | ✓ | | Periods of unconsciousness |
| | ✓ | | Hay Fever | | ✓ | | Frequent or painful urination | | | | |
| | ✓ | | Head injury | | ✓ | | Bed wetting since age 12 | | | | |
| | ✓ | | Skin diseases | | ✓ | | Kidney stone or blood in urine | | | | |
| | ✓ | | Thyroid trouble or goiter | | ✓ | | Sugar or albumin in urine | | | | |
| | ✓ | | Tuberculosis | | ✓ | | VD -- Syphilis, gonorrhea, etc. | | | | |
| | ✓ | | Asthma | | ✓ | | Recent gain or loss of weight | | | | |
| | ✓ | | Shortness of breath | | ✓ | | Arthritis, Rheumatism, or Bursitis | | | | |
| | ✓ | | Pain or pressure in chest | | ✓ | | Bone, joint or other deformity | | | | |
| | ✓ | | Chronic cough | | ✓ | | Lameness | | | | |
| | ✓ | | Palpitation or pounding heart | | ✓ | | Loss of finger or toe | | | | **12. FEMALES ONLY: HAVE YOU EVER** |
| | ✓ | | Heart trouble or murmur | | ✓ | | Painful or "trick" shoulder or elbow | | | | Been treated for a female disorder |
| | ✓ | | High or low blood pressure | | ✓ | | Recurrent back pain | | | | Had a change in menstrual pattern |

DATE OF LMP
DATE OF PMP

| 13. WHAT IS YOUR USUAL OCCUPATION? | 14. ARE YOU (check one) |
|---|---|
| FOOD SERVICE CLERK    LAW ENFORCEMENT (USUAL.) | Right handed   Left handed ✓ |

USMEPCOM OVERPRINT 93.

PREVIOUS EDITIONS WILL BE USED

| | YES | NO | CHECK EACH ITEM YES | NO. EVERY ITEM CHECKED YES MUST BE FULLY EXPL[A]I[NE]D IN BLANK SPACE ON RIGHT |
|---|---|---|---|---|

15. Have you been refused employment or been unable to hold a job or stay in school because of:
A. Sensitivity to chemicals, dust, sunlight, etc. — NO ✓

B. Inability to perform certain motions. — NO ✓

C. Inability to assume certain positions. — NO ✓

D. Other medical reasons (If yes, give reasons.) — NO ✓

16. Have you ever been treated for a mental condition? (If yes, specify when, where, and give details.) — NO ✓

17. Have you ever been denied life insurance? (If yes, state reason and give details.) — NO ✓

18. Have you ever had, or have you been advised to have, any operations? (If yes, describe and give age at which occurred.) — YES ✓

19. Have you ever been a patient in any type of hospitals? (If yes, specify when, where, why, and name of doctor and complete address of hospital.) — YES ✓

17 DEC 9[1] DC

20. Have you ever had any illness or injury other than those already noted? (If yes, specify when, where, and give details.) — NO ✓

21. Have you consulted or been treated by clinics, physicians, healers, or other practitioners within the past 5 years for other than minor illnesses? (If yes, give complete name of doctor, hospital, clinic, and details.) — NO ✓

22. Have you ever been rejected for military service because of physical, mental, or other reasons? (If yes, give date and reason for rejection.) — NO ✓

23. Have you ever been discharged from military service because of physical, mental, or other reasons? (If yes, give date, reason; and type of discharge: whether honorable, other than honorable, for unfitness or unsuitability.) — YES ✓

17 DEC 9[1] DC

24. Have you ever received, is there pending, or have you applied for pension or compensation for existing disability? (If yes, specify what kind, granted by whom, and what amount, when, why.) — NO ✓

Right column handwritten notes:

19
STREP THROAT   6-91

U.S. ARMY
MEDICAL CENTER
Ft. EUSTIS VA. 23604

23
COMPLETION OF SERVICE (ETS) HONORABLE
3 yrs.   7-92

I certify that I have reviewed the foregoing information supplied by me and that it is true and complete to the best of my knowledge.
I authorize any of the doctors, hospitals, or clinics mentioned above to furnish the Government a complete transcript of my medical record for purposes of processing my application for this employment or service.

TYPED OR PRINTED NAME OF EXAMINEE
DAMON   JAHRON   CLAIBORNE

SIGNATURE
[signature]

NOTE: HAND TO THE DOCTOR OR NURSE, OR IF MAILED MARK ENVELOPE "TO BE OPENED BY MEDICAL OFFICER ONLY."
25. Physician's summary and elaboration of all pertinent data (Physician shall comment on all positive answers in items 9 through 24. Physician may develop by interview any additional medical history he deems important, and record any significant findings here.

Served 8 yrs USArmy — honorable discharge in 1992 and now going back into the Reg Army. Had strep throat. Otherwise good health.

APPLICANT DENIES ANY MEDICAL PROBLEM OTHER THAN ALREADY STATED IN THIS FORM

| QUESTIONING REVEALS | YES | NO | DETAILS |
|---|---|---|---|
| MARIJUANA USE | | ✓ | |
| OTHER DRUG ABUSE | | ✓ | |
| ALCOHOL ABUSE | | ✓ | |

SIGNATURE [signature]   DATE  DEC 17 19[ ]

TYPED OR PRINTED NAME OF PHYSICIAN OR EXAMINER
JOHN A. KUSTERMANN, M.D. DEC 17 19[ ]
Chief Medical Officer

DATE   SIGNATURE [signature]

NUMBER OF ATTACHED SHEETS

REVERSE OF STANDARD FORM 93

000493

# APPLICANT MEDICAL PRESCREENING FORM

Authority: Sections 505, 510, and 3012, Title 10, U.S. Code. Principal purpose: To speed your medical examination processing by identifying possible medical problem areas and to aid the medical staff in determining your eligibility and physical capabilities. To prepare military service applicants for medical processing by identifying documents or medical history required. Disclosure: Voluntary; failure to provide the information requested will stop further processing of your enlistment application.

## PART I. PROCESSING REQUIREMENTS (RECRUITER COMPLETES – VERIFY PERSONAL DATA ENTERED)

1 a. ARMED SERVICE PROCESSED FOR:

[X] ARMY   [ ] NAVY   [ ] MARINE CORPS   [ ] AIR FORCE   [ ] COAST GUARD

b. SERVICE COMPONENT

[X] REGULAR   [ ] RESERVE   [ ] NATIONAL GUARD

2 NAME OF APPLICANT (Last, First, Middle)  CLAIBORNE   AARON J

3. DATE OF BIRTH (YYMMDD)  Redacted PII

4. SOCIAL SECURITY NUMBER  Redacted PII

5. HEIGHT (actual) (inches)  73 ½

6. WEIGHT (actual) (lbs)  154

7. MAX WT ALLOWED (lbs)

8. DATE SCREENED (YYMMDD)  971203

## PART II. MEDICAL HISTORY (APPLICANT) Check each item—explain "yes" and "unsure" answers in item 16.

### 9. PHYSICAL IMPAIRMENTS

| YES | NO | UNSURE | Have you ever had or have you now |
|---|---|---|---|
| | X | | a. Back trouble |
| | X | | b. Ear trouble or loss of hearing |
| | X | | c. Eye trouble, injury or illness |
| | X | | d. Any deformities of, or missing fingers or toes |
| | X | | e. Any painful or "trick" joints or loss of movement in any joint |
| | X | | f. Impaired use of arms, legs, hands and feet |
| | X | | g. Have loss of vision in either eye |

### 10. CORRECTIVE DEVICES

| YES | NO | UNSURE | Do you |
|---|---|---|---|
| | X | | a. Wear braces on your teeth |
| | X | | b. Wear contact lenses or glasses |
| | X | | c. Wear a hearing aid |

### 11. DISEASES

| YES | NO | UNSURE | Have you ever had or have you now |
|---|---|---|---|
| | X | | a. Hepatitis |
| | X | | b. Rheumatic Fever |

### 12. FEDERAL GOVERNMENT ACTIONS

| YES | NO | UNSURE | Have you ever |
|---|---|---|---|
| | X | | a. Been rejected for military service |
| | X | | b. Been discharged from military service for mental, physical or other reasons |
| | X | | c. Do you receive or have you applied for disability from any Federal Agency |

### 13. TREATMENT OF ILLNESS/INJURY

| YES | NO | UNSURE | Have you ever |
|---|---|---|---|
| | X | | a. Taken any medicines |
| | X | | b. Been hospitalized |
| | X | | c. Had bones surgically repaired using pins screws or plates |
| | X | | d. Had or have you now any illness or injury including broken bones which required treatment by a physician/surgeon, hospitalization or a surgical operation |

### 14. MEDICAL CONDITIONS

| YES | NO | UNSURE | |
|---|---|---|---|
| | X | | a. Do you have any difficulty standing for a long time? |
| | | | Have you ever |
| | X | | b. Been treated for a mental condition. |
| | X | | c. Been a Sleepwalker since age 12. |
| | | | Have you ever had or have you now |
| | X | | d. Addiction to drugs or alcohol |
| | X | | e. Allergies |
| | X | | f. Asthma or respiratory problems |
| | X | | g. Bedwetting since age 12. |
| | X | | h. Epilepsy or seizures of any kind. |
| | X | | i. Other medical problems or defects of any kind. |

15 (FEMALES ONLY) DATE OF LAST MENSTRUAL PERIOD (YYMMDD):

16 EXPLANATION OF "YES" AND "UNSURE" ANSWERS: DESCRIBE PROBLEM. GIVE AGE AT TIME OF PROBLEM, NAME OF DOCTOR AND/OR HOSPITAL WHERE TREATED, AND YOUR CURRENT STATUS REGARDING THAT PROBLEM.

DD Form 2246, NOV 90

000494

## PART III. CERTIFICATION BY APPLICANT AND RECRUITER

**WARNING:** The information you have given constitutes an official statement. Federal law provides severe penalties (up to 5 years confinement or a $10,000 fine or both), to anyone making a false statement. If you are selected for enlistment based on a false statement, you can be tried by military courts-martial or meet an administrative board for discharge and could receive a less than honorable discharge that would affect your future. WARNING.

| a. Applicant. I certify the information on this form is true and complete to the best of my knowledge and belief, and no person has advised me to conceal or falsify any information about my physical and mental history. | b. Recruiting Representative. I certify all information is complete and true to the best of my knowledge. I have conducted the medical prescreening requirements as directed by service regulations. |
|---|---|

APPLICANT'S SIGNATURE

DATE SIGNED (YYMMDD)
971203

NAME OF RECRUITING REP. (Last, First, M.I.)

PAY GRADE OF RECRUITING REP.
E-6

SIGNATURE OF RECRUITING REP

DATE SIGNED (YYMMDD) 971203

## PART IV. MEDICAL PROCESSING INSTRUCTIONS TO APPLICANT  (Rctg Rep Check Blocks – Applicant Initials)

The Armed Forces Examining and Entrance Station (AFEES) or other military medical facility will conduct a thorough medical examination. You should provide any medical records or documents regarding illness, hospitalization, injuries, treatment, or surgery which may be required/requested by the examining physician. The items below apply specifically to you and represent requirements of the medical staff. Please initial each checked item in the blank provided to indicate that you understand.

### PREPARATION FOR MEDICAL EXAMINATION

#### INSTRUCTIONS

☐ 1. Take medical documents as discussed.

☐ 2. Take eye glasses.

☐ 3. Wear contact lenses. Also take your eye glasses with you or a statement from the optometrist/opthalmologist of visual acuity and eye glass refractive error. Statement must be less than one year old.

☐ 4. Bring a statement from your orthodontist saying that the braces you are wearing will be removed at your expense and active treatment ended before your active duty date.

☒ 5. Males wear undershorts; females wear bra and panties for medical examination.

#### ACKNOWLEDGMENTS

☐ 1. I understand that I will undergo a pelvic/rectal examination. (females only)

☒ 2. My medical examination may take more than 1 day if tests are required.

☒ 3. I've been briefed on the processing procedures and I understand them.

☐ 4. I must lose ___0___ lbs. before further processing can take place.

☐ 5. I appear to be ineligible for further processing for the following reasons:
_____
_____
_____
_____

NOTE: In questionable cases, use DIAL-A-MEDIC procedures to call or forward this form and other documents to the AFEES Chief Medical Officer through the service rep. prior to scheduling a medical examination.

## PART V. MEDICAL OFFICER'S COMMENTS

Based on information provided, further processing is:

☒ Authorized    ☐ Not Justified

☐ Deferred pending review of additional documentation (attach supplemental page for remarks)

SIGNATURE AFEES MEDICAL OFFICER

DATE SIGNED (YYMMDD)
DEC 17

DD Form 2246 Reverse, NOV 80

* U S Government Printing Office 1992-311-830/65117

# ENLISTMENT ELIGIBILITY QUESTIONNAIRE
For use of this form see USAREC Regulation 601-94

**APPLICANT NAME: (LAST, FIRST, MI)** CLAIBORNE · DAMON

Redacted PII

**AUTHORITY:** Title 10 United States Code, Sections 504, 505, 508, 510, and 12102.

**PRINCIPAL PURPOSE:** To determine eligibility of a prospective enlistee in the United States Army.

**PRIVACY ACT STATEMENT**

**ROUTINE USES:** Information collected on this form will be used to determine eligibility for enlistment into the United States Army. It may be released to law enforcement agencies engaged in the investigation or prosecution of a criminal act or the enforcement or implementation of a statute, rule, regulation, or order; to any component of the Department of Justice for the purpose of representing the DoD.

**DISCLOSURE:** Voluntary; however, failure to answer the questions may result in refusal of enlistment into the United States Army.

The data are for *OFFICIAL USE ONLY* and will be maintained and used in strict confidence in accordance with Federal law and regulations. Making a knowing and willful false statement on this form may be punishable by fine or imprisonment or both. All information provided by you which possibly may reflect adversely on your past conduct and performance, may have an adverse impact on you in your military career in situations such as consideration for special assignment, security clearances, court martial or administrative proceedings, etc.

All YES answers must be explained completely in the remarks section.  If the answers include no additional information than what is listed on the SF 86, (Questionnaire for National Security Positions), write "See SF 86 Item #    " in the space for "NAME AND LOCATION OF LAW ENFORCEMENT AGENCY.

| | | YES | NO |
|---|---|---|---|
| 1. | Have you ever been arrested, charged, cited, held, or detained in any way by any law enforcement agency (to include Juvenile Authorities, Department of Natural Resources, Fish and Game Wardens, military police, etc.) regardless of disposition (whether the case resulted in no charges filed, fine, probation, dismissal, or other disposition)?  **(This includes traffic tickets)** | X | |

| DATE OF OFFENSE (YYMMDD) | NAME OF OFFENSE | NAME AND LOCATION OF LAW ENFORCEMENT AGENCY | NAME AND LOCATION OF COURT | DISPOSITION OF CASE |
|---|---|---|---|---|
| 960211 | RUN STOP SIGN | LOS ANGELES POLICE DEPT | LOS ANGELES County | PAID $26.00 FINE |
| 951127 | PUMPING ZEFUL NEAR HIGHWAY | LOS ANGELES P.D. | LA TRAFFIC COURT | PAID $105.00 FINE |
| 951011 | ASSAULT | LOS ANGELES P.D. | LOS ANGELES County | DISMISSED |
| 941120 | RUN STOP SIGN | LOS ANGELES P.D. | LONG BEACH TRAFFIC | PAID $106.00 |

| | | | |
|---|---|---|---|
| 2. | Have you been told by anyone (judge, lawyer, any Army personnel, family, or friends) that you do not have to list a charge because the charge(s) were dropped, dismissed, not filed, expunged, stricken from the record or were juvenile related? | | X |
| 3. | Have you ever been subject to any type of proceedings under the Uniform Code of Military Justice? (This includes courts martial, Non-judicial Punishment, Captain's Mast, and Article 15's) | | X |
| 4. | Have you ever been charged with any crime that has not been listed in any of the above questions or asked on the SF 86 (Questionnaire for National Security Positions)? | | X |

## REMARKS
Use the space below to explain all yes answers that have not been explained in detail on the SF 86 (Questionnaire for National Security Positions).

| TYPED NAME OF APPLICANT (LAST, FIRST, M.I.) | APPLICANT SIGNATURE | DATE (YYMMDD) |
|---|---|---|
| CLAIBORNE DAMON J. | *[signature]* | 971204 |

| TYPED NAME AND RANK OF RECRUITER (LAST, FIRST, M.I.) | RECRUITER SIGNATURE | DATE (YYMMDD) |
|---|---|---|
| TAGALA, DAVE P. | *[signature]* | 971204 |

USAREC Fm 1104, 1 May 96

# STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES REGISTRAR-RECORDER/COUNTY CLERK
## CERTIFIED ABSTRACT OF BIRTH

NAME: DAMON J CLAIBORNE

DATE OF BIRTH: Redacted PII          SEX: MALE

COUNTY OF BIRTH: Redacted PII

BIRTH SURNAME OF MOTHER: Redacted PII

DATE FILED: Redacted PII

This certified document is a true abstract of the official record filed with the Registrar-Recorder.

*Conny B. McCormack*

CONNY B. MCCORMACK
REGISTRAR-RECORDER/COUNTY CLERK

DATE ISSUED: NOVEMBER 06, 1996

LOCAL REGISTRATION NUMBER: O016253          Redacted PII



CLAIBORNE, DAMON J

CERTIFIED TRUE COPY OF ORIGINAL

HAROLD K. CHUN
MSG, USA
SR. GUIDANCE COUNSELOR

Standard Form 86 *NAC* 14 971217
Revised September 1995
U.S. Office of Personnel Management
5 CFR Parts 731, 732, and 736

# QUESTIONNAIRE FOR
# NATIONAL SECURITY POSITIONS

Form approved:
O.M.B. No. 3206-0007
NSN 7540-00-634-4036
86-111

## Part 1

**Investigating Agency Use Only** | **Codes** | **Case Number**

*Agency Use Only (Complete items A through P using instructions provided by the investigating agency).*

| A Type of Investigation | B Extra Coverage | C Sensitivity Level | D Access | E Nature of Action Code | F Date of Action Month Day Year |
|---|---|---|---|---|---|

G Geographic Location: 8 Ø28 73 | H Position Code: E | I Position Title: APPLICANT

J SON: Y-PLACER | K Location of Official Personnel Folder: N- No POLICE | □ None NPRC At SON | Other Address: DIS NATIONAL AGENCY CHECK DIV... ZIP Code 21208-108

L SOI: | M Location of Security Folder: | X None At SOI NPI | Other Address: U.S. ARMY RESERVE PORTLAND PORTLAND, OR ZIP Code 97218-285...

N OPAC-ALC Number | O Accounting Data and/or Agency Case Number: POLICE CHECKS NOT REQUIRED

P Requesting Official: Name and Title MSG VIVN GUIDANCE Counselor   Signature: [signature]   Redacted PII

*Persons completing this form should begin with the questions below.*

**1 FULL NAME** • If you have only initials in your name, use them and state (IO). • If you have no middle name, enter "NMN." • If you are a "Jr.," "Sr.," "II," etc., enter this in the box after your middle name.

**2 DATE OF BIRTH**    Month Day Year   Redacted PII

Last Name: CLAIBORNE   First Name: DAMON   Middle Name: JAHRON   Jr., II, etc.

**3 PLACE OF BIRTH** • Use the two letter code for the State.

City: Redacted PII   Country (if not in the United States):

**4 SOCIAL SECURITY NUMBER**   Redacted PII

**5 OTHER NAMES USED**

Give other names you used and the period of time you used them (for example: your maiden name, name[s] by a former marriage, former name[s], alias[es], or nickname[s]). If the other name is your maiden name, put "nee" in front of it.

| Name #1 | Month/Year Month/Year To | Name #3 | Month/Year Month/Year To |
|---|---|---|---|
| Name #2 | Month/Year Month/Year To | Name #4 | Month/Year Month/Year To |

**6 OTHER IDENTIFYING INFORMATION**

Height (feet and inches): 6'0"   Weight (pounds): 142   Hair Color: BLACK   Eye Color: BROWN   Sex (mark one box): □ Female  ☒ Male

**7 TELEPHONE NUMBERS**

Work (include Area Code and extension): Day ( )   Night ( )
Home (include Area Code): ( X ) Day   Night   Redacted PII

**8 CITIZENSHIP**

a Mark the box at the right that reflects your current citizenship status, and follow its instructions.

☒ I am a U.S. citizen or national by birth in the U.S. or U.S. territory/possession. → Answer items b and d
□ I am a U.S. citizen, but was NOT born in the U.S. → Answer items b, c, and d
□ I am not a U.S. citizen. → Answer items b and e

**b** Your Mother's Maiden Name: ROBINSON

**c UNITED STATES CITIZENSHIP** If you are a U.S. Citizen, but were not born in the U.S., provide information about one or more of the following proofs of your citizenship.

Naturalization Certificate (Where were you naturalized?)

| Court | City | State | Certificate Number | Month/Day/Year Issued |
|---|---|---|---|---|

Citizenship Certificate (Where was the certificate issued?)

| City | State | Certificate Number | Month/Day/Year Issued |
|---|---|---|---|

State Department Form 240 - Report of Birth Abroad of a Citizen of the United States

| Give the date the form was prepared and give an explanation if needed. | Month/Day/Year | Explanation |
|---|---|---|

U.S. Passport

| This may be either a current or previous U.S. Passport. | Passport Number | Month/Day/Year Issued |
|---|---|---|

**d DUAL CITIZENSHIP** If you are (or were) a dual citizen of the United States and another country, provide the name of that country in the space to the right.   Country: NA

**e ALIEN** If you are an alien, provide the following information:

| Place You Entered the United States: | City | State | Date You Entered U.S. Month Day Year | Alien Registration Number | Country(ies) of Citizenship |
|---|---|---|---|---|---|

Page 1

**9**    **WHERE YOU HAVE LIVED**

List the places where you have lived, beginning with the most recent (#1) and working back 7 years. All periods must be accounted for in your list. Be sure to indicate the actual physical location of your residence: do not use a post office box as an address, do not list a permanent address when you were actually living at a school address, etc. Be sure to specify your location as closely as possible: for example, do not list only your base or ship, list your barracks number or home port. You may omit temporary military duty locations under 90 days (list your permanent address instead), and you should use your APO/FPO address if you lived overseas.

For any address in the last 5 years, list a person who knew you at that address, and who preferably still lives in that area (do not list people for residences completely outside this 5-year period, and do not list your spouse, former spouses, or other relatives). Also for addresses in the last five years, if the address is "General Delivery," a Rural or Star Route, or may be difficult to locate, provide directions for locating the residence on an attached continuation sheet.

| Month/Year | Month/Year | Street Address | Apt. # | City (Country) | State | ZIP Code |
|---|---|---|---|---|---|---|
| | | Redacted PII | | | | |

**10**    **WHERE YOU WENT TO SCHOOL**

List the schools you have attended, beyond Junior High School, beginning with the most recent (#1) and working back 7 years.  List College or University degrees and the dates they were received.  If all of your education occurred more than 7 years ago, list your most recent education beyond high school, no matter when that education occurred.

- Use one of the following codes in the "Code" block:

    1 - High School        2 - College/University/Military College        3 - Vocational/Technical/Trade School

- For schools you attended in the past 3 years, list a person who knew you at school (an instructor, student, etc.).  Do not list people for education completely outside this 3-year period.
- For correspondence schools and extension classes, provide the address where the records are maintained.

Redacted PII

Enter your Social Security Number before going to the next page   →   Redacted PII

Page 2

**11**  **YOUR EMPLOYMENT ACTIVITIES**

List your employment activities, beginning with the present (#1) and working back 7 years. You should list all full-time work, part-time work, military service, temporary military duty locations over 90 days, self-employment, other paid work, and all periods of unemployment. The entire 7-year period must be accounted for without breaks, but you need not list employments before your 16th birthday. **EXCEPTION:** Show all Federal civilian service, whether it occurred within the last 7 years or not.

- **Code.** Use one of the codes listed below to identify the type of employment:

  1 - Active military duty stations    5 - State Government (Non-Federal employ-    7 - Unemployment (Include name    9 - Other
  2 - National Guard/Reserve           ment)                            of person who can verify)
  3 - U.S.P.H.S. Commissioned Corps   6 - Self-employment (Include business name    8 - Federal Contractor (List con-
  4 - Other Federal employment         and/or name of person who can verify)     tractor, not Federal agency)

- **Employer/Verifier Name.** List the business name of your employer or the name of the person who can verify your self-employment or unemployment in this block. If military service is being listed, include your duty location or home port here as well as your branch of service. You should provide separate listings to reflect changes in your military duty locations or home ports.

- **Previous Periods of Activity.** Complete these lines if you worked for an employer on more than one occasion at the same location. After entering the most recent period of employment in the initial numbered block, provide previous periods of employment at the same location on the additional lines provided. For example, if you worked at XY Plumbing in Denver, CO, during 3 separate periods of time, you would enter dates and information concerning the most recent period of employment first, and provide dates, position titles, and supervisors for the two previous periods of employment on the lines below that information.

| #1 Month/Year 8/97 To Present | Code 9 | Employer/Verifier Name/Military Duty Location DOWN TO EARTH | Your Position Title/Military Rank CLERK | | |
|---|---|---|---|---|---|
| **Employer's/Verifier's Street Address** 97 DAIRY RD. | | **City (Country)** KAHULUI | **State** HI | **ZIP Code** 96732 | **Telephone Number** (808)877-6221 |
| **Street Address of Job Location (if different than Employer's Address)** | | **City (Country)** | **State** | **ZIP Code** | **Telephone Number** ( ) |
| **Supervisor's Name & Street Address (if different than Job Location)** BOBBY MOSS | | **City (Country)** | **State** | **ZIP Code** | **Telephone Number** ( ) |

PREVIOUS PERIODS OF ACTIVITY (Block #1)

| Month/Year To Month/Year | Position Title | Supervisor |
|---|---|---|
| Month/Year To Month/Year | Position Title | Supervisor |
| Month/Year To Month/Year | Position Title | Supervisor |

| #2 Month/Year 1/97 To 8/97 | Code 9 | Employer/Verifier Name/Military Duty Location CENTURION SECURITY | Your Position Title/Military Rank SECURITY PERSON | | |
|---|---|---|---|---|---|
| **Employer's/Verifier's Street Address** 40 HOOHANA | | **City (Country)** KAHULUI | **State** HI | **ZIP Code** 96732 | **Telephone Number** (808)877-0453 |
| **Street Address of Job Location (if different than Employer's Address)** | | **City (Country)** | **State** | **ZIP Code** | **Telephone Number** ( ) |
| **Supervisor's Name & Street Address (if different than Job Location)** DEE LONO | | **City (Country)** | **State** | **ZIP Code** | **Telephone Number** ( ) |

PREVIOUS PERIODS OF ACTIVITY (Block #2)

| Month/Year 1/96 To 2/97 | Position Title US ARMY NATIONAL GUARD | Supervisor SFC JOHN TURNER |
|---|---|---|
| Month/Year To Month/Year | Position Title | Supervisor |
| Month/Year To Month/Year | Position Title | Supervisor |

| #3 Month/Year 11/96 To 1/97 | Code 9 | Employer/Verifier Name/Military Duty Location BURNS SECURITY | Your Position Title/Military Rank SECURITY GUARD | | |
|---|---|---|---|---|---|
| **Employer's/Verifier's Street Address** 270 HOOKAHI ST. | | **City (Country)** WAILUKU | **State** HI | **ZIP Code** 96793 | **Telephone Number** 808 1243-5595 |
| **Street Address of Job Location (if different than Employer's Address)** | | **City (Country)** | **State** | **ZIP Code** | **Telephone Number** ( ) |
| **Supervisor's Name & Street Address (if different than Job Location)** PETE SUP. | | **City (Country)** | **State** | **ZIP Code** | **Telephone Number** ( ) |

PREVIOUS PERIODS OF ACTIVITY (Block #3)

| Month/Year To Month/Year | Position Title | Supervisor |
|---|---|---|
| Month/Year To Month/Year | Position Title | Supervisor |
| Month/Year To Month/Year | Position Title | Supervisor |

Enter your Social Security Number before going to the next page → 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

000500

#4  9/95 To 11/96  9  SECURITY SERVICE SYSTEM  SECURITY GUARD

| Employer's/Verifier's Street Address | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| 6133 SOUTH SEPULVEDA | LOS ANGELES | CA | 90045 | 310 477-2095 |

| Street Address of Job Location (if different than Employer's Address) | City (Country) | State | ZIP Code | Telephone Number ( ) |
|---|---|---|---|---|

| Supervisor's Name & Street Address (if different than Job Location) | City (Country) | State | ZIP Code | Telephone Number ( ) |
|---|---|---|---|---|
| SUKAL SAM | | | | |

**PREVIOUS PERIODS OF ACTIVITY (Block #4)**

| Month/Year Month/Year To | Position Title | Supervisor |
|---|---|---|
| Month/Year Month/Year To | Position Title | Supervisor |
| Month/Year Month/Year To | Position Title | Supervisor |

#5  3/95 To 9/95  Code 9  Employer/Verifier Name/Military Duty Location  WESTERN SECURITY  Your Position Title/Military Rank  SECURITY GUARD

| Employer's/Verifier's Street Address | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| 18411 CRENSHAW | TORRANCE | CA | 90504 | (310)324-4981 |

| Street Address of Job Location (if different than Employer's Address) | City (Country) | State | ZIP Code | Telephone Number ( ) |
|---|---|---|---|---|

| Supervisor's Name & Street Address (if different than Job Location) | City (Country) | State | ZIP Code | Telephone Number ( ) |
|---|---|---|---|---|
| LUIS LOPEZ | | | | |

**PREVIOUS PERIODS OF ACTIVITY (Block #5)**

| Month/Year Month/Year To | Position Title | Supervisor |
|---|---|---|
| Month/Year Month/Year To | Position Title | Supervisor |
| Month/Year Month/Year To | Position Title | Supervisor |

#6  5/94 To 3/95  Code 7  Employer/Verifier Name/Military Duty Location  EVA ROBINSON  Your Position Title/Military Rank  Unemployed

| Employer's/Verifier's Street Address | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| 327 EAST 91st | LOS ANGELES | CA | 90003 | (213)755-3981 |

| Street Address of Job Location (if different than Employer's Address) | City (Country) | State | ZIP Code | Telephone Number ( ) |
|---|---|---|---|---|

| Supervisor's Name & Street Address (if different than Job Location) | City (Country) | State | ZIP Code | Telephone Number ( ) |
|---|---|---|---|---|

**PREVIOUS PERIODS OF ACTIVITY (Block #6)**

| Month/Year Month/Year To | Position Title | Supervisor |
|---|---|---|
| Month/Year Month/Year To | Position Title | Supervisor |
| Month/Year Month/Year To | Position Title | Supervisor |

**12  PEOPLE WHO KNOW YOU WELL**

List three people who know you well and live in the United States. They should be good friends, peers, colleagues, college roommates, etc., whose combined association with you covers as well as possible the last 7 years. Do not list your spouse, former spouses, or other relatives, and try not to list anyone who is listed elsewhere on this form.

Redacted PII

Redacted PII

Enter your Social Security Number before going to the next page ⟶

**Page 4**

000501

**YOUR EMPLOYMENT ACTIVITIES** *(Continued)*

| Month/Year | Month/Year | Code | Employer/Verifier Name/Military Duty Location | Your Position Title/Military Rank |
|---|---|---|---|---|
| 12/93 to | 5/94 | 9 | LOS ANGELES. POLICE DEPT. | POLICE OFFICER |

| Employer's/Verifier's Street Address | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| 1880 NORTH ACADEMY DRIVE | LOS ANGELES | CA | 90012 | (213) 485-4047 |

| Street Address of Job Location (If different than Employer's Address) | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| | | | | ( ) |

| Supervisor's Name & Street Address (If different than Job Location) | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| KATAPODIS K. | | | | ( ) |

**PREVIOUS PERIODS OF ACTIVITY**

| Month/Year | Month/Year | Position Title | Supervisor |
|---|---|---|---|
| 11/93 To 11/96 | | U.S. ARMY NATIONAL GUARD | SGT JONES |
| To | | | |
| To | | | |

| Month/Year | Month/Year | Code | Employer/Verifier Name/Military Duty Location | Your Position Title/Military Rank |
|---|---|---|---|---|
| 1/93 to | 12/93 | 9 | UNITED STATES MARSHALL SERV | DETENTION OFFICER |

| Employer's/Verifier's Street Address | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| 312 NORTH SPRING ST. | LOS ANGELES | CA | 90012 | (213) 894-2485 |

| Street Address of Job Location (If different than Employer's Address) | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| | | | | ( ) |

| Supervisor's Name & Street Address (If different than Job Location) | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| BILL WEASLEY | | | | ( ) |

**PREVIOUS PERIODS OF ACTIVITY**

| Month/Year | Month/Year | Position Title | Supervisor |
|---|---|---|---|
| To | | | |
| To | | | |
| To | | | |

| Month/Year | Month/Year | Code | Employer/Verifier Name/Military Duty Location | Your Position Title/Military Rank |
|---|---|---|---|---|
| 8/92 to | 1/93 | 7 | GLORIA CLAIBORNE | UNEMPLOYED |

| Employer's/Verifier's Street Address | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| 1589 WEST 36th St. | LOS ANGELES | CA | 90018 | (213) 735-3140 |

| Street Address of Job Location (If different than Employer's Address) | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| | | | | ( ) |

| Supervisor's Name & Street Address (If different than Job Location) | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| | | | | ( ) |

**PREVIOUS PERIODS OF ACTIVITY**

| Month/Year | Month/Year | Position Title | Supervisor |
|---|---|---|---|
| To | | | |
| To | | | |
| To | | | |

| Month/Year | Month/Year | Code | Employer/Verifier Name/Military Duty Location | Your Position Title/Military Rank |
|---|---|---|---|---|
| 7/89 to | 7/92 | 1 | U.S. ARMY | APGC SPECIALIST |

| Employer's/Verifier's Street Address | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| 870 WASHINGTON St. | FT EUSTIS | VA | 23604 | (804) 878-3895 |

| Street Address of Job Location (If different than Employer's Address) | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| | | | | ( ) |

| Supervisor's Name & Street Address (If different than Job Location) | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| CPT DONALD JOHNSON | | | | ( ) |

**PREVIOUS PERIODS OF ACTIVITY**

| Month/Year | Month/Year | Position Title | Supervisor |
|---|---|---|---|
| To | | | |
| To | | | |
| To | | | |

Enter your Social Security Number before going to the next page →

Redacted PII

Standard Form 86A (Back)

September 1995

**000502**

Standard Form 86A (EG)
Revised September 1995
U.S. Office of Personnel Management
5 CFR Parts 731, 732, and 736

## CONTINUATION SHEET FOR QUESTIONNAIRES
### SF 86, SF 85P, AND SF 85

For use with the SF 86, Questionnaire for National Security Positions;
SF 85P, Questionnaire for Public Trust Positions; and
SF 85, Questionnaire for Non-Sensitive Positions

Form approved:
OMB No. 3206-0007
NSN 7540-01-268-4928
86-203

**INSTRUCTIONS:** Use this form to continue your answers to "Where You Have Lived," "Where You Went to School," and/or "Your Employment Activities." Follow the instructions on the form for the particular questions you are answering and give information in the same sequence. Use as many continuation sheets as needed.

| Your Name | Your Social Security Number |
|---|---|
| | |

## WHERE YOU HAVE LIVED *(Continued)*

| | Month/Year   Month/Year To | Street Address | | Apt. # | City (Country) | | State | ZIP Code |
|---|---|---|---|---|---|---|---|---|
| #1 | | | | | | | | |
| | Name of Person Who Knew You | Street Address | Apt. # | City (Country) | | State | ZIP Code | Telephone Number ( ) |

| | Month/Year   Month/Year To | Street Address | | Apt. # | City (Country) | | State | ZIP Code |
|---|---|---|---|---|---|---|---|---|
| #2 | | | | | | | | |
| | Name of Person Who Knew You | Street Address | Apt. # | City (Country) | | State | ZIP Code | Telephone Number ( ) |

| | Month/Year   Month/Year To | Street Address | | Apt. # | City (Country) | | State | ZIP Code |
|---|---|---|---|---|---|---|---|---|
| #3 | | | | | | | | |
| | Name of Person Who Knew You | Street Address | Apt. # | City (Country) | | State | ZIP Code | Telephone Number ( ) |

| | Month/Year   Month/Year To | Street Address | | Apt. # | City (Country) | | State | ZIP Code |
|---|---|---|---|---|---|---|---|---|
| #4 | | | | | | | | |
| | Name of Person Who Knew You | Street Address | Apt. # | City (Country) | | State | ZIP Code | Telephone Number ( ) |

| | Month/Year   Month/Year To | Street Address | | Apt. # | City (Country) | | State | ZIP Code |
|---|---|---|---|---|---|---|---|---|
| #5 | | | | | | | | |
| | Name of Person Who Knew You | Street Address | Apt. # | City (Country) | | State | ZIP Code | Telephone Number ( ) |

## WHERE YOU WENT TO SCHOOL *(Continued)*

| | Month/Year   Month/Year To | Code | Name of School | Degree/Diploma/Other | Month/Year Awarded |
|---|---|---|---|---|---|
| #1 | | | | | |
| | Street Address and City (Country) of School | | | State | ZIP Code |
| | Name of Person Who Knew You | Street Address | Apt. # | City (Country) | State | ZIP Code | Telephone Number ( ) |

| | Month/Year   Month/Year To | Code | Name of School | Degree/Diploma/Other | Month/Year Awarded |
|---|---|---|---|---|---|
| #2 | | | | | |
| | Street Address and City (Country) of School | | | State | ZIP Code |
| | Name of Person Who Knew You | Street Address | Apt. # | City (Country) | State | ZIP Code | Telephone Number ( ) |

| | Month/Year   Month/Year To | Code | Name of School | Degree/Diploma/Other | Month/Year Awarded |
|---|---|---|---|---|---|
| #3 | | | | | |
| | Street Address and City (Country) of School | | | State | ZIP Code |
| | Name of Person Who Knew You | Street Address | Apt. # | City (Country) | State | ZIP Code | Telephone Number ( ) |

Exception to SF85, SF85P, SF85F-S, SF86, and SF86A approved by GSA September, 1995.
Designed using Perform Pro, WHS DIOR, Sep 95

**13** **YOUR SPOUSE**
Mark one box to show your current marital status and provide information about your spouse(s) in items a, and/or b.

[X] 1 - Never married      [ ] 3 - Separated        [ ] 5 - Divorced
[ ] 2 - Married            [ ] 4 - Legally Separated [ ] 6 - Widowed

**a** **Current Spouse** Complete the following about your current spouse only.

| Full Name | Date of Birth | Place of Birth (Include country if outside the U.S.) | Social Security Number |
|---|---|---|---|
| Other Names Used (Specify maiden name, names by other marriages, etc., and show dates used for each name) | | | Country(ies) of Citizenship |

| Date Married | Place Married (Include country if outside the U.S.) | | State |
|---|---|---|---|
| If Separated, Date of Separation | If Legally Separated, Where is the Record Located? City (Country) | | State |

| Address of Current Spouse, if different than your current address (Street, city, and country if outside the U.S.) | State | ZIP Code |
|---|---|---|

**b** **Former Spouse(s)** Complete the following about your former spouse(s), use blank sheets if needed.

| Full Name | Date of Birth | Place of Birth (Include country if outside the U.S.) | State |
|---|---|---|---|
| Country(ies) of Citizenship | Date Married | Place Married (Include country if outside the U.S.) | State |
| Check One, Then Give Date  [ ] Divorced  [ ] Widowed | Month/Day/Year | If Divorced, Where is the Record Located? City (Country) | State |

| Address of Former Spouse (Street, city, and country if outside the U.S.) | State | ZIP Code | Telephone Number |
|---|---|---|---|
| | | | ( ) |

**14** **YOUR RELATIVES AND ASSOCIATES**

Give the full name, correct code, and other requested information for each of your relatives and associates, living or dead, specified below.

| | | |
|---|---|---|
| 1 - Mother (first) | 5 - Foster parent | 9 - Sister | 13 - Half-sister | 17 - Other Relative* |
| 2 - Father (second) | 6 - Child (adopted also) | 10 - Stepbrother | 14 - Father-in-law | 18 - Associate* |
| 3 - Stepmother | 7 - Stepchild | 11 - Stepsister | 15 - Mother-in-law | 19 - Adult Currently Living With You |
| 4 - Stepfather | 8 - Brother | 12 - Half-brother | 16 - Guardian | |

* **Code 17** (Other Relative)-include only foreign national relatives not listed in 1-16 with whom you or your spouse are bound by affection, obligation, or close and continuing contact. **Code 18** (Associates) - include only foreign national associates with whom you or your spouse are bound by affection, obligation, or close and continuing contact.

| Full Name (if deceased, check box on the left before entering name) | Code | Date of Birth Month/Day/Year | Country of Birth | Country(ies) of Citizenship | Current Street Address and City (country) of Living Relatives | State |
|---|---|---|---|---|---|---|
| Redacted PII | | | | | | |

Enter your Social Security Number before going to the next page   →

**15**   **CITIZENSHIP OF YOUR RELATIVES AND ASSOCIATES**

If your mother, father, sister, brother, child, or current spouse or person with whom you have a spouse-like relationship is a U.S. citizen by other than birth, or an alien residing in the U.S., provide the nature of the individual's relationship to you (Spouse, Spouse-like, Mother, etc.), and the individual's name and date of birth on the first line (this information is needed to pair it accurately with information in items 13 and 14).

On the second line, provide the individual's naturalization certificate or alien registration number and use one of the document codes below to identify proof of citizenship status. Provide additional information on that line as requested.

| | |
|---|---|
| **1. Naturalization Certificate:** Provide the date issued and the location where the person was naturalized (Court, City and State). | **3. Alien Registration:** Provide the date and place where the person entered the U.S. (City and State). |
| **2. Citizenship Certificate:** Provide the date and location issued (City and State). | **4. Other:** Provide an explanation in the "Additional Information" block. |

| #1 Association | Name | | Date of Birth (Month/Day/Year) |
|---|---|---|---|
| Certificate/Registration # | Document Code | Additional Information | |
| #2 Association | Name | | Date of Birth (Month/Day/Year) |
| Certificate/Registration # | Document Code | Additional Information | |

**16**   **YOUR MILITARY HISTORY**

| | | Yes | No |
|---|---|---|---|
| **a** | Have you served in the United States military? | ✓ | |
| **b** | Have you served in the United States Merchant Marine? | | ✗ |

List all of your military service below, including service in Reserve, National Guard, and U.S. Merchant Marine. Start with the most recent period of service (#1) and work backward. If you had a break in service, each separate period should be listed.

- **Code.** Use one of the codes listed below to identify your branch of service:

  1 - Air Force    2 - Army    3 - Navy    4 - Marine Corps    5 - Coast Guard    6 - Merchant Marine    7 - National Guard

- **O/E.** Mark "O" block for Officer or "E" block for Enlisted.
- **Status.** "X" the appropriate block for the status of your service during the time that you served. If your service was in the National Guard, do not use an "X"; use the two-letter code for the state to mark the block.
- **Country.** If your service was with other than the U.S. Armed Forces, identify the country for which you served.

| Month/Year  Month/Year | Code | Service/Certificate # | O | E | Active | Active Reserve | Inactive Reserve | National Guard (State) | Country |
|---|---|---|---|---|---|---|---|---|---|
| 10/86 To 2/97 | 7 | US Army | | ✓ | | | | HAWAII | UNITED STATES |
| 2/89 To 7/92 | 2 | U.S. Army | | ✓ | ✓ | | | | UNITED STATES |

**17**   **YOUR FOREIGN ACTIVITIES**

| | | Yes | No |
|---|---|---|---|
| **a** | Do you have any foreign property, business connections, or financial interests? | | ✗ |
| **b** | Are you now or have you ever been employed by or acted as a consultant for a foreign government, firm, or agency? | | ✗ |
| **c** | Have you ever had any contact with a foreign government, its establishments (embassies or consulates), or its representatives, whether inside or outside the U.S., other than on official U.S. Government business? (Does not include routine visa applications and border crossing contacts.) | ✗ | |
| **d** | In the last 7 years, have you had an active passport that was issued by a foreign government? | | ✗ |

If you answered "Yes" to a, b, c, or d above, explain in the space below: provide inclusive dates, names of firms and/or governments involved, and an explanation of your involvement.

| Month/Year  Month/Year | Firm and/or Government | Explanation |
|---|---|---|
| To | | |
| To | | |

**18**   **FOREIGN COUNTRIES YOU HAVE VISITED**

List foreign countries you have visited, except on travel under official Government orders, beginning with the most current (#1) and working back 7 years. (Travel as a dependent or contractor must be listed.)

- Use one of these codes to indicate the purpose of your visit:    1 - Business    2 - Pleasure    3 - Education    4 - Other
- Include short trips to Canada or Mexico. If you have lived near a border and have made short (one day or less) trips to the neighboring country, you do not need to list each trip. Instead, provide the time period, the code, the country, and a note ("Many Short Trips").
- Do not repeat travel covered in items 9, 10, or 11.

| Month/Year  Month/Year | Code | Country | Month/Year  Month/Year | Code | Country |
|---|---|---|---|---|---|
| #1 To | | | #3 To | | |
| #2 To | | | #4 To | | |

This concludes Part 1 of this form. If you have used Page 9, continuation sheets, or blank sheets to complete any of the questions in Part 1, give the number for those questions in the space to the right.

Enter your Social Security Number before going to the next page    ➔    Redacted PII

Page 6

Standard Form 86
Revised September 1995
U.S. Office of Personnel Management
5 CFR Parts 731, 732, and 736

**QUESTIONNAIRE FOR
NATIONAL SECURITY POSITIONS**

Form approved:
O.M.B. No. 3206-0007
NSN 7540-00-634-4036
86-111

**Part 2**   OFFICIAL USE ONLY

| | | Yes | No |
|---|---|---|---|
| **19** | **YOUR MILITARY RECORD** Have you ever received other than an honorable discharge from the military?  If "Yes," provide the date of discharge and type of discharge below. | | X |

| Month/Year | Type of Discharge |
|---|---|
| | |

| | | Yes | No |
|---|---|---|---|
| **20** | **YOUR SELECTIVE SERVICE RECORD** | | |
| **a** | Are you a male born after December 31, 1959? If "No," go to 21. If "Yes," go to b. | X | |
| **b** | Have you registered with the Selective Service System? If "Yes," provide your registration number.  If "No," show the reason for your legal exemption below. | | X |

| Registration Number | Legal Exemption Explanation |
|---|---|
| | |

| | | Yes | No |
|---|---|---|---|
| **21** | **YOUR MEDICAL RECORD** In the last 7 years, have you consulted with a mental health professional (psychiatrist, psychologist, counselor, etc.) or have you consulted with another health care provider about a mental health related condition? | | X |

If you answered "Yes," provide the dates of treatment and the name and address of the therapist or doctor below, unless the consultation(s) involved only marital, family, or grief counseling, not related to violence by you.

| Month/Year | Month/Year | Name/Address of Therapist or Doctor | State | ZIP Code |
|---|---|---|---|---|
| | To | | | |
| | To | | | |

| | | Yes | No |
|---|---|---|---|
| **22** | **YOUR EMPLOYMENT RECORD** Has any of the following happened to you in the last 7 years?  If "Yes," begin with the most recent occurrence and go backward, providing date fired, quit, or left, and other information requested. | | X |

Use the following codes and explain the reason your employment was ended:
1 - Fired from a job
2 - Quit a job after being told you'd be fired
3 - Left a job by mutual agreement following allegations of misconduct
4 - Left a job by mutual agreement following allegations of unsatisfactory performance
5 - Left a job for other reasons under unfavorable circumstances

| Month/Year | Code | Specify Reason | Employer's Name and Address    (Include city/Country if outside U.S.) | State | ZIP Code |
|---|---|---|---|---|---|
| | | | | | |

| | | Yes | No |
|---|---|---|---|
| **23** | **YOUR POLICE RECORD** For this item, report information regardless of whether the record in your case has been "sealed" or otherwise stricken from the court record. The single exception to this requirement is for certain convictions under the Federal Controlled Substances Act for which the court issued an expungement order under the authority of 21 U.S.C. 844 or 18 U.S.C. 3607. | | X |
| **a** | Have you ever been charged with or convicted of any felony offense? (Include those under Uniform Code of Military Justice) | | X |
| **b** | Have you ever been charged with or convicted of a firearms or explosives offense? | | X |
| **c** | Are there currently any charges pending against you for any criminal offense? | | X |
| **d** | Have you ever been charged with or convicted of any offense(s) related to alcohol or drugs? | | X |
| **e** | In the last 7 years, have you been subject to court martial or other disciplinary proceedings under the Uniform Code of Military Justice? (Include non-judicial, Captain's mast, etc.) | | X |
| **f** | In the last 7 years, have you been arrested for, charged with, or convicted of any offense(s) not listed in response to a, b, c, d, or e above?  (Leave out traffic fines of less than $150 unless the violation was alcohol or drug related.) | X | X |

If you answered "Yes" to a, b, c, d, e, or f above, explain below. Under "Offense," do not list specific penalty codes, list the actual offense or violation (for example, arson, theft, etc.).

| Month/Year | Offense | Action Taken | Law Enforcement Authority/Court (Include City and county/country if outside U.S.) | State | ZIP Code |
|---|---|---|---|---|---|
| 11/95 | DUMPING REFUSE NEAR HIGHWAY | $109.00 FINE PAID | LOS ANGELES P.D | CA | 90012 |
| 10/95 | ASSAULT | DISMISSED | LOS ANGELES P.D. | CA | 90012 |

Enter your Social Security Number before going to the next page    →

Page 7

000506

**24** | **YOUR USE OF ILLEGAL DRUGS AND DRUG ACTIVITY** | Yes | No
---|---|---|---

The following questions pertain to the illegal use of drugs or drug activity. You are required to answer the questions fully and truthfully, and your failure to do so could be grounds for an adverse employment decision or action against you, but neither your truthful responses nor information derived from your responses will be used as evidence against you in any subsequent criminal proceeding. | | X

**a** Since the age of 16 or in the last 7 years, whichever is shorter, have you illegally used any controlled substance, for example, marijuana, cocaine, crack cocaine, hashish, narcotics (opium, morphine, codeine, heroin, etc.), amphetamines, depressants (barbiturates, methaqualone, tranquilizers, etc.), hallucinogenics (LSD, PCP, etc.), or prescription drugs?

**b** Have you ever illegally used a controlled substance while employed as a law enforcement officer, prosecutor, or courtroom official; while possessing a security clearance; or while in a position directly and immediately affecting the public safety? | | X

**c** In the last 7 years, have you been involved in the illegal purchase, manufacture, trafficking, production, transfer, shipping, receiving, or sale of any narcotic, depressant, stimulant, hallucinogen, or cannabis for your own intended profit or that of another? | | X

If you answered "Yes" to a or b above, provide the date(s), identify the controlled substance(s) and/or prescription drugs used, and the number of times each was used.

| Month/Year | Month/Year | Controlled Substance/Prescription Drug Used | Number of Times Used |
|---|---|---|---|
| | To | | |
| | To | | |

**25** | **YOUR USE OF ALCOHOL** | Yes | No
---|---|---|---

In the last 7 years, has your use of alcoholic beverages (such as liquor, beer, wine) resulted in any alcohol-related treatment or counseling (such as for alcohol abuse or alcoholism)? | | X

If you answered "Yes", provide the dates of treatment and the name and address of the counselor or doctor below. Do not repeat information reported in response to item 21 above.

| Month/Year | Month/Year | Name/Address of Counselor or Doctor | State | ZIP Code |
|---|---|---|---|---|
| | To | | | |
| | To | | | |

**26** | **YOUR INVESTIGATIONS RECORD** | Yes | No
---|---|---|---

**a** Has the United States Government ever investigated your background and/or granted you a security clearance? If "Yes," use the codes that follow to provide the requested information below. If "Yes," but you can't recall the investigating agency and/or the security clearance received, enter "Other" agency code or clearance code, as appropriate, and "Don't know" or "Don't recall" under the "Other Agency" heading, below. If your response is "No," or you don't know or can't recall if you were investigated and cleared, check the "No" box. | X |

Codes for Investigating Agency
1 - Defense Department          4 - FBI
2 - State Department            5 - Treasury Department
3 - Office of Personnel Management   6 - Other (Specify)

Codes for Security Clearance Received
0 - Not Required        3 - Top Secret              6 - L
1 - Confidential        4 - Sensitive Compartmented Information   7 - Other
2 - Secret              5 - Q

| Month/Year | Agency Code | Other Agency | Clearance Code | Month/Year | Agency Code | Other Agency | Clearance Code |
|---|---|---|---|---|---|---|---|
| 2/93 | 3 | U.S. MARSHAL SERVICES | 6 7 | | | | |
| 03/89 | | | 6 7 | | | | |

**b** To your knowledge, have you ever had a clearance or access authorization denied, suspended, or revoked, or have you ever been debarred from government employment? If "Yes," give date of action and agency. Note: An administrative downgrade or termination of a security clearance is not a revocation. | Yes | No
| | X

| Month/Year | Department or Agency Taking Action | Month/Year | Department or Agency Taking Action |
|---|---|---|---|
| | | | |

D.C.

**27** | **YOUR FINANCIAL RECORD** | Yes | No
---|---|---|---

**a** In the last 7 years, have you filed a petition under any chapter of the bankruptcy code (to include Chapter 13)? | Yes | No

**b** In the last 7 years, have you had your wages garnished or had any property repossessed for any reason?

**c** In the last 7 years, have you had a lien placed against your property for failing to pay taxes or other debts? | | X

**d** In the last 7 years, have you had any judgments against you that have not been paid? | X |

If you answered "Yes" to a, b, c, or d, provide the information requested below:

| Month/Year | Type of Action | Amount | Name Action Occurred Under | Name/Address of Court or Agency Handling Case | State | ZIP Code |
|---|---|---|---|---|---|---|
| 10/94 | GARNISHMENT | $500 | DAMON J. CLAIBORNE | NEX LONG BEACH NVSB | CA | 90744 |
| 9/96 | JUDGEMENT | $1,000 | DAMON J. CLAIBORNE | SMALL CLAIMS LOS ANGELES MUNICIPAL | CA | 90012 |

Enter your Social Security Number before going to the next page →    Redacted PII

Page 8

**000507**

**28  YOUR FINANCIAL DELINQUENCIES**

|  | | Yes | No |
|---|---|---|---|
| a | In the last 7 years, have you been over 180 days delinquent on any debt(s)? | X | |
| b | Are you currently over 90 days delinquent on any debt(s)? | X | |

If you answered "Yes" to a or b, provide the information requested below:

| Incurred Month/Year | Satisfied Month/Year | Amount | Type of Loan or Obligation and Account Number | Name/Address of Creditor or Obligee | State | ZIP Code |
|---|---|---|---|---|---|---|
| 2/93 | | 11,000 | UNSECURED CONSILIDATED | LOREL FINANCE CORPORATION, CHAPEL FINANCE, BAKERS, SUNCREST FINANCIAL, GLENDALE FINANCIAL, BENEFICIAL, 100 CARDS HERCULES | VA | 9CC72 |

**29  PUBLIC RECORD CIVIL COURT ACTIONS**

|  | | Yes | No |
|---|---|---|---|
| | In the last 7 years, have you been a party to any public record civil court actions not listed elsewhere on this form? | | X |

If you answered "Yes," provide the information about the public record civil court action requested below.

| Month/Year | Nature of Action | Result of Action | Name of Parties Involved | Court (Include City and county/country if outside U.S.) | State | ZIP Code |
|---|---|---|---|---|---|---|
| | | | | | | |

**30  YOUR ASSOCIATION RECORD**

|  | | Yes | No |
|---|---|---|---|
| a | Have you ever been an officer or a member or made a contribution to an organization dedicated to the violent overthrow of the United States Government and which engages in illegal activities to that end, knowing that the organization engages in such activities with the specific intent to further such activities? | | X |
| b | Have you ever knowingly engaged in any acts or activities designed to overthrow the United States Government by force? | | X |

If you answered "Yes" to a or b, explain in the space below.

**Continuation Space**

Use the continuation sheet(s) (SF 86A) for additional answers to Items 9, 10, and 11. Use the space below to continue answers to all other items and any information you would like to add. If more space is needed than is provided below, use a blank sheet(s) of paper. Start each sheet with your name and Social Security Number. Before each answer, identify the number of the item.

# 9/90 - 7/92  870 WASHINGTON St. / Ft. Eustis / VA / 25604

Redacted PII

After completing Parts 1 and 2 of this form and any attachments, you should review your answers to all questions to make sure the form is complete and accurate, and then sign and date the following certification and sign and date the release on page 10.

## Certification That My Answers Are True

My statements on this form, and any attachments to it, are true, complete, and correct to the best of my knowledge and belief and are made in good faith. I understand that a knowing and willful false statement on this form can be punished by fine or imprisonment or both. (See section 1001 of title 18, United States Code).

Signature (Sign in ink)

Date  971204

Enter your Social Security Number before going to the next page   ➔   Redacted PII

Page 9

000508

Standard Form 86
Revised September 1995
U.S. Office of Personnel Management
5 CFR Parts 731, 732, and 736

Form approved:
O.M.B. No. 3206-0007
NSN 7540-00-634-4036
86-111

# UNITED STATES OF AMERICA

## AUTHORIZATION FOR RELEASE OF INFORMATION

Carefully read this authorization to release information about you, then sign and date it in ink.

**I Authorize** any investigator, special agent, or other duly accredited representative of the authorized Federal agency conducting my background investigation, to obtain any information relating to my activities from individuals, schools, residential management agents, employers, criminal justice agencies, credit bureaus, consumer reporting agencies, collection agencies, retail business establishments, or other sources of information. This information may include, but is not limited to, my academic, residential, achievement, performance, attendance, disciplinary, employment history, criminal history record information, and financial and credit information. I authorize the Federal agency conducting my investigation to disclose the record of my background investigation to the requesting agency for the purpose of making a determination of suitability or eligibility for a security clearance.

**I Understand** that, for financial or lending institutions, medical institutions, hospitals, health care professionals, and other sources of information, a separate specific release will be needed, and I may be contacted for such a release at a later date. Where a separate release is requested for information relating to mental health treatment or counseling, the release will contain a list of the specific questions, relevant to the job description, which the doctor or therapist will be asked.

**I Further Authorize** any investigator, special agent, or other duly accredited representative of the U.S. Office of Personnel Management, the Federal Bureau of Investigation, the Department of Defense, the Defense Investigative Service, and any other authorized Federal agency, to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for access to classified information and/or for assignment to, or retention in, a sensitive National Security position, in accordance with 5 U.S.C. 9101. I understand that I may request a copy of such records as may be available to me under the law.

**I Authorize** custodians of records and other sources of information pertaining to me to release such information upon request of the investigator, special agent, or other duly accredited representative of any Federal agency authorized above regardless of any previous agreement to the contrary.

**I Understand** that the information released by records custodians and sources of information is for official use by the Federal Government only for the purposes provided in this Standard Form 86, and that it may be redisclosed by the Government only as authorized by law.

Copies of this authorization that show my signature are as valid as the original release signed by me. This authorization is valid for five (5) years from the date signed or upon the termination of my affiliation with the Federal Government, whichever is sooner. Read, sign and date the release on the next page if you answered "Yes" to question 21.

| Signature *(Sign in ink)* | Full Name *(Type or Print Legibly)* | Date Signed |
|---|---|---|
| *Damon Claiborne* | DAMON JAHRON CLAIBORNE | 97 12 04 |

| Other Names Used | Social Security Number |
|---|---|
| NONE | Redacted PII |

| Current Address *(Street, City)* | State | ZIP Code | Home Telephone Number *(Include Area Code)* |
|---|---|---|---|
| Redacted PII | | | Redacted PII / Redacted PII |

**Page 10**

000509

Standard Form 86
Revised September 1995
U.S. Office of Personnel Management
5 CFR Parts 731, 732, and 736

Form approved:
O.M.B. No. 3206-0007
NSN 7540-00-634-4036
86-111

# UNITED STATES OF AMERICA
## AUTHORIZATION FOR RELEASE OF MEDICAL INFORMATION

Carefully read this authorization to release information about you, then sign and date it in ink.

## Instructions for Completing this Release

This is a release for the investigator to ask your health practitioner(s) the three questions below concerning your mental health consultations.  Your signature will allow the practitioner(s) to answer only these questions.

I am seeking assignment to or retention in a position with the Federal government which requires access to classified national security information or special nuclear information or material.  As part of the clearance process, **I hereby authorize** the investigator, special agent, or duly accredited representative of the authorized Federal agency conducting my background investigation, to obtain the following information relating to my mental health consultations:

> Does the person under investigation have a condition or treatment that could impair his/her judgement or reliability, particularly in the context of safeguarding classified national security information or special nuclear information or material?

> If so, please describe the nature of the condition and the extent and duration of the impairment or treatment.

> What is the prognosis?

I understand the information released pursuant to this release is for use by the Federal Government only for purposes provided in the Standard Form 86 and that it may be redisclosed by the Government only as authorized by law.

Copies of this authorization that show my signature are as valid as the original release signed by me. This authorization is valid for 1 year from the date signed or upon termination of my affiliation with the Federal Government, whichever is sooner.

| Signature (Sign in ink) | Full Name (Type or Print Legibly) | Date Signed |
|---|---|---|
| *Damon Clar* | DAMON JAHZON CLAIBORNE | 971204 |

| Other Names Used | Social Security Number |
|---|---|
| NONE | Redacted PII |

| Current Address (Street, City) | State | ZIP Code | Home Telephone Number (Include Area Code) |
|---|---|---|---|
| Redacted PII | | Redacted PII | Redacted PII |

**000510**

DEPATMENTS OF THE ARMY AND THE AIR FORCE
NATIONAL GUARD BUREAU
**REPORT OF SEPARATION AND RECORD OF SERVICE**

| REPORT OF SEPARATION AND RECORD OF SERVICE IN THE 1 **ARMY** | NATIONAL GUARD OF **HAWAII** | AND AS A RESERVE OF THE 2 **ARMY** |
|---|---|---|

*1. Insert either Army or Air    2. Enlisted personnel only - Insert only Army or Air Force*

| 1. LAST NAME - FIRST NAME - MIDDLE NAME | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NUMBER |
|---|---|---|
| CLAIBORNE DAMON JAHRON | ARNGUS/HIARNG | Redacted PII |

| 4. DATE OF ENL | YR 93 | MO 11 | DA 17 | 5a. RANK SPC | 5b. PAY GRADE E4 | 6. DATE OF RANK | YR 91 | MO 05 | DA 01 | 7. DATE OF BIRTH | YR | MO | DA |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | Redacted PII | | |

| 8a. STATION OR INSTALLATION AT WHICH EFFECTED | 8b. EFFECTIVE DATE | YR 97 | MO 02 | DA 20 |
|---|---|---|---|---|
| Co C, 2/299th Inf, Kahului, HI  96732-2403 | | | | |

| 9. COMMAND TO WHICH TRANSFERRED | 10. RECORD OF SERVICE | YRS | MOS | DAYS |
|---|---|---|---|---|
| NA | (a) NET SERVICE THIS PERIOD | 03 | 03 | 04 |
| | (b) PRIOR RESERVE COMPONENT SERVICE | 01 | 03 | 27 |
| | (c) PRIOR ACTIVE FEDERAL SERVICE | 03 | 00 | 00 |

| 11. TERMINAL DATE OF RESERVE / MILITARY SERVICE OBLIGATION | YR 97 | MO 02 | DA 20 | (d) TOTAL SERVICE FOR PAY | 07 | 07 | 01 |
|---|---|---|---|---|---|---|---|

| 12. MILITARY EDUCATION    *(Course Title, number of weeks, month and year completed)* | 13. PRIMARY SPECIALITY NUMBER, TITLE AND DATE AWARDED *(Additional speciality numbers and titles)* |
|---|---|
| Cargo Specialist Crs, 9wks, 1989.<br>Infantryman SL 1, 2wks, 9507. | 11B10, Infantryman, 950726. |

| 14. HIGHEST EDUCATION LEVEL SUCCESSFULLY COMPLETED<br>SECONDARY / HIGH SCHOOL __12__ YRS *(Gr 1-12)*  COLLEGE __0__ YRS | 15. DECORATIONS, MEDALS, BADGES, COMMENDATIONS, CITATIONS AND CAMPAIGN RIBBONS AWARDED ~~THIS PERIOD~~<br>*(State Awards may be included)* |
|---|---|

| 16. SERVICEMAN'S GROUP LIFE INSURANCE COV | 17. PERSONNEL SECURITY INVESTIGATION | | ARMY-SVC-RBN/NTL-DEF-SVC-MDL-1/GCMDL-ARMY-1/SW-ASIA-SVC-MDL-BSS-3/KU-LIB-MDL(KU)/KU-LIB-MDL(SA)// |
|---|---|---|---|
| | a. TYPE | b. DATE COMPLETED | |
| X YES ☐ NO<br>AMT $ 200,000 | NONE | NA | |

| 18. REMARKS    DEP: 890221-890719  CAARNG: 931117-961021  HIARNG: 961022-970220 |
|---|
| NGB Form 22 and NGB Form 55 were mailed by certified mail to the individual's last known address as shown in item 19.<br>At the time he enlisted, service member was erroneously contracted for a term of service beyond his normal eight-year service obligation. This was contrary to his original intent to enlist for a period of service which should fulfill that obligation. As such having completed that obligation he is concurrently discharged. |

| 19. MAILING ADDRESS AFTER SEPARATION    *(Street, RFD, City, County, State and Zip Code)* | 20. SIGNATURE OF PERSON BEING SEPARATED |
|---|---|
| Redacted PII | SOLDIER NOT AVAILABLE TO SIGN |

| 21. TYPED NAME, GRADE AND TITLE OF AUTHORIZING OFFICER<br>GARY F. TERASHIMA, WO1<br>Personnel Records Chief | 22. SIGNATURE OF OFFICER AUTHORIZED TO SIGN |
|---|---|

NGB FORM 22
1 FEB 83    *(Replaces NGB Form 22, dated 15 Oct 76 and NGB Form 22-1, dated 1 Jun 78, which are obsolete)*    INDIVIDUAL COPY (i)

CERTIFIED TRUE COPY OF ORIGINAL
*[signature]* 971217
HAROLD K. CHUN
MSG, USA
SR. GUIDANCE COUNSELOR

DEPARTMENTS OF THE ARMY AND THE AIR FORCE
NATIONAL GUARD BUREAU

# REPORT OF SEPARATION AND RECORD OF SERVICE

| REPORT OF SEPARATION AND RECORD OF SERVICE IN THE 1 ARMY | NATIONAL GUARD OF HAWAII | AND AS A RESERVE OF THE 2 ARMY |
|---|---|---|

*1. Insert either Army or Air    2. Enlisted personnel only - insert only Army or Air Force*

| 1. LAST NAME - FIRST NAME - MIDDLE NAME | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NUMBER |
|---|---|---|
| CLAIBORNE DAHON JAHRON | ARNGUS/HIARNG | Redacted PII |

| 4. DATE OF ENL | YR 93 | MO 11 | DA 17 | 5a. RANK SPC | 5b. PAY GRADE E4 | 6. DATE OF RANK | YR 91 | MO 05 | DA 01 | 7. DATE OF BIRTH | YR | MO | DA |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | Redacted PII | | |

| 8a. STATION OR INSTALLATION AT WHICH EFFECTED | | 8b. EFFECTIVE DATE | YR 97 | MO 02 | DA 20 |
|---|---|---|---|---|---|
| Co C, 2/299th Inf, Kahului, HI 96732-2403 | | | | | |

| 9. COMMAND TO WHICH TRANSFERRED | 10. RECORD OF SERVICE | YRS | MOS | DAYS |
|---|---|---|---|---|
| NA | (a) NET SERVICE THIS PERIOD | 03 | 03 | 04 |
| | (b) PRIOR RESERVE COMPONENT SERVICE | 01 | 03 | 27 |
| | (c) PRIOR ACTIVE FEDERAL SERVICE | 03 | 00 | 00 |

| 11. TERMINAL DATE OF RESERVE / MILITARY SERVICE OBLIGATION | YR 97 | MO 02 | DA 20 | (d) TOTAL SERVICE FOR PAY | 07 | 07 | 01 |
|---|---|---|---|---|---|---|---|

| 12. MILITARY EDUCATION  *(Course Title, number of weeks, month and year completed)* | 13. PRIMARY SPECIALITY NUMBER, TITLE AND DATE AWARDED *(Additional speciality numbers and titles)* |
|---|---|
| Cargo Specialist Crs, 9wks, 1989. Infantryman SL 1, 2wks, 9507. | 11B10, Infantryman, 950726. |

| 14. HIGHEST EDUCATION LEVEL SUCCESSFULLY COMPLETED SECONDARY / HIGH SCHOOL 12 YRS *(Gr 1-12)*  COLLEGE 0 YRS | 15. DECORATIONS, MEDALS, BADGES, COMMENDATIONS, CITATIONS AND CAMPAIGN RIBBONS AWARDED THIS PERIOD *(State Awards may be Included)* |
|---|---|
| | ARMY-SVC-RBN/NTL-DEF-SVC-MDL-1/GCMDL-ARMY-1/SW-ASIA-SVC-MDL-BSS-3/KU-LIB-MDL(KU)/KU-LIB-HDL(SA)// |

| 16. SERVICEMAN'S GROUP LIFE INSURANCE COV | 17. PERSONNEL SECURITY INVESTIGATION | |
|---|---|---|
| | a. TYPE | b. DATE COMPLETED |
| [X] YES  [ ] NO   AMT $ 200,000 | NONE | NA |

| 18. REMARKS   DEP: 890221-890719  CAARNG: 931117-961021  HIARNG: 961022-970220 |
|---|
| NGB Form 22 and NGB Form 55 were mailed by certified mail to the individual's last known address as shown in item 19. At the time he enlisted, service member was erroneously contracted for a term of service beyond his normal eight-year service obligation. This was contrary to his original intent to enlist for a period of service which should fulfill that obligation. As such having completed that obligation he is concurrently discharged. |

| 19. MAILING ADDRESS AFTER SEPARATION  *(Street, RFD, City, County, State and Zip Code)* | 20. SIGNATURE OF PERSON BEING SEPARATED |
|---|---|
| Redacted PII | SOLDIER NOT AVAILABLE TO SIGN |

| 21. TYPED NAME, GRADE AND TITLE OF AUTHORIZING OFFICER | 22. SIGNATURE OF OFFICER AUTHORIZED TO SIGN |
|---|---|
| GARY F. TERASHIMA, WO1 Personnel Records Chief | *[signature]* |

| 23. AUTHORITY AND REASON |
|---|
| NGR 600-200, Expiration Term of Service. |

| 24. CHARACTER OF SERVICE HONORABLE | 25. TYPE OF CERTIFICATE USED NGB Form 55 | 26. REENLISTMENT ELIGIBILITY RE-1 |
|---|---|---|

| 27. [ ] REQUEST   [ ] DECLINE COPIES OF MY NGB FORM 22   INITIALS _____ |
|---|

NGB FORM 22 1 FEB 83   *(Replaces NGB Form 22, dated 15 Oct 76 and NGB Form 22-1, dated 1 Jun 78, which are obsolete)*   MPRJ COPY (3)

OATH OF EXTENSION OF ENLISTMENT

(For use of this form, see AR 601-280; the proponent agency is DCSPER)

## APPLICANT DATA

| NAME (LAST, FIRST, MIDDLE) | RANK | SSN |
|---|---|---|
| CLAIBORNE, DAMON JAHRON | SPC | Redacted PII |

| PLACE OF EXTENSION (Unit, Installation, State, ZIP Code) | EXTENSION CONTROL NUMBER (If Applicable) |
|---|---|
| B CO 58TH TRANS BN<br>FORT LEONARD WOOD, MO  65473 | 1142503 |

## AGREEMENT

I, a member of the Regular Army, do hereby acknowledge this ___16TH___ day of ___JUNE___, 1998, to have voluntarily extended my __3 YEARS__ enlistment of the _28TH_ day of _JANUARY_, 1998, as a soldier
(Enter current enlistment as extended)
in the Regular Army of the United States to a period of __03 years__ __06 months__ __00__ weeks from the last mentioned date. The period of this extension is _6_ months and my new ETS date is _27 JULY 2001_.

My request for extension is _TO MEET SRR FOR PCS_
(Specific Reason)

UP paragraph _4-9A_, chapter 4, AR 601-280.
(APPROPRIATE PARAGRAPH)

| FULL SIGNATURE OF APPLICANT | DATE SIGNED (YY/MM/DD) |
|---|---|
| *Damon Jahron Claiborne* | 98 JUN 16 |

### RESPONSIBLE CAREER COUNSELOR

| TYPED NAME (LAST, FIRST, MI) | RANK | SSN | UNIT (Unit, Installation, State, ZIP Code) |
|---|---|---|---|
| GUIN KIRK D. | SFC | G-7385 | HHC, 43RD AG BN<br>FORT LEONARD WOOD, MO  65473 |

REMARKS

### ADMINISTERING OFFICER

Subscribed to before me this _16TH_ day of _JUNE_, 1998.

| TYPE NAME (LAST, FIRST, MI) | RANK |
|---|---|
| DIEDRICK, FRANK J. | CPT |

| SIGNATURE | UNIT (Unit, Installation, State, ZIP Code) |
|---|---|
| | B CO 58TH TRANS BN<br>FORT LEONARD WOOD, MO 65473 |

DA FORM 1695-E (DEC 91)          PREVIOUS EDITION OF APR 75 IS OBSOLETE

## REQUEST FOR REENLISTMENT OR EXTENSION IN THE REGULAR ARMY

For use of this form, see AR 601-280; the proponent agency is ODCSPER

### SECTION I - SOLDIER'S REQUEST

| 1. TO | 2. FROM |
|---|---|
| COMMANDER<br>B CO 58TH TRANS BN<br>FORT LEONARD WOOD, MO 65473 | SPC DAMON JAHRON CLAIBORNE<br>Redacted PII<br>B CO 58TH TRANS BN<br>FORT LEONARD WOOD, MO 65473 |

**3. REQUEST I BE AUTHORIZED TO** (Select one)

☐ **a.** REENLIST IN THE ACTIVE COMPONENT.

☒ **b.** EXTEND MY ENLISTMENT FOR THE FOLLOWING REASON: TO MEET PCS TOUR TO GERMANY

**4. ACCRUED LEAVE OPTIONS** (Select one)

☐ **a.** I DESIRE TO CASH IN _____ DAYS OF ACCRUED LEAVE.

☒ **b.** I DO NOT DESIRE TO CASH IN ACCRUED LEAVE.

☐ **c.** I AM EXTENDING MY PRESENT ENLISTMENT AND HAVE BEEN COUNSELED ON CASHING IN ACCRUED LEAVE.

| 5. DATE | 6. SIGNATURE |
|---|---|
| 98 JUN 10 | *Damon Jahron Claiborne* |

### SECTION II - COMMANDER'S CERTIFICATION

**7. COMMANDER'S DETERMINATION OF QUALIFICATION** (Select one)

☒ **a.** SOLDIER IS FULLY QUALIFIED FOR REQUESTED ACTION.

☐ **b.** SOLDIER IS NOT FULLY QUALIFIED AND REQUIRES WAIVER. (Select 8b or 8c(1) below).

☐ **c.** SOLDIER IS FULLY QUALIFIED, BUT IS NOT RECOMMENDED FOR FURTHER SERVICE. (Select 8c(2) below)

**8. COMMANDER'S DETERMINATION/RECOMMENDATION FOR CONTINUED SERVICE WITHIN THE ARMY** (Select one)

☒ **a.** APPROVED

☐ **b.** RECOMMEND APPROVAL. DA FORM 3072 IS ATTACHED.

☐ **c.** DISAPPROVED

☐ (1) I DISAPPROVE THE SOLDIER'S REQUEST FOR WAIVER OF DISQUALIFICATION.

☐ (2) I HAVE INITIATED A BAR TO REENLISTMENT UNDER THE PROVISIONS OF CHAPTER 8, AR 601-280.

**9. TYPED NAME, RANK, AND BRANCH OF COMMANDER**

FRANK J. DIEDRICK, CPT, TC

| 10. SIGNATURE | 11. DATE |
|---|---|
| *signature* | 98 JUN 10 |

**DA FORM 3340-R, DEC 84**    EDITION OF MAY 88 IS OBSOLETE

H/M 154

# MONTGOMERY GI BILL ACT OF 1984 (MGIB)

VSE

*(Chapter 30, Title 38, U.S. Code)*

### Privacy Act Statement

| | |
|---|---|
| **AUTHORITY:** | Chapter 30, Title 38, US Code, Sections 1411 and 1412; and EO 9397. |
| **PRINCIPAL PURPOSE:** | To establish eligibility to participate in the Montgomery GI Bill Act of 1984. |
| **ROUTINE USES:** | Information will be used as a source document indicating participation status of each service member in the Montgomery GI Bill benefits program. Determination of participation status will involve computer matching between the Department of Defense and the Department of Veterans Affairs using information from this document. |
| **DISCLOSURE:** | Voluntary; however, failure to provide Social Security Number and other personal information may delay processing of this form and may result in the respondent being automatically enrolled in the MGIB. |

**1. SERVICE MEMBER**

a. NAME *(Last, First, Middle Initial)*
CLAIBORNE DAMON J

b. SOCIAL SECURITY NUMBER (SSN)
Redacted PII

**2. STATEMENT OF UNDERSTANDING**

a. ACADEMY / ROTC SCHOLARSHIP GRADUATES

I am **NOT** eligible for the MGIB because I am a Service Academy graduate / Reserve Officers' Training Corps (ROTC) scholarship graduate.

| (1) Service Member Signature | (2) Rank / Grade | (3) Date Signed (YYMMDD) |
|---|---|---|
| | | |

**b. ALL OTHER SERVICE MEMBERS**

(1) I am eligible for the MGIB based on my initial entry on active duty after June 30, 1985.

(2) I understand that I am automatically enrolled unless I exercise the option to disenroll by signing Item 3 below by the date designated by my Service.

(3) I understand that <u>unless I disenroll</u> from the MGIB, my basic pay will be reduced $100 per month for **EACH** of the first 12 full months of active duty and this basic pay reduction cannot be **REFUNDED, SUSPENDED OR STOPPED.**

(4) I must complete 36 months of active duty service before I am entitled to $300 per month of benefits for a period of 36 months.

(5) If my obligation is less than 36 months, I understand that I must complete 24 months of active duty to receive $250 per month of benefits for a period of 36 months.

(6) I must complete 24 months of active duty service and join the Selected Reserve for a minimum of a 48 month service agreement and serve honorably in the Selected Reserve to begin receiving $300 per month for up to 36 months.

(7) If a non-high school graduate, I must complete all high school diploma (or equivalency) requirements before completing my initial enlistment.

(8) I must use the MGIB within 10 years of release/discharge from active duty or completion of Selected Reserve obligation if qualifying under paragraph (6).

(9) I must receive an honorable discharge for service establishing entitlement to the MGIB.

(10) I may use benefits in-service after 24 months of active duty. Benefits are limited to the cost of tuition and fees or the amount of assistance authorized, whichever is less.

(11) If I die while on active duty, my designated beneficiary(ies) will receive the unused balance of the money reduced from my basic pay for the MGIB. This death benefit will be paid by the Department of Veterans Affairs (DVA).

(12) I cannot receive any combination of DVA benefits in excess of 48 months and if I have received 12 months or more of benefits under any other VA program, my MGIB benefits will be appropriately adjusted.

(13) My qualifying period of active duty service will not entitle me to both active duty MGIB and Selected Reserve MGIB benefits.

| (a) Service Member Signature | (b) Rank / Grade | (c) Date Signed (YYMMDD) |
|---|---|---|
| | E-4/SPC | 980129 |

**3. STATEMENT OF DISENROLLMENT**

I do not desire to participate in the MGIB. I understand that I **WILL NOT** be able to enroll at a later date.

| a. SERVICE MEMBER SIGNATURE | b. RANK / GRADE | c. DATE SIGNED (YYMMDD) |
|---|---|---|
| | E-4/SPC | 980129 |

**4. SERVICE UNIQUE EDUCATION ASSISTANCE OPTIONS**

**5. WITNESSING OFFICIAL**

| a. TYPED OR PRINTED NAME *(Last, First, Middle Initial)* | b. RANK / GRADE | c. SIGNATURE | d. DATE SIGNED (YYMMDD) |
|---|---|---|---|
| EVANS VNAESSA S | DAC | *Vanessa Evans* | 980129 |

DD Form 2366, MAY 90          *Previous edition may be used.*          598-1R0

000515

# ENLISTMENT / REENLISTMENT DOCUMENT
## ARMED FORCES OF THE UNITED STATES



### Privacy Act Statement

**AUTHORITY:** 5 USC 3331; 32 USC 708; 44 USC 708 and 3101; 10 USC 133, 265, 275, 504, 508, 510, 591, 672(d), 678, 837, 1007, 1071 through 1087, 1168, 1169, 1475 through 1480, 1553, 2107, 2122, 3012, 5031, 8012, 8033, 8496, and 9411; 14 USC 351 and 632; and Executive Order 9397, November 1943 (SSN).

**PRINCIPAL PURPOSES:** To record enlistment or reenlistment into the U.S. Armed Forces. This information becomes a part of the subject's military personnel records which are used to document promotion, reassignment, training, medical support, and other personnel management actions. The purpose of soliciting the SSN is for positive identification.

**ROUTINE USES:** This form becomes a part of the Service's Enlisted Master File and Field Personnel File. All uses of the form are internal to the relevant Service.

**DISCLOSURE:** Voluntary; however, failure to furnish personal identification information may negate the enlistment / reenlistment application.

## A. ENLISTEE / REENLISTEE IDENTIFICATION DATA

| 1. NAME *(Last, First, Middle)*<br>CLAIBORNE DAMON JAHRON | 2. SOCIAL SECURITY NUMBER    Redacted PII |
|---|---|
| 3. HOME OF RECORD *(Street, City, State, ZIP Code)*<br>Redacted PII | 4. PLACE OF ENLISTMENT / REENLISTMENT *(Mil. Installation, City, State)*<br>HONOLULU MEPS<br>HI 96850 |

| 5. DATE OF ENLISTMENT /<br>REENLISTMENT *(YYMMDD)*<br>980128 | 6. DATE OF BIRTH *(YYMMDD)*<br>Redacted PII | 7. PREV MIL SVC UPON ENL. / REENLIST | YEARS | MONTHS | DAYS |
|---|---|---|---|---|---|
| | | a. Total Active Military Service | | | |
| | | b. Total Inactive Military Service | | | |

## B. AGREEMENTS

**8.** I am enlisting / reenlisting in the United States *(list branch of service)* **ARMY** _____ this date for **3** _____ years and _____ **00** _____ weeks beginning in pay grade ____ **E-4** . The additional details of my enlistment / reenlistment are in Section C and Annex(es) **A B** _____.

### a. FOR ENLISTMENT IN A DELAYED ENTRY / ENLISTMENT PROGRAM (DEP):

I understand that I will be ordered to active duty as a Reservist unless I report to the place shown in item 4 above by *(list date (YYMMDD))* _____ for enlistment in the Regular component of the United States *(list branch of service)* _____ for not less than _____ years and _____ weeks. My enlistment in the DEP is in a nonpay status. I understand my period of time in the DEP is NOT creditable for pay purposes upon entry into a pay status. However, I also understand that this time is counted toward fulfillment of my military service obligation or commitment. I must maintain my current qualifications and keep my recruiter informed of any changes in my physical or dependency status, moral qualifications, and mailing address.

### b. Remarks: *(If none, so state.)* **NONE**

### c. The agreements in this section and attached annex(es) are all the promises made to me by the Government.
**ANYTHING ELSE ANYONE HAS PROMISED ME IS NOT VALID AND WILL NOT BE HONORED.**
*(Initials of Enlistee / Reenlistee)* _____.                         *(Continued on reverse side.)*

**DD Form 4/1, MAY 88**                         *Previous editions may be used.*            2069/146

## C. PARTIAL STATEMENT OF EXISTING UNITED STATES LAWS

**9. FOR ALL ENLISTEES OR REENLISTEES:** Many laws, regulations, and military customs will govern my conduct and require me to do things a civilian does not have to do. The following statements are not promises or guarantees of any kind. They explain some of the present laws affecting the Armed Forces which I cannot change but which Congress can change at any time.

a. My enlistment is more than an employment agreement. As a member of the Armed Forces of the United States, I will be:

(1) Required to obey all lawful orders and perform all assigned duties.

(2) Subject to separation during or at the end of my enlistment. If my behavior fails to meet acceptable military standards, I may be discharged and given a certificate for less than honorable service, which may hurt my future job opportunities and my claim for veteran's benefits.

(3) Subject to the military justice system, which means, among other things, that I may be tried by military courts-martial.

(4) Required upon order to serve in combat or other hazardous situations.

(5) Entitled to receive pay, allowances, and other benefits as provided by law and regulation.

b. Laws and regulations that govern military personnel may change without notice to me. Such changes may affect my status, pay, allowances, benefits, and responsibilities as a member of the Armed Forces **REGARDLESS** of the provisions of this enlistment / reenlistment document.

c. In the event of war, my enlistment in the Armed Forces continues until six (6) months after the war ends, unless my enlistment is ended sooner by the President of the United States.

**10. MILITARY SERVICE OBLIGATION FOR ALL MEMBERS OF THE ACTIVE AND RESERVE COMPONENTS, INCLUDING THE NATIONAL GUARD.**

a. **FOR ALL ENLISTEES:** If this is my initial enlistment, I must serve a total of eight (8) years. Any part of that service not served on active duty must be served in a Reserve Component unless I am sooner discharged.

b. If I am a member of a Reserve Component of an Armed Force at the beginning of a period of war or national emergency declared by Congress, or if I become a member during that period, my military service may be extended without my consent until six (6) months after the end of that period of war.

c. As a member of a Reserve Component, in time of war or national emergency declared by Congress, I may be required to serve on active duty (other than for training) for the entire period of the war or emergency and for six (6) months after its end.

d. As a member of the Ready Reserve I may be required to perform active duty or active duty for training without my consent (other than as provided in item 8 of this document as follows:

(1) In time of national emergency declared by the President of the United States, I may be ordered to active duty (other than for training) for not more than 24 consecutive months.

(2) I may be ordered to active duty for 24 months, and my enlistment may be extended so I can complete 24 months of active duty, if:

(a) I am not assigned to, or participating satisfactorily in, a unit of the Ready Reserve; and

(b) I have not met my Reserve obligation; and

(c) I have not served on active duty for a total of 24 months.

(3) I may be ordered to perform additional active duty training for not more than 45 days if I have not fulfilled my military service obligation and fail in any year to perform the required training duty satisfactorily. If the failure occurs during the last year of my required membership in the Ready Reserve, my enlistment may be extended until I perform that additional duty, but not for more than six months.

(4) When determined by the President that it is necessary to support any operational mission, I may be ordered to active duty for not more than 90 days if I am a member of the Selected Reserve.

**11. FOR ENLISTEES/REENLISTEES IN THE NAVY, MARINE CORPS, OR COAST GUARD:** I understand that if I am serving on a naval vessel in foreign waters, and my enlistment expires, I will be returned to the United States for discharge as soon as possible consistent with my desires. However, if essential to the public interest, I understand that I may be retained on active duty until the vessel returns to the United States. If I am retained under these circumstances, I understand I will be discharged not later than 30 days after my return to the United States; and, that except in time of war, I will be entitled to an increase in basic pay of 25 percent from the date my enlistment expires to the date of my discharge.

**12. FOR ALL MALE APPLICANTS:** Completion of this form constitutes registration with the Selective Service System in accordance with the Military Selective Service Act. Incident thereto the Department of Defense may transmit my name, permanent address, military address, Social Security Number, and birthdate to the Selective Service System for recording as evidence of the registration.

---

**DD Form 4/1 Reverse,  MAY 88**



| NAME OF ENLISTEE / REENLISTEE *(Last, First, Middle)* | SOCIAL SECURITY NO. OF ENLISTEE / REENLISTEE |
|---|---|
| CLAIBORNE DAMON JAHRON | Redacted PII |

## D. CERTIFICATION AND ACCEPTANCE

**13a.** My acceptance for enlistment is based on the information I have given in my application for enlistment. If any of that information is false or incorrect, this enlistment may be voided or terminated administratively by the Government or I may be tried by a Federal, civilian, or military court and, if found guilty, may be punished.

**I CERTIFY THAT I HAVE CAREFULLY READ THIS DOCUMENT. ANY QUESTIONS I HAD WERE EXPLAINED TO MY SATISFACTION. I FULLY UNDERSTAND THAT ONLY THOSE AGREEMENTS IN SECTION B OF THIS DOCUMENT OR RECORDED ON THE ATTACHED ANNEX(ES) WILL BE HONORED. ANY OTHER PROMISES OR GUARANTEES MADE TO ME BY ANYONE ARE WRITTEN BELOW:** *(If none, X "NONE" and initial.)*

[X] NONE  *D C.*  *(Initials of enlistee / reenlistee)*

| b. SIGNATURE OF ENLISTEE / REENLISTEE | c. DATE SIGNED *(YYMMDD)* |
|---|---|
| *(signature)* | 980128 |

**14. SERVICE REPRESENTATIVE CERTIFICATION**

a. On behalf of the United States *(list branch of service)*  **ARMY**  , I accept this applicant for enlistment. I have witnessed the signature in item 13b to this document. I certify that I have explained that only those agreements in Section B and in the attached Annex(es) will be honored, and any other promises made by any person are not effective and will not be honored.

| b. NAME *(Last, First, Middle)* | c. PAY GRADE | d. UNIT / COMMAND NAME |
|---|---|---|
| CHUN HAROLD K | E-8 | USA RECRUITING BATTALION |
| e. SIGNATURE | f. DATE SIGNED *(YYMMDD)* | g. UNIT / COMMAND ADDRESS *(City, State, ZIP Code)* |
| *(signature)* | 980128 | PORTLAND OR 97230 |

## E. CONFIRMATION OF ENLISTMENT OR REENLISTMENT

**15. IN THE ARMED FORCES EXCEPT THE NATIONAL GUARD (ARMY OR AIR):**
I, **DAMON JAHRON CLAIBORNE** , do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God.

**16. IN THE NATIONAL GUARD (ARMY OR AIR):**
I, _____ , do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the State of _____ against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the Governor of _____ and the orders of the officers appointed over me, according to law and regulations. So help me God.

**17. IN THE NATIONAL GUARD (ARMY OR AIR):**
I do hereby acknowledge to have voluntarily enlisted / reenlisted this _____ day of _____ in the _____ National Guard and as a Reserve of the United States *(list branch of service)* _____ with membership in the _____ National Guard of the United States for a period of _____ years, _____ months, _____ days, under the conditions prescribed by law, unless sooner discharged by proper authority.

| 18a. SIGNATURE OF ENLISTEE / REENLISTEE | b. DATE SIGNED *(YYMMDD)* |
|---|---|
| *(signature)* | 980128 |

**19. ENLISTMENT / REENLISTMENT OFFICER CERTIFICATION**
a. The above oath was administered, subscribed, and duly sworn to (or affirmed) before me this date.

| b. NAME *(Last, First, Middle)* | c. PAY GRADE | d. UNIT / COMMAND NAME |
|---|---|---|
| FLEMING SCOTT A | O-4 | HONOLULU MEPS |
| e. SIGNATURE | f. DATE SIGNED *(YYMMDD)* | g. UNIT / COMMAND ADDRESS *(City, State, ZIP Code)* |
| *(signature)* | 980128 | HONOLULU HI 96850 |

| DD Form 4/2, MAY 88 | Previous editions may be used. |
|---|---|

000518

# RESTRICTIONS ON PERSONAL CONDUCT IN THE ARMED FORCES

(For use of this form, see USMEPCOM Reg 601-23)

**FOR OFFICIAL USE ONLY**

Page 1 of 2

1.  Military life is fundamentally different from civilian life.  The military has its own laws, rules, customs, and traditions, including numerous restrictions on personal behavior, that would not be acceptable in civilian society.  These are necessary because military units and personnel must maintain the high standards of morale, good order and discipline, and unit cohesion that are essential for combat effectiveness.

2.  The Armed Forces must be ready at all times for worldwide deployment.  Military law and regulations, including the Uniform Code of Military Justice, apply to Service members at all times, both on base or off base, from the time the member enters the Service until the member is discharged or otherwise separated from the Armed Forces.

3.  Members of the Armed Forces may be involuntarily separated before their term of service ends for various reasons established by law and military regulations, such as:

  a.  A member may be separated for a pattern of disciplinary infractions, a pattern of misconduct, commission of a serious offense, or civilian conviction.

  b.  A member who has been referred to a rehabilitation program for personal drug and alcohol abuse may be separated for failure through inability or refusal to participate in, cooperate in, or successfully complete such a program.

  c.  A member may be discharged by reason of parenthood if it is determined the member, because of parental responsibilities, is unable to perform his or her duties satisfactorily or is unavailable for worldwide assignment or deployment.

  d.  A member may be separated for violation of laws or regulations regarding sexual conduct of members of the Armed Forces, for example, engaging or attempting to engage in a homosexual act or soliciting another to engage in such an act; for stating that he or she is a homosexual or bisexual, or words to that effect; or for marrying or attempting to marry an individual of the same sex.  See reverse.

  e.  A member may be separated for failure to meet Service weight control standards.

  f.  A member may be separated for harassment or violence against any Service member.

---

USMEPCOM Form 601-23-4, 1 Apr 97          1 Mar 94 editions of this form may be used until exhasted.

30907GL

**000519**

4.  A member of the Armed Forces shall be separated from the Armed Forces under regulations prescribed by the Secreatry of Defense if one or more of the following findings is made and approved in accordance with procedures set forth in such regulations:

a.  That the member has engaged in, attempted to engage in, or solicited another to engage in a homosexual act or acts unless there are further findings, made and approved in accordance with procedures set forth in such regulations, that the  member has demonstrated that--

(1)  such conduct is a departure from the member's usual and customary behavior;

(2)  such conduct, under all circumstances, is unlikely to recur;

(3)  such conduct was not accomplished by use of force, coercion, or intimidation;

(4)  under the particular circumstances of the case, the member's continued presence in the Armed Forces is consistent with the interests of the Armed Forces in proper discipline, good orderm and morale; and

(5)  the member does not have a propensity or intent to engage in homosexual acts.

b.  The the member has stated that he or she is a homosexual or bisexual, or words to that effect, unless there is a further finding, made and approved in accordance with procedures set forth in the regulations, that the member has demonstrated that he or she is not a person who engages in, attempts to engage in, has propensity to engage in, or intends to engage in homosexual acts.

c.  That the member has married or attempted to marry a person known to be of the same biological sex.

**FOR OFFICIAL USE ONLY**

Reverse, USMEPCOM Form 601-23-4, 1 Apr 97

## STATEMENT FOR ENLISTMENT
## UNITED STATES ARMY TRAINING ENLISTMENT PROGRAM

For use of this form, see AR 601-210, the proponent agency is DCSPER

1.  ACKNOWLEDGEMENT:    In connection with my enlistment in the Regular Army for the United States Army Training Enlistment Program, I hereby acknowledge that:

    a.  My enlistment for this program assures me that, provided I meet required prerequisites, I will receive training in the following Military Occupational Specialty *(MOS)* or Career Management Field *(CMF)*:

(Enter MOS or CMF with complete title)

77F10 - PETROLEUM SUPPLY SPECIALIST (N/A)

*(If Airborne is required enter Airborne Training; if not enter NA)*

    b.  I have read, viewed and have had explained to me the general nature of the training I am to receive for the MOS, CMF and, if applicable, the Airborne training above.

    c.  I understand that I must satisfactorily complete basic combat training in order to receive the training indicated above. Further, I understand that if I should be relieved from training for academic deficiency, disciplinary reasons, failure to receive any required security clearance because of information withheld by me or any misconduct, I will be trained in accordance with the needs of the Army and required to complete the term of my enlistment.

    d.  I further state and understand that I have been given no guarantee of assignment nor have I been assured that I will or will not be assigned to an overseas location. I understand that upon successful completion of my training I will be assigned in accordance with the needs of the Army and no guarantee of a specific job has been made.

    e.  If in addition to my MOS training I am required to complete airborne training, I understand that I am volunteering to perform frequent aircraft flights, parachute jumps and to participate in realistic combat training while receiving airborne training or performing Airborne duties. I understand that I I fail to complete airborne training, maintain airborne qualifications or fail to attain or maintain required standards on the advanced physical fitness test, I will be reassigned and trained in accordance with the needs of the Army. *(only applicable for enlistment that includes Airborne Training listed in para Ia.)*

    f.  If my enlistment is for an MOS that requires language training and I am guaranteed a specific language, that language is specified in paragraph 1a. If no specific language is specified in paragraph 1a, I am not guaranteed a specific language and will be trained in a language in accordance with the needs of the Army.

    g.  My term of enlistment in the Regular Army is ___3___ years ___00___ weeks.

---

### APPLICABLE TO ALL APPLICANTS ENLISTING UNDER THIS PROGRAM

2.  I understand that if my enlistment contract cannot be fulfilled through no fault of my own, the alternatives available to me will be provided in Army Regulation 635-200. I understand that I will have a period of thirty days from the time I am notified, become aware or reasonably should have become aware that my selected training *(Ia above)* cannot become fulfilled, to elect an alternative training program for which I am qualified and a vacancy exists, or request a separation. This thirty day period my be extended by the General Courts Martial Convening Authority when necessary to determine the availability of my selected alternative. If I make no election within the thirty day period, my claim will be deemed to have been waived.

ANNEX: A

DA FORM 3286-63, NOV 89

3. If I fail, through my own fault, to meet any of these established prerequisites for the Nuclear Surety Programs or the required security clearances or fail to meet or maintain required medical, physical, professional, or other suitability standards for training or retention in accordance with my enlistment contract, I will be trained and assigned in accordance with the needs of the Army and required to complete my term of enlistment. I further acknowledge that if I become disqualified for this enlistment program because of personal conduct, withholding of information that I have within my knowledge that precludes access to special intelligence information, I will be retrained and required to complete my term of enlistment in accordance with the needs of the Army.

4. MILITARY SERVICE OBLIGATION UNDERSTANDING: I understand that an original enlistment in the US Armed Forces obligates me to an eight (8) year Military Service Obligation. My term of enlistment in the Regular Army is creditable towards that obligation as was any enlistment in the Delayed Entry Program. In the event that the Secretary of the Army determines that military necessity of a national scope requires that soldiers be available for assignment/reassignment or training, any or all guarantees contained in this agreement may be terminated. Under these conditions I may be trained, assigned or reassigned according to the needs of the Army.

5. I have read and understand the statements above and that these statement are intended to constitute ALL promises and guarantees whatsoever concerning my enlistment. No other (verbal or otherwise) promise or representation not annexed to my enlistment contract is valid or will be honored. I hereby state that I have NOT been promised anything other than what is written on this form and hereby waive any claim based upon any promise or representation not annexed to my contract. I further state than I have provided my recruiter and guidance counselor all information concerning my qualifications and that no official in the US Army or any other agency has advised me to conceal, nor I have concealed information in connection with my enlistment.

| AUTHENTICATION | | |
|---|---|---|
| SIGNATURE OF GUIDANCE COUNSELOR | SIGNATURE OF APPLICANT | DATE 980128 |
| TYPED NAME, GRADE AND SSN OF COUNSELOR CHUN, HAROLD K., E-8  Redacted PII | TYPED NAME, SSN OF APPLICANT CLAIBORNE, DAMON J.  Redacted PII | DATE 980128 |
| CCN: (REQUEST) 6914508Φ | ANNEX A | DATE 971217 |

REVERSE OF DA FORM 3286-63                                    *U.S. Government Printing Office: 1989-261-671/02631

000522

# SERVICE SCHOOL ACADEMIC EVALUATION REPORT
For use of this form, see AR 623-1; the proponent agency is MILPERCEN.

| | DATE |
|---|---|
| | 22 JUL 95 |

| 1. LAST NAME - FIRST NAME - MIDDLE INITIAL | 2. SSN | 3. GRADE | 4. BR | 5. SPECIALTY/MOSC |
|---|---|---|---|---|
| CLAIBORNE, DAMON JAHRON | Redacted PII | SPC | | 88H10 |

| 6. COURSE TITLE | 7. NAME OF SCHOOL | 8. COMP |
|---|---|---|
| RC3 INFANTRY SKILL LEVEL 1 | ☐ CALIFORNIA MILITARY ACADEMY | CAARNG |

| 9. TYPE OF REPORT | 10. PERIOD OF REPORT (Year, month, day) | | 11. DURATION OF COURSE (Year, month, day) | |
|---|---|---|---|---|
| ☒ RESIDENT | From: 950708 | Thru: 950722 | ☒ From: 950708 | Thru: 950722 |
| ☐ NONRESIDENT | 12. EXPLANATION OF NONRATED PERIODS | | | |

## 13. PERFORMANCE SUMMARY

*a. ☐ EXCEEDED COURSE STANDARDS
(Limited to 20% of class enrollment)

b. ☒ ACHIEVED COURSE STANDARDS

*c. ☐ MARGINALLY ACHIEVED COURSE STANDARDS

*d. ☐ FAILED TO ACHIEVE COURSE STANDARDS

*Rating must be supported by comments in ITEM 16.

## 14. DEMONSTRATED ABILITIES

a. WRITTEN COMMUNICATION
☐ NOT EVALUATED   ☐ UNSAT   ☒ SAT   ☐ SUPERIOR

b. ORAL COMMUNICATION
☐ NOT EVALUATED   ☐ UNSAT   ☒ SAT   ☐ SUPERIOR

c. LEADERSHIP SKILLS
☒ NOT EVALUATED   ☐ UNSAT   ☐ SAT   ☐ SUPERIOR

d. CONTRIBUTION TO GROUP WORK
☐ NOT EVALUATED   ☐ UNSAT   ☒ SAT   ☐ SUPERIOR

e. EVALUATION OF STUDENT'S RESEARCH ABILITY
☒ NOT EVALUATED   ☐ UNSAT   ☐ SAT   ☐ SUPERIOR

(SUPERIOR/UNSAT rating must be supported by comments in ITEM 16)

## 15. HAS THE STUDENT DEMONSTRATED THE ACADEMIC POTENTIAL FOR SELECTION TO HIGHER LEVEL SCHOOLING/TRAINING?
☒ YES   ☐ NO   ☐ N/A   (A "NO" response must be supported by comments in ITEM 16)

## 16. COMMENTS (This item is intended to obtain a word picture of each student that will accurately and completely portray academic perform-ance, intellectual qualities, and communication skills and abilities. The narrative should also discuss broader aspects of the student's potential, leader-ship capabilities, moral and overall professional qualities. In particular, comments should be made if the student failed to respond to recommenda-tions for improving academic or personal affairs)

SPC Claiborne completed the Reserve Component Infantry Skill Level 1, MOSQ Course. This course is 122 hours in duration. The 11B10 course is primarily conducted in a field classroom environment. It is designed to qualify soldiers in skill level one of the Infantry MOS. It is both physically demanding and mentally challenging. The tests are performance oriented, transitioning to battle focused situational training exercises to evaluate the soldiers individual skills in a collective task environment. SPC Claiborne completed all assigned tasks in a satisfactory manner meeting the requirements to graduate from the 11B10 MOSQ Infantryman Course. He uses positive reinforcement to motivate not only himself, but his team. He displays high energy and drive.

JUL 2 8 1995        APFT: 204        950630
                    HT/WT: 72        140

HHC 3/160TH INF
M31

## 17. AUTHENTICATION

| a. TYPED NAME, GRADE, BRANCH, AND TITLE OF PREPARING OFFICER | SIGNATURE |
|---|---|
| CHRIS R. VALDEZ, MSG, CAARNG Course Manager | Chris R. Valdez |
| b. TYPED NAME, GRADE, BRANCH, AND TITLE OF REVIEWING OFFICER | SIGNATURE |
| VINCENT A. LOPEZ, CPT, AG, CAARNG Training Administrator | V. A. Lopez |

## 18. MILITARY PERSONNEL OFFICER

| a. FORWARDING ADDRESS (Rated student) | b. DISTRIBUTION |
|---|---|
| Redacted PII | ☐ STUDENT   ☐ UNIT CDR (P/B NCOES only) |
| | ☐ STUDENT'S OFFICIAL MILITARY RECORDS |

DA FORM 1059
1 NOV 77

EDITION OF 1 JUL 73 IS OBSOLETE.

★U.S.GPO:1992-0-311-830/65153

1-01
92-09-17

DEPARTMENT OF THE ARMY
U. S. ARMY RESERVE PERSONNEL CENTER
9700 PAGE BOULEVARD
ST. LOUIS, MO 63132-5200

ARPC-ZOR-E439                                          25 JAN 94
ORDERS C-01-402956

CLAIBORNE DAMON JAHRON          ZOR-E439      Redacted PII SPC   88H1
          Redacted PII                          USAR CONTROL GROUP (REINF)

YOU ARE REASSIGNED IN THE RESERVE AS INDICATED BELOW.

RELEASED FROM: USAR CONTROL GROUP (REINF)
REASON: ENLISTMENT
ASSIGNED TO: CALIFORNIA ARNG
EFFECTIVE DATE: 17 NOV 93      VOCG: 17 NOV 93
EXPIRATION TERM OF SERVICE: 20 FEB 97      SEX: M
ADDITIONAL INSTRUCTIONS: PEBD: 890221 SEC CLR: NO CLEARANCE
    CURRENT 'HIV' TEST REQUIRED.

AUTHORITY: AR 140-10
FORMAT:   450

***************
*  ARPERCEN  *           JOHN W. FROST
*  OFFICIAL  *           COL, AR
***************           COMMANDING

DISTRIBUTION: I1
  1 AG, CA ARNG                               8/27/94

000524

# ENLISTMENT / REENLISTMENT DOCUMENT
## ARMED FORCES OF THE UNITED STATES

### Privacy Act Statement

**AUTHORITY:** 5 USC 3331; 32 USC 708; 44 USC 708 and 3101; 10 USC 133, 265, 275, 504, 508, 510, 591, 672(d), 678, 837, 1007, 1071 through 1087, 1168, 1169, 1475 through 1480, 1553, 2107, 2122, 3012, 5031, 8012, 8033, 8496, and 9411, 14 USC 351 and 632, and Executive Order 9397, November 1943 (SSN)

**PRINCIPAL PURPOSES:** To record enlistment or reenlistment into the U.S. Armed Forces. This information becomes a part of the subject's military personnel records which are used to document promotion, reassignment, training, medical support, and other personnel management actions. The purpose of soliciting the SSN is for positive identification.

**ROUTINE USES:** This form becomes a part of the Service's Enlisted Master File and Field Personnel File. All uses of the form are internal to the relevant Service.

**DISCLOSURE:** Voluntary; however, failure to furnish personal identification information may negate the enlistment/reenlistment application.

### A. ENLISTEE / REENLISTEE IDENTIFICATION DATA

**1. NAME (Last, First, Middle)**
CLAIBORNE DAMON JAHRON

**2. SOCIAL SECURITY NUMBER**
Redacted PII

**3. HOME OF RECORD (Street, City, State, ZIP Code)**
Redacted PII

**4. PLACE OF ENLISTMENT / REENLISTMENT (Mil. Installation, City, State)**
LOS ANGELES MEPS
LOS ANGELES, CALIFORNIA 90016

**5. DATE OF ENLISTMENT / REENLISTMENT (YYMMDD)**
93 NOV 17

**6. DATE OF BIRTH (YYMMDD)**
Redacted PII

| 7. PREV MIL SVC UPON ENL / REENLIST | YEARS | MONTHS | DAYS |
|---|---|---|---|
| a. Total Active Military Service | | | |
| b. Total Inactive Military Service | | | |

### B. AGREEMENTS

**8.** I am enlisting / reenlisting in the ~~XXXXX XXXXX~~ (list branch of service) ARMY NATIONAL GUARD OF THE UNITED STATES this date for 3 years and 33 weeks beginning in pay grade E-4. The additional details of my enlistment / reenlistment are in Section C and Annex(es) A.

**a. FOR ENLISTMENT IN A DELAYED ENTRY / ENLISTMENT PROGRAM (DEP):**
I understand that I will be ordered to active duty as a Reservist unless I report to the place shown in item 4 above by (list date (YYMMDD)) _____ for enlistment in the Regular component of the United States (list branch of service) _____ for not less than _____ years and _____ weeks. My enlistment in the DEP is in a nonpay status. I understand my period of time in the DEP is NOT creditable for pay purposes upon entry into a pay status. However, I also understand that this time is counted toward fulfillment of my military service obligation or commitment. I must maintain my current qualifications and keep my recruiter informed of any changes in my physical or dependency status, moral qualifications, and mailing address.

**b. Remarks:** (If none, so state.)
NONE

**c.** The agreements in this section and attached annex(es) are all the promises made to me by the Government. **ANYTHING ELSE ANYONE HAS PROMISED ME IS NOT VALID AND WILL NOT BE HONORED.**
(Initials of Enlistee/Reenlistee) D. C.

(Continued on reverse side.)

**DD Form 4/1, MAY 88**   Previous editions may be used

## C. PARTIAL STATEMENT OF EXISTING UNITED STATES LAWS

**9. FOR ALL ENLISTEES OR REENLISTEES:** Many laws, regulations, and military customs will govern my conduct and require me to do things a civilian does not have to do. The following statements are not promises or guarantees of any kind. They explain some of the present laws affecting the Armed Forces which I cannot change but which Congress can change at any time.

a. My enlistment is more than an employment agreement. As a member of the Armed Forces of the United States, I will be:

(1) Required to obey all lawful orders and perform all assigned duties.

(2) Subject to separation during or at the end of my enlistment. If my behavior fails to meet acceptable military standards, I may be discharged and given a certificate for less than honorable service, which may hurt my future job opportunities and my claim for veteran's benefits.

(3) Subject to the military justice system, which means, among other things, that I may be tried by military courts-martial.

(4) Required upon order to serve in combat or other hazardous situations.

(5) Entitled to receive pay, allowances, and other benefits as provided by law and regulation.

b. Laws and regulations that govern military personnel may change without notice to me. Such changes may affect my status, pay, allowances, benefits, and responsibilities as a member of the Armed Forces REGARDLESS of the provisions of this enlistment / reenlistment document.

c. In the event of war, my enlistment in the Armed Forces continues until six (6) months after the war ends, unless my enlistment is ended sooner by the President of the United States.

**10. MILITARY SERVICE OBLIGATION FOR ALL MEMBERS OF THE ACTIVE AND RESERVE COMPONENTS, INCLUDING THE NATIONAL GUARD.**

a. **FOR ALL ENLISTEES:** If this is my initial enlistment, I must serve a total of eight (8) years. Any part of that service not served on active duty must be served in a Reserve Component unless I am sooner discharged.

b. If I am a member of a Reserve Component of an Armed Force at the beginning of a period of war or national emergency declared by Congress, or if I become a member during that period, my military service may be extended without my consent until six (6) months after the end of that period of war.

c. As a member of a Reserve Component, in time of war or national emergency declared by the Congress, I may be required to serve on active duty (other than for training) for the entire period of the war or emergency and for six (6) months after its end.

d. As a member of the Ready Reserve I may be required to perform active duty or active duty for training without my consent (other than as provided in item 8 of this document) as follows:

(1) In time of national emergency declared by the President of the United States, I may be ordered to active duty (other than for training) for not more than 24 consecutive months

(2) I may be ordered to active duty for 24 months, and my enlistment may be extended so I can complete 24 months of active duty, if:

(a) I am not assigned to, or participating satisfactorily in, a unit of the Ready Reserve; and

(b) I have not met my Reserve obligation; and

(c) I have not served on active duty for a total of 24 months.

(3) I may be ordered to perform additional active duty training for not more than 45 days if I have not fulfilled my military service obligation and fail in any year to perform the required training duty satisfactorily. If the failure occurs during the last year of my required membership in the Ready Reserve, my enlistment may be extended until I perform that additional duty, but not for more than six months.

(4) When determined by the President that it is necessary to support any operational mission, I may be ordered to active duty for not more than 90 days if I am a member of the Selected Reserve.

**11. FOR ENLISTEES / REENLISTEES IN THE NAVY, MARINE CORPS, OR COAST GUARD:** I understand that if I am serving on a naval vessel in foreign waters, and my enlistment expires, I will be returned to the United States for discharge as soon as possible consistent with my desires. However, if essential to the public interest, I understand that I may be retained on active duty until the vessel returns to the United States. If I am retained under these circumstances, I understand I will be discharged not later than 30 days after my return to the United States; and, that except in time of war, I will be entitled to an increase in basic pay of 25 percent from the date my enlistment expires to the date of my discharge.

**12. FOR ALL MALE APPLICANTS:** Completion of this form constitutes registration with the Selective Service System in accordance with the Military Selective Service Act. Incident thereto the Department of Defense may transmit my name, permanent address, military address, Social Security Number, and birthdate to the Selective Service System for recording as evidence of the registration.

| NAME OF ENLISTEE / REENLISTEE (Last, First, Middle) | SOCIAL SECURITY NO OF ENLISTEE / REENLISTEE |
|---|---|
| CLAIBORNE DAMON JAHRON | Redacted PII |

## D. CERTIFICATION AND ACCEPTANCE

13a.  My acceptance for enlistment is based on the information I have given in my application for enlistment. If any of that information is false or incorrect, this enlistment may be voided or terminated administratively by the Government or I may be tried by a Federal, civilian, or military court and, if found guilty, may be punished.

I CERTIFY THAT I HAVE CAREFULLY READ THIS DOCUMENT. ANY QUESTIONS I HAD WERE EXPLAINED TO MY SATISFACTION. I FULLY UNDERSTAND THAT ONLY THOSE AGREEMENTS IN SECTION B OF THIS DOCUMENT OR RECORDED ON THE ATTACHED ANNEX(ES) WILL BE HONORED. ANY OTHER PROMISES OR GUARANTEES MADE TO ME BY ANYONE ARE WRITTEN BELOW: (If none, X "NONE" and initial.)  [✓] NONE  _D. C_ (Initials of enlistee/reenlistee)

| b  SIGNATURE OF ENLISTEE / REENLISTEE | c  DATE SIGNED (YYMMDD) |
|---|---|
| | 93 NOV 17 |

14. SERVICE REPRESENTATIVE CERTIFICATION
a.  On behalf of the United States (branch of service)     ARMY NATIONAL GUARD
I accept this applicant for enlistment. I have witnessed the signature in item 13b to this document.   I certify that I have explained that only those agreements in Section B of this form and in the attached Annex(es) will be honored, and any other promises made by any person are not effective and will not be honored.

| b  NAME (Last, First, Middle) | c  PAY GRADE | d  UNIT/COMMAND NAME |
|---|---|---|
| PERALTA DORA F | E- 7 | DET 5 STARC |
| e  SIGNATURE | f  DATE SIGNED (YYMMDD) | g  UNIT/COMMAND ADDRESS (City, State, ZIP Code) |
| | 93 NOV 17 | LOS ANGELES  CA  90046 |

## E. CONFIRMATION OF ENLISTMENT OR REENLISTMENT

15. IN THE ARMED FORCES EXCEPT THE NATIONAL GUARD (ARMY OR AIR):
I, _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God.

16. IN THE NATIONAL GUARD (ARMY OR AIR):
I,  DAMON JAHRON CLAIBORNE _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the State of   CALIFORNIA _____ against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the Governor of   CALIFORNIA _____ and the orders of the officers appointed over me, according to law and regulations. So help me God

17. IN THE NATIONAL GUARD (ARMY OR AIR):
I do hereby acknowledge to have voluntarily enlisted /reenlisted this   17TH   day of   NOV ___ 19 ___ 93 ___ in the   CALIFORNIA _____ National Guard and as a Reserve of the United States (list branch of service)   ARMY _____ with membership in the   ARMY _____ National Guard of the United States for a period of   3   years,   08   months,   04   days, under the conditions prescribed by law, unless sooner discharged by proper authority.

| 18a. SIGNATURE OF ENLISTEE / REENLISTEE | b  DATE SIGNED (YYMMDD) |
|---|---|
| | 93 NOV 17 |

19. ENLISTMENT/REENLISTMENT OFFICER CERTIFICATION
a.  The above oath was administered, subscribed, and duly sworn to (or affirmed) before me this date.

| b  NAME (Last, First, Middle) | c  PAY GRADE | d  UNIT/COMMAND NAME |
|---|---|---|
| PETERSEN GEORGE J | O-3 | LOS ANGELES MEPS |
| e  SIGNATURE | f  DATE SIGNED (YYMMDD) | g  UNIT/COMMAND ADDRESS (City, State, ZIP Code) |
| | 93 NOV 17 | LOS ANGELES, CALIFORNIA 90046 |

DD Form 4/2, MAY 88          Previous editions may be used.

## ANNEX A - DD FORM 4
## ENLISTMENT/REENLISTMENT AGREEMENT - ARMY NATIONAL GUARD
*(For use of this Form, see NGR 600-200, the proponent agency is NGB-ARP-P)*

### PRIVACY ACT STATEMENT
*Authority:  Section 510 and 511, Title 10, USC and Section 301 and 304, Title 32, USC.*
*Purpose:  To explain obligation and to ensure that your agreement to these conditions is a matter of record.*
*Use:  Confirmation of obligation; occasionally as a basis for non-participation action if requirements are not met.*
*Disclosure:  Disclosure of your SSN is voluntary; however, if not provided you will not be enlisted/reenlisted.*

### SECTION I - APPLICABILITY
This annex will be completed by all individuals enlisting or reenlisting into
ARNG units under the provisions of NGR 600-200.

### SECTION II - INSTRUCTIONS
For individuals enlisting or reenlisting in the ARNG:  the Guidance Counselor,
or the Officer administering the Oath of Enlistment is responsible to read and
explain the service requirements set forth below.  Following the reading,
explanation, affixing of proper signatures and the administration of the Oath
of Enlistment, a copy of this signed form will be stapled to each copy of the
signed enlistment agreement.  See NGR 600-200 for distribution.

### SECTION III - EXPLANATION TO APPLICANT
This annex is required by regulation when you have voluntarily elected one of
the following options:  (Individual will initial in the space provided next to
the checked block.)
[__]_____  Enlistment/reenlistment of prior service member having no remaining
statutory military service obligation.  I am currently not a member of the
ARNG, but I have previous military service in the Armed Forces of the United
States and I have no remaining statutory military service obligation.  This
enlistment will require that I commence training with an ARNG unit
immediately.  I will be required to maintain satisfactory participation in the
Ready Reserve for the entire period of service stipulated on the DD Form 4 to
which this is attached.
[__]_____  I am enlisting/reenlisting for Try One in the Guard and I will be
required to maintain satisfactory participation in the Ready Reserve for the
entire period of service stipulated on the DD Form 4 to which this is attached.
[xx] *R.C.*  Enlistment/reenlistment of a prior service member with a remaining
statutory military service obligation.  I am currently a member of another
Armed Force of the United States, or a member of the USAR, and I have been
granted a conditional release to permit enlistment in the ARNG.  I incurred a
[(six year) (eight year)(line out as appropriate)] military service obligation
upon entry into the military service and I have not completed that
obligation.  Therefore, this enlistment into the ARNG is for term of service
that will equal or exceed the period of service that is required to complete
the remaining portion of my (six year) (eight year) obligation.  This
enlistment will require that I commence training with an ARNG unit immediately.

000528



I will be required to maintain satisfactory participation in the Ready Reserve for the entire period of service stipulated on the DD Form 4 to which this is attached.

[__]_____ I am enlisting/reenlisting for Try One in the Guard and I will be required to maintain satisfactory participation in the Ready Reserve for the entire period of service stipulated on the DD Form 4 to which this is attached. Minimum period on active unit status is one year.

[__]_____ Enlistment/reenlistment of a former member of the Armed Forces who was discharged prior to completion of an incurred [(six year) (eight year) (line out as appropriate)] military service obligation (including Glossary NPS). I am currently not a member of the Armed Forces of the United States. During my last previous military service I incurred a statutory military service obligation of (six years) (eight years) and when last discharged I had not completed the full (six year) (eight years). Therefore, this enlistment into the ARNG is for a term of service that is equal or exceed the period of service that is required to complete the remaining portion of the (six year) (eight year) obligation. This enlistment requires that I commence training with an ARNG unit immediately or immediately attend initial active duty for training as required. I will be required to maintain satisfactory participation in the Ready Reserve for the entire period of service stipulated on the DD Form 4 to which this is attached.

[__]_____ If I have prior military service, I understand that I may be required to attend basic training (BT), if I did not complete BT, and/or a period of full time training duty to become qualified in the MOS for which I enlisted if not already qualified.

[__]_____ Initial enlistment as a non-prior service member. I have no previous military service on active duty, or active duty for training, in the Armed Forces of the United States and upon executing this enlistment I will incur a statutory military service obligation of eight years. The enlistment option that I have selected provides that I will be a member of an ARNG unit for a period of____years and a member of the Individual Ready Reserve (IRR) or the Inactive National Guard (ING) for the balance of my eight year service obligation unless I elect to remain with the ARNG unit, or unless I am completely discharged from this enlistment agreement. I also understand that:

a. Unless otherwise stipulated on an Annex attached to the DD Form 4, I will enter and satisfactorily complete an initial period of active duty for training (IADT) to become qualified in a military occupational specialty (MOS) as soon as a training space is available.

b. If for any reason beyond my control I am unable to complete the training during the period for which I was initially ordered to IADT, I agree to:

(1) Remain on active duty for training for such additional period as is required to complete my MOS training, or

(2) Accept training in an alternate MOS if offered, and remain on IADT for such additional training as is required to complete such training.

c. If I qualify for enlistment under a pay category that authorizes me to be in a paid training status, I will commence training with my unit while I am awaiting entry on IADT. If I am not authorized to be in a paid status upon enlistment, I may voluntarily attend scheduled drills with my unit until such time as I am authorized to be paid and then I will commence training with my unit.

000529

d.  I will be required to maintain satisfactory participation in the Ready Reserve for a period of eight years, as stipulated above.

e.  If I am still in high school and fail to satisfactorily complete high school, my enlistment will be terminated unless I meet the non-high school graduate enlistment criteria as specified in NGR 600-200.

[__]____  If I enlist for assignment to a position requiring airborne training and I refuse to undergo, or fail to complete such training for reasons within my control, or after receiving a parachutist rating I refuse to participate in airborne training, I will be assigned to a unit vacancy for which I am, or can be qualified, or if such assignment is not available I will be subject to transfer to the IRR or ING.

[__]____  If I am a female, I acknowledge my enlistment serves as my volunteering for basic weapons qualification and familiarization training on the same basis as my male counterparts.  Additionally, I may be required to undergo individual weapons training as necessary to meet MOS requirements.  I further understand I am not enlisting for, nor will I be assigned to a unit, position, or MOS whose primary mission is combat.

[xx] _D.C_ I understand that I will undergo training in MOS:

    a.  PMOS 45B10  _88m10_

    b.  Alternate MOS (1)_____; (2)_____.

---

## SECTION IV - STATEMENT OF ACKNOWLEDGEMENT AND UNDERSTANDING

I certify that I understand the enlistment/reenlistment obligation which I have in the ARNG and Reserve of the Army.

| TYPED NAME | SOCIAL SECURITY NUMBER |
|---|---|
| Damon J. Clai borne | Redacted PII |
| SIGNATURE | DATE SIGNED<br>5 2 1 1 7 |

## SECTION V - CERTIFICATION BY OFFICER OR GUIDANCE COUNSELORS

I certify that I have read and explained all of the conditions and stipulations concerning the specific program set forth above, and in attached annexes, if applicable, under which the individual is, or will become, a member of an ARNG unit.  Following this reading and explanation, a copy of this annex, and any other applicable annexes was furnished the above named individual.

| TYPED NAME AND RANK | TITLE |
|---|---|
| David M. Wilt, SFC | Recruiter |
| SIGNATURE | DATE SIGNED<br>9 3 1 1 7 |

REMARKS

Co P 540th MSB  WQUCFO L20 _P2_

_For MSO — 3yrs 8mo 4 dys_

_E4/ Spc_

_88m10 114-06_

_- WQUCFO/L20_

_HHC 3/160th INF_

000530

(PLEASE READ INSTRUCTIONS ON REVERSE SIDE BEFORE COMPLETING AND SUBMITTING THIS FORM).

# SERVICEMEN'S GROUP LIFE INSURANCE ELECTION AND CERTIFICATE

**IMPORTANT** – This form is for use by ACTIVE DUTY AND RESERVE MEMBERS. This form does not apply to and cannot be used for any other Government Life Insurance.

| USE THIS FORM FOR ▶ | 1. ELECTING, REDUCING OR REFUSING INSURANCE | 2. STATING TO WHOM AND HOW INSURANCE SHOULD BE PAID |
|---|---|---|
| | (Do not make erasures, corrections or changes; complete a new form) | |

| LAST NAME · FIRST NAME · MIDDLE NAME | RANK, TITLE OR GRADE | SERVICE OR SOCIAL SECURITY NO. |
|---|---|---|
| Clairborne, Damon Jahron | SPC E-4 | Redacted PII |

| BRANCH OF SERVICE (Do not abbreviate) | CURRENT DUTY LOCATION |
|---|---|
| Army National Guard | Co F 540th MSB  3700 Spring st, Long Beach, CA 90822 |

## 1. AMOUNT OF INSURANCE

By law, you are automatically insured for $100,000. An additional $100,000 of coverage is available for you to select and would provide you with a maximum coverage of $200,000. Should you wish to be covered for the full $200,000 of Insurance please initial the appropriate line below. If you want to elect an alternate amount of insurance please fill in the amount desired on the "Amount of insurance" line and initial it. The following amounts are available: $190,000, $180,000, $170,000, $160,000, $150,000, $140,000, $130,000, $120,000, $110,000, $100,000, $90,000, $80,000, $70,000, $60,000, $50,000, $40,000, $30,000, $20,000, $10,000. If you do not want any insurance write in your own handwriting "I want no insurance". Reduced or refused insurance can be restored only by written request with proof of good health and compliance with other requirements.

*D.C.* $200,000          _____ $_____
(Initial)                    (Initial)      (Amount of Insurance)
                                           (Print Clearly)

BE SURE TO COMPLETE PART 2 ▼

## 2. BENEFICIARY(IES) AND PAYMENT TO BENEFICIARY(IES) (Read instructions below and on reverse)

a. Name the primary and contingent beneficiaries below. There are no restrictions on the number of principal and contingent beneficiaries you may name. In some family situations, such as if you are a step-child or step-parent, or if you were abandoned by a parent or adopted, or if you are separated from your spouse, you will, by naming specific beneficiaries, include or exclude certain persons, as you desire.

b. A named beneficiary will not be changed automatically by any event occurring after you complete this form (e.g., divorce, annulment). To change a beneficiary you must complete a new SGLV 8286.

c. A last will and testament, a power of attorney, or any other document will not and cannot change or cancel any beneficiary on this form. You must complete a new SGLV 8286 to change a beneficiary.

d. If you want to name a minor child or minor children as beneficiaries, it is very important that you read the instructions on the reverse side of this form.

### I DESIGNATE THE FOLLOWING BENEFICIARIES TO RECEIVE PAYMENT OF MY INSURANCE PROCEEDS AS SHOWN BELOW:

| COMPLETE NAME AND ADDRESS OF BENEFICIARY (If married woman, give her own first and middle names) for ex, Mary Lisa Smith, not Mrs. John Smith | SOCIAL SECURITY # (If known, See 1.D. on back) | RELATIONSHIP TO INSURED | SHARES TO BE PAID TO EACH BENEFICIARY (See 1.B. on back) | PAYMENTS OPTIONS TO BENEFICIARY 36 PMTS/LUMP SUM (See 1.I. on back) |
|---|---|---|---|---|
| **PRINCIPAL (First)** | | | | |
| 1. | Redacted PII | | | |
| 2. | Redacted PII | | | |
| **CONTINGENT: (Second - If principal beneficiary(ies) dies before me or before completion of installment payments to the principal beneficiary(ies))** | | | | |
| 1. | Redacted PII | | | |
| 2. | | | | |

**NOTE:** If more than one principal beneficiary is named, the share of any such beneficiary who dies before me shall be distributed equally among the surviving principal beneficiaries (For another option, see 1.C. on the back). If there is no surviving principal beneficiary the proceeds shall be distributed equally to the surviving contingent beneficiaries. This Designation of Beneficiary shall be void if none of the designated beneficiaries is living at my death. If after completion of this form my insurance is increased, this beneficiary designation shall apply to the full amount in force unless a new designation is made.

I HAVE READ AND UNDERSTAND THE INSTRUCTIONS ON THE FRONT AND REVERSE OF THIS FORM. I UNDERSTAND THAT THIS FORM CANCELS ANY PRIOR BENEFICIARY OR PAYMENT INSTRUCTIONS. I UNDERSTAND THAT IF I HAVE LEGAL QUESTIONS ABOUT THIS FORM I MAY CONSULT WITH A MILITARY ATTORNEY AT NO EXPENSE TO ME.

I UNDERSTAND that I cannot have combined SGLI and VGLI coverages at the same time for more than $200,000.

| SIGN HERE IN INK ▶ | _(Signature of member) (Do not print)_ | DATE COMPLETED _9 3111 7_ |
|---|---|---|

| WITNESSED AND RECEIVED BY | RANK, TITLE OR GRADE | ORGANIZATION | DATE RECEIVED |
|---|---|---|---|
| David M. Wilt | SFC | Det 5 STARC | 931117 |

**SGLV - 8286,** NOV 1992          SUPERSEDES SGVL 8286, SEPT 1991.          MEMBER'S OFFICIAL PERSONNEL FILE

# RECORD OF MILITARY PROCESSING - ARMED FORCES OF THE UNITED STATES

Before completing this form, read Privacy Act Statement, Warning, and Instructions on reverse.

Form Approved
OMB No 0704-0173
Expires Jun 30 1991

Public reporting burden for this collection of information is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Washington Headquarters Services, Directorate for Information Operations and Reports, 1215 Jefferson Davis Highway, Suite 1204 Arlington, VA 22202-4302, and to the Office of Management and Budget, Paperwork Reduction Project (0704-0173), Washington, DC 20503

| A SERVICE PROCESSING FOR | B NO DAYS PRIOR SERVICE (Complete (1), (2), or (3)) | | (1) DIEUS (YYMMDD) | C SELECTIVE SERVICE CLASSIFICATION | D SELECTIVE SERVICE REGISTRATION NO |
|---|---|---|---|---|---|
| D,A,G | NONE | <365  XX  >365 | (2) DIERF (YYMMDD) | NA | NA |
| | | | (3) DIERC (YYMMDD) | | |

## SECTION I - PERSONAL DATA

| 1. SOCIAL SECURITY NUMBER | 2. NAME (Last, First, Middle Name (B Maiden, if any) Jr, Sr, etc) | 3. ALIASES |
|---|---|---|
| Redacted PII | Claiborne, Damon Jahron | None |

| 4. CURRENT ADDRESS (Street, City, County, State, Country, ZIP Code) | 5. HOME OF RECORD ADDRESS (Street, City, County, State, Country, ZIP Code) | | |
|---|---|---|---|
| 9,0,0,1,8 - 0,0,0,0 0,6,0,3,7 Redacted PII | Same as item #4 | | — — |

| 6. CITIZENSHIP (X one) | C,A | 7. SEX | M | 8. POPULATION GROUP | N |
|---|---|---|---|---|---|
| XX  a U S AT BIRTH (If this box is marked, also X (1) or (2)) | | XX  a MALE | | a WHITE | |
| XX  (1) NATIVE BORN | | b FEMALE | | XX  b BLACK | |
| (2) BORN ABROAD OF U S PARENT(S) | | 9. ETHNIC GROUP (Specify) | N | c ASIAN | |
| b U S NATURALIZED | | Black | | d AMERICAN INDIAN | |
| c U S DERIVED THROUGH NATURALIZATION OF PARENT(S) | | 10. MARITAL STATUS (Specify) | S | e OTHER (Specify) | |
| d U S NON-CITIZEN NATIONAL | | Single | | | |
| e IMMIGRANT ALIEN (Specify) | | 11. NUMBER OF DEPENDENTS | 0 | 0,0 | |
| f NON-IMMIGRANT NATIONAL (Specify) | | | | | |

| 12. DATE OF BIRTH (YYMMDD) | 13. RELIGIOUS PREFERENCE (Optional) | 1,3 | 14. EDUCATION (Yrs/Highest Ed Gr Compl) | 1,2,L | 15. PROFICIENT IN FOREIGN LANGUAGE (If Yes, specify language  if No enter NONE ) | 1st | 2nd |
|---|---|---|---|---|---|---|---|
| Redacted PII | Christian | | 12 L | | None | / | |

| 16. VALID DRIVER'S LICENSE (Yes or No) (If yes, list state, number, and expiration date) | CA | 17. PLACE OF BIRTH (City, State and Country) | 0,6,U,S |
|---|---|---|---|
| Redacted PII | | Redacted PII | |

## SECTION II - EXAMINATION AND ENTRANCE DATA PROCESSING CODES
FOR OFFICE USE ONLY - DO NOT WRITE IN THIS SECTION - GO ON TO PAGE 2, QUESTION 23

### 18. APTITUDE TEST RESULTS

| a TEST ID | b TEST SCORES | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0,2,C | | GS 16 | AR 11 | WK 29 | PC 11 | NO 34 | CS 43 | AS 10 | MK 04 | MC 08 | EI 08 | VE 40 |
| | AFQT PERCENTILE | 3,4 | 1,3 | 3,0,9 | 2,9 | 2,9,3 | 6,3 | 7,0 | 1,4,1 | 0,0,8 | 8,1,0 | 3,9 |

### 19. DEP ENLISTMENT DATA

| a DATE OF DEP ENLIST-MENT (YYMMDD) | b PROJ ACTIVE DUTY DATE (YYMMDD) | c ES | d RECRUITER IDENTIFICATION | e PROGRAM ENLISTED FOR | f T-E MOS/AFS | g WAIVER |
|---|---|---|---|---|---|---|
| | | | N/A | | | |

### 20. ACCESSION DATA

| a ENLISTMENT DATE (YYMMDD) | b ACTIVE DUTY SERVICE DATE (YYMMDD) | c PAY ENTRY DATE (YYMMDD) | d TOE | e WAIVER | f PAY GRADE | g DATE OF GRADE (YYMMDD) | h ES | i YRS/HIGHEST ED GR COMPL |
|---|---|---|---|---|---|---|---|---|
| 9,3,1,1,1,7 | 9,0,1,1,1,6 | 8,9,0,7,2,0 | 4 | Y,Y,Y | E,0,4 | 9,1,0,5,0,1 | 0 | 1,2,L |

| j RECRUITER IDENTIFICATION | k PROGRAM ENLISTED FOR | l T-E MOS/AFS | m PMOS/AFS | n YOUTH | o OA | p TRANSFER TO (UIC) |
|---|---|---|---|---|---|---|
| Redacted PII | 1,0,3,0,0,0,0,A,0 | 4,5,B,1,0 | Y,Y,Y,Y,Y,N,O,T,A,R | | | |

### 21. SERVICE REQUIRED CODES

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| W,1 | P,2 | C,2 | C,7 | F,0 | | | C | A | D | A | G | 0,8 | 9,0 | 9,0 | 0,8 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 |
| 4,0 | 8,8 | 0,8 | 5,0 | 8,7 | 0,7 | 9,0 | 7,7 | 0,8 | 8,0 | 8,7 | | | | | | | | | |
| 41 | 42 | 43 | 44 | 45 | 46 | 47 | 48 | 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 | 57 | 58 | 59 | 60 |
| A,Q,1,1,4,0,6 | | | | 8,8 | m,1,0 | A,B,M | | | | | | | | | | | | | |
| 61 | 62 | 63 | 64 | 65 | 66 | 67 | 68 | 69 | 70 | 71 | 72 | 73 | 74 | 75 | 76 | 77 | 78 | 79 | 80 |
| 81 | 82 | 83 | 84 | 85 | 86 | 87 | 88 | 89 | 90 | 91 | 92 | 93 | 94 | 95 | 96 | 97 | 98 | 99 | 100 |
| 101 | 102 | 103 | 104 | 105 | 106 | 107 | 108 | 109 | 110 | 111 | 112 | 113 | 114 | 115 | 116 | 117 | 118 | 119 | 120 |
| 121 | 122 | 123 | 124 | 125 | 126 | 127 | 128 | 129 | 130 | 131 | 132 | 133 | 134 | 135 | 136 | 137 | 138 | 139 | 140 |

DD Form 1966/1, JAN 89
1261/010

*Previous editions are obsolete.*

Page 1

| NAME (Last, First, Middle Initial) | SOCIAL SECURITY NUMBER |
|---|---|
| Claiborne, Damon J | Redacted PII |

## SECTION III - OTHER PERSONAL DATA

### 23. EDUCATION

a. List all high schools and colleges attended.

| (1) FROM (YYMM) | (2) TO (YYMM) | (3) NAME OF SCHOOL | (4) LOCATION | (5) GRADUATE YES | NO |
|---|---|---|---|---|---|
| 8701 | 8906 | Manual Arts H.S | Los Angeles, CA | xx | |
| | | | | | |
| | | | | | |

| | YES | NO |
|---|---|---|
| b Have you ever been enrolled in ROTC, Junior ROTC, Sea Cadet Program or the Civil Air Patrol? | | |

### 24. MARITAL / DEPENDENCY STATUS AND FAMILY DATA (If "Yes," explain in Section VI, "Remarks.")

| | | |
|---|---|---|
| a. Is anyone dependent upon you for support? | | D.C |
| b. Are you now or have you ever been divorced or legally separated? | | D.C |
| c. Is any court order of judgment in effect that directs you to provide alimony or support for children? | | D.C |

### 25. PREVIOUS MILITARY SERVICE OR EMPLOYMENT WITH THE US GOVERNMENT (If "Yes," explain in Section VI, "Remarks.")

| | | |
|---|---|---|
| a. Are you now or have you ever been in any regular or reserve branch of the Armed Forces or in the Army National Guard or Air National Guard? | | D.C |
| b. Have you ever been rejected for enlistment, reenlistment, or induction by any branch of the Armed Forces of the United States? | | D.C |
| c. Are you now or have you ever been a deserter from any branch of the Armed Forces of the United States? | | D.C |
| d. Have you ever been employed by the United States Government? | | D.C |
| e. Are you now drawing, or do you have an application pending, or approval for: retired pay, disability allowance, severance pay, or a pension from any agency of the government of the United States? | | D.C |

### 26. RELIGIOUS BELIEFS (If "Yes," explain in Section VI, "Remarks.")

| | | |
|---|---|---|
| Are you a conscientious objector? (That is, do you have, or have you ever had, a firm, fixed, and sincere objection to participation in war in any form or to the bearing of arms because of religious belief or training?) | | D.C |

### 27. CHARACTER AND SOCIAL ADJUSTMENT (If "Yes," explain in Section VI, "Remarks.")

a. Are you a homosexual or a bisexual? ("Homosexual" is defined as: sexual desire or behavior directed at (a) person(s) of one's own sex. "Bisexual" is defined as a person sexually responsive to both sexes.)

b. Do you intend to engage in homosexual acts (sexual relations with another person of the same sex)?

## SECTION IV - CERTIFICATION

### 28. CERTIFICATION OF APPLICANT (Your signature in this block must be witnessed by your recruiter.)

a. I certify that the information given by me in this document is true, complete, and correct to the best of my knowledge and belief. I understand that I am being accepted for enlistment based on the information provided by me in this document: that if any of the information is knowingly false or incorrect, I could be tried in a civilian or military court and could receive a less than honorable discharge which could affect my future employment opportunities.

| b. TYPED OR PRINTED NAME (Last, First, Middle Initial) | c. SIGNATURE | d. DATE SIGNED (YYMMDD) |
|---|---|---|
| Claiborne, Damon J | | 931115 |

### 29. DATA VERIFICATION BY RECRUITER (Enter description of the actual documents used to verify the following items.)

| a. NAME (X one) | b. AGE (X one) | c. CITIZENSHIP (X one) |
|---|---|---|
| xx (1) BIRTH CERTIFICATE | xx (1) BIRTH CERTIFICATE | xx (1) BIRTH CERTIFICATE |
| (2) OTHER (Explain) | (2) OTHER (Explain) | (2) OTHER (Explain) |
| d. SOCIAL SECURITY NUMBER (X one) | e. EDUCATION (X one) | f. OTHER DOCUMENTS USED |
| xx (1) SSN CARD | xx (1) DIPLOMA | Drivers License |
| (2) OTHER (Explain) | (2) OTHER (Explain) | |

### 30. CERTIFICATION OF WITNESS

a. I certify that I have witnessed the applicant's signature above and that I have verified the data in the documents required as prescribed by my directives. I further certify that I have not made any promises or guarantees other than those listed and signed by me. I understand my liability to trial by courts-martial under the Uniform Code of Military Justice should I effect or cause to be effected the enlistment of anyone known by me to be ineligible for enlistment.

| b. TYPED OR PRINTED NAME (Last, First, Middle Initial) | c. PAY GRADE | d. RECRUITER I.D | e. SIGNATURE | f. DATE SIGNED (YYMMDD) |
|---|---|---|---|---|
| Wilt, David M | SFC | Redacted PII | | 931115 |

### 31. SPECIFIC OPTION / PROGRAM ENLISTED FOR, MILITARY SKILL, OR ASSIGNMENT TO A GEOGRAPHICAL AREA GUARANTEES

a. SPECIFIC OPTION / PROGRAM ENLISTED FOR (Completed by Guidance Counselor, MEPS Liaison NCO, etc. as specified by sponsoring service - use clear text English.) HHC 3/160th IN WPCLT0 LZ0
E4 88M10 para 114 Line 06 3yr 8 mo 4 dys

b. I fully understand that I will not be guaranteed any specific military skill or assignment to a geographic area except as shown in item 31.a. above and annexes attached to my Enlistment/Reenlistment Document (DD Form 4)

| | c. APPLICANT'S INITIALS |
|---|---|
| | D.C |

| DD Form 1966/2, JAN 89 | Previous editions are obsolete. | Page 2 |
|---|---|---|
| 1447/010 | | |

000533

NAME (Last, First, Middle Initial)
Claiborne, Damon J

SOCIAL SECURITY NUMBER
Redacted PII

**32. CERTIFICATION OF RECRUITER OR ACCEPTOR**

a  I certify that I have reviewed all information contained in this document and, to the best of my judgment and belief, the applicant fulfills all legal policy requirements for enlistment. I accept him/her for enlistment on behalf of the United States *(Enter Branch of Service)*  Army National Guard and certify that I have not made any promises or guarantees other than those listed in Item 31 above.  I further certify that service regulations governing such enlistments have been strictly complied with and any waivers required to effect applicant's enlistment have been secured and are attached to this document.

| b  TYPED OR PRINTED NAME (Last, First, Middle Initial) | c  PAY GRADE | d.  RECRUITER I.D. OR ORGANIZATION | e.  SIGNATURE | | f  DATE SIGNED (YYMMDD) |
|---|---|---|---|---|---|
| Wilt, David M | SEC | 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 | | | 931115 |

**SECTION V - RECERTIFICATION**

**33.  RECERTIFICATION BY APPLICANT AND CORRECTION OF DATA AT THE TIME OF ACTIVE DUTY ENTRY**

a.  I have reviewed all information contained in this document this date.  That information is still correct and true to the best of my knowledge and belief  If changes were required, the original entry has been marked "See Item 33" and the correct information is provided below.

| b  ITEM NUMBER | c  CHANGE REQUIRED | | | |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

| d  WITNESS | | | | e.  APPLICANT | |
|---|---|---|---|---|---|
| (1)  TYPED OR PRINTED NAME | (2)  PAY GRADE | (3)  SIGNATURE | | (1)  SIGNATURE | (2)  DATE SIGNED (YYMMDD) |
| | | | | | |

**SECTION VI - REMARKS** *(Specify item(s) being continued by item number. Continue on separate pages if necessary.)*

I hereby state that neither my recruiter or anyone else concerned with
my enlistment processing has advised, suggested or implied I should
conceal information about my juvenile or adult civil offense record.
or that I should falsify or withhold information in answering any
questions pertaining to my enlistment.  I further understand that there
is a $10,000 fine and/or 5 years in a Federal Penitentiary if I am
withholding information from the US Goverment. I also understand that I will
be tested  for the presence of Alcohol and Drugs during my MEPS Physical and
that I will be discharged from the Army National Guard if my pre-accession
drug test shows the presence of drugs in my system at the time I enlisted.

                    Government: _____ DATE: _931115_____

                        PRIOR SERVICE INFORMATION
RANK/ COMPONENT/ENTRY DATE/RELEASE DATE/TYPE DISCHARGE




    UNIT OF ASSIGNMENT          UIC:      PRN:    MOS:    PERIOD OF ENL:
    Co F 540th MSB              WQUCF0    L20     45B10






| | | DD FORM 1966/4 ATTACHED (X one) | YES | |
|---|---|---|---|---|
| | | | NO | |

DD Form 1966/3, JAN 89          *Previous editions are obsolete*                    Page 3

000534

DEPARTMENT OF DEFENSE
# NATIONAL AGENCY QUESTIONNAIRE (NAQ)
## DD FORM 398-2

## CONTENTS

### THE NAQ PACKAGE CONSISTS OF THE FOLLOWING:

1. Privacy Act Statement

2. Authority for Release of Information and Records

3. DD Form 398-2, "Department of Defense National Agency Questionnaire"

4. General Instructions

5. Detailed Instructions

6. Listing of Reportable Drugs

**PLEASE BE SURE YOU HAVE ALL PARTS OF THE PACKAGE.**

## PRIVACY ACT STATEMENT

**AUTHORITY:** 50 U.S.C. Sections 781-887, Internal Security Act of 1950; 5 U.S.C. Section 9101, Criminal history record information for national security purposes; Executive Order 9397, November 1943 (SSN), Numbering System for Federal Register Accounts Relating to Individual Persons; Executive Order 10450, Security Requirements for Government Employment; Executive Order 10865, Safeguarding Classified Information Within Industry; Executive Order 11935, Citizenship Requirements for Federal Employment; Executive Order 12333, United States Intelligence Activities; Executive Order 12356, National Security Information; and 5 U.S.C. Section 301, Department Regulations.

**PRINCIPAL PURPOSES:** To obtain background information for personnel security investigative and evaluative purposes to make reliability and security determinations; to allow access to classified information, sensitive areas, or equipment; to ensure that enlistment and retention in the Armed Forces is clearly consistent with national security; or to permit assignment to sensitive national security positions. The data may later be used as part of a review process to evaluate continued eligibility for access to classified information. The Social Security Number will be used to verify identity and locate existing records.

**ROUTINE USES:** To federal, state, local, or foreign law enforcement authorities if the record indicates, on its face or in conjunction with other records, a violation of law; to federal, state, or local government agencies if necessary to obtain information for a reliability or personnel security determination; to a requesting federal agency concerning its retaining, issuing a security clearance, or making a reliability or personnel security determination concerning assignment to or retention in a sensitive position, or letting a contract; to a congressional office in response to an inquiry made at the request of the individual; to foreign law enforcement, security, investigatory, or administrative authorities to comply with international agreements; to the Office of Personnel Management when necessary to carry out its personnel security functions; to the Department of Justice in pending or potential litigation to which the record is pertinent; to the General Services Administration and National Archives and Records Administration for records management purposes; to the Merit Systems Protection Board for use in administrative proceedings and investigations of possible prohibited personnel practices; to individuals and entities outside the Department of Defense and U.S. Government for counterintelligence activities authorized by federal law or executive order.

**DISCLOSURE:** Voluntary; however, failure to furnish the requested information may result in our being unable to complete your investigation, which could result in your not being considered for clearance, access, entry into a uniformed service, or assignment to sensitive duties. For contractor personnel, failure to furnish information may result in administrative termination of any existing Industrial Security Clearance to include a contractor-granted clearance.

000535

## AUTHORITY FOR RELEASE OF INFORMATION AND RECORDS

I have been provided a Privacy Act Statement advising me that certain information is required to assist the Department of Defense in making a security determination concerning me and that execution of this form is voluntary. The information will be used for the purpose of determining my qualification for employment with the Federal Government, service in the Armed Forces, or access to classified information.

I therefore authorize any duly accredited representative of the Department of Defense, including those from the Defense Investigative Service, to obtain any information relating to my activities from individuals, schools, residential management agents, employers, criminal justice agencies, financial or lending institutions, credit bureaus, consumer reporting agencies, retail business establishments, medical institutions, hospitals or other repositories of medical records. This information may include, but is not limited to, my academic, residential, achievement, performance, attendance, personal history, disciplinary, criminal history record, arrest, conviction, medical, psychiatric/psychological, and financial and credit information.

I further authorize the Defense Investigative Service and any other authorized Department of Defense agency, to request criminal history record information about me from criminal justice agencies for the purpose of determining my eligibility for access to classified information, or assignment to, or retention in, sensitive national security duties, in accordance with 5 U.S.C. 9101. I understand that I may request a copy of such records as may be available to me under the law.

I direct you to release such information upon request of the duly accredited representative of any authorized Department of Defense agency regardless of any agreement I may have made with you previously to the contrary.

I have been advised that the original of this authorization will be placed on file with the Department of Defense. This authorization will expire in five (5) years or upon the termination of my affiliation with the Department of Defense, whichever is sooner.

| a. TYPED NAME (LAST, First, Middle Initial) | b. OTHER NAMES USED |
|---|---|
| Clai borne, Damon Jahron | None |

| c. DATE OF BIRTH (YYMMDD) | d. SOCIAL SECURITY NUMBER | e. CURRENT HOME ADDRESS (Street, City, State and Zip Code) |
|---|---|---|
| Redacted PII | Redacted PII | Redacted PII |

| f. HOME TELEPHONE NUMBER (Include Area Code) | |
|---|---|
| Redacted PII | |

| g. SIGNATURE | h. DATE SIGNED (YYMMDD) |
|---|---|
| | 931115 |

DD Form 398-2, MAR 90

Page 2 of 14 Pages

DEPARTMENT OF DEFENSE
# NATIONAL AGENCY QUESTIONNAIRE

*Before completing form, read attached Privacy Act Statement, General, and Detailed Instructions.*
**Items outlined by heavy black line are for Requesting Agency's use only.**

**Form Approved**
OMB No. 0704-0298
Expires Jul 31, 1992

Public reporting burden for this collection of information is estimated to average 1.2 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Washington Headquarters Services, Directorate for Information Operations and Reports, 1215 Jefferson Davis Highway, Suite 1204, Arlington, VA 22202-4302, and to the Office of Management and Budget, Paperwork Reduction Project (0704-0298), Washington, DC 20503.

| A. REQUEST DATE (YYMMDD) 931117 | B. TYPE REQUEST (X one) | C. LOCAL FILES CHECKED WITH FAVORABLE RESULTS (X one) (If "No," explain in Item 16) | FOR DIS USE ONLY |
|---|---|---|---|
| D. CODE WPCLTO | (1) NAC / (2) Other (Specify) | | |
| | (3) DNACI | | |
| | XX (4) ENTNAC | XX (1) Yes / (2) No | |

| E. GOVERNMENT EMPLOYMENT (X one) | F. CITIZENSHIP VERIFIED (X one) |
|---|---|
| (1) Yes / XX (2) No | XX (1) Yes / (2) No |

| G. FORWARD THIS REQUEST TO (Include Zip Code) | H. RETURN RESULTS TO (Include Zip Code) | I. REASON FOR REQUEST |
|---|---|---|
| Defense Investigative Service Personnel Investigations Ctr POB 1083, Baltimore MD 21203 | U.S. ARMY OFFICE OF THE ADJUTANT GENERAL HQS. CA ARMY NATIONAL GUARD ATTN: SECURITY CLEARANCE OFFICE P. O. BOX 269101  9800 GOETHE RD. SACRAMENTO, CA 95826-9101 | SECRET / CONFIDENTIAL / COMMISSION / XX ENLISTMENT / XX NATIONAL GUARD / RESERVES / ROTC / OFFICER CANDIDATE / SERVICE ACADEMY / PERS RELIABILITY PROGRAM / RED CROSS / USO / NAFI / SUMMER HIRE / EDUCATION/ORIENTATION / NON-CITIZEN OVERSEAS / DOD BUILDING PASS / UNESCORTED ENTRY / AREA ACCESS / OTHER (Specify) |

## 1. NAME

| a. LAST, First, Middle (LAST name in all capital letters) CLAIBORNE, Damon Jahron | b. Maiden Name (If any) NA |
|---|---|

| 2. OTHER NAMES USED (LAST, First, Middle) (Include all other names used and dates of use) NONE | 3. SOCIAL SECURITY NUMBER Redacted PII |
|---|---|

| 4. DATE OF BIRTH (YYMMDD) Redacted PII | 5. PLACE OF BIRTH |
|---|---|

| | a. City | b. County | c. State | d. Country |
|---|---|---|---|---|
| | | Redacted PII | | |

## 6. PHYSICAL CHARACTERISTICS (Complete all blocks)

| a. Sex | b. Race | c. Height | d. Weight | e. Hair Color | f. Eye Color |
|---|---|---|---|---|---|
| Male | Blk | 73" | 150 | Black | Brown |

## 7. STATUS (X a, b, c, d, or e and complete as applicable)

| a. Consultant | d. U.S. Government Employee (Complete (1) and (2)) | XX e. Military (Complete (1) through (3)) |
|---|---|---|
| b. Contractor Employee | (1) Grade | (1) Rank E-4 |
| c. OODEP | X if Applicant | (2) Branch of Service CA ARNG |
| | | (3) X if Applicant |

## 8. CITIZENSHIP (X a, b, or c and complete as applicable)

| XX a. United States (X (1), (2), (3), (4), or (5)) | | REINSTATEMENT / REVALIDATION / CONVERSION / CONCURRENT | SPECIFY CLEARANCE LEVEL |
|---|---|---|---|
| XX (1) Born in U.S. | (2) Born abroad of U.S. parents | | |
| (3) Naturalized (Complete (a) through (e)) | (4) Derived from naturalized parent (Complete (a) through (e)) | | |

| (a) Certificate Number(s) | (b) Date (YYMMDD) | (c) Place | (d) Court | (e) Alien Registration Number |
|---|---|---|---|---|
| | | | | |

(5) Dual Citizenship (List country) (See DETAILED INSTRUCTIONS)

b. United States National (List U.S. Trust Territory or Possession)

| c. Alien (Complete (1) through (4)) | (1) Current Citizenship | (2) Registration Number |
|---|---|---|
| (3) Intend to become a U.S citizen? (X one) | (a) Yes (b) No | (4) Permanent Resident Status? (X one)  (a) Yes  (b) No |

## 9. MILITARY SERVICE (List in chronological order beginning with the most recent period. Include Reserve / National Guard service.)

| a. From (YYMMDD) | b. To (YYMMDD) | c. Branch of Service | d. Rank | e. Service Number(s) | f. Type of Discharge | g. Country |
|---|---|---|---|---|---|---|
| 890720 | 920719 | US ARMY | E-4 | Redacted PII | Honorable | USA |
| 920720 | | USAR IRR | E-4 | Redacted PII | Cond. Rel | USA |

## 10. RESIDENCES (List in chronological order beginning with current address. Give the inclusive dates for each period of residence. If you list a Rural Route address, provide instructions or map

| a. Current Home Telephone (Include Area Code) 213-735-3140 | for locating that residence. Do not list Post Office Box addresses. See DETAILED INSTRUCTIONS.) |
|---|---|

| b. Dates (YYMM) | | c. Address | | | |
|---|---|---|---|---|---|
| (1) From | (2) To | (1) Number, Street and Apartment Number | (2) City | (3) State | (4) Zip Code | (5) Country |
| 8712 | Present | Redacted PII | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| DD Form 398-2, MAR 90 | Replaces all previous editions of DD Forms 48, 48-3, 398-2 and 2221, which are obsolete. | Page 3 of 14 Pages |
|---|---|---|

**11. EMPLOYMENT / DUTY ORGANIZATION** (List in chronological order, beginning with the present, each period of employment, part-time employment, and/or unemployment. List inclusive dates for each period. ALso list current Reserve or National Guard Unit. If discharged for cause, te in Item 14. See DETAILED INSTRUCTIONS.)

| Yes | No | a. Have you ever been in Federal Civil Service? (If "Yes," explain in accordance with DETAILED INSTRUCTIONS.) |
|---|---|---|
| ✓ | | |

| b. Dates (YYMM) | | c. Name of Employer | d. Job Site, Duty Station or Home Port (Street, City, State and Zip Code) | e. Immediate Supervisor (1) Name (LAST, First, Middle Initial) | (2) Telephone No. (Incl. Area Code) |
|---|---|---|---|---|---|
| (1) From | (2) To | | | | |
| 9301 | Present | US Marshall Service | 312 N. Spring st Los Angeles, CA 90012 | Bledsoe, Patty | 213 894-4647 |
| 8907 | 9207 | USARMY | | | |
| | | | | | |
| | | | | | |

**12. FAMILY / ASSOCIATES** (Give requested data for: • Father, Mother, Spouse, Cohabitant, and Children • All brothers and sisters NOT born in the United States • ALL relatives or friends to whom you, your spouse, or cohabitant are bound by affection or obligations IF such persons are residing in, are citizens of, or are employed by or otherwise acting as representatives of ANY foreign country.)

| a Relationship and Name (LAST, First, Middle Initial) | b. Present Address (Street, City, State and Zip Code) | c. Date of Birth (YYMMDD) | d. Place of Birth (City, State, Country) | e. Citizenship |
|---|---|---|---|---|
| | Redacted PII | | | |
| (3) Spouse (Maiden Name if applicable) | | | | |
| (4) | | | | |
| (5) | | | | |
| (6) | | | | |

**13. FOREIGN TRAVEL / CONNECTIONS**

| Yes | No | (X "Yes" or "No" for each question. "Yes" answers must be explained in accordance with DETAILED INSTRUCTIONS.) |
|---|---|---|
| | no | a. Do you have any foreign property, business connections, or financial interests? |
| | n.c | b. Are you now or have you ever been employed by or acted as a consultant for a foreign government, firm, or agency? |
| | n.c | c. Have you ever traveled outside the United States on other than official U.S. Government orders? (Include even short trips to Canada or Mexico) |
| | n.c | d. Have you ever had any contact with a foreign government, its establishments (e.g. embassies, consulates), or its representatives, whether inside or outside the U.S., other than on official U.S. Government business? |

**14. REMARKS** (You may provide any additional information which you feel may have a bearing or impact on your security eligibility which has not been specifically asked for on this form.)

**15. CERTIFICATION BY PERSON COMPLETING FORM.** I certify that the entries made by me are true, complete, and accurate to the best of my knowledge and belief and are made in good faith. I understand that a knowing and willful false statement on this form can be punished by fine or imprisonment or both. (See U.S. Code, Title 18, Section 1001.)

| a Typed Name (LAST, First, Middle Initial) | b. Social Security No. | c. Signature | d. Date Signed (YYMMDD) |
|---|---|---|---|
| Claiborne, Damon J | Redacted PII | | 931115 |

**16. RESULTS OF LOCAL FILES CHECK**

**FOR INDUSTRIAL REQUESTER ONLY**

**17. CERTIFICATION.** I certify that the above named individual is employed by this company and has the need for the clearance indicated to perform on classified contracts.

| a. Contract Number | b. Telephone Number of FSO / Designee (Include Area Code) |
|---|---|

| c. Typed Name of FSO / Designee (LAST, First, Middle Initial) | d. Signature | e Date Signed (YYMMDD) |
|---|---|---|

DD Form 398-2, MAR 90

Page 4 of 14 Pages

000538

| 18. ARRESTS | • You must list ALL arrest information regardless of whether you have previously listed or disclosed this information or whether the record in your case has been "sealed," expunged, or otherwise stricken from the court record. You must also include all courts-martial or non-judicial punishment (Article 15 UCMJ or Captain's Mast.)
• The only exceptions are for certain convictions under the Federal Controlled Substances Act (21 U S C 844 or 18 U S C Section 3607) (See DETAILED INSTRUCTIONS )
• You may exclude minor traffic violations for which a fine or forfeiture of $100 or less was imposed, unless alcohol or drug related
• IF YOU ARE A MILITARY ENLISTMENT APPLICANT you must list ALL traffic violations. |

| Yes | No | |
|---|---|---|
| D. | C | a. Have you ever been arrested, charged, cited, held, or detained by Federal, State, or other law enforcement or juvenile authorities regardless of whether the charge was dropped or dismissed or you were found not guilty? |

b. List details of "Yes" answers

| (1) Date (YYMMDD) | (2) Nature of Offense or Violation | (3) Name and Location of Law Enforcement Agency (City and State) | (4) Name and Location of Court/Magistrate (City and State) | (5) Penalty Imposed or Other Disposition in Each Case |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## 19. CREDIT HISTORY

("YES" answers must be explained in accordance with DETAILED INSTRUCTIONS )

| Yes | No | |
|---|---|---|
| | D. C. | a. Have you ever filed a petition under any chapter of the bankruptcy code (to include Chapter 13)? |
| | D. C. | b. Have you ever had your wages garnished or anything repossessed? |
| | D. C. | c. Have you ever had a lien placed upon your property for failing to pay taxes? |
| | D C | d. Do you have any judgments against you which you have not paid? |
| | D. C. | e. Are you now or have you been significantly delinquent on debts? (Paid more than 120 days from scheduled payment due date) |

## 20. DRUG / ALCOHOL USE AND MENTAL HEALTH   ("YES" answers must be explained in accordance with DETAILED INSTRUCTIONS )

| Yes | No | |
|---|---|---|
| | D. C. | a. Have you ever tried or used or possessed any narcotic (to include heroin or cocaine), depressant (to include quaaludes), stimulant, hallucinogen (to include LSD or PCP), or cannabis (to include marijuana or hashish), or any mind-altering substance (to include glue or paint), even one-time or on an experimental basis, except as prescribed by a licensed physician? |
| | D. C. | b. Have you ever been involved in the illegal purchase, manufacture, trafficking, production, or sale of any narcotic, depressant, stimulant, hallucinogen, or cannabis? |
| | D. C. | c. Have you ever misused or abused any drug prescribed by a licensed physician for yourself or for someone else? |
| | D. C. | d. Has your use of alcoholic beverages (such as liquor, beer, wine) ever resulted in the loss of a job, disciplinary action, arrest by police, or any alcohol-related treatment or counseling (such as for alcohol abuse or alcoholism)? |
| | D. C. | e. Have you ever been treated for a mental, emotional, psychological, or personality disorder/condition/problem? |
| | D. C. | f. Have you ever consulted or been counseled by any mental health professional? |

## 21. ORGANIZATIONS

("YES" answers must be explained in accordance with DETAILED INSTRUCTIONS )

| Yes | No | |
|---|---|---|
| | D. C. | a. Are you now or have you ever been a member of the Communist Party or any Communist organization? |
| | D. C. | b. Are you now or have you ever been affiliated with any organization, association, movement, group, or combination of persons which: |
| | D. C. | (1) Advocates the overthrow of our constitutional form of government? |
| | D. C. | (2) Advocates or approves the commission of acts of force, violence, coercion, or intimidation to deny persons their rights under the Constitution of the U S ? |
| | D. C. | (3) Seeks to alter the form of government of the United States by force, violence, or other unconstitutional means? |
| | D. C. | (4) Advocates or engages in the disruption or halting of U.S. government activities through force, violence, or infiltration of the government service? |

c. List all organizations in which you hold or have held membership since age 16. (You may omit labor unions, political parties, religious organizations, and those referred to in 21 a and b )

| (1) Name (Do not abbreviate) | (2) Address (Number and Street, City, State, Zip Code) | (3) Type | (4) From (YYMM) | (5) To (YYMM) |
|---|---|---|---|---|
| | | | | |
| | | | | |

## 22. SECURITY CLEARANCE

| Yes | No | a. Have you ever held a security clearance, to include a contractor-granted Confidential? (If "YES," give details below ) | | |
|---|---|---|---|---|
| xx | | (1) Level: Secret | (2) Date Granted (YYMMDD): 1989 | (3) Granted By: ETNAC | (4) Name of Employer: US ARMY |
| | xx | b. Have you ever had a security clearance denied, suspended or revoked? (If "YES," give details in item 14 ) | | |

## 23. CERTIFICATION BY PERSON COMPLETING FORM.

I certify that the entries made by me are true, complete, and accurate to the best of my knowledge and belief and are made in good faith. I understand that a knowing and willful false statement on this form can be punished by fine or imprisonment or both. (See U.S. Code, Title 18, Section 1001.)

| a. Typed Name (LAST, First, Middle Initial) | b. Social Security No. | c. Signature | d. Date Signed (YYMMDD) |
|---|---|---|---|
| Clai borne, Damon J | Redacted PII | | 931115 |

DD Form 398-2, MAR 90

General Services Administration
Interagency Comm. on Medical Records
FIRMR (41 CFR) 201-45.505

# REPORT OF MEDICAL EXAMINATION

| 1. LAST NAME - FIRST NAME - MIDDLE NAME | 2. GRADE AND COMPONENT OR POSITION | 3. IDENTIFICATION NO. |
|---|---|---|
| CLAIBORNE DAMON JAHRON | CIVILIAN E-4 / ARMY | Redacted PII |

| 4. HOME ADDRESS (Number, street or RFD, city or town, State and Zip Code) | 5. PURPOSE OF EXAMINATION | 6. DATE OF EXAMINATION |
|---|---|---|
| Redacted PII | ENLISTMENT   COMMISSION  ARMY  NAVY  AIR FORCE  MARINE CORPS  COAST GUARD  RESERVE  NATIONAL GUARD | 17 NOV 93 |

| 7. SEX | 8. RACE (WHITE) (BLACK) (AMERICAN INDIAN) (ASIAN) (OTHER/UNKNOWN) | 9. TOTAL YEARS GOVERNMENT SERVICE | 10. AGENCY | 11. ORGANIZATION UNIT |
|---|---|---|---|---|
| MALE | | MILITARY 3 yrs. CIVILIAN NONE | DA | |

| 12. DATE OF BIRTH  AGE | 13. PLACE OF BIRTH | 14. NAME, RELATIONSHIP, AND ADDRESS OF NEXT OF KIN |
|---|---|---|
| Redacted PII | Redacted PII | Redacted PII |

| 15. EXAMINING FACILITY OR EXAMINER, AND ADDRESS | LOS ANGELES MEPS, 5051 RODEO RD LOS ANGELES, CA 90016-4791 | 16. OTHER INFORMATION |
|---|---|---|

| 17. RATING OR SPECIALTY | TIME IN THIS CAPACITY (Total) | LAST SIX MONTHS |
|---|---|---|

## CLINICAL EVALUATION

NOTES: (Describe every abnormality in detail. Enter pertinent item number before each comment. Continue in item 73 and use additional sheets if necessary)

| NOR-MAL | (Check each item in appropriate column; enter "NE" if not evaluated) | ABNOR-MAL |
|---|---|---|
| ~ | 18. HEAD, FACE, NECK AND SCALP | |
| ~ | 19. NOSE | |
| ~ | 20. SINUSES | |
| ~ | 21. MOUTH AND THROAT | |
| ~ | 22. EARS-GENERAL (Internal & External canals) (Auditory acuity under items 70 and 71) | |
| ~ | 23. DRUMS (Perforation) | |
| ~ | 24. EYES - GENERAL (Visual acuity and refraction under items 59, 60 and 67) | |
| ~ | 25. OPHTHALMOSCOPIC | |
| ~ | 26. PUPILS (Equality and reaction) | |
| ~ | 27. OCULAR MOTILITY (Associated parallel movements, nystagmus) | |
| ~ | 28. LUNGS AND CHEST (Include breasts) | |
| ~ | 29. HEART (Thrust, size, rhythm, sounds) | |
| ~ | 30. VASCULAR SYSTEM (Varicosities, etc.) | |
| ~ | 31. ABDOMEN AND VISCERA (Include hernia) | |
| ~ | 32. ANUS AND RECTUM (Hemorrhoids, fistulae) (Prostate, if indicated) | |
| ~ | 33. ENDOCRINE SYSTEM | |
| ~ | 34. G-U SYSTEM | |
| ~ | 35. UPPER EXTREMITIES (Strength, range of motion) | |
| ~ | 36. FEET | |
| ~ | 37. LOWER EXTREMITIES (Except feet) (Strength, range of motion) | |
| ~ | 38. SPINE, OTHER MUSCULOSKELETAL | |
| | 39. IDENTIFYING BODY MARKS, SCARS, TATTOOS | ✓ |
| ~ | 40. SKIN, LYMPHATICS | |
| ~ | 41. NEUROLOGIC (Equilibrium tests under item 72) | |
| | 42. PSYCHIATRIC (Specify any personality deviation) | |
| | 43. PELVIC (Females only) (Check how done) VAGINAL  RECTAL | (Continue in item 73) |

NOTES handwritten: *See Status li,*

Handwritten: 931117

| 50. OTHER TESTS | | | SECOND TEST | |
|---|---|---|---|---|
| | 74010283-5 | | | |
| (Cont.) | | CODE | RESULTS | CODE |
| HIV | ...NEGATIVE | | | |
| DRUGS | NEGATIVE | | | |
| ALCOHOL | NEG | | | |

44. DENTAL (Place appropriate symbols, shown in examples, above or below number of upper and lower teeth.)

```
        O           /      Non-        x                    x  x  x  Replaced    x        x   /   Fixed
1   2   3  Restorable  1   2   3  restorable  1   2   3  Missing   1   2   3  by          1   2   3  Partial
32  31  30   teeth     32  31  30   teeth     32  31  30  teeth    32  31  30  dentures    32  31  30  dentures
R   O          f                    x                    x  x  x              x  x  x      (  x  )
I
G   1   2   3           4      5      6      7      8      9   10   11   12   13   14   15   16   L
H   32  31  30          29     28     27     26     25     24   23   22   21   20   19   18   17   E
T                                                                                                F
                                                                                                 T
```

REMARKS AND ADDITIONAL DENTAL DEFECTS AND DISEASES
ACCEPTABLE
NOT ACCEPTABLE
(DENTAL EXAMINATION NOT DONE BY DENTAL OFFICER)

## LABORATORY FINDINGS

| 45. URINALYSIS: A. SPECIFIC GRAVITY | | 46. CHEST X-RAY (Place, date, film number and result) | |
|---|---|---|---|
| B. ALBUMIN REAGENT STRIP NEGATIVE | D. MICROSCOPIC | PLACE AS IN ITEM 15 | FILM NO. |
| C. SUGAR REAGENT STRIP NEGATIVE | | DATE | RESULT |

| 47. SEROLOGY (Specify test used and result) | 48. EKG | 49. BLOOD TYPE AND RH FACTOR | 50. OTHER TESTS |
|---|---|---|---|
| RPR ............ | | | |
| | | | URINE HCG: |

EXCEPTION TO SF 88
APPROVED BY GSA/IRMS 4-92

Standard Form 88 (Back)

| NAME: CLAIBORNE, DAMIN JARROW | MEASUREMENTS AND OTHER FINDINGS | SSN: Redacted PII |
|---|---|---|

| 51. HEIGHT 3 71/4 | 52. WEIGHT 4 | 53. COLOR HAIR BLACK | 54. COLOR EYES BROWN | 55. BUILD ☐ SLENDER ☐ MEDIUM ☐ HEAVY ☐ OBESE | 56. TEMPERATURE HIV AB CODE |
|---|---|---|---|---|---|

| 57. | BLOOD PRESSURE (Arm at heart level) | | 58. | | PULSE (Arm at heart level) | | | |
|---|---|---|---|---|---|---|---|---|
| A. SITTING | SYS. 100 | B. RECUM-BENT | SYS. | C. STANDING (5 min.) | SYS. | A. SITTING 68 | B. AFTER EXERCISE | C. 2 MIN. AFTER | D. RECUMBENT | E. AFTER STANDING 3 MIN. |
| | DIAS. 60 | | DIAS. | | DIAS. | | | | | |

| 59. | DISTANT VISION | 60. | | REFRACTION | | 61. | | NEAR VISION | |
|---|---|---|---|---|---|---|---|---|---|
| RIGHT 20/ | CORR. TO 20/ | BY | S. | | CX | | CORR. TO | | BY |
| LEFT 20/ | CORR. TO 20/ | BY | S. | | CX | | CORR. TO | | BY |

| 62. HETEROPHORIA (Specify distance) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ES* | EX* | R.H. | L.H. | PRISM DIV. | PRISM CONV. | PC | PD |
| | | | | | CT | | |

| 63. | ACCOMMODATION | 64. COLOR VISION (Test used and result) | 65. DEPTH PERCEPTION (Test used and score) AFVT | UNCORRECTED |
|---|---|---|---|---|
| RIGHT | LEFT | PIP | /14 | CORRECTED |

| 66. FIELD OF VISION | 67. NIGHT VISION (Test used and score) | 68. RED LENS TEST | 69. INTRAOCULAR TENSION |
|---|---|---|---|

| 70. | HEARING | 71. | AUDIOMETER | | | | | ANSI-69 | | 72. PSYCHOLOGICAL AND PSYCHOMOTOR FOR MEPS USE ONLY |
|---|---|---|---|---|---|---|---|---|---|---|

| 70. HEARING | | 71. | | 250 256 | 500 512 | 1000 1024 | 2000 2048 | 3000 2896 | 4000 4096 | 6000 6144 | 8000 8192 | WK | ST | DATE NOV 1993 | INITIAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RIGHT WV | /15 SV | /15 | RIGHT | | | | | | | | | | | | |
| LEFT WV | /15 SV | /15 | LEFT | | | | | | | | | | 1 8 NOV 1993 | |

| 73. NOTES (Continued) AND SIGNIFICANT OR INTERVAL HISTORY ITEM 64: RED/GREEN (ARMY ONLY) | PHYSICAL INSPECTION 12/ DATE 228 | HT | WT | RPR | HCG | QUAL | DISQ | PHYSICIAN'S SIGNATURE |
|---|---|---|---|---|---|---|---|---|

74010283-5

(Use additional sheets if necessary)

74. SUMMARY OF DEFECTS AND DIAGNOSES (List diagnoses with item number)

THIS EXAMINATION HAS BEEN ADMINISTRATIVELY REVIEWED FOR COMPLETENESS AND ACCURACY

| SIGNATURE | GRADE E7 | DATE NOV 17 1993 |
|---|---|---|

| 75. RECOMMENDATIONS-FURTHER SPECIALIST EXAMINATIONS INDICATED (Specify) | 76. | A PHYSICAL PROFILE | | | | | |
|---|---|---|---|---|---|---|---|
| | | P | U | L | H | E | S |
| | | | | | | | x |

| 77. EXAMINEE (Check) A. ☑ IS QUALIFIED FOR    SERVICE AS IN ITEM 5    JAG B. ☐ IS NOT QUALIFIED FOR | B. PHYSICAL CATEGORY |
|---|---|

| 78. IF NOT QUALIFIED, LIST DISQUALIFYING DEFECTS BY ITEM NUMBER | A | B | C | E |
|---|---|---|---|---|

| 79. TYPED OR PRINTED NAME OF PHYSICIAN S. N. KAWPENLE, LWO. | SIGNATURE |
|---|---|

| 80. TYPED OR PRINTED NAME OF PHYSICIAN | SIGNATURE |
|---|---|

| 81. TYPED OR PRINTED NAME OF DENTIST OR PHYSICIAN (Indicate which) | SIGNATURE |
|---|---|

| 82. TYPED OR PRINTED NAME OF REVIEWING OFFICER OR APPROVING AUTHORITY S. H. Lawrence M D | SIGNATURE | NUMBER OF AT-TACHED SHEETS |
|---|---|---|

☆ U.S. GPO. 1992—746-498

000541

# ENLISTMENT / REENLISTMENT DOCUM'
## ARMED FORCES OF THE UNITED STATES

### PRIVACY ACT STATEMENT

**AUTHORITY:** 5 USC 1331, 32 USC 708, 44 USC 708, 44 USC 3101, and Sections 133, 265, 275, 504, 508, 510, 591, 671 through 1087, 1168, 1169, 1475 through 1480, 1551, 2107, 2122, 3012, 5031, 8012, 8033, 8496, and 9411 of 10 USC and in 10450, and 11652.

**PRINCIPAL PURPOSES:** To record enlistment or reenlistment into the U.S. Armed Forces. This information becomes a part of personnel records which are used to provide promotion, reassignment, training, medical support, and other personnel management you. Your Social Security Number is necessary to identify you and your records, and to properly report your earnings as a member of Armed Forces to the Social Security Administration. The data is FOR OFFICIAL USE ONLY and will be maintained in strict confidence in accordance with Federal law and regulations.

**ROUTINE USES:** To document your enlistment/reenlistment agreement with the U.S. Armed Forces; to record voluntary changes in your enlistment/reenlistment agreement; to determine dates of service and seniority; and for such other routine personnel management actions required to maintain normal career progression as a member of a component of the U.S. Armed Forces.

**DISCLOSURE IS VOLUNTARY:** However, failure to furnish information will result in denial of enlistment or reenlistment.

| A. | ENLISTEE / REENLISTEE IDENTIFICATION DATA |
|---|---|

| 1. NAME (Last, First, Middle) | 2. SOCIAL SECURITY NUMBER |
|---|---|
| CLAIBORNE DAMON JAHRON | Redacted PII |

| 3. HOME OF RECORD (Street, City, State, ZIP Code) | 4. PLACE OF ENLISTMENT / REENLISTMENT (Mil. Installation, City, State) |
|---|---|
| Redacted PII | LOS ANGELES. MEPS<br>LOS ANGELES, CA 90046-4791 |

| 5. DATE OF ENLISTMENT / REENLISTMENT (YYMMDD) | 6. DATE OF BIRTH (YYMMDD) | 7. PREV MIL SVC UPON ENL / REENLIST | YEARS | MONTHS | DAYS |
|---|---|---|---|---|---|
| 89 FEB 21 | Redacted PII | a. Total Active Military Service | | | |
| | | b. Total Inactive Military Service | | | |

| B. | AGREEMENTS |
|---|---|

8. I am enlisting/reenlisting in the United States (list branch of service) __ARMY RESERVE__ _____ this date for __8__ _____ years and _____ weeks beginning in pay grade __E-4__. The additional details of my enlistment / reenlistment are in Section C and Annex(es) __A, B__

**a. FOR ENLISTMENT IN A DELAYED ENTRY / ENLISTMENT PROGRAM (DEP):**
I understand that I will be ordered to active duty as a Reservist unless I report to the place shown in item 4 above by (list date (YYMMDD) __0600 89 JUL 20__ for enlistment in the Regular component of the United States (list branch of service) __ARMY__ , for not less than __3__ years and _____ weeks. My enlistment in the DEP is in a nonpay status. I understand my period of time in the DEP is **NOT** creditable for pay purposes upon entry into a pay status. However, I also understand that this time is counted toward fulfillment of my military service obligation or commitment. I must maintain my current qualifications and keep my recruiter informed of any changes in my physical or dependency status, moral qualifications, and mailing address.

b. **Remarks:** (If none, so state.) **NONE**

c. The agreements in this section and attached annex(es) are all the promises made to me by the Government. **ANYTHING ELSE ANYONE HAS PROMISED ME IS NOT VALID AND WILL NOT BE HONORED.**
(Initials of Enlistee/Reenlistee) _____ (Continued on reverse side.)

DD Form 4/1, MAY 85    Previous editions are obsolete.

C.                    PARTIAL STATEMENT OF EXISTING UNITED STATES LAWS

9. FOR ALL ENLISTEES, OR REENLISTEES: Many laws, regulations, and military customs will govern my conduct and require me to do things a civilian does not have to do. The following statements are not promises or guarantees of any kind. They explain some of the present laws affecting the Armed Forces which I cannot change but which Congress can change at any time.

a. My enlistment is more than an employment agreement. As a member of the Armed Forces of the United States, I will be:

(1) Required to obey all lawful orders and perform all assigned duties.

(2) Subject to separation during or at the end of my enlistment. If my behavior fails to meet acceptable military standards, I may be discharged and given a certificate for less than honorable service, which may hurt my future job opportunities and my claim for veteran's benefits.

(3) Subject to the military justice system, which means, among other things, that I may be tried by military courts-martial.

(4) Required upon order to serve in combat or other hazardous situations.

(5) Entitled to receive pay, allowances, and other benefits as provided by law and regulation.

b. Laws and regulations that govern military personnel may change without notice to me. Such changes may affect my status, pay, allowances, benefits, and responsibilities as a member of the Armed Forces REGARDLESS of the provisions of this enlistment or reenlistment document.

c. In the event of war, my enlistment in the Armed Forces continues until six (6) months after the war ends, unless my enlistment is ended sooner by the President of the United States.

10. MILITARY SERVICE OBLIGATION FOR ALL MEMBERS OF THE ACTIVE AND RESERVE COMPONENTS, INCLUDING THE NATIONAL GUARD.

a. FOR ALL ENLISTEES: If this is my initial enlistment, I must serve a total of eight (8) years. Any part of that service not served on active duty must be served in a Reserve Component unless I am sooner discharged.

b. If I am a member of a Reserve Component of an Armed Force at the beginning of a period of war or national emergency declared by Congress, or if I become a member during that period, my military service may be extended without my consent until six (6) months after the end of that period of war.

c. As a member of a Reserve Component, in time of war or national emergency declared by the Congress, I may be required to serve on active duty (other than for training) for the entire period of the war or emergency and for six (6) months after its end.

d. As a member of the Ready Reserve I may be required to perform active duty or active duty for training without my consent (other than as provided in item 8 of this document) as follows:

(1) In time of national emergency declared by the President of the United States, I may be ordered to active duty (other than for training) for not more than 24 consecutive months.

(2) I may be ordered to active duty for 24 months, and my enlistment may be extended so I can complete 24 months of active duty, if:

(a) I am not assigned to, or participating satisfactorily in, a unit of the Ready Reserve; and

(b) I have not met my Reserve obligation; and

(c) I have not served on active duty for a total of 24 months.

(3) I may be ordered to perform additional active duty training for not more than 45 days if I have not fulfilled my military service obligation and fail in any year to perform the required training duty satisfactorily. If the failure occurs during the last year of my required membership in the Ready Reserve, my enlistment may be extended until I perform that additional duty, but not for more than six months.

(4) When determined by the President that it is necessary to support any operational mission, I may be ordered to active duty for not more than 90 days if I am a member of the Selected Reserve.

11. FOR ENLISTEES / REENLISTEES IN THE NAVY OR MARINE CORPS: I understand that if I am serving on a naval vessel in foreign waters, and my enlistment expires, I will be returned to the United States for discharge as soon as possible consistent with my desires. However, if essential to the public interest, I understand that I may be retained on active duty until the vessel returns to the United States. If I am retained under these circumstances, I understand I will be discharged not later than 30 days after my return to the United States; and, that except in time of war, I will be entitled to an increase in basic pay of 25 percent from the date my enlistment expires to the date of my discharge.

12. FOR ALL MALE APPLICANTS: This form registers me under the Military Selective Service Act. The Department of Defense may transfer information from my personnel records, including name, social security number, birthdate, and address to the Selective Service System to meet registration and information reporting requirements.

NAME OF ENLISTEE / REENLISTEE (Last, First, Middle)

SOCIAL SECURITY NO. OF ENLISTEE / REENLISTEE

Redacted PII

CLAIBORNE DAMON JAHRON

**D.** **CERTIFICATION AND ACCEPTANCE**

**13a.** My acceptance for enlistment is based on the information I have given in my application for enlistment. If any of that information is false or incorrect, this enlistment may be voided or terminated administratively by the Government or I may be tried by a Federal, civilian, or military court and, if found guilty, may be punished.

**I CERTIFY THAT I HAVE CAREFULLY READ THIS DOCUMENT. ANY QUESTIONS I HAD WERE EXPLAINED TO MY SATISFACTION. I FULLY UNDERSTAND THAT ONLY THOSE AGREEMENTS IN SECTION B OF THIS DOCUMENT OR RECORDED ON THE ATTACHED ANNEX(ES) WILL BE HONORED. ANY OTHER PROMISES OR GUARANTEES MADE TO ME BY ANYONE ARE WRITTEN BELOW:** (If none, X "NONE" and initial.)      ☒ **NONE** (Initials of enlistee / reenlistee).

| b. SIGNATURE OF ENLISTEE / REENLISTEE | c. DATE SIGNED (YYMMDD) |
|---|---|
| | 89 FEB 21 |

**14a.** On behalf of the United States (list branch of service) **ARMY**
I accept this applicant for enlistment. I have witnessed the signature in item 13b to this document. I certify that I have explained that only those agreements in Section B of this form and in the attached Annex(es) will be honored, and any other promises made by any person are not effective and will not be honored.

SERVICE REPRESENTATIVE INFORMATION

| b. NAME (Last, First, Middle) | c. PAY GRADE | d. UNIT / COMMAND NAME |
|---|---|---|
| OZIER GABRIEL | E- 7 | RECRUITING BN LOS ANGELES |
| e. SIGNATURE | f. DATE SIGNED (YYMMDD) | g. UNIT / COMMAND ADDRESS (City, State, ZIP Code) |
| | 89 FEB 21 | LOS ANGELES CA 90016 |

**E.** **CONFIRMATION OF ENLISTMENT OR REENLISTMENT**

**15. IN THE ARMED FORCES EXCEPT THE NATIONAL GUARD (ARMY OR AIR):**
I, **DAMON JAHRON CLAIBORNE**_____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God.

**16. IN THE NATIONAL GUARD (ARMY OR AIR):**
I,_____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the State of _____ against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the Governor of _____ and the orders of the officers appointed over me, according to law and regulations. So help me God.

**17. IN THE NATIONAL GUARD (ARMY OR AIR):**
I do hereby acknowledge to have voluntarily enlisted / reenlisted this _____ day of _____
19_____ in the _____ National Guard and as a Reserve of the United States (list branch of service) _____ with membership in the _____ National Guard of the United States for a period of _____ years, _____ months, _____ days, under the conditions prescribed by law, unless sooner discharged by proper authority.

| 18a. SIGNATURE OF ENLISTEE / REENLISTEE | b. DATE SIGNED (YYMMDD) |
|---|---|
| X | 89 FEB 21 |

**19a.** The above oath was administered, subscribed, and duly sworn to (or affirmed) before me this date.

ENLISTMENT / REENLISTMENT OFFICER INFORMATION

| b. NAME (Last, First, Middle) | c. PAY GRADE | d. UNIT / COMMAND NAME |
|---|---|---|
| BUTTS JOHN D | O-3 | LOS ANGELES MEPS |
| e. SIGNATURE | f. DATE SIGNED (YYMMDD) | g. UNIT / COMMAND ADDRESS (City, State, ZIP Code) |
| | 89 FEB 21 | LOS ANGELES CA 90016 |

DD Form 4/2, MAY 85        Previous editions are obsolete

AG

| NAME OF ENLISTEE / REENLISTEE (Last, First, Middle) | SOCIAL SECURITY NO. OF ENLISTEE / REENLISTEE |
|---|---|
| CLAIBORNE DAMON JAHRON | Redacted PII |

**F.** DISCHARGE FROM DELAYED ENTRY / ENLISTMENT PROGRAM

20a. I request to be discharged from the Delayed Entry/Enlistment Program (DEP) and enlisted in the Regular

Component of the United States *(list branch of service)* _____ARMY_____ for a period of

___3_____ years and _____ weeks. No changes have been made to my enlistment options OR

if changes were made they are recorded on Annex(es) _____C_____

_____which replace(s) Annex(es) _____A_____

| b. SIGNATURE OF DELAYED ENTRY / ENLISTMENT PROGRAM ENLISTEE | c. DATE SIGNED (YYMMDD) |
|---|---|
| *Damon Jahron Claiborne* | 89 JUL 20 |

**G.** APPROVAL AND ACCEPTANCE BY SERVICE REPRESENTATIVE

21a. This enlistee is discharged from the Reserve Component shown in item 8 and is accepted for enlistment in the

Regular Component of the United States *(list branch of service)* _____ARMY_____ in pay grade ___E-1___.

SERVICE REPRESENTATIVE INFORMATION

| b. NAME (Last, First, Middle) | c. PAY GRADE | d. UNIT / COMMAND NAME |
|---|---|---|
| JONES KENNETH E | E-8 | LOS ANGELES RECRUITING BN |
| e. SIGNATURE | f. DATE SIGNED (YYMMDD) | g. UNIT / COMMAND ADDRESS (City, State, ZIP Code) |
| | 89 JUL 20 | LOS ANGELES CA 90016 |

**H.** CONFIRMATION OF ENLISTMENT OR REENLISTMENT

22a. IN A REGULAR COMPONENT OF THE ARMED FORCES:

I, ____DAMON JAHRON CLAIBORNE_____ do solemnly swear (or affirm) that I will support and

defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and

allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the

officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God.

| b. SIGNATURE OF ENLISTEE / REENLISTEE | c. DATE SIGNED (YYMMDD) |
|---|---|
| *Damon Jahron Claiborne* | 89 JUL 20 |

23a. The above oath was administered, subscribed, and duly sworn to (or affirmed) before me this date.

ENLISTMENT OFFICER INFORMATION

| b. NAME (Last, First, Middle) | c. PAY GRADE | d. UNIT / COMMAND NAME |
|---|---|---|
| ROLLINS THOMAS L | O-4 | LOS ANGELES MEPS |
| e. SIGNATURE | f. DATE SIGNED (YYMMDD) | g. UNIT / COMMAND ADDRESS (City, State, ZIP Code) |
| | 89 JUL 20 | LOS ANGELES CA 90016 |

DD Form 4/3, MAY 85                    Previous editions are obsolete.

# RECORD OF MILITARY PROCESSING - ARMED FORCES OF THE UNITED STATES

Before completing this form, read Privacy Act Statement, Warning, and Instructions on reverse.

Form Approved
OMB No. 0704-0173
Exp. Date: Jun. 30, 1988

| A. SERVICE PROCESSING FOR | B. STATUS (X one) | C. SELECTIVE SERVICE CLASSIFICATION | D. SELECTIVE SERVICE REGISTRATION NO |
|---|---|---|---|
| DAR | ☒ NPS ☐ PS | NONE | NONE |

## SECTION I - PERSONAL DATA

| 1. SOCIAL SECURITY NUMBER | 2. NAME (Last, First, Middle Name & Maiden, if any), Jr., Sr., etc.) | 3. ALIASES |
|---|---|---|
| Redacted PII | CLAIBORNE DAMON JAHRON | DAMON J. CLAIBORNE |

| 4. CURRENT ADDRESS (Street, City, County, State, ZIP Code) | 5. HOME OF RECORD ADDRESS (Street, City, County, State, ZIP Code) |
|---|---|
| Redacted PII | Redacted PII |

**6. CITIZENSHIP (X one)**
- ☒ a. U.S. AT BIRTH (If this box is marked, also x (1) or (2))
  - ☒ (1) NATIVE BORN
  - ☐ (2) BORN ABROAD OF U.S. PARENT(S)
- ☐ b. U.S. NATURALIZED
- ☐ c. U.S. DERIVED THROUGH NATURALIZATION OF PARENT(S)
- ☐ d. U.S. NON-CITIZEN NATIONAL
- ☐ e. IMMIGRANT ALIEN (Specify)
- ☐ f. NON-IMMIGRANT FOREIGN NATIONAL (Specify)

**7. SEX**
- ☒ a. MALE
- ☐ b. FEMALE

**9. ETHNIC GROUP (Specify)** NONE

**10. MARITAL STATUS (Specify)** SINGLE

**8. POPULATION GROUP**
- ☐ a. WHITE
- ☒ b. BLACK
- ☐ c. ASIAN
- ☐ d. AMERICAN INDIAN
- ☐ e. OTHER (Specify)

**11. NUMBER OF DEPENDENTS** 0

| 12. DATE OF BIRTH (YYMMDD) | 13. RELIGIOUS PREFERENCE (Optional) | 14. EDUCATION (Highest Grade Completed) | 15. PROFICIENT IN FOREIGN LANGUAGE (Yes or No) (If yes, specify language) |
|---|---|---|---|
| Redacted PII | Baptist | 12 | NONE |

| 16. VALID DRIVER'S LICENSE (Yes or No) (If yes, list state, number, and expiration date) | 17. PLACE OF BIRTH (City, State and Country) |
|---|---|
| NONE | Redacted PII |

## SECTION II - EXAMINATION AND ENTRANCE DATA PROCESSING CODES
FOR OFFICE USE ONLY - DO NOT WRITE IN THIS SECTION - GO ON TO PAGE 2, QUESTION 23

### 18. APTITUDE TEST RESULTS

| a. TEST ID | b. TEST SCORES | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | GS | AR | WK | PC | NO | CS | AS | MK | MC | EI | VE |
| 14A | 130 | 99 | 1.0 | 2 | 13 | 4 | 4 | 00 | 8 | 10 | 39 |

| c. AFQT PERCENTILE | GI | NO | AD | WK | AR | SP | MK | EI | MC | GS | SI | AI |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 34 | | | | | | | | | | | | |

### 19. DEP ENLISTMENT DATA

| a. DATE OF DEP ENLISTMENT (YYMMDD) | b. PROJ ACTIVE DUTY DATE (YYMMDD) | c. ES | d. RECRUITER IDENTIFICATION | e. PROGRAM ENLISTED FOR | f. T-E MOS/AFS |
|---|---|---|---|---|---|
| 89.02.21 | 89.07.20 | 3 | Redacted PII | 04 IOC 88 | H10 |

### 20. ACCESSION DATA

| a. ENLISTMENT DATE (YYMMDD) | b. ACTIVE DUTY SERVICE DATE (YYMMDD) | c. PAY ENTRY DATE (YYMMDD) | d. TOE | e. WAIVER | f. PAY GRADE | g. DATE OF GRADE (YYMMDD) | h. ES | i. HIGHEST ED GR COMP |
|---|---|---|---|---|---|---|---|---|
| 89.07.20 | 89.07.20 | 89.07.20 | 3 | YYYE0 | E1 | 89.07.20 | | 12 |

| j. RECRUITER IDENTIFICATION | k. PROGRAM ENLISTED FOR | l. T-E MOS/AFS | m. PMOS/AFS | n. YOUTH | o. OA | p. TRANSFER TO |
|---|---|---|---|---|---|---|
| Redacted PII | 04 TOC | 88 H 10 | 88 H 00 | YY 0 | WY | FID 1XX |

### 21. SERVICE REQUIRED CODES

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 0 | 1 | A | E | P | V | 1 | 1 | 0 | 0 | 0 | 0 | 8 | 9 | 0 |
| 9 | 0 | 0 | 8 | 4 | 0 | 8 | 8 | 0 | 8 | 5 | 0 | 8 | 7 | 0 | 7 | 9 | 0 |
| 7 | 7 | 0 | 8 | 8 | 0 | 8 | 7 | A | A | C | 0 | 6 | F | 7 | 0 | N | 0 |
| | | | | | 0 | 0 | 0 | H | F | 0 | 6 | 0 | 0 | 0 | A | |

DD Form 1966/1, AUG 85          Previous editions are obsolete.          PAGE 1.

| NAME | SOCIAL SECURITY NUMBER |
|------|------------------------|
| CLAIBORNE DAMON J. | Redacted PII |

## SECTION III - OTHER PERSONAL DATA

**23. CITIZENSHIP** (You must provide your recruiter with the necessary documents to confirm your answers.)

| a. BIRTH CERTIFICATE | | | b. NATIVE COUNTRY |
|---|---|---|---|
| (1) FILE NUMBER NO FILE NUMBER | (2) ISSUING COUNTY Redacted PII | (3) ISSUING STATE Redacted PII | U.S. |

| c. IF ALIEN, GIVE ALIEN REGISTRATION NUMBER AND LAST ADDRESS FURNISHED TO IMMIGRATION AND NATURALIZATION SERVICE (INS) | d. DATE/PORT OF ENTRY INTO THE U.S. (If applicable) |
|---|---|
| N/A | N/A |

**24. EDUCATION** (List all high schools and colleges attended. If none attended, show last school attended.)

| a. FROM (YYMM) | b. TO (YYMM) | c. NAME OF SCHOOL | d. LOCATION | e. GRADUATE YES | NO |
|---|---|---|---|---|---|
| 8801 | Present | Manual Arts H.S. | 4131 S. Vermont Ave Los Angeles CA 90037 | | X |
| 8709 | 8801 | San Pedro H.S. | 1001 W. 15th St San Pedro CA 90731 | | X |
| 8609 | 8706 | Carson H.S. | 22th S. Main St Carson CA 90745 | | X |

**25. RESIDENCES** (List all for the last five years or since 13th birthday, whichever is shorter.)

| a. FROM (YYMM) | b. TO (YYMM) | c. STREET ADDRESS | d. CITY | e. STATE | f. ZIP CODE |
|---|---|---|---|---|---|
| 8712 | PRESENT | Redacted PII | | | |
| 8509 | 8712 | | | | |
| 8111 | 8509 | | | | |
| Birth | 8111 | | | | |

**26. EMPLOYMENT** (Show all periods of employment and unemployment during the last five years.)

| a. FROM (YYMM) | b. TO (YYMM) | c. NAME OF EMPLOYER | d. ADDRESS (Include Zip Code) | e. NAME OF IMMEDIATE SUPERVISOR | f. JOB TITLE |
|---|---|---|---|---|---|
| 8812 | PRESENT | Cal P&Q Security Co | 3375 S. Hoover Ave Los Angeles CA 90019 | Mr. Joe Castro | Security Guard |
| Birth | 8812 | Student / unemployed | | | |
| | | | | | |

**27. RELATIVES**

| a. NAME (Last, First, Middle Initial) | b. DEPN YES | NO | c. DATE OF BIRTH (YYMMDD) | d. PLACE OF BIRTH | e. PRESENT ADDRESS | f. CITIZENSHIP |
|---|---|---|---|---|---|---|
| Redacted PII | | | | | | |

| SPOUSE (Maiden Name, if applicable) |
|---|
| N/A |

| CHILDREN |
|---|
| NONE |

DD Form 1966/2, AUG 85    Previous editions are obsolete.    PAGE 2

000547

| NAME | | SOCIAL SECURITY NUMBER | | |
|------|--|--|--|--|
| CLAIBORNE DAMON J | | Redacted PII | | |

| | | YES | NO |
|--|--|--|--|
| **28.** Are you now or have you ever been in any regular or reserve branch of the Armed Forces or in the Army National Guard or the Air National Guard? *(Give your recruiter the appropriate DD Form 214 and/or DD Form 215 or NGB Form 22 for review.)* | | | D.C |
| **29.** Are you now or have you ever been divorced or legally separated? If "YES," enter in Item 39, "REMARKS," the date, place and court which granted divorce or legal separation. | | | D.C |
| **30.** Is any court order or judgment in effect that directs you to provide support for children or alimony? If "YES," enter in Item 39, "REMARKS," the date, place, and court which granted alimony or support, including orders resulting from paternity suits. | | | D.C |
| **31.** Have you ever been arrested, apprehended, charged, cited or held by Federal, State, military or other law enforcement or juvenile authorities, regardless of whether the citation was dropped or dismissed or you were found not guilty? Include all courts-martial or non-judicial punishment while in military service. If "YES," enter details in Item 35. | | | D.C |
| **32.** As a result of being arrested, apprehended, charged, cited or held by Federal, State, military or other law enforcement or juvenile authorities, have you ever been convicted, fined by or forfeited bond to a Federal, State or other judicial authority or adjudicated a youthful offender or juvenile delinquent (regardless of whether the record in your case has been "sealed" or otherwise stricken from the court record); or have you been released from parole, probation, juvenile supervision or given a suspended sentence or relieved of charges pending on condition that you apply for or enlist in the United States Armed Forces? If "YES," enter details in Item 35. | | | D.C |
| **33.** Have you ever been detained, held in, or served time in any jail or prison, reform or industrial school, or a juvenile facility or institution under the jurisdiction of any city, state, Federal, or foreign country? If "YES," enter details in Item 35. | | | D.C |
| **34.** Have you ever been a ward, or are you now under suspended sentence, parole, or probation or awaiting any action on criminal/civil charges against you? If "YES," enter details in Item 35. | | | D.C |

**35. LAW VIOLATIONS.** Explain below "YES" answers given in Items 31 through 34 above. (Include all incidents with law enforcement authorities even if the citation or charge was dropped or dismissed or you were found not guilty or you have been told by recruiting personnel or anyone else that the incident was not important enough to list.)

| a. DATE (YYMMDD) | b. NATURE OF OFFENSE OR VIOLATION | c. PLACE OF OFFENSE | d. NAME AND LOCATION OF COURT | e. PENALTY IMPOSED OR OTHER DISPOSITION IN EACH CASE |
|--|--|--|--|--|
| | NONE | | | |
| | | | | |
| | | | | |
| | | | | |

**36. CHARACTER AND SOCIAL ADJUSTMENT:** If your answer to every question is truthfully "NO," indicate so in the appropriate space. If your answer is "YES," indicate so in the appropriate space and give details in Item 39, "REMARKS." A "YES" answer will not necessarily disqualify you for enlistment; it will depend on the circumstances surrounding the situation.

| | | YES | NO |
|--|--|--|--|
| a. Questions (1), (2), and (3) below concern possession, supply, ~~OF MARIJUANA OR POSSESSION, SUPPLY~~ use without a prescription of marijuana, narcotics, LSD or other dangerous drugs. A "Yes" answer to (3) has no bearing on your eligibility to enlist or be commissioned but is essential to accurate job classification. Additional screening will occur during basic training or officer training school. | | | |
| (1) Have you ever used narcotics, LSD or other dangerous drugs? | | | D.C |
| (2) Have you ever been a supplier of narcotics, LSD or other dangerous drugs or marijuana? | | | D.C |
| ~~(3) Have you used marijuana at any time in the past six months?~~ | | | |
| b. Has your use of drugs or alcoholic beverages (such as liquor, beer, wine), ever resulted in your loss of a job, arrest by police, or treatment of alcoholism? *Fal or Drug Abuse or Suspension or Expulsion From School?* | | | D.C |
| c. Are you a homosexual or a bisexual? ("Homosexual" is defined as: sexual desire or behavior directed at a person(s) of one's own sex. "Bisexual" is defined as: a person sexually responsive to both sexes.) | | | D.C |
| d. Do you intend to engage in homosexual acts (sexual relations with another person of the same sex)? | | | D.C |
| e. Are you a conscientious objector? That is, do you have, or have you ever had, a firm, fixed, and sincere objection to participation in war in any form or the bearing of arms because of religious training or belief? | | | D.C |
| f. Have you ever been rejected for enlistment, reenlistment, or induction by any branch of the Armed Forces of the United States? | | | D.C |
| g. Are you now, or have you ever been, a deserter from any branch of the Armed Forces of the United States? | | | D.C |
| h. Are you now, or have you ever been, a member of the Communist Party or any Communist organization? Are you now, or have you ever been, affiliated with any organization, association, movement, group, or combination of persons which advocates the overthrow of our constitutional form of government or which has adopted the policy of advocating the commission of acts of violence to deny other persons their rights under the Constitution of the United States or which seeks to alter the form of government of the United States by unconstitutional means? *(If "YES," give details in Item 39, "REMARKS.")* | | | D.C |

**DD Form 1966/3, AUG 85**          *Previous editions are obsolete.*          PAGE 3

000548

NAME: CLAIBORNE DAMON J.

SOCIAL SECURITY NUMBER

Redacted PII

**37. OTHER BACKGROUND DATA**

| | | YES | NO |
|---|---|---|---|
| a. | Have you ever traveled to, or resided in, a foreign country except as a member of the United States Armed Forces (including dependent travel) performing official duties? (If "YES," give details in Item 39, "REMARKS.") | | D.C |
| b. | Are you the only living child of your parents? | | D.C |
| c. | Are you now drawing, or do you have an application pending, or approval for: retired pay, disability allowance, severance pay, or a pension from the government of the United States? | | D.C |
| d. | Have you been enrolled in ROTC, Junior ROTC, Sea Cadet Program, or have you been a member of the Civil Air Patrol? (If "YES," enter organization and its address in Item 39, "REMARKS.") | | D.C |

**38. UNDERSTANDING**

b. APPLICANT'S INITIALS

a. I understand that an original enlistment obligates me to serve in the Armed Forces for a period of eight (8) years (active and inactive duty) unless sooner discharged.

*DC*

## SECTION IV - REMARKS

**39. REMARKS** (Enter Item(s) being continued.)

HRAP CODE Ø: NOT RECOMMENDED

I understand that the Army's commitment to me in the DEP) is contingent upon my entering and completing my senior year of High School.

CCN 99061995

Appl visited Mexico 1 Day Trip approx 1979

ENTNAC RTN 890307

DD Form 1966/4, AUG 85          Previous editions are obsolete.          PAGE 4

000549

| NAME | SOCIAL SECURITY NUMBER |
|---|---|
| CLAIBORNE Damon J | Redacted PII |

## SECTION V - CERTIFICATION

**40. CERTIFICATION OF APPLICANT** *(Your signature in this block must be witnessed by your recruiter.)*

a. I certify that the information given by me in this document is true, complete, and correct to the best of my knowledge and belief. I understand that I am being accepted for enlistment based on the information provided by me in this document; that if any of the information is knowingly false or incorrect, I could be tried in a civilian or military court and could receive a less than honorable discharge which could affect my future employment opportunities.

| b. TYPED OR PRINTED NAME (Last, First, Middle Initial) | c. SIGNATURE | d. DATE SIGNED (YYMMDD) |
|---|---|---|
| CLAIBORNE, Damon JAKRON | Damon Jakron Claiborne | 89 02 15 |

**41. DATA VERIFICATION BY RECRUITER** *(Enter description of the actual documents used to verify the following items.)*

| a. NAME (X one) | b. AGE (X one) | c. CITIZENSHIP (X one) |
|---|---|---|
| X (1) BIRTH CERTIFICATE | X (1) BIRTH CERTIFICATE | X (1) BIRTH CERTIFICATE |
| (2) OTHER (Explain) | (2) OTHER (Explain) | (2) OTHER (Explain) |

| d. SOCIAL SECURITY NUMBER (X one) | e. EDUCATION (X one) | f. OTHER DOCUMENTS USED |
|---|---|---|
| X (1) SSN CARD | (1) DIPLOMA | |
| (2) OTHER (Explain) | (2) OTHER (Explain) H.S. Transcript | |

**42. CERTIFICATION OF WITNESS**

a. I certify that I have witnessed the applicant's signature above and that I have verified the data in the documents required as prescribed by my directives. I further certify that I have not made any promises or guarantees other than those listed and signed by me. I understand my liability to trial by courts-martial under the Uniform Code of Military Justice should I effect or cause to be effected the enlistment of anyone known by me to be ineligible for enlistment.

| b. TYPED OR PRINTED NAME (Last, First, Middle Initial) | c. PAY GRADE | d. RECRUITER: I.D. | e. SIGNATURE | f. DATE SIGNED (YYMMDD) |
|---|---|---|---|---|
| LEON, Nigel L | E-6 / SSC | Redacted PII | Nigel L. Leon | 89 02 15 |

**43. SPECIFIC OPTION/PROGRAM ENLISTED FOR, MILITARY SKILL, OR ASSIGNMENT TO A GEOGRAPHICAL AREA GUARANTEES**

a. SPECIFIC OPTION/PROGRAM ENLISTED FOR *(Completed by Guidance Counselor, MEPS Liason NCO, etc., as specified by sponsoring service - use clear text English.)* IAW AR 601-210 Table 4-1 OPTION 4-S US Army Training of Choice

b. I fully understand that I will not be guaranteed any specific military skill or assignment to a geographic area except as shown in Item 43.a. above and annexes attached to my Enlistment/Reenlistment Document (DD Form 4).

APPLICANT'S INITIALS: DC

**44. CERTIFICATION OF RECRUITER OR ACCEPTOR**

a. I certify that I have reviewed all information contained in this document and, to the best of my judgment and belief, the applicant fulfills all legal policy requirements for enlistment. I accept him/her for enlistment on behalf of the United States *(Enter Branch of Service)* Army, and certify that I have not made any promises or guarantees other than those listed in Item 43 above. I further certify that service regulations governing such enlistments have been strictly complied with and any waivers required to effect applicant's enlistment have been secured and are attached to this document.

| b. TYPED OR PRINTED NAME (Last, First, Middle Initial) | c. PAY GRADE | d. RECRUITER I.D. OR ORGANIZATION | e. SIGNATURE | f. DATE SIGNED (YYMMDD) |
|---|---|---|---|---|
| Howard Gilbert | E7 | Redacted PII | G.T. Reed | 84 07 31 |

## SECTION VI - RECERTIFICATION

**45. RECERTIFICATION BY APPLICANT AND CORRECTION OF DATA AT THE TIME OF ACTIVE DUTY ENTRY**

a. I have reviewed all information contained in this document this date. That information is still correct and true to the best of my knowledge and belief. If changes were required, the original entry has been marked "See Item 45" and the correct information is provided below.

| b. ITEM NUMBER | c. CHANGE REQUIRED |
|---|---|
| 14 | 12L |
| | |
| | |

| d. WITNESS | | e. APPLICANT | |
|---|---|---|---|
| (1) TYPED OR PRINTED NAME Bancomo Yolanda M | (2) PAY GRADE E7 | (1) SIGNATURE | (2) DATE SIGNED (YYMMDD) 87 07 20 |
| (3) SIGNATURE | | | |

**DD Form 1966/5, AUG 85**          *Previous editions are obsolete.*                    **PAGE 5**

| NAME | SOCIAL SECURITY NUMBER |
|---|---|

**NOTE**

USE THIS DO FORM 1966 PAGE ONLY IF EITHER SECTION APPLIES TO THE APPLICANT'S RECORD OF MILITARY PROCESSING.

## SECTION VII - PARENTAL / GUARDIAN CONSENT FOR ENLISTMENT

**46. PARENT / GUARDIAN STATEMENT(S)** (Line out portions not applicable)

a. I/we certify that (Enter name of applicant)
_Claiborne, Damon Jahron_
has no other legal guardian other than me/us and I/we consent to his/her enlistment in the United States
(Enter Branch of Service) _Army_

I/we certify that no promises of any kind have been made to me/us concerning assignment to duty, training, or promotion during his/her enlistment as an inducement to me/us to sign this consent. I/we hereby authorize the Armed Forces representatives concerned to perform medical examinations, other examinations required, and to conduct records checks to determine his/her eligibility. I/we relinquish all claim to his/her service and to any wage or compensation for such service.

b. FOR ENLISTMENT IN A RESERVE COMPONENT.

I/we understand that, as a member of a reserve component, he/she must serve minimum periods of active duty for training unless excused by competent authority. In the event he/she fails to fulfill the obligations of his/her reserve enlistment, he/she may be recalled to active duty as prescribed by law. I/we further understand that while he/she is in the ready reserve, he/she may be ordered to extended active duty in time of war or national emergency declared by the Congress or the President or when otherwise authorized by law.

c. PARENT

| (1) TYPED OR PRINTED NAME (Last, First, Middle Initial) | (2) SIGNATURE | (3) DATE SIGNED (YYMMDD) |
|---|---|---|
| Claiborne, David Nolan | David N. Claibo~ | 890215 |

d. WITNESS

| (1) TYPED OR PRINTED NAME (Last, First, Middle Initial) | (2) SIGNATURE | (3) DATE SIGNED (YYMMDD) |
|---|---|---|
| Leon, Angel L | Angel L. ~ | 890215 |

e. PARENT

| (1) TYPED OR PRINTED NAME (Last, First, Middle Initial) | (2) SIGNATURE | (3) DATE SIGNED (YYMMDD) |
|---|---|---|
| Robinson Gloria Annette | Gloria Annette Robinson | 890215 |

f. WITNESS

| (1) TYPED OR PRINTED NAME (Last, First, Middle Initial) | (2) SIGNATURE | (3) DATE SIGNED (YYMMDD) |
|---|---|---|
| Leon, Angel L. | Angel L. ~ | 890215 |

**47. VERIFICATION OF SINGLE SIGNATURE CONSENT**

## SECTION VIII - STATEMENT OF NAME FOR OFFICIAL MILITARY RECORDS

**48. NAME CHANGE.** If the preferred enlistment name (name given in Item 2) is not the same as on your birth certificate, and it has not been changed by legal procedure prescribed by state law, and it is the same as on your social security number card, complete the following:

| a. NAME AS SHOWN ON BIRTH CERTIFICATE | b. NAME AS SHOWN ON SOCIAL SECURITY NUMBER CARD |
|---|---|
| | |

c. I hereby state that I have not changed my name through any court or other legal procedure; that I prefer to use the name of _____ by which I am known in the community as a matter of convenience and with no criminal intent. I further state that I am the same person as the person whose name is shown in Item 2.

| d. WITNESS | | e. APPLICANT | |
|---|---|---|---|
| (1) TYPED OR PRINTED NAME | (2) PAY GRADE | (1) SIGNATURE | (2) DATE SIGNED (YYMMDD) |
| (3) SIGNATURE | | | |

DD Form 1966/6, AUG 85        Previous editions are obsolete.        PAGE 6

**STATEMENT FOR ENLISTMENT**
**UNITED STATES ARMY ENLISTMENT OPTION**
**US ARMY DELAYED ENLISTMENT PROGRAM**
For use of this form, see AR 601-201; the proponent agency is the Office of the Deputy Chief of Staff for Personnel

1. ACKNOWLEDGEMENT: In connection with my enlistment into the United States Army Reserve, I hereby acknowledge that:

   a. My enlistment in the US Army Reserve obligates me to a total of 8 years service in the US Armed Forces, including service in the Reserve components, unless sooner discharged by proper authority. Fulfillment of this obligation begins on the date I enlist in the Delayed Entry Program.

   b. I will be assigned to the US Army Reserve Control Group *(Delayed Entry)*, during which time I will be in a nonpay status and will not be authorized to participate in any Reserve training.

   c. I volunteer to serve on active duty for two years in any job assignment specified by the Army, such period to begin within *149* days unless I enlist into the Regular Army, or I am granted further delay by proper authority.

   d. In lieu of performing the active duty specified in c above, I may enlist into the Regular Army for a period of _3_ Years _00_ Weeks with the following understanding:

   (1) Upon enlistment into the Regular Army, I will be enlisted under the provisions of Army Regulation 601-210, option or options as indicated below:

   — Option 9- _3_ TITLE _US Army Training of Choice_

   — Option 9- _N/A_ TITLE _____

   — Option 9- _N/A_ TITLE _____

   — Option 9- _N/A_ TITLE _____

   *(enter appropriate primary option and indicate all associated options)*

   (2) If enlisting for an Army school course I have been assured of attending the school course for MOS or CMF _88 H1_ TITLE _Cargo Specialist_
   *(enter military occupational specialty or career management field & title)*

   (3) In the event through no fault of my own that my enlistment option, school course, or training of my choice is cancelled or otherwise not available before I enlist into the Regular Army, I will elect one of the following alternatives:

   (a) I will elect another option, school course or training of my choice for which I am qualified and a vacancy exists.

   (b) I will be separated from the Delayed Entry Program.

   (4) The date of my enlistment into the Regular Army is scheduled for: _20 July_ 19_86_

   (5) In the event that I willfully fail to report for active duty on the date specified in (4) above and on my DD Form 4 enlistment contract I understand that I will be in an Absent Without Leave Status *(AWOL)* and subject to apprehension in accordance with article 86 and if appropriate article 85 *(deserter)* of the Uniform Code of Military Justice.

   (6) I further certify that I am currently enrolled as a senior in high school and I understand that my enlistment into the Delayed Entry Program is contingent upon my successful completion of high school. _____
   *(Initials)*

   (7) I understand that the course I have selected requires me to present proof in the form of a transcript or letter from school officials stating I have successfully completed a course or courses of instruction in

   _____
   *(enter Subject(s), i.e., Math, Science, etc.)*

   (8) I certify that I have read or have viewed the Job Description for the MOS I am enlisting for and further acknowledge that I understand the general nature of the training I will receive. _D.C._
   *(Initials)*

DA FORM 3286-59/1, MAY 86

ANNEX _____

STATEMENT FOR ENLISTMENT -- CONTINUED

(9)  I also acknowledge that if I am qualified and I am enlisting for an MOS or CMF that has a Cash Bonus, that the bonus amount authorized on my enlistment into the Regular Army will be the amount authorized upon my entry into the Delayed Entry Program. Further I understand that the Bonus for my CMF/MOS on this date is $ *none* *D.C.* _____ (Note: If
                                                                                            (Amount/Initials)

enlisting for an MOS which has a Cash Bonus and applicant declined such bonus the word "Declined" is entered in the Amount Block. If no bonus authorized enter "NONE"). If the word declined is entered above I hereby state I was offered an enlistment option for a bonus and declined such option.

(10)  If I have enlisted for guaranteed 1st assignment of Europe, I understand that should I acquire a dependent prior to my active duty date, I will no longer be qualified for a guaranteed assignment to Europe. *(This does not preclude assignment to Europe at the discretion of the Army)*

(11)  I certify I have provided my recruiter and counselor all information required on my application for enlistment, further, I have not concealed any medical information and I further state that no person has advised me to conceal any information with respect to my enlistment.

2.  UNDERSTANDING:  I understand that in the event the Secretary of the Army determines that military necessity of a national scope requires that service members be available for immediate assignment/reassignment, any guarantees contained in this agreement may be terminated. Under these conditions I may be assigned or reassigned according to the needs of the Army.

I have read and understand each of the statements above and in the DD Form 1966 series, signed by me, and understand that these statements are intended to constitute all promises whatsoever concerning my enlistment. Any other promise or representation of commitments made to me in connection with my enlistment is written below in my own handwriting, or is hereby waived *(if none, write "NONE"). money D.C.*

Contract Control Number GCN: 990611995

| AUTHENTICATION | | |
|---|---|---|
| SIGNATURE OF GUIDANCE COUNSELOR *(Witness)* | SIGNATURE OF APPLICANT | DATE 21 FEB 89 |
| TYPED NAME, GRADE AND SSN OF COUNSELOR Venaud Gileen E7  Redacted PII | TYPED NAME, SSN OF APPLICANT Claiborne Damen  Redacted PII | DATE 890221 |

DA FORM 3286-59/2, MAY 86

STATEMENT FOR ENLISTMENT
US ARMY ENLISTMENT OPTIONS
For use of this form, see AR 601-210; the proponent agency is the Office of the Deputy Chief of Staff for Personnel

1. Acknowledgement in connection with my enlistment into the Regular Army for the enlistment options indicated I hereby acknowledge

   a. I am enlisting for an option which guarantees school training I am assured of training in Military Occupational Specialty (MQS) __88H 10___ __CARGO SPECIALIST___
   *(enter MOS and title)*
   provided I am qualified.

   b. If the enlistment option I have chosen authorized a first assignment I am enlisting for _____ __NO 1ST ASSIGNMENT___
   *(enter unit, station, command or location, if no assignment enter NO 1st ASG)*

   c. If the unit, command, activity or installation indicated in 1b above is located in the Continental United States (except COHORT units) I am guaranteed a minimum assignment of 12 months. If the unit, command, activity or installation is in an overseas location. I understand the normal tour of duty in ___NA___ is currently ___NA___.
   Additionally, I understand the normal tour length may be shorter or longer, or I may be reassigned to meet the needs of the Army (Does not apply to COHORT units which have extensions requirements)

      (1) I understand that I may receive an initial assignment, at an interim location, to a unit that is undergoing training. That unit will be deployed to my unit or station of choice on successful completion of unit training. The stabilization period guaranteed by the option will begin when I arrive at the unit or station I have chosen.

      (2) I may be subject to periods of temporary duty assignment on an individual basis away from the activity, unit, or sub ordinate element of the unit for which enlisting. Such periods of temporary duty will not count against the guaranteed period of stabilization indicated above.

      (3) In the event the unit or activity to which I am assigned or attached under the provisions of this option is deployed, relocated, reorganized or redesigned prior to the expiration of the guaranteed minimum period of assignment to the unit, activity or installation of choice I will remain assigned to the unit or activity. If the unit or activity is inactivated, disbanded, or discontinued, I will be reassigned in accordance with the needs of the Army and established assignment period.

   d. My term of enlistment into the Regular Army is for ___3___ YEARS AND ___00___ WEEKS

2. I further acknowledge that I am enlisting for the following enlistment option(s)

   (a) OPTION 9- __3__ __US ARMY TRAINING OF CHOICE___ (AR 601-210)
   (b) OPTION 9- __NA__ (AR 601-210)
   (c) OPTION 9- __NA__ (AR 601-210)
   (d) OPTION 9- __NA__ (AR 601-210)
   *(Enter the specific option(s) and enter N/A for lines not used)*

      (1) I have read and understood the terms and conditions for each option I have enlisted for. I further state that I have read or viewed the description of duties for the Military Occupational Specialty I am enlisting for.

      (2) A description of my enlistment option and the terms and conditions which apply to my enlistment follow. I will read and acknowledge by placing my initials in the appropriate space provided, indicating I fully understand my option. My guidance counselor has indicated the appropriate option for which I am enlisting and that no other option(s) other than those I have enlisted for apply.

   ☒ 9-3 US Army Training of Choice Enlistment Option: __D.C.X__
   *(Initials)*

   Upon successful completion of the training specified in 1a above, I will be assigned in accordance with the needs of the Army, and no promise has been made to me concerning the specific job or station to which I will be assigned

   ☐ 9-4 US Army Airborne Enlistment Option: _____
   *(Initials)*

      (1) I am volunteering to perform frequent aircraft flights and parachute jumps and to participate in realistic combat training while receiving airborne training or performing airborne duty.

DA FORM 3286-60/1, MAY 86

STATEMENT FOR ENLISTMENT US ARMY ENLISTMENT OPTIONS — CONTINUED

☐ Option 9-28 US Army College Fund. _____
(Initials)

(1)  I understand that I am automatically enrolled in the GI Bill and I am enlisting for the US Army College Fund.

(2)  In connection with my enlistment I will be awarded the amounts indicated below as they apply to my term of enlistment.

    0    2 Year/Award up to $6,000
    0    2 Year w/Associate Degree/Award up to $12,000
    0    3 Year/Award up to $12,000
    0    4 Year/Award up to $14,400

(3)  If I disenroll at the reception station I will not be allowed to enroll at a later date or receive the Army College Fund.

(4)  I must remain enrolled in the GI Bill which requires a deduction from my pay, I also acknowledge that this contribution is non-refundable.

(5)  I will forfeit my entitlement to this option if:  Any of the following apply:

(a)  I disenroll from the GI Bill

(b)  I fail to obtain the MOS for which I enlisted, to include academic failure  *(Unless trained in another MOS authorized the award)*

(c)  I fail to meet any enlistment prerequisite for this or any other option I enlisted for.

(d)  I fail to remain qualified in my awarded MOS for the duration of my initial period of enlistment.  *(Unless otherwise directed by HQDA)*

(e)  I fail to complete my initial term of enlistment, unless separation or discharge was connected with disability, hardship or convenience of the Government.  If discharge was for convenience of the Government, the following minimum time must have been served in order to receive any award:

    (1)  Two year enlistees — 20 months
    (2)  All other — 30 months

3.  ACKNOWLEDGMENTS:  *(Applicable to all enlistees regardless of option) (this applies to all enlistment option)*

a.  If my enlistment contract can't be fulfilled through no fault of my own, the alternatives available to me will be as provided in chapter 7, AR 635-200.  I understand that I will have a period of thirty days from the time I am notified, become aware, or reasonably should have become aware that my selected option cannot be fulfilled, to elect an alternative option for which there is an opening and for which I am qualified, or to request separation.  This period may be extended by the general courts martial convening authority when necessary to determine the availability of my selected alternative.  If I make no election within this period, my claim will be deemed to have been waived.  I may withdraw my request for training or reassignment prior to approval and elect another alternative, but not thereafter.

b.  If through my own fault, I fail to meet any of the established prerequisites, to include special prerequisites of the Nuclear Surety Program, or maintain my qualifications for this option, and to maintain the required physical, professional, or suitability standards, or become medically or otherwise disqualified for training or retention, I will be trained and utilized in accordance with the needs of the Army and will be required to complete the term of service for which I enlisted.

c.  If found to be unqualified for retention or service under any option for any reason because of personal conduct or withholding derogatory information which is within my knowledge and which precludes or results in loss of my access to special intelligence information, I will be advised that I am not eligible for my option, and my enlistment option will be voided.  I will be reassigned in accordance with the needs of the Army, and will be required to complete the term of service for which I enlisted.

000555

## STATEMENT FOR ENLISTMENT US ARMY ENLISTMENT OPTIONS – CONTINUED

d.   In the event the training I selected under my option is discontinued or I become medically disqualified for MOS selected, I will be provided the opportunity to select a related MOS for which qualified and for which a vacancy exists or I may request separation.

e.   In order to get the benefit of my option I must meet the following prerequisites which cannot be determined until after my enlistment.

(1)  Successfully complete any required training.

(2)  Qualify for and retain appropriate security clearance, as required for the MOS and/or unit/area of initial assignment selected.

f.   Unless I have previously completed basic training (BT) in past 5 years, I must complete BT prior to undergoing advanced individual training (AIT) or the equivalent of such training if required.

g.   I have received no assurance that all or any specific part of my enlistment will be spent in performing these duties.

h.   No guarantee is made to me beyond the term of my enlistment under the contract this form annexes.

i.   No assurance has been given that I will or will not be assigned overseas during my term of enlistment. (except Guaranteed Overseas Assignment in 1b above.)

4.   UNDERSTANDING:  I understand that in the event the Secretary of the Army determines that military necessity of a national scope requires that service members be available for immediate assignment/reassignment, any guarantees contained in this agreement may be terminated.  Under these conditions I may be assigned or reassigned according to the needs of the Army.  I have read and understand each of the statements above to include any Addendums and in the DD Form 1966 series signed by me, and understand that these statements are intended to constitute all promises whatsoever concerning my enlistment.  Any other promise or representation of commitments made to me in connection with my enlistment is written below in my own handwriting, or is hereby waived. (If none, write NONE).

x  _Tone.  D.C._

_ANNEX A Replaced By C / PAGES 2-5 NOT USED_                    _C_

### AUTHENTICATION

| TYPED NAME OF APPLICANT | SIGNATURE OF APPLICANT | DATE |
|---|---|---|
| Damon Jabian Claiborne | | 890720 |

| TYPED NAME, GRADE, AND SSN OF WITNESSING OFFICIAL | SIGNATURE OF WITNESSING OFFICIAL | DATE |
|---|---|---|
| J M Pascano   [Redacted PII] | | 890720 |

STATEMENT OF UNDERSTANDING
*(ARMY POLICY)*
For use of this form, see AR 601.210; the proponent agency is the Office of the Deputy Chief of Staff for Personnel.

1.  SURE PAY:

a.  As part of my enlistment contract, I hereby acknowledge and agree that I have the duty, as explained below, to establish and maintain an account with a United States financial institution *(such as a bank, savings and loan, or credit union)* for the direct deposit of my Army net pay and allowances.

b,  I understand that within 3 months after completion of BT/AIT, or arrival at my first duty station, whichever is later, I am required to do the following:

(1) Establish an account with a US financial institution for direct deposit of my Army net pay and allowances, and

(2) Execute the approrpiate forms at my finance office to ensure that my Army net pay and allowances are deposited directly into my account.

c.  I understand I may freely choose or change US financial institutions to satisfy this requirement.

d.  I understand that I will continue to have the duty to maintain such an account for direct deposit of my Army net pay and allowances so long as I remain on active duty, unless I receive a specific exemption from this requirement from the Army.

e.  I understand that failure to perform the duty of establishing and maintaining such an account, in the absence of a specific exemption, may subject me to administrative action and/or disciplinary action under the Uniform Code of Military Justice.

2.  ALCOHOL AND DRUG ABUSE:

a.  I understand that the Army's policy on alcohol and drug abuse is as follows:

(1) The Army must prevent alcohol and drug abuse in order to perform its mission to defend the United States, to ensure its combat readiness, and to protect the health and welfare of its soldiers.

(2) I understand that service in the United States Army places me in a position of special trust and responsibility.

(3) Any drug or alcohol abuse by members of the United States Army is against the law, violates Army standards of behavior and duty performance, and will not be tolerated.

(4) The use of narcotics, dangerous drugs, or marijuana can seriously harm my health and safety and the health and safety of other soldiers.

(5) The use of narcotics, dangerous drugs, or marijuana by soldiers can lead to criminal prosecution and/or discharge under other than honorable conditions.

(6) If I am identified for either alcohol or drug abuse, including the use or possession of marijuana, appropriate disciplinary and/or administrative action may be taken against me. This may include trial by court-martial or administrative separation from the Army.

b.  I understand that certain MOSs in the Army cannot be performed by persons who have used marijuana or other drugs. If it is established that I have used drugs or marijuana and that usage disqualifies me for the MOS for which I entered the Army or have been awarded, I may be reclassified into another MOS.

3.  RELIGIOUS PRACTICE ACCOMMODATION:

a.  I understand the following policy on accommodation of religious practices in the Army:

(1) Department of the Army policy is to accommodate religious practices when accommodation will not have an adverse impact on military readiness, unit cohesion, standards, health, safety or discipline.

STATEMENT OF UNDERSTANDING — CONTINUED

(2)  The Army places a high value on the rights of its soldiers to observe the tenets of their respective religions.

(3)  Unit commanders are authorized to initially approve or deny requests for accommodation of religious practices. Conditions of accommodation may change based on military need.

(4)  Policy guidelines are contained in AR 600-20 and AR 165-20 which my guidance counselor has available for me to read.

(5)  I understand that the Army cannot guarantee accommodation of religious practices.

b.  I further state that I have been given the opportunity to read or I have read the policy in AR 600-20 and AR 165-20.

4.  I have read the following statement(s) of understanding which apply to my enlistment.

a.  Statement of Understanding for USAR commissioned/warrant officers. I understand that I will automatically vacate my reserve commission/warrant, if I enlist in the Delayed Entry Program. _____ (Initials)

b.  Statement of Understanding for ESL enlistee. I understand that I will be required to undergo English language training at the Defense Language Institute, English Language Center, Lackland Air Force Base, Texas, and that failure to attain an ECLT score of 70 by completion of training will result in separation from the Army. _____ (Initials)

c.  Statement of Understanding for prior service enlistee. I understand that if I have enlisted for an MOS that is taught in the OSUT mode, I may be required to complete all or a portion of Basic Training, regardless of the period of my break in service. _____ (Initials)

d.  Statement of Understanding I understand that I will be given a Pre-Basic Training Physical Fitness Test during my first 3 days at the Reception Station. Should I fail to meet the minimum requirements, I will be placed in a Fitness Training Unit (FTU) for a period not to exceed 3 weeks or until I can attain the minimum physical standards to enter Basic Training. _____ (Initials)

*13 Pushups 2 Miles*

5.  Military Entrance Physical Strength Capacity Test (MEPSCAT) STATEMENT OF UNDERSTANDING: (Applicable only to applicants not meeting MEPSCAT)

a.  I understand that the physical strength demands rating was developed to keep persons from being enlisted into MOS they may have difficulty performing as a result of physical requirements. My Military Entrance Physical Strength Capacity Test (MEPSCAT) indicated that I am unable to satisfy the physical strength requirements of MOS _____

b.  Having been advised that I lack the physical strength for this MOS, I elect to be enlisted and trained in this MOS.

c.  I understand that if I cannot perform the duties prescribed for MOS _____ , which I have read or viewed, I will be trained in and reclassified to another MOS in accordance with the needs of the Army. I understand that this training/reclassification will not give me a right to an early discharge or otherwise relieve me of any obligations I have under my enlistment agreement. _____ (Initials)

d.  I also understand that if I have enlisted under option 9-17, US Army cash bonus enlistment option, I am also subject to the provisions of sub-paragraph (4) and (6) of that option and may not be paid the bonus or may be required to repay any bonus already paid or any unearned portion thereof. _____ (Initials)

6.  This statement will be completed for applicants enlisting in the Regular Army who have no spouse and have surrendered custody of dependents. (Enter NA if not applicable) *N/A*

STATEMENT OF UNDERSTANDING — CONTINUED

ACKNOWLEDGEMENT/CERTIFICATION:

"I, _____, am the parent of _____

and certify that the child(ren) has (have) been placed in the custody of the other parent or another adult by court order or as provided by state law. I further certify that this custody agreement is intended to remain in full force and effect during the term for which I am now enlisting. I understand that if I regain custody of this (these) child(ren), either by court decree, or in accordance with applicable state law, or if the child(ren) are residing with me in lieu of the legal custodian, I will be processed for involuntary separation for fraudulent entry unless I can show that the regaining custody is not contrary to the above stated intent; (e.g., death or incapacity of other parent or custodian)."

My child(ren) are in the custody of:  Name _____

Relationship _____     Address _____

Signature _____     Witness _____

"2.   I have read, acknowledge and fully understand the information above.

AUTHENTICATION

| TYPED NAME, RANK AND SSN OF GUIDANCE COUNSELOR | SIGNATURE OF GUIDANCE COUNSELOR | DATE |
|---|---|---|
| Renaud Eileen <span>Redacted PII</span> | | 890221 |
| TYPED NAME AND SSN OF APPLICANT | SIGNATURE OF APPLICANT | DATE |
| Claiborne Damon <span>Redacted PII</span> | Damon Andrew Claiborne | 890221 |

DA FORM 3286-61/3, MAY 86





# Dominguez Valley Hospital
## Compton, California

**This Certifies** that ........ Damon Jahron Claiborne ........
was born to .......... Redacted PII .......... in this Hospital
at 1:47 A. m. on .......... Redacted PII .......... the .......... Redacted PII .......... day of .......... Redacted PII ..........

**In Witness Whereof** the said Hospital has
caused this Certificate to be signed by its duly
authorized officer and its Official Seal to be
hereunto affixed.

_____ *Administrator*

_____
*Attending Physician*

# FAMILY HISTORY

Father's full name _____ Redacted PII _____

Birthplace _____ Redacted PII _____ Date Redacted PII

Mother's maiden name _____ Redacted PII _____

Birthplace _____ Redacted PII _____ Date Redacted PII

Residence at time child was born _____ Redacted PII _____

Sex of child __Male__     Weight at birth _6_ pounds _8½_ ounces.     Length _20_ inches

Baby's left footprint                                     Baby's right footprint

Mother's left thumbprint                                  Mother's right thumbprint

This Document should be carefully preserved  It is your family's heirloom record of the facts pertaining to your child's birth  The law requires that the original certificate (not this document) be filed with the Vital Statistics Office at Los Angeles County Recorder, Room 10 _____ from which an official copy may be obtained. New Hall of Records, 227 N. Broadway, Los Angeles, Calif. 90012  $2.00.

RMBR (41 CFR) 201-45 505

## REPORT OF MEDICAL EXAMINATION

| 1. LAST NAME—FIRST NAME—MIDDLE NAME | 2. GRADE AND COMPONENT OR POSITION | 3. IDENTIFICATION NO. |
|---|---|---|
| Claiborne Damon Jehron | CIVILIAN | Redacted PII |

| 4. HOME ADDRESS (Number, street or RFD, city or town, State and ZIP Code) | 5. PURPOSE OF EXAMINATION | 6. DATE OF EXAMINATION |
|---|---|---|
| Redacted PII | ENLISTMENT     COMMISSION<br>ARMY  NAVY  AIR FORCE  MARINE CORPS<br>COAST GUARD  RESERVE  NATIONAL GUARD | 21 FEB 39 |

| 7. SEX | 8. RACE: (WHITE) (BLACK)<br>(AMERICAN INDIAN)<br>(ASIAN) (OTHER/UNKNOWN) | 9. TOTAL YEARS GOVERNMENT SERVICE | 10. AGENCY | 11. ORGANIZATION UNIT |
|---|---|---|---|---|
| Male | | MILITARY NoNe  CIVILIAN NoNe | DA | |

| 12. DATE OF BIRTH | AGE | 13. PLACE OF BIRTH | 14. NAME, RELATIONSHIP, AND ADDRESS OF NEXT OF KIN |
|---|---|---|---|
| Redacted PII | | Redacted PII | Redacted PII |

| 15. EXAMINING FACILITY OR EXAMINER AND ADDRESS | 16. OTHER INFORMATION |
|---|---|
| Los Angeles MEPS, 5051 Rodeo Road<br>Los Angeles, CA 90016-4791 | |

| 17. RATING OR SPECIALTY | TIME IN THIS CAPACITY (Total) | LAST SIX MONTHS |
|---|---|---|

### CLINICAL EVALUATION

NOTES. (Describe every abnormality in detail. Enter pertinent item number before each comment. Continue in item 73 and use additional sheets if necessary.)

| | (Check each item in appropriate column; enter "NE" if not evaluated.) | NOR-MAL | ABNOR-MAL |
|---|---|---|---|
| 18. | HEAD, FACE, NECK AND SCALP | ✓ | |
| 19. | NOSE | ✓ | |
| 20. | SINUSES | ✓ | |
| 21. | MOUTH AND THROAT | ✓ | |
| 22. | EARS—GENERAL (Int. & ext. canals) (Auditory acuity under items 70 and 71) | ✓ | |
| 23. | DRUMS (Perforation) | ✓ | |
| 24. | EYES—GENERAL (Visual acuity and refraction under items 58, 60 and 67) | ✓ | |
| 25. | OPHTHALMOSCOPIC | ✓ | |
| 26. | PUPILS (Equality and reaction) | ✓ | |
| 27. | OCULAR MOTILITY (Associated parallel movements, nystagmus) | ✓ | |
| 28. | LUNGS AND CHEST (Include breasts) | ✓ | |
| 29. | HEART (Thrust, size, rhythm, sounds) | ✓ | |
| 30. | VASCULAR SYSTEM (Varicosities, etc.) | ✓ | |
| 31. | ABDOMEN AND VISCERA (Include hernia) | ✓ | |
| 32. | ANUS AND RECTUM (Hemorrhoids, fistulae) (Prostate, if indicated) | ✓ | |
| 33. | ENDOCRINE SYSTEM | ✓ | |
| 34. | G-U SYSTEM | ✓ | |
| 35. | UPPER EXTREMITIES (Strength, range of motion) | ✓ | |
| 36. | FEET | ✓ | |
| 37. | LOWER EXTREMITIES (Except feet)(Strength, range of motion) | ✓ | |
| 38. | SPINE, OTHER MUSCULOSKELETAL | ✓ | |
| 39. | IDENTIFYING BODY MARKS, SCARS, TATTOOS | | ✓ |
| 40. | SKIN, LYMPHATICS | ✓ | |
| 41. | NEUROLOGIC (Equilibrium tests under item 72) | ✓ | |
| 42. | PSYCHIATRIC (Specify any personality deviation) | ✓ | |
| 43. | PELVIC (Females only) (Check how done)<br>□ VAGINAL   □ RECTAL | | |

39. Hypopigmented area right cheek

NORMAL ARCH   # 36 FEET
PES CAVUS
PES PLANUS

ITEM 56.
OTHER
TESTS

74  302485

PLACE SECOND
SPECIMEN ID
LABEL HERE

HIV    NEGATIVE
DRUGS  NEG
ALCOHOL  NEG

(Continue in item 73)

| 44. DENTAL (Place appropriate symbols, shown in examples, above or below number of upper and lower teeth) | REMARKS AND ADDITIONAL DENTAL DEFECTS AND DISEASES |
|---|---|

|  | 1° 2 3 Restorable teeth | Non-restorable teeth | 1 2 3 Missing teeth | 1 2 3 Replaced or dentures | 1 2 3 Fixed partial dentures |
|---|---|---|---|---|---|
| R | 32 31 30 | 32 31 30 | 32 31 30 | 32 31 30 | 32 31 30 |
|  | 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 | | | | |
| L | 32 31 30 29 28 27 26 25 | 24 23 22 21 20 19 18 17 | | | |

ACCEPTABLE
NOT ACCEPTABLE

(DENTAL EXAMINATION NOT DONE BY DENTAL OFFICER)

### LABORATORY FINDINGS

| 45. URINALYSIS: A. SPECIFIC GRAVITY | | 46. CHEST X-RAY (Place date, film number and result) |
|---|---|---|
| B. ALBUMIN-REAGENT STRIP | NEGATIVE | PLACE AS IN ITEM 15  FILM NO |
| C. SUGAR-REAGENT STRIP | NEGATIVE | DATE _____  RESULT |
| D. MICROSCOPIC | | |

| 47. SEROLOGY (Specify test used and result) | 48. EKU | 49. BLOOD TYPE AND RH FACTOR | 50. OTHER TESTS |
|---|---|---|---|
| RPR NONREACTIVE | | | HIV ANTIBODY: ELISA _____  WESTERN BLOT _____<br>URINE HCG: _____ |

USMEPCOM OVERPRINT No. 1 Apr 88

PREVIOUS EDITIONS WILL BE USED

**000563**

NAME: Claiborne Dann Jahon | **MEASUREMENTS AND OTHER FINDINGS** | SSN: Redacted PII

| 51 HEIGHT | 52 WEIGHT | 53 COLOR HAIR | 54 COLOR EYES | 55 BUILD | | | | | 56 TEMPERATURE |
|---|---|---|---|---|---|---|---|---|---|
| 1.50 | 131 | BLACK | BROWN | ☑ SLENDER | ☐ MEDIUM | ☐ HEAVY | ☐ OBESE | | |

| 57 | BLOOD PRESSURE (Arm at heart level) | | | 58 | | PULSE (Arm at heart level) | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| A. SITTING | SYS. 122 | B. RECUMBENT | SYS. 4 | C. STANDING (3 min) | SYS. | A. SITTING | B.AFTER EXERCISE | C. 2 MIN. AFTER | D. RECUMBENT | E. AFTER STANDING 3 MIN. |
| | DIAS. 56 | | DIAS. | | DIAS. | 66 | | | | |

| 59. DISTANT VISION | | 60. REFRACTION | | | | 61 | | NEAR VISION | |
|---|---|---|---|---|---|---|---|---|---|
| RIGHT 20/ 10 | CORR. TO 20/ | BY | S | CX | | 20/ 20 | CORR. TO | | BY |
| LEFT 20/ 20 | CORR. TO 20/ | BY | S | CX | | 20/ 20 | CORR. TO | | BY |

62. HETEROPHORIA (Specify distance)

| ES* | EX* | R.H. | L.H. | PRISM DIV. | PRISM CONV. CT | PC | PD |
|---|---|---|---|---|---|---|---|

| | ACCOMMODATION | | 64 COLOR VISION (Test used and result) | 65 DEPTH PERCEPTION (Test used and score) | UNCORRECTED |
|---|---|---|---|---|---|
| | | | PASS | AFVT | |
| RIGHT | LEFT | PIP | /14 | | CORRECTED |
| 66. FIELD OF VISION | | 67. NIGHT VISION (Test used and score) | | 68. RED LENS TEST | 69. INTRAOCULAR TENSION |

| | HEARING | | 71. | | AUDIOMETER | | | | ANSI-69 | | | 72. PSYCHOLOGICAL AND PSYCHOMOTOR FOR MEPS USE ONLY | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 250 256 | 500 512 | 1000 1024 | 2000 2048 | 3000 2896 | 4000 4096 | 6000 6144 | 8000 8192 | WK | ST | DATE | INITIAL |
| RIGHT WV | /15 SV | /15 | RIGHT | 15 | 0 | 0 | 5 | | 0 | 15 | ● | 5 | P | FEB 21 1989 | 5 A e |
| LEFT WV | /15 SV | /15 | LEFT | 5 | 5 | 0 | 0 | 0 | 20 | | ● | P | 22 FEB 1989 | HCC |
| | | | | | | | | | | | | P | 20 JUL 1989 | |

| 73. NOTES (Continued) AND SIGNIFICANT OR INTERVAL HISTORY ITEM 64: | PHYSICAL INSPECTION DATE 227 | | HT | WT | RPR | HCG | QUAL | DISQ | PHYSICIAN'S SIGNATURE |
|---|---|---|---|---|---|---|---|---|---|
| RED/GREEN (ARMY ONLY) | 20 JUL 1989 | | 71¼ | 132 | | | ✓ | | |

(Use additional sheets if necessary)

| 74. SUMMARY OF DEFECTS AND DIAGNOSES (List diagnoses with item numbers) | **74** 302485 |
|---|---|
| 36. pes planus, asymptomatic moderate | THIS EXAMINATION HAS BEEN ADMINISTRATIVELY REVIEWED FOR COMPLETENESS AND ACCURACY FEB 21 1989 |
| | SIGNATURE   GRADE   DATE |

| 75. RECOMMENDATIONS—FURTHER SPECIALIST EXAMINATIONS INDICATED (Specify) | 76. | A. PHYSICAL PROFILE | | | | | |
|---|---|---|---|---|---|---|---|
| | | P | U | L | H | E | S |
| | | ( | ( | ( | ( | ( | ( |

| 77. EXAMINEE (Check) | | B. PHYSICAL CATEGORY |
|---|---|---|
| A. ☑ IS QUALIFIED FOR       SERVICE AS IN ITEM 5 | 2A/ Enl | (m) |
| B. ☐ IS NOT QUALIFIED FOR | | |

| 78. IF NOT QUALIFIED, LIST DISQUALIFYING DEFECTS BY ITEM NUMBER | A | B | C | D | E |
|---|---|---|---|---|---|

| 79. TYPED OR PRINTED NAME OF PHYSICIAN | SIGNATURE |
|---|---|
| **ANITA WEEKES HIBLER M.D.** | Anita W. Hibler MD |
| 80. TYPED OR PRINTED NAME OF PHYSICIAN | SIGNATURE |
| | |
| 81. TYPED OR PRINTED NAME OF DENTIST OR PHYSICIAN (Indicate which) | SIGNATURE |
| | |
| 82. TYPED OR PRINTED NAME OF REVIEWING OFFICER OR APPROVING AUTHORITY | SIGNATURE | NUMBER OF ATTACHED SHEETS |
| **ROBERT C. SURRIDGE, M.D.** **CHIEF MEDICAL OFFICER** | R.C. Surridge | |

☆ U.S. GOVERNMENT PRINTING OFFICE: 1980-543-822

## SERVICE COMPUTATION FOR SEPARATION

| 1. NAME | 2. SSN | 3. DOB | 4. BR |
|---|---|---|---|
| CLAIBORNE, DAMON JAHRON | Redacted | R | |

| 5. DATE OF ENTRY ON CURRENT TOUR | a. YEAR 1998 | b. MONTH 01 | c. DAY 28 |
|---|---|---|---|
| 6. DATE OF ACCEPTANCE OF RA APPOINTMENT | a. YEAR | b. MONTH | c. DAY |

### 7. ENLISTED SERVICE

| FROM | | | TO | | | LT | ACTIVE PERIODS | | | INACTIVE PERIODS | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| YEAR | MONTH | DAY | YEAR | MONTH | DAY | | YEAR | MONTH | DAY | YEAR | MONTH | DAY |
| 1989 | 07 | 20 | 1992 | 07 | 19 | 000 | 03 | 00 | 00 | | | |
| 1992 | 07 | 20 | 1993 | 11 | 16 | 000 | | | | 01 | 03 | 27 |
| 1993 | 11 | 17 | 1993 | 12 | 16 | 000 | 00 | 01 | 00 | | | |
| 1993 | 12 | 17 | 1997 | 02 | 20 | 000 | | | | 03 | 02 | 04 |
| 1998 | 01 | 28 | 2015 | 07 | 09 | 428 | 16 | 03 | 04 | | | |
| TOTALS | | | | | | | 19 | 04 | 04 | 04 | 06 | 01 |
| TOTALS CONVERTED TO MONTHS AND DAYS | | | | | | | | 232 | 04 | | 54 | 01 |

### 8. WARRANT OFFICER SERVICE

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| TOTALS | | | | | | | | | | | | |
| TOTALS CONVERTED TO MONTHS AND DAYS | | | | | | | | | | | | |

### 9. COMMISSIONED OFFICER

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| TOTALS | | | | | | | | | | | | |
| TOTALS CONVERTED TO MONTHS AND DAYS | | | | | | | | | | | | |

| | YEAR | MONTH | DAY | | YEAR | MONTH | DAY |
|---|---|---|---|---|---|---|---|
| 10. TOTAL ACTIVE SERVICE | 19 | 04 | 04 | | | | |
| 11. TOTAL INACTIVE SERVICE | | | | | 04 | 06 | 01 |
| 12. CONSTRUCTIVE SERVICE FOR MC/DC | | | | | 00 | 00 | 00 |
| 13. TDRL SERVICE | | | | | 00 | 00 | 00 |
| 14. TOTAL SERVICE PRIOR TO CURRENT TOUR | 06 | 04 | 23 | | | | |
| 15. BASIC PAY ENTRY DATE (Subtract #14 from #5) | 1991 | 09 | 05 | | | | |
| 16. SEPARATION DATE | 2015 | 07 | 09 | | | | |
| 17. LESS DATE OF ENTRY ON CURRENT TOUR (See Item #5) | 1998 | 01 | 28 | | | | |
| 18. SUBTOTAL | 17 | 05 | 12 | | | | |
| 19. PLUS ACTIVE SERVICE PRIOR TO CURRENT TOUR | 01 | 10 | 22 | | | | |
| 20. TOTAL ACTIVE SERVICE | 19 | 04 | 04 | | | | |
| 21. PLUS INACTIVE SERVICE (See Item #11) | | | | | 04 | 06 | 01 |
| 22. TOTAL SERVICE FOR BASIC PAY PURPOSES | 23 | 10 | 05 | | | | |
| 23. TOTAL SERVICE FOR PERCENTAGE PURPOSES (1405 Service) | 19 | 10 | 16 | | | | |

| 24. RAX XRES | 25. AUS GRADE | 26. RA GRADE E06 | 27. RESERVE |
|---|---|---|---|

| 28. REMARKS | 29. HIGHEST AD GRADE HELD E06 |
|---|---|
| | 30a. HOR See Continuation Page |
| | 30b. PL EAD See Continuation Page |

| 30c. 18 YR AFS AS NOV 81 |
|---|
| YES [ ]   NO [X] |

| 31. COMPUTED BY TRANSPROC LUCIAN MCLEMORE   01 JUL 2015 | 32. REVIEWER |
|---|---|

**Service Computation**                                    **AUTOMATED**

| 33. NAME | 34. SSN |
|---|---|
| CLAIBORNE, DAMON JAHRON | Redacted |

| 35. RETIREMENT POINTS CREDITED AFTER 1 JUNE 1958 |||||| 

| FROM<br>a | TO<br>b | MEMBERSHIP<br>c | INACTIVE DUTY<br>d | COURSE COMP.<br>e | TOTAL POINTS<br>f |
|---|---|---|---|---|---|
| 1989 02 21 | 1989 07 19 | 6 | 0 | 0 | 6 |
| 1992 07 20 | 1993 02 20 | 9 | 0 | 0 | 9 |
| 1993 02 21 | 1994 02 20 | 15 | 23 | 0 | 38 |
| 1994 02 21 | 1995 02 20 | 15 | 44 | 0 | 59 |
| 1995 02 21 | 1996 02 20 | 15 | 40 | 0 | 55 |
| 1996 02 21 | 1997 02 20 | 15 | 10 | 0 | 25 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | g. TOTAL | 192 |

| 36. 1405 SERVICE AS OF 09 JUL 2015 ||||
|---|---|---|---|
| | YEARS | MONTHS | DAYS |
| 37. ACTIVE SERVICE | 19 | 04 | 04 |
| 38. INACTIVE SERVICE PRIOR TO 1 JUN 58 | 00 | 00 | 00 |
| 39. RETIREMENT POINTS AFTER 1 JUN 58 | 00 | 06 | 12 |
| 40. MEDICAL AND/OR DENTAL SCHOOL AND INTERNSHIP | 00 | 00 | 00 |
| 41. TOTAL 1405 SERVICE | 19 | 10 | 16 |

**PAGE 2,** *Service Computation*                              AUTOMATED

SERVICE COMPUTATION CONTINUATION PAGE

NAME: CLAIBORNE, DAMON JAHRON
SSN: Redacted

Continued From Block 30a:
670 WAIALE RD #4107
WAILUKU HAWAII 96732

Continued From Block 30b:
LOS ANGELES, CALIFORNIA

# STATEMENT OF SERVICE - FOR COMPUTATION OF LENGTH OF SERVICE FOR PAY PURPOSES
For use of this form, see AR 37-104-4; the proponent agency is ASA(FM)

## PRIVACY ACT STATEMENT

| | |
|---|---|
| **Authority:** | 37 USC, Section 1006; Executive Order 9397. |
| **Purpose:** | This form is used to document a member's request for verification of military service. It is also used to adjust a soldier's Other Entry Pay Effective Date *(OPED)* and Basic Pay Entry Effective Date *(BPED)* which will affect the rate and period of basic pay entitlement. |
| **Routine Uses:** | Information collected on this form becomes part of the Joint Uniform Military Pay System *(JUMPS)* and is subject to all of the routine disclosures made by that system.  Routine recipients of JUMPS disclosures include, but are not limited to, the Red Cross and State and local governments for tax and welfare purposes. |
| **Disclosure:** | Voluntary; however, nondisclosure may result in nonverification of service.  Disclosure of your social security number (SSN) is voluntary; however, this form will not be processed without your SSN because it is used to identify you for pay purposes. |

| 1. LAST NAME, FIRST NAME, MIDDLE INITIAL | 3. COMPLETE MAILING ADDRESS *(Unit Personnel Officer, if member on AD) (Unit Commander, if member of ACDUTRA)* |
|---|---|
| CLAIBORNE, DAMON | I CORPS |
| **2. SSN** | JBLM, WA 98433 |
| Redacted | PAGE I OF 2 |

*I have held a commission; appointment as commissioned warrant officer, warrant officer, flight officer, or Army field clerk; or have been enlisted as a member of the respective service(s) shown below for the inclusive period indicated.  All National Guard service claimed hereon was federally recognized; it was not in the inactive National Guard; all officers' training camp service was in the capacity of an enlisted person and all initial appointments are shown from the date of acceptance.*

| 4. SERVICE | 5. CHECK | | | 6. FROM | | | 7. TO | | | 8. TIME LOST | 9. COMPUTATION | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (Army, Air Force, Navy, etc.) | ENL | WO | COM | YR. | MO. | DAYS | YR. | MO. | DAYS | (Days) | YR. | MO. | DAYS |
| DEP | ☒ | ☐ | ☐ | 1989 | 02 | 21 | 1989 | 07 | 19 | | 0 | 04 | 29 |
| USA (ACTIVE) | ☒ | ☐ | ☐ | 1989 | 07 | 20 | 1992 | 07 | 19 | | 3 | 00 | 00 |
| IRR | ☒ | ☐ | ☐ | 1992 | 07 | 20 | 1993 | 11 | 16 | | 1 | 03 | 27 |
| ARNG (ACTIVE) | ☒ | ☐ | ☐ | 1993 | 11 | 17 | 1993 | 12 | 16 | | 0 | 01 | 00 |
| ARNG (INACTIVE) | ☒ | ☐ | ☐ | 1993 | 12 | 17 | 1997 | 02 | 20 | | 3 | 02 | 04 |
| BIS | ☐ | ☐ | ☐ | 1997 | 02 | 21 | 1998 | 01 | 27 | | 0 | 11 | 07 |
| USA (ACTIVE) | ☒ | ☐ | ☐ | 1998 | 01 | 28 | 2004 | 10 | 27 | | 6 | 09 | 00 |

| **10. Total creditable service (years)** ⟶ | |
|---|---|

| 11a. SIGNATURE OF MEMBER | 11b. DATE |
|---|---|
| | |

### *FOR USE BY THE ADJUTANT GENERAL (When statement above is incorrect, correct service will be entered.)*

| 12. SERVICE | 13. CHECK | | | 14. FROM | | | 15. TO | | | 16. TIME LOST | 17. COMPUTATION | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (Army, Air Force, Navy, etc.) | ENL | WO. | COM | YR. | MO. | DAYS | YR. | MO. | DAYS | (Days) | YR. | MO. | DAYS |
| | ☐ | ☐ | ☐ | | | | | | | | | | |
| | ☐ | ☐ | ☐ | | | | | | | | | | |
| | ☐ | ☐ | ☐ | | | | | | | | | | |
| | ☐ | ☐ | ☐ | | | | | | | | | | |
| | ☐ | ☐ | ☐ | | | | | | | | | | |
| | ☐ | ☐ | ☐ | | | | | | | | | | |
| | ☐ | ☐ | ☐ | | | | | | | | | | |

| **18. Total service creditable for basic pay (years)** ⟶ | |
|---|---|

| 19a. AUTHENTICATION | 19b. DATE |
|---|---|
| LUCIAN W. MCLEMORE LEAD HRA | 20150707 |

**DA FORM 1506, AUG 1987**   EDITION OF MAY 85 IS OBSOLETE   APD LC v3.02ES

000568

## STATEMENT OF SERVICE - FOR COMPUTATION OF LENGTH OF SERVICE FOR PAY PURPOSES
For use of this form, see AR 37-104-4; the proponent agency is ASA(FM)

### PRIVACY ACT STATEMENT

**Authority:** 37 USC, Section 1006; Executive Order 9397.

**Purpose:** This form is used to document a member's request for verification of military service. It is also used to adjust a soldier's Other Entry Pay Effective Date *(OPED)* and Basic Pay Entry Effective Date *(BPED)* which will affect the rate and period of basic pay entitlement.

**Routine Uses:** Information collected on this form becomes part of the Joint Uniform Military Pay System *(JUMPS)* and is subject to all of the routine disclosures made by that system. Routine recipients of JUMPS disclosures include, but are not limited to the Red Cross and State and local governments for tax and welfare purposes.

**Disclosure:** Voluntary; however, nondisclosure may result in nonverification of service. Disclosure of your social security number (SSN) is voluntary; however, this form will not be processed without your SSN because it is used to identify you for pay purposes.

| 1. LAST NAME, FIRST NAME, MIDDLE INITIAL | 3. COMPLETE MAILING ADDRESS *(Unit Personnel Officer, if member on AD) (Unit Commander, if member of ACDUTRA)* |
|---|---|
| CLAIBORNE, DAMON | I CORPS |
| **2. SSN** Redacted | JBLM, WA 98433<br>PAGE 2 OF 2 |

*I have held a commission; appointment as commissioned warrant officer, warrant officer, flight officer, or Army field clerk; or have been enlisted as a member of the respective service(s) shown below for the inclusive period indicated. All National Guard service claimed hereon was federally recognized; it was not in the inactive National Guard; all officers' training camp service was in the capacity of an enlisted person and all initial appointments are shown from the date of acceptance.*

| 4. SERVICE (Army, Air Force, Navy, etc.) | 5. CHECK ENL. | WO | COM | 6. FROM YR. | MO. | DAYS | 7. TO YR. | MO. | DAYS | 8. TIME LOST (Days) | 9. COMPUTATION YR. | MO. | DAYS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CIVILIAN CONFINEMENT (LOST TIME) | ☐ | ☐ | ☐ | 2004 | 10 | 28 | 2006 | 01 | 05 | | 1 | 02 | 08 |
| USA (ACTIVE) | ☒ | ☐ | ☐ | 2006 | 01 | 06 | | TO PRESENT | | | | | |
| | ☐ | ☐ | ☐ | | | | | | | | | | |
| PEBD: 19910905 BASD: 19960306 | ☐ | ☐ | ☐ | | | | | | | | | | |
| | ☐ | ☐ | ☐ | | | | | | | | | | |
| | ☐ | ☐ | ☐ | | | | | | | | | | |
| | ☐ | ☐ | ☐ | | | | | | | | | | |

**10.   Total creditable service *(years)*** ⟶

| 11a. SIGNATURE OF MEMBER | 11b. DATE |
|---|---|
| | |

### FOR USE BY THE ADJUTANT GENERAL  *(When statement above is incorrect, correct service will be entered.)*

| 12. SERVICE (Army, Air Force, Navy, etc.) | 13. CHECK ENL. | WO. | COM | 14. FROM YR. | MO. | DAYS | 15. TO YR. | MO. | DAYS | 16. TIME LOST (Days) | 17. COMPUTATION YR. | MO. | DAYS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | ☐ | ☐ | ☐ | | | | | | | | | | |
| | ☐ | ☐ | ☐ | | | | | | | | | | |
| | ☐ | ☐ | ☐ | | | | | | | | | | |
| | ☐ | ☐ | ☐ | | | | | | | | | | |
| | ☐ | ☐ | ☐ | | | | | | | | | | |
| | ☐ | ☐ | ☐ | | | | | | | | | | |
| | ☐ | ☐ | ☐ | | | | | | | | | | |

**18.  Total service creditable for basic pay *(years)*** ⟶

| 19a. AUTHENTICATION | 19b. DATE |
|---|---|
| LUCIAN W. MCLEMORE LEAD HRA | 20150707 |

**DA FORM 1506, AUG 1987**     EDITION OF MAY 85 IS OBSOLETE     APD LC v3.02ES



**DEPARTMENT OF THE ARMY**
JOINT BASE GARRISON
BOX 339500, MAIL STOP 85
JOINT BASE LEWIS-MCCHORD, WA 98433-9500

REPLY TO
ATTENTION OF:

IMLM-HRM                                                                                    7 July 2015

MEMORANDUM FOR RECORD

SUBJECT:  Service Computation, DA Form 1506 SSG Claiborne, Damon ▮Redacted▮

1. Request the BASD for SSG Claiborne be corrected to show the proper date of 19960306. The attached DA Form 1506 and supporting documents are confirmation of this date.

2. The attached service computation does not list the actual dates of all active duty.  Using his source documents (Army National Guard Current Annual Statement), I used a generic date range (19931117-19931216) to equal his actual active duty service not covered by a DD Form 214.

3. Point of contact is Mrs. Wooden at commercial (253) 967-4378 or DSN 357-4378 or heather.m.wooden.ctr@mail.mil.

LUCIAN W. MCLEMORE
Lead, Transition Center

2 Incl
1.DA Form 1506
2.Supporting Documents

**000570**

```
--------  PERS/PAY RESEARCH TOOL  -----  PERSONAL DATA - PG 1 OF 2  --------
SSN:   Redacted       TAPDB-AE        EMILPO             DJMS- AC
                   TIME: 03:18:49     AS OF 20150705     AS OF 20150630
ELEMENT            AS OF 20150707
NAME               CLAIBORNE DAMON JAH  CLAIBORNE DAMON JAH  CLAIBORNE DAMON JAH
RECSTA             G - ACTIVE         G - ACTIVE         T - SUSPENDED STATUS
MPCAD              E                  E                  E
SEX                M                  M                  M
ADPYTY:ADPYCT  ** : I               * : *              * : *
BASD:PEBD      19960407 : 19891018   960407 : 891018    960407 : 891018
RACPOP             N                  N                  @@@
ETHGRP             X                  X                  @@@
MARST              M                  M                  @@@
DEPNBR             01                 **                 @@@
DOB               Redacted            710222             @@@
CELC:MEL           C : U              C : *              @@@
DROS:DEROS     20140208 : ********   140208 : ******    @@@ : @@@
PHYC               A                  *                  @@@
VSSSN              A - VERIFIED       A - OTHER          @@@

ENTER NEXT SSN => ........    OR PF7 = ASSIGNMENT DATA;  PF9 = TXN DISPLAY
                              OR PF8 = PG-2 PERSONAL DATA; PF10 = MAIN MENU
```

# ENLISTMENT / REENLISTMENT DOCUM
## ARMED FORCES OF THE UNITED STATES

### PRIVACY ACT STATEMENT

**AUTHORITY:** 5 USC 3331, 32 USC 708, 44 USC 708, 44 USC 3101, and Sections 133, 265, 275, 504, 508, 510, 591, 672 through 1087, 1168, 169, 1475 through 1480, 1553, 2107, 2122, 3012, 5031, 8012, 8033, 8496, and 9411 of 10 USC and in 10450, and 11652.

**PRINCIPAL PURPOSES:** To record enlistment or reenlistment into the U. S. Armed Forces. This information becomes a part of personnel records which are used to provide promotion, reassignment, training, medical support, and other personnel management you. Your Social Security Number is necessary to identify you and your records, and to properly report your earnings as a member of Armed Forces to the Social Security Administration. The data is FOR OFFICIAL USE ONLY and will be maintained in strict confidence in accordance with Federal law and regulations.

**ROUTINE USES:** To document your enlistment/reenlistment agreement with the U. S. Armed Forces; to record voluntary changes in your enlistment/reenlistment agreement; to determine dates of service and seniority; and for such other routine personnel management actions required to maintain normal career progression as a member of a component of the U. S. Armed Forces.

**DISCLOSURE IS VOLUNTARY:** However, failure to furnish information will result in denial of enlistment or reenlistment.

| A. | ENLISTEE / REENLISTEE IDENTIFICATION DATA | | | | | |
|---|---|---|---|---|---|---|
| 1. NAME (Last, First, Middle) CLAIBORNE DAMON JAHRON | | 2. SOCIAL SECURITY NUMBER Redacted | | | | |
| 3. HOME OF RECORD (Street, City, State, ZIP Code) 1589 W 36TH ST LOS ANGELES   CA   90018-0000 | | 4. PLACE OF ENL (Mil. Installation, City, State) LOS ANGELES MEPS LOS ANGELES, CA 90046-6794 | | | | |
| 5. DATE OF ENLISTMENT/ REENLISTMENT (YYMMDD) 89 FEB 21 | 6. DATE OF BIRTH (YYMMDD) Redacted | 7. PREV MIL SVC UPON ENL / REENLIST | | YEARS | MONTHS | DAYS |
| | | a  Total Active Military Service | | | | |
| | | b. Total Inactive Military Service | | | | |

| B. | AGREEMENTS |
|---|---|

8.  I am enlisting/reenlisting in the United States (list branch of service) **ARMY RESERVE** _____ this date for _____ **8** _____ years and _____ weeks beginning in pay grade _____ **E-4** _____ . The additional details of my enlistment / reenlistment are in Section C and Annex(es) _____ **A, B**

a.  **FOR ENLISTMENT IN A DELAYED ENTRY / ENLISTMENT PROGRAM (DEP):** I understand that I will be ordered to active duty as a Reservist unless I report to the place shown in item 4 above by (list date (YYMMDD)) **0600 89 JUL 20** for enlistment in the Regular component of the United States (list branch of service) **ARMY** , for not less than **3** years and _____ weeks. My enlistment in the DEP is in a nonpay status. I understand my period of time in the DEP is **NOT** creditable for pay purposes upon entry into a pay status. However, I also understand that this time is counted toward fulfillment of my military service obligation or commitment. I must maintain my current qualifications and keep my recruiter informed of any changes in my physical or dependency status, moral qualifications, and mailing address.

b.  Remarks:  (if none, so state.)  **NONE**

c.  The agreements in this section and attached annex(es) are all the promises made to me by the Government. **ANYTHING ELSE ANYONE HAS PROMISED ME IS NOT VALID AND WILL NOT BE HONORED.** (Initials of Enlistee/Reenlistee) _DJC_ (Continued on reverse side.)

DD Form 4/1, MAY 85                    Previous editions are obsolete.

000572

NAME OF ENLISTEE / REENLISTEE (Last, First, Middle)

CLAIBORNE DAMON JAHRON

SOCIAL SECURITY NO. OF ENLISTEE / REENLISTEE

Redacted

**D.** **CERTIFICATION AND ACCEPTANCE**

13a.   My acceptance for enlistment is based on the information I have given in my application for enlistment.  If any of that information is false or incorrect, this enlistment may be voided or terminated administratively by the Government or I may be tried by a Federal, civilian, or military court and, if found guilty, may be punished.

I CERTIFY THAT I HAVE CAREFULLY READ THIS DOCUMENT.  ANY QUESTIONS I HAD WERE EXPLAINED TO MY SATISFACTION.  I FULLY UNDERSTAND THAT ONLY THOSE AGREEMENTS IN SECTION B OF THIS DOCUMENT OR RECORDED ON THE ATTACHED ANNEX(ES) WILL BE HONORED.  ANY OTHER PROMISES OR GUARANTEES MADE TO ME BY ANYONE ARE WRITTEN BELOW: (If none, X "NONE" and initial.)     ☒ NONE ___ (Initials of enlistee / reenlistee).

b.  SIGNATURE OF ENLISTEE / REENLISTEE

X _(signature)_

c.  DATE SIGNED  (YYMMDD)

89 FEB 21

14a.  On behalf of the United States (list branch of service) **ARMY**
I accept this applicant for enlistment.  I have witnessed the signature in item 13b to this document.   I certify that I have explained that only those agreements in Section B of this form and in the attached Annex(es) will be honored, and any other promises made by any person are not effective and will not be honored.

SERVICE REPRESENTATIVE INFORMATION

| b. NAME (Last, First, Middle) | c. PAY GRADE | d. UNIT / COMMAND NAME |
|---|---|---|
| OZIER GABRIEL | E- 7 | RECRUITING BN LOS ANGELES |

| e. SIGNATURE | f. DATE SIGNED (YYMMDD) | g. UNIT / COMMAND ADDRESS (City, State, ZIP Code) |
|---|---|---|
| _(signature)_ | 89 FEB 21 | LOS ANGELES CA  90046 |

**E.** **CONFIRMATION OF ENLISTMENT OR REENLISTMENT**

15.  IN THE ARMED FORCES EXCEPT THE NATIONAL GUARD (ARMY OR AIR):
I,  **DAMON JAHRON CLAIBORNE** _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice.  So help me God.

16.  IN THE NATIONAL GUARD (ARMY OR AIR):
I, _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the State of _____ against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the Governor of _____ and the orders of the officers appointed over me, according to law and regulations.  So help me God.

17.  IN THE NATIONAL GUARD (ARMY OR AIR):
I do hereby acknowledge to have voluntarily enlisted / reenlisted this _____ day of _____ 19_____ in the _____ National Guard and as a Reserve of the United States (list branch of service) _____ with membership in the _____ National Guard of the United States for a period of _____ years, _____ months, _____ days, under the conditions prescribed by law, unless sooner discharged by proper authority.

| 18a. SIGNATURE OF ENLISTEE / REENLISTEE | b. DATE SIGNED (YYMMDD) |
|---|---|
| X _(signature)_ | 89 FEB 21 |

19a.   The above oath was administered, subscribed, and duly sworn to (or affirmed) before me this date.

ENLISTMENT / REENLISTMENT OFFICER INFORMATION

| b. NAME (Last, First, Middle) | c. PAY GRADE | d. UNIT / COMMAND NAME |
|---|---|---|
| BUTTS JOHN | O-3 | LOS ANGELES MEPS |

| e. SIGNATURE | f. DATE SIGNED (YYMMDD) | g. UNIT / COMMAND ADDRESS (City, State, ZIP Code) |
|---|---|---|
| _(signature)_ | 89 FEB 21 | LOS ANGELES, CA 90046-4 |

DD Form 4/2, MAY 85                    Previous editions are obsolete

| NAME OF ENLISTEE / REENLISTEE (Last, First, Middle) | SOCIAL SECURITY NO. OF ENLISTEE / REENLISTEE |
|---|---|
| CLAIBORNE DAMON JAHRON | Redacted |

**F.** DISCHARGE FROM DELAYED ENTRY / ENLISTMENT PROGRAM

**20a.** I request to be discharged from the Delayed Entry/Enlistment Program (DEP) and enlisted in the Regular Component of the United States *(list branch of service)* ___ARMY___ for a period of ___3___ years and _____ weeks. No changes have been made to my enlistment options OR if changes were made they are recorded on Annex(es) ___C___ which replace(s) Annex(es) ___A___

| b. SIGNATURE OF DELAYED ENTRY / ENLISTMENT PROGRAM ENLISTEE | c. DATE SIGNED (YYMMDD) |
|---|---|
| *Damon Jahron Claiborne* | 89 JUL 20 |

**G.** APPROVAL AND ACCEPTANCE BY SERVICE REPRESENTATIVE

**21a.** This enlistee is discharged from the Reserve Component shown in item 8 and is accepted for enlistment in the Regular Component of the United States *(list branch of service)* ___ARMY___ in pay grade ___E-1___

SERVICE REPRESENTATIVE INFORMATION

| b. NAME (Last, First, Middle) | c. PAY GRADE | d. UNIT / COMMAND NAME |
|---|---|---|
| JONES KENNETH E | E-8 | LOS ANGELES RECRUITING BN |
| e. SIGNATURE | f. DATE SIGNED (YYMMDD) | g. UNIT / COMMAND ADDRESS (City, State, ZIP Code) |
| | 89 JUL 20 | LOS ANGELES CA 90016 |

**H.** CONFIRMATION OF ENLISTMENT OR REENLISTMENT

**22a.** IN A REGULAR COMPONENT OF THE ARMED FORCES:

I, ___DAMON JAHRON CLAIBORNE___ do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God.

| b. SIGNATURE OF ENLISTEE / REENLISTEE | c. DATE SIGNED (YYMMDD) |
|---|---|
| *Damon Jahron Claiborne* | 89 JUL 20 |

**23a.** The above oath was administered, subscribed, and duly sworn to (or affirmed) before me this date.

ENLISTMENT OFFICER INFORMATION

| b. NAME (Last, First, Middle) | c. PAY GRADE | d. UNIT / COMMAND NAME |
|---|---|---|
| ROLLINS THOMAS L | O-4 | LOS ANGELES MEPS |
| e. SIGNATURE | f. DATE SIGNED (YYMMDD) | g. UNIT / COMMAND ADDRESS (City, State, ZIP Code) |
| | 89 JUL 20 | LOS ANGELES CA 90016 |

DD Form 4/3, MAY 85    *Previous editions are obsolete.*

000574

| 1. NAME (Last, First, Middle) | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NO. |
|---|---|---|
| CLAIBORNE, DAMON JAHRON | ARMY/RA | Redacted |

| 4.a. GRADE, RATE OR RANK | 4.b. PAY GRADE | 5. DATE OF BIRTH (YYMMDD) | 6. RESERVE OBLIG. TERM. DATE |
|---|---|---|---|
| SPC | E4 | Redacted | Year 87  Month 02  Day 26 |

| 7.a. PLACE OF ENTRY INTO ACTIVE DUTY | 7.b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known) |
|---|---|
| LOS ANGELES, CA | LOS ANGELES, CA |

| 8.a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | 8.b. STATION WHERE SEPARATED |
|---|---|
| 870TH TRANS CO FORSCOM FC | FT EUSTIS, VA |

| 9. COMMAND TO WHICH TRANSFERRED USAR CONTROL GROUP (REINFORCEMENT) ARPERCEN 9700 PAGE BLVD ST LOUIS, MO 63132-5200 | 10. SGLI COVERAGE [ ] None  Amount: $ 100,000 |
|---|---|

| 11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.) | 12. RECORD OF SERVICE | Year(s) | Month(s) | Day(s) |
|---|---|---|---|---|
| 88H10, CARGO SPECIALIST 2 YRS & 8 MOS// NOTHING FOLLOWS | a. Date Entered AD This Period | 89 | 07 | 20 |
| | b. Separation Date This Period | 92 | 07 | 19 |
| | c. Net Active Service This Period | 03 | 00 | 00 |
| | d. Total Prior Active Service | 00 | 00 | 00 |
| | e. Total Prior Inactive Service | 00 | 00 | 00 |
| | f. Foreign Service | 00 | 11 | 08 |
| | g. Sea Service | 00 | 00 | 00 |
| | h. Effective Date of Pay Grade | 91 | 05 | 01 |

**13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service)**

ARMY SERVICE RIBBON//NATIONAL DEFENSE SERVICE MEDAL//GOOD CONDUCT MEDAL//SOUTHWEST ASIA SERVICE MEDAL W/3STARS//KUWAITI LIBERATION MEDAL//MARKSMAN BADGE (M16 RIFLE)//SHARPSHOOTER BADGE (HAND GRENADE)//NOTHING FOLLOWS

**14. MILITARY EDUCATION (Course title, number of weeks, and month and year completed)**

CARGO SPECIALIST CRS, 9 WKS (1989)//NOTHING FOLLOWS

| 15.a. MEMBER CONTRIBUTED TO POST-VIETNAM ERA VETERANS' EDUCATIONAL ASSISTANCE PROGRAM | Yes | No | 15.b. HIGH SCHOOL GRADUATE OR EQUIVALENT | Yes | No | 16. DAYS ACCRUED LEAVE PAID |
|---|---|---|---|---|---|---|
| | | X | | X | | 1.5 |

| 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | Yes | No |
|---|---|---|
| | X | |

**18. REMARKS**

BLOCK 6 INCLUDES PERIOD OF DEP: 890221-890719//SUBJECT TO ACTIVE DUTY RECALL AND/OR ANNUAL SCREENING//SERVICE IN SOUTHWEST ASIA 901013-910921//THE INFORMATION CONTAINED HEREIN IS SUBJECT TO COMPUTER MATCHING WITHIN THE DEPARTMENT OF DEFENSE OR WITH ANY OTHER AFFECTED FEDERAL OR NON-FEDERAL AGENCY FOR VERIFICATION PURPOSES AND TO DETERMINE ELIGIBILITY FOR AND/OR CONTINUED COMPLIANCE WITH THE REQUIREMENTS OF A FEDERAL BENEFIT PROGRAM//NOTHING FOLLOWS

| 19.a. MAILING ADDRESS AFTER SEPARATION (Include Zip Code) | 19.b. NEAREST RELATIVE (Name and address- include Zip Code) |
|---|---|
| 1589 W. 36TH ST. LOS ANGELES, CA 90018 | DAVID N. CLAIBORNE ADDRESS SAME AS BLOCK 19A |

| 20. MEMBER REQUESTS COPY 6 BE SENT TO    CC    DIR. OF VET AFFAIRS | X Yes | No | 22. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title and signature) |
|---|---|---|---|
| 21. SIGNATURE OF MEMBER BEING SEPARATED | | | |
| SOLDIER NOT AVAILABLE TO SIGN | | | ROSE H. ANDERSON, CHIEF, TRANSITION POINT |

**SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only)**

| 23. TYPE OF SEPARATION | 24. CHARACTER OF SERVICE (Include upgrades) |
|---|---|
| RELEASE FROM ACTIVE DUTY | HONORABLE |

| 25. SEPARATION AUTHORITY | 26. SEPARATION CODE | 27. REENTRY CODE |
|---|---|---|
| AR 635-200, CHAP 4 | LBK | RE-1 |

| 28. NARRATIVE REASON FOR SEPARATION |
|---|
| EXPIRATION TERM OF SERVICE |

| 29. DATES OF TIME LOST DURING THIS PERIOD | 30. MEMBER REQUESTS COPY 4 |
|---|---|
| NONE | Initials |

**DD Form 214, NOV 88**   Previous editions are obsolete.   MEMBER-

# ENLISTMENT / REENLISTMENT DOCUMENT
## ARMED FORCES OF THE UNITED STATES

### Privacy Act Statement

| | |
|---|---|
| **AUTHORITY:** | 5 USC 3331; 32 USC 708; 44 USC 708 and 3101; 10 USC 133, 265, 275, 504, 508, 510, 591, 672(d), 678, 837, 1007, 1071 through 1087, 1168, 1169, 1475 through 1480, 1553, 2107, 2122, 3012, 5031, 8012, 8033, 8496, and 9411, 14 USC 351 and 632, and Executive Order 9397, November 1943 (SSN) |
| **PRINCIPAL PURPOSES:** | To record enlistment or reenlistment into the U.S. Armed Forces  This information becomes a part of the subject's military personnel records which are used to document promotion, reassignment, training, medical support, and other personnel management actions  The purpose of soliciting the SSN is for positive identification |
| **ROUTINE USES:** | This form becomes a part of the Service's Enlisted Master File and Field Personnel File. All uses of the form are internal to the relevant Service |
| **DISCLOSURE:** | Voluntary; however, failure to furnish personal identification information may negate the enlistment/reenlistment application. |

### A. ENLISTEE / REENLISTEE IDENTIFICATION DATA

| 1. NAME *(Last, First, Middle)* | 2. SOCIAL SECURITY NUMBER |
|---|---|
| CLAIBORNE DAMON JAHRON | Redacted |

**3. HOME OF RECORD** *(Street, City, State, ZIP Code)*
1589 W 36TH ST
LOS ANGELES          CA   90018-0000

**4. PLACE OF ENLISTMENT / REENLISTMENT** *(Mil. Installation, City, State)*
LOS ANGELES MEPS
LOS ANGELES, CALIFORNIA 90016

| 5. DATE OF ENLISTMENT / REENLISTMENT *(YYMMDD)* | 6. DATE OF BIRTH *(YYMMDD)* | 7. PREV MIL SVC UPON ENL / REENLIST | YEARS | MONTHS | DAYS |
|---|---|---|---|---|---|
| 93 NOV 17 | Red | a  Total Active Military Service | | | |
| | | b. Total Inactive Military Service | | | |

### B. AGREEMENTS

8.  I am enlisting/reenlisting in the ~~XXXXX XXXXX~~ *(list branch of service)*     ARMY NATIONAL GUARD
OF THE UNITED STATES _____ this date for _____ 3 _____ years and
_____ 33 _____ weeks beginning in pay grade _____ E-4 . The additional details of my enlistment / reenlistment are in Section C and Annex(es) _____ A _____.

a. FOR ENLISTMENT IN A DELAYED ENTRY / ENLISTMENT PROGRAM (DEP):
I understand that I will be ordered to active duty as a Reservist unless I report to the place shown in item 4 above by *(list date (YYMMDD))* _____ for enlistment in the Regular component of the United States *(list branch of service)* _____ for not less than _____ years and _____ weeks. My enlistment in the DEP is in a nonpay status. I understand my period of time in the DEP is NOT creditable for pay purposes upon entry into a pay status. However, I also understand that this time is counted toward fulfillment of my military service obligation or commitment. I must maintain my current qualifications and keep my recruiter informed of any changes in my physical or dependency status, moral qualifications, and mailing address.

b. Remarks: *(If none, so state.)*          NONE

c. The agreements in this section and attached annex(es) are all the promises made to me by the Government. **ANYTHING ELSE ANYONE HAS PROMISED ME IS NOT VALID AND WILL NOT BE HONORED.**
*(Initials of Enlistee/Reenlistee)* D. C.                                    *(Continued on reverse side )*

**DD Form 4/1, MAY 88**                    *Previous editions may be used*

| NAME OF ENLISTEE / REENLISTEE (Last, First, Middle) | SOCIAL SECURITY NO OF ENLISTEE / REENLISTEE |
|---|---|
| CLAIBORNE DAMON JAHRON | Redacted |

## D. CERTIFICATION AND ACCEPTANCE

**13a.** My acceptance for enlistment is based on the information I have given in my application for enlistment. If any of that information is false or incorrect, this enlistment may be voided or terminated administratively by the Government or I may be tried by a Federal, civilian, or military court and, if found guilty, may be punished.

I CERTIFY THAT I HAVE CAREFULLY READ THIS DOCUMENT. ANY QUESTIONS I HAD WERE EXPLAINED TO MY SATISFACTION. I FULLY UNDERSTAND THAT ONLY THOSE AGREEMENTS IN SECTION B OF THIS DOCUMENT OR RECORDED ON THE ATTACHED ANNEX(ES) WILL BE HONORED. ANY OTHER PROMISES OR GUARANTEES MADE TO ME BY ANYONE ARE WRITTEN BELOW: (If none, X "NONE" and initial.)   [✓] NONE  _D. C._ (Initials of enlistee/reenlistee)

| b SIGNATURE OF ENLISTEE / REENLISTEE | c DATE SIGNED (YYMMDD) |
|---|---|
| _Damon Jahron Claiborne_ | 93 NOV 17 |

**14. SERVICE REPRESENTATIVE CERTIFICATION**
a. On behalf of the United States (branch of service)   ARMY NATIONAL GUARD   ,
I accept this applicant for enlistment. I have witnessed the signature in item 13b to this document. I certify that I have explained that only those agreements in Section B of this form and in the attached Annex(es) will be honored, and any other promises made by any person are not effective and will not be honored.

| b NAME (Last, First, Middle) | c PAY GRADE | d UNIT / COMMAND NAME |
|---|---|---|
| PERALTA DORA F | E- 7 | DET 5 STARC |

| e SIGNATURE | f DATE SIGNED (YYMMDD) | g UNIT / COMMAND ADDRESS (City, State, ZIP Code) |
|---|---|---|
| _Dora F Peralta_ | 93 NOV 17 | LOS ANGELES CA 90016 |

## E. CONFIRMATION OF ENLISTMENT OR REENLISTMENT

**15. IN THE ARMED FORCES EXCEPT THE NATIONAL GUARD (ARMY OR AIR):**
I, _____ , do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God.

**16. IN THE NATIONAL GUARD (ARMY OR AIR):**
I, DAMON JAHRON CLAIBORNE _____ , do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the State of CALIFORNIA _____ against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the Governor of CALIFORNIA and the orders of the officers appointed over me, according to law and regulations. So help me God.

**17. IN THE NATIONAL GUARD (ARMY OR AIR):**
I do hereby acknowledge to have voluntarily enlisted / reenlisted this 17TH day of NOV 19 93 in the CALIFORNIA National Guard and as a Reserve of the United States (list branch of service) ARMY with membership in the ARMY National Guard of the United States for a period of 3 years, 08 months, 04 days, under the conditions prescribed by law, unless sooner discharged by proper authority.

| 18a. SIGNATURE OF ENLISTEE / REENLISTEE | b DATE SIGNED (YYMMDD) |
|---|---|
| X _Damon Jahron Claiborne_ | 93 NOV 17 |

**19. ENLISTMENT / REENLISTMENT OFFICER CERTIFICATION**
a. The above oath was administered, subscribed, and duly sworn to (or affirmed) before me this date.

| b NAME (Last, First, Middle) | c PAY GRADE | d UNIT / COMMAND NAME |
|---|---|---|
| PETERSEN GEORGE J | O-3 | LOS ANGELES MEPS |

| e SIGNATURE | f DATE SIGNED (YYMMDD) | g UNIT / COMMAND ADDRESS (City, State, ZIP Code) |
|---|---|---|
| | 93 NOV 17 | LOS ANGELES, CALIFORNIA 90016 |

DD Form 4/2, MAY 88   Previous editions may be used.

ARMY NATIONAL GUARD RETIREMENT POINTS HISTORY STATEMENT

PFC CLAIBORNE DAMON JAHRON

Redacted

CO C, 2D BN, 299TH INF
175 PUUNENE AVE
KAHULUI, HI  96732-2403
PV5C0-356

Date Prepared: 2014/10/22
Output Reason: Request
AYE: 07/19
BASD: 2011/04/14
Notice of Eligibility: NO
Highest Grade Held: E03
RPED: 2031/02/20, 0 Pds.

This summary is a statement of your points earned towards retirement.  You should review all entries and report any discrepancies to your unit clerk.  Particular attention should be given to any period of service with a verification status (VS) of "B" because points are not credited until verified

| Begin Date (yyyymmdd) | End Date (yyyymmdd) | MMSI | IDT | MEM | ACCP Misc Pts | FHD | AD Pts | VS | Total Career Points | Total Pts For Ret Pay | Creditable Svc For Ret Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1989/02/21 | 1989/07/19 | E5 | 0 | -- | 0 | 0 | 0 | V | --- | --- | --/--/-- |
| 1989/07/20 | 1990/02/20 | A1 | 0 | 6 | 0 | 0 | 216 | V | 222 | 222 | 01/00/00 |
| 1990/02/21 | 1991/02/20 | A1 | 0 | 0 | 0 | 0 | 365 | V | 365 | 365 | 01/00/00 |
| 1991/02/21 | 1992/02/20 | A1 | 0 | 0 | 0 | 0 | 365 | V | 365 | 365 | 01/00/00 |
| 1992/02/21 | 1992/07/19 | A1 | 0 | -- | 0 | 0 | 150 | V | --- | --- | --/--/-- |
| 1992/07/20 | 1993/02/20 | D4 | 0 | 9 | 0 | 0 | 0 | V | 159 | 159 | 01/00/00 |
| 1993/02/21 | 1993/11/16 | D4 | 0 | -- | 0 | 0 | 0 | V | --- | --- | --/--/-- |
| 1993/11/17 | 1994/02/20 | B1 | 23 | 15 | 0 | 0 | 0 | V | 38 | 38 | 00/00/00 |
| 1994/02/21 | 1995/02/20 | B1 | 44 | 15 | 0 | 0 | 12 | V | 71 | 71 | 01/00/00 |
| 1995/02/21 | 1996/02/20 | B1 | 40 | 15 | 0 | 0 | 10 | V | 65 | 65 | 01/00/00 |
| 1996/02/21 | 1996/10/21 | B1 | 5 | -- | 0 | 0 | 8 | V | --- | --- | --/--/-- |
| 1996/10/22 | 1997/02/20 | B1 | 5 | 15 | 0 | 0 | 0 | V | 33 | 33 | 00/00/00 |

Grand Totals                                                                                   1126          1318    1318    06/00/00

MILITARY MEMBERSHIP STATUS IDENTIFIERS

*Active Duty*
*302 = 1m*

E5 - Delayed Entry Program (Any Component)
A1 - United States Army Regular Service
D4 - USAR Control Group (Reinforcement)
B1 - Army National Guard Unit Member

NON-CREDITABLE PERIODS OF SERVICE

From Date   To Date      Reason

DISTRIBUTION:

NGB FORM 23B
28 December 2011

PAGE 1

000578

DEPARTMENTS OF THE ARMY AND THE AIR FORCE
NATIONAL GUARD BUREAU

# REPORT OF SEPARATION AND RECORD OF SERVICE

| REPORT OF SEPARATION AND RECORD OF SERVICE IN THE 1 ARMY | NATIONAL GUARD OF | HAWAII | AND AS A RESERVE OF THE 2 ARMY |
|---|---|---|---|

1. Insert either Army or Air    2. Enlisted personnel only - insert only Army or Air Force

| 1. LAST NAME - FIRST NAME - MIDDLE NAME | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NUMBER |
|---|---|---|
| CLAIBORNE DAHON JAHRON | ARNGUS/HIARNG | Redacted |

| 4. DATE OF ENL | YR 93 | MO 11 | DA 17 | 5a. RANK SPC | 5b. PAY GRADE E4 | 6. DATE OF RANK | YR 91 | MO 05 | DA 01 | 7. DATE OF BIRTH | YR | MO | DA |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| 8a. STATION OR INSTALLATION AT WHICH EFFECTED | | 8b. EFFECTIVE DATE | YR 97 | MO 02 | DA 20 |
|---|---|---|---|---|---|
| Co C, 2/299th Inf, Kahului, HI  96732-2403 | | | | | |

| 9. COMMAND TO WHICH TRANSFERRED | 10. RECORD OF SERVICE | YRS | MOS | DAYS |
|---|---|---|---|---|
| NA | (a) NET SERVICE THIS PERIOD | 03 | 03 | 04 |
| | (b) PRIOR RESERVE COMPONENT SERVICE | 01 | 03 | 27 |
| | (c) PRIOR ACTIVE FEDERAL SERVICE | 03 | 00 | 00 |

| 11. TERMINAL DATE OF RESERVE / MILITARY SERVICE OBLIGATION | YR 97 | MO 02 | DA 20 | (d) TOTAL SERVICE FOR PAY | 07 | 07 | 01 |
|---|---|---|---|---|---|---|---|

| 12. MILITARY EDUCATION  (Course Title, number of weeks, month and year completed) | 13. PRIMARY SPECIALITY NUMBER, TITLE AND DATE AWARDED (Additional speciality numbers and titles) |
|---|---|
| Cargo Specialist Crs, 9wks, 1989.<br>Infantryman Sl. 1, 2wks, 9507. | 11B10, Infantryman, 950726. |

| 14. HIGHEST EDUCATION LEVEL SUCCESSFULLY COMPLETED<br>SECONDARY / HIGH SCHOOL 12 YRS (Gr 1-12) COLLEGE 0 YRS | 15. DECORATIONS, MEDALS, BADGES, COMMENDATIONS, CITATIONS AND CAMPAIGN RIBBONS AWARDED THIS PERIOD (State Awards may be included) |
|---|---|
| | ARMY-SVC-RBN/NTL-DEF-SVC-MDL-1/GCMDL-ARMY-1/SW-ASIA-SVC-MDL-BSS-3/KU-LIB-MDL(KU)/KU-LIB-MDL(SA)// |

| 16. SERVICEMAN'S GROUP LIFE INSURANCE COV | 17. PERSONNEL SECURITY INVESTIGATION | |
|---|---|---|
| | a. TYPE | b. DATE COMPLETED |
| [X] YES  [ ] NO<br>AMT $ 200,000 | NONE | NA |

18. REMARKS      DEP: 890221-890719 CAARNG: 931117-961021 HIARNG: 961022-970220
NGB Form 22 and NGB Form 55 were mailed by certified mail to the individual's last known address as shown in item 19.
At the time he enlisted, service member was erroneously contracted for a term of service beyond his normal eight-year service obligation. This was contrary to his original intent to enlist for a period of service which should fulfill that obligation. As such having completed that obligation he is concurrently discharged.

| 19. MAILING ADDRESS AFTER SEPARATION  (Street, RFD, City, County, State and Zip Code) | 20. SIGNATURE OF PERSON BEING SEPARATED |
|---|---|
| P.O. Box 1632<br>Hakaiao, HI  96768 | SOLDIER NOT AVAILABLE TO SIGN |

| 21. TYPED NAME, GRADE AND TITLE OF AUTHORIZING OFFICER | 22. SIGNATURE OF OFFICER AUTHORIZED TO SIGN |
|---|---|
| JARY F. TERASHIMA, MOI<br>Personnel Records Chief | |

| 23. AUTHORITY AND REASON | | | |
|---|---|---|---|
| NGR 600-200, Expiration Term of Service. | | | |
| 24. CHARACTER OF SERVICE<br>HONORABLE | 25. TYPE OF CERTIFICATE USED<br>NGB Form 55 | 26. REENLISTMENT ELIGIBILITY<br>RE-1 | |
| 27.  [ ] REQUEST   [ ] DECLINE COPIES OF MY NGB FORM 22   INITIALS | | | |

NGB FORM 22
1 FEB 83    (Replaces NGB Form 22, dated 15 Oct 76 and NGB Form 22-1, dated 1 Jun 76, which are obsolete)

MPRJ COPY (3)

# ENLISTMENT / REENLISTMENT DOCUMENT
## ARMED FORCES OF THE UNITED STATES



### Privacy Act Statement

**AUTHORITY:** 5 USC 3331; 32 USC 708; 44 USC 708 and 3101; 10 USC 133, 265, 275, 504, 508, 510, 591, 672(d), 678, 837, 1007, 1071 through 1087, 1168, 1169, 1475 through 1480, 1553, 2107, 2122, 3012, 5031, 8012, 8033, 8496, and 9411; 14 USC 351 and 632; and Executive Order 9397, November 1943 (SSN).

**PRINCIPAL PURPOSES:** To record enlistment or reenlistment into the U.S. Armed Forces. This information becomes a part of the subject's military personnel records which are used to document promotion, reassignment, training, medical support, and other personnel management actions. The purpose of soliciting the SSN is for positive identification.

**ROUTINE USES:** This form becomes a part of the Service's Enlisted Master File and Field Personnel File. All uses of the form are internal to the relevant Service.

**DISCLOSURE:** Voluntary; however, failure to furnish personal identification information may negate the enlistment / reenlistment application.

## A. ENLISTEE / REENLISTEE IDENTIFICATION DATA

| 1. NAME *(Last, First, Middle)*<br>CLAIBORNE DAMON JAHRON | 2. SOCIAL SECURITY NUMBER   Redacted | | |
|---|---|---|---|
| 3. HOME OF RECORD *(Street, City, State, ZIP Code)*<br>670 WAIALE RD#4107<br>WAILUKU, HI 96732 | 4. PLACE OF ENLISTMENT / REENLISTMENT *(Mil. Installation, City, State)*<br>HONOLULU MEPS<br>HI 96850 | | |

| 5. DATE OF ENLISTMENT /<br>REENLISTMENT *(YYMMDD)*<br>980128 | 6. DATE OF BIRTH *(YYMMDD)*<br>Redact | 7. PREV MIL SVC UPON ENL / REENLIST | YEARS | MONTHS | DAYS |
|---|---|---|---|---|---|
| | | a. Total Active Military Service | | | |
| | | b. Total Inactive Military Service | | | |

## B. AGREEMENTS

**8.** I am enlisting / reenlisting in the United States *(list branch of service)* **ARMY**
this date for **3** years and **00** weeks beginning in pay grade **E-4**. The additional details of my enlistment / reenlistment are in Section C and Annex(es) **A B** .

### a. FOR ENLISTMENT IN A DELAYED ENTRY / ENLISTMENT PROGRAM (DEP):

I understand that I will be ordered to active duty as a Reservist unless I report to the place shown in item 4 above by *(list date (YYMMDD))* _____ for enlistment in the Regular component of the United States *(list branch of service)* _____ for not less than _____ years and _____ weeks. My enlistment in the DEP is in a nonpay status. I understand my period of time in the DEP is **NOT** creditable for pay purposes upon entry into a pay status. However, I also understand that this time is counted toward fulfillment of my military service obligation or commitment. I must maintain my current qualifications and keep my recruiter informed of any changes in my physical or dependency status, moral qualifications, and mailing address.

### b. Remarks: *(If none, so state.)* **NONE**

c. The agreements in this section and attached annex(es) are all the promises made to me by the Government.
**ANYTHING ELSE ANYONE HAS PROMISED ME IS NOT VALID AND WILL NOT BE HONORED.**
*(Initials of Enlistee / Reenlistee)* _____.        *(Continued on reverse side.)*

**DD Form 4/1, MAY 88**       *Previous editions may be used.*    2099/146

| NAME OF ENLISTEE / REENLISTEE (Last, First, Middle) | SOCIAL SECURITY NO. OF ENLISTEE / REENLISTEE |
|---|---|
| CLAIBORNE DAMON JAHRON | Redacted |

## D. CERTIFICATION AND ACCEPTANCE

**13a.** My acceptance for enlistment is based on the information I have given in my application for enlistment. If any of that information is false or incorrect, this enlistment may be voided or terminated administratively by the Government or I may be tried by a Federal, civilian, or military court and, if found guilty, may be punished.

**I CERTIFY THAT I HAVE CAREFULLY READ THIS DOCUMENT. ANY QUESTIONS I HAD WERE EXPLAINED TO MY SATISFACTION. I FULLY UNDERSTAND THAT ONLY THOSE AGREEMENTS IN SECTION B OF THIS DOCUMENT OR RECORDED ON THE ATTACHED ANNEX(ES) WILL BE HONORED. ANY OTHER PROMISES OR GUARANTEES MADE TO ME BY ANYONE ARE WRITTEN BELOW:** (If none, X "NONE" and initial.)

[X] NONE *DC* (Initials of enlistee / reenlistee)

| b. SIGNATURE OF ENLISTEE / REENLISTEE | c. DATE SIGNED (YYMMDD) |
|---|---|
| | 980128 |

**14. SERVICE REPRESENTATIVE CERTIFICATION**

a. On behalf of the United States (list branch of service) _____ **ARMY** _____ , I accept this applicant for enlistment. I have witnessed the signature in item 13b to this document. I certify that I have explained that only those agreements in Section B of this form and in the attached Annex(es) will be honored, and any other promises made by any person are not effective and will not be honored.

| b. NAME (Last, First, Middle) | c. PAY GRADE | d. UNIT / COMMAND NAME |
|---|---|---|
| CHUN HAROLD K | E-8 | USA RECRUITING BATTALION |
| e. SIGNATURE | f. DATE SIGNED (YYMMDD) | g. UNIT / COMMAND ADDRESS (City, State, ZIP Code) |
| | 980128 | PORTLAND OR 97230 |

## E. CONFIRMATION OF ENLISTMENT OR REENLISTMENT

**15. IN THE ARMED FORCES EXCEPT THE NATIONAL GUARD (ARMY OR AIR):**

I, **DAMON JAHRON CLAIBORNE** _____ , do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God.

**16. IN THE NATIONAL GUARD (ARMY OR AIR):**

I, _____ , do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the State of _____ against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the Governor of _____ and the orders of the officers appointed over me, according to law and regulations. So help me God.

**17. IN THE NATIONAL GUARD (ARMY OR AIR):**

I do hereby acknowledge to have voluntarily enlisted / reenlisted this _____ day of _____ _____ in the _____ National Guard and as a Reserve of the United States (list branch of service) _____ with membership in the _____ National Guard of the United States for a period of _____ years, _____ months, _____ days, under the conditions prescribed by law, unless sooner discharged by proper authority.

| 18a. SIGNATURE OF ENLISTEE / REENLISTEE | b. DATE SIGNED (YYMMDD) |
|---|---|
| | 980128 |

**19. ENLISTMENT / REENLISTMENT OFFICER CERTIFICATION**

a. The above oath was administered, subscribed, and duly sworn to (or affirmed) before me this date.

| b. NAME (Last, First, Middle) | c. PAY GRADE | d. UNIT / COMMAND NAME |
|---|---|---|
| FLEMING SCOTT A | O-4 | HONOLULU MEPS |
| e. SIGNATURE | f. DATE SIGNED (YYMMDD) | g. UNIT / COMMAND ADDRESS (City, State, ZIP Code) |
| | 980128 | HONOLULU HI 96850 |

**DD Form 4/2, MAY 88**                    *Previous editions may be used.*

000581



Circle the appropriate copy designator

Copy 1          Copy 2          Copy 3          Copy 4

## PERSONNEL ACTION
For use of this form, see AR 600-8-6 and DA PAM 600-8-21; the proponent agency is ODCSPER

### DATA REQUIRED BY THE PRIVACY ACT OF 1974

| | |
|---|---|
| AUTHORITY: | Title 5, Section 3012; Title 10, USC; E.O. 9397 |
| PRINCIPAL PURPOSE: | Used by soldier in accordance with DA PAM 600-8-21 when requesting a personnel action on his/her own behalf (Section III). |
| ROUTINE USES: | To initiate the processing of a personnel action being requested by the soldier. |
| DISCLOSURE: | Voluntary. Failure to provide social security number may result in a delay or error in processing of the request for personnel action. |

| 1. THRU (Include ZIP Code)<br>Commander,<br>593rd Corps Support Group<br>Fort Lewis, WA 98433 | 2. TO (Include ZIP Code)<br>Commander,<br>22nd Personnel Service Battalion<br>Fort Lewis, WA 98433 | 3. FROM (Include ZIP Code)<br>Commander,<br>528th Quartermaster Company<br>Fort Lewis, WA 98433 |
|---|---|---|

### SECTION I - PERSONAL IDENTIFICATION

| 4. NAME (Last, First, MI)<br>CLAIBORNE, DAMON | 5. GRADE OR RANK/PMOS/AOC<br>SPC/92Y | 6. SOCIAL SECURITY NUMBER<br>Redacted |
|---|---|---|

### SECTION II - DUTY STATUS CHANGE (AR 600-8-6)

7. The above soldier's duty status is changed from **PRESENT FOR DUTY** to

**CIVILIAN CONFINEMENT** effective **1300** hours, **28 OCTOBER** **2004**

### SECTION III - REQUEST FOR PERSONNEL ACTION

8. I request the following action: (Check as appropriate)

| | | |
|---|---|---|
| Service School (Enl only) | Special Forces Training/Assignment | Identification Card |
| ROTC or Reserve Component Duty | On-the-Job Training (Enl only) | Identification Tags |
| Volunteering For Overseas Service | Retesting in Army Personnel Tests | Separate Rations |
| Ranger Training | Reassignment Married Army Couples | Leave - Excess/Advance/Outside CONUS |
| Reassignment Extreme Family Problems | Reclassification | Change of Name/SSN/DOB |
| Exchange Reassignment (Enl only) | Officer Candidate School | Other (Specify) |
| Airborne Training | Asgmt of Pers with Exceptional Family Members | |

| 9. SIGNATURE OF SOLDIER (When required) | 10. DATE (YYYYMMDD) |
|---|---|

### SECTION IV - REMARKS (Applies to Sections II, III, and V) (Continue on separate sheet)

### SECTION V - CERTIFICATION/APPROVAL/DISAPPROVAL

11. I certify that the duty status change (Section II) or that the request for personnel action (Section III) contained herein ·

| [X] HAS BEEN VERIFIED | [ ] RECOMMEND APPROVAL | [ ] RECOMMEND DISAPPROVAL | [ ] IS APPROVED | [ ] IS DISAPPROVED |
|---|---|---|---|---|

| 12. COMMANDER/AUTHORIZED REPRESENTATIVE<br>JENNIFER E. JOHNSON, CPT, QM, CDR | 13. SIGNATURE | 14. DATE (YYYYMMDD) |
|---|---|---|

**000582**

✱ RETURN TO DUTY FROM INCARCERATION ✱

Circle the appropriate copy designator

Copy 1          Copy 2          Copy 3          Copy 4

## PERSONNEL ACTION

For use of this form, see AR 600-8-6 and DA PAM 600-8-21; the proponent agency is ODCSPER

### DATA REQUIRED BY THE PRIVACY ACT OF 1974

| | |
|---|---|
| AUTHORITY: | Title 5, Section 3012; Title 10, USC; E.D. 9397. |
| PRINCIPAL | Used by soldier in accordance with DA PAM 600-8-21 when requesting a personnel action on his/her own behalf (Section III). |
| ROUTINE USES: | To initiate the processing of a personnel action being requested by the soldier. |
| DISCLOSURE: | Voluntary. Failure to provide social security number may result in a delay or error in processing of the request for personnel action. |

| 1. THRU (Include ZIP Code) | 2. TO (Include ZIP Code) | 3. FROM (Include ZIP Code) |
|---|---|---|
| Commander, | Commander, | Commander, |
| 44th Corps Support Battalion | 22nd Personnel Services Battalion | 528th Quartermaster Company |
| Fort Lewis, Wa. 98433 | Fort Lewis, Wa 98433 | Fort Lewis, Wa 98433 |

### SECTION I - PERSONAL IDENTIFICATION

| 4. NAME (Last, First, MI) | 5. GRADE OR RANK/PMOS/AOC | 6. SOCIAL SECURITY NUMBER |
|---|---|---|
| Claiborne, Damon J. | E4/42F10 | Redacted |

### SECTION II - DUTY STATUS CHANGE (AR 600-8-6)

7. The above soldier's duty status is changed from   Civilian Confinement   to

Present For Duty          effective   630   hours.   06 Jan 2006

### SECTION III - REQUEST FOR PERSONNEL ACTION

8. I request the following action: (Check as appropriate)

| | | |
|---|---|---|
| Service School (Enl only) | Special Forces Training/Assignment | Identification Card |
| ROTC or Reserve Component Duty | On-the-Job Training (Enl only) | Identification Tags |
| Volunteering For Overseas Service | Retesting in Army Personnel Tests | Separate Rations |
| Ranger Training | Reassignment/Married Army Couples | Leave - Excess/Advance/Outside CONUS |
| Reassignment Extreme Family Problems | Reclassification | Change of Name/SSN/DOB |
| Exchange Reassignment (Enl only) | Officer Candidate School | Other (Specify) |
| Airborne Training | Assignof Pers with Exceptional Family Members | |

| 9. SIGNATURE OF SOLDIER (When required) | 10. DATE (YYYYMMDD) |
|---|---|

### SECTION IV - REMARKS (Applies to Sections II, III, and V) (Continue on separate sheet)

### SECTION V - CERTIFICATION/APPROVAL/DISAPPROVAL

11. I certify that the duty status change (Section II) or that the request for personnel action (Section III) contained herein

| HAS BEEN VERIFIED | RECOMMEND APPROVAL | RECOMMEND DISAPPROVAL | IS APPROVED | IS DISAPPROVED |
|---|---|---|---|---|

| 12. COMMANDER/AUTHORIZED REPRESENTATIVE | 13. SIGNATURE | 14. DATE (YYYYMMDD) |
|---|---|---|
| Scott L. McKendall, SSG, QM, CDR | | 2006 01 ?? |

000583

## SERVICE COMPUTATION FOR SEPARATION

| 1. NAME | | | | 2. SSN | | | 3. DOB | | 4. BR | |
|---|---|---|---|---|---|---|---|---|---|---|
| CLAIBORNE, DAMON JAHRON | | | | Redacted | | | R | | | |

| 5. DATE OF ENTRY ON CURRENT TOUR | a. YEAR 1998 | b. MONTH 01 | c. DAY 28 |
|---|---|---|---|
| 6. DATE OF ACCEPTANCE OF RA APPOINTMENT | a. YEAR | b. MONTH | c. DAY |

### 7. ENLISTED SERVICE

| FROM | | | TO | | | LT | ACTIVE PERIODS | | | INACTIVE PERIODS | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| YEAR | MONTH | DAY | YEAR | MONTH | DAY | | YEAR | MONTH | DAY | YEAR | MONTH | DAY |
| 1989 | 07 | 20 | 1992 | 07 | 19 | 000 | 03 | 00 | 00 | | | |
| 1992 | 07 | 20 | 1993 | 11 | 16 | 000 | | | | 01 | 03 | 27 |
| 1993 | 11 | 17 | 1993 | 12 | 16 | 000 | 00 | 01 | 00 | | | |
| 1993 | 12 | 17 | 1997 | 02 | 20 | 000 | | | | 03 | 02 | 04 |
| 1998 | 01 | 28 | 2015 | 07 | 09 | 428 | 16 | 03 | 04 | | | |
| TOTALS | | | | | | | 19 | 04 | 04 | 04 | 06 | 01 |
| TOTALS CONVERTED TO MONTHS AND DAYS | | | | | | | | 232 | 04 | | 54 | 01 |

### 8. WARRANT OFFICER SERVICE

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| TOTALS | | | | | | | | | | | | |
| TOTALS CONVERTED TO MONTHS AND DAYS | | | | | | | | | | | | |

### 9. COMMISSIONED OFFICER

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| TOTALS | | | | | | | | | | | | |
| TOTALS CONVERTED TO MONTHS AND DAYS | | | | | | | | | | | | |

| 10. TOTAL ACTIVE SERVICE | 19 | 04 | 04 | | | |
|---|---|---|---|---|---|---|
| 11. TOTAL INACTIVE SERVICE | | | | 04 | 06 | 01 |
| 12. CONSTRUCTIVE SERVICE FOR MC/DC | | | | 00 | 00 | 00 |
| 13. TDRL SERVICE | | | | 00 | 00 | 00 |
| 14. TOTAL SERVICE PRIOR TO CURRENT TOUR | 06 | 04 | 23 | | | |
| 15. BASIC PAY ENTRY DATE (Subtract #14 from #5) | 1991 09 05 | | | | | |
| 16. SEPARATION DATE | 2015 07 09 | | | | | |
| 17. LESS DATE OF ENTRY ON CURRENT TOUR (See Item #5) | 1998 01 28 | | | | | |
| 18. SUBTOTAL | 17 | 05 | 12 | | | |
| 19. PLUS ACTIVE SERVICE PRIOR TO CURRENT TOUR | 01 | 10 | 22 | | | |
| 20. TOTAL ACTIVE SERVICE | 19 | 04 | 04 | | | |
| 21. PLUS INACTIVE SERVICE (See Item #11) | | | | 04 | 06 | 01 |
| 22. TOTAL SERVICE FOR BASIC PAY PURPOSES | 23 | 10 | 05 | | | |
| 23. TOTAL SERVICE FOR PERCENTAGE PURPOSES (1405 Service) | 19 | 10 | 16 | | | |

| 24. RA XRES | 25. AUS GRADE | 26. RA GRADE E06 | 27. RESERVE |
|---|---|---|---|

| 28. REMARKS | 29. HIGHEST AD GRADE HELD E06 |
|---|---|
| | 30a. HOR See Continuation Page |
| | 30b. PL EAD See Continuation Page |

30c. 18 YR AFS AS NOV 81

YES ☐     NO ☒

| 31. COMPUTED BY TRANSPROC LUCIAN MCLEMORE   07 JUL 2015 | 32. REVIEWER |
|---|---|

**Service Computation**                    **AUTOMATED**



**DEPARTMENT OF THE ARMY**
U.S. ARMY HUMAN RESOURCES COMMAND
1600 SPEARHEAD DIVISION AVENUE DEPARTMENT 300
FORT KNOX, KY  40122-5300

AHRC-EPZ                                                                                                    14 January 2015

MEMORANDUM THRU Deputy Chief of Staff G-1, 300 Army Pentagon, Washington, DC  20310-0030

FOR Assistant Secretary of the Army, Manpower and Reserve Affairs, 300 Army Pentagon, Washington, DC  20310-0300

SUBJECT:  Separation Under the Provisions of AR 635-200, Chapter 5-3, (Secretary Plenary Authority) – SSG Claiborne, Damon J.

1.  The request for separation of SSG Damon J. Claiborne is forwarded for consideration by the Assistant Secretary of the Army, Manpower and Reserve Affairs.

2.  SSG Claiborne is an enlisted Soldier with over 19 years of active federal service. The Soldier plead guilty in the Kitsap County Superior Court, Washington, to one count of child molestation in the second degree and was sentenced to 15 months incarceration.  He was subsequently directed for separation under AR 635-200, chapter 14-5, Conviction by Civil Court, with a General (Under Honorable Conditions) discharge. The execution of separation was suspended 12 months and later vacated.  He is now being recommended for separation under Army Directive 2013-21 (Initiating Separation Proceedings and Prohibiting Overseas Assignment for Soldiers Convicted of Sex Offenses).

3.  The Commanding General, MG Kenneth R. Dahl, Headquarters, I Corps, recommends separation from the Army with a General (Under Honorable Conditions) Discharge.

4.  Point of contact is Ms. Louise Jones, (502) 613-5453, DSN 983-5453.

FOR THE COMMANDER:

HENKEL.LOUIS.OWEN. Redacted PII
DOUGLAS F. STITT
Colonel, U.S. Army
Director, Enlisted
   Personnel Management

**000585**



**DEPARTMENT OF THE ARMY**
U.S. ARMY HUMAN RESOURCES COMMAND
1600 SPEARHEAD DIVISION AVENUE
FORT KNOX, KY 40122-5306

REPLY TO
ATTENTION OF

AHRC-EPF-M

25 Nov 2014

MEMORANDUM FOR Commander, I CORPS STB, FT. LEWIS, WA 98433

SUBJECT: Suspension of Approved Retirement – SSG CLAIBORNE, DAMON, Redacted PII Redacted PII

1. The approved retirement pertaining to the above named Soldier is suspended and the retirement orders will be revoked or rescinded as appropriate. The approved retirement will remain in effect.

2. Upon completion of the current investigation, if administrative elimination is not effected, the Soldier will be retired on the first day of the month following the month charges are dismissed. Waivers are approved only in cases of fully documented extreme hardship to the Soldier or his/her immediate family.

3. If an administrative elimination board is convened and the Soldier receives a discharge as part of his/her punishment, the approved retirement will be revoked. If punishment given does not include discharge, the Soldier will be retired in the grade held on the date of retirement, on the first day of the month following the month the administrative elimination action is completed.

4. The personnel officer will ensure that a complete copy of the application and supporting documents are forwarded for filing in the Soldier's OMPF IAW Table 2-1, AR 600-8-104.

5. Inform the Soldier of this decision and furnish a copy of this correspondence to the Soldier.

FOR THE COMMANDER:

RONALD A. SIMONS
Chief, Enlisted Retirements
and Separations

**000586**



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, 42D MILITARY POLICE BRIGADE
BUILDING 2007B, 2D STREET,
BOX 339500, MAIL STOP 55
JOINT BASE LEWIS-MCCHORD, WASHINGTON  98433

AFZH-MP                                                           OCT 27 2014

*RRL  31OCT*

MEMORANDUM THRU Commander, I Corps, Joint Base Lewis-McChord, Washington 98433

FOR Headquarters, Department of the Army, ATTN: AHRC-EPR-F, 1600 Spearhead Division Avenue, Fort Knox, Kentucky 40122

SUBJECT:  Request for Suspension of Approved Retirement Orders for Staff Sergeant Damon J. Claiborne, Alpha Company, Headquarters and Headquarters Battalion, I Corps

1.  Staff Sergeant Claiborne currently has approved retirement orders dated 27 January 2014.  He is also pending separation in accordance with Army Directive 2013-21, under the provision of Army Regulation 635-200 (Active Duty Enlisted Administrative Separations), 6 September 2011, chapter 5-3.  His separation packet was digitally sent to HRC for adjudication on 27 August 2014.  I hereby request that Staff Sergeant Claiborne's retirement orders be suspended until a determination has been made on his separation.

2.  POC for this action is Captain Benjamin M. Hewett at benjamin.hewett@us.army.mil or 253-477-1913.

2 Encls                                              DAVID CHASE
1.  Retirement Order                                 COL, MP
2.  Separation Packet                                Commanding

**000587**



**DEPARTMENT OF THE ARMY**
US ARMY INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, US ARMY GARRISON-YONGSAN
UNIT 15333
APO AP 96205-5333

IMYN-ZA                                                          6 January 2014

MEMORANDUM FOR USAG-Yongsan Transition Center, Unit # 15742, APO AP 96205-5742

SUBJECT: Application for Voluntary Retirement - Claiborne, Damon J., Redacted PII SSG, 92F30

1. The request for voluntary retirement submitted by, SSG Claiborne, Damon J, is approved. SSG Claiborne has completed 20 years of active federal service.

2. The soldier must initiate Army Career and Alumni Program (ACAP) services as soon as possible. Public Law mandates that the Soldier receive the required Pre-separation Counseling (DD Form 2848) a minimum of 90 days prior to his/her separation or retirement date. If the Soldier has less than 90 days remaining prior to separation and/or retirement, the Soldier must contact the supporting local ACAP Center as soon as possible and schedule the required Pre-separation Counseling. The Soldier is not authorized to separate/retire without having a completed DD Form 2648 at the servicing Transition Center.

3. The servicing MPD will initiate appropriate transactions to reflect the effective date of retirement. Also, the personnel officer will ensure a complete copy of the application and all allied documents are forwarded for filling in the Soldier's OMPF IAW Table 2-1, AR 600-8-104.

4. The point of contact for this memorandum is Hyun Jin Kim at DSN 738-7621 or e-mail hyunjin.kim14.civ@mail.mil.

MICHAEL E. MASLEY
COL, AG
Commanding

# CAREER STATUS BONUS (CSB) ELECTION
*(Read instructions before completing form.)*

## PRIVACY ACT STATEMENT

**AUTHORITY:** 37 U.S.C.Section 354; 10 U.S.C. Section 1409; DoD Financial Management Regulation, Volume 7A, Chapter 66; and E.O. 9397 (SSN).

**PRINCIPAL PURPOSE(S):** To record a member's eligibility and election to receive or not receive the Career Status Bonus with reduced retired pay (REDUX) and to adjust such retired pay according to the member's election.

**ROUTINE USE(S):** To the Internal Revenue Service to report taxable earnings and taxes withheld, accounting, and tax audits, and to compute or resolve tax liability or tax levies; to the National Finance Center, Office of Thrift Savings Plan, for participating service members.

**DISCLOSURE:** Voluntary; however, failure to provide the requested information by the time instructed by the member's branch of Service could result in an irrevocable determination affecting the amount of retired pay the individual may later qualify to receive and disqualification for electing the Career Status Bonus.

## SECTION I - PERSONAL IDENTIFICATION *(To be completed by Service Officials)*

| 1. NAME *(Last, First, Middle Initial)* | 2. SSN | 3. RANK/PAY GRADE/BRANCH OF SERVICE |
|---|---|---|
| DAMON, CLAIBORNE J. | Redacted PII | SGT/E-5/ARMY |

| 4. DIEMS *(YYYYMMDD)* | 5. DATE FOR DETERMINATION OF ACTIVE DUTY SERVICE COMPLETED *(YYYYMMDD)* | 6. DATE OF NOTIFICATION *(YYYYMMDD)* |
|---|---|---|
| 19890221 | 19960407 | 20110325 |

## SECTION II - DETERMINATION OF ELIGIBILITY *(To be completed by Service Officials)*

7. You may be eligible to elect a Career Status Bonus (CSB). To be eligible, you must:
   (1) Be on active duty,
   (2) Complete 15 years of active duty service,
   (3) Have a DIEMS of August 1, 1986 or later, and
   (4) Qualify under Service regulations for retention to 20 years of active duty service.
Service records indicate that you are currently:

[X]  Eligible to elect the Career Status Bonus.

[ ]  Not eligible to elect the Career Status Bonus.

**REASON NOT ELIGIBLE:**

| 8. DATE OF DETERMINATION *(YYYYMMDD)* | 9. SERVICE AUTHENTICATING REPRESENTATIVE | |
|---|---|---|
| 20110325 | a. PRINTED NAME *(Last, First, Middle Initial)*  BRYANT, JAYNA N. | b. SIGNATURE |

**SECTIONS III, IV, or V** *(To be completed by Member and Witness as directed by Service)*
NOTE:  Complete only one of these sections and then return it as instructed to your Service.
   If not eligible, complete Section III only.
   If eligible and you want to elect to receive the bonus, complete Section IV only.
   If eligible and you do not want to receive the bonus, complete Section V only.

## SECTION III - NOT CURRENTLY ELIGIBLE FOR CAREER STATUS BONUS
Complete this section only if you are not currently eligible to elect the Career Status Bonus and return the form as instructed by your Service.

10. I understand that I am not eligible for the Career Status Bonus at this time and that my ineligibility does not preclude my continued service to retirement if my Service so permits. I understand that I will not receive a bonus and I remain under the High-3 retirement system. I understand that my Service will notify me if I later become eligible to elect the bonus.

| a. SIGNATURE | b. DATE SIGNED *(YYYYMMDD)* |
|---|---|
| | |

### 11. WITNESS

| a. PRINTED NAME *(Last, First, Middle Initial)* | b. RANK/PAY GRADE | c. POSITION/DUTY TITLE |
|---|---|---|
| | | |
| d. ORGANIZATION | e. ORGANIZATIONAL ADDRESS | |
| f. SIGNATURE | | g. DATE SIGNED *(YYYYMMDD)* |

**DD FORM 2839, APR 2009**     PREVIOUS EDITION IS OBSOLETE.     Page 1 of 3 Pages
Adobe Professional 8.0

000589

**SECTION IV - ELIGIBLE AND ELECTING TO RECEIVE THE CAREER STATUS BONUS**
Complete this section only if you are eligible and you desire to elect to receive the Career Status Bonus. Then return the form as instructed by your Service.

12. I elect to receive the Career Status Bonus payment, with payments as indicated in block 12a below. I make this election upon my attainment of 15 years of active duty service and having been determined eligible for the bonus by my Service. I understand that once the election is effective it may not be revoked. My election is effective once received and accepted at the 15th year of service, or if later, the date received and determined acceptable by my Service, but no later than the date that is six months after being notified of my eligibility. I understand that if I receive the CSB in error, I must repay the full, before-tax bonus amount. I agree to remain on continuous active duty, subject to Service regulations, until I attain a minimum of 20 years of such service. If I fail to complete such service, I understand that I will be required to repay a share of the total ($30,000) bonus payment in proportion to the amount of service I failed to complete compared to the additional service I agreed to serve. Any unpaid installments will be credited to my repayment. If I am separated prior to 20 years of service, I consent to withholding from current pay, final pay, or any other money due me to satisfy this indebtedness. I further consent to such withholding at a rate sufficient to satisfy this indebtedness no later than my separation, and understand that this could result in the withholding of 100% of any current pay, final pay, or other money due me. I further understand that if and when I do retire, it will be under the provisions of the 1986 Military Retirement Reform Act (1986 MRRA, known as REDUX), and that my future retired pay, if based on length of service, will be reduced under such provisions in the form of a reduced multiplier before age 62 and annual Cost-of-Living Adjustments (COLAs) that are 1 percentage point less than I would otherwise receive both before and after age 62, but with a one-time catch-up COLA adjustment at age 62. I have received the Fact Sheet of Information for Eligible Career Status Bonus Members, explaining the details and effects of making this election.

a. I ELECT TO RECEIVE THE CAREER STATUS BONUS AS FOLLOWS (X the desired option):

| | | |
|---|---|---|
| [X] **(1) A SINGLE LUMP SUM PAYMENT OF $30,000** | [ ] **(4) FOUR ANNUAL PAYMENTS OF $7,500** | |
| [ ] **(2) TWO ANNUAL PAYMENTS OF $15,000** | [ ] **(5) FIVE ANNUAL PAYMENTS OF $6,000** | |
| [ ] **(3) THREE ANNUAL PAYMENTS OF $10,000** | | |

NOTE: When multiple payments are to be made, the second and later payments are made in January of each succeeding year.

| b. SIGNATURE | c. DATE SIGNED (YYYYMMDD) |
|---|---|
| *(signature)* | 20110322 |

**13. WITNESS**

| a. PRINTED NAME (Last, First, Middle Initial) | b. RANK/PAY GRADE | c. POSITION/DUTY TITLE |
|---|---|---|
| APPLEGATE, GREGORY S. | LTC/0-5 | BATTALION COMMANDER |

| d. ORGANIZATION | e. ORGANIZATIONAL ADDRESS |
|---|---|
| HQ, 4TH BRIGADE SUPPORT BN | KANDAHAR, AF APO AE 09355 |

| f. SIGNATURE | g. DATE SIGNED (YYYYMMDD) |
|---|---|
| *(signature)* | 20110322 |

**SECTION V - ELIGIBLE AND ELECTING NOT TO RECEIVE THE CAREER STATUS BONUS**
Complete this section only if you are eligible to receive the Career Status Bonus but you desire NOT to elect the bonus. Then return the form as instructed by your Service.

14. I elect not to receive the Career Status Bonus upon my attainment of 15 years of active duty service. I understand that once the election is effective it may not be revoked. My election is effective once received and accepted at the 15th year of service, or if later, the date received and determined acceptable by my Service, but no later than the date that is six months after being notified of my eligibility. I understand that I will not have any further opportunity to elect to receive this bonus. I understand that I will not receive a bonus payment and that I remain under the High-3 retirement system. I have received the Fact Sheet of Information for Eligible Career Status Bonus Members, explaining the details and effects of making this election not to receive this bonus.

| a. SIGNATURE | b. DATE SIGNED (YYYYMMDD) |
|---|---|
| | |

**15. WITNESS**

| a. PRINTED NAME (Last, First, Middle Initial) | b. RANK/PAY GRADE | c. POSITION/DUTY TITLE |
|---|---|---|
| | | |

| d. ORGANIZATION | e. ORGANIZATIONAL ADDRESS |
|---|---|
| | |

| f. SIGNATURE | g. DATE SIGNED (YYYYMMDD) |
|---|---|
| | |

**SECTION VI - SERVICE RECORDING OF ELECTION**
(To be completed by Service Officials after member makes an election to receive the bonus)

**16. CSB ELECTION EFFECTIVE DATE** (YYYYMMDD)

**17. RECORDING OFFICIAL**

| a. PRINTED NAME (Last, First, Middle Initial) | b. RANK/PAY GRADE | c. POSITION/DUTY TITLE |
|---|---|---|
| APPLEGATE, GREGORY S. | LTC/0-5 | BATTALION COMMANDER |

| d. ORGANIZATION | e. ORGANIZATIONAL ADDRESS | |
|---|---|---|
| HQ, 4TH BRIGADE SUPPORT BN | KANDAHAR, AF APO AE 09355 | |

| f. SIGNATURE | g. DATE SIGNED (YYYYMMDD) |
|---|---|
| *(signature)* | 20110322 |

DD FORM 2839 (BACK), APR 2009                                    Page 2 of 3 Pages

000590

## VOLUME 7A, CHAPTER 66: "CAREER STATUS BONUS/REDUX ELECTION OPTION"

### SUMMARY OF MAJOR CHANGES

All changes are denoted by blue font.

Substantive revisions are denoted by an * symbol preceding the section, paragraph, table, or figure that includes the revision.

Unless otherwise noted, chapters referenced are contained in this volume.

Hyperlinks are denoted by **_bold, italic, blue and underlined font_**.

The previous version dated February 2013 is archived.

| PARAGRAPH | EXPLANATION OF CHANGE/REVISION | PURPOSE |
|---|---|---|
| 6601 | Added new "General" section and renumbered remaining sections accordingly. | Addition |
| 6602 | Changed section name to "Entitlement". | Revision |

000591

DoD 7000.14-R      **Financial Management Regulation**      Volume 7A, Chapter 66

## Table of Contents

VOLUME 7A, CHAPTER 66: "CAREER STATUS BONUS/REDUX ELECTION OPTION" 1

*6601      GENERAL ........................................................................................................... 3

*6602      ENTITLEMENT ................................................................................................. 3

660201.      General Provisions ........................................................................................ 3
660202.      CSB/REDUX Eligibility Notification ............................................................. 3
660203.      CSB Election .................................................................................................. 4

6603      BONUS PAYMENT ........................................................................................... 4

660301.      Payments ....................................................................................................... 4
660302.      Timing of Payment ........................................................................................ 4
660303.      Tax Consideration .......................................................................................... 5

6604      RECOUPMENT .................................................................................................. 5

660401.      Recoupment Computation .............................................................................. 5
660402.      Waiver of CSB Recoupment ........................................................................... 6

Figure 66-1. Recoupment Computational Factors of Fractional Years ...................................... 8

BIBLIOGRAPHY ............................................................................................................... 10

000592

## CHAPTER 66

### CAREER STATUS BONUS/REDUX ELECTION OPTION

**\*6601  GENERAL**

The National Defense Authorization Act for Fiscal Year 2000 (Public Law 106-65, sections 641 through 644) significantly changed the retired pay system for those members of a Uniformed Service who first became members on or after August 1, 1986.  Previously, they were covered by the Military Retirement Reform Act of 1986 (86 MRRA, henceforth referred to as REDUX).  These members may now elect, upon completion of 15 years of active duty in the Uniformed Services, to either retire under the High-3 retirement system or receive a $30,000 career status bonus (CSB) and remain under the REDUX retired pay system.  (For details on the REDUX retirement plan, see title 10 United States Code (U.S.C.) section 1409.

**\*6602  ENTITLEMENT**

660201.        General Provisions

To be eligible for the CSB/REDUX election opportunity at the time the member completes 15 years of active service, all of the criteria listed below must be satisfied simultaneously.  A member who does not meet all criteria at that time, but subsequently does, may not then be given the opportunity to make a CSB/REDUX election, unless otherwise stated or approved by the Secretary of the Military Department concerned.  A member of the Uniformed Service is eligible to make a CSB/REDUX Retirement election only when that member:

A.        is serving on active duty, and

B.        first became a member of a Uniformed Service on or after August 1, 1986( has a Date of Initial Entry to Military/Uniformed Service (DIEMS) of August 1, 1986 or later), and

C.        has completed 15 years of active duty in the Uniformed Service, and

D.        is otherwise eligible, as determined by the Secretary of the Military Department concerned, to serve continuously on the active duty until the completion of 20 years of active duty service.

660202.        CSB/REDUX Eligibility Notification

The Secretary of the Military Department concerned shall notify all members with a DIEMS of August 1, 1986, or later, whether they are eligible to make a CSB/REDUX election. Notification letters will be sent on or shortly before the date individuals complete 14 years and 6 months of active duty.  If a member is not eligible, then the notification will explain why the

000593

member is not eligible for the CSB/REDUX election, and will inform the member whether, under an exception established in guidance promulgated by the Secretary of the Military Department concerned, there will be an opportunity to make a CSB/REDUX election in the future, if the member's impediment to eligibility is subsequently eliminated. The Secretary of the Military Department concerned will promptly notify a member who subsequently becomes eligible.

    660203.        CSB Election

To make a CSB/REDUX election, a member submits the Career Status Bonus Election Form (DD Form 2839) or Service equivalent form, and any other Service required forms as directed in the eligibility notification not later than the date the member attains 15 years of active military service or 6 months after the eligibility notification is sent, whichever is later.

6603   BONUS PAYMENT

    660301.        Payments

Eligible members may elect to receive the CSB under one of the following options:

    A.        One payment of $30,000; or

    B.        Two annual installments of $15,000 each; or

    C.        Three annual installments of $10,000 each; or

    D.        Four annual installments of $7,500 each; or

    E.        Five annual installments of $6,000 each.

    660302.        Timing of Payment

    A.        <u>Initial Payment</u>. The initial CSB payment must be paid not earlier than the date the member attains 15 years of active service and not later than the end of the first month that begins on or after the date that is 60 days after the date the election is effective.

    <u>Example</u>:   A member who will attain 15 years of active duty service on October 10, 2002, should be sent the CSB/REDUX notification no later than April 10, 2002. The member may complete the necessary forms and return them as directed by the Service concerned, but the election is not effective until October 10, 2002. The Secretary concerned will pay the member the initial payment no earlier than October 10, 2002, and no later than January 31, 2003. The latter date is determined as follows: the date that is 60 days after the effective date of the election is December 9, 2002 so the first month that begins on or after that date is January 2003 – the member must be paid no later than the end of January 2003.

**000594**

B.   <u>Second and Subsequent Payments</u>.  Subsequent annual installments shall be paid on or about January 15th of each year following the calendar year of the initial payment. All CSB payments qualify for deposit to the Uniformed Services Thrift Savings Plan (TSP).  For more information regarding TSP, see Chapter 51.

660303.      Tax Consideration

The CSB, if taxable, is income as of the date on which the payment is made to the member.  The CSB/REDUX is considered tax exempt if the effective date of the election falls within the month in which the member is entitled to combat zone tax exclusion.  See Chapter 44, paragraph 440103, for more information.

6604   RECOUPMENT

660401.      Recoupment Computation

A CSB recipient who fails to serve continuously on active duty until the completion of 20 years of active duty must repay a comparable portion of the CSB received.  The amount of repayment is calculated by: (1) multiplying $30,000 by a factor that is determined by (2) (a) dividing the uncompleted period of active duty by (b) the total continuous active duty required as a result of the CSB/REDUX election.  In making the calculation, months and days must be expressed as decimal fractions of a year (to the nearest .00000001). Each month is $1/12^{th}$ of a year, and each day is $1/360^{th}$ of a year, rounded to the eighth decimal place. (See Figure 66-1 for computation decimals.)  See Examples 1 and 2.  Use the same formula above in computing installment repayment amount, except use the completed (vice uncompleted) time served to determine the bonus amount earned.  Deduct that figure from the installment totals to determine the overpayment (See Example 3).

<u>Example 1</u>:  A member's CSB/REDUX election is effective upon attaining 15 years of active service on October 10, 2001.  The member is obligated to serve through October 10, 2006 (5 full years).  If the member's last day of active duty is December 31, 2002, then the member will have failed to complete 3 years, 9 months and 10 days of required service. The member's repayment is computed as follows:

The period of agreed additional service is: 5 full years

The service not completed is: 3 years, 9 months, and 10 days, or
3 + .75 + .02777778 = 3.77777778 years

The required repayment is:
(3.77777778 / 5) x $30,000 = .75555556 x $30,000 = $22,666.67

<u>Example 2</u>:  A member not initially notified of eligibility for a CSB, was later notified and made a CSB/REDUX election that was effective upon attainment of 16 years, 6 months, and 23 days of service.  The member thus agreed to complete an additional 3 years,

000595

5 months, and 7 days of service, but later separated, failing to complete 2 years, 3 months, and 11 days of that time. This member's repayment is computed as follows:

> The period of agreed additional service is:
> $3 + .41666667 + .01944444 = 3.43611111$ years
>
> and the service not completed is:
> $2 + .25 + .03055556 = 2.28055556$ years
>
> The required repayment is: $(2.28055556 / 3.43611111)$ x \$30,000
> $= .66370251$ x \$30,000 = \$19,911.08

    <u>Example 3</u>.   A member's CSB/REDUX election is effective after attaining 15 years of active service on October 10, 2002 and the member received the first installment of \$15,000.   The member is obligated to serve through October 9, 2007 (5 full years).   The member's last day on active duty is December 31, 2003, after completing only 1 year, 2 months and 20 days of required service.   The member's repayment is computed as follows:

> The period of agreed additional service is: 5 full years.
>
> The service completed is:
>
> 1 year, 2 months, and 20 days, or $1 + .16666667 + .05555556 =$

1.22222223 years

> The amount earned is:  $(1.22222223/5)$ x \$30,000 = $.24444444$ x \$30,000

= \$7,333.33

> The required repayment is:  \$15,000 less \$7,333.33 = \$7,666.67.

       660402.      Waiver of CSB Recoupment

    The Secretary of the Military Department concerned may waive, in whole or in part, the required CSB refund if the Secretary determines that recovery would be against equity and good conscience or contrary to the best interests of the United States.

          A.      The Secretary of the Military Department shall waive the required refund if the member:

                1.      dies; or

                2.      is separated or retired as a result of a physical disability under 10 U.S.C. Chapter 61; or

                3.      is separated under a Service offer for early retirement (such as TERA (Temporary Early Retirement Authority)) or separation program.

000596

B.    The Secretary of the Military Department concerned shall not waive repayment if the member's separation is due to misconduct or if a waiver of repayment would be inconsistent with other prescribed law, regulation, or policy.

000597

Figure 66-1.  Recoupment Computational Factors of Fractional Years

| Mos | Days | Fractional Years | Mos | Days | Fractional Years | Mos | Days | Fractional Years | Mos | Days | Fractional Years |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 1 | 0.00277778 | 1 | 17 | 0.13055555 | 3 | 2 | 0.25555556 | 4 | 18 | 0.38333333 |
| 0 | 2 | 0.00555556 | 1 | 18 | 0.13333333 | 3 | 3 | 0.25833333 | 4 | 19 | 0.38611111 |
| 0 | 3 | 0.00833333 | 1 | 19 | 0.13611111 | 3 | 4 | 0.26111111 | 4 | 20 | 0.38888889 |
| 0 | 4 | 0.01111111 | 1 | 20 | 0.13888889 | 3 | 5 | 0.26388889 | 4 | 21 | 0.39166666 |
| 0 | 5 | 0.01388889 | 1 | 21 | 0.14166666 | 3 | 6 | 0.26666667 | 4 | 22 | 0.39444444 |
| 0 | 6 | 0.01666667 | 1 | 22 | 0.14444444 | 3 | 7 | 0.26944444 | 4 | 23 | 0.39722222 |
| 0 | 7 | 0.01944444 | 1 | 23 | 0.14722222 | 3 | 8 | 0.27222222 | 4 | 24 | 0.4 |
| 0 | 8 | 0.02222222 | 1 | 24 | 0.15 | 3 | 9 | 0.275 | 4 | 25 | 0.40277777 |
| 0 | 9 | 0.025 | 1 | 25 | 0.15277777 | 3 | 10 | 0.27777778 | 4 | 26 | 0.40555555 |
| 0 | 10 | 0.02777778 | 1 | 26 | 0.15555555 | 3 | 11 | 0.28055556 | 4 | 27 | 0.40833333 |
| 0 | 11 | 0.03055556 | 1 | 27 | 0.15833333 | 3 | 12 | 0.28333333 | 4 | 28 | 0.41111111 |
| 0 | 12 | 0.03333333 | 1 | 28 | 0.16111111 | 3 | 13 | 0.28611111 | 4 | 29 | 0.41388889 |
| 0 | 13 | 0.03611111 | 1 | 29 | 0.16388889 | 3 | 14 | 0.28888889 | 4 | 30 | 0.41666667 |
| 0 | 14 | 0.03888889 | 1 | 30 | 0.16666667 | 3 | 15 | 0.29166667 | 5 | 0 | 0.41666667 |
| 0 | 15 | 0.04166667 | 2 | 0 | 0.16666667 | 3 | 16 | 0.29444444 | 5 | 1 | 0.41944444 |
| 0 | 16 | 0.04444444 | 2 | 1 | 0.16944445 | 3 | 17 | 0.29722222 | 5 | 2 | 0.42222222 |
| 0 | 17 | 0.04722222 | 2 | 2 | 0.17222223 | 3 | 18 | 0.3 | 5 | 3 | 0.42499999 |
| 0 | 18 | 0.05 | 2 | 3 | 0.175 | 3 | 19 | 0.30277778 | 5 | 4 | 0.42777777 |
| 0 | 19 | 0.05277778 | 2 | 4 | 0.17777778 | 3 | 20 | 0.30555556 | 5 | 5 | 0.43055555 |
| 0 | 20 | 0.05555556 | 2 | 5 | 0.18055556 | 3 | 21 | 0.30833333 | 5 | 6 | 0.43333333 |
| 0 | 21 | 0.05833333 | 2 | 6 | 0.18333334 | 3 | 22 | 0.31111111 | 5 | 7 | 0.4361111 |
| 0 | 22 | 0.06111111 | 2 | 7 | 0.18611111 | 3 | 23 | 0.31388889 | 5 | 8 | 0.43888888 |
| 0 | 23 | 0.06388889 | 2 | 8 | 0.18888889 | 3 | 24 | 0.31666667 | 5 | 9 | 0.44166666 |
| 0 | 24 | 0.06666667 | 2 | 9 | 0.19166667 | 3 | 25 | 0.31944444 | 5 | 10 | 0.44444444 |
| 0 | 25 | 0.06944444 | 2 | 10 | 0.19444445 | 3 | 26 | 0.32222222 | 5 | 11 | 0.44722222 |
| 0 | 26 | 0.07222222 | 2 | 11 | 0.19722223 | 3 | 27 | 0.325 | 5 | 12 | 0.44999999 |
| 0 | 27 | 0.075 | 2 | 12 | 0.2 | 3 | 28 | 0.32777778 | 5 | 13 | 0.45277777 |
| 0 | 28 | 0.07777778 | 2 | 13 | 0.20277778 | 3 | 29 | 0.33055556 | 5 | 14 | 0.45555555 |
| 0 | 29 | 0.08055556 | 2 | 14 | 0.20555556 | 3 | 30 | 0.33333333 | 5 | 15 | 0.45833333 |
| 0 | 30 | 0.08333333 | 2 | 15 | 0.20833334 | 4 | 0 | 0.33333333 | 5 | 16 | 0.4611111 |
| 1 | 0 | 0.08333333 | 2 | 16 | 0.21111111 | 4 | 1 | 0.33611111 | 5 | 17 | 0.46388888 |
| 1 | 1 | 0.08611111 | 2 | 17 | 0.21388889 | 4 | 2 | 0.33888889 | 5 | 18 | 0.46666666 |
| 1 | 2 | 0.08888889 | 2 | 18 | 0.21666666 | 4 | 3 | 0.34166666 | 5 | 19 | 0.46944444 |
| 1 | 3 | 0.09166666 | 2 | 19 | 0.21944445 | 4 | 4 | 0.34444444 | 5 | 20 | 0.47222222 |
| 1 | 4 | 0.09444444 | 2 | 20 | 0.22222223 | 4 | 5 | 0.34722222 | 5 | 21 | 0.47499999 |
| 1 | 5 | 0.09722222 | 2 | 21 | 0.225 | 4 | 6 | 0.35 | 5 | 22 | 0.47777777 |
| 1 | 6 | 0.1 | 2 | 22 | 0.22777778 | 4 | 7 | 0.35277777 | 5 | 23 | 0.48055555 |
| 1 | 7 | 0.10277778 | 2 | 23 | 0.23055556 | 4 | 8 | 0.35555555 | 5 | 24 | 0.48333333 |
| 1 | 8 | 0.10555555 | 2 | 24 | 0.23333334 | 4 | 9 | 0.35833333 | 5 | 25 | 0.4861111 |
| 1 | 9 | 0.10833333 | 2 | 25 | 0.23611111 | 4 | 10 | 0.36111111 | 5 | 26 | 0.48888888 |
| 1 | 10 | 0.11111111 | 2 | 26 | 0.23888889 | 4 | 11 | 0.36388889 | 5 | 27 | 0.49166666 |
| 1 | 11 | 0.11388889 | 2 | 27 | 0.24166667 | 4 | 12 | 0.36666666 | 5 | 28 | 0.49444444 |
| 1 | 12 | 0.11666666 | 2 | 28 | 0.24444445 | 4 | 13 | 0.36944444 | 5 | 29 | 0.49722222 |
| 1 | 13 | 0.11944444 | 2 | 29 | 0.24722223 | 4 | 14 | 0.37222222 | 5 | 30 | 0.5 |
| 1 | 14 | 0.12222222 | 2 | 30 | 0.25 | 4 | 15 | 0.375 |  |  |  |
| 1 | 15 | 0.125 | 3 | 0 | 0.25 | 4 | 16 | 0.37777777 |  |  |  |
| 1 | 16 | 0.12777777 | 3 | 1 | 0.25277778 | 4 | 17 | 0.38055555 |  |  |  |

See next page for 6 months or more.

000598

Figure 66-1.  Recoupment Computational Factors of Fractional Years (Continued)

| Mos | Days | Fractional Years | Mos | Days | Fractional Years | Mos | Days | Fractional Years | Mos | Days | Fractional Years |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6 | 0 | 0.5 | 7 | 17 | 0.63055555 | 9 | 2 | 0.75555556 | 10 | 18 | 0.88333333 |
| 6 | 1 | 0.50277778 | 7 | 18 | 0.63333333 | 9 | 3 | 0.75833333 | 10 | 19 | 0.88611111 |
| 6 | 2 | 0.50555556 | 7 | 19 | 0.63611111 | 9 | 4 | 0.76111111 | 10 | 20 | 0.88888889 |
| 6 | 3 | 0.50833333 | 7 | 20 | 0.63888889 | 9 | 5 | 0.76388889 | 10 | 21 | 0.89166666 |
| 6 | 4 | 0.51111111 | 7 | 21 | 0.64166666 | 9 | 6 | 0.76666667 | 10 | 22 | 0.89444444 |
| 6 | 5 | 0.51388889 | 7 | 22 | 0.64444444 | 9 | 7 | 0.76944444 | 10 | 23 | 0.89722222 |
| 6 | 6 | 0.51666667 | 7 | 23 | 0.64722222 | 9 | 8 | 0.77222222 | 10 | 24 | 0.9 |
| 6 | 7 | 0.51944444 | 7 | 24 | 0.65 | 9 | 9 | 0.775 | 10 | 25 | 0.90277777 |
| 6 | 8 | 0.52222222 | 7 | 25 | 0.65277777 | 9 | 10 | 0.77777778 | 10 | 26 | 0.90555555 |
| 6 | 9 | 0.525 | 7 | 26 | 0.65555555 | 9 | 11 | 0.78055556 | 10 | 27 | 0.90833333 |
| 6 | 10 | 0.52777778 | 7 | 27 | 0.65833333 | 9 | 12 | 0.78333333 | 10 | 28 | 0.91111111 |
| 6 | 11 | 0.53055556 | 7 | 28 | 0.66111111 | 9 | 13 | 0.78611111 | 10 | 29 | 0.91388889 |
| 6 | 12 | 0.53333333 | 7 | 29 | 0.66388889 | 9 | 14 | 0.78888889 | 10 | 30 | 0.91666667 |
| 6 | 13 | 0.53611111 | 7 | 30 | 0.66666667 | 9 | 15 | 0.79166667 | 11 | 0 | 0.91666667 |
| 6 | 14 | 0.53888889 | 8 | 0 | 0.66666667 | 9 | 16 | 0.79444444 | 11 | 1 | 0.91944444 |
| 6 | 15 | 0.54166667 | 8 | 1 | 0.66944445 | 9 | 17 | 0.79722222 | 11 | 2 | 0.92222223 |
| 6 | 16 | 0.54444444 | 8 | 2 | 0.67222223 | 9 | 18 | 0.8 | 11 | 3 | 0.925 |
| 6 | 17 | 0.54722222 | 8 | 3 | 0.675 | 9 | 19 | 0.80277778 | 11 | 4 | 0.92777778 |
| 6 | 18 | 0.55 | 8 | 4 | 0.67777778 | 9 | 20 | 0.80555556 | 11 | 5 | 0.93055556 |
| 6 | 19 | 0.55277778 | 8 | 5 | 0.68055556 | 9 | 21 | 0.80833333 | 11 | 6 | 0.93333334 |
| 6 | 20 | 0.55555556 | 8 | 6 | 0.68333334 | 9 | 22 | 0.81111111 | 11 | 7 | 0.93611111 |
| 6 | 21 | 0.55833333 | 8 | 7 | 0.68611111 | 9 | 23 | 0.81388889 | 11 | 8 | 0.93888889 |
| 6 | 22 | 0.56111111 | 8 | 8 | 0.68888889 | 9 | 24 | 0.81666667 | 11 | 9 | 0.94166667 |
| 6 | 23 | 0.56388889 | 8 | 9 | 0.69166667 | 9 | 25 | 0.81944444 | 11 | 10 | 0.94444445 |
| 6 | 24 | 0.56666667 | 8 | 10 | 0.69444445 | 9 | 26 | 0.82222222 | 11 | 11 | 0.94722223 |
| 6 | 25 | 0.56944444 | 8 | 11 | 0.69722223 | 9 | 27 | 0.825 | 11 | 12 | 0.95 |
| 6 | 26 | 0.57222222 | 8 | 12 | 0.7 | 9 | 28 | 0.82777778 | 11 | 13 | 0.95277778 |
| 6 | 27 | 0.575 | 8 | 13 | 0.70277778 | 9 | 29 | 0.83055556 | 11 | 14 | 0.95555556 |
| 6 | 28 | 0.57777778 | 8 | 14 | 0.70555556 | 9 | 30 | 0.83333333 | 11 | 15 | 0.95833334 |
| 6 | 29 | 0.58055556 | 8 | 15 | 0.70833334 | 10 | 0 | 0.83333333 | 11 | 16 | 0.96111111 |
| 6 | 30 | 0.58333333 | 8 | 16 | 0.71111111 | 10 | 1 | 0.83611111 | 11 | 17 | 0.96388889 |
| 7 | 0 | 0.58333333 | 8 | 17 | 0.71388889 | 10 | 2 | 0.83888889 | 11 | 18 | 0.96666667 |
| 7 | 1 | 0.58611111 | 8 | 18 | 0.71666667 | 10 | 3 | 0.84166666 | 11 | 19 | 0.96944445 |
| 7 | 2 | 0.58888889 | 8 | 19 | 0.71944445 | 10 | 4 | 0.84444444 | 11 | 20 | 0.97222222 |
| 7 | 3 | 0.59166666 | 8 | 20 | 0.72222223 | 10 | 5 | 0.84722222 | 11 | 21 | 0.975 |
| 7 | 4 | 0.59444444 | 8 | 21 | 0.725 | 10 | 6 | 0.85 | 11 | 22 | 0.97777778 |
| 7 | 5 | 0.59722222 | 8 | 22 | 0.72777778 | 10 | 7 | 0.85277777 | 11 | 23 | 0.98055556 |
| 7 | 6 | 0.6 | 8 | 23 | 0.73055556 | 10 | 8 | 0.85555555 | 11 | 24 | 0.98333334 |
| 7 | 7 | 0.60277777 | 8 | 24 | 0.73333334 | 10 | 9 | 0.85833333 | 11 | 25 | 0.98611111 |
| 7 | 8 | 0.60555555 | 8 | 25 | 0.73611111 | 10 | 10 | 0.86111111 | 11 | 26 | 0.98888889 |
| 7 | 9 | 0.60833333 | 8 | 26 | 0.73888889 | 10 | 11 | 0.86388889 | 11 | 27 | 0.99166667 |
| 7 | 10 | 0.61111111 | 8 | 27 | 0.74166667 | 10 | 12 | 0.86666666 | 11 | 28 | 0.99444445 |
| 7 | 11 | 0.61388889 | 8 | 28 | 0.74444445 | 10 | 13 | 0.86944444 | 11 | 29 | 0.99722223 |
| 7 | 12 | 0.61666666 | 8 | 29 | 0.74722223 | 10 | 14 | 0.87222222 | 11 | 30 | 1 |
| 7 | 13 | 0.61944444 | 8 | 30 | 0.75 | 10 | 15 | 0.875 | 12 | 0 | 1 |
| 7 | 14 | 0.62222222 | 9 | 0 | 0.75 | 10 | 16 | 0.87777777 | | | |
| 7 | 15 | 0.625 | 9 | 1 | 0.75277778 | 10 | 17 | 0.88055555 | | | |

000599

BIBLIOGRAPHY

**CHAPTER 66 - CAREER STATUS BONUS/REDUX ELECTION OPTION**

6601 - GENERAL

> 37 U.S.C. 354
> Public Law 106-65, October 5, 1999
> ASD (FMP) Memo, February 2, 2001

6602 - ENTITLEMENT

> 37 U.S.C. 354
>
> Public Law 106-65, October 5, 1999
> ASD (FMP) Memo, February 2, 2001
> Public Law 107-107, section 620
>     December 28, 2001
> ASD (FMP) (MPP) memo, June 24, 2002

6604 - RECOUPMENT

> 37 U.S.C. 354
>
> ASD (FMP) Memo, February 2, 2001

**000600**

UNDER SECRETARY OF DEFENSE, PERSONNEL & READINESS

# Military Compensation

militarypay.defense.gov

**HOME** **ABOUT▼** **PAY▼** **RETIREMENT▼** **BENEFITS** **TOOLS▼** **TABLES▼** **REPORTS▼** **POLICIES**

PAY » RECOUPMENT » RULES

## Recoupment General Rules

As a general rule, repayment will not be sought if the member's inability to fulfill the eligibility requirements is due to circumstances determined reasonably beyond the member's control:

1. Repayment shall not be sought and any remaining unpaid portion of a pay or benefit due to a member under a written agreement that existed at the time of the member's death, which was not the result of the member's misconduct, is payable as a lump sum in the settlement of the decedent's final military pay account.
2. Repayment shall not be sought and any remaining unpaid portion of a pay or benefit due to a member under a written agreement shall be paid at the time of separation or retirement for a disability described under Chapter 61 of title 10, U.S.C., that was incurred in the line of duty in a combat zone designated by the President or the Secretary of Defense or in a combat-related operation designated by the Secretary of Defense, and/or for a combat-related disability, as defined under section 1413a(e) of title 10, U.S.C.. Repayment will be sought and any unpaid balances may not be paid to members who incur a disability as a result of their misconduct. (See 10 U.S.C. §1207.) In all other instances involving a member's separation for medical reasons not falling under Chapter 61 or section 1413a(e), which were not the result of the member's misconduct, the Secretary concerned has the discretion to determine whether to require repayment of the unearned portion of the pay or benefit, or to pay an unpaid balance of a pay or benefit.
3. Subject to the enlistment authorities under titles 10 and 37, U.S.C., and the relevant regulations of the Secretary concerned, a member paid a bonus or special pay for a period of enlistment in a Military Department, who is discharged for immediate reenlistment or appointment in a Military Department for which no bonus or special pay is paid, may be considered to have completed the full term of service specified in the former enlistment contract, provided the term of the latter reenlistment or appointment includes the remaining period of service from the former enlistment. The member's enlisted bonus or special pay entitlements shall be addressed prior to discharge from a Military Department.
4. Repayment will not be sought and the Secretary concerned will not pay any remaining unpaid portion of a pay or benefit under the following circumstances, unless otherwise authorized by the Secretary concerned under paragraph (5) below:
    - The member's employment in another military specialty or assignment rotation is directed;
    - The member's military specialty or assignment is phased out or eliminated;
    - The member's military specialty or assignment is otherwise affected by a force structure or other mission essential requirement; or,
    - The member's hardship separation or sole survivor discharge from service.
5. Under all other circumstances, the Secretary concerned has the discretion to, at some point in the process, render a case-by-case determination that the member's repayment of, or the Military Department's full payment of an unpaid portion of, a pay or benefit is appropriate based on the following:
    - Contrary to a personnel policy or management objective;
    - Against equity and good conscience; or
    - Contrary to the best interest of the United States.

The Secretary concerned may, through regulation, delegate the authority to make repayment determinations consistent with the criteria set forth above, but not below the O-6 or equivalent level. If delegated, the Military Departments shall specify the level and scope of the authorized delegation in implementing regulations.

000601

# TAIPEI TIMES

## Soldiers sue Army for breach of contract

**ANGRY BAND Their tour of duty has expired and they want to come home, but the US military won't let them -- so eight soldiers are taking the US Army to court**

NY TIMES NEWS SERVICE , NEW YORK



David Qualls, at home in Morrilton, Arkansas last week, on leave from Iraq. A member of the Arkansas National Guard, Qualls is one of eight soldiers planning to file a lawsuit to prevent the Army from requiring them to stay on duty.

**PHOTO: THE NEW YORK TIMES**

The eight soldiers come from places scattered across the country, from this small town an hour northwest of Little Rock to cities in Arizona, New Jersey and New York. In Iraq and Kuwait, where they all work now, most of them hold different jobs in different units, miles apart. Most have never met.

But the eight share a bond of anger: Each says he has been prevented from coming home for good by an Army policy that has barred thousands of soldiers from leaving Iraq this year even though the terms of enlistment they signed up for have run out. And each of these eight soldiers has separately taken the extraordinary step of seeking legal help, through late-night Internet searches and e-mail inquiries from their camps in the conflict zone, or through rounds of phone calls by an equally frustrated wife or mother back home.

With legal support from the Center for Constitutional Rights, a liberal-leaning public interest group, lawyers for the eight men say they will file a lawsuit in federal court in Washington challenging the Army policy, known as stop-loss.

Last spring, the Army instituted the policy for all troops headed to Iraq and Afghanistan, calling it a way to promote continuity within deployed units and to avoid bringing new soldiers in to fill gaps left in units by those who would otherwise have gone home when their enlistments ran out. If a soldier's unit is still in Iraq or Afghanistan, that soldier cannot leave even when his or her enlistment time runs out.

Since then, a handful of National Guardsmen who received orders to report for duty in California and Oregon have taken the policy to court, but the newest lawsuit is the first such challenge by a group of

soldiers. And these soldiers are already overseas -- transporting supplies, working radio communications and handling military contracts, somewhere in the desert.

"You should know I'm not against the war," said David Qualls, one of the plaintiffs and a former full-time soldier who signed up in July last year for a one-year stint in the Arkansas National Guard but now expects to be in Iraq until next year.

"This just isn't about that. This is a matter of fairness. My job was to go over and perform my duties under the contract I signed. But my year is up and it's been up. Now I believe that they should honor their end of the contract," he said.

Some military experts described the soldiers' challenge as both surprising and telling, given the tenor of military life, where soldiers are trained throughout their careers to follow their commanders' orders.

These soldiers' public objections are only the latest signs of rising tension within the ranks. In October, members of an Army Reserve unit refused a mission, saying it was too dangerous. And in recent months, some members of the Individual Ready Reserve, many of whom say they thought they had finished their military careers, have objected to being called back to war and requested exemptions.

Qualls, 35, who says he sometimes speaks his mind even to his superiors, is the only one among the eight whose real name will appear on the lawsuit against the Army's military leaders. The rest, who fear retribution from the Army -- including more dangerous assignments in Iraq -- are described only as John Does 1 through 7.

Aside from the shared expectation that they would have gone home by now, these soldiers' situations could not be more varied, as interviews with their families made clear.

**Army Regulation 635–200**

Personnel Separations

# Active Duty Enlisted Administrative Separations

Rapid Action Revision (RAR) Issue Date: 6 September 2011

Headquarters
Department of the Army
Washington, DC
6 June 2005

## UNCLASSIFIED

000604

# *SUMMARY of CHANGE*

AR 635–200
Active Duty Enlisted Administrative Separations

This rapid action revision, dated 6 September 2011--

o  Implements the Don't Ask, Don't Tell Repeal Act of 2010 by deleting all
   references to separation for homosexual conduct and concealment of pre-
   service and prior-service homosexual conduct (paras 1-8, 1-14*g*, 1-17*b*, 1-17*c*,
   1-18*a*(1) and (2), 1-28*d*, 1-32*b*, 1-33*b*, 2-6*c*, 2-12b(8), 3-7*c*, 5-3*c*, 5-13*c*, 11-
   3*c*, and 14-2*e*; rescinded paras 1-5*c*, 1-35*b*(8)j, 2-6*a*(4), 2-12*b*(3), 7-17*b*(7),
   and chap 15).

o  Makes administrative changes (app A: obsolete publications marked; removed
   "A" from "DD Form 256A" and added DD Form 363 in the prescribed forms list,
   added DA Form 3891-1 in the referenced forms list; glossary: deleted unused
   acronyms and corrected abbreviations as prescribed by Army Records Management
   and Declassification Agency).

**Headquarters**
**Department of the Army**
**Washington, DC**
**6 June 2005**

***Army Regulation 635–200**

**Effective 6 July 2005**

Personnel Separations

## Active Duty Enlisted Administrative Separations

By Order of the Secretary of the Army:

RAYMOND T. ODIERNO
*General, United States Army*
*Chief of Staff*

Official:

JOYCE E. MORROW
*Administrative Assistant to the*
*Secretary of the Army*

**History.** This publication is a rapid action revision (RAR). This RAR is effective 20 September 2011. The portions affected by this RAR are listed in the summary of change.

**Summary.** This regulation implements DODI 1332.14 and DODI 1332.30. Statutory authority for this regulation is established under Sections 1169, 12313(a), and 12681, Title 10, United States Code.

**Applicability.** This regulation applies to the Active Army, the Army National Guard/Army National Guard of the United States, and the U.S. Army Reserve, unless otherwise stated.

**Proponent and exception authority.** The proponent of this regulation is the Deputy Chief of Staff, G–1. The proponent has the authority to approve exceptions or waivers to this regulation that are consistent with controlling law and regulations. The proponent may delegate this approval authority, in writing, to a division chief within the proponent agency or its direct reporting unit or field operating agency, in the grade of colonel or the civilian equivalent. Activities may request a waiver to this regulation by providing justification that includes a full analysis of the expected benefits and must include formal review by the activity's senior legal officer. All waiver requests will be endorsed by the commander or senior leader of the requesting activity and forwarded through their higher headquarters to the policy proponent. Refer to AR 25–30 for specific guidance.

**Army management control process.** This regulation contains management control provisions in accordance with AR 11-2, but it does not identify key management controls that must be evaluated.

**Supplementation.** Supplementation of this regulation and establishment of command and local forms are prohibited without prior approval from the Deputy Chief of Staff, G–1 (DAPE–MPE), 300 Army Pentagon, Washington, DC 20310–0300.

**Suggested improvements.** Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to the Deputy Chief of Staff, G–1 (AHRC–PDP–T), 200 Stovall Street, Alexandria, VA 22332–0418.

**Distribution.** This regulation is available in electronic media only and is intended for command levels A, B, C, D, and E for the active Army, the Army National Guard/Army National Guard of the United States, and the U.S. Army Reserve.

**Contents** (Listed by paragraph and page number)

**Chapter 1**
**General Provisions,** *page 1*

*Section I*
*General, page 1*
Purpose • 1–1, *page 1*
References • 1–2, *page 1*
Explanation of abbreviations and terms • 1–3, *page 1*
Responsibilities • 1–4, *page 1*
Statutory authority • 1–5, *page 2*
Separation pay • 1–6, *page 2*
Processing goals • 1–7, *page 2*
Suspension of favorable personnel action • 1–8, *page 3*

* This AR supersedes AR 635–200, dated 15 July 2004. This edition publishes a rapid action revision of AR 635–200.

AR 635–200 • 6 June 2005/RAR 6 September 2011                i

**UNCLASSIFIED**

**000606**

**Contents—Continued**

The enlisted discharge/transfer process • 1–9, *page 3*
Leave in conjunction with separation • 1–10, *page 3*
Separation orders • 1–11, *page 3*
Separation of Soldiers with access to special intelligence, other compartmented information, or sensitive programs • 1–12, *page 3*
Reduction in grade • 1–13, *page 4*
Disposition of proceedings/records • 1–14, *page 4*

*Section II*
*Guidelines on Separation, page 5*
Guidance • 1–15, *page 5*
Counseling and rehabilitative requirements • 1–16, *page 6*
Restrictions on administrative separation and board hearings • 1–17, *page 7*
Suspension of execution of approved separation • 1–18, *page 7*

*Section III*
*Separation Authority, page 8*
Authority to approve or disapprove separation • 1–19, *page 8*
Action by commanders having separation authority • 1–20, *page 9*

*Section IV*
*Separation After Expiration of Term of Service/Period of Active Duty/Active Duty Training, page 10*
Time lost to be made good • 1–21, *page 10*
When investigation is initiated with view to trial by court-martial or Soldier is awaiting trial or result of trial • 1–22, *page 10*
En route to United States or to territory of origin • 1–23, *page 11*
Medical/dental care required or sick in hospital when period of service expires • 1–24, *page 11*
Indebtedness • 1–25, *page 12*
Retention for miscellaneous reasons • 1–26, *page 12*
Retained in service while subject to criminal jurisdiction of foreign courts but not physically confined by such courts • 1–27, *page 12*
Discharge or release from active duty prior to expiration of term of service • 1–28, *page 13*

*Section V*
*Effective Date of Discharge, page 13*
Effective date of discharge • 1–29, *page 13*
Mental incompetence • 1–30, *page 14*
When retained in service awaiting trial or result of trial • 1–31, *page 14*

*Section VI*
*Medical Processing, page 14*
Separation and medical examinations • 1–32, *page 14*
Disposition through medical channels • 1–33, *page 14*

*Section VII*
*Mobilization Asset Transfer Program, page 15*
Policy • 1–34, *page 15*
Eligibility/ineligibility for transfer to the IRR • 1–35, *page 15*
Separation authority determination • 1–36, *page 16*

*Section VIII*
*Naturalized Personnel Separated Under Other Than Honorable Conditions, page 17*
General • 1–37, *page 17*
Revocation of citizenship • 1–38, *page 17*
Notification to Immigration and Naturalization Service • 1–39, *page 17*

**000607**

**Contents—Continued**

*Section IX*
*Separation of Soldiers In Foreign Countries, page 17*
General • 1–40, *page 17*
Separation in foreign countries • 1–41, *page 17*
Soldiers confined pursuant to the sentence of a foreign court • 1–42, *page 18*
Soldiers under Investigation by foreign authorities or sentence by foreign court but not confined pursuant to that
  sentence • 1–43, *page 18*
Separation of Soldiers sentenced by foreign courts • 1–44, *page 18*
Personnel eligible for return from overseas for separation or release from active duty • 1–45, *page 18*

*Section X*
*Bars to Re-enlistment, page 18*
General • 1–46, *page 18*
Separation initiation and processing of locally imposed bars • 1–47, *page 19*

**Chapter 2**
**Procedures for Separation,** *page 20*

*Section I*
*Notification Procedure, page 20*
Application • 2–1, *page 20*
Notice • 2–2, *page 21*
Action by separation authority • 2–3, *page 22*

*Section II*
*Administrative Board Procedure, page 22*
Notice • 2–4, *page 22*
Waiver • 2–5, *page 24*
Separation authority action after board hearings • 2–6, *page 24*
Composition of the board • 2–7, *page 26*
Effective processing procedures • 2–8, *page 27*
Witnesses • 2–9, *page 27*
Board procedures • 2–10, *page 27*
Evidence • 2–11, *page 29*
Findings and recommendations of the board • 2–12, *page 29*

*Section III*
*Additional Provisions Concerning Absent Soldiers, page 30*
Processing in absence of Soldier • 2–13, *page 30*
Civil confinement • 2–14, *page 30*
Additional requirements for Soldiers beyond military control by reason of unauthorized absence • 2–15, *page 30*
Exceptional circumstances • 2–16, *page 31*

**Chapter 3**
**Character of Service/Description of Separation,** *page 44*

*Section I*
*Separation Certificates, page 44*
Statutory authority • 3–1, *page 44*
Discharge certificates • 3–2, *page 44*
Certificate of Release or Discharge from Active Duty (DD Form 214) • 3–3, *page 44*

*Section II*
*Types of Characterization or Description, page 44*
Types authorized • 3–4, *page 44*
General considerations • 3–5, *page 45*

**000608**

**Contents—Continued**

Separation as it affects the Soldier • 3–6, *page 45*
Types of administrative discharges/character of service • 3–7, *page 45*
Limitations on characterization • 3–8, *page 47*
Uncharacterized separations • 3–9, *page 48*

*Section III*
*Dishonorable and Bad Conduct Discharge, page 48*
Dishonorable discharge • 3–10, *page 48*
Bad conduct discharge • 3–11, *page 48*
Soldiers confined in foreign penal institutions • 3–12, *page 48*
Reason and authority for discharge • 3–13, *page 49*
Discharge in absentia • 3–14, *page 49*
Form of separation certificate to be given • 3–15, *page 49*

**Chapter 4**
**Separation for Expiration of Service Obligation,** *page 49*

Policy • 4–1, *page 49*
Discharge or release from active duty upon termination of enlistment and other periods of active duty or active duty
    for training • 4–2, *page 49*
Counseling required for certain retirement eligible personnel • 4–3, *page 50*
Voluntary separation of Soldiers serving on indefinite enlistments/re-enlistments. • 4–4, *page 51*
Characterization of service • 4–5, *page 52*
Separation authority • 4–6, *page 52*

**Chapter 5**
**Separation for Convenience of the Government,** *page 52*

*Section I*
*General, page 52*
Characterization of service or description of separation • 5–1, *page 52*
Scope • 5–2, *page 52*
Secretarial plenary authority • 5–3, *page 52*

*Section II*
*Surviving Sons or Daughters, page 53*
General • 5–4, *page 53*
Definitions • 5–5, *page 53*
Procedures • 5–6, *page 53*
Characterization of service or description of separation • 5–7, *page 53*

*Section III*
*Other Convenience of the Government Separation Policies, page 53*
Involuntary separation due to parenthood • 5–8, *page 53*
Lack of jurisdiction • 5–9, *page 54*
Discharge of aliens not lawfully admitted to the United States • 5–10, *page 54*
Separation of personnel who did not meet procurement medical fitness standards • 5–11, *page 54*
Discharge for failure after enlistment to qualify medically for flight training • 5–12, *page 55*
Separation because of personality disorder • 5–13, *page 55*
Concealment of arrest record • 5–14, *page 56*
Early release of Reserve Component personnel serving AGR tours under 10 USC 12301(d) • 5–15, *page 56*
Early separation to further education • 5–16, *page 57*
Other designated physical or mental conditions • 5–17, *page 57*

**Chapter 6**
**Separation Because of Dependency or Hardship,** *page 60*

General • 6–1, *page 60*

**000609**

**Contents—Continued**

Separation authority • 6–2, *page 60*
Criteria • 6–3, *page 60*
Application of criteria • 6–4, *page 61*
Conditions affecting determination regarding separation for dependency or hardship • 6–5, *page 61*
Application for separation • 6–6, *page 62*
Evidence required • 6–7, *page 63*
Procedure • 6–8, *page 63*
Service of the American Red Cross • 6–9, *page 64*
Type of separation • 6–10, *page 65*
Characterization or description of service • 6–11, *page 65*

## Chapter 7
## Defective Enlistments/Re-enlistments and Extensions, *page 65*

*Section I*
*General, page 65*
General • 7–1, *page 65*
Separation authority • 7–2, *page 65*

*Section II*
*Minority, page 65*
Statutory authority • 7–3, *page 65*
Criteria • 7–4, *page 65*
Evidence required • 7–5, *page 65*
Procedure • 7–6, *page 66*
Minors under charges or in confinement or pending administrative separation • 7–7, *page 66*
Indebtedness or confinement by civil authorities • 7–8, *page 66*
Void service • 7–9, *page 66*
Minors stationed in area other than area in which enlisted • 7–10, *page 66*
Pay and allowances • 7–11, *page 66*
ARNGUS and USAR personnel • 7–12, *page 67*
Type of separation • 7–13, *page 67*
Entitlement • 7–14, *page 67*

*Section III*
*Erroneous Enlistments, Re-enlistments, or Extensions, page 67*
Erroneous enlistments, re-enlistments, or extensions • 7–15, *page 67*
Defective or unfulfilled enlistment or re-enlistment agreements • 7–16, *page 68*

*Section IV*
*Fraudulent Entry, page 69*
Incident of fraudulent entry • 7–17, *page 69*
Authority • 7–18, *page 71*
Trial by court-martial • 7–19, *page 71*
Responsibilities • 7–20, *page 71*
Unit commander's report • 7–21, *page 71*
Action by separation authority prior to board proceedings • 7–22, *page 72*
Type of discharge • 7–23, *page 73*
Preparation of DD Form 214 when service is voided • 7–24, *page 73*

## Chapter 8
## Separation of Enlisted Women—Pregnancy, *page 73*

*Section I*
*General, page 73*
Policy • 8–1, *page 73*

**Contents—Continued**

Separation authority • 8–2, *page 73*
Characterization or description of service • 8–3, *page 73*
Type of separation • 8–4, *page 73*
Responsibility of the unit commander • 8–5, *page 73*
Medical examination and diagnosis • 8–6, *page 73*
Line-of-duty determination • 8–7, *page 74*
Conditions affecting separation for pregnancy • 8–8, *page 74*

*Section II*
*Pregnancy Counseling, page 74*
General • 8–9, *page 74*
Statement of counseling • 8–10, *page 74*

**Chapter 9**
**Alcohol or Other Drug Abuse Rehabilitation Failure,** *page 80*
Scope • 9–1, *page 80*
Basis for separation • 9–2, *page 80*
Procedures • 9–3, *page 80*
Characterization of service or description of separation • 9–4, *page 80*
Separation authority • 9–5, *page 80*
Authority for separation • 9–6, *page 81*
Confidentiality and release of records • 9–7, *page 81*

**Chapter 10**
**Discharge in Lieu of Trial by Court-Martial,** *page 81*
General • 10–1, *page 81*
Personal decision • 10–2, *page 81*
Preparation and forwarding • 10–3, *page 82*
Consideration of request • 10–4, *page 82*
Withdrawal of request for discharge • 10–5, *page 82*
Medical and mental examination • 10–6, *page 83*
Discharge authority • 10–7, *page 83*
Types of discharge, characterization of service • 10–8, *page 83*
Disposition of supporting documentation • 10–9, *page 83*

**Chapter 11**
**Entry Level Performance and Conduct,** *page 86*
General • 11–1, *page 86*
Basis for separation • 11–2, *page 86*
Separation policy • 11–3, *page 86*
Counseling and rehabilitation requirements • 11–4, *page 86*
Separation authority • 11–5, *page 86*
Type of separation • 11–6, *page 87*
Procedures • 11–7, *page 87*
Description of service • 11–8, *page 87*

**Chapter 12**
**Retirement for Length of Service,** *page 87*

*Section I*
*General, page 87*
Purpose • 12–1, *page 87*
Retirement authority • 12–2, *page 87*

*Section II*
*Statutory Authority, page 87*

000611

**Contents—Continued**

General provisions of laws governing retirement • 12–3, *page 87*
Twenty-year retirement law (10 USC 3914) • 12–4, *page 88*
Thirty-year retirement law (10 USC 3917) • 12–5, *page 88*
Advancement on the retired list (10 USC 3964) • 12–6, *page 88*

*Section III*
*Requirements and Procedures, page 89*
Eligibility • 12–7, *page 89*
Service obligations • 12–8, *page 89*
Retirement in lieu of PCS • 12–9, *page 90*
Loss of HQDA centralized promotion list standing upon approval retirement • 12–10, *page 90*
Waivers • 12–11, *page 90*
Applying for retirement • 12–12, *page 91*
Preparation of DA Form 2339 • 12–13, *page 91*
Responsibility of retirement authority • 12–14, *page 92*
Request for withdrawal of application or change in retirement date • 12–15, *page 92*
Grade title on retired list of former command sergeants major • 12–16, *page 93*
Grade title on retired list of former first sergeants • 12–17, *page 93*
Retirement orders • 12–18, *page 93*
Date of retirement • 12–19, *page 94*
Place of retirement • 12–20, *page 94*
Certificates • 12–21, *page 94*
Career recognition • 12–22, *page 94*
Disposition of retirement papers • 12–23, *page 95*
References • 12–24, *page 95*

*Section IV*
*Computation of Service, page 95*
Service creditable for retirement • 12–25, *page 95*
Periods not creditable for retirement • 12–26, *page 96*
Verification of service • 12–27, *page 96*

*Section V*
*Medical Examination, page 96*
General • 12–28, *page 96*
Hospitalization/Physical Evaluation Board proceedings • 12–29, *page 97*

**Chapter 13**
**Separation for Unsatisfactory Performance,** *page 97*

*Section I*
*General, page 97*
Policy • 13–1, *page 97*
Criteria • 13–2, *page 97*
Separation authority • 13–3, *page 98*
Counseling and rehabilitation requirements • 13–4, *page 98*

*Section II*
*Procedures, page 98*
Action by unit commander when Soldier is under military control • 13–5, *page 98*
Commanding officer's report • 13–6, *page 98*
Action by intermediate commander • 13–7, *page 98*
Action by the separation authority • 13–8, *page 98*
Separation authority action after board hearings • 13–9, *page 98*
Characterization of service • 13–10, *page 98*

**000612**

**Contents—Continued**

Type of separation • 13–11, *page 99*

**Chapter 14**
**Separation for Misconduct,** *page 99*

*Section I*
*General Provisions, page 99*
General • 14–1, *page 99*
Policy • 14–2, *page 99*
Characterization of service or description of separation • 14–3, *page 99*
Authority for discharge or retention • 14–4, *page 100*

*Section II*
*Conviction by Civil Court, page 100*
Conditions that subject a Soldier to discharge and reduction in grade • 14–5, *page 100*
Appeals • 14–6, *page 100*
Retention action • 14–7, *page 100*
Action following disposition by domestic courts • 14–8, *page 101*
Procedure for civil court cases in foreign countries • 14–9, *page 101*
Pay and allowances • 14–10, *page 102*
Detainers and strength accountabilities • 14–11, *page 102*

*Section III*
*Acts or Patterns of Misconduct, page 102*
Conditions that subject Soldiers to discharge • 14–12, *page 102*
Procedures • 14–13, *page 103*
Separation authority • 14–14, *page 103*
Commanding officer's report • 14–15, *page 103*
Action by intermediate commanders • 14–16, *page 103*
Action by the separation authority • 14–17, *page 103*

**Chapter 15**
**Rescinded.,** *page 104*

**Chapter 16**
**Selected Changes In Service Obligations,** *page 104*
Order to active duty as a commissioned or warrant officer • 16–1, *page 104*
Discharge for acceptance into a program leading to a commission or warrant officer appointment • 16–2, *page 104*
Discharge for the purpose of immediate enlistment or re-enlistment • 16–3, *page 105*
Non-retention on active duty • 16–4, *page 105*
Overseas returnees • 16–5, *page 105*
Early separation due to disqualification for duty in MOS • 16–6, *page 105*
Early separation due to reduction in force, strength limitations, or budgetary constraints • 16–7, *page 106*
Separation of Soldiers in warrior transition units • 16–8, *page 106*
Separation of personnel assigned to installations or units scheduled for inactivation or permanent change of station
 • 16–9, *page 107*
Holiday early transition program • 16–10, *page 107*

**Chapter 17**
**Instruction In Benefits of an Honorable Discharge,** *page 108*
Purpose of instruction • 17–1, *page 108*
Presentation of instruction • 17–2, *page 108*
Contents of instruction • 17–3, *page 108*
Time of instruction • 17–4, *page 108*
Recording • 17–5, *page 108*

000613

**Contents—Continued**

**Chapter 18**
**Failure to Meet Weight Control Standards,** *page 108*
Policy • 18–1, *page 108*
Procedures • 18–2, *page 108*

**Chapter 19**
**Qualitative Management Program,** *page 109*

*Section I*
*General, page 109*
General • 19–1, *page 109*
Policy • 19–2, *page 109*
Objectives • 19–3, *page 109*
QMP applicability • 19–4, *page 109*
Implementation • 19–5, *page 109*

*Section II*
*Qualitative Screening, page 110*
Screening procedures • 19–6, *page 110*
Selection criteria • 19–7, *page 110*
Approval authority • 19–8, *page 110*

*Section III*
*Soldier Notification and Option Provisions, page 110*
Notification memorandum • 19–9, *page 110*
Soldier options • 19–10, *page 110*
Appeal provisions • 19–11, *page 110*

*Section IV*
*Separation Provisions, page 111*
Involuntary discharge • 19–12, *page 111*
Voluntary separation • 19–13, *page 111*
Expiration of term of service • 19–14, *page 112*
Active duty retirement • 19–15, *page 112*

**Appendixes**

**A.** References, *page 113*

**B.** Sample Administrative Separation Board Package, *page 122*

**Figure List**

Figure 1–1: Sample format for SS Affidavit the United States Army, *page 19*
Figure 1–2: Sample format for request for retention in service, *page 20*
Figure 2–1: Sample format for notification of separation when the notification procedure is used, *page 32*
Figure 2–1: Sample format for notification of separation when the notification procedure is used—Continued, *page 33*
Figure 2–2: Sample format for request for conditional waiver, *page 34*
Figure 2–2: Sample format for request for conditional waiver—Continued, *page 35*
Figure 2–2: Sample format for request for conditional waiver—Continued, *page 36*
Figure 2–3: Sample format for notification of separation when the administrative board procedure is used, *page 37*
Figure 2–3: Sample format for notification of separation when the administrative board procedure is used—Continued, *page 38*
Figure 2–4: Sample format for receipt of notification/acknowledgment/election of rights, *page 39*
Figure 2–4: Sample format for receipt of notification/acknowledgment/election of rights—Continued, *page 40*
Figure 2–4: Sample format for receipt of notification/acknowledgment/election of rights—Continued, *page 41*
Figure 2–5: Sample format for commanding officer's report to the separation authority, *page 42*

000614

**Contents—Continued**

Figure 2–5: Sample format for commanding officer's report to the separation authority—Continued, *page 43*
Figure 2–5: Sample format for commanding officer's report to the separation authority—Continued, *page 44*
Figure 5–1: Sample format for request for discharge, *page 59*
Figure 5–2: Sample format for request to remain on active duty, *page 60*
Figure 8–1: Sample format for pregnancy counseling checklist, *page 76*
Figure 8–1: Sample format for pregnancy counseling checklist—Continued, *page 77*
Figure 8–1: Sample format for pregnancy counseling checklist—Continued, *page 78*
Figure 8–2: Sample format for statement of counseling, *page 79*
Figure 10–1: Sample format for discharge in lieu of trial by court-martial, *page 84*
Figure 10–1: Sample format for discharge in lieu of trial by court-martial—Continued, *page 85*
Figure B–1: Sample report of proceedings of board of officers, *page 122*
Figure B–1: Sample report of proceedings of board of officers—Continued, *page 123*
Figure B–1: Sample report of proceedings of board of officers—Continued, *page 124*
Figure B–1: Sample report of proceedings of board of officers—Continued, *page 125*
Figure B–1: Sample report of proceedings of board of officers—Continued, *page 126*
Figure B–1: Sample report of proceedings of board of officers—Continued, *page 127*

**Glossary**

000615

## Chapter 1
## General Provisions

### Section I
### General

### 1–1. Purpose

*a.* This regulation sets policies, standards, and procedures to ensure the readiness and competency of the force while providing for the orderly administrative separation of Soldiers for a variety of reasons. Readiness is promoted by maintaining high standards of conduct and performance.

*b.* The separation policies in this regulation promote the readiness of the U.S. Army by providing an orderly means to—

(1) Judge the suitability of persons to serve in the Army on the basis of their conduct and their ability to meet required standards of duty performance and discipline.

(2) Maintain standards of performance and conduct through characterization of service in a system that emphasizes the importance of honorable service.

(3) Achieve authorized force levels and grade distribution.

(4) Provide for the orderly administrative separation of Soldiers in a variety of circumstances.

*c.* Department of the Army separation policy is designed to strengthen the concept that military service is a calling different from any civilian occupation.

(1) The acquisition of military status involves a commitment to the United States, the Army, one's fellow citizens, and Soldiers, to complete successfully a period of obligated service. Early separation for failure to meet required standards of performance or discipline represents a failure to fulfill that commitment.

(2) Millions of Americans from diverse backgrounds and with a wide variety of aptitudes and attitudes upon entering military service have served successfully in the Army. It is the policy of the Department of the Army to provide Soldiers with the training, motivation, and professional leadership that inspires the dedicated Soldier to emulate his/her predecessors and peers in meeting required standards of performance and discipline.

(3) The Army makes a substantial investment in training, time, equipment, and related expenses when persons enter into military service. Separation prior to completion of an obligated period of service is wasteful because it results in loss of this investment and generates a requirement for increased accessions. Consequently, attrition is an issue of significant concern at all levels of responsibility within the Army.

*(a)* Diligent efforts will be made to identify Soldiers who exhibit a likelihood for early separation and to improve their chances for retention through counseling, retraining, and rehabilitation prior to initiation of separation proceedings.

*(b)* Soldiers who do not conform to required standards of discipline and performance and Soldiers who do not demonstrate potential for further military service should be separated in order to avoid the high costs in terms of pay, administrative efforts, degradation of morale, and substandard mission performance.

*d.* This regulation provides—

(1) The authority for separation of Soldiers upon expiration term of service (ETS) or fulfillment of active duty obligation.

(2) The authority and general provisions governing the separation of Soldiers before ETS or fulfillment of active duty obligation to meet the needs of the Army and its Soldiers.

(3) The procedures to implement laws and policies governing voluntary retirement of Soldiers of the Army for length of service.

(4) The criteria governing uncharacterized separations and the issuance of honorable, general, and under-than-honorable-conditions discharges.

### 1–2. References

Required and related publications and prescribed and referenced forms are listed in appendix A.

### 1–3. Explanation of abbreviations and terms

Abbreviations and special terms used in this publication are explained in the glossary.

### 1–4. Responsibilities

*a.* The Deputy Chief of Staff, G–1 (DCS, G–1) establishes personnel policies relating to enlisted separations.

*b.* The Commanding General (CG), U.S. Army Human Resources Command establishes standards and operating tasks for the enlisted separation program.

*c.* The Judge Advocate General (TJAG), upon request, reviews DA administrative changes to verify the legality of prescribed policies and changes.

000616

*d.* The Commandant, Adjutant General School, ensures that lesson programs of instruction incorporate the provisions of this regulation.

*e.* Commanders of all major Army commands (MACOMs) monitor the administration of the enlisted separation program to ensure compliance with the policies and operating tasks established by this regulation.

## 1–5. Statutory authority

Principal laws pertaining to, or effecting, enlisted separations are cited below. Questions concerning the applicability of these laws in individual cases should be referred to the servicing staff judge advocate. All references are to sections of Title 10 of the United States Code (10 USC).

*a.* 10 USC 507 provides authority in certain cases to retain Soldiers on active duty beyond ETS.

*b.* 10 USC 651 establishes the initial military service obligation and provides for transfer to a Reserve Component (RC), in certain cases, upon release from active duty.

*c.* Rescinded.

*d.* 10 USC 972 requires a Soldier to make up lost time due to being absent without leave (AWOL), confinement, and so forth, prior to separation.

*e.* 10 USC 1141 through 1153 describe benefits and services available to Soldiers who are being voluntarily or involuntarily separated.

*f.* 10 USC 1168 stipulates that a discharge certificate or certificate of release from active duty must be given to each Soldier discharged or released from active duty.

*g.* 10 USC 1169 confers broad authority on the Secretary of the Army to order separation of a regular Army (RA) Soldier prior to ETS.

*h.* 10 USC 1170 provides authority for separation on the grounds of minority age (under 18 years of age).

*i.* 10 USC 1171 provides authority to separate a Soldier up to 3 months before ETS.

*j.* 10 USC 1173 provides authority for discharge due to hardship of a Soldier who has Family members.

*k.* 10 USC 1174 provides for separation pay to certain Soldiers involuntarily discharged or released from active duty.

*l.* 10 USC 1174a provides for special separation benefits (lump-sum payment) for certain Soldiers who separate voluntarily.

*m.* 10 USC 1175 provides for a voluntary separation incentive (annual payment) for certain Soldiers who separate voluntarily.

*n.* 10 USC 1176 establishes rules for retention on active duty to retirement eligibility of Soldiers with 18 or more years of service.

*o.* 10 USC 12305 describes the President's authority to suspend laws pertaining to separation or retirement during any period RC Soldiers are serving on active duty under various mobilization scenarios.

*p.* 10 USC 12313 provides Secretarial authority to release RC Soldiers from active duty.

*q.* 10 USC 12681 provides Secretarial authority for discharge of RC Soldiers.

*r.* 10 USC 12684 authorizes the Secretary of the Army to drop RC Soldiers from the rolls of the Army under certain circumstances.

*s.* 10 USC 12686 establishes rules for retention on active duty of RC Soldiers who are within two years of retirement eligibility.

*t.* Laws pertaining to retirement for length of service are explained in chapter 12, section II, of this regulation.

## 1–6. Separation pay

Eligibility for, and payment of, separation pay is governed by Department of Defense (DOD) Instruction 1332.29.

## 1–7. Processing goals

*a.* Processing time for separations when the notification procedure is used will not normally not exceed 15 working days.

*b.* Processing time when the administrative board procedure is used will not normally exceed 50 working days.

*c.* Processing time will be measured from the date the Soldier acknowledges receipt of the notification of the proposed separation to the date the separation authority directs separation. (See para 2–2*h* concerning the receipt of notification.)

*d.* Shorter processing times are encouraged, particularly for cases in which prompt action is likely.

*e.* Failure to process an administrative separation within these timeframes will not prevent separation or characterization of service.

*f.* DA Form 5138 is used to ensure processing goals are met. (This form is available on the Army Publishing Directorate (APD) Web site at http://www.apd.army.mil.)

**000617**

## 1–8. Suspension of favorable personnel action

When suspension of favorable personnel action, per Army Regulation (AR) 600–8–2, is initiated solely because a Soldier is being considered for separation under chapter 13 or 14 and it is later determined that the Soldier will be processed for separation for medical reasons (see para 1–33), the Soldier's immediate commander will expedite action to remove the suspension action. This will prevent delay in disposition of the case through medical channels.

## 1–9. The enlisted discharge/transfer process

The enlisted transfer/discharge process is divided into the following sub-functions:

   *a.* Voluntary release from active duty or discharge.

   *b.* Involuntary release from active duty or discharge.

   *c.* Miscellaneous types of separations.

   *d.* Retirement for length of service.

## 1–10. Leave in conjunction with separation

Granting of leave in conjunction with separation will be per AR 600–8–10.

## 1–11. Separation orders

   *a.* Authority for separation (per this regulation) will be included in directives or orders directing Soldiers to report to the appropriate transition center (TC) for separation processing. (See AR 600–8–105.)

   *b.* Except as provided in (1) and (2), below, Army National Guard of the United States (ARNGUS) personnel will be released from active duty (AD) or active duty for training (ADT) and returned to the control of the appropriate State National Guard authorities. U.S. Army Reserve (USAR) personnel will be released from AD or ADT and returned to their appropriate USAR status.

   (1) *ARNGUS.*

   *(a)* An ARNGUS Soldier who is being separated for any reason for which a RA Soldier would be discharged will be discharged from his/her Reserve of the Army status. The Soldier will be returned to the appropriate State National Guard authorities for discharge from the Army National Guard (ARNG).

   *(b)* When a Soldier is to be separated because of a void enlistment (see paras 7–4, 7–9, 7–15*e* or *f*, 7–18, or 7–22) an order, stating specific reasons, will be issued releasing the individual from the custody and control of the Army. The order will return the individual to the appropriate State Adjutant General for disposition. The order will include the statement, "This voids individual's enlistment in the Army Reserve."

   *(c)* When an ARNGUS Soldier is to be transferred to the Individual Ready Reserve (IRR) per section VII of this chapter, the Soldier will be released from active duty. The Soldier will be returned to the appropriate State Adjutant General for discharge from his/her State status and transferred to the IRR (appropriate USAR control group).

   *(d)* The Military Personnel Records Jacket (MPRJ) or local file, as appropriate, with a copy of the separation order and documentation of the separation action, will be sent expeditiously to the appropriate State Adjutant General for disposition. In addition, when the Soldier is transferred to the IRR, a copy of the order will be sent to Commander, United States Army Human Resources Command (USA HRC) (DARP–PR), 1 Reserve Way, St. Louis, MO 63132–5200.

   (2) *U.S. Army Reserve.*

   *(a)* A USAR Soldier who is being separated for any reason for which a RA Soldier would be discharged, will also be discharged. If the RA Soldier would be released from custody and control because of a void enlistment, the USAR Soldier will be released from custody and control by reason of a void enlistment.

   *(b)* When a USAR Soldier is to be transferred to the IRR per section VII of this chapter, the Soldier will be released from active duty. The Soldier will be transferred to the appropriate USAR control group to complete his/her military service obligation.

   *(c)* If the Soldier is being discharged or transferred to the IRR, the MPRJ or local file, as appropriate, a copy of the separation order and documentation of the separation action will be sent expeditiously to Commander, USA HRC, (DARP–PR), 1 Reserve Way, St. Louis, MO 63132–5200. In all cases, a copy of the separation order will be sent to the Soldier's USAR unit of assignment.

## 1–12. Separation of Soldiers with access to special intelligence, other compartmented information, or sensitive programs

When a Soldier has had access to sensitive compartmented information (SCI), special access programs (SAPs), Nuclear Weapon Personnel Reliability Program, Single Integrated Operation Program-extremely sensitive information (SIOP-ESI), or has been assigned to presidential support activities, and a discharge under other than honorable conditions is being considered, the action must be coordinated with the intelligence officer (S2/G2), director of security (DSEC), security manager, prior to initiation of the proposed separation. The following information will be reported to S2, G2,

DSEC, security manager: name, grade, social security number (SSN), date and place of birth, length of service, and reason for proposed discharge.

## 1–13. Reduction in grade

When a Soldier is to be discharged under other than honorable conditions, the separation authority will direct an immediate reduction to the lowest enlisted grade per AR 600–8–19, chapter 10.

## 1–14. Disposition of proceedings/records

*a.* When separation is ordered, the approved proceedings will be sent to the commander who has the Soldier's records for separation processing per AR 635–10. The original copy of the proceedings will be filed in the permanent section of the Soldier's MPRJ or local file, as appropriate, per AR 600–8–104.

*b.* If the separation authority recommends involuntary separation of a Soldier with 18 or more years of active Federal service, the proceedings, with complete documentation and the recommendation of the separation authority, will be sent to Headquarters, Department of the Army (AHRC–EPR–F), 200 Stovall Street, Alexandria, VA 22332–0478, for final determination. (See para 1–19*f* for exceptions.)

*c.* When the separation authority does not order separation, the proceedings will be filed at that headquarters. The Soldier's commanding officer will be notified of the final action. When practicable, the separation authority will direct reassignment of the Soldier to a different organization. Ultimate disposition of the board proceedings will be governed by AR 25–400–2.

*d.* When the Soldier is considered for discharge because of fraudulent entry and retention is directed, the retention constitutes a waiver of the fraudulent entry. The following statement will be entered in item 27, DA Form 2–1 (Personnel Qualification Record-Part II): "Discharge action based on fraudulent entry is waived and retention is authorized on (date)." The original approved document will be forwarded to the following authorities for inclusion in the Soldier's official military personnel file (OMPF):

(1) For RA personnel: Commander, U.S. Army Enlisted Records and Evaluation Center, 8899 East 56th Street, Indianapolis, IN 46249–5301.

(2) For ARNGUS personnel: The appropriate State Adjutant General.

(3) For USAR personnel: Commander, USA HRC, 1 Reserve Way, St. Louis, MO 63132–5200.

*e.* The respondent, whether to be separated or retained, will be furnished a copy of the board proceedings. The proceedings will not include any written medical testimony or reports that would prove injurious to the respondent's physical or mental health. Classified documents attached to the board proceedings may be summarized.

(1) The respondent's copy of the proceedings will be marked "Copy for (name and SSN of the Soldier)." This copy will be given to the respondent or his/her counsel. A signed receipt will be obtained from the Soldier or his/her counsel and filed with the original board proceedings. If the Soldier refuses to sign the receipt, a statement to that effect will be submitted.

(2) If the Soldier or his/her counsel does not want a copy of the board proceedings, or if a copy is not furnished, a notation will be made on the Soldier's copy to accompany the original. Only the Commander, USA HRC, St. Louis, MO, may release this copy thereafter.

*f.* When the separation authority approves a Soldier's discharge from a Reserve commission or warrant, he/she will send a copy of the approved proceedings to the Commander, USA HRC (DARP-PAT-R), 1 Reserve Way, St. Louis, MO 63132–5200, for appropriate action. (See AR 135–175.) Action prescribed in AR 135–175 will be taken after the Soldier's separation from an enlisted status.

*g.* When an ARNGUS trainee is released from ADT per chapter 4 or 13, a copy of the approved proceedings will be sent to the State Adjutant General of the appropriate State. However, all proceedings under chapter 9, and any proceedings under chapter 13 or 14, containing limited-use evidence (see para 3–8*g*) will be disclosed per AR 600–85, chapter 6, section III, to the appropriate State Adjutant General only if that officer is federally recognized.

*h.* When the Soldier is the subject of DD Form 553 (Deserter/Absentee Wanted by the Federal Armed Forces), a report of return to military control must be sent to the Commander, U.S. Army Personnel Control Facility, ATTN: ATZK–PMF–DIP, Bldg. 1481, Fort Knox, KY 40121.

*i.* When material errors and discrepancies are noted before accomplishing separation, the type of separation directed by the separation authority per this regulation may be changed by the separation authority at any time prior to the full execution of the separation. If another headquarters office processing the case (transfer activities) finds material errors or discrepancies in approved board proceedings prior to the full execution of separation, the case will be returned to the separation authority for review before separation.

*j.* Active duty determinations requiring action by the Commanding General, USA HRC, as set forth in this regulation, will be forwarded to USA HRC (AHRC–EPR–F), 2461 Eisenhower Avenue, Alexandria, VA 22332–0478, unless otherwise specified. Forward USAR AGR separation actions to the U.S. Army Reserve Personnel Command, 1 Reserve Way, St. Louis, MO 63132–5200. Forward ARNGUS AGR separation actions to the National Guard Bureau (NGB).

000619

**Section II**
**Guidelines on Separation**

**1–15. Guidance**

A substantial investment is made in training persons enlisted or inducted into the Army; therefore, this general guidance will be considered when initiating separation action.

*a.* Unless separation is mandatory, the potential for rehabilitation and further useful military service will be considered by the separation authority; where applicable, the administrative separation board will also consider these factors. If separation is warranted despite the potential for rehabilitation, consider suspending the separation, if authorized.

*b.* Adequate counseling and rehabilitation measures will be taken before initiating separation action against a Soldier when the reason for separation so specifies. An alleged or established inadequacy in previous rehabilitation efforts does not provide a legal bar to separation.

*c.* When deciding retention or separation in a case, consider the following factors:

(1) The seriousness of the events or conditions that form the basis for initiation of separation proceedings. Also consider the effect of the Soldier's continued retention on military discipline, good order, and morale.

(2) The likelihood that the events or conditions that led to separation proceedings will continue or recur.

(3) The likelihood that the Soldier will be a disruptive or undesirable influence in present or future duty assignments.

(4) The Soldier's ability to perform duties effectively now and in the future, including potential for advancement or leadership.

(5) The Soldier's rehabilitative potential.

(6) The Soldier's entire military record, including—

*(a)* Past contributions to the Army, assignments, awards and decorations, evaluation ratings, and letters of commendation.

*(b)* Memoranda of reprimand or admonition, counseling records, records of nonjudicial punishment, records of conviction by court-martial and records of involvement with civilian authorities.

*(c)* Any other matter deemed relevant by the board or the separation authority, including specialized training, duties, and experience of persons entrusted by this regulation with making recommendations or decisions on separation or retention.

*(d)* Adverse information from a prior enlistment or period of military service only when such information would have a direct and strong probative value in determining whether separation is appropriate.

*1.* This includes records of nonjudicial punishment and convictions by court-martial. Such information ordinarily will be used only in those cases involving conduct repeated over an extended period of time.

*2.* In unusual situations, conduct from a prior enlistment that does not constitute a pattern of conduct manifested over an extended period of time may be considered in determining whether retention or separation is warranted. For example, a single incident of misconduct occurring in the prior period of service that, by itself, would warrant separation may be considered if the officials in the Soldier's chain of command neither knew, nor reasonably should have known of, at the time the Soldier re-enlisted.

*3.* Commanders who believe that a Soldier's case represents an unusual situation within the meaning of this paragraph should request guidance from the Commanding General (AHRC–EPR–F), 200 Stovall Street, Alexandria, VA 22332–0478.

*(e)* Isolated incidents and events that are remote in time normally have little probative value in determining whether administrative separation should be effected.

*d.* Commanders will review all administrative separations involving known victims of sexual assault (see AR 600–20, chap 8) and any Soldier who answered "Yes" to either of the questions cited under either paragraph 2–2*i* or 2–4*h*. Unless otherwise directed, this review must consider the following:

(1) Whether the separation appears to be in retaliation for the Soldier filing an unrestricted report of sexual assault. If so, consult with the servicing office of the staff judge advocate or other legal office.

(2) Whether the separation involves a medical condition that is related to the sexual assault, to include Post Traumatic Stress Disorder (PTSD). If so, consult with the appropriate medical personnel.

(3) Whether the separation is in the best interest of the Army, the Soldier, or both. If not, consult with the servicing staff judge advocate.

(4) The status of the case against the alleged offender, and the effect of the Soldier's (victim's) separation on the disposition or prosecution of the case. If the case is still open, consult the servicing Criminal Investigation Division unit and staff judge advocate.

*e.* Each commander in the chain of command must include a statement on his/her endorsement certifying review in

000620

accordance with paragraph 1–15*d* of this recommendation. Commanders will ensure compliance with AR 340–21 and AR 25–55.

## 1–16. Counseling and rehabilitative requirements

*a. General.* Army leaders at all levels must be continually aware of their obligation to provide purpose, direction, and motivation to Soldiers. It is essential that Soldiers who falter, but have the potential to serve honorably and well, be given every opportunity to succeed. Effective leadership is particularly important in the case of Soldiers serving their initial enlistments. Except as otherwise indicated in this regulation, commanders must make maximum use of counseling and rehabilitation before determining that a Soldier has no potential for further useful service and, therefore, should be separated. In this regard, commanders will ensure that adequate counseling and rehabilitative measures are taken before initiating separation proceedings for the following reasons:

(1) Involuntary separation due to parenthood. (See para 5–8.)

(2) Personality disorder. (See para 5–13.)

(3) Other designated physical or mental conditions. (See para 5–17)

(4) Entry-level performance and conduct. (See chap 11.)

(5) Unsatisfactory performance. (See chap 13.)

(6) Minor disciplinary infractions or a pattern of misconduct. (See para 14–12*a* and *b*.)

(7) Failure to meet body fat standards. (See chap 18.)

*b. Counseling.* When a Soldier's conduct or performance becomes unacceptable, the commander will ensure that a responsible official formally notifies the Soldier of his/her deficiencies. At least one formal counseling session is required before separation proceedings may be initiated for one or more of the reasons specified in *a*, above. In addition, there must be evidence that the Soldier's deficiencies continued after the initial formal counseling.

(1) The number and frequency of formal counseling sessions are discretionary. Such factors as the length of time since the prior counseling, the Soldier's performance and conduct during the intervening period, and the commander's assessment of the Soldier's potential for becoming a fully satisfactory Soldier, must be considered in determining if further counseling is needed.

(2) Counseling will be comprehensive and in accordance with chapter 17 of this regulation and will include the reason(s) it is being administered, the date, the fact that separation proceedings may be initiated if the deficiencies continue, and other guidance as appropriate.

(3) Each counseling session must be recorded in writing. DA Form 4856 (General Counseling Form) will be used for this purpose.

(4) The Soldier's counseling or personal records must reflect that he/she was formally counseled concerning his/her deficiencies and given a reasonable opportunity to overcome or correct them.

*c. Rehabilitation.* Except as provided in *d*, below, the following rehabilitative measures are required prior to initiating separation proceedings for entry-level performance and conduct (see chap 11), unsatisfactory performance (see chap 13), or minor disciplinary infractions/patterns of misconduct (see chap 14):

(1) *Trainees.* Soldiers undergoing initial entry or other training will be recycled (reassigned between training companies or, where this is not feasible, between training platoons) at least once.

(2) *Other than trainees.* Soldiers not in training status will be locally reassigned at least once, with a minimum of 3 months of duty in each unit. Reassignment should be between battalion-sized units or between brigade-sized or larger units when considered necessary by the local commander.

(3) *Permanent change of station (PCS) transfer.* PCS funds normally will not be used for rehabilitative transfers. However, in meritorious cases where it is determined that a Soldier with potential to be a distinct asset to the Army would benefit from a change in commanders, associates, and living or working conditions, the commander exercising general court-martial jurisdiction may authorize PCS transfer within the same command. As an alternative, a request for reassignment to another command may be submitted to Headquarters, Department of the Army (AHRC-EP-appropriate career branch), 2461 Eisenhower Avenue, Alexandria, VA 22332–0478.

*d. Waivers.*

(1) Waiver of the counseling requirement is not authorized.

(2) The rehabilitative transfer requirements in chapters 11, 13, and 14 may be waived by the separation authority in circumstances where common sense and sound judgment indicate that such transfer will serve no useful purpose or produce a quality Soldier. Such circumstances may include:

*(a)* Two consecutive failures of the Army physical fitness test.

*(b)* Pregnancy while in entry-level status.

*(c)* Highly disruptive or potentially suicidal behavior, particularly in reception battalions.

*(d)* Active resistance of rehabilitative efforts.

*(e)* Soldiers assigned to small installations or at remote locations.

*(f)* Situations in which transfer to a different duty station would be detrimental to the Army or the Soldier (for

000621

example, indebtedness, participation in the Alcohol and Drug Abuse Prevention and Control Program, Mental Health Treatment Program, and so forth).

(3) Waiver of rehabilitative transfer may be granted at any time on or before the date the separation authority approves or disapproves the separation proceedings. Waiver authority may be withheld by a higher separation authority in a particular case, a class or category of cases, or all cases. Decision to withhold waiver authority will be announced in writing.

## 1–17. Restrictions on administrative separation and board hearings

*a.* Separation action for the reasons indicated in paragraph 1–16*a* will not be started until a Soldier has been counseled by a responsible person about his/her deficiencies and offered a reasonable opportunity to overcome them.

*b.* Separation per this regulation normally should not be based on conduct that has already been considered at an administrative or judicial proceeding and disposed of in a manner indicating that separation was not warranted. Accordingly, administrative separations under the provisions of chapters 11, 13, and 14 and AR 380–67 are subject to the following restrictions. No Soldier will be considered for administrative separation because of conduct that—

(1) Has been the subject of judicial proceedings resulting in an acquittal or action having the effect thereof. Only Headquarters, Department of the Army (HQDA) will decide that an action does not have the effect of an acquittal. The convening authority must submit a request for such a determination through command channels to Headquarters, Department of the Army (AHRC–EPR–F), 200 Stovall Street, Alexandria, VA 22332–0478.

(2) Has been the subject of a prior administrative board in which the board entered an approved finding that the evidence did not sustain the factual allegations concerning the conduct, except when the conduct is the subject of a rehearing ordered on the basis of fraud or collusion.

(3) Has been the subject of an administrative separation proceeding resulting in a final determination by a separation authority that the Soldier should be retained, except when—

*(a)* The Soldier's subsequent conduct or performance forms the basis, in whole or in part, for a new proceeding. Such conduct need not independently justify the Soldier's discharge, but it must be serious enough to raise a question as to his/her potential for further useful military service.

*(b)* Fraud or collusion is discovered that was not known at the time of the original proceeding and that will probably produce a result much less favorable for the Soldier at a new hearing.

*(c)* Substantial new evidence is discovered that was not known at the time of the original proceeding despite the exercise of due diligence.

(4) Has been the subject of a judicial proceeding resulting in acquittal based on a finding of not guilty only by reason of lack of mental responsibility. Soldiers in this category will normally be separated utilizing Secretarial plenary authority (see para 5–3), unless separation for disability is appropriate. (See AR 635–40.)

*c.* The provisions of *b,* above, do not preclude a Soldier convicted by a court-martial whose sentence does not include a punitive discharge from being processed for administrative separation under chapters 13 or 14 at any time after sentencing. Conduct that was the subject of such a court-martial may be considered in determining retention or separation and, if appropriate, characterization of service.

*d.* Criminal history information from personnel investigative (PSI) reports requested within the first 90 days of a Soldier's initial enlistment may be used to support separation proceedings initiated under paragraph 5–14 and chapter 7, sections III and IV. Use of PSI reports in connection with all other separation proceedings is prohibited unless specific authorization is granted in accordance with AR 380–67, paragraph 10–100. Requests for such authorization may be submitted on a case-by-case basis through command channels to Headquarters, Department of the Army (AHRC–EPR–F), 2461 Eisenhower Avenue, Alexandria, VA 22332–0478.

## 1–18. Suspension of execution of approved separation

*a.* A highly deserving Soldier may be given a probation period to show successful rehabilitation before the Soldier's enlistment or obligated service expires.

(1) The separation authority or higher authority may suspend (except fraudulent entry) execution of an approved separation for a period of full-time military duty not to exceed 12 months. (See chap 2.)

(2) When there are approved reasons for separation in addition to fraudulent entry, suspension may be authorized only when waiver of the fraudulent entry is obtained.

*(a)* During the period of suspension, the Soldier must show that he/she is able to behave properly under varying conditions.

*(b)* The Soldier can also show that he/she can perform assigned duties efficiently.

*b.* Upon satisfactory completion of the probation period, or earlier if rehabilitation has been achieved, the authority that suspended the separation will cancel execution of the approved separation. If the Soldier has been transferred to the command of another separation authority, the separation will be canceled by the new separation authority or higher authority.

*c.* If the Soldier engages in conduct similar to that for which separation was approved, but then was suspended, or

otherwise fails to meet the appropriate standards of conduct and duty performance, the commander concerned, the convening authority, or the separation authority will take one of the following actions:

(1) Initiate punitive or new administrative action in spite of the suspension of execution of the approved discharge.

(2) Withhold action in the case of a Soldier who is absent without authority or in civilian confinement by delivery under Uniform Code of Military Justice (UCMJ), Article 14 (Absence Without Authority), or while in civilian confinement. The provisions of either (1), above, or (3), below, will be complied with when the Soldier returns to military control and before the period of probation expires.

(3) Advise the Soldier, in writing, that vacation of the suspension is being considered and the reasons that warrant such consideration.

(a) The Soldier will be given 3 duty days to consult with counsel and submit a written statement in his/her own behalf or decline to make any statement.

(b) The commander taking the action will consider any information the Soldier submits. If the Soldier identifies specific legal issues for consideration, the separation authority will have the matter reviewed by an officer of the Judge Advocate General's Corps. The separation authority may—

*1.* Vacate suspension of the approved action and execute separation, or

*2.* Continue to suspend execution of the approved separation for the remainder of the probation period.

## Section III
## Separation Authority

### 1–19. Authority to approve or disapprove separation

*a.* Except for Secretarial plenary authority (see para 5–3); separation due to reduction in force, strength limitations, or budgetary constraints (see para 16–7); the Qualitative Management Program (see chap 19); voluntary separation of Soldiers serving indefinite enlistments (see para 4–4); conviction by a foreign court (see paras 14–1*a* and *d* and 14–9*a*); and the early release from active duty of RC personnel serving Active Guard Reserve (AGR) tours under 10 USC 12301(d) (see para 5–15), commanders who are General Court-Martial Convening Authorities (GCMCAs) and their superior commanders are authorized to approve or disapprove separation per this regulation. This includes the authority to convene administrative separation boards when required by this regulation. (See *l*, below, for delegation of authority to approve discharge in chapter 10 AWOL offense cases.) (See also para 3–7*d*.)

*b.* A general officer in command who has a judge advocate or legal advisor available is authorized to approve or disapprove the separation or release from AD or ADT of Soldiers per this regulation. This includes the authority to convene administrative separation boards when required by this regulation. This general officer, unless also the GCMCA, cannot order separation or release for lack of jurisdiction (see para 5–9) or discharge in lieu of trial by court-martial. (See chap 10.)

*c.* Commanders who are special court-martial convening authorities are authorized to approve or disapprove separation on the following chapters listed below. This authority does not include officers in the grade of major (O–4) or below, who are acting commanders:

(1) Unless otherwise provided in this regulation, chapters 5, 6, 7, 8, 9, 11, 13, 16, and 18 when the issuance of a characterization of service under other than honorable conditions is not warranted.

(2) Chapter 14 when—

(a) Discharge under other than honorable conditions is not warranted under paragraph 3–7*c* and the notification procedure is used. An Honorable Discharge may be ordered only when the commander exercising general court-martial jurisdiction has authorized the exercise of separation authority in the case.

(b) An administrative separation board recommends an entry-level separation or discharge with a General Discharge certificate.

(c) An administrative board recommends discharge with an Honorable Discharge and the commander exercising general court-martial jurisdiction has authorized the exercise of separation authority in the case.

(3) This includes the authority to convene an administrative board when required by this regulation for actions initiated under the notification procedure (see chap 2, sec I).

(a) A board convened by a special court-martial convening authority is not authorized to recommend discharge under other than honorable conditions.

(b) A special court-martial convening authority (SPMCA) is not authorized to convene administrative separation boards in misconduct actions when a characterization of service under other than honorable conditions is contemplated because such actions must be initiated under the administrative board procedure (see chap 2, sec II).

(4) Chapter 10 when authority to approve requests for discharge has been delegated per *l*, below.

(a) This authority is limited to cases in which the Soldier—

*1.* Has been AWOL for more than 30 days.

*2.* Has been dropped from the rolls of his or her unit as absent in desertion.

*3.* Has been returned to military control.

*4.* Is currently at the personnel control facility (PCF).

*5.* Is charged only with AWOL for more than 30 days.

*(b)* This authority does not include cases involving any other charged offense, including desertion.

*(c)* This SPMCA cannot disapprove a request for discharge in lieu of trial by court-martial. The request for discharge must be approved prior to trial. (See the initial Article 39(a) session for general and special courts-martial, the initial convening of a summary court-martial.)

*(d)* A copy of the delegation of authority will be made a part of the permanent record of each chapter 10 discharge approved under this paragraph.

*d.* The following commanders who have judge advocate or legal advisor available are authorized to approve or disapprove separation under paragraph 5–11 and chapters 8, 11, and 16; and under chapters 9, 13, and 18 when the case is processed using the notification procedure (see chap 2, sec I):

(1) Commanders in the grade of lieutenant colonel or above.

(2) Commanders in the grade of major, who are on an approved recommended list for promotion to lieutenant colonel and who are assigned to command any unit authorized a commander in the grade of lieutenant colonel, or above. This authority does not include officers in the grade of major, who are acting commanders, even if on an approved recommended list for promotion to lieutenant colonel.

*e.* The authority granted under *b,* *c,* and *d,* above, may be withheld by a higher separation authority in a particular case or class of cases. Such authority will be in writing and will be valid until revoked in writing.

*f.* Except when discharged pursuant to the approved sentence of a court-martial or for physical disability (AR 635–40), any Soldier who has completed 18 or more years of active Federal service will not be involuntarily discharged or released from active duty without approval at HQDA level. These separation actions will be submitted to HQDA (AHRC–EPR–F) for forwarding to the proper authority. Requests for voluntary separation (for example, those submitted under chaps 6, 10, or 16) need not be sent to HQDA for approval.

*g.* The authority to convene an administrative separation board, when required by this regulation, may not be delegated.

*h.* Unit commanders are authorized to order discharge for immediate re-enlistment (see para 17–3) under the provisions of AR 601–280.

*i.* The authority to approve or disapprove requests for length-of-service retirement is as specified in paragraph 12–2.

*j.* The general court-martial authority, or a general officer in command who has a judge advocate or legal advisor available, may delegate to other officials of his/her or her staff the authority to approve, disapprove, or otherwise appropriately dispose of cases under chapter 6 (when an honorable discharge certificate will be awarded) and chapter 16.

*k.* Commanders of recruiting battalions (RBNs) in grade of lieutenant colonel or higher are authorized to void enlistments under paragraph 7–15*e.*

*l.* The GCMCA or higher authority at installations having PCFs may delegate the authority to approve separations in lieu of trial by court-martial (see chap 10) to the commander exercising special court-martial convening authority over the Soldier who submitted the request for discharge in cases in which the Soldier—

(1) Has been AWOL for more than 30 days.

(2) Has been dropped from the rolls of his/her unit as absent in desertion.

(3) Has been returned to military control.

(4) Currently is at the PCF.

(5) Is charged only with AWOL for more than 30 days.

*m.* The authority referred to in *l,* above, does not include cases involving any other charged offense, including desertion. The request for discharge must be approved prior to trial (the initial Article 39(a) session (Uniform Code of Military Justice (UCMJ)) for general or special courts-martial, the initial convening of a summary court-martial). Authority to disapprove separations for the good of the Service (see chap 10) remains at the GCMCA or higher authority and may not be delegated. All delegations must be in writing and will be valid until revoked in writing. A copy of the delegation of authority will be made a part of the permanent record of each chapter 10 discharge approved under this authority.

*n.* Separation authority for cases involving Soldiers who filed an unrestricted report of sexual assault (see AR 600-20, chap 8) within 24 months of initiation of the separation action is withheld to the GCMCA or higher authority.

## 1–20. Action by commanders having separation authority

*a.* Commanders having separation authority directing separation or release from active duty of a Soldier will comply with AR 635–10 and Army Pamphlet 635–4.

*b.* Recoupment of the unearned portion of an enlistment or re-enlistment bonus is required by law (37 USC 308) when a Soldier is separated voluntarily or because of misconduct.

(1) In implementation of the law, DOD 7000.14–R, volume 7A, paragraph 0904, contains specific separation reasons for which bonus recoupment is required.

(2) Semiannual by-name reports reflecting the Army's success at actual recoupment are required by Congress.

(3) Individual commanders must screen actions to ascertain recoupment requirements and then counsel Soldiers about their repayment responsibilities.

*c.* Counseling concerning earned education benefits is required by law. For voluntary separations under the provisions of chapters 5, 8, and 16, as well as other provisions of this regulation that involve separation as an exception to policy more than 90 days before ETS, separation authorities will take an active role in this counseling process as follows:

(1) Soldiers with less than 20 months of a 24-month initial enlistment, and less than 30 months of a 36-month-or-longer initial enlistment at the time of separation must be counseled that loss of accrued benefits will occur and that monies deducted from pay are not refundable.

(2) Approval of separation under these provisions is contingent upon this counseling, and a statement of understanding must be included in the approval packet.

*d.* Commanders, in coordination with the servicing staff judge advocate, will counsel permanent resident aliens enlisted in the Army for three or more years who wish to fulfill naturalization requirements through honorable military service (8 USC 1439). Counseling should include an explanation that voluntary or involuntary separation could affect fulfillment of the naturalization requirements.

## Section IV
## Separation After Expiration of Term of Service/Period of Active Duty/Active Duty Training

### 1–21. Time lost to be made good

Every Soldier in active Federal service who is unable for more than 1 day to perform duty will complete the full term of service or obligation, exclusive of such time lost. The term will be served when the Soldier returns to full duty status.

*a.* Lost time refers to periods of more than 1 day when a Soldier on active duty cannot perform duty because of

(1) Desertion.

(2) Absence without proper authority.

(3) Confinement under sentence.

(4) Confinement while awaiting trial or disposition of Soldier's case, if trial results in conviction.

(5) Intemperate use of drugs or alcohol. (See AR 600–85.)

(6) Disease or injury, the result of Soldier's misconduct.

*b.* Time lost during an enlistment period will be made good at the end of the enlistment period. When an enlistment is extended by law, time lost will be made good at the end of the extension. This requirement may be waived by HQDA. Recommendations for waiver of time lost will be submitted to Headquarters, Department of the Army (AHRC–EPR–F), 2461 Eisenhower Avenue, Alexandria, VA 22332–0478, when the separation authority considers that because of unusual circumstances, waiver of time lost is in the best interest of the Soldier and the Government.

*c.* Reserve Component personnel ordered to initial active duty for training (IADT) will make up time lost.

(1) Commanding officers of training installations can waive this requirement if the Soldier has completed the required training and the commander determines that it would not be in the best interest of the Service to retain the Soldier on active duty for training to make good time lost.

(2) Commanding officers of training installations are authorized to endorse the orders extending the initial period of ADT for reservists who must make good the time lost during IADT. One copy of the memorandum will be furnished the State Adjutant General or the commander that issued the original ADT orders and the Soldier's unit commander.

*d.* Soldiers of the ARNGUS and the USAR being released from active duty because the unit in which they were ordered to active duty is released from active duty status will not be retained on active duty to make good time lost.

### 1–22. When investigation is initiated with view to trial by court-martial or Soldier is awaiting trial or result of trial

*a.* A Soldier may be retained after his/her term of service has expired when one of the following applies:

(1) An investigation of his/her conduct has been started with a view to trial by court-martial.

(2) Charges have been preferred.

(3) The Soldier has been apprehended, arrested, confined, or otherwise restricted by the appropriate military authority.

*b.* If charges have not been preferred, the Soldier will not be retained more than 30 days beyond the ETS unless the general court-martial convening authority approves retention. (See para 1–31.)

*c.* A Soldier who is awaiting trial or result of trial by court-martial when he/she would otherwise be eligible for discharge or release from AD will not be discharged or released until final disposition of the court-martial charges. (For effective date of discharge, see sec V of this chapter.)

*d.* Soldiers under sentence to an unsuspended dishonorable or bad conduct discharge will not be discharged before

000625

appellate review is completed, unless so directed by HQDA. If the Soldier is absent without leave at the time appellate review is completed, the punitive discharge may still be carried out. This paragraph does not apply to Soldiers processed for discharge under the provisions of chapter 10.

## 1–23. En route to United States or to territory of origin

When a Soldier is held in service after period of service expires under the conditions in *a* and *b*, below, the Soldier will be retained for the convenience of the Government.

  *a. As a casual for separation.* A Soldier en route to the United States from overseas as a casual will not be separated until arrival at destination.

  *b. As Soldiers of an organization.* Soldiers whose periods of service expire while at sea en route to the United States with their organization and who signify intention to re-enlist for the same organization on the day following discharge will be discharged and re-enlisted at sea. Those who do not signify their intention to re-enlist will be held in the Service until they arrive in the United States.

## 1–24. Medical/dental care required or sick in hospital when period of service expires

  *a.* A Soldier may only be considered for retention past the set release date when one or both of the following apply:

  (1) Continued health care is required (must be in-hospital status but not necessarily occupying a bed).

  (2) Physical disability processing is required or has been initiated. The request for retention will be submitted per *b* and *c*, below. Soldiers determined medically fit for retention or separation will not be retained past the set release date.

  *b.* A Soldier being retired for maximum length of service or maximum age will not be retained on active duty unless his/her medical condition indicates referral of the case to a physical evaluation board. When retention is required, the hospital commander will notify Headquarters, Department of the Army (AHRC–EPR–F), 200 Stovall Street, Alexandria, VA 22332–0478, and request the Soldier's retirement orders are rescinded. The request will include the medical diagnosis and expected date of case referral to the physical evaluation board for processing.

  *c.* No Soldier will be retained beyond his/her scheduled release date without written consent signed by the Soldier. (See fig 1–1.)

  (1) If the Soldier is mentally incompetent or otherwise unable to sign, the next of kin or legal representative will be requested to sign for the Soldier.

  (2) The consent affidavit will be filed in the Soldier's MPRJ or local file, as appropriate, U.S. Army. (See DA Form 201.)

  (3) A Soldier retained under this paragraph is subject to favorable or adverse personnel action including actions per this regulation. However, if the Soldier later demands discharge, he/she cannot be retained on active duty for the sole purpose of taking such administrative action. An officer authorized by law to administer oaths under the UCMJ, Article 36, will swear the Soldier (insuring that the Soldier personally appears before the officer), and tell the Soldier—

  (a) How he/she will benefit from remaining on active duty in the Army beyond the scheduled date of release to complete hospital care or a physical evaluation (or both) under chapter 61, 10 USC.

  (b) If he/she elects to be discharged or released from active duty as scheduled, he/she will not, after such discharge or release from active duty, be eligible for separation or retirement for physical disability.

  *d.* Note: If the Soldier is unable to sign and the next of kin or legal representative cannot be located or will not indicate whether or not the Soldier will be retained, the Soldier will be retained. The hospital commander will supply full details of the case including actions taken to secure consent for retention. The hospital commander will notify—

  (1) The nearest military commander exercising general court-martial authority for RA Soldiers.

  (2) The appropriate State Adjutant General for ARNGUS (AGR) personnel.

  (3) The Commander, USA HRC (DARP-ARE), 1 Reserve Way, St. Louis, MO 63132–5200, for USAR (AGR) Soldiers.

  *e.* The medical facility commander will—

  (1) Send requests for retention, endorsed by the Soldier's unit commander, to the nearest GCMCA for the following personnel:

  (a) Regular Army personnel.

  (b) ARNGUS and USAR personnel on IADT or AGR tours. Retention of ARNGUS personnel must be coordinated with the appropriate State Adjutant General. The Adjutant General (ATTN: AHRC–PDZ–B) will be the approval authority for ARNGUS and USAR Soldiers on IADT or Active Guard/AGR tours.

  (2) Include the following information in the request:

  (a) Soldier's name, grade, and SSN.

  (b) Reason for separation (such as ETS).

  (c) Scheduled release date.

  (d) A copy of the signed affidavit consenting to retention.

  (e) Medical reason for retention.

  (f) Medical recommendation (approval or disapproval).

000626

*f.* Retention requires approval by the GCMCA. The GCMCA may delegate this authority to other military or civilian officials on his/her staff. Every action taken according to such a delegation will state that it is taken "pursuant to authority delegated by ___ dated ___." The Adjutant General (ATTN: TACP–PDZ–B) will be the approval authority for ARNGUS and USAR Soldiers on initial active duty for training or Active Guard/AGR tours.

(1) A copy of the retention action on RA personnel will be sent to Commander, U.S. Army Enlisted Records and Evaluation Center, 8899 East 56th Street, Indianapolis, IN 46249, for filing in the OMPF.

(2) A copy of the retention action for ARNGUS personnel will be sent to the appropriate State Adjutant General.

(3) A copy of the retention action for USAR (AGR) personnel will be sent to Commander, USA HRC, (DARP-FS) 1 Reserve Way St. Louis, MO 63132–5200.

*g.* Soldiers will be advised of the advantages of remaining on active duty. Soldiers will be furnished the following list of retention advantages:

(1) Advantages while remaining on active duty for completion of hospitalization or medical care or while being processed for disability:

*(a)* Medical care and/or hospitalization provided.

*(b)* Receipt of normal benefits such as pay and allowances, including exchange and commissary privileges.

*(c)* Eligibility for dependent medical care if Soldier is on AD or ADT under orders that specify a period of more than 30 days or is under orders specifying a period of 30 days or less that are modified or extended resulting in more than 30 days.

*(d)* State income tax benefits where allowed by the laws of the states concerned.

(2) Advantages, if processed and found eligible for disability separation:

*(a)* If permanently retired, the Soldier may choose the pay most favorably computed per Army regulations, or under the law under which he/she is eligible for retired pay. If temporarily retired, the same selection of pay is authorized, but the minimum pay will not be less than 50 percent of basic pay while temporarily retired.

*(b)* If retired, a former Soldier and authorized Family members would be eligible for certain medical care depending on facilities and staffing availability at Uniformed Services facilities and certain medical care in civilian facilities. (See AR 40–3.)

*(c)* If discharged for disability, Soldier will be entitled to severance pay.

*(d)* To the extent that retired pay is based on the percent of disability involved, such pay is excluded in computing gross income reportable for taxation.

## 1–25. Indebtedness

*a.* A Soldier who is eligible for discharge or release from active duty will not be retained—

(1) To satisfy a debt to the U.S. Government or to an individual.

(2) To obtain remission or cancellation of a debt to the U.S. Government. The Secretary of the Army is authorized to remit or cancel only that part of a Soldier's debt that is unpaid before or at the time of honorable discharge, retirement, or release from active duty.

*b.* A request for remission or cancellation of indebtedness will be acted on before the date the Soldier is eligible for discharge, retirement, or release. (See AR 600–4.)

## 1–26. Retention for miscellaneous reasons

Retention beyond a Soldier's ETS to process administrative separation proceedings pursuant to this regulation is not authorized. If it is desirable to retain a Soldier beyond the ETS for any reason other than those covered by paragraphs 1–21 through 1–24, request for approval of such action must be submitted to

*a.* Headquarters, Department of the Army (AHRC–EPR–F), 200 Stovall Street, Alexandria, VA 22332–0478, for RA personnel.

*b.* The appropriate State Adjutant General for ARNGUS (AGR) personnel.

*c.* Commander, USA HRC (DARP-ARE), 1 Reserve Way St. Louis, MO 63132–5200, for USAR (AGR) personnel.

## 1–27. Retained in service while subject to criminal jurisdiction of foreign courts but not physically confined by such courts

Retention in service per this paragraph is intended to permit the Government to fulfill its obligations under current jurisdictional agreements with foreign governments. (See fig 1–2.)

*a.* If it appears that final action on the civil charges will not be completed before the accused's ETS, the following action will be taken:

(1) The Army will try to obtain the accused's consent to be retained beyond ETS until final action on the civil charges and consequent administrative separation action has been completed. Before such consent is obtained, the Soldier concerned will be advised that since he/she is subject to the UCMJ, it is possible that court-martial charges may be preferred if the foreign government does not proceed with the case. However, court-martial charges will not be

resorted to solely to ensure retention. Further, the Soldier will be advised that he/she may be processed for separation per chapter 14, section II, if the case ultimately results in a civil conviction.

(2) If the accused does not consent to retention, foreign officials will be offered the opportunity of accepting custody of the accused in time to prevent his/her separation from the Service as a Soldier absent in the custody of civil authorities.

*b.* Should the Soldier consent to retention, he/she will be requested to complete the following statement. The statement will be filed in the Soldier's DA Form 201. A copy of the statement will be sent to the following for filing in the Soldier's OMPF as a permanent document:

(1) Commander U.S. Army Enlisted Records and Evaluation Center, 8899 East 56th Street, Indianapolis, IN 46249, for RA personnel.

(2) The appropriate State adjutant general, for ARNGUS (AGR) personnel.

(3) Commander, USA HRC (DARP–ARE), 1 Reserve Way, St. Louis, MO 63132–5200, for USAR AGR personnel.

*c.* If the provisions of paragraph 1–27*a* cannot be complied with, the case, with full details, will be referred through channels to Headquarters, Department of the Army (AHRC–EPR–F), 2461 Eisenhower Avenue, Alexandria, VA 22332–0478, for instructions. Care will be exercised to ensure that each case is submitted before the Soldier's ETS.

*d.* When the foreign country concerned has determined to exercise criminal jurisdiction, and it appears probable that the accused may not obtain a fair trial, the commander exercising general court-martial jurisdiction over the accused will follow the procedures in AR 27–50, paragraph 1–7*a*(1).

## 1–28. Discharge or release from active duty prior to expiration of term of service

*a.* When separation is to be completed before ETS, or the period for which ordered to AD or ADT, it will be completed per this regulation or other applicable regulations by the commanders specified in paragraph 1–19. Exceptions are indicated in *b* and *c*, below.

*b.* When discharge or release from AD is to be completed before ETS or the period for which ordered to AD or ADT, time lost normally need not be made good. In cases where discharge or release is to be completed per paragraphs 16–5, 16–6, 16–8, and 16–9, the ETS of a Soldier with time lost will be adjusted to include such lost time (adjusted ETS).

*c.* Personnel sentenced to a dishonorable or bad conduct discharge will not be discharged or released from active duty before appellate review is completed, unless so directed by HQDA.

*d.* When the Soldier is discharged per chapters 9, 10, 13, or 14, of this regulation, the case file of the Soldier will be reviewed by the commander having authority to approve discharge. The commander will decide whether the reporting requirements set forth in AR 190–40 apply. When such conditions exist in a Soldier's case file, the report required by AR 190–40 will be submitted.

*e.* For discharge prior to ETS for immediate re-enlistment see paragraph 16–3.

## Section V
## Effective Date of Discharge

## 1–29. Effective date of discharge

*a.* The discharge of a Soldier is effective at 2400 on the date of release when the Soldier is

(1) Transferred to the USAR to complete a reserve obligation.

(2) Transferred to the temporary disability retired list per AR 635–40.

*b.* For a Soldier who entered active duty from a RC and reverts to USAR or State ARNG control, release is effective at 2400 on the date of expiration of authorized travel time.

*c.* Discharge for all reasons other than those set forth above is effective at 2400 on the date of notice of discharge to the Soldier.

*d.* Notice of discharge may be either of the following:

(1) Actual—as by delivery to the Soldier of the discharge certificate.

(2) Constructive—when actual delivery of the discharge order cannot be accomplished because of the absence of the Soldier to be discharged. Such a situation arises in the case of Soldiers on authorized leave and in those cases covered by paragraph 2–15.

*(a)* Receipt by the Soldier's organization at his/her proper station of the order directing him/her discharge will be deemed sufficient notice.

*(b)* The Soldier's organization will annotate the date of receipt and the reason that actual notice was not given on the discharge order and on the back of the certificate.

*(c)* The annotated discharge certificate, discharge order, and copy of DD Form 214 (Certificate of Release or Discharge from Active Duty) reflecting effective date of discharge, will be sent to the Soldier at the address provided for that purpose. If the documents mailed to the Soldier are returned unclaimed or undeliverable, they will be destroyed.

000628

*(d)* The annotated discharge order and copy of DD Form 214, further reflecting date of mailing to the Soldier, will be included in the personnel file. The personnel file will be sent to the Commander, U.S. Army Enlisted Records and Evaluation Center, 8899 East 56th Street, Indianapolis, IN 46249.

*f.* Distribution of DD Form 214 will be made per AR 635–5.

## 1–30. Mental incompetence

The effective date of discharge of a mentally incompetent Soldier may be constructive, as when the Soldier has been placed in an institution. (See AR 635–40.)

## 1–31. When retained in service awaiting trial or result of trial

When a Soldier is retained in service per paragraph 1–22, the effective date of discharge or release depends upon the result of the trial or the disposition of the case.

*a.* A Soldier who has no lost time to make good under 10 USC 972, who is confined while awaiting trial will, if acquitted after ETS, be discharged or released from active duty within 5 days after date of announcement of acquittal. The Soldier will be regarded as having been retained in service for the convenience of the Government.

*b.* A Soldier who is confined while awaiting trial and is then convicted and sentenced to either confinement only or to confinement and forfeiture or fine only, will be discharged on the adjusted ETS. The adjusted ETS date will be computed by adding to the date of release from confinement or completion of the court-martial case, as applicable, all time lost before and including the original ETS date.

*c.* A Soldier who is retained per paragraph 1–22 with a view to trial by court-martial, and court-martial charges are not brought or are disposed of without trial, will be separated within 5 days after the decision is made. The Soldier will be regarded as having been retained in service for the convenience of the Government.

## Section VI
## Medical Processing

## 1–32. Separation and medical examinations

*a.* Commanders will ensure that Soldiers initiated for separation under this regulation who are required to obtain a physical examination per 10 USC 1145 obtain such. Physical examinations and mental health evaluations will comply with AR 40-501 and other policy guidance issued by the Surgeon General and U.S. Army Medical Command.

*b.* In addition to medical examinations, mental status evaluations conducted by a psychologist, or master-level, licensed clinical social worker, are required for Soldiers being processed for separation under chapters 13 or 14 (sec III). A mental status evaluation is also required when a Soldier being processed for discharge under chapter 10 requests a medical examination. The mental status evaluation will be documented in the Soldier's medical records on SF 600 (Health Record-Chronological Record of Medical Care).

*c.* Detailed information about the reasons for considering a Soldier for separation will be provided to attending medical personnel to permit thorough understanding of the contemplated action.

(1) Medical personnel will not be used in an investigative capacity to determine facts relative to a Soldier's behavior.

(2) Commanders referring a Soldier for a mental status evaluation that is not required, as specified above, must comply with the provisions of DODD 6490.1 and AR 600–20.

*d.* Except as provided in paragraph 1–33*b*(2), below, specific responsibilities and procedures for conducting medical examinations and mental status evaluations will be prescribed in pertinent regulatory guidance issued by The Surgeon General.

*e.* Soldiers being considered for separation under paragraph 5–13 must have the diagnosis of personality disorder established by a psychiatrist or doctoral-level clinical psychologist with necessary and appropriate professional credentials who is privileged to conduct mental health evaluations for the DOD components.

*f.* A command-directed mental health evaluation performed in connection with separation under paragraph 5–17 will be performed by a psychiatrist, doctoral-level clinical psychologist, or doctoral-level clinical social worker with necessary and appropriate professional credentials who is privileged to conduct mental health evaluations for the DOD components.

## 1–33. Disposition through medical channels

*a.* Except in separation actions under chapter 10 and as provided in para 1–33*b*, disposition through medical channels takes precedence over administrative separation processing.

*b.* When the medical treatment facility (MTF) commander or attending medical officer determines that a Soldier being processed for administrative separation under chapters 7 (see sec IV), or 14, does not meet the medical fitness standards for retention (see AR 40–501, chap 3), he/she will refer the Soldier to a Medical Evaluation Board (MEB) in accordance with AR 40–400. The administrative separation proceedings will continue, but final action by the separation authority will not be taken, pending the results of MEB.

(1) If the MEB findings indicate that referral of the case to a physical evaluation board (PEB) is warranted for disability processing under the provisions of AR 635–40, the MTF commander will furnish copies of the approved MEB proceedings to the Soldier's GCMCA and unit commander. The GCMCA may direct, in writing, that the Soldier be processed through the physical disability system when action under the UCMJ has not been initiated, and one of the following has been determined:

*(a)* The Soldier's medical condition is the direct or substantial contributing cause of the conduct that led to the recommendation for administrative elimination.

*(b)* Other circumstances of the individual case warrant disability processing instead of further processing for administrative separation.

(2) The authority of the GCMCA to determine whether a case is to be processed through medical disability channels or under administrative separation provisions will not be delegated.

(3) The GCMCA's signed decision to process a Soldier through the physical disability system will be transmitted to the MTF commander as authority for referral of the case to a PEB.

*(a)* Copies of the GCMCA's decision will be furnished to the unit commander and included in the administrative separation proceedings.

*(b)* The unit commander will suspend processing of the administrative separation action pending the PEB.

*1.* If the Soldier is found physically fit, the administrative separation action will be resumed.

*2.* If the Soldier is found physically unfit, the administrative separation action will be abated.

*c.* Disability processing is inappropriate if the conditions in *b*(1)*(a)* and *(b)* do not apply, if UCMJ action has been initiated, or if the Soldier has been medically diagnosed as drug dependent. (See para 14–12*c*.) Accordingly, disability processing is inappropriate in separation actions under chapter 10.

## Section VII
## Mobilization Asset Transfer Program

### 1–34. Policy
The purpose of the Mobilization Asset Transfer Program is to ensure that sufficient trained manpower is available in the RC to meet the Army's personnel requirements under conditions of full mobilization.

*a.* To retain mobilization assets, eligible and qualified active Army Soldiers who have a statutory (10 USC 651) or contractual military service obligation (MSO) will be transferred to the IRR upon completion of their active duty service.

*b.* Regular Army Soldiers will be transferred to the IRR to complete their statutory or contractual MSO, whichever expires later.

*c.* RC Soldiers will be transferred to the IRR to complete their statutory MSO.

*d.* Soldiers who are not transferred to the IRR will be discharged. AR 135–91 contains policies and procedures regarding service obligations and participation requirements.

### 1–35. Eligibility/ineligibility for transfer to the IRR
*a.* Soldiers with a remaining MSO may be transferred to the IRR upon release from active duty if they meet all of the following criteria:

(1) Have completed initial entry training (IET) and have been awarded a military occupational specialty (MOS).

(2) Have three or more months remaining on their MSO.

(3) Are assigned a characterization of service of honorable, or under honorable conditions (general), or have service described as uncharacterized if in entry-level status.

(4) Are determined by the separation authority to possess the potential for useful service if ordered to active duty under conditions of full mobilization.

*b.* Soldiers with a remaining MSO are ineligible for transfer to the IRR and will be discharged if they meet any of the following criteria:

(1) Have not completed IET and have not been awarded a military occupational specialty (MOS).

(2) Have less than three months remaining on their MSO.

(3) Are separated with a punitive discharge (bad conduct or dishonorable) as a result of a court-martial

(4) Are administratively separated with a service characterization of under other than honorable conditions

(5) Are released from the custody and control of the Army by reason of void enlistment.

(6) Are separated for physical disability under AR 635–40.

(7) Are administratively separated voluntarily for any of the following reasons:

*(a)* Sole surviving sons or daughters. (See chap 5.)

*(b)* Medical failure for flight training. (See chap 5.)

*(c)* Hardship, dependency, parenthood. (See chap 6.)

*(d)* In lieu of trial by court-martial. (See chap 10.)

000630

*(e)* Entrance into officer accession programs. (See chap 16.)

*(f)* Conscientious objection. (See AR 600–43.)

(8) Are administratively separated involuntarily for any of the following reasons:

*(a)* Parenthood. (See chap 5.)

*(b)* Lack of jurisdiction. (See chap 5.)

*(c)* Illegal alien. (See chap 5.)

*(d)* Concealment of arrest record. (See chap 5.)

*(e)* Minority. (See chap 7.)

*(f)* Fraudulent entry. (See chap 7.)

*(g)* Alcohol or drug abuse rehabilitation failure. (See chap 9.)

*(h)* Unsatisfactory performance. (See chap 13.)

*(i)* Misconduct. (See chap 14.)

*(j)* Rescinded.

*(k)* Military personnel security program. (See AR 380–67.)

(9) Are determined by the separation authority to possess no potential for useful service under conditions of full mobilization.

## 1–36. Separation authority determination

*a.* Except in cases where the Soldier has no remaining MSO or where discharge is required, the separation authority must determine whether or not the Soldier possesses the potential to perform useful service to meet mobilization requirements if ordered to active duty.

(1) The decision to order discharge or transfer to the IRR rests with the separation authority and cannot be delegated, although the recommendation of subordinate commanders (see fig 2–5, para 3) may be considered.

(2) The separation authority's determination will be made on a case-by-case basis and will be included in the instrument approving separation.

*b.* The separation authority must exercise sound judgment in the decision process. The key consideration is the need to retain trained personnel in the IRR for mobilization purposes. In making a decision regarding potential for future useful service, the separation authority must give due consideration to all pertinent factors, including

(1) The positive motivation that full mobilization may have on the Soldier.

(2) The probable maturing effect of the passage of time, especially in the case of young Soldiers.

*c.* The reason for separation is not, in itself, a basis for determining that a Soldier has no potential for useful service in the future.

*d.* The following additional guidance is offered to assist separation authorities in the decision-making process. Only in unusual circumstances should Soldiers separated for the following reasons be discharged instead of being transferred to the IRR to complete their remaining MSO:

(1) Expiration of term of service. (See chap 4.)

(2) Furthering education. (See chap 5.)

(3) Erroneous, defective, or unfulfilled enlistment agreement, if requested by the Soldier. (See chap 7.)

(4) Denial of re-enlistment due to declination of continued service, reduction in force, strength limitations or budgetary constraints, or the holiday early transition program. (See chap 16.)

(5) Other separation categories require careful deliberation by the separation authority as to the potential of the Soldier for useful service as a mobilization asset. Such deliberation is essential in the case of Soldiers separated due to—

*(a)* Failure to meet procurement medical fitness standards. (See chap 5.)

*(b)* Personality disorder. (See chap 5.)

*(c)* Other physical or mental conditions. (See chap 5.)

*(d)* Pregnancy. (See chap 8.)

*(e)* Entry-level performance and conduct. (See chap 11.)

*(f)* Inability of USAR AGR Soldier to overcome local bar to re-enlistment. (See chap 16.)

*(g)* Failure to meet body fat standards. (See chap 18.)

*e.* In the final analysis, the separation authority will direct discharge, in lieu of transfer to the IRR, only when the circumstances of the individual case clearly indicate that the Soldier has no potential for useful service under conditions of full mobilization.

000631

**Section VIII**
**Naturalized Personnel Separated Under Other Than Honorable Conditions**

**1–37. General**
This section prescribes the procedures for notifying the Immigration and Naturalization Service when naturalized personnel are separated under other than honorable conditions.

**1–38. Revocation of citizenship**
The citizenship of Soldiers of the United States Armed Forces who were naturalized through active duty service in the Armed Forces during designated periods of military hostilities (8 USC 1440) may be revoked if such Soldiers are later separated from the military service under other than honorable conditions. The Immigration and Naturalization Service, Department of Justice, is responsible for initiating citizenship revocation proceedings in such cases.

**1–39. Notification to Immigration and Naturalization Service**
When a naturalized Soldier is separated under conditions other than honorable, the Soldier's commanding officer will notify the Immigration and Naturalization Service, ATTN: Assistant Commissioner (Naturalization), 425 Eye Street, NW, Washington, DC 20536, by letter. The letter will include the facts and date of discharge. The letter should contain—

   *a.* Address of proposed residence after discharge.
   *b.* Certificate of nation number, if available.
   *c.* Name under which the Soldier was naturalized if different than the name at the time of discharge.
   *d.* Date and place of birth.
   *e.* Date and place of naturalization.

**Section IX**
**Separation of Soldiers In Foreign Countries**

**1–40. General**
This section prescribes the rules governing the separation of Soldiers in foreign countries. It governs only the place of separation and does not prescribe substantive rules for discharge or other separations.

**1–41. Separation in foreign countries**
   *a.* A Soldier eligible for separation who is serving in a foreign country may be separated therein, upon approval by the major Army overseas commander provided—
   (1) Soldier requests separation in that country.
   (2) Soldier's separation in that country is not precluded by any provision of paragraphs l–42*a*, 1–43, and 1–44.
   (3) The foreign government concerned has either formally or informally—
   *(a)* Consented to the separation of the Soldier within its territory.
   *(b)* Consented generally to the separation of the Soldier otherwise eligible for separation under the circumstances set forth in (1) and (2), above.
   *b.* No Soldier will be separated in a foreign country until the Soldier has obtained documents needed for his/her lawful continued presence in that country.
   *c.* Soldiers who are accepted for service in a foreign country, but who are not stationed in that country, may be returned if *a* and *b*, above, are complied with, and the Soldier has the appropriate documents entitling him/her to entry into the country. However, specific consent of that country for his/her separation in its territory is not needed.
   *d.* Requests for action in an overseas command may be disapproved by the major Army overseas commander, when
   (1) Revocation action per AR 380–67 has been taken against the Soldier concerned during his/her current term of enlistment.
   (2) The Soldier's access to defense information is suspended per AR 380–67 at the time the decision is made whether or not to separate a Soldier in a foreign country.
   (3) There is cogent reason to believe that the Soldier's presence in the overseas area in a non-military status would endanger national security.
   (4) Other cogent reasons exist causing the commander to believe the Soldier should not be separated in the overseas command.
   *e.* Major overseas commanders may delegate authority to the appropriate commanders who are GCMCAs or SPCMAs to approve or disapprove the separation of a Soldier in a foreign country as provided by this section. The GCMCA or SPCMA may further delegate the authority to a general officer in command who has a judge advocate or legal advisor available. The delegations are authorized provided the commanders concerned have the expertise to comply with the following requirements:

000632

(1) Change-of-status reporting requirements.

(2) Immigration procedures of the host government; that is, visa, residence permit, and work permit.

(3) United States requirements; that is, surrender of no-fee passport and issuance of fee passport.

*f.* All delegations will be in writing and will be valid until revoked in writing. Every action taken according to such a delegation will state that it is taken "pursuant to delegation of authority by _____ dated _____."

## 1–42. Soldiers confined pursuant to the sentence of a foreign court

*a.* Soldiers confined in a foreign penal institution pursuant to the sentence of a foreign court may be separated from the Service per chapter 14, section II. The Soldier will be separated only—

(1) Upon approval of HQDA (AHRC–EPR–F).

(2) After final action (including final appellate action, if any) by the foreign authorities.

(3) Subject to the specific consent of the country concerned to his/her separation in its territory.

*b.* When the overseas commander considers separation of such a Soldier before the sentence of confinement is completed, he/she will send a request for approval for such separation to Headquarters, Department of the Army (AHRC–EPR–F), 2461 Eisenhower Avenue, Alexandria, VA 22332–0478, with a report that will include the following information:

(1) Name, grade, SSN.

(2) Last organization and assignment.

(3) Offense(s) alleged to have been committed and the pertinent facts and circumstances thereof.

(4) Court before which tried.

(5) Date and place of trial.

(6) Offense(s) of which the Soldier was convicted.

(7) Sentence pursuant to which the Soldier is confined.

(8) Matters in mitigation, extenuation, or aggravation.

(9) Appellate action, if any, and result thereof.

(10) Whether the action of the foreign court is final or whether further appellate action is possible or contemplated.

(11) Place and condition of confinement.

(12) Possibility for parole and facts pertinent thereto.

(13) Special facts and circumstances, including reasons supporting discharge during confinement.

(14) Whether consent for separation in the territory of the foreign country has been obtained from that country.

(15) A report concerning board proceedings as set forth in chapter 2, section III.

## 1–43. Soldiers under investigation by foreign authorities or sentence by foreign court but not confined pursuant to that sentence

*a.* Soldiers will not be considered for separation in a foreign country (except per para 1–27*c*) until final action has been taken by the foreign authorities when—

(1) The Soldier's sentence to confinement is not suspended, but he/she is not confined pending appellate action.

(2) The Soldier is not confined but is charged with, or is under investigation for, offenses subject to jurisdiction of foreign authorities for which a sentence to confinement could be imposed.

*b.* After final action by the foreign authorities, such Soldiers may be considered for separation in the foreign country under paragraph 1–41 or 1–42, whichever is appropriate.

## 1–44. Separation of Soldiers sentenced by foreign courts

The provisions of paragraph 1–42 do not prohibit a commander from initiating action per chapter 14, section II, when a Soldier is confined in a foreign penal institution. The commander can initiate action with a view toward discharge of such Soldier after release from confinement and return to the United States or its territorial possessions.

## 1–45. Personnel eligible for return from overseas for separation or release from active duty

Soldiers scheduled for return to the continental United States, its territories, or possessions for separation or release from active duty will be processed for return per AR 635–10.

## Section X
## Bars to Re-enlistment

## 1–46. General

Commanders will initiate separation proceedings in accordance with this regulation against Soldiers who have received a local bar to re-enlistment under the provisions of AR 601–280 (RA) or AR 140–111 (USAR AGR). Separation action

is not based upon the imposition of a bar to re-enlistment but rather on the Soldier's conduct and/or performance of military duties.

## 1–47. Separation initiation and processing of locally imposed bars

If at the time of the second 3-month review of a locally imposed bar to re-enlistment, imposed in accordance with AR 601–280 or AR 140–111, the unit commander does not recommend that the bar be removed, the commander will process the Soldier for separation per chapters 13, 14, or other appropriate chapters of this regulation. "Processed for separation" means that separation action will be initiated and processed through the chain of command to the separation authority for appropriate action. Compliance with paragraph 1–16 is mandatory. The immediate and intermediate commanders will recommend separation or retention and the characterization of service to be awarded. (See para 2–2 or 2–4.)

---

```
At (installation), personally appeared before me, the undersigned, author-
ized by law to administer oaths pursuant to the Uniform Code of Military
Justice, Article 136, one (name of soldier) who after being advised by me
of the rights and advantages of remaining in an active duty status in the
Army beyond the scheduled date of release for the purpose of completion of
hospital care and/or physical disability evaluation under the provisions of
chapter 61, 10 USC, and after being duly sworn, deposes and says,

"I have been fully advised by the undersigned officer of the rights and ad-
vantages that may accrue to me by voluntarily remaining on active duty in
the Army beyond the scheduled date of my release for the purpose of com-
pleting hospital care and/or physical disability evaluation under the pro-
visions of chapter 61, 10 USC and have been further fully advised that if I
elect to be discharged or released from active duty as scheduled, I will
not after such discharge or release from active duty, be eligible for sepa-
ration or retirement for physical disability. Wherefore, in consideration
of the above, I (do) (do not) desire retention on active duty in the Army
beyond the scheduled date of expiration of my term of service."


                              (Signature of soldier)
                              (Typed name, SSN, branch)

                              (Signature of officer administering oath)
                              (Typed name, grade, organization)
```

**Figure 1–1. Sample format for SS Affidavit the United States Army**

---

000634

I am being subjected to the exercise of criminal jurisdiction of the Government of (name of country). I am presently:

___ Awaiting disposition of the charges by the authorities of the foreign government.

___ Undergoing trial in a court of the foreign government.

___ Awaiting a decision on my appeal of my conviction and sentence by a court of the foreign government.

I request that I be retained in the Service beyond (ETS date), the expiration date of my term of service, until final disposition of the charges against me by the foreign government and completion of administrative action to accomplish my separation from the Army. I have been informed that if my case results in civil conviction, I may be processed for separation under the provisions of AR 635-200, chapter 14, section II and my service may, if warranted, be characterized as under other than honorable conditions. I have been advised of my rights under Article 31, UCMJ. I have also been informed that since I am subject to the UCMJ, it is possible that court-martial charges may be preferred against me if the foreign government does not proceed with its case. I certify that this request for retention in the Service is not the result of coercion, force, or threat of harm, nor have I been promised any benefits by the military authorities of the United States.


　　　　(Date)　　　　(Signature of Soldier)
　　　　　　　　　　　(Typed name, grade, SSN, organization)

　　　　(Date)　　　　(Signature of Counseling Officer)

**Figure 1–2. Sample format for request for retention in service**

# Chapter 2
# Procedures for Separation

## Section I
## Notification Procedure

### 2–1. Application

*a.* The procedures in this chapter will be followed when required by the specific reason or reasons for separation. (See figs 2–1, 2–2, 2–3, 2–4, 2–5, and app B.)

*b.* When a Soldier is subject to separation for more than one reason, the following guidelines apply to procedural requirements (including procedural limitations on characterization of service or description of separation):

(1) The basis for each reason must be clearly established.

(2) If a reason for separation set forth in the notice of proposed action requires processing under the administrative board procedure, the entire matter will be processed under section II of this chapter.

(3) If more than one reason for separation is approved, the guidance on characterization that provides the greatest latitude may be applied.

(4) When there is any other conflict between a specific requirement for one reason and a general requirement for another reason, the specific requirement will be applied.

(5) If a conflict in procedures cannot be resolved based on the above, the requirement most favorable to the Soldier will be used.

*c.* The commander initiating the administrative separation will indicate on the commander's report to the separation authority (fig 2–5) whether the Soldier is a known victim of sexual assault, or if the Soldier has filed an unrestricted report of sexual assault within the 24– month period prior to initiation of the separation action.

000635

**2–2. Notice**

When the reason for separation requires the notification procedure, the commander will notify the Soldier in writing that his/her separation has been recommended per this regulation. (See fig 2–1 and app B.)

*a.* The commander will cite specific allegations on which the proposed action is based and will also include the specific provisions of this regulation authorizing separation.

*b.* The Soldier will be advised of—

(1) Whether the proposed separation could result in discharge, release from active duty to a Reserve Component, or release from custody and control of the Army.

(2) The least favorable characterization of service or description of separation he/she could receive.

(3) The type of discharge and character of service recommended by the initiating commander and that the intermediate commander(s) may recommend a less favorable type of discharge and characterization of service than that recommended by the initiating commander.

*c.* The separation authority is not bound by the recommendations of the initiating or intermediate commander and has complete discretion to direct any type of discharge and characterization of service authorized by applicable provisions of this regulation. (See para 2–4*d*(4).) Chapter 3 provides guidance on the appropriate type of discharge and characterization of service. The servicing Judge Advocate will be consulted when limited use evidence (see para 3–8*g*) is involved. The Soldier will be further advised of the following rights:

(1) To consult with military counsel within a reasonable time (not less than 3 duty days). Soldiers may also consult with civilian counsel at their own expense.

(2) To submit statements in his/her own behalf.

(3) To obtain copies of documents that will be sent to the separation authority supporting the proposed separation. For a separation under chapter 9 or 14 based upon a positive urinalysis, the Soldier will be provided, upon request, a copy of the supporting laboratory documents (as described in AR 600–85). Classified documents may be summarized.

(4) To a hearing before an administrative separation board under section III of this chapter if he/she had 6 or more years of total active and reserve service on the date of initiation of recommendation for separation. This includes creditable service in any U.S. military component, for example, RA, ARNGUS, USAR (including IRR and Delayed Entry Program), USN, USAF, and so forth.

(5) To waive the above rights in writing, including the right to submit a conditional waiver of the right to have the case heard before an administrative separation board. (See para 2–5*b* and fig 2–2.) Failure to respond (including failure to submit matters under (3), above) within 7 duty days will constitute a waiver of the rights in (1) through (5), above. An extension will normally be granted until any documents requested by the Soldiers pursuant to (4), above, are provided to the Soldier, and the Soldier has a reasonable opportunity to respond to such documents.

*d.* The following additional notice requirements will be satisfied, as appropriate:

(1) If separation processing is initiated for more than one reason, the Soldier will be notified of the basis for each reason, including the circumstances upon which the action is based, per this regulation.

(2) If the respondent is in civil confinement or absent without leave, the relevant notification procedures apply.

(3) Additional notification requirements are set forth in chapter 5 when characterization of service as General (under honorable conditions) is authorized, and the Soldier is processed for separation by reason of convenience of the Government.

(4) The intermediate commander(s), in making recommendations on the type of discharge and characterization of service, may recommend any type of discharge and characterization of service authorized for the notified basis of separation but will normally be limited to considering facts contained within the proposed action.

(5) If the intermediate commander(s) considers additional unfavorable information outside that contained in the proposed action in making recommendations, the intermediate commander will state, in writing, the specific facts and incidents in the Soldier's record that warrant such type of discharge and characterization.

*(a)* The Soldier will be given an opportunity to rebut the additional material prior to the proposed action being forwarded from that intermediate commander.

*(b)* Military legal counsel will be made available to assist in preparation of rebuttal of the additional material.

*(c)* An explanation by the intermediate commander(s) of the reasons for his/her recommendations that refers only to facts contained within the proposed action or to the commander's conclusions based on those facts will not constitute"additional unfavorable information" within the meaning of this paragraph.

*e.* An extension may be granted to the time allowed to consult with counsel upon a timely showing of good cause by the Soldier.

(1) If the Soldier elects to waive his/her rights, the Soldier will personally sign a waiver.

(2) The Soldier's consulting counsel will advise the Soldier and will sign the written waiver as witness, indicating that he/she is a commissioned officer of the Judge Advocate General's Corps. (See para 2–5 and app B.)

(3) If the Soldier refuses to consult with counsel and/or declines to respond as to the waiver of rights, such declination will constitute a waiver of rights. An appropriate notation will be made on the form provided for the Soldier's reply.

**000636**

(4) If the Soldier indicates that one or more of the rights will be exercised but declines to sign the appropriate form, the selection of rights will be noted. An appropriate notation as to the failure to sign will be made.

*f.* The Soldier's commander or other designated individual will personally serve the Soldier with the memorandum of notification. The Soldier is required to sign an acknowledgment of receipt. The acknowledgment of receipt will be signed and dated on the date it is served.

*g.* If notice by mail is authorized and the Soldier fails to acknowledge receipt or submit a timely reply, that fact will constitute a waiver of rights. An appropriate notation will be recorded on a retained copy of the appropriate form.

*h.* The Soldier may withdraw his/her waiver of rights listed in *c*(1) through (5), above, at any time prior to the date the separation authority orders, directs, or approves the separation.

*i.* The Soldier will indicate on the Notification/Acknowledge/ Election of Rights (fig 2–4) whether he or she has filed an unrestricted report of sexual assault within 24 months of initiation of the separation action. The Soldier will also indicate whether he or she believes that this separation action is a direct or indirect result of the sexual assault itself or of the filing of the unrestricted report, if the above is true.

## 2–3. Action by separation authority

The action of the separation authority will be recorded.

*a.* Upon receipt of the recommended action (see fig 2–5 and app B), the separation authority will determine if there is sufficient evidence to verify the allegations. If no sufficient basis for separation exists, the separation authority will disapprove the recommendation or take other appropriate action under this regulation. If the recommendation is disapproved, the return memorandum will cite reasons for disapproval.

*b.* If sufficient factual basis for separation exists, the separation authority will determine whether separation is warranted per chapter 1, section II, and will take one of the following actions:

(1) Direct retention.

(2) Direct separation for a specific reason. (If there is more than one basis for separation, the separation authority will designate the most appropriate basis as the primary reason for reporting purposes.)

(3) Suspend separation per paragraph 1–18.

*c.* The separation authority will determine the type of discharge certificate and character of service per chapter 3. The servicing Judge Advocate will be consulted when limited use evidence (see para 3–8*g*) is involved.

*d.* The criteria in chapter 1, section VII, will govern whether the Soldier will be released from AD or ADT with transfer to the IRR, or discharged. (See para 1–11 for additional instructions on ARNGUS and USAR personnel.)

## Section II
## Administrative Board Procedure

## 2–4. Notice

*a.* When the reason for separation requires the administrative board procedure, the commander will notify the Soldier in writing that his/her separation has been recommended per this regulation. (See fig 2–3 and app B.)

(1) The commander will cite the specific allegations on which the proposed action is based.

(2) The commander will include the specific provisions of this regulation authorizing separation.

(3) The commander will advise whether the proposed separation could result in discharge, release from active duty to a Reserve Component, or release from custody and control of the Army.

(4) The Soldier will be advised of the least favorable characterization of service or description of separation he/she could receive.

(5) The Soldier will be advised of the type of discharge and the characterization of service recommended by the initiating commander and that the intermediate commander(s) may recommend a less favorable type of discharge and characterization of service than that recommended by the initiating commander.

*b.* The separation authority is not bound by the recommendations of the initiating or intermediate commander(s). (See *d*(4), below.) However, the separation authority will not authorize the issuance of a type of discharge or character of service less favorable than that recommended by the board. (See para 2–6*d*.) Chapter 3 provides guidance and criteria as to the appropriate type of discharge and characterization of service. The servicing Judge Advocate will be consulted when limited use evidence (see para 3–8*g*) is involved. The Soldier will be further advised of the following rights:

(1) To confer with consulting counsel. Soldiers may also consult with a civilian counsel at their own expense.

(2) To obtain copies of documents that will be sent to the separation authority supporting the proposed separation. For a separation under chapter 9 or chapter 14 of this regulation, based on a positive urinalysis, the Soldier will be provided, upon request, a copy of the supporting laboratory documents (as prescribed in AR 600–85). Classified documents may be summarized.

(3) To a hearing before an administrative separation board.

(4) To present written statements instead of board proceedings.

000637

(5) To request appointment of a military counsel for representation.

(6) To retain civilian counsel at no expense to the Government. If the respondent is absent, the counsel may present the case before an administrative discharge board.

(7) To waive the above rights in writing. This includes the right to submit a conditional waiver of the right to have a case heard before an administrative separation board. (See para 2–5*b*, fig 2–2, and app B.) Failure to respond within 7 duty days will constitute a waiver of the rights in (1) through (7). An extension of the period in which to reply may be granted upon a timely showing of good cause by the Soldier. An extension will normally be granted until any documents requested by the Soldier (pursuant to *b*(2), above) are provided to the Soldier, and the Soldier has a reasonable opportunity to respond to such documents.

(8) To withdraw a waiver of the rights listed in *b*(1) through (7), above, anytime before the date the separation authority orders, directs, or approves the separation and to request that the case be presented before a board of officers.

*c.* The Soldier will be given a reasonable time (not less than 3 duty days) to consult with counsel before waiving the rights listed in *b*(1) through (7), above.

(1) An extension may be granted to the time allowed to consult with counsel upon a timely showing of good cause.

(2) The Soldier must personally sign a waiver when electing to waive rights. Consulting counsel will advise the Soldier and will sign the written waiver as witness, indicating that he/she is a commissioned officer of The Judge Advocate General's Corps. (See figs 2–1, 2–4, and app B.)

(3) If the Soldier refuses to consult with a counsel, a statement to this effect will be prepared by the commander and included in the file. Separation action will then proceed as if the Soldier had consulted with counsel.

(4) If the Soldier indicates that one or more of the rights will be exercised but declines to sign the appropriate form, the selection of rights will be noted. An appropriate notation as to the failure to sign will be made.

(5) If a Soldier elects to present his/her case before an administrative separation board, the Soldier will be advised that willful failure to appear before the board of officers without good cause will constitute a waiver of rights to personal appearance before the board.

(6) If a Soldier waives his/her right to an administrative separation board, the separation authority may disapprove the waiver. The separation authority will then refer the case to an administrative separation board, or direct retention on active duty.

*d.* The following additional notice requirements will be satisfied as appropriate:

(1) If separation processing is initiated for more than one reason, the Soldier will be notified of the basis for each reason.

(2) If the respondent is in civilian confinement, absent without leave, or is transferred to the IRR, the relevant notification procedures apply.

(3) Additional notification requirements are set forth in chapter 5 when characterization of service as General (under honorable conditions) is authorized, and the Soldier is processed for separation for convenience of the Government.

(4) The intermediate commander(s), in making recommendations on the type of discharge and characterization of service, may recommend any type of discharge and characterization of service authorized for the notified basis of separation but will normally be limited to considering facts contained within the proposed action.

*(a)* If the intermediate commander(s) considers additional unfavorable information outside that contained in the proposed action in making recommendations, the intermediate commander will state in writing the specific facts and incidents in the Soldiers record that warrant such type of discharge and characterization.

*(b)* The Soldier will be given an opportunity to rebut the additional material prior to the proposed action being forwarded from that intermediate commander. Military legal counsel will be made available to assist in preparation of rebuttal of the additional material.

*(c)* An explanation by the intermediate commander of the reasons for his/her recommendation that refers only to facts contained within the proposed action or to the commander's conclusions based on those facts will not constitute "additional unfavorable information" within the meaning of this paragraph.

*e.* The commander initiating the administrative separation will indicate on the commander's report to the separation authority (fig 2–5) whether the Soldier is a known victim of sexual assault, or if the Soldier has filed an unrestricted report of sexual assault within the 24–month period prior to initiation of the separation action.

*f.* The Soldier's commander or other designated individual will personally serve the Soldier with the memorandum of notification. The Soldier is required to sign and date the acknowledgment of receipt on the date it is served.

*g.* If notice by mail is authorized and the Soldier fails to acknowledge receipt or submit a timely reply, that fact will constitute a waiver of rights. An appropriate notation will be recorded on a retained copy of the appropriate form.

*h.* The Soldier will indicate on the Notification/Acknowledge/ Election of Rights (fig 2–4) whether he or she has filed an unrestricted report of sexual assault within 24 months of initiation of the separation action. The Soldier will also indicate whether he or she believes that this separation action is a direct or indirect result of the sexual assault itself or of the filing of the unrestricted report, if the above is true.

**2–5. Waiver**

*a.* When a Soldier waives his/her right to a hearing before an administrative board and the separation authority approves the waiver, the case will be processed without convening a board. However, the separation authority will be the same as if the board was held.

*b.* A Soldier may wish to waive his/her right to a hearing before an administrative separation board contingent upon receiving a characterization of service or description of separation more favorable than the least favorable characterization authorized for the separation reason set forth in the notice of separation action.

(1) Soldiers wishing to submit a conditional waiver will submit a completed Request for Conditional Waiver. (See fig 2–2 and app B.)

(2) Commanders will ensure that a Soldier is not coerced into waiving his/her right to a hearing before an administrative separation board.

*c.* The appropriate separation authority may approve or disapprove the conditional waiver.

(1) If the conditional waiver is disapproved, the case will be referred to a hearing before an administrative separation board unless there is a subsequent unconditional waiver of the right to a hearing before an administrative separation board under paragraph 2–2 or 2–4.

(2) There is no requirement to delay board proceedings pending action by the convening authority on the conditional waiver. However, once the board has made its findings and recommendations, the convening authority may not approve the conditional waiver.

*d.* Waivers of the board hearing will not be accepted in the cases of Soldiers who have completed 18 years or more active Federal service.

**2–6. Separation authority action after board hearings**

*a.* When the board is completed, the board proceedings will be reviewed by a qualified officer fully cognizant of applicable regulations and policies to determine whether the action meets the requirements of this regulation. When the board recommends that a discharge under other than honorable conditions be issued, limited use evidence (see para 3–8g) was introduced in the board proceedings, or the Soldier identifies specific legal issues for consideration by the separation authority, the proceedings will be reviewed by an officer of The Judge Advocate General's Corps. Upon completion of the review—

(1) When the board has recommended separation for misconduct (see chap 14), the separation authority may take one of the following actions:

*(a)* Direct separation of the Soldier for misconduct, except for Soldiers referred to in paragraph 1–19f. (See also para 2–12b(5).)

*(b)* Direct separation of the Soldier for unsatisfactory performance if such was a stated basis for separation in the initial memorandum of notification and was included in the board's findings, except for Soldiers referred to in paragraph 1–19f. (See also para 2–12b(5).)

*(c)* Disapprove the recommendation. Direct retention of the Soldier when the grounds for separation are not documented in the file or if the file does not indicate that the Soldier is without the potential for full effective duty and separation is not otherwise mandatory.

*(d)* Unless specifically prohibited, approve separation for misconduct and suspend execution of the separation when the Soldier's record shows sufficient potential for full effective duty. (See para 1–18.)

(2) In fraudulent entry actions processed per chapter 7, section IV, the separation authority may take one of the following actions (when misconduct by recruiting officials is involved):

*(a)* Approve the board recommendation to separate the Soldier, except for Soldiers referred to in paragraph 1–19f. (See also para 2–12b(5).)

*(b)* Recommend, if the separation authority is the special court-martial convening authority (SPCMCA), or approve, if the separation authority is the GCMCA, retention in meritorious cases, involving waivable disqualification.

*(c)* If the board recommends separation, take the action specified in paragraph 7–18b, when appropriate.

*(d)* Take the action specified in *e*, below, if appropriate.

(3) When the board has recommended separation for unsatisfactory performance, the separation authority may take one of the following actions:

*(a)* Direct separation of the Soldier for unsatisfactory performance, except for Soldiers referred to in paragraph 1–19f. (See also paras 1–18 and 2–12b(5).)

*(b)* Disapprove the recommendation and direct retention of the Soldier.

*(c)* Approve separation for unsatisfactory performance and suspend execution of the separation when the Soldier's record shows sufficient potential for full active duty. (See para 1–18.)

(4) Rescinded.

(5) The action of the separation authority in alcohol or other drug abuse rehabilitation failure actions will be per chapter 9.

**000639**

*b.* A Soldier who has completed 20 or more years of active service creditable toward retirement and for whom separation is recommended to HQDA will be given the opportunity of applying for retirement.

(1) He/she will be told that authority to submit the application does not assure that it will be approved.

(2) DA Form 2339 (Application for Voluntary Retirement) will be attached when the case is sent to HQDA or a statement will be included that the Soldier was given the opportunity but declined to apply for retirement.

*c.* When a member of the Reserve Component is to be separated per chapters 13 or 14, the separation authority will decide, based on board findings, whether the Soldier concerned is being separated because of moral or professional dereliction.

*d.* No separation authority will direct discharge if a board recommends retention. Neither will the separation authority authorize issuance of a discharge of less favorable character than that recommended by the board. However, as provided above, a separation authority may direct retention when discharge is recommended, or he/she may issue a discharge certificate of a more favorable character than that recommended.

*e.* When a board of officers has recommended retention and the separation authority believes that discharge is warranted and in the best interest of the Army, a request for discharge for the convenience of the Government per paragraph 5–3, may be forwarded to Headquarters, Department of the Army (AHRC–EPR–F), 200 Stovall Street, Alexandria, VA 22332–0478.

(1) Separation under the provisions of paragraph 5–3 is based upon different criteria from that considered by the board of officers and does not constitute overturning the board.

(2) It is the policy of HQDA not to direct separation per paragraph 5–3 when a duly constituted board has recommended retention unless sufficient justification is provided to warrant separation by the Secretary of the Army, based on all the circumstances, as being in the best interest of the Army.

(3) If separated, the Soldier will be given an entry-level separation or awarded an honorable or general discharge, as appropriate.

(4) Before forwarding a request for discharge under this paragraph, the separation authority will—

*(a)* Notify the Soldier, in writing, of the proposed recommendation using the notification procedure. (See chap 2, sec I.) This notification will cite this paragraph and paragraph 5–3 as the basis for the action and specify the justifications and reasons supporting the action. However, the procedure for requesting consideration by an administrative board (see para 2–2*c*(5)) is not applicable.

*(b)* Provided the Soldier copies of documents, or other evidence, upon which the proposed action is based (classified documents may be summarized).

*(c)* Personally consider any response provided by the Soldier. If the Soldier's response specifies legal issues for consideration, a member of The Judge Advocate General's Corps or legal advisor who has not previously acted as a board member, recorder, counsel for consultation, or counsel for representation in the prior separation action, will review the response and advise the separation authority thereon.

*(d)* Personally sign the memorandum to HQDA setting forth specific reasons justifying the Soldier's discharge as being in the Army's best interest.

(5) The record of the board proceedings will be attached to the separation authority's memorandum to HQDA. The separation authority will neither approve nor disapprove the findings and recommendations of the board, since forwarding the case to HQDA under this paragraph constitutes the separation authority's initial action on the case.

(6) No further action will be taken on the findings or recommendations of the board of officers unless directed by HQDA. As a minimum, enclosures to the transmittal memorandum should include—

*(a)* The notification memorandum to the Soldier

*(b)* The Soldier's acknowledgment of notification and any response

*(c)* The report of the board proceedings

*(d)* Any other supporting documents or evidence.

*(e)* Allegations of misconduct or other adverse information concerning the Soldier not specified in the notification in (4)(*a*), above, will not be referred unless the Soldier has been further notified that such information will be forwarded for consideration and afforded the opportunity to respond.

*f.* If the separation authority notes a defect that he/she deems to be harmless in a case in which separation has been recommended, he/she will take final action, subject to *d*, above. If there are substantial defects, he/she may take one of the following actions:

(1) Direct retention.

(2) If the board has failed to make the findings or recommendations required, return the case to the same board for compliance with this regulation.

(3) If there is an apparent procedural error or omission in the record of proceedings that may be corrected without reconsideration of the findings and recommendations of the board, return the case to the same board for corrective action.

(4) If the board error materially prejudiced a substantial right of the Soldier, the separation authority may act only as can be sustained without relying on the proceedings affected by the error.

**000640**

*(a)* The separation authority may set aside the findings and recommendations and refer the case to a new board for a rehearing.

*(b)* No member of the new board may have served on a prior board that considered any of the same matters against the Soldier.

*(c)* The new board may be furnished the evidence properly considered by the first board. This evidence will include extracts from the record of testimony of witnesses not deemed by the convening authority to be reasonably available to testify at the rehearing. Additional admissible evidence may be furnished to or obtained by the new board. The separation authority may, upon due notice to the Soldier, incorporate new allegations based on later conduct of the Soldier.

*(d)* Unless the new board considers substantial additional evidence unfavorable to the Soldier, the separation authority may not approve any findings and recommendations of the new board less favorable than those rendered by the first board.

(5) If the separation authority determines that the findings of the first board were obtained by fraud or collusion, the case may be referred to a new board.

*(a)* No member of the new board may have been a member of the first board.

*(b)* The separation authority may not approve findings and recommendations less favorable to the Soldier than those rendered by the first board unless the separation authority finds that the fraud or collusion in the first board is attributable to the Soldier or an individual acting at the Soldier's request.

(6) No more than one rehearing may be directed without HQDA approval.

*g.* A Soldier subject to discharge because of conviction by civil court or because of adjudication as a juvenile offender may be processed for discharge even though the Soldier has filed an appeal or stated his/her intention to do so.

(1) General policy will be to withhold the execution of the approved discharge pending the outcome of the appeal.

(2) If execution of the discharge is considered appropriate without waiting for final action on the appeal, the Soldier may be discharged with the appropriate characterization of service upon the direction of the Secretary of the Army or at the request of the Soldier. (See para 14–6.)

*h.* The Government may initially introduce limited use evidence (see AR 600–85, chap 6) into separation proceedings accomplished under this regulation or, at its discretion, may elect to proceed solely with other, independent evidence not subject to limited use. If the Government initially introduces limited use evidence and the separation proceedings result in separation, the Soldier is entitled to an honorable discharge. (See para 3–8*c*.) However, the proceedings may be reinitiated or a rehearing held in accordance with the following guidance:

(1) If the Government introduces limited use evidence before the board convenes, the separation proceedings may be reinitiated, excluding all references to limited use evidence.

(2) If limited use evidence is introduced by the Government after the board convenes, a GCMCA who is a general officer may set aside the proceedings and refer the case to a new board for rehearing. (See AR 600–85, para 6–4*e*.)

(3) The reason for the rehearing will not be disclosed to the new board and limited use information will not be initially introduced by the Government. Review and action in the case will be based only on the new record.

(4) If a rehearing is not deemed appropriate, the Soldier may be separated with an honorable discharge. (See para 3–8*a*.) The servicing Judge Advocate will review completed board proceedings that contain limited use evidence and advise the GCMCA whether a rehearing is appropriate.

*i.* The respondent will be provided a copy of the board's proceedings.

## 2–7. Composition of the board

*a.* A board convened to determine whether a Soldier should be separated under the administrative board procedure will consist of at least three experienced commissioned, warrant, or noncommissioned officers. Enlisted Soldiers appointed to the board will be in grade sergeant first class (SFC) or above, and senior to the respondent. At least one member of the board will be serving in the grade of major or higher, and a majority will be commissioned or warrant officers. The senior member will be president of the board. The convening authority will appoint a non-voting recorder. The convening authority may also appoint a non-voting legal adviser.

*b.* Care will be exercised to ensure that—

(1) The board is composed of experienced, unbiased officers. The officers should be fully aware of applicable regulations and policies pertaining to cases for which the board is convened.

(2) In the case of a Reserve Component Soldier, the membership of the board will include at least one Reserve Component member.

*(a)* Voting members will be senior to the respondent's reserve grade.

*(b)* Enlisted Soldiers will not be appointed as members of boards in cases of ARNGUS or USAR Soldiers when a discharge under other than honorable conditions could result.

*(c)* Enlisted Soldiers may be appointed as members of boards considering Reserve Component Soldiers when only an honorable or general discharge may be issued.

000641

(3) In the case of a female Soldier, the board will, upon the written request of the respondent, include a female member as a voting member, if reasonably available. In the event of non-availability, the reason will be stated in the record of proceedings.

(4) In the case of a Soldier who holds a Reserve commission or warrant, the board will be composed of an uneven number of officers. The officers will be senior in permanent grade to the Reserve grade held by the Soldier. One member of the board will be a RA officer and the remainder Reserve Component officers of the Army who are serving on AD.

(5) If the respondent is a member of a minority group, the board will, upon written request of the respondent, include as a voting member a member who is also a minority group member, if reasonably available.

*(a)* When requested, the appointed board member should be of the same minority group as the respondent. However, non-availability of a member of the same minority group will not prevent convening the board.

*(b)* In the event of non-availability, the reason will be stated in the record of proceedings.

(6) The board is provided a competent stenographer or clerk.

(7) The officer initiating the action prescribed in this regulation, or any intervening officer who had direct knowledge of the case, is not a member of the board.

*c.* The president will preside and rule finally on all matters of procedure and evidence. The rulings of the president may be overruled by a majority of the board. If appointed, the legal advisor will rule finally on all matters of evidence and challenges except to himself/herself. The appointed legal advisor will pay particular attention to cases that involve limited use evidence. (See para 3–8*g.*)

## 2–8. Effective processing procedures

The following procedures have proved useful in effective processing by boards:

*a.* Appointing a permanent board of officers to serve as large a unit as possible. Changes should be held to a minimum and regulated to provide continuity. This ensures uniform treatment for lower or parallel units. It will provide a volume of cases sufficient to allow the board members to attain professional competence in this duty. On a permanent board, the members will gain experience from which evolves judgment more mature and more sensitive to the interest of both the Soldier and the Army.

*b.* Disseminating procedural instructions to lower units by the recorder of the board serving the units.

*c.* Recessing a hearing for 30 to 90 days when the board members are unable to reach an agreement based on the data at hand. During this time, further rehabilitation data may be secured.

## 2–9. Witnesses

*a.* The ETS date or transfer status of each expected witness will be checked. This will ensure that essential military witnesses will be available at the board proceedings.

*b.* The appropriate commander will ensure that no witness is transferred or separated before the beginning of a board hearing except when an enlistment or period of service fixed by law expires. In such cases, an attempt will be made to obtain the Soldier's consent to retention. If he/she does not consent, a deposition or affidavit will be obtained, as appropriate.

## 2–10. Board procedures

*a.* A Soldier under military control will be notified in writing of the convening date of the board at least 15 days before the hearing. This will allow the Soldier and the appointed counsel time to prepare the case. The written notice will state that if the Soldier fails to appear before the board when scheduled by willfully absenting himself/herself without good cause, he/she may be discharged from or retained in the Service without personal appearance before a board.

*b.* The Soldier will be notified of names and addresses of witnesses expected to be called at the board hearing. The Soldier will also be notified that the recorder of the board will, upon request of the Soldier, try to arrange for the presence of any available witness that he/she desires. A copy of the case file, including all affidavits and depositions of witnesses unable to appear in person at the board hearing will be furnished to the Soldier or the counsel as soon as possible after it is determined that a board will hear the case.

*c.* When, for overriding reasons, the minimum of 15 days cannot be granted, the president of the board will ensure that the reason for acting before that time is fully explained.

(1) The reason will be recorded in the proceedings of the board.

(2) Requests for an additional delay, normally not to exceed 30 days after initial notice, will be granted if the convening authority or president of the board believes such delay is warranted to ensure that the respondent receives a full and fair hearing.

(3) The decision of the president is subject to being overruled by the convening authority upon application by the recorder or the respondent; however, the proceedings need not be delayed pending review.

*d.* The commander will advise the Soldier, in writing, of the specific basis (subparagraph number and description

heading) for the proposed discharge action. The commander will also advise the Soldier that he/she has the following rights:

(1) The Soldier may appear in person, with or without counsel for representation or, if absent, be represented by counsel at all open proceedings of the board.

*(a)* When the Soldier appears before a board without representing counsel, the record will show that the president of the board counseled the Soldier.

*(b)* The Soldier will be counseled as to type of discharge he/she may receive as a result of the board action, the effects of such a discharge in later life, and that he/she may request representing counsel. The record will reflect the Soldier's response.

(2) The Soldier may, at any time before the board convenes or during the proceedings, submit any answer, deposition, sworn or unsworn written statement, affidavit, certificate, or stipulation. This includes depositions or affidavits of witnesses not deemed to be reasonably available or witnesses who are unwilling to appear voluntarily.

(3) The Soldier may request the attendance of witnesses. The Soldier may submit a written request for temporary duty (TDY) or invitational travel orders for witnesses. Such a request will contain the following matter:

*(a)* A synopsis of the testimony that the witness is expected to give.

*(b)* An explanation of the relevance of such testimony to the issues of separation or characterization.

*(c)* An explanation as to why written or recorded testimony would not be sufficient to provide for a fair determination.

(4) The convening authority may authorize expenditure of funds for production of witnesses only if the presiding officer (after consultation with a judge advocate) or the legal advisor (if appointed) determines that—

*(a)* The testimony of a witness is not cumulative.

*(b)* The personal appearance of the witness is essential to a fair determination on the issues of separation or characterization.

*(c)* Written or recorded testimony will not accomplish adequately the same objective.

*(d)* The need for live testimony is substantial, material, and necessary for a proper disposition of the case.

*(e)* The significance of the personal appearance of the witness, when balanced against the practical difficulties in producing the witness, favors production of the witness.

(5) Factors to be considered in the balancing test include the cost of producing the witness; the timing of the request for production of the witness; and the potential delay in the proceedings that may be caused by producing the witness or the likelihood of significant interference with military operational deployment, mission accomplishment, or essential training.

(6) If the convening authority determines that the personal testimony of a witness is required, the hearing will be postponed or continued, if necessary, to permit the attendance of the witness.

(7) The hearing will be continued or postponed to provide the respondent with a reasonable opportunity to obtain a written statement from the witness if a witness requested by the respondent is unavailable in the following circumstances:

*(a)* When the presiding officer determines that the personal testimony of the witness is not required.

*(b)* When the commanding officer of a military witness determines that military necessity precludes the witness's attendance at the hearing.

*(c)* When a civilian witness declines to attend the hearing.

(8) The Soldier may or may not submit to examination by the board. The provisions of UCMJ, Article 31, will apply.

(9) The Soldier and his/her counsel may question any witness who appears before the board.

(10) The Soldier may challenge any voting member of the board for cause only.

(11) The Soldier or counsel may present argument before the board closes the case for deliberation on findings and recommendations.

(12) Failure of the Soldier to invoke any of the above rights after he/she has been apprised of the same will not have an effect upon the validity of the separation proceedings.

*e.* If the Soldier holds Reserve Component status as a commissioned or warrant officer, the board will notify him/her that the action also involves his/her Reserve Component status and could terminate such status, but only if applicable Reserve Component officer separation requirements are satisfied in accordance with DODI 1332.40 and AR 135–175.

*f.* When the board meets in closed session, only voting members will be present.

*g.* Except as modified per this regulation, the board will conform to the provisions of AR 15–6 applicable to formal proceedings with respondents. As an exception to AR 15–6, paragraph 3–7*b*, expert medical and psychiatric testimony routinely may be presented in the form of affidavits. However, if the Soldier desires to present such evidence, he/she is entitled to have the witnesses appear in person, if they are reasonably available.

*h.* The proceedings of the board will be summarized as fairly and accurately as possible. They will contain a verbatim record of the findings and recommendations. (See app B.)

000643

*i.* If the Soldier has exercised his/her right to revoke a previous waiver, the board and its members will not be advised in any manner of such action by the Soldier or of the type discharge that has been recommended in his/her case. When the Soldier or the counsel knows that facts intended to be excluded by this paragraph are known by any member of the board, failure to challenge the member having such knowledge constitutes an irrevocable waiver of the benefits of the exclusionary rule of this paragraph.

## 2–11. Evidence

*a. Presentation of evidence.* The rules of evidence for court-martial and other judicial proceedings are not applicable before an administrative separation board. Reasonable restrictions will be observed, however, concerning relevancy and competency of evidence.

*b. Newly discovered evidence.* If prior to the beginning of the board hearing, the commander or the board recorder discovers additional evidence, similar in nature to that previously considered by the commander in recommending the separation, that evidence is admissible.

(1) Such evidence may be considered by the board as proof of an amended or new factual allegation in support of a reason for separation that was cited in the commander's recommendation for separation.

(2) When such additional evidence is considered and the board determines that the respondent has not had reasonable time to prepare a response to it, a reasonable continuance must be granted upon the respondent's request.

(3) If the newly discovered evidence constitutes a separate reason for separation that was not included in the notice of proposed separation, the case may be processed without the new evidence or the case must be returned to the commander for consideration as to whether an additional reason for separation should be included in the notice.

## 2–12. Findings and recommendations of the board

*a. Findings.*

(1) The board will determine whether each allegation in the notice of proposed separation is supported by a preponderance of the evidence.

(2) The board will then determine per chapter 1, section II, whether the findings warrant separation. If more than one basis for separation was contained in the notice, there will be a separate determination for each basis.

*b. Recommendations.*

(1) The board convened to determine whether a Soldier should be separated for misconduct will recommend that the Soldier be—

*(a)* Separated because of misconduct. The board will recommend a characterization of service of honorable, general (under honorable conditions), or under other than honorable conditions.

*(b)* Separated because of unsatisfactory performance (except in fraudulent entry actions) if such was a stated basis for separation in the initial memorandum of notification and is included in the board's findings. Type of discharge certificate (honorable or general) to be furnished will be indicated.

*(c)* Retained in the Service. (See para 14–7 for guidance on retention of Soldiers convicted by civil court.)

(2) The board convened to determine whether a Soldier should be separated for unsatisfactory performance will recommend that he/she be—

*(a)* Separated because of unsatisfactory performance. The board will recommend a characterization of service of honorable or general (under honorable conditions).

*(b)* Retained in the Service.

(3) Rescinded.

(4) When the Soldier is absent without leave and fails to appear before the board, the discharge authority will be advised of that fact, together with any board recommendation for separation or retention made per (1), (2), or (3), above.

(5) If the Soldier holds a Reserve Component commission or warrant, the board will make separate recommendations concerning his/her Reserve Component status, including character of service to be issued, but only if applicable Reserve Component officer separation requirements are satisfied in accordance with DODI 1332.40 and AR 135–175.

*(a)* The recommendations should be compatible with enlisted status recommendations. Normally, facts warranting separation from an active duty enlisted status prescribed in this chapter will also warrant termination of a Reserve Component commission or warrant.

*(b)* Under certain circumstances, it may be reasonable to recommend retention in an active duty enlisted status but termination of a Reserve Component commission or warrant.

(6) When the board recommends separation, it may also recommend that the separation be suspended per paragraph 1–18. But the recommendation as to suspension is not binding on the separation authority.

(7) If separation or suspension of separation is recommended, the board will also recommend a characterization of service or description of separation as authorized in chapter 3.

(8) Except when the board has recommended separation because of alcohol or drug abuse rehabilitation failure or misconduct (see chaps 9 and 14), or has recommended characterization of service under other than honorable

000644

conditions, the board will recommend whether the respondent should be retained in the IRR as a mobilization asset to fulfill the respondent's total military obligation.

*c. The completed report of proceedings.*

(1) The completed report of proceedings will be forwarded to the separation authority. (See app B for sample report of proceedings.)

(2) When board action is completed on a Soldier with over 18 years of service, the findings and recommendations of the board, with complete documentation and the recommendation of the convening authority, will be forwarded to Headquarters, Department of the Army (AHRC–EPR–F), 2461 Eisenhower Avenue, Alexandria, VA 22332–0478, for final determination when the convening authority recommends discharge.

## Section III
## Additional Provisions Concerning Absent Soldiers

## 2–13. Processing in absence of Soldier

When proceedings have been initiated against a Soldier who is absent without leave or confined by civil authorities, the case may be processed in his/her absence.

*a.* A Soldier held in custody by civil authorities does not accrue service creditable for completion of his/her period of enlistment, or order to active duty, except for any period in which he/she was in an authorized leave status or when the Soldier's commander determines per AR 630–10 that the time spent in the custody of civil authorities should not be considered as lost time.

(1) Upon return to military control, a Soldier's ETS will be recomputed.

(2) When a Soldier's term of service has expired, his/her separation will be accomplished within 5 days of his/her return to military control and the Soldier will be regarded as having been retained in service for the convenience of the Government.

(3) For pay and allowances, see Department of Defense Financial Management Regulations (DOD 7000.14–R, vol. 7A).

*b.* A Soldier in duty status who is delivered to civil authorities in accordance with AR 630–10 prior to ETS, will be credited with the period of time in the hands of civil authorities in the computation of the expiration of service date unless finally convicted prior to the ETS. When the term of service expires, the Soldier will be separated in absentia by reason of ETS.

## 2–14. Civil confinement

*a.* A Soldier confined by civil authorities will receive notice under the notification procedure or the administrative board procedure, as appropriate. The notice will be delivered personally to the Soldier or sent by certified mail, return receipt requested. When a Soldier refuses to acknowledge receipt of notice, the individual who mails the notice will prepare a Sworn Affidavit of Service by Mail that will be inserted in the Soldier's personnel file with PS Form 3800 (Receipt for Certified Mail).

*b.* If delivered personally, the Soldier will acknowledge receipt in writing. If the Soldier does not acknowledge receipt, the notice will be sent by mail as provided in *a*, above.

*c.* The notice will state that the action has been suspended until a specific date (not less than 30 days from the date of delivery) in order to give the Soldier the opportunity to exercise the rights set forth in the notice. When warranted by the distance involved or other circumstances, a period in excess may be allowed for the Soldier to reply. If the Soldier does not reply by the given date, the separation authority will take appropriate action under paragraph 2–3.

*d.* The name and address of the appointed military counsel for consultation will be specified in the notice.

*e.* When entitled to an administrative board, the Soldier will be notified that the hearing by a board of officers will proceed in his/her absence and that counsel will represent him/her.

## 2–15. Additional requirements for Soldiers beyond military control by reason of unauthorized absence

*a. Determination of applicability.* If the GCMCA or higher authority determines that separation is otherwise appropriate under this regulation, a Soldier may be separated without return to military control in one or more of the following circumstances:

(1) Absence without authority after receiving notice of initiation of separation processing.

(2) Commission of a serious offense (see para 14–12*c*) when prosecution of a Soldier who is absent without authority appears to be barred by the statute of limitations, UCMJ Article 43. Questions concerning the statute of limitations should be referred to the servicing Staff Judge Advocate.

(3) Commission of a serious offense (see para 14–12*c*) when a Soldier who is an alien is absent without leave and appears to have gone to a foreign country in which the United States has no authority to apprehend the Soldier under a treaty or other agreement.

*b. Notice.* Before separation is executed under *a*(2) or (3), above, the Soldier will be notified of the imminent action

by registered mail, with return receipt requested (or by an equivalent form of notice if such service by U.S. mail is not available for delivery outside the United States), sent to the Soldier's last known address or to the next of kin.

(1) The notice will contain the matter set forth in chapter 2, section I or II, as appropriate.

(2) The notice will state that the action has been suspended until a specific date (not less than 30 days from the date of mailing) to give the Soldier the opportunity to return to military control.

(3) If the Soldier does not return to military control by such date, the separation authority will take appropriate action per chapter 2, section I or II.

*c. Members of the Reserve Components.*

(1) A member of a Reserve Component of the Army who is separated for cause is entitled to a discharge under honorable conditions except in either of the following circumstances:

*(a)* The Soldier is discharged under conditions other than honorable under an approved sentence of a court-martial or under the approved findings of a board of officers convened by an authority designated by the Secretary of the Army.

*(b)* The Soldier consents to a discharge under conditions other than honorable with a waiver of proceedings of a court-martial or a board.

(2) The provisions of (1), above, do not apply in cases of ARNGUS or USAR Soldiers dropped from the rolls of the Army who are sentenced to confinement in a Federal or State penitentiary or correctional institution after being found guilty of an offense by a court other than a court-martial or other military court and whose sentence has become final.

*d. Reassignment prior to separation.* Soldiers whose discharges are ordered under this paragraph will be reassigned from the unit of which they are AWOL or absent into the hands of civil authorities to appropriate separation transfer point for separation. Reassignment will not be accomplished earlier than the effective date of separation.

## 2–16. Exceptional circumstances

If information described in paragraph 2–16*a* or *b* is received before a discharge under other than honorable conditions is approved or directed for a Soldier pending discharge in accordance with paragraph 2–15*a*(2) or (3), an informal inquiry will be conducted to verify the information. After completion of the inquiry, the file will be forwarded to Headquarters, Department of the Army (AHRC–EPR–F), 200 Stovall Street, Alexandria, VA 22332–0478, requesting determination as to the final disposition to be taken.

*a.* An indication that the Soldier has not been in continuously unauthorized absence.

*b.* Information that a Soldier has been awarded the Bronze Star with V device, Soldiers Medal, Distinguished Flying Cross, Silver Star, Distinguished Service Cross, or Medal of Honor.

000646

*(Letterhead)*

*(Office Symbol)*                                                    *(Date)*

MEMORANDUM FOR (Soldier's name, SSN, grade, unit)

SUBJECT: Separation Under AR 635-200, (enter appropriate chapter)

1.  Under the provisions of AR 635-200, (indicate specific chapter, sec-
tion, and paragraph), I am initiating action to separate you for (indicate
narrative reason). The reasons for my proposed action are: (state specific,
factual details that constitute the basis for the proposed action).

2.  I am recommending that you receive a(n) (characterization of service)
(entry-level separation). My recommendation and your reply will be submit-
ted to the Commander, (cite unit designation of separation authority), who
is the separation authority and will make the final decision in your case.

3.  The intermediate commander/s and the separation authority are not bound
by my recommendation as to characterization of service. The separation au-
thority may direct that your service be characterized as honorable or under
honorable conditions, or you may receive an entry-level separation (unchar-
acterized) if in an entry-level status.

4.  If my recommendation is approved, the proposed separation could result
in discharge, release from active duty to a Reserve component (See para 1-
34.), or release from custody and control of the Army.

5.  You have the right to consult with consulting counsel and/or civilian
counsel at no expense to the Government within a reasonable time (not less
than 3 duty days).

6.  You may submit written statements in your behalf.

7.  You may obtain copies of documents that will be sent to the separation
authority supporting the proposed separation. (Classified documents may be
summarized.)

8.  You are entitled to a hearing before an administrative board if you
have 6 or more years of active and reserve military service at the time of
separation.

9.  You may waive the rights listed above in paragraphs 5, 6, 7, and 8 in
writing, and you may withdraw any such waiver at any time prior to the date
the separation authority orders, directs, or approves your separation.

10. If entitled to have your case heard by an administrative separation
board, you may submit a conditional waiver of that right.

11. You are required to undergo a complete medical examination in accor-
dance with AR 40-501. Arrangements have been made for this examination and
you are to report to (location) at (time) on (date). (See para 1-32.)[1]

12. You are required to undergo a mental status evaluation in accordance
with AR 40-501. Arrangements have been made for this examination and you
are to report to (location) at (time) on (date). (See para 1-32.)[1]

**Figure 2–1. Sample format for notification of separation when the notification procedure is used**

000647

13. Execute the attached acknowledgment (See fig 2-4.) and return it within 7 duty days from the date of your receipt of this memorandum. Any statement you desire to submit in your behalf must reach me within 7 duty days after you receive this letter, unless you request and receive an extension for good cause shown. Unless an extension is granted, failure to respond within 7 duty days will constitute a waiver of the rights in paragraphs 5, 6, 7, and 8.


Encl Listing

                                      (*Commander's signature*)
                                      (*Typed name, grade, branch*)


*Note:*
[1] To be used when required by paragraph 1-32.

                    Data Required by the Privacy Act of 1974
                              (5 USC 552a)

AUTHORITY: 5 USC 301 and 10 USC 3013.

PURPOSE: Information provided is used by processing activities and the approval authority to determine if the member meets the requirements for recommended separation action.

ROUTINE USES: Upon completion of processing actions, the statement is filed in the MPRJ. As long as filed in the MPRJ, this personal information may be used by other appropriate Federal agencies and State and local government authorities where the use of the information is compatible with the purpose for which the information is collected. Release of any information from this form is subject to the restrictions of 42 USC 290dd-2 and 42 USC 290dd-3. Under these statutes and regulations, disclosure of information that would identify the client as an abuser of alcohol or other drugs is authorized within the Armed Forces or those components of the Department of Veterans Affairs furnishing health care to veterans. AR 600-85 further limits disclosure within the Armed Forces to those individuals having an official need to know (for example, the physician or the client's unit commander). All other disclosures require the written consent of the client except disclosures (1) to medical personnel outside the Armed Forces to the extent necessary to meet a bona fide medical emergency, (2) to qualified personnel conducting scientific research, management for financial audits, or program evaluation, or (3) upon the order of a court of competent jurisdiction.

Submission of a statement for consideration is voluntary. If a statement is not submitted, the Army will determine separation or retention based on the available information.

**Figure 2–1. Sample format for notification of separation when the notification procedure is used—Continued**

000648

*(Letterhead)*

*(Office Symbol)*                                                           *(Date)*

SUBJECT: Request for Conditional Waiver—Separation Under AR 635-200 (enter appropriate chapter)

*(Address of endorsing office)*

FOR: *(Appropriate Commander in Basic Memorandum)*

1.   I have been advised by my consulting counsel of the basis for the contemplated action to separate me for (indicate reason/s) under AR 635-200, (indicate specific chapter, section and paragraph), and its effect; of the rights available to me; and of the effect of any action taken by me in waiving my rights. I understand that I am entitled to have my case considered by an administrative separation board (because I will have 6 or more years of active and reserve service at the time of separation) (because I am being considered for a separation under other than honorable conditions) (because I am being separated under Chapter 15 (homosexual conduct)).

2.   Prior to completing this form, I was afforded the opportunity to consult with consulting counsel and to consider whether or not to submit a conditional waiver.[1]

3.   I hereby voluntarily waive consideration of my case by an administrative separation board contingent upon my receiving a characterization of service or description of separation no less favorable than (honorable) (under honorable conditions—otherwise referred to as a General discharge).

4.   Statements in my own behalf (are) (are not) submitted herewith. (Encl(s) numbered)

5.   I am making this request of my own free will and have not been subjected to any coercion whatsoever by any person.

6.   I understand that I may, until the date the separation authority orders, directs, or approves my separation, withdraw this waiver and request that an administrative separation board hear my case.

7.   I understand that if the separation authority refuses to accept this conditional waiver of a hearing before an administrative separation board, my case will be referred to an administrative separation board. In that case:

    *a.*     I (request) (waive) personal appearance before an administrative separation board.

    *b.*     I (request) (waive) (consulting counsel) (and) representation by (counsel for representation) (or) (name) as my military counsel (and) (civilian counsel at no expense to the Government).

    *c.*     I understand that my willful failure to appear before the administrative separation board by absenting myself without leave will constitute a waiver of my rights to personal appearance before the board.

**Figure 2–2. Sample format for request for conditional waiver**

000649

8. I understand that I may expect to encounter substantial prejudice in civilian life if a general discharge under honorable conditions is issued to me. I further understand that as the result of issuance of a discharge under other than honorable conditions I may be ineligible for many or all benefits as a veteran under both Federal and State laws and that I may expect to encounter substantial prejudice in civilian life.[2] I understand that if I receive a discharge/character of service that is less than honorable, I may make application to the Army Discharge Review Board or the Army Board for Correction of Military Records for upgrading; however, I realize that an act of consideration by either board does not imply that my discharge will be upgraded.

9. I understand that if I am being considered for separation for fraudulent entry, my enlistment may be voided under certain circumstances and that all pay and allowances will be suspended immediately upon verification of the fraudulent entry.[3]

10. I further understand that I will be ineligible to apply for enlistment in the United States Army for a period of 2 years after discharge.

11. I have retained a copy of this statement.

UNDERSTANDING: I have read and understand each of the statements above and understand that they are intended to constitute all promises whatsoever concerning my conditional waiver. Any other promise, representation, or commitment made to me in connection with my separation is written below in my own handwriting or is hereby waived. (If none, write "NONE.")

Encl Listing

_____
(*Signature of individual*)
(*Typed name, SSN, and grade*)

Having been advised by me of the basis for his/her contemplated separation and its effects, the rights available to him/her of a waiver of his/her rights, (name of soldier) personally made the choices indicated in the foregoing statement.

_____
(*Signature of counsel*)
(*Typed name, SSN, grade, branch*)

*Notes:*

[1] If the soldier declines to consult with consulting counsel prior to waiving his/her right to consult with such counsel, he/she will be advised to do so by his/her commander. If the soldier persists in his/her refusal, insert as first sentence of paragraph 2, the following statement: "Before completing this format, I have been afforded the opportunity to consult with appointed counsel for consultation, or civilian counsel at my own expense. I decline the opportunity." Separation action will then proceed as if the soldier had consulted with counsel. In all cases, except the above, consulting counsel will witness the soldier's statement and indicate that he/she is a commissioned officer of the Judge Advocate General's Corps.

[2] To be used if the soldier has been recommended for discharge for fraudulent entry, misconduct, or homosexual conduct.

[3] To be used if the soldier is considered for separation for fraudulent entry. Renumber latter paragraphs if this paragraph is used.

**Figure 2–2. Sample format for request for conditional waiver—Continued**

000650

Data Required by the Privacy Act of 1974
(5 USC 552a)

AUTHORITY: 5 USC 301 and 10 USC 3013.

PURPOSE: To be used by the commander exercising separation authority over the soldier to determine approval or disapproval of his/her request for conditional waiver and, in case of disapproval, to indicate the soldier's options concerning rights available to him/her in contemplated administrative separation cases.

ROUTINE USE: Information provided in the statement is used by processing activities and the approval authority to determine what rights the soldier desires to exercise and the offering of such rights as indicated. Upon completion of processing actions, the statement is filed in the MPRJ.

As long as filed in the MPRJ, the personal information may be used by other appropriate Federal agencies and State and local government authorities where the use of the information is compatible with the purpose for which the information is collected.

Disclosure is voluntary. If the information is not provided, the Army will complete processing using information available.

**Figure 2–2. Sample format for request for conditional waiver—Continued**

000651

(Letterhead)

(Office Symbol)                                                    (Date)

MEMORANDUM FOR (Soldier's name, SSN, grade, unit)

SUBJECT: Separation Under AR 635-200 Chapter (enter appropriate chapter)

1.   Under the provisions of AR 635-200, (indicate specific chapter, sec-
tion, and paragraph), I am initiating action to separate you for (indicate
narrative reason). The reasons for my proposed action are (state specific,
factual details that constitute the basis for the proposed action). (For
separation under provisions of chapter 15 when based upon a soldier's
statement and he/she is a homosexual or bisexual, state the following: "You
have created a rebuttable presumption that indicates you engage in, attempt
to engage in, or have a propensity to engage in, or intend to engage in ho-
mosexual or bisexual acts. You have the burden to present evidence to re-
fute this presumption, should you so desire.")

2.   I am recommending that you receive a(n) (characterization of service)
(entry-level separation). The intermediate commander/s and the separation
authority are not bound by my recommendation as to characterization of ser-
vice. The separation authority in your case is (cite unit designation of
separation authority). The separation authority may direct that your ser-
vice be characterized as honorable, under honorable conditions, under other
than honorable conditions, or you may receive an entry-level separation
(uncharacterized) if you are in an entry-level status. However, the separa-
tion authority may not direct the issuance of a type of discharge or char-
acterization of service less favorable than that recommended by the board
should you request a hearing before an administrative board.

3.   If my recommendation is approved, the proposed separation could result
in discharge, release from active duty to a Reserve component (See para 1-
34.), or release from custody and control of the Army.

4.   You have the right to consult with consulting counsel (and) (or) civil-
ian counsel at no expense to the Government within a reasonable time (not
less than 3 duty days).

5.   You may obtain copies of documents that will be sent to the separation
authority supporting the proposed separation. (Classified documents may be
summarized.)

6.   You may request a hearing before an administrative board, or you may
present written statements instead of requesting board proceedings.

7.   You may request appointment of military counsel for representation. You
may also retain civilian counsel at no expense to the Government.

8.   You may waive the rights listed above in paragraphs 4, 5, 6, and 7 in
writing, and you may withdraw any such waiver any time prior to the date
the separation authority orders, directs, or approves your separation.

9.   You may submit a conditional waiver of your right to have your case
heard by an administrative separation board.

10.  You are required to undergo a complete medical examination in accor-
dance with AR 40-501. Arrangements have been made for this examination, and
you are to report to (location) at (time) on (date). (See para 1-32.) [1]

**Figure 2–3. Sample format for notification of separation when the administrative board procedure is used**

000652

11.  You are required to undergo a mental status evaluation in accordance with AR 40-501.  Arrangements have been made for this examination, and you are to report to *(location)* at *(time)* on *(date)*.  (See para 1-32.) [1]

12.  Execute the attached acknowledgment (See fig 2-4.) and return it within 7 duty days from the date of your receipt of this memorandum. Any statement you desire to submit in your behalf must reach me within 7 days after you receive this letter unless you request and receive an extension for good cause shown.  Unless an extension is granted, failure to respond within 7 duty days will constitute a waiver of the rights in paragraphs 4, 5, 6, and 7.


Encl Listing

                              *(Commander's signature)*
                              *(Typed name, grade, branch)*


Note:
[1] To be used when required by paragraph 1-32.


                Data Required by the Privacy Act of 1974
                         (5 USC 552a)

AUTHORITY: 5 USC 301 and 10 USC 3013.

PURPOSE:  To be used by the commander exercising separation authority over the soldier to determine approval or disapproval of his/her request for conditional waiver and, in case of disapproval, to indicate the soldier's options concerning rights available to him/her in contemplated administrative separation cases.

ROUTINE USE:  Information provided in the statement is used by processing activities and the approval authority to determine what rights the soldier desires to exercise and the offering of such rights as indicated.  Upon completion of processing actions, the statement is filed in the MPRJ.
As long as filed in the MPRJ, the personal information may be used by other appropriate Federal agencies and State and local government authorities where the use of the information is compatible with the purpose for which the information is collected.

Disclosure is voluntary.  If the information is not provided, the Army will complete processing using information available.

**Figure 2–3. Sample format for notification of separation when the administrative board procedure is used—Continued**

000653

(Letterhead)

(Office Symbol)

Subject:  Separation Under AR 635-200, Chapter (enter appropriate chapter)

(Address of endorsing office)

FOR:  (Appropriate commander in basic memorandum)

1. I have been advised by my consulting counsel of the basis for the contemplated action to separate me for (reason/s) under AR 635-200, (chapter number) and its effects; of the rights available to me; and of the effect of any action taken by me in waiving my rights.  I understand that if I have 6 years of total active and reserve military service at the time of separation; under AR 635-200, chapter (enter appropriate chapter) (or I have been notified that I am subject to a characterization of service under other than honorable conditions), I am entitled to have my case considered by an administrative separation board.  (I understand that I have less than 6 years of total active and reserve service at the time of separation, I am not entitled to have my case heard by an administrative board unless I have been considered under other than honorable conditions.)  (I understand that if I am being considered for separation under AR 635-200, chapter 15 (homosexual conduct), I am entitled to have my case heard by an administrative separation board.)[1]

2. I (request) (waive) consideration of my case by an administrative separation board.

3. I have been advised of my right to submit a conditional waiver of my right to have my case considered by an administrative separation board.[2]

4. I (request) (waive) personal appearance before an administrative separation board.

5. Statements in my own behalf (are) (are not) submitted here with Encl).

6. I (request) (waive) consulting counsel and representation by military counsel (and) (or) civilian counsel at no expense to the Government.

7. I understand that my willful failure to appear before the administrative separation board by absenting myself without leave will constitute a waiver of my rights to personal appearance before the board.

8. I understand that I may expect to encounter substantial prejudice in civilian life if a general discharge under honorable conditions is issued to me.  I further understand that as the result of issuance of a discharge under other than honorable conditions I may be ineligible for many or all benefits as a veteran under both Federal and State laws and that I may expect to encounter substantial prejudice in civilian life.[3]  I understand that if I receive a discharge/character of service that is less than honorable, I may make application to the Army Discharge Review Board or the Army Board for Correction of Military Records for upgrading; however, I realize that an act of consideration by either board does not imply that my discharge will be upgraded.

9. I understand that I may, until the date the separation authority orders, directs, or approves my separation, withdraw this waiver and request that an administrative separation board hear my case.

**Figure 2–4. Sample format for receipt of notification/acknowledgment/election of rights**

000654

10.  I [have] [have not] filed an unrestricted report of sexual assault within 24 months of initiation of the separation action.

11.  (To be answered only if the Soldier answered the previous question affirmatively) I [believe] [do not believe] that this separation is a direct or indirect result of the sexual assault itself or the filing of the unrestricted report.  [N/A]

12.  I understand that if I am being considered for separation for fraudulent entry, my enlistment may be voided under certain circumstances and that all pay and allowances will be suspended immediately upon verification of the fraudulent entry.)[4]

13.  I have retained a copy of this statement.

Encl Listing


                                             (Signature of individual)
                                             (Typed name, SSN, and grade)

Having been advised by me of the basis for his/her contemplated separation and its effects, the rights available to him/her, the right to waive of his /her rights (name of Soldier), personally made the choice indicated in the foregoing statement.


                                             (Signature of counsel)
                                             (Typed name, SSN, grade, branch)

Notes:

[1] If the Soldier declines to consult with consulting counsel prior to waiving his/her rights, he/she will be advised to do so by his/her commander.  If he/she persists in his/her refusal, insert as first sentence of paragraph 2, the following statement:  "Before completing this format, I have been afforded the opportunity to consult with appointed counsel for consultation, or military counsel of my own choice, if he/she is reasonably available; or civilian counsel at my own expense.  I decline the opportunity."  Separation action will then proceed as if the Soldier had consulted with counsel.  In all cases, except the above, consulting counsel will witness their statement and indicate that he/she is a commissioned officer of the Judge Advocate General's Corps.

[2] If the Soldier desires to submit a conditional waiver of the right to have his/her case considered by an administrative separation board, use figure 2-2.

[3] To be used if the Soldier has been recommended for discharge for fraudulent entry, misconduct, or homosexual conduct.

[4] To be used if the Soldier is considered for separation for fraudulent entry.  Renumber later paragraphs if this paragraph is used.

Data Required by Privacy Act of 1974

(5 USC 552a)


**Figure 2–4. Sample format for receipt of notification/acknowledgment/election of rights—Continued**

000655

AUTHORITY:  5 USC 301 and 10 USC 3013.

PURPOSE:  To be used by the commander exercising separation authority over you to determine approval or disapproval of the separation action.

ROUTINE USES:  Information provided in the statement is used by processing activities and the approval authority to determine what rights Soldier desires to exercise and the offering of such rights as indicated. Upon completion of processing actions, the statement is filed in the MPRJ.  So long as filed in the MPRJ, the personal information may be used by other appropriate Federal agencies and State and local government authorities where the use of the information compatible with the purpose for which the information is collected.

Disclosure is voluntary.  If the information is not provided, the Army will complete processing using information available.

**Figure 2–4. Sample format for receipt of notification/acknowledgment/election of rights—Continued**

000656

(Letterhead)

(Office Symbol)                                                    (Date)

SUBJECT:  Separation Under AR 635-200, Chapter (enter appropriate chapter)

(Address of endorsing office)

FOR:  (Next higher commander)

1.  Under the provisions of AR 635-200, Chapter (number), Paragraph (number), recommend that the following named individual be (separated from the United States Army) (released from custody and control of the Army) (retained in the United States Army) prior to expiration of (his/her) term of service.

a.    Name/grade/SSN:

b.    Date of birth:

c.    Date of current enlistment/reenlistment:

d.    Length of term for which enlisted:

e.    Prior service, if any:

f.    Specific, factual reason/s for action recommended:

g.    Aptitude area scores and DMOS:

h.    Results of the common Task, Test (CTT), commander's evaluation, and Skill Qualification Test (SQT), including MOS in which evaluated and results:

i.    Record of counseling, if applicable:

j.    Description of rehabilitation attempts, if applicable:

k.    Record of trials by court martial:

l.    Record of other disciplinary action, including non-judicial punishment (include offenses, findings, and sentence):

m.    Report of mental status evaluation or psychiatric report (is) (is not) attached, if applicable:

n.    Report of medical examination (is) (is not) attached, if applicable:

o.    Statement why the commander does not consider it feasible or appropriate to accomplish other disposition:

**Figure 2–5. Sample format for commanding officer's report to the separation authority**

000657

P.      Promotions and dates thereof:

q.      Reductions and dates thereof:

r.      Whether there is a record of time lost; if so, whether due to absence without leave, confinement, or other reasons:

s.      Note favorable communications or recommendations for the Soldier:

t.      Note other derogatory data other than Article 15 action and courts-martial:

u.      Make note of any citations and awards:

v.      Where derogatory information has been revealed, make note of any evidence of rehabilitation:

w.      Make note of any medical or other data meriting consideration in the overall evaluation to separate the Soldier and in the determination as to the appropriate characterization of service:

x.      Other information considered pertinent:

2.  When a Soldier is being processed for separation for alcohol or other drug abuse rehabilitation failure include-

a.      A statement that the commander, in consultation with the rehabilitation team, has determined that further rehabilitative efforts are not practical, rendering the rehabilitation a failure.  Documentation indicating this must be included with the statement.

b.      A chronological history of the Soldier's alcohol/drug abuse.  Inclusion of limited-use evidence (see AR 600-85, para 6-3.) is discretionary.  (If limited-use evidence is included, the provisions of paras 2-6h and 3-8a apply.)

c.      Circumstances (to include dates) concerning Soldier's referral, initial screening interview, medical evaluation (when conducted), and enrollment in the ADAPCP.

d.      A summary of the rehabilitation efforts made before and after the Soldier was enrolled in the ADAPCP including-

(1)     Dates of detoxification (if applicable).

(2)     Extent (including dates) of counseling and other rehabilitation efforts made by the unit chain of command.

e.      Explanation of how criteria in AR 635-200, paragraph 9-1 are met.

---

**Figure 2–5. Sample format for commanding officer's report to the separation authority—Continued**

---

000658

3.    Has the Soldier filed an unrestricted report of sexual assault within 24 months of initiation of the separation action?  [No][Yes]   [Enclosure #........].

4    Include a statement that the Soldier clearly has no potential for useful service under conditions of full mobilization, if applicable.   (See para 1-34.)[1]

5.    Memorandum of notification and acknowledgement are attached as enclosures.

Encl Listing

(Commander's Signature)

(Typed name, grade, branch)

Note:

[1] To be used when required by the policy in Mobilization Asset Transfer Program.  (see para 1-34.)

**Figure 2–5. Sample format for commanding officer's report to the separation authority—Continued**

# Chapter 3
# Character of Service/Description of Separation

## Section I
## Separation Certificates

### 3–1. Statutory authority
Section 1168, Title 10, United States Code provides that a discharge certificate or certificate of release from active duty will be given to each Soldier of the Army upon discharge from the Service or release from AD.

### 3–2. Discharge certificates
Discharge certificates are furnished Soldiers when they are honorably discharged. Soldiers released from AD and transferred to Reserve Components are issued DD Form 214 (Certificate of Release or Discharge from Active Duty). Instructions for the completion of the various types of discharge certificates are in AR 635–5. The issuance of discharge certificates is governed by this regulation.

### 3–3. Certificate of Release or Discharge from Active Duty (DD Form 214)
Individuals who are retired, discharged, or released from AD or ADT will be furnished a record of their military service on DD Form 214. Instructions for the completion and distribution of DD Form 214 are in AR 635–5.

## Section II
## Types of Characterization or Description

### 3–4. Types authorized
*a.* The following types of characterization of service or description of separation are authorized:

000659

(1) Separation with characterization of service as Honorable, General (under honorable conditions), or Under Other Than Honorable Conditions.

(2) Entry-Level status. Service will be uncharacterized, and so indicated in block 24 of DD Form 214, except as provided in paragraph 3–9a.

(3) Order of release from the custody and control of the Army by reason of void enlistment or induction.

(4) Separation by being dropped from the rolls of the Army.

*b.* The types of separation listed above will be used in appropriate circumstances unless limited by the reason for separation.

## 3–5. General considerations

*a.* Characterization at separation will be based upon the quality of the Soldier's service, including the reason for separation and guidance in paragraph 3–7, subject to the limitations under the various reasons for separation.

(1) The quality of service will be determined according to standards of acceptable personal conduct and performance of duty for military personnel.

(2) These standards are found in the UCMJ, directives and regulations issued by the Army and the time-honored customs and traditions of military service.

*b.* The quality of service of a Soldier on AD is affected adversely by conduct that is of a nature to bring discredit on the Army or is prejudicial to good order and discipline. Characterization may be based on conduct in the civilian community.

*c.* The reasons for separation, including the specific circumstances that form the basis for the separation, will be considered on the issue of characterization. As a general matter, characterization will be based upon a pattern of behavior other than an isolated incident. There are circumstances, however, in which the conduct or performance of duty reflected by a single incident provides the basis for characterization.

*d.* Due consideration will be given to the Soldier's age, length of service, grade, aptitude, physical and mental conditions, and the standards of acceptable conduct and performance of duty.

*e.* The characterization of service is of great significance to the Soldier and must accurately reflect the nature of service performed.

(1) Eligibility for veterans' benefits provided by law, eligibility for re-entry into service, and acceptability for employment in the civilian community may be affected by these determinations.

(2) The characterization of service will be determined solely by the military record during the current enlistment or period of service, plus any extension thereof, from which the Soldier is being separated.

(3) The Soldier's performance of duty and conduct must be accurately evaluated. The evaluation must be based on the overall period of service and not on any isolated actions or entries on DA Form 2–1.

## 3–6. Separation as it affects the Soldier

*a.* Both honorable and general discharges entitle a Soldier to full Federal rights and benefits provided by law.

*b.* Discharge under other than honorable conditions may or may not deprive the Soldier of veterans' benefits administered by the Department of Veterans Affairs; a determination by that agency is required in each case.

## 3–7. Types of administrative discharges/character of service

*a.* Honorable discharge: An honorable discharge is a separation with honor. The honorable characterization is appropriate when the quality of the Soldier's service generally has met the standards of acceptable conduct and performance of duty for Army personnel or is otherwise so meritorious that any other characterization would be clearly inappropriate.

(1) Only the honorable characterization may be awarded a Soldier upon completion of his/her period of enlistment or period for which called or ordered to AD or ADT or where required under specific reasons for separation, unless an entry-level status separation (uncharacterized) is warranted. (See para 3–9a and chap 11.)

(2) When a Soldier is discharged before ETS for a reason for which an honorable discharge is discretionary, the following considerations apply:

*(a)* Where there have been infractions of discipline, the extent thereof should be considered, as well as the seriousness of the offense(s).

*(b)* A Soldier will not necessarily be denied an honorable discharge solely by reason of the number of convictions by court-martial or actions under the UCMJ Art 15. Conviction by a general court-martial or by more than one special court-martial does not automatically rule out the possibility of awarding an honorable discharge.

*(c)* An honorable discharge may be furnished when disqualifying entries in the Soldier's military record are outweighed by subsequent honest and faithful service over a greater period of time during the current term of service. It is a pattern of behavior and not the isolated incident that should be considered the governing factor in determination of character of service.

*(d)* Unless otherwise ineligible, a Soldier may receive an honorable discharge if he/she has, during his/her current enlistment, period of obligated service, or any extensions thereof, received a personal decoration.

(3) In the case of an honorable discharge, a DD Form 256A will be awarded and notation will be made on the appropriate copies of the DD Form 214 or DD Form 215.

*b.* General discharge:

(1) A general discharge is a separation from the Army under honorable conditions. When authorized, it is issued to a Soldier whose military record is satisfactory but not sufficiently meritorious to warrant an honorable discharge.

(2) A characterization of under honorable conditions may be issued only when the reason for separation specifically allows such characterization. It will not be issued to Soldiers solely upon separation at expiration of their period of enlistment, military service obligation, or period for which called or ordered to AD.

*c.* Under other than honorable conditions discharge: A discharge under other than honorable conditions is an administrative separation from the Service under conditions other than honorable. It may be issued for misconduct, fraudulent entry, security reasons, or in lieu of trial by court martial in the following circumstances:

(1) When the reason for separation is based upon a pattern of behavior that constitutes a significant departure from the conduct expected of Soldiers of the Army.

(2) When the reason for separation is based upon one or more acts or omissions that constitutes a significant departure from the conduct expected of Soldiers of the Army. Examples of factors that may be considered include the following:

*(a)* Use of force or violence to produce serious bodily injury or death.

*(b)* Abuse of a position of trust.

*(c)* Disregard by a superior of customary superior-subordinate relationships.

*(d)* Acts or omissions that endanger the security of the United States or the health and welfare of other Soldiers of the Army.

*(e)* Deliberate acts or omissions that seriously endanger the health and safety of other persons.

*d.* An under other than honorable conditions discharge will be directed only by one of the following:

(1) A commander exercising general court-martial authority.

(2) A general officer in command who has a judge advocate or legal advisor available to his/her command.

(3) Higher authority.

(4) The commander exercising special court-martial convening authority over the Soldier who submitted a request for discharge in lieu of court-martial (see chap 10) when delegated authority to approve such requests for discharge per paragraph 1–19*l*. (See para 1–19*c*(5).)

*e.* No Soldier will be discharged per this regulation under other than honorable conditions unless afforded the right to present his/her case before an administrative discharge board.

(1) The Soldier will be offered the advice and assistance of counsel.

(2) Approved board findings and an approved board recommendation for a discharge under other than honorable conditions must support such discharge.

(3) As prescribed in chapter 13, an under other than honorable conditions discharge is not authorized in case of discharge for unsatisfactory performance.

*f.* As an exception to *e*, above, a discharge under other than honorable conditions may be issued without board action if one of the following apply. The Soldier—

(1) Is beyond military control by reason of prolonged unauthorized absence.

(2) Requests discharge in lieu of trial by court-martial.

(3) Waives his/her right to board action.

*g.* A Soldier beyond military control by reason of unauthorized absence may be issued an under other than honorable conditions discharge in absentia only as provided for in paragraph 2–15 or chapter 14, except when directed by HQDA.

*h.* A Soldier who requests discharge as prescribed in chapter 10 may be discharged under other than honorable conditions if he/she has been afforded the opportunity (not less than 72 hours) to consult with a consulting counsel.

(1) The Soldier must certify, in writing, that he/she understands that he/she may receive a discharge under other than honorable conditions.

(2) The Soldier must understand the adverse nature and possible consequences of such a discharge.

(3) The Soldier must personally sign a request for discharge. A conditional request is not permitted.

(4) The consulting counsel will sign as a witness, indicating that he/she is a commissioned officer of The Judge Advocate General's Corps. A Soldier may waive consultation with a consulting counsel. Counsel will prepare a statement to this effect that will be attached to the file; the Soldier will state that the right to counsel has been waived.

*i.* Consideration required. Members of boards that recommend discharges to be furnished and commanders that determine the types of discharges to be issued, are urged to consider all facets of a case involving discharge so a fair decision will result.

000661

**3–8. Limitations on characterization**

Characterization will be determined solely by the Soldier's military record which includes the Soldier's behavior and performance of duty during the current enlistment or period of service to which the separation pertains, plus any extensions prescribed by law or regulation or effected with the consent of the Soldier. Exceptions are provided in this paragraph. In determining the character of service, the following will be used as guidelines:

*a.* A Soldier is entitled to an honorable characterization of service if limited-use evidence (see AR 600–85, chap 6) is initially introduced by the Government in the discharge proceedings, and the discharge is based upon those proceedings. (See para *c*(1), below, as well as AR 600–85, paras 6–4*a* and 6–5*d*.) The separation authority will consult with the servicing Judge Advocate in cases involving limited use evidence.

*b.* The following will not be considered in determining the characterization of service:

(1) Pre-service activities except in a proceedings for fraudulent entry, when misrepresentations, including omissions of facts which, if known, would have prevented, postponed, or otherwise affected the Soldier's eligibility for enlistment.

(2) Prior service activities including, but not limited to, records of convictions by courts-martial, records of non-judicial punishment, records of absence without leave, or commission of other offenses for which punishment was not imposed.

*(a)* To the extent that such matters are considered on the issue of retention or separation, the record of proceedings will reflect express direction that such information will not be considered on the issue of characterization.

*(b)* As an exception, personal decorations received during prior service may be considered in characterizing the current period of service. (See para 3–7*i*.)

(3) Mental status evaluation or other similar medical evaluation given during the period of service that is being characterized.

*c.* In the case of an ARNGUS or USAR Soldier on AD or ADT who is to be discharged, the character of the period of service from which he/she is discharged will be based solely on military behavior and performance of duty during the current period of service while actually performing AD or ADT.

*d.* The limitations in chapter 1 as to matters that may be considered on the issue of separation apply to matters that may be considered on characterization.

*e.* When the sole basis for separation is a serious offense that resulted in a conviction by a court-martial authorized to impose, but not imposing, a punitive discharge, the Soldier's service may not be characterized as under other than honorable conditions unless such characterization is approved by HQDA (AHRC–EPR–F).

*f.* A Soldier's current enlistment record or current period of service, only, will be carefully screened for data that might affect the final decision as to type of discharge to be awarded. A checklist will be prepared to assist in the overall evaluation. The checklist will include the following data:

(1) Length of time served in the enlistment or period of service.

(2) Promotions and dates thereof.

(3) Reductions, if any, and dates thereof. (When there has been a reduction, the specific reason should be listed.)

(4) Whether there is a record of time lost; if so, whether it was (AWOL, confinement, or other reasons.

(5) Whether there has been disciplinary action under UCMJ, Article 15; if so, a list of the specific offenses that resulted in such action.

(6) Whether there have been any convictions by court-martial; if so, the offenses, findings, and sentence and any subsequent actions in the case.

(7) Favorable communications or recommendations for the Soldier.

(8) Any derogatory data, other than Article 15 actions and courts-martial.

(9) Any citations and awards.

(10) Where derogatory data has been revealed, whether there is evidence or other indication of successful rehabilitation.

(11) Any medical or other data meriting consideration in the overall evaluation. (See *b*(3), above.)

*g.* The following information cannot be used against a Soldier on the issue of characterization:

(1) The results of mandatory urinalysis or alcohol-breath tests when such use is prohibited by AR 600–85.

(2) A Soldier's voluntary submission to a treatment and rehabilitation program (self-referral).

(3) Admissions and other evidence concerning illegal drug or alcohol use or possession of drugs incidental to personal use occurring prior to initial referral to a treatment and rehabilitation program provided voluntarily by a Soldier either as part of initial entry or at a scheduled interview when enrolled in such a program.

(4) Evidence concerning illegal drug or alcohol use or possession of drugs incidental to personal use obtained as a result of a Soldier's emergency medical care for an actual or possible drug or alcohol overdose when such use is prohibited by AR 600–85.

*h.* The limitations in *g*, above, do not preclude the following actions:

(1) The introduction of evidence for impeachment or rebuttal purposes in any proceeding where the evidence of drug or alcohol abuse, or the lack thereof, has been first introduced by the Soldier.

000662

(2) Taking action based on independently derived evidence, including evidence of drug or alcohol abuse after initial entry into the treatment and rehabilitation program.

### 3–9. Uncharacterized separations

*a. Entry-level-status separation.* A separation will be described as entry-level with service uncharacterized if processing is initiated while a Soldier is in entry-level status, except when—

(1) Characterization under other than honorable conditions is authorized under the reason for separation and is warranted by the circumstances of the case.

(2) HQDA (AHRC–EPR–F), on a case-by-case basis, determines that characterization of service as honorable is clearly warranted by the presence of unusual circumstances involving personal conduct and performance of duty. This characterization is authorized when the Soldier is separated by reason of selected changes in service obligation, convenience of the Government, and Secretarial plenary authority.

(3) The Soldier has less than 181 days of continuous active military service, has completed Initial Entry Training, has been awarded an MOS, and has reported for duty at a follow-on unit of assignment (see para 11–3*c*).

*b. Void enlistments.* A Soldier will not receive a discharge, characterization of service at separation, or an uncharacterized description of service if the enlistment or induction is void except when a constructive enlistment arises and such action is required under *b*(3), below. If characterization or an uncharacterized description of service is not required, the separation will be described as an order of release from custody and control of the Army.

(1) An enlistment is void in the following circumstances:

*(a)* If it was effected without the voluntary consent of a person who has the capacity to understand the significance of enlisting in the Army. This includes enlistment of a person who is intoxicated or insane at the time of enlistment.

*(b)* If the person is under 17 years of age.

*(c)* If the person is a deserter from another military service.

*(d)* If an enlistee's erroneous enlistment is discovered prior to the Soldier's departure from the Military Entrance Processing Station (MEPS). (See para 7–15*e*.)

(2) Although an enlistment may be void at its inception, a constructive enlistment will arise in the case of a person serving with the Army who—

*(a)* Submitted voluntarily to military authority.

*(b)* Met the mental competency and minimum age qualifications at the time of voluntary submission to military authority.

*(c)* Received military pay or allowances.

*(d)* Performed military duties.

(3) If an enlistment that is void at its inception is followed by a constructive enlistment within the same term of service, characterization of service or description of separation will be in accordance with this paragraph and paragraph 3–5 as appropriate.

(4) If an enlistment was void by reason of desertion from another military service, the Soldier will be separated by an order of release from the custody and control of the Army regardless of any subsequent constructive enlistment.

(5) A constructive enlistment does not preclude the Army from either retaining the Soldier or separating the Soldier based on the circumstances that occasioned the original void enlistment or any other reason for separation.

## Section III
## Dishonorable and Bad Conduct Discharge

### 3–10. Dishonorable discharge

A Soldier will be given a dishonorable discharge pursuant only to an approved sentence of a general court-martial. The appellate review must be completed and the affirmed sentence ordered duly executed. Questions concerning the finality of appellate review should be referred to the servicing staff judge advocate.

### 3–11. Bad conduct discharge

A Soldier will be given a bad conduct discharge pursuant only to an approved sentence of a general or special court-martial. The appellate review must be completed and the affirmed sentence ordered duly executed. Questions concerning the finality of appellate review should be referred to the servicing staff judge advocate.

### 3–12. Soldiers confined in foreign penal institutions

Soldiers with approved sentences to a dishonorable or bad conduct discharge who are confined in foreign penal institutions either before, during, or after trial by a foreign tribunal, will not be discharged until returned to the United States. (See AR 27–50.) In a specific case, if the commander considers that discharge in an oversea area is desired, a request for approval of such discharge may be forwarded to Headquarters, Department of the Army (AHRC–EPR–F), 2461 Eisenhower Avenue, Alexandria, VA 2233– 0478. A report containing essentially the information outlined in

paragraph 1–42*b* will be sent with the request. The separation in foreign countries of Soldiers so confined will be subject to paragraph 1–42*a*.

### 3–13. Reason and authority for discharge
The reason and authority for separation will be entered per AR 635–5–1.

### 3–14. Discharge in absentia
Except as provided in paragraph 3–12, a Soldier placed on excess leave without pay pending completion of appellate review (see AR 600–8–10) may be discharged without returning to a military installation when the sentence is affirmed.

*a.* When appellate review is completed and the affirmed sentence ordered executed, the appropriate discharge documents will be completed and mailed by certified mail. The documents are mailed, return receipt requested, to the address furnished by the Soldier. The return address will be shown as Commander, USA HRC, (DARP–PRR–P), 1 Reserve Way, St. Louis, MO 63132–5200. If the documents are returned unclaimed or undeliverable, they will be destroyed.

*b.* Before departure on excess leave, action will be taken to complete as much of the preprocessing (see AR 635–10) as is appropriate, including partial completion of DD Form 214.

*c.* Soldiers assigned to an overseas unit who have approved excess leave may be reassigned to the personnel control facility (PCF) closest to their leave address (see AR 614–30 and AR 600–62) provided—

(1) Any sentence to confinement has been deferred or served.

(2) Individual is not subject to further trial or investigation within the overseas command.

### 3–15. Form of separation certificate to be given
*a.* Discharge certificate, based upon the character of service rendered and DD Form 214, will be issued to the Soldier concerned per AR 635–5.

*b.* A Soldier to be released from military control pursuant to paragraph 5–9 or an administrative determination that he/she is not currently a Soldier of the Army will not be "discharged" from the Army. The individual does not have military status and will, instead, be released from the custody and control of the Army without being furnished a certificate of discharge. A DD Form 214 indicating no creditable service will be furnished the individual. (See AR 635–5.)


## Chapter 4
## Separation for Expiration of Service Obligation

### 4–1. Policy
A Soldier will be separated upon expiration of enlistment or fulfillment of service obligation.

### 4–2. Discharge or release from active duty upon termination of enlistment and other periods of active duty or active duty for training
*a.* The periods of military service required of all Army Soldiers will be in accordance with applicable laws. Periods for which enlistment is authorized are in NGR 600–200, AR 140–111, and AR 601–210. Periods for which Soldiers are ordered to AD are prescribed by law.

*b.* Aliens who enlisted in the RA for 3 years will not be separated before the full period for which enlisted purely as a matter of convenience. The exception is provided in paragraph 5–2. If performance or conduct does not justify retention, the Soldier will be processed for separation under the appropriate chapter of this regulation.

*c.* Personnel who are physically unfit for retention (see AR 40–501, chap 3) but who were accepted for, or continued in, military service per AR 635–40, will not be separated because of ETS unless processing for separation because of physical disability is waived.

*d.* Subject to chapter 1, section V, a Soldier enlisted or ordered to AD normally will be discharged or released from AD on the date he/she completes the period for which enlisted or ordered to AD.

*e.* Other than those listed in *b*, above, some Soldiers' terms of service expire or they otherwise become eligible for discharge or release from active duty on a Saturday, Sunday, or legal holiday. These Soldiers may consent to be discharged or released to or transferred to the USAR on the last working day before their normal date of discharge or release. This includes

(1) Soldiers within 30 days of their ETS date who return to continental United States (CONUS) for separation.

(2) Soldiers listed in *b*, above, whose terms of service expire or who otherwise become eligible for separation on a Saturday, Sunday, or legal holiday. These Soldiers may consent to be released from active duty and be transferred to the USAR on the last working day before the normal date of discharge or release if otherwise appropriate; however,

000664

they may not be discharged on such date. (As an exception, Soldiers whose early separations will leave them 90 days short of completing their 6-year or 8-year obligation will be discharged.)

(3) Soldiers whose rate of pay is subject to change on a Saturday, Sunday, or legal holiday upon which they would be separated. These Soldiers will not be discharged until their normal separation date unless they request otherwise. The actual date of release or discharge will be recorded in DD Form 214, item 1–2b.

(4) Personnel released from AD and transferred to the USAR upon completion of the term of service for which ordered into active Federal service, or released to their Reserve Component upon completion of AD. These Soldiers will not be discharged until completion of their reserve obligation.

*f.* AR 135–91 defines the various service obligations incurred by military personnel upon initial entry into military service and prescribes the methods of fulfillment. Soldiers who will not continue or who re-enter on active duty in another status will be released by separation orders to the ARNGUS or the USAR per DA Pam 600–8–11.

*g.* A non-citizen who incurs a reserve obligation upon entry into military service but who at the time of release from AD fails or refuses to give a mailing address within the United States, the Commonwealth of Puerto Rico, or a territory of the United States but who gives only an address in a foreign country as a permanent mailing address (see DD Form 214, item 19), thus showing his/her intention to reside permanently outside the United States, is not eligible for transfer to the USAR.

(1) The Soldier will be discharged upon, and by reason of, having completed the period of service for which enlisted.

(2) The Soldier will be advised before such discharge that it may permanently bar him/her from United States citizenship.

*h.* Soldiers of the ARNGUS and the USAR ordered to AD for a period in excess of 90 days will, upon release from AD, revert to control of the appropriate Reserve Component.

*i.* ARNGUS and USAR Soldiers who successfully complete a period of IADT to which ordered will out-process per AR 612–201.

(1) The service of Soldiers specified in this paragraph who are in entry-level status will be uncharacterized, even though they have completed their IADT successfully. (See para 3–9.)

(2) When the Soldier is eligible for leave, early release may be authorized in lieu of leave for cogent reasons such as death or serious illness of a member of the trainee's immediate family. To warrant early release the trainee must have completed at least 12 weeks IADT and the training benefits that would result from return to the training center upon completion of leave must not be substantial enough to justify return to duty in lieu of early discharge from IADT.

*j.* Soldiers serving as cadets in military academies whose expiration of enlisted terms of service occur while the Soldier is serving in such capacity will be discharged or released, as appropriate.

*k.* Soldiers who at the time of entry on active duty held an appointment as USAR commissioned or warrant officers or who while on active duty accept such appointments will not be transferred to the USAR in their enlisted status. These Soldiers will be discharged.

(1) Orders discharging the Soldiers will be prepared per AR 600–8–105.

(2) Orders will indicate that these Soldiers are transferred to the USAR in their commissioned or warrant grades.

(3) Discharge to enter another military status does not terminate a Soldier's military service obligation incurred under 10 USC 651a.

*l.* The separation authority delegated to commanders by this regulation will not include the authority to discharge a Soldier who is under court-martial sentence to an unsuspended dishonorable for bad conduct discharge before appellate review is complete. (See para 1–22*c.*)

## 4–3. Counseling required for certain retirement eligible personnel

*a.* The following Soldiers will be counseled regarding retirement options:

(1) Those Soldiers serving on a conventional re-enlistment contract who will have 20 or more years active Federal service (AFS) at their current ETS date.

(2) Soldiers serving on an indefinite re-enlistment contract who have over 18 years AFS.

*b.* Personnel officers will advise Soldiers regarding the following circumstances:

(1) Soldiers not on indefinite status who have a service remaining requirement that requires extension or re-enlistment to complete the requirement will be advised of the amount of time needed to complete the requirement or alternatives regarding submission of retirement application.

(2) Soldiers on indefinite status will be counseled as to the remaining time needed to complete service obligations or the proper time period required to submit voluntary retirement applications to preclude reassignment.

(3) All Soldiers will be informed of any reasons that make them ineligible for re-enlistment, extension, or, if in Indefinite status, ineligible for continued service.

*c.* Counseling will be performed no later than six months after the sixth month before ETS, if applicable, or within six months after surpassing 18 years AFS for Soldiers on indefinite status. The counseling session will determine whether or not the Soldier intends to submit a retirement application.

*d.* Soldiers not serving on indefinite status will be required to sign a statement acknowledging that they have been counseled and fully understand the consequences of being discharged upon ETS rather than extending or re-enlisting to complete a service obligation.

(1) In accordance with AR 601–280, chapter 4, a primary duty career counselor will explain the consequences of not taking action to meet service-remaining requirements.

(2) Soldiers will also be counseled on retirement eligibility if not eligible to extend or re-enlist.

(3) Soldiers on indefinite status will be advised of deadlines to submit voluntary retirement applications if they do not intend to proceed with assignment instructions.

*(a)* DA Form 4657 (Statement of Retirement-Eligible Soldier-Remaining Service Obligation) will be used for personnel affected by *a*(1), above. (This form is available on the APD Web site at http://www.apd.army.mil.)

*(b)* DA Form 4658 (Statement of Retirement-Eligible Soldier-Not Eligible to Re-enlist) will be used for personnel affected by *b*(3), above. (This form is available on the APD Web site at http://www.apd.army.mil.)

*(c)* The statement will be prepared in three copies. The Soldier will sign all copies.

*1.* The original signed copy will be sent to the Commander, U.S. Army Enlisted Records and Evaluation Center (USAEREC), 8899 East 56th Street, Indianapolis, IN 46249, to be filed in the Soldier's OMPF as a permanent document.

*2.* A copy of the statement will be filed in the Soldier's MPRJ or local file, as appropriate, as an action-pending document, and a copy will be forwarded to Headquarters, Department of the Army (AHRC-EP-appropriate career branch symbol), 2461 Eisenhower Avenue, Alexandria, VA 22332–0478. (See AR 614–200, table 3–1, for correct symbol.)

*e.* The following information will be provided to the Soldier during the counseling session:

(1) Under 10 USC 3914 and 3917 a Soldier of the RA must be on AD at the time of application for retirement and at the time of retirement. There is no statutory requirement that USAR or U.S. Army National Guard Soldiers be on AD at the time of retirement.

(2) Soldiers who are precluded from retention for any reason will not be retained beyond the last day of the month in which their ETS falls, or, if on Indefinite status, they will not be retained beyond the last day of the month in which their retention control point (RCP) falls.

(3) Indefinite Soldiers who are reduced in grade will not serve beyond the RCP for the lower grade, or 20 years AFS. These Soldiers will not be retained beyond the last day of the month in which they meet the RCP for the lower grade or 20 years of service, whichever comes later. Soldiers with 20 or more years of AFS serving indefinite enlistments who exceed RCP as a result of reduction in grade must retire not earlier than 90 days or later than 180 days after the effective date of the reduction in grade. (See AR 601–280, chaps 2 and 3 for exceptions.)

(4) Enlistment may not be extended solely for failure to apply for, or late application for, retirement or to complete a medical examination in conjunction with retirement. (See chap 12, section V.) (See AR 601–280, chap 4, for further extension information regarding retirement-eligible Soldiers.)

(5) A Soldier who elects to be discharged upon ETS rather than to re-enlist or to extend enlistment, as appropriate, to complete a service-remaining requirement will not be eligible to re-enter the RA unless a waiver is granted.

(6) Retirement cannot be retroactive; therefore, a Soldier who is discharged, later re-enlists, and then retires, cannot be placed in a retired pay status for the period between his/her discharge and subsequent re-enlistment. Retired pay is based on the grade in which retired.

(7) Soldiers precluded from re-enlistment for any reason and discharged forfeit retirement eligibility altogether, as re-entry on active duty for the purpose of applying for retirement is not allowed.

## 4–4. Voluntary separation of Soldiers serving on indefinite enlistments/re-enlistments.

*a.* Regular Army Soldiers serving on indefinite enlistments/re-enlistments desiring a voluntary separation for reasons not specifically covered in this regulation must submit requests through the SPCMCA to Commander, USA HRC (AHRC–EPR–F), 2461 Eisenhower Avenue, Alexandria, VA 22332–0478, the separation authority for such actions. USAR Soldiers on active duty serving indefinite enlistments must submit requests for voluntary separation through their chain of command to Commander, USA HRC (ARPC–AR), 1 Reserve Way, St. Louis, MO 53132–5200.

(1) Soldiers requesting voluntary separation under this provision will indicate the reason(s) for voluntary separation.

(2) Such requests generally will be denied if the Soldier has an unfulfilled service obligation as a result of training or a service remaining obligation.

(3) If requests are approved, Soldiers will be separated under the provisions of this chapter, as they are considered to have fulfilled the active duty service obligation.

*b.* Soldiers applying for separation may request specific separation dates but must receive pre-separation counseling not later than 90 days before separation. Requests for separation dates more than 6 months after the date of the application must be fully justified.

**000666**

**4–5. Characterization of service**

A Soldier being separated upon expiration of enlistment or fulfillment of service obligation will be awarded a character of service of honorable, unless the Soldier is in entry-level status and service is uncharacterized.

**4–6. Separation authority**

Separations will be accomplished by the TP or TA processing the Soldier for separation (see AR 635–10) per the separation orders issued by the appropriate commander.

# Chapter 5
# Separation for Convenience of the Government

**Section I**
**General**

**5–1. Characterization of service or description of separation**

*a.* Unless the reason for separation requires a specific characterization, a Soldier being separated for the convenience of the Government will be awarded a character of service of honorable, under honorable conditions, or an uncharacterized description of service if in entry-level status.

*b.* No Soldier will be awarded a character of service under honorable conditions under this chapter unless the Soldier is notified of the specific factors in his/her service record that warrant such a characterization, using the notification procedure. Such characterization is normally inappropriate for Soldiers separated under the provisions of paragraphs 5–4, 5–11, 5–12, 5–15, 5–16, or 5–17.

**5–2. Scope**

This chapter, together with chapters 6, 8, and 19, contains policies and procedures for voluntary and involuntary separation for the convenience of the Government.

**5–3. Secretarial plenary authority**

*a.* Separation under this paragraph is the prerogative of the Secretary of the Army. Secretarial plenary separation authority is exercised sparingly and seldom delegated. Ordinarily, it is used when no other provision of this regulation applies, and early separation is clearly in the best interest of the Army. Separations under this paragraph are effective only if approved in writing by the Secretary of the Army or the Secretary's approved designee as announced in updated memorandums.

*b.* Secretarial separation authority is normally exercised on a case-by-case basis but may be used for a specific class or category of Soldiers. When used in the latter circumstance, it is announced by special HQDA directive that may, if appropriate, delegate blanket separation authority to field commanders for the class category of Soldiers concerned.

*c.* Individual cases that may be submitted to HQDA for consideration of separation under Secretarial plenary authority include those processed under paragraphs 1–17*b*(4) and 2–6*e*. Other bases for separation under this paragraph include, but are not limited to, HIV infection (see AR 600–110.), refusal to submit to medical care (see AR 600–20), and when religious practices cannot be accommodated (see AR 600–20).

*d.* Separation under this paragraph may be voluntary or involuntary. When involuntary separation proceedings are initiated, the notification procedure (see chap 2, sec I) will be used; however, the provision for requesting an administrative board (see para 2–2*d*) is not applicable. Medical examinations are required for Soldiers being processed for involuntary separation. (See para 1–32*a*.)

*e.* Blanket or individual requests for separation under this paragraph will be submitted to Headquarters, Department of the Army (AHRC–EPR–F), 2461 Eisenhower Avenue, Alexandria, VA 2233–20478.

(1) Chain of command forwarding endorsement must recommend approval or disapproval. If approval is recommended, the chain of command must provide rationale to support determination that separation is in the best interest of the Army, as well as a statement as to whether the counseling requirements of paragraph 1–20 have been met.

(2) In addition, chain of command forwarding favorable memorandums on individual cases must include recommendations concerning characterization or description of service (see para 5–1) and, when applicable, transfer to the IRR (see chap 1, sec VII), re-entry eligibility (RE) code to be assigned, recoupment of enlistment/re-enlistment bonus, and award of separation pay.

000667

**Section II**
**Surviving Sons or Daughters**

**5–4. General**

*a.* Commanders specified in paragraph 1–19 will approve requests for separation for the convenience of the Government of Soldiers who qualify per this section as surviving sons or daughters.

*b.* Separation under this section is not authorized—

(1) During a period of war or national emergency declared by the Congress.

(2) When a Soldier who qualified per this section has waived status as surviving son or daughter.

(a) A Soldier who has waived such status may request reinstatement of that status; however, reinstatement will not necessarily provide a basis for separation under this section. Each case will be considered on its individual merits.

(b) A Soldier who has been advised of this section and who enlists, re-enlists, or otherwise voluntarily extends his/her active duty period after the date of notification of the family casualty on which the surviving status is based, will be considered to have automatically waived his/her rights for separation under this section.

(3) When a Soldier—

(a) Has court-martial charges pending.

(b) Has been tried and convicted by court-martial, and the case is being reviewed or appealed.

(c) Is serving a sentence (or otherwise undergoing punishment) imposed by court-martial.

(d) Is being processed for involuntary administrative separation for cause.

**5–5. Definitions**

The following definitions apply to terms used in this section:

*a.* The "surviving son" or "surviving daughter" is any son or daughter in a family whose parent or one or more sons or daughters served in the Armed Forces of the United States and—

(1) Was killed in action.

(2) Died as a result of wounds, accident, or disease while serving in the U.S. Armed Forces.

(3) Is in a captured or missing-in-action status.

(4) Is permanently 100 percent physically disabled or 100 percent mentally disabled due to service connection, as determined by the Department of Veterans' Affairs or one of the military services, and is not gainfully employed because of such disability.

*b.* "Armed Forces of the United States" denotes collectively all components of the Army, Navy, Air Force, Marine Corps, and Coast Guard.

**5–6. Procedures**

The Soldier concerned must submit request for separation in writing. All requests will include the following information—

*a.* Name, grade, SN or SNN, branch of service (Army, Navy, Air Force, Marine Corps, or Coast Guard), relationship, and date of death or disability of the family member upon whom request is based.

*b.* Department of Veterans' Affairs claim number, if appropriate.

**5–7. Characterization of service or description of separation**

See paragraph 5–1.

**Section III**
**Other Convenience of the Government Separation Policies**

**5–8. Involuntary separation due to parenthood**

*a.* Soldiers will be considered for involuntary separation when parental obligations interfere with fulfillment of military responsibilities. (See AR 600–20, chapter 5, concerning Soldiers' responsibilities for care of family members as related to military responsibilities.) Specific reasons for separation because of parenthood include—

(1) Inability to perform prescribed duties satisfactorily.

(2) Repeated absenteeism.

(3) Repeated tardiness.

(4) Inability to participate in field training exercises or perform special duties such as CQ and staff duty noncommissioned officer (NCO).

(5) Non-availability for worldwide assignment or deployment according to the needs of the Army.

*b.* Separation processing may not be initiated under this paragraph until the Soldier has been adequately counseled concerning deficiencies and has been afforded the opportunity to overcome them. (See para 1–16 and AR 600–20.)

*c.* The notification procedure (see chap 2, sec I) will be used for separation under this paragraph.

000668

*d.* For characterization of service or description of separation, see paragraph 5–1.

*e.* Commanders specified in paragraph 1–19 are authorized to order separation under this paragraph. See paragraph 1–11 for additional instructions for ARNGUS and USAR Soldiers. The criteria in chapter 1, section VII, will govern whether the Soldier will be released from AD or ADT with transfer to the IRR, or whether he/she will be discharged.

## 5–9. Lack of jurisdiction

The GCMCA will direct the discharge or release from active military service or will release the individual concerned from military control. This authority will not be delegated.

*a.* The discharge or release of an individual from the Army may be ordered by a U.S. court or judge thereof. The office upon whom such an order or writ is served will report it immediately to The Judge Advocate General, per AR 27–40.

*b.* Upon the final judicial determination of a military judge, a president of a special court-martial, or a military appellate agency, that an individual is not currently a Soldier of the Army, and where a commander reasonably believes that the Army may lack jurisdiction over a Soldier presently under his/her jurisdiction, the GCMCA will immediately initiate a thorough inquiry. All allegations and relevant facts and circumstances will be examined. AR 15–6 will not apply to such inquiries.

(1) If the claim of lack of jurisdiction is based upon recruiter misconduct, an inquiry to appropriate recruiting officials will be included.

(2) If the claim of lack of jurisdiction is based upon other provisions of this regulation, such as minority or erroneous or fraudulent enlistment, the inquiry and later action on the claim will be conducted per procedures outlined in those specific provisions. Those paragraphs will be cited as the authority for the action taken.

*c.* The GCMCA will determine whether retention or release from military control or release from active service is warranted.

(1) Retention. In making determinations on retention, paragraph 7–21*b* should be considered. Only individuals with waivable disqualifications (see AR 601–210 or AR 601–280) will be considered for retention.

(2) Release from military control or from active military service. If the GCMCA concludes that the Army lacks jurisdiction over the individual and determines that separation is warranted, he/she will take action per paragraph 1–11*b* for ARNGUS or USAR personnel. Regular Army personnel will be released from military control per this paragraph.

## 5–10. Discharge of aliens not lawfully admitted to the United States

Commanders specified in paragraph 1–19 are authorized to dispose of cases involving aliens not lawfully admitted to, or residing in, the United States who did not conceal their true citizenship status at enlistment.

*a.* Such individuals will be reported to the nearest office of the Immigration and Naturalization Service.

*b.* If these individuals are subject to deportation proceeding at that time, or upon discharge from the Service, or if immigration officials desire their custody, they will be reported to the commander having discharge authority. That commander will then order the discharge for the convenience of the Government.

*c.* Commanders responsible for separation processing will notify immigration officials of the discharge action so that they may take the individual into custody, if they so desire.

*d.* The character of service and discharge certificate furnished will reflect service rendered by the individual after enlistment. (See paras 3–7 and 5–1.)

## 5–11. Separation of personnel who did not meet procurement medical fitness standards

*a.* Soldiers who were not medically qualified under procurement medical fitness standards when accepted for enlistment or who became medically disqualified under these standards prior to entry on AD or ADT for initial entry training, may be separated. Such conditions must be discovered during the first 6 months of AD. Such findings will result in an entrance physical standards board. This board, which must be convened within the Soldier's first 6 months of AD, takes the place of the notification procedure (para 2–2) required for separation under this chapter.

*b.* Medical proceedings, regardless of the date completed, must establish that a medical condition was identified by an appropriate military medical authority within 6 months of the Soldier's initial entrance on AD for RA or during ADT for initial entry training for ARNGUS and USAR that—

(1) Would have permanently or temporarily disqualified the Soldier for entry into the military service or entry on AD or ADT for initial entry training had it been detected at that time.

(2) Does not disqualify the Soldier for retention in the military service per AR 40–501, chapter 3. As an exception, Soldiers with existed prior to service conditions of pregnancy or HIV infection (AR 600–110) will be separated.

*c.* A Soldier who is found after entry on active duty not to have been qualified under procurement medical fitness standards at the time of enlistment may request to be retained on active duty subject to the conditions listed below. Approval or disapproval of requests for retention under this paragraph is delegated to the separation authority cited in paragraph 1–19*d*. No Soldier has a right to be retained under this paragraph. Soldiers not retained will be processed for separation. Soldiers will not be retained under this paragraph unless both conditions below are met:

(1) The separation authority cited in paragraph 1–19*d* determines, after considering the proceedings of an Entrance

Physical Standards Board (see AR 40–400), that the Soldier's disqualifying condition will not prevent the Soldier from performing satisfactorily throughout his/her period of enlistment in the MOS for which he/she is being trained or in another MOS based on the Soldier's medical condition.

(2) The Soldier, after being counseled and given the opportunity to obtain legal advice, signs a statement requesting to complete the period of service for which enlisted.

*d.* The criteria in chapter 1, section VII, will govern whether the Soldier will be released from AD, with transfer to the IRR, or discharged.

(1) In the case of an ARNGUS or USAR Soldier found to be pregnant upon entry on IADT, the Soldier will be released from active duty and returned to her ARNGUS or USAR unit for disposition in accordance with AR 135–91, paragraph 4–23.

(2) The Soldier will be separated within 72 hours following approval by the separation authority. (See para 1–19. See para 1–11 for additional instructions on ARNGUS or USAR personnel.)

*e.* Soldiers who do not meet the medical fitness standards for retention or whose existed prior to service condition has been aggravated by military service, will be processed per AR 635–40.

*f.* This paragraph is not to be used in personality disorders cases, which will be processed per paragraph 5–13.

*g.* For characterization of service or description of separation, see paragraph 5–1.

## 5–12. Discharge for failure after enlistment to qualify medically for flight training

Soldiers who enlist per AR 601–210 for the warrant officer flight training option and who, after enlistment, fail to qualify medically for flight training, may be discharged from the Army. The following conditions apply:

*a.* Eligibility for discharge will be based on a determination by the Commander, U.S. Army Aeromedical Center, Fort Rucker, AL 36362, that—

(1) The medical condition would permanently disqualify the Soldier for flight training.

(2) The condition does not disqualify the Soldier for retention in the military service per AR 40–501, chapter 3.

*b.* To be eligible for discharge under this paragraph, the Soldier must submit a written request for discharge (see fig 5–1) to his/her unit commander. It must be submitted within 30 days of the date the Commander, U.S. Army Aeromedical Center, finds the Soldier disqualified for flying.

*c.* Applications for discharge will be processed promptly and separations will be accomplished within 72 hours following approval by the discharge authority. (See para 1–19.)

*d.* Soldiers who do not meet retention medical fitness standards will be processed per AR 635–40.

*e.* This paragraph is not to be used for personality disorder cases, which will be processed per paragraph 5–13.

*f.* A Soldier who meets the requirements of *a,* above, and elects to complete the period of service for which he/she enlisted, must submit a written request to be retained on AD. (See fig 5–2.) The request is submitted to the unit commander within 30 days of the date the Commander, U.S. Army Aeromedical Center, finds the Soldier medically disqualified for flying.

*g.* The determination made by the Commander, U.S. Army Aeromedical Center, concerning the Soldier's request for discharge (see fig 5–1) or retention (see fig 5–2) and other pertinent papers will be filed in the Soldier's DA Form 201 as permanent material.

*h.* For characterization of service or description of separation, see paragraph 5–1.

## 5–13. Separation because of personality disorder

Under the guidance in chapter 1, section II, a Soldier with less than 24 months of active duty service, as of the date separation proceedings are initiated, may be separated for personality disorder (not amounting to disability (see AR 635–40)) that interferes with assignment or with performance of duty, when so disposed as indicated in *a,* below.

*a.* This condition is a deeply ingrained maladaptive pattern of behavior of long duration that interferes with the Soldier's ability to perform duty. (Exceptions: combat exhaustion and other acute situational maladjustments.) The onset of personality disorder is frequently manifested in the early adult years and may reflect an inability to adapt to the military environment as opposed to an inability to perform the requirements of specific jobs or tasks or both. As such, observed behavior of specific deficiencies should be documented in appropriate counseling or personnel records and include history from sources such as supervisors, peers, and others, as necessary to establish that the behavior is persistent, interferes with assignment to or performance of duty, and has continued after the Soldier was counseled and afforded an opportunity to overcome the deficiencies. The diagnosis of personality disorder must have been established by a psychiatrist or doctoral-level clinical psychologist with necessary and appropriate professional credentials who is privileged to conduct mental health evaluations for the DOD components. It is described in the Diagnostic and Statistical Manual (DSM–IV) of Mental Disorders, 4th edition. In the case of Soldiers who have served or are currently serving in an imminent danger pay area and are within the first 24 months of active duty service, the diagnosis of personality disorder for separation under this paragraph, must be corroborated by the MTF Chief of Behavioral Health (or an equivalent official). The corroborated diagnosis will be forwarded for final review and confirmation by the Director, Proponency of Behavioral Health, Office of the Surgeon General (DASG–HSZ). Medical review of the personality disorder diagnosis will consider whether PTSD, traumatic brain injury (TBI), and/or other comorbid mental

000670

illness may be significant contributing factors to the diagnosis. A Soldier will not be processed for administrative separation under this paragraph if PTSD, TBI, and/or other comorbid mental illness are significant factors to a diagnosis of personality disorder, but will be evaluated under the physical disability system in accordance with AR 635–40.

*b.* Commanders will not take action prescribed in this chapter in lieu of disciplinary action solely to spare a Soldier who may have committed serious acts of misconduct for which harsher penalties may be imposed under the UCMJ.

*c.* Separation because of personality disorder is authorized only if the diagnosis concludes that the disorder is so severe that the Soldier's ability to function effectively in the military environment is significantly impaired. Separation for personality disorder is not appropriate when separation is warranted under chapters 4, 5, 7, 9, 10, 11, 13, 14, or 18, of this regulation; AR 380–67; or AR 635–40.

*d.* Nothing in this paragraph precludes separation of a Soldier who has such a condition for other reasons authorized by this regulation.

*e.* Separation processing may not be initiated under this paragraph until the Soldier has been counseled formally concerning deficiencies and has been afforded ample opportunity to overcome those deficiencies as reflected in appropriate counseling or personnel records (see para 1–16). The Soldier will also be counseled that the diagnosis of a personality disorder does not qualify as a disability.

*f.* When it has been determined that separation under this paragraph is appropriate, the unit commander will take the actions specified in the notification procedure (see chap 2, sec I).

*g.* Separation authority for Soldiers separated under this paragraph who are, or have been, deployed to an area designated as imminent danger pay area is the GCMCA. This authority may not be delegated. In all other cases, the separation authority is the SPCMCA.

*h.* The service of a Soldier separated per this paragraph will be characterized as honorable unless an entry-level separation is required under chapter 3, section II. Characterization of service under honorable conditions may be awarded to a Soldier who has been convicted of an offense by general court-martial or who has been convicted by more than one special court-martial in the current enlistment, period of obligated service, or any extension thereof.

## 5–14. Concealment of arrest record

*a. Policy.* A Soldier who concealed an arrest record (not followed by a civil court conviction and not reflecting charges pending at the time of enlistment) for any juvenile or adult offense and such concealment does not amount to a fraudulent entry (see chap 7) may be separated. Separation is based on the false statements made in enlistment documents regarding the existence of an arrest record. In determining whether discharge is appropriate, the following will be considered:

(1) Concealing a pattern of arrests strongly suggests that the Soldier was intentionally attempting to mislead recruiting officials regarding enlistment eligibility. The pattern may include misdemeanors and lesser offenses in addition to a felony.

(2) The age of the individual when enlisted, when arrested, and the period of time that elapsed since the arrest.

(3) The nature and the circumstances surrounding the arrests.

(4) The nature of the Soldier's service since enlistment.

*b. Discharge authority* Commanders specified in paragraph 1–19 will direct discharge or retention of the Soldier. When retention is authorized, DA Form 2–1 will be annotated to reflect that concealment of the arrest has been waived. After waiver, no further action will be taken.

*c. Evidence.* When information is received which indicates the Soldier may have concealed an arrest record, an investigation into the circumstances is required. From this investigation, a decision to discharge or retain can be made. To prove an arrest record as required in this paragraph, bona fide evidence must be obtained from the appropriate law enforcement agency. A typical example of bona fide evidence includes a completed DA Form 3286 (Statement for Enlistment) or other evidence that clearly shows the individual concealed an arrest record.

*d. Notification procedure.* The notification procedure will be used. (See chap 2, sec I.)

*e. Characterization of service or description of separation.* (See para 5–5.)

## 5–15. Early release of Reserve Component personnel serving AGR tours under 10 USC 12301(d)

*a. General.* USAR or ARNGUS AGR Soldiers serving tours under 10 USC 12301(d) may be released from active duty for the convenience of the Government, prior to completion of their AGR tour under the following circumstances:

(1) AGR Soldiers may be voluntarily released from active duty, at their request, when such release is fully justified and determined to be in the best interest of the Army. This provision does not apply to USAR AGR Soldiers denied continued service under the Qualitative Management Program (QMP). (See chap 19.) However, those Soldiers may request voluntary discharge/release from active duty (REFRAD) in accordance with paragraph 19–13.

(2) AGR Soldiers serving on an initial tour as recruiters (that is, are on an initial AGR tour having entered the AGR program for the purpose of recruiting) may be involuntarily released from active duty when a determination has been made that they are unqualified, ineffective, or unsuitable for continued recruiting duty, and that early release is in the best interest of the Government.

000671

*b. Notification.* The notification procedure (see chap 2, sec I) will be used for Soldiers involuntarily released from active duty under this paragraph. However, the procedure for requesting an administrative board (see para 2–2c(5)) is not applicable.

*c. Characterization of service.* Soldiers released from active duty under this paragraph will be awarded a characterization of service of honorable.

*d. Authority.* Notwithstanding the provisions of paragraph 1–19, only the Chief, National Guard Bureau; the Chief, Army Reserve; the Commander, USA HRC; or higher authority within the office of the Secretary of the Army is authorized to order release from active duty under this paragraph. This authority may not be further delegated.

*e. Separation under provisions other than this paragraph.* This paragraph will not be used as authority for release from AD of an AGR Soldier who meets the criteria for separation under other provisions of this regulation. For example, a Soldier who has established a pattern of misconduct will be processed for separation under the provisions of chapter 14.

## 5–16. Early separation to further education

Soldiers may be discharged or released from active duty for the convenience of the Government, up to 90 days before ETS, in order to attend a specific term at college, university, vocational school, or technical school.

*a.* Soldiers serving initial enlistments of less than 3 years, members of the ARNGUS or USAR serving on ADT, and former senior ROTC cadets ordered to active duty because of breaches of contract are ineligible for separation under this paragraph.

*b.* To qualify for early separation, eligible Soldiers must—

(1) Not be mission essential to their assigned organizations, as determined by commanders concerned.

(2) Clearly establish that the specific school term for which they seek early separation is academically the most opportune time for them to begin or resume their education, and that delay of school enrollment until normal ETS would cause undue personal hardship.

(3) Provide a statement from an appropriate school official (for example, a registrar or director of admissions) indicating acceptance for enrollment (without qualification or in a probationary status) in a full-time resident course of instruction. The statement must also reflect that the latest acceptable registration date for the school term falls within the 90–day period preceding the Soldier's ETS.

(4) Show that they are able to pay, or have already paid, school entry fees.

*c.* The college or university must offer courses of instruction leading to an associate, baccalaureate, or higher degree and must be approved by the Department of Veterans' Affairs. The vocational or technical school must offer a course of instruction of no less than 3 months' duration and must be approved by the Department of Veterans' Affairs.

*d.* The effective date of early separation under this paragraph normally will not be earlier than 10 days prior to the date classes convene, except when Soldiers may be separated up to 30 days prior to the date classes convene if evidence is submitted that the 10-day period is clearly insufficient. This is not intended as authority to permit separation a full 30 days prior to class starting date in every case but to provide a reasonable latitude in justifiable cases to authorize separation on a date that will give the Soldier adequate time to register and enter the school on time. Examples include Soldiers returning from overseas and those who must move their families to the school location.

*e.* Accrued leave will be used to the maximum extent possible, as transition leave, in conjunction with early separation under this paragraph.

*f.* For characterization of service, see paragraph 5–1.

*g.* Commanders specified in paragraph 1–19 are authorized to order separation under this paragraph. The criteria in chapter 1, section VII, will govern whether Soldiers will be released from AD with transfer to the IRR, or discharged.

*h.* Combining this paragraph with other early release programs to effect separation more than 90 days before ETS is not authorized.

## 5–17. Other designated physical or mental conditions

*a.* Commanders specified in paragraph 1–19 may approve separation under this paragraph on the basis of other physical or mental conditions not amounting to disability (AR 635–40) and excluding conditions appropriate for separation processing under paragraph 5–11 or 5–13 that potentially interfere with assignment to or performance of duty. Such conditions may include, but are not limited to—

(1) Chronic airsickness.

(2) Chronic seasickness.

(3) Enuresis.

(4) Sleepwalking.

(5) Dyslexia.

(6) Severe nightmares.

(7) Claustrophobia.

(8) Transsexualism/gender transformation in accordance with AR 40-501 paragraph 3-35.

000672

(9) Other disorders manifesting disturbances of perception, thinking, emotional control or behavior sufficiently severe that the Soldier's ability to effectively perform military duties is significantly impaired. Soldiers with 24 months or more of active duty service may be separated under this paragraph based on a diagnosis of personality disorder. For Soldiers who have been deployed to an area designated as an imminent danger pay area, the diagnosis of personality disorder must be corroborated by the MTF Chief of Behavioral Health (or an equivalent official). The corroborated diagnosis will be forwarded for final review and confirmation by the Director, Proponency of Behavioral Health, Office of the Surgeon General (DASG-HSZ). Medical review of the personality disorder diagnosis will consider whether PTSD, Traumatic Brain Injury (TBI), and/or other comorbid mental illness may be significant contributing factors to the diagnosis. If PTSD, TBI, and/or other comorbid mental illness are significant contributing factors to a mental health diagnosis, the Soldier will not be processed for separation under this paragraph, but will be evaluated under the physical disability system in accordance with AR 635-40.

(a) The condition of the personality disorder is a deeply ingrained maladaptive pattern of behavior of long duration that interferes with the Soldier's ability to perform duty. (exceptions: combat exhaustion and other acute situational maladjustments.) The diagnosis of personality disorder must have been established by a psychiatrist or doctoral-level clinical psychologist with necessary and appropriate professional credentials who is privileged to conduct mental health evaluation for the DOD components. It is described in the Diagnostic and Statistical Manual (DSM–IV) of Mental Disorders, 4th edition.

(b) In the case of Soldiers who are, or have been, deployed to an area designated as imminent danger pay area, the diagnosis of a mental condition not amounting to disability will be reviewed by the installation MTF Chief of Behavioral Health, or the equivalent, and confirmed by the Director, Proponency of Behavioral Health, Office of The Surgeon General (DASG-HSZ).

b. When a commander determines that a Soldier has a physical or mental condition that potentially interferes with assignment to or performance of duty, the commander will refer the Soldier for a medical examination and/or mental status evaluation in accordance with AR 40–501. Command-directed mental status evaluations will comply with paragraph 1–32e. A recommendation for separation must be supported by documentation confirming the existence of the physical or mental condition.

c. Separation processing may not be initiated under this paragraph until the Soldier has been counseled formally concerning deficiencies and has been afforded ample opportunity to overcome those deficiencies as reflected in appropriate counseling or personnel records. (See para 1–16.)

d. Nothing in this paragraph precludes separation of a Soldier having a condition as described in a, above, under any other provision of this regulation.

e. Prior to involuntary separation under this paragraph, the notification procedure in chapter 2, section I; or the administrative board procedure in chapter 2, section II, will be utilized.

f. For characterization or description of service, see paragraph 5–1.

g. Except for Soldiers being separated under paragraph 5–17a(9) for personality disorder who have deployed to an area designated as an imminent danger pay area, commanders specified in paragraph 1–19 are authorized to order separation under this paragraph. See paragraph 1–11 for additional instructions for ARNGUS and USAR Soldiers. The criteria in chapter 1, section VII, will govern whether the Soldier will be released from AD or ADT with transfer to the IRR, or discharged. The separation authority for Soldiers separated under paragraph 5–17a(9) for a personality disorder who have been deployed to an area designated as an imminent danger pay area is the GCMCA.

000673

Data Required by the Privacy Act of 1974
(5 USC 552a)

AUTHORITY: Section 301, title 5, United States Code and section 3013, title 10, United States Code.

PURPOSE: Individual request for discharge when soldier has been found to be medically disqualified for flight training and his/her refusal to accept an alternate training course.

ROUTINE USES: Used by personnel activities to process soldiers for discharge and may be used by appropriate Federal agencies and State and local governmental authorities where use of the information is compatible with the purpose for which the information was collected. Soldier's request is filed in the MPRJ.

Disclosure is voluntary. If information is not provided, the Army will complete processing using information available.

*(Date)*

SUBJECT: Request for Discharge
        *(Discharge authority)*
        *(Name)*

1.   I, having enlisted for warrant officer flight training under the provisions of AR 601-210 and having been found by the Commander, United States Army Aeromedical Center, to be medically disqualified for Class 1A flying, request discharge under provisions of AR 635-200, paragraph 5-12.

2.   I have been counseled concerning an alternate training course. I do not desire to serve in the U.S. Army.

*(Signature of individual)*
*(Typed name, SSN, and grade)*

Figure 5–1. Sample format for request for discharge

000674

Data Required by the Privacy Act of 1974
(5 USC 552a)

AUTHORITY: Section 301, title 5 United States Code and section 3013, title 10, United States Code.

PURPOSE: Individual request for retention on active duty in an alternate training course when he/she has been found to be medically disqualified for flight training.

ROUTINE USES: Used by personnel activities to process soldiers for assignment to an alternate training course and may be used by other appropriate Federal agencies and State and local governmental authorities where use of the information is compatible with the purpose for which the information was collected. Soldier's request will be filed in the MPRJ.

Disclosure is voluntary. Failure to provide information will result in soldier being discharged.

*(Date)*

SUBJECT: Request to Remain on Active Duty
       *(Unit commander)*
       *(Name)*

1.   I, having enlisted for warrant officer flight training under the provisions of AR 601-210 and having been found by the Commander, United States Army Aeromedical Center, to be medically disqualified for Class 1A flying, understand that I have the option of being retained on active duty for the remainder of my enlistment.

2.   Being medically qualified for retention under the provisions of AR 40-501, chapter 3, I hereby request retention on active duty in an enlisted status. I have been counseled concerning an alternate training course and understand that I may select a training course for which I am qualified and for which a quota exists.

*(Signature of Individual)*
*(Typed name, SSN, and grade)*

**Figure 5–2. Sample format for request to remain on active duty**

# Chapter 6
# Separation Because of Dependency or Hardship

## 6–1. General
Separation under this chapter is for the convenience of the Government.

## 6–2. Separation authority
See paragraph 1–19.

## 6–3. Criteria
Soldiers on active duty may be discharged or released (see para 6–10) because of genuine dependency or hardship.

  *a. Dependency.* Dependency exists when death or disability of a member of a Soldier's (or spouse's) immediate family causes that member to rely upon the Soldier for principal care or support. (See para 6–5 for definition of Soldier's "immediate family.")

  *b. Hardship.* Hardship exists when in circumstances not involving death or disability of a member of the Soldier's

000675

(or spouse's) immediate family, separation from the Service will materially affect the care or support of the family by alleviating undue and genuine hardship. (See para 6–5 for definition of Soldier's "immediate family.")

(1) *Parenthood of married Soldiers.* A married Soldier who becomes a parent by birth, adoption, or marriage (stepparent) and whose child (or children) is less than 18 years of age and resides within the household, may apply for separation under hardship. The Soldier must submit evidence (see para 6–7*b*(5)) that the roles of parent and Soldier are incompatible and that the Soldier cannot fulfill his/her military obligation without neglecting the child or children.

(2) *Sole parents.* Soldiers who are sole parents and whose children are under 18 years of age and reside within the household, may apply for separation under hardship. A "sole parent" is defined as a parent who is single by reason of never having been married, or who is divorced or legally separated and has been awarded child custody by judicial decree or court order, or who is a widow/widower.

(3) *Intent.* It is not the intent of the Army's policy regarding married Soldiers who are parents or Soldiers who become sole parents, to arbitrarily allow the separation of an enlisted woman who remained in the Service during her pregnancy and then requested release immediately after receiving the medical and monetary benefits related to prenatal and postnatal absence and delivery.

(4) *Supporting evidence.* Supporting evidence will be provided as per paragraph 6–7*b*(5). Paragraph 6–7*b*(5) minimizes the supporting evidence for these two policies. However, Soldiers must meet the application criteria in paragraph 6–4 in addition to the requirement that there be unexpected circumstances beyond the Soldier's control justifying separation. An example of unexpected circumstances beyond the Soldier's control is the birth of a child with a serious birth defect requiring constant care. Inability to obtain an approved dependent care plan does not qualify the Soldier for separation under this provision.

## 6–4. Application of criteria

*a.* Separation from the service of Soldiers because of dependency will be granted when all the following circumstances exist:

(1) Conditions have arisen or have been aggravated to an excessive degree since entry on AD or ADT.

(2) Conditions are not of a temporary nature.

(3) Every reasonable effort has been made by the Soldier to alleviate the dependency or hardship conditions without success.

(4) Separation from active military service of the Soldier is the only readily available means of eliminating or materially alleviating the dependency or hardship conditions.

*b.* Circumstances outlined in (1) and (2), below, do not justify separation because of dependency or hardship. However, the existence of these circumstances does not prevent separation because of dependency or hardship, provided the application meets the criteria in *a,* above.

(1) Pregnancy of an enlisted man's wife is not considered a condition for which his/her separation is justified. However, this does not prevent separation because of a permanent medical disability resulting from pregnancy.

(2) Undue and genuine hardship does not necessarily exist because of altered income or because the Soldier is separated from his/her or her family or must suffer the inconvenience normally incident to military service.

## 6–5. Conditions affecting determination regarding separation for dependency or hardship

*a.* In determining eligibility for separation, "members of the immediate family" include only—

(1) Spouse.

(2) Children.

(3) Father.

(4) Mother.

(5) Brothers.

(6) Sisters.

(7) Only living blood relative.

(8) Any person who stood "in loco parentis" to the Soldier (or spouse) before entry into the Service. "In loco parentis" is any person who has stood in the place of a parent to the Soldier (or spouse) for a continuous period of at least 5 years before he/she reached 21 years of age.

*b.* When a Soldier is eligible for separation per this chapter, separation will not be disapproved because of the Soldier's indebtedness to the Government or to an individual.

*c.* When Soldiers are eligible for separation, their separation will not be disapproved because their services are needed by their organization.

*d.* Soldiers will not be separated because of dependency or hardship until proper disposition is made of the case if they are—

(1) Under charges.

(2) In confinement.

(3) Being processed for involuntary separation under this regulation.

(4) Being investigated under the military personnel security program.

(5) Being processed for discharge or retirement for physical disability; however, the application will be accepted and processed to final decision.

*e.* A sentence to confinement (not including dishonorable or bad conduct discharge) will be fully served unless terminated by proper authority before a separation for dependency or hardship may be given.

*f.* A Soldier may request withdrawal of application at any time before the effective date. The separation authority, based on the evidence provided by the Soldier, may withdraw approval of separation before its effective date.

*g.* Commanders authorized to approve separation under this chapter will withdraw approval before its effective date when—

(1) The separation is being achieved by fraud by the Soldier.

(2) An error is discovered that would have prevented approval.

(3) The Soldier who has been approved for separation based on sole parenthood later marries.

(4) The Soldier submits evidence that a hardship no longer exists.

*h.* The separation authority will ensure that this chapter is not used solely to procure a reassignment, a curtailment of assignment, or an avoidance of an assignment. A Soldier whose separation is not approved and requires a new PCS assignment will be reported immediately available for assignment per AR 614–200, paragraph 3–15.

## 6–6. Application for separation

The Soldier must request, in writing, separation from the Service because of dependency or hardship.

*a. Submitting the application.*

(1) A person serving in the United States or stationed overseas will submit an application to his/her commanding officer. The evidence required in paragraph 6–7 must support the application.

(2) A person assigned to an overseas unit who is temporarily in the United States on leave or TDY will submit an application to the commander of the Army installation (except MEPs and recruiting main stations) nearest the Soldier's leave address or the installation to which temporarily assigned. In addition, no attachments to Army Medical Centers are authorized for personnel unless the applicant is a patient or is being treated at that medical facility or unless commuting distance to garrison or troop unit would create additional hardship to the applicant.

(3) A person assigned to a unit or installation within the United States who is temporarily in an overseas command on leave or TDY will submit an application to the commander for the area in which he/she is located. The commander specified in paragraph 1–19 will specify the unit to which the Soldier will be attached while the application is being considered. However, attachment to the nonpermanent party element of transfer points or stations is not authorized.

(4) Soldiers on orders for overseas shipment, either as individuals or as members of units, who apply for dependency or hardship separation before departure from unit of assignment will be held at the losing station pending final disposition of the application. (See AR 614–30.)

(5) Soldiers on orders for reassignment from one CONUS installation to another CONUS installation (either as individuals or as members of units) who apply for dependency or hardship separation before departure from unit of assignment will comply with reassignment orders if considered appropriate by the losing commander. The Soldier will be held at the losing installation if the application reflects sufficient grounds for approval. If not, the Soldier will be advised to submit the application upon arrival at the gaining installation.

(6) Applications for dependency or hardship separation from personnel en route overseas may be accepted at the Army installation (except MEPSs) and recruiting main stations) nearest the Soldier's leave address, if an interview reveals information that may justify separation.

*(a)* The Soldier will be attached at that installation until a final decision is made on the application.

*(b)* No attachments are authorized to Army medical centers for personnel unless the applicant is a patient or is being treated at that medical facility or unless commuting distance to garrison or troop unit would create additional hardship to the applicant.

*(c)* The losing commander, and the U.S. Army Military Personnel and Transportation Assistance Office at the aerial port of embarkation (APOE) through which the Soldier is scheduled to travel, will be notified of the attachment and any later decision.

*(d)* The U.S. Army Military Personnel and Transportation Assistance Office will notify the gaining commander and the Passenger Liaison Office, MTMC.

*(e)* The Soldier en route overseas who arrives at the APOE and has not been previously attached to another installation for the same purpose may be referred to the U.S. Army Military Personnel and Transportation Assistance Office at the APOE, and to the Army installation nearest the port, for consideration of the application, if an interview reveals information that may justify separation for dependency or hardship. The Soldier will be attached to the installation nearest the aerial port until final determination is reached on the application.

(7) The Soldier assigned to a CONUS unit who is on leave within CONUS normally will submit an application for separation to his/her commanding officer per (1), above. However, when exceptional circumstances require the Soldier's continued presence, and if the commanders concerned agree, attachment to an installation to submit an

**000677**

application for separation is authorized. Attachment to the nonpermanent party element at transition centers is not authorized.

*b. Forwarding to the separation authority.* Forwarding memorandums prepared by commanders having custody of the applicant's records will contain the following information if it does not appear elsewhere in the enclosures:

(1) Amount and type of allotments the Soldier has in effect, along with the name and relationship of each allottee.

(2) A statement whether a determination of dependency for benefits has been requested and the decision of the Allotments and Deposits Operations, Defense Finance and Accounting Center.

(3) Date of current enlistment, entry on AD, and ETS.

(4) Whether the applicant is under charges, in confinement, or under investigation or consideration for involuntary separation per AR 635–40, AR 380–67, or this regulation.

## 6–7. Evidence required

The supporting evidence for an application for separation because of dependency or hardship normally will be in affidavit form. The evidence must substantiate the dependency or hardship conditions.

*a.* The evidence required will depend upon the nature of the claimed hardship. The application should include, as a minimum, the following affidavits:

(1) A personal request for separation explaining the nature of the hardship condition and what the Soldier intends to do to alleviate it.

(2) An affidavit or statement by, or on behalf of, the Soldier's Family members substantiating the dependency or hardship claim.

(3) Affidavits by at least two agencies or individuals, other than members of the Soldier's Family, substantiating the dependency or hardship claim.

*b.* Additional evidence may be required as follows:

(1) When the basis for the application is financial difficulty, a detailed statement is required to establish the monthly income and expenses of the Family.

(2) When the basis for the application is death of a member of the Soldier's Family, a death certificate or other valid proof of death should be furnished.

(3) When the basis for the application is disability of a member of the Soldier's Family, a physician's certificate should be furnished showing the diagnosis, prognosis, and date of disability.

*(a)* Preprinted medical statement forms, which require only a physician's signature, will not be issued or used for hardship applications.

*(b)* The physician will prepare medical statements and certificates.

(4) When the Soldier requests separation to support members of his/her Family, other than spouse or children, the application should show the names and addresses of other members of the Family, and proof that they cannot aid in the care of their Family should be furnished.

(5) When the basis for separation is the Soldier's parenthood, supporting evidence will be in affidavit form.

*(a)* Evidence will support the applicant's claim that unexpected circumstances, or circumstances beyond his/her control, have occurred since acquired parenthood that prevent fulfillment of military obligations without neglect of the child.

*(b)* Affidavits from the Soldier's immediate commander or officer who is the job supervisor, as appropriate, will be considered sufficient to substantiate the applicant's claim.

*(c)* Evidence in *a*(2) and (3), above, is not required for these applications. However, a judicial decree or court order awarding child custody to the Soldier will substantiate sole parenthood resulting from divorce or legal separation.

## 6–8. Procedure

The separation authority (see para 1–19) will consider the facts upon which the request is based. Any additional information required to determine the validity of the reason for separation will be requested from the Soldier, or the American Red Cross. (See para 6–9.) The specific reason(s) for denial of an application will be included in the return memorandum.

*a.* The personnel officer of an Army installation (see para 6–6*a*(2) and (3)), except MEPS and recruiting main stations, will give all assistance required to any Soldier desiring to apply for separation. In addition, no attachments to Army Medical Centers are authorized for personnel unless the applicant is a patient or is being treated at that medical facility or unless commuting distance to garrison or troop unit would create additional hardship to the applicant. Assistance will consist of—

(1) Explaining the requirements of this chapter.

(2) Assisting in preparing evidence.

(3) Notifying the Soldier's parent unit.

*(a)* The commander who authorized leave or TDY will be notified by electrically transmitted message of the date

000678

and reason for the attachment and will be requested to reply by message whether or not AR 600–8–2 is applicable to the Soldier.

*(b)* If MINIMIZE is in effect, messages will be dispatched by mail.

*(c)* No attachments are authorized for Soldiers on leave from or en route to other CONUS installations without prior approval of the individual's commander. In these cases the coordination will be between the commanders concerned, without referral to USA HRC.

*b.* If the application is approved, the separation authority will—

(1) With the exception of United States Army Europe (USAREUR), Eighth United States Army (EUSA), and Pacific Command (PACOM), notify the commander who authorized leave or TDY of approval by electrically-transmitted message within 24 hours of the approval of hardship separation and request reassignment orders and personnel and financial records be forwarded by MOM/First Class/Priority mail (only after application is approved).

(2) Request expeditious shipment of personal property. When applicable, the message will contain the name of an individual, if other than unit commander or first sergeant (1SG), with whom the Soldier may have left any personal property.

*(a)* The Soldier will remain attached pending receipt of reassignment orders.

*(b)* If MINIMIZE is in effect, the message will be dispatched by mail. If a tracer message is required, the MACOM will be included as an information addressee. In all cases involving Soldiers of USAREUR, EUSA, or PACOM, notification and request for reassignment orders, records, and shipment of personal property will be made by electrically-transmitted message to the following:

*1.* USAREUR. Commander, 1st Personnel Command, Schwetzingen, Germany (AEUPE-PSSD-PAD). (APO AE 09081 to be included if dispatched by mail.)

*2.* EUSA. Commander, 8th Personnel Command, Yongson, Korea (EAPCMP). (FPO AA 96301 to be included if dispatched by mail.)

*3.* PACOM. Commander, PACOM, Honolulu, HI (APAG). (Fort Shafter, HI 96858 to be included if dispatched by mail.)

(3) Accomplish the preprocessing procedures (see AR 635–10), including the medical examination. If possible, the separation interview and the processing and completion of DD Form 214WS (Certificate of Release or Discharge from Active Duty (Worksheet)) will also be accomplished.

(4) Authorize the Soldier to proceed home on ordinary and/or excess leave (AR 600–8–10), provided the Soldier so desires. The Soldier will be advised that separation documents and final pay will be mailed to the address furnished. The partially completed records will be suspended pending receipt of the original records.

(5) Upon receipt of the original records, reassign the Soldier to the USA transition center installation for separation processing.

*c.* If the application is disapproved, the Soldier will be notified in writing of the specific reason(s) for denial. The Soldier will then be released from attachment to revert to emergency or ordinary leave for return to his/her assignment. The commander will be notified by electrically transmitted message of the date of departure and the disapproved application will be forwarded to the commander for inclusion in the personnel file as a temporary document. If MINIMIZE is in effect, the message will be dispatched by mail.

*d.* The USA transition point or military personnel office commander or chief will—

(1) Upon reassignment, report the Soldier as assigned and upon separation, submit the Standard Installation/Division Personnel Reporting System (SIDPERS) separation transaction.

(2) Complete and mail the separation documents to the address furnished by the Soldier.

(3) Dispose of records per AR 635–10.

*e.* The overseas or CONUS commander will respond immediately to any messages received per *a* and *b*, above.

*f.* DA Pam 600–8–11, procedure 1–1, establishes detailed instructions for processing applications.

## 6–9. Service of the American Red Cross

*a.* Requests for supplemental factual information pertaining to applications for separation of Soldiers because of dependency or hardship may be made to the American Red Cross. Such requests originating within military agencies will be restricted to specific information when probable separation is warranted.

*b.* The following procedures will be followed when a military agency requests assistance from the American Red Cross:

(1) The military agency requesting assistance will prepare a brief containing sufficient information to identify the applicant for separation. The brief will also include the name, address, and relationship of the dependent(s) on whom the information is desired.

(2) If the American Red Cross representative is serving the organization or installation concerned, the brief, together with a request for the specific information, will be forwarded to the representative.

(3) If no American Red Cross representative is serving the organization or installation, the request will be sent to The American Red Cross, Emergency Communications, 8111 Gatehouse Road, Falls Church, VA 22042.

(4) Contents of reports furnished by the American Red Cross will be disclosed only per AR 25–55 and AR 340–21.

*c.* Soldiers or their Family members may request local chapters of the American Red Cross to assist in obtaining necessary evidence to substantiate applications for separation. The American Red Cross does not, however, make formal reports to military agencies unless requested by appropriate military commanders.

## 6–10. Type of separation

The criteria in chapter 1, section VII, will govern whether Soldiers separated for dependency, hardship, or parenthood of married Soldiers or sole parents, will be released from AD or ADT with transfer to the IRR, or discharged. (See para 1–11 for additional instructions on ARNGUS and USAR personnel.)

## 6–11. Characterization or description of service

*a.* If the Soldier is still in entry-level status, service will be described as uncharacterized.

*b.* If the Soldier is beyond entry-level status, service will be characterized as honorable or under honorable conditions as set forth in chapter 3, section II.

*c.* Before service is characterized as under honorable conditions, the Soldier will be notified of the specific factors in the service record that warrant such characterization. The notification procedure (see chap 2, sec I) will be used.

# Chapter 7
# Defective Enlistments/Re-enlistments and Extensions

## Section I
## General

### 7–1. General

This chapter provides the authority, criteria, and procedures for the separation of Soldiers because of minority, erroneous enlistment, re-enlistment or extension of enlistment, defective enlistment agreement, or fraudulent entry.

### 7–2. Separation authority

See paragraph 1–19.

## Section II
## Minority

### 7–3. Statutory authority

Applicable statutory provisions are cited in paragraph 1–5.

### 7–4. Criteria

*a.* A Soldier will be released from custody and control of the Army because of void enlistment if, upon receipt of satisfactory proof of date of birth, it is shown that he/she was less than 17 years of age at the time of enlistment and that he/she has not yet attained that age. (See para 1–11*b* for instructions on ARNGUS and USAR personnel.)

*b.* A Soldier will be released from custody and control of the Army for minority upon application of his/her parents or guardian made within 90 days after the Soldier's enlistment, unless charged with a serious offense committed after attaining the age of 17 years of age, if—

(1) There is satisfactory evidence that the Soldier is under 18 years of age.

(2) The Soldier enlisted without the written consent of his/her parents or guardian.

### 7–5. Evidence required

*a.* In support of an application for discharge or for release from custody and control of the Army under this chapter, the following evidence of age is required:

(1) A duly authenticated copy of a municipal or other official record of birth of the Soldier.

(2) If no official record of birth of the Soldier can be obtained, an affidavit of the parent(s) or guardian stating specifically why an official record cannot be obtained. The affidavit must be accompanied by one of the following:

*(a)* A baptismal certificate.

*(b)* A certified copy or photocopy of school records, preferably the first term of school.

*(c)* The affidavit of the physician or midwife in attendance at the birth of the Soldier.

*(d)* A notarized transcript from records of the hospital in which the Soldier was born.

*(e)* Affidavits of at least two persons not related to the Soldier, testifying from their personal knowledge as to his/her date of birth.

000680

*b.* In the case of an enlistment under an assumed name, identification of the Soldier with the person mentioned in the record of birth or the affidavits must be shown by the affidavit of the parents or guardian.

*c.* Birth or baptismal certificates will be examined carefully for alterations, other than those made officially. The "date of filing" will be noted. A delayed birth certificate with date of filing subsequent to the Soldier's enlistment or one with no filing date is not acceptable unless supported by substantial evidence to establish the date and place of filing.

*d.* If the parents are divorced or otherwise legally separated, application for discharge must be accomplished by a copy of the court order or other evidence showing that the parent submitting the application has custody of the Soldier. If a parent has lost control of the Soldier by judgment of a court, appointment of a guardian, desertion of Family, or waiver, an application from such parent for the discharge of the Soldier will not be considered.

*e.* Although a guardian usually is not recognized as such unless legally appointed, a person who has assumed support of a minor and performed the duties of guardian for 5 years immediately preceding the enlistment will be recognized as a guardian. An affidavit supporting "guardianship" under these conditions will be submitted with the birth certificate.

## 7–6. Procedure

*a.* When a commander authorized to order minority discharge or release from custody and control of the Army because of minority receives an application from either the parents or guardian, with the supporting evidence required in paragraph 7–5, the commander will take action as specified in the notification procedure, chapter 2, section II. The signatures on the application for separation and consent statement will be closely examined to determine authenticity.

*b.* Applications, along with recommendations, may be forwarded to Headquarters, Department of the Army (AHRC–EPR–F), 200 Stovall Street, Alexandria, VA 22332–0478, under the following circumstances:

(1) Any doubtful case.

(2) When additional evidence is required and the final decision for Soldiers stationed overseas would be materially expedited by processing the case in CONUS.

## 7–7. Minors under charges or in confinement or pending administrative separation

*a.* When a minor who is otherwise eligible for minority discharge under paragraph 7–4*b* is under court-martial charges, serving a court-martial sentence, or is in military confinement for a serious offense, he/she will not be discharged for minority until proper disposition has been made in the case.

*b.* If the facts indicate that in other circumstances the Soldier would be discharged for a reason other than minority (misconduct or unsatisfactory performance), action by a board of officers or trial and confinement of a Soldier who otherwise is eligible for minority discharge should be avoided. Immediate action will be taken to discharge such Soldiers.

## 7–8. Indebtedness or confinement by civil authorities

Indebtedness to the Government or to a Soldier, or confinement by civil authorities, will not prevent discharge or release from custody and control of the Army for minority when a Soldier is eligible therefor.

## 7–9. Void service

Upon determination that a period of service is void per paragraph 7–4*a*, the discharge authority (see para 1–19) will issue an order releasing the Soldier from custody and control of the Army. As a response to the "additional instruction" lead line, the order will state that the Soldier's enlistment is void because of minority. Copies of the order will be issued to the Soldier and will also be filed in the MPRJ or local file, as appropriate, as permanent material. A DD Form 214 will be issued. A discharge certificate will not be issued. (See para 1–11*b* for instruction on ARNGUS and USAR personnel.)

## 7–10. Minors stationed in area other than area in which enlisted

*a.* A Soldier serving in an area other than the area in which enlisted will not be discharged or released from custody and control of the Army until returned to the appropriate territory or area. (See AR 635–10.)

*b.* As a response to the "additional instructions" lead line, reassignment orders will include one of the following statements, as appropriate, so that such separation may be accomplished promptly upon arrival:

(1) "You are a minor and are being returned for discharge from the Army."

(2) "You are a minor and are being returned for release from custody and control of the Army."

## 7–11. Pay and allowances

*a.* Except as provided in *b*, below, a Soldier discharged or released from custody and control of the Army because of minority

(1) May retain pay and allowances already received during the period of minority enlistment or period of service.

000681

No pay or allowances may be paid after the date of determination of minority. (See DOD 7000.14–R, vol. 7A, chap 4, part 1.)

(2) Is provided transportation in kind to home of record.

(3) May receive a donation of not more than $25.00 if otherwise without funds to meet immediate needs. (See DOD 7000.14–R, vol 7A, chap 35, table 35–11.)

(4) Who is confined in an Army or contract prison at the time of discharge or release from custody and control of the Army is entitled to civilian clothing not to exceed $40.

*b.* Soldiers who enlisted in the RA after reaching age 17 and who are discharged for minority before their 18th birthday, are entitled to pay and allowances to include the date of discharge. (See DOD 7000.14–R, vol. 7A, rule 6, table 4–1.)

## 7–12. ARNGUS and USAR personnel

*a.* ARNGUS personnel will be discharged from their Reserve of the Army status and returned to the control of the appropriate State National Guard authorities for discharge from their State contractual commitment.

*b.* USAR personnel will be discharged.

## 7–13. Type of separation

*a.* The separation of a Soldier under paragraph 7–4*a* will receive an order of release from custody and control of the Army.

*b.* The separation of a Soldier under paragraph 7–4*b* will be described as an entry-level separation.

## 7–14. Entitlement

The entitlements portion of this chapter pertaining to pay and allowances has been approved by the Secretary of Defense in accordance with 37 USC 1001.

## Section III
## Erroneous Enlistments, Re-enlistments, or Extensions

## 7–15. Erroneous enlistments, re-enlistments, or extensions

*a.* A Soldier may be separated on the basis of an erroneous enlistment, induction, or extension of enlistment per guidance in chapter 1, section II. For the purpose of this chapter, the term enlistment means both an original enlistment and any subsequent enlistments (re-enlistments). An enlistment, induction, or extension of enlistment is erroneous if all of the following apply:

(1) It would not have occurred had the relevant facts been known by the Government or had appropriate directives been followed.

(2) It was not the result of fraudulent conduct on the part of the Soldier.

(3) The defect is unchanged in material respects.

*b.* When it is discovered that a Soldier's enlistment or extension is erroneous because he/she failed to meet the qualifications for enlistment (see AR 601–210) or re-enlistment (see AR 601–280), the unit commander will initiate action to obtain authority to retain, discharge, or release the Soldier from AD or ADT, as appropriate (see *c*, below), based upon erroneous enlistment or extension. Correspondence containing the following information will be forwarded through channels to the appropriate separation authority:

(1) Facts relating to and circumstances surrounding the erroneous enlistment or extension.

(2) The desire of the Soldier regarding retention or separation.

(3) A specific recommendation for retention or separation, and the reasons, by each commander in the chain of command.

*c.* The commander specified in paragraph 1–19 will take action as follows:

(1) If doubt exists as to whether an enlistment or extension is erroneous, the case, containing the above information, will be forwarded to Commander, USA HRC (AHRC–EPR–P), 2461 Eisenhower Avenue, Alexandria, VA 22332–0478, requesting such determination.

(2) If it is determined that the enlistment or extension is erroneous, separation, when deemed appropriate, will be accomplished without referral of the case to Commander, USA HRC.

(3) If it is determined that the enlistment or extension is erroneous, but retention is determined to be in the best interest of the Service and the disqualification is waivable (see AR 601–210 or AR 601–280) by a headquarters office below the level of USA HRC (AHRC–EPR–P), retention may be directed at that level. In such cases, the following statement will be entered in item 27 of DA Form 2–1: "Separation considered, and retention is authorized on (date)." The original copy of the document authorizing retention will be forwarded to Commander, USA HRC (AHRC–EPR–P), 2461 Eisenhower Avenue, Alexandria, VA 22332–0478. This copy will be included in the Soldier's official personnel record.

(4) If it is determined that the enlistment or extension is erroneous, but retention is considered to be in the best

000682

interest of the Service and the disqualification is waivable at HQDA or non-waivable (per AR 601–210 or AR 601–280), the case, including the information in *b*, above, and the reasons for recommending retention, will be forwarded to USA HRC (AHRC–EPR–P). Approval will be granted only in exceptionally meritorious cases. Where recommendations are not favorably considered by Commander, USA HRC, separation will be directed. Where Commander, USA HRC grants a waiver for retention, actions required in paragraph 7–15*c*(3) will be accomplished.

*d.* Except as provided in *e* and *f*, below, Soldiers will be discharged unless they request transfer to the U.S. Army Reserve, have completed 12 weeks of active duty, and have been awarded an MOS. Soldiers discharged under this paragraph will not be held to a statutory service obligation.

*e.* If, before an enlistee's departure from a MEPS, it is discovered that he/she erroneously enlisted, the enlistment will be voided as follows:

(1) The MEPS commander will revoke any orders already issued assigning the individual to a reception station or other unit of assignment and will issue an order assigning the individual to the adjacent RBN for the purpose of separation.

(2) The RBN commander will void the enlistment by the issuing an order (see AR 600–8–105) releasing the individual from the custody and control of the Army. The order will reflect that the individual's enlistment is void by reason of erroneous enlistment and that his/her release from the custody and control of the Army is being accomplished by reason of a void enlistment.

(3) Neither a discharge certificate nor a DD Form 214 will be furnished. Distribution of the order will be as follows:

*(a)* One copy will be filed as a permanent document in the Soldier's DA Form 201 (MPRJ or local file, as appropriate).

*(b)* One copy will be furnished to the Soldier.

*(c)* One copy will be furnished to the Commander, United States Army Recruiting Command (USAREC).

*f.* If the Soldier is AWOL, in desertion, or absent in the hands of civil authorities upon discovery and establishment that his/her enlistment is erroneous, because of the criteria in *e*, above, the enlistment may be voided by the separation authority. (See para 1–19.)

(1) The separation authority will not issue a discharge certificate but will issue an order releasing the Soldier from custody and control of the Army and a DD Form 214.

(2) The order will reflect that the Soldier's enlistment is void because of erroneous enlistment and that release from custody and control of the Army is accomplished because of a void enlistment.

(3) A copy of the orders will be filed as a permanent document in the Soldier's DA Form 201.

(4) Pay and allowances entitlement will be as prescribed in DOD 7000.14–R, table 4–1. (See para 1–11*b* for instructions on ARNGUS and USAR personnel.)

(5) Distribution of DD Form 214 will be as shown in AR 635–5, except that copy number 1 will be placed in the MPRJ or local file, as appropriate, when the whereabouts of the Soldier is unknown. When the absent Soldier does not meet the criteria for a void enlistment, discharge action will be taken.

(6) The provisions of paragraph 2–15 must be complied with in these cases.

*g.* If an enlistment is erroneous per this paragraph and the provisions of paragraph 7–16 also apply, action will be taken first per this paragraph to determine whether the Soldier will be separated because of erroneous enlistment or retained. If retention is authorized, action then will be taken per paragraph 7–16.

*h.* This section is not applicable to—

(1) Soldiers who are eligible for separation per paragraph 5–10 (except erroneously enlisted aliens whose enlistment should be voided under paragraph 5–11 and *e*, above, or section II of this chapter).

(2) Soldiers who do not meet the medical fitness standards for retention (see AR 40–501, chap 3) and who are eligible for processing under AR 635–40.

*i.* Separation will be processed under the notification procedure.

*j.* Soldiers separated under this paragraph will be awarded an honorable character of service or order of release from custody and control of the Army unless an uncharacterized description of service is required for Soldiers in entry-level status under chapter 3, section II.

## 7–16. Defective or unfulfilled enlistment or re-enlistment agreements

Claims of defective or unfulfilled enlistment agreements are processed under this section and per AR 601–210 or AR 600–280.

*a.* Defective enlistment agreements. A defective enlistment agreement exists when the Soldier is eligible for enlistment in the Army but does not meet the prerequisites for the option for which enlisted. This situation exists when the following occurs:

(1) A material misrepresentation by recruiting personnel, upon which the Soldier reasonably relied, resulting in the Soldier being induced to enlist for that option.

(2) An administrative oversight or error on the part of the recruiting personnel, in which the Soldier did not

**000683**

knowingly take part, in failing to detect that the Soldier did not meet all the requirements for the enlistment commitment.

*b.* Unfulfilled enlistment commitment. An unfulfilled enlistment commitment exists when the Soldier receives a written enlistment commitment from recruiting personnel for which the Soldier is qualified but which cannot be fulfilled by the Army through no fault of the Soldier.

*c.* Action when discovered during processing and training. When a defective enlistment agreement or unfulfilled enlistment commitment is discovered while an individual is being processed at the reception station or is undergoing basic or initial advanced individual training, the CONUS commander exercising special courts-martial jurisdiction, or any higher commander, may approve a request for discharge. Before approving the request for discharge, the following actions should be taken to resolve individual cases and to determine alternate options available:

(1) Maximum use of the USAREC Liaison Office is encouraged to obtain information about all options available for which the Soldier is qualified. Alternate options can then be determined and guaranteed to the Soldier. Installations without a USAREC Liaison NCO should contact HQ USAREC to obtain information about available alternate options.

(2) To obtain waivers of low mental test scores or to obtain assistance in coordinating an alternate option, contact Headquarters, Department of the Army (AHRC–EPC–O), 200 Stovall Street, Alexandria, VA 22332–0478.

(3) Waivers should be completed where appropriate.

*d.* Action when discovered after initial assignment. When it appears to the Soldier's unit commander, after the period prescribed in *c*, above, that the Soldier's enlistment commitment is either defective when made or cannot be fulfilled, he/she will submit all pertinent facts in the case to Headquarters, Department of the Army (AHRC–EPR–F), 200 Stovall Street, Alexandria, VA 22332–0478, for determination.

*e.* Procedures. When the special court-martial convening authority (see *c*, above) or the Commander, USA HRC finds an enlistment is defective or cannot be fulfilled, Soldiers covered by (1) and (2), below, may request separation.

(1) A non-prior-service RA Soldier serving on first enlistment may request immediate discharge.

(2) A RA Soldier serving on a second or later enlistment, having been discharged from a previous enlistment before ETS to re-enlist, may request separation. The separation will be effective when the active service in the current enlistment and last preceding enlistment equals the period stated in the preceding enlistment contract or agreement.

(3) When Soldiers are under charges, in confinement, or are recommended for separation under other administrative provisions, they will not be separated because of a defective enlistment agreement until proper disposition is made of the case. However, the application will be accepted and processed to the point of final decision pending the outcome of the other case.

(4) Separation is not authorized when the Soldier fails to bring the defect to the attention of his/her commander within 30 days after the defect was discovered or reasonably should have been discovered by the Soldier.

*f.* If an enlistment is also erroneous per paragraph 7–15 (failure to meet basic qualifications for enlistment or re-enlistment as distinct from failure to meet the prerequisites for the particular enlistment option), action will be taken first per paragraph 7–15. If retention is authorized under that paragraph, action will then be taken under this paragraph, if appropriate.

*g.* This paragraph is not applicable to Soldiers who do not meet the medical fitness standards for retention in AR 40–501, chapter 3, and who are eligible for processing under AR 635–40.

*h.* Army Soldiers will be discharged unless they request transfer to the U.S. Army Reserve, have completed 12 weeks of active duty, and have been awarded an MOS. Soldiers discharged under this paragraph will not be held to a statutory service obligation.

*i.* Commanders specified in paragraph 1–19 are authorized to order the separation of personnel pursuant to the foregoing.

*j.* Soldiers separated under this paragraph will be awarded an honorable character of service unless an entry-level separation is required under chapter 3, section II.

## Section IV
## Fraudulent Entry

### 7–17. Incident of fraudulent entry

*a.* Fraudulent entry is the procurement of an enlistment, re-enlistment, or period of active service through any deliberate material misrepresentation, omission, or concealment of information which, if known and considered by the Army at the time of enlistment or re-enlistment, might have resulted in rejection. This includes all disqualifying information requiring a waiver. However, the enlistment of a minor with false representation as to age and without proper consent will not in itself be considered a fraudulent enlistment. The following tests must be applied in each case of suspected fraudulent enlistment or re-enlistment. These tests will establish whether the enlistment or re-enlistment is fraudulent.

(1) *First test.* Commanders will determine if previously concealed information is, in fact, disqualifying. This information will be evaluated using the criteria for enlistment or re-enlistment in AR 601–210 or AR 601–280. Any waivable or non-waivable disqualification concealed, omitted, or misrepresented constitutes fraudulent entry. This

000684

includes concealing information with alleged or actual recruiter connivance. If, however, the newly revealed information does not amount to a disqualification from enlistment or re-enlistment under the appropriate regulation, there is no fraudulent enlistment or re-enlistment. Hence, the enlistment or re-enlistment is valid and separation may not be directed.

(2) *Second test.* Commanders must verify the existence and true nature of the apparently disqualifying information. Verification of the actual offense may reveal that the enlistee was not disqualified and, therefore, is not a fraudulent enlistee. For example, if the Soldier alleged that he/she was convicted of burglary and placed on probation, inquiries must be made as to whether the Soldier was actually convicted of burglary. In fact, the Soldier may have initially been charged with burglary, but the charge may have been reduced to trespass, which is a minor non-traffic offense for enlistment purposes that is not disqualifying for enlistment or re-enlistment. To conduct an inquiry using these tests to establish existence of fraud, a delay of 30 days is considered reasonable.

*b.* Any incident that meets the foregoing two tests may be cause for separation for fraudulent entry. Some examples of fraudulent entry are shown below:

(1) *Concealment of prior service.* The establishment of the identity of Army personnel and verification of prior service in any of the U.S. Armed Forces normally requires only comparison of fingerprints and examination of records. Accordingly, commanders will not request field investigations to establish evidence of prior military service. When additional evidence (such as a statement of service or certificate of service) is required from the custodian of the records to establish prior service, an inquiry will be forwarded to the Commander, U.S. Army Enlisted Records and Evaluation Center, 8899 East 56th Street, Indianapolis, IN 46249–5301. The request will include the person's name(s), SSN, and all available information concerning the alleged period of service. To support an administrative action, a statement of service is sufficient evidence.

(2) *Concealment of true citizenship status.*

(a) When information is received from the Immigration and Naturalization Service that a warrant for the Soldier's arrest has been issued or that deportation proceedings are pending upon completion of military service, the Soldier will not be considered for retention.

(b) The nearest office of the Immigration and Naturalization Service will be informed when a Soldier will be discharged or released from custody and control of the Army. Arrangements can then be made, if desired, to take him/her into custody.

(c) A report of the facts, along with a report of action taken, will be submitted to Headquarters, Department of the Army (DAMI), Washington, DC 20310–1051, through intelligence channels.

(3) *Concealment of conviction by civil court.* A Soldier who concealed a felony conviction by civil court normally will not be considered for retention. If information concerning the existence of a civil criminal record is required from the FBI, the contact with the FBI must be made by HQDA. Accordingly, the inquiry will be addressed to Headquarters, Department of the Army (AHRC–EPR–F), 2461 Eisenhower Avenue, Alexandria, VA 22332–0478. The inquiry will include fingerprint card, date and place of birth, and complete address. Specific details of the case will be obtained by direct communications with the appropriate civil law enforcement agency, other than the FBI, by the commander concerned. When information is required from both sources, the inquiries will be dispatched concurrently.

(4) *Concealment of record as a juvenile offender.*

(a) A Soldier who concealed an adjudication as a juvenile offender for a felony offense normally will not be considered for retention.

(b) The evidence must clearly show that the Soldier gave a negative answer to a specific question about having a record of being a juvenile offender or that he/she denied that civil custody, as a result of such record, existed at the time of entry into the Service.

(5) *Concealment of medical defect.* Deliberate concealment of a medical defect or disability (for example, procurement medical fitness standards under AR 40–501, chap 2, for enlistment) known to the applicant before enlistment constitutes fraudulent entry. Deliberate concealment is defined as purposely concealing a medical defect or disability with the intent to deceive.

(6) *Concealment of absence without leave or desertion from prior service.*

(a) From one of the other Services. When a Soldier is discovered to be a deserter from another Service, the commander will report the circumstances to Headquarters, Department of the Army (AHRC–EPR–F), 2461 Eisenhower Avenue, Alexandria, VA 22332–0478, and request disposition instructions. After determining if the Service desires custody of the Soldier, USA HRC will direct that the Soldier be—

*1.* Released from control of the Army without a discharge certificate or DD Form 214.

*2.* Considered for discharge per this section.

(b) From the U.S. Army.

*1.* If trial is not barred by the statute of limitations (see Art 43, UCMJ), the Soldier will be dropped from the current period of service and held to his/her first unterminated period of service. When this action is taken, an entry will be made on DA Form 2–1, showing the reason for the drop and the period of service to which held. No discharge certificate will be furnished. Appropriate disposition will be made of the desertion charges for the unterminated period of service.

**000685**

*2.* If trial is barred by the statute of limitations, the Soldier will be discharged from the prior period of service per chapter 14. The Soldier will be considered for discharge from the current period of service per this section. In accomplishing the discharge from a prior period of service, the Soldier will not be sent to the separation transfer point.

*(c)* Procedure when DD Form 553 has been circulated. When the Soldier was the subject of DD Form 553, a report of action taken will be furnished the U.S. Army deserter information point, when—

*1.* Custody reverts to another Service.

*2.* The Soldier is released from control of the U.S. Army.

*3.* The Soldier is discharged from the U.S. Army from prior or current service.

(7) Rescinded.

(8) *Misrepresentation of intent with regard to legal custody of children.* A Soldier who was an applicant without a spouse at the time of enlistment and who executed the certificate required by AR 601–210 will be processed for separation for fraudulent entry if custody of a child is regained by court decree, as provided by State law, or as a result of a child resuming residency with the Soldier instead of the legal custodian. Because the Soldier certified at enlistment that the custody arrangement was intended to remain in full force and effect during the term of enlistment, the burden is on the Soldier to demonstrate that regaining custody is not contrary to statements made at the time of enlistment.

(9) *Concealment of other disqualification.* A Soldier who conceals other disqualification will be considered for discharge per this chapter. This concealment includes assuming the identity of another individual through the use of birth certificate, discharge certificate, or any other record belonging to another. Exceptions to this policy are concealment of minority (see chap 7, sec II) and concealment of true name. However, if concealment of a true name is used to conceal a disqualification as outlined in this paragraph, it will be considered fraudulent entry.

## 7–18. Authority

When court-martial charges are not pending or contemplated, commanders exercising separation authority will take one of the following actions:

*a.* Void the fraudulent entry by issuing orders releasing the Soldier from Army control in all cases involving desertion from another military service.

*b.* When a Soldier enlisted or re-enlisted with a waivable disqualification (AR 601–210, AR 601–280, AR 140–111, or NGR 600–200), recommend, if the separation authority is the SPCMCA, or direct, if the separation authority is the GCMCA, retention of the Soldier in meritorious cases. The GCMCA will act according to instructions in paragraph 7–22*d.*

*c.* Discharge for fraudulent entry under the notification procedure if a discharge under other than honorable conditions is not to be issued.

*d.* Convene a board of officers under the administrative board procedures as specified in chapter 2, when the separation authority considers discharge under other than honorable conditions as appropriate or when the Soldier has 6 or more total years of service and requests a hearing before an administrative board. (See chap 2, sec II.)

*e.* Process the case through medical channels, if appropriate, when the conditions of paragraph 1–33 have been met.

## 7–19. Trial by court-martial

This section does not prevent trial by court-martial for violations of UCMJ, Article 83, when in the best interest of the Service. If trial by court-martial is not considered appropriate under any Article of the UCMJ, separation action as authorized in paragraph 7–18 will be taken.

## 7–20. Responsibilities

*a.* The unit commander will—

(1) Initiate action as specified in the notification procedure or the administrative board procedure, as appropriate.

(2) Initiate action to obtain substantiating evidence as required. (See para 7–21.)

(3) Request a medical evaluation if such is requested by the Soldier. (See para 1–32*a.*)

(4) Forward the action and necessary enclosures to the separation authority for a determination as to whether a fraudulent enlistment has occurred.

*b.* The separation authority will—

(1) Determine if the incident of fraudulent entry is substantiated.

(2) Ensure that the rights of the suspected fraudulent enlistee are protected.

(3) Direct disposition per chapter 2, section I or II, as applicable.

(4) Comply with paragraph 1–33 as appropriate.

*c.* When the sole reason for separation is fraudulent entry, suspension of separation is not authorized under paragraph 1–18.

## 7–21. Unit commander's report

*a.* When the evidence to support a deliberate misrepresentation, omission, or concealment of facts, which might

**000686**

have resulted in rejection, has been obtained, the unit commander will forward a memorandum through the chain of command to the separation authority. The unit commander will enclose a statement by the Soldier concerning his/her rights. (See paras 2–2 and 2–4.) The memorandum will also include any other statements or evidence submitted by the Soldier and will include the following:

(1) Name, grade, SSN, age, date and term of enlistment, and prior service.

(2) Statement as to whether the Soldier holds Reserve status as a commissioned or warrant officer and, if so, show the grade and date of appointment.

(3) Primary MOS evaluation score, if available.

(4) Record of trials by court-martial.

(5) Record of other disciplinary action, including non-judicial punishment.

(6) Recommendation for discharge, voidance of fraudulent entry, or retention if it is determined that fraudulent entry did occur. A recommendation will be made as to the type of discharge certificate to be awarded.

(7) Report of medical examination when the Soldier requests such examination. (See para 1–32a.)

b. In making recommendations and determinations on retention, the following facts should be considered by all commanders:

(1) Seriousness of offense and length of time since last offense. In this regard, conviction for murder, rape, forcible sodomy, aggravated arson, sale or traffic in controlled substances; aggravated assault with intent to commit murder or rape; or any conviction resulting in confinement for 2 or more years; or commitment to a mental institution, are very serious offenses. These should rarely be waived and then only with conclusive evidence of rehabilitation.

(2) Evidence of rehabilitation or maturity since conviction for offenses.

(3) Patterns of offenses that indicate the Soldier is undesirable for service in a military environment.

(4) Age at the time of the offense.

(5) Educational level.

(6) Aptitude area scores.

(7) Performance of military duty and motivation to service. This includes recommendation by commanders and others who know of the Soldier's performance of duty and motivation.

c. In each instance in which it is alleged that a recruiting official aided the fraud, a copy of the unit commander's report will be forwarded to Commander, USAREC. For cases of connivance by re-enlistment NCOs, a copy of the report will be forwarded to the appropriate GCMCA.

## 7–22. Action by separation authority prior to board proceedings

Upon receiving the recommended action, the separation authority will determine whether fraudulent entry has been verified and proven. If further substantiating facts and evidence are required, they will be obtained, or confirmed as unobtainable, and a final determination made. If fraudulent entry is verified, action will be taken to suspend the Soldier's pay and allowances per DOD 7000.14–R, part one, chapter 4. If the fraudulent entry is verified, the separation authority will take one of the following actions:

a. Direct discharge and issuance of an honorable or general discharge certificate.

b. Direct discharge and issuance of a discharge certificate under other than honorable conditions provided the Soldier has waived his/her rights to present the case before a board of officers. (See para 3–7c.)

c. If discharge under other than honorable conditions appears warranted or the Soldier has completed 6 or more years of active and reserve service and requests a hearing before an administrative separation board, direct that a board be convened to determine whether the Soldier should be discharged.

d. Subject to the provisions below, recommend retention if the recommending authority is the SPCMCA; otherwise, the GCMCA may direct retention.

(1) Soldiers with non-waivable disqualifications under AR 601–210, AR 601–280, AR 140–111, or NGR 600–200 will be processed for immediate separation. Exceptions are not authorized.

(2) In cases of waivable disqualifications that are clearly meritorious and fully justifiable, the GCMCA may grant a waiver of the fraudulent entry to permit retention. The GCMCA or SPCMCA must personally interview the Soldier and determine that he/she has demonstrated the ability to serve as a fully productive member of the Army and that retention will serve the best interest of the Army. As an exception, the GCMCA may delegate authority to battalion commanders to conduct the personal interview of Soldiers in reception or basic training (BT) battalions at U.S. Army Training and Doctrine Command installations. In making a retention decision, the GCMCA will carefully consider the guidelines outlined in paragraph 7–21b.

(3) The GCMCA's decision to waive the fraudulent entry to permit retention will be reported and documented as specified in paragraph 1–14.

e. Direct that the fraudulent entry be voided as required by paragraph 7–18a. The orders issuing authority will issue orders releasing the individual from custody and control of the Army. (See para 1–11b for instructions for ARNGUS and USAR personnel. See para 7–24 regarding DD Form 214.) When this individual is in an AWOL status, in desertion, or in hands of the civil authorities, the following additional action will be taken:

000687

(1) A copy of orders will be forwarded to the individual's last known address.

(2) When the Soldier is the subject of DD Form 553, a report of action taken will be furnished the U.S. Army deserter information point.

## 7–23. Type of discharge

A Soldier discharged under the provisions of this chapter will be furnished DD Form 256A or assigned a character of service of under other than honorable conditions. If in entry-level status, service will be described as uncharacterized, as appropriate. (See chap 3, sec II.) In addition to chapter 3, section II, the following factors will be considered in determining the character of service to be issued during the current period of service:

*a.* Evidence of pre-service misrepresentation that would have precluded, postponed, or otherwise affected the Soldier's enlistment eligibility.

*b.* Characterization will normally be under other than honorable conditions if the fraud involves concealment of a prior separation in which service was not characterized as honorable.

*c.* The offense of fraudulent enlistment (10 USC 883; Art 83 UCMJ) occurs when the Soldier accepts pay or allowances following enlistment procured by willful and deliberate false representation or concealment of his/her qualifications. Therefore, upon receipt of pay and allowances, it becomes an in-service activity by the Soldier and may be considered in characterizing his/her period of service, even though he/she is not tried for the offense.

*d.* When the individual is in an AWOL status, or in desertion, or in the hands of civil authorities, the provisions of chapter 2, section III, must be followed.

## 7–24. Preparation of DD Form 214 when service is voided

DD Form 214 will be prepared and distributed on all individuals released from custody and control due to void of service, except those individuals described in paragraphs 7–15*e*(3) and 7–17*b*(6)(*a*)(1).

# Chapter 8
# Separation of Enlisted Women—Pregnancy

## Section I
## General

## 8–1. Policy

This chapter establishes policy and procedures and provides authority for voluntary separation of enlisted women because of pregnancy. This chapter applies to all Active Army enlisted women and ARNGUS and USAR enlisted women ordered to AD, except for ARNGUS and USAR Soldiers found to be pregnant upon entry on IADT, to whom paragraph 5–11 applies.

## 8–2. Separation authority

Commanders specified in paragraph 1–19 are authorized to order separation per this chapter.

## 8–3. Characterization or description of service

*a.* If the Soldier is still in entry-level status, her service will be uncharacterized.

*b.* If the Soldier is beyond entry-level status, her service will be characterized as honorable or under honorable conditions per chapter 3, section II.

*c.* Prior to characterization as under honorable conditions, the Soldier will be advised of the specific factors in the service record that warrant such a characterization, and the notification procedure will be used.

## 8–4. Type of separation

The criteria in chapter 1, section VII, will govern whether the Soldier will be released from AD with transfer to the IRR, or discharged. (See para 1–11 for additional instructions on ARNGUS and USAR personnel.)

## 8–5. Responsibility of the unit commander

*a.* The unit commander will direct an enlisted woman who believes that she is pregnant, or whose physical condition indicates that she might be pregnant, to report for diagnosis by a physician at the servicing Armed Forces MTF.

*b.* When service medical authorities determine that an enlisted woman is pregnant, she will be counseled and assisted as required by chapter 8, section II.

## 8–6. Medical examination and diagnosis

*a.* Examination for pregnancy will be conducted as a complete medical examination. Standard Form (SF) 88 (Report of Medical Examination) and SF 93 (Medical Record–Report of Medical History) will be used. If the Soldier is found

to be pregnant, no additional medical examination is required before separation if medical examination is accomplished per AR 40–501, chapter 8, and there is no change in the enlisted woman's medical condition other than her pregnancy.

*b.* The pregnancy diagnosis will be certified in writing by a physician on duty at an Armed Forces MTF as soon as possible. (This does not prevent observation of the enlisted woman for a reasonable period of time to ensure that the diagnosis is correct.) In accomplishing the diagnosis, the physician may use biological or other tests for pregnancy (without cost to the patient). The certificate will be sent to the separation authority as an enclosure to the request for separation if the enlisted woman applies for separation.

*c.* When pregnancy is the only medical condition upon which separation is based, separation will be accomplished without a medical or physical evaluation board. If there are medical conditions that disqualify the enlisted woman for retention, processing will be accomplished per AR 40–501 and AR 635–40.

## 8–7. Line-of-duty determination

A line-of-duty determination is not required for pregnancy.

## 8–8. Conditions affecting separation for pregnancy

*a.* Separation will not be accomplished within an overseas command unless the enlisted woman's home is located there.

*b.* If an enlisted woman believes that she is pregnant while en route overseas, commanders of Military Personnel Transportation Assistance Offices will process her per AR 614–30, chapter 3.

*c.* If during the processing for separation under another chapter or regulation an enlisted woman is found to be pregnant, she will not be separated under this chapter. Separation will be accomplished per the chapter or regulation under which separation processing was initiated. In such cases, a notation of pregnancy will be made on SF 88.

*d.* An enlisted woman under investigation, court-martial charges, or sentence of court-martial who is certified by a physician on duty at an Armed Forces MTF to be pregnant may be separated under this chapter. However, she must have the written consent of the commander exercising general courts-martial jurisdiction over the enlisted woman.

*e.* Except as provided in *f,* below, it is not the intent of the pregnancy separation policy that enlisted women be separated under this chapter when the pregnancy terminates before separation is accomplished. A medical officer must verify the fact of pregnancy termination.

*f.* In circumstances of an abnormal pregnancy, when a Soldier carries a pregnancy for 16 weeks or more but then has an abortion, miscarriage, or an immature or premature delivery before separation is accomplished, the Soldier will have the option to be retained or to be separated per this chapter. The duration of time she carried the pregnancy is defined as starting approximately at conception and ending when the products of conception are delivered or considered disappeared. A medical officer must verify the duration of the pregnancy. The Soldier will be counseled concerning her options. If she chooses to separate, the separation authority may set the separation date. The Soldier's decision will be recorded as a signed statement and included in the records.

*g.* An enlisted woman who elects to remain on AD when counseled (see para 8–9) may, if she is still pregnant, subsequently request separation. The separation authority must separate the Soldier but may set the separation date. The subsequent request must comply with guidance in paragraph 8–9*a.*

*h.* An enlisted woman who requests separation in writing may subsequently request withdrawal of the separation request. Based upon the circumstances of the case and the best interest of the Army, the separation authority will determine, in writing, if the Soldier will be separated, as previously requested, or retained.

## Section II
## Pregnancy Counseling

## 8–9. General

If an enlisted woman is pregnant, she will be counseled by the unit commander using the pregnancy counseling checklist. (See fig 8–1 and app B.) The unit commander will explain that the purpose of the counseling is to provide information concerning options, entitlements, and responsibilities and that the Soldier may—

*a.* Upon request, be separated per this chapter. She may request a specific separation date; however, the separation authority and her military physician will determine the separation date. The date must be not later than 30 days before the expected date of delivery or the latest date her military physician will authorize her to travel to her home of record or entry on duty destination, whichever is earlier. The separation authority will approve the request according to this chapter.

*b.* Remain on active duty.

## 8–10. Statement of counseling

*a.* Figure 8–2, part one, will be signed by the Soldier after counseling.

000689

*b.* The Soldier will be granted at least 7 days to consider the options available. She will indicate her election by completing part two of the Statement of Counseling.

*c.* Copies of the completed Statement of Counseling and the pregnancy counseling checklist will be filed in the MPRJ or local file, as appropriate, as an action pending document.

**000690**

Notice:  Required by the Privacy Act of 1974 (5 USC 552a).

Prior to soliciting any personal information in the course of counseling a Soldier, the counselor (see paragraph 8-6) will advise the Soldier substantially as follows:

In the course of counseling you concerning the decision you will have to make in connection with your pregnancy, I will request certain personal information from you. My only purpose in requesting this information is to assist you in planning how to meet your responsibilities to the child and to the military, and to determine if there is anything that I or the Army can do to assist you in meeting those responsibilities.  Disclosure of your SSN and other personal information to me, but Army regulations require that you complete a Statement of Counseling.  If you choose not to provide personal information to me, however, I may not be able to effectively assist you.  No use of the information will be made outside the Department of Defense.  A copy of the Statement of Counseling will be maintained in your Military Personnel File until this action is completed, at which time it will be destroyed.  My authority for requesting this information is Section 3013, Title 10, United States Code.

The purpose of this counseling is to inform you of the options, entitlements, and responsibilities in connection with your pregnancy.

Information on your entitlements:

a. Retention or separation:

(1)  You may request separation or elect to remain on active duty.

(2)  For more information, see paragraph 8-9.

b. Maternity care:

(1)  If you remain on active duty you will receive treatment in a military facility or in a civilian facility, if there is no military maternity care available within 30 miles of you location.

(2)  If you separate, you are authorized treatment only in a military facility that has maternity care.  You are NOT authorized care in a civilian facility at government expense.

(3)  For more information see AR 40-400, para 2-8 for care while on active duty and AR 40-400, para 3-39 for care after separation.

**Figure 8–1. Sample format for pregnancy counseling checklist**

000691

c. Leave.

(1)  You may request ordinary, advance, and excess leave in order to return home or other appropriate place, for the birth of your child or to receive other maternity care.  Such leave usually terminates with the onset of labor.

(2)  No-chargeable convalescent leave for postpartum care is limited to the amount of time essential to meet your medical needs.

(3)  For more information see AR 600-8-10, chapters 4 & 5

d. Maternity clothing and uniforms:

(1)  Military maternity uniforms will be provided to Soldiers.

(2)  For more information see AR 670-1.

e. BAH and government housing:

(1)  Availability depends upon the status of housing at the installation.

(2)  For more information see Post housing Office.

f. Assignments:

(1)  You will not normally receive PCS orders directing movement overseas during your pregnancy.  However, you are considered available for unrestricted worldwide assignment upon completion of postpartum care.

(2)  For more information see AR 614-30.

g. Separation for unsatisfactory performance, misconduct, or parenthood:

(1)  If your performance or conduct warrants separation for unsatisfactory performance, or if parenthood interferes with your duty performance, you may be separated involuntarily even though you are pregnant.

(2)  For more information see paragraph 5-8 and chapters 11, 13 and 14.

**Figure 8–1. Sample format for pregnancy counseling checklist—Continued**

h. Family care counseling:

(1)  In Accordance with AR 600-20, paragraph 5-5b(1),  you must have an approved family care plan on file stating actions to be taken in the event you are assigned to an area where dependents are not authorized or you are absent from your home on military duty. Failure to develop an approved family care plan may result in involuntary separation.

(2) For more information see AR 600-20.

Should you desire assistance in gathering additional information on the above subjects, I will assist you in locating the appropriate information.  Further, if you desire, I will assist you in contacting the American Red Cross or other appropriate agencies.

**Figure 8–1. Sample format for pregnancy counseling checklist—Continued**

000693

I affirm that I have been counseled by (grade) (name) this date on all items on the attached counseling checklist, and I understand my entitlements and responsibilities. I understand that if I elect separation, I may receive maternity care at Department of Defense expense, on a space-available basis for up to 6 weeks postpartum for the birth of my child only in a military medical treatment facility that has maternity care capability and that I may elect a separation date no later than 30 days prior to expected date of delivery or the latest date my physician will authorize me travel, whichever is earlier. Further, I understand that many military medical treatment facilities cannot provide maternity care and that unforeseen circumstances or medical emergency could force me to use civilian medical treatment facilities following separation from active duty. Should this happen, I fully understand that UNDER NO CIRCUMSTANCES can TRICARE, any military department, or the Department of Veterans Affairs reimburse my civilian maternity care expenses. Such costs will be a matter of my personal responsibility. Further, I understand that the separation authority, in conjunction with my military physician based on the needs of the Army, will determine my separation date. I also understand that if I should remain on active duty, I will be expected to fulfill the terms of my enlistment contract. If I elect to remain on active duty, I understand that I must remain available for unrestricted service on a worldwide basis when directed and that I will be afforded no special consideration in duty assignments or duty stations based upon my status as a parent.

(Date)          (Signature of Soldier)

TO: (Soldier concerned)
FROM: (Commander, unit)                                    (Date)

CMT 1
Request your election of appropriate option indicated below and return within (number of days).

(Signature)
(Typed name)
(Rank, commanding branch)

TO: (Commander, unit)                                      (Date)
FROM: (Soldier concerned)

CMT 2
____ During the counseling session there was no coercion on the part of the counselor influencing my decision.

____ I elect separation for reason of pregnancy per AR 635-200, chapter 8. I desire to remain on active duty until (date). (In no case later than 30 days prior to expected date of delivery.)

____ I elect to remain on active duty to fulfill the terms of my enlistment contract.

(Signature)
(Typed name, SSN, grade)

1 Copy MPRJ (Action Pending)
1 Copy Soldier
1 Copy File

**Figure 8–2. Sample format for statement of counseling**

000694

## Chapter 9
## Alcohol or Other Drug Abuse Rehabilitation Failure

### 9–1. Scope
This chapter provides the authority and outlines the procedures for discharging Soldiers for alcohol or other drug abuse rehabilitation failure.

*a.* The Soldier is entitled to request a hearing before an administrative separation board if he/she has 6 or more years of total active and reserve military service per paragraph 2–2*c*(5).

*b.* A Soldier who has less than 6 years of military service is not entitled to a board.

*c.* Discharge is based upon alcohol or other drug abuse such as illegal, wrongful, or improper use of any controlled substance, alcohol, or other drug when—

(1) The Soldier is enrolled in Alcohol and Drug Abuse Prevention and Control Program (ADAPCP).

(2) The commander determines that further rehabilitation efforts are not practical, rendering the Soldier a rehabilitation failure. This determination will be made in consultation with the rehabilitation team. (See AR 600–85.)

*d.* When not precluded by the limited use policy, offenses involving alcohol or drugs may properly be the basis for discharge proceedings under chapter 14. However, the limited use policy is applicable. Soldiers processed for separation under other provisions of this regulation who also are, or become, subject to separation under this chapter and whose proceedings on other grounds ultimately result in their retention in the Service, will be considered for separation under this chapter.

*e.* When the commander determines that a Soldier who has never been enrolled in ADAPCP lacks the potential for further useful service, the Soldier will be screened per AR 600–85. If found non-dependent, the Soldier will not be rehabilitated but will be considered for separation under other appropriate provisions of this regulation.

*f.* Separations for alcohol abuse rehabilitation failure will be reported separately from separations for drug abuse rehabilitation failure. If separation is based on both, the primary basis will be used for reporting purposes.

### 9–2. Basis for separation
*a.* A Soldier who is enrolled in the ADAPCP for alcohol/drug abuse may be separated because of inability or refusal to participate in, cooperate in, or successfully complete such a program in one of the following circumstances:

(1) There is a lack of potential for continued Army service and rehabilitation efforts are no longer practical.

(2) Long-term rehabilitation is necessary and the Soldier is transferred to a civilian medical facility for rehabilitation.

*b.* Nothing in this section prevents separation of a Soldier who has been referred to such a program under any other provision of this regulation.

*c.* Initiation of separation proceedings is required for Soldiers designated as alcohol/drug rehabilitation failures.

### 9–3. Procedures
The immediate commander will—

*a.* Take action as specified in the notification procedure. (See chap 2, sec I.)

*b.* Separation action will be initiated only when a Soldier is under rehabilitation control. The exception is a Soldier confined by civil authorities whose military record indicates that he/she should be processed for separation under this chapter. (See chap 2, sec III for completing proceedings initiated before a Soldier departs absent without leave.)

### 9–4. Characterization of service or description of separation
The service of Soldiers discharged under this section will be characterized as honorable or under honorable conditions unless the Soldier is in entry-level status and an uncharacterized description of service is required. An honorable discharge is mandated in any case in which the Government initially introduces into the final discharge process limited use evidence as defined by AR 600–85, paragraph 6–4. (See para 2–6*h* for procedures for reinitiation or rehearing, if appropriate.)

### 9–5. Separation authority
*a.* The commanders specified in paragraph 1–19 are authorized to take final action on cases processed under this chapter.

*b.* The separation authority will approve separation in cases processed without an administrative board if the documentation in the file indicates that—

(1) Required rehabilitative efforts have been made.

(2) Further rehabilitative efforts are not practical, rendering the Soldier a rehabilitation failure.

(3) The Soldier's potential for fully effective service is substantially reduced by alcohol/drug abuse.

000695

(4) An administrative board is not required or has been waived.

*c.* For actions processed under the administrative board procedure, the separation authority will take one of the following actions:

(1) Approve separation when recommended by the board if the criteria in *b*(1) through (3), above, are established, and direct the characterization of the Soldier's service per paragraph 9–4. The separation authority may not authorize the issuance of a discharge certificate of less favorable character than that recommended by the board.

(2) Approve retention when recommended by the board.

(3) Disapprove a recommendation of separation by the board and direct retention of the Soldier.

*d.* For discharge suspension, see paragraph 1–18.

## 9–6. Authority for separation

The authority for separation (see para 1–19) will be included in directives or orders directing Soldiers to report to the appropriate separation transfer point (STP) for separation.

## 9–7. Confidentiality and release of records

Records of separation proceedings and action under this chapter, including separation documents referencing reason and authority for separation, are confidential by operation of Federal law. Records may be disclosed or released only per AR 600–85, chapter 6, sections III and IV.

# Chapter 10
# Discharge in Lieu of Trial by Court-Martial

## 10–1. General

*a.* A Soldier who has committed an offense or offenses, the punishment for which under the UCMJ and the Manual for Courts-Martial, 2002 (MCM 2002), includes a bad conduct or dishonorable discharge, may submit a request for discharge in lieu of trial by court-martial.

(1) The provisions of RCM 1003(d), MCM 2002 do not apply to requests for discharge per this chapter unless the case has been referred to a court-martial authorized to adjudge a punitive discharge.

(2) The discharge request may be submitted after court-martial charges are preferred against the Soldier or, where required, after referral, until final action by the court-martial convening authority.

(3) A Soldier who is under a suspended sentence of a punitive discharge may likewise submit a request for discharge in lieu of trial by court-martial.

*b.* The request for discharge in lieu of trial by court-martial does not prevent or suspend disciplinary proceedings. Whether proceedings will be held in abeyance pending final action on a discharge request per this chapter is a matter to be determined by the commander exercising general court-martial jurisdiction over the individual concerned.

*c.* If disciplinary proceedings are not held in abeyance, the GCMCA may approve the Soldier's request for discharge in lieu of trial by court-martial after the Soldier has been tried. In this event, the officer who convened the court in his/her action on the case should not approve any punitive discharge adjudged. The officer should approve only so much of any adjudged sentence to confinement at hard labor or hard labor without confinement as has been served at the time of the action.

## 10–2. Personal decision

*a.* Commanders will ensure that a Soldier is not coerced into submitting a request for discharge in lieu of trial by court-martial. The Soldier will be given a reasonable time (not less than 72 hours) to consult with consulting counsel (see para 3–7*h*) and to consider the wisdom of submitting such a request for discharge.

*b.* Consulting counsel will advise the Soldier concerning—

(1) Elements of the offense(s) charged.

(2) Burden of proof.

(3) Possible defenses.

(4) Possible punishments.

(5) Provisions of this chapter.

(6) Requirements of volunteerism.

(7) Type of discharge normally given under the provisions of this chapter.

(8) Rights regarding the withdrawal of the Soldier's request.

(9) Loss of veterans' benefits.

(10) Prejudice in civilian life based upon the characterization of discharge. Consulting counsel may advise the Soldier regarding the merits of this separation action and the offense pending against the Soldier.

000696

*c.* After receiving counseling (see *b*, above), the Soldier may elect to submit a request for discharge in lieu of trial by court-martial. The Soldier will sign a written request, certifying that he/she

(1) Has been counseled.

(2) Understands his/her rights.

(3) May receive a discharge under other than honorable conditions.

(4) Understands the adverse nature of such a discharge and the possible consequences.

*d.* The Soldier also must be advised that pursuant to a delegation of authority per paragraph 1–19*l*, a request for discharge in lieu of trial by court-martial may be approved by the commander exercising special court-martial convening authority (a lower level of approval than the GCMCA or higher authority), but the authority to disapprove a request for discharge in lieu of trial by court-martial may not be delegated.

*e.* The Soldier's written request will also include an acknowledgment that he/she understands the elements of the offense(s) charged and is guilty of the charge(s) or of a lesser included offense(s) therein contained which also authorizes the imposition of a punitive discharge. (See fig 10–1, para 2.)

(1) The consulting counsel will sign as a witness, indicating that he/she is a commissioned officer of The Judge Advocate General's Corps, unless the request is signed by a civilian counsel representing the Soldier.

(2) A Soldier may waive consultation with counsel. If the Soldier refuses to consult with counsel, a statement to this effect will be prepared by the counsel and included in the file. The Soldier will also state that the right to consult with counsel was waived.

(3) Separation action may then proceed as if the Soldier has consulted with a counsel, or the general court-martial convening authority may disapprove the discharge request.

## 10–3. Preparation and forwarding

*a.* A request for discharge in lieu of trial by court-martial will be submitted in the format shown in figure 10–1.

*b.* The discharge request will be forwarded through channels to the separation authority specified in paragraph 1–19*a* or paragraph 1–19*c*(5) and 1–19*l*.

(1) The discharge request must be reviewed by the office of the staff judge advocate prior to approval by the separation authority specified in paragraphs 1–19*c*(5) and 1–19*l*.

(2) Commanders through whom the request is forwarded will recommend either approval or disapproval and state the reasons for the recommendation.

(3) If approval is recommended, the type discharge to be issued will be recommended also.

*c.* The following data will accompany the request for discharge:

(1) A copy of the court-martial Charge Sheet (DD Form 458).

(2) Report of medical examination and mental status evaluation, if conducted.

(3) A complete copy of all reports of investigation.

(4) Any statement, documents, or other matter considered by the commanding officer in making his/her recommendation, including any information presented for consideration by the Soldier or consulting counsel.

(5) A statement of any reasonable ground for belief that the Soldier is, or was at the time of misconduct, mentally defective, deranged, or abnormal. When appropriate, evaluation by a psychiatrist will be included.

*d.* When a Soldier is under a suspended sentence of discharge, a copy of the court-martial orders, or a summary of facts that relate to the conduct upon which the request is predicated, will be forwarded.

## 10–4. Consideration of request

*a.* Commanders having discharge authority per paragraph 1–19 must be selective in approving requests for discharges in lieu of trial by court-martial. The discharge authority should not be used when the circumstances surrounding an offense warrant a punitive discharge and confinement. Nor should it be used when the facts do not establish a serious offense, even though the punishment, under the Uniform Code of Military Justice, may include a bad conduct or dishonorable discharge.

*b.* Consideration should be given to the Soldier's potential for rehabilitation, and his/her entire record should be reviewed before taking action per this chapter.

*c.* Use of this discharge authority is encouraged when the commander determines that the offense is sufficiently serious to warrant separation from the Service and that the Soldier has no rehabilitation potential.

## 10–5. Withdrawal of request for discharge

Unless the trial results in an acquittal or the sentence does not include a punitive discharge, even though one could have been adjudged by the court, a request for discharge submitted per this chapter may be withdrawn only with the consent of the commander exercising general court-martial jurisdiction. (See chap 2, sec III for provisions for completing proceedings initiated before a Soldier departs absent without leave.)

000697

## 10–6. Medical and mental examination

A medical examination is not required but may be requested by the Soldier under AR 40–501, chapter 8.

## 10–7. Discharge authority

The separation authority will be a commander exercising general court-martial jurisdiction or higher authority. (See para 1–19a.) However, authority to approve discharges may be delegated to the commander exercising special court-martial convening authority over the Soldier (see paras 1–19c(5) and 1–19l) in cases in which all of the following apply to the Soldier. He/she—

    *a.* Has been AWOL for more than 30 days.

    *b.* Has been dropped from the rolls of his/her unit as absent in desertion.

    *c.* Has been returned to military control.

    *d.* Currently is at the PCF.

    *e.* Is charged only with AWOL for more than 30 days.

## 10–8. Types of discharge, characterization of service

    *a.* A discharge under other than honorable conditions normally is appropriate for a Soldier who is discharged in lieu of trial by court-martial. However, the separation authority may direct a general discharge if such is merited by the Soldier's overall record during the current enlistment. (See chap 3, sec II.)

    *b.* For Soldiers who have completed entry-level status, characterization of service as honorable is not authorized unless the Soldier's record is otherwise so meritorious that any other characterization clearly would be improper.

    *c.* When characterization of service under other than honorable conditions is not warranted for a Soldier in entry-level status, service will be uncharacterized.

## 10–9. Disposition of supporting documentation

The request for discharge in lieu of trial by court-martial will be filed in the MPRJ or local file, as appropriate, as permanent material and disposed of per AR 600–8–104. Material should include appropriate documentation (see para 10–3c) and the separation authority's decision. Statements by the Soldier or Soldier's counsel submitted in connection with a request per this chapter are not admissible against a Soldier in a court-martial except as authorized under Military Rule of Evidence 410, MCM 2002.

000698

Data Required by the Privacy Act of 1974 (5 USC 552a)

AUTHORITY: Section 301, title 5 United States Code and section 3013, title 10, United States Code.

PURPOSE: To be used by the commander exercising general court-martial jurisdiction over you to determine approval or disapproval of your request for discharge in lieu of trial by court-martial.

ROUTINE USES: Request, with appropriate documentation, including the decision of the discharge authority, will be filed in the MPRJ as permanent material and disposed of in accordance with AR 600-8-104 and may be used by other appropriate Federal agencies and State and local governmental activities where use of the information is compatible with the purpose for which the information was collected.

Submission of a request for discharge is voluntary. Failure to provide all or a portion of the requested information may result in your request being disapproved.

*(Date)*

SUBJECT: Request for Discharge in Lieu of Trial by Court-martial

TO:

1. I hereby voluntarily request discharge in lieu of trial by court-martial under AR 635-200, chapter 10. I understand that I may request discharge in lieu of trial by court-martial because of the following charge(s) that (has) (have) been preferred against me under the Uniform Code of Military Justice, each of which authorize(s) the imposition of a bad conduct or dishonorable discharge:

2. I am making this request of my own free will and have not been subjected to any coercion whatsoever by any person. I have been advised of the implications that are attached to it. By submitting this request for discharge, I acknowledge that I understand the elements of the offense(s) charged and I am guilty of the charge(s) against me or of (a) lesser included offense(s) therein contained that also authorize(s) the imposition of a bad conduct or dishonorable discharge. Moreover, I hereby state that under no circumstances do I desire further rehabilitation, for I have no desire to perform further military service.

3. Prior to completing this form, I was afforded the opportunity to consult with appointed counsel for consultation. (In addition, I have consulted with (military counsel of my own choice who was reasonably available) (civilian counsel retained at no expense to the Government1)) (Although I have been advised to see consulting counsel, I persist willfully in my refusal to see him/her.2) (I have consulted with counsel for consultation who has fully advised me of the nature of my rights under the Uniform Code of Military Justice, the elements of the offense(s) with which I am charged, any relevant less included offense(s) thereto and the facts that must be established by competent evidence beyond a reasonable doubt to sustain a finding of guilty, the possible defenses that appear to be available at this time, and the maximum permissible punishment if found guilty, and of the legal effect and significance of my suspended discharge.3) (Although he/she has furnished me legal advice, this decision is my own,) (I understand that, pursuant to a delegation of authority per paragraph 1-191 my request for discharge in lieu of trial by court-martial may be approved by the commander exercising special court-martial convening authority (a lower level of approval than the general court-martial convening authority or higher authority), but the authority to disapprove a request for discharge in lieu of trial by court-martial may not be delegated.4)

**Figure 10–1. Sample format for discharge in lieu of trial by court-martial**

**000699**

4.   I understand that if my request for discharge is accepted, I may be discharged under conditions other than honorable. I have been advised and understand the possible effects of an Under Other Than Honorable Conditions Discharge and that as a result of the issuance of such a discharge I will be deprived of many or all Army benefits, that I may be ineligible for many or all benefits administered by the Department of Veterans Affairs, and that I may be deprived of my rights and benefits as a veteran under both Federal and State law. I also understand that I may expect to encounter substantial prejudice in civilian life because of an Under Other Than Honorable Conditions Discharge. I further understand that there is no automatic upgrading or review by any Government agency of a less than honorable discharge and that I must apply to the Army Discharge Review Board or the Army Board for Correction of Military Records if I wish review of my discharge. I realize that the act of consideration by either board does not imply that my discharge will be upgraded.

5.   I understand that once my request for discharge is submitted, it may be withdrawn only with consent of the commander exercising general court-martial authority or without that commander's consent in the event trial results in an acquittal or the sentence does not include a punitive discharge even though one could have been adjudged by the court. Further, I understand that if I am absent without leave, this request may be processed, and I may be discharged even though I am absent.

6.   I have been advised that I may submit any statements I desire in my own behalf, which will accompany my request for discharge. Statements in my own behalf (are) (are not) submitted with this request.

7.   I hereby acknowledge receipt of a copy of this request for discharge and of all enclosures submitted herewith.

                    *(Signature of respondent)*
                    *(Typed name, SSN, grade)*

Having been advised by me of (the basis for his/her contemplated trial by court-martial and the maximum permissible punishment authorized under the Uniform Code of Military Justice) (the significance of his/her suspended sentence to a bad conduct or dishonorable discharge), of the possible effects of an Under Other Than Honorable Conditions Discharge if this request is approved; and of the procedures and rights available to him/her, (name of soldier) personally made the choice indicated in the foregoing request for discharge for the good of the Service.

                    *(Signature of counsel)*
                    *(Typed name, SSN, grade, branch)*

[1]To be used when appropriate. Such counseling is not to be used in lieu of consultation with consulting counsel.

[2]To be used only when a soldier under military control refuses to consult with consulting counsel. (See para 10-2c.)

[3]To be used in all cases when a soldier had consulted with consulting counsel.

[4]To be used when authority to approve a request for discharge in lieu of court martial has been delegated per paragraph 1-191.

**Figure 10–1. Sample format for discharge in lieu of trial by court-martial—Continued**

000700

## Chapter 11
## Entry Level Performance and Conduct

### 11–1. General
This chapter sets policy and provides guidance for the separation of Soldiers because of unsatisfactory performance and/or conduct while in entry-level status.

### 11–2. Basis for separation
Separation of a Soldier in entry level status may be warranted on the grounds of unsatisfactory performance and/or unsatisfactory conduct as evidenced by—
  *a.* Inability.
  *b.* Lack of reasonable effort.
  *c.* Failure to adapt to the military environment.
  *d.* Minor disciplinary infractions.

### 11–3. Separation policy
  *a.* This policy applies to Soldiers who—
  (1) Enlisted in the RA, ARNG, or USAR.
  (2) Are in entry-level status, undergoing IET, and, before the date of the initiation of separation action, have completed no more than 180 days of creditable continuous AD or IADT or no more than 90 days of Phase II under a split or alternate training option. (See the glossary for precise definition of entry-level status.)
  (3) Have demonstrated that they are not qualified for retention. The following conditions are illustrations of conduct and/or performance that disqualify Soldiers for retention:
  *(a)* Cannot or will not adapt socially or emotionally to military life.
  *(b)* Cannot meet the minimum standards prescribed for successful completion of training because of lack of aptitude, ability, motivation, or self-discipline.
  *(c)* Have demonstrated character and behavior characteristics not compatible with satisfactory continued service.
  (4) Have failed to respond to counseling (DA Form 4856–R).
  *b.* Enlisted women who become pregnant while still in entry-level status—
  (1) Will be involuntarily separated under this chapter when the training activity commander with separation authority, in conjunction with the medical officer (obstetrician), determines that they cannot fully participate in the required training for the MOS concerned because of their physical condition.
  *(a)* The training commander will furnish the training requirements to the obstetrician.
  *(b)* Soldiers separated for pregnancy that occurred after entry on AD or IADT are entitled to maternity care in a military medical facility only per AR 40–3.
  (2) Will be retained when they can fully participate unless they request separation per chapter 8.
  *c.* Nothing in this chapter precludes separation under another provision of this regulation when such separation is warranted. However, if separation of a Soldier in entry-level status is warranted by reason of unsatisfactory performance (see chap 13) or misconduct (minor disciplinary infractions (see para 14–12*a*), separation processing will be accomplished under this chapter. As an exception, Soldiers with less than 181 days of continuous active service who have completed IET, been awarded an MOS, and been assigned to a follow-on unit for duty will be processed for discharge under the appropriate chapter (chap 13 or 14 or another appropriate chapter).

### 11–4. Counseling and rehabilitation requirements
Counseling and rehabilitation requirements are essential when entry-level performance and conduct are the reason for separation. Military service is a calling different from any civilian occupation, and a Soldier should not be separated when this is the sole reason for separation unless efforts at rehabilitation have failed. Before initiating separation action, commanders will ensure that the Soldier receives adequate counseling and rehabilitation. (See chap 1, section II.)

### 11–5. Separation authority
Commanders specified in paragraph 1–19 are authorized to order separation. Separation will be accomplished within 3 duty days following approval by the separation authority.

**11–6. Type of separation**

The criteria in chapter 1, section VII, will govern whether the Soldier will be released from AD or ADT with transfer to the IRR or be discharged. (See para 1–11 for additional instructions on ARNGUS and USAR personnel.)

**11–7. Procedures**

The commander will take action as specified in the notification procedure. (See chap 2, sec I.)

**11–8. Description of service**

Service will be described as uncharacterized under the provisions of this chapter.

# Chapter 12
# Retirement for Length of Service

## Section I
## General

**12–1. Purpose**

  a. This chapter sets policies and procedures for voluntary retirement of Soldiers because of length of service and governs the retirement of Soldiers (Active Army, ARNGUS, and USAR) who are retiring in their enlisted status. AR 600–8–24, chapter 6, governs the retirement of eligible RA Soldiers in commissioned or warrant officer grades.

  b. Prior service Soldiers serving on active duty as officers who are not qualified for retirement in their commissioned or warrant officer status, may qualify for retirement per this chapter. For procedures, see AR 600–8–24.

**12–2. Retirement authority**

  a. The following individuals are retirement authorities for Soldiers with less than 30 years of service:

  (1) Commander, HRC Alexandria may approve, disapprove, or delay the requested retirement date of Active Army Soldiers in the grade of SSG(P) and above.

  (2) A general officer in command may approve, disapprove, or delay the requested retirement date of Active Army Soldiers in the grade of SSG and below. Retirement approval authority, but not disapproval/delay authority, may be delegated to the SPCMCA.

  (3) Commander, HRC St. Louis may approve, disapprove, or delay the requested retirement date of all USAR Soldiers who are not members of the Active Army.

  (4) Chief, National Guard Bureau may approve, disapprove, or delay the requested retirement date of all ARNGUS Soldiers who are not members of the Active Army.

  b. The above individuals are referred to as "retirement authority" or "commander having retirement authority."

  c. The foregoing provisions concerning disapproval or delay of a requested retirement date do not apply to Soldiers denied continued service under RCP policy. (See paras 4-3 and 12-8*d*(2)(d)).

## Section II
## Statutory Authority

**12–3. General provisions of laws governing retirement**

  a. Soldiers of the RA must be on active duty when they retire. (See 10 USC 3914 and 3917.) There is no statutory requirement that ARNGUS and USAR Soldiers be on AD when they retire.

  b. Retirement normally will be in the regular or reserve grade the Soldier holds on the date of retirement. (See 10 USC 3961.)

  (1) As an exception, ARNGUS and USAR Soldiers serving on active duty at the time of retirement, under paragraph 12–4, in a grade lower than their highest active duty enlisted grade, who were administratively reduced in grade not as a result of their own misconduct, will retire at the highest enlisted grade in which they served satisfactorily on active duty. (See 10 USC 3963.)

  (2) The Army Grade Determination Review Board in accordance with AR 15–80 will make determination of the highest grade served in satisfactorily.

  (3) This provision applies only to ARNGUS and USAR Soldiers retired after 30 September 1996. (See para 12–16 for instructions pertaining to former command sergeants major who are serving as sergeants major when they retire.) (See para 12–17 for instructions pertaining to former first sergeants who are serving as master sergeants when they retire.)

  c. Years of service for retirement are computed by adding all active Federal service in the Armed Forces and service computed under 10 USC 3925.

**000702**

*d.* For the RA, ARNGUS, and USAR Soldiers retiring from an active duty status, the date of retirement is the first day of the month following the month in which the Soldier is released from active duty. For the ARNGUS and USAR Soldiers not on active duty, the date of retirement is the first day of the month following the month in which retirement orders are issued.

## 12–4. Twenty-year retirement law (10 USC 3914)

*a.* A Soldier who has completed 20 but less than 30 years of AFS in the U.S. Armed Forces may be retired at his or her request (see para 12–14*f*). The Soldier must have completed all required service obligations at the time of retirement.

*b.* A Soldier who holds a current commission in the USAR will be transferred to the Retired Reserve in the status he/she elects, if otherwise eligible.

(1) Dual status in the USAR as a commissioned officer and as an enlisted Soldier is not authorized. When a Soldier retires in the elected status, the status may not be changed.

(2) Transfer to the Retired Reserve to complete obligated service in an enlisted status vacates commissioned status in the USAR.

*c.* A Soldier who retires under 10 USC 3914 and has been awarded the Medal of Honor, Distinguished Service Cross, or Navy Cross for extraordinary heroism will have his/her retired pay increased 10 percent. However, the total retired pay (including the increase) may not exceed 75 percent of the basic pay upon which computed.

(1) A Soldier who is retired for physical disability under 10 USC 1201 or 1202 and is otherwise eligible for retirement under 10 USC 3914 is entitled to the 10 percent increase in retired pay based on this criteria.

(2) A Soldier who has been awarded the Distinguished Flying Cross, the Soldier's Medal, or equivalent Navy decoration may be credited with extraordinary heroism if it is determined that the heroism was equivalent to that required for award of the Distinguished Service Cross.

(3) In all cases involving extraordinary heroism, a copy of the order that awards the decoration and the separate citation if not contained in the order will be submitted to Headquarters, Department of the Army (AHRC–PDA), 2461 Eisenhower Avenue, Alexandria, VA 22332–0478, for verification and determination. Previous letters of determination more than 2 years old will be submitted for confirmation and will be accompanied by the order awarding the decoration.

## 12–5. Thirty-year retirement law (10 USC 3917)

A RA Soldier who has completed at least 30 years of active Federal service in the U.S. Armed Forces will, upon request, be placed on the retired list.

## 12–6. Advancement on the retired list (10 USC 3964)

*a.* As used in this paragraph, active duty means full-time duty in the active military service of the United States. It includes full-time training duty and annual training duty but does not include full-time National Guard duty. (See 10 USC 101(d)(1).) Active service means service on active duty or full-time National Guard duty. (See 10 USC 101(d)(3).)

*b.* Retired Soldiers who have less than 30 years of active service, whose active service plus service on the retired list total 30 years, are entitled to be advanced on the retired list to the highest grade in which they served on active duty satisfactorily or, in the case of ARNGUS Soldiers, in which they served on full-time duty satisfactorily. (See 10 USC 3964.)

(1) This provision applies to warrant officers, RA enlisted Soldiers, and Reserve enlisted Soldiers who, at the time of retirement, are on active duty (or full-time National Guard duty).

(2) When these Soldiers complete 30 years of satisfactory service, their military personnel records are reviewed to determine whether service in the higher grade was satisfactory. (See *d*, below.) Soldiers advanced to a higher grade will be notified by the Cdr, USA HRC.

*(a)* For advancement to a commissioned officer grade, the Soldier must have served satisfactorily on active duty in this grade for not less than 6 months. (See 10 USC 1370.)

*(b)* For advancement to a warrant officer grade, the Soldier must have served on active duty in this grade for at least 31 days. (See 10 USC 1371.)

*c.* Soldiers retired after 30 or more years of active service are entitled to be advanced on the retired list, at retirement, to the highest grade in which they served on active duty satisfactorily or, in the case of ARNGUS Soldiers, in which they served on full-time duty satisfactorily. The requirements of *b*(1) and (2), above, also apply.

*d.* Grade determinations for purposes of advancement on the retired list are made by the Army Grade Determination Review Board on behalf of the Secretary of the Army per AR 15–80.

*e.* Cases of Soldiers who are eligible for advancement on the retired list at retirement will be sent to Headquarters, Department of the Army (AHRC–EPR–F), 2461 Eisenhower Avenue, Alexandria, VA 22332–0478. Cases should be sent for determination at least 75 days before requested retirement date. These will include—

(1) Cases covered in *c*, above.

(2) Cases of Soldiers retiring in an enlisted status who have served on active duty in any Armed Force in an enlisted grade higher than their current grade.

*f.* Soldiers advanced to a higher commissioned grade may be restored to their former enlisted status on the retired list. (See 10 USC 3965.) These Soldiers must apply to the Secretary of the Army within 3 months of advancement.

*g.* For personal reasons, Soldiers may not want to advance to a higher grade.

(1) Before such advancement, a Soldier may apply for a specified period of deferment and for placement or retention on the retired list in his/her current status. The application for deferment will include the following statement over the Soldier's personal signature: "I understand that subsequent advancement will not be retroactive and that increased pay or other entitlements accruing therefrom will be based on the actual date of advancement."

(2) Soldiers who are retiring after completion of 30 years active Federal service who are eligible for advancement on the retired list to a higher grade may request deferment. The request should be submitted through channels to the retirement authority. That commander must receive the request at least 30 days before the requested retirement date.

(3) Retired Soldiers may apply for deferment to the Commander, USA HRC, 1 Reserve Way, St. Louis, MO 63132–5200. That headquarters must receive the application at least 30 days before the Soldier completes 30 years service (active Federal service plus service on the retired list).

*h.* Paragraphs 12–16 and 12–17 explain the eligibility of former command sergeants major and former first sergeants for placement on the retired list in those grade titles. This paragraph does not apply in such cases.

## Section III
## Requirements and Procedures

### 12–7. Eligibility

*a.* Soldiers who have completed 20 but less than 30 years of AFS and who have completed all required service obligations are eligible, but not entitled, to retire upon request. Except as indicated in paragraph 19–15, unless restricted in this section, Soldiers who have completed 19 or more years of AFS may apply for retirement. The request must be made within 12 months of the requested retirement date except as indicated in paragraph 19–15.

*b.* Soldiers must complete at least 20 years of active Federal service and all service obligations (see para 12–8) by the requested retirement date. (See para 12–12 concerning applying for retirement.)

*c.* Soldiers who are under suspension of favorable personnel action per AR 600–82 are not precluded from submitting applications for retirement. Requests for retirement will be considered on a case-by-case basis by the local retirement approval authority.

### 12–8. Service obligations

*a. General.* This paragraph applies to Soldiers retiring under 10 USC 3914, including Soldiers who have completed 20, but less than 30, years of active Federal service.

*b. Tours.* Soldiers will be required to serve as indicated in (1) and (2), below.

(1) *CONUS.* Soldiers will serve 1 year in their current assignment or at their current duty station, whichever occurs first, beginning when the Soldier reports for duty. This includes Soldiers who have returned from overseas on a permanent change of station. Soldiers assigned to a lifecycle unit will incur an active duty service obligation extending until completion of the unit lifecycle. HQDA will announce the duration of each unit lifecycle (normally 3 years) before the lifecycle begins.

(2) *Overseas.* See AR 614–30.

*(a)* Soldiers accompanied by Family members who traveled at Government expense must complete the prescribed "with Family members" tour or at least 12 months from the date of the arrival of Family members, whichever is longer.

*(b)* Unaccompanied Soldiers must complete the prescribed "all others" tour.

*(c)* Soldiers who have no Family members must complete the tour prescribed for the country in which they are serving.

(3) Personnel who have incurred a service obligation, other than outside CONUS (OCONUS) returnees, and who have reached the RCP for their grade, will be retired on the first day of the month following the month the RCP is met.

*c. Schools.* Soldiers who have attended military or civilian courses of instruction must complete any service obligation voluntarily incurred because of such attendance.

*d. Promotions.* Soldiers who have an approved retirement are in a nonpromotable status. They will not be promoted unless a request for withdrawal of their retirement application has been approved. (See para 12–15.)

(1) Soldiers who are promoted to the grade of SFC, MSG/1SG, or sergeant major (SGM)/command sergeant major (CSM) incur a 2-year service obligation (AR 600–8–19). This obligation will be from the effective date of promotion. It must be completed before voluntary retirement.

(2) The following are excluded from the 2–year service obligation:

*(a)* Soldiers who have completed 30 or more years of active Federal service on their requested retirement date.

000704

*(b)* Soldiers who are already eligible through prior service for a higher grade at the time of retirement.

*(c)* Soldiers who are 62 years of age or older.

*(d)* Soldiers who are eligible for retirement based on RCP (AR 601–280) for the recommended grade.

(3) A promoted individual may not be administratively reduced to terminate a promotion service obligation. (See AR 600–8–19, para 4–8*e.*)

*e. Current ETS prior to completion of service.* Soldiers whose current ETS or RCP is prior to completion of service obligation will be counseled per paragraph 4–3.

## 12–9. Retirement in lieu of PCS

*a.* Soldiers having 19 years, 6 months or more of AFS when notified of permanent change of station may request a retirement date. The Soldier will receive official notification per DA Pam 600–8–11, procedure 3–1.

(1) If the Soldier elects to retire, the retirement application (DA Form 2339) must be submitted and approved within 30 days of receipt of official alert notification of permanent change of station.

(2) The retirement date will not be later than 6 months from the date of notification, or the first day of the month following the month in which 20 years of active Federal service is completed, whichever is later. All service obligations must be fulfilled not later than the approved retirement date.

*(a)* Soldiers electing to retire under this provision will be required to retire immediately upon attaining retirement eligibility.

*(b)* The retirement application (DA Form 2339) will be submitted through command channels to Commander, USA HRC (AHRC–EPR–F), 200 Stovall Street, Alexandria, VA 22332–0478. This action must be submitted and approved with 30 days of official notification of permanent change of station.

*(c)* All service obligations resulting from promotion, training or similar action must be completed before 20 years AFS.

*(d)* Soldiers will have at least 20 years AFS at ETS.

*b.* When a Soldier cannot fulfill the service obligations by the requested retirement date, the retirement authority will return the Soldier's application.

*c.* Applications for retirement in lieu of PCS that are approved will not be withdrawn, nor will the retirement date be changed. The Soldier must retire on the approved retirement date.

*d.* The retirement authority will set up procedures to ensure written acknowledgment by the Soldier of the reassignment notification.

(1) Written acknowledgment will be used as confirmation of receipt of assignment instructions.

(2) Soldiers in grades SGM/CSM and MSG/1SG (P), as an exception to DA Pam 600–8–11, procedure 3–1, will be officially notified telephonically of permanent change of station. If the Soldier elects to retire in lieu of PCS, the provisions of *a,* above, are applicable.

*e.* Assignment instructions or orders will be deleted only after request for retirement is approved.

*f.* Soldiers who request retirement in lieu of PCS will normally remain at the same duty station in an authorized position. Utilization will be in the best interest of the Army. A move may be necessary for such reasons as deletion of position, reorganization, or disciplinary problems.

(1) Soldiers will not be slotted below the grade currently held.

(2) To facilitate proper utilization, Soldiers may be reassigned within the installation. Where this is not possible, Soldiers will be reassigned to the nearest military installation where they can be used.

(3) Soldiers will not be reassigned solely to move them to the installation nearest their requested place of retirement. Soldiers moved for the convenience of the Government under these conditions will not be required to complete a one year CONUS service obligation.

## 12–10. Loss of HQDA centralized promotion list standing upon approval retirement

*a.* All NCOs in grades of SSG through MSG/1SG who are currently on a DA centralized promotion list will lose promotion-list standing upon approval of a retirement. Their names will be administratively removed from a promotion list, and they will retire in the grade currently held.

*b.* In the event that a Soldier in this situation has his/her retirement withdrawn, current promotion list status will not be regained. If eligible, the Soldier will be considered for promotion by the next regularly scheduled promotion board.

*c.* SGM who become CSM(D) will lose such designation if they receive an approved retirement.

## 12–11. Waivers

*a.* Exceptions to service obligations (see paras 12–7 and 12–8) may be granted when the best interest of the Service is involved or when substantial hardship exists or would result if the Soldier is not retired. Substantial hardship is a situation or circumstance that imposes undue suffering on the Soldier or the immediate Family. Requests for exception to service obligation must be submitted by the Soldier only. The request must be fully defined and documented.

*b.* Soldiers who are selected for attendance at the Sergeants Major Academy and complete the letter of acceptance

**000705**

incur a service obligation to attend the academy. Requests for exception to this obligation must be requested by the Soldier with full justification and forwarded through command channels as indicated below.

*c.* Requests for waivers will be forwarded through the Soldier's commander to Headquarters, Department of the Army (AHRC–EPR–F), 2461 Eisenhower Avenue, Alexandria, VA 22332–0478. Attach DA Form 2339 with sections I and II completed and signed per paragraph 12–13. Commanders will comment on the justification submitted and make appropriate recommendation.

## 12–12. Applying for retirement

*a.* Submit requests for retirement on DA Form 2339 (see para 12–13) through the chain of command to the appropriate retirement authority listed in paragraph 12–2. The retirement authority will notify Soldier in writing of the effective date of the retirement, if approved.

*b.* Before applying for retirement, the Soldier should be firm in his/her decision to retire on a certain date. (See para 12–15.)

*c.* The retirement authority is authorized to set a minimum time for submission of retirement applications. Soldiers' retirement applications will be submitted at least 9 months before the retirement date.

*d.* Personnel officers will—

(1) Require each Soldier who wants to apply for retirement to read this chapter.

(2) Ensure that each applicant understands section V of this chapter, including the provisions that the Soldier will not be held on active duty beyond the requested retirement date to complete a medical examination.

## 12–13. Preparation of DA Form 2339

Each Soldier requesting retirement will, with the help of the personnel officer, complete section I, DA Form 2339, including date and signature. Applications not including this information are invalid. Each item will be completed in full. Not applicable (NA) or "none" will be entered where appropriate. When a waiver to a service obligation is requested, justification will be included as an enclosure.

*a.* The officer having custody of the applicant's personnel records will assist the Soldier in preparing the application. Special attention will be given to items 4, 6, 14, and 19.

(1) *Item 4.* Enter the first day of desired retirement month, not the last day of the preceding month.

(2) *Item 6.* Enter the highest grade (permanent or temporary) in which the Soldier served on active duty and the branch of Armed Forces in which served.

(3) *Item 14.*

(a) Ensure that all service claimed is correct. A Soldier must have at least 20 years of creditable active Federal service to be eligible for retirement. (See chap 12, sec IV.)

(b) Enter all uninterrupted service on one line (such as RA enlisted service with no breaks between enlistments or continuous active Federal service as a commissioned officer, regardless of grade).

(4) *Item 19.* If Soldier elects to be processed for retirement at a location of choice TP or TA (see AR 635–10, para 2–19), enter the complete designation and location of such TP or TA. (For example, U.S. Army Transition Point, Fort Sill, OK.) The Soldier must check the appropriate election and sign his/her name. This does not apply to Soldiers not on active duty.

*b.* The personnel officer will complete section II, DA Form 2339. Each item will be completed in full.

(1) *Item 21.* Enter the complete designation and location of the authorized TP or TA where the Soldier will be processed for retirement. (See AR 635–10, chap 2 and app B.)

(2) *Item 27.* Also enter type tour "all other" or "with Family members" as applicable and date eligible for return from overseas (DEROS).

(3) *Item 28.* Will be completed only when Soldier elects retirement in lieu of PCS. Enter the date Soldier was notified of alert for permanent change of station. When applicable, enter date of Declination of Continued Service Statement and include as enclosure to DA Form 2339.

(4) *Item 30.* Require the applicant to sign all copies.

(5) *Item 31.* Enter the statements and information required by (*a*) through (*d*), below, as applicable.

(a) If the application is being submitted per paragraph 12–9, enter the following statement: "Approved for retirement in lieu of PCS." This statement will be typed on all copies of the DA Form 2339 and signed by the retirement authority or the designated representative.

(b) If the Soldier will be taking transition leave in conjunction with retirement, enter the following statement: (grade) (name) has requested and had approved days of transition leave (days delay en route chargeable as leave (DDALV)) to be taken in conjunction with the requested retirement action. This leave will begin (date) and end on (date).

(c) If the Soldier currently is serving as a SGM but formerly served as CSM, enter whichever of the following statements is applicable (see para 12–16): "SGM (name) served satisfactorily as CSM, from (date) to (date). He/she was released from the CSM Program solely because of assignment-limiting physical condition that was incurred in line

**000706**

of duty (LD).” “SGM (name) served as CSM from (date) to (date). He/she (was released from the CSM Program due to inadequate performance of duty) or (voluntarily withdrew from the CSM Program for reasons other than an assignment-limiting physical condition that was incurred in LD).”

*(d)* If Soldier is currently serving in the grade of MSG but formerly served as 1SG, E8, enter the following statement (see para 12–17): “MSG (name) served satisfactorily as ISG from (date) to (date).”

*c.* The personnel officer will send a signed copy of the application, as soon as sections I and II are completed, to Headquarters, Department of the Army (AHRC–EP-appropriate career management branch), 2461 Eisenhower Avenue, Alexandria, VA 22332–0478. Soldiers of the USAR on active duty will submit a signed copy of the application to USA HRC (TARP–AR) 1 Reserve Way, St. Louis, MO 63132–5200. Army National Guard of the United States Soldiers on active duty will submit a signed copy of the application to the State Adjutant General. For RA Soldiers who are being considered by HQDA Selection Board for promotion to the next higher grade, an additional copy will be sent to Headquarters, Department of the Army (AHRC-MSP-E), 2461 Eisenhower Avenue, Alexandria, VA 22332–0478. The submission of these copies of the application will not be delayed until the medical examination or verification of service is completed.

*d.* The personnel officer will verify the Soldier’s service (see para 12–28) and that actions related to increased retired pay for extraordinary heroism have been accomplished. (See para 12–4*c.*)

*e.* The personnel officer will ensure that the Soldier’s enlistment does not expire before the requested retirement date. If the enlistment will expire before requested date of, or eligibility for, voluntary retirement, the retirement approval authority may extend it through the last day of the month preceding the requested retirement date. Enlistment will not be extended more than 12 months, per AR 601–280, chapter 4. For example:

(1) Soldiers who have reached retirement eligibility (20 years of active Federal service) may be extended up to 12 months if they qualify for such extension per AR 601–280.

(2) Soldiers who have reached retirement eligibility but are not qualified for extension per AR 601–280, may be extended through the last day of the month during which ETS occurs or RCP is reached. No DA Form 1695 is required for this extension. The retirement order will serve as documentary evidence of the approved extension.

(3) Soldiers who at ETS or RCP will have completed 18 years of active Federal service but less than 20 years will be extended to reach retirement eligibility. Reserve Component Soldiers serving on active duty, except active duty for training, who at ETS or RCP will have completed 18 but less than 20 years of creditable service for nonregular retirement, may also be extended to reach nonregular retirement eligibility.

*f.* Soldiers with a minimum of 17 years, 9 months of active Federal service who are denied continued service under the Qualitative Management Program may be extended to complete 20 years of service per chapter 19.

*g.* The personnel officer will send the application to the retirement authority as soon as section II is completed and signed.

*h.* After retirement orders are issued, the personnel officer will notify the retirement authority and HQDA if a waiver has been granted. The officer will get the decision of that commander or HQDA either to revoke the orders or to let them stand. The officer will notify the Soldier of the decision before the effective date of retirement.

## 12–14. Responsibility of retirement authority
Commanders specified in paragraph 12–2 will ensure that—

*a.* No Soldier is retired who has not completed at least 20 years of active Federal service that is creditable for retirement. (See chap 12, sec IV.)

*b.* Soldiers who submit applications in lieu of PCS are not permitted to withdraw their applications or change the requested retirement date.

*c.* Retirement orders are issued as far in advance of the retirement date as possible. This gives the Soldier ample time to arrange for movement of Family members and transportation of household goods.

*d.* Paragraph 12–13*b*(5)(*a*) and (*c*) are complied with.

*e.* Headquarters, Department of the Army (AHRC–EPR–F), State Adjutant General, and USA HRC (TARP-PAR-P) are notified of any change in the Soldier’s status that would prevent retirement.

*f.* All requests for retirement of eligible Soldiers with less than 30 years of service are considered on their individual merits. Such requests normally should be approved. Requests, however, may be disapproved, or the required date of retirement delayed, based on the best interest of the Army.

## 12–15. Request for withdrawal of application or change in retirement date
*a.* An approved application for retirement may not be withdrawn by the Soldier unless it is established that retention on active duty will prevent an extreme hardship to the Soldier or his/her immediate Family. The hardship must have been unforeseen at the time of application. An application for retirement may not be withdrawn after travel has been performed for retirement.

*b.* The retirement date will not be changed unless, after the application is submitted, events that justify a change in the retirement occur that would cause an extreme hardship to the Soldier or immediate Family.

*c.* Requests for withdrawal of applications or change in retirement date must be fully documented.

**000707**

(1) The request will be forwarded with one copy of the DA Form 2339, through channels, to reach the retirement authority at least 30 days before the previously requested retirement date. The retirement approval authority will disapprove those requests that clearly do not meet established criteria or are not fully documented.

(2) When the retirement authority recommends approval, the request will be forwarded to reach HQDA (AHRC–EPR–F) at least 20 days before the previously requested retirement date. The retirement authority will inform the unit commander of this referral.

(3) Approval or disapproval action should be received by the unit commander by the third day before the date that applies in paragraph 12–15c(3)(a), (b), or (c). If not received, the unit commander will query the retirement authority or HQDA (AHRC–EPR–F) by telephone (even when Condition MINIMIZE is in effect).

(a) Date Soldier is to depart overseas command for return to CONUS or area of residence.

(b) Date Soldier is to depart duty station for authorized or location of choice transfer activity.

(c) Previously requested retirement date, when the retirement authority has approved a request for retirement in the overseas command.

d. Requests for exception to policy not supported by required documentation, that is, DA Form 2339 or DA Form 4991–R (Declination of Continued Service Statement (available in AR 601–280)), will be returned without action.

e. In cases not involving Soldier requests based on hardship or those not involving court-martial, administrative discharge, or physical disability, an approved retirement may be revoked, or the effective date delayed, based on the best interest of the Army. In such situations, requests for revocation or delay may be submitted on a case-by-case basis through Commander, HRC to the Deputy Chief of Staff, G–1. Requests must be fully justified.

## 12–16. Grade title on retired list of former command sergeants major

a. Noncommissioned officers (NCOs) holding the grade title of sergeant major (SGM) at retirement will be placed on the retired list in the grade title of command sergeant major (CSM) if their records reflect honorable service as CSM and they were released from the CSM Program, voluntarily or involuntarily, because of an assignment-limiting medical or physical condition, or to serve as SGM in any duty assignment.

b. NCOs released from the CSM Program for the following reasons will not be placed on the retired list in the grade title of CSM.

(1) Unsatisfactory conduct or inadequate performance of duty as CSM.

(2) Holding a pay grade below E–9 at the time of retirement.

(3) Holding the grade MSG/1SG or below on date of retirement.

c. If information in field personnel or medical records is insufficient to determine a Soldier's eligibility for placement on the retired list in the grade title of command sergeant major, request for such determination will be made to Headquarters, Department of the Army (AHRC–EPZ–E), 2461 Eisenhower Avenue, Alexandria, VA 22332–0450.

d. Retirement orders on eligible Soldiers will reflect active duty as SGM and placement on the retired list as CSM.

## 12–17. Grade title on retired list of former first sergeants

Noncommissioned officers holding the grade of master sergeant at retirement, whose records show successful service as first sergeant, will be placed on the retired list in the grade title, first sergeant. The following are the only criteria for such placement on the retired list:

a. The Soldier must be serving in and retiring in the grade of MSG.

b. The Soldier must possess special qualification identifier "M."

c. The Soldier must have served as first sergeant in grade of MSG. No minimum time period is specified. Service in the duty action of first sergeant while in the grade of SFC does not meet this requirement.

## 12–18. Retirement orders

a. The retirement authority or the agency that normally issues orders on personnel of the Soldier's unit of assignment, may issue retirement orders. When USA HRC is the retirement authority, retirement orders will be issued by the normal orders issuing agency for the Soldier's unit of assignment. The following standard orders formats contained in AR 600–8–105 will be used to retire Soldiers for length of service.

(1) Format 602: To announce the retirement under 10 USC 3917 of Soldiers with 30 or more years of active Federal service.

(2) Format 600: To announce the retirement under 10 USC 3914 of Soldiers with 20 or more, but less than 30, years of active Federal service.

b. Retirement orders direct relief from active duty on the last day of the month and placement on the retired list on the first day of the following month. Relief from active duty and retirement occur on the dates specified in the orders unless the orders are amended or revoked by proper authority. If the orders are amended or revoked, this must take place before 2400 hours (local time) on the date of relief from active duty.

c. Once an order has been issued, it will not be amended or revoked except for extreme compassionate reasons, the

**000708**

best interest of the Army, or when a change in the Soldier's status prevents retirement on the specified date (see para 12–15).

(1) Orders may not be modified, amended, or revoked on or after the effective date of retirement in the absence of fraud, mistake of law, mathematical miscalculation, or substantial new evidence affecting the Soldier's basic eligibility for retirement.

(2) The following cases will be promptly forwarded to HQDA (AHRC–EPR–F) with full substantiating information:

(a) When circumstances require that retirement orders be revoked before the effective date of retirement.

(b) When circumstances require that retirement orders be amended before the effective date of retirement, and the Soldier has been reassigned outside the jurisdiction of the retirement authority who issued the orders.

(c) When it appears that retirement orders require modification, amendment, or revocation after the effective date of retirement.

d. The Soldier must have the retirement orders or copy of verification message containing the retirement order number. The Soldier's MPRJ or local file, as appropriate, must contain copies of the retirement orders before his/her departure from the overseas command or CONUS station of assignment for retirement processing.

## 12–19. Date of retirement
Soldiers retiring for length of service will be placed on the retired list only on the first day of a month (5 USC 8301), with release from active duty on the last day of the preceding month. Soldiers approved for retirement may be retired on the date requested or on the first day of any month thereafter, provided he/she is medically and otherwise qualified for retirement.

## 12–20. Place of retirement
a. Soldiers are required to be processed for retirement at the authorized and directed transition center (TC) specified in AR 635–10. Exceptions are provided in b and c, below, and DA Pam 600–8–11, table 2–1–2.

b. A Soldier may elect, per AR 635–10, paragraphs 2–8 and 2–19, to be processed for retirement at a location of choice TC. If a Soldier later wishes to retire at the authorized and directed place of retirement, he/she will submit justification for this change to the retirement authority.

(1) The Soldier will submit the justification before leaving the unit of assignment. If retirement orders have been issued and the Soldier's retirement authority approves the request, that commander will immediately advise the TC chiefs or commanders at the location of choice and the authorized and directed TC of this change. The retirement orders need not be amended.

(2) The Soldier who has elected to be processed for retirement at a location of choice may later decide to be processed from the authorized and directed STP or station.

(3) A change from one location of personal choice to another location of choice is not authorized.

c. See AR 600–8–10 for guidance on being absent from the home station in a leave status on the date of retirement.

d. A Soldier serving on foreign service who wants to retire in the overseas area of assignment (subject to approval of overseas commander or other commander if overseas separation authority is delegated as provided in paragraph 1–41e) must mark this in the retirement application. If required, the retiree should secure a passport from the nearest United States Consulate.

## 12–21. Certificates
The TP or TA will prepare and issue the following certificates per AR 635–5 to each Soldier upon retirement. These certificates are sensitive items and will be transmitted, stored, and destroyed in a manner that will prevent their unauthorized use. The certificates are available through normal publications supply channels. Requisitions will be honored only from TC listed in AR 635–10 and from approval authorities shown in paragraph 12–2.

a. DD Form 363 (Certificate of Retirement).

b. DA Form 3891 (Certificate of Appreciation of Wives of Retirees).

c. DA Form 38911 (Certificate of Appreciation for Husbands of Retirees).

d. DD Form 2542 (Presidential Certificate of Appreciation).

## 12–22. Career recognition
Appropriate ceremonies will be set up per AR 600–25, paragraph 3–4. When the installation or duty station commander decides that the retiring Soldier's career merits special recognition, the commander may issue an additional extended retirement order. This citation should have the same number on it as the retirement order plus the prefix EXT and should highlight key career events. The information can be gathered from field documents and by interview. This announcement may be placed on bulletin boards, included in the retiree's file, read at ceremonies, and presented to the Soldier in appropriate binder.

000709

**12–23. Disposition of retirement papers**

One copy of the retirement orders (including any amendments for revocations) will be placed in the Military Personnel Records Jacket along with the following essential papers:

*a.* The original DA Form 2339.

*b.* The complete medical examination report.

*c.* Verification of service, if any obtained.

*d.* Determinations of extraordinary heroism.

*e.* Grade determinations for concurrent advancement on the retired list.

*f.* Approved or disapproved requests for waiver or requests for exception to service obligations.

*g.* Approval or disapproval action on requests for withdrawal of application or change in retirement date.

*h.* Determinations concerning grade title of former command sergeants major.

*i.* Other essential papers showing actions and reasons for actions taken.

**12–24. References**

Additional information concerning the following retirement concerns may be found in the cited publications:

*a.* Decorations and Awards: AR 600–8–22.

*b.* Identification cards, tags and badges: AR 600–8–14.

*c.* Preparation of DD Form 214: AR 635–5.

*d.* Pre-retirement leave: AR 600–8–10.

*e.* Records disposition: AR 635–10.

*f.* Retirement ceremony: AR 600–25.

*g.* Retirement processing: AR 635–10.

*h.* Selection of home: Joint Federal Travel Regulation (JFTR), paragraph U5130.

*i.* Shipment of household goods: JFTR, paragraph U5365.

*j.* Transportation of Family members: JFTR, paragraph U5230.

**Section IV**
**Computation of Service**

**12–25. Service creditable for retirement**

All years of active service are creditable for retirement. (See 10 USC 3925.) All service below is creditable for retirement under this chapter and is creditable for basic pay purposes. For other service creditable for basic pay, see DOD 7000.14–R, vol. 7A. Service below is creditable for retirement if performed as a commissioned officer, commissioned warrant officer, warrant officer, Army field clerk, flight officer, or Soldier, unless otherwise specified.

*a. Army.*

(1) U.S. Army (Regular).

(2) Women's Army Corps.

(3) Active Federal service in the—

(a) Regular Army Reserve.

(b) Army of the United States.

(c) U.S. Army Reserve.

(d) Army National Guard.

(e) Army National Guard of the United States.

(4) Cadet, U.S. Military Academy.

(5) Fraudulent enlistment, if enlistment was not voided.

*b. Navy.*

(1) U.S. Navy (Regular).

(2) Active Federal service in the U.S. Naval Reserve.

*c. Air Force.*

(1) U.S. Air Force (Regular).

(2) Active Federal service in the—

(a) Air Force of the United States.

(b) U.S. Air Force Reserve.

(c) Air National Guard.

(d) Air National Guard of the United States.

(3) Aviation Cadet.

(4) Cadet, U.S. Air Force Academy.

**000710**

*d. Marine Corps.*
(1) Marine Corps (Regular).
(2) Active Federal service in the U.S. Marine Corps Reserve.
*e. Coast Guard.*
(1) U.S. Coast Guard (Regular).
(2) Active Federal service in the U.S. Coast Guard Reserve.
(3) Midshipman, U.S. Coast Guard Academy.
*f. Public Health Service.* Active Federal service as commissioned officer in the Reserve Corps of the Public Health Service.
*g. Minority service.* All service performed under an enlistment or induction entered into before reaching the age prescribed by law for that enlistment or induction when such service is otherwise creditable.

## 12–26. Periods not creditable for retirement
The following periods are not creditable for retirement under this chapter.
*a.* All time required to be made good (see 10 USC 972). (See paragraph 1–21.)
*b.* Periods of service voided by the Government other than those voided because of minority.
*c.* Time in a non-pay (non-casualty) status under 37 USC 552(C).
*d.* Service in a Reserve Component not on
(1) Active duty.
(2) Active duty for training.
(3) Other full-time training duty.

## 12–27. Verification of service
*a.* Each Soldier of the RA will be interviewed by the officer having custody of the Soldier's records when he/she completes 18 years' service for basic pay. The interview will determine if the Soldier has had service (active Federal service or inactive service in any branch of the Armed Forces) in addition to that shown in the MPRJ (or local file, as appropriate) or personal financial records (PFR). Further verification is not required for Soldiers whose only claimed service is Army service that is clearly substantiated in their MPRJ (or local file, as appropriate) or PFR.
*b.* Army service claimed by the Soldier that is not clearly substantiated in his/her MPRJ (or local file, as appropriate) or PFR will be verified as follows:
(1) Claimed National Guard service will be verified with the Adjutant General of the State or territory.
(2) If breaks in the applicant's Army service or periods of prior Army service have been previously verified, one copy of DA Form 2339 will be submitted to the Commander, U.S. Army Enlisted Records and Evaluation Center (PCRE-RP-R), 8899 East 56th Street, Indianapolis, IN 46249–5301, requesting verification. Inclusive dates must be furnished for all active and inactive Federal service claimed.
*c.* Other service claimed by the applicant will be verified by certified statements of service and other official statements furnished by the offices listed below. Statements will contain all dates of active duty, active duty for training or other full-time training duty, and all time lost. The original or certified copies will be attached as enclosures to application for retirement.
(1) *Navy.* Military Personnel Records Center, GSA (Navy), 1 Reserve Way, St. Louis, MO 63132–5100.
(2) *Air Force.* Military Personnel Records Center, GSA (Air Force), 1 Reserve Way, St. Louis, MO 63132–5100.
(3) *Marine Corps.* Military Personnel Records Center, GSA (Marine Corps), 1 Reserve Way, St. Louis, MO 63132–5100.
(4) *Coast Guard.* Military Personnel Records Center, GSA (Coast Guard), 1 Reserve Way, St. Louis, MO 63132–5100.
(5) *National Guard.* Adjutant General of the State concerned.
*d.* The signature of the commander or personnel officer at the close of DA Form 2339, section II, certifies that the service claimed by the Soldier in DA Form 2339, items 14 through 18, is correct. Exceptions are indicated in item 25 or 31.

## Section V
## Medical Examination

## 12–28. General
*a.* Active Army Soldiers, including Army Reserve and Army National Guard of the United States Soldiers, retiring after more than 20 years of active duty are required to undergo a medical examination. The examination will record the Soldier's state of health and protect the interest of the Soldier and the Government.
*b.* Examination will be accomplished not earlier than 4 months prior to the anticipated date of commencement of transition leave and not later than 1 month before the scheduled date of retirement.

000711

*c.* Medical examinations will be conducted as prescribed by AR 40–501, paragraph 8–3.

*d.* The immediate commander of each Soldier requesting retirement will ensure that medical examination procedures are followed per AR 40–501.

### 12–29. Hospitalization/Physical Evaluation Board proceedings

*a.* If a Soldier who has requested retirement becomes hospitalized or has an identified medical problem, he/she might be referred to a physical evaluation board.

(1) The commander of the MTF, or a senior medical officer who has detailed knowledge of medical fitness and unfitness standards, disposition of patients, and disability separation processing, to whom the commander has delegated such authority, will make this decision.

(2) If referral to a physical evaluation board will result, the MTF commander or designated representative will notify Headquarters, Department of the Army (AHRC–EPR–F), 200 Stovall Street, Alexandria, VA 22332–0478, by mail or message as soon as possible. The notification will request a change of retirement date if appropriate and furnish a copy of the request to the retirement authority.

*b.* If the physical evaluation board is not necessary, but additional medical care is, the retirement will be processed as a non-disability retirement. Continuing medical problems will be treated up to and after the retirement date. Retirement dates will not be changed to continue medical treatment that will extend past the approved retirement date.

*c.* If referral to a physical evaluation board results, approved retirement dates will not be changed until approved by HQDA (AHRC–EPR–F).

## Chapter 13
## Separation for Unsatisfactory Performance

### Section I
### General

### 13–1. Policy

A Soldier may be separated per this chapter when it is determined that he/she is unqualified for further military service because of unsatisfactory performance. (See chap 1, sec II.) This reason will not be used if the Soldier is in entry-level status, except as provided in paragraph 11–3*c.*

### 13–2. Criteria

*a.* Commanders will separate a Soldier for unsatisfactory performance when it is clearly established that

(1) In the commander's judgment, the Soldier will not develop sufficiently to participate satisfactorily in further training and/or become a satisfactory Soldier.

(2) The seriousness of the circumstances is such that the Soldier's retention will have an adverse impact on military discipline, good order, and morale.

(3) The Soldier will likely be a disruptive influence in duty assignments.

(4) The circumstances forming the basis for initiation of separation proceedings will likely continue or recur.

(5) The Soldier's ability to perform duties effectively is unlikely.

(6) The Soldier's potential for advancement or leadership is unlikely.

*b.* Commanders will initiate separation action only when the Soldier is under military control. As an exception, commanders may initiate this action when a Soldier is confined by civil authorities and his/her military record indicates that he/she should be processed for separation by reason of unsatisfactory performance. (See chap 2, sec III for completing proceedings initiated before a Soldier departs absent without leave.)

*c.* This provision applies to Soldiers who are pregnant and whose substandard duty performance is not caused solely by pregnancy. Substandard duty might include failure to report to duty without medical or military authorization or refusal of CONUS reassignment during the first 6 months of pregnancy.

*d.* Commanders will consider a Soldier meeting the criteria of *a,* above, and convicted by court-martial but not sentenced to a punitive discharge, for administrative separation under this chapter when the underlying misconduct and the Soldier's performance warrant separation. When appropriate, commanders may start separation action while the Soldier is serving a sentence to confinement at the installation detention facility.

*e.* Initiation of separation proceedings is required for Soldiers without medical limitations who have two consecutive failures of the Army physical fitness test per AR 350–1 or who are eliminated for cause from Noncommissioned Officer Education System courses, unless the responsible commander chooses to impose a bar to re-enlistment per AR 601–280 (RA Soldiers) or AR 140–111 (USAR AGR Soldiers).

**13–3. Separation authority**

The commanders specified in paragraph 1–19 are authorized to take final action in cases processed under this chapter.

**13–4. Counseling and rehabilitation requirements**

Before initiating separation action against a Soldier, commanders will ensure that the Soldier has received adequate counseling and rehabilitation. Because military service is a calling different from any civilian occupation, a Soldier should not be separated when unsatisfactory performance is the sole reason for separation unless there have been efforts at rehabilitation. Paragraph 1–16 prescribes the counseling and rehabilitation requirements.

**Section II**
**Procedures**

**13–5. Action by unit commander when Soldier is under military control**

When separation for unsatisfactory performance is appropriate, the unit commander will—

  *a.* Take action specified in the notification procedure. (See chap 2 and fig 2–4.)

  *b.* Forward the case recommending separation for unsatisfactory performance.

  *c.* Ensure that a medical examination and mental status evaluation is obtained per paragraph 1–32.

  *d.* When appropriate, forward the case recommending that the Soldier be processed through medical channels. This is required when UCMJ action is not initiated and when the Soldier has an incapacitating physical or mental illness that was the direct or substantial contributing cause of the conduct for which separation action is being considered.

**13–6. Commanding officer's report**

When the immediate commander determines that separation for unsatisfactory performance is in the best interest of the Service, he/she will report the fact, by memorandum (see fig 2–5), to the separation authority specified in paragraph 1–19 through the intermediate commander.

**13–7. Action by intermediate commander**

  *a.* The intermediate commander may disapprove the recommendation and either—

  (1) Direct reassignment of the Soldier to another organization.

  (2) Direct disposition by other means.

  (3) In case of reassignment, forward the commanding officer's report to the new organization commander for information.

  *b.* The intermediate commander may also forward the report recommending approval. Recommendation will be made as to characterization of service. (See para 2–2*d*(4) and (5).)

**13–8. Action by the separation authority**

On receiving a recommendation for separation for unsatisfactory performance, the separation authority (see para 1–19) will take one of the following actions:

  *a.* Disapprove the recommendation and direct reassignment of the Soldier to another organization. In this case the commanding officer's report will be forwarded to the new organization commander for information.

  *b.* Disapprove the recommendation and return the case to the originator for disposition by other means. The return memorandum will include reasons for considering separation for unsatisfactory performance inappropriate.

  *c.* Take other appropriate action under this regulation.

  *d.* If the Soldier has less than 6 years of total active and/or reserve military service, or has properly waived his/her right to consideration by a board—

  (1) Approve separation for unsatisfactory performance.

  (2) Approve separation for unsatisfactory performance and suspend execution of the separation. (See para 1–18.)

  *e.* If the Soldier has 6 or more years of total active and/or reserve military service and has not executed a waiver, convene a board of officers, as prescribed in chapter 2, to determine whether the Soldier should be separated for unsatisfactory performance.

**13–9. Separation authority action after board hearings**

See chapter 2.

**13–10. Characterization of service**

The service of Soldiers separated because of unsatisfactory performance will be characterized as honorable or under honorable conditions as warranted by their military records. (See paras 3–5 and 3–7.) An honorable characterization of service generally is required when the Government initially introduces limited use evidence. (See paras 3–8*a* and *g*.)

### 13–11. Type of separation

Soldiers separated under this chapter will be discharged. (See para 1–11 for additional instructions on ARNGUS and USAR personnel.)

## Chapter 14
## Separation for Misconduct

### Section I
### General Provisions

### 14–1. General

This chapter establishes policy and prescribes procedures for separating personnel for misconduct because of minor disciplinary infractions, a pattern of misconduct, commission of a serious offense, conviction by civil authorities, desertion, and absence without leave.

### 14–2. Policy

*a.* Action will be taken to separate a Soldier for misconduct when it is clearly established that—

(1) Despite attempts to rehabilitate or develop him/her as a satisfactory Soldier, further effort is unlikely to succeed.

(2) Rehabilitation is impracticable or the Soldier is not amenable to rehabilitation (as indicated by the medical or personal history record).

(3) The provisions of paragraph 1–33 have been complied with, if applicable.

*b.* Separation action may be taken when a Soldier is not under military control. (See chap 2, sec III.)

*c.* Commanders will not take action prescribed in this chapter instead of disciplinary action solely to spare an individual who may have committed serious misconduct from the harsher penalties that may be imposed under the UCMJ.

*d.* Before taking action against a Soldier under section III of this chapter because of minor disciplinary infractions or a pattern of misconduct, commanders will ensure that the Soldier has received adequate counseling and rehabilitation. (See para 1–16.)

*e.* Misconduct involving fraudulent entry will be considered under chapter 7.

*f.* Commanders will consider Soldiers meeting the criteria of section III of this chapter and convicted by court-martial, but not sentenced to a punitive discharge, for administrative separation under section III, when the underlying misconduct warrants separation. When appropriate, commanders may initiate separation action while the Soldier is serving a sentence to confinement at the installation detention facility.

### 14–3. Characterization of service or description of separation

*a.* A discharge under other than honorable conditions is normally appropriate for a Soldier discharged under this chapter. However, the separation authority may direct a general discharge if such is merited by the Soldier's overall record. (See chap 3, sec II.)

*b.* When the sole basis for separation is a serious offense resulting in a conviction by court-martial that did not impose a punitive discharge, the Soldier's service may not be characterized as under other than honorable conditions unless approved by HQDA (AHRC–EPR–F).

*c.* When a Soldier has completed entry-level status, or paragraph 11–3*c* applies, characterization of service as honorable is not authorized unless the Soldier's record is otherwise so meritorious that any other characterization clearly would be inappropriate.

(1) A characterization of honorable may be approved only by the commander exercising general court-martial jurisdiction, or higher authority, unless authority is delegated per paragraph 1–19*c*(2).

(2) A commander exercising general court-martial jurisdiction may delegate authority to the special court-martial convening authority to approve separation with service characterized as honorable when the sole evidence of misconduct is urinalysis results, which cannot be used for characterization of service as specified in AR 600–85, chapter 6, or when an administrative discharge board has recommended separation with an honorable discharge. (See para 2–12*b*(1).)

*d.* If characterization of service under other than honorable conditions is not warranted for a Soldier in entry-level status (see chap 3, sec II), service will be described as uncharacterized, except as provided in paragraph 3–9*a*(3). (Also see para 11–3*c*.)

*e.* An honorable characterization of service is generally required when the Government initially introduces limited-use evidence. (See para 3–8*a* and *g*.)

**14–4. Authority for discharge or retention**

*a.* The separation authority is authorized to order discharge or direct retention in military service when disposition of a Soldier has been made by a domestic court of the United States or its territorial possessions.

*b.* Upon determination that a Soldier is to be separated with a discharge under other than honorable conditions, the separation authority will direct reduction to the lowest enlisted grade by the reduction authority. (See AR 600–8–19.)

*c.* The separation authority is authorized to suspend execution of an approved administrative discharge to afford a highly deserving Soldier a probationary period not to exceed 12 months to demonstrate successful rehabilitation. (See paragraph 1–19 for delegation of authority.)

**Section II**
**Conviction by Civil Court**

**14–5. Conditions that subject a Soldier to discharge and reduction in grade**

*a.* A Soldier may be considered for discharge when initially convicted by civil authorities, or when action is taken that is tantamount to a finding of guilty, if one of the following conditions is present. This includes similar adjudication in juvenile proceedings:

(1) A punitive discharge authorized for the same or a closely related offense under the MCM 2002, as amended.

(2) The sentence by civil authorities includes confinement for 6 months or more, without regard to suspension or probation. Adjudication in juvenile proceedings includes adjudication as a juvenile delinquent, wayward minor, or youthful offender.

*b.* Initiation of separation action is not mandatory. Although the conditions established in *a*(1) or (2), above, are present, the immediate commander must also consider whether the specific circumstances of the offense warrant separation. (See paragraph 14–7 for guidance on retention.)

*c.* If the immediate commander initiates separation action, the case will be processed through the chain of command to the separation authority for appropriate action.

*d.* A Soldier convicted by a civil court or adjudged a juvenile offender by a civil court will be reduced or considered for reduction. (See AR 600–8–19.)

**14–6. Appeals**

*a.* A Soldier will be considered as having been convicted or adjudged a juvenile offender even though an appeal is pending or is later filed.

*b.* A Soldier subject to discharge under this regulation will be considered and processed for discharge even though he/she has filed an appeal or has stated his/her intention to do so.

(1) However, execution of the approved discharge will be withheld until one of the following circumstances occurs, whichever is earlier:

*(a)* The Soldier has indicated, in writing, that he/she does not intend to appeal the conviction or adjudication as a juvenile offender.

*(b)* The time in which an appeal may be made has expired.

*(c)* The Soldier's current term of service, as adjusted (see para 1–21), expires. (See limitation of para 14–9.)

(2) If an appeal has been made, discharge will be withheld until formal action has been taken or until the Soldier's current term of service, as adjusted (see para 1–21), expires. (See limitation of para 14–9.)

(3) Upon request of the Soldier, or when the commander believes it appropriate, a Soldier may be discharged prior to final action on an appeal. In such cases, the entire file will be forwarded to Headquarters, Department of the Army (AHRC–EPR–F), 200 Stovall Street, Alexandria, VA 22332–0478, for final decision.

*c.* The recommendation of the separation authority for immediate discharge as an exception will fully substantiate the circumstances and the recommendation.

**14–7. Retention action**

Retention should be considered only in exceptionally meritorious cases when clearly in the best interest of the Army.

*a.* In deciding whether retention should be recommended or approved, the gravity of the offense, related events, and any matters in extenuation, will be considered. The military record of the Soldier before the offense should be considered, as well as prospects for rehabilitation.

*b.* If retention is desired and civil custody exists, such as parole or probation, that would interfere with the Soldier's military duties, the civil authorities will be requested to relinquish such custody during the Soldier's term of military service.

(1) If the civil authorities decline to relinquish custody, as a general rule, the Soldier will be discharged.

(2) The Soldier will also be discharged if the conditions for relinquishment of custody will cause an undue burden to the Army.

000715

**14–8. Action following disposition by domestic courts**

*a.* When discharge is contemplated.

(1) When a Soldier is under military control, the unit commander will take action as specified in the administrative board procedure (see chap 2, sec II), except that the use of the notification procedure (see chap 2, sec I) is authorized if characterization of service under other than honorable conditions is not warranted under paragraph 3–7*c*.

(2) Chapter 2, section III, prescribes additional actions to be taken when a Soldier is confined and the administrative board procedure will be used, except that the use of the notification procedure is authorized if characterization of service under other than honorable conditions is not warranted.

*b.* When board hearing is waived or completed. The separation authority may

(1) Disapprove a recommendation for discharge and direct retention.

(2) Approve a recommendation for retention.

(3) Approve a recommendation for discharge and approve the type discharge certificate recommended by the board or a more favorable one than that recommended. He/she may not direct a discharge of a lesser character than that recommended by the board. When the board has been properly waived, the type of discharge certificate to be issued will be determined per paragraph 14–3.

(4) Approve a recommendation for discharge and suspend execution of the discharge.

**14–9. Procedure for civil court cases in foreign countries**

*a.* Major overseas commanders may approve discharge of Soldiers convicted by a foreign tribunal. This authority may be delegated to a general officer with a judge advocate (JA) on his/her staff. Every action taken in such delegation will state the authority.

(1) When a Soldier is convicted by a foreign tribunal, and the Soldier returns to the United States before initiation or completion of discharge proceedings per this paragraph, discharge proceedings will be initiated or completed per paragraph 14–5. The proceedings will be completed as if the Soldier had been convicted by the domestic court of the United States or its territorial possession. (See paras 14–4 and 14–8.)

(2) The recommendation for discharge will include the items specified in *b*(1) through (4), below. In such cases, the authorities specified in paragraph 1–19 may approve and order discharge under this paragraph if the Soldier has been assigned to their command.

(3) HQDA authorization is required before Soldiers who have completed 18 or more years of active Federal service may be discharged.

(4) This provision is not intended to relieve overseas commanders of their responsibility to promptly initiate and process civil court cases on Soldiers of their command.

*b.* Commanders will forward the board proceedings, or waiver, through channels to the major overseas commander. Cases will be processed through the chain of command to the commander in the United States authorized to approve discharge. In both situations, the recommendation regarding discharge will include—

(1) Information concerning the civil record and military service of the Soldier.

(2) A statement from the court indicating that the Soldier has been initially convicted.

(3) A statement as to the character of discharge desired, including a statement as to whether paragraph 2–4 has been complied with.

(4) A report of the trial proceedings submitted by the official U.S. observer, if any, attending the trial or a transcript of the record of trial, if obtainable.

*c.* Army personnel confined in foreign prisons will not be discharged from military service until the term of imprisonment is completed and they return to the United States.

(1) Normally, Soldiers who are disposed of by a foreign tribunal, but not confined, or who are confined but whose release from confinement is imminent, will be returned to the United States or its territorial possessions for discharge. It is general policy that the Soldier will be returned to CONUS.

(2) Very unusual cases may be forwarded through command channels to Headquarters, Department of the Army (AHRC–EPR–F), 200 Stovall Street, Alexandria, VA 22332–0478, with supporting reasons as to why a Soldier should be authorized discharge in a foreign country. Only most unusual situations will be considered. If discharge in a foreign country is desired, either by the commander or the Soldier concerned, this paragraph and chapter 1, section IX will be complied with before such requests are submitted to HQDA.

*d.* If HQDA authorizes discharge in a foreign country, the overseas commander accomplishing the discharge will inform the nearest U.S. diplomatic or consular mission of such action.

*e.* A Soldier may not be retained in the Service beyond ETS without his/her consent (see para 1–27) to complete board action under chapter 2, section II.

(1) When the Soldier has not requested retention per paragraph 1–27 and it appears that compliance with chapter 2, section II, cannot be accomplished before the Soldier's ETS, the case with full details, will be submitted through channels to Headquarters, Department of the Army (AHRC–EPR–F) 2461 Eisenhower Avenue, Alexandria, VA 22332–0478.

(2) The case will be submitted in time to permit appropriate consideration before the Soldier's ETS. There is no authorization to begin last minute administrative discharge action and then to request special consideration or retention beyond ETS to complete board action.

## 14–10. Pay and allowances
Any questions pertaining to pay and allowances will be referred to DFAS representatives.

## 14–11. Detainers and strength accountabilities
*a. Detainer.*

(1) When a detainer is lodged with civil authorities with the objective of having the Soldier returned to military control upon release from confinement, communication to the civil authorities will clearly show the reason for the detainer. A mere statement that the individual is wanted by the Army may lead to erroneous conclusions. The absence of detailed information may deprive the Soldier of parole consideration. Civil authorities may believe the Soldier is wanted for trial, when, in fact, the Army's only objective is to restore the Soldier to duty.

(2) When a detainer has been lodged with civil authorities, and a decision is later made to accomplish administrative discharge, the civil authorities will be notified, in writing, to remove the detainer and that such detainer be canceled.

(3) Notification will be made when discharge is accomplished. Verbal notification may be made, but must be confirmed in writing at the earliest date.

*b. Strength accountability.*

(1) A Soldier sentenced to confinement for 6 months or more in a domestic, civil, or foreign institution will be dropped from military strength when his/her sentence begins. (See AR 600–8–6.) However, the Soldier's chain of command retains administrative responsibility for processing separation action.

(2) When discharge is approved by the separation authority but suspended due to appellate action (see para 14–6), the Soldier will be administratively reassigned to the nearest Personnel Control Facility (PCF) per AR 600–62 and AR 630–10. The Soldier's MPRJ or local file, as appropriate, and DA Form 201 will be forwarded to the commander of the PCF.

## Section III
## Acts or Patterns of Misconduct

## 14–12. Conditions that subject Soldiers to discharge
Soldiers are subject to action per this section for the following:

*a. Minor disciplinary infractions.* A pattern of misconduct consisting solely of minor military disciplinary infractions. Except as provided in paragraph 11–3*c*, if separation of a Soldier in entry-level status is warranted solely by reason of minor disciplinary infractions, the action will be processed under chapter 11.

*b. A pattern of misconduct.* A pattern of misconduct consisting of one of the following:

(1) Discreditable involvement with civil or military authorities.

(2) Discreditable conduct and conduct prejudicial to good order and discipline including conduct violating the accepted standards of personal conduct found in the UCMJ, Army regulations, the civil law, and time-honored customs and traditions of the Army.

*c. Commission of a serious offense.* Commission of a serious military or civil offense, if the specific circumstances of the offense warrant separation and a punitive discharge is, or would be, authorized for the same or a closely related offense under the MCM.

(1) An absentee returned to military control from a status of absent without leave or desertion may be separated for commission of a serious offense. (See para 1–43 for civil offenses under investigation by foreign authorities.)

(2) Abuse of illegal drugs is serious misconduct.

*(a)* However, relevant facts may mitigate the nature of the offense. Therefore, a single drug abuse offense may be combined with one or more minor disciplinary infractions or incidents of other misconduct and processed for separation under *a* or *b*, above, as appropriate.

*(b)* All Soldiers against whom charges will not be referred to a court-martial authorized to impose a punitive discharge or against whom separation action will not be initiated under the provisions of chapter 9 or section II of this chapter will be processed for separation under *a*, *b*, or *c*, above, as applicable.

*1.* "Processed for separation" means that separation action will be initiated and processed through the chain of command to the separation authority for appropriate action.

*2.* The immediate and intermediate commanders will recommend separation or retention. Recommendations will be made as to characterization of service. (See para 2–2 or 2–4.)

*3.* The separation reason in all separations authorized by this paragraph will be "misconduct-abuse of illegal drugs." Voluntary (self) identification/referral in accordance with AR 600–85, paragraph 3–2, does not require initiation of separation proceedings under this section.

**000717**

(3) Any Soldier convicted of a sexually violent offense at a court-martial, as listed in AR 27–10, paragraph 24–2, but whose sentence did not include a punitive discharge will be processed for separation (see para 14–12c(b)(I)).

## 14–13. Procedures

The administrative board procedures (see chap 2, sec II) will be used; however, the use of the notification procedure (see chap 2, sec I) is authorized if characterization of service under other than honorable conditions is not warranted under paragraph 3–7c.

## 14–14. Separation authority

Commanders specified in paragraph 1–19 are authorized to convene boards and order separation under this chapter.

## 14–15. Commanding officer's report

When the immediate commander determines that separation for acts or patterns of misconduct is in the best interest of the Service he/she will report the fact in memorandum form (see fig 2–5) to the separation authority specified in paragraph 1–19 through the intermediate commander.

## 14–16. Action by intermediate commanders

Intermediate commanders may take one of the following actions in cases of misconduct, except for cases of abuse of illegal drugs:

a. Disapprove the recommendation and direct reassignment of the Soldier to another organization or direct disposition by other means. In case of reassignment, the commanding officer's report will be sent to the new organization commander for information.

b. Approve the commanding officer's recommendation and send the report to the separation authority.

(1) Recommendation will be made as to characterization of service. (See para 2–2 or 2–4.)

(2) Disposition through medical channels is required if the Soldier has an incapacitating physical or mental illness that was the direct or substantial contributing cause of the conduct for which action prescribed in this regulation is being considered, and action under the UCMJ will not be initiated.

c. Recommend separation for unsatisfactory performance if the reason for separation is determined to be a pattern of misconduct caused by the conditions in paragraph 13–2a, and unsatisfactory performance was stated as a basis for separation in the initial memorandum of notification. Commanders exercising special court-martial jurisdiction may disapprove the recommendation relating to misconduct and take further action per paragraph 13–9.

## 14–17. Action by the separation authority

On receiving a recommendation for separation for misconduct, the separation authority may take one of the following actions:

a. Disapprove the recommendation and direct reassignment of the Soldier to another organization. In case of reassignment, the commanding officer's report will be forwarded to the new organization commander for information.

b. Disapprove the recommendation and return the case to the originator for disposition by other means. Include the reasons for considering separation for misconduct inappropriate, or take other appropriate action under this regulation.

c. Disapprove the recommendation relating to misconduct and take action himself/herself.

(1) The case can be referred to the appropriate separation authority (see para 1–19c or d) to determine whether the Soldier should be separated for unsatisfactory performance if the reason for separation is based substantially on any of the conditions described in paragraph 13–2a, and the misconduct is not so serious that a discharge under other than honorable conditions appears appropriate.

(2) Unless unsatisfactory performance was stated as a basis for separation in the initial memorandum of notification, new proceedings per chapter 13 must be initiated to accomplish such separation.

d. Convene a board of officers as prescribed in chapter 2, section II, to determine whether the Soldier should be separated for misconduct.

e. When the board hearing has been properly waived, direct separation of the Soldier for misconduct.

f. When the board hearing has been properly waived, approve separation of the Soldier for misconduct and suspend execution of the separation. (See para 1–18.)

g. Direct that the case be processed through medical channels, if appropriate.

(1) Such disposition is required if the Soldier has an incapacitating physical or mental illness that was the direct or substantial contributing cause of the conduct, and action under the UCMJ is not initiated. A copy of the signed decision by the GCMCA will be included with the records.

(2) Authority to determine that a case will be referred for disability processing instead of other administrative processing will not be delegated.

000718

**Chapter 15**
**Rescinded.**


**Chapter 16**
**Selected Changes In Service Obligations**

**16–1. Order to active duty as a commissioned or warrant officer**

*a.* Soldiers may be discharged for the purpose of—

(1) Being ordered to active duty as a commissioned or warrant officer in any branch of the Armed Forces.

(2) Being ordered to an Active Guard/Reserve (AGR) tour with the Army as a USAR commissioned or warrant officer. The Soldier must agree to serve at least 1 year in AGR status to be eligible for separation under this paragraph.

*b.* Before such discharge, the separation authority (see para 1–19) must have documentary evidence from the proper authority. The evidence must prove that the Soldier will be ordered to AD if discharged from his/her enlisted status. Discharge will be effective the day preceding the date of entry on duty as a commissioned or warrant officer.

*c.* The service of a Soldier discharged per this paragraph will be characterized as honorable unless an entry-level separation is required under chapter 3, section II.

**16–2. Discharge for acceptance into a program leading to a commission or warrant officer appointment**

*a.* Soldiers may be discharged for the purpose of entering a program leading to a commission or warrant officer appointment in any branch of the Armed Forces. This includes—

(1) Reserve Officer Training Corps (ROTC).

(2) Officer Candidate School (OCS).

(3) Other officer accession programs of the USN and USAF that require enlistment in those branches of the Armed Forces.

*b.* Discharge may be approved upon presentation of documentary evidence from the proper authority showing that the Soldier has been accepted for an officer commissioning or appointment program, subject to discharge from his/her Army enlisted status.

(1) The Soldier must meet the service requirements prescribed in *c*(1)(*a*), below. Discharge is contingent upon enlistment in the appropriate branch of the Armed Forces and entry into an officer accession program.

(2) Soldiers accepted for admission to any Service Academy or Academy Preparatory School are not eligible for discharge under this paragraph. (See AR 612–205.)

*c.* Soldiers may be discharged for the purpose of entry into Army Senior ROTC as scholarship cadets or non-scholarship advanced course cadets, with a course of study leading to baccalaureate or higher degree.

(1) To qualify for discharge under this section, Soldiers must

(*a*) Have completed at least 2 years of AD, if on their initial enlistment, as well as 3 months of AD for every 1 month of specialized training received (for example, MOS or language) as of the date of discharge. Soldiers on their second and subsequent enlistment must have completed 3 months of AD for every 1 month of the most recent specialized training received. Waiver of the service obligation for training may be granted by Headquarters, Department of the Army (AHRC–EPT), 2461 Eisenhower Avenue, Alexandria, VA 22332–0478, on a case-by-case basis.

(*b*) Not be under suspension of favorable personnel actions per AR 600–8–2.

(*c*) Meet ROTC procurement medical fitness standards (see AR 40–29 and AR 40–501), specified academic and administrative criteria (see AR 145–1), and any other prerequisites for ROTC enrollment prescribed by AR 145–1 or established by the U.S. Army ROTC Cadet Command.

(*d*) Provide a statement from an admissions official of the school they desire to attend indicating acceptance for enrollment and specifying the registration date for the pertinent school term.

(*e*) Provide a statement from the professor of military science (PMS) at the school they desire to attend indicating acceptance for ROTC participation. The PMS statement will also verify that the Soldier is qualified for the ROTC program and that academic and administrative waivers, if any, have been granted.

(*f*) For scholarship winners, provide a copy of the HQ ROTC Cadet Command notification of award of the scholarship. Soldiers who are conditional scholarship winners must furnish documentary evidence from HQ ROTC Cadet Command that they are fully qualified prior to requesting discharge. Scholarship recipients require no further review or documentation to qualify for discharge.

(*g*) Unless a 3- or 4-year-scholarship winner, have satisfactorily completed or received credit for at least 2 years of college work.

(2) Before approving discharge under this section, the separation authority (see para 1–19) will ensure that the Soldier

*(a)* Meets the criteria stipulated in *c*(1), above.

*(b)* Has served honorably and possesses officer attributes (such as, leadership potential, exemplary conduct, and appearance).

*(c)* Understands that the discharge is contingent upon enlistment in the USAR in the grade of cadet for assignment to the USAR Control Group (ROTC) and execution of the ROTC student contract (scholarship or non-scholarship).

*(d)* Has been counseled that breaching the terms of the USAR enlistment contract or ROTC student contact will subject him/her to involuntary order to AD to complete the contractual obligation and, if a scholarship cadet may, in lieu of AD, require repayment of scholarship benefits received.

*d.* Discharge will be effective the day preceding enlistment in the appropriate branch of the Armed Forces as stated in paragraph *a* and *b*, above, and the day preceding enlistment in the USAR as stated in *c*, above. Discharge documents will not be delivered to the Soldier until verification is made that such enlistment has taken place. For *a*, *b*, and *c*, above, discharge normally will not take place more than 30 days before the starting date of the school term or officer training program for which the Soldier has been accepted.

*e.* The service of Soldiers discharged under this paragraph will be characterized as honorable.

## 16–3. Discharge for the purpose of immediate enlistment or re-enlistment

*a.* Reserve Component Soldiers who enlist in the RA, and RA Soldiers who re-enlist under the provisions of AR 601–280, will be discharged.

*b.* Soldiers so discharged will be enlisted or re-enlisted on the day following discharge. The discharge certificate will not be delivered to the Soldier until after enlistment or re-enlistment is accomplished.

(1) Commanders specified in paragraph 1–19 are authorized to order discharge under this paragraph.

(2) The service of a Soldier discharged per this paragraph will be characterized as honorable.

## 16–4. Non-retention on active duty

Soldiers denied or ineligible for continued active duty service may be separated, upon request, as provided below:

*a.* Locally imposed bar to re-enlistment. USAR AGR Soldiers who perceive they will be unable to overcome a field commander's bar to re-enlistment imposed by AR 140–111 may request voluntary separation. This provision does not apply to RA Soldiers.

*b.* Declination of continued service. RA Soldiers serving on a second or subsequent enlistment who refuse to take action to meet military service remaining requirements by signing DA Form 4991–R pursuant to AR 601–280 may request voluntary separation.

*c.* Separation under this paragraph will occur no later than 90 days after the Soldier receives pre-separation counseling as required by law (see 10 USC 1142), which must be scheduled as soon as separation is approved. Any existing service obligation that cannot be fulfilled by the separation date will be waived, and overseas tours will be curtailed to the extent necessary to permit separation.

*d.* Nothing in this paragraph precludes separation of a Soldier for another reason authorized by this regulation.

*e.* Commanders specified in paragraph 1–19 are authorized to approve or deny requests for separation under this paragraph. Approved requests for separation cannot be withdrawn.

*f.* The criteria in chapter 1, section VII, will govern whether the Soldier is released from active duty, with transfer to the IRR, or discharged.

*g.* The service of Soldiers separated under this paragraph will be characterized as honorable.

## 16–5. Overseas returnees

Commanders specified in paragraph 1–19 are authorized to order separation of Soldiers returned to the United States, a possession of the United States, or area of residence in which enlisted or ordered to active duty.

*a.* Soldiers in the United States or area of residence on TDY or emergency leave from overseas organization who, upon completion of TDY or leave, are within 60 days of ETS, will be discharged or released as appropriate. Those who desire to extend or re-enlist can do so as an exception to policy in AR 601–280, provided they are otherwise eligible.

(1) Affected Soldiers will be reassigned to a STP nearest their home for separation processing. Separation processing will not be accomplished before completion of leave or TDY. Records and allied papers will be forwarded to such STP.

(2) Affected Soldiers will be instructed that upon completion of leave or TDY they will report to the STP to which assigned for separation processing.

*b.* This paragraph is not to be construed as authority for early return. It authorizes separation for the purpose stated only, to preclude nonproductive reassignments for short periods of time.

*c.* The service of a Soldier separated under this paragraph will be characterized as honorable.

## 16–6. Early separation due to disqualification for duty in MOS

To preclude nonproductive utilization for short periods of time, Soldiers who become medically or administratively

**000720**

disqualified for duty in their primary, secondary, and additional MOS, and who do not intend to re-enlist, may be separated prior to expiration of term of service. The following criteria apply—

*a.* Soldiers with 6 months or less remaining until expiration of term of service may be considered for separation under this paragraph.

*b.* Separation is voluntary. The Soldier must sign a statement that he/she is willing to accept early separation.

*c.* The Soldier cannot be reclassified into another MOS without retraining. Excluded from this category are individuals who can be retrained within a period of 30 days either by on-the-job training or formal training conducted at the installation to which they are currently assigned.

*d.* For medical disqualification, the Soldier must be determined by appropriate medical authority to have assignment limitation due to physical impairment. Such impairment must prevent duty in the Soldier's awarded MOS for more than 60 days.

*e.* For administrative disqualification, the disqualification must not be the Soldier's fault. Grounds for separation include deletion of the Soldier's MOS from the Army inventory, loss of security clearance required to perform duties normally related to the MOS, and disqualification from the Personnel Reliability Program. (See AR 50–5.)

*f.* This paragraph does not apply to the following:

(1) Personnel who have a medical condition that warrants processing under AR 635–40.

(2) Reserve Component personnel ordered to IADT.

(3) Soldiers who lose MOS qualifications due to their own misconduct. (See AR 614–200, paragraph 3–18.)

*g.* Separation under this paragraph will not occur more than 3 months before the date of ETS.

*h.* Commanders specified in paragraph 1–19 are authorized to order the separation of eligible Soldiers under this paragraph.

*i.* The service of Soldiers separated per this paragraph will be characterized as honorable.

## 16–7. Early separation due to reduction in force, strength limitations, or budgetary constraints

Soldiers may be separated prior to expiration of enlistment or fulfillment of active duty obligation when specifically authorized as set forth below.

*a.* When authorization limitations, strength restrictions, or budgetary constraints require the RA or Reserve Component (RC) active duty enlisted force to be reduced in number, the Secretary of the Army, or his/her designee, may authorize voluntary or involuntary early separation. Statutory authority for Secretarial separation direction is 10 USC 1169 or 10 USC 1171 for RA Soldiers, and 10 USC 12313(a) or 10 USC 12681 for RC Soldiers. (See *g*, below, for release from active duty during time of war or national emergency.)

*b.* Commander, USA HRC (for RA) and Chief, NGB; Chief, Army Reserve; and Commander, USA HRC (for RC) will implement the Secretarial decision by issuing separation instructions pertaining to a specific class or category of Soldiers. For purposes of post-service benefits, early separation under this paragraph is considered to be for the convenience of the Government.

*c.* Soldiers to whom this paragraph applies will be notified of early separation through appropriate channels by commanders specified in paragraph 1–19. Notification will be based upon information and instructions furnished by USA HRC/NGB/OCAR implementation instructions.

*d.* Soldiers separated under this paragraph will be discharged or released from active duty, as appropriate. Specific separation dates will be as prescribed in USA HRC/NGB/OCAR implementation instructions.

*e.* Soldiers who are within 2 years of qualifying for retirement per chapter 12 on the scheduled separation date will not be processed under this paragraph unless directed by the Secretary of the Army.

*f.* The service of Soldiers separated under this paragraph will be characterized as honorable, except when an uncharacterized description of service is required for Soldiers in entry-level status, per chapter 3, section II.

*g.* In time of war or national emergency declared by Congress or the President, other than during a period of demobilization or reduction in force, a Soldier who is a member of the RC may be released from active duty (other than for training) if—

(1) Pursuant to the Soldier's request, a board of officers composed of at least three members senior in rank to the Soldier and at least one reserve component member, appointed and conducted in accordancy with AR 15–6, and convened by the GCMCA (see para 1–19*a*), recommends the release and the GCMCA approves it.

(2) The Soldier does not request that a board be convened.

(3) The release is authorized by another provision of regulation or law.

## 16–8. Separation of Soldiers in warrior transition units

*a.* Hospital commanders who are separation authorities (see para 1–19) may order separation of those Soldiers assigned to warrior transition units who have less than 3 months to serve to ETS following completion of hospitalization. Soldiers must sign a statement that they are willing to accept separation under this paragraph. Reserve Component personnel ordered to IADT are not eligible for separation under this paragraph.

000721

*b.* The service of Soldiers separated per this paragraph will be characterized as honorable.

### 16–9. Separation of personnel assigned to installations or units scheduled for inactivation or permanent change of station

Soldiers of all components assigned to units scheduled for PCS, inactivation or demobilization, or to installations scheduled for inactivation, who cannot be effectively utilized within other units at the same station, will be separated from service as set forth below.

*a.* Soldiers having 90 days or less to serve beyond effective date of inactivation or change of station may be separated from AD by a commander specified in paragraph 1–19, provided the Soldier desires separation. Separation will be accomplished during the 30–day period preceding the effective date of inactivation or change of station, but in no case will a Soldier be separated more than 90 days before ETS.

*b.* Soldiers whose normal term of service expires during the 90–day period preceding the effective date of activation or change of station may be separated by a commander specified in paragraph 1–19 any time during the 90–day period, provided the Soldier desires separation.

*c.* Combining this paragraph with other separation programs to effect separation more than 90 days before ETS is not authorized.

*d.* Overseas commanders returning personnel to the United States for separation per this authority may add normal travel time required to the 90 days. However, care will be taken to ensure that Soldiers do not arrive in the United States with more than 90 days remaining in their term of service. This paragraph is not to be construed as authority for early return. It authorizes separation only to prevent nonproductive reassignments for short periods of time.

*e.* The service of Soldiers separated per this paragraph will be characterized as honorable.

### 16–10. Holiday early transition program

The Christmas/New Year holiday period is established by HQDA. The specific holiday early transitioning schedule is announced in a MILPER message.

*a.* Soldiers may be considered for early release prior to the expiration of their terms of service in conjunction with the Christmas/New Year holiday period when specifically authorized and subject to the following criteria:

(1) Early transition normally begins on 1 December, or the first Monday thereafter, and extends to a date preceding Christmas, approximately one week, sufficient to permit the Soldier adequate travel time. Soldiers whose established ETS dates fall between the first Monday in December and the announced date in January that terminates the holiday period are normally eligible for early transition.

*(a)* Holiday early release is voluntary. Soldiers who do not volunteer for early release will be required to sign a statement that they are not willing to accept separation under this paragraph.

*(b)* A Soldier who declines separation in writing may subsequently change his/her mind concerning early separation under this paragraph. The separation authority, based on the circumstances of the case and the best interest of the Army, will determine if the Soldier is to be retained, as previously requested, or separated.

(2) Transition leave (see AR 600–8–10) is authorized in conjunction with the holiday early release program provided the immediate commander approves. Soldiers must have an original ETS within the program dates.

*(a)* Transition leave cannot be used to place a Soldier in the program.

*(b)* Soldiers with AWOL or other time to be made good who have an adjusted ETS (that is ETS adjusted for AWOL) that falls within the program dates, are eligible.

(3) Soldiers who are permanent resident aliens currently serving a 3–year enlistment who desire to fulfill naturalization requirements through military service should not volunteer for this early-transition program. (See para 4–2*b*.)

(4) The following personnel are not eligible for early release under this program:

*(a)* Reserve Component Soldiers performing ADT under special training programs or serving fixed tours of active duty in support of the Army.

*(b)* Soldiers scheduled for retirement.

*(c)* Soldiers under suspension of favorable personnel actions per AR 600–8–2.

*(d)* Soldiers whose normal ETS does not fall between the first Monday in December and the date in January that terminates the holiday period.

*b.* Overseas commanders returning Soldiers to the United States for separation under this paragraph may add normal travel time to the Soldier's target early-release date to permit the orderly transition from active duty. Care will be taken to ensure that Soldiers do not arrive in the United States with more than 10 days remaining in their term of service.

*c.* This paragraph is not to be construed as authority for early return. It authorizes early transition in conjunction with the holiday period only.

*d.* Combining this paragraph with other early-release programs to effect separation more than 90 days before ETS is not authorized.

*e.* The service of Soldiers separated per this paragraph will be characterized as honorable.


# Chapter 17
# Instruction In Benefits of an Honorable Discharge

### 17–1. Purpose of instruction

*a.* The high rate of enlisted personnel receiving other-than-honorable discharges is a concern of commanders at all levels. The consequences of receiving an other-than-honorable discharge can have a lasting adverse effect on the individual Soldier. Every effort must be made to ensure that Soldiers are made aware of such consequences. This chapter prescribes a program of instruction concerning the benefits derived from receiving an honorable discharge from the Army. The program affects all active Army enlisted personnel, Reserve Component (ARNGUS), and USAR enlisted personnel on active duty 180 days or more.

*b.* This instruction should assist commanders in their efforts to minimize misconduct. Many Soldiers gain the false impression that an unfavorable discharge can be easily recharacterized by petitioning the Army discharge review board. This is not the case, since only a small percentage of such actions have been acted upon favorably. Many Soldiers can be discouraged from conduct that warrants an unfavorable discharge.

### 17–2. Presentation of instruction
Commanders will ensure that this instruction is presented in a manner that will create the most lasting impression on each Soldier who receives it.

### 17–3. Contents of instruction
The instruction will include a comprehensive explanation of the following:

*a.* The types of discharge certificates.

*b.* The basis for issuance of each type of certificate.

*c.* The possible effects of the various certificates on re-enlistment, civilian employment, veterans' benefits, and related matters.

*d.* The likelihood that the Soldier will be successful in any attempt to have the character of his/her discharge changed.

### 17–4. Time of instruction
This instruction will be given to enlisted personnel upon entry into the Service or within 60 days thereafter. It will be given again—

*a.* Upon completion of 6 months of service.

*b.* After the second article 15 (company grade) or first field grade article 15 in an enlistment.

*c.* After any court-martial in which the Soldier is not discharged, first positive drug test, and so forth.

### 17–5. Recording
The DA Form 2–1 (Personnel Qualifications-Part II) of each individual receiving instruction in the benefits of an honorable discharge will be annotated in item 19 (Specialized Training) as follows: "UCMJ (date) and Bfts of Hon Disch (date)."


# Chapter 18
# Failure to Meet Weight Control Standards

### 18–1. Policy
Soldiers who fail to meet the body fat standards set forth in AR 600–9 are subject to involuntary separation per this chapter when such condition is the sole basis for separation.

### 18–2. Procedures

*a.* Separation proceedings may not be initiated under this chapter until the Soldier has been given a reasonable opportunity to meet the body fat standards, as reflected in counseling or personnel records.

(1) Soldiers who have been diagnosed by health care personnel as having a medical condition that precludes them from participating in the Army body fat reduction program will not be separated under this chapter.

(2) If there is no underlying medical condition and a Soldier enrolled in the Army Weight Control Program fails to make satisfactory progress in accordance with AR 600–9, separation proceedings will be considered.

(3) Initiation of separation proceedings is required for Soldiers who fail to meet body fat standards during the 12–month period following removal from the program, provided no medical condition exists.

*b.* Separation action under this chapter will not be initiated against a Soldier who meets the criteria for separation under other provisions of this regulation. For example, a Soldier beyond entry-level status who, wholly apart from failure to meet body fat standards, is an unsatisfactory performer, will be processed for separation under the provisions of chapter 13.

*c.* The notification procedure (see chap 2, sec I) will be used for separation under this chapter.

*d.* The provisions of chapter 1, section VII, will govern whether the Soldier will be released from AD with transfer to IRR or be discharged. See paragraph 1–11 for additional instructions on ARNGUS and USAR personnel.

*e.* The service of those separated per this chapter will be characterized as honorable, unless an uncharacterized description of service is required for Soldiers in entry-level status.

*f.* Except as provided in paragraph 1–19f, commanders specified in paragraph 1–19 are authorized to order separation under this chapter.

## Chapter 19
## Qualitative Management Program

### Section I
### General

### 19–1. General

*a.* This chapter contains policies and procedures for voluntary and involuntary separation, for the convenience of the Government, of RA NCOs and USAR NCOs serving in AGR status, under the QMP.

*b.* The service of a Soldier discharged under this chapter will be characterized as honorable.

### 19–2. Policy

*a.* NCOs whose performance, conduct, and/or potential for advancement do not meet Army standards, as determined by the approved recommendations of HQDA centralized selection boards responsible for QMP screening, will be denied continued service.

*b.* The QMP is not intended as a substitute, and does not relieve commanders of the responsibility, for initiation of separation proceedings under other provisions of this regulation when required or appropriate.

### 19–3. Objectives
The QMP is designed to:

*a.* Enhance the quality of the career enlisted force.

*b.* Selectively retain the best qualified Soldiers.

*c.* Deny continued service to nonproductive Soldiers.

*d.* Encourage Soldiers to maintain their eligibility for further service.

### 19–4. QMP applicability

*a.* Except as indicated in *b*, below, the QMP applies to RA and USAR AGR NCOs in the grades of SSG through CSM/SGM.

*b.* The QMP does not apply to Soldiers who—

(1) Hold the grade of SGT and below.

(2) Have an approved retirement application.

(3) Have been selected for QMP by a previous board and retained on active duty, provided no new bases for QMP were documented since the earlier retention determination.

### 19–5. Implementation
The QMP is implemented by the Commander, USAEREC, for RA NCOs; the Commander, USA HRC (St. Louis, MO) for USAR AGR NCOs. Mailing addresses for QMP matters are:

*a.* RA: Commander, USAEREC (PCRE-RP-Q), 8899 E. 56th St., Indianapolis, IN 46249–5301.

*b.* USAR AGR: Commander, USA HRC (ARPC–ARE–S), 1 Reserve Way, St. Louis, MO 63132–5200.

000724

## Section II
## Qualitative Screening

### 19–6. Screening procedures

*a.* Screening for QMP is accomplished by HQDA boards that may be convened for other purposes as well, such as promotion selection at USAEREC (RA) and USA HRC (USAR AGR), St. Louis, MO. Board schedules and QMP zones of consideration are announced by electronic message.

*b.* The appropriate board reviews the performance portion (P-fiche) of the OMPF, Personnel Qualification Record (DA Forms 2A and 2–1 or Enlisted Record Brief produced by SIDPERS), official photograph, and other authorized documents pertaining to Soldiers in the QMP zone of consideration. This material forms the basis for the board's evaluation of the Soldier's past performance and potential for continued service, leading to a determination of whether the Soldier does or does not warrant retention.

### 19–7. Selection criteria

QMP selection criteria include, but are not limited to—

*a.* Moral or ethical conduct incompatible with the values of the NCO corps and the Army ethic.

*b.* Lack of potential to perform NCO duties in current grade.

*c.* Decline in efficiency and performance over a continuing period, as reflected by noncommissioned officer evaluation report or failure of Noncommissioned Officer Education System (NCOES) courses.

*d.* Recent or continuing disciplinary problems, as evidenced by conviction by court-martial, nonjudicial punishment, or administrative reprimand.

*e.* Other discriminators such as imposition of a field commander's bar to re-enlistment, inability to meet physical fitness standards, and failure to comply with requirements of the Army body composition program.

### 19–8. Approval authority

The DCS, G–1, or his/her designee, is authorized to approve the recommendations of QMP boards. The DCS, G–1, or his/her designee, is also the authority for separation under this chapter.

## Section III
## Soldier Notification and Option Provisions

### 19–9. Notification memorandum

*a.* Soldiers selected for denial of continued service under the QMP are notified by individually addressed memorandums prepared and dispatched by Commander, USAEREC (RA) and Commander, USA HRC (USAR AGR). Notification memorandums are placed in sealed envelopes and forwarded by transmittal memorandum to the installation, overseas, or other appropriate commander, together with administrative instructions for further processing.

(1) The Soldier is also furnished a copy of the performance portion (P-fiche) of his/her OMPF as well as a listing of those documents indicating areas of deficiency or weakness that most significantly contributed to the selection board's decision to deny the Soldier continued service under the QMP.

(2) The responsible commander expeditiously forwards the notification memorandum by memorandum to the first LTC or higher commander in the Soldier's chain of command for further action.

(3) The installation or other commander retains responsibility for overseeing subsequent processing of the action and may utilize the servicing career counselor, legal advisor, or other appropriate official for program control functions such as monitoring the Soldier notification and option selection process.

(4) Detailed guidance is included in administrative instructions provided by Commander, USAEREC (RA) and Commander, USA HRC (USAR AGR).

*b.* Upon receipt of the notification memorandum, the LTC or higher commander expeditiously presents the notification to the Soldier and counsels him/her on the ramifications. Counseling must be accomplished in writing and must stipulate that the Soldier has been informed that he/she is in a non-promotable status, is stabilized in assignment, and understands the options available.

### 19–10. Soldier options

The Soldier and commander complete DA Form 4941 (Statement of Options, Qualitative Management Program) within 7 days of receipt of the QMP notification memorandum, in accordance with administrative instructions furnished by Commander, USAEREC (RA) and Commander, USA HRC (USAR AGR). (This form is available on the APD Web site at http://www.apd.army.mil.)

### 19–11. Appeal provisions

*a.* A Soldier denied continued service under the QMP may appeal the determination and request retention on active

000725

duty on the basis of improved performance and/or presence of material error in the Soldier's record when reviewed by the selection board.

(1) A Soldier may submit only one appeal, and requests for reconsideration of denied appeals are not authorized. The Soldier may submit any relevant material in support of the appeal.

(2) Material error criteria and other appeal guidelines are included in administrative instructions provided to the appeals board by Commander, USAEREC (RA) and Commander, USA HRC (USAR AGR).

*b.* Suspense for appeals submission is as follows:

(1) RA Soldiers must submit their appeals to their commanders within 60 days of completion of DA Form 4941.

*(a)* Each commander in the chain of command, through the GCMCA or general officer commander, will add substantive comments regarding the Soldier's performance and potential and recommend approval or disapproval of the appeal.

*(b)* The command will complete comments and forward the appeal to CDR, USAEREC, within 30 days of receipt from the Soldier.

(2) Because of geographical separation and limitations on access to commanders and legal advisors, USAR AGR Soldiers are granted a maximum of 90 days from completion of DA Form 4914 to submit their appeals to their chain of command. Commander memorandums, with comments and recommendations, must reach CDR, USA HRC, within 30 days of receipt of the Soldier's appeal

*c.* A commander in the grade of LTC or higher may submit an appeal on behalf of a Soldier selected for QMP on the basis of the Soldier's current performance and potential. Such an appeal must be based on the commander's judgment that the Soldier merits retention after comparing the Soldier's current performance with the documents cited as grounds for the denial of continued service.

(1) A commander's appeal is separate and distinct from the Soldier's own appeal since it is based on different criteria.

(2) Commander appeals must be processed through the Soldier's chain of command and must reach USAEREC (RA) and USA HRC (USAR AGR) within 120 days of the date that the Soldier is notified of QMP selection.

*d.* Appeals are considered by QMP appeals boards normally conducted in conjunction with HQDA centralized promotion selection boards convened at USAEREC (RA) and USA HRC, St. Louis, MO (USAR AGR). The appeals board will consider all information considered by the QMP board and all information included in the appeal under the criteria listed in paragraph 19–3.

(1) The mere fact that a Soldier's performance has improved or that the Soldier's file contains material error is not necessarily sufficient to overcome the reason for QMP selection. The appeal board may determine that the reason for QMP selection still applies even in light of the improved performance or correction of an error.

(2) Successful appeals result in removal of the denial of continued service determination.

## Section IV
## Separation Provisions

### 19–12. Involuntary discharge

*a.* Except as otherwise provided in this section, Soldiers who choose not to appeal the QMP selection for denial of continued service, or whose appeal is denied, will be involuntarily discharged. Soldiers who elect to appeal but fail, without compelling justification, to submit the appeal within the time prescribed by paragraph 19–11*b*, will also be involuntarily discharged. Such discharge will occur 90 days after the Soldier receives pre-separation counseling as required by law (10 USC 1142), which may be scheduled before a final determination of discharge has been made or as soon as possible after a final determination has been made.

*b.* The provisions of this regulation pertinent to counseling and rehabilitative transfer (see para 1–16), notification of separation recommendation (see chap 2, sec I), and hearing before an administrative separation board (see chap 2, sec II), do not apply to involuntary discharge under this chapter.

### 19–13. Voluntary separation

*a.* Except as otherwise provided in this section, Soldiers who choose not to appeal may request voluntary discharge. Such discharge will occur 90 days after the Soldier receives pre-separation counseling as required by law (10 USC 1142). Pre-separation counseling must be scheduled as soon as the Soldier chooses the voluntary discharge option (DA Form 4941). Requests for voluntary discharge, once submitted, may not be withdrawn.

*b.* AGR Soldiers to whom *c,* below, do not apply, may request voluntary discharge. Soldiers in this category may not request release from active duty (REFRAD).

*c.* AGR Soldiers with at least 17 years, 9 months, but less than 20 years, of qualifying service for nonregular retired pay (10 USC 12732) at the time of notification of QMP selection, who choose not to appeal or whose appeal is denied, and whose ETS occurs prior to the 20-year point, may extend their enlistments for the minimum period required to qualify for nonregular retirement as prescribed by 10 USC 1176(b). AGR Soldiers with 20 years or more of qualifying

000726

service for non-regular retired pay may elect voluntary REFRAD with concurrent transfer to the Retired Reserve. Such REFRAD will occur 90 days after the Soldier receives pre-separation counseling.

## 19–14. Expiration of term of service

*a.* Unless ineligible to extend for a reason other than QMP selection (for example local bar to re-enlistment or approved separation under another chapter of this regulation), Soldiers with less than 120 days to ETS at the time of notification of QMP selection may have their enlistments extended a sufficient amount of time to permit processing an appeal.

*b.* Unless another basis of separation exists, and except as provided in paragraph 19–15, Soldiers with less than 120 days to ETS at the time of decision not to appeal, or denial of appeal, will not be discharged prior to ETS. Soldiers in this category will be discharged at ETS under the provisions of chapter 4.

## 19–15. Active duty retirement

*a.* Soldiers with 20 or more years of active Federal service at the time of notification of QMP selection, who choose not to appeal or where appeal is denied, may apply for voluntary retirement under the provisions of chapter 12 of this regulation. Retirement must not occur earlier than 90 days or later than 180 days from the date the Soldier selects the retirement option (DA Form 4941) or the appeal is denied. Soldiers who decline to apply for retirement are subject to discharge in accordance with paragraphs 19–12 or 19–14.

*b.* Soldiers with a minimum of 17 years, 9 months of active Federal service at the time of notification of QMP selection, who choose not to appeal, will be retained to 20–year retirement eligibility upon request.

(1) Those who appeal will also be retained to retirement eligibility upon request if the appeal is denied. Soldiers in this category must apply for retirement (see chap 12) to be effective no later than the first day of the month following the month in which they complete 20 years of active Federal service.

(2) Soldiers with at least 17 years, 9 months of active Federal service at the time of QMP selection notification whose ETS occurs prior to the 20–year point may have their enlistments extended to allow them to reach retirement eligibility.

*c.* Consistent with 10 USC 1176(a), RA Soldiers whose appeals are denied and who have 18 or more years of active Federal service on the designated date of separation will be retained to 20-year retirement eligibility upon request.

**Appendix A**
**References**

**Section I**
**Required Publications**

**AR 40–501**
Standards of Medical Fitness (Cited in paras 1–32*a*, 1–33*b*, 4–2*c*, 5–11*b*(2), 5–12*a*(2), 5–17*a*(8), 5–17*b*, 7–15*h*(2), 7–16*g*, 7–17*b*(5), 8–6*a* and *c*, 10–6, 12–28*c*, 12–28*d*, 16–2*c*(1)(c).)

**AR 600–8–105**
Military Orders (Cited in paras 1–11*a*, 4–2*k*(1), 7–15*e*(2), and 12–18*a*.)

**AR 600–85**
The Army Substance Abuse Program (Cited in paras 1–14*g*, 1–21*a*(5), 2–2*c*(3), 2–4*b*(2), 2–6*h*, 3–8*a*, 3–8*g*, 9–1*c*(2). 9–1*e*, 9–4, 9–7, 14–3*c*(2), and 14–12*c*(2)3.)

**AR 635–5**
Separation Documents (Cited in paras 1–29*f*, 3–2, 3–3, 3–15, 7–15*f*(5), 12–21, and 12–24*c*.)

**AR 635–5–1**
Separation Program Designators (SPD) Codes (Cited in para 3–13.)

**AR 635–10**
Processing Personnel for Separation (Cited in paras 1–14*a*, 1–20*a*, 1–45, 3–14*b*, 4–6, 6–8*b*(2)3, 6–8 *d*(3), 7–10*a*, 12–13*a*(4), 12–13*b*(1), 12–20*a*, 12–20*b*, 12–21, 12–24*e*, 12–24*g*.)

**AR 635–40**
Physical Evaluation for Retention, Retirement or Separation (Cited in paras 1–17*b*(4), 1–19*f*, 1–29*a*(2), 1–30, 1–33*b*(1), 1–35*b*(6), 4–2*c*, 5–11*e*, 5–12*d*, 5–13*a*, 5–13*c*, 5–17*a*, 5–17*a*(9), 6–6*b*(4), 7–15*h*(2), 7–16*g*, 8–6*c*, and 16–6*f*(1).)

**DA Pam 600–8–11**
Military Personnel Office Separation Processing Procedures (Cited in paras 4–2*f*, 6–8*f*, 12–9*a*, and 12–20*a*.)

**Section II**
**Related Publications**
A related publication is a source of additional information. The user does not have to read it to understand this publication. The United States Code is available at http://www.gpoaccess.gov/uscode/index.html. Uniform of Code of Military Justice is available at http://www.au.af.mil/au/awc/awcgate/ucmj.htm.

**AR 15–6**
Procedures for Investigating Officers and Boards of Officers

**AR 15–80**
Army Grade Determination Review Board and Grade Determinations

**AR 25–55**
The Department of the Army Freedom of Information Act Program

**AR 25–400–2**
The Army Records Information Management System (ARIMS)

**AR 27–40**
Litigation

**AR 27–50/SECNAVINST 5820.4G**
Status of Forces Policies, Procedures, and Information

**AR 40–3**
Medical, Dental, and Veterinary Care

000728

**AR 40–29**
Medical Examination of Applicants for United States Service Academies, Reserve Officer Training Corps (ROTC) Scholarship Programs, Including Two- and Three-Year College Scholarship Programs (CSP), and the Uniformed Services University of the Health Sciences (USUHS)

**AR 40–400**
Patient Administration

**AR 50–5**
Nuclear Surety

**AR 135–18**
The Active Guard Reserve (AGR) Program

**AR 135–91**
Service Obligations, Methods of Fulfillment, Participation Requirements, and Enforcement Procedures

**AR 135–175**
Separation of Officers

**AR 135–178**
Enlisted Administrative Separations

**AR 140–111**
U.S. Army Reserve Reenlistment Program

**AR 145–1**
Senior Reserve Officers' Training Corps Program: Organization, Administration, and Training

**AR 190–9**
Absentee Deserter Apprehension Program and Surrender of Military Personnel to Civilian Law Enforcement Agencies

**AR 190–45**
Law Enforcement Reporting

**AR 195–2**
Criminal Investigation Activities

**AR 340–21**
The Army Privacy Program

**AR 350–1**
Army Training Leader Development

**AR 380–67**
The Department of the Army Personnel Security Program

**AR 600–4**
Remission or Cancellation of Indebtedness

**AR 600–8–2**
Suspension of Favorable Personnel Actions (Flags)

**AR 600–8–6**
Personnel Accounting and Strength Reporting

**AR 600–8–10**
Leaves and Passes

**000729**

**AR 600–8–14**
Identification Cards for Members of the Uniformed Services, Their Family Members, and Other Eligible Personnel

**AR 600–8–19**
Enlisted Promotions and Reductions

**AR 600–8–22**
Military Awards

**AR 600–8–24**
Officer Transfers and Discharges

**AR 600–8–104**
Military Personnel Information Management/Records

**AR 600–9**
The Army Weight Control Program

**AR 600–20**
Army Command Policy

**AR 600–25**
Salutes, Honors, and Visits of Courtesy

**AR 600–43**
Conscientious Objection

**AR 600–62**
United States Army Personnel Control Facilities and Procedures for Administering Assigned and Attached Personnel

**AR 600–110**
Identification, Surveillance, and Administration of Personnel Infected with Human Immunodeficiency Virus (HIV)

**AR 601–210**
Active and Reserve Components Enlistment Program

**AR 601–280**
Army Retention Program

**AR 612–201**
Initial Entry/Prior Service Trainee Support (RCS MILPC–17(R1))

**AR 612–205**
Appointment and Separation of Service Academy Attendees

**AR 614–30**
Overseas Service

**AR 614–200**
Enlisted Assignments and Utilization Management

**AR 630–10**
Absence Without Leave, Desertion, and Administration of Personnel Involved in Civilian Court Proceedings

**AR 670–1**
Wear and Appearance of Army Uniforms and Insignia

**DA Pam 600–8**
Management and Administrative Procedures

000730

**DOD 7000.14–R (Volume 7A)**

Department of Defense Financial Management Regulations (Military Pay Policy and Procedures—Active Duty and Reserve Pay) (Available at http://www.dtic.mil/whs/directives.)

**DODD 6490.1**

Mental Health Evaluations of Members of the Armed Forces (Available at http://www.dtic.mil/whs/directives.)

**DODI 1332.14**

Enlisted Administrative Separations (Available at http://www.dtic.mil/whs/directives.)

**DODI 1332.29**

Eligibility of Regular and Reserve Personnel for Separation Pay (Available at http://www.dtic.mil/whs/directives.)

**DODI 1332.30**

Separation of Regular and Reserve Commissioned Officers (Available at http://www.dtic.mil/whs/directives.)

**DODI 1332.40 (obsolete)**

Separation Procedures for Regular and Reserve Commissioned Officers (Available at http://www.dtic.mil/whs/directives.)

**JFTR**

Joint Federal Travel Regulations (Available at http://www.dtic.mil/perdiem/trvlregs.html.)

**MCM 2009**

Manual for Courts-Martial, 2009 (Available at http://www.apd.army.mil/pdffiles/mcm2002.pdf.)

**NGR 600–200**

Enlisted Personnel Management (Available at http://www.ngbpdc.ngb.army.mil/arngfiles.asp.)

**UCMJ, Art. 14**

Delivery of Offenders to Civil Authorities (Available at http://www.au.af.mil/au/awc/awcgate/ucmj.htm.)

**UCMJ, Art. 15**

Commanding Officer's Non-Judicial Punishment (Available at http://www.au.af.mil/au/awc/awcgate/ucmj.htm.)

**UCMJ, Art. 27**

Detail of Trial Counsel and Defense Counsel (Available at http://www.au.af.mil/au/awc/awcgate/ucmj.htm.)

**UCMJ, Art. 31**

Compulsory Self-Incrimination Prohibited (Available at http://www.au.af.mil/au/awc/awcgate/ucmj.htm.)

**UCMJ, Art. 39**

Sessions (Available at http://www.au.af.mil/au/awc/awcgate/ucmj.htm.)

**UCMJ, Art. 43**

Statute of Limitations (Available at http://www.au.af.mil/au/awc/awcgate/ucmj.htm.)

**UCMJ, Art. 83**

Fraudulent Enlistment, Appointment, or Separation (Available at http://www.au.af.mil/au/awc/awcgate/ucmj.htm.)

**UCMJ (10 USC Chap 47)**

Uniform Code of Military Justice (Available at http://www.au.af.mil/au/awc/awcgate/ucmj.htm.)

**5 USC 8301**

Uniform retirement date

**8 USC 1439**

Naturalization through service in the Armed Forces

000731

**8 USC 1440**
Naturalization through active-duty service in the Armed Forces during World War I, World War II, Korean hostilities, Vietnam hostilities, or other periods of military hostilities

**10 USC Chap 61**
Retirement or separation for physical disability

**10 USC 101**
Definitions

**10 USC 507**
Extension of enlistment for members needing medical care or hospitalization

**10 USC 651**
Members: required service

**10 USC 883 Art. 83**
Fraudulent enlistment, appointment, or separation

**10 USC 972**
Members: effect of time lost

**10 USC 1141**
Involuntary separation defined

**10 USC 1142**
Preseparation counseling; transmittal of medical records to Department of Veterans Affairs

**10 USC 1143**
Employment assistance

**10 USC 1143a**
Encouragement of postseparation public and community service

**10 USC 1144**
Employment assistance, job training assistance, and other transitional services

**10 USC 1145**
Health benefits

**10 USC 1146**
Commissary and exchange benefits

**10 USC 1147**
Use of military Family housing

**10 USC 1148**
Relocation assistance for personnel overseas

**10 USC 1149**
Excess leave and permissive temporary duty

**10 USC 1150**
Affiliation with Guard and Reserve units: waiver of certain limitations

**10 USC 1151**
(Repealed)

**10 USC 1152**
Assistance to eligible members and former members to obtain employment with law enforcement agencies

**000732**

**10 USC 1153**
Assistance to separated members to obtain employment with health care providers

**10 USC 1168**
Discharge or release from active duty: limitations

**10 USC 1169**
Regular enlisted members: limitations on discharge

**10 USC 1170**
Regular enlisted members: minority discharge

**10 USC 1171**
Regular enlisted members: early discharge

**10 USC 1172**
Enlisted members: during war or emergency; discharge

**10 USC 1173**
Enlisted members: discharge for hardship

**10 USC 1174**
Separation pay upon involuntary discharge or release from active duty

**10 USC 1174a**
Special separation benefits programs

**10 USC 1175**
Voluntary separation incentive

**10 USC 1176**
Enlisted members: retention after completion of 18 or more, but less than 20, years of service

**10 USC 1201**
Regulars and members on active duty for more than 30 days: retirement

**10 USC 1202**
Regulars and members on active duty for more than 30 days: temporary disability retired list

**10 USC 1370**
Commissioned officers: general rule; exceptions

**10 USC 1371**
Warrant officers: general rule

**10 USC 3914**
Twenty to thirty years: enlisted members

**10 USC 3917**
Thirty years or more: regular enlisted members

**10 USC 3925**
Computation of years of service: voluntary retirement; enlisted members

**10 USC 3961**
General rule

**10 USC 3963**
Highest grade held satisfactorily: Reserve enlisted members reduced in grade not as a result of the member's misconduct

000733

**10 USC 3964**
Higher grade after 30 years of service: warrant officers and enlisted members

**10 USC 3965**
Restoration to former grade: retired warrant officers and enlisted members

**10 USC 12301(d)**
Reserve components generally

**10 USC 12304**
Selected Reserve and certain Individual Ready Reserve members; order to active duty other than during war or national emergency

**10 USC 12305**
Authority of President to suspend certain laws relating to promotion, retirement, and separation

**10 USC 12313**
Reserves: release from active duty

**10 USC 12681**
Reserves: discharge authority

**10 USC 12684**
Reserves: separation for absence without authority or sentence to imprisonment

**10 USC 12686**
Reserves on active duty within two years of retirement eligibility: limitation on release from active duty

**10 USC 12732**
Entitlement to retired pay: computation of years of service

**37 USC 308**
Special pay: reenlistment bonus

**37 USC 552**
Pay and allowances; continuance while in a missing status; limitations

**37 USC 1001**
Regulations relating to pay and allowances

**Section III**
**Prescribed Forms**
Except where otherwise indicated below, the following forms are available as follows: DA Forms are available on the Army Electronic Library (AEL) CD-ROM (EM 0001) and the APD Web site (www.apd.army.mil); DD Forms are available from the OSD Web site (www.dior.whs.mil/icdhome/forms.htm); Standard Forms (SF) are available from the GSA Web site (www.gsa.gov).

**DA Form 2339**
Application for Voluntary Retirement. (Prescribed in paras 2–6*b*(2); 12–9*a*(1) and (2)(*b*); 12–11*c*; 12–12*a*; 12–13; 12–15*c*(1) and *d*; 12–23*a*; 12–27*b*(2) and *d*.) (This form is available on the APD Web site at http://www.apd.army.mil.)

**DA Form 4657**
Statement of Retirement-Eligible Soldier-Remaining Service Obligation. (Prescribed in para 4–3*d*(3)(*a*).)

**DA Form 4658**
Statement of Retirement-Eligible Soldier-Not Eligible to Reenlist. (Prescribed in para 4–3*d*(3)(*b*).)

**DA Form 4941**
Statement of Options, Qualitative Management Program (QMP). (Prescribed in paras 19–10, 19–11*b*(1), 19–13*a*,and 19–15*a*.)

000734

**DA Form 5138**
Separation Action Control Sheet. (Prescribed in para 1–7f.)

**DD Form 256**
Honorable Discharge Certificate (Prescribed in paras 3–7a(3) and 7–23.)

**DD Form 363**
Certificate of Retirement (Prescribed in paras 12–21a.)

**Section IV**
**Referenced Forms**

**DA Form 2–1**
Personnel Qualification Record-Part II

**DA Form 201**
Military Personnel Jacket, US Army

**DA Form 1695**
Oath of Extension of Enlistment

**DA Form 2028**
Recommended Changes to Publications and Blank Forms

**DA Form 2627**
Record of Proceedings Under Article 15, UCMJ

**DA Form 3891**
Certificate of Appreciation of Wives of Retiring US Army Personnel

**DA Form 3891–1**
Certificate of Appreciation for Husbands of Retiring US Army Personnel

**DA Form 4856**
Developmental Counseling Form

**DA Form 4991–R**
Declination of Continued Service Statement

**DD Form 214**
Certificate of Release or Discharge From Active Duty

**DD Form 214WS**
Certificate of Release or Discharge from Active Duty (Worksheet)

**DD Form 215**
Correction to DD Form 214, Certificate of Release or Discharge from Active Duty

**DD Form 458**
Charge Sheet

**DD Form 553**
Deserter/Absentee Wanted By the Armed Forces

**DD Form 2542**
Certificate Of Appreciation for Service In the Armed Services of the United States

**000735**

**Standard Form 88**
Report of Medical Examination

**Standard Form 93**
Medical Record-Report of Medical History

**000736**

## Appendix B
## Sample Administrative Separation Board Package

**B–1. Sample administrative separation board package.**
This appendix contains a sample of an administrative separation board package that includes an initial notification package with all necessary memorandums and a summarized record of board proceedings (see figure B-1).

---

DEPARTMENT OF THE ARMY
Company A
4th BATTALION,96th INFANTRY
FORT JACKSON, SC 29207

28 March 2000

SUBJECT: Discharge for Misconduct Under AR-635-200, Chapter 14.

THRU: Commander
4TH Battalion, 69th Infantry
Fort Jackson, SC 29207

TO: Commander
    118th Infantry Division and Fort Jackson
    Fort Jackson, SC 29207

1.  It is recommended that Private (E2) John A. Doe, 000-00-000 be required to appear before a board of officers convened under the provisions of AR 635-200, chapter 14, paragraph 14-12(a) and (b), for the purpose of determining whether he should be discharged before the expiration of his term of service.

2.  In support of the recommendation, the following information concerning Private Doe is provided:

    *a.* He enlisted 04 December 1998 for a term of 3 years and has no prior service. He is 20 years of age.

    *b.* He has no Reserve commission or warrant.

    *c.* Discharge is recommended because of frequent incidents of a discreditable nature with military authorities and habitual shirking. (Include narrative statement of basis for discharge and results of counseling sessions.)

    *d.* His duty MOS is 11B, and his MOS evaluation score is 85. His aptitude area scores are:

| APT. | SCORE |
|------|-------|
| CO | A-92; B-89 |
| EL | 79 |
| GM | 105 |
| MM | 89 |
| CL | 85 |
| GT | 87 |
| FA | 100 |
| ST | 85 |
| OF | 70 |
| SC | 76 |

Figure B–1. Sample report of proceedings of board of officers

---

000737

    *e.* During the period (date) to (date), this soldier has been assigned to various duty assignments (three different companies) in the battalion commensurate with his training and ability and has served under different superior officers and noncommissioned officers. In each instance, his performance of duty has been unsatisfactory. His military superiors and the psychiatric examiner agree that further rehabilitative efforts would be useless. His assignments in this battalion are:

      (1)  *(dates)*
      (2)  *(dates)*
      (3)  *(dates)*

    *f.* He has been counseled as indicated below.

(List dates of counseling citing reasons for counseling and the person giving the counseling.)

    *g.* As discharge is recommended for the reasons stated in c above, separation for unsatisfactory performance is not considered appropriate, Private Doe's performance is characterized by intentional shirking of his duties and by behavior rendering him repeatedly subject to punitive action. His behavior is not due to an incapacity to become a satisfactory soldier within the meaning of misconduct. There appear to be no grounds for other disposition.

    *h.* Private Doe has 2 convictions by summary court-martial and 1 by special court-martial. He was convicted by summary court on 8 April 1999, for 7 days AWOL and on 23 September 1999, for damaging US property through neglect. He was convicted by special court-martial on 10 November 1999 for 6 days AWOL and disrespect to a noncommissioned officer while in execution of office. Private Doe has been punished in this company on three separate occasions under the provisions of Article 15, UCMJ.

*(Encl 5).*

| | |
|---|---|
| 5 Encl | *(Name)* |
| 1.  Memorandum of notification | *Captain Infantry* |
| 2.  Memorandum of acknowledgment | *Commanding* |
| 3.  Med exam (SP 88, SF93, DA Form 3822-R) | |
| 4.  Court-martial order(s) | |
| 5.  Rec. of Art 15 proceedings (DA Form 2627) | |

*This is an example of a recommendation for discharge for misconduct. If individual is being recommended for discharge for unsuitability, sample will be changed accordingly. All documents that are not evidence will be numbered consecutively with Roman numerals and made enclosures. Items that are exhibits will be numbered consecutively (or lettered if submitted by respondent) (AR 15-6, paras 3-15 and 3-16).

Note. The first three enclosures must be included in all cases. Enclosures 4 and 5 must be included if appropriate. Other enclosures may be added as desired.

Recommend approval.

FOR THE COMMANDER:

| | |
|---|---|
| 5 Encl | *(Name)* |
| nc | *Captain Infantry* |
| | *Adjutant* |

**Figure B–1. Sample report of proceedings of board of officers—Continued**

000738

HEADQUARTERS
118th INFANTRY DIVISION
FORT JACKSON, SC 29207

28 March 2000

SUBJECT: Notification to Appear Before the Board of Officers
TO:  Private John A. Doe, 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
     Company A. 4th Battalion, 96th Infantry
     Fort Jackson, SC 29207

1.  Under the provisions of Army Regulation 15-6, paragraph 5-5, and Army Regulation 635-200 notice is hereby given that a Board of Officers appointed by memorandum of appointment, this Headquarters, dated 1 February 2000, will hold a hearing at Building T-4321 at 0900 hours on 15 June 2000, to determine whether you should be discharged because of misconduct before the expiration of your term of service. If you fail to appear before the board due to being absent without leave, you may be discharged from or retained in the service by the discharge authority without personal appearance before the board.

2.  The following witnesses are expected to be called:
Captain Winfield M. Elrod
Company C, 4th Battalion, 96th Infantry
Fort Jackson, SC 29207

1LT Titus L. Moody
Company B, 4th Battalion, 96th Infantry
Fort Jackson, SC 29207

Sergeant Robert H. Brown
Company C, 4th Battalion, 96th Infantry
Fort Jackson, SC 29207

Captain William P, Peters
Company A, 4th Battalion, 96th Infantry
Fort Jackson, SC 29207

3.  The recorder will endeavor to arrange for the presence of any reasonably available and necessary witnesses whom you may desire to call, upon written request from you for such action.

4.  Attached is a copy of a deposition from Captain Duane Evans, who will be unable to appear in person at the board hearings.

1 Encl                         *ALBERT A. FAKIAN*
as                             *2LT, Artillery,*
                               *Recorder*

I hereby certify that the above is a true and correct copy of the original notification and was delivered by me personally to the individual concerned on (date).

                               *ALBERT A. FAKIAN*
                               *2LT, Artillery*
                               *Recorder*

*Note.* Include Privacy Act Statement concerning respondent as enclosure (see AR 15-6, para 3-8e)

**Figure B–1. Sample report of proceedings of board of officers—Continued**

000739

## SUMMARY OF PROCEEDINGS

The board was appointed by letters of appointment, Headquarters, 118th Infantry Division and Fort Jackson, SC, dated 1 February 2000, a copy of which is attached.

The respondent was referred to this board for a hearing by letter, Headquarters, 118th Infantry Division and Fort Jackson, SC, dated 28 March 2000.

The board convened at Fort Jackson, SC, on 15 June 2000. The board met pursuant to the foregoing letter of appointment at 0900 hours on (date).

PERSONS PRESENT:

Major Walter C. Brown, 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, Infantry, President
Major Robert Johnson, 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, Infantry, Member
Captain Lewis B. Johnson, 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, Infantry, Member
Second Lieutenant Albert A. Fakian, 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, Infantry (Recorder)
First Lieutenant George P. Huffnagle, 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, JAGC (Counsel for Respondent)
Captain James R. Cronkhite, 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, Infantry (Counsel for Respondent)

PERSONS ABSENT:

None.

Private John A. Doe, 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, Company A, 4th Battalion, 96th Infantry, appeared before the board with his counsel (1LT George P. Huffnagel) (Captain James R. Cronkhite).

The memorandum appointing the board and the applicable substance of the regulations under which it was convened was read aloud by the recorder.

Private John A. Doe was asked if he desired to challenge any member of the board for cause; he replied he did not.

A true copy of written advance notification to Private John A. Doe, dated 28 March 2000, was received and read and is hereto appended.

Private John A. Doe was present during all open sessions of the board with his counsel and was afforded full opportunity to cross-examine adverse witnesses to present evidence in his own behalf, and to testify in person or submit a written statement.

A memorandum, subject: Discharge for Misconduct Under AR 635-200, Company A, 4th Battalion, 96th Infantry, with two endorsements (enclosures withdrawn), was offered in evidence by the recorder. There being no objection, the memorandum was admitted in evidence.

A certificate of 1LT Paul O. May, dated 10 January 2000, was offered in evidence by the recorder. There being no objection, the certificate was admitted in evidence.

A duly authenticated extract copy of the respondent's service record containing record of convictions by court-martial was offered in evidence by the recorder. There being no objections the document was admitted in evidence.

True copies of summarized records of proceedings under Article 15, UCMJ (DA Form 2627) pertaining to non-judicial punishment imposed upon the respondent on (date(s)), were offered into evidence by the recorder, and admitted into evidence.

**Figure B–1. Sample report of proceedings of board of officers—Continued**

**000740**

The following witnesses called by the board were sworn and testified in substance as follows:

Captain Winfield M. Elrod, Company C, 4th Battalion, 96th Infantry.

I am the company commander of Company C, 4th Battalion, 96th Infantry. Private Doe was assigned to my company from 10 December 1998 until 05 December 1999. Before his assignment to my company, he had been in basic training. I initially assigned Doe to a squad in the company, and apparently he performed satisfactorily f or the first month. About that time, he went AWOL for 7 days. Thereafter, Doe developed a bad attitude toward his job and the Army. I assigned Doe to another platoon as assistant supply clerk, and then as assistant to the company clerk where the first sergeant could keep an eye on him, but he performed unsatisfactorily in all of them. I then assigned Doe as an armorer-artificer's helper under the direct supervision of Sergeant Brown, and that is where Doe remained until his transfer out of my company. I gave him non-judicial punishment under Article 15 2 times, once for being late to formation, and once for insubordination to a non-commissioned officer. As time passed, he became more sullen and uncooperative.

### CROSS-EXAMINATION

I counseled Doe several times, but he refused to say what was bothering him. I counseled this soldier the first time when he was punished for being AWOL. About a month later, I counseled him again and explained to him that some changes would have to be made for his own good and for the good of the Army. I counseled him in those instances then I imposed non-judicial punishment. I told Doe that his prior record indicated that he could perform the duties required and that his tour would be much better if he did his job. He did not respond to my counseling.

*Note.* All subsequent testimony should be recorded similarly. After all testimony has been recorded, continue as shown below.

A statement signed by the respondent, dated 25 May 2000, to the effect that he had been advised of the basis of this action, desired to have a board hearing, and desired counsel, was offered in evidence by the recorder. There being no objections, the document was admitted in evidence.

The recorder stated that he had nothing further to offer. The rights of the respondent were explained to him by the president of the board. The respondent elected to take the stand as a witness. He was sworn and testified in substance as follows.

### DIRECT EXAMINATION

I have been in the Army since 04 December 1998, I am 20 years old, I lived in Jersey City, NJ, and went to school there up to the 9th grade. Before I finished the 9th grade, I was 16 years old, so I quit. I got mixed up with a bad crowd. So to improve my chance in life, I enlisted in the Army in December 1998. At first, I liked the Army, but then I got tired of being bossed around all the time. The sergeants gave me a bad time. Everything was jump, jump, jump. At first I did my work, but I didn't make PFC., so I figured it was no use and wanted out. I guess I don't want a bad discharge, but I don't want all those rotten details either.

**Figure B–1. Sample report of proceedings of board of officers—Continued**

000741

CROSS-EXAMINATION

I have heard what the officers and sergeants have said about me. The only way I can explain it is that they don't understand me. They were always pushing me around.

The recorder made an argument.

Counsel for the respondent made an argument. Then the recorder made a closing statement.

Neither the recorder nor the respondent having anything further to offer, the board was closed.

Attached is the verbatim record of the findings and recommendations of the board.

The board adjourned at 1400 hours on 15 June 2000.

VERBATIM FINDINGS AND RECOMMENDATIONS

FINDINGS: In the board proceedings concerning Private (E2) John A. Doe, 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, the board carefully considered the evidence before it and finds:

1.   Private Doe is undesirable for further retention in the military service because of the following misconduct:

a.   Frequent incidents of a discreditable nature with military authorities.

b.   Habitual shirking.

2.   His rehabilitation is not deemed possible.

RECOMMENDATIONS:

In view of the findings, the board recommends that Private Doe be discharged from the Service because of misconduct under other than honorable conditions.

> (*President*)
> (*Member*)
> (*Recorder*)

**Figure B–1. Sample report of proceedings of board of officers—Continued**

## B–2. Other chapter actions

Although this sample cites chapter 14, the same procedures will be used for any chapter action requiring a board in compliance with this regulation.

000742

**Glossary**

**Section I**
**Abbreviations**

**AD**
active duty

**ADAPCP**
Alcohol and Drug Abuse Prevention and Control Program

**ADT**
active duty for training

**AFS**
active Federal service

**AGR**
active guard reserve

**AIT**
advanced individual training

**APD**
Army Publishing Directorate

**ARNG**
Army National Guard

**ARNGUS**
Army National Guard of the United States

**AWOL**
absent without leave

**BT**
basic training

**CG**
commanding general

**CONUS**
continental United States

**CSM**
command sergeant major

**DA**
Department of the Army

**DOD**
Department of Defense

**DODD**
Department of Defense directive

**ETS**
expiration term of service

**FBI**
Federal Bureau of Investigation

000743

**GCMCA**
General Court-Martial Convening Authority

**HRC**
Human Resources Command

**HQDA**
Headquarters, Department of the Army

**IADT**
initial active duty for training

**IRR**
individual ready reserve

**JFTR**
Joint Federal Travel Regulation

**MACOM**
major Army command

**MCM**
Manual for Courts-Martial

**MEPS**
military entrance processing station

**MOS**
military occupational specialty

**MPRJ**
Military Personnel Records Jacket

**MTF**
medical treatment facility

**NCO**
noncommissioned officer

**NCOES**
Noncommissioned Officer Education System

**OMPF**
official military personnel file

**PCF**
personnel control facility

**PCS**
permanent change of station

**PFR**
personal financial records

**PTSD**
post traumatic stress disorder

**QMP**
Qualitative Management Program

**000744**

**RA**
regular Army

**RBN**
recruiting battalion

**RCM**
rule of court-martial

**RCP**
retention control point

**REFRAD**
release from active duty

**SFC**
sergeant first class

**SGM**
sergeant major

**SIDPERS**
Standard Installation/Division Personnel Reporting System

**SPCMCA**
special court-martial convening authority

**SSN**
social security number

**STP**
separation transfer point

**TA**
transition activity

**TBI**
traumatic brain injury

**TC**
transition center

**TDY**
temporary duty

**TP**
transition point

**UCMJ**
Uniform Code of Military Justice

**USAEREC**
U.S. Army Enlisted Records and Evaluation Center

**USAR**
U.S. Army Reserve

**USAREC**
U.S. Army Recruiting Command

**000745**

**USC**
United States Code

## Section II
## Terms

**Active Army**
The Active Army consists of: (1) regular Army Soldiers on active duty; (2) ARNGUS and the USAR Soldiers on active duty; (3) Army National Guard Soldiers in the service of the United States pursuant to a call; and (4) all persons appointed, enlisted, or inducted into the Army without component. Excluded are ARNGUS and USAR Soldiers serving on: (1) active duty for training; (2) AGR status; (3) active duty for special work; (4) temporary tours of active duty for 180 days or less; and (5) active duty pursuant to the call of the President (10 USC 12304).

**Active duty**
Full time duty in the active military service of the United States–includes active duty for training.

**Active duty for training**
Includes initial active duty for training.

**Administrative board procedure**
The process of an administrative separation action where the respondent will have a right to a hearing before a board of officers. It is initiated in the same manner as the notification procedure.

**Administrative Separation Board**
A board of officers, or officers and NCOs, appointed to make findings and to recommend retention in the Service or separation. The board states the reason and recommends the type of separation or discharge certificate to be furnished.

**Administrative separation**
Discharge or release from AD upon expiration of enlistment or required period of service, or before, as prescribed by the Department of the Army or by law. If one of the bases for separation includes a continuous unauthorized absence of 180 days or more, the consulting counsel will advise the Soldier that a discharge under other than honorable conditions is a conditional bar to benefits administered by the Department of Veterans Affairs, notwithstanding any action by a Discharge Review Board. Separation by sentence of a general or special court-martial is not an administrative separation.

**Appointed counsel for consultation**
A qualified counsel who is a commissioned officer of the Judge Advocate General's Corps. The officer is appointed to consult with and advise, at the outset of any initiated separation proceedings, per this regulation, other than chapters 4 and 12 and other administrative separation proceedings where required by applicable Army regulations. This officer will advise the Soldier concerning the basis for his/her contemplated separation and its effect, the rights available, and the effect of any action taken by him/her in waiving such rights. A Soldier will also be advised that enlistment may be voided if he/she is being considered for separation for fraudulent entry (desertion from another military service). Consulting counsel may advise the Soldier regarding the merits of the contemplated separation action when the counsel believes such advice is proper. The Soldier should be informed that the counsel cannot represent the Soldier before a board of officers unless also appointed as counsel for representation. Counsel will advise the Soldier that if he/she is separated under other than honorable conditions, there is no automatic upgrading by any government agency. Upgrading is considered only upon application to the Army Board for Correction of Military Records or the Army Discharge Review Board. Consideration by either of these boards does not guarantee upgrading character of service that is under other than honorable conditions. Communications between the Soldier and consulting counsel regarding the merits of the separation action are privileged communications between attorney and client.

**Appointed counsel for representation**
A counsel appointed to represent a Soldier who is being processed for separation during the course of any hearing before a board of officers. Such counsel will be a lawyer per Article 27(b)(1), Uniform Code of Military Justice, unless—
    *a.* The respondent expressly declines appointment of counsel qualified under Article 27(b)(1) of the UCMJ and requests a specific non-lawyer counsel.
    *b.* The separation authority assigns a non-lawyer counsel as assistant counsel. The appointed counsel for representation and the appointed counsel for consultation need not be the same individual.

000746

**Basic training**
Initial entry training that provides non-prior service personnel instructions in basic skills common to all Soldiers. Basic training (BT) precedes advanced individual training.

**Character of service for administrative separation**
A determination reflecting a Soldier's military behavior and performance of duty during a specific period of service. The three characterizations are honorable, general (under honorable conditions), and under other than honorable conditions. The service of Soldiers in entry-level status is normally described as uncharacterized.

**Contractually obligated Soldier**
A Soldier who is serving under enlistment contract or extension (has completed statutory service obligation or has not acquired one). (See AR 135–91, para 2–2.)

**Convening authority**
The separation authority or a commanding officer who is authorized by this regulation to process the case except for final action and who otherwise has the qualifications to act as a separation authority.

**Detainer**
A written notice to civil authorities that the person in their custody is a Soldier of the Army. The notice states that military authorities desire to take custody when the person is released.

**Discharge**
Complete severance from all military status gained by enlistment.

**Entry-level status**
  *a.* For RA Soldiers, entry-level status is the first 180 days of continuous AD or the first 180 days of continuous AD following a break of more than 92 days of active military service.
  *b.* For ARNGUS and USAR Soldiers, entry-level status begins upon enlistment in the ARNG or USAR. For Soldiers ordered to IADT for one continuous period, It terminates 180 days after beginning training. For Soldiers ordered to IADT for the split or alternate training option, it terminates 90 days after beginning Phase II advanced individual training (AIT). (Soldiers completing Phase I BT or basic combat training remain in entry-level status until 90 days after beginning Phase II.)
  *c.* Service that is not creditable per DOD 7000.14–R, vol. 7A, table 1–1–2, is excluded from the period of entry-level status.

**Improper recruiting practice**
Any intentional action(s) or omission(s), or negligence in performance of duty by a USAREC Soldier that violate(s) law, regulation, directive, or policy and occur(s) during processing of a prospect or applicant for enlistment and result(s) in enlistment or attempted enlistment of a person who does not meet all established enlistment prerequisites for either initial enlistment or specific option/military occupational specialty in which enlisted.

**Juvenile offender**
A person initially adjudged guilty of an offense by a domestic court of the United States or its territorial possessions or by a foreign court, whether or not a sentence has been imposed or suspended or whether there are any other subsequent proceedings in the case. The law of the jurisdiction of the court will be determinative of whether a given proceeding constitutes an adjudication of guilt. Adjudication as a juvenile offender includes adjudication as a juvenile delinquent, wayward minor, or youthful offender.

**Soldier, enlisted person**
An enlisted man or woman of the Army. This includes all persons enlisted in any component of the Army, in active Federal service, or active duty for training unless otherwise indicated or obviously inappropriate.

**Military behavior**
The conduct of the individual while a Soldier of the Army.

**Military record**
An account of a Soldier's behavior while in military service. This includes personal conduct and performance of duty.

**Minority group**
Any group distinguished from the general population in terms of race, color, religion, gender, or national origin.

**000747**

**Notification procedure**

Initiation of an administrative separation process in which the respondent is notified in writing of the proposed separation, the basis of it, the results of separation, and his/her rights. This term is commonly used when the respondent does not have an automatic right to a hearing before an administrative separation board.

**One station unit training**

Initial entry training in which elements of BT and AIT are provided in the same unit under one cadre for the total period of training. In one station unit training, elements of BT and AIT are either integrated (provided simultaneously) or are non-integrated (provided in distinct BT/AIT phases).

**Preponderance of the evidence**

Evidence that, after consideration of all evidence presented, points to a certain conclusion as being more credible and probable than any other conclusion. Where the evidence is equally consistent with two or more opposing propositions, it is insufficient.

**Prior enlistment or period of service**

Service in any component of the Armed Forces that ends with the issuance of a discharge certificate or certificate of service.

**Recruiting official**

As used in this regulation includes recruiter, recruiting guidance counselor, retention NCO, and any other personnel that process individuals for enlistment or re-enlistment in the Army.

**Release from active duty**

Termination of AD status and transfer or reversion to a status of a Reserve Component Soldier not on active duty. Personnel enlisted or inducted who have a Reserve obligation under 10 USC 651 or any other provision of law are transferred to a U.S. Army Reserve Control Group. Unit members of the ARNGUS and USAR revert from an AD status to their components to complete unexpired enlistments or unfulfilled obligations.

**Respondent**

A Soldier who has been notified that action has been initiated to separate him/her under this regulation.

**Separation**

An all-inclusive term applied to personnel actions resulting from release from active duty, discharge, retirement, being dropped from the rolls, release from military control of personnel without a military status, or death.

**Separation authority**

The official authorized by Army regulations to take final action on specified types of separations.

**Transition activity**

An activity designated to accomplish separation processing of military Soldiers assigned to that installation only.

**Transition point**

A centralized activity at an installation listed in AR 635 10, appendix B, to accomplish separation processing of military Soldiers assigned to activities at the same installation or satellited on the same installation, or assigned to that activity from another installation specifically for separation.

**Statutorily obligated Soldier**

A Soldier who is serving by reason of law. (See AR 135–91, chap 2.)

## Section III
## Special Abbreviations and Terms

This section contains no entries.

**UNCLASSIFIED**



**SECRETARY OF THE ARMY**
**WASHINGTON**

0 7 NOV 2013

MEMORANDUM FOR SEE DISTRIBUTION

SUBJECT:  Army Directive 2013-21 (Initiating Separation Proceedings and Prohibiting Overseas Assignment for Soldiers Convicted of Sex Offenses)

1.  References:

    a.  Title 42, United States Code, section 16911.

    b.  Army Regulation (AR) 27-10 (Military Justice), 3 October 2011.

    c.  AR 135-178 (Enlisted Administrative Separations), 13 March 2007, including Rapid Action Revision (RAR) 2 issued 13 September 2011.

    d.  AR 635-200 (Active Duty Enlisted Administrative Separations), 6 June 2005, including RAR 3 issued 6 September 2011.

    e.  AR 135-175 (Separation of Officers), 28 February 1987, including RAR 2 issued 4 August 2011.

    f.  AR 600-8-24 (Officer Transfers and Discharges), 12 April 2006, including RAR 3 issued 13 September 2011.

    g.  AR 10-87 (Army Commands, Army Service Component Commands, and Direct Reporting Units), 4 September 2007.

2.  Sex offenses are serious crimes.  Notwithstanding the provisions of any other Army regulation, directive, policy or other like guidance published by any Army official or organization, this directive establishes new policy to ensure that the decision to retain any Soldier convicted of a sex offense is fully informed and in the Army's best interest. In addition, this directive establishes Army policy prohibiting the overseas assignment or reassignment of any Soldier convicted of a sex offense.

3.  Commanders will initiate the administrative separation of any Soldier convicted of a sex offense, as defined by references 1a or 1b, whose conviction did not result in a punitive discharge or dismissal.  This policy applies to all personnel currently in the Army, regardless of when the conviction for a sex offense occurred and regardless of component of membership and current status in that component.

SUBJECT:  Army Directive 2013-21 (Initiating Separation Proceedings and Prohibiting Overseas Assignment for Soldiers Convicted of Sex Offenses)

   a.  For enlisted personnel:

      (1)  Commanders will follow the current policy for initiating administrative separation proceedings pursuant to references 1c or 1d, as appropriate.

      (2)  If the separation authority approves retention, he or she will initiate an action for the exercise of Secretarial plenary separation authority under paragraph 14-3 of reference 1c or paragraph 5-3 of reference 1d, as appropriate.

      (3)  If an enlisted Soldier who has been convicted of a sex offense already has been subject to an administrative separation action under references 1c or 1d for that conviction and has been retained as a result of that proceeding, the separation authority will initiate a separation action under the Secretarial plenary authority, as detailed in paragraph 3a(2) of this directive.

   b.  For commissioned and warrant officers:

      (1)  Commanders *will* initiate an elimination action under references 1e or 1f, as appropriate.

      (2)  No further action is required if a commissioned or warrant officer who has been convicted of a sex offense has already been subject to an elimination action for that conviction and has been retained.

4.  Commanders will ensure that Soldiers convicted of an offense covered by references 1a or 1b are not assigned or deployed on a temporary duty (TDY), temporary change of station (TCS) or permanent change of station (PCS) status to duty stations outside of the Continental United States (OCONUS).  The only permitted OCONUS locations are Hawaii, Alaska, the Commonwealth of Puerto Rico, or Territories or possessions of the United States.

5.  Soldiers currently serving in any non-permitted OCONUS locations who have been convicted of an offense covered by references 1a or 1b are ineligible for continued duty at those locations.  Accordingly, overseas commanders of Army Commands, Army Service Component Commands or Direct Reporting Units (as established in reference 1g) will identify such Soldiers in their commands and coordinate with the applicable Headquarters, Department of the Army Assignment Authority (Commander, U.S. Army Human Resources Command; The Judge Advocate General; or Chief of Chaplains) for reassignment to the continental United States or the permitted OCONUS locations listed in paragraph 4 as soon as possible.  Soldiers who are deployed to a non-permitted OCONUS location in any status (TDY/TCS) will immediately be returned to their parent organization.  Command responsibility to reassign or redeploy a Soldier under this policy takes precedence over initiation of separation.  Accordingly, Soldiers

000751

SUBJECT:  Army Directive 2013-21 (Initiating Separation Proceedings and Prohibiting Overseas Assignment for Soldiers Convicted of Sex Offenses)

convicted of an offense covered by references 1a or 1b will first be reassigned or redeployed to a CONUS or permitted OCONUS location.  The receiving commander will subsequently ensure the initiation of separation in accordance with paragraph 3.

6.  The provisions of this directive are effective immediately.  The Deputy Chief of Staff, G-1 is the proponent for this policy and, in coordination with the Assistant Secretary of the Army (Manpower and Reserve Affairs), will publish appropriate implementing instructions as soon as possible.  This directive and its implementing instructions take precedence over and cancel any conflicting guidance.  They will remain in effect until relevant Army regulations are revised and published to incorporate the policies set forth herein.



John M. McHugh

DISTRIBUTION:
Principal Officials of Headquarters, Department of the Army
Commander
    U.S. Army Forces Command
    U.S. Army Training and Doctrine Command
    U.S. Army Materiel Command
    U.S. Army Pacific
    U.S. Army Europe
    U.S. Army Central
    U.S. Army North
    U.S. Army South
    U.S. Army Africa/Southern European Task Force
    U.S. Army Special Operations Command
    Military Surface Deployment and Distribution Command
    U.S. Army Space and Missile Defense Command/Army Strategic Command
    U.S. Army Cyber Command
    U.S. Army Network Enterprise Technology Command/9th Signal Command (Army)
    U.S. Army Medical Command
    U.S. Army Intelligence and Security Command
    U.S. Army Criminal Investigation Command
    U.S. Army Corps of Engineers
    U.S. Army Military District of Washington
    U.S. Army Test and Evaluation Command
    U.S. Army Installation Management Command
Superintendent, United States Military Academy
(CONT)

000752

SUBJECT:  Army Directive 2013-21 (Initiating Separation Proceedings and Prohibiting Overseas Assignment for Soldiers Convicted of Sex Offenses)

DISTRIBUTION:  (CONT)
Director, U.S. Army Acquisition Support Command
Executive Director, Arlington National Cemetery
Commander, U.S. Army Accessions Support Brigade

CF:
Director, Army National Guard
Director of Business Transformation

**000753**

ALARACT 035/2014

DTG: R 122100Z FEB 14

THIS MESSAGE HAS BEEN TRANSMITTED BY USAITA ON BEHALF OF//DAPE-MPE//

SUBJECT: INITIATING SEPARATION PROCEEDINGS AND PROHIBITING OVERSEAS ASSIGNMENT/DEPLOYMENT FOR SOLDIERS CONVICTED OF SEX OFFENSES

1. REFERENCES.

A. DEPARTMENT OF THE ARMY DIRECTIVE 2013-21 (INITIATING SEPARATION PROCEEDINGS AND PROHIBITING OVERSEAS ASSIGNMENT FOR SOLDIERS CONVICTED OF SEX OFFENSES).

B. SECTION 16911, TITLE 42, UNITED STATES CODE (42 USC 16911).

C. THE NATIONAL GUIDELINES FOR SEX OFFENDER REGISTRATION AND NOTIFICATION, DEPARTMENT OF JUSTICE, OFFICE OF THE ATTORNEY GENERAL, 2 JULY 2008 (FEDERAL REGISTER, VOLUME 73, NUMBER 128, PAGES 38030-38070).

D. DOD INSTRUCTION (DODI) 1325.07, ADMINISTRATION OF MILITARY CORRECTIONAL FACILITIES AND CLEMENCY AND PAROLE AUTHORITY, 11 MAR 13.

E. ARMY REGULATION (AR) 27-10, MILITARY JUSTICE, 3 OCT 11.

F. AR 135-178, ENLISTED ADMINISTRATIIVE SEPARATIONS, 13 MAR 07, RAPID ACTION REVISION (RAR) 2, 13 SEP 11.

G. AR 635-200, ACTIVE DUTY ENLISTED ADMINISTRATIVE SEPARATIONS, 6 JUN 05, RAR 3, 6 SEP 11.

H. AR 135-175, SEPARATION OF OFFICERS, 28 FEB 87, RAR 2, 4 AUG 11.

I. AR 600-8-24, OFFICER TRANSFERS AND DISCHARGES, 12 APR 06, RAR 3, 13 SEP 11.

J. AR 10-87, ARMY COMMANDS, ARMY SERVICE COMPONENT COMMANDS, AND DIRECT REPORTING UNITS, 4 SEP 07.

K. AR 614-30, OVERSEAS SERVICE, 30 MAR 10.

L. AR 614-100, OFFICER ASSIGNMENT POLICIES, DETAILS, AND TRANSFERS, 10 JAN 06.

M. AR 614-200, ENLISTED ASSIGNMENTS AND UTILIZATION MANAGEMENT, 29 FEB 09, RAR 2, 11 OCT 11.

2. PURPOSE. IN ACCORDANCE WITH REFERENCE A ABOVE, THIS MESSAGE ANNOUNCES CHANGES TO ARMY POLICY.

A. SEX OFFENSES ARE SERIOUS CRIMES. NOTWITHSTANDING THE PROVISIONS OF ANY OTHER ARMY REGULATION, DIRECTIVE, POLICY OR OTHER LIKE GUIDANCE, THIS MESSAGE CONVEYS NEW POLICY, APPROVED BY THE SECRETARY OF THE ARMY ON 7 NOVEMBER 2013, TO ENSURE THAT THE DECISION TO RETAIN ANY SOLDIER CONVICTED OF A SEX OFFENSE IS FULLY INFORMED AND IN THE ARMY'S BEST INTEREST.

B. IN ADDITION, REFERENCE 1.A. ABOVE ESTABLISHES ARMY POLICY PROHIBITING THE OVERSEAS ASSIGNMENT OR DEPLOYMENT OF ANY SOLDIER CONVICTED OF A SEX OFFENSE. SOLDIERS CONVICTED AND RETAINED WHO ARE SERVING IN SUCH AN AREA SHALL BE REASSIGNED OR PROCESSED FOR SEPARATION IN ACCORDANCE WITH PARAGRAPH 3.B AND 3.C BELOW.

3. POLICY.

A. FOR THE PURPOSES OF THIS POLICY, A CONVICTION INCLUDES A PLEA OR FINDING OF GUILTY, A PLEA OF NOLO CONTENDERE, AND ALL OTHER ACTIONS TANTAMOUNT TO A FINDING OF GUILTY. THE CONVICTION QUALIFIES UNDER THIS POLICY IF IT OCCURRED IN ANY U.S. JURISDICTION. IAW REFERENCE B, AS FURTHER EXPLAINED BY REFERENCE C, CERTAIN FOREIGN CONVICTIONS MAY ALSO BE COVERED. A CONVICTION UNDER THIS POLICY INCLUDES A CONVICTION AT A GENERAL OR SPECIAL COURT-MARTIAL, BUT DOES NOT INCLUDE RESULTS FROM A SUMMARY COURT-MARTIAL OR NONJUDICIAL PUNISHMENT UNDER THE UNIFORMED CODE OF MILITARY JUSTICE (UCMJ), ARTICLE 15.

B. CONSISTENT WITH REFERENCES 1.B, C, AND E, FOR THE PURPOSES OF THIS POLICY, A SEX OFFENSE INCLUDES OFFENSES FROM ANY OF THESE SIX CATEGORIES:  (1) OFFENSES INVOLVING A SEXUAL ACT OR SEXUAL CONTACT, AS DEFINED BY THE JURISDICTION WHERE THE CONVICTION OCCURRED;  (2) CERTAIN OFFENSES AGAINST MINORS, AS DEFINED IN PARAGRAPH 7 OF REFERNCE B;  (3) FEDERAL OFFENSES UNDER 18 USC, SECTION 1591, OR 18 USC CHAPTERS 109A OR 117;  (4) A MILITARY OFFENSE SPECIFIED UNDER APPENDIX 4 TO ENCLOSURE 2 TO REFERENCE D;  (5) ATTEMPTS AND CONSPIRACIES TO

COMMIT ONE OF THE OFFENSES IN (1) THROUGH (4); OR A MILITARY OFFENSE SPECIFIED IN PARAGAPH 24-2 OF REFERNCE E. COMMANDERS SHOULD CONSULT THEIR LOCAL STAFF JUDGE ADVOCATE (SJA) FOR QUESTIONS PERTAINING TO CONVICTIONS UNDER THIS POLICY.

C. UPON DISCOVERY THAT A SOLDIER WITHIN THEIR COMMAND SUSTAINED A SEX OFFENSE CONVICTION THAT DID NOT RESULT IN A PUNITIVE DISCHARGE OR DISMISSAL, COMMANDERS WILL INITIATE AN ADMINISTRATIVE SEPARATION ACTION. THIS POLICY APPLIES TO ALL PERSONNEL CURRENTLY IN THE ARMY, REGARDLESS OF WHEN THE CONVICTION FOR A SEX OFFENSE OCCURRED AND REGARDLESS OF COMPONENT OF MEMBERSHIP AND CURRENT STATUS IN THAT COMPONENT.

(1) FOR ENLISTED PERSONNEL:

(A) COMMANDERS WILL FOLLOW THE CURRENT POLICY FOR INITIATING AN ADMINISTRATIVE SEPARATION PURSUANT TO REFERENCES 1.F. OR 1.G., AS APPROPRIATE. USE OF SECRETARIAL PLENARY AUTHORITY, PER SUBPARAGRAPH (B) BELOW, SHOULD ORDINARILY BE USED WHEN A SOLDIER WITH A SEX OFFENSE HAS FIRST BEEN PROCESSED FOR SEPARATION UNDER ANOTHER REGULATORY BASIS AND BEEN RETAINED.

(B) IF THE SEPARATION AUTHORITY APPROVES RETENTION, HE OR SHE WILL INITIATE AN ACTION FOR THE EXERCISE OF SECRETARIAL PLENARY SEPARATION AUTHORITY UNDER PARAGRAPH 14-3, AR 135-178 OR PARAGRAPH 5-3 OF AR 635-200, AS APPROPRIATE.

(C) IF AN ENLISTED SOLDIER WHO HAS BEEN CONVICTED OF A SEX OFFENSE ALREADY HAS BEEN SUBJECT TO AN ADMINISTRATIVE SEPARATION UNDER REFERENCES 1.F. OR 1.G., FOR THAT CONVICTION AND HAS BEEN RETAINED, THE SEPARATION AUTHORITY WILL INITIATE SEPARATION UNDER THE SECRETARIAL PLENARY AUTHORITY, AS DETAILED IN PARAGRAPH 14-3, AR 135-178 OR PARAGRAPH 5-3, AR 635-200 AS APPROPRIATE.

(2) FOR COMMISSIONED AND WARRANT OFFICERS:

(A) COMMANDERS WILL INITIATE AN ELIMINATION ACTION UNDER REFERENCES 1.H. OR 1.I., AS APPROPRIATE.

(B) NO FURTHER ACTION IS REQUIRED IF A COMMISSIONED OR WARRANT OFFICER WHO HAS BEEN CONVICTED OF A SEX OFFENSE HAS ALREADY BEEN SUBJECT TO AN ELIMINATION ACTION FOR THAT CONVICTION AND HAS BEEN

RETAINED. UP 10 USC 1182(D)(1), IF A BOARD OF INQUIRY DETERMINES THAT THE OFFICER HAS ESTABLISHED THAT HE OR SHE SHOULD BE RETAINED ON ACTIVE DUTY, THAT OFFICER'S CASE IS CLOSED AND THEY MAY NOT AGAIN BE CONSIDERED FOR SEPARATION FOR THE SAME CONDUCT.

D. COMMANDERS WILL ENSURE THAT SOLDIERS CONVICTED OF A SEX OFFENSE ARE NOT ASSIGNED OR DEPLOYED ON A TEMPORARY DUTY (TDY), TEMPORARY CHANGE OF STATION (TCS), OR PERMANENT CHANGE OF STATION (PCS) STATUS TO DUTY STATIONS OUTSIDE OF THE CONTINENTAL UNITED STATES (OCONUS). THE ONLY PERMITTED OCONUS LOCATIONS ARE HAWAII, ALASKA, THE COMMONWEALTH OF PUERTO RICO, OR TERRITORIES OR POSSESSIONS OF THE UNITED STATES.

E. SOLDIERS CURRENTLY SERVING IN ANY NON-PERMITTED OCONUS LOCATIONS WHO HAVE BEEN CONVICTED OF A SEX OFFENSE ARE INELIGIBLE FOR CONTINUED DUTY AT THOSE LOCATIONS. ACCORDINGLY, OVERSEAS COMMANDERS OF ARMY COMMANDS, ARMY SERVICE COMPONENT COMMANDS OR DIRECT REPORTING UNITS (AS ESTABLISHED IN REFERENCE 1.J.) WILL IDENTIFY SUCH SOLDIERS IN THEIR COMMANDS AND COORDINATE WITH THE APPLICABLE HEADQUARTERS, DEPARTMENT OF THE ARMY ASSIGNMENT AUTHORITY (E.G., COMMANDER, U.S. ARMY HUMAN RESOURCES COMMAND; THE JUDGE ADVOCATE GENERAL; OR CHIEF OF CHAPLAINS) FOR REASSIGNMENT TO THE CONTINENTAL UNITED STATES OR TO A PERMITTED OCONUS LOCATIONS, LISTED IN PARAGRAPH 3.D., ABOVE AS SOON AS POSSIBLE. SOLDIERS WHO ARE DEPLOYED TO A NON-PERMITTED OCONUS LOCATION IN ANY STATUS (TDY/TCS) WILL IMMEDIATELY BE RETURNED TO THEIR PARENT ORGANIZATION. COMMAND RESPONSIBILITY TO REASSIGN OR REDEPLOY A SOLDIER UNDER THIS POLICY TAKES PRECEDENCE OVER INITIATION OF SEPARATION. ACCORDINGLY, SOLDIERS CONVICTED OF A SEX OFFENSE WILL FIRST BE REASSIGNED OR REDEPLOYED TO CONUS OR A PERMITTED OCONUS LOCATION. THE RECEIVING COMMANDER WILL SUBSEQUENTLY ENSURE THE INITIATION OF SEPARATION IN ACCORDANCE WITH PARAGRAPH 3.C., ABOVE.

(1) AFFECTED SOLDIERS WHO ARE IN MILITARY CONFINEMENT FACILITIES IN ANY NON-PERMITTED OCONUS LOCATION WILL REMAIN FOR THE TERM OF THEIR CONFINEMENT. AFFECTED SOLDIERS WHO ARE CONVICTED OF A SEX OFFENSE AND SCHEDULED FOR IMMEDIATE CONFINEMENT IN A NON-PERMITTED OCONUS LOCATION MAY UNDERGO THIS CONFINMENT AS SCHEDULED. IN EITHER OF THESE CIRCUMSTANCES, COMMANDERS WILL FOLLOW CURRENT POLICY FOR INITIATING ADMINISTRATIVE SEPARATION PROCEEDINGS, WITH THE INTENT TO COMPLETE THE SEPARATION PROCESS DURING THE PERIOD OF CONFINEMENT. IF SEPARATION CANNOT BE FINALIZED DURING THE PERIOD OF CONFINEMENT,

REASSIGNMENT TAKES PRECEDENCE UPON COMPLETION OF CONFINEMENT, AS OPPOSED TO THE SOLDIER REMAINING IN THE NON-PERMITTED OCONUS LOCATION FOR THE PURPOSE OF FINALIZING SEPARATION.

(2) AFFECTED NON-ACTIVE GUARD RESERVE (NON-AGR) SOLDIERS, WHOSE DOMICILE AND UNIT OF ASSIGNMENT ARE LOCATED IN A NON-PERMITTED OCONUS LOCATION, MAY REMAIN IN THAT LOCATION PENDING SEPARATION BY THEIR CURRENT COMMAND. THESE SOLDIERS, HOWEVER, WILL ONLY PERFORM INACTIVE OR ACTIVE DUTY SERVICE AT THE LOCATION OF THEIR UNIT OF ASSIGNMENT, EXCEPT WHERE TRAVEL IS NECESSARY AS PART OF THE SEPARATION PROCESS.

4. THE PROVISIONS OF THIS MESSAGE ARE EFFECTIVE IMMEDIATELY. THIS MESSAGE AND ANY IMPLEMENTING INSTRUCTIONS (E.G., MILPER MESSAGES) TAKE PRECEDENCE OVER AND SUPERSEDE ANY CONFLICTING GUIDANCE. THIS MESSAGE REMAINS IN EFFECT UNTIL ARMY REGULATIONS LISTED IN PARAGRAPH 1 ABOVE ARE REVISED AND PUBLISHED, AS APPLICABLE.

5. THE DEPUTY CHIEF OF STAFF, G-1 IS THE PROPONENT FOR ADMINISTRATIVE SEPARATIONS AND ASSIGNMENT POLICY. THE HQDA POC FOR ENLISTED SEPARATIONS IS CHIEF, PROFESSIONAL DEVELOPMENT BRANCH, (DAPE-MPE), ODCS, G-1 (DSN 225-7991, COMMERCIAL 703-695-7991), AND THE HQDA POC FOR OFFICER SEPARATIONS IS CHIEF, OFFICER CAREER POLICY BRANCH (DAPE-MPO), ODCS, G-1 (DSN 225-7277; COMMERCIAL 703-695-7277). THE HQDA POC FOR ASSIGNMENT POLICY IS CHIEF, DISTRIBUTION AND READINESS BRANCH, (DAPE-MPE), ODCS, G-1 (DSN 225-7961/7924, COMMERCIAL 703-695-7961/7924.

6. EXPIRATION DATE OF THIS MESSAGE CANNOT BE DETERMINED.